Nos. 21-cv-7532 (Lead); 21-cv-7585; 21-cv-7961; 21-cv-7962; 21-cv-7966; 21-cv-7969; 21-cv8034; 21-cv-8042; 21-cv-8049; 21-cv-8055; 21-cv-8139; 21-cv-8258; 21-cv-8271; 21-cv-8538; 21-cv-8557; 21-cv-8566 (Consolidated)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

IN RE PURDUE PHARMA L.P., ET AL., DEBTORS

APPEALS FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
BANKR. CASE NO. 19-23649 (RDD)

# APPENDIX TO THE AD HOC GROUP OF INDIVIDUAL VICTIMS' (I) APPELLEE BRIEF AND (II) JOINDER TO THE APPELLEE BRIEFS OF THE DEBTORS' AND THE OFFICIAL COMMITTEE OF UNSECURED CREDTIORS

## VOLUME IV

WHITE & CASE LLP
1221 Avenue of the Americas
New York, New York 10020
Tel.: (212) 819-8200
Fax: (212) 354-8113
J. Christopher Shore
Michele J. Meises
Alice Tsier
Amanda J. Wong

ASK LLP
60 East 42nd Street, 46th Floor
New York, New York 10165
Tel.: (212) 267-7342
Fax: (212) 918-3427
Edward E. Neiger
Jennifer A. Christian

*Co-Counsel for Ad Hoc Group of Individual Victims of Purdue Pharma L.P., et al*

# INDEX

| Document | Appendix Pages |
|---|---|
| **VOLUME I** | |
| Order Establishing (I) Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof [Bankr. ECF No. 800] | A.1 – 55 |
| Order Appointing Mediators [Bankr. ECF No. 895] | A.56 – 66 |
| Mediators' Report [Bankr. ECF No. 1716] | A.67 – 75 |
| Order Expanding Scope of Mediation [Bankr. ECF No. 1756] | A.76 – 79 |
| Letter from Maria Ecke to Committee Members re: Objection to Settlement Amount [Bankr. ECF No. 2210] | A.80 – 81 |
| NAS PI TDP [Bankr. ECF No. 3528, 3655] | A.82 – 123 |
| Non-NAS PI TDP [Bankr. ECF No. 3528, 3655] | A.124 – 183 |
| Letter from Les Buris to Judge Drain re: Objection to Amount Paid to Creditors [Bankr. ECF No. 3028] | A.184 – 185 |
| Mediator's Report [Bankr. ECF No. 3119] | A.186 – 203 |
| Kelvin Singleton's Objection to the Amount Paid to Creditors [Bankr. ECF No. 3125] | A.204 – 207 |
| Objection to Plan and Plan Confirmation [Bankr. ECF No. 3271] | A.208 – 219 |
| Declaration of Michael Atkinson in Support of the Statement of the Official Committee of Unsecured Creditors in Support of Confirmation of the Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors [Bankr. ECF No. 3460] | A.220 – 256 |
| Ellen Isaacs' Emergency Request for Immediate Injunction and Hearing for Due Process, Production for Evidentiary Documents & Other Relief [Bankr. ECF No. 3582] | A.257 – 274 |
| Letter from Ronald Bass Sr. to Judge Drain [Bankr. ECF No. 3721] | A.275 – 292 |
| Maria Ecke's Motion for Original Claim Payment and for Rule 5004 of the Federal Rules of Bankruptcy Procedure [Bankr. ECF No. 4074] | A.293 – 299 |
| **VOLUME II** | |
| *In re Purdue Pharma L.P.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. June 3, 2020) (Bar Date Ext. Mot. Hr'g Tr.) | A.300 – 424 |
| *In re Purdue Pharma L.P.,* Case No. 19-23649 (RDD) (Bankr. S.D.N.Y. August 25, 2021) ("Confirmation Hr'g Tr.") | A.425 – 775 |

| | |
|---|---|
| *In re Purdue Pharm Bankruptcy Appeals*, Case No. 21-cv-7532 (CM) *et seq.* (S.D.N.Y. October 12, 2021) ("Scheduling Conference Tr.") | A.776 – 851 |
| *In re Purdue Pharma L.P.,* Case No. 19-23649 (RDD) (S.D.N.Y. November 9, 2021) ("Hr'g Tr. re: Motion for Stay Pending Appeal") | A.852 – 1208 |
| **VOLUME III** | |
| Asbestos Personal Injury Trust Distribution Procedure, *In re Yarway Corp.,* Case No. 13-11025 (BLS) (Bankr. D. Del.) [Dkt. No. 859-3] | A.1209 – 1274 |
| Asbestos Personal Injury Trust Distribution Procedure, *In re Maremont Corp.*, Case No. 19-10118 (KJC) (Bankr. D. Del.) [Dkt. No. 238-2] | A.1275 – 1338 |
| Proposed TPP Class and Third Party Payor Claim Procedures, *In re Insys Therapeutics, Inc.*, Case No. 19-11292 (KG) [Dkt. No. 1049-13] | A.1339 – 1347 |
| Fire Victim Claims Resolution Procedures, *In re PG&E Corp.*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.) [Dkt. No. 7037] | A.1348 – 1359 |
| **VOLUME IV** | |
| Lloyd Dixon et al., *RAND Technical Report: Asbestos Bankruptcy Trusts: An Overview of Trust Structure and Activity with Detailed Reports on the Largest Trusts* xiv (2010) | A.1360 - 1577 |
| **VOLUME V** | |
| Objection of United States Trustee to Sixth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors [Bankr. ECF No. 3256] | A.1578 – 1612 |
| Supplemental Objection of United States Trustee to (I) Eighth Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors and (II) Proposed Confirmation Order [Bankr. ECF No. 3636] | A.1613 – 1616 |
| Supplemental Objection of United States Trustee to (I) Eleventh Amended Joint Chapter 11 Plan of Purdue Pharma L.P. and Its Affiliated Debtors, and (II) Any Proposed Confirmation Order [Bankr. ECF No. 3710] | A.1617 – 1620 |



# INSTITUTE FOR CIVIL JUSTICE

THE ARTS
CHILD POLICY
CIVIL JUSTICE
EDUCATION
ENERGY AND ENVIRONMENT
HEALTH AND HEALTH CARE
INTERNATIONAL AFFAIRS
NATIONAL SECURITY
POPULATION AND AGING
PUBLIC SAFETY
SCIENCE AND TECHNOLOGY
SUBSTANCE ABUSE
TERRORISM AND
HOMELAND SECURITY
TRANSPORTATION AND
INFRASTRUCTURE
WORKFORCE AND WORKPLACE

This PDF document was made available from www.rand.org as a public service of the RAND Corporation.

Jump down to document ▼

The RAND Corporation is a nonprofit institution that helps improve policy and decisionmaking through research and analysis.

## Support RAND

Purchase this document

Browse Books & Publications

Make a charitable contribution

## For More Information

Visit RAND at www.rand.org

Explore the RAND Institute for Civil Justice

View document details

## Limited Electronic Distribution Rights

This document and trademark(s) contained herein are protected by law as indicated in a notice appearing later in this work. This electronic representation of RAND intellectual property is provided for non-commercial use only. Unauthorized posting of RAND PDFs to a non-RAND Web site is prohibited. RAND PDFs are protected under copyright law. Permission is required from RAND to reproduce, or reuse in another form, any of our research documents for commercial use. For information on reprint and linking permissions, please see RAND Permissions.

This product is part of the RAND Corporation technical report series.  Reports may include research findings on a specific topic that is limited in scope; present discussions of the methodology employed in research; provide literature reviews, survey instruments, modeling exercises, guidelines for practitioners and research professionals, and supporting documentation; or deliver preliminary findings.  All RAND reports undergo rigorous peer review to ensure that they meet high standards for research quality and objectivity.

REPORT

# Asbestos Bankruptcy Trusts

## An Overview of Trust Structure and Activity with Detailed Reports on the Largest Trusts

*Lloyd Dixon • Geoffrey McGovern • Amy Coombe*

RAND INSTITUTE FOR CIVIL JUSTICE

A.1362

The research described in this report was conducted by the RAND Institute for Civil Justice, a unit of the RAND Corporation. This research was supported by a coalition of asbestos defendants and insurers and by the RAND Institute for Civil Justice.

**Library of Congress Cataloging-in-Publication Data**

Dixon, Lloyd S.
  Asbestos bankruptcy trusts : an overview of trust structure and activity with detailed reports on the largest trusts / Lloyd Dixon, Geoffrey McGovern, Amy Coombe.
    p. cm.
  Includes bibliographical references.
  ISBN 978-0-8330-5037-3 (pbk. : alk. paper)
  1.  Bankruptcy trustees—United States. 2.  Compensation (Law)—United States. 3.  Personal injuries—United States. 4.  Trusts and trustees—United States. 5.  Asbestos—Law and legislation—United States.  I. McGovern, Geoffrey. II. Coombe, Amy. III. Title.

  KF1530.R3D59 2010
  346.7307'8—dc22
                                                                    2010029003

The RAND Corporation is a nonprofit research organization providing objective analysis and effective solutions that address the challenges facing the public and private sectors around the world. RAND's publications do not necessarily reflect the opinions of its research clients and sponsors.

**RAND®** is a registered trademark.

© Copyright 2010 RAND Corporation

Permission is given to duplicate this document for personal use only, as long as it is unaltered and complete. Copies may not be duplicated for commercial purposes. Unauthorized posting of RAND documents to a non-RAND website is prohibited. RAND documents are protected under copyright law. For information on reprint and linking permissions, please visit the RAND permissions page (http://www.rand.org/publications/permissions.html).

Published 2010 by the RAND Corporation
1776 Main Street, P.O. Box 2138, Santa Monica, CA 90407-2138
1200 South Hayes Street, Arlington, VA 22202-5050
4570 Fifth Avenue, Suite 600, Pittsburgh, PA 15213-2665
RAND URL: http://www.rand.org
To order RAND documents or to obtain additional information, contact
Distribution Services: Telephone: (310) 451-7002;
Fax: (310) 451-6915; Email: order@rand.org

**A.1363**

# Preface

Over time, many companies with significant asbestos-related liabilities have filed for bankruptcy, and payments by trusts set up by bankruptcy courts have played an increasingly important role in the compensation of asbestos-related injuries. While the role of trusts in providing compensation to asbestos claimants has grown, information about the operating procedures and activities of these trusts is not readily available in a convenient form.

This report provides an overview of asbestos personal-injury (PI) trusts. It describes how they are created, how they are organized and governed, and how they operate. It also compiles publicly available information on the assets, outlays, claim-approval criteria, and governing boards of the leading trusts.

This report should be of interest to federal and state policymakers, lawyers, judges, and litigants concerned about the compensation of people injured by exposure to asbestos, the performance of the asbestos compensation system, and the economic impact of asbestos litigation on both defendants and the legal community. It is part of a larger research project on asbestos bankruptcy trusts. A second report will examine how trust compensation or the potential for such compensation is addressed by state liability laws and taken into consideration during court proceedings and settlement negotiations.

The research was supported by a coalition of asbestos defendants and insurers and by the RAND Institute for Civil Justice. The views in the report are those of the authors and do not necessarily reflect those of the research sponsors.

## The RAND Institute for Civil Justice

The mission of the RAND Institute for Civil Justice (ICJ) is to improve private and public decisionmaking on civil legal issues by supplying policymakers and the public with the results of objective, empirically based, analytic research. ICJ facilitates change in the civil justice system by analyzing trends and outcomes, identifying and evaluating policy options, and bringing together representatives of different interests to debate alternative solutions to policy problems. ICJ builds on a long tradition of RAND research characterized by an interdisciplinary, empirical approach to public policy issues and rigorous standards of quality, objectivity, and independence.

ICJ research is supported by pooled grants from corporations, trade and professional associations, and individuals; by government grants and contracts; and by private foundations. ICJ disseminates its work widely to the legal, business, and research communities and to the general public. In accordance with RAND policy, all ICJ research products are subject to peer

A.1364

review before publication. ICJ publications do not necessarily reflect the opinions or policies of the research sponsors or of the ICJ Board of Overseers.

Information about ICJ is available online (http://www.rand.org/icj/). Inquiries about research projects should be sent to the following address:

James Dertouzos, Director
RAND Institute for Civil Justice
1776 Main Street
P.O. Box 2138
Santa Monica, CA 90407-2138
310-393-0411 x7476
Fax: 310-451-6979
James_Dertouzos@rand.org

Questions and comments about this report should be sent to Lloyd Dixon (Lloyd_Dixon@rand.org).

# Contents

**Preface** ............................................................................................................ iii

**Figures** ............................................................................................................ vii

**Tables** ............................................................................................................. ix

**Summary** ......................................................................................................... xi

**Acknowledgments** ......................................................................................... xix

**Glossary** .......................................................................................................... xxi

**Abbreviations** ............................................................................................... xxv

CHAPTER ONE
**Introduction** ...................................................................................................... 1
Asbestos Litigation and the Rise of the Trusts ..................................................... 1
Organization of This Report ................................................................................. 3

CHAPTER TWO
**History of and Statutory Framework for Asbestos Bankruptcy Trusts** ............. 5
The Johns-Manville Corporation Bankruptcy and the First Asbestos Personal-Injury Trust ........... 5
The Codification of Asbestos Personal-Injury Trusts in Bankruptcy Law .............. 7
Strategies for Gaining Support for a Bankruptcy Plan .......................................... 9

CHAPTER THREE
**Trust Governance, Administration, and Procedures for Compensating Claimants** .............. 11
Asbestos Trust Agreements and Key Actors in Trust Administration ..................... 11
    Agreement of Trust ......................................................................................... 12
    Key Actors in Trust Administration ................................................................. 12
Claim-Processing Procedures ............................................................................... 14
    Stage 1: Claim Filing and Selection of Claim Review Method .......................... 15
    Stage 2: Claim Review .................................................................................... 17
    Stage 3: Claim Liquidation ............................................................................. 20
    Stage 4: Claim Payment .................................................................................. 21
Indirect Personal-Injury Claims .......................................................................... 22
Conclusion ........................................................................................................... 23

CHAPTER FOUR
**Overview of Trust Activity** ............................................................................... 25
Data and Methods ................................................................................................ 25
Overview of Trust Activity .................................................................................... 31

**A.1366**

Aggregate Claim Activity ... 31
Breakdown of Payments, by Injury Type ... 31
Trust Assets and Expenses ... 34
Claim Valuation Schedules ... 36
Composition of Trust Governing Bodies ... 38

CHAPTER FIVE
**Conclusion** ... 45

APPENDIXES
**A. List of Bankruptcies with at Least Some Asbestos Liability** ... 47
**B. Detailed Reports on Largest Trusts** ... 53
ACandS Asbestos Settlement Trust ... 55
API, Inc. Asbestos Settlement Trust ... 59
Armstrong World Industries Asbestos Personal Injury Settlement Trust ... 65
ASARCO LLC Asbestos Personal Injury Settlement Trust ... 71
Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust ... 75
Burns and Roe Asbestos Personal Injury Settlement Trust ... 79
Celotex Asbestos Settlement Trust ... 83
Combustion Engineering 524(g) Asbestos PI Trust ... 87
DII Industries, LLC Asbestos PI Trust ... 91
Eagle-Picher Industries Inc. Personal Injury Settlement Trust ... 97
Federal Mogul Asbestos Personal Injury Trust—Turner & Newall Subfund ... 101
G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust ... 105
H. K. Porter Asbestos Trust ... 109
J.T. Thorpe Company Successor Trust ... 115
J.T. Thorpe Settlement Trust ... 119
Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust ... 123
Manville Personal Injury Settlement Trust ... 127
NGC Bodily Injury Trust ... 131
North American Refractories Company Asbestos Personal Injury Settlement Trust ... 137
Owens Corning Fibreboard Asbestos Personal Injury Trust—Fibreboard Subfund ... 141
Owens Corning Fibreboard Asbestos Personal Injury Trust—Owens Corning Subfund ... 145
Pittsburgh Corning Corporation Asbestos PI Trust ... 149
Plibrico 524(g) Trust ... 153
Swan Asbestos and Silica Settlement Trust ... 159
T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust ... 165
United States Gypsum Asbestos Personal Injury Settlement Trust ... 169
UNR Asbestos-Disease Claims Trust ... 173
Western Asbestos Settlement Trust ... 177
W.R. Grace & Co. Asbestos Personal Injury Settlement Trust ... 183

**References** ... 187

# Figures

S.1.   Cumulative Number of Asbestos-Related Bankruptcies Filed and Trusts
       Established as of June 2010 .............................................................. xii
S.2.   Cumulative Number of Claims Paid and Value of Claim Payments at the
       Selected Trusts ............................................................................ xiii
3.1.   Schematic of Claim Payment Process ...................................................... 16
4.1.   Number of Bankruptcies Filed and Number of Trusts Established, by Year, as of
       June 2010 ...................................................................................... 29
4.2.   Cumulative Number of Bankruptcies Filed and Trusts Established as of June 2010 ..... 30
4.3.   The Number of Claims Paid and the Value of Claim Payments, by Year, for the
       Selected Trusts ................................................................................. 32
4.4.   Cumulative Claims Paid and Claim Payments at the Selected Trusts ...................... 32
4.5.   Payment Percentage .............................................................................. 38
4.6.   Scheduled Value for Mesothelioma Claims After Applying Payment Percentage .......... 39
4.7.   Average Value for Mesothelioma Claims After Applying Payment Percentage ............ 40

**A.1368**

# Tables

S.1.    Mesothelioma Claim Values......................................................... xv
S.2.    Organizations Most Frequently Represented at the 26 Selected Trusts.................. xvii
4.1.    Trusts Established, in Alphabetical Order.................................... 26
4.2.    Breakdown of Claim Payments by Injury Type for Trusts that Separately Report
       Data on Malignant and Nonmalignant Claims .............................................33
4.3.    Overview of Trust Assets, Claim Payments, and Expenses....................................35
4.4.    Mesothelioma Claim Values.........................................................37
4.5.    Scheduled and Average Values, by Disease Level, at Trusts with Seven or Eight
       Disease Levels .................................................................... 41
4.6.    Scheduled and Average Values, by Disease Level, at Trusts with Seven or Eight
       Disease Levels, After Payment Percentage Applied ......................... 42
4.7.    Organizations Most Frequently Represented at the 26 Selected Trusts.................. 43
4.8.    Positions of the Most Frequently Represented Organizations............................ 43
A.1.    Chronological List of Bankruptcies with Some Asbestos Liability ......................... 47
B.1.    Notes on Individual Trust Reports ............................................. 54

**A.1370**

## Summary

Litigation over personal injuries due to asbestos exposure has continued for more than 40 years in the United States with hundreds of thousands of claims filed and billions of dollars in compensation paid. Many companies with significant liability for asbestos-related injuries have filed for bankruptcy, resulting in the creation of asbestos bankruptcy trusts, which pay claims on behalf of bankrupt defendants. These trusts are playing an increasingly important role in the compensation of asbestos-related injuries.

While the role of trusts in providing compensation to asbestos claimants has grown, information about the operating procedures and activities of these trusts is not readily available in a convenient form. Little research has been done on transaction costs, time to claim disposition, claimant satisfaction, and other metrics of trust performance. In addition, there is little analysis of how the trusts have affected the overall compensation that asbestos claimants receive and the asbestos liabilities of solvent defendants and their insurers.

This report provides an overview of asbestos PI trusts. It describes how they are created, how they are organized and governed, and how they operate. It also compiles publicly available information on the assets, outlays, claim-approval criteria, and governing boards of the leading trusts. This report does not attempt to evaluate trusts' performance or assess how they have affected the overall compensation of asbestos claimants. Rather, it is meant to provide a readily accessible source of information on asbestos trusts that will help interested parties better understand how trusts operate and their activities to date. This report is part of a larger research project on asbestos bankruptcy trusts. A second report will examine how trust compensation or the potential for such compensation is taken into consideration in court proceedings and settlement negotiations.

### Data and Methods

Data on the trusts were abstracted from publicly available sources including bankruptcy documents, trust websites, trust annual reports, and U.S. Securities and Exchange Commission (SEC) filings. To concentrate our efforts on the largest trusts, we selected a subset of the 54 trusts that had been set up through 2009. Twenty-six active trusts were chosen that met specified cutoffs based on the magnitude of assets available to the trust when it was established and the amount of claim payments through 2008. The 26 active trusts that met the criteria accounted for more than 99 percent of the claim payments that we could identify for all trusts through 2008.

Detailed reports on the 26 selected trusts were prepared and then submitted to the relevant trusts for review. Twenty-three of the trusts were able to review the data, and the data were revised accordingly. The reports for the 26 active trusts, as well as for the three largest proposed trusts, are provided in Appendix B to this report. The overview of trust activity that follows is based on the 26 selected active trusts. Trusts do not publicly release individual claim information; thus, neither the variation of payments by a given trust across individuals nor payments by multiple trusts to the same claimant can be examined.

## Findings

### Number of Bankruptcies and Trusts

Figure S.1 shows the cumulative number of bankruptcies filed that involved at least some asbestos liability and the number of asbestos bankruptcy trusts that have been established. Fifty-four trusts have been established through June 2010, with a considerable acceleration in the number of trusts established in the second half of the 2000s. Nine more trusts are in the pipeline, with undoubtedly more to come.

### Aggregate Claim Activity

Figure S.2 displays the cumulative number of claims paid and the claim payments for the 26 selected active trusts. Data for the years prior to 2006 are aggregated because we were not able to break down pre-2006 figures by year for some major trusts. Data on pre-2006 claim payments for two trusts are incomplete because complete records could not be located for these

**Figure S.1**
**Cumulative Number of Asbestos-Related Bankruptcies Filed and Trusts Established as of June 2010**



**Figure S.2**
**Cumulative Number of Claims Paid and Value of Claim Payments at the Selected Trusts**



RAND *TR872-S.2*

older trusts. Also, it appears that data on the number of paid claims are incomplete for three of the 26 trusts. Thus, the data in Figure S.2 provide lower bounds on the number of claims paid and the value of claim payments. Plaintiffs' attorneys' fees must be removed from trust payments in order to determine the amount ultimately received by claimants.

Reflecting the influx of new trusts in 2006 and 2007, both the number of claims paid and annual value of claim payments surged in 2007 and 2008. Approximately 575,000 claims were paid, for a total value of $3.3 billion in 2008. Because multiple trusts can make payments to the same individual, the number of claims paid exceeds the number of individuals receiving compensation from the trusts, but by how much is unknown. To put these numbers in perspective, a 2005 RAND report estimated that $7.1 billion was paid in compensation by asbestos defendants (not including asbestos trusts) in 2002 (Carroll, Hensler, et al., 2005, p. 92). Comprehensive data on which to base more-current estimates of tort compensation are not available.

Trust compensation payments have been considerable to date, and the assets under trust control indicate that significant payments will continue. As of year-end 2008, the assets of the selected active trusts totaled $18.2 billion, and this total does not include the assets of four recently formed trusts that had not filed financial statements as of 2009. The total also does not include the estimated assets of currently proposed trusts. Estimates of the initial assets at eight of the nine proposed trusts for which information is available total $14.5 billion.

**Breakdown of Payments by Injury Type**

The compensation paid to claimants with more-severe diseases relative to those with less severe diseases has been an ongoing issue in asbestos compensation. Ten of the 26 active trusts

provide separate figures on malignant and nonmalignant claims. *Malignant claims*, by and large, refers to claims involving mesothelioma, lung cancer, and other cancers. *Nonmalignant claims* refers to claims involving severe asbestosis, asbestosis and pleural disease, or other asbestos-related diseases.

Taking 2007 and 2008 together, 86 percent of the total number of claims that these trusts paid were for nonmalignant injuries. Nonmalignant claims accounted for 37 percent of 2007 and 2008 expenditures at these ten trusts, reflecting an average payment per claim that was roughly one-tenth that for malignant claims.

While legislative and judicial reforms have made it increasingly difficult to obtain compensation for nonmalignant injuries in the tort system, the large number of nonmalignant claims paid by trusts indicates that the trust system remains a source of compensation for such injuries. How the total compensation a claimant receives from the trusts for nonmalignant injuries has changed over time, however, is uncertain. On the one hand, some trusts have cut payments for the least serious nonmalignant claims. On the other hand, an increase in the number of trusts means that a claimant may be able to obtain compensation for nonmalignant claims from more trusts.

### Trust Transaction Costs

Trusts strive to deliver compensation with minimal legal and other transaction costs, at least compared with the transaction costs associated with the tort system. Trust financial statements allow estimates of gross claimant compensation as a percentage of trust expenditures. The claimant compensation is gross in the sense that it includes any fees the claimant pays to his or her attorney for services related to the recovery.[1]

As trust claim payments rose rapidly between 2006 and 2008, the gross claimant-compensation percentage rose from between 71 and 75 percent in 2006 to approximately 95 percent in 2008. These levels compare favorably to estimates of gross compensation as a percentage of defendant expenditures in the tort system. Carroll, Hensler, et al. (2005, p. xxvi) estimated that gross claimant compensation through 2002 amounted to 69 percent of total spending by defendants and insurers. It should be noted, however, that the gross compensation percentages for the trusts do not include the legal and other transaction costs incurred in negotiating the trust terms during the bankruptcy proceedings.

### Claim Valuation Schedules

When a trust receives an asbestos PI claim, it must review the submitted claim documents and assign a value to the claimant's injuries. Trusts typically offer claimants two primary options for claim review: expedited review or individual review.

Under expedited review, claims that meet the medical and exposure criteria for the alleged disease (referred to as the disease level) will be assigned a scheduled value for the disease. According to a party that has worked closely with trusts, the scheduled value is typically set slightly above the 50th percentile of the historical settlements that the debtor paid for the particular disease before bankruptcy. We, however, have not been able to evaluate the extent to which this is actually the case.

---

[1]   Informed parties indicated that plaintiffs' attorneys' fees typically run about 25 percent of the award.

As an alternative to expedited review, individual review provides a claimant the opportunity to receive individual consideration of his or her medical condition and of the claim's value. Individual-review claims are meant to be valued at the historical liquidated value of similarly situated claims in the tort system. We have not been able to evaluate the extent to which this is the case either. Most trusts also publish so-called average values of different disease levels. For most trusts, the average value is the trust's target for the average value assigned to claims, including claims that go through either expedited or individual review.

The top rows of Table S.1 show the scheduled and average values for mesothelioma claims for the trust-claim-class combinations at the selected trusts reporting this information.[2] The scheduled value for mesothelioma claims varies from $7,000 to $1.2 million across the 30 trust-claim-class combinations, with a median of $126,000. The median of the average value for mesothelioma claims is $180,000—again, with a large spread. The wide spread in both the scheduled and average values reflects, in part, the differences across debtors in the settlement values for mesothelioma claims prebankruptcy.

Most trusts do not have sufficient funds to pay every claim in full and, thus, set a payment percentage that is used to determine the actual payment a claimant will be offered. As shown in the Table S.1, the median of the payment percentage is 25 percent across the trust-claim-class combinations reporting, with the range running from 1.1 percent to 100 percent. Thus, the assets available to some trusts allow them to pay only a very small proportion of the value assigned to the claim while other trusts are fully funded and can pay the entire amount.

The bottom rows in Table S.1 show the scheduled and average values once the payment percentage has been applied. Average values for mesothelioma claims net of the payment percentage range from $13,000 to $238,000 across the trust-claim-class combinations.

Trusts recognize various disease levels, and scheduled and average values are usually set for each. While mesothelioma is always considered a separate disease level, the number of other

**Table S.1**
**Mesothelioma Claim Values**

| Item | Minimum | Percentile | | | Maximum |
| --- | --- | --- | --- | --- | --- |
| | | 20th | 50th | 80th | |
| Prior to applying payment percentage | | | | | |
|    Scheduled value ($ thousands) (30 trust-claim-class combinations) | 7 | 59 | 126 | 203 | 1,200 |
|    Average value ($ thousands) (23 trust-claim-class combinations) | 45 | 99 | 180 | 262 | 524 |
| Payment percentage (29 trust-claim-class combinations) | 1.1 | 9.4 | 25.0 | 46.3 | 100.0 |
| After applying payment percentage | | | | | |
|    Scheduled value ($ thousands) (28 trust-claim-class combinations) | 1 | 13 | 27 | 68 | 240 |
|    Average value ($ thousands) (21 trust-claim-class combinations) | 13 | 23 | 41 | 101 | 238 |

[2]   A number of trusts set different scheduled values for the separate classes of claims they accept. We consider each of these trust-claim-class combinations separately.

disease levels varies by trust. Comparison of scheduled and average values after application of the payment percentage for trusts with comparable disease levels shows that scheduled and average values for other cancers and severe asbestosis are considerably below those for mesothelioma but substantially higher than those for asbestosis/pleural disease and other asbestos disease.

**Composition of Trust Governing Bodies**

Trusts are governed by trustees, who operate the trust for the benefit of claimants. Because trusts often have hundreds of thousands of beneficiaries who cannot directly control the trustees, committees are set up to represent the interests of current and future claimants. Trustees are required to obtain the consent of the trust advisory committee (TAC) (representing current claimants) and the future claimants' representative (FCR) (representing future claimants) before major actions by the trust can be taken (such as revising trust distribution procedures, or TDPs).

To better understand who is running the trusts, we determined the professional affiliations of key trust personnel. At the 26 selected trusts, we identified a total of 255 different positions for trustees, TAC members, FCRs, trust counsel, TAC counsel, and FCR counsel. There were 122 different individuals filling these 255 positions, representing 83 different organizations. While the lists assembled for trustees, TAC members, and FCRs are fairly complete, the lists for trust counsel, TAC counsel, and FCR counsel are less complete because it is more difficult to obtain the information on who is serving in these capacities.

Table S.2 shows the organizations represented at more than five different trusts. Kazan, McClain, Abrams, Lyons, Greenwood and Harley is represented at more than half of the 26 trusts, and the other firms are represented at sizable percentages. These organizations tend to be represented at the larger trusts, which can be inferred by comparing the second and leftmost columns of Table S.2.[3] Seven of the nine firms listed are plaintiffs' attorney firms and are represented on the TACs. Campbell and Levine is trust counsel at multiple trusts, and Caplin and Drysdale is TAC counsel at multiple trusts. The involvement of all of these firms at a sizable share of the selected trusts reflects the leading role that these firms play in asbestos litigation or in the bankruptcy process and the creation of asbestos trusts.

**Limitations of Publicly Available Trust Data**

The publicly available information on asbestos bankruptcy trusts is a useful resource and provides an informative overview of trust practices and activity. However, it is limited in many important ways. Data on important variables, such as the number of claims filed, are incomplete, and information for the early years of the older trusts is not readily available. Data by disease level are uneven, with less than half of the selected 26 trusts breaking out information for malignant and nonmalignant claims. Only a few trusts report data by disease level beyond the malignant/nonmalignant breakdown. In addition, disease-level categories vary across trusts, adding to the challenges of comparing claim valuations and payments by disease level across trusts. Trusts do not follow a common set of accounting principles when preparing finan-

---

[3]   Specifically, the combined assets of the trusts at which a firm is represented as a percentage of total year-end 2008 assets of the selected trusts are larger than the percentage of trusts at which the organization is represented.

**Table S.2**
**Organizations Most Frequently Represented at the 26 Selected Trusts**

| Organization | Number of Trusts at Which Firm Was Represented | | 2008 Assets of Trusts at Which Firm Was Represented | |
|---|---|---|---|---|
| | Number | Percentage of Selected Trusts | Assets ($ billions) | Percentage of Assets of Selected Trusts |
| Kazan, McClain, Abrams, Lyons, Greenwood and Harley | 15 | 58 | 11.6 | 64 |
| Baron and Budd | 11 | 42 | 11.5 | 63 |
| Cooney and Conway | 11 | 42 | 13.3 | 73 |
| Weitz and Luxenberg | 11 | 42 | 13.4 | 74 |
| Motley Rice | 8 | 31 | 9.4 | 52 |
| Bergman Draper and Frockt | 6 | 23 | 5.5 | 30 |
| Campbell and Levine | 6 | 23 | 8.0 | 44 |
| Caplin and Drysdale | 6 | 23 | 10.4 | 57 |
| Goldberg Persky White | 6 | 23 | 10.3 | 57 |

cial statements, which makes it difficult to compare financial performance across trusts and develop measures of gross claimant compensation as a percentage of trust expenditures.

From the perspective of trying to understand the role of the trusts in the compensation for asbestos-related injuries, perhaps the most significant limitation of the publicly available data is the inability to link payments across trusts to the same individual. It is not possible to use trust-level data to determine the number of trusts providing payments to the same individual or the amount the trusts together pay to an individual claimant. This lack of information makes it difficult or perhaps impossible to evaluate the trusts' effect on the total compensation provided to individual claimants, as well as on the compensation paid by solvent defendants.

Information on individual settlements is very difficult to obtain from solvent defendants and from plaintiffs' attorneys as well. In the past, researchers have had success obtaining individual settlement data from a number of solvent defendants on a confidential basis (see, for example, Carroll, Hensler, et al., 2005). Researchers have likewise been able to obtain individual data from the Manville Personal Injury Settlement Trust in the past, although, in recent years, the Manville Trust has declined to make these data available for research purposes. Researchers have not been successful in obtaining individual asbestos compensation data from plaintiffs' attorneys.

The ability to understand the trusts' effect on overall claimant compensation and the compensation paid by solvent defendants will depend, to a large extent, on whether solvent defendants, trusts, and plaintiffs' attorneys are willing to release individual compensation information on a confidential basis for research purposes.

**A.1378**

# Acknowledgments

Many people made important contributions to this report. We would first like to thank Marc Scarcella at Bates White and Peter R. Kelso at Litigation Resolution Group for helping us access and interpret the publicly available data on the trusts that had already been collected by Bates White. We would also like to thank the 23 trusts that reviewed the information we assembled on their trusts for accuracy and completeness. The substantial time that many of them spent reviewing the data is much appreciated.

Insightful peer reviews were provided by James M. Anderson and Frank Camm at RAND. Helpful comments on the draft were provided by Charles E. Bates of Bates White; Melissa H. Brown of Georgia-Pacific; Stephen J. Carroll, recently retired from RAND; Deborah Greenspan of Dickstein Shapiro; Elihu Inselbuch of Caplin and Drysdale; Harold Kim of the U.S. Chamber of Commerce Institute for Legal Reform; John Kinney of the Hartford Financial Services Group; William M. Lynch of Liberty Mutual Group; Joseph J. O'Hara of Owens-Illinois; Thomas O'Kane of Munich Reinsurance America; and Paul D. Rheingold of Rheingold, Valet, Rheingold, Shkolnik and McCartney.

At RAND, we thank ICJ quality-assurance director Susan M. Gates for moving this document through the RAND quality-assurance process and for providing useful comments on the draft; James Dertouzos, ICJ director, for helpful advice during the course of the project; Steve Carroll for his help in scoping the project and for advice throughout the project; Lisa Bernard for skillful editing; Stephanie Lonsinger for manuscript-preparation assistance; and Fred Kipperman, ICJ associate director, and Jamie Morikawa, development director, for helping scope and secure funding for the project, as well as liaising with project sponsors.

A.1380

# Glossary

**524(g) trust.** See *asbestos personal-injury trust*.

**asbestos personal-injury claim.** Any claim or demand, whether against a debtor asbestos company or an asbestos personal-injury trust, that arises from harm or alleged harm due to direct or indirect exposure to asbestos or asbestos-containing products.

**asbestos personal-injury trust.** A trust established pursuant to Section 524(g) of the U.S. bankruptcy code to pay asbestos-related liabilities. The trust is established as part of a debtor's reorganization plan under Chapter 11 of the bankruptcy code.

**asbestosis.** A noncancerous lung disease caused by asbestos fibers.

**average value.** A monetary value that trusts use as a guide for payment amounts under a specific disease category. Over time, the combined payments offered under both expedited and individual review are expected to trend toward the average value for each disease category.

**bankruptcy date.** The date the debtor filed a petition for reorganization with the bankruptcy court under Chapter 11 of the bankruptcy code.

**channeling injunction.** An element of Section 524(g) of the bankruptcy code that shifts all asbestos-related liabilities to the newly formed asbestos personal-injury trust and bars suits against the reorganized debtor.

**claim administrator.** A company that asbestos trusts employ to manage claim processing in accordance with the standards of the trust distribution procedures. Some claim administrators process claims from several trusts.

**claim payment ratio.** A ratio that sets a limit on the percentage of the maximum annual payment that can be paid to claimants with malignancies and severe asbestosis and to claimants with less severe injuries.

**claim ratio.** See *claim payment ratio*.

**claimant.** The holder of an asbestos claim who either presently seeks or may in the future seek payment from the trust.

**company exposure.** A component of the exposure criteria for expedited review, company exposure requirements set the minimum time requirement for exposure to the debtor's job sites or asbestos-containing products.

**confirmation date.** The date the bankruptcy court confirmed the debtor's plan for reorganization in accordance with the provisions of Chapter 11 of the bankruptcy code.

**debtor.** The former asbestos-producing company that has sought bankruptcy reorganization and funded, in whole or in part, the asbestos personal-injury trust.

**diffusing capacity of the lung for carbon monoxide (test).** A pulmonary test to measure the amount of carbon monoxide absorbed by the lungs.

**exigent-hardship claim.** A claim classification defined by each trust that improves a settled claim's position in the payment queue. Many trusts limit exigent cases to the malignant diseases and severe asbestosis. Furthermore, trusts condition such claims on a claimant's immediate financial need that resulted from the claimant's asbestos-related disease.

**expedited review.** A claim-processing category available to claimants alleging certain diseases. Expedited review consists of submitting documentation on both medical and exposure criteria and is available only for disease classifications as described in the trust distribution procedures. Successful expedited review results in a fixed and certain payment in accordance with the procedures and scheduled values described in the trust distribution procedures.

**extraordinary claim.** Claim for which a claimant's asbestos-related exposure was predominantly the result of one specific debtor's products or manufacturing facility.

**first-in, first-out principle.** Claims are placed in the processing queue and the payment queue in the order in which they are received.

**forced expiratory volume in one second/forced vital capacity ratio.** A pulmonary test measuring the volume of air expired in the first second, expressed as a percentage of forced vital capacity.

**future claimants' representative.** A court-appointed representative who represents the interests of future claimants in matters of trust administration. Any changes made to the trust distribution procedures, including the payment percentage and the claim payment ratio, must receive approval from the future claimants' representative.

**indirect trust claim.** Claim filed against the trust by parties other than the asbestos claimholder (e.g., by a claim asserting a theory of contribution).

**individual review.** A claim-processing category that requires individualized review of a claimant's records to determine the extent of disease, its likely connection to asbestos exposure, and its corresponding payment amount. Some categories of disease may be compensated only through individual review (i.e., lung cancer without underlying asbestosis).

**International Labour Organization reading.** An interpretation of pulmonary x-rays using the International Labour Organization's International Classification of Radiographs of Pneumoconioses.

**interstitial fibrosis.** A scarring of the lung tissue.

**latency period.** The length of time between the date a claimant was first exposed to asbestos or asbestos-containing products and the date of medical diagnosis of asbestos-related disease or asbestos-related death.

**liquidated claim.** An asbestos claim, either in the tort system or processed through the trust, in which the monetary value of the claim has been fixed, though not necessarily paid to the claimant.

**maximum annual payment.** The annually determined upper limit to the amount of money the trust can pay to claimants in the aggregate for that year.

**mesothelioma.** A cancer of the mesothelium, a protective membrane that covers the internal organs. Mesothelioma is the most severe disease category recognized by asbestos trusts.

**occupational exposure.** Years on the job during which the claimant was exposed to asbestos.

**payment percentage.** A percentage applied to the value that a trust assigns to a claim to determine the amount that will be actually paid to the claimant. Payment percentages are initially set during the trust formation but may be changed with the consent of the trust advisory

committee and the future claimants' representative. Payment percentages are used as a means to preserve trust assets to pay future unknown claims.

**payment queue.** The order in which an asbestos personal-injury trust pays liquidated claims. The payment queue is governed by the first-in, first-out principle but subject to the maximum annual payment and the claim payment ratio.

**pleura.** A membrane that surrounds the lungs.

**pleural calcification.** A calcium buildup on the pleura.

**pleural disease.** Common name for a number of ailments of the pleura.

**pleural plaques.** A localized scarring of the pleura.

**pleural thickening.** Diffuse scarring of the pleura.

**pre- or post-petition claim.** A claim filed against a debtor company either before (prepetition) or after (post-petition) the debtor's filing for bankruptcy protection.

**prepackaged bankruptcy.** A bankruptcy reorganization plan that is negotiated *before* filing for bankruptcy protection.

**processing queue.** The order in which asbestos personal-injury claims, whether filed against the debtor or against the trust, are processed, reviewed, and assigned a liquidated settlement value.

**scheduled value.** The monetary value assigned to a claim through expedited review.

**significant occupational exposure.** An exposure criterion required for specific diseases. The standard definition provided in the trust distribution procedures is

> employment for a cumulative period of at least five (5) years with a minimum of two (2) years prior to December 31, 1982, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b), and/or (c). (Kaiser Aluminum and Chemical Corporation, 2007)

**trust advisory committee.** A court-appointed trust administrative committee that represents the interests of current claim-holders in matters of trust administration. Any changes made to the trust distribution procedures, including the payment percentage and the claim payment ratio, must receive approval from the trust advisory committee.

**trust distribution procedure.** The document that describes the process by which claims will be collected, reviewed, and paid.

## Abbreviations

| | |
|---|---|
| ADR | alternative dispute resolution |
| CT | computed tomography |
| FCR | future claimants' representative |
| FEV1 | forced expiratory volume in one second |
| FIFO | first-in, first-out |
| FVC | forced vital capacity |
| GAAP | generally accepted accounting principle |
| ILO | International Labour Organization |
| MAP | maximum annual payment |
| PI | personal injury |
| SEC | U.S. Securities and Exchange Commission |
| TA | trust agreement |
| TAC | trust advisory committee |
| TDP | trust distribution procedure |
| THAN | T. H. Agriculture and Nutrition |
| TLC | total lung capacity |

CHAPTER ONE
# Introduction

Over the past ten years, payments by asbestos personal-injury (PI) trusts have played an increasingly important role in the compensation of asbestos-related injuries. These trusts pay claims on behalf of companies that have filed for bankruptcy at least in part to resolve their asbestos liabilities. The trusts are created during the bankruptcy process and, once formed, become the only source of compensation from the bankrupt defendants for asbestos-related injuries. The formation of an asbestos PI trust bars parties alleging asbestos-related injuries from suing the bankrupt defendants in the tort system.

While the numbers of asbestos-related bankruptcies and resulting trusts have grown, information about the operating procedures and activities of these trusts is not readily available in a convenient form. Little research has been done on transaction costs, time to claim disposition, claimant satisfaction, and other metrics of trust performance. In addition, there is little analysis of how the trusts have affected the overall compensation that asbestos claimants receive and the trusts' effect on the asbestos liabilities of solvent defendants and their insurers.

This report provides an overview of asbestos PI trusts. It describes how they are created, how they are organized and governed, and how they operate. It also compiles publicly available information on the assets, outlays, claim-approval criteria, and governing boards of the leading trusts. This report does not attempt to evaluate trusts' performance or assess how they have affected the overall compensation of asbestos claimants. Rather, it is meant to provide a readily accessible source of information on asbestos trusts that will help interested parties better understand how trusts operate and their activities to date. This report is part of a larger research project on asbestos bankruptcy trusts. A second report will examine how trust compensation or the potential for such compensation is addressed by state liability laws and taken into consideration during court proceedings and settlement negotiations. In the remainder of this introductory chapter, we provide a brief overview of asbestos litigation and the rise of the trusts and an outline of the remainder of the report.

## Asbestos Litigation and the Rise of the Trusts

Asbestos is a naturally occurring fiber that was widely used in the United States in industrial products throughout much of the 20th century. Despite its usefulness as a basic material, asbestos is toxic and has been linked to several diseases, such as mesothelioma, lung cancer, and asbestosis. The combination of asbestos' toxicity and its widespread use in industrial products caused one of the major litigation episodes in U.S. history. In the 1960s, U.S. courts

**A.1388**

began to hear asbestos-related PI claims,[1] and the Fifth Circuit upheld the first successful suit in 1973.[2] The litigation subsequently exploded. A 2005 RAND report (Carroll, Hensler, et al., 2005) estimated that, through 2002, approximately 730,000 people had filed asbestos claims against at least 8,400 corporate defendants. These defendants included miners and manufacturers of asbestos or asbestos-containing products, purchasers of asbestos products, insurers, and businesses that used asbestos or asbestos-containing products in the course of their industry. Awards, legal fees, and other claim-related costs rose into the billions of dollars. Indeed, asbestos litigation became "the longest-running mass tort litigation in the United States" (Carroll, Hensler, et al., 2005, p. xvii).

Several factors contributed to the courts' difficulty in resolving the litigation: the widespread use of asbestos, which exposed as many as 27.5 million Americans to asbestos in the course of their employment (American Academy of Actuaries, 2007, p. 1); a long latency period for asbestos diseases; a segment of the plaintiffs' bar that sought to capitalize on the asbestos-litigation boom by seeking settlements for plaintiffs with no known diseases (Hensler et al., 1985; McGovern, 2002); and the failure of global settlements through class-action lawsuits.

Various reform efforts were introduced to try to better manage the resolution of the massive number of asbestos claims and to provide compensation for asbestos claimants. For example, beginning in 1977, proposals before Congress called for a federal trust fund that would oversee asbestos claimants' compensation.[3] These efforts encountered fierce political resistance and were ultimately unsuccessful despite endorsement from the Supreme Court.[4] Many state-level reforms were implemented. These include statutory medical criteria requirements that identify which asbestos-related injuries are actionable in a state tort suit, revisions to joint- and several-liability rules regarding the apportionment of monetary damages across multiple defendants, and inactive and expedited dockets.[5]

Despite the judicial remedies, legislative wrangling, and more than 40 years of lawsuits, asbestos claims continue to this day—albeit in an altered form. Whereas the asbestos compensation of the past predominantly involved submitting claims directly to defendants or filing tort claims in court, the current asbestos landscape is set jointly in the tort system and in an extrajudicial trust system.

The trust system was created as the by-product of asbestos bankruptcies. Major asbestos defendants faced crushing and often-unpredictable liabilities for the harms caused by asbestos. Bankruptcy was one option for coping with these liabilities because it grants a bankrupt defen-

---

[1]  See, e.g., *Tomplait v. Combustion Eng'g, Inc.*, No. C.A. 5402 (E.D. Tex. 1967); *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir. 1973) at 1104 (indicating that the initial suit was filed in 1969). The first suits filed against Johns-Manville, however, came as early as the 1930s but were ultimately settled (Macchiarola, 1996, p. 592).

[2]  *Borel v. Fibreboard*, 493 F.2d 1076 (5th Cir. 1973).

[3]  H.R. 8689 (1977).

[4]  *Amchem Prods. v. Windsor* (521 U.S. 591, 1997) (Ginsburg, at 628–629: "the argument is sensibly made that a nationwide administrative claims processing regime would provide the most secure, fair, and efficient means of compensating victims of asbestos exposure"). See also *Ortiz v. Fibreboard Corp.* (527 U.S. 815, 1999).

[5]  An inactive docket, sometimes called a pleural registry, is an administrative procedure by which the claims of plaintiffs who were exposed to asbestos but who do not yet show signs of injury are held until symptoms of disease appear. The procedure helps prevent court dockets from becoming clogged with unimpaired asbestos claims while preserving the plaintiffs' right to sue without fear of running into a statute of limitations. An expedited docket, on the other hand, fast-tracks the judicial process for asbestos victims who have the most-severe claims. For more, see Carroll, Hensler, et al. (2005, pp. 26–28).

dant (also known as the debtor) an injunction against civil lawsuits. For asbestos bankruptcies, that means that parties alleging injury due to asbestos exposure are barred from suing the companies that were the major producers of asbestos and asbestos-containing products.

Bankruptcy protection thus changed the tenor and tone of asbestos litigation by barring suits against bankrupt defendants. In 1982, the Johns-Manville Corporation filed one of the first asbestos-related bankruptcy petitions, and, in 1987, the Manville Personal Injury Settlement Trust was the first asbestos bankruptcy trust established.[6] Since then, there has been a dramatic surge in the number of asbestos manufacturers seeking bankruptcy protection. In fact, "nearly all of the major manufacturers" have declared bankruptcy (American Academy of Actuaries, 2007, p. 5). Because the major asbestos manufacturers are protected from lawsuits, plaintiffs are left with "peripheral" companies: those that played less prominent roles in asbestos production and use (e.g., companies that may have asbestos "encapsulated in their products or [companies] having asbestos on their premises") (American Academy of Actuaries, 2007, p. 7; see also Bates, Mullin, and Marquardt, 2009).

Asbestos bankruptcy trusts are established under Section 524(g) of Chapter 11 of the bankruptcy code[7] and exist for the sole purpose of compensating asbestos claimants who are either currently ill or may develop diseases in the future. The goal is to treat current claims and future demands in substantially the same manner by managing a trust fund paid for by the bankrupt asbestos defendant.

In general, the trust system works in the following way. A company facing asbestos liabilities petitions the bankruptcy court for bankruptcy protection and reorganization. All lawsuits against the company are immediately halted. After negotiations with the company's creditors—including asbestos plaintiffs' lawyers—the company submits a plan of reorganization to the court. Among other details, the plan establishes and funds an independent asbestos PI trust. The trust will use the debtor's assets to collect, process, and pay all of the valid asbestos PI claims. Individuals suffering asbestos-related injuries may file claims with any and all trusts. If the claimant meets exposure requirements relating to a trust's debtors' products, as well as medical criteria, the trust will pay compensation to the claimant. In return for funding the trusts, the reorganized company is shielded against all current and future asbestos-related liability. Asbestos PI trusts are now "answering for the liability of many of the most culpable companies" (Shelley, Cohn, and Arnold, 2008, p. 258).

## Organization of This Report

In Chapter Two, we describe the trust mechanism: its historical formation, codification in bankruptcy law, and purpose in response to the asbestos-litigation boom. Chapter Three discusses the internal working structures of the trusts by identifying key players, governing processes, and common elements of trust administration, such as the trust distribution procedures (TDPs), which are used to guide claim processing.

In Chapter Four, we provide a descriptive overview of bankruptcy trusts, including trends in the number of trusts, claim payments, and assets. We also report the target average payment

---

[6]   *In re Johns-Manville Corp.* (68 B.R. 618, Bankr. S.D.N.Y. 1986; decision affirmed in part, reversed in part, 78 B.R. 407, S.D.N.Y. 1987; order affirmed, 843 F.2d 636, 2d Cir. 1988).

[7]   11 U.S.C. § 524(g).

per claim by disease category, the breakdown of payments between malignant and nonmalignant claims, and initial estimates of trust transaction costs. Concluding observations in Chapter Five are followed by appendixes presenting detailed information on the trusts. Appendix A lists companies that have filed for bankruptcy with at least some asbestos liability and the trusts that have been consequently established. Appendix B presents detailed information on each of the 26 largest active trusts and the three largest proposed trusts.

CHAPTER TWO

# History of and Statutory Framework for Asbestos Bankruptcy Trusts

This chapter provides an overview of the development of asbestos PI trusts. The discussion begins with a brief case history of the first trust, the Manville Trust, and follows up with the codification of the trust mechanism in bankruptcy law.

## The Johns-Manville Corporation Bankruptcy and the First Asbestos Personal-Injury Trust

In the wake of an "avalanche" of litigation,[1] the major asbestos manufacturers quickly discovered that their liabilities were escalating, unpredictable, and, therefore, unmanageable.[2] Many of these businesses sought reorganization of their debts through bankruptcy. Chapter 11 of the bankruptcy code allows indebted companies to continue operations while paying debtors over an extended period of time (as opposed to a liquidation of all business assets and the shuttering of the company under Chapter 7 rules). The choice to undergo bankruptcy reorganization is "a difficult one for corporations" (Carroll, Hensler, et al., 2005, p. 109). Yet, bankruptcy is "the only generally recognized legal vehicle that is currently available for imposing finality on a defendant's asbestos liability" (McGovern, 2002, p. 1756). Given the challenges posed by asbestos liability and the difficulty of protecting future claimants in particular, reorganization is an attractive option, at least for some parties (see Mabey and Zisser, 1995).

One of the first companies to petition for reorganization was the Johns-Manville Corporation—at the time, the largest producer of asbestos-containing products and a leading defendant in asbestos lawsuits (Carroll, Hensler, et al., 2005, p. 110). Johns-Manville petitioned for Chapter 11 reorganization in 1982. Six years later, it emerged from bankruptcy, having shifted its asbestos liabilities to a new entity known as the Manville Personal Injury Settlement Trust.[3] This use of bankruptcy protection to shed asbestos liability was, as one author put it, "a radical new use of bankruptcy law" (Macchiarola, 1996, p. 583).

The creation of the trust was a novel approach to managing the company's asbestos liabilities. The arrangement was straightforward. The new Johns-Manville's financial assets, including a majority stake in the company's common-stock and product-liability insurance payouts on insurance policies it had purchased, were transferred to the trust. The combined value was

---

[1]  *In re Combustion Eng'g., Inc.* (391 F.3d 190, 200, 3d Cir., 2004).

[2]  The toxicity of asbestos and the long latency period for asbestos-related diseases combined to create an unmanageable future liability risk. For more, see Carroll, Hensler, et al. (2005).

[3]  *In re Johns-Manville Corp.* (1988).

estimated at $2.5 billion when the trust was established (see Chapter Four). In return, the trust was responsible for processing and paying Johns-Manville's asbestos PI claims. The newly reorganized successor known as Manville Corporation was shielded from all future asbestos liability. This liability shield, known as a *channeling injunction*, barred all future asbestos claimants from suing Manville. All demands had to be filed with the trust, which would manage the funds for the sole benefit of the claimants.

Initially, the Manville Trust was set up to pay claimants 100 percent of the settlement value of their claims (i.e., what the claims would have received, on average, in the tort system). These claims would be paid according to a first-in, first-out (FIFO) rule, paying each claimant based on the date his or her claim was filed. During the bankruptcy negotiations, the trust was expected to settle 83,000–100,000 claims (Issacharoff, 2002, p. 1932; see also Manville Personal Injury Settlement Trust, 1996), and, at one point, the trust expected claim values to average about $25,000 (Macchiarola, 1996, p. 603).

The estimates were too optimistic, and a wave of litigation impleading the trust demonstrated the inadequacy of the first attempt (see Peterson, 1990). These new claims were, in part, the product of mass screenings conducted by plaintiffs' law firms (Hensler et al., 1985). On the other front, fearing that the money currently held in the trust would run out, current claimants awaiting payment sued the trust.[4] Current claimants rushed to recover what they could, motivated by fears that an unfavorable position in the FIFO queue and the onslaught of new claims jeopardized the chance of recovery.[5]

By 1992, "more than 190,000 claimants were seeking compensation from the trust" (Manville Personal Injury Settlement Trust, 1996).[6] Swamped by claimants, the trust was insolvent just a few years after it was created.

A 1995 settlement revised the claim-processing procedures contained in the original plan of reorganization, as well as restructured the financial arrangement with Manville. The settlement corrected some critical oversights in the previous arrangement. First, it established a new compensation plan that gave priority to the most-seriously ill. Second, it established processes for resolving disputes between claimants and the trust. These guidelines sought to prevent the flood of litigation by disgruntled claimants, which had quickly exhausted trust assets and triggered the need for new procedures. Third, the new settlement created an administrative role for a future claimants' representative (FCR), whose duty it was to protect the interests of claimants who had not yet filed with the trust.[7]

These new elements were not merely patches on a dysfunctional trust. They would have lasting significance for all future asbestos PI trusts and broad ramifications for public policy regarding the compensation of asbestos claimants. The revisions reaffirmed the policy goal that the sickest claimants should receive the highest compensation (both individually and in the aggregate). This reaffirmation stood in sharp relief to a litigation history in which claims for nonmalignant diseases dwarfed the number of claims for malignant cancers (see Carroll,

---

[4]   A provision in the trust plan allowed the trust to put claims for which litigation was pending in the front of the claim-processing queue.

[5]   *In re Joint E. & S. Dist. Asbestos Litig.* (129 B.R. 710, 758, Bankr. E. & S.D.N.Y., 1991).

[6]   Illustrating how optimistic the original estimates were, as of September 30, 2009, the trust had received 817,264 claims and had already paid $3.9 billion (Manville Personal Injury Trust Settlement, 1996).

[7]   *In re Joint E. & S. Dists. Asbestos Litig. v. Falise* (878 F. Supp. 473, E. & S.D.N.Y., 1995).

Hensler, et al., 2005, p. 75). It also foreshadowed the establishment of disease levels, corresponding payment schedules, and claim payment ratios.[8] Each of these is discussed in more detail in Chapter Three.

Furthermore, the appointment of an FCR signaled that the court recognized an inherent tension between different classes of claimants. In the court's own words, "The goal of the Plan and the purpose of the [channeling] Injunction is to preserve the rights and remedies of those parties who by accident of their disease cannot even speak in their own interest."[9] Those future claimants who were not yet aware of their diseases could not be shut out of potential recovery by claimants whose diseases were already manifest. Failure to protect the future claimants' rights to recover from the trust would have closed off all avenues to recovery (since the channeling injunction closes the door to the tort system).

## The Codification of Asbestos Personal-Injury Trusts in Bankruptcy Law

Although the first iteration of the Manville trust had its operational difficulties, Congress granted its imprimatur to the "creative solution"[10] when it amended Section 524 of the bankruptcy code in 1994.[11] The new rules essentially borrow the Manville solution, including the post hoc revisions. The 1994 amendments allow companies that face crushing asbestos liabilities to fund a trust that pays all of the debtor's asbestos claims in exchange for a channeling injunction forever shielding the debtor from asbestos tort actions.[12]

Not all asbestos-related bankruptcies result in the creation of a trust,[13] but, for those companies that want to establish a trust in exchange for the valuable channeling injunction, statutory criteria have been established that govern the confirmation of an asbestos trust. Seven conditions, in addition to the standard bankruptcy requirements under Section 1129 of the bankruptcy code, must be met prior to a bankruptcy court approving a 524(g) trust and the issuance of the valuable channeling injunction as part of Chapter 11 reorganization:

---

[8]   Disease levels are classifications of different types of illnesses (e.g., mesothelioma, asbestosis, lung cancer). Each disease level is assigned a monetary value, called the *scheduled value*, which a trust will offer if the claimant elects for an expedited (nonindividualized) claim review process. Scheduled values generally correspond to the severity of the disease, with mesothelioma, the most-severe condition, assigned the highest scheduled value. Claim payment ratios are guidelines that the trusts use when allocating annual payments. For example, a 60-40 claim payment ratio might indicate that mesothelioma and lung-cancer claimants will get at least 60 percent, by value, of the payments for the year. The claim payment ratio is used to ensure that the most-severely ill claimants receive the majority of the annual compensation.

[9]   *In re Johns-Manville Corp.* (68 B.R. 618, 627, 1986).

[10]   H.R. Rep. 103-835 at 40 (1994).

[11]   The provision was part of the Bankruptcy Reform Act of 1994 (Pub. L. 103-393, § 111), and the key provisions are contained in 11 U.S.C. 524(g)(1) et seq.

[12]   Section 524(g) also allows bankruptcy judges to issue injunctions for third-party "nondebtors" that contribute funds or assets to the trust. Issues surrounding the nondebtor release clause are timely but beyond the scope of the present study. See, e.g., Silverstein (2009).

[13]   It is possible, for example, that a company will go into liquidation under Chapter 7 rather than seek reorganization under Chapter 11. In such a case, the company effectively shuts down. The 524(g) mechanism, on the other hand, allows the company to continue creating its nonasbestos products. For a discussion of whether 524(g) requires the debtor to engage in "substantial" business activities post-confirmation, see Esserman and Parsons (2006).

1. There is a trust for present and future asbestos claims.
2. The trust is funded by securities or debt from the debtor.
3. The trust owns a majority of the voting stock of the debtor, of the parent company of the debtor, or of a subsidiary of the debtor.
4. The trust will pay present and future asbestos claims against the debtor.
5. The present and future claims are valued and paid in substantially the same manner.
6. The plan is approved by a 75-percent vote of current claimants in number and by two-thirds of the voting claims in terms of claim value.
7. An FCR is appointed (McGovern, 2002, p. 1754).

The first three conditions concern trust creation and funding. Importantly, Section 524(g) does not allow a debtor to inject money into a trust and walk away. Instead, the trust is entitled to a majority of the voting stock of the reorganized company. The result is a confluence of interest between debtor and trust: "Because the trust is funded in part with the stock of the reorganizing debtor, the trust/injunction combination aligns the future claimants' desire for payment with the company's desire to survive as an ongoing entity" (Effross, 1994). This does not interfere with the independence of the trust. The debtor has no controlling interest in the trust's activities.

The assets transferred to the trust may consist wholly of the debtor's, the debtor's parent company's, or the debtor's subsidiary's common stock or may be a portfolio of assets, such as stock, cash, and insurance policies (or the rights to settlements therefrom). The funding may come as one large lump sum or, more commonly, be disbursed over a number of years according to a prenegotiated schedule. The trust reports included in Appendix B contain information about the funding sources of the leading trusts.

The fourth through seventh conditions primarily concern the claimants, their interests, and the mechanisms by which those interests are expressed. The fourth condition is the effect of the channeling injunction: The trust becomes the sole venue for claiming against the debtor. This channeling injunction applies to both current and future claimants.

Per the fifth requirement, those claimants must be treated in a substantially similar manner. To satisfy this requirement, trusts use a matrix of diseases and corresponding monetary values assigned to those diseases to help ensure that similarly situated claimants receive equitable treatment. In most cases, a claimant who meets established medical criteria would be paid an amount equal to all similarly situated claimants.[14]

Condition 6 states that 75 percent of current claimants in number and two-thirds of the claimants by value of the claims must approve the bankruptcy reorganization plan prior to creation of a 524(g) trust. Current claimants for this purpose are plaintiffs who filed asbestos PI claims against the debtor. In practice, this precondition is accomplished by garnering support from lawyers who represent a sufficient number of claimants to reach these threshold values.[15] Note, however, that these voting thresholds count only current claimants. Neither

---

[14] According to 11 U.S.C. 524(g)(2)(b)(ii)(V), the trust must process claims "through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms."

[15] The process by which trust reorganization plans are approved has been criticized, and reorganization plans that have been negotiated in advance of filing a petition (known as *prepackaged bankruptcies*) have particularly been lambasted as providing too few protections to the creditors. See, e.g., Parloff (2004) and Plevin, Ebert, and Epley (2003).

future claimants, for whom the trusts ostensibly are created, nor the FCR is included in the voting class (see generally Brown, 2008). Future claimants, by statute, are considered to hold future demands against the trust. Demands, as opposed to claims, do not trigger a right to vote whether to confirm a plan of reorganization (Mabey and Zisser, 1995, p. 502).

## Strategies for Gaining Support for a Bankruptcy Plan

Debtor companies in bankruptcy, whether or not they face asbestos-related liabilities, have used two different approaches for garnering the necessary creditors' approval for a plan of reorganization and ultimate certification by the bankruptcy court. Under the most-common approach, sometimes called a *freefall bankruptcy*, a debtor files for bankruptcy protection and engages in a lengthy process of negotiations with creditors. After a petition for bankruptcy protection is filed with the court, all parties with a claim against the debtor, including the (often large number of) asbestos claimants, are entitled to participate in negotiations and to vote on the plan of reorganization.[16] In a freefall bankruptcy, the filing of the bankruptcy is the formal trigger of negotiations between debtor and creditor. For asbestos bankruptcies in this process, an FCR must be appointed by the court to ensure that attention is paid to equity between current and future claimants.

The second method, known as a *prepackaged* or *prepack bankruptcy*, takes a "streamlined" approach by negotiating a plan of reorganization *before* filing for bankruptcy protection (Barliant, Karcazes, and Sherry, 2004). Under the prepackaged approach, the debtor does the negotiating legwork before filing with the bankruptcy court, delivering to the judge a plan of reorganization that satisfies the voting requirements of Section 524(g) as well as other Chapter 11 requirements. This approach allows the debtor considerably more flexibility in plan negotiations because they take place behind closed doors on an individual basis. These negotiations may still last for years, however, and creditors can still object once a plan is filed. Importantly, a prepack asbestos bankruptcy does not trigger the need for a court-appointed FCR until the formal petition is filed with the court.

Some researchers have claimed that prepack bankruptcies have allowed debtors to attempt to manipulate the pool of voting claimants by settling some claims through prepetition trusts[17] and by making settlement of these claims contingent upon an affirmative vote for reorganization (Barliant, Karcazes, and Sherry, 2004, p. 458). Other researchers have dismissed concern over debtors acting "in cahoots with" dominant asbestos lawyers with vast portfolios of asbestos claims against the interests of other creditors or of the debtors' co-defendants in asbestos cases (see, e.g., Snyder and Siemer, 2005, p. 803; Green et al., 2007–2008).

The first such prepackaged bankruptcy was approved in the bankruptcy trial of the Fuller Austin Insulation Company. In that case, the time from filing to confirmation was a mere 70 days,[18] far shorter than the nearly four-year average for all bankruptcies with asbestos-

---

[16] The debtor's product-liability insurers typically are not successful in convincing the bankruptcy judge to grant them standing in the case. Parties that were co-defendants with the debtor on asbestos claims before it filed for bankruptcy are in a similar situation.

[17] A prepetition trust is a fund established to pay settlements that were liquidated prior to the debtor's bankruptcy filing.

[18] Voluntary Chapter 11 petition, *In re Fuller-Austin Insulation* (1998 U.S. Dist. LEXIS 23567, at 1, Bankr. D. Del, November 10, 1998).

related liabilities (see Chapter Four). Other prepack asbestos bankruptcies include Combustion Engineering, T. H. Agriculture and Nutrition (THAN), and J. T. Thorpe and Son Inc.

Prepackaged bankruptcies are common in corporate bankruptcy cases (Ehrenfeld, 2003, p. 634). Yet, the special considerations of asbestos bankruptcies (including the special concern for future claimants) have raised questions about whether prepackaged asbestos bankruptcies serve all claimants' interests equitably. A former bankruptcy court judge and his co-authors have derided the prepackaged approach because "procedural and substantive requirements of the Bankruptcy Code [have] been sacrificed in the haste" (Barliant, Karcazes, and Sherry, 2004, p. 446).

For example, the Third Circuit vacated a confirmation order, tossing out Combustion Engineering's reorganization plan.[19] In that case, the bankruptcy negotiations resulted in special payments to numerous prepetition asbestos claimants such that they were paid a settlement that covered the majority of the claim but retained a "stub claim" that entitled them to vote on the plan of reorganization. This "artificial impairment" for voting purposes did not provide adequate assurance that the plan was equitably treating current post-petition and future claimants. The potential manipulation of voting rules, rather than the protection of all claimants' rights to an equitable recovery, led the Third Circuit to vacate the confirmation and remand the case for further consideration.

Once a bankruptcy plan satisfies the requirements of Section 1129 and Section 524(g) and is certified by the bankruptcy court and approved by the district court, a permanent litigation ban known as a *channeling injunction* is put in place, barring all civil suits against the debtor. A new asbestos bankruptcy trust will then soon be established, and the newly reorganized company will emerge from bankruptcy and resume business operations.

---

[19] *In re Combustion Engineering* (391 F.3d 190, 248–249, 2004).

CHAPTER THREE

# Trust Governance, Administration, and Procedures for Compensating Claimants

Pursuant to Section 524(g) of the bankruptcy code, asbestos PI trusts must establish an organizational structure and operating procedures that meet statutorily defined standards. To this end, trust administrative functions, the amount of compensation claimants may receive, and the processes that determine compensation are established for each trust prior to confirmation of the bankruptcy reorganization plan.[1] These determinations are contained in two core documents: the asbestos trust agreement (TA) and the TDP. The TA formally establishes the trust and details the authorities of its administrative officers, and the TDP describes the process by which claims will be collected, reviewed, and paid.

Although each asbestos bankruptcy is different, and although asbestos trusts have evolved over the years (McGovern, 2006), there is a great deal of similarity across asbestos trusts in terms of organization, structure, and purpose (as reported in the TA and the TDP). For example, all trusts exist for the sole purpose of assuming a debtor's asbestos-related liabilities and, by law, must use the assets held in trust to treat current and future PI claimants equitably. In addition, the newer trusts have nearly identical criteria and governing structures. This similarity may be the product of repeat players in the asbestos bankruptcies: a small group of asbestos plaintiffs' attorneys representing a large number of claims, defense firms with expertise representing asbestos debtors, and insurance counsel representing companies that insured several asbestos defendants.

This section reviews the general provisions of the TAs and uses the elements of the TDPs to describe how claims are filed, evaluated, and paid. It should not be assumed that this process is the same for all trusts; rather, this chapter describes common practices and notes important exceptions. Here, we present information about the internal functions. The discussion of TAs outlines the purpose of the trust institution, introduces the key stakeholders and administrators, defines their relationships with one another, and specifies what information about the trust will be provided to the bankruptcy court and the public. The walk-through of TDPs is intended to reveal the nuts and bolts about claim processing and payment.

## Asbestos Trust Agreements and Key Actors in Trust Administration

TAs constitute the founding document of the asbestos PI trust. The contents, though now fairly standardized, are negotiated prior to confirmation of the bankruptcy reorganization plan and certified by the bankruptcy court. At minimum, a TA will contain an agreement of trust

---

[1]  These elements are not static, however. They can be amended post-confirmation through procedures listed in the TA.

(which will state the trust's purpose, acknowledge the transfer and acceptance of assets, and assume the debtor's liabilities), and a description of the key actors in the trust's administration. These elements are described in this section.

## Agreement of Trust

The agreement-of-trust provisions formally establish and name the trust. For all asbestos PI trusts, the purpose of the trust is to assume liability under the plan of reorganization, to pay valid claimholders pursuant to the TDP (described later in this chapter), and to otherwise meet the legal conditions of a 524(g) trust (described in Chapter Two). The debtor company is then obligated to transfer the agreed-upon assets to the trust. Once the assets are transferred, the trust is authorized to accept the assets in exchange for acceptance of all asbestos liability and all legal defenses that would be available to the debtor. In other words, the trust contractually accepts the funds and willingly stands in place of the debtor for legal liability, insurance (as a beneficiary of the debtor's insurance policies), and indemnity purposes.

## Key Actors in Trust Administration

**Trustees.** Following the acceptance of assets and liabilities, the TAs outline the powers of the trustees who manage the daily operations of the trust. The bankruptcy court approves the trustees. Thus far, trusts have had from one to six trustees, although, in theory, there is no limit to the potential number of trustees. When a trust has several trustees, one is designated as the managing trustee. Service as a trustee for one trust does not preclude concurrent service to other trusts.

The trustees function as the executive officers of the trust and are assigned a slate of management responsibilities, including the following:

1. Manage the investments of the trust, including the exercise of all voting rights with respect to the trust's majority stake in the reorganized debtor.
2. Hire and supervise a support staff and outside advisers to assist with legal, financial, accounting, claim processing, and other professional matters.
3. File tax[2] and other returns, including required annual reports to the bankruptcy court.
4. Stand in the debtor's place as plaintiff or respondent, including filing suit for recovery from the debtor's insurance carriers.

Most often, the TAs outline the managerial responsibilities in very general terms. On occasion, the instructions to the trustees are more specific; this level of detail is reserved for guidance in managing the trust's assets. Such guidance ranges from delegated judiciousness[3] to prescriptions regarding the type of asset classes in which the trust may invest and the portfolio allocation that may be employed.[4]

---

[2]  For tax purposes, the trusts are considered "qualified settlement funds" as described in Section 1.468B-1 et seq. of the Treasury regulations and the Internal Revenue code.

[3]  For the H. K. Porter Company (1998, p. 9), the TA instructs trustees to invest monies "in the manner in which individuals of ordinary prudence, discretion and judgment would act in the management of their own affairs."

[4]  For example, the C. E. Thurston and Sons Asbestos Trust includes a proscription on long-term debt securities rated lower than BBB by Standard and Poor's (C. E. Thurston and Sons, undated, p. 10).

Trustees are compensated from the trust assets. Not all TAs specify the level of compensation; some agreements leave the compensation amount to the trust advisory committee (TAC) and FCR to decide. Some agreements specify an hourly rate—$500 per hour is common. Others set annual compensation—for example, $60,000–$75,000 per annum plus hourly compensation for travel and attendance at meetings.[5] Trustee compensation is reported annually to the bankruptcy court, the TAC, and the FCR.

Additional oversight of general trust activity is provided through regular reporting to the bankruptcy court. Required court filings include an annual report with the trust's balance sheet and a summary of the number and type of claims the trust disposed over the previous year. These documents are available for public review and constitute the raw data for the trust reports in Appendix B.

Support staff and trust overhead expenses are also paid from the trust assets. Operating costs vary widely, depending on the size of the trust, the number of claims it processes, the extent of legal engagement with third parties (such as insurers), and the like. An analysis of costs is provided in Chapter Four.

**TAC Members and the FCR.** The trustees manage the asbestos trust for the sole benefit of the claimant beneficiaries. Although trusts often have hundreds of thousands of beneficiaries, the trustees are not under the influence and control of hundreds of thousands of claimants. Instead, a committee of advocates represents the claimants' interests. This oversight comes via the TAC and the FCR. These advisers, as described later in this chapter, provide advice and must consent to significant changes in trust administration and the implementation of TDPs.

Claimant beneficiaries come in two varieties. Current claimants have submitted applications for compensation based on diseases that are presently manifested. Future claimants have not yet filed with the trust. This latter group includes individuals with current diseases who have not yet submitted a demand to the trust and individuals who do not yet have symptoms of asbestos-related diseases.

The interests of current and future claimants are often divergent: "Although the current and future claimants are allied in seeking the largest amount possible for all asbestos personal injury plaintiffs, they may have differences in how that amount should be divided" (McGovern, 2006, p. 164). Current claimants seek speedy payment at a claim's full value. Future claimants, on the other hand, do not yet exist or are unknown to the trust. From the future claimants' perspective, the highest priority is preservation of the trust's assets until future claimants apply for compensation. In practical terms, future claimants often want to withhold payments from current claimants or apply a discount to a current claim's value to enable the pool of money to last for many years (recall the Manville Trust's initial problems: No provisions were made to reserve a portion of the trust's assets to pay future claims, pushing the trust into insolvency).

To ensure that both current and future claimants' interests are adequately protected, the role of the claimants' representative and the related fiduciary duty was split between the TAC and the FCR. Although the TAC often consists of many representatives while the FCR is a solitary delegate, the TAC and FCR have equal authority. The consent of both the FCR and

---

[5]   The J. T. Thorpe Settlement Trust has set annual compensation at $15,000 for a nonmanaging trustee plus an hourly adjustment for travel and time spent in preparation for and attendance at meetings. This compensation level is particularly low and bears special notice. The managing trustee's compensation is not reported in the most-current TA (J. T. Thorpe Settlement Trust).

the TAC is required before undertaking substantial trust activities (such as selection of a new trustee or revising the TDP or TA).

The FCR position (sometimes called the *legal representative*) is statutorily required under Section 524(g) of the bankruptcy code. Section 524(g)(4)(B)(i) states that the channeling injunction may be granted only if, as part of the proceedings, "the court appoints a legal representative for the purpose of protecting the rights of persons that might subsequently assert demands" against the trust.[6] Perhaps because the FCR position is a statutory requirement, the TAs do not always address the FCR's duties.[7] For those that do mention the FCR, the discussion tends to be perfunctory and generally limited to compensation. Commonly, the FCR is remunerated at $600 per hour, or a "reasonable hourly rate set by the PI trustees" that sometimes requires consent of the TAC. The duration of the FCR's term of office varies from trust to trust, as do the procedures for replacing an FCR. Service as FCR for one trust does not preclude concurrent service to other trusts.

The TAC's role arises from the prebankruptcy confirmation negotiations between the plaintiffs' attorneys, the creditor committees, and the debtor. TAC roles are always established in the TA. Often, the TAC includes representatives of the plaintiffs' law firms with the largest number of claimants. Service as a TAC member for one trust does not preclude concurrent service to other trusts.

The TAs commonly set TAC member compensation. Usually, the rate falls in the range of $450–$500 per hour or a "reasonable hourly rate set by the PI trustees." The duration of the TAC members' term of office varies from trust to trust, as do procedures for replacing TAC members.

Both the TAC and FCR have the right to employ, at the trust's expense, independent counsel or advisers (in pursuit, for example, of accurate estimates of likely future claims). More importantly, the TAC and FCR must give consent before any changes are made to the TA or the TDP, including the claim payment ratio, the disease levels, and the payment percentage. If disagreements arise that cannot be resolved through internal dispute-resolution mechanisms, recourse reverts to the bankruptcy court.

## Claim-Processing Procedures

The processes that govern claim filing and payment are contained in the trusts' TDPs. TDPs (sometimes called *claim-resolution procedures*) are central to reviewing, liquidating (i.e., establishing a monetary value for a claim), and paying asbestos claims. TDPs establish procedures that aim to ensure that all claimants receive fair, equitable, and substantially similar treatment.

---

[6]   In the course of our research, two perspectives arose regarding the role of the FCR. One perspective, expressed by a TAC representative, seemed to suggest that the FCR was required only during the confirmation process for the plan of reorganization. Indeed, there is no statutory requirement for an FCR once a plan has been confirmed; however, all trusts currently in existence have provisions for a continuing role for the FCR.

A second perspective holds that the FCR's fiduciary duty extends not only to future claims by asbestos victims but also to holders of indirect PI claims. Indirect claims are those held by entities that have paid claims on behalf of the trust. Indirect claimants are seeking contribution from the trust as reimbursement for those payments. The statutory language about "persons [who] might subsequently assert demands" against the trust does not specify whether the FCR represents the interests of these claimholders.

[7]   For example, see the H. K. Porter Company (1998) asbestos TA.

They coordinate claim processing, assign liquidated values for various diseases, set medical criteria for the different diseases, prescribe review procedures that will be followed by the claim-processing facility, and establish an alternative dispute resolution (ADR) process to resolve disputes between the claimant and the trust.

In this section, we outline the general process through which a claim is filed, evaluated, assigned a monetary value, and paid to a claimant. In doing so, we describe the devices and procedures as outlined in the TDPs. The description in this section is intended to be a generalization based on similarities in many trusts' TDPs. The process may differ for specific trusts.

**Stage 1: Claim Filing and Selection of Claim Review Method**

The first stage of a PI claim against an asbestos trust involves a claimant with an asbestos-related disease identifying the trust or trusts against which to file a claim (see Figure 3.1). A claimant's work history determines the trusts to which a claim may be submitted. In theory, a claimant can recover money from a trust only if the claimant was exposed to asbestos that was produced, manufactured, or used by the trust's debtor company. For example, a claimant who worked with products manufactured by Johns-Manville would file a single claim with the Manville Trust. However, a claimant who used products made by Johns-Manville, Kaiser, U.S. Gypsum, and J. T. Thorpe, would likely file with each of those debtors' trusts. Section 524(g) of the bankruptcy code does not set a numerical limit on the number of trusts against which a claimant may file; nor is there a monetary cap on the amount a claimant may recover in the aggregate from the trusts. Trust claimants can and frequently do file claims with, and collect money from, multiple trusts. Claimants may also recover from solvent defendants through the tort system.

Once the appropriate trusts are identified, the claimant selects the method of review to be used in processing the claim. Almost all trusts have two main methods of review: expedited review and individual review. With some important exceptions, discussed later in this chapter, a claimant may choose either method.

The expedited-review procedure seeks to pay claims quickly at a fixed value. Different diseases (such as mesothelioma and asbestosis) are valued differently, with the more-severe diseases valued more highly. The claimant knows the payment amount, known as the *scheduled value*, in advance; scheduled values are published in the TDPs. To determine whether a claimant qualifies for the quick, fixed payment available through expedited review, the trusts use a preestablished set of criteria for medical evidence and work history; these criteria are also published in the TDPs. Trusts will presume that claims supported by sufficient evidence documenting the medical diagnosis and work history are valid. Hence, a claimant selecting expedited review gathers the requisite evidence and sends all supporting documentation to the claim-processing facility for review.

As an alternative to expedited review, individual review gives claimants with certain diseases the opportunity to receive individual consideration of their specific medical condition and work history in hopes of justifying a higher payment. Individual review is mandatory in cases in which the claimant cannot meet the medical or exposure criteria under the expedited-review process. Furthermore, for certain medical conditions (such as lung cancer in a claimant who is a smoker), individual review is required.

Under individual review, there are no presumptively valid claims, and the time it takes to process an individual case may be considerably longer than under expedited review. Individual-review claims do not have a fixed scheduled value. Each claim is liquidated based on the indi-

**Figure 3.1**
**Schematic of Claim Payment Process**



vidual circumstances. The liquidated value may or may not be greater than the scheduled value for a similar disease.

Because individual review is designed to take individual circumstances into account, an individual-review claim is likely supported by more-substantial medical evidence and a more-detailed work history than for expedited review. This supporting material is forwarded to the claim-processing facility and awaits review.

**Stage 2: Claim Review**

Upon receipt of all claim documents, the claim-processing facility begins the review process according to the method selected by the claimant. To begin this process, the facility assigns the claim a place in the FIFO processing queue. There are separate FIFO queues for expedited-review claims and individual-review claims. For claims filed after the trust was established, the date of receipt of the completed claim documents establishes the claimant's place in the FIFO processing queue.

About six months before a claimant enters the actual processing phase, the trust sends notice thereof to the claimant, requesting any updates to the medical history or exposure evidence. Assuming that there is none, or upon receipt of the new evidence, the facility begins to review the submitted materials.

For claims filed under expedited review, the facility determines whether the claimant's medical and exposure evidence satisfies the requirements outlined in the TDP for a presumptively valid claim. Each disease that a trust recognizes has different requirements, and these requirements are summarized for the largest trusts in Appendix B. Both disease level and the requirements merit further discussion.

Asbestos exposure has been linked to a variety of diseases. The bankruptcy code conditions the channeling injunction upon the creation of a trust system of compensation that treats claimants with similar diseases equitably. To do this, the trusts have established disease levels. A disease level is a category of asbestos-related disease. It is coupled with a set of medical and exposure requirements and an associated liquidated value that is offered to claimants who meet those requirements. The disease levels are used to review all expedited-review claims that are filed against the trust.

The trusts generally recognize eight disease levels.[8] There is variation in the number of levels used across trusts, and the following list of eight disease levels represents the most extensive list. In order of the most severe to the least severe condition, the disease levels are

- mesothelioma (level VIII)
- lung cancer, with evidence of bilateral asbestos-related nonmalignant disease[9] (often asbestosis) (level VII, also referred to as lung cancer 1)
- lung cancer, without evidence of bilateral asbestos-related nonmalignant disease (level VI, also referred to as lung cancer 2)[10]
- other cancers, with evidence of bilateral asbestos-related nonmalignant disease (level V)

---

[8] For an exception, see NGC Bodily Injury Trust (2002). NGC uses six core categories covering ten recognized diseases. Only the core categories are assigned monetary values.

[9] The standard definition of "evidence of bilateral asbestos-related nonmalignant disease," as used in the TDPs for levels I, II, III, V, and VII, refers to

(i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO [International Labour Organization] scale or, (ii) (x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT [computed tomography] scan read by a Qualified Physician, or (z) pathology, in each case either showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification.

See, for example, Armstrong World Industries (2008, p. 10).

[10] Level VI claims are for lung cancer without evidence of asbestos-related disease. Because carcinogens other than asbestos may cause lung cancer, level VI claims are not presumptively valid. As a result, these claims are not eligible for expedited review and are expected to have relatively low liquidated values. This is especially true if the claimant was also a smoker.

- severe asbestosis (level IV)
- asbestosis/pleural disease with significantly restricted pulmonary function (level III, also referred to as asbestos/pleural disease 2)
- asbestosis/pleural disease without significantly restricted pulmonary function (level II, also referred to as asbestosis/pleural disease 1)
- other asbestos disease (level I).

These disease levels may be augmented or reduced with the consent of the TAC and FCR.

For each disease level, there is a set of medical and exposure criteria. The medical criteria consist of a diagnosis and a statement of latency. Below are some of the most common standards:

- For diagnoses of malignant conditions (levels V–VIII), the trusts require diagnosis by physical examination, by a board-certified pathologist's report, or by a pathology report from a hospital accredited by the Joint Commission.
- For nonmalignant diseases (levels I–IV),
  - living claimants must present a diagnosis by physical examination
  - decedents' claims must be supported
    - by a diagnosis by physical examination when the claimant was alive
    - by pathological evidence
    - by evidence of bilateral asbestos-related nonmalignant disease (for levels I–III) and an ILO reading of 2/1 or greater (for level IV)[11] and pulmonary-function testing (for levels III and IV only).
- Pulmonary-function testing is required for levels III and IV. The purpose of these tests is to establish severely restricted lung capacity for claims worthy of a higher liquidated value. Normally, level III claims must be supported by results of a pulmonary-function test demonstrating a total lung capacity (TLC) of less than 80 percent or by a forced vital capacity (FVC) level less than 80 percent and a forced expiratory volume in 1 second (FEV1)/FVC ratio greater than or equal to 65 percent.[12] Normally, level IV claims must be supported by results of a pulmonary-function test demonstrating a TLC of less than 65 percent or by an FVC level less than 65 percent and an FEV1/FVC ratio greater than 65 percent. Level IV claims must also be accompanied by an ILO score of 2/1 or greater.
- Disease levels III–VII require supporting medical documentation that establishes asbestos as a contributing factor in causing the claimed disease.

In addition to the diagnosis, the medical criteria compel a physician's statement that the claimant's medical history satisfies a latency requirement. Typically, the latency requirement establishes that "at least ten years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis" (Babcock and Wilcox Company, 2009).[13]

---

[11] An ILO reading is an interpretation of pulmonary x-rays using the ILO International Classification of Radiographs of Pneumoconioses (Carroll, Dixon, et al., 2009, p. 7).

[12] The FEV1/FVC ratio measures the amount of air that can be forcibly exhaled in 1 second as a percentage of FVC.

[13] Latency requirements are used to determine whether asbestos was likely a contributing cause of the illness. People with asbestos-related diseases first display symptoms many years after exposure. The latency requirement aims to increase the

Evidence of an asbestos-related disease is not sufficient to justify a claim against an asbestos PI trust. Trusts also review claims for occupational exposure to asbestos and exposure to the trust's debtor's products, manufacturing facilities, or other conduct for which the debtor is liable. Criteria for exposure to the debtor's products, facilities, or other conduct aim to establish a potential link between the claimant's disease and the trust or trusts against which the claimant has chosen to file a claim.[14]

There are typically separate requirements for occupational exposure and exposure related to debtor activities, and these requirements typically vary by disease level. To satisfy the debtor's exposure criteria, a claimant needs credible evidence that he or she worked with or around asbestos at the debtor's facilities or with or around the debtor's asbestos-containing products during the period of time when asbestos was in use. Credible evidence may be a work history at a site where the trusts know asbestos products were used; an affidavit; employment records, invoices, or other business documents; or other evidence that the trust deems reliable. Certain disease levels carry a higher standard for exposure criteria.[15]

Trusts generally do not coordinate with other trusts to determine whether the occupational or debtor exposure evidence submitted to one trust is consistent with the evidence submitted to other trusts.

Trusts do not require specific evidence about the amount of asbestos dust that a claimant may have inhaled during his or her time working with the debtor or the debtor's products. This puts the trust system in direct contrast to some legal jurisdictions when it comes to causation evidence.[16] It should be noted, however, that the ability or inability to sustain a claim in the tort system is immaterial to whether the claimant is entitled to recovery through the trust processes under expedited review. If the claimant has the documentation to satisfy all of the medical and exposure elements for a disease level under expedited review, the claim is valid for purposes of trust compensation. If the trust determines that a claim under expedited review does not satisfy the medical or exposure requirements, the claim will be assigned to the individual-review FIFO queue.

Individual-review claims are used to determine "whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels" (Kaiser Aluminum and Chemical Corporation, 2007). In addition, individual review can be used if a claimant believes that his or her individual cir-

---

probability that the injury was at least in part caused by exposure to asbestos.

[14] McGovern (2006) describes how exposure criteria have evolved over the years. Since the Celotex plan was established in 1999, all trusts have required proof of exposure to a specific debtor's products.

[15] For disease levels III, IV, V, and VII, claimants need to supply evidence of significant occupational exposure. *Significant occupational exposure* is defined as employment for a cumulative period of

at least five (5) years with a minimum of two (2) years prior to December 31, 1982, in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b), and/or (c). (Kaiser Aluminum and Chemical Corporation, 2007)

[16] See, for example, *Borg-Warner Corp. v. Flores* (232 S.W.3d 765, 2007) (indicating that mere exposure to "some" asbestos fibers was insufficient to prove that an asbestos-containing product was a substantial factor in causing the plaintiff's asbestosis).

cumstances merit a liquidated value in excess of the scheduled value offered under expedited review for his or her disease.

If the processing facility does not believe that the claimant presents a claim that is compensable in the tort system, it will deny the claim. If, however, the facility believes that the claim would be cognizable and valid in the tort system, the claim will be liquidated pursuant to procedures described in the next section.

### Stage 3: Claim Liquidation

Once the processing facility has determined that a claim is valid, through either expedited or individual review, the claim must be liquidated, or assigned a monetary value. Liquidating a claim is treated differently under expedited and individual review.

For expedited review, claims are liquidated according to the values assigned to the diseases listed in the TDP. These values are called scheduled values. The scheduled value is a standard monetary amount for a specific disease level.[17] It is a one-size-fits-all amount. Specific aspects of a claimant's work history or medical situation are not used to tailor an award beyond classification by disease level. According to a party that has worked closely with trusts, the scheduled value is typically set slightly above the 50th percentile of the historical settlements that the debtor paid for the specific disease before bankruptcy. However, we have not been able to assess the extent to which this is actually the case. The scheduled value is set at such a level to encourage most claimants to choose expedited rather than individual review. Because individual circumstances can vary greatly, the scheduled value may or may not be significantly less than the amount a claimant would receive under individual review.[18]

Individual-review claims are meant to be valued at the historical liquidated value of similarly situated claims in the tort system. Valuation factors may include, among others, age, disability, number of dependents, noneconomic damages, and the settlement and verdict history of the claimant's law firm. At least one trust purports to derive the settlement value by "statistically analyzing previously settled claims, and identifying claim characteristics that have historically correlated with settlement values" (NGC Bodily Injury Trust, 2002, p. 11). Regardless of individual circumstances, however, liquidated claims may not be greater than the maximum value associated with the corresponding disease level. This maximum value is a monetary upper limit established by the TDP.[19]

One special exception to this liquidation process concerns a type of claim called *extraordinary claims*. A claimant may be classified as having an extraordinary claim for some types of asbestos-related diseases if his or her asbestos-related exposure was predominantly the result of one specific debtor's products or manufacturing facility. Typically, an extraordinary claim meets the presumptive medical and exposure criteria under expedited review but, because of the special employment or exposure circumstances, will be treated for liquidation purposes as an individual-review claim. The clear line of culpability triggers the possibil-

---

[17]  Sometimes this is referred to as the *allowed liquidated value* (e.g., NGC Bodily Injury Trust, 2002).

[18]  All disease levels except level VI are assigned values; level VI claims must undergo individual review and, therefore, do not have an established scheduled value.

[19]  We have not evaluated the extent to which scheduled values or the values set in the individual-review process approximate either the midpoint of the distribution of previous settlements or the value of similarly situated claims in the tort system.

ity of a higher liquidated value than would be allowed under expedited review.[20] For example, consider a 30-year employee who spent his entire career at Johns-Manville. If he meets the criteria for mesothelioma under expedited review, the Manville Trust would likely classify his as an extraordinary claim for liquidation purposes.

Upon completion of a claim's review, the valid claimant will be offered an amount in satisfaction of the claim.[21] Claimants may accept the offer, at which time his or her claim enters the payment queue, discussed in the next section. If a claimant refuses the offer, the claim is submitted for ADR under preestablished procedures for either binding or nonbinding arbitration. If nonbinding arbitration fails, claimants have the right to bring suit against the trust in the tort system. According to parties knowledgeable about trust operations, very few claims go to arbitration or to the courts.

## Stage 4: Claim Payment

Once claims are liquidated and the claimant accepts the offer, claims are paid according to the FIFO payment queue and according to three other important rules.[22] Individual trusts may not have sufficient funds to pay every claim the full, liquidated value that could have been recovered through the tort system. Ever since the reorganization of the Manville Trust, asbestos PI trusts have wrestled with the question of how to pay future claims out of the limited pool of assets. Although the number of current claims is fixed and knowable, there is substantial uncertainty over the number of claims that will be filed in the future. If predictions are too low, trusts run the risk of insolvency (as was the case with the Manville Trust).

To manage this problem, the trusts require mechanisms for allocating trust assets so money will be available for future claimants. To this end, TAs and TDPs allow the trustees (with the consent of the TAC and FCR) to establish a system of pro rata discounts to the value of a claim offered to a current claimant. This pro rata share is known as the *payment percentage*.

Payment percentages are a percentage of a claim's liquidated value. After a claim's liquidated value is established (whether by individual review, expedited review, arbitration, or litigation), it will be multiplied by the trust's payment percentage to calculate the actual payment the claimant will receive.[23] For example, a trust processing a mesothelioma claim liquidated at $110,000 with a payment percentage of 20 percent would pay a claimant $22,000.

As is discussed in Chapter Four, the payment percentage varies a great deal across trusts and can change over time. Some trusts have been forced to adopt very low payment percentages in light of a flood of claims. The UNR Asbestos-Disease Claims Trust (2009), for example, applies a 1.1 percent payment percentage. In 1995, Manville, which initially paid 100 percent

---

[20] The fact that trusts have special procedures for extraordinary claims suggests that trusts recognize the likelihood of claimants filing with multiple trusts or filing suit in the tort system.

[21] Some trusts call this a *settlement*. Section 524(g) considers this a payment. While, on its face, the difference seems semantic, there are rules pertaining to the confidentiality of settlements that may come into play in the discovery process in related litigation depending on whether the trust payment is a settlement.

[22] The payment queue, like the processing queue, operates under the FIFO rule, with one notable exception. Exigent-hardship claims make up a class of claims that triggers flexibility in the trust's processing and payment queues. Designation as an exigent case assigns the claim to an early position in the FIFO queue. Each trust establishes qualifications for exigent-hardship claims. Many trusts limit exigent cases to malignant diseases and severe asbestosis. Furthermore, trusts condition such claims on a claimant's immediate financial need that resulted from the claimant's asbestos-related disease. At least one trust (NGC) considers all living mesothelioma claimants to have exigent-hardship claims.

[23] As shown in Appendix B, the payment percentage may not apply to all disease levels at a particular trust.

of a claim, renegotiated the payment percentage to 10 percent. However, even that reduced amount was too much of a strain on trust assets; in 2001, Manville reduced the payment percentage to 5 percent. More recently, it increased the payment percentage to 7.5 percent.[24]

The two remaining rules that govern payment processing are rules that govern when a claimant will receive his or her compensation, rather than how much compensation will be paid. These two rules are the maximum annual payment (MAP) and the claim ratio.

The MAP is the annually determined upper limit on the amount of money the trust can pay to claimants in the aggregate for that year. The purpose of the limit is to preserve trust assets for future claimants. The MAP affects the FIFO payment queue. If there are too many claimants in a given year, then those who were at the end of the payment queue will be placed first in line in the next year's payment queue. Hence, because of a backlog of claims, a claimant who received an offer of settlement may have to wait a year or even several years before payment is received.

The MAP is divvied up by disease severity according to the claim ratio (sometimes called the *claim payment ratio*). This ratio sets annual limits on the proportion of the MAP that will be paid to claimants with malignancies or severe asbestosis versus those with less severe claims. For example, the Kaiser trust allocates 70 percent of the MAP to claimants with malignancies or severe asbestosis (Kaiser Aluminum and Chemical Corporation, 2007, p. 10). For all trusts that use a claim ratio, a majority of the MAP is slated for the most-severe diseases, although the actual percentage varies.

The claimant is responsible for paying the fees of his or her attorney from the award made by the trusts. The Manville Trust limits attorneys' fees to 25 percent of the award, although we have not been able to assess what methods are used to enforce this limit or how vigorously it is enforced. Knowledgeable parties interviewed during the course of this project believed that attorneys' fees of 25 percent are typical.

## Indirect Personal-Injury Claims

The foregoing discussion traces the process for an asbestos victim seeking payment through the trust mechanism. There are, however, times when someone other than the claimant (or, in the case of a deceased claimant, the claimant's estate) seeks a monetary payment from an asbestos PI trust. These cases are known in the TDPs as *indirect PI claims*. In essence, these are claims filed under a theory of contribution.

An indirect PI claim is a claim filed against the trust by parties other than the asbestos claimholder (the individual claimholder is considered the *direct claimant*). These claims arise when a third party pays the direct claimant a sum of money that includes the trust's share of liability. The payment can be the result of a legal judgment or a settlement. Because the third party paid a sum of money for which the trust is responsible, the third party seeks to recover the sum from the trust. To do so, the third party files a claim with the trust (thus becoming an indirect claim) and describes to the trust the conditions under which it paid the asbestos claimant (and spelling out the legal theory that justifies its claim against the trust—e.g., theories of contribution or indemnification). For valid indirect claims, the TDPs direct the trust to

---

[24] When a trust increases the payment percentage, it typically makes additional payments to claimants who have already settled with the trust at the lower payment percentage.

reimburse the indirect claimant for the payments it made in satisfaction of the trust's liability, subject to the payment percentage and FIFO queue.

Generally, to establish an indirect claim, the indirect claimant needs to provide evidence that, pursuant to a final legal judgment or binding settlement, the trust's liability was fixed, liquidated, and fully paid by the indirect claimant pursuant to a final legal judgment or binding settlement. In the case of a settlement, the indirect claimant must furnish evidence that both the direct and indirect claimants have fully released the trust from all future liability for asbestos PI harms. There is some scholarly speculation as to whether this is a reasonable expectation (Shelley, Cohn, and Arnold, 2008, p. 271).

## Conclusion

This chapter has outlined the major players in the trusts' administration and outlined the general process by which claims are reviewed, liquidated, and paid. These elements are contained in the two main trust documents, the TA and the TDP. Chapter Four turns from trust structure and processes to trust finances and annual payment activities.

CHAPTER FOUR
# Overview of Trust Activity

A considerable amount of information is available about the asbestos bankruptcy trusts that have been established. This information is contained in the asbestos TAs and TDPs that must be approved by bankruptcy courts, as well as other documents filed with the court during bankruptcy proceedings. Trusts typically must also file annual reports with the bankruptcy court that contain specified information. While these reports and documents are publicly available, the data have not been assembled in a readily accessible source. In this chapter, we describe the information we have assembled on the trusts and provide an overview of trust activity. Detailed reports on 26 of the largest active trusts and the three largest proposed trusts are presented in Appendix B.

## Data and Methods

Data on the trusts were abstracted from publicly available sources, including bankruptcy documents, trust websites, trust annual reports, and U.S. Securities and Exchange Commission (SEC) filings.[1] Data were available on an annual basis for each trust as a whole but not on the payments made to individual claimants. Thus, neither the variation of a given trust's payments across claimants nor payments by multiple trusts to the same claimant could be examined.

To verify the accuracy of the data, detailed reports for each of the 26 largest active trusts (the method for selecting the trust is described later) were assembled and then submitted to the relevant trusts for review. Twenty-three of the trusts were able to review the data, and the data were updated accordingly.[2]

Parties that follow asbestos litigation closely have identified 96 companies that have filed for bankruptcy in which liability for asbestos tort cases was addressed. A list of the companies filing for bankruptcy, the date the case was filed with the bankruptcy court, the date the court confirmed the reorganization plan, and the name of the trust established, if any, is provided in Appendix A.

Table 4.1 alphabetically lists the 63 trusts that have been established or are proposed. We divide trusts into three groups:

---

[1] Bates White is an economic consulting firm that has been collecting publicly available information on asbestos trusts for many years. We purchased this information from Bates White and used it as the starting point for our database. The data were reviewed for accuracy and gaps filled after consulting trust documents and websites.

[2] The following three trusts did not respond to review the information compiled on their trusts: the API, Inc. Asbestos Settlement Trust, the NGC Bodily Injury Trust, and the Swan Asbestos and Silica Settlement Trust.

**Table 4.1**
**Trusts Established, in Alphabetical Order**

| Trust Name | Year Established | Estimate of Initial Assets ($ millions) | Claim Payments Through 2008 ($ millions) | Selected for Study Sample |
|---|---|---|---|---|
| Active trusts | | | | |
| A&I Corporation Asbestos Bodily Injury Trust | 2005 | 13 | n.a. | No |
| A-Best Asbestos Settlement Trust | 2004 | 18 | 5 | No |
| AC&S Asbestos Settlement Trust | 2008 | 528 | 185 | Yes |
| API, Inc. Asbestos Settlement Trust | 2006 | 94 | 43 | Yes |
| Armstrong World Industries Asbestos Personal Injury Settlement Trust | 2006 | 2,062 | 149 | Yes |
| ARTRA 524(g) Asbestos Trust | 2007 | 74 | 11 | No |
| ASARCO LLC Asbestos Personal Injury Settlement Trust | 2009 | 830 | 0 | Yes |
| Babcock and Wilcox Company Asbestos Personal Injury Settlement Trust | 2006 | 1,845 | 694 | Yes |
| Bartells Asbestos Settlement Trust | 2001 | 20 | 15 | No |
| Brauer 524(g) Asbestos Trust | 2007 | 1 | 0 | No |
| Burns and Roe Asbestos Personal Injury Settlement Trust | 2009 | 172 | 0 | Yes |
| C. E. Thurston and Sons Asbestos Trust | 2006 | 53 | 1 | No |
| Celotex Asbestos Settlement Trust | 1997 | 1,246 | 844 | Yes |
| Combustion Engineering 524(g) Asbestos Personal Injury Trust | 2006 | 1,243 | 176 | Yes |
| DII Industries, LLC Asbestos Personal Injury Trust | 2005 | 2,514 | 221 | Yes |
| Eagle-Picher Industries Personal Injury Settlement Trust | 1996 | 730 | 525 | Yes |
| Federal Mogul U.S. Asbestos Personal Injury Trust, Fel-Pro Subfund | 2007 | n.a. | 0 | No |
| Federal Mogul U.S. Asbestos Personal Injury Trust, FMP Subfund | 2007 | 55 | 0 | No |
| Federal Mogul U.S. Asbestos Personal Injury Trust, T&N Subfund | 2007 | 635 | 0 | Yes |
| Federal Mogul U.S. Asbestos Personal Injury Trust, Vellumoid Subfund | 2007 | n.a. | 0 | No |
| G-1 Asbestos Settlement Trust | 2009 | 770 | 0 | Yes |
| H. K. Porter Asbestos Trust | 1998 | n.a. | 77 | Yes |
| J. T. Thorpe Company Successor Trust | 2004 | 233 | 95 | Yes |
| J. T. Thorpe Settlement Trust | 2006 | 154 | 55 | Yes |
| Kaiser Asbestos Personal Injury Trust | 2006 | 1,218 | 116 | Yes |

**Table 4.1—Continued**

| Trust Name | Year Established | Estimate of Initial Assets ($ millions) | Claim Payments Through 2008 ($ millions) | Selected for Study Sample |
|---|---|---|---|---|
| Keene Creditors Trust | 1996 | 45 | 4 | No |
| Lummus 524(g) Asbestos Personal Injury Trust | 2006 | 38 | 1 | No |
| Lykes Tort Claims Trust | 1997 | n.a. | 0 | No |
| Manville Personal Injury Settlement Trust | 1988 | 2,500 | 3,881 | Yes |
| NGC Bodily Injury Trust | 1993 | 446 | 203 | Yes |
| Owens Corning Fibreboard Asbestos Personal Injury Trust, Fibreboard Subfund | 2006 | 1,556 | 361 | Yes |
| Owens Corning Fibreboard Asbestos Personal Injury Trust, Owens Corning Subfund | 2006 | 3,423 | 1,096 | Yes |
| Plibrico Asbestos Trust | 2006 | 206 | 69 | Yes |
| Porter Hayden Bodily Injury Trust | 2006 | 0 | 1 | No |
| Raytech Corporation Asbestos Personal Injury Settlement Trust | 2000 | n.a. | 0 | No |
| Shook and Fletcher Asbestos Settlement Trust | 2002 | 109 | n.a. | No |
| Stone and Webster Asbestos Trust | 2004 | 6 | n.a. | No |
| Swan Asbestos and Silica Settlement Trust | 2003 | 120 | 101 | Yes |
| T. H. Agriculture and Nutrition, LLC Industries Asbestos Personal Injury Trust | 2009 | 901 | 0 | Yes |
| United States Gypsum Asbestos Personal Injury Settlement Trust | 2006 | 3,957 | 612 | Yes |
| United States Mineral Products Company Asbestos Personal Injury Settlement Trust | 2005 | 8 | 0.4 | No |
| UNR Asbestos-Disease Claims Trust | 1990 | n.a. | 261 | Yes |
| Utex Industries, Inc. Successor Trust | 2004 | 10 | 4 | No |
| Western Asbestos Settlement Trust | 2004 | 2,000 | 1,092 | Yes |
| Inactive trusts | | | | |
| Amatex Asbestos Disease Trust Fund | 1990 | 16 | n.a. | No |
| Forty-Eight Insulations Qualified Settlement Trust | 1995 | n.a. | n.a. | No |
| Fuller-Austin Asbestos Settlement Trust | 1998 | n.a. | n.a. | No |
| M. H. Detrick Company Asbestos Trust | 2002 | 3 | 0.3 | No |
| Muralo Trust | 2007 | n.a. | n.a. | No |
| PLI Disbursement Trust | 1989 | n.a. | n.a. | No |
| Rock Wool Manufacturing Company Asbestos Trust | 1999 | n.a. | n.a. | No |

**Table 4.1—Continued**

| Trust Name | Year Established | Estimate of Initial Assets ($ millions) | Claim Payments Through 2008 ($ millions) | Selected for Study Sample |
|---|---|---|---|---|
| Rutland Fire Clay Company Asbestos Trust | 2000 | 8 | 0.7 | No |
| United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust | 1989 | n.a. | 0.6 | No |
| Wallace and Gale Company Asbestos Settlement Trust | 1998 | 0.8 | n.a. | No |
| Proposed trusts | | | | |
| APG Asbestos Trust | — | 333 | 0 | No |
| Congoleum Plan Trust | — | 270 | 0 | No |
| Flintkote Company and Flintkote Mines Limited Asbestos Personal Injury Trust | — | 214 | 0 | No |
| North American Refractories Company Asbestos Personal Injury Settlement Trust | — | 6,320 | 0 | Yes |
| Pittsburgh Corning Corporation Asbestos PI Trust | — | 3,407 | 0 | Yes |
| Quigley Company, Inc. Asbestos PI Trust | — | 569 | 0 | No |
| Skinner Engine Co. Asbestos Trust | — | n.a. | 0 | No |
| Thorpe Insulation Company Asbestos Personal Injury Settlement Trust | — | 389 | 0 | No |
| W. R. Grace and Co. Asbestos Personal Injury Settlement Trust | — | 2,978 | 0 | Yes |
| All trusts | — | 44,341 | 10,900 | — |

NOTE: n.a. = not available.

- 44 active trusts: those that are still paying claims
- ten inactive trusts: those that have been established but no longer appear to be paying claims
- nine proposed trusts: those that are being considered as part of ongoing bankruptcy proceedings or trusts established by a bankruptcy plan that is under appeal.

In addition to the year in which the trust was established, Table 4.1 reports claim payments through 2008. These figures are drawn from the annual financial statements that trusts file with bankruptcy courts. Data on claim payments could not be located for some trusts (indicated by "n.a." in the table), particularly for trusts that appear to be inactive. The figures that are reported appear to be complete except for two trusts that were established prior to 1999.[3] Table 4.1 also provides an estimate of the initial funding for the trust. As explained in Chapter Two, sources of this funding include cash or stock from the debtor and insurance settlements.[4] In some cases, contributions to the trust are paid over time, but the data in Table 4.1

---

[3]   The two trusts are the H. K. Porter Asbestos Trust and the NGC Bodily Injury Trust. A complete set of financial reports could not be established for these trusts.

[4]   These insurance settlements are payments on insurance policies held by the debtor.

do not discount future contributions back to the establishment date. Insurance disputes can also be settled subsequent to trust establishment, but resulting settlements are not included in these figures. The figures on initial trust assets are rough estimates and intended to provide only a general idea of the size of the trust. They were used to select the trusts for detailed review but were not used in subsequent analysis.

Figure 4.1 shows the number of bankruptcies filed and number of trusts established by year, and Figure 4.2 shows the cumulative number of bankruptcies filed and trusts established. After an uptick in the 1980s, the number of bankruptcies filed remained modest in the 1990s. The bankruptcies surged in the first part of the 2000s, peaking at 15 in 2002. Trends in the number of trusts formed reflect the lag between bankruptcy filing and the confirmation of the bankruptcy plan. Based on the 78 filings that have been confirmed, the average time from filing to confirmation is 3.9 years, and the average may increase somewhat as the longest-running bankruptcy cases are finally resolved.[5] As illustrated in Figure 4.2, 54 trusts have been established as of June 2010, with a considerable acceleration in the total number of trusts in the second half of the 2000s. Nine more trusts are in the pipeline, and there are undoubtedly more to come.[6]

Limits on the time and resources available to complete this report did not allow us to assemble and verify detailed information for all 54 trusts that have been established. We thus

**Figure 4.1**
**Number of Bankruptcies Filed and Number of Trusts Established, by Year, as of June 2010**



RAND *TR872-4.2*

---

[5]   The longest-running bankruptcy case still open has been open for 12.9 years.

[6]   For example, an FCR has been appointed in the General Motors bankruptcy, suggesting that an asbestos trust will be established. In addition, trusts will likely emerge from the recent bankruptcies of Bondex International and Garlock Sealing Technologies.

**Figure 4.2**
**Cumulative Number of Bankruptcies Filed and Trusts Established as of June 2010**



RAND *TR872-4.2*

limited our attention to active and inactive trusts that had either (1) at least $100 million in initial assets or (2) at least $20 million in claim payments through 2008. Twenty-six of the 44 active trusts and none of the ten inactive trusts met these selection criteria. The last column of Table 4.1 indicates which trusts were selected.

The analysis in the remainder of this chapter is restricted to the 26 active trusts meeting the selection criteria. While the data from the smaller trusts are not included in the statistics in the next section, it is not likely that the error due to excluding these trusts is large relative to overall trust activity.[7]

The projected assets of the nine trusts that have been proposed but not yet established are large. As can be calculated from the bottom set of rows in Table 4.1, the projected initial assets at eight trusts for which estimates could be developed total $14.5 billion. To provide some insight on the largest trusts that may soon be established, Appendix B also presents information about the three proposed trusts with projected initial assets of at least $500 million.

---

[7] The 26 active trusts account for more than 99 percent of the $10.9 billion in claim payments for the active and inactive trusts that we could identify through 2008 and for 98 percent of the $29.9 billion in initial trust assets. Claim payment data are missing for some trusts, but the missing payments are likely small relative to the total accounted for.

## Overview of Trust Activity

In this section, we provide an overview of the following aspects of asbestos trust operations:

- aggregate claim activity
- breakdown of claim payments by injury type
- trust assets and expenses
- claim valuation schedules
- composition of trust governing bodies.

We address each topic in turn. The data on which the figures and tables in this section are based are reported by trust in Appendix B.

### Aggregate Claim Activity

Figures 4.3 and 4.4 display the number of claims paid and the value of claim payments for the 26 selected trusts. Data for the years prior to 2006 are aggregated because we were not able to break down pre-2006 figures by year for some trusts. As mentioned earlier, data on pre-2006 claim payments for two trusts are incomplete because complete records could not be located for these older trusts. Also, it appears that data on the number of paid claims are incomplete for three of the 26 trusts. Thus, the data in Figures 4.3 and 4.4 provide lower bounds on the number of claims paid and the value of claim payments.[8] Plaintiffs' attorneys' fees must be removed from claim payments in order to determine the amount received by claimants.

Reflecting the influx of new trusts in 2006 and 2007, both the number of claims paid and the value of claim payments surged in 2007 and 2008 from 2006 levels. Approximately 575,000 claims were paid, for a total of $3.3 billion in 2008, with the number of claims paid and claim payments totaling 2.4 million and $10.9 billion through 2008, respectively. To put these numbers in perspective, the 2005 RAND report estimated that asbestos defendants paid $7.1 billion (not including asbestos trusts) in compensation in 2002 and that compensation (not including asbestos trusts) totaled $49 billion through 2002 (Carroll, Hensler, et al., 2005, p. 92).[9] Comprehensive data on which to base more-current estimates of tort compensation are not available.

### Breakdown of Payments, by Injury Type

The compensation of claimants with more-severe diseases relative to those with less severe diseases has been an ongoing issue in asbestos litigation. We now turn to the experience of the trusts in this regard. Ten of the 26 active trusts provide separate figures on malignant and non-

---

[8]  Data on the number of claims filed by year are reported for some trusts in Appendix B. These data are quite incomplete, however, and do not merit reporting in aggregate form.

[9]  The $7.1 billion figure excludes defense costs. Carroll, Hensler, et al. (2005, p. 71) also report that approximately 55,000 individuals brought asbestos-related PI claims against defendants and PI trusts in 2002 and that 730,000 individuals brought asbestos-related claims through 2002 (note that these figures do not reflect the number of individuals filing court cases—not all claims result in court filings). Even considering the lag between the dates when claims are filed and when they are paid, these figures are not readily comparable to the number of claims paid by trusts because the trust figures on the number of claims paid do not net out payments by multiple trusts to the same individual.

**Figure 4.3**
**The Number of Claims Paid and the Value of Claim Payments, by Year, for the Selected Trusts**



RAND *TR872-4.3*

**Figure 4.4**
**Cumulative Claims Paid and Claim Payments at the Selected Trusts**



RAND *TR872-4.4*

**A.1419**

malignant claims for 2007 and 2008.[10] These ten trusts account for 57 percent and 72 percent of the claims paid and claim payments by all 26 selected trusts in 2008, respectively. *Malignant claims*, by and large, refers to claims involving mesothelioma, lung cancer, and other cancers. *Nonmalignant claims* refers to claims involving severe asbestosis, asbestosis and pleural disease, or other asbestos-related diseases.[11]

As shown in Table 4.2, malignant claims accounted for a modest proportion of the number of claims paid but the bulk of the value of claim payments in 2007 and 2008. Average payment per malignant claim grew from $21,700 in 2007 to $34,100 in 2008. In contrast, nonmalignant claims accounted for more than 85 percent of claims in both years but received much less per claim. Payment per claim averaged $2,700 in 2007 and $3,000 in 2008. The relatively modest payments per claim meant that nonmalignant claims accounted for 45 percent and 34 percent of the total value of claim payments at these ten trusts in 2007 and 2008, respectively.

While the number of nonmalignant claims paid as a percentage of total claims paid remains high, the proportion of trust payments that go to nonmalignant claims is down from estimates for both the trust and the tort system in earlier years. Estimates in Carroll, Hensler, et al. (2005, p. 99) for the percentage of tort payments that went to nonmalignant claims between 1998 and 2002 run from 47 percent to 61 percent. Carroll, Hensler, et al. (2005, p. 99) also report that Tillinghast (a unit of Towers Perrin) found that 64 percent of tort payments between 1991 and 2000 were for nonmalignant claims and that 64 percent of payments by the Manville trust between 1995 and 2000 were on nonmalignant claims.[12] The one trust

**Table 4.2**
**Breakdown of Claim Payments by Injury Type for Trusts that Separately Report Data on Malignant and Nonmalignant Claims**

| Item | 2007 | 2008 |
|---|---|---|
| Number of claims paid (thousands) | 158 | 327 |
|     Malignant claims (percentage) | 13 | 14 |
|     Nonmalignant claims (percentage) | 87 | 86 |
| Value of claim payments ($ millions) | 809 | 2,405 |
|     Malignant claims (percentage) | 55 | 66 |
|     Nonmalignant claims (percentage) | 45 | 34 |
| Average value of claim payment ($/claim paid) | | |
|     Malignant claims | 21,700 | 34,100 |
|     Nonmalignant claims | 2,700 | 3,000 |
| Number of trusts reporting | 10 | 10 |

---

[10] Results are reported only for 2007 and 2008 because only a few trusts reported payments separately for malignant and nonmalignant claims prior to 2007.

[11] Some trusts include severe asbestosis in the malignant category, but none of the ten trusts considered here does so.

[12] Carroll, Hensler, et al. (2005, p. 99) estimated that 92 percent of claimants brought claims for nonmalignant injuries between 1998 and 2002. They also reported that 88 percent of claims to the Manville Trust between 1995 and 2000 were for nonmalignant injuries.

in our sample of 26 trusts that separated malignant from nonmalignant claim payments prior to 2004 (the H. K. Porter Trust) reported that nonmalignant claims accounted for 72 percent of claim payments between 2001 and 2003 and for 43 percent of claim payment between 2006 and 2008.[13]

Comprehensive data on the current breakdown of tort payments between malignant and nonmalignant claims are not available. However, there are indications of a decline in the share of tort payments for nonmalignant claims. Based on their work with asbestos defendants, Bates and Mullin estimate that nonmalignant claims account for less than 10 percent of all tort compensation (Bates and Mullin, 2006, p. 2). Drawing on the SEC Form 10-K filings of 150 asbestos defendants, Allen and Stern (2009, p. 2) report that the average number of claim filings per defendant dropped considerably between 2003 and 2008 and attribute the decline to a drop in nonmalignant filings.

A decline in fraction of tort payments on nonmalignant claims is consistent with the expected effects of a number of legislative reforms and judicial decisions that were adopted in the first half of the 2000s. Some states barred unimpaired claims (which are a subset of non-malignant claims) or assigned them to deferred dockets. Other states barred out-of-state claims with out-of state exposures. Also, U.S. District Court judge Janice Jack challenged diagnoses from doctors frequently used to support claims for nonmalignant injuries (see Carroll, Dixon, et al., 2009, p. 17).

While it has become increasingly difficult to obtain compensation for nonmalignant injuries in the tort system, the large number of nonmalignant claims paid by trusts indicates that the trust system remains a source of compensation for such injuries. How the total compensation a claimant might receive for nonmalignant injuries from the trusts has changed in the past ten years, however, is uncertain. On the one hand, Manville, the oldest and largest trust, cut its payments for the least serious nonmalignant claims in 2004 (Carroll, Dixon, et al., 2009, p. 17). On the other hand, an increase in the number of trusts means that a claimant may be able to obtain compensation for nonmalignant claims from more trusts.

**Trust Assets and Expenses**

The financial statements that trusts file annually with the bankruptcy court contain information on trust income, expenditures, assets, and liabilities. Of the 26 selected trusts, 22 reported financial data for at least one year up through 2008. The remaining four trusts have not yet filed financial statements because they were formed only recently.[14]

The top rows in Table 4.3 show the combined debits from 2006 through 2008 for the reporting trusts. The number of trusts reporting (see the last row of the table) increased over the period as additional trusts began to file annual reports. Trust expenses include

- claim-processing costs
- costs of managing the trust's investment portfolio
- fees and expenses of trustees, TAC members, and the FCR
- fees for the trust counsel, TAC counsel, FCR counsel, and other legal and other professional fees

---

[13] The Manville Trust does not break out malignant from nonmalignant claims in its publicly available reports.

[14] The trusts are not required to follow generally accepted accounting principles (GAAPs) in preparing financial statements. Trust financial statements vary in format, and care was taken in aggregating information across trusts.

**Table 4.3**
**Overview of Trust Assets, Claim Payments, and Expenses**

| Item | 2006 | 2007 | 2008 |
|---|---|---|---|
| Balance-sheet debits ($ millions) | | | |
|     Trust expenses | 89 | 125 | 149 |
|     Claim payments | 461 | 1,442 | 3,340 |
|     Taxes | 71 | 75 | −105 |
|     Other deductions | 25 | 9 | 47 |
| Gross claimant compensation as a percentage of trust expenditures | | | |
|     Lower bound | 71 | 87 | 94 |
|     Upper bound | 75 | 88 | 96 |
| Year-end trust assets ($ billions) | 20.9 | 22.7 | 18.2 |
| Number of trusts reporting | 19 | 20 | 22 |

- general administrative expenses
- cost of purchasing insurance.

Data for claim payments and taxes follow trust expenses. Other deductions include payments on property-damage claims (or amounts set aside for such payments), costs related to stock or other asset sales, increases in outstanding claim offers, and amounts payable on indirect claims. Of these, payment on property-damage claims is the largest component.[15]

Table 4.3 provides an estimate of gross claimant compensation as a percentage of trust expenditures. The claimant compensation is gross in the sense that it includes any fees the claimant pays to his or her attorney for services related to the recovery.[16] Because the publicly available data do not allow us to fully determine whether outlays in the other deductions category are made to claimants, we calculate upper and lower bounds for the gross claimant-compensation percentage. In the lower-bound estimate, none of the payments in the other deductible category is assumed to go to claimants. In the upper-bound estimate, they all are.[17] As can be seen in the table, there is not a great deal of difference between the two estimates.

As claim payments rose rapidly between 2006 and 2008, the gross claimant-compensation percentage rose from between 71 and 75 percent to approximately 95 percent. These levels compare favorably to estimates of gross compensation as a percentage of defendant expenditures in the tort system. Carroll, Hensler, et al. (2005, p. xxvi) estimated that claimant compensation through 2002 amounted to 69 percent of total spending by defendants and insurers. It should be noted, however, that the gross compensation percentages in Table 4.3 do not include the legal and other transaction costs incurred in negotiating the terms for the trust during the bankruptcy proceedings.

---

[15] Some trusts pay for asbestos removal and other asbestos-related property damage.

[16] Informed parties indicated that plaintiffs' attorneys' fees typically run about 25 percent of the award.

[17] Negative taxes (tax refunds) are set to zero in calculating gross compensation as a percentage of trust expenditures.

Trust assets provide a measure of the resources available to pay claims. The penultimate row of Table 4.3 provides the year-end assets of the reporting trusts in 2006, 2007, and 2008. Despite the $4.8 billion in claim payments in 2007 and 2008, year-end assets only declined from $20.9 billion to $18.2 billion between 2006 and 2008, due in part to the initial reporting by three newly formed trusts. The assets at the end of 2008 are an indicator of the substantial claim payments yet to be made by the bankruptcy trusts.

## Claim Valuation Schedules

Table 4.4 reports the scheduled and average values for mesothelioma claims, the payment percentage, and the scheduled and average values after the payment percentage has been applied. As discussed in Chapter Three, a claimant who selects expedited review and meets the relevant criteria will be offered the scheduled value for the specified disease, subject to the payment percentage. For most trusts, the average value is the trust's target value for all paid claims in a particular disease category, including claims that go through either expedited or individual review.[18] The payment percentage must then be applied to this figure to determine the average amount paid to claimants. We have not evaluated the extent to which the average value after payment percentage is a good approximation of the actual average award in a disease category.

A number of trusts set different scheduled values for the separate classes of claims they accept. For example, the Western Asbestos Trust posts separate scheduled values for claims involving exposure at Minnesota facilities and claims involving exposure at North Dakota facilities. We consider each of these trust-claim-class combinations separately.

As shown in the first row of Table 4.4, the scheduled value for mesothelioma claims varies from $7,000 to $1.2 million across the 30 trust-claim-class combinations, with a median of $126,000. The median of the average value for mesothelioma claims is $180,000, again with a large spread, across the somewhat fewer trust-claim-class combinations that report average values for mesothelioma claims.[19] The wide spread in both the scheduled and average values reflects, in part, the difference in payments made by companies through the tort system before they filed for bankruptcy.

The payment percentage runs from 1.1 to 100 percent, with a median of 25 percent. The current payment percentages for the 29 trust-claim-class combinations reporting are provided in Figure 4.5. As can be seen, the payment percentage is less than 25 percent for a sizable group of trusts and between roughly 40 and 60 percent for another sizable group of trusts. Only one trust (THAN) has a payment percentage higher than 60 percent, although that trust had not paid any claims through 2008. As can be seen, the assets available to some trusts allow them to pay only a very small proportion of the value assigned to the claim while other trusts are able to pay a much higher proportion.[20]

---

[18] For a few trusts, the reported average value considers only claims that go through individual review.

[19] The sum of the scheduled values after payment percentage for the 28 trust-claim-class combinations is $1.34 million. A mesothelioma claimant could, in principle, receive this amount from these trusts. However, it is exceedingly unlikely that a claimant would be eligible for payment from all trusts and for multiple payments from trusts that have more than one claim class. The sum of the average values after payment percentage for the 21 trust-claim-class combinations reporting is $1.44 million.

[20] As discussed in Chapter Three, it is important to consider the scheduled or average value when interpreting the payment percentage. A low payment percentage applied to an artificially high value can result in the same ultimate payment as a high payment percentage applied to a lower value.

**Table 4.4**
**Mesothelioma Claim Values**

| Item | Minimum | Percentile | | | Maximum |
| | | 20th | 50th | 80th | |
|---|---|---|---|---|---|
| Prior to applying payment percentage | | | | | |
| Scheduled value ($ thousands) (30 trust-claim-class combinations) | 7 | 59 | 126 | 203 | 1,200 |
| Average value ($ thousands) (23 trust-claim-class combinations) | 45 | 99 | 180 | 262 | 524 |
| Payment percentage (29 trust-claim-class combinations) | 1.1 | 9.4 | 25.0 | 46.3 | 100.0 |
| After applying payment percentage | | | | | |
| Scheduled value ($ thousands) (28 trust-claim-class combinations) | 1 | 13 | 27 | 68 | 240 |
| Average value ($ thousands) (21 trust-claim-class combinations) | 13 | 23 | 41 | 101 | 238 |

The bottom rows in Table 4.4 summarize the distribution of the scheduled and average values for mesothelioma claims once the payment percentage has been applied. As indicated in Appendix B, not all trusts apply the payment percentage to every disease level, and the scheduled and average values after payment percentage are calculated accordingly. The resulting medians for the scheduled and average values are $27,000 and $41,000, respectively. The individual values are graphed in Figures 4.6 and 4.7. Scheduled values net of payment percentage are typically under $50,000, although they range between $50,000 and $238,000 for a number of trusts. Average values net of payment percentage for mesothelioma claims range from $13,000 to $238,000 across the trust-claim-class combinations reporting (see Figure 4.7).

Trusts recognize various disease levels, and the scheduled and average values are usually set for each. While mesothelioma is always considered a separate disease level, the number of other disease levels varies by trust. It is most common to set up seven or eight standard disease levels, and 15 of the 26 selected trusts do so. In presenting figures on the average and scheduled values for the nonmesothelioma disease levels, we restrict our attention to these 15 trusts, because the disease level used by other trusts often do not map cleanly into the most commonly used levels. We also report the mesothelioma values for this subset of trusts to facilitate comparison across disease levels.

Table 4.5 summarizes the distributions of the scheduled and average values by disease level for the trust-claim-class combinations at the 15 trusts for which data are available. For reasons discussed in Chapter Three, expedited review is generally not allowed for claims alleging lung cancer 2; consequently, trusts do not set a scheduled value for this disease level. Following mesothelioma, the median scheduled value and median average value are highest for lung cancer 1 and severe asbestosis. The medians of both the scheduled and average values are considerably lower for the other disease categories.

Table 4.6 summarizes the distribution of the scheduled and average values after the payment percentage has been applied, if appropriate. At $38,000, the median of the average value for the set of trusts with comparable disease levels is considerably higher for mesothelioma than for other disease levels. Again, there is wide variation across trusts.

**Figure 4.5**
**Payment Percentage**



## Composition of Trust Governing Bodies

Members of the same organization are frequently represented on the governing and advisory bodies of different trusts. At the 26 selected trusts, we identified a total of 255 different positions for trustees, TAC members, FCRs, trust counsel, TAC counsel, and FCR counsel. There were 122 different individuals filling these 255 positions, representing 83 different organizations. While the lists assembled for trustees, TAC members, and FCRs are fairly complete, the

**Figure 4.6**
**Scheduled Value for Mesothelioma Claims After Applying Payment Percentage**



Scheduled value after applying payment percentage ($ thousands)

RAND *TR872-4.6*

lists for trust counsel, TAC counsel, and FCR counsel are less complete because it is more difficult to obtain the information on who is serving in these capacities.

Table 4.7 shows the organizations represented at more than five different trusts. The Kazan firm is represented at more than half of the 26 trusts, and the other firms are represented at sizable percentages. These organizations tend to be represented at the larger trusts (see Table 4.7): The combined assets of the trusts at which a firm is represented as a percentage of total year-end 2008 assets of the selected trusts is larger than the percentage of trusts at which

**Figure 4.7**
**Average Value for Mesothelioma Claims After Applying Payment Percentage**



the organization is represented. The involvement of all of these firms and sizable share of the selected trusts reflect the leading role that they play in asbestos litigation or in the bankruptcy process and the creation of asbestos trusts.

Table 4.8 indicates that the most–frequently represented organizations specialize in the roles they take on at the different trusts. Seven of the nine organizations are represented on TACs and assume other roles at the trust. These seven organizations are all plaintiffs' law firms. The other two firms, Campbell and Levine and Caplin and Drysdale, are trust counsel and TAC counsel, respectively, at multiple trusts.

**Table 4.5**
**Scheduled and Average Values, by Disease Level, at Trusts with Seven or Eight Disease Levels ($ thousands)**

| Value | Minimum | 20th | 50th | 80th | Maximum |
|---|---|---|---|---|---|
| | | Percentile | | | |
| **Scheduled values ($ thousands)** | | | | | |
| Mesothelioma (20 trust-claim-class combinations) | 11 | 68 | 136 | 176 | 350 |
| Lung cancer 1 (20 trust-claim-class combinations) | 3 | 25 | 41 | 52 | 120 |
| Lung cancer 2 (1 trust-claim-class combination) | — | — | — | — | — |
| Other cancer (20 trust-claim-class combinations) | 2 | 10 | 15 | 22 | 65 |
| Severe asbestosis (19 trust-claim-class combinations) | 9 | 25 | 30 | 46 | 120 |
| Asbestosis/pleural disease 1 (20 trust-claim-class combinations) | 1 | 5 | 8 | 12 | 25 |
| Asbestosis/pleural disease 2 (20 trust-claim-class combinations) | 1 | 1 | 3 | 5 | 12 |
| Other asbestos disease (16 trust-claim-class combinations) | 0.1 | 0.2 | 0.3 | 0.4 | 0.6 |
| **Average values ($ thousands)** | | | | | |
| Mesothelioma (18 trust-claim-class combinations) | 63 | 99 | 181 | 245 | 425 |
| Lung cancer 1 (18 trust-claim-class combinations) | 12 | 35 | 53 | 59 | 135 |
| Lung cancer 2 (19 trust-claim-class combinations) | 3 | 12 | 15 | 20 | 45 |
| Other cancer (18 trust-claim-class combinations) | 5 | 15 | 19 | 28 | 70 |
| Severe asbestosis (18 trust-claim-class combinations) | 10 | 28 | 36 | 53 | 135 |
| Asbestosis/pleural disease 1 (9 trust-claim-class combinations) | 3 | 7 | 10 | 15 | 20 |
| Asbestosis/pleural disease 2 (8 trust-claim-class combinations) | 1 | 3 | 5 | 7 | 9 |
| Other asbestos disease (no trust-claim-class combinations) | — | — | — | — | — |

**A.1428**

**Table 4.6**
**Scheduled and Average Values, by Disease Level, at Trusts with Seven or Eight Disease Levels, After Payment Percentage Applied ($ thousands)**

| Value | Minimum | 20th | 50th | 80th | Maximum |
|---|---|---|---|---|---|
| | | **Percentile** | | | |
| **Scheduled values** | | | | | |
| Mesothelioma (18 trust-claim-class combinations) | 9 | 14 | 27 | 38 | 150 |
| Lung cancer 1 (18 trust-claim-class combinations) | 3 | 4 | 8 | 13 | 65 |
| Lung cancer 2 (1 trust-claim-class combination) | — | — | — | — | — |
| Other cancer (18 trust-claim-class combinations) | 1 | 2 | 4 | 5 | 30 |
| Severe asbestosis (17 trust-claim-class combinations) | 2 | 4 | 8 | 12 | 60 |
| Asbestosis/pleural disease 1 (18 trust-claim-class combinations) | 0.4 | 1 | 2 | 3 | 8 |
| Asbestosis/pleural disease 2 (18 trust-claim-class combinations) | 0.1 | 0.4 | 1 | 1 | 4 |
| Other asbestos disease (16 trust-claim-class combinations) | 0.1 | 0.2 | 0.3 | 0.4 | 0.6 |
| **Average values** | | | | | |
| Mesothelioma (16 trust-claim-class combinations) | 13 | 20 | 38 | 96 | 238 |
| Lung cancer 1 (16 trust-claim-class combinations) | 3 | 5 | 11 | 25 | 90 |
| Lung cancer 2 (19 trust-claim-class combinations) | 3 | 12 | 15 | 20 | 45 |
| Other cancer (16 trust-claim-class combinations) | 1 | 3 | 5 | 8 | 50 |
| Severe asbestosis (16 trust-claim-class combinations) | 3 | 5 | 9 | 16 | 68 |
| Asbestosis/pleural disease 1 (7 trust-claim-class combinations) | 1 | 1 | 2 | 7 | 16 |
| Asbestosis/pleural disease 2 (6 trust-claim-class combinations) | 0.6 | 0.6 | 0.9 | 4 | 8 |
| Other asbestos disease (no trust-claim-class combinations) | — | — | — | — | — |

**Table 4.7**
**Organizations Most Frequently Represented at the 26 Selected Trusts**

| Organization | Number of Trusts at Which Firm Was Represented | | 2008 Assets of Trusts at Which Firm Was Represented | |
|---|---|---|---|---|
| | Number | Percentage of Selected Trusts | Assets ($ billions) | Percentage of Assets of Selected Trusts |
| Kazan, McClain, Abrams, Lyons, Greenwood and Harley | 15 | 58 | 11.6 | 64 |
| Baron and Budd | 11 | 42 | 11.5 | 63 |
| Cooney and Conway | 11 | 42 | 13.3 | 73 |
| Weitz and Luxenberg | 11 | 42 | 13.4 | 74 |
| Motley Rice | 8 | 31 | 9.4 | 52 |
| Bergman Draper and Frockt | 6 | 23 | 5.5 | 30 |
| Campbell and Levine | 6 | 23 | 8.0 | 44 |
| Caplin and Drysdale | 6 | 23 | 10.4 | 57 |
| Goldberg Persky White | 6 | 23 | 10.3 | 57 |

**Table 4.8**
**Positions of the Most Frequently Represented Organizations**

| Organization | Trustee | TAC Member | FCR | Counsel | | |
|---|---|---|---|---|---|---|
| | | | | Trust | TAC | FCR |
| Kazan, McClain, Abrams, Lyons, Greenwood and Harley | | x | | | | |
| Baron and Budd | | x | | | | |
| Cooney and Conway | | x | | | | |
| Weitz and Luxenberg | | x | | | | |
| Motley Rice | | x | | | | |
| Bergman Draper and Frockt | | x | | | | |
| Campbell and Levine | | | | x | | |
| Caplin and Drysdale | | | | | x | |
| Goldberg Persky White | | x | | | | |

**A.1430**

CHAPTER FIVE

# Conclusion

The publicly available information on asbestos bankruptcy trusts is a useful resource and provides an overview of trust practices and activity. However, it is limited in many important ways. Data on important variables, such as the number of claims filed, are incomplete, and it is difficult to locate information for the early years of the older trusts. Data by disease level are uneven, with less than half of the selected 26 trusts breaking out information for malignant and nonmalignant claims. Only a few trusts report data by disease level beyond the malignant/nonmalignant breakdown. In addition, disease-level categories vary across trusts, adding to the challenges of comparing claim valuations and payments by disease level across trusts. Trusts do not follow a common set of accounting principles when preparing financial statements, which makes it difficult to compare financial performance across trusts and develop measures of gross claimant compensation as a percentage of trust expenditures.

From the perspective of trying to understand the role of the trusts in the compensation for asbestos-related injuries, perhaps the most-significant limitation of the publicly available data is the inability to link payments across trusts to the same individual. It is not possible to use trust-level data to determine the number of trusts providing payments to the same individual or the amount the trusts together pay to an individual claimant. This lack of information makes it difficult or perhaps impossible to evaluate the trusts' effect on the overall compensation provided to individual claimants and on the compensation paid by solvent defendants.

Information on individual settlements is very difficult to obtain from solvent defendants and from plaintiffs' attorneys. In the past, researchers have had success obtaining individual settlement data from a number of solvent defendants on a confidential basis (see, for example, Carroll, Hensler, et al., 2005). Researchers have likewise been able to obtain individual data from the Manville Trust in the past, although, in recent years, the Manville Trust has declined to make these data available for research purposes. Researchers have also not been successful in obtaining individual asbestos compensation data from plaintiffs' attorneys.

The ability to understand the trusts' effects on overall claimant compensation and the compensation paid by solvent defendants will depend to a large extent on whether solvent defendants, trusts, and plaintiffs' attorneys are willing to release individual compensation information on a confidential basis for research purposes.

**A.1432**

A.1433

APPENDIX A
# List of Bankruptcies with at Least Some Asbestos Liability

Table A.1 lists 96 companies that have declared bankruptcy with some asbestos liability, by filing date. Asbestos liability was the main cause of bankruptcy in some cases but only a peripheral cause in others. The table reports the date bankruptcy was filed and the date the reorganization plan was confirmed. Also listed is the name of the asbestos bankruptcy trust that was established, if any. The status of the trust is listed in the last column.

**Table A.1**
**Chronological List of Bankruptcies with Some Asbestos Liability**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| UNR Industries | July 29, 1982 | June 2, 1989 | UNR Asbestos-Disease Claims Trust | Active |
| Unarco | July 29, 1982 | June 2, 1989 | UNR Asbestos-Disease Claims Trust | Active |
| Johns-Manville Corp. | August 1, 1982 | July 15, 1987 | Manville Personal Injury Settlement Trust | Active |
| Amatex Corp. | November 1, 1982 | April 25, 1990 | Amatex Asbestos Disease Trust Fund | Inactive |
| Waterman Steamship Corp. | December 1, 1983 | June 19, 1986 | — | — |
| Forty-Eight Insulations | April 19, 1985 | May 16, 1995 | Forty-Eight Insulations Qualified Settlement Trust | Inactive |
| Wallace and Gale Co. | November 16, 1985 | June 27, 1998 | Wallace and Gale Company Asbestos Settlement Trust | Inactive |
| Philadelphia Asbestos Corp. (Pacor) | July 1, 1986 | November 30, 1989 | Manville Personal Injury Settlement Trust | Active |
| Standard Insulations, Inc. | August 1, 1986 | October 26, 1992 | — | — |
| Prudential Lines, Inc. | November 4, 1986 | December 15, 1989 | PLI Disbursement Trust | Inactive |

**A.1434**

**Table A.1—Continued**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| McLean Industries | November 24, 1986 | May 16, 1989 | United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust | Inactive |
| United States Lines | November 24, 1986 | May 16, 1989 | United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust | Inactive |
| Gatke Corp. | March 2, 1987 | August 9, 1991 | — | — |
| Nicolet, Inc. | July 17, 1987 | September 21, 1989 | — | — |
| Todd Shipyards | August 17, 1987 | Unknown | — | — |
| Raymark Corp./ Raytech Corp. | March 10, 1989 | August 31, 2000 | Raytech Corporation Asbestos Personal Injury Settlement Trust | Active |
| Delaware Insulations | May 22, 1989 | September 9, 1992 | — | — |
| Hillsborough Holding Co. | December 27, 1989 | March 2, 1995 | — | — |
| Celotex Corp. | October 12, 1990 | December 6, 1996 | Celotex Asbestos Settlement Trust | Active |
| Carey Canada, Inc. | October 12, 1990 | October 6, 1996 | Celotex Asbestos Settlement Trust | Active |
| National Gypsum | October 28, 1990 | March 9, 1993 | NGC Bodily Injury Trust | Active |
| Eagle-Picher Industries | January 7, 1991 | November 18, 1996 | Eagle-Picher Industries Inc. Personal Injury Settlement Trust | Active |
| H. K. Porter Co. | February 15, 1991 | June 25, 1998 | H. K. Porter Asbestos Trust | Active |
| Kentile Floors | November 20, 1992 | December 10, 1998 | — | — |
| American Shipbuilding, Inc. | November 4, 1993 | October 11, 1994 | — | — |
| Keene Corp. | December 3, 1993 | June 13, 1996 | Keene Creditors Trust | Active |
| Lykes Bros. Steamship | October 11, 1995 | April 15, 1997 | Lykes Tort Claims Trust | Active |
| Rock Wool Manufacturing | November 18, 1996 | December 3, 1999 | Rock Wool Mfg Company Asbestos Trust | Inactive |
| Brunswick Fabricators | November 30, 1997 | Unknown | — | — |

**Table A.1—Continued**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| M. H. Detrick | January 13, 1998 | August 21, 2002 | M. H. Detrick Company Asbestos Trust | Inactive |
| Fuller-Austin | September 4, 1998 | November 13, 1998 | Fuller-Austin Asbestos Settlement Trust | Inactive |
| Harnischfeger Corp. | June 7, 1999 | May 18, 2001 | — | — |
| Rutland Fire Clay | October 13, 1999 | November 17, 2000 | Rutland Fire Clay Company Asbestos Trust | Inactive |
| Asbestos and Insulation Corporation (A&I Corporation) | November 5, 1999 | June 17, 2005 | A&I Corporation Asbestos Bodily Injury Trust | Active |
| Babcock and Wilcox Co. | February 22, 2000 | January 17, 2006 | Babcock and Wilcox Company Asbestos Personal Injury Settlement Trust | Active |
| Pittsburgh Corning | April 16, 2000 | n.y.c. | Pittsburgh Corning Corporation Asbestos PI Trust | Proposed |
| Stone and Webster Engineering | June 2, 2000 | January 16, 2004 | Stone and Webster Asbestos Trust | Active |
| Owens Corning Corp. | October 5, 2000 | October 31, 2006 | Owens Corning Fibreboard Asbestos Personal Injury Trust—Owens Corning Subfund | Active |
| Owens Corning Fibreboard | October 5, 2000 | October 31, 2006 | Owens Corning Fibreboard Asbestos Personal Injury Trust, Fibreboard Subfund | Active |
| E. J. Bartells | October 20, 2000 | February 14, 2001 | Bartells Asbestos Settlement Trust | Active |
| Burns and Roe Enterprises, Inc. | December 4, 2000 | February 20, 2009 | Burns and Roe Asbestos Personal Injury Settlement Trust | Active |
| Armstrong World Industries | December 6, 2000 | August 18, 2006 | Armstrong World Industries Asbestos Personal Injury Settlement Trust | Active |
| G-1 Holdings, Inc. | January 5, 2001 | November 12, 2009 | G-1 Asbestos Personal Injury Settlement Trust | Active |
| Murphy Marine Services | March 21, 2001 | July 25, 2002 | — | — |

**A.1436**

50   Asbestos Bankruptcy Trusts

**Table A.1—Continued**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| W. R. Grace | April 1, 2001 | n.y.c. | W. R. Grace and Co. Asbestos Personal Injury Settlement Trust | Proposed |
| Skinner Engine Co. | April 16, 2001 | n.y.c. | Skinner Engine Co. Asbestos Trust | Proposed |
| United States Mineral Products | June 23, 2001 | November 30, 2005 | United States Mineral Products Company Asbestos Personal Injury Settlement Trust | Active |
| USG Corp. | June 25, 2001 | June 15, 2006 | United States Gypsum Asbestos Personal Injury Settlement Trust | Active |
| Insul Co. | September 4, 2001 | June 7, 2005 | — | — |
| Federal Mogul (Turner & Newall, Flexitallic, Ferodo) | October 1, 2001 | November 13, 2007 | Federal Mogul U.S. Asbestos Personal Injury Trust, Turner & Newall Subfund | Active |
| Federal Mogul (Federal Mogul Products/Wagner) | October 1, 2001 | November 13, 2007 | Federal Mogul U.S. Asbestos Personal Injury Trust, FMP Subfund | Active |
| Federal Mogul (Federal Mogul Corporation/ Vellumoid) | October 1, 2001 | November 13, 2007 | Federal Mogul U.S. Asbestos Personal Injury Trust, Vellumoid Subfund | Active |
| Federal Mogul (Felt Products Manufacturing) | October 1, 2001 | November 13, 2007 | Federal Mogul U.S. Asbestos Personal Injury Trust, Fel-Pro Subfund | Active |
| Swan Transportation Co. | December 20, 2001 | July 21, 2003 | Swan Asbestos and Silica Settlement Trust | Active |
| North American Refractories Corp. (NARCO) | January 4, 2002 | July 25, 2008 | North American Refractories Company Asbestos Personal Injury Settlement Trust | Proposed |
| Kaiser Aluminum | February 12, 2002 | May 11, 2006 | Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust | Active |
| J. T. Thorpe, Inc. | February 12, 2002 | January 19, 2006 | J. T. Thorpe Settlement Trust | Active |
| Global Industrial Technologies (Harbison-Walker) | February 14, 2002 | November 13, 2007 | DII Industries, LLC Asbestos PI Trust | Active |
| A. P. Green | February 14, 2002 | December 16, 2003 | APG Asbestos Trust | Proposed |

**A.1437**

**Table A.1—Continued**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| Plibrico Co. | March 13, 2002 | January 30, 2006 | Plibrico 524(g) Trust | Active |
| Porter-Hayden Co. | March 15, 2002 | July 5, 2006 | Porter Hayden Bodily Injury Trust | Active |
| Special Metals Corp. | March 27, 2002 | September 29, 2003 | — | — |
| Shook and Fletcher | April 8, 2002 | October 29, 2002 | Shook and Fletcher Asbestos Settlement Trust | Active |
| ARTRA Group, Inc. | June 3, 2002 | January 25, 2007 | ARTRA 524(g) Asbestos Trust | Active |
| Asbestos Claims Management Corp. (ACMC) | August 19, 2002 | June 5, 2003 | NGC Bodily Injury Trust | Active |
| AC&S | September 16, 2002 | May 6, 2008 | ACandS Asbestos Settlement Trust | Active |
| A-Best Products | September 20, 2002 | June 7, 2004 | A-Best Asbestos Settlement Trust | Active |
| J. T. Thorpe Co. | October 1, 2002 | March 3, 2004 | J. T. Thorpe Company Successor Trust | Active |
| Western MacArthur/ Western Asbestos | November 22, 2002 | January 27, 2004 | Western Asbestos Trust | Active |
| Combustion Engineering | February 17, 2003 | March 1, 2006 | Combustion Engineering 524(g) Asbestos PI Trust | Active |
| Muralo Co. | May 20, 2003 | December 21, 2007 | Muralo Trust | Inactive |
| C. E. Thurston | August 18, 2003 | March 30, 2006 | C. E. Thurston and Sons Asbestos Trust | Active |
| Congoleum Corp. | December 1, 2003 | June 8, 2010 | Congoleum Plan Trust | Active |
| Mid-Valley, Inc. (Halliburton) | December 16, 2003 | July 21, 2004 | DII Industries, LLC Asbestos PI Trust | Active |
| Oglebay Norton Co. (ONCO) | February 23, 2004 | November 7, 2004 | — | — |
| Utex Industries | March 26, 2004 | June 16, 2004 | Utex Industries, Inc. Successor Trust | Active |
| Special Electric | April 15, 2004 | December 21, 2006 | — | — |
| Flintkote Co./ Flintkote Mines | May 1, 2004 | n.y.c. | Flintkote Company and Flintkote Mines Limited Asbestos Personal Injury Trust | Proposed |
| Quigley Co. (Pfizer) | September 3, 2004 | n.y.c. | Quigley Company, Inc. Asbestos PI Trust | Proposed |
| API, Inc. | January 6, 2005 | May 25, 2006 | API, Inc. Asbestos Settlement Trust | Active |

**A.1438**

**Table A.1—Continued**

| Company Name | Date Bankruptcy Filed | Date Reorganization Confirmed | Trust Established | Trust Status |
|---|---|---|---|---|
| Lake Asbestos of Quebec, Ltd. | August 9, 2005 | Unknown | ASARCO LLC Asbestos Personal Injury Settlement Trust | Active |
| ASARCO, LLC | August 9, 2005 | November 13, 2009 | ASARCO LLC Asbestos Personal Injury Settlement Trust | Active |
| Brauer Supply Co. | August 22, 2005 | January 5, 2007 | Brauer 524(g) Asbestos Trust | Active |
| Dana Corporation | March 3, 2006 | December 26, 2007 | — | — |
| ABB Lummus Global | April 21, 2006 | July 21, 2006 | Lummus 524(g) Asbestos PI Trust | Active |
| Lloyd E. Mitchell Co. | June 6, 2006 | Unknown | — | — |
| Thorpe Insulation Co. | October 15, 2007 | n.y.c. | Thorpe Insulation Company Asbestos Personal Injury Settlement Trust | Proposed |
| Pacific Insulation Co. | October 31, 2007 | n.y.c. | Thorpe Insulation Company Asbestos Personal Injury Settlement Trust | Proposed |
| Hercules Chemical Co. | September 18, 2008 | December 23, 2009 | — | — |
| Christy Refractories Co. LLC | October 29, 2008 | n.y.c. | — | — |
| T. H. Agriculture and Nutrition, LLC (THAN) | November 24, 2008 | October 26, 2009 | T. H. Agriculture and Nutrition, LLC Asbestos Personal Injury Trust | Active |
| Plant Insulation Co. | March 13, 2009 | n.y.c. | — | — |
| General Motors Corp. | June 1, 2009 | n.y.c. | Whether a trust will be established is uncertain | — |
| Durabla Manufacturing Co. | April 12, 2010 | n.y.c | Whether a trust will be established is uncertain | — |
| Bondex International Inc./ Specialty Products Holding Corp. | May 31, 2010 | n.y.c. | Trust not yet named | — |
| Garlock Sealing Technologies, LLC | June 5, 2010 | n.y.c. | Trust not yet named | — |

SOURCES: Plevin, Davis, and Bloomberg (2009); bankruptcy documents.

NOTE: n.y.c. = not yet confirmed.

**A.1439**

APPENDIX B
## Detailed Reports on Largest Trusts

This appendix contains detailed reports on 26 of the largest active trusts and three of the largest proposed trusts. Each report contains a number of different sections. Table B.1 lists the sections in the order presented for each trust with notes on the terms and definitions used. The reader should also consult the glossary definitions.

The following notations are used for missing data:

- Not available (n.a.) is used to indicate that the item is relevant to the trust but the trust either does not do the calculation or does not publicly release the information.
- Not applicable (n.appl.) is used to indicate that the item is not relevant to the trust (e.g., when a trust does not use a claim payment ratio).

**A.1440**

**Table B.1**
**Notes on Individual Trust Reports**

| Section | Notes |
|---|---|
| Bankruptcy court and trust administrative information | Each of the claim classes accepted by the trust is listed. These classes typically refer to different business divisions of the debtor or to claims from different geographic locations. |
| Trustees and advisers | — |
| Estimated initial funding of the trust | Insurance settlements exclude potential recoveries by the trust from the debtor's insurers after the trust is established. |
| Trust financial statement | *Investment fees* refers to the professional and other fees related to managing the trust's investment portfolio. |
| | Other deductions include payments on property-damage claims (or amounts set aside for such payments), costs related to stock or other asset sales, increases in outstanding claim offers, and amounts payable on contribution and indemnity claims. Of these, payment on property-damage claims is the largest component. |
| | Gross claimant compensation as a percentage of deductions is calculated as follows: Lower bound = (claim payments) × 100/(trust expenses + taxes + other deductions + claim payments). |
| | Upper bound = (claim payments + other deductions) × 100/(trust expenses + taxes + other deductions + claim payments). |
| | Negative taxes and other deductions are set to zero. |
| Claim valuation | If the values differ by claim class, separate tables are included. |
| Claim activity | — |
| Claim activity by disease level | Included for only those trusts that break down claim data by disease levels. Few trusts provide such a breakdown. |
| Claim-approval criteria | If the criteria vary by claim class, separate tables are included. The disease levels in this table match those in the claim valuation table. |
| | Exposure criterion of one day means that some exposure is required but there is no requirement on the amount. |

# ACandS Asbestos Settlement Trust

**ACandS Asbestos Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | AC&S | | |
| Bankruptcy filing date | 9/16/02 | Confirmation date | 5/6/08 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Active | | |
| Date trust established | 7/31/08 | | |
| Classes of claims processed | ACandS claims | | |
| Claim administrator | Verus Claims Services | | |
| Trust website | www.acandsasbestostrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Alfred Wolin | Saiber LLC |
| FCR | Lawrence Fitzpatrick | Asbestos Claims Facility |
| TAC Member | Armand Volta | Peter G. Angelos |
| TAC Member | Bryan Blevins | Provost Umphrey LLC |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| Trust Counsel | Carl Kunz | Morris James LLP |
| Trust Counsel | Kevin E. Irwin | Keating Muething & Klekamp PLL |
| Trust Counsel | Sue A. Erhart | Keating Muething & Klekamp PLL |

## Estimated Initial Funding of Trust ($millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 0 | 0 |
| Stock from debtors(s) | 5.3 | 0 |
| Insurance settlements | 522.3 | 0 |
| Other assets | 0 | 0 |
| Total | 527.6 | 0 |

**A.1442**

**ACandS Asbestos Settlement Trust (continued)**

Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 0 | 0 |
| Additions |  |  |  |  |
| Cash from debtors | 0 | 0 | 0 | 0 |
| Stock from debtors | 0 | 0 | 0 | 5,286,000 |
| Insurance settlements | 0 | 0 | 0 | 522,310,991 |
| Investment gains | 0 | 0 | 0 | 127,728 |
| Investment income | 0 | 0 | 0 | 2,930,991 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
| Trust expenses | 0 | 0 | 0 | 715,702 |
| Claim processing costs | 0 | 0 | 0 | 30,000 |
| Investment fees | 0 | 0 | 0 | 109,805 |
| All other expenses | 0 | 0 | 0 | 575,897 |
| Taxes | 0 | 0 | 0 | 0 |
| Claim payments | 0 | 0 | 0 | 184,823,525 |
| Other deductions | 0 | 0 | 0 | 44,900,000 |
| Ending trust assets | 0 | 0 | 0 | 300,216,483 |

Gross claimant compensation as a percentage of deductions

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Lower bound | – | – | – | 80.2% |
| Upper bound | – | – | – | 99.7% |

Claim Valuation for ACandS claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 150,000 | 220,000 | 550,000 |
| Lung Cancer 1 | 50,000 | 55,000 | 125,000 |
| Lung Cancer 2 | n.appl. | 12,000 | 50,000 |
| Other Cancer | 14,000 | 15,000 | 50,000 |
| Severe Asbestosis | 40,000 | 45,000 | 100,000 |
| Asbestosis / Pleural Disease II | 7,500 | n.appl. | n.appl. |
| Asbestosis / Pleural Disease I | 3,000 | n.appl. | n.appl. |

Payment percentage

| | |
|---|---|
| Initial payment percentage | 5.8% |
| Current payment percentage | 5.8% |

Claim payment ratio

| | |
|---|---|
| Malignancies and severe asbestosis | 82.9% |
| Asbestosis and pleural disease | 17.1% |

**A.1443**

**ACandS Asbestos Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | n.a. | n.a. |
| Non-malignant | 0 | 0 | 0 | n.a. | n.a. |
| Not specified | 0 | 0 | 0 | 217,500 | 217,500 |
| All disease types | 0 | 0 | 0 | 217,500 | 217,500 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | n.a. | n.a. |
| Non-malignant | 0 | 0 | 0 | n.a. | n.a. |
| Not specified | 0 | 0 | 0 | 199,855 | 199,855 |
| All disease types | 0 | 0 | 0 | 199,855 | 199,855 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | n.a. | n.a. |
| Non-malignant | 0 | 0 | 0 | n.a. | n.a. |
| Not specified | 0 | 0 | 0 | 184,797,996 | 184,797,996 |
| All disease types | 0 | 0 | 0 | 184,797,996 | 184,797,996 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | 925 | 925 |
| All disease types | – | – | – | 925 | 925 |

**A.1444**

**ACandS Asbestos Settlement Trust (continued)**

| Claim Approval Criteria for ACandS claims | Meso | LC1 | LC2 | OC | SA | AP2 | AP1 |
|---|---|---|---|---|---|---|---|
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | |
| AND FEV1/FVC ratio > | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo |
| c. Occupational exposure | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr |
| (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo |

# API, Inc. Asbestos Settlement Trust

**API, Inc. Asbestos Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | API, Inc. | | |
| Bankruptcy filing date | 1/6/05 | Confirmation date | 5/25/06 |
| Bankruptcy court | Bankr. D. Minn. | Bankruptcy judge | Gregory Kishel |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 2006 |
| Classes of claims processed | API, Inc. claims - Minnesota |
| | API, Inc. claims - North Dakota |
| Claim administrator | Brownson & Ballou Attorneys and Counselors, PLLP |
| Trust website | www.apiincasbestossettlementtrust.com |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Robert Brownson | Brownson & Ballou, PLLP |
| FCR | Thomas Carey | Retired Minnesota state judge |
| TAC Member | Michael Polk | Sieben Polk |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 41.0 | 0 |
| Stock from debtors(s) | 0 | 0 |
| Insurance settlements | 53.0 | 0 |
| Other assets | 0 | 0 |
| Total | 94.0 | 0 |

**A.1446**

**API, Inc. Asbestos Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | 0 | 0 | 0 | 82,940,662 |
| Additions | | | | |
|    Cash from debtors | 0 | 0 | 15,000,000 | 0 |
|    Stock from debtors | 0 | 0 | 0 | 0 |
|    Insurance settlements | 0 | 0 | 53,112,972 | 24,536 |
|    Investment gains | 0 | 0 | 0 | -552,358 |
|    Investment income | 0 | 0 | 215,524 | 690,833 |
|    Other additions | 0 | 0 | 26,000,000 | 3,300 |
| Deductions | | | | |
|    Trust expenses | 0 | 0 | 3,084,814 | 488,701 |
|       Claim processing costs | 0 | 0 | n.a. | n.a. |
|       Investment fees | 0 | 0 | n.a. | 40,270 |
|       All other expenses | 0 | 0 | n.a. | n.a. |
|    Taxes | 0 | 0 | 0 | 0 |
|    Claim payments | 0 | 0 | 8,303,020 | 34,809,852 |
|    Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 0 | 82,940,662 | 47,808,420 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | – | 72.9% | 98.6% |
|    Upper bound | – | – | 72.9% | 98.6% |

| Claim Valuation for | API, Inc. claims - Minnesota | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|    Mesothelioma | 316,250 | n.appl. | n.appl. |
|    Lung Cancer | 137,050 | n.appl. | n.appl. |
|    Other Cancer | 73,800 | n.appl. | n.appl. |
|    Asbestosis | 57,200 | n.appl. | n.appl. |
|    Pleural | 30,150 | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|    Initial payment percentage | 13.5% | | |
|    Current payment percentage | 55.0% | | |
| | | | |
| Claim payment ratio | | | |
|    Malignancies and severe asbestosis | n.appl. | | |
|    Asbestosis and pleural disease | n.appl. | | |

| Claim Valuation for | API, Inc. claims - North Dakota | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|    Mesothelioma | 117,087 | n.appl. | n.appl. |
|    Lung Cancer | 44,777 | n.appl. | n.appl. |
|    Other Cancer | 16,884 | n.appl. | n.appl. |
|    Asbestosis | 16,500 | n.appl. | n.appl. |
|    Pleural | 12,000 | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|    Initial payment percentage | 13.5% | | |
|    Current payment percentage | 13.5% | | |
| | | | |
| Claim payment ratio | | | |
|    Malignancies and severe asbestosis | n.appl. | | |
|    Asbestosis and pleural disease | n.appl. | | |

**A.1447**

**API, Inc. Asbestos Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 0 | 0 | 36 | n.a. | n.a. |
| Non-malignant | 0 | 0 | 13 | n.a. | n.a. |
| Not specified | 0 | 0 | 0 | n.a. | n.a. |
| All disease types | 0 | 0 | 49 | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 5 | 70 | 75 |
| Non-malignant | 0 | 0 | 0 | 65 | 65 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 5 | 135 | 140 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 212,836 | 11,635,179 | 11,848,016 |
| Non-malignant | 0 | 0 | 0 | 1,660,205 | 1,660,205 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 212,836 | 13,295,384 | 13,508,221 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 42,567 | 166,217 | 157,974 |
| Non-malignant | – | – | – | 25,542 | 25,542 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 42,567 | 98,484 | 96,487 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | n.a. | n.a. | n.a. |
| All disease types | 0 | 0 | n.a. | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 64 | 64 | 128 |
| Non-malignant | 0 | 0 | 621 | 623 | 1,244 |
| Not specified | 0 | 0 | 1 | 1 | 2 |
| All disease types | 0 | 0 | 686 | 688 | 1,374 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 2,535,082 | 6,993,006 | 9,528,088 |
| Non-malignant | 0 | 0 | 5,119,675 | 13,674,245 | 18,793,920 |
| Not specified | 0 | 0 | 94,297 | 255,703 | 350,000 |
| All disease types | 0 | 0 | 7,749,054 | 20,922,954 | 28,672,008 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 39,611 | 109,266 | 74,438 |
| Non-malignant | – | – | 8,244 | 21,949 | 15,108 |
| Not specified | – | – | 94,297 | 255,703 | 175,000 |
| All disease types | – | – | 11,296 | 30,411 | 20,868 |

[a] Claims filed data are not complete

**A.1448**

**API, Inc. Asbestos Settlement Trust (continued)**

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
| Mesothelioma | 0 | 49 | 99 | 148 |
| Lung cancer | 0 | 18 | 33 | 51 |
| Other cancer | 0 | 2 | 2 | 4 |
| Asbestosis | 0 | 397 | 444 | 841 |
| Pleural | 0 | 224 | 244 | 468 |
| Unknown | 0 | 1 | 1 | 2 |
| Claims payments ($) | | | | |
| Mesothelioma | 0 | 2,318,807 | 16,411,469 | 18,730,276 |
| Lung cancer | 0 | 406,808 | 2,156,236 | 2,563,044 |
| Other cancer | 0 | 22,303 | 60,480 | 82,783 |
| Asbestosis | 0 | 3,862,030 | 11,857,656 | 15,719,686 |
| Pleural | 0 | 1,257,646 | 3,476,794 | 4,734,439 |
| Unknown | 0 | 94,297 | 255,703 | 350,000 |
| Average payment per claim ($) | | | | |
| Mesothelioma | – | 47,323 | 165,772 | 126,556 |
| Lung cancer | – | 22,600 | 65,340 | 50,256 |
| Other cancer | – | 11,152 | 30,240 | 20,696 |
| Asbestosis | – | 9,728 | 26,706 | 18,692 |
| Pleural | – | 5,614 | 14,249 | 10,116 |
| Unknown | – | 94,297 | 255,703 | 175,000 |

**A.1449**

**API, Inc. Asbestos Settlement Trust (continued)**

| Claim Approval Criteria for | API, Inc. claims - Minnesota and North Dak | | | | |
|---|---|---|---|---|---|
| | _Meso_ | _LC_ | _OC_ | _AB_ | _PL_ |
| 1.  Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | |
|    a. Physical exam | | | | | |
|    b. Pathology | | | | | ✔ |
|    c. Medical document review | | | | | |
| 2. ILO or x-ray requirement | | | | | |
|    a. ILO reading | | | | | |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | |
|      (1) Bilateral interstitial fibrosis | | | ✔ | | |
|      (2) Bilateral pleural plaques | | | ✔ | | ✔ |
|      (3) Bilateral pleural thickening | | | ✔ | | ✔ |
|      (4) Bilateral pleural calcification | | | | | |
| 3. Pulmonary function test requirement | | | | | |
|    a. TLC < (% of normal) | | | | | |
|      AND FEV1/FVC ratio > | | | | | |
| OR  b. DLCO < (% of normal) | | | | | |
|      AND FEV1/FVC ratio > | | | | | |
| OR  c. FVC < (% of normal) | | | | | |
|      AND FEV1/FVC ratio > | | | | | |
| 4.  Causation statement requirement | Yes | Yes | Yes | Yes | Yes |
| 5.  Latency and exposure requirements | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 1 day | 1 day | 1 day | 1 day |
|    c. Occupational exposure | | | | | |
|      (1) Total | | | | | |
|      (2) Prior to 1983 | | | | | |

A.1450

# Armstrong World Industries Asbestos Personal Injury Settlement Trust

**Armstrong World Industries Asbestos Personal Injury Settlement Trust**

| Bankruptcy Court and Trust Administrative Information | | | |
|---|---|---|---|
| Debtor(s) | Armstrong World Industries | | |
| | | | |
| Bankruptcy filing date | 12/6/00 | Confirmation date | 8/18/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| | | | |
| Trust status | Active | | |
| Date trust established | 10/2/06 | | |
| Classes of claims processed | Armstrong World Industries claims | | |
| Executive director | Thomas Florence | | |
| Claim administrator | Delaware Claims Processing Facility | | |
| Trust website | www.armstrongworldasbestostrust.com | | |

| Trustees and Advisors | | |
|---|---|---|
| *Position* | *Name* | *Affiliation* |
| Trustee | Anne Ferazzi | unknown |
| Trustee | Harry Huge | Harry Huge Law Firm, LLP |
| Trustee | Richard Neville | JAMS |
| FCR | Dean Trafelet | Retired Cook County Circuit Court Judge |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| Trust Counsel | Carl Kunz | Morris James LLP |
| Trust Counsel | Kevin E. Irwin | Keating Muething & Klekamp PLL |
| Trust Counsel | Sue A. Erhart | Keating Muething & Klekamp PLL |
| Trust Counsel | Jennifer Morales | Keating Muething & Klekamp PLL |

| Estimated Initial Funding of Trust ($ millions) | | |
|---|---|---|
| | *Funding for Claims Paid Through Trust* | *Funding for Claims Paid Outside Trust* |
| Cash from debtor(s) | 738.5 | 0 |
| Stock from debtors(s) | 1,323.1 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 2,061.6 | 0 |

**Armstrong World Industries Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 ° | 2007 | 2008 |
| Beginning trust assets | 0 | 0 | 2,308,676,202 | 2,235,068,939 |
| Additions | | | | |
| Cash from debtors | 0 | n.a. | 0 | 0 |
| Stock from debtors | 0 | n.a. | 0 | 0 |
| Insurance settlements | 0 | n.a. | 0 | 0 |
| Investment gains | 0 | n.a. | -75,021,580 | -767,109,978 |
| Investment income | 0 | n.a. | 26,550,958 | 27,117,624 |
| Other additions | 0 | n.a. | 0 | 166,416,660 |
| Deductions | | n.a. | | |
| Trust expenses | 0 | n.a. | 12,329,548 | 17,933,038 |
| Claim processing costs | 0 | n.a. | 3,069,070 | 7,484,240 |
| Investment fees | 0 | n.a. | 1,625,351 | 3,064,159 |
| All other expenses | 0 | n.a. | 7,635,127 | 7,384,639 |
| Taxes | 0 | n.a. | 0 | 19,339,059 |
| Claim payments | 0 | 0 | 12,807,093 | 135,999,706 |
| Other deductions | 0 | n.a. | 0 | 0 |
| Ending trust assets | 0 | 2,308,676,202 | 2,235,068,939 | 1,488,221,442 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | -- | 0.0% | 50.9% | 78.5% |
| Upper bound | -- | 0.0% | 50.9% | 78.5% |

° Financial statements for 2006 were restated, but restated figures not available.

| Claim Valuation for | Armstrong World Industries claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 110,000 | 130,500 | 400,000 |
| Lung Cancer 1 | 42,500 | 43,800 | 150,000 |
| Lung Cancer 2 | n.appl. | 15,000 | 50,000 |
| Other Cancer | 21,500 | 21,800 | 75,000 |
| Severe Asbestosis | 42,500 | 44,300 | 140,000 |
| Asbestosis / Pleural Disease II | 9,700 | 10,100 | 20,000 |
| Asbestosis / Pleural Disease I | 3,700 | 4,200 | 10,000 |
| Other Asbestos Disease | 400 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
| Initial payment percentage | 20.0% |
| Current payment percentage | 20.0% |

| Claim payment ratio | |
|---|---|
| Malignancies and severe asbestosis | 65.0% |
| Asbestosis and pleural disease | 35.0% |

*Payment percentage does not apply

**Armstrong World Industries Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 18,891 | 16,488 | 35,379 |
| Non-malignant | 0 | 0 | 106,349 | 81,422 | 187,771 |
| Not specified | 0 | 0 | 83 | 0 | 83 |
| All disease types | 0 | 0 | 125,323 | 97,910 | 223,233 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 139 | 4,374 | 4,513 |
| Non-malignant | 0 | 0 | 1,834 | 33,795 | 35,629 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 1,973 | 38,169 | 40,142 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 2,143,641 | 73,146,762 | 75,290,403 |
| Non-malignant | 0 | 0 | 2,663,452 | 51,433,773 | 54,097,225 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 4,807,093 | 124,580,535 | 129,387,628 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 15,422 | 16,723 | 16,683 |
| Non-malignant | – | – | 1,452 | 1,522 | 1,518 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 2,436 | 3,264 | 3,223 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

**A.1454**

**Armstrong World Industries Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
| Mesothelioma | 0 | 52 | n.a. | n.a. |
| Lung cancer 1 | 0 | 52 | n.a. | n.a. |
| Lung cancer 2 | 0 | 0 | n.a. | n.a. |
| Other cancer | 0 | 35 | n.a. | n.a. |
| Severe asbestosis | 0 | 6 | n.a. | n.a. |
| Asbestosis/pleural disease 1 | 0 | 536 | n.a. | n.a. |
| Asbestosis/pleural disease 2 | 0 | 1,289 | n.a. | n.a. |
| Other | 0 | 3 | n.a. | n.a. |
| Unknown | 0 | 0 | 38,169 | 38,169 |
| Claims payments ($) | | | | |
| Mesothelioma | 0 | 1,376,005 | n.a. | n.a. |
| Lung cancer 1 | 0 | 567,161 | n.a. | n.a. |
| Lung cancer 2 | 0 | 0 | n.a. | n.a. |
| Other cancer | 0 | 200,474 | n.a. | n.a. |
| Severe asbestosis | 0 | 68,139 | n.a. | n.a. |
| Asbestosis/pleural disease 1 | 0 | 1,346,233 | n.a. | n.a. |
| Asbestosis/pleural disease 2 | 0 | 1,247,880 | n.a. | n.a. |
| Other | 0 | 1,200 | n.a. | n.a. |
| Unknown | 0 | 0 | 124,579,935 | 124,579,935 |
| Average payment per claim ($) | | | | |
| Mesothelioma | – | 26,462 | – | – |
| Lung cancer 1 | – | 10,907 | – | – |
| Lung cancer 2 | – | – | – | – |
| Other cancer | – | 5,728 | – | – |
| Severe asbestosis | – | 11,356 | – | – |
| Asbestosis/pleural disease 1 | – | 2,512 | – | – |
| Asbestosis/pleural disease 2 | – | 968 | – | – |
| Other | – | 400 | – | – |
| Unknown | – | – | 3,264 | 3,264 |

**A.1455**

**Armstrong World Industries Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | Armstrong World Industries claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Meso | LC1 | LC2 | OC | SA | AP1 | AP2 | OAD |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | | ✔ | | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | | ✔ | | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | | ✔ | | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

**A.1456**

# ASARCO LLC Asbestos Personal Injury Settlement Trust

**ASARCO LLC Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | ASARCO, LLC | | |
| | Lake Asbestos of Quebec, Ltd. | | |
| Bankruptcy filing date | 8/9/05 | Confirmation date | 11/13/09 |
| Bankruptcy court | Bankr. S.D. Tex. | Bankruptcy judge | Richard Schmidt |
| Trust status | Active - Pending Claims Processing | | |
| Date trust established | 2009 | | |
| Classes of claims processed | ASARCO claims | | |
| Claim administrator | Unknown | | |
| Trust website | Unknown | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| FCR | Robert Pate | Law Office of Robert C. Pate |
| Trust Counsel | Sander Esserman | Stutzman, Bromberg, Esserman & Plifka |
| TAC Counsel | Steven Felsenthal | Stutzman, Bromberg, Esserman & Plifka |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 527.5 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 22.8 | 0 |
| Other assets | 280.0 | 0 |
| Total | 830.3 | 0 |

A.1458

**ASARCO LLC Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ |
| Beginning trust assets | | | | |
| Additions | | | | |
|    Cash from debtors | | | | |
|    Stock from debtors | | | | |
|    Insurance settlements | | | | |
|    Investment gains | | | | |
|    Investment income | | | | |
|    Other additions | | | | |
| Deductions | TRUST NOT ESTABLISHED UNTIL 2009 | | | |
|    Trust expenses | | | | |
|       Claim processing costs | | | | |
|       Investment fees | | | | |
|       All other expenses | | | | |
|    Taxes | | | | |
|    Claim payments | | | | |
|    Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | – | – | – |
|    Upper bound | – | – | – | – |

| Claim Valuation for | ASARCO claims | | |
|---|---|---|---|
| | _Scheduled_ | _Average_ | _Maximum_ |
| _Disease level_ | _Value_ | _Value_ | _Value_ |
|    Mesothelioma | 170,000 | 280,000 | 900,000 |
|    Lung Cancer 1 | 60,000 | 90,000 | 150,000 |
|    Lung Cancer 2 | n.appl. | 15,000 | 35,000 |
|    Other Cancer | 20,000 | 32,000 | 75,000 |
|    Severe Asbestosis | 50,000 | 70,000 | 125,000 |
|    Asbestosis / Pleural Disease II | 7,500 | 8,000 | 25,000 |
|    Asbestosis / Pleural Disease I | 3,000 | n.appl. | n.appl. |
|    Other Asbestos Disease | 400 | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|    Initial payment percentage | 22.0% | | |
|    Current payment percentage | 22.0% | | |
| | | | |
| Claim payment ratio | | | |
|    Malignancies and severe asbestosis | 90.0% | | |
|    Asbestosis and pleural disease | 10.0% | | |

**ASARCO LLC Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | | TRUST NOT ESTABLISHED UNTIL 2009 | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

**ASARCO LLC Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | ASARCO | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP1_ | _AP2_ | _Other_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | 0 | 1/0 | 0 | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | | | | | | | | |

**A.1461**

# Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust

**Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Babcock & Wilcox Co. | | |
| | | | |
| Bankruptcy filing date | 2/22/00 | Confirmation date | 1/17/06 |
| Bankruptcy court | Bankr. E.D. La. | Bankruptcy judge | Jerry Brown |
| | | | |
| Trust status | Active | | |
| Date trust established | 2/22/06 | | |
| Classes of claims processed | Babcock & Wilcox Company claims | | |
| Claim administrator | Delaware Claims Processing Facility | | |
| Trust website | www.bwasbestostrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | James McMonagle | Vorys, Sater, Seymour and Pease LLP |
| Trustee | Jack Marionneaux | Retired Louisiana state judge |
| Trustee | Philip Pahigian | Retired from Wilentz, Goldman & Spitzer |
| FCR | Eric Green | Resolutions, LLC |
| TAC Member | J. Burton Leblanc | LeBlanc & Waddell |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Mark Meyer | Goldberg, Persky & White, P.C. |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Peter Kraus | Waters & Kraus, LLP |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| Trust Counsel | Douglas A. Campbell | Campbell & Levine, LLC |
| Trust Counsel | Philip E. Milch | Campbell & Levine, LLC |
| Trust Counsel | Marla R. Eskin | Campbell & Levine, LLC |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale, Chartered |
| FCR Counsel | Jim Patton | Young Conaway Stargatt & Taylor, LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 955.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 890.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 1,845.0 | 0 |

**A.1462**

**Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 1,638,859,492 | 1,589,295,140 |
| Additions | | | | |
| Cash from debtors | 0 | 955,000,000 | 0 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 0 | 710,534,312 | 136,879,441 | 61,327,500 |
| Investment gains | 0 | 4,489,477 | 30,935,297 | -142,463,875 |
| Investment income | 0 | 36,283,723 | 62,354,130 | 47,195,394 |
| Other additions | 0 | 19,974 | 0 | 0 |
| Deductions | | | | |
| Trust expenses | 0 | 8,076,564 | 15,704,642 | 13,736,870 |
| Claim processing costs | 0 | 1,922,264 | 7,546,757 | 6,372,630 |
| Investment fees | 0 | 685,766 | 3,503,983 | 2,493,258 |
| All other expenses | 0 | 6,154,300 | 8,157,885 | 4,870,982 |
| Taxes | 0 | 9,484,867 | -307 | -3,207,995 |
| Claim payments | 0 | 48,206,563 | 264,028,885 | 381,657,122 |
| Other deductions | 0 | 1,700,000 | 0 | 0 |
| Ending trust assets | 0 | 1,638,859,492 | 1,589,295,140 | 1,163,168,162 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | – | 71.5% | 94.4% | 96.5% |
| Upper bound | – | 74.0% | 94.4% | 96.5% |

| Claim Valuation for | Babcock & Wilcox Company claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 90,000 | 120,000 | 400,000 |
| Lung Cancer 1 | 35,000 | 45,000 | 150,000 |
| Lung Cancer 2 | n.appl. | 15,000 | 50,000 |
| Other Cancer | 18,500 | 22,500 | 75,000 |
| Severe Asbestosis | 35,000 | 37,000 | 15,000 |
| Asbestosis / Pleural Disease II | 10,000 | n.appl. | n.appl. |
| Asbestosis / Pleural Disease I | 5,000 | n.appl. | n.appl. |
| Other Asbestos Disease | 250 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
| Initial payment percentage | 34.0% |
| Current payment percentage | 15.0% |

| Claim payment ratio | |
|---|---|
| Malignancies and severe asbestosis | 62.0% |
| Asbestosis and pleural disease | 38.0% |

*Payment percentage does not apply

**A.1463**

**Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | *Pre-2006* | *2006* | *2007* | *2008* | *Total* |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Not specified | 0 | 103,017 | 79,698 | 58,387 | 241,102 |
| All disease types | 0 | 103,017 | 79,698 | 58,387 | 241,102 |
| Claims paid | | | | | |
| Malignant | 0 | 63 | 5,098 | 11,081 | 16,242 |
| Non-malignant | 0 | 1,009 | 30,382 | 36,647 | 68,038 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 1,072 | 35,480 | 47,728 | 84,280 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 1,974,000 | 83,528,970 | 285,345,000 | 370,847,970 |
| Non-malignant | 0 | 2,726,000 | 146,175,698 | 95,115,000 | 244,016,698 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 4,700,000 | 229,704,668 | 380,460,000 | 614,864,668 |
| Average payment per claim ($) | | | | | |
| Malignant | – | 31,333 | 16,385 | 25,751 | 22,833 |
| Non-malignant | – | 2,702 | 4,811 | 2,595 | 3,586 |
| Not specified | – | – | – | – | – |
| All disease types | – | 4,384 | 6,474 | 7,971 | 7,295 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | n.a. | 0 | 0 | n.a. |
| Non-malignant | 0 | n.a. | 0 | 0 | n.a. |
| Not specified | 0 | 7,380 | 0 | 0 | 7,380 |
| All disease types | 0 | 7,380 | 0 | 0 | 7,380 |
| Claims paid | | | | | |
| Malignant | 0 | 419 | 285 | 31 | 735 |
| Non-malignant | 0 | 5,570 | 2,662 | 138 | 8,370 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 5,989 | 2,947 | 169 | 9,105 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 16,995,000 | 11,900,000 | 793,000 | 29,688,000 |
| Non-malignant | 0 | 13,905,000 | 11,900,000 | 397,000 | 26,202,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 30,900,000 | 23,800,000 | 1,190,000 | 55,890,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | 40,561 | 41,754 | 25,581 | 40,392 |
| Non-malignant | – | 2,496 | 4,470 | 2,877 | 3,130 |
| Not specified | – | – | – | – | – |
| All disease types | – | 5,159 | 8,076 | 7,041 | 6,138 |

**Babcock & Wilcox Company Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | Babcock & Wilcox Company claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *SA* | *AP1* | *AP2* | *OAD* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | No | Yes | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

# Burns and Roe Asbestos Personal Injury Settlement Trust

**Burns and Roe Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | |
|---|---|
| Debtor(s) | Burns and Roe Enterprises, Inc. |
| | Burns and Roe Construction Group, Inc. |
| Bankruptcy filing date | 12/4/00 for Burns and Roe Enterprises |
| | 10/12/05 for Burns and Roe Construction Group |
| Confirmation date | 2/20/09 |
| Bankruptcy court | Bankr. D. N.J.     Bankruptcy judge     Rosemary Gambardella |
| Trust status | Active |
| Date trust established | 7/16/09 |
| Classes of claims processed | Burns and Roe claims |
| Claim administrator | Unknown |
| Trust website | Unknown |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Alfred Wolin | Saiber LLC |
| FCR | Anthony Calascibetta | Wiss & Company, LLP |
| TAC Member | Deirdre Woulfe Pacheco | Wilentz, Goldman & Spitzer |
| TAC Member | Lisa Busch | Weitz & Luxenburg |
| Trust Counsel | Frances Gecker | Frank/Gecker LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 0.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 162.8 | 0 |
| Other assets | 9.3 | 0 |
| Total | 172.1 | 0 |

**A.1466**

**Burns and Roe Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | | | | |
| Additions | | | | |
|    Cash from debtors | | | | |
|    Stock from debtors | | | | |
|    Insurance settlements | | | | |
|    Investment gains | | | | |
|    Investment income | | | | |
|    Other additions | | | | |
| Deductions | | TRUST NOT ESTABLISHED UNTIL 2009 | | |
|    Trust expenses | | | | |
|      Claim processing costs | | | | |
|      Investment fees | | | | |
|      All other expenses | | | | |
|    Taxes | | | | |
|    Claim payments | | | | |
|    Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | – | – | – |
|    Upper bound | – | – | – | – |

| Claim Valuation for | Burns and Roe claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|    Mesothelioma | 60,000 | 90,000 | 500,000 |
|    Lung Cancer 1 | 30,000 | 40,000 | 200,000 |
|    Lung Cancer 2 | n.appl. | 15,000 | 50,000 |
|    Other Cancer | 15,000 | 18,500 | 50,000 |
|    Severe Asbestosis | 25,000 | 27,000 | 125,000 |
|    Asbestosis / Plueral Disease II | 5,000 | 5,400 | 15,000 |
|    Asbestosis / Plueral Disease I | 2,000 | 2,300 | 8,000 |
|    Other Asbestos Disease | 200 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
|    Initial payment percentage | 25.0% |
|    Current payment percentage | 25.0% |

| Claim payment ratio | |
|---|---|
|    Malignancies and severe asbestosis | 60.0% |
|    Asbestosis and pleural disease | 40.0% |

*Payment percentage does not apply

**A.1467**

**Burns and Roe Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | TRUST NOT ESTABLISHED UNTIL 2009 | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

**A.1468**

**Burns and Roe Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | Burns and Roe claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

# Celotex Asbestos Settlement Trust

**Celotex Asbestos Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Celotex Corp. | | |
| | Carey Canada, Inc. | | |
| Bankruptcy filing date | 10/12/90 | Confirmation date | 12/6/96 |
| Bankruptcy court | Bankr. M.D. Fla. | Bankruptcy judge | Paul Glenn |
| Trust status | Active | | |
| Date trust established | 5/30/97 | | |
| Classes of claims processed | Celotex claims | | |
| Executive Director | Thomas Florence | | |
| Claim administrator | Delaware Claims Processing Facility | | |
| Trust website | www.celotextrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Frank Andrews | Retired Texas state judge |
| Trustee | James Stevens | Self employed |
| Trustee | Sharon Meadows | Credit Suisse |
| FCR | James Patton | Young Conaway Stargatt & Taylor LLP |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Gary Kendall | Michie Hamlett Lowry Rasmussen & Tweel PLLC |
| Trust Counsel | Kevin Irwin | Keating Muething & Klekamp PLL |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 221.5 | 0 |
| Stock from debtors(s) | 526.8 | 0 |
| Insurance settlements | 141.2 | 0 |
| Other assets | 356.1 | 0 |
| Total | 1,245.6 | 0 |

**A.1470**

**Celotex Asbestos Settlement Trust (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 706,258,685 | 705,846,896 | 654,761,806 |
| Additions |  |  |  |  |
| Cash from debtors | 277,812,074 | 0 | 0 | 0 |
| Stock from debtors | 526,797,000 | 0 | 0 | 0 |
| Insurance settlements | 469,159,555 | 63,828,432 | 31,242,206 | 15,489,901 |
| Investment gains | -120,877,428 | 21,109,186 | 10,192,239 | -79,104,447 |
| Investment income | 163,962,952 | 32,061,592 | 29,735,870 | 22,324,671 |
| Other additions | 356,682,373 | 1,995,433 | 3,398,335 | 3,701 |
| Deductions |  |  |  |  |
| Trust expenses | 147,054,208 | 16,030,186 | 9,948,079 | 8,733,376 |
| Claim processing costs | 42,756,824 | 3,858,700 | 3,200,895 | 2,874,420 |
| Investment fees | 10,576,567 | 2,128,930 | 2,132,523 | 1,727,530 |
| All other expenses | 93,720,817 | 10,042,556 | 4,614,661 | 4,131,426 |
| Taxes | 147,732 | -426,782 | 0 | 0 |
| Claim payments | 566,850,491 | 98,942,480 | 108,276,558 | 69,923,986 |
| Other deductions | 246,697,260 | 4,860,548 | 7,429,103 | -2,484,443 |
| Ending trust assets | 706,258,685 | 705,846,896 | 654,761,806 | 537,302,713 |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
| Lower bound |  | 59.0% | 82.9% | 86.2% | 88.9% |
| Upper bound |  | 84.7% | 86.9% | 92.1% | 88.9% |

*(Note: "Lower bound" and "Upper bound" rows have values under Pre-2006, 2006, 2007, 2008 columns)*

## Claim Valuation for Celotex claims

| Disease level | Scheduled Value | Average [a] Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 11,000 * | 130,000 | 325,000 |
| Lung Cancer 2 | 3,200 * | 58,000 | 260,000 |
| Lung Cancer 1 | n.appl. | 39,000 | 260,000 |
| Other Cancer | 1,900 * | 26,000 | 130,000 |
| Disabling Bilateral Interstitial Lung Disease | n.appl. | 32,000 | 192,000 |
| Nondisabling Bilateral Interstitial Lung Disease | 1,300 * | 16,000 | 25,600 |
| Bilateral Pleural Disease | 650 * | 8,000 | 20,000 |

| Payment percentage |  |
|---|---|
| Initial payment percentage | 12.0% |
| Current payment percentage | 14.1% |

| Claim payment ratio |  |
|---|---|
| Malignancies and severe asbestosis | n.appl. |
| Asbestosis and pleural disease | n.appl. |

*Payment percentage does not apply
[a] Considers only claims that go through the individual review process.

**A.1471**

**Celotex Asbestos Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 625,000 | 14,185 | 12,114 | 8,000 | 659,299 |
| All disease types | 625,000 | 14,185 | 12,114 | 8,000 | 659,299 |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 280,256 | 28,658 | 18,147 | 18,778 | 345,839 |
| All disease types | 280,256 | 28,658 | 18,147 | 18,778 | 345,839 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 462,965,576 | 112,559,550 | 85,657,668 | 111,328,609 [a] | 772,511,403 |
| All disease types | 462,965,576 | 112,559,550 | 85,657,668 | 111,328,609 | 772,511,403 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 1,652 | 3,928 | 4,720 | 4,278 [b] | 2,234 |
| All disease types | 1,652 | 3,928 | 4,720 | 4,278 | 2,234 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | n.a. | n.a. | n.a. | n.a. | n.a. |
| All disease types | n.a. | n.a. | n.a. | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 1,859 | 0 | 1 | 0 | 1,860 |
| All disease types | 1,859 | 0 | 1 | 0 | 1,860 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 2,566,267 | 0 | 12,973 | 0 | 2,579,240 |
| All disease types | 2,566,267 | 0 | 12,973 | 0 | 2,579,240 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 1,380 | – | 12,973 | – | 1,387 |
| All disease types | 1,380 | – | 12,973 | – | 1,387 |

[a] Includes $31.0 million in payments on pre-2008 claims
[b] Excludes $31.0 million in payments for past claims

**Celotex Asbestos Settlement Trust (continued)**

| Claim Approval Criteria for | Celotex claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *DBILD* | *NDBILD* | *BPD* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
|    a. ILO reading | | | | | | | |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
|     (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | ✔ | ✔ | |
|     (2) Bilateral pleural plaques | | ✔ | | ✔ | | | ✔ |
|     (3) Bilateral pleural thickening | | ✔ | | ✔ | | | ✔ |
|     (4) Bilateral pleural calcification | | | | | | | |
| 3. Pulmonary function test requirement | | | | | | | |
|    a. TLC < (% of normal) | | | | | 80 | | |
|       AND FEV1/FVC ratio > | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | 80 | | |
|       AND FEV1/FVC ratio > | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 80 | | |
|       AND FEV1/FVC ratio > | | | | | | | |
| 4. Causation statement requirement | No | No | No | No | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 1 day | 1 day | 1 day | 1 day | 1 day | 1 day |
|    c. Occupational exposure | | | | | | | |
|     (1) Total | | 3 yr | 15 yr | 3 yr | | | |
|     (2) Prior to 1983 | | | | | | | |

# Combustion Engineering 524(g) Asbestos PI Trust

**Combustion Engineering 524(g) Asbestos PI Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Combustion Engineering | | |
| Bankruptcy filing date | 2/17/03 | Confirmation date | 3/1/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Active | | |
| Date trust established | 2006 | | |
| Classes of claims processed | Combustion Engineering claims | | |
| Claim administrator | Verus Claims Services | | |
| Trust website | www.cetrust.org | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Richard Neville | Retired Illinois state judge |
| Trustee | Ken Kawaichi | Retired California state judge |
| Trustee | Ellen Pryor | Southern Methodist University, Dedman School of Law |
| FCR | David Austern | Claims Resolution Management Corporation |
| TAC Member | Brent Coon | Brent Coon & Associates |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Counsel | Joseph Frank | Frank Gecker, LLP |
| TAC Counsel | Frances Gecker | Frank Gecker, LLP |
| Trust Counsel | Sander Esserman | Stutzman, Bromberg, Esserman & Plifka |
| Trust Counsel | Steven Felsenthal | Stutzman, Bromberg, Esserman & Plifka |
| Trust Counsel | Daniel Hogan | The Hogan Firm |
| FCR Counsel | Roger Frankel | Orrick, Herrington & Sutcliffe LLP |
| FCR Counsel | Richard H. Wyron | Orrick, Herrington & Sutcliffe LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 574.0 | 507.0 |
| Stock from debtors(s) | 402.6 | 0.0 |
| Insurance settlements | 266.6 | 0.0 |
| Other assets | 0.0 | 0.0 |
| Total | 1,243.2 | 507.0 |

**A.1474**

**Combustion Engineering 524(g) Asbestos PI Trust (continued)**

Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 1,261,773,054 | 1,113,744,608 |
| Additions |  |  |  |  |
| Cash from debtors | 0 | 224,000,000 | 0 | 0 |
| Stock from debtors | 0 | 402,569,537 | 0 | 0 |
| Insurance settlements | 0 | 266,644,237 | -47,782,000 | 13,160,048 |
| Investment gains | 0 | 24,464,758 | 6,087,983 | -120,423,359 |
| Investment income | 0 | 18,298,599 | 30,196,969 | 41,236,528 |
| Other additions | 0 | 350,000,000 | 0 | 0 |
| Deductions |  |  |  |  |
| Trust expenses | 0 | 6,303,594 | 9,509,001 | 5,111,335 |
| Claim processing costs | 0 | 149,731 | 848,103 | 746,596 |
| Investment fees | 0 | 874,022 | 1,630,407 | 1,920,640 |
| All other expenses | 0 | 5,279,841 | 7,030,491 | 2,444,099 |
| Taxes | 0 | 1,847,647 | 0 | 0 |
| Claim payments | 0 | 16,052,836 | 127,022,397 | 33,268,055 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 1,261,773,054 | 1,113,744,608 | 1,009,338,435 |

Gross claimant compensation as a percentage
of deductions

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Lower bound | – | 66.3% | 93.0% | 86.7% |
| Upper bound | – | 66.3% | 93.0% | 86.7% |

| Claim Valuation for | Combustion Engineering claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 75,000 | 95,000 | 400,000 |
| Lung Cancer 1 | 25,000 | 35,000 | 150,000 |
| Lung Cancer 2 | n.appl. | 15,000 | 50,000 |
| Other Cancer | 6,000 | 9,000 | 75,000 |
| Severe Asbestosis | 25,000 | 40,000 | 150,000 |
| Asbestosis / Pleural Disease II | 4,800 | n.appl. | n.appl. |
| Asbestosis / Pleural Disease I | 1,800 | n.appl. | n.appl. |
| Other Asbestos Disease | 250  * | n.appl. | n.appl. |

Payment percentage

| | |
|---|---|
| Initial payment percentage | 48.3% |
| Current payment percentage | 48.3% |

Claim payment ratio

| | |
|---|---|
| Malignancies and severe asbestosis | 87.0% |
| Asbestosis and pleural disease | 13.0% |

*Payment percentage does not apply

**A.1475**

**Combustion Engineering 524(g) Asbestos PI Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
|   Malignant [a] | 0 | n.a. | n.a. | n.a. | n.a. |
|   Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|   Not specified | 0 | 8,331 | 77,115 | 18,582 | 104,028 |
|   All disease types | 0 | 8,331 | 77,115 | 18,582 | 104,028 |
| Claims paid | | | | | |
|   Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|   Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|   Not specified | 0 | 1,444 | 18,723 | 9,106 | 29,273 |
|   All disease types | 0 | 1,444 | 18,723 | 9,106 | 29,273 |
| Claim payments ($) | | | | | |
|   Malignant | 0 | 14,935,907 | 99,994,057 | 29,743,249 | 144,673,213 |
|   Non-malignant | 0 | 1,116,933 | 18,384,739 | 9,749,541 | 29,251,213 |
|   Not specified | 0 | 0 | 0 | 0 | 0 |
|   All disease types | 0 | 16,052,840 | 118,378,796 | 39,492,790 | 173,924,426 |
| Average payment per claim ($) | | | | | |
|   Malignant | – | – | – | – | – |
|   Non-malignant | – | – | – | – | – |
|   Not specified | – | 0 | 0 | 0 | 0 |
|   All disease types | – | 11,117 | 6,323 | 4,337 | 5,941 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
|   Malignant | 0 | 0 | 0 | 0 | 0 |
|   Non-malignant | 0 | 0 | 0 | 0 | 0 |
|   Not specified | 0 | 0 | 0 | 0 | 0 |
|   All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
|   Malignant | 0 | 0 | 0 | 0 | 0 |
|   Non-malignant | 0 | 0 | 0 | 0 | 0 |
|   Not specified | 0 | 0 | 0 | 0 | 0 |
|   All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
|   Malignant | 0 | 0 | 0 | 0 | 0 |
|   Non-malignant | 0 | 0 | 0 | 0 | 0 |
|   Not specified | 0 | 0 | 0 | 0 | 0 |
|   All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
|   Malignant | – | – | – | – | – |
|   Non-malignant | – | – | – | – | – |
|   Not specified | – | – | – | – | – |
|   All disease types | – | – | – | – | – |

[a] Malignant claims for this trust include severe asbestosis claims.

**A.1476**

**Combustion Engineering 524(g) Asbestos PI Trust (continued)**

| Claim Approval Criteria for | Combustion Engineering claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP1_ | _AP2_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|   a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|   a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|     (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | | ✔ | ✔ |
|     (2) Bilateral pleural plaques | | ✔ | | ✔ | | | ✔ | ✔ |
|     (3) Bilateral pleural thickening | | ✔ | | ✔ | | | ✔ | ✔ |
|     (4) Bilateral pleural calcification | | ✔ | | ✔ | | | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|   a. TLC < (% of normal) | | | | | 65 | 80 | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
|     AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|   a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|   b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|   c. Occupational exposure | | | | | | | | |
|     (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|     (2) Prior to 1983 | | | | | | | | |

# DII Industries, LLC Asbestos PI Trust

**DII Industries, LLC Asbestos PI Trust**

## Bankruptcy Court and Trust Administrative Information

| | |
|---|---|
| Debtor(s) | Global Industrial Technologies, Inc., et al. (Harbison-Walker) |
| | Mid-Valley, Inc, et al. (Halliburton) |

| Bankruptcy filing date | | Confirmation date | |
|---|---|---|---|
| Harbison-Walker | 2/14/02 | Harbison-Walker | 11/13/07 |
| Halliburton | 12/16/03 | Halliburton | 7/21/04 |
| Bankruptcy court | Bankr. W.D. Pa. | Bankruptcy judge | Judith Fitzgerald |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 1/20/05 |
| Classes of claims processed | Harbison-Walker claims |
| | Non-Harbison-Walker (Halliburton) claims |
| Executive director | Marcellene Malouf |
| Claim administrator | Delaware Claims Processing Facility |
| Trust website | www.diiasbestostrust.org |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Alan Kahn | Self employed |
| Trustee | Mark Gleason | Gleason & Associates, P.C. |
| Trustee | Robert Parker | Parker, Bunt & Ainsworth, P.C. |
| FCR | Eric Green | Resolutions, LLC |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Marc Meyer | Goldberg, Persky & White, P.C. |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Steven Baron | Silber Pearlman, LLP |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Glen Morgan | Reaud, Morgan & Quinn |
| TAC Member | Thomas Wilson | Kelley & Ferraro, LLC |
| TAC Counsel | Ann McMillan | Caplin & Drysdale, Chartered |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale, Chartered |
| Trust Counsel | Gregg McHugh | General Counsel at DII Industries, LLC Asbestos PI Trust |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 31.6 | 2,775.0 |
| Stock from debtors(s) | 2,482.0 | 0.0 |
| Insurance settlements | 0.0 | 0.0 |
| Other assets | 0.0 | 0.0 |
| Total | 2,513.6 | 2,775.0 |

**A.1478**

**DII Industries, LLC Asbestos PI Trust (continued)**

### Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets ° | 0 | 2,570,659,885 | 2,683,034,003 | 2,753,589,177 |
| Additions |  |  |  |  |
| Cash from debtors | 31,692,628 | 0 | 0 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 0 | 0 | 0 | 0 |
| Investment gains | -7,354,491 | 90,479,768 | 43,598,051 | -228,984,313 |
| Investment income | 50,972,444 | 81,553,634 | 120,098,685 | 87,725,228 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
| Trust expenses | 9,303,196 | 12,247,819 | 13,090,030 | 12,716,938 |
| Claim processing costs | n.a. | n.a. | n.a. | n.a. |
| Investment fees | n.a. | n.a. | n.a. | n.a. |
| All other expenses | n.a. | n.a. | n.a. | n.a. |
| Taxes | 0 | 26,233,527 | 22,888,635 | -76,272,667 |
| Claim payments | 0 | 21,177,938 | 57,162,897 | 142,579,967 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets ° | 2,570,659,885 | 2,683,034,003 | 2,753,589,177 | 2,533,305,854 |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
| Lower bound | 0.0% | 35.5% | 61.4% | 91.8% |
| Upper bound | 0.0% | 35.5% | 61.4% | 91.8% |

° Referred to as net claimants' equity by the trust.

### Claim Valuation for Harbison-Walker claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 136,500 | 182,000 | 610,000 |
| Lung Cancer 1 | 44,900 | 57,700 | 192,200 |
| Lung Cancer 2 | n.appl. | 19,200 | 64,000 |
| Other Cancer | 24,000 | 29,000 | 96,500 |
| Severe Asbestosis | 29,500 | 31,000 | 125,600 |
| Level III | 7,200 | n.appl. | n.appl. |
| Level II | 3,800 | n.appl. | n.appl. |
| Level I | 300 * | n.appl. | n.appl. |

Payment percentage
Initial payment percentage  100.0%
Current payment percentage  52.5%

Claim payment ratio
Malignancies and severe asbestosis  60.0%
Asbestosis and pleural disease  40.0%

*Payment percentage does not apply

### Claim Valuation for Halliburton claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 57,200 | 76,400 | 256,000 |
| Lung Cancer 1 | 9,300 | 12,000 | 39,900 |
| Lung Cancer 2 | n.appl. | 4,000 | 13,300 |
| Other Cancer | 8,000 | 9,800 | 32,700 |
| Severe Asbestosis | 9,400 | 9,900 | 40,100 |
| Level III | 2,400 | n.appl. | n.appl. |
| Level II | 1,100 | n.appl. | n.appl. |
| Level I | 100 * | n.appl. | n.appl. |

Payment percentage
Initial payment percentage  100.0%
Current payment percentage  52.5%

Claim payment ratio
Malignancies and severe asbestosis  60.0%
Asbestosis and pleural disease  40.0%

*Payment percentage does not apply

A.1479

**DII Industries, LLC Asbestos PI Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | *Pre-2006* | *2006* | *2007* | *2008* | *Total* |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 315 | 23,140 | 54,042 | 134,264 | 211,761 |
| All disease types | 315 | 23,140 | 54,042 | 134,264 | 211,761 |
| Claims paid | | | | | |
| Malignant | 0 | 845 | 2,206 | 3,671 | 6,722 |
| Non-malignant | 0 | 1,867 | 7,592 | 16,495 | 25,954 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 2,712 | 9,798 | 20,166 | 32,676 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 18,833,549 | 47,395,648 | 106,898,239 | 173,127,437 |
| Non-malignant | 0 | 2,353,700 | 9,724,508 | 19,574,514 | 31,652,722 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 21,187,249 | 57,120,156 | 126,472,753 | 204,780,159 |
| Average payment per claim ($) | | | | | |
| Malignant | – | 22,288 | 21,485 | 29,120 | 25,755 |
| Non-malignant | – | 1,261 | 1,281 | 1,187 | 1,220 |
| Not specified | – | – | – | – | – |
| All disease types | – | 7,812 | 5,830 | 6,272 | 6,267 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

**A.1480**

**DII Industries, LLC Asbestos PI Trust (continued)**

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
| Mesothelioma | 390 | 682 | 1,954 | 3,026 |
| Lung Cancer 1 | 328 | 889 | 1,086 | 2,303 |
| Lung Cancer 2 | 8 | 238 | 256 | 502 |
| Other Cancer | 119 | 397 | 375 | 891 |
| Severe Asbestosis | 11 | 64 | 125 | 200 |
| Level III | 650 | 2,771 | 4,696 | 8,117 |
| Level II | 1,204 | 4,728 | 11,590 | 17,522 |
| Level I | 2 | 29 | 84 | 115 |
| Unknown | 0 | 0 | 0 | 0 |
| Claims payments ($) | | | | |
| Mesothelioma | 14,620,029 | 34,813,753 | 92,429,146 | 141,862,928 |
| Lung Cancer 1 | 3,447,941 | 9,565,320 | 11,418,605 | 24,431,866 |
| Lung Cancer 2 | 15,332 | 592,366 | 774,979 | 1,382,676 |
| Other Cancer | 750,247 | 2,424,210 | 2,275,510 | 5,449,967 |
| Severe Asbestosis | 106,000 | 520,908 | 908,114 | 1,535,022 |
| Level III | 1,237,000 | 5,349,100 | 8,368,200 | 14,954,300 |
| Level II | 1,010,300 | 3,849,200 | 10,283,800 | 15,143,300 |
| Level I | 400 | 5,300 | 14,400 | 20,100 |
| Unknown | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | |
| Mesothelioma | 37,487 | 51,047 | 47,303 | 46,881 |
| Lung Cancer 1 | 10,512 | 10,760 | 10,514 | 10,609 |
| Lung Cancer 2 | 1,917 | 2,489 | 3,027 | 2,754 |
| Other Cancer | 6,305 | 6,106 | 6,068 | 6,117 |
| Severe Asbestosis | 9,636 | 8,139 | 7,265 | 7,675 |
| Level III | 1,903 | 1,930 | 1,782 | 1,842 |
| Level II | 839 | 814 | 887 | 864 |
| Level I | 200 | 183 | 171 | 175 |
| Unknown | – | – | – | – |

**DII Industries, LLC Asbestos PI Trust (continued)**

| Claim Approval Criteria for | Halliburton and Harbison-Walker claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Meso | LC1 | LC2 | OC | SA | L.III | L.II | L.I |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|   a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|   a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|     (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|   a. TLC < (% of normal) | | | | | 65 | 80 | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 65 | | |
|     AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|   a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|   b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|   c. Occupational exposure | | | | | | | | |
|     (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|     (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

# Eagle-Picher Industries Inc. Personal Injury Settlement Trust

**Eagle-Picher Industries Inc. Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Eagle-Picher Industries | | |
| | | | |
| Bankruptcy filing date | 1/7/91 | Confirmation date | 11/18/96 |
| Bankruptcy court | Bankr. S.D. Ohio | Bankruptcy judge | Burton Perlman |
| | | | |
| Trust status | Active | | |
| Date trust established | 11/29/96 | | |
| Classes of claims processed | Eagle-Picher Industries claims | | |
| Executive Director | William Nurre | | |
| Claim administrator | Claims Processing Facility | | |
| Trust website | www.cpf-inc.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Ruth McMullin | Chairperson, Eagle-Picher Personal Injury Settlement Trust |
| Trustee | David McLean | PricewaterhouseCoopers LLP |
| Trustee | James McMonagle | Vorys, Sater, Seymour and Pease LLP |
| TAC Member | Gene Locks | Locks Law Firm, LLC |
| TAC Member | Robert Steinberg | Rose, Klein and Marias, LLP |
| Trust Counsel | Theodore V.H. Mayer | Hughes Hubbard & Reed LLP |
| Trust Counsel | Christopher Kiplok | Hughes Hubbard & Reed LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 388.5 | 0 |
| Stock from debtors(s) | 341.8 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 730.3 | 0 |

**A.1484**

**Eagle-Picher Industries Inc. Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ |
| Beginning trust assets | 0 | 492,808,001 | 492,863,862 | 495,798,513 |
| Additions | | | | |
|   Cash from debtors | 394,989,000 | 0 | 0 | 0 |
|   Stock from debtors | 341,807,000 | 0 | 0 | 0 |
|   Insurance settlements | 0 | 0 | 0 | 0 |
|   Investment gains | 110,781,467 | 16,808,303 | 7,416,257 | -78,053,586 |
|   Investment income | 199,827,189 | 18,992,188 | 19,107,861 | 17,501,405 |
|   Other additions | 399,925 | 0 | 380,301 | 0 |
| Deductions | | | | |
|   Trust expenses | 56,869,598 | 7,111,888 | 5,694,791 | 4,971,834 |
|     Claim processing costs | 39,878,130 | 5,364,803 | 3,884,550 | 3,431,501 |
|     Investment fees | 7,974,816 | 807,133 | 800,352 | 798,960 |
|     All other expenses | 9,016,652 | 939,952 | 1,009,889 | 741,373 |
|   Taxes | 42,497,474 | 5,282,428 | 2,264,745 | -27,743,368 |
|   Claim payments | 465,988,414 | 23,350,314 | 16,019,232 | 19,321,572 |
|   Other deductions | 6,853,235 | 0 | 0 | 0 |
| Ending trust assets | 492,808,001 | 492,863,862 | 495,789,513 | 438,696,294 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|   Lower bound | 81.4% | 65.3% | 66.8% | 79.5% |
|   Upper bound | 82.6% | 65.3% | 66.8% | 79.5% |

| Claim Valuation for | Eagle-Picher Industries claims | | |
|---|---|---|---|
| | _Scheduled_ | _Average_ | _Maximum_ |
| Disease level | _Value_ [a] | _Value_ | _Value_ |
|   Mesothelioma | 6,500 * | n.appl. | n.appl. |
|   Lung Cancer | 2,000 * | n.appl. | n.appl. |
|   Other Cancer | 1,000 * | n.appl. | n.appl. |
|   Non-malignancy | 400 * | n.appl. | n.appl. |
| | | | |
| Payment percentage [b] | | | |
|   Initial payment percentage | 31.9% | | |
|   Current payment percentage | 38.0% | | |
| | | | |
| Claim payment ratio | | | |
|   Malignancies and severe asbestosis | n.appl. | | |
|   Asbestosis and pleural disease | n.appl. | | |

*Payment percentage does not apply
[a] Values for the discounted claim payment option
[b] Applied to individual review claims only

**Eagle-Picher Industries Inc. Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | 6,490 | 2,750 | 2,969 | 2,221 | 14,430 |
| Non-malignant | 31,158 | 5,501 | 3,771 | 2,910 | 43,340 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 37,648 | 8,251 | 6,740 | 5,131 | 57,770 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 23,749,000 | 11,842,000 | 10,561,000 | 13,604,000 | 59,756,000 |
| Non-malignant | 31,151,000 | 7,258,000 | 7,339,000 | 4,296,000 | 50,044,000 |
| Not specified | 409,965,405 | 0 | 0 | 0 | 409,965,405 |
| All disease types | 464,865,405 | 19,100,000 | 17,900,000 | 17,900,000 | 519,765,405 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

**A.1486**

**Eagle-Picher Industries Personal Injury Settlement Trust (continued)**

Claim Approval Criteria

"In order to establish a valid Asbestos Personal Injury Claim, a claimant must (a) make a conclusive demonstration of exposure to an Eagle-Picher asbestos-containing product and (b) submit a medical report from a qualified physician that (i) results from a physical examination by that physician and (ii) contains a diagnosis of an asbestos-related injury. The PI Trust may require the submission of evidence of exposure to an Eagle-Picher asbestos-containing product, x-rays, laboratory tests, medical examinations or reviews, other medical evidence, or any other evidence to support such Asbestos Personal Injury Claims and require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods, and procedures to assure that such evidence is reliable." (Excerpted from EPI Claims Resolution Procedures)

# Federal Mogul Asbestos Personal Injury Trust—Turner & Newall Subfund

**Federal Mogul Asbestos Personal Injury Trust - Turner & Newall Subfund**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Federal Mogul (Turner & Newall, Flexitallic, Ferodo) | | |
| | | | |
| Bankruptcy filing date | 10/1/01 | Confirmation date | 11/13/07 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | n/a |
| | | | |
| Trust status | Active | | |
| Date trust established | 12/27/07 | | |
| Classes of claims processed | Federal Mogul (Turner & Newall, Flexitallic, Ferodo) | | |
| Claim administrator | n.a. | | |
| Trust website | www.federalmogulasbestostrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Ken Kawaichi | Retired California state judge |
| Trustee | Edward Robertson | Bartimus, Fickleton, Robertson & Gorny, P.C. |
| Trustee | Kirk Watson | Member of Texas State Senate |
| FCR | Eric Green | Resolutions, LLC |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | John Cooney | Cooney & Conway |
| Trust Counsel | Douglas A. Campbell | Campbell & Levine, LLC |
| Trust Counsel | Stanley E. Levine | Campbell & Levine, LLC |
| Trust Counsel | Kathleen Campbell Davis | Campbell & Levine, LLC |
| FCR Counsel | Edwin Harron | Young Conaway Stargatt & Taylor, LLP |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 635.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 635.0 | 0 |

**A.1488**

**Federal Mogul Asbestos Personal Injury Trust - Turner & Newall Subfund (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 0 | 0 |
| Additions |  |  |  |  |
|   Cash from debtors | 0 | 0 | 0 | 235,000,000 |
|   Stock from debtors | 0 | 0 | 0 | 0 |
|   Insurance settlements | 0 | 0 | 0 | 0 |
|   Investment gains | 0 | 0 | 0 | 3,584,537 |
|   Investment income | 0 | 0 | 0 | 18,017,115 |
|   Other additions | 0 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
|   Trust expenses | 0 | 0 | 0 | 9,703,645 |
|     Claim processing costs | 0 | 0 | 0 | 66,469 |
|     Investment fees | 0 | 0 | 0 | 330,355 |
|     All other expenses | 0 | 0 | 0 | 9,306,821 |
|   Taxes | 0 | 0 | 0 | 0 |
|   Claim payments | 0 | 0 | 0 | 0 |
|   Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 0 | 0 | 246,898,007 |

Gross claimant compensation as a percentage
of deductions

|  | | | | |
|---|---|---|---|---|
|   Lower bound | – | – | – | 0.0% |
|   Upper bound | – | – | – | 0.0% |

## Claim Valuation for    Flexitallic and Ferodo Claims

|  | Scheduled | Average | Maximum |
|---|---|---|---|
| Disease level | Value | Value | Value |
|   Mesothelioma | 50,000 | 62,500 | 150,000 |
|   Lung Cancer 1 | 10,625 | 15,000 | 31,250 |
|   Lung Cancer 2 | n.appl. | 3,000 | 10,000 |
|   Other Cancer | 3,700 | 4,900 | 22,500 |
|   Severe Asbestosis | 10,625 | 13,625 | 31,250 |
|   Asbestosis / Pleural Disease II | 3,375 | 3,375 | 6,250 |
|   Asbestosis / Pleural Disease I | 1,425 | 1,450 | 2,000 |
|   Other Asbestos Disease | 100 * | n.appl. | n.appl. |

Payment percentage
|   Initial payment percentage | n.a. |
|---|---|
|   Current payment percentage | n.a. |

Claim payment ratio
|   Malignancies and severe asbestosis | 60.0% |
|---|---|
|   Asbestosis and pleural disease | 40.0% |

*Payment percentage does not apply

## Claim Valuation for    Turner & Newall claims

|  | Scheduled | Average | Maximum |
|---|---|---|---|
|  | Value | Value | Value |
| Disease level |  |  |  |
|   Mesothelioma | 200,000 | 250,000 | 600,000 |
|   Lung Cancer 1 | 42,500 | 60,000 | 125,000 |
|   Lung Cancer 2 | n.appl. | 12,000 | 40,000 |
|   Other Cancer | 14,750 | 19,500 | 90,000 |
|   Severe Asbestosis | 42,500 | 54,500 | 125,000 |
|   Asbestosis / Pleural Disease II | 12,700 | 13,500 | 25,000 |
|   Asbestosis / Pleural Disease I | 5,700 | 5,800 | 8,000 |
|   Other Asbestos Disease | 400 * | n.appl. | n.appl. |

Payment percentage
|   Initial payment percentage | n.a. |
|---|---|
|   Current payment percentage | n.a. |

Claim payment ratio
|   Malignancies and severe asbestosis | 60.0% |
|---|---|
|   Asbestosis and pleural disease | 40.0% |

*Payment percentage does not apply

**Federal Mogul Asbestos Personal Injury Trust - Turner & Newall Subfund (continued)**

| Claim Activity | | | | | |
| --- | --- | --- | --- | --- | --- |
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | | NO CLAIMS PAID THROUGH 2008 | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

**Federal Mogul Asbestos Personal Injury Trust - Turner & Newall Subfund (continued)**

| Claim Approval Criteria for | Flexitallic and Ferodo Claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *SA* | *AP1* | *AP2* | *OAD* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

# G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust

**G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | G-1 Holdings Inc. | | |
| | ACI Inc. | | |
| Bankruptcy filing date | 1/5/01 | Confirmation date | 11/12/09 |
| Bankruptcy court | Bankr. D. N.J. | Bankruptcy judge | Rosemary Gambardella |
| Trust status | Active | | |
| Date trust established | 11/17/09 | | |
| Classes of claims processed | G-1 claims | | |
| Claim administrator | Not selected | | |
| Trust website | None | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Stephen M. Snyder | Snyder Miller & Orton LLP. |
| Trustee | Alan B. Rich | Formerly at Baron & Budd, P.C. |
| Trustee | Marina Corodemus | Corodemus & Corodemus LLC. (retired NJ state judge) |
| FCR | C. Judson Hamlin | Purcell, Ries, Shannon, Mulcahy & O'Neill |
| Trust Counsel | Frances Gecker | Frank/Gecker, LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 770.1 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 770.1 | 0 |

**A.1492**

**G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ |
| Beginning trust assets | | | | |
| Additions | | | | |
|    Cash from debtors | | | | |
|    Stock from debtors | | | | |
|    Insurance settlements | | | | |
|    Investment gains | | | | |
|    Investment income | | | | |
|    Other additions | | | | |
| Deductions | | DATA NOT AVAILABLE | | |
|    Trust expenses | | | | |
|       Claim processing costs | | | | |
|       Investment fees | | | | |
|       All other expenses | | | | |
|    Taxes | | | | |
|    Claim payments | | | | |
|    Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | – | – | – |
|    Upper bound | – | – | – | – |

| Claim Valuation for | G-1 claims | | |
|---|---|---|---|
| | _Scheduled_ | _Average_ | _Maximum_ |
| _Disease level_ | _Value_ | _Value_ | _Value_ |
|    Mesothelioma | 155,000 | 225,000 | 450,000 |
|    Lung Cancer 1 | 45,000 | 55,000 | 100,000 |
|    Lung Cancer 2 | n.appl. | 15,000 | 35,000 |
|    Other Cancer | 15,000 | 18,000 | 35,000 |
|    Severe Asbestosis | 30,000 | 35,000 | 50,000 |
|    Asbestosis / Pleural Disease II | 8,300 | n.appl. | n.appl. |
|    Asbestosis / Pleural Disease I | 2,625 | n.appl. | n.appl. |
|    Other Asbestos Disease | 225 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
|   Initial payment percentage | 8.6% [a] |
|   Current payment percentage | 8.6% [a] |

| Claim payment ratio | |
|---|---|
|   Malignancies and severe asbestosis | 85.0% |
|   Asbestosis and pleural disease | 15.0% |

*Payment percentage does not apply
[a] 4.3 percent paid up front with the remaining 4.3 percent paid when it is determined that adequate funds are available.

**G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | *Pre-2006* | *2006* | *2007* | *2008* | *Total* |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | TRUST HAS NOT YET BEGUN TO ACCEPT OR PROCESS CLAIMS | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

A.1494

**G-1 Holdings Inc. Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | G-1 claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

**A.1495**

# H. K. Porter Asbestos Trust

**H. K. Porter Asbestos Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | H.K. Porter Company, Inc. | | |
| | | | |
| Bankruptcy filing date | 2/15/91 | Confirmation date | 6/25/98 |
| Bankruptcy court | Bankr. W.D. Pa. | Bankruptcy judge | Warren Bentz |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 1998 |
| Classes of claims processed | H. K. Porter claims |
| Claim administrator | Verus Claims Services |
| Trust website | www.hkporterasbestostrust.org |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Mark Gleason | Gleason & Associates, P.C. |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Philip Pahigian | Retired from Wilentz, Goldman & Spitzer |
| TAC Member | Brent Rosenthal | Baron & Budd |
| Trust Counsel | David A. Campbell | Campbell & Levine, LLC |
| Trust Counsel | Philip E. Milch | Campbell & Levine, LLC |
| FCR | George Cass | Buchanan Ingersoll & Rooney PC |
| FCR Counsel | George Cass | Buchanan Ingersoll & Rooney PC |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | | |
| Stock from debtors(s) | | |
| Insurance settlements | | |
| Other assets | DATA NOT AVAILABLE | |
| Total | | |

**A.1496**

## H. K. Porter Asbestos Trust (continued)

| Trust Financial Statement ($) | Pre-2006 [a] | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 77,200,115 | 77,205,466 | 78,110,766 |
| Additions | | | | |
| Cash from debtors | 26,484,989 | 4,156,106 | 5,677,116 | 2,136,194 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 1,231,338 | 0 | 0 | 0 |
| Investment gains | 6,433,512 | 1,621,054 | -362,672 | -4,855,828 |
| Investment income | 2,364,885 | 41,295 | 36,136 | 14,317 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions | | | | |
| Trust expenses | 6,673,322 | 864,760 | 811,367 | 896,950 |
| Claim processing costs | 3,579,380 | 243,088 | 235,041 | 161,794 |
| Investment fees | n.a. | n.a. | n.a. | n.a. |
| All other expenses | n.a. | n.a. | n.a. | n.a. |
| Taxes | 0 | 0 | 0 | 0 |
| Claim payments | 68,472,149 | 4,948,344 | 3,633,913 | 381,282 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 77,200,115 | 77,205,466 | 78,110,766 | 74,127,217 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | 91.1% | 85.1% | 81.7% | 29.8% |
| Upper bound | 91.1% | 85.1% | 81.7% | 29.8% |

[a] Data for pre-2006 period incomplete

| Claim Valuation for | H. K. Porter claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 20,000 | n.appl. | 40,000 |
| Lung Cancer | 12,000 | n.appl. | 24,000 |
| Other Cancer | 7,500 | n.appl. | 15,000 |
| Non-malignancy | 3,750 | n.appl. | 7,500 |
| | | | |
| Payment percentage | | | |
| Initial payment percentage | 4.6% | | |
| Current payment percentage | 6.3% | | |
| | | | |
| Claim payment ratio | | | |
| Malignancies and severe asbestosis | n.appl. | | |
| Asbestosis and pleural disease | n.appl. | | |

**H. K. Porter Asbestos Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 37,853 | 2,709 | 2,371 | 1,187 | 44,120 |
| Non-malignant | 274,106 | 4,036 | 4,046 | 2,459 | 284,647 |
| Not specified | 6,215 | 0 | 0 | 0 | 6,215 |
| All disease types | 318,174 | 6,745 | 6,417 | 3,646 | 334,982 |
| Claims paid | | | | | |
| Malignant | 35,315 | 4,502 | 3,314 | 438 0 | 43,569 |
| Non-malignant | 269,872 | 13,332 | 10,124 | 584 0 | 293,912 |
| Not specified | 0 | 0 | 0 | 0 0 | 0 |
| All disease types | 305,187 | 17,834 | 13,438 | 1,022 | 337,481 |
| Claim payments ($) | | | | | |
| Malignant | 21,903,025 | 2,746,556 | 2,070,139 | 280,752 | 27,000,472 |
| Non-malignant | 46,551,790 | 2,195,440 | 1,570,122 | 100,531 | 50,417,883 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 68,454,815 | 4,941,996 | 3,640,261 | 381,283 | 77,418,355 |
| Average payment per claim ($) | | | | | |
| Malignant | 620 | 610 | 625 | 641 | 620 |
| Non-malignant | 172 | 165 | 155 | 172 | 172 |
| Not specified | – | – | – | – | – |
| All disease types | 224 | 277 | 271 | 373 | 229 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

[a] Claims filed data are incomplete

**A.1498**

### H. K. Porter Asbestos Trust (continued)

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
| Mesothelioma | 1,296 | 999 | 124 | 2,419 |
| Lung cancer | 2,270 | 1,669 | 244 | 4,183 |
| Other cancer | 936 | 646 | 70 | 1,652 |
| Non-malignancy | 13,332 | 10,124 | 584 | 24,040 |
| Unknown | 0 | 0 | 0 | 0 |
| Claims payments ($) | | | | |
| Mesothelioma | 1,207,012 | 998,046 | 122,220 | 2,327,278 |
| Lung cancer | 1,222,441 | 863,291 | 134,382 | 2,220,114 |
| Other cancer | 317,103 | 208,802 | 24,150 | 550,055 |
| Non-malignancy | 2,195,440 | 1,570,122 | 100,531 | 3,866,093 |
| Unknown | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | |
| Mesothelioma | 931 | 999 | 986 | 962 |
| Lung cancer | 539 | 517 | 551 | 531 |
| Other cancer | 339 | 323 | 345 | 333 |
| Non-malignancy | 165 | 155 | 172 | 161 |
| Unknown | – | – | – | – |

**H. K. Porter Asbestos Trust (continued)**

| Claim Approval Criteria | | | | |
|---|---|---|---|---|
| | <u>Meso</u> | <u>LC</u> | <u>OC</u> | <u>NM</u> |

1. Diagnosis requirement (one or more of checked items satisfies requirement)
   a. Physical exam
   b. Pathology
   c. Medical document review
2. ILO or x-ray requirement
   a. ILO reading
OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions
   (1) Bilateral interstitial fibrosis
   (2) Bilateral pleural plaques
   (3) Bilateral pleural thickening
   (4) Bilateral pleural calcification
3. Pulmonary function test requirement                         DATA NOT AVAILABLE
   a. TLC < (% of normal)
      AND FEV1/FVC ratio >
OR b. DLCO < (% of normal)
      AND FEV1/FVC ratio >
OR c. FVC < (% of normal)
      AND FEV1/FVC ratio >
4. Causation statement requirement
5. Latency and exposure requirements
   a. Latency
   b. Company exposure prior to 1983
   c. Occupational exposure
      (1) Total
      (2) Prior to 1983

**A.1500**

# J.T. Thorpe Company Successor Trust

**J.T. Thorpe Company Successor Trust**

| Bankruptcy Court and Trust Administrative Information | | | |
|---|---|---|---|
| Debtor(s) | JT Thorpe Co. (S.D. Tex.) | | |
| Bankruptcy filing date | 10/1/02 | Confirmation date | 3/3/04 |
| Bankruptcy court | Bankr. S.D. Tex. | Bankruptcy judge | Karen Brown |
| Trust status | Active | | |
| Date trust established | 2004 | | |
| Classes of claims processed | JT Thorpe claims | | |
| Claim administrator | MFR Claims Processing, Inc. | | |
| Trust website | mfrclaims.com/html/jt_thorpe.html | | |

| Trustees and Advisors | | |
|---|---|---|
| *Position* | *Name* | *Affiliation* |
| Trustee | Joseph Ashmore | Ashmore Law Firm, P.C. |
| Trustee | Robert Pendergraft | Pendergraft & Simon L.L.P. |
| Trustee | Dan Lain | unknown |
| FCR | Richard Schiro | Law Offices of Richard B. Schiro |
| TAC Member | Bryan Blevins | Provost Umphrey LLC |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Baron | Silber Pearlman, LLP |
| Trust Counsel | Jo Hartwick | Stutzman, Bromberg, Esserman & Plifka |

| Estimated Initial Funding of Trust ($ millions) | | |
|---|---|---|
| | *Funding for Claims* *Paid Through Trust* | *Funding for Claims* *Paid Outside Trust* |
| Cash from debtor(s) | 6.5 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 225.8 | 0 |
| Other assets | 0.2 | 0 |
| Total | 232.5 | 0 |

**A.1502**

Case 7:21-cv-07532-CM   Document 157-4   Filed 11/15/21   Page 147 of 221

**J.T. Thorpe Company Successor Trust (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 154,796,670 | 162,379,529 | 186,116,290 |
| Additions |  |  |  |  |
|     Cash from debtors | 4,223,793 | 0 | 0 | 0 |
|     Stock from debtors | 0 | 0 | 0 | 0 |
|     Insurance settlements | 231,437,285 | 11,318,921 | 37,825,000 | 500,000 |
|     Investment gains | 1,140,718 | 2,206,490 | -371,082 | -33,176,612 |
|     Investment income | 5,429,110 | 7,475,709 | 9,815,348 | 7,311,686 |
|     Other additions | 0 | 0 | 127,375 | 135,858 |
| Deductions |  |  |  |  |
|     Trust expenses | 25,473,540 | 4,364,731 | 1,320,430 | 998,337 |
|         Claim processing costs | n.a. | n.a. | n.a. | n.a. |
|         Investment fees | n.a. | n.a. | n.a. | n.a. |
|         All other expenses | n.a. | n.a. | n.a. | n.a. |
|     Taxes | 113,512 | 0 | -113,512 | 0 |
|     Claim payments | 59,648,580 | 9,053,530 | 22,452,962 | 3,862,409 |
|     Other deductions | 2,198,604 | 0 | 0 | 0 |
| Ending trust assets | 154,796,670 | 162,379,529 | 186,116,290 | 156,026,476 |
|  |  |  |  |  |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
|     Lower bound | 68.2% | 67.5% | 94.9% | 79.5% |
|     Upper bound | 70.7% | 67.5% | 94.9% | 79.5% |

## Claim Valuation for | JT Thorpe claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
|     Mesothelioma | 100,000 | n.appl. | n.appl. |
|     Lung Cancer 1 | 25,000 | n.appl. | n.appl. |
|     Lung Cancer 2 | 10,000 | n.appl. | n.appl. |
|     Other Cancer | 10,000 | n.appl. | n.appl. |
|     Severe Asbestosis | 25,000 | n.appl. | n.appl. |
|     Asbestosis / Pleural Disease II | 9,000 | n.appl. | n.appl. |
|     Asbestosis / Pleural Disease I | 4,000 | n.appl. | n.appl. |

Payment percentage
    Initial payment percentage     18.5%
    Current payment percentage     38.0%

Claim payment ratio
    Malignancies and severe asbestosis     n.appl.
    Asbestosis and pleural disease     n.appl.

**A.1503**

**J.T. Thorpe Company Successor Trust (continued)**

Claim Activity

| | Pre-2006 | 2006 | 2007 | 2008 | Total |
|---|---|---|---|---|---|
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed [a] | | | | | |
| Malignant | n.a. | n.a. | 0 | 0 | n.a. |
| Non-malignant | n.a. | n.a. | 0 | 0 | n.a. |
| Not specified | n.a. | n.a. | 1,666 | 1,196 | n.a. |
| All disease types | n.a. | n.a. | 1,666 | 1,196 | n.a. |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 105 | n.a. | 2,541 | 659 | n.a. |
| All disease types | 105 | n.a. | 2,541 | 659 | n.a. |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 3,683,305 | 9,053,530 | 22,452,962 [b] | 3,862,409 | 39,052,206 |
| All disease types | 3,683,305 | 9,053,530 | 22,452,962 [b] | 3,862,409 | 39,052,206 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 35,079 | – | 1,025 [c] | 5,861 | n.a. |
| All disease types | 35,079 | – | 1,025 [c] | 5,861 | n.a. |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 366 | 0 | 0 | 0 | 366 |
| All disease types | 366 | 0 | 0 | 0 | 366 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 55,965,275 | 0 | 0 | 0 | 55,965,275 |
| All disease types | 55,965,275 | 0 | 0 | 0 | 55,965,275 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 152,911 | – | – | – | 152,911 |
| All disease types | 152,911 | – | – | – | 152,911 |

[a] Claims filed data incomplete
[b] Includes $13.4 million of payments on past claims to account for changes in the payment percentage
[c] Excludes $13.4 million in payments for past claims

**J.T. Thorpe Company Successor Trust (continued)**

| Claim Approval Criteria for | JT Thorpe claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
|     (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | | ✔ |
|     (2) Bilateral pleural plaques | | ✔ | | ✔ | | | ✔ |
|     (3) Bilateral pleural thickening | | ✔ | | ✔ | | | ✔ |
|     (4) Bilateral pleural calcification | | | | | | | |
| 3. Pulmonary function test requirement | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | |
|     AND FEV1/FVC ratio > | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | |
|     AND FEV1/FVC ratio > | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | |
|     AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | Yes |
| 5. Latency and exposure requirements | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | | 6 mo | 6 mo | 6 mo | 6 mo | 6 mo | 6 mo |
|    c. Occupational exposure | | | | | | | |
|     (1) Total | | 5 yr | 5 yr | 5 yr | 5 yr | 5 yr | 5 yr |
|     (2) Prior to 1983 | | | | | | | |

# J.T. Thorpe Settlement Trust

**J.T. Thorpe Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | J.T. Thorpe, Inc. | | |
| | Thorpe Technologies, Inc. | | |
| | Thorpe Holding Company, Inc. | | |
| Bankruptcy filing date | 2/12/02 | Confirmation date | 1/19/06 |
| Bankruptcy court | Bankr. C.D. Cal. | Bankruptcy judge | Sheri Bluebond |
| Trust status | Active | | |
| Date trust established | 6/29/06 | | |
| Classes of claims processed | J.T. Thorpe claims | | |
| Executive Director | Sara Beth Brown | | |
| Claim administrator | Western Asbestos Settlement Trust | | |
| Trust website | jttstrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Stephen Snyder | Snyder Miller & Orton LLP. |
| Trustee | John Luikart | Bethany Advisors LLC |
| Trustee | Sandra Hernandez | The San Francisco Foundation |
| FCR | Charles Renfrew | Law Offices of Charles B. Renfrew |
| FCR Counsel | Gary Fergus | Fergus, A Law Office |
| TAC Member | Alan Brayton | Brayton Purcell, LLP |
| TAC Member | David Rosen | Rose Klein & Marias LLP |
| TAC Member | Steven Kazan | Kazan, McClain, Lyons, Greenwood & Harley |
| TAC Counsel | Michael Ahrens | Sheppard Mullin Richter & Hampton LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 0.5 | 0 |
| Stock from debtors(s) | n.a. [a] | 0 |
| Insurance settlements | 153.4 | 0 |
| Other assets | 0.0 | 0 |
| Total | 153.9 | 0 |

[a] The trust received shares of J.T. Thorpe, Inc. and Thorpe Holding Company, Inc., but these shares were closely held and not assigned a value.

**A.1506**

**J.T. Thorpe Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ |
| Beginning trust assets | 0 | 0 | 103,073,572 | 187,206,153 |
| Additions | | | | |
| Cash from debtors | 0 | 500,000 | 33,187 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 0 | 153,370,181 | 86,000,000 | 265,499 |
| Investment gains | 0 | 0 | 1,386,585 | -20,457,803 |
| Investment income | 0 | 3,073,174 | 7,184,846 | 6,358,087 |
| Other additions | 0 | 0 | 0 | 6,100,904 |
| Deductions | | | | |
| Trust expenses | 0 | 2,108,270 | 1,110,809 | 797,836 |
| Claim processing costs | 0 | 123,654 | 90,242 | 68,846 |
| Investment fees | 0 | n.a. | n.a. | n.a. |
| All other expenses | 0 | n.a. | n.a. | n.a. |
| Taxes | 0 | 338,011 | 2,017,138 | 0 |
| Claim payments | 0 | 34,937,593 | 7,344,090 | 12,355,162 |
| Other deductions | 0 | 16,485,909 | 0 | 1,535,248 |
| Ending trust assets | 0 | 103,073,572 | 187,206,153 | 164,784,594 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | – | 64.9% | 70.1% | 84.1% |
| Upper bound | – | 95.5% | 70.1% | 94.6% |

| Claim Valuation for | J.T. Thorpe claims | | |
|---|---|---|---|
| | Base-Case | Average | Maximum |
| _Disease level_ | _Value_ [a,b] | _Value_ [b] | _Value_ [b] |
| Mesothelioma | 102,647 | 150,000 | 600,000 |
| Lung Cancer | 15,278 | 40,000 | 160,000 |
| Other Cancer | 8,496 | 25,000 | 100,000 |
| Grade I Non-Malignancy | 6,843 | 10,000 | 40,000 |
| Grade II Non-Malignancy | 2,374 | 3,000 | 12,000 |
| | | | |
| Payment percentage | | | |
| Initial payment percentage | 50.0% | | |
| Current payment percentage | 40.0% | | |
| | | | |
| Claim payment ratio | | | |
| Malignancies | 90.0% | | |
| Asbestosis and pleural disease | 10.0% | | |

[a] For each claim, base-case values are adjusted using a series of factors that approximate factors which add or substract value to cases in the tort system.

[b] Values have been increased 3.7% above figures shown to account for inflation.

**A.1507**

**J.T. Thorpe Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 48 | 1,327 | 1,725 | 3,100 |
|    All disease types | 0 | 48 | 1,327 | 1,725 | 3,100 |
| Claims paid | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 2 | 98 | 567 | 667 |
|    All disease types | 0 | 2 | 98 | 567 | 667 |
| Claim payments ($) | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 128,437 | 5,406,731 | 12,447,911 | 17,983,079 |
|    All disease types | 0 | 128,437 | 5,406,731 | 12,447,911 | 17,983,079 |
| Average payment per claim ($) | | | | | |
|    Malignant | – | – | – | – | – |
|    Non-malignant | – | – | – | – | – |
|    Not specified | – | 64,219 | 55,171 | 21,954 | 26,961 |
|    All disease types | – | 64,219 | 55,171 | 21,954 | 26,961 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 1,474 | 0 | 0 | 1,474 |
|    All disease types | 0 | 1,474 | 0 | 0 | 1,474 |
| Claims paid | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 1,297 | 120 | 5 | 1,422 |
|    All disease types | 0 | 1,297 | 120 | 5 | 1,422 |
| Claim payments ($) | | | | | |
|    Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
|    Not specified | 0 | 31,294,191 | 2,280,062 | 72,403 | 33,646,656 |
|    All disease types | 0 | 31,294,191 | 2,280,062 | 72,403 | 33,646,656 |
| Average payment per claim ($) | | | | | |
|    Malignant | – | – | – | – | – |
|    Non-malignant | – | – | – | – | – |
|    Not specified | – | 24,128 | 19,001 | 14,481 | 23,662 |
|    All disease types | – | 24,128 | 19,001 | 14,481 | 23,662 |

**J.T. Thorpe Settlement Trust (continued)**

| Claim Approval Criteria for | J.T. Thorpe California claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | Meso | LC | OC | G1NM-BC [a] | G1NM-E [b] | G1NM-SA [c] | G2NM |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
| a. ILO reading | | 1/0 | 1/0 | 1/0 | 1/1 | 2/2 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
| (1) Bilateral interstitial fibrosis | | | | ✔ | ✔ | | ✔ |
| (2) Bilateral pleural plaques | | | | | | | |
| (3) Bilateral pleural thickening | | | | | | | |
| (4) Bilateral pleural calcification | | | | | | | |
| 3. Pulmonary function test requirement [d] | | | | | | | |
| a. TLC < (% of normal) | | | | 80 | 70 | | |
| AND FEV1/FVC ratio > | | | | | | | |
| OR b. DLCO < (% of normal) | | | | 75 | 60 | | |
| AND FEV1/FVC ratio > | | | | 0.65 | 0.65 | | |
| OR c. FVC < (% of normal) | | | | 80 | 60 | | |
| AND FEV1/FVC ratio > | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | No | No | No | No | No | No |
| 5. Latency and exposure requirements | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 3 mo | 1 yr | 1 yr | 1 yr | 1 yr | 1 yr | 1 yr |
| c. Occupational exposure | | | | | | | |
| (1) Total | | | | | | | |
| (2) Prior to 1983 | | | | | | | |

[a] Grade I non-malignancy, base case
[b] Grade I non-malignancy, enhanced
[c] Grade I non-malignancy, serious asbestosis
[d] Claimant assumed to be at least 70 years old

**A.1509**

# Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust

**Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Kaiser Aluminum & Chemical Corporation | | |
| | | | |
| Bankruptcy filing date | 2/12/02 | Confirmation date | 5/11/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 7/6/06 |
| Classes of claims processed | Kaiser claims |
| Claim administrator | Verus Claims Services |
| Trust website | www.kaiserasbestostrust.com |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Ken Kawaichi | Retired California judge |
| Trustee | Mark Gleason | Gleason & Associates, P.C. |
| Trustee | Robert Marcis | unknown |
| FCR | Martin Murphy | Davis & Young |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| TAC Member | Alan Brayton | Brayton Purcell |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Steven Kazan | Kazan, McClain, Lyons, Greenwood & Harley |
| Trust Counsel | Joseph Frank | Frank/Gecker LLP |
| FCR Counsel | Sharon Zieg | Young Conaway Stargatt & Taylor LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 13.0 | 0 |
| Stock from debtors(s) | 48.4 | 0 |
| Insurance settlements | 1,156.7 | 0 |
| Other assets | 0.0 | 0 |
| Total | 1,218.1 | 0 |

**A.1510**

**Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | 0 | 0 | 1,232,139,271 | 1,196,852,983 |
| Additions | | | | |
|    Cash from debtors | 0 | 311,526,421 | 78,180,655 | 119,549,884 |
|    Stock from debtors | 0 | 48,375,215 | 1,276,811 | 0 |
|    Insurance settlements | 0 | 0 | 0 | 0 |
|    Investment gains | 0 | 14,175,003 | 1,149,828 | -63,872,973 |
|    Investment income | 0 | 2,837,487 | 16,901,762 | 18,767,794 |
|    Other additions [a] | 0 | 858,205,659 | -72,000,639 | -114,502,061 |
| Deductions | | | | |
|    Trust expenses | 0 | 2,980,514 | 4,134,780 | 3,671,040 |
|      Claim processing costs | 0 | 290,000 | 1,054,086 | 1,087,668 |
|      Investment fees | 0 | 0 | 0 | 0 |
|      All other expenses | 0 | 2,690,514 | 3,080,694 | 2,583,372 |
|    Taxes | 0 | 0 | 3,599,636 | -3,788,282 |
|    Claim payments | 0 | 0 | 53,060,289 | 62,880,974 |
|    Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 1,232,139,271 | 1,196,852,983 | 1,094,031,895 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | 0.0% | 87.3% | 94.5% |
|    Upper bound | – | 0.0% | 87.3% | 94.5% |

| Claim Valuation for | Kaiser claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|    Mesothelioma | 70,000 | 104,000 | 380,000 |
|    Lung Cancer 1 | 27,500 | 33,000 | 85,000 |
|    Lung Cancer 2 | n.appl. | 7,000 | 20,000 |
|    Other Cancer | 13,800 | 17,300 | 40,000 |
|    Severe Asbestosis | 20,750 | 22,000 | 55,000 |
|    Asbestosis / Pleural Disease II | 4,850 | n.appl. | n.appl. |
|    Asbestosis / Pleural Disease I | 700 | n.appl. | n.appl. |
|    Other Asbestos Disease | 200 * | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|    Initial payment percentage | 39.5% | | |
|    Current payment percentage | 39.5% | | |
| | | | |
| Claim payment ratio | | | |
|    Malignancies and severe asbestosis | 70.0% | | |
|    Asbestosis and pleural disease | 30.0% | | |

*Payment percentage does not apply

[a] Reductions in 2007 and 2008 are offset by cash from debtors.

**A.1511**

**Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant [a] | 0 | 152 | 18,509 | 6,082 | 24,743 |
| Non-malignant | 0 | 286 | 87,123 | 26,782 | 114,191 |
| Not specified | 0 | 2 | 314 | 1,031 | 1,347 |
| All disease types | 0 | 440 | 105,946 | 33,895 | 140,281 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 1,779 | 2,294 | 4,073 |
| Non-malignant | 0 | 0 | 14,469 | 15,558 | 30,027 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 16,248 | 17,852 | 34,100 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 28,958,003 | 47,193,372 | 76,151,375 |
| Non-malignant | 0 | 0 | 14,703,094 | 14,150,462 | 28,853,556 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 43,661,097 | 61,343,834 | 105,004,931 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 16,278 | 20,573 | 18,697 |
| Non-malignant | – | – | 1,016 | 910 | 961 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 2,687 | 3,436 | 3,079 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Not specified | 0 | 11,169 | 0 | 0 | 11,169 |
| All disease types | 0 | 11,169 | 0 | 0 | 11,169 |
| Claims paid | | | | | |
| Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 8,944 | 904 | 9,848 |
| All disease types | 0 | 0 | 8,944 | 904 | 9,848 |
| Claim payments ($) | | | | | |
| Malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | 0 | n.a. | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 9,392,088 | 1,537,992 | 10,930,080 |
| All disease types | 0 | 0 | 9,392,088 | 1,537,992 | 10,930,080 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | 1,050 | 1,701 | 1,110 |
| All disease types | – | – | 1,050 | 1,701 | 1,110 |

[a] Malignant claims for this trust include severe asbestosis claims.

**A.1512**

**Kaiser Aluminum & Chemical Corporation Asbestos Personal Injury Trust (continued)**

| Claim Approval Criteria for | Kaiser claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP1_ | _AP2_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|     (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|     (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
|     AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
|     AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|     (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|     (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

**A.1513**

# Manville Personal Injury Settlement Trust

**Manville Personal Injury Settlement Trust**

| Bankruptcy Court and Trust Administrative Information | | | |
|---|---|---|---|
| Debtor(s) | Johns-Manville Corp. | | |
| | Philadelphia Asbestos Corp. (Pacor) | | |
| Bankruptcy filing date | 8/1/82 | Confirmation date | 7/15/87 |
| Bankruptcy court | Bankr. E.D. N.Y. | Bankruptcy judge | Burton Lifland |
| Trust status | Active | | |
| Date trust established | 11/28/88 | | |
| Classes of claims processed | Manville claims | | |
| Claim administrator | Claims Resolution Management Corporation | | |
| Trust website | www.mantrust.org | | |

| Trustees and Advisors | | |
|---|---|---|
| *Position* | *Name* | *Affiliation* |
| Trustee | Robert Falise | Chair, Manville Trust |
| Trustee | Mark Peterson | Legal Analysis Systems |
| Trustee | Frank Macchiarola | St. Francis College |
| Trust Counsel | David Austern | Claims Resolution Management Corporation |

| Estimated Initial Funding of Trust ($ millions) | | |
|---|---|---|
| | *Funding for Claims Paid Through Trust* | *Funding for Claims Paid Outside Trust* |
| Cash from debtor(s) | n.a. | 0 |
| Stock from debtors(s) | n.a. | 0 |
| Insurance settlements | n.a. | 0 |
| Other assets | n.a. | 0 |
| Total | 2,500 | 0 |

**A.1514**

**Manville Personal Injury Settlement Trust (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | n.a. | 1,631,697,081 | 1,741,502,894 | 1,778,033,708 |
| Additions |  |  |  |  |
|     Cash from debtors | n.a. | 0 | 0 | 0 |
|     Stock from debtors | n.a. | 0 | 0 | 0 |
|     Insurance settlements | n.a. | 0 | 0 | 0 |
|     Investment gains | n.a. | 126,514,659 | 46,485,857 | -332,797,421 |
|     Investment income | n.a. | 47,316,328 | 53,204,278 | 44,641,131 |
|     Other additions | n.a. | 2,422,729 | 492,300 | 504,640 |
| Deductions |  |  |  |  |
|     Trust expenses | n.a. | 5,714,275 | 5,367,920 | 5,820,633 |
|         Claim processing costs | n.a. | n.a. | n.a. | n.a. |
|         Investment fees | n.a. | n.a. | n.a. | n.a. |
|         All other expenses | n.a. | n.a. | n.a. | n.a. |
|     Taxes | n.a. | 7,450,800 | 9,922,200 | 9,278,800 |
|     Claim payments | 3,313,553,508 | 52,690,236 | 47,876,548 | 467,209,590 |
|     Other deductions | n.a. | 592,592 | 484,953 | 3,187,230 |
| Ending trust assets | 1,631,697,081 | 1,741,502,894 | 1,778,033,708 | 1,004,885,805 |
|  |  |  |  |  |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
|     Lower bound | – | 79.3% | 75.2% | 96.2% |
|     Upper bound | – | 80.2% | 76.0% | 96.9% |

## Claim Valuation for Manville claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
|     Mesothelioma | 350,000 | n.appl. | 750,000 |
|     Lung Cancer 1 | 95,000 | n.appl. | 400,000 |
|     Lung Cancer 2 | n.appl. | 40,000 | 50,000 |
|     Other Cancer | 45,000 | n.appl. | 200,000 |
|     Severe Asbestosis | 95,000 | n.appl. | 400,000 |
|     Asbestosis / Pleural Disease II | 25,000 | n.appl. | 40,000 |
|     Asbestosis / Pleural Disease I | 12,000 | n.appl. | 30,000 |
|     Other Asbestos Disease | 600 * | n.appl. | 600 * |

| Payment percentage |  |
|---|---|
|     Initial payment percentage | 100.0% |
|     Current payment percentage | 7.5% |

| Claim payment ratio |  |
|---|---|
|     Malignancies and severe asbestosis | n.appl. |
|     Asbestosis and pleural disease | n.appl. |

*Payment percentage does not apply

**A.1515**

**Manville Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 767,700 | 10,500 | 10,097 | 13,442 | 801,739 |
| All disease types | 767,700 | 10,500 | 10,097 | 13,442 | 801,739 |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 659,982 | 12,231 | 10,103 | 12,415 | 694,731 |
| All disease types | 659,982 | 12,231 | 10,103 | 12,415 | 694,731 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 3,360,733,676 | 52,690,236 | 47,646,174 | 420,259,796 [a] | 3,881,329,882 |
| All disease types | 3,360,733,676 | 52,690,236 | 47,646,174 | 420,259,796 | 3,881,329,882 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 5,092 [b] | 4,308 [b] | 4,716 [b] | 6,908 [c] | 5,587 |
| All disease types | 5,092 | 4,308 | 4,716 | 6,908 | 5,587 |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

[a] Includes $334.5 million in retroactive payments to approximately 225,000 claimants to account for the increase in payment percentage from 5 percent to 7.5 percent in 2008.

[b] Does not include retroactive payments made in 2008.

[c] Excludes $334.5 million in retroactive payments made in 2008.

**A.1516**

**Manville Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | Manville claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | | ✔ | ✔ |
| (4) Bilateral pleural calcification | | | | | | | | |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |

**A.1517**

# NGC Bodily Injury Trust

**NGC Bodily Injury Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | National Gypsum | | |
| | Asbestos Claims Management Corp. (ACMC) | | |
| Bankruptcy filing date | 10/28/90 | Confirmation date | 3/9/93 |
| Bankruptcy court | Bankr. N.D. Tex. | Bankruptcy judge | Harlin DeWayne Hale |
| Trust status | Active | | |
| Date trust established | 1993 | | |
| Classes of claims processed | NGC Bodily Injury Trust claims | | |
| Executive Director | W.D. Hilton, Jr. | | |
| Claim administrator | Trust Services, Inc. | | |
| Trust website | www.ngcbitrust.org | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Anne Ferazzi | unknown |
| Trustee | Anne Foreman | Geo Group Inc |
| Trustee | Walter Taggart | Villanova University School of Law |
| TAC Member | Robert Steinberg | Rose, Klein & Marias, LLP. |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Mark Iola | Stanley, Mandel & Iola, LLP |
| Trust Counsel | Aaron York | Sacks Tierney, P.A. |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 373.4 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 63.0 | 0 |
| Other assets | 9.9 | 0 |
| Total | 446.3 | 0 |

**A.1518**

**NGC Bodily Injury Trust (continued)**

### Trust Financial Statement ($)

|  | Pre-2006 [a] | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 603,660,490 | 543,330,853 | 513,990,993 |
| Additions |  |  |  |  |
|   Cash from debtors | 486,372,232 | 0 | 0 | 0 |
|   Stock from debtors | 0 | 0 | 0 | 0 |
|   Insurance settlements | 66,843,688 | 6,190,817 | 1,042,161 | 26,425 |
|   Investment gains | 15,541,275 | 5,674,268 | 8,035,485 | -61,364,284 |
|   Investment income | 27,576,868 | 23,495,218 | 27,121,850 | 15,317,121 |
|   Other additions | 36,339,280 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
|   Trust expenses | 16,490,213 | 6,448,120 | 5,966,337 | 6,570,547 |
|     Claim processing costs | n.a. | n.a. | n.a. | n.a. |
|     Investment fees | n.a. | n.a. | n.a. | n.a. |
|     All other expenses | n.a. | n.a. | n.a. | n.a. |
|   Taxes | -1,477,834 | 3,154,814 | 5,533,675 | -22,612,160 |
|   Claim payments | 14,000,474 | 86,087,006 | 54,039,344 | 48,775,188 |
|   Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 603,660,490 | 543,330,853 | 513,990,993 | 435,236,680 |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
|   Lower bound | 48.3% | 90.0% | 82.5% | 88.1% |
|   Upper bound | 48.3% | 90.0% | 82.5% | 88.1% |

[a] Data for pre-2006 period incomplete.

### Claim Valuation for NGC Bodily Injury Trust claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
|   Mesothelioma | 22,500 | 45,000 | 180,000 |
|   Lung Cancer | 3,750 | 7,500 | 30,000 |
|   Other Cancer | 1,600 | 3,200 | 12,800 |
|   Non-Malignant I | 1,000 | 2,000 | 8,000 |
|   Non-Malignant II | 500 | 1,000 | 4,000 |
|   Non-Malignant III | 250 * | n.appl. | n.appl. |

Payment percentage
  Initial payment percentage    n.a.
  Current payment percentage    55.6%

Claim payment ratio
  Malignancies and severe asbestosis    n.appl.
  Asbestosis and pleural disease    n.appl.

*Payment percentage does not apply

**NGC Bodily Injury Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 [a] | 2006 | 2007 | 2008 | Total |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | n.a. | n.a. | n.a. | n.a. | n.a. |
| All disease types | n.a. | n.a. | n.a. | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | n.a. | n.a. | n.a. | n.a. | n.a. |
| All disease types | n.a. | n.a. | n.a. | n.a. | n.a. |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 14,000,474 | 86,087,006 | 54,039,344 | 48,775,188 | 202,902,012 |
| All disease types | 14,000,474 | 86,087,006 | 54,039,344 | 48,775,188 | 202,902,012 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

[a] Data for pre-2006 period incomplete

**A.1520**

**NGC Bodily Injury Trust (continued)**

| Claim Approval Criteria for | NGC Bodily Injury Trust claims | | | | | |
|---|---|---|---|---|---|---|
| | _Meso_ | _LC_ | _OC_ | _NM1A_ [a] | _NM1B_ [b] | _NM1C_ [c] |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | |
|   a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|   c. Medical document review | | | | | | |
| 2. ILO or x-ray requirement | | | | | | |
|   a. ILO reading | | B | 1/0 | 2/1 | 1/0 | B2/C1 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | |
|    (1) Bilateral interstitial fibrosis | | ✔ | ✔ | | ✔ | |
|    (2) Bilateral pleural plaques | | ✔ | | | | |
|    (3) Bilateral pleural thickening | | ✔ | ✔ | | | |
|    (4) Bilateral pleural calcification | | | | | | |
| 3. Pulmonary function test requirement | | | | | | |
|   a. TLC < (% of normal) | | | | 70 | 80 | 80 |
|     AND FEV1/FVC ratio > | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | 76 | |
|     AND FEV1/FVC ratio > | | | | | 0.72 | |
| OR  c. FVC < (% of normal) | | | | 70 | 80 | 80 |
|     AND FEV1/FVC ratio > | | | | | 0.72 | 0.72 |
| 4. Causation statement requirement | No | No | No | No | No | No |
| 5. Latency and exposure requirements | | | | | | |
|   a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|   b. Company exposure | 1 day | 1 day | 1 day | 1 day | 1 day | 1 day |
|   c. Occupational exposure | | | | | | |
|    (1) Total | | 10 yr | | | | |
|    (2) Prior to 1983 | | | | | | |

[a] Non-Malignant l, Asbestos l-A

[b] Non-Malignant l, Asbestos l-B

[c] Non-Malignant l, Diffuse Pleural Thickening l

**A.1521**

**NGC Bodily Injury Trust (continued)**

| Claim Approval Criteria for | NGC Bodily Injury Trust claims | | | |
|---|---|---|---|---|
| | NM2A [a] | NM2B [b] | NM3A [c] | NM3B [d] |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | |
| 2. ILO or x-ray requirement | | | | |
|    a. ILO reading | 1/0 | B2/C1 | 1/0 | 0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | |
|      (1) Bilateral interstitial fibrosis | | | | |
|      (2) Bilateral pleural plaques | | | | ✔ |
|      (3) Bilateral pleural thickening | | | | ✔ |
|      (4) Bilateral pleural calcification | | | | |
| 3. Pulmonary function test requirement | | | | |
|    a. TLC < (% of normal) | | | | |
|      AND FEV1/FVC ratio > | | | | |
| OR  b. DLCO < (% of normal) | | | | |
|      AND FEV1/FVC ratio > | | | | |
| OR  c. FVC < (% of normal) | | | | |
|      AND FEV1/FVC ratio > | | | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes |
| 5. Latency and exposure requirements | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure | 1 day | 1 day | 1 day | 1 day |
|    c. Occupational exposure | | | | |
|      (1) Total | | | | |
|      (2) Prior to 1983 | | | | |

[a] Non–Malignant II, Asbestosis II

[b] Non–Malignant II, Pleural Thickening II

[c] Non–Malignant III, Fibrosis III

[d] Non–Malignant III, Pleural Changes III

## North American Refractories Company Asbestos Personal Injury Settlement Trust

**North American Refractories Company Asbestos Personal Injury Settlement Trust**

| Bankruptcy Court and Trust Administrative Information | | | |
|---|---|---|---|
| Debtor(s) | North American Refractories Corp. (NARCO) | | |
| Bankruptcy filing date | 1/4/02 | Confirmation date | 7/25/08 |
| Bankruptcy court | Bankr. W.D. Pa. | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Proposed | | |
| Date trust established | – | | |
| Classes of claims processed | North American Refractories Company claims | | |
| Claim administrator | Not yet selected | | |
| Trust website | www.rhireorg.com | | |

| Trustees and Advisors | | |
|---|---|---|
| *Position* | *Name* | *Affiliation* |
| FCR | Lawrence Fitzpatrick | Asbestos Claims Facility |
| FCR Counsel | James Patton | Young Conaway Stargatt & Taylor LLP |
| FCR Counsel | Joel Helmrich | Dinsmore & Shohl LLP |
| FCR Counsel | Edwin J. Harron | Young Conaway Stargatt & Taylor LLP |

| Estimated Initial Funding of Trust ($ millions) [a] | | |
|---|---|---|
| | *Funding for Claims* *Paid Through Trust* | *Funding for Claims* *Paid Outside Trust* |
| Cash from debtor(s) | 6,320.0 | 1,978.0 |
| Stock from debtors(s) | 0.0 | 0.0 |
| Insurance settlements | 0.0 | 0.0 |
| Other assets | 0.0 | 0.0 |
| Total | 6,320.0 | 1,978.0 |

[a] Proposed

**A.1524**

**North American Refractories Company Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | | | | |
| Additions | | | | |
|    Cash from debtors | | | | |
|    Stock from debtors | | | | |
|    Insurance settlements | | | | |
|    Investment gains | | | | |
|    Investment income | | | | |
|    Other additions | | | | |
| Deductions | | TRUST NOT YET OPEN | | |
|    Trust expenses | | | | |
|       Claim processing costs | | | | |
|       Investment fees | | | | |
|       All other expenses | | | | |
|    Taxes | | | | |
|    Claim payments | | | | |
|    Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|    Lower bound | – | – | – | – |
|    Upper bound | – | – | – | – |

| Claim Valuation for a | North American Refractories Company claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|    Mesothelioma | 75,000 | 200,000 | 1,000,000 |
|    Lung Cancer 1 | 18,000 | 50,000 | 200,000 |
|    Lung Cancer 2 | n.appl. | 15,000 | 50,000 |
|    Other Cancer | 9,000 | 25,000 | 100,000 |
|    Severe Asbestosis | 18,000 | 50,000 | 100,000 |
|    Asbestosis / Pleural Disease II | 7,500 | n.appl. | n.appl. |
|    Asbestosis / Pleural Disease I | 1,200 | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
|    Initial payment percentage | 100.0% |
|    Current payment percentage | 100.0% |

| Claim payment ratio | |
|---|---|
|    Malignancies and severe asbestosis | 60.0% |
|    Asbestosis and pleural disease | 40.0% |

a Proposed

**A.1525**

**North American Refractories Company Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | Pre-2006 | 2006 | 2007 | 2008 | Total |
|---|---|---|---|---|---|
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | TRUST NOT YET OPEN | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

**A.1526**

**North American Refractories Company Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | North American Refractories Company claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *SA* | *AP2* | *AP1* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
|    a. ILO reading | | 1/0 | 1/0 | | 2/1 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | |
|      AND FEV1/FVC ratio > | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 1 day | 1 day | 1 day | 1 day | 1 day | 1 day |
|    c. Occupational exposure | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr |
|      (2) Prior to 1983 | | | | | | | |

# Owens Corning Fibreboard Asbestos Personal Injury Trust—Fibreboard Subfund

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Fibreboard Subfund**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Fibreboard | | |
| Bankruptcy filing date | 10/5/00 | Confirmation date | 10/31/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Active | | |
| Date trust established | 2006 | | |
| Classes of claims processed | Fibreboard claims | | |
| Claim administrator | Delaware Claims Processing Facility | | |
| Trust website | www.ocfbasbestostrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Dean Trafelet | Retired Cook County Circuit Court Judge |
| Trustee | Harry Huge | Harry Huge Law Firm, LLP |
| Trustee | LeAnne Jackson | formerly at Baron & Budd, current affilation unknown |
| FCR | Michael Crames | Peter J. Solomon Company |
| TAC Member | Armand Volta | Peter G. Angelos |
| TAC Member | James Ferrano | Kelley & Ferraro, LLC |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Theodore Goldberg | Goldberg, Persky & White P.C. |
| Trust Counsel | Douglas A. Campbell | Campbell & Levine, LLC |
| Trust Counsel | Philip E. Milch | Campbell & Levine, LLC |
| Trust Counsel | Marla R. Eskin | Campbell & Levine, LLC |
| FCR Counsel | Andrew Kress | Kaye Scholer LLP |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 1,524.9 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 31.2 | 0 |
| Other assets | 0.0 | 0 |
| Total | 1,556.1 | 0 |

**A.1528**

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Fibreboard Subfund (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | 0 | 0 | 1,418,778,749 | 1,487,025,977 |
| Additions | | | | |
| Cash from debtors | 0 | 1,442,100,041 | 82,813,605 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 0 | 0 | 31,152,490 | 0 |
| Investment gains | 0 | -48,542,828 | 25,416,230 | -129,844,630 |
| Investment income | 0 | 27,078,245 | 36,353,043 | 52,429,085 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions | | | | |
| Trust expenses | 0 | 1,856,709 | 9,781,985 | 14,740,896 |
| Claim processing costs | 0 | 485,451 | 3,016,356 | 7,312,285 |
| Investment fees | 0 | 54,774 | 3,312,185 | 3,824,624 |
| All other expenses | 0 | 1,316,484 | 3,453,444 | 3,603,987 |
| Taxes | 0 | 0 | 0 | 0 |
| Claim payments | 0 | 0 | 97,706,155 | 262,889,010 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 1,418,778,749 | 1,487,025,977 | 1,131,980,526 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | – | 0.0% | 90.9% | 94.7% |
| Upper bound | – | 0.0% | 90.9% | 94.7% |

| Claim Valuation for | Fibreboard claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 135,000 | 180,000 | 450,000 |
| Lung Cancer I | 27,000 | 35,000 | 90,000 |
| Lung Cancer II | n.appl. | 12,000 | 30,000 |
| Other Cancer | 12,000 | 15,000 | 36,000 |
| Severe Asbestosis | 29,000 | 30,000 | 90,000 |
| Asbestosis / Plueral Disease II | 11,500 | 12,000 | 21,000 |
| Asbestosis / Plueral Disease I | 4,500 | 5,400 | 12,000 |
| Other Asbestos Disease | 240 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
| Initial payment percentage | 25.0% |
| Current payment percentage | 11.0% |

| Claim payment ratio | |
|---|---|
| Malignancies and severe asbestosis | 65.0% |
| Asbestosis and pleural disease | 35.0% |

*Payment percentage does not apply

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Fibreboard Subfund (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 116,725 | 102,471 | 219,196 |
| All disease types | 0 | 0 | 116,725 | 102,471 | 219,196 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 82 | 6,164 | 6,246 |
| Non-malignant | 0 | 0 | 854 | 45,564 | 46,418 |
| Not specified | 0 | 0 | 0 | 1,000 | 1,000 |
| All disease types | 0 | 0 | 936 | 52,728 | 53,664 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 825,000 | 140,538,000 | 141,363,000 |
| Non-malignant | 0 | 0 | 1,375,000 | 93,692,000 | 95,067,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 2,200,000 | 234,230,000 | 236,430,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 10,061 | 22,800 | 22,633 |
| Non-malignant | – | – | 1,610 | 2,056 | 2,048 |
| Not specified | – | – | – | 0 | 0 |
| All disease types | – | – | 2,350 | 4,442 | 4,406 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 31,249 | 0 | 31,249 |
| All disease types | 0 | 0 | 31,249 | 0 | 31,249 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 2,631 | 783 | 3,414 |
| Non-malignant | 0 | 0 | 28,401 | 7,316 | 35,717 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 31,032 | 8,099 | 39,131 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 57,000,000 | 15,035,000 | 72,035,000 |
| Non-malignant | 0 | 0 | 38,000,000 | 15,035,000 | 53,035,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 95,000,000 | 30,070,000 | 125,070,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 21,665 | 19,202 | 21,100 |
| Non-malignant | – | – | 1,338 | 2,055 | 1,485 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 3,061 | 3,713 | 3,196 |

[a] Claims filed data incomplete

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Fibreboard Subfund (continued)**

| Claim Approval Criteria for | Fibreboard claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *SA* | *AP2* | *AP1* | *OAD* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

**A.1531**

## Owens Corning Fibreboard Asbestos Personal Injury Trust—Owens Corning Subfund

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Owens Corning Subfund**

### Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Owens Corning Corp. | | |
| Bankruptcy filing date | 10/5/00 | Confirmation date | 10/31/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Active | | |
| Date trust established | 2006 | | |
| Classes of claims processed | Owens Corning claims | | |
| Claim administrator | Delaware Claims Processing Facility | | |
| Trust website | www.ocfbasbestostrust.com | | |

### Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Dean Trafelet | Retired Cook County Circuit Court Judge |
| Trustee | Harry Huge | Harry Huge Law Firm, LLP |
| Trustee | LeAnne Jackson | formerly at Baron & Budd, current affilation unknown |
| FCR | Michael Crames | Peter J. Solomon Company |
| TAC Member | Armand Volta | Peter G. Angelos |
| TAC Member | James Ferraro | Kelley & Ferraro, LLC |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Joseph Rice | Motley Rice, LLC |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Theodore Goldberg | Goldberg, Persky & White P.C. |
| Trust Counsel | Douglas A. Campbell | Campbell & Levine, LLC |
| Trust Counsel | Philip E. Milch | Campbell & Levine, LLC |
| Trust Counsel | Marla R. Eskin | Campbell & Levine, LLC |
| FCR Counsel | Andrew Kress | Kaye Scholer LLP |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale |

### Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 2,603.0 | 0 |
| Stock from debtors(s) | 820.3 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 3,423.3 | 0 |

**A.1532**

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Owens Corning Subfund (continued)**

Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 1,280,852,658 | 2,989,424,297 |
| Additions |  |  |  |  |
| Cash from debtors | 0 | 1,276,131,074 | 1,326,822,945 | 0 |
| Stock from debtors | 0 | 0 | 820,338,000 | 0 |
| Insurance settlements | 0 | 0 | 11,440,000 | 19,360,000 |
| Investment gains | 0 | -4,393,544 | -242,269,263 | -300,569,226 |
| Investment income | 0 | 10,884,120 | 96,081,075 | 80,987,703 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
| Trust expenses | 0 | 1,768,992 | 10,644,145 | 15,376,692 |
| Claim processing costs | 0 | 485,449 | 3,016,357 | 7,390,898 |
| Investment fees | 0 | 51,269 | 3,734,263 | 4,111,490 |
| All other expenses | 0 | 1,232,274 | 3,893,525 | 3,874,304 |
| Taxes | 0 | 0 | 0 | 0 |
| Claim payments | 0 | 0 | 293,196,973 | 802,505,337 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 1,280,852,658 | 2,989,424,297 | 1,971,320,745 |
|  |  |  |  |  |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
| Lower bound | – | 0.0% | 96.5% | 98.1% |
| Upper bound | – | 0.0% | 96.5% | 98.1% |

Claim Valuation for    Owens Corning claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 215,000 | 270,000 | 650,000 |
| Lung Cancer 1 | 40,000 | 50,000 | 150,000 |
| Lung Cancer 2 | n.appl. | 20,000 | 50,000 |
| Other Cancer | 22,000 | 25,000 | 60,000 |
| Severe Asbestosis | 42,000 | 50,000 | 150,000 |
| Asbestosis / Pleural Disease II | 19,000 | 20,000 | 35,000 |
| Asbestosis / Pleural Disease I | 8,000 | 9,000 | 20,000 |
| Other Asbestos Disease | 400 * | n.appl. | n.appl. |

| Payment percentage |  |
|---|---|
| Initial payment percentage | 40.0% |
| Current payment percentage | 10.0% |

| Claim payment ratio |  |
|---|---|
| Malignancies and severe asbestosis | 65.0% |
| Asbestosis and pleural disease | 35.0% |

*Payment percentage does not apply

**A.1533**

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Owens Corning Subfund (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 141,056 | 107,101 | 248,157 |
| All disease types | 0 | 0 | 141,056 | 107,101 | 248,157 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 131 | 7,633 | 7,764 |
| Non-malignant | 0 | 0 | 1,451 | 61,946 | 63,397 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 1,582 | 69,579 | 71,161 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 4,667,000 | 373,400,000 | 378,067,000 |
| Non-malignant | 0 | 0 | 9,333,000 | 373,400,000 | 382,733,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 14,000,000 | 746,800,000 | 760,800,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 35,626 | 48,919 | 48,695 |
| Non-malignant | – | – | 6,432 | 6,028 | 6,037 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 8,850 | 10,733 | 10,691 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed [a] | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 36,970 | 0 | 36,970 |
| All disease types | 0 | 0 | 36,970 | 0 | 36,970 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 3,794 | 839 | 4,633 |
| Non-malignant | 0 | 0 | 32,987 | 7,701 | 40,688 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 36,781 | 8,540 | 45,321 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 166,800,000 | 23,267,143 | 190,067,143 |
| Non-malignant | 0 | 0 | 111,200,000 | 31,022,857 | 142,222,857 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 278,000,000 | 54,290,000 | 332,290,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 43,964 | 27,732 | 41,025 |
| Non-malignant | – | – | 3,371 | 4,028 | 3,495 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 7,558 | 6,357 | 7,332 |

[a] Claims filed data are incomplete

**A.1534**

**Owens Corning Fibreboard Asbestos Personal Injury Trust - Owens Corning Subfund (continued)**

| Claim Approval Criteria for | Owens Corning claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Meso | LC1 | LC2 | OC | SA | AP2 | AP1 | OAD |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

# Pittsburgh Corning Corporation Asbestos PI Trust

**Pittsburgh Corning Corporation Asbestos PI Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Pittsburgh Corning | | |
| Bankruptcy filing date | 4/16/00 | Confirmation date | Not confirmed |
| Bankruptcy court | Bankr. W.D. Pa | Bankruptcy judge | Judith Fitzgerald |
| Trust status | Proposed | | |
| Date trust established | – | | |
| Classes of claims processed | Pittsburgh Corning claims | | |
| Claim administrator | Not selected | | |
| Trust website | None | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| FCR | Lawrence Fitzpatrick | Asbestos Claims Facility |
| FCR Counsel | James Patton | Young Conaway Stargatt & Taylor LLP |
| FCR Counsel | Joel Helmrich | Dinsmore & Shohl LLP |

## Estimated Initial Funding of Trust ($ millions) [a]

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 1,174.9 | 0 |
| Stock from debtors(s) | 311.7 | 0 |
| Insurance settlements | 1,892.7 | 0 |
| Other assets | 28.2 | 0 |
| Total | 3,407.4 | 0 |

[a] Proposed

**A.1536**

**Pittsburgh Corning Corporation Asbestos PI Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | | | | |
| Additions | | | | |
|   Cash from debtors | | | | |
|   Stock from debtors | | | | |
|   Insurance settlements | | | | |
|   Investment gains | | | | |
|   Investment income | | | | |
|   Other additions | | | | |
| Deductions | | TRUST NOT YET OPEN | | |
|   Trust expenses | | | | |
|     Claim processing costs | | | | |
|     Investment fees | | | | |
|     All other expenses | | | | |
|   Taxes | | | | |
|   Claim payments | | | | |
|   Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|   Lower bound | – | – | – | – |
|   Upper bound | – | – | – | – |

| Claim Valuation for [a] | Pittsburgh Corning claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|   Mesothelioma | 175,000 | 200,000 | 500,000 |
|   Lung Cancer 1 | 47,500 | 50,000 | 100,000 |
|   Lung Cancer 2 | n.appl. | 20,000 | 50,000 |
|   Other Cancer | 27,500 | 30,000 | 100,000 |
|   Severe Asbestosis | 47,500 | 50,000 | 100,000 |
|   Asbestosis / Pleural Disease II | 11,750 | 12,500 | 22,500 |
|   Asbestosis / Pleural Disease I | 5,500 | 6,000 | 10,000 |
|   Other Asbestos Disease | 400 * | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|   Initial payment percentage | 37.0% | | |
|   Current payment percentage | 37.0% | | |
| | | | |
| Claim payment ratio | | | |
|   Malignancies and severe asbestosis | 60.0% | | |
|   Asbestosis and pleural disease | 40.0% | | |

*Payment percentage does not apply
[a] Proposed

**Pittsburgh Corning Corporation Asbestos PI Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
|   Claims filed | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claims paid | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claim payments ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Average payment per claim ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
| Claims settled but not paid pre-petition | | TRUST NOT YET OPEN | | | |
|   Claims filed | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claims paid | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claim payments ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Average payment per claim ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |

**Pittsburgh Corning Corporation Asbestos PI Trust (continued)**

| Claim Approval Criteria for [a] | Pittsburgh Corning claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1093 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

[a] Proposed

A.1539

# Plibrico 524(g) Trust

**Plibrico 524(g) Trust**

| Bankruptcy Court and Trust Administrative Information | | | |
|---|---|---|---|
| Debtor(s) | Plibrico Co. | | |
| | Plibrico Sales & Services, Inc. | | |
| Bankruptcy filing date | 3/13/02 | Confirmation date | 1/30/06 |
| Bankruptcy court | Bankr. N.D. Ill. | Bankruptcy judge | John Squires |
| Trust status | Active | | |
| Date trust established | 3/8/06 | | |
| Classes of claims processed | Plibrico claims | | |
| Claim administrator | Verus Claims Services | | |
| Trust website | www.verusllc.com/plibrico/plibrico.htm | | |

| Trustees and Advisors | | |
|---|---|---|
| *Position* | *Name* | *Affiliation* |
| Trustee | Alfred Wolin | Saiber LLC |
| FCR | Dean Trafelet | Retired Cook County Circuit Court Judge |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Steven Baron | Silber Pearlman, LLP |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Thomas Wilson | Kelley & Ferraro, LLC |
| TAC Member | James Bedortha | Goldberg, Persky & White, P.C. |
| Trust Counsel | Kevin Irwin | Keating Muething & Klekamp PLL |

| Estimated Initial Funding of Trust ($ millions) | | |
|---|---|---|
| | *Funding for Claims* *Paid Through Trust* | *Funding for Claims* *Paid Outside Trust* |
| Cash from debtor(s) | 0.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 205.6 | 0 |
| Other assets | 0.0 | 0 |
| Total | 205.6 | 0 |

**A.1540**

**Plibrico 524(g) Trust (continued)**

## Trust Financial Statement ($)

| | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 54,709,664 | 197,885,441 |
| Additions | | | | |
|   Cash from debtors | 0 | 0 | 0 | 0 |
|   Stock from debtors | 0 | 0 | 0 | 0 |
|   Insurance settlements | 0 | 58,850,000 | 146,700,000 | 208,724 |
|   Investment gains | 0 | -3,700 | 1,769,894 | -18,544,572 |
|   Investment income | 0 | 837,653 | 5,308,135 | 9,743,304 |
|   Other additions | 0 | 133,428 | 136,571 | -287,215 |
| Deductions | | | | |
|   Trust expenses | 0 | 5,858,940 | 1,734,091 | 1,141,412 |
|     Claim processing costs | 0 | 134,171 | 281,871 | 529,088 |
|     Investment fees | 0 | 56,548 | 210,686 | 287,215 |
|     All other expenses | 0 | 5,668,221 | 1,241,534 | 325,109 |
|   Taxes | 0 | 0 | 0 | 0 |
|   Claim payments | 0 | 0 | 9,004,733 | 59,954,748 |
|   Other deductions | 0 | 81,665 | 0 | 0 |
| Ending trust assets | 0 | 53,876,776 | 197,885,440 | 127,909,522 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|   Lower bound | – | 0.0% | 83.9% | 98.1% |
|   Upper bound | – | 1.4% | 83.9% | 98.1% |

## Claim Valuation for Plibrico claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
|   Mesothelioma | 350,000 | 425,000 | 750,000 |
|   Lung Cancer 1 | 120,000 | 135,000 | 200,000 |
|   Lung Cancer 2 | n.appl. | 45,000 | 135,000 |
|   Other Cancer | 65,000 | 70,000 | 100,000 |
|   Severe Asbestosis | 120,000 | 135,000 | 200,000 |
|   Asbestosis / Pleural Disease II | 15,000 | n.appl. | 15,000 |
|   Asbestosis / Pleural Disease I | 1,500 | n.appl. | 1,500 |

| Payment percentage | |
|---|---|
|   Initial payment percentage | 1.1% |
|   Current payment percentage | 8.5% |

| Claim payment ratio | |
|---|---|
|   Malignancies and severe asbestosis | 65.0% |
|   Asbestosis and pleural disease | 35.0% |

**Plibrico 524(g) Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 5,674 | 7,789 | 13,463 |
| Non-malignant | 0 | 0 | 18,454 | 20,136 | 38,590 |
| Not specified | 0 | 0 | 193 | 1,053 | 1,246 |
| All disease types | 0 | 0 | 24,321 | 28,978 | 53,299 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 311 | 1,585 | 1,896 |
| Non-malignant | 0 | 0 | 1,488 | 9,813 | 11,301 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 1,799 | 11,398 | 13,197 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 6,100,328 | 38,187,033 | 44,287,361 |
| Non-malignant | 0 | 0 | 959,820 | 4,679,887 | 5,639,707 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 7,060,148 | 42,866,920 | 49,927,068 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 19,615 | 24,093 | 23,358 |
| Non-malignant | – | – | 645 | 477 | 499 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 3,924 | 3,761 | 3,783 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

**A.1542**

**Plibrico 524(g) Trust (continued)**

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
| Mesothelioma | 0 | 151 | 757 | 908 |
| Lung cancer 1 | 0 | 128 | 557 | 685 |
| Lung cancer 2 | 0 | 0 | 52 | 52 |
| Other cancer | 0 | 32 | 219 | 251 |
| Severe asbestosis | 0 | 13 | 21 | 34 |
| Asbestosis/pleural disease I | 0 | 557 | 2,791 | 3,348 |
| Asbestosis/pleural disease II | 0 | 918 | 7,001 | 7,919 |
| Unknown | 0 | 0 | 0 | 0 |
| Claims payments ($) | | | | |
| Mesothelioma | 0 | 4,617,928 | 30,735,904 | 35,353,832 |
| Lung cancer 1 | 0 | 1,305,600 | 5,983,579 | 7,289,179 |
| Lung cancer 2 | 0 | 0 | 220,176 | 220,176 |
| Other cancer | 0 | 176,800 | 1,247,374 | 1,424,174 |
| Severe asbestosis | 0 | 132,600 | 228,734 | 361,334 |
| Asbestosis/pleural disease I | 0 | 710,175 | 3,558,525 | 4,268,700 |
| Asbestosis/pleural disease II | 0 | 117,045 | 892,628 | 1,009,673 |
| Unknown | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | |
| Mesothelioma | – | 30,582 | 40,602 | 38,936 |
| Lung cancer 1 | – | 10,200 | 10,743 | 10,641 |
| Lung cancer 2 | – | – | 4,234 | 4,234 |
| Other cancer | – | 5,525 | 5,696 | 5,674 |
| Severe asbestosis | – | 10,200 | 10,892 | 10,627 |
| Asbestosis/pleural disease I | – | 1,275 | 1,275 | 1,275 |
| Asbestosis/pleural disease II | – | 128 | 128 | 128 |
| Unknown | – | – | – | – |

**A.1543**

**Plibrico 524(g) Trust (continued)**

| Claim Approval Criteria for | Plibrico claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | | ✔ |
| 3. Pulmonary function test requirement | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | |
| AND FEV1/FVC ratio > | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No |
| 5. Latency and exposure requirements | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr |
| (2) Prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 1 day |

**A.1544**

# Swan Asbestos and Silica Settlement Trust

**Swan Asbestos and Silica Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Swan Transportation Co. | | |
| Bankruptcy filing date | 12/20/01 | Confirmation date | 7/21/03 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 2003 |
| Classes of claims processed | Swan Asbestos claims |
| Claim administrator | Trust Services, Inc. |
| Trust website | Unknown |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| FCR Counsel | Richard B. Schiro | Unknown |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Jimmy Negem | Negem Bickham & Worthinton |
| TAC Member | Shelton Smith | Shelton Smith & Associates |
| Trust Counsel | Sander Esserman | Stutzman, Bromberg, Esserman & Plifka |
| Trust Counsel | Rachel Mersky | Monzack Mersky McLaughlin and Browder, P.A. |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 1.6 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 118.3 | 0 |
| Other assets | 0.0 | 0 |
| Total | 119.9 | 0 |

**A.1546**

**Swan Asbestos and Silica Settlement Trust (continued)**

| Trust Financial Statement ($) | Pre-2006 | 2006 | 2007 | 2008 |
|---|---:|---:|---:|---:|
| Beginning trust assets | 0 | 22,088,782 | 25,952,921 | 26,058,082 |
| Additions | | | | |
|   Cash from debtors | 1,655,408 | 0 | 0 | 0 |
|   Stock from debtors | 0 | 0 | 0 | 0 |
|   Insurance settlements | 120,041,750 | 5,464,357 | 0 | 0 |
|   Investment gains | 0 | 0 | 0 | 0 |
|   Investment income | 583,767 | 986,084 | 1,188,818 | 423,337 |
|   Other additions | 0 | 0 | 0 | 0 |
| Deductions | | | | |
|   Trust expenses | 3,034,838 | 543,702 | 845,257 | 893,091 |
|     Claim processing costs | n.a. | n.a. | n.a. | n.a. |
|     Investment fees | n.a. | n.a. | n.a. | n.a. |
|     All other expenses | n.a. | n.a. | n.a. | n.a. |
|   Taxes | 0 | 0 | 0 | 0 |
|   Claim payments [a] | 97,157,305 | 2,042,600 | 238,400 | 1,998,360 |
|   Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 22,088,782 | 25,952,921 | 26,058,082 | 23,589,968 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|   Lower bound | 97.0% | 79.0% | 22.0% | 69.1% |
|   Upper bound | 97.0% | 79.0% | 22.0% | 69.1% |

[a] Includes some payments for silica claims. Payments for silica claims are likely a small percentage of the total.

| Claim Valuation for | Swan Asbestos claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
|   Mesothelioma | 1,200,000 | n.appl. | n.appl. |
|   Lung Cancer | 600,000 | n.appl. | n.appl. |
|   Other Cancer | 400,000 | n.appl. | n.appl. |
|   Severe Asbestosis | 600,000 | n.appl. | n.appl. |
|   Asbestosis / Pleural Disease | 200,000 | n.appl. | n.appl. |
| | | | |
| Payment percentage | | | |
|   Initial payment percentage | n.a. | | |
|   Current payment percentage | 20.0% | | |
| | | | |
| Claim payment ratio | | | |
|   Malignancies and severe asbestosis | n.appl. | | |
|   Asbestosis and pleural disease | n.appl. | | |

**A.1547**

**Swan Asbestos and Silica Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-asbestos | n.a. | n.a. | n.a. | n.a. | n.a. |
| All disease types | n.a. | n.a. | n.a. | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | 65 | 15 | 4 | 9 | 93 |
| Non-malignant | 2,266 | 459 | 7 | 8 | 2,740 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| Non-asbestos | 1,038 | 292 | 1 | 7 | 1,338 |
| All disease types | 3,369 | 766 | 12 | 24 | 4,171 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 97,157,305 | 2,042,600 | 238,400 | 1,998,360 | 101,436,665 |
| Non-asbestos | n.a. | n.a. | n.a. | n.a. | n.a. |
| All disease types | 97,157,305 | 2,042,600 | 238,400 | 1,998,360 | 101,436,665 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| Non-asbestos | – | – | – | – | – |
| All disease types | 28,839 | 2,667 | 19,867 | 83,265 | 24,320 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| Non-asbestos | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| Non-asbestos | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| Non-asbestos | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| Non-asbestos | | | | | |
| All disease types | – | – | – | – | – |

**Swan Asbestos and Silica Settlement Trust (continued)**

| Claim Activity by Disease Level | | | | |
|---|---|---|---|---|
| | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | |
| Claims paid | | | | |
|   Mesothelioma | 2 | 0 | 3 | 5 |
|   Lung cancer | 11 | 3 | 6 | 20 |
|   Other cancer | 2 | 1 | 0 | 3 |
|   Severe asbestosis | 159 | 2 | 3 | 164 |
|   Asbestosis/pleural disease | 264 | 4 | 4 | 272 |
|   Asbestosis/pleural disease 2 | 36 | 1 | 1 | 38 |
|   Unknown | 0 | 0 | 0 | 0 |
| Claims payments ($) | | | | |
|   Mesothelioma | n.a. | n.a. | n.a. | n.a. |
|   Lung cancer | n.a. | n.a. | n.a. | n.a. |
|   Other cancer | n.a. | n.a. | n.a. | n.a. |
|   Severe asbestosis | n.a. | n.a. | n.a. | n.a. |
|   Asbestosis/pleural disease | n.a. | n.a. | n.a. | n.a. |
|   Asbestosis/pleural disease 2 | n.a. | n.a. | n.a. | n.a. |
|   Unknown | 2,042,600 | 238,400 | 1,998,360 | 4,279,360 |
| Average payment per claim ($) | | | | |
|   Mesothelioma | – | – | – | – |
|   Lung cancer | – | – | – | – |
|   Other cancer | – | – | – | – |
|   Severe asbestosis | – | – | – | – |
|   Asbestosis/pleural disease | – | – | – | – |
|   Asbestosis/pleural disease 2 | – | – | – | – |
|   Unknown | – | – | – | – |

**Swan Asbestos and Silica Settlement Trust (continued)**

| Claim Approval Criteria for | Swan asbestos claims | | | | |
|---|---|---|---|---|---|
| | _Meso_ | _LC_ | _OC_ | _SA_ | _APD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | |
| 2. ILO or x-ray requirement | | | | | |
| a. ILO reading | | | | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | |
| (1) Bilateral interstitial fibrosis | | | | | |
| (2) Bilateral pleural plaques | | | | | |
| (3) Bilateral pleural thickening | | | | | |
| (4) Bilateral pleural calcification | | | | | |
| 3. Pulmonary function test requirement | | | | | |
| a. TLC < (% of normal) | | | | | |
| AND FEV1/FVC ratio > | | | | | |
| OR b. DLCO < (% of normal) | | | | | |
| AND FEV1/FVC ratio > | | | | | |
| OR c. FVC < (% of normal) | | | | 59 | |
| AND FEV1/FVC ratio > | | | | | |
| 4. Causation statement requirement | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1983 | 1 day | 1 day | 1 day | 1 day | 1 day |
| c. Occupational exposure | | | | | |
| (1) Total | | | | | |
| (2) Prior to 1983 | | | | | |

**A.1550**

# T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust

**T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | T. H. Agriculture & Nutrition, LLC (THAN) | | |
| | | | |
| Bankruptcy filing date | 11/24/08 | Confirmation date | 10/26/09 |
| Bankruptcy court | Bankr. S.D. N.Y. | Bankruptcy judge | Robert Gerber |
| | | | |
| Trust status | Active | | |
| Date trust established | 2009 | | |
| Classes of claims processed | THAN claims | | |
| Claim administrator | Not selected | | |
| Trust website | None | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Trustee | Alfred Wolin | Retired U.S. District Court Judge |
| Trustee | Charles A. Koppelman | Unknown |
| Trustee | David F. Levi | Retired U.S. District Court Judge |
| FCR | Samuel Issacharoff | NYU Law |
| TAC Member | Alan Brayton | Brayton Purcell |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Peter Kraus | Waters & Kraus, LLP |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Matthew Bergman | Bergman Draper & Frockt, PLLC |
| Trust Counsel | Steven Felsenthal | Stutzman, Bromberg, Esserman & Plifka |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 901.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 901.0 | 0 |

**A.1552**

**T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | | | | |
| Additions | | | | |
| Cash from debtors | | | | |
| Stock from debtors | | | | |
| Insurance settlements | | | | |
| Investment gains | | | | |
| Investment income | | | | |
| Other additions | | | | |
| Deductions | TRUST NOT ESTABLISHED UNTIL 2009 | | | |
| Trust expenses | | | | |
| Claim processing costs | | | | |
| Investment fees | | | | |
| All other expenses | | | | |
| Taxes | | | | |
| Claim payments | | | | |
| Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | – | – | – | – |
| Upper bound | – | – | – | – |

| Claim Valuation for | THAN claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| Disease level | Value | Value | Value |
| Mesothelioma | 150,000 | 238,000 | 900,000 |
| Lung Cancer 1 | 65,000 | 89,900 | 250,000 |
| Lung Cancer 2 | n.appl. | 20,000 | 75,000 |
| Other Cancer | 30,000 | 50,000 | 70,000 |
| Severe Asbestosis | 60,000 | 67,600 | 250,000 |
| Asbestosis / Pleural Disease II | 8,000 | 8,600 | 15,000 |
| Asbestosis / Pleural Disease I | 3,800 | 4,200 | 8,000 |
| Other Asbestos Disease | 500 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
| Initial payment percentage | 100.0% |
| Current payment percentage | 100.0% |

| Claim payment ratio | |
|---|---|
| Malignancies and severe asbestosis | 80.0% |
| Asbestosis and pleural disease | 20.0% |

*Payment percentage does not apply

**T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | *Pre-2006* | *2006* | *2007* | *2008* | *Total* |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| | | TRUST NOT ESTABLISHED UNTIL 2009 | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claims paid | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Claim payments ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |
| Average payment per claim ($) | | | | | |
| Malignant | | | | | |
| Non-malignant | | | | | |
| Not specified | | | | | |
| All disease types | | | | | |

**T. H. Agriculture & Nutrition, LLC Asbestos Personal Injury Trust (continued)**

| Claim Approval Criteria for | THAN claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC1_ | _LC2_ | _OC_ | _SA_ | _AP2_ | _AP1_ | _OAD_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
| a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
| c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
| a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
| (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
| a. TLC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR b. DLCO < (% of normal) | | | | | | | | |
| AND FEV1/FVC ratio > | | | | | | | | |
| OR c. FVC < (% of normal) | | | | | 65 | 80 | | |
| AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
| a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
| b. Company exposure prior to 1987 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
| c. Occupational exposure | | | | | | | | |
| (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
| (2) Prior to 1983 | | | | | | | | |

A.1555

# United States Gypsum Asbestos Personal Injury Settlement Trust

**United States Gypsum Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | USG Corp. | | |
| Bankruptcy filing date | 6/25/01 | Confirmation date | 6/15/06 |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |

| | |
|---|---|
| Trust status | Active |
| Date trust established | 6/20/06 |
| Classes of claims processed | United States Gypsum claims |
| Claim administrator | Delaware Claims Processing Facility |
| Trust website | www.usgasbestostrust.com |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Philip Pahigian | Retired from Wilentz, Goldman & Spitzer |
| Trustee | Charles Koppelman | Martha Stewart Living Omnimedia |
| Trustee | Lewis Sifford | Anderson & Co., P.C. |
| FCR | Dean Trafelet | Retired Cook County Circuit Court Judge |
| TAC Member | John Cooney | Cooney & Conway |
| TAC Member | Perry Weitz | Weitz & Luxenburg |
| TAC Member | Russell Budd | Baron & Budd, P.C. |
| TAC Member | Steven Kazan | Kazan, McClain, Abrams, Fernandez, Lyons, Farrise & Greenwood, P.C. |
| TAC Member | Theodore Goldberg | Goldberg, Persky & White, P.C. |
| Trust Counsel | Douglas Campbell | Campbell & Levine, LLC |
| Trust Counsel | Marla Eskin | Campbell & Levine, LLC |
| Trust Counsel | Philip Milch | Campbell & Levine, LLC |
| TAC Counsel | Elihu Inselbuch | Caplin & Drysdale |
| FCR Counsel | Andrew Kress | Kaye Scholer LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 3,950.0 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 4.2 | 0 |
| Other assets | 2.5 | 0 |
| Total | 3,956.7 | 0 |

**A.1556**

**United States Gypsum Asbestos Personal Injury Settlement Trust (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 0 | 3,975,184,899 | 4,089,038,836 |
| Additions |  |  |  |  |
| Cash from debtors | 0 | 3,952,500,000 | 0 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 0 | 4,223,000 | 0 | 0 |
| Investment gains | 0 | 13,148 | 30,518,702 | -246,886,861 |
| Investment income | 0 | 21,536,208 | 157,817,936 | 123,548,594 |
| Other additions | 0 | 0 | 0 | 0 |
| Deductions |  |  |  |  |
| Trust expenses | 0 | 2,857,457 | 10,758,701 | 16,678,382 |
| Claim processing costs | 0 | 585,500 | 3,797,746 | 6,268,215 |
| Investment fees | 0 | 0 | 2,844,085 | 5,903,739 |
| All other expenses | 0 | 2,271,957 | 4,116,870 | 4,506,428 |
| Taxes | 0 | 230,000 | 17,768,905 | 24,359 |
| Claim payments | 0 | 0 | 45,955,095 | 566,176,688 |
| Other deductions | 0 | 0 | 0 | 0 |
| Ending trust assets | 0 | 3,975,184,899 | 4,089,038,836 | 3,382,821,140 |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
| Lower bound | – | 0.0% | 61.7% | 97.1% |
| Upper bound | – | 0.0% | 61.7% | 97.1% |

## Claim Valuation for — United States Gypsum and A.P. Green claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | 155,000 | 225,000 | 450,000 |
| Lung Cancer 1 | 45,000 | 55,000 | 100,000 |
| Lung Cancer 2 | n.appl. | 15,000 | 35,000 |
| Other Cancer | 15,000 | 18,000 | 35,000 |
| Severe Asbestosis | 30,000 | 35,000 | 50,000 |
| Asbestosis / Pleural Disease II | 8,300 | n.appl. | n.appl. |
| Asbestosis / Pleural Disease I | 2,625 | n.appl. | n.appl. |
| Other Asbestos Disease | 400 * | n.appl. | n.appl. |

| Payment percentage |  |
|---|---|
| Initial payment percentage | 45.0% |
| Current payment percentage | 45.0% |

| Claim payment ratio |  |
|---|---|
| Malignancies and severe asbestosis | 85.0% |
| Asbestosis and pleural disease | 15.0% |

*Payment percentage does not apply

**A.1557**

**United States Gypsum Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 | Total |
| **Pre-petition pending and post-petition claims** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Non-malignant | 0 | 0 | n.a. | n.a. | n.a. |
| Not specified | 0 | 0 | 123,783 | 90,756 | 214,539 |
| All disease types | 0 | 0 | 123,783 | 90,756 | 214,539 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 504 | 7,146 | 7,650 |
| Non-malignant | 0 | 0 | 4,777 | 42,659 | 47,436 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 5,281 | 49,805 | 55,086 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 23,333,000 | 450,368,000 | 473,701,000 |
| Non-malignant | 0 | 0 | 11,667,000 | 112,592,000 | 124,259,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 35,000,000 | 562,960,000 | 597,960,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 46,296 | 63,024 | 61,922 |
| Non-malignant | – | – | 2,442 | 2,639 | 2,620 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 6,628 | 11,303 | 10,855 |
| | | | | | |
| **Claims settled but not paid pre-petition** | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 2,686 | n.a. | 0 | 2,686 |
| Non-malignant | 0 | 11,287 | n.a. | 0 | 11,287 |
| Not specified | 0 | 0 | 413 | 0 | 413 |
| All disease types | 0 | 13,973 | 413 | 0 | 14,386 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 69 | 73 | 142 |
| Non-malignant | 0 | 0 | 354 | 1,656 | 2,010 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 423 | 1,729 | 2,152 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 6,400,000 | 1,730,000 | 8,130,000 |
| Non-malignant | 0 | 0 | 1,600,000 | 1,730,000 | 3,330,000 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 8,000,000 | 3,460,000 | 11,460,000 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | 92,754 | 23,699 | 57,254 |
| Non-malignant | – | – | 4,520 | 1,045 | 1,657 |
| Not specified | – | – | – | – | – |
| All disease types | – | – | 18,913 | 2,001 | 5,325 |

**A.1558**

**United States Gypsum Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for | United States Gypsum and A.P. Green claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Meso | LC1 | LC2 | OC | SA | AP2 | AP1 | OAD |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | | |
|      AND FEV1/FVC ratio > | | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | | |
|      AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 [a] | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

[a] Exposure must be prior to January 2, 1968 for A.P. Green claims

# UNR Asbestos-Disease Claims Trust

**UNR Asbestos-Disease Claims Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | UNR Industries | | |
| | Unarco | | |
| Bankruptcy filing date | 7/29/82 | Confirmation date | 6/2/89 |
| Bankruptcy court | Bankr. N.D. Ill. | Bankruptcy judge | Eugene Wedoff |
| Trust status | Active | | |
| Date trust established | 2/25/90 | | |
| Classes of claims processed | UNR (UNARCO) claims | | |
| Executive director | David E. Maxam | | |
| Claim administrator | Claims Processing Facility | | |
| Trust website | www.cpf-inc.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Michael Levine | NYU Law School |
| Trustee | Alison Overseth | Franklin and Eleanor Roosevelt Institute, PASE |
| TAC Member | Gene Locks | Locks Law Firm |
| TAC Member | Robert Steinberg | Rose, Klein & Marias, LLP. |
| TAC Member | Stanley Levy | Levy Phillips & Konigsberg |
| Trust  Counsel | Kevin E. Irwin | Keating Muething & Klekamp PLL |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | | |
| Stock from debtors(s) | | |
| Insurance settlements | DATA NOT AVAILABLE | |
| Other assets | | |
| Total | | |

**A.1560**

**UNR Asbestos-Disease Claims Trust (continued)**

## Trust Financial Statement ($)

|  | Pre-2006 | 2006 | 2007 | 2008 |
|---|---|---|---|---|
| Beginning trust assets | 0 | 17,929,262 | 17,129,535 | 16,941,510 |
| Additions |  |  |  |  |
| Cash from debtors | 0 | 0 | 0 | 0 |
| Stock from debtors | 130,626,075 | 0 | 0 | 0 |
| Insurance settlements | 0 | 0 | 0 | 0 |
| Investment gains | -104,783,270 | 14,298 | 60,296 | -25,580 |
| Investment income | 328,086,253 | 816,250 | 703,543 | 645,061 |
| Other additions | 3,161,795 | 144,230 | 85,580 | 84,400 |
| Deductions |  |  |  |  |
| Trust expenses | 45,533,140 | 742,081 | 495,215 | 440,774 |
| Claim processing costs | n.a. | 212,150 | 96,000 | 96,000 |
| Investment fees | n.a. | 36,341 | 11,459 | 20,320 |
| All other expenses | n.a. | 493,590 | 387,756 | 324,454 |
| Taxes | 33,090,050 | 0 | 0 | 0 |
| Claim payments | 259,184,954 | 1,032,424 | 542,229 | 665,497 |
| Other deductions | 1,354,077 | 0 | 0 | 0 |
| Ending trust assets | 17,929,262 | 17,129,535 | 16,941,510 | 16,539,120 |
| Gross claimant compensation as a percentage of deductions |  |  |  |  |
| Lower bound | 76.4% | 58.2% | 52.3% | 60.2% |
| Upper bound | 76.8% | 58.2% | 52.3% | 60.2% |

## Claim Valuation for      UNR (UNARCO) claims

| Disease level | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma | n.a. | n.a. | n.a. |
| Lung cancer 1 | n.a. | n.a. | n.a. |
| Lung cancer 2 | n.a. | n.a. | n.a. |
| Other cancer | n.a. | n.a. | n.a. |
| Severe asbestosis | n.a. | n.a. | n.a. |
| Asbestosis/pleural disease | n.a. | n.a. | n.a. |
| Asbestosis/pleural disease | n.a. | n.a. | n.a. |
| Other asbestos disease | n.a. | n.a. | n.a. |

Payment percentage

| Initial payment percentage | 17.2% |
|---|---|
| Current payment percentage | 1.1% |

Claim payment ratio

| Malignancies and severe asbestosis | n.appl. |
|---|---|
| Asbestosis and pleural disease | n.appl. |

**A.1561**

**UNR Asbestos-Disease Claims Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed [a] | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 437,622 | n.a. | n.a. | n.a. | n.a. |
| All disease types | 437,622 | n.a. | n.a. | n.a. | n.a. |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 303,756 | 1,194 | 768 | 755 | 306,473 |
| All disease types | 303,756 | 1,194 | 768 | 755 | 306,473 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 259,184,954 | 1,097,612 | 547,972 | 634,345 | 261,464,883 |
| All disease types | 259,184,954 | 1,097,612 | 547,972 | 634,345 | 261,464,883 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 853 | 919 | 714 | 840 | 853 |
| All disease types | 853 | 919 | 714 | 840 | 853 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claims paid | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Claim payments ($) | | | | | |
| Malignant | 0 | 0 | 0 | 0 | 0 |
| Non-malignant | 0 | 0 | 0 | 0 | 0 |
| Not specified | 0 | 0 | 0 | 0 | 0 |
| All disease types | 0 | 0 | 0 | 0 | 0 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | – | – | – | – | – |
| All disease types | – | – | – | – | – |

[a] Claims filed data are incomplete.

**UNR Asbestos-Disease Claims Trust (continued)**

| Claim Approval Criteria for | UNR and UNARCO claims |
|---|---|

"In order to qualify for the exercise of this opinion [applies both to the expedited cash option and to the indvidualized resolution option], the claimant must make a conclusive demonstration of exposure to a UNR asbestos-containing product and submit a medical report from a qualified physician containing a diagnosis of an asbestos-related disease or injury and outlining the condition, symptoms, work history and/or exposure of the injured person." (Excerpted from UNR Claims Resolution Procedures)

# Western Asbestos Settlement Trust

**Western Asbestos Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | Western Asbestos Company | | |
| | Western MacArthur Co. | | |
| | MacArthur Co. | | |
| Bankruptcy filing date | 11/22/02 | Confirmation date | 1/27/04 |
| Bankruptcy court | Bankr. N.D. Cal. | Bankruptcy judge | Leslie Tchaikovsky |
| Trust status | Active | | |
| Date trust established | 4/22/04 | | |
| Classes of claims processed | Mac Arthur Co. - Minnesota claims | | |
| | Mac Arthur Co. - North Dakota claims | | |
| | Western MacArthur-Western Asbestos - California | | |
| Executive director | Sara Beth Brown | | |
| Claim administrator | Western Asbestos Settlement Trust | | |
| Trust website | www.wastrust.com | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| Managing Trustee | Stephen Snyder | Snyder Miller & Orton LLP. |
| Trustee | John Luikart | Bethany Advisors LLC |
| Trustee | Sandra Hernandez | The San Francisco Foundation |
| FCR | Charles Renfrew | Law Offices of Charles B. Renfrew |
| TAC Member | Alan Brayton | Brayton Purcell, LLP |
| TAC Member | David McClain | Kazan, McClain, Lyons, Greenwood & Harley |
| TAC Member | Michael Sieben | Sieben Polk, P.A. |
| TAC Member | Jack Clapper | Clapper, Patti, Schweizer & Mason |
| TAC Member | Jerry Paul | Paul & Hartley LLP |
| Trust Counsel | Janet Chubb | Jones Vargas |
| TAC Counsel | Michael Ahrens | Sheppard Mullin Richter & Hampton LLP |
| FCR Counsel | Gary Fergus | Fergus, A Law Office |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 0.5 | 0 |
| Stock from debtors(s) | 0.0 | 0 |
| Insurance settlements | 2,000.4 | 0 |
| Other assets | 0.0 | 0 |
| Total | 2,000.9 | 0 |

**A.1564**

**Western Asbestos Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | Pre-2006 | 2006 | 2007 | 2008 |
| Beginning trust assets | 0 | 161,412,077 | 1,150,877,094 | 980,270,462 |
| Additions | | | | |
| Cash from debtors | 500,000 | 0 | 4,041 | 0 |
| Stock from debtors | 0 | 0 | 0 | 0 |
| Insurance settlements | 2,000,368,050 | 0 | 0 | 0 |
| Investment gains | -3,812,864 | 29,559,324 | 15,738,730 | -117,791,033 |
| Investment income | 47,033,607 | 42,558,920 | 40,644,401 | 32,826,096 |
| Other additions | 7,388,357 | 199,248 | 1,685,050 | 38,279,408 |
| Deductions | | | | |
| Trust expenses | 18,484,448 | 1,663,514 | 2,655,094 | 6,454,391 |
| Claim processing costs | 1,393,091 | 378,868 | 444,848 | 486,512 |
| Investment fees | n.a. | n.a. | n.a. | n.a. |
| All other expenses | n.a. | n.a. | n.a. | n.a. |
| Taxes | 2,545,469 | 17,879,129 | 11,468,672 | 0 |
| Claim payments | 768,456,867 | 62,127,398 | 213,697,340 | 47,635,162 |
| Other deductions | 100,578,292 | 1,182,434 | 857,748 | 235,448 |
| Ending trust assets | 1,161,412,074 | 1,150,877,094 | 980,270,462 | 879,259,932 |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
| Lower bound | 86.3% | 75.0% | 93.4% | 87.7% |
| Upper bound | 97.6% | 76.4% | 93.8% | 88.1% |

**Western Asbestos Settlement Trust (continued)**

| Claim Valuation for | Mac Arthur Co. - Minnesota claims | | |
|---|---|---|---|
| | Base-Case | Average | Maximum |
| <u>Disease level</u> | <u>Value</u> [a,b] | <u>Value</u> [b] | <u>Value</u> [b] |
| Mesothelioma | 148,678 | 316,250 | 1,265,000 |
| Lung Cancer | 41,211 | 137,050 | 548,200 |
| Other Cancer | 21,222 | 73,800 | 295,200 |
| Grade I Non-Malignancy | 30,868 | 57,200 | 228,800 |
| Grade II Non-Malignancy | 21,875 | 30,150 | 120,600 |
| | | | |
| Payment percentage | | | |
| Initial payment percentage | 31.5% | | |
| Current payment percentage | 44.0% | | |
| | | | |
| Claim payment ratio | | | |
| Malignancies | 71.5% | | |
| Asbestosis and pleural disease | 28.5% | | |

| Claim Valuation for | Mac Arthur Co. - North Dakota claims | | |
|---|---|---|---|
| | Base-Case | Average | Maximum |
| <u>Disease level</u> | <u>Value</u> [a,b] | <u>Value</u> [b] | <u>Value</u> [b] |
| Mesothelioma | 58,544 | 117,087 | 468,348 |
| Lung Cancer | 13,569 | 44,777 | 179,108 |
| Other Cancer | 4,894 | 16,884 | 67,536 |
| Grade I Non-Malignancy | 9,764 | 16,500 | 66,000 |
| Grade II Non-Malignancy | 8,219 | 12,000 | 48,000 |
| | | | |
| Payment percentage | | | |
| Initial payment percentage | 31.5% | | |
| Current payment percentage | 44.0% | | |
| | | | |
| Claim payment ratio | | | |
| Malignancies | 71.5% | | |
| Asbestosis and pleural disease | 28.5% | | |

| Claim Valuation for | Western MacArthur-Western Asbestos - California | | |
|---|---|---|---|
| | Base-Case | Average | Maximum |
| <u>Disease level</u> | <u>Value</u> [a,b] | <u>Value</u> [b] | <u>Value</u> [b] |
| Mesothelioma | 276,479 | 524,025 | 2,096,100 |
| Lung Cancer | 62,046 | 199,195 | 796,780 |
| Other Cancer | 22,298 | 75,000 | 300,000 |
| Grade I Non-Malignancy | 32,131 | 51,557 | 206,228 |
| Grade II Non-Malignancy | 18,574 | 21,816 | 87,264 |
| | | | |
| Payment percentage | | | |
| Initial payment percentage | 31.5% | | |
| Current payment percentage | 44.0% | | |
| | | | |
| Claim payment ratio | | | |
| Malignancies | 84.0% | | |
| Asbestosis and pleural disease | 16.0% | | |

[a] For each claim, base-case values are adjusted using a series of factors that approximate factors which add or substract value to cases in the tort system.

[b] Trust has increased values 10.1% above figures shown to account for inflation.

**A.1566**

**Western Asbestos Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ | _Total_ |
| Pre-petition pending and post-petition claims | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 3,179 | 1,626 | 937 | 864 | 6,606 |
| All disease types | 3,179 | 1,626 | 937 | 864 | 6,606 |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 1,180 | 1,408 | 917 | 897 | 4,402 |
| All disease types | 1,180 | 1,408 | 917 | 897 | 4,402 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 122,161,180 | 52,332,752 | 53,926,911 | 45,311,265 | 273,732,108 |
| All disease types | 122,161,180 | 52,332,752 | 53,926,911 | 45,311,265 | 273,732,108 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 103,526 | 37,168 | 58,808 | 50,514 | 62,184 |
| All disease types | 103,526 | 37,168 | 58,808 | 50,514 | 62,184 |
| | | | | | |
| Claims settled but not paid pre-petition | | | | | |
| Claims filed | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 5,448 | 0 | 0 | 0 | 5,448 |
| All disease types | 5,448 | 0 | 0 | 0 | 5,448 |
| Claims paid | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 5,417 | 0 | 2 | 1 | 5,420 |
| All disease types | 5,417 | 0 | 2 | 1 | 5,420 |
| Claim payments ($) | | | | | |
| Malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Non-malignant | n.a. | n.a. | n.a. | n.a. | n.a. |
| Not specified | 646,714,878 | 72,135,428 ª | 159,729,591 ª | 21,105 | 878,601,002 |
| All disease types | 646,714,878 | 72,135,428 | 159,729,591 | 21,105 | 878,601,002 |
| Average payment per claim ($) | | | | | |
| Malignant | – | – | – | – | – |
| Non-malignant | – | – | – | – | – |
| Not specified | 119,386 | – | – | 21,105 | 162,104 |
| All disease types | 119,386 | – | – | 21,105 | 162,104 |

ª Includes additonal payments on previously paid claims.

**Western Asbestos Settlement Trust (continued)**

| Claim Approval Criteria for | Mac Arthur Co. - All claims | | | | | | |
|---|---|---|---|---|---|---|---|
| | _Meso_ | _LC_ | _OC_ | _G1NM-BC_ [a] | _G1NM-E_ [b] | _G1NM-SA_ [c] | _G2NM_ |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | |
|    a. ILO reading | | 1/0 | 1/0 | 1/0 | 1/1 | 2/2 | 1/0 |
| OR b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | | | ✔ | ✔ | | ✔ |
|      (2) Bilateral pleural plaques | | | | | | | |
|      (3) Bilateral pleural thickening | | | | | | | |
|      (4) Bilateral pleural calcification | | | | | | | |
| 3. Pulmonary function test requirement [d] | | | | | | | |
|    a. TLC < (% of normal) | | | | 80 | 70 | | |
|      AND FEV1/FVC ratio > | | | | | | | |
| OR b. DLCO < (% of normal) | | | | 75 | 60 | | |
|      AND FEV1/FVC ratio > | | | | 0.65 | 0.65 | | |
| OR c. FVC < (% of normal) | | | | 80 | 60 | | |
|      AND FEV1/FVC ratio > | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | No | No | No | No | No | No |
| 5. Latency and exposure requirements | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 3 mo | 1 yr | 1 yr | 1 yr | 1 yr | 1 yr | 1 yr |
|    c. Occupational exposure | | | | | | | |
|      (1) Total | | | | | | | |
|      (2) Prior to 1983 | | | | | | | |

[a] Grade I non-malignancy, base case
[b] Grade I non-malignancy, enhanced
[c] Grade I non-malignancy, serious asbestosis
[d] Claimant assumed to be at least 70 years old

# W.R. Grace & Co. Asbestos Personal Injury Settlement Trust

**W.R. Grace & Co. Asbestos Personal Injury Settlement Trust**

## Bankruptcy Court and Trust Administrative Information

| | | | |
|---|---|---|---|
| Debtor(s) | W.R. Grace | | |
| | | | |
| Bankruptcy filing date | 4/1/01 | Confirmation date | Not confirmed |
| Bankruptcy court | Bankr. D. Del. | Bankruptcy judge | Judith Fitzgerald |
| | | | |
| Trust status | Proposed | | |
| Date trust established | Trust not established | | |
| Classes of claims processed | W.R. Grace claims | | |
| Claim administrator | Not selected | | |
| Trust website | None | | |

## Trustees and Advisors

| Position | Name | Affiliation |
|---|---|---|
| FCR | David Austern | Claims Resolution Management Corporation |
| FCR Counsel | John Phillips | Phillips Parker Orberson & Moore PLC |
| FCR Counsel | Roger Frankel | Orrick, Herrington & Sutcliffe LLP |
| FCR Counsel | Debra Felder | Orrick, Herrington & Sutcliffe LLP |
| FCR Counsel | Richard Wyron | Orrick, Herrington & Sutcliffe LLP |

## Estimated Initial Funding of Trust ($ millions)

| | Funding for Claims Paid Through Trust | Funding for Claims Paid Outside Trust |
|---|---|---|
| Cash from debtor(s) | 2,315.5 | 0 |
| Stock from debtors(s) | 662.8 | 0 |
| Insurance settlements | 0.0 | 0 |
| Other assets | 0.0 | 0 |
| Total | 2,978.3 | 0 |

**A.1570**

**W.R. Grace & Co. Asbestos Personal Injury Settlement Trust (continued)**

| Trust Financial Statement ($) | | | | |
|---|---|---|---|---|
| | _Pre-2006_ | _2006_ | _2007_ | _2008_ |
| Beginning trust assets | | | | |
| Additions | | | | |
|     Cash from debtors | | | | |
|     Stock from debtors | | | | |
|     Insurance settlements | | | | |
|     Investment gains | | | | |
|     Investment income | | | | |
|     Other additions | | | | |
| Deductions | | TRUST NOT YET ESTABLISHED | | |
|     Trust expenses | | | | |
|         Claim processing costs | | | | |
|         Investment fees | | | | |
|         All other expenses | | | | |
|     Taxes | | | | |
|     Claim payments | | | | |
|     Other deductions | | | | |
| Ending trust assets | | | | |
| | | | | |
| Gross claimant compensation as a percentage of deductions | | | | |
|     Lower bound | – | – | – | – |
|     Upper bound | – | – | – | – |

| Claim Valuation for [a] | W.R. Grace claims | | |
|---|---|---|---|
| | Scheduled | Average | Maximum |
| _Disease level_ | _Value_ | _Value_ | _Value_ |
|     Mesothelioma | 180,000 | 225,000 | 450,000 |
|     Lung Cancer 1 | 42,000 | 45,000 | 95,000 |
|     Lung Cancer 2 | n.appl. | 14,000 | 33,000 |
|     Other Cancer | 20,000 | 20,500 | 35,000 |
|     Severe Asbestosis | 50,000 | 62,240 | 100,000 |
|     Asbestosis / Pleural Disease II | 7,500 | 8,500 | 15,000 |
|     Asbestosis / Pleural Disease I | 2,500 | 3,000 | 5,000 |
|     Other Asbestos Disease | 300 * | n.appl. | n.appl. |

| Payment percentage | |
|---|---|
|     Initial payment percentage | 30.0% |
|     Current payment percentage | 30.0% |

| Claim payment ratio | |
|---|---|
|     Malignancies and severe asbestosis | 88.0% |
|     Asbestosis and pleural disease | 12.0% |

*Payment percentage does not apply

[a] Proposed

**W.R. Grace & Co. Asbestos Personal Injury Settlement Trust (continued)**

| Claim Activity | | | | | |
|---|---|---|---|---|---|
| | *Pre-2006* | *2006* | *2007* | *2008* | *Total* |
| Pre-petition pending and post-petition claims | | | | | |
|   Claims filed | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claims paid | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claim payments ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Average payment per claim ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | TRUST NOT YET ESTABLISHED | | | |
| Claims settled but not paid pre-petition | | | | | |
|   Claims filed | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claims paid | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Claim payments ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |
|   Average payment per claim ($) | | | | | |
|     Malignant | | | | | |
|     Non-malignant | | | | | |
|     Not specified | | | | | |
|     All disease types | | | | | |

**W.R. Grace & Co. Asbestos Personal Injury Settlement Trust (continued)**

| Claim Approval Criteria for ° | W.R. Grace claims | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | *Meso* | *LC1* | *LC2* | *OC* | *SA* | *AP2* | *AP1* | *OAD* |
| 1. Diagnosis requirement (one or more of checked items satisfies requirement) | | | | | | | | |
|    a. Physical exam | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    b. Pathology | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ | ✔ |
|    c. Medical document review | | | | | | | | |
| 2. ILO or x-ray requirement | | | | | | | | |
|    a. ILO reading | | 1/0 | | 1/0 | 2/1 | 1/0 | 1/0 | 1/0 |
| OR  b. X-ray, CT scan, or pathology showing one or more of the checked conditions | | | | | | | | |
|      (1) Bilateral interstitial fibrosis | | ✔ | | ✔ | ✔ | ✔ | ✔ | ✔ |
|      (2) Bilateral pleural plaques | | ✔ | | ✔ | ✔ | ✔ | ✔ | ✔ |
|      (3) Bilateral pleural thickening | | ✔ | | ✔ | ✔ | ✔ | ✔ | ✔ |
|      (4) Bilateral pleural calcification | | ✔ | | ✔ | ✔ | ✔ | ✔ | ✔ |
| 3. Pulmonary function test requirement | | | | | | | | |
|    a. TLC < (% of normal) | | | | | 65 | 80 | | |
|       AND FEV1/FVC ratio > | | | | | | | | |
| OR  b. DLCO < (% of normal) | | | | | | | | |
|       AND FEV1/FVC ratio > | | | | | | | | |
| OR  c. FVC < (% of normal) | | | | | 65 | 80 | | |
|       AND FEV1/FVC ratio > | | | | | 0.65 | 0.65 | | |
| 4. Causation statement requirement | No | Yes | Yes | Yes | Yes | Yes | No | No |
| 5. Latency and exposure requirements | | | | | | | | |
|    a. Latency | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr | 10 yr |
|    b. Company exposure prior to 1983 | 1 day | 6 mo | 1 day | 6 mo | 6 mo | 6 mo | 6 mo | 1 day |
|    c. Occupational exposure | | | | | | | | |
|      (1) Total | | 5 yr | | 5 yr | 5 yr | 5 yr | 5 yr | |
|      (2) Prior to 1983 | 1 day | 2 yr | 1 day | 2 yr | 2 yr | 2 yr | 6 mo | 1 day |

° Proposed

**A.1573**

# References

Allen, Lucy P., and Mary Elizabeth Stern, *Snapshot of Recent Trends in Asbestos Litigation*, NERA Economic Consulting, June 16, 2009.

*Amchem Prods. v. Windsor*, Supreme Court of the United States, 521 U.S. 591, 117 S. Ct. 2231, June 25, 1997.

American Academy of Actuaries, Mass Torts Subcommittee, *Overview of Asbestos Claims Issues and Trends*, Washington, D.C., August 2007. As of July 2, 2010:
http://www.actuary.org/pdf/casualty/asbestos_aug07.pdf

Armstrong World Industries, *Amended and Restated Armstrong World Industries, Inc. Asbestos Personal Injury Settlement Trust Distribution Procedures*, 2008.

Babcock and Wilcox Company, *Asbestos Personal Injury Settlement Trust: Instructions for Filing a Claim—Updated 8/5/2009*, August 5, 2009. As of July 2, 2010:
http://www.bwasbestostrust.com/files/BWClaimantInstructionLetterFinal8_4_09a.pdf

Barliant, Ronald, Dimitri G. Karcazes, and Anne M. Sherry, "From Free-Fall to Free-for-All: The Rise of Pre-Packaged Asbestos Bankruptcies," *American Bankruptcy Institute Law Review*, Vol. 12, No. 2, Winter 2004, pp. 441–471.

Bates, Charles E., and Charles Mullin, "Having Your Tort and Eating It Too?" *Mealey's Litigation Report: Asbestos*, Vol. 6, No. 4, November 2006.

Bates, Charles E., Charles H. Mullin, and A. Rachel Marquardt, "The Naming Game," *Mealey's Litigation Report*, Vol. 24, No. 15, 2009, pp. 1–7.

Bates, Charles E., Charles H. Mullin, and Marc C. Scarcella, "The Claiming Game," *Mealey's Litigation Report*, Vol. 25, No. 1, February 2010, pp. 1–8.

Behrens, Mark A., "What's New in Asbestos Litigation?" *Review of Litigation*, Vol. 28, No. 3, Spring 2009, pp. 500–557.

*Borel v. Fibreboard Paper Products Corp.*, U.S. Court of Appeals for the Fifth Circuit, 493 F.2d 1076, September 10, 1973.

*Borg-Warner Corp. v. Flores*, Supreme Court of Texas, 232 S.W.3d 765, argued September 29, 2006, opinion delivered June 8, 2007, released for publication October 12, 2007; rehearing denied by *Borg-Warner Corp. v. Flores*, 2007 Tex. LEXIS 930, Tex., October 12, 2007.

Brown, S. Todd, "Section 524(g) Without Compromise: Voting Rights and the Asbestos Bankruptcy Paradox," *Columbia Business Law Review*, Vol. 2008, No. 3, 2008, pp. 841–933.

Carroll, Stephen J., Lloyd Dixon, James M. Anderson, Thor Hogan, and Elizabeth M. Sloss, *The Abuse of Medical Diagnostic Practices in Mass Litigation: The Case of Silica*, Santa Monica, Calif.: RAND Corporation, TR-774-ICJ, 2009. As of July 3, 2010:
http://www.rand.org/pubs/technical_reports/TR774/

Carroll, Stephen J., Deborah R. Hensler, Jennifer Gross, Elizabeth M. Sloss, Matthias Schonlau, Allan Abrahamse, and J. Scott Ashwood, *Asbestos Litigation*, Santa Monica, Calif.: RAND Corporation, MG-162-ICJ, 2005. As of March 23, 2010:
http://www.rand.org/pubs/monographs/MG162/

**A.1574**

C. E. Thurston and Sons, *Asbestos Trust Agreement*, undated. As of July 3, 2010:
http://www.claimsres.com/CET%20docs/Trust%20Agreement%20-%20Executed.pdf

Crowell and Moring, "Chart 1: Company Name and Year of Bankruptcy Filing (Chronologically)," revised June 5, 2010. As of March 24, 2010:
http://www.crowell.com/pdf/AsbestosChart1.pdf

Effross, Walter A., "The Bankruptcy Reform Act of 1994: Something for Everyone," *American Bankruptcy Institute Journal*, Vol. 13, No. 10, December 1994.

Ehrenfeld, Joshua A., "Quieting the Rebellion: Eliminating Payment of Prepetition Debts Prior to Chapter 11 Reorganizations," *University of Chicago Law Review*, Vol. 70, No. 2, Spring 2003, pp. 621–638.

Esserman, Sander L., and David J. Parsons, "The Case for Broad Access to 11 U.S.C. Section 524(g) in Light of the Third Circuit's Ongoing Business Requirement Dicta in Combustion Engineering," *New York University Annual Survey of American Law*, Vol. 62, No. 2, 2006, pp. 187–222.

Falise, Robert A., chair and managing trustee, Manville Personal Injury Settlement Trust, letter to Hon. Jack B. Weinstein, senior judge, U.S. District Court, Eastern District of New York, and Hon. Burton R. Lifland, U.S. Bankruptcy Court, Southern District of New York, October 30, 2009. As of July 3, 2010:
http://www.mantrust.org/FTP/thirdQ09.pdf

Green, Eric D., Lawrence Fitzpatrick, James L. Patton Jr., Edwin J. Harron, and Travis N. Turner, "Prepackaged Asbestos Bankruptcies: Down but Not Out," *New York University Annual Survey of American Law*, Vol. 63, No. 4, 2007–2008, pp. 727–772.

H. K. Porter Company, *Asbestos Trust Agreement*, c. 1998. As of March 23, 2010:
http://www.hkporterasbestostrust.org/Resources.htm

Hensler, Deborah R., William L. F. Felstiner, Molly Selvin, and Patricia A. Ebener, *Asbestos in the Courts: The Challenge of Mass Toxic Torts*, Santa Monica, Calif.: RAND Corporation, R-3324-ICJ, 1985. As of July 8, 2010:
http://www.rand.org/pubs/reports/R3324/

*In re Combustion Eng'g., Inc.*, U.S. Court of Appeals for the Third Circuit, 391 F.3d 190, argued June 3, 2004, filed December 2, 2004, as amended February 23, 2005.

*In re Fuller-Austin Insulation*, U.S. District Court for the District of Delaware, 1998 U.S. Dist. LEXIS 18340, decided November 10, 1998, findings of fact/conclusions of law at In re Fuller-Austin Insulation Co., 1998 U.S. Dist. LEXIS 23567, D. Del., November 13, 1998.

*In re Johns-Manville Corp.*, U.S. Bankruptcy Court for the Southern District of New York, 68 B.R. 618, decided December 18, 1986, amended December 19, 1986, amended December 23, 1986; affirmed by *In re Johns-Manville Corp.*, 78 B.R. 407, Southern District of New York, 1987; affirmed sub nomine by *Kane v. Johns-Manville Corp.*, 843 F.2d 636, Second Circuit of New York, 1988.

*In re Joint E. & S. Dist. Asbestos Litig.*, U.S. District Court for the Eastern District of New York, U.S. District Court for the Southern District of New York, U.S. Bankruptcy Court for the Southern District of New York, 129 B.R. 710, filed June 27, 1991, as amended August 5, 1991.

*In re Joint E. & S. Dists. Asbestos Litig. v. Falise*, U.S. District Court for the Eastern District of New York and Southern District of New York, 878 F. Supp. 473, decided January 19, 1995, filed January 18, 1995, entered January 19, 1995; affirmed in part, vacated in part, and remanded by *In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 2d Cir. N.Y., 1996; affirmed without opinion by *Findley v. Falise* (*In re Joint E. & S. Dist. Asbestos Litig.*), 100 F.3d 944, 2d Cir. N.Y., 1996; affirmed without opinion by *Findley v. Falise* (*In re Joint E. & S. Dist. Asbestos Litig.*), 100 F.3d 945, 2d Cir. N.Y., 1996.

Inselbuch, Elihu, "Some Key Issues in Asbestos Bankruptcies," *South Texas Law Review*, Vol. 44, No. 4, Fall 2003, pp. 1037–1044.

Issacharoff, Samuel, "'Shocked': Mass Torts and Aggregate Asbestos Litigation After Amchem and Ortiz," *Texas Law Review*, Vol. 80, No. 7, June 2002, pp. 1925–1942.

J. T. Thorpe Settlement Trust, *Fourth Amendment to and Complete Restatement of J. T. Thorpe Settlement Trust Agreement*, April 21, 2010. As of July 8, 2010:
http://jttstrust.com/pdf/Fourth%20Amendment%20to%20and%20Complete%20Restatement%20of%20
J.T.%20Thorpe%20Settlement%20Trust%20Agreement,%20April%2021,%202010.pdf

Kaiser Aluminum and Chemical Corporation, *Third Amended Asbestos Trust Distribution Procedures*, November 20, 2007. As of July 3, 2010:
http://www.kaiserasbestostrust.com/Files/
Third%20Amended%20Trust%20Distribution%20Procedures%2000013238.pdf

Mabey, Ralph R., and Peter A. Zisser, "Improving Treatment of Future Claims: The Unfinished Business Left by the Manville Amendments," *American Bankruptcy Law Journal*, Vol. 69, No. 4, Fall 1995, pp. 487–514.

Macchiarola, Frank J., "The Manville Personal Injury Settlement Trust: Lessons for the Future," *Cardozo Law Review*, Vol. 17, No. 3, January 1996, pp. 583–628.

Manville Personal Injury Settlement Trust, "History," c. 1996. As of March 23, 2010:
http://mantrust.org/history.htm

———, claim history provided to the authors by Claims Resolution Management Corporation, August 2007.

McGovern, Francis E., "The Tragedy of the Asbestos Commons," *Virginia Law Review*, Vol. 88, No. 8, December 2002, pp. 1721–1756.

———, "The Evolution of Asbestos Bankruptcy Trust Distribution Plans," *New York University Annual Survey of American Law*, Vol. 62, No 2, 2006, pp. 163–186.

NGC Bodily Injury Trust, *Seventh Amended Claims Resolution Procedures*, December 12, 2002. As of July 3, 2010:
http://www.ngcbitrust.org/DownloadableForms/CRP.pdf

*Ortiz v. Fibreboard Corp.*, Supreme Court of the United States, 527 U.S. 815, 119 S. Ct. 2295, June 23, 1999.

Parloff, Roger, "Welcome to the New Asbestos Scandal," *Fortune*, September 6, 2004, p. 186. As of July 3, 2010:
http://money.cnn.com/magazines/fortune/fortune_archive/2004/09/06/380311/index.htm

Peterson, Mark A., "Giving Away Money: Comparative Comments on Claims Resolution Facilities," *Law and Contemporary Problems*, Vol. 53, No. 4, Autumn 1990, pp. 113–136.

Plevin, Mark D., Leslie A. Davis, and Noah S. Bloomberg, "Where Are They Now, Part Five: An Update on Developments in Asbestos-Related Bankruptcy Cases," *Mealey's Asbestos Bankruptcy Report*, Vol. 8, No. 8, March 2009, pp. 1–35. As of July 3, 2010:
http://www.crowell.com/documents/Where-Are-They-Now-Part-5_Asbestos-Related-Bankruptcy.pdf

Plevin, Mark D., Robert T. Ebert, and Leslie A. Epley, "Pre-Packed Asbestos Bankruptcies: A Flawed Solution," *South Texas Law Review*, Vol. 44, No. 4, Fall 2003, pp. 883–924.

Plevin, Mark D., Leslie A. Epley, and Clifton S. Elgarten, "The Future Claims Representative in Prepackaged Asbestos Bankruptcies: Conflicts of Interest, Strange Alliances, and Unfamiliar Duties for Burdened Bankruptcy Courts," *New York University Annual Survey of American Law*, Vol. 62, No. 2, 2006, pp. 271–328.

Plevin, Mark D., and Paul W. Kalish, "Where Are They Now? A History of the Companies That Have Sought Bankruptcy Protection Due to Asbestos Claims," *Mealey's Asbestos Bankruptcy Report*, Vol. 1, No. 1, August 2001, pp. 1–9. As of July 3, 2010:
http://www.crowell.com/documents/DOCASSOCFKTYPE_ARTICLES_424.pdf

Plevin, Mark D., Paul W. Kalish, and Kelly R. Cusick, "Where Are They Now, Part Four: A Continuing History of the Companies That Have Sought Bankruptcy Protection Due to Asbestos Claims," *Mealey's Asbestos Bankruptcy Report*, Vol. 6, No. 7, February 2007, pp. 1–41. As of July 3, 2010:
http://www.crowell.com/documents/DOCASSOCFKTYPE_ARTICLES_592.pdf

Plevin, Mark D., Paul W. Kalish, and Leslie A. Epley, "Where Are They Now? Part Two: A Continuing History of the Companies That Have Sought Bankruptcy Protection Due to Asbestos Claims," *Mealey's Asbestos Bankruptcy Report*, Vol. 17, No. 20, November 15, 2002. As of July 3, 2010:
http://www.crowell.com/documents/DOCASSOCFKTYPE_ARTICLES_422.pdf

———, "Where Are They Now, Part Three: A Continuing History of the Companies That Have Sought Bankruptcy Protection Due to Asbestos Claims," *Mealey's Asbestos Bankruptcy Report*, Vol. 5, No. 4, November 2005, pp. 1–35. As of July 3, 2010: http://www.crowell.com/documents/DOCASSOCFKTYPE_ARTICLES_419.pdf

Public Law 103-394, Bankruptcy Reform Act of 1994, October 22, 1994. As of July 4, 2010: http://frwebgate.access.gpo.gov/cgi-bin/getdoc.cgi?dbname=103_cong_bills&docid=f:h5116enr.txt.pdf

Shelley, William P., Jacob C. Cohn, and Joseph A. Arnold, "The Need for Transparency Between the Tort System and Section 524(g) Asbestos Trusts," *Norton Journal of Bankruptcy Law and Practice*, Vol. 17, No. 2, 2008, pp. 257–295. As of July 3, 2010: http://www.cozen.com/admin/files/publications/JBLP_v17n2_ShelleyCohnArnold_sent%20040208.pdf

Silverstein, Joshua M., "Overlooking Tort Claimants' Best Interests: Non-Debtor Releases in Asbestos Bankruptcies," *University of Missouri, Kansas City, Law Review*, Vol. 78, No. 1, Fall 2009, pp. 1–100.

Snyder, Todd R., and Deanne C. Siemer, "Reply to Barliant: Asbestos Pre-Packaged Bankruptcies: Apply the Brakes Carefully and Retain Flexibility for Debtors," *American Bankruptcy Institute Law Review*, Vol. 13, No. 2, Winter 2005, pp. 801–808.

Stengel, James L., "The Asbestos End-Game," *New York University Annual Survey of American Law*, Vol. 62, No. 2, 2006, pp. 223–270.

Taylor, Mark D., "How Congress Can Solve the 'Great Asbestos Bankruptcy Heist,'" *Mealey's Asbestos Bankruptcy Report*, Vol. 4, No. 9, April 2005, pp. 1–5. As of July 3, 2010: http://www.arentfox.com/pdf_notReady/asbestos_bankruptcy_report.pdf

*Tomplait v. Combustion Eng'g, Inc.*, No. C.A. 5402, Eastern District of Tex., 1967.

UNR Asbestos-Disease Claims Trust, "2008 Annual Report," c. 2009. On file with the authors.

U.S. Code, Title 11, Bankruptcy; Chapter 7, Liquidation.

———, Title 11, Bankruptcy; Chapter 11, Reorganization.

———, Title 11, Bankruptcy; Chapter 5, Creditors, the Debtor, and the Estate; Subchapter II, Debtors Duties and Benefits; Section 524, Effect of Discharge.

U.S. House of Representatives, Asbestos Health Hazards Compensation Act, H.R. 8689, introduced August 2, 1977.

———, report 103-835, H.R. 5116, October 4, 1994.