# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br>BANKRUPTCY APPEALS<br><br>This Filing Relates to<br><br><br>ALL MATTERS | 21 cv 7532 (CM)<br>21 cv 7585 (CM)<br>21 cv 7961 (CM)<br>21 cv 7962 (CM)<br>21 cv 7966 (CM)<br>21 cv 7969 (CM)<br>21 cv 8034 (CM)<br>21 cv 8042 (CM)<br>21 cv 8049 (CM)<br>21 cv 8055 (CM)<br>21 cv 8139 (CM)<br>21 cv 8258 (CM)<br>21 cv 8271 (CM)<br>21 cv 8548 (CM)<br>21 cv 8566 (CM)<br><br>On Appeal from the United States Bankruptcy Court for the Southern District of New York |

## AD HOC COMMITTEE OF NAS CHILDREN'S APPENDIX

**LEVENFELD PEARLSTEIN, LLC**
Harold D. Israel
2 North LaSalle St., Suite 1300
Chicago, Illinois 60602
Telephone: 312-346-8380
Facsimile: 312-346-8434
hisrael@lplegal.com

**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com

# TABLE OF CONTENTS

**Bankruptcy Court Filings**

Schedules of Assets and Liabilities for Purdue Pharma L.P.................................................NAS0001

NAS Ad Hoc Committee's Limited Objection to Disclosure Statement and Solicitation
    Procedures Motion......................................................................................................NAS1583

Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue
    Pharma L.P. and its Affiliated Debtors......................................................................NAS1683

Mediator's Report.................................................................................................................NAS2182

Final Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and
    Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization of
    Purdue Pharma L.P. and its Affiliated Debtors............................................................NAS2188

Declaration of Jesse DelConte .............................................................................................NAS2253

Declaration of Timothy J. Martin ........................................................................................NAS2323

Statement of the Raymond Sackler Family in Support of Confirmation of Debtors' Sixth
    Amended Plan of Reorganization and in Reply to Plan Objections...........................NAS3048

Declaration of Jonathan Greville White. ..............................................................................NAS3186

Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter
    11 Plan ........................................................................................................................NAS3230

Declaration of Cheryl Juaire in Support of the Opposition of the Official Committee of
    Unsecured Creditors To Motions for Stay Pending Appeal .......................................NAS3389

Declaration of Kara Trainor in Support of the Opposition of the Official Committee .....NAS3399

**Appeal Filings**

Memorandum in Support of Ad Hoc Committee of NAS Children's Motion for Leave to
    Intervene as Appellee Pursuant to Rule 8013(g) of the Federal Rules of Bankruptcy
    Procedure ....................................................................................................................NAS3408

Order on the Pending Motions to Intervene by the Ad Hoc Committee of NAS Children,
    the Multi-State Government Entities Group, and the Ad Hoc Group of Individual
    Victims of Purdue Pharma L.P., et al.........................................................................NAS3437

Brief of Appellant, William K. Harrington, United States Trustee ..................................NAS3439

**<u>Bankruptcy Court Transcripts</u>**

August 23, 2021 Transcript of Proceedings........................................................................NAS3510

November 9, 2021 Transcript of Proceedings .................................................................NAS3898

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.7058 | THE COUNTY OF SCHUYLER, NY<br>ATTN: COUNTY CLERK AND SCHUYLER COUNTY ATTORNEY<br>105 NINTH STREET<br>UNIT 8<br>WATKINS GLEN, NY 14891 | 5/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7059 | THE COUNTY OF SCHUYLER, NY<br>ATTN: SCHUYLER COUNTY ADMINISTRATOR<br>105 NINTH STREET<br>UNIT 37<br>WATKINS GLEN, NY 14891 | 5/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7060 | THE COUNTY OF STEUBEN<br>MARIE NAPOLI<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 2/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7061 | THE COUNTY OF STEUBEN, NY<br>ATTN: STEUBEN COUNTY MANAGER AND COUNTY CLERK AND STEUBEN COUNTY DISTRICT ATTORNEY<br>3 EAST PULTENEY SQUARE<br>BATH, NY 14810 | 2/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7062 | THE COUNTY OF TIOGA, NY<br>ATTN: COUNTY ATTORNEY<br>56 MAIN STREET<br>OWEGO, NY 13827 | 6/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7063 | THE COUNTY OF TIOGA, NY<br>ATTN: TIOGA COUNTY TREASURER<br>56 MAIN STREET<br>ROOM 210<br>OWEGO, NY 13827 | 6/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7064 | THE COUNTY OF TIOGA, NY<br>ATTN: COUNTY CLERK<br>16 COURT STREET<br>P.O. BOX 307<br>OWEGO, NY 13827 | 6/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7065 | THE COUNTY OF TUSCARAWAS, OHIO<br>ATTN: CHAIMAN, BOARD OF COMMISSIONERS AND TUSCARAWAS COUNTY PROSECUTOR<br>125 EAST HIGH AVENUE<br>NEW PHILADELPHIA, OH 44663 | 1/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7066 | THE COUNTY OF ULSTER, NY<br>ATTN: COUNTY EXECUTIVE AND ULSTER COUNTY CLERK<br>COUNTY OFFICE BUILDING, 6TH FLOOR<br>244 FAIR STREET<br>KINGSTON, NY 12401 | 3/15/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS0998

**Purdue Pharma L.P.**                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7067** THE COUNTY OF ULSTER, NY ATTN: ULSTER COUNTY DISTRICT ATTORNEY ULSTER COUNTY COURTHOUSE 275 WALL STREET KINGSTON, NY 12401 | 3/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7068** THE COUNTY OF WARREN, NY ATTN: WARREN CNTY CLERK AND CHAIRMAN, WARREN CNTY BD OF SUPERVISORS AND CLERK OF BD AND CNTY ATTY WARREN COUNTY MUNICIPAL CENTER 1340 STATE ROUTE 9 LAKE GEORGE, NY 12845 | 1/31/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7069** THE COUNTY OF WASHINGTON JAYNE CONROY SIMMONS HANLY CONROY LLC 112 MADISON AVENUE NEW YORK, NY 10016-7416 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7070** THE COUNTY OF WASHINGTON ATTN: ANDREA BIERSTEIN SIMMONS HANLY CONROY LLC 112 MADISON AVENUE NEW YORK, NY 10016 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7071** THE COUNTY OF WASHINGTON THOMAS I. SHERIDAN, III SIMMONS HANLY CONROY LLC 112 MADISON AVENUE NEW YORK, NY 10016-7416 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7072** THE COUNTY OF WASHINGTON PAUL J. HANLY, JR. SIMMONS HANLY CONROY LLC 112 MADISON AVENUE NEW YORK, NY 10016 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7073** THE COUNTY OF WASHINGTON SARAH S. BURNS SIMMONS HANLY CONROY LLC ONE COURT STREET ALTON, IL 62002 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7074** THE COUNTY OF WASHINGTON, NY ATTN: WASHINGTON COUNTY CLERK MUNICIPAL CENTER 383 BROADWAY, BUILDING A FORT EDWARD, NY 12828 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS0999**

**Purdue Pharma L.P.**                                                     **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7075** THE COUNTY OF WASHINGTON, NY ATTN: BOARD OF SUPERVISORS CHAIRMAN AND BOARD OF SUPERVISORS CLERK AND COUNTY ATTY MUNICIPAL CENTER 383 BROADWAY BUILDING B FORT EDWARD, NY 12828 | 6/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7076** THE COUNTY OF WYOMING, NY ATTN: WYOMING COUNTY CLERK 143 N MAIN STREET SUITE 104 WARSAW, NY 14569 | 6/6/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7077** THE COUNTY OF WYOMING, NY ATTN: CHAIRMANBOARD OF SUPERVISORS AND BOARD CLERK AND COUNTY ATTORNEY 143 NORTH MAIN STREET WARSAW, NY 14569 | 6/6/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7078** THE COUNTY OF ZAVALA, TEXAS ATTN: COUNTY JUDGE ZAVALA COUNTY COURTHOUSE 200 EAST UVALDE STREET, SUITE 9 CRYSTAL CITY, TX 78839 | 8/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7079** THE DCH HEALTH CARE AUTHORITY ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD OF DIRECTORS 809 UNIVERSITY BOULEVARD EAST TUSCALOOSA, AL 35401 | 9/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7080** THE DIRECTOR OF LAW FOR THE CITY OF BARBERTON, LISA MILLER 576 WEST PARK AVENUE ROOM 106 BARBERTON, OH 44203 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7081** THE DIRECTOR OF LAW FOR THE CITY OF BARBERTON, LISA MILLER ATTN: LAW DIRECTOR 576 WEST PARK AVENUE ROOM 301 BARBERTON, OH 44203 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7082** THE DIRECTOR OF LAW FOR THE CITY OF TALLMADGE, MEGAN RABER ATTN: CITY COUNCIL CLERK AND LAW DEPARTMENT 46 NORTH AVENUE TALLMADGE, OH 44278 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7083** THE FISCAL COURT OF BOURBON COUNTY ATTN: BOURBON COUNTY JUDGE/EXECUTIVE 301 MAIN STREET SUITE 203 PARIS, KY 40361 | 5/4/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1000**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7084** THE FISCAL COURT OF BRACKEN COUNTY, ON BEHALF OF BRACKEN COUNTY<br>ATTN: ANDY BESHEAR<br>STATE OF KENTUCKY ATTORNEY GENERAL<br>700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118<br>FRANKFORT, KY 40601 | 3/22/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7085** THE FISCAL COURT OF BRACKEN COUNTY, ON BEHALF OF BRACKEN COUNTY<br>ATTN: OFFICE OF COUNTY JUDGE EXECUTIVE<br>116 WEST MIAMI ST.<br>PO BOX 264<br>BROOKSVILLE, KY 41004 | 3/22/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7086** THE FISCAL COURT OF BRACKEN COUNTY, ON BEHALF OF BRACKEN COUNTY<br>116 WEST MIAMI ST.<br>BROOKSVILLE, IN 41004 | 3/22/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7087** THE FISCAL COURT OF BRECKINRIDGE COUNTY, ON BEHALF OF BRECKINRIDGE COUNTY<br>ATTN: JUDGE OF THE FISCAL COURT OF BRECKINRIDGE COUNTY<br>PO BOX 227<br>HARDINSBURG, KY 40143 | 10/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7088** THE FISCAL COURT OF BRECKINRIDGE COUNTY, ON BEHALF OF BRECKINRIDGE COUNTY<br>208 SOUTH MAIN STREET<br>HARDINSBURG, KY 40143 | 10/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7089** THE FISCAL COURT OF CAMPBELL COUNTY, ON BEHALF OF CAMPBELL COUNTY<br>319 YORK STREET<br>NEWPORT, KY 41071 | 9/20/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7090** THE FISCAL COURT OF CAMPBELL COUNTY, ON BEHALF OF CAMPBELL COUNTY<br>ATTN: JUDGE OF THE FISCAL COURT OF CAMPBELL COUNTY<br>1098 MONMOUTH STREET<br>NEWPORT, KY 41071 | 9/20/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7091** THE FISCAL COURT OF CARLISLE COUNTY, ON BEHALF OF CARLISLE COUNTY<br>ATTN: JUDGE OF THE FISCAL COURT OF CARLISLE COUNTY<br>PO BOX 279<br>BARDWELL, KY 42023 | 9/12/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7092** THE FISCAL COURT OF CARLISLE COUNTY, ON BEHALF OF CARLISLE COUNTY<br>P.O. BOX 514<br>BARDWELL, KY 42023 | 9/12/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1001**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7093** THE FISCAL COURT OF CARTER COUNTY, ON BEHALF OF CARTER COUNTY ATTN: ANDY BESHEAR STATE OF KENTUCKY ATTORNEY GENERAL 700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118 FRANKFORT, KY 40601 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7094** THE FISCAL COURT OF CARTER COUNTY, ON BEHALF OF CARTER COUNTY ATTN: COUNTY JUDGE EXECUTIVE 300 WEST MAIN STREET ROOM 227 GRAYSON, KY 41143 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7095** THE FISCAL COURT OF CHRISTIAN COUNTY, ON BEHALF OF CHRISTIAN COUNTY ATTN: COUNTY JUDGE 515 WEBER STREET HOPKINSVILLE, KY 42240 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7096** THE FISCAL COURT OF CHRISTIAN COUNTY, ON BEHALF OF CHRISTIAN COUNTY P.O. BOX 24 HOPKINSVILLE, KY 42240 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7097** THE FISCAL COURT OF CLARK COUNTY, ON BEHALF OF CLARK COUNTY 17 CLEVELAND AVENUE WINCHESTER, KY 40391 | 12/1/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7098** THE FISCAL COURT OF CLARK COUNTY, ON BEHALF OF CLARK COUNTY ATTN: COUNTY JUDGE COUNTY COURTHOUSE 34 SOUTH MAIN WINCHESTER, KY 40391 | 12/1/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7099** THE FISCAL COURT OF CLAY COUNTY, ON BEHALF OF CLAY COUNTY 102 WALTERS STREET SUITE 2 MANCHESTER, KY 40962 | 9/20/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7100** THE FISCAL COURT OF CLAY COUNTY, ON BEHALF OF CLAY COUNTY ATTN: COUNTY JUDGE 102 RICHMOND ROAD SUITE 201 MANCHESTER, KY 40962 | 9/20/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7101** THE FISCAL COURT OF CUMBERLAND COUNTY, ON BEHALF OF CUMBERLAND COUNTY ATTN: JUDGE EXECUTIVE PO BOX 826 BURKESVILLE, KY 42717 | 9/20/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1002**

Purdue Pharma L.P.                                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7102** THE FISCAL COURT OF ELLIOTT COUNTY, ON BEHALF OF ELLIOTT COUNTY ATTN: ELLIOTT COUNTY JUDGE EXECUTIVE 3390 N KY 7 PO BOX 710 SANDY HOOK, KY 41171 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7103** THE FISCAL COURT OF ELLIOTT COUNTY, ON BEHALF OF ELLIOTT COUNTY 3390 N KY 7 SANDY HOOK, KY 41171 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7104** THE FISCAL COURT OF ELLIOTT COUNTY, ON BEHALF OF ELLIOTT COUNTY ATTN: ANDY BESHEAR STATE OF KENTUCKY ATTORNEY GENERAL 700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118 FRANKFORT, KY 40601 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7105** THE FISCAL COURT OF ESTILL COUNTY, ON BEHALF OF ESTILL COUNTY ATTN: ANDY BESHEAR STATE OF KENTUCKY ATTORNEY GENERAL 700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118 FRANKFORT, KY 40601 | 9/18/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7106** THE FISCAL COURT OF ESTILL COUNTY, ON BEHALF OF ESTILL COUNTY ATTN: ESTILL COUNTY JUDGE EXECUTIVE 130 MAIN STREET COURTHOUSE ROOM 102 IRVINE, KY 40336 | 9/18/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7107** THE FISCAL COURT OF FLEMING COUNTY, ON BEHALF OF FLEMING COUNTY ATTN: JUDGE EXECUTIVE 100 COURT SQUARE FLEMINGSBURG, KY 41041 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7108** THE FISCAL COURT OF FRANKLIN COUNTY, ON BEHALF OF FRANKLIN COUNTY ATTN: JUDGE EXECUTIVE 321 WEST MAIN STREET FRANKFORT, KY 40601 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7109** THE FISCAL COURT OF GARRARD COUNTY, ON BEHALF OF GARRARD COUNTY ATTN: JUDGE EXECUTIVE 15 PUBLIC SQUARE LANCASTER, KY 40444 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1003**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7110 THE FISCAL COURT OF GREEN COUNTY, ON BEHALF OF GREEN COUNTY ATTN: JUDGE EXECUTIVE 203 WEST COURT STREET GREENSBURG, KY 42743 | 10/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7111 THE FISCAL COURT OF GREENUP COUNTY, ON BEHALF OF GREENUP COUNTY ATTN: JUDGE EXECUTIVE GREENUP COUNTY FISCAL COURT 301 MAIN ST / RM 102 GREENUP, KY 41144 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7112 THE FISCAL COURT OF HARDIN COUNTY, ON BEHALF OF HARDIN COUNTY ATTN: JUDGE EXECUTIVE PO BOX 568 ELIZABETHTOWN, KY 42702 | 10/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7113 THE FISCAL COURT OF HARLAN COUNTY, ON BEHALF OF HARLAN COUNTY ATTN: JUDGE EXECUTIVE HARLAN COUNTY JUDGE EXECUTIVE P.O. BOX 956 HARLAN, KY 40831 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7114 THE FISCAL COURT OF HENDERSON COUNTY, ON BEHALF OF HENDERSON COUNTY ATTN: JUDGE EXECUTIVE HENDERSON COUNTY FISCAL COURT 20 N MAIN STREET - FISCAL COURT ROOM, 3RD FLOOR OF THE OLD COURT HOUSE HENDERSON, KY 42420 | 9/29/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7115 THE FISCAL COURT OF HENRY COUNTY, ON BEHALF OF HENRY COUNTY ATTN: COUNTY JUDGE P. O. BOX 202 19 SOUTH PROPERTY ROAD NEW CASTLE, KY 40050 | 9/13/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7116 THE FISCAL COURT OF HENRY COUNTY, ON BEHALF OF HENRY COUNTY 106 SOUTH MAIN STREET PO BOX 128 NEW CASTLE, KY 40050 | 9/13/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7117 THE FISCAL COURT OF HOPKINS COUNTY, ON BEHALF OF HOPKINS COUNTY ATTN: COUNTY JUDGE 56 NORTH MAIN STREET MADISONVILLE, KY 42431 | 12/1/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1004**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7118** THE FISCAL COURT OF HOPKINS COUNTY, ON BEHALF OF HOPKINS COUNTY 25 EAST CENTER STREET MADISONVILLLE, KY 42431 | 12/1/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7119** THE FISCAL COURT OF JESSAMINE COUNTY, ON BEHALF OF JESSAMINE COUNTY ATTN: COUNTY JUDGE 101 NORTH MAIN STREET NICHOLASVILLE, KY 40356 | 11/7/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7120** THE FISCAL COURT OF JESSAMINE COUNTY, ON BEHALF OF JESSAMINE COUNTY 117 SOUTH MAIN STREET SUITE 100 NICHOLASVILLE, KY 40356 | 11/7/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7121** THE FISCAL COURT OF KENTON COUNTY, ON BEHALF OF KENTON COUNTY ATTN: COUNTY JUDGE 303 COURT STREET COVINGTON, KY 41011 | 9/29/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7122** THE FISCAL COURT OF KENTON COUNTY, ON BEHALF OF KENTON COUNTY 303 COURT STREET ROOM 307 COVINGTON, KY 41011 | 9/29/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7123** THE FISCAL COURT OF KNOX COUNTY, ON BEHALF OF KNOX COUNTY KNOX COUNTY COURTHOUSE SUITE 107 - P.O. BOX 1809 BARBOURVILLE, KY 40906 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7124** THE FISCAL COURT OF KNOX COUNTY, ON BEHALF OF KNOX COUNTY ATTN: COUNTY JUDGE 401 COURT STREET SUITE 6 BARBOURVILLE, KY 40906 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7125** THE FISCAL COURT OF LAUREL COUNTY, ON BEHALF OF LAUREL COUNTY 101 SOUTH MAIN STREET ROOM 200 LONDON, KY 40741-230 | 9/29/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7126** THE FISCAL COURT OF LAUREL COUNTY, ON BEHALF OF LAUREL COUNTY ATTN: COUNTY JUDGE 101 SOUTH MAIN STREET SUITE 320 LONDON, KY 40741 | 9/29/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1005**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7127** THE FISCAL COURT OF LEE COUNTY, KENTUCKY ATTN: LEE COUNTY JUDGE EXECUTIVE LEE COUNTY COURTHOUSE 256 MAIN STREET BEATTYVILLE, KY 41311 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7128** THE FISCAL COURT OF LESLIE COUNTY, ON BEHALF OF LESLIE COUNTY ATTN: JUDGE EXECUTIVE PO BOX 619 22010 MAIN STREET HYDEN, KY 41749 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7129** THE FISCAL COURT OF LETCHER COUNTY, ON BEHALF OF LETCHER COUNTY ATTN: JUDGE EXECUTIVE LETCHER COUNTY FISCAL COURT 156 MAIN ST., SUITE 107 WHITESBURG, KY 41858 | 9/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7130** THE FISCAL COURT OF LINCOLN COUNTY, ON BEHALF OF LINCOLN COUNTY ATTN: JUDGE EXECUTIVE 102 EAST MAIN ST STANFORD, KY 40484 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7131** THE FISCAL COURT OF MADISON COUNTY, ON BEHALF OF MADISON COUNTY ATTN: JUDGE EXECUTIVE 135 WEST IRVINE STREET, 3RD FLOOR MADISON COUNTY COURTHOUSE ANNEX RICHMOND, KY 40475 | 9/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7132** THE FISCAL COURT OF MARSHALL COUNTY, ON BEHALF OF MARSHALL COUNTY ATTN: JUDGE EXECUTIVE 1101 MAIN STREET BENTON, KY 42025 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7133** THE FISCAL COURT OF MARTIN COUNTY, ON BEHALF OF MARTIN COUNTY ATTN: JUDGE-EXECUTIVE PO BOX 309 INEZ, KY 41224 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7134** THE FISCAL COURT OF MARTIN COUNTY, ON BEHALF OF MARTIN COUNTY ATTN: ANDY BESHEAR STATE OF KENTUCKY ATTORNEY GENERAL 700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118 FRANKFORT, KY 40601 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1006**

**Purdue Pharma L.P.**  Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

**Litigation**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7135 | THE FISCAL COURT OF MEADE COUNTY, ON BEHALF OF MEADE COUNTY<br>516 HILLCREST DRIVE, STE 10<br>BRANDENBURG, KY 40108 | 10/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7136 | THE FISCAL COURT OF MEADE COUNTY, ON BEHALF OF MEADE COUNTY<br>ATTN: JUDGE EXECUTIVE<br>516 HILLCREST DRIVE<br>BRANDENBURG, KY 40108 | 10/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7137 | THE FISCAL COURT OF MONTGOMERY COUNTY, ON BEHALF OF MONTGOMERY COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>44 WEST MAIN STREET<br>MT. STERLING, KY 40353 | 9/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7138 | THE FISCAL COURT OF MORGAN COUNTY, ON BEHALF OF MORGAN COUNTY<br>527 MAIN STREET<br>WEST LIBERTY, KY 41472 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7139 | THE FISCAL COURT OF MORGAN COUNTY, ON BEHALF OF MORGAN COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>MORGAN COUNTY OFFICE BUILDING<br>450 PRESTONSBURG STREET<br>WEST LIBERTY, KY 41472 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7140 | THE FISCAL COURT OF NICHOLAS COUNTY, ON BEHALF OF NICHOLAS COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE AND COUNTY ATTORNEY<br>125 EAST MAIN STREET<br>CARLISLE, KY 40311 | 9/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7141 | THE FISCAL COURT OF OLDHAM COUNTY, ON BEHALF OF OLDHAM COUNTY<br>ATTN: COUNTY JUDGE-EXECUTIVE AND COUNTY ATTORNEY<br>100 WEST JEFFERSON STREET<br>SUITE 4<br>LA GRANGE, KY 40031 | 9/25/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7142 | THE FISCAL COURT OF OWEN COUNTY<br>ATTN: OWEN COUNTY JUDGE/EXECUTIVE<br>100 NORTH THOMAS STREET<br>OWENTON, KY 40359 | 5/4/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7143 | THE FISCAL COURT OF OWSLEY COUNTY, ON BEHALF OF OWSLEY COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>PO BOX 749<br>20 MAIN STREET<br>BOONEVILLE, KY 41314 | 10/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1007**

**Purdue Pharma L.P.**                                              **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7144** THE FISCAL COURT OF OWSLEY COUNTY, ON BEHALF OF OWSLEY COUNTY<br>100 MULBERRY STREET<br>PO BOX 68<br>BOONEVILLE, KY 41314 | 10/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7145** THE FISCAL COURT OF PENDLETON COUNTY, ON BEHALF OF PENDLETON COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE AND COUNTY ATTORNEY<br>233 MAIN STREET<br>FALMOUTH, KY 41040 | 9/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7146** THE FISCAL COURT OF PERRY COUNTY, ON BEHALF OF PERRY COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE AND COUNTY ATTORNEY<br>481 MAIN STREET<br>1ST FLOOR - P.O. DRAWER 210<br>HAZARD, KY 41701 | 9/25/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7147** THE FISCAL COURT OF POWELL COUNTY, ON BEHALF OF POWELL COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>525 WASHINGTON STREET<br>COURTHOUSE, ROOM 102<br>STANTON, KY 40380 | 9/20/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7148** THE FISCAL COURT OF POWELL COUNTY, ON BEHALF OF POWELL COUNTY<br>PO BOX 8<br>STANTON, KY 40380 | 9/20/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7149** THE FISCAL COURT OF PULASKI COUNTY, ON BEHALF OF PULASKI COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>100 NORTH MAIN STREET<br>SOMERSET, KY 42501 | 9/25/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7150** THE FISCAL COURT OF PULASKI COUNTY, ON BEHALF OF PULASKI COUNTY<br>103 SOUTH MAPLE STREET<br>SOMERSET, KY 42501 | 9/25/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7151** THE FISCAL COURT OF ROWAN COUNTY, ON BEHALF OF ROWAN COUNTY<br>600 WEST MAIN STREET<br>SUITE 139<br>MOREHEAD, KY 40351 | 12/2/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7152** THE FISCAL COURT OF ROWAN COUNTY, ON BEHALF OF ROWAN COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>600 WEST MAIN STREET<br>MOREHEAD, KY 40351 | 12/2/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1008**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7153 THE FISCAL COURT OF SCOTT COUNTY, ON BEHALF OF SCOTT COUNTY<br>198 EAST WASHINGTON STREET<br>GEORGETOWN, KY 40324 | 12/2/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7154 THE FISCAL COURT OF SCOTT COUNTY, ON BEHALF OF SCOTT COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>COURTHOUSE<br>P.O. BOX 973 - 101 EAST MAIN STREET<br>GEORGETOWN, KY 40324 | 12/2/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7155 THE FISCAL COURT OF SHELBY COUNTY, ON BEHALF OF SHELBY COUNTY<br>501 MAIN STREET<br>SUITE 10<br>SHELBYVILLE, KY 40065 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7156 THE FISCAL COURT OF SHELBY COUNTY, ON BEHALF OF SHELBY COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>501 MAIN STREET<br>SHELBYVILLE, KY 40065 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7157 THE FISCAL COURT OF SPENCER COUNTY, ON BEHALF OF SPENCER COUNTY<br>ATTN: COUNTY JUDGE-EXECUTIVE<br>12 WEST MAIN STREET<br>TAYLORSVILLE, KY 40071 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7158 THE FISCAL COURT OF SPENCER COUNTY, ON BEHALF OF SPENCER COUNTY<br>7 WEST MAIN STREET<br>TAYLORSVILLE, KY 40071 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7159 THE FISCAL COURT OF UNION COUNTY, ON BEHALF OF UNION COUNTY<br>ATTN: COUNTY JUDGE EXECUTIVE<br>PO BOX 60<br>100 WEST MAIN STREET<br>MORGANFIELD, KY 42437 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7160 THE FISCAL COURT OF UNION COUNTY, ON BEHALF OF UNION COUNTY<br>111 SOUTH COURT STREET<br>PO BOX 28<br>MORGANFIELD, KY 43437 | 9/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7161 THE FISCAL COURT OF WAYNE COUNTY, ON BEHALF OF WAYNE COUNTY<br>ATTN: ANDY BESHEAR<br>STATE OF KENTUCKY ATTORNEY GENERAL<br>700 CAPITOL AVENUE - CAPITOL BUILDING, SUITE 118<br>FRANKFORT, KY 40601 | 3/22/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1009**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 16 of 1000

**Purdue Pharma L.P.**                                        Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7162 THE FISCAL COURT OF WAYNE COUNTY, ON BEHALF OF WAYNE COUNTY ATTN: JUDGE/EXECUTIVE 55 N. MAIN ST. STE. 103 PO BOX 439 MONTICELLO, KY 42633 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7163 THE FISCAL COURT OF WAYNE COUNTY, ON BEHALF OF WAYNE COUNTY 55 N. MAIN ST. STE. 103 MONTICELLO, KY 42633 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7164 THE FISCAL COURT OF WHITLEY, ON BEHALF OF WHITLEY COUNTY ATTN: JUDGE OF THE WHITLEY COUNTY FISCAL COURT PO BOX 237 WILLIAMSBURG, KY 40769 | 9/13/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7165 THE FISCAL COURT OF WHITLEY, ON BEHALF OF WHITLEY COUNTY 218 NORTH MAIN STREET PO BOX 1388 CORBIN, KY 40702 | 9/13/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7166 THE FISCAL COURT OF WOLFE COUNTY, KENTUCKY ATTN: WOLFE COUNTY JUDGE EXECUTIVE 16 COURT STREET P.O. BOX 429 COMPTON, KY 41301 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7167 THE FISCAL COURT OF WOODFORD, ON BEHALF OF WOODFORD COUNTY 103 SOUTH MAIN STREET ROOM 300 VERSAILLES, KY 40383 | 12/2/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7168 THE FISCAL COURT OF WOODFORD, ON BEHALF OF WOODFORD COUNTY ATTN: JUDGE OF THE FISCAL COURT OF WOODFORD 103 SOUTH MAIN STREET ROOM 200 VERSAILLES, KY 40383 | 12/2/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7169 THE GILMER COUNTY COMMISSION ATTN: COUNTY COMMISSION, COUNTY CLERK 10 HOWARD STREET GLENVILLE, WV 26351 | 9/10/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7170 THE GILMER COUNTY COMMISSION ATTN: PROSECUTING ATTORNEY 7 NORTH COURT STREET GLENVILLE, WV 26351 | 9/10/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1010

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7171  THE HARRISON MEMORIAL HOSPITAL, INC.  ATTN: REGISTERED AGENT AND CEO  1210 KENTUCKY HIGHWAY 36 EAST  CYNTHIANA, KY 41031-7498 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7172  THE HEALTH CARE AUTHORITY OF CLARKE COUNTY, ALABAMA  ATTN: CEO, PARTNER, OR MANAGER  119 MAIN STREET  GROVE HILL, AL 36451 | 9/3/2019  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7173  THE HEALTHCARE AUTHORITY FOR BAPTIST HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM  ATTN: REGISTERED AGENT  500 22ND STREET SOTUH  SUITE 504  BIRMINGHAM, AL 35233-3110 | 9/3/2019  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7174  THE HEALTHCARE AUTHORITY FOR BAPTIST HEALTH, AN AFFILIATE OF UAB HEALTH SYSTEM  ATTN: CEO  124 SOUTH MEMORIAL DRIVE  PRATTVILLE, AL 36067 | 9/3/2019  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7175  THE HOOPAH VALLEY TRIBE  ATTN: CHAIRMAN  HOOPA VALLEY TRIBE  11860 STATE HWY 96  HOOPA, CA 95546 | 12/10/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7176  THE HOOPAH VALLEY TRIBE  ATTN: CHAIRPERSON  HOOPA VALLEY TRIBE  11860 STATE HWY 96 - PO BOX 1348  HOOPA, CA 95546 | 12/10/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7177  THE HOSPITAL AUTHORITY OF WAYNE COUNTY, GEORGIA  ATTN: CHIEF EXECUTIVE OFFICER AND AUTHORITY MEMBERS  865 SOUTH FIRST STREET  JESUP, GA 31545 | 4/16/2019  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7178  THE HOSPITAL AUTHORITY OF WAYNE COUNTY, GEORGIA  214 STATE CAPITOL  ATLANTA, GA 30334 | 4/16/2019  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7179  THE HOSPITALS OF PROVIDENCE EAST CAMPUS  ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD  3280 JOE BATTLE BOULEVARD  EL PASO, TX 79938 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1011**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7180** THE HOSPITALS OF PROVIDENCE MEMORIAL CAMPUS ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD 2001 NORTH OREGON STREET EL PASO, TX 79902 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7181** THE HOSPITALS OF PROVIDENCE SIERRA CAMPUS ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD 1625 MEDICAL CENTER DRIVE EL PASO, TX 79902 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7182** THE HOSPITALS OF PROVIDENCE TRANSMOUNTAIN CAMPUS ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD 2000 TRANSMOUNTAIN ROAD EL PASO, TX 79911 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7183** THE JICARILLA APACHE NATION ATTN: PRESIDENT OF THE JICARILLA APACHE NATION, VICE PRESIDENT OF THE JICARILLA APACHE NATION, TRIBAL COUNCIL CHAIRMAN PO BOX 507 DULCE, NM 87528 | 6/6/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7184** THE JICARILLA APACHE NATION ATTN: PRESIDENT OF THE JICARILLA APACHE NATION, VICE PRESIDENT OF THE JICARILLA APACHE NATION, TRIBAL COUNCIL CHAIRMAN BUILDING NO. 25 HAWKS DRIVE DULCE, NM 87528 | 6/6/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7185** THE KERSHAW COUNTY HOSPITAL BOARD A/K/A KERSHAW HEALTH D/B/HEALTH SERVICE DISTRICT OF KERSHAW COUNTY VINCENT AUSTIN SHEHEEN PO DRAWER 10 CAMDEN, SC 29021 | 6/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7186** THE LAW DIRECTOR FOR COPLEY TOWNSHIP, IRVING B. SUGERMAN ATTN: COPLEY TOWN ATTORNEY C/O IRVING B. SUGARMAN BROUSE MCDOWELL - 388 SOUTH MAIN STREET, SUITE 500 AKRON, OH 44311 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7187** THE LAW DIRECTOR FOR COPLEY TOWNSHIP, IRVING B. SUGERMAN 1540 SOUTH CLEVELAND-MASSILLON ROAD COPLEY, OH 44321 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1012**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7188 THE LAW DIRECTOR FOR COVENTRY TOWNSHIP, IRVING B. SUGERMAN C/O IRVING B SUGARMAN BROUSE MCDOWELL - 388 SOUTH MAIN STREET, SUITE 500 AKRON, OH 44311 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7189 THE LAW DIRECTOR FOR COVENTRY TOWNSHIP, IRVING B. SUGERMAN ATTN: TOWNSHIP ADMINISTRATOR AND TRUSTEE 68 PORTAGE LAKES DRIVE AKRON, OH 44319 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7190 THE LAW DIRECTOR FOR THE CITY OF CUYAHOGA FALLS, RUSS BALTHIS ATTN: CLERK OF THE CITY COUNCIL AND LAW DEPARTMENT 2310 SECOND STREET CUYAHOGA FALLS, OH 44221 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7191 THE LAW DIRECTOR FOR THE CITY OF FAIRLAWN, BRYAN NACE ATTN: CLERK OF COUNCIL AND LAW DEPARTMENT 3487 SOUTH SMITH ROAD FAIRLAWN, OH 44333 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7192 THE LAW DIRECTOR FOR THE CITY OF GREEN, INTERIM LAW DIRECTOR BILL CHRIS ATTN: LAW DEPARTMENT AND CLERK OF THE CITY COUNCIL CENTRAL ADMINISTRATION BUILDING 1755 TOWN PARK BOULEVARD UNIONTOWN, OH 44685 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7193 THE LAW DIRECTOR FOR THE CITY OF GREEN, INTERIM LAW DIRECTOR BILL CHRIS ATTN: LAW DEPARTMENT AND CLERK OF THE CITY COUNCIL PO BOX 278 GREEN, OH 44232 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7194 THE LAW DIRECTOR FOR THE CITY OF MOGADORE, MARSHAL M. PITCHFORD C/O MARSHAL M. PITCHFORD DICAUDO, PITCHFORD & YODER - 209 SOUTH MAIN STREET, THIRD FLOOR AKRON, OH 44308 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7195 THE LAW DIRECTOR FOR THE CITY OF MOGADORE, MARSHAL M. PITCHFORD ATTN: CLERK OF MAYOR'S COURT AND ASSISTANT CLERK TREASURER 135 SOUTH CLEVELAND AVENUE MOGADORE, OH 44260 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1013**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3.7196 | THE LAW DIRECTOR FOR THE CITY OF MUNROE FALLS, TOM KOSTOFF<br>C/O THOMAS W. KOSTOFF<br>41 MERZ BOULEVARD<br>FAIRLAWN, OH 44333 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7197 | THE LAW DIRECTOR FOR THE CITY OF MUNROE FALLS, TOM KOSTOFF<br>ATTN: CITY COUNCIL CLERK AND LAW DIRECTOR<br>CITY HALL<br>43 MUNROE FALLS AVENUE<br>MUNROE FALLS, OH 44262 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7198 | THE LAW DIRECTOR FOR THE CITY OF NEW FRANKLIN, IRVING B. SUGERMAN<br>ATTN: CITY COUNCIL CLERK<br>5611 MANCHESTER ROAD<br>NEW FRANKLIN, OH 44319 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7199 | THE LAW DIRECTOR FOR THE CITY OF NEW FRANKLIN, IRVING B. SUGERMAN<br>ATTN: IRVING B. SUGARMAN<br>BROUSE MCDOWELL<br> - 388 SOUTH MAIN STREET, SUITE 500<br>AKRON, OH 44311 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7200 | THE LAW DIRECTOR FOR THE CITY OF NORTON, JUSTIN MARKEY<br>ATTN: ADMINISTRATIVE OFFICER, LAW DEPARTMENT<br>4060 COLUMBIA WOODS DRIVE<br>NORTON, OH 44203 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7201 | THE LAW DIRECTOR FOR THE CITY OF STOW, AMBER ZIBRITOSKY<br>ATTN: MAYOR, LAW DIRECTOR<br>3760 DARROW ROAD<br>STOW, OH 44224-4038 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7202 | THE LAW SOLICITOR FOR THE VILLAGE OF RICHFIELD, WILLIAM HANNA<br>ATTN: MAYOR, LAW DIRECTOR<br>4410 WEST STREETSBORO ROAD<br>RICHFIELD, OH 44286 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7203 | THE LEECH LAKE BAND OF OJIBWE<br>ATTN: TRIBAL CHAIRMAN OF THE LEECH LAKE BAND OF OJIBWE<br>LEECH LAKE BAND OF OJIBWE<br>190 SAILSTAR DRIVE NORTHWEST<br>CASS LAKE, MN 56633 | 12/19/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7204 | THE LEECH LAKE BAND OF OJIBWE<br>15542 STATE HIGHWAY 371 NORTHWEST<br>CASS LAKE, MN 56633 | 12/19/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1014**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7205** THE LUMMI TRIBE OF THE LUMMI RESERVATION ATTN: OFFICE OF THE CHAIR AND CHIEF EXECUTIVE OFFICER 2665 KWINA ROAD BELLINGHAM, WA 98226 | 7/19/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7206** THE MAKAH INDIAN TRIBE, A FEDERALLY RECOGNIZED INDIAN TRIBE ATTN: COUNCIL CHAIRMAN OFFICE OF THE GENERAL MANAGER PO BOX 115 NEAH BAY, WA 98357 | 8/14/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7207** THE MARSHALL COUNTY HEALTH CARE AUTHORITY ATTN: CHIEF OPERATING OFFICER 8000 ALABAMA HIGHWAY 69 GUNTERSVILLE, AL 35976 | 5/7/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7208** THE MARSHALL COUNTY HEALTH CARE AUTHORITY ATTN: OFFICER, MANAGER, PARTNER 2505 US HIGHWAY 431 BOAZ, AL 35957 | 5/7/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7209** THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN PO BOX 9141 SAVANNAH, GA 31412 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7210** THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: CITY MANAGER CITY OF SAVANNAH P.O. BOX 1027 SAVANNAH, GA 31402 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7211** THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN 18 VERNONBURG ROAD SAVANNAH, GA 31419 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7212** THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN PO BOX 23146 SAVANNAH, GA 31403 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7213** THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN 516 EAST 44TH STREET SAVANNAH, GA 31405 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1015**

**Purdue Pharma L.P.**  **Case Number:** 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7214 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: CITY MANAGER OFFICE OF THE CITY MANAGER 2 EAST BAY STREET SAVANNAH, GA 31402 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7215 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN 2205 EAST VICTORY DRIVE 3301 HAZEL STREET SAVANNAH, GA 31404 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7216 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMEN PO BOX 1027 SAVANNAH, GA 31402 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7217 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: ALDERMAN 210 EAST BOLTON STREET SAVANNAH, GA 31401 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7218 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: MAYOR CITY OF SAVANNAH P.O. BOX 1027 SAVANNAH, GA 31402 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7219 THE MAYOR AND ALDERMAN OF THE CITY OF SAVANNAH ATTN: MAYOR SAVANNAH CITY HALL 2ND FLOOR - 2 EAST BAY STREET SAVANNAH, GA 31402 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7220 THE MAYOR AND COMMON COUNCIL OF WESTMINSTER, MARYLAND ATTN: MAYOR AND COUNCIL 56 WEST MAIN STREET SUITE 1 WESTMINISTER, MD 21157 | 6/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7221 THE MAYOR AND COUNCIL OF ROCKVILLE, MARYLAND ATTN: MAYOR AND COUNCIL 111 MARYLAND AVENUE ROCKVILLE, MD 20850 | 6/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7222 THE MEDICAL CENTER AT CLINTON COUNTY, INC. ATTN: CEO, PARTNER, OR MANAGER 701 BURKESVILLE ROAD ALBANY, KY 42602 | 8/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1016**

Case 7:21-cv-07532-CM Document 158-2 Filed 01/15/21 Page 23 of 1000

**Purdue Pharma L.P.**                                              **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7223**  THE MEDICAL CENTER AT CLINTON COUNTY, INC.  ATTN: REGISTERED AGENT  800 PARK STREET  BOWLING GREEN, KY 42101 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7224**  THE MEDICAL CENTER AT CLINTON COUNTY, INC. D/B/A THE MEDICAL CENTER AT ALBANY  EXECUTIVE VICE PRESIDENT  PO BOX 8000  BOWLING GREEN, KY 42102-8000 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7225**  THE MEDICAL CENTER AT CLINTON COUNTY, INC. D/B/A THE MEDICAL CENTER AT ALBANY  ATTN: REGISTERED AGENT, JOHN A. CHANEY  COMMONWEALTH HEALTH CORPORATION  800 PARK STREET  BOWLING GREEN, KY 42101 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7226**  THE MEDICAL CENTER AT CLINTON COUNTY, INC. D/B/A THE MEDICAL CENTER AT ALBANY  ATTN: EXECUTIVE VICE PRESIDENT  701 BURKESVILLE ROAD  ALBANY, KY 42602-1654 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7227**  THE MEDICAL CENTER AT FRANKLIN, INC.  ATTN: REGISTERED AGENT  800 PARK STREET  BOWLING GREEN, KY 42101 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7228**  THE MEDICAL CENTER AT FRANKLIN, INC.  ATTN: CEO, PARTNER, OR MANAGER  1100 BROOKHAVEN ROAD  FRANKLIN, KY 42134 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7229**  THE MEDICAL CENTER AT FRANKLIN, INC. D/B/A THE MEDICAL CENTER AT FRANKLIN  ATTN: REGISTERED AGENT; JOHN A. CHANEY  COMMONWEALTH HEALTH CORPORATION  800 PARK STREET  BOWLING GREEN, KY 42101 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7230**  THE MEDICAL CENTER AT FRANKLIN, INC. D/B/A THE MEDICAL CENTER AT FRANKLIN  ATTN: CHAIR, BOARD OF DIRECTORS  THE MEDICAL CENTER FRANKLIN  1100 BROOKHAVEN ROAD  FRANKLIN, KY  42134 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7231**  THE MEDICAL CENTER AT FRANKLIN, INC. D/B/A THE MEDICAL CENTER AT FRANKLIN  ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER, EXECUTIVE VICE PRESIDENTS  MED CENTER HEALTH  800 PARK STREET  BOWLING GREEN, KY  42101 | 8/17/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1017**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7232 THE MENOMINEE INDIAN TRIBE OF WISCONSIN ATTN: CHAIRMAN AND CHIEF EXECUTIVE OFFICER OF THE MENOMINEE INDIAN TRIBE OF WISCONSIN W2908 TRIBAL OFFICE LOOP ROAD P.P. BOX 910 KESHENA, WI 54135 | 3/15/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7233 THE MODOC NATION, F/K/A THE MODOC TRIBE OF OKLAHOMA ATTN: CHIEF 22 N. EIGHT TRIBES TRAIL MIAMI, OK 74354 | 6/13/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7234 THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS P.O. BOX 972 DAYTON, OH 45422-0972 | 7/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7235 THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS ATTN: PROSECUTING ATTORNEY 301 W. THIRD ST. DAYTON, OH 45402 | 7/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7236 THE MONTGOMERY COUNTY BOARD OF COUNTY COMMISSIONERS ATTN: CHAIRPERSON MONTGOMERY COUNTY COMMISSIONER 451 W. THIRD STREET, 11TH FLOOR P.O. BOX 972 DAYTON, OH 45422-1110 | 7/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7237 THE MUNICIPALITY OF NORRISTOWN AND THE TOWNSHIP OF WEST NORRITON ATTN: TAX COLLECTOR TAX COLLECTION 1632 W MARSHALL STREET JEFFERSONVILLE, PA 19403 | 5/9/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7238 THE MUNICIPALITY OF NORRISTOWN AND THE TOWNSHIP OF WEST NORRITON ATTN: COMMISSIONER 1630 W. MARSHALL STREET JEFFERSONVILLE, PA 19403 | 5/9/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7239 THE MUSCOGEE (CREEK) NATION ATTN: RICHARD W. FIELDS FIELDS PLLC 1700 K STREET NW, SUITE 810 WASHINGTON, DC 20006 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1018**

**Purdue Pharma L.P.**                                                     **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7240 THE MUSCOGEE (CREEK) NATION<br>ATTN: WHITNEY A. LEONARD<br>SONOSKY CHAMBERS SACHSE ENDRESON & PERRY, LLP<br>1425 K STREET, NW, SUITE 600<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7241 THE MUSCOGEE (CREEK) NATION<br>ATTN: MICHAEL B. RUSH<br>GILBERT LLP<br>1100 NEW YORK AVENUE, NW, SUITE 700<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7242 THE MUSCOGEE (CREEK) NATION<br>ATTN: JENNA A. HUDSON<br>GILBERT LLP<br>1100 NEW YORK AVENUE, NW, SUITE 700<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7243 THE MUSCOGEE (CREEK) NATION<br>ATTN: MARK A. PACKMAN<br>GILBERT LLP<br>1100 NEW YORK AVENUE, NW, SUITE 700<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7244 THE MUSCOGEE (CREEK) NATION<br>ATTN: SCOTT D. GILBERT<br>GILBERT LLP<br>1100 NEW YORK AVENUE, NW, SUITE 700<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7245 THE MUSCOGEE (CREEK) NATION<br>ATTN: ATTORNEY GENERAL AND FIRST ASSISTANT ATTORNEY GENERAL<br>P.O. BOX 580<br>OKMULGEE, OK 74447 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7246 THE MUSCOGEE (CREEK) NATION<br>ATTN: DONALD J. SIMON<br>SONOSKY CHAMBERS SACHSE ENDRESON & PERRY, LLP<br>1425 K STREET STREET, NW, SUITE 600<br>WASHINGTON, DC 20005 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7247 THE MUSCOGEE (CREEK) NATION<br>ATTN: PRINCIPAL CHIEF<br>P.O. BOX 580<br>OKMULGEE, OK 74447 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7248 THE MUSCOGEE (CREEK) NATION<br>ATTN: SPEAKER, NATIONAL COUNCIL & REGISTERED AGENT<br>P.O. BOX 158<br>HWY 75 & LOOP 56<br>OKMULGEE, OK 74447 | 4/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1019**

**Purdue Pharma L.P.** | **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7249 THE MUSCOGEE (CREEK) NATION ATTN: ATTORNEY GENERAL KEVIN DELLINGER, FIRST ASSISTANT ATTORNEY GENERAL LINDSAY DOWELL P.O. BOX 580 OKMULGEE, OK 74447 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7250 THE MUSCOGEE (CREEK) NATION ATTN: WILLIAM S. OHLEMEYER BOIES SCHILLER FLEXNER LLP 333 MAIN STREET ARMONK, NY 10504 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7251 THE MUSCOGEE (CREEK) NATION ATTN: TERRY S. O'DONNELL SAVAGE O'DONNELL, AFFELDT WEINTRAUB & JOHNSON 110 WEST 7TH, SUITE 1010 TULSA, OK 74119 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7252 THE MUSCOGEE (CREEK) NATION ATTN: ADAM SCOTT WEINTRAUB SAVAGE O'DONNELL, AFFELDT WEINTRAUB & JOHNSON 110 WEST 7TH, SUITE 1010 TULSA, OK 74119 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7253 THE MUSCOGEE (CREEK) NATION ATTN: LLOYD B. MILLER SONOSKY CHAMBERS SACHSE ENDRESON & PERRY, LLP 1425 K STREET, NW, SUITE 600 WASHINGTON, DC 20005 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7254 THE MUSCOGEE (CREEK) NATION ATTN: RICHARD SHORE GILBERT LLP 1100 NEW YORK AVENUE NW, SUITE 700 WASHINGTON, DC 20005 | 4/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7255 THE NAVAJO NATION P O BOX 7440 WINDOW ROCK, AZ 86515 | 4/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7256 THE NAVAJO NATION P O BOX 9000 WINDOW ROCK, AZ 86515 | 4/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7257 THE NAVAJO NATION ATTN: PRESIDENT AND VICE PRESIDENT/ CHIEF EXECUTIVE OFFICER 100 PARKWAY WINDOW ROCK, AZ 86515 | 4/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1020**

**Purdue Pharma L.P.**             **Case Number:** 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7258** THE NAVAJO NATION ATTN: SPEAKER AND COUNCIL MEMBERS PO BOX 7440 WINDOW ROCK, AZ 86515 | 4/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7259** THE NICHOLAS COUNTY COMMISSION, WEST VIRGINIA ATTN: PROSECUTING ATTORNEY AND COUNTY CLERK 203 COURTHOUSE ANNEX 511 CHURCH STREET SUMMERSVILLE, WV 26651 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7260** THE NICHOLAS COUNTY COMMISSION, WEST VIRGINIA ATTN: NICHOLAS COUNTY COMMISSIONERS 700 MAIN STREET SUITE 1 SUMMERSVILLE, WV 26651 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7261** THE NISQUALLY INDIAN TRIBE ATTN: TRIBAL CHAIRMAN AND CHIEF EXECUTIVE OFFICER OF THE NISQUALLY INDIAN TRIBE 4820 SHE-NAH-NUM DRIVE SOUTHEAST OLYMPIA, WA 98513 | 3/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7262** THE PARISH OF JEFFERSON ATTN: PARISH PRESIDENT GENERAL GOVERNMENT BUILDING 200 DERBIGNY STREET, 6TH FLOOR GRETNA, LA 70053-5850 | 6/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7263** THE PARISH OF JEFFERSON ATTN: PARISH ATTORNEY'S OFFICE JOSEPH S. YENNI BUILDING 1221 ELMWOOD PARK BOULEVARD - SUITE 701 JEFFERSON, LA 70123 | 6/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7264** THE PASSAMAQUODDY TRIBE-INDIAN TOWNSHIP ATTN: TRIBAL GOVERNOR, CHIEF EXECUTIVE OFFICER PASSAMAQUODDY TRIBAL GOVERNMENT- INDIAN TOWNSHIP 8 KENNEBASIS ST PRINCETON, ME 04668-0000 | 7/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7265** THE PASSAMAQUODDY TRIBE-PLEASANT POINT ATTN: CHIEF GOVERNOR; CHIEF EXECUTIVE OFFICER PASSAMAQUODDY TRIBAL GOVERNMENT 9 SAKOM ROAD PERRY, ME 04667 | 7/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7266** THE PEOPLE OF THE STATE OF CALIFORNIA ATTN: XAVIER BECERRA STATE OF CALIFORNIA ATTORNEY GENERAL 1300 I ST., STE. 1740 SACRAMENTO, CA 95814 | 6/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1021**

**Purdue Pharma L.P.**                                                                                                   **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7267** THE PEOPLE OF THE STATE OF CALIFORNIA ATTN: CHIEF CLERK & SECRETARY OF SENATE AND GOV. AND ASSEMBLY SPEAKER AND SENATE PRES. PRO TEMPORE CALIFORNIA STATE CAPITOL 1315 10TH STREET SACRAMENTO, CA 95814 | 6/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7268** The People of the State of California acting by and through San Francisco City Attorney Dennis J. Herrera and the City and County of San Francisco Attn: Mayor Office of the Mayor City Hall, Room 200 - One Dr. Carlton B. Goodlett Place San Francisco, CA 94102 | 12/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7269** The People of the State of California acting by and through San Francisco City Attorney Dennis J. Herrera and the City and County of San Francisco Attn: City Attorney Office of the City Attorney City Hall, Room 234 - One Dr. Carlton B. Goodlett Place San Francisco, CA 94102 | 12/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7270** THE PEOPLE OF THE STATE OF CALIFORNIA ACTING BY AND THROUGH SAN FRANCISCO CITY ATTORNEY DENNIS J. HERRERA AND THE CITY AND COUNTY OF SAN FRANCISCO ATTN: COUNTY CLERK CITY HALL, ROOM 168 1 DR. CARLTON B. GOODLETT PLACE SAN FRANCISCO, CA 94102 | 12/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7271** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH LOS ANGELES COUNTY COUNSEL MARY C. WICKHAM ATTN: COUNTY CLERK 12400 IMPERIAL HIGHWAY NORWALK, CA 90650 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7272** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH LOS ANGELES COUNTY COUNSEL MARY C. WICKHAM ATTN: XAVIER BECERRA STATE OF CALIFORNIA ATTORNEY GENERAL 1300 I ST., STE. 1740 SACRAMENTO, CA 95814 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7273** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH LOS ANGELES COUNTY COUNSEL MARY C. WICKHAM ATTN: COUNTY COUNSEL 500 WEST TEMPLE STREET ROOM 648 LOS ANGELES, CA 90012 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1022**

**Purdue Pharma L.P.**                                    Case Number:   19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**  List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7274** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH LOS ANGELES COUNTY COUNSEL MARY C. WICKHAM ATTN: CHAIR OF THE BOARD OF SUPERVISORS KENNETH HAHN HALL OF ADMINISTRATION 500 WEST TEMPLE STREET - SUITE 383 LOS ANGELES, CA 90012 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7275** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH OAKLAND CITY ATTORNEY BARBARA J. PARKER ATTN: CITY CLERK 1 FRANK H. OGAWA PLAZA FIRST AND SECOND FLOORS OAKLAND, CA 94612 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7276** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS ATTN: XAVIER BECERRA STATE OF CALIFORNIA ATTORNEY GENERAL 1300 I ST., STE. 1740 SACRAMENTO, CA 95814 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7277** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS ATTN: DISTRICT ATTORNEY 401 CIVIC CENTER DRIVE WEST SANTA ANA, CA 92701 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7278** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS ATTN: COUNTY CLERK 12 CIVIC CENTER PLAZA, ROOM 101 SANTA ANA, CA 92701 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7279** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH ORANGE COUNTY DISTRICT ATTORNEY TONY RACKAUCKAS ATTN: CHAIR OF THE BOARD OF SUPERVISORS 333 WEST SANTA ANA BOULEVARD 5TH FLOOR SANTA ANA, CA 92701 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7280** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS ATTN: XAVIER BECERRA STATE OF CALIFORNIA ATTORNEY GENERAL 1300 I ST., STE. 1740 SACRAMENTO, CA 95814 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1023

**Purdue Pharma L.P.**                                               **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7281** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>ATTN: COUNTY COUNSEL<br>70 WEST HEDDING STREET<br>EAST WING, 9TH FLOOR<br>SAN JOSE, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7282** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>ATTN: COUNTY CLERK<br>70 WEST HEDDING STREET<br>FIRST FLOOR, EAST WING<br>SAN JOSE, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7283** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>ATTN: PRESIDENT OF THE BOARD OF SUPERVISORS<br>70 WEST HEDDING STREET<br>EAST WING 10TH FLOOR<br>SAN JOSE, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7284** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>NICKLAS A. ACKERS<br>SENIOR ASSISTANT ATTORNEY GENERAL<br>300 SOUTH SPRING STREET - SUITE 1702<br>LOS ANGELES, CA 90013 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7285** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>MELANIE MENESES PALMER<br>KIESEL LAW LLP<br>8648 WILSHIRE BOULEVARD<br>BEVERLY HILLS, CA 90211-2910 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7286** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>DAVID I. ACKERMAN<br>MOTLEY RICE LLC<br>401 9TH STREET, NORTHWEST - SUITE 1001<br>WASHINGTON, DC 20004 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7287** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>NICOLE RAMIREZ<br>KIESEL LAW LLP<br>8648 WILSHIRE BOULEVARD<br>BEVERLY HILLS, CA 90211-2910 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1024**

**Purdue Pharma L.P.**                                        **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7288 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS STEVE W. BERRMAN HAGENS BERMAN SOBOL SHAPIRO LLP 1918 EIGHTH AVENUE - SUITE 3300 SEATTLE, WA 98101 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7289 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS THOMAS E. LOESER HAGENS BERMAN SOBOL SHAPIRO LLP 1918 EIGHTH AVENUE - SUITE 3300 SEATTLE, WA 98101 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7290 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS ELAINE BYSZEWSKI HAGENS BERMAN SOBOL SHAPIRO LLP 301 NORTH LAKE AVENUE - SUITE 203 PASADENA, CA 91101 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7291 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS JENNIFER FOUNTAIN CONNOLLY HAGENS BERMAN SOBOL SHAPIRO LLP 1701 PENNSYLVANIA AVENUE, NORTHWEST - SUITE 300 WASHINGTON, DC 20006 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7292 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS BEN HARRINGTON HAGENS BERMAN SOBOL SHAPIRO LLP 715 HEARST AVENUE - SUITE 202 BERKELEY, CA 94710 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7293 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS PAUL KIESEL KIESEL LAW LLP 8648 WILSHIRE BOULEVARD BEVERLY HILLS, CA 90211-2910 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7294 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS XAVIER BECERRA ATTORNEY GENERAL OF CALIFORNIA 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1025**

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7295 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS SCOT D. WILSON ROBINSON CALCAGNIE, INC 19 CORPORATE PLAZA DRIVE NEWPORT, CA 92660 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7296 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS JUDITH FIORENTINI SUPERVISING DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7297 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS MICHELLE BURKART DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7298 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS TIMOTHY D. LUNDGREN DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7299 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS LAUREL M. CARNES DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7300 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS RENE JUDKIEWICZ DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7301 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS NIMA RAZFAR DEPUTY ATTORNEY GENERAL 300 SOUTH SPRING STREET - SUITE 1702 LOS ANGELES, CA 90013 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1026**

**Purdue Pharma L.P.**                                                                 **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7302 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>STEPHANIE YU<br>DEPUTY ATTORNEY GENERAL<br>300 SOUTH SPRING STREET - SUITE 1702<br>LOS ANGELES, CA 90013 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7303 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>KETAKEE KANE<br>DEPUTY ATTORNEY GENERAL<br>300 SOUTH SPRING STREET - SUITE 1702<br>LOS ANGELES, CA 90013 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7304 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>REBEKAH FRETZ<br>DEPUTY ATTORNEY GENERAL<br>300 SOUTH SPRING STREET - SUITE 1702<br>LOS ANGELES, CA 90013 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7305 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>XAVIER BECERRA<br>ATTORNEY GENERAL OF CALIFORNIA<br>300 SOUTH SPRING STREET - SUITE 1702<br>LOS ANGELES, CA 90013 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7306 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>SCOTT ZIDBECK<br>ORANGE COUNTY DISTRICT ATTORNEY<br>401 CIVIC CENTER DRIVE<br>SANTA ANA, CA 92701-4575 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7307 | The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams<br>Greta S. Hansen, Chief Assistant County Counsel<br>Office of the County Counsel, County of Santa Clara<br>70 West Hedding Street - East Wing, 9th floor<br>San Jose, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7308 | The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams<br>Kavita Narayan, Lead Deputy County Counsel<br>Office of the County Counsel, County of Santa Clara<br>70 West Hedding Street - East Wing, 9th floor<br>San Jose, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1027**

**Purdue Pharma L.P.**                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**      List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7309** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams Laura S. Trice, Lead Deputy County Counsel Office of the County Counsel, County of Santa Clara 70 West Hedding Street - East Wing, 9th floor San Jose, CA 95110 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7310** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams Julia Spiegel, Deputy County Counsel Office of the County Counsel, County of Santa Clara 70 West Hedding Street - East Wing, 9th floor San Jose, CA 95110 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7311** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS LYNETTE K. MINER, FELLOW OFFICE OF THE COUNTY COUNSEL, COUNTY OF SANTA CLARA 70 WEST HEDDING STREET - EAST WING, 9TH FLOOR SAN JOSE, CA 95110 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7312** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams Marcy C. Wickman, County Counsel Office of the County Counsel, County of Los Angeles Kenneth Hahn Hall of Administration - 500 West Temple Street, 6th Floor Los Angeles, CA 90012 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7313** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams Robert E. Ragland, Principal Deputy County Counsel Office of the County Counsel, County of Los Angeles Kenneth Hahn Hall of Administration - 500 West Temple Street, 6th Floor Los Angeles, CA 90012 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7314** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams Scott Kuhn, Acting Assistant County Counsel Office of the County Counsel, County of Los Angeles Kenneth Hahn Hall of Administration - 500 West Temple Street, 6th Floor Los Angeles, CA 90012 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7315** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS HELEN ZUKIN KIESEL LAW LLP 8648 WILSHIRE BOULEVARD BEVERLY HILLS, CA 90211-2910 | 5/21/2014 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1028**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7316 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>TONY RACKAUCKAS, DISTRICT ATTORNEY<br>ORANGE COUNTY DISTRICT ATTORNEY<br>401 CIVIC CENTER DRIVE<br>SANTA ANA, CA 92701-4575 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7317 | The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams<br>James R. Williams, County Counsel<br>Office of the County Counsel, County of Santa Clara<br>70 West Hedding Street - East Wing, 9th floor<br>San Jose, CA 95110 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7318 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>TRACY HUGHES<br>ORANGE COUNTY DISTRICT ATTORNEY<br>401 CIVIC CENTER DRIVE<br>SANTA ANA, CA 92701-4575 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7319 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>JOSEPH D'AGOSTINO<br>ORANGE COUNTY DISTRICT ATTORNEY<br>401 CIVIC CENTER DRIVE<br>SANTA ANA, CA 92701-4575 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7320 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>BARBARA J. PARKER, CITY ATTORNEY<br>OFFICE OF THE CITY ATTORNEY CITY OF OAKLAND<br>ONE FRANK H. OGAWA PLAZA - 6TH FLOOR<br>PAKLAND, CA 94612 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7321 | THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>MARIA BEE, SPECIAL COUNSEL<br>OFFICE OF THE CITY ATTORNEY CITY OF OAKLAND<br>ONE FRANK H. OGAWA PLAZA - 6TH FLOOR<br>PAKLAND, CA 94612 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7322 | The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams<br>Erin Bernstein, Supervising Deputy City Attorney<br>Office of the City Attorney City of Oakland<br>One Frank H. Ogawa Plaza - 6th Floor<br>Pakland, CA 94612 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1029**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **3.7323** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>MALIA MCPHERSON, ATTORNEY<br>OFFICE OF THE CITY ATTORNEY CITY OF OAKLAND<br>ONE FRANK H. OGAWA PLAZA - 6TH FLOOR<br>PAKLAND, CA 94612 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7324** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>MARK P. ROBINSON, JR.<br>ROBINSON CALCAGNIE, INC<br>19 CORPORATE PLAZA DRIVE<br>NEWPORT, CA 92660 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7325** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>KEVIN CALCAGNIE<br>ROBINSON CALCAGNIE, INC<br>19 CORPORATE PLAZA DRIVE<br>NEWPORT, CA 92660 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7326** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>DANIEL S. ROBINSON<br>ROBINSON CALCAGNIE, INC<br>19 CORPORATE PLAZA DRIVE<br>NEWPORT, CA 92660 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7327** The People of the State of California, acting by and through Santa Clara County Counsel James R. Williams<br>Attn: Andrea Ross, Principal Deputy County Counsel<br>Office of the County Counsel, County of Los Angeles<br>Kenneth Hahn Hall of Administration - 500 West Temple Street, 6th Floor<br>Los Angeles, CA 90012 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7328** THE PEOPLE OF THE STATE OF CALIFORNIA, ACTING BY AND THROUGH SANTA CLARA COUNTY COUNSEL JAMES R. WILLIAMS<br>LINDA SINGER<br>MOTLEY RICE LLC<br>401 9TH STREET, NORTHWEST - SUITE 1001<br>WASHINGTON, DC 20004 | 5/21/2014<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7329** THE PEOPLE OF THE STATE OF ILLINOIS<br>ATTN: KWAME RAOUL<br>STATE OF ILLINOIS ATTORNEY GENERAL<br>JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST.<br>CHICAGO, IL 60601 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1030**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7330**  THE PEOPLE OF THE STATE OF ILLINOIS ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 4/5/2019  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7331**  THE PEOPLE OF THE STATE OF ILLINOIS ATTORNEY GENERALS OFFICE 100 W RANDOLPH ST CHICAGO, IL 60601 | 4/5/2019  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7332**  THE PEOPLE OF THE STATE OF ILLINOIS AND BOONE COUNTY, ILLINOIS ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 2/5/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7333**  THE PEOPLE OF THE STATE OF ILLINOIS AND BOONE COUNTY, ILLINOIS ATTN: CHAIRMAN 1212 LOGAN AVENUE, SUITE 102 BELVIDERE, IL 61008 | 2/5/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7334**  THE PEOPLE OF THE STATE OF ILLINOIS AND BOONE COUNTY, ILLINOIS ATTN: COUNTY CLERK COUNTY CLERK & RECORDER OFFICE 1212 LOGAN AVENUE - SUITE 103 BELVIDERE, IL 61008 | 2/5/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7335**  THE PEOPLE OF THE STATE OF ILLINOIS AND BUREAU COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 700 SOUTH MAIN STREET ROOM 104 PRINCETON, IL 61356 | 1/12/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7336**  THE PEOPLE OF THE STATE OF ILLINOIS AND CHAMPAIGN COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD BROOKENS ADMINISTRATION CENTER 1776 EAST WASHINGTON STREET URBANA, IL 61802 | 1/11/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7337**  THE PEOPLE OF THE STATE OF ILLINOIS AND COOK COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 69 W. WASHINGTON ST. SUITE 500 CHICAGO, IL 60602 | 12/27/2017  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1031**

Purdue Pharma L.P.                                                                    Case Number:   19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7338** THE PEOPLE OF THE STATE OF ILLINOIS AND DUPAGE COUNTY, ILLINOIS ATTN: DUPAGE COUNTY CLERK P.O. BOX 1028 WHEATON, IL 60187 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7339** THE PEOPLE OF THE STATE OF ILLINOIS AND DUPAGE COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD P.O. BOX 1028 WHEATON, IL 60187 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7340** THE PEOPLE OF THE STATE OF ILLINOIS AND KANE COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 719 S. BATAVIA AVENUE, BUILDING B GENEVA, IL 60134 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7341** THE PEOPLE OF THE STATE OF ILLINOIS AND LASALLE COUNTY ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 707 EAST ETNA ROAD OTTAWA, IL 61350-1047 | 4/22/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7342** THE PEOPLE OF THE STATE OF ILLINOIS AND MACON COUNTY, ILLINOIS ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 253 EAST WOOD STREET DECATUR, IL 62523 | 1/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7343** THE PEOPLE OF THE STATE OF ILLINOIS AND MCHENRY COUNTY, ILLINOIS ATTN: COUNTY CLERK 2200 NORTH SEMINARY AVENUE WOODSTOCK, IL 60098 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7344** THE PEOPLE OF THE STATE OF ILLINOIS AND MCHENRY COUNTY, ILLINOIS ATTN: CHAIRPERSON OF THE COUNTY BOARD 667 WARE RD. WOODSTOCK, IL 60098 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7345** THE PEOPLE OF THE STATE OF ILLINOIS AND MCLEAN COUNTY, ILLINOIS ATTN: COUNTY CLERK 115 E. WASHINGTON ST., RM. 102 P.O. BOX 2400 BLOOMINGTON, IL 61701 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1032**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7346** THE PEOPLE OF THE STATE OF ILLINOIS AND MCLEAN COUNTY, ILLINOIS ATTN: MELISSA K. SIMS, ESQ., MARC GROSSMAN, RANDI KASSAN SANDERS PHILLIPS GROSSMAN LLC 100 GARDEN CITY PLAZA - SUITE 500 GARDEN CITY, NY 11530 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7347** THE PEOPLE OF THE STATE OF ILLINOIS AND WILL COUNTY, ILLINOIS ATTN: CHAIRPERSON OF THE COUNTY BOARD 302 N. CHICAGO STREET JOLIET, IL 60432 | 12/21/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7348** THE PEOPLE OF THE STATE OF ILLINOIS AND WILLIAMSON COUNTY ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 5/21/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7349** THE PEOPLE OF THE STATE OF ILLINOIS AND WILLIAMSON COUNTY ATTN: CHAIRPERSON OF THE COUNTY BOARD; COUNTY CLERK 407 N MONROE SUITE 119 MARION, IL 62959 | 5/21/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7350** THE PEOPLE OF THE STATE OF ILLINOIS, AND DEKALB COUNTY, ILLINOIS ATTN: CHAIRPERSON OF THE COUNTY BOARD 200 NOTH MAIN STREET SYCAMORE, IL 60178 | 8/20/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7351** THE PEOPLE OF THE STATE OF ILLINOIS, AND HENRY COUNTY, ILLINOIS ATTN: CHAIRPERSON OF THE COUNTY BOARD 307 WEST CENTER STREET CAMBRIDGE, IL 61238 | 9/5/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7352** THE PEOPLE OF THE STATE OF ILLINOIS, AND KENDALL COUNTY, ILLINOIS ATTN: COUNTY CLERK 111 W FOX STREET YORKSVILLE, IL 60560 | 8/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7353** THE PEOPLE OF THE STATE OF ILLINOIS, AND MACOUPIN COUNTY, ILLINOIS ATTN: COUNTY CLERK 201 EAST MAIN P.O. BOX 107 CARLINVILLE, IL 62626-0197 | 8/23/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1033**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7354 | THE PEOPLE OF THE STATE OF ILLINOIS, AND MACOUPIN COUNTY, ILLINOIS<br>ATTN: CHAIRPERSON OF THE COUNTY BOARD<br>215 S. EAST STREET<br>CARLINVILLE, IL 62626 | 8/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7355 | THE PEOPLE OF THE STATE OF ILLINOIS, AND PIATT COUNTY, ILLINOIS<br>ATTN: CHAIRPERSON OF THE COUNTY BOARD<br>108 E MEAD<br>P.O. BOX 191<br>WHITE HEATH, IL 61884 | 7/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7356 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF ALEXANDER COUNTY AND COUNTY OF ALEXANDER<br>ATTN: CHAIRMAN OF THE COUNTY BOARD, COUNTY CLERK & RECORDER<br>2000 WASHINGTON AVENUE<br>CAIRO, IL 62914 | 8/17/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7357 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF BOND COUNTY AND COUNTY OF BOND<br>ATTN: COUNTY CLERK, CHAIRMAN BOND COUNTY BOARD<br>203 WEST COLLEGE AVENUE<br>GREENVILLE, IL 62246 | 10/26/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7358 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF BOND COUNTY AND COUNTY OF BOND<br>ATTN: KWAME RAOUL<br>STATE OF ILLINOIS ATTORNEY GENERAL<br>JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST.<br>CHICAGO, IL 60601 | 10/26/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7359 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF CHRISTIAN COUNTY AND COUNTY OF CHRISTIAN<br>ATTN: CHAIR COUNTY BOARD, COUNTY CLERK & RECORDER<br>101 SOUTH MAIN<br>TAYLORVILLE, IL 62568 | 11/14/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7360 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF CHRISTIAN COUNTY AND COUNTY OF CHRISTIAN<br>ATTN: COUNTY CLERK & RECORDER<br>PO BOX 647<br>TAYLORVILLE, IL 62568 | 11/14/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7361 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF CHRISTIAN COUNTY AND COUNTY OF CHRISTIAN<br>ATTN: KWAME RAOUL<br>STATE OF ILLINOIS ATTORNEY GENERAL<br>JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST.<br>CHICAGO, IL 60601 | 11/14/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1034**

**Purdue Pharma L.P.**                                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7362 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF COLES COUNTY AND COUNTY OF COLES ATTN: COLES COUNTY CLERK & RECORDER 651 JACKSON AVENUE 651 JACKSON AVENUE - ROOM 122 CHARLESTON, IL 61920 | 1/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7363 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF COLES COUNTY AND COUNTY OF COLES ATTN: CHAIRPERSON OF COUNTY BOARD COLES COUNTY BOARD 651 JACKSON AVE, ROOM 326 CHARLESTON, IL 61920 | 1/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7364 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF EDWARDS COUNTY AND COUNTY OF EDWARDS ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7365 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF EDWARDS COUNTY AND COUNTY OF EDWARDS 121 N LASALLE STREET CHICAGO CITY HALL 4TH FLOOR CHICAGO, IL 60602 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7366 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF EDWARDS COUNTY AND COUNTY OF EDWARDS ATTN: CHAIRMAN OF THE COUNTY COMMISSIONERS AND COUNTY CLERK EDWARDS COUNTY COURT HOUSE 50 EAST MAIN STREET ALBION, IL 62806 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7367 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF GALLATIN COUNTY AND COUNTY OF GALLATIN ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7368 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF GALLATIN COUNTY AND COUNTY OF GALLATIN ATTN: DOUGLAS E. DYHRKOPP PO BOX 815 SHAWNEETOWN, IL 62894 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7369 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF GALLATIN COUNTY AND COUNTY OF GALLATIN ATTN: GALLATIN COUNTY CLERK; COUNTY TREASURER 484 NORTH LINCOLN BOULEVARD WEST SHAWNEETOWN, IL 62984 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1035**

**Purdue Pharma L.P.**                                                                                          **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 3.7370 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HAMILTON COUNTY AND COUNTY OF HAMILTON ATTN: HAMILTON COUNTY CLERK 100 SOUTH JACKSON STREET ROOM 2 MCLEANSBORO, IL 62859 | 10/27/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7371 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HAMILTON COUNTY AND COUNTY OF HAMILTON 100 SOUTH JACKSON STREET MCLEANSBORO, IL 62859 | 10/27/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7372 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HAMILTON COUNTY AND COUNTY OF HAMILTON ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 10/27/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7373 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HARDIN COUNTY AND COUNTY OF HARDIN ATTN: ATTORNEY GENERAL OFFICE OF THE ATTORNEY GENERAL OF ILLINOIS 500 SOUTH 2ND STREET SPRINGFIELD, IL 62704 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7374 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HARDIN COUNTY AND COUNTY OF HARDIN ATTN: CLERK OF THE COURT OF CLAIMS 630 SOUTH COLLEGE STREET SPRINGFIELD, IL 62704 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7375 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF HARDIN COUNTY AND COUNTY OF HARDIN ATTN: CHAIRMAN COMMISSIONERS, COUNTY CLERK HARDIN COUNTY COURTHOUSE 1 MAIN STREET ELIZABETHTOWN, IL 62931 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7376 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JASPER COUNTY AND COUNTY OF JASPER ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7377 | THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JASPER COUNTY AND COUNTY OF JASPER ATTN: COUNTY CLERK JASPER COUNTY OFFICE BLDG. 204 WEST WASHINGTON STREET, UITE 2 NEWTON, IL 62448 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

NAS1036

**Purdue Pharma L.P.**                                        **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7378** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JASPER COUNTY AND COUNTY OF JASPER ATTN: CLERK COURT OF CLAIMS 630 SOUTH COLLEGE STREET SPRINGFIELD, IL 62756 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7379** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JASPER COUNTY AND COUNTY OF JASPER ATTN: ATTORNEY GENERAL OFFICE OF THE ATTORNEY GENERAL OF ILLINOIS 500 SOUTH 2ND STREET SPRINGFIELD, IL 62704 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7380** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JERSEY COUNTY AND JERSEY COUNTY ATTN: COUNTY CLERK 200 NORTH LAFAYETTE P.O. BOX 216 JERSEYVILLE, IL 62052 | 6/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7381** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JERSEY COUNTY AND JERSEY COUNTY ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 6/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7382** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: THOMAS J. LECH GOLDENBERG HELLER & ANTOGNOLI, P.C. 2227 SOUTH STATE ROUTE 157 EDWARDSVILLE, IL 62025 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7383** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: GREGORY R. JONES GOLDENBERG HELLER & ANTOGNOLI P.C. 2227 SOUTH STATE ROUTE 157 EDWARDSVILLLE, IL 62025 | 10/5/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7384** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: PETER J. MOUGEY LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7385** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: ROLAND K. TELLIS BARON & BUDD, P.C. 15910 VENTURA BOULEVARD - SUITE 1600 LOS ANGELES, CA 91436 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1037**

**Purdue Pharma L.P.**                                                                **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7386** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: AMY QUEZON MCHUGH FULLER LAW GROUP, PLLC 97 ELIAS WHIDDON ROAD HATTIESBURG, MS 39402 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7387** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: MARK P. PIFKO BARON & BUDD, P.C 15910 VENTURA BOULEVARD - SUITE 1600 LOS ANGELES, CA 91436 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7388** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: JAMES C. PETERSON HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC NORTHGATE BUSINESS PARK - 500 TRACY WAY CHARLESTON, WV 25311 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7389** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: R. EDISON HILL HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC NORTHGATE BUSINESS PARK - 500 TRACY WAY CHARLESTON, WV 25311 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7390** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: LLOYD M. CUETO LAW OFFICE OF LLOYD M. CUETO 7110 WEST MAIN STREET BELLEVILLE, IL 62223 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7391** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: S. ANN SAUCER BARON & BUDD, P.C. 3102 OAK LAWN AVENUE - SUITE 1100 DALLAS, TX 75219 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7392** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: MICHAEL J. GRAS LAW OFFICE OF CHRISTOPHER CUETO, LTD 7110 WEST MAIN STREET BELLEVILLE, IL 62223 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7393** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: LAURA S. DUNNING LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1038**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7394** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: PAGE A. POERSCHKE LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7395** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: ANTHONY J. MAJESTRO, ESQ. POWELL & MAJESTRO, PLLC 405 CAPITOL STREET - SUITE P-1200 CHARLESTON, WV 25301 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7396** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: ERIC D. HOLLAND HOLLAND LAW FIRM 300 NORTH TUCKER - SUITE 801 ST. LOUIS, MO 63101 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7397** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: R. SETH CROMPTON HOLLAND LAW FIRM 300 NORTH TUCKER - SUITE 801 ST. LOUIS, MO 63101 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7398** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: MICHAEL J. FULLER, JR. MCHUGH FULLER LAW GROUP, PLLC 97 ELIAS WHIDDON ROAD HATTIESBURG, MS 39402 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7399** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: JAMES M. "MIKE" PAPANTONIO LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7400** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: ARCHIE C. LAMB, JR. LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1039**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7401** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: DAVID CATES CATES MAHONEY, LLC 216 WEST POINTE DRIVE - SUITE A SWANSEA, IL 62226 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7402** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: PAUL T. FARRELL, JR. GREENE, KETCHUM, FARRELL, BAILEY & TWEEL, LLP 419 - 11TH STREET HUNTINGTON, WV 25701 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7403** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: RUSSELL W. BUDD BARON & BUDD, P.C. 3102 OAK LAWN AVENUE - SUITE 1100 DALLAS CITY, TX 75219 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7404** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: ANN E. CALLIS GOLDENBERG HELLER & ANTOGNOLI, P.C. 2227 SOUTH STATE ROUTE 157 EDWARDSVILLE, IL 62025 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7405** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: CHRISTOPHER CUETO LAW OFFICE OF CHRISTOPHER CUETO, LTD. 7110 WEST MAIN STREET BELLEVILLE, IL 62223 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7406** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: JEFFREY GADDY LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7407** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: J. BURTON LEBLANC, IV BARON & BUDD, P.C. 3102 OAK LAWN AVENUE - SUITE 1100 DALLAS, TX 75219 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7408** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ERIC D. HOLLAND HOLLAND LAW FIRM 300 NORTH TUCKER - SUITE 801 ST. LOUIS, MO 63101 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1040**

**Purdue Pharma L.P.**                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7409 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: GREGORY R. JONES GOLDENBERG HELLER & ANTOGNOLI, P.C. 2227 SOUTH STATE ROUTE 157 EDWARDSVILLE, IL 62025 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7410 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: LAURA J. BAUGHMAN BARON & BUDD, P.C 3102 OAK LAWN AVENUE - SUITE 1100 DALLAS, TX 75219 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7411 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF JOHNSON COUNTY, AND COUNTY OF JOHNSON ATTN: NEIL E. "NED" MCWILLIAMS, JR. LEVIN, PAPANTONIO, THOMAS, MITCHELL, RAFFERTY & PROCTOR, P.A. 316 S. BAYLEN STREET - SUITE 600 PENSACOLA, FL 32502-5996 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7412 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF KANKAKEE CNTY ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7413 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF KANKAKEE CNTY ATTN: KANKAKEE COUNTY CLERK; COUNTY BOARD CHAIRMAN 189 EAST COURT STREET KANKAKEE, IL 60901 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7414 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF KANKAKEE CNTY ATTN: KANKAKEE COUNTY STATE'S ATTORNEY 450 EAST COURT STREET, 3RD FLOOR KANKAKEE, IL 60602 | 9/25/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7415 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF PULASKI COUNTY AND COUNTY OF PULASKI ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 11/17/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7416 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF PULASKI COUNTY AND COUNTY OF PULASKI ATTN: COUNTY BOARD CHAIR; COUNTY TREASURER 500 ILLINOIS AVENUE MOUND CITY, IL 62963 | 11/17/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1041**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7417 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF PULASKI COUNTY AND COUNTY OF PULASKI ATTN: COUNTY CLERK PO BOX 118 MOUND CITY, IL 62963 | 11/17/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7418 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF SCHUYLER COUNTY, AND COUNTY OF SCHUYLER ATTN: COUNTY CLERK 102 SOUTH CONGRESS STREET SUITE 104 RUSHVILLE, IL 62681 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7419 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF SHELBY COUNTY AND COUNTY OF SHELBY ATTN: CHAIR OF THE BOARD OF COMMISSIONERS AND COUNTY CLERK PO BOX 230 COUNTY COURTHOUSE SHELBYVILLE, IL 62565-0230 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7420 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF SHELBY COUNTY AND COUNTY OF SHELBY ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7421 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF SHELBY COUNTY AND COUNTY OF SHELBY ATTN: CHAIR OF THE BOARD OF COMMISSIONERS AND COUNTY CLERK SHELBY COUNTY COURTHOUSE 301 EAST MAIN STREET SHELBYVILLE, IL 62565 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7422 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF UNION COUNTY AND UNION COUNTY ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 6/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7423 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF UNION COUNTY AND UNION COUNTY ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS 309 WEST MARKET STREET ROOM 110 JONESBORO, IL 62952 | 6/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7424 THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF UNION COUNTY AND UNION COUNTY ATTN: COUNTY CLERK 309 WEST MARKET STREET ROOM 116 JONESBORO, IL 62952 | 6/26/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1042**

**Purdue Pharma L.P.**          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7425** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF WABASH COUNTY AND COUNTY OF WABASH ATTN: KWAME RAOUL STATE OF ILLINOIS ATTORNEY GENERAL JAMES R. THOMPSON CTR. - 100 W. RANDOLPH ST. CHICAGO, IL 60601 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7426** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF WABASH COUNTY AND COUNTY OF WABASH 121 NORTH LASALLE STREET CHICAGO CITY HALL 4TH FLOOR CHICAGO, IL 60602 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7427** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF WABASH COUNTY AND COUNTY OF WABASH ATTN: WABASH COUNTY CLERK 401 MARKET STREET MT. CARMEL, IL 62863 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7428** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF WASHINGTON COUNTY AND COUNTY OF WASHINGTON ATTN: COUNTY CLERK AND RECORDER 101 E. ST. LOUIS ST. NASHVILLE, IL 62263 | 10/26/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7429** THE PEOPLE OF THE STATE OF ILLINOIS, THE PEOPLE OF WHITE COUNTY AND COUNTY OF WHITE ATTN: OFFICE OF THE COUNTY CLERK AND COUNTY BOARD CHAIR 301 E MAIN STREET PO BOX 339 CARMI, IL 62821 | 12/12/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7430** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK ATTN: ASSISTANT ATTORNEY GENERAL OF THE STATE OF NEW YORK 28 LIBERTY STREET, 16TH FLOOR NEW YORK, NY 10005 | 8/14/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7431** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK ATTN: ASSISTANT ATTORNEY GENERAL OF THE STATE OF NEW YORK 28 LIBERTY STREET, 16TH FLOOR NEW YORK, NY 10005 | 8/14/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7432** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK ATTN: LETITIA A. JAMES STATE OF NEW YORK ATTORNEY GENERAL DEPT. OF LAW - THE CAPITOL, 2ND FL. ALBANY, NY 12224 | 8/14/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1043**

**Purdue Pharma L.P.**          **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7433** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>ATTN: ASSISTANT ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>EMPIRE STATE PLAZA<br>JUSTICE BUILDING, 2ND FLOOR<br>ALBANY, NY 12224 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7434** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>NACHMAN, DAVID ELI<br>OFFICE OF THE ATTORNEY GENERAL<br>28 LIBERTY STREET - 23RD FLOOR<br>NEW YORK, NY 10005 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7435** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>HUNT, CAROL JEAN<br>OFFICE OF THE ATTORNEY GENERAL<br>120 BROADWAY - 26TH FLOOR<br>NEW YORK, NY 10271 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7436** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>STAMATELOS, PAULINA ANGELA<br>NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL<br>28 LIBERTY STREET<br>NEW YORK, NY 10005 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7437** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>DEROCHE, MANDY<br>NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL<br>28 LIBERTY STREET - 19TH FLOOR<br>NEW YORK, NY 10005 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7438** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>CHESLER, ELIZABETH RICHER<br>NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL<br>28 LIBERTY STREET - 19TH FLOOR<br>NEW YORK, NY 10005 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7439** THE PEOPLE OF THE STATE OF NEW YORK, BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK<br>JOHNSTON, DIANE NICOLE<br>NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL<br>28 LIBERTY STREET - 19TH FLOOR<br>NEW YORK, NY 10005 | 8/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1044**

**Purdue Pharma L.P.**                                                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7440** THE SOLICITOR FOR BOSTON TOWNSHIP, ED PULLEKINS ATTN: TRUSTEE CHAIR BOSTON TOWNSHIP HALL 1775 MAIN STREET PENINSULA, OH 44264 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7441** THE SOLICITOR FOR THE VILLAGE OF LAKEMORE, IRVING B. SUGERMAN ATTN: MAYOR THE VILLAGE OF LAKEMORE 1400 MAIN STREET LAKEMORE, OH 44250 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7442** THE SOLICITOR FOR THE VILLAGE OF PENINSULA, BRAD BRYAN ATTN: MAYOR VILLAGE OF PENINSULA 1582 MAIN STREET PENINSULA, OH 44264 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7443** THE SOLICITOR THE VILLAGE OF SILVER LAKE, BOB HEYDORN ATTN: MAYOR'S OFFICE & ADMINISTRATION, VILLAGE SOLICITOR 2961 KENT ROAD SILVER LAKE, OH 44224 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7444** THE STATE OF ALABAMA ATTN: STEVE MARSHALL STATE OF ALABAMA ATTORNEY GENERAL 501 WASHINGTON AVENUE - P.O. BOX 300152 MONTGOMERY, AL 36130-0152 | 6/20/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7445** THE STATE OF COLORADO EX REL. PHIL WEISER, ATTORNEY GENERAL ATTN: PHIL WEISER STATE OF COLORADO ATTORNEY GENERAL RALPH L. CARR COLORADO JUDICIAL CENTER - 1300 BROADWAY, 10TH FLOOR DENVER, CO 80203 | 9/6/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7446** THE STATE OF OHIO EX REL. PROSECUTING ATTORNEY OF FAYETTE COUNTY, JESS WEADE ATTN: JESS WEADE FAYETTE COUNTY PROSECUTING ATTORNEY 110 EAST COURT STREET WASHINGTON COURT HOUSE, OH 43160 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7447** THE STATE OF OHIO EX REL. PROSECUTING ATTORNEY OF MEDINA COUNTY, S. FORREST THOMPSON ATTN: S. FORREST THOMPSON MEDINA COUNTY PROSECUTOR 72 PUBLIC SQUARE MEDINA, OH 44256 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1045**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7448** THE TOWN OF AMHERST<br>ATTN: SUPERVISOR & CLERK<br>MUNICIPAL BUILDING (TOWN HALL)<br>5583 MAIN STREET<br>WILLIAMSVILLE, NY 14221 | 3/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7449** THE TOWN OF BEACON FALLS<br>ATTN: FIRST SELECTMEN, BOARD OF SELECTMEN, AND TOWN CLERK<br>BEACON FALLS TOWN HALL<br>10 MAPLE AVENUE<br>BEACON FALLS, CT 06403 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7450** THE TOWN OF BERLIN<br>ATTN: TOWN CLERK, TOWN MANAGER<br>240 KENSINGTON RD<br>BERLIN, CT 06037 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7451** THE TOWN OF BERLIN<br>ATTN: MAYOR<br>187 CASTLEWOOD DRIVE<br>BERLIN, CT 06037 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7452** THE TOWN OF BETHLEHEM<br>ATTN: CLERK AND ASSISTANT CLERK AND SELECTMAN<br>36 MAIN STREET SOUTH<br>BETHLEHEM, CT 06751 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7453** THE TOWN OF CHEEKTOWAGA<br>ATTN: SUPERVISOR & CLERK<br>TOWN HALL<br>3301 BROADWAY<br>CHEEKTOWAGA, NY 14227 | 4/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7454** THE TOWN OF CHEROKEE, ALABAMA, ET AL.<br>ATTN: MAYOR, TOWN CLERK<br>TOWN HALL<br>3780 OLD LEE HIGHWAY<br>CHEROKEE, AL 35616 | 11/9/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7455** THE TOWN OF CHEROKEE, ALABAMA, ET AL.<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 11/9/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7456** THE TOWN OF CLENDENIN, WEST VIRGINIA<br>ATTN: MAYOR, MUNICIPAL CLERK, TREASURER, TOWN RECORDER, CITY COUNCIL<br>COUNTY ROUTE 4/1<br>CLENDENIN, WV 25045 | 9/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1046**

**Purdue Pharma L.P.**                                 **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7457** THE TOWN OF COVENTRY<br>ATTN: TOWN MANAGER OF COVENTRY<br>1712 MAIN STREET<br>COVENTRY, CT 06238 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7458** THE TOWN OF COVENTRY<br>ATTN: CHAIR OF THE TOWN COUNCIL OF COVENTRY<br>1712 MAIN STREET<br>COVENTRY, CT 06238 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7459** THE TOWN OF COVENTRY<br>ATTN: ASSISTANT TOWN CLERK OF COVENTRY<br>1712 MAIN STREET<br>COVENTRY, CT 06238 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7460** THE TOWN OF COVENTRY<br>ATTN: TOWN CLERK OF COVENTRY<br>1712 MAIN STREET<br>COVENTRY, CT 06238 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7461** THE TOWN OF EAST HARTFORD<br>ATTN: TOWN CLERK<br>740 MAIN STREET<br>1ST FLOOR<br>EAST HARTFORD, CT 06108 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7462** THE TOWN OF EAST HARTFORD<br>ATTN: FIRST SELECTMAN AND BOARD OF SELECTMEN<br>740 MAIN STREET<br>EAST HARTFORD, CT 06108 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7463** THE TOWN OF ELEANOR, WEST VIRGINIA<br>ATTN: MAYOR AND RECORDER AND CHAIRPERSON, COUNCIL BOARD<br>401 ROOSEVELT BLVD<br>PO BOX 185<br>ELEANOR, WV 25070 | 3/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7464** THE TOWN OF ELIZABETH<br>ATTN: RECORDER<br>P.O. BOX 478<br>ELIZABETH, WV 26142 | 5/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7465** THE TOWN OF FAIRFIELD<br>ATTN: TOWN CLERK<br>OLD TOWN HALL<br>611 OLD POST ROAD<br>FAIRFIELD, CT 06824 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7466** THE TOWN OF FAIRFIELD<br>ATTN: FIRST SELECTMAN AND BOARD OF SELECTMEN<br>725 OLD POST ROAD<br>FAIRFIELD, CT 06824 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1047**

**Purdue Pharma L.P.**                                                                                     **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7467** THE TOWN OF GAULEY BRIDGE, WEST VIRGINIA, A WEST VIRGINIA MUNICIPAL CORPORATION ATTN: MAYOR, CITY COUNCIL, 278 RAILROAD STREET GAULEY BRIDGE, WV 25085 | 10/30/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7468** THE TOWN OF GLENVILLE, WEST VIRGINIA ATTN: MAYOR AND CITY CLERK 20 NORTH COURT STREET GLENVILLE, WV 26351 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7469** THE TOWN OF GRANVILLE, WEST VIRGINIA ATTN: MAYOR AND CHAIRPERSON BOARD OF COUNCIL AND TOWN CLERK AND TOWN TREASURER PO BOX 119 GRANVILLE, WV 26534 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7470** THE TOWN OF GRANVILLE, WEST VIRGINIA ATTN: MAYOR AND CHAIRPERSON BOARD OF COUNCIL AND TOWN CLERK AND TOWN TREASURER 1245 MAIN STREET GRANVILLE, WV 26534 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7471** THE TOWN OF LANCASTER ATTN: TOWN SUPERVISOR & TOWN CLERK 21 CENTRAL AVENUE LANCASTER, NY 14086 | 6/13/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7472** THE TOWN OF MAN, WEST VIRGINIA ATTN: MAYOR AND CITY CLERK AND CITY TREASURER AND CHAIRPERSON, BOARD OF COMMISSION 105 MARKET STREET MAN, WV 25635 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7473** THE TOWN OF MIDDLEBURY ATTN: CLERK AND SELECTMEN 1212 WHITTMORE ROAD MIDDLEBURY, CT 06762 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7474** THE TOWN OF NEW MILFORD ATTN: MAYOR AND TOWN COUNCIL MEMBER NEW MILFORD TOWN HALL 10 MAIN STREET NEW MILFORD, CT 06776 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7475** THE TOWN OF NEW MILFORD ATTN: CLERK AND ASSISTANT CLERK TOWN CLERK'S OFFICE NEW MILFORD TOWN HALL - 10 MAIN STREET NEW MILFORD, CT 06776 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1048**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7476 THE TOWN OF NEWTOWN<br>ATTN: FIRST SELECTMAN, BOARD OF SELECTMEN, AND TOWN CLERK<br>NEWTOWN MUNICIPAL CENTER<br>3 PRIMROSE STREET<br>NEWTOWN, CT 06470 | 1/9/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7477 THE TOWN OF NORTH HAVEN<br>ATTN: FIRST SELECTMAN, BOARD OF SELECTMEN, AND TOWN CLERK<br>TOWN HALL<br>18 CHURCH STREET<br>NORTH HAVEN, CT 06473 | 1/9/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7478 THE TOWN OF OXFORD<br>ATTN: FIRST SELECTMAN, BOARD OF SELECTMEN, AND TOWN CLERK<br>OXFORD TOWN HALL<br>486 OXFORD ROAD<br>OXFORD, CT 06478 | 1/9/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7479 THE TOWN OF PROSPECT<br>ATTN: CLERK AND ASSISTANT TOWN CLERK AND COUNCIL MEMBER AND MAYOR<br>TOWN HALL<br>36 CENTER STREET<br>PROSPECT, CT 06712 | 8/13/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7480 THE TOWN OF RAINELLE, WEST VIRGINIA<br>ATTN: OFFICE OF THE MAYOR<br>201 KANAWHA AVENUE<br>RAINELLE, WV 25962 | 3/15/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7481 THE TOWN OF RAVENSWOOD<br>ATTN: MAYOR, CITY RECORDER<br>CITY OF RAVENSWOOD CITY HALL<br>212 WALNUT ST.<br>RAVENSWOOD, WV 26164 | 5/3/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7482 THE TOWN OF ROXBURY<br>ATTN: TOWN CLERK, ASSISTANT TOWN CLERK, SELECTMEN<br>P.O. BOX 203<br>ROXBURY, CT 06783 | 8/13/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7483 THE TOWN OF ROXBURY<br>ATTN: TOWN CLERK, ASSISTANT TOWN CLERK OR SELECTMEN<br>29 NORTH STREET<br>P.O. BOX 203<br>ROXBURY, CT 06783 | 8/13/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1049**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7484** THE TOWN OF RUPERT, WEST VIRGINIA ATTN: OFFICE OF THE MAYOR TOWN OF RUPERT MAYOR'S OFFICE - DRAWER B RUPERT, WV 25984 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7485** THE TOWN OF SEYMOUR ATTN: CLERK AND ASSISTANT TOWN CLERK AND SELECTMEN ONE FIRST STREET SEYMOUR, CT 06483 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7486** THE TOWN OF SOPHIA, WEST VIRGINIA ATTN: MAYOR, CITY COUNCIL, RECORDER 100 EAST RAILROAD AVENUE SOPHIA, WV 25921 | 9/10/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7487** THE TOWN OF SOUTHBURY ATTN: FIRST SELECTMAN AND BOARD OF SELECTMEN SOUTHBURY TOWN HALL 501 MAIN STREET SOUTH - ROOM 212 SOUTHBURY, CT 06488 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7488** THE TOWN OF SOUTHBURY ATTN: TOWN CLERK SOUTHBURY TOWN HALL 501 MAIN STREET SOUTH - ROOM 202 SOUTHBURY, CT 06488 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7489** THE TOWN OF SOUTHINGTON ATTN: TOWN MANAGER AND TOWN CLERK SOUTHINGTON TOWN HALL 75 MAIN STREET SOUTHINGTON, CT 06489 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7490** THE TOWN OF STRATFORD ATTN: TOWN CLERK 2725 MAIN STREET ROOM 106 STRATFORD, CT 06615 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7491** THE TOWN OF STRATFORD ATTN: CHIEF ADMINISTRATIVE OFFICER 2725 MAIN STREET STRATFORD, CT 06615 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7492** THE TOWN OF SUTTON, WEST VIRGINIA ATTN: MAYOR 450 FOURTH STREET PO BOX 366 SUTTON, WV 26601 | 3/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1050**

**Purdue Pharma L.P.**                                           **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7493** THE TOWN OF THOMASTON<br>ATTN: FIRST SELECTMAN, BOARD OF SELECTMEN, AND TOWN CLERK<br>THOMASTOWN TOWN HALL<br>158 MAIN STREET<br>THOMASTON, CT 06787 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7494** THE TOWN OF TOLLAND<br>ATTN: TOWN MANAGER AND TOWN CLERK<br>HICKS MEMORIAL MUNICIPAL CENTER<br>21 TOLLAND GREEN - 5TH LEVEL<br>TOLLAND, CT 06084 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7495** THE TOWN OF TONAWANDA<br>ATTN: SUPERVISOR<br>2919 DELAWARE AVENUE, ROOM 11<br>TONAWANDA, NY 14217 | 7/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7496** THE TOWN OF TONAWANDA<br>ATTN: SUPERVISOR<br>2919 DELAWARE AVENUE #11<br>TONAWANDA, NY 14217 | 7/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7497** THE TOWN OF WHITESVILLE, WEST VIRGINIA<br>ATTN: MAYOR<br>MAYOR FREDDIE HARLESS' OFFICE<br>39140 COAL RIVER ROAD<br>WHITESVILLE, WV 25209 | 9/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7498** THE TOWN OF WOLCOTT<br>ATTN: CLERK AND ASSISTANT CLERK AND MAYOR AND TOWN COUNCIL MEMBER<br>WOLCOTT TOWN HALL<br>10 KENEA AVENUE<br>WOLCOTT, CT 06716-0000 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7499** THE TOWN OF WOODBURY<br>ATTN: FIRST SELECTMAN, BOARD OF SELECTMEN AND TOWN CLERK<br>281 MAIN STREET SOUTH<br>WOODBURY, CT 06798 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7500** THE TOWN OF WOODBURY<br>ATTN: TOWN CLERK<br>275 MAIN STREET SOUTH<br>WOODBURY, CT 06798 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7501** THE TRUSTEES OF THE UNITE HERE LOCAL 634 HEALTH & WELFARE FUND<br>ATTN: CHAIRPERSON OF THE BOARD OF TRUSTEES / PRESIDENT<br>LOCAL 634 PHILADELPHIA<br>1415 NORTH BROAD STREET - SUITE 219<br>PHILADELPHIA, PA 19121 | 4/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1051**

**Purdue Pharma L.P.**                                              **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7502 THE TRUSTEES OF THE UNITE HERE LOCAL 634 HEALTH & WELFARE FUND ATTN: CHAIRPERSON OF THE BOARD OF TRUSTEES / PRESIDENT 275 7TH AVENUE NEW YORK, NY 10001-6708 | 4/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7503 THE UNIFIED GOVERNMENT OF MACON BIBB COUNTY GEORGIA ATTN: MAYOR OFFICE OF THE MAYOR 700 POPLAR STREET MACON, GA 31201 | 3/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7504 THE UNIFIED GOVERNMENT OF MACON BIBB COUNTY GEORGIA ATTN: COUNTY MANAGER OFFICES OF THE COUNTY MANAGER 700 POPLAR STREET MACON, GA 71201 | 3/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7505 THE UNIFIED GOVERNMENT OF MACON BIBB COUNTY GEORGIA ATTN: CHAIR, MAYOR PRO TEM, AND BOARD OF COMMISSIONERS 700 POPLAR STREET MACON, GA 71201 | 3/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7506 THE UNIVERSITY SYSTEM OF LOUISIANA ATTN: OFFICE OF THE PRESIDENT AND REGISTERED AGENT 1201 NORTH THIRD STREET SUITE 7-300 BATON ROUGE, LA  70802 | 6/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7507 THE VILLAGE OF BEDFORD PARK ATTN: VILLAGE CLERK 6701 S. ARCHER ROAD BEDFORD PARK, IL 60501 | 8/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7508 THE VILLAGE OF BOSTON HEIGHTS ATTN: MAYOR, VILLAGE SOLICITOR 45 EAST BOSTON MILLS ROAD BOSTON HEIGHTS, OH 44236 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7509 THE VILLAGE OF CLINTON ATTN: MAYOR, OFFICE ADMINISTRATOR VILLAGE OF CLINTON 7871 MAIN STREET CLINTON, OH 44216 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7510 THE VILLAGE OF EVERGREEN PARK ATTN: OFFICE OF THE MAYOR 9418 S. KEDZIE EVERGREEN PARK, IL 60805 | 11/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1052**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**　　**List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7511** THE VILLAGE OF LAKEMORE ATTN: MAYOR THE VILLAGE OF LAKEMORE 1400 MAIN STREET LAKEMORE, OH 44250 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7512** THE VILLAGE OF LYONS ATTN: MAYOR, PRESIDENT, BOARD OF TRUSTEES AND VILLAGE CLERK LYONS VILLAGE HALL 4200 LAWNDALE AVENUE LYONS, IL 60534 | 8/14/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7513** THE VILLAGE OF MOGADORE ATTN: MAYOR VILLAGE OF MOGADORE 135 SOUTH CLEVELAND AVENUE VILLAGE OF MOGADORE, OH 44260 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7514** THE VILLAGE OF PENINSULA ATTN: MAYOR 1582 MAIN STREET PENINSULA, OH 44264 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7515** THE VILLAGE OF RICHFIELD ATTN: MAYOR 4410 WEST STREETSBORO ROAD RICHFIELD, OH 44286 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7516** THE VILLAGE OF SILVER LAKE ATTN: MAYOR AND CITY SOLICITOR 2961 KENT ROAD SILVER LAKE, OH 44224 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7517** THE VILLAGE OF SUMMIT ATTN: PRESIDENT OF BOARD OF TRUSTEES AND VILLAGE CLERK 7321 W 59TH STREET SUMMIT, IL 60501 | 8/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7518** THE VILLAGE SOLICITOR FOR THE VILLAGE OF BOSTON HEIGHTS, MARSHAL PITCHFORD ATTN: VILLAGE SOLICITOR 45 E. BOSTON MILLS ROAD BOSTON HEIGHTS, OH 44236 | 6/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7519** THLOPTHLOCCO TRIBAL TOWN ATTN: TOWN KING AND CHIEF EXECUTIVE OFFICER P.O. BOX 1888 OKEMAH, OK 74859 | 7/30/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1053**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**　　　**List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.7520** THLOPTHLOCCO TRIBAL TOWN<br>CURTIS "MUSKRAT" BRUEHL<br>THE BRUEHL LAW FIRM, PLLC<br>14005 NORTH EASTERN AVENUE<br>EDMOND, OK 73013 | 7/30/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7521** THLOPTHLOCCO TRIBAL TOWN<br>MICHAEL G. ROSSETTI<br>LIPPES MATHIAS WEXLER FRIEDMAN<br>1900 K STREET, NORTHWEST - SUITE 730<br>WASHINGTON, DC 20006 | 7/30/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7522** THOMAS HICKEY<br>SUFFOLK COUNTY HOUSE OF CORRECTION<br>20 BRADSTON STREET<br>BOSTON, MA 02118 | 8/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7523** THREE AFFILIATED TRIBES<br>404 FRONTAGE ROAD<br>NEW TOWN, ND 58763-9404 | 6/6/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7524** THREE AFFILIATED TRIBES<br>ATTN: TRIBAL COUNCIL CHAIRMAN AND CHIEF<br>EXECUTIVE OFFICER<br>404 FRONTAGE ROAD<br>NEW TOWN, ND 58763-9404 | 6/6/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7525** THURSTON COUNTY<br>ATTN: AUDITOR<br>MAIN OFFICE<br>BUILDING 1 - 2000 LAKERIDGE DRIVE SOUTH WEST<br>OLYMPIA, WA 98502 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7526** TIPPAH COUNTY, MISS.<br>ATTN: PRESIDENT OF THE BOARD OF SUPERVISORS<br>101 EAST SPRING STREET<br>RIPLEY, MS 38663 | 1/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7527** TIPPECANOE COUNTY, INDIANA<br>ATTN: PRESIDENT OF THE COUNTY COMMISSIONERS<br>20 NORTH 3RD STREET<br>1ST FLOOR<br>LAFAYETTE, IN 47901 | 6/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7528** TIPPECANOE COUNTY, INDIANA<br>ATTN: CURTIS T. HILL, JR.<br>STATE OF INDIANA ATTORNEY GENERAL<br>INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR -<br>302 WEST WASHINGTON STREET<br>INDIANAPOLIS, IN 46204 | 6/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1054

Purdue Pharma L.P.                                                                  Case Number:   19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7529** TISHOMINGO HEALTH SERVICES<br>ATTN: PRESIDENT, AND CHIEF EXECUTIVE OFFICER, AND ADMINISTRATOR<br>1777 CURTIS DRIVE<br>IUKA, MS 38852 | 3/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7530** TISHOMINGO HEALTH SERVICES<br>ATTN: REGISTERED AGENT (BRUCE J. TOPPIN)<br>830 SOUTH GLOSTER<br>TUPELO, MS 38801 | 3/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7531** TOHONO O'ODHAM NATION<br>P.O. BOX 837<br>SELLS, AZ 85634 | 6/7/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7532** TOHONO O'ODHAM NATION<br>ATTN: TRIBAL COUNCIL CHAIRMAN / CEO<br>SELLS BUSINESS LOOP<br>SELLS, AZ 85634 | 6/7/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7533** TONTO APACHE TRIBE<br>ATTN: CHAIRWOMAN OF TRIBAL COUNCIL<br>TONTO APACHE RESERVATION #30<br>PAYSON, AZ 85541 | 6/7/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7534** Tony Clark, in his official capacity as the District Attorney General for the First Judicial District and on behalf of all political subdivisions therein<br>Attn: District Attorney General<br>First Judicial District<br>George P. Jaynes Justice Center - 108 West Jackson Boulevard<br>Jonesborough, TN 37659 | 6/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7535** Tony Clark, in his official capacity as the District Attorney General for the First Judicial District and on behalf of all political subdivisions therein<br>Attn: Herbert H. Slatery III<br>State of Tennessee Attorney General<br>425 5th Avenue North<br>Nashville, TN 37243 | 6/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7536** TONY MANCUSO, SHERIFF OF CALCASIEU PARISH<br>ATTN: PRESIDENT OR EXECUTIVE COMMITTEE MEMBER<br>LOUISIANA SHERIFF'S ASSOCIATION<br>1175 NICHOLSON DRIVE<br>BATON ROUGE, LA 70802 | 10/5/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7537** TONY MANCUSO, SHERIFF OF CALCASIEU PARISH<br>ATTN: SHERIFF<br>CALCASIEU SERIFF'S OFFICE<br>5400 EAST BROAD STREET<br>LAKE CHARLES, LA 70615 | 10/5/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1055**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|------|------|---|---|---|------|--------|--------|
| **Litigation** | | | | | | | |
| **3.7538** TONY MANCUSO, SHERIFF OF CALCASIEU PARISH ATTN: ADMINISTRATOR 1015 PITHON STREET P.O. BOX 1583 LAKE CHARLES, LA 70602 | 10/5/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7539** TONY MANCUSO, SHERIFF OF CALCASIEU PARISH ATTN: ADMINISTRATOR 1015 PITHON STREET LAKE CHARLES, LA 70602 | 10/5/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7540** TOOELE COUNTY, UTAH ATTN: COUNTY CLERK 47 SOUTH MAIN, RM #318 TOOELE, UT 84074 | 3/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7541** TOOMBS COUNTY, GEORGIA ATTN: COUNTY MANAGER; CHAIR OF COMMISSIONERS PO BOX 112 LYONS, GA 30436 | 5/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7542** TORRES MARTINEZ DESERT CAHUILLA INDIANS ATTN: TRIBE COUNSEL CHAIRMAN AND CHIEF EXECUTIVE OFFICER 66-725 MARTINEZ STREET THERMAL, CA 92274 | 10/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7543** TOUCHETTE REGIONAL HOSPITAL ATTN: ILLINOIS CORPORATION SERVICE C 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 | 6/13/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7544** TOUCHETTE REGIONAL HOSPITAL ATTN: CHIEF EXECUTIVER OFFICER TOUCHETTE REGIONAL HOSPITAL 5900 BOND AVENUE CENTREVILLE, IL 62207 | 6/13/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7545** TOWN OF ACUSHNET, MASSACHUSETTS ATTN: TREASURER AND CLERK ACUSHNET TOWN HALL 122 MAIN STREET ACUSHNET, MA 02743 | 5/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7546** TOWN OF AGAWAM ATTN: TREASURER AND TOWN CLERK 36 MAIN STREET AGAWAM, MA 01001 | 6/8/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1056**

**Purdue Pharma L.P.**       **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.7547 | TOWN OF ALEXANDRIA<br>ATTN: MAYOR<br>102 HIGH STREET<br>PO BOX 277<br>ALEXANDRIA, TN 37012 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7548 | TOWN OF ALEXANDRIA<br>ATTN: CITY ATTORNEY<br>111 WEST MAIN STREET<br>SMITHVILLE, TN 37116 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7549 | TOWN OF ALTAMONT<br>ATTN: MAYOR & CITY ATTORNEY<br>P.O. BOX 200<br>ALTAMONT, TN 37301 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7550 | TOWN OF AMESBURY<br>ATTN: TREASURER AND CITY CLERK<br>62 FRIEND STREET<br>AMESBURY, MA 01913 | 5/16/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7551 | TOWN OF AQUINNAH<br>ATTN: TREASURER AND TOWN CLERK<br>TOWN HALL<br>953-55-57 STATE ROAD<br>AQUINNAH, MA 02535 | 8/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7552 | TOWN OF ARCOLA, MISSISSIPPI<br>ATTN: CLERK<br>PO BOX 25<br>ARCOLA, MS 38722-0025 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7553 | TOWN OF ARLINGTON, TENNESSEE<br>ATTN: MAYOR OF THE TOWN OF ARLINGTON<br>5854 AIRLINE ROAD<br>P.O. BOX 507<br>ARLINGTON, TN 38002 | 6/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7554 | TOWN OF ATHOL, MASSACHUSETTS<br>ATTN: TREASURER AND CLERK<br>ATHOL TOWN HALL<br>584 MAIN STREET<br>ATHOL, MA 01331 | 1/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7555 | TOWN OF AUBURN<br>ATTN: TREASURER AND TOWN CLERK<br>104 CENTRAL STREET<br>AUBURN, MA 01501 | 5/16/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7556 | TOWN OF AUBURNTOWN<br>ATTN: CITY ATTORNEY<br>215 WEST HIGH STREET<br>WOODBURY, TN 37019 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1057**

**Purdue Pharma L.P.**                                                         **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7557** TOWN OF AUBURNTOWN<br>ATTN: MAYOR<br>291 KNOB HILL ROAD<br>AUBURNTOWN, TN 37016 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7558** TOWN OF AYER, MASSACHUSETTS<br>ATTN: TREASURER OR TOWN CLERK<br>1 MAIN STREET<br>AYER, MA 01432 | 6/7/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7559** TOWN OF BAILEYTON<br>ATTN: MAYOR<br>TOWN HALL<br>6530 HORTON HIGHWAY<br>BAILEYTON, TN 37745 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7560** TOWN OF BAILEYTON<br>ATTN: CITY ATTORNEY<br>124 SOUTH MAIN STREET<br>GREENVILLE, TN 37743 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7561** TOWN OF BALDWIN<br>ATTN: MAYOR AND TOWN CLERK<br>TOWN HALL<br>800 MAIN STREET - P.O. BOX 800<br>BALDWIN, LA 70514 | 10/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7562** TOWN OF BARNSTABLE<br>ATTN: TREASURER OR TOWN CLERK<br>367 MAIN STREET<br>HYANNIS, MA 02601 | 7/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7563** TOWN OF BARRINGTON<br>ATTN: TOWN MANAGER<br>FIRST FLOOR TOWN HALL,<br>283 COUNTY ROAD<br>BARRINGTON, RI 02806-2406 | 3/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7564** TOWN OF BAXTER<br>ATTN: CITY ATTORNEY<br>200 MAIN STREET<br>PO BOX 335<br>BAXTER, TN 38544 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7565** TOWN OF BAXTER<br>ATTN: MAYOR<br>200 MAIN STREET<br>BAXTER, TN 38544 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7566** TOWN OF BEACON FALLS<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1058**

**Purdue Pharma L.P.**                                                                 **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7567 TOWN OF BEACON FALLS<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7568 TOWN OF BEACON FALLS<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7569 TOWN OF BEACON FALLS<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7570 TOWN OF BEACON FALLS<br>ATTN: TOWN CLERK<br>BEACON FALLS TOWN HALL<br>10 MAPLE AVENUE<br>BEACON FALLS, CT 06403 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7571 TOWN OF BEACON FALLS<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7572 TOWN OF BEACON FALLS<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7573 TOWN OF BEACON FALLS<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE, 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7574 TOWN OF BEERSHEBA SPRINGS<br>ATTN: CITY ATTORNEY<br>CITY HALL<br>P.O. BOX 546<br>BEERSHEBA SPRINGS, TN 37305 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7575 TOWN OF BEERSHEBA SPRINGS<br>ATTN: CITY ATTORNEY<br>CITY HALL<br>PO BOX 546<br>BEERSHEBA SPRINGS, TN 37305 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1059**

**Purdue Pharma L.P.**                                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7576 TOWN OF BEERSHEBA SPRINGS<br>ATTN: MAYOR<br>P.O. BOX 214<br>BEERSHEBA SPRINGS, TN 37305 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7577 TOWN OF BELCHERTOWN<br>TOWN HALL<br>2 JABISH ST., ROOM 201<br>- P.O. BOX 629<br>BELCHERTOWN, MA 01007 | 7/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7578 TOWN OF BELCHERTOWN<br>ATTN: TOWN TREASURER<br>2 JABISH STREET<br>P.O. BOX 607<br>BELCHERTOWN, MA 01007 | 7/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7579 TOWN OF BELL BUCKLE<br>ATTN: MAYOR<br>8 RAILROAD SQUARE<br>PO BOX 276<br>BELL BUCKLE, TN 37020 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7580 TOWN OF BENTON<br>ATTN: CITY ATTORNEY<br>301 KEITH STREET<br>SOUTH WEST # 207<br>CLEVELAND, TN 37311 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7581 TOWN OF BENTON<br>ATTN: MAYOR<br>6496 HIGHWAY 411 NORTH<br>PO BOX 687<br>BENTON, TN 37307-1010 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7582 TOWN OF BERLIN<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7583 TOWN OF BERWICK<br>ATTN: MAYOR AND CAO<br>3225 THIRD STREET<br>BERWICK, LA 70342 | 10/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7584 TOWN OF BETHLEHEM<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1060**

**Purdue Pharma L.P.**            **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| 3.7585 TOWN OF BILLERICA<br>365 BOSTON ROAD<br>OFFICE #101<br>BILLERICA, MA 01821 | 4/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7586 TOWN OF BILLERICA<br>ATTN: TREASURER<br>365 BOSTON ROAD<br>OFFICE #113, 114, 115<br>BILLERICA, MA 01821 | 4/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7587 TOWN OF BLAINE<br>ATTN: MAYOR & CITY ATTORNEY<br>220 INDIAN RIDGE ROAD<br>PO BOX 85<br>BLAINE, TN 37709-0085 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7588 TOWN OF BRAINTREE<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>1 JOHN F. KENNEDY MEMORIAL DRIVE<br>BRAINTREE, MA 02184 | 7/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7589 TOWN OF BREWSTER<br>ATTN: TOWN TREASURER/COLLECTOR, TOWN CLERK<br>2198 MAIN STREET<br>BREWSTER, MA 02631 | 4/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7590 TOWN OF BRIDGEWATER<br>ATTN: TOWN TREASURER/COLLECTOR, TOWN CLERK<br>MUNICIPAL OFFICE BUILDING<br>66 CENTRAL SQUARE<br>BRIDGEWATER, MA 02324 | 6/6/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7591 TOWN OF BRISTOL<br>ATTN: TOWN CLERK<br>TOWN HALL<br>10 COURT STREET<br>BRISTOL, RI 02809 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7592 TOWN OF BROOKLINE, MASSACHUSETTS<br>ATTN: TOWN TREASURER/COLLECTOR<br>333 WASHINGTON STREET<br>BROOKLINE, MA 02445 | 1/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7593 TOWN OF BROOKLINE, MASSACHUSETTS<br>ATTN: TOWN CLERK<br>333 WASHINGTON STREET<br>1ST FLOOR, ROOM 104<br>BROOKLINE, MA 02445 | 1/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1061**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7594 TOWN OF BROOKLINE, MASSACHUSETTS ATTN: TOWN COUNSEL 333 WASHINGTON STREET 6TH FLOOR BROOKLINE, MA 02445 | 1/22/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7595 TOWN OF BROWNSTOWN, INDIANA ATTN: PRESIDENT OF TOWN COUNCIL 200 WEST WALNUT STREET BROWNSTOWN, IN 47220 | 5/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7596 TOWN OF BROWNSTOWN, INDIANA ATTN: CURTIS T. HILL, JR. STATE OF INDIANA ATTORNEY GENERAL INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR - 302 WEST WASHINGTON STREET INDIANAPOLIS, IN 46204 | 5/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7597 TOWN OF BULLS GAP ATTN: CITY ATTORNEY 124 SOUTH MAIN STREET GREENVILLE, TN 37743 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7598 TOWN OF BULLS GAP ATTN: MAYOR 139 SOUTH MAIN STREET PO BOX 10 BULLS GAP, TN 37711 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7599 TOWN OF BURRILLVILLE ATTN: TOWN MANAGER 105 HARRISVILLE MAIN STREET HARRISVILLE, RI 02830 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7600 TOWN OF BUTLER, AL ATTN: STEVE MARSHALL STATE OF ALABAMA ATTORNEY GENERAL 501 WASHINGTON AVE. - P.O. BOX 300152 MONTGOMERY, AL 36130-0152 | 1/24/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7601 TOWN OF BUTLER, AL ATTN: CIRCUIT COURT CLERK 117 SOUTH MULBERRY AVENUE, SUITE 10 BUTLER, AL 36904 | 1/24/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7602 TOWN OF BUTLER, AL ATTN: MAYOR BUTLER TOWN HALL 222 SOUTH MULBERRY AVENUE BUTLER, AL 36904 | 1/24/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1062**

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7603 TOWN OF BYRDSTOWN ATTN: MAYOR 109 WEST MAIN STREET BYRDSTOWN, TN 38549 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7604 TOWN OF CALEDONIA, MISSISSIPPI ATTN: MAYOR OR TOWN CLERK 754 MAIN ST CALEDONIA, MS 39740 | 1/23/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7605 TOWN OF CALEDONIA, MISSISSIPPI P.O. BOX 100 CALEDONIA, MS 39740 | 1/23/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7606 TOWN OF CALHOUN ATTN: MAYOR 746 HIGHWAY 163 PO BOX 115 CALHOUN, TN 37309 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7607 TOWN OF CALHOUN ATTN: CITY ATTORNEY 67 NORTH OCOEE STREET CLEVELAND, TN 37311 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7608 TOWN OF CANTON ATTN: TOWN TREASURER/COLLECTOR 801 WASHINGTON STREET ROOM 109 CANTON, MA 02021 | 12/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7609 TOWN OF CANTON ATTN: TOWN CLERK MEMORIAL HALL FIRST FLOOR - 801 WASHINGTON ST. CANTON, MA 02021 | 12/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7610 TOWN OF CANTON ATTN: TREASURER/COLLECTOR 801 WASHINGTON ST. ROOM 109 CANTON, MA 02021 | 12/11/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7611 TOWN OF CARVER ATTN: TOWN CLERK 108 MAIN ST. CARVER, MA 02330 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7612 TOWN OF CARVER 108 MAIN STREET PO BOX 67 CARVER, MA 02330 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1063**

**Purdue Pharma L.P.**                                                        **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7613 TOWN OF CARVER<br>108 MAIN STREET<br>CARVER, MA 02330 | 5/17/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7614 TOWN OF CARYVILLE<br>ATTN: MAYOR, AND CITY ATTORNEY<br>4839 OLD HIGHWAY 63<br>CARYVILLE, TN 37714 | UNKNOWN<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7615 TOWN OF CENTERTOWN<br>ATTN: MAYOR<br>PO BOX 164<br>MCMINNVILLE, TN 37111-0164 | UNKNOWN<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7616 TOWN OF CENTERVILLE, TENNESSEE<br>ATTN: TOWN CLERK AND MAYOR<br>102 E SWAN STREET<br>CENTERVILLE, TN 37033 | 6/10/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7617 TOWN OF CHANDLER, INDIANA<br>ATTN: TOWN COUNCIL<br>401 EAST LINCOLN AVENUE<br>CHANDLER, IN 47610 | 3/30/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7618 TOWN OF CHANDLER, INDIANA<br>ATTN: CURTIS T. HILL, JR.<br>STATE OF INDIANA ATTORNEY GENERAL<br>INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR -<br>302 WEST WASHINGTON STREET<br>INDIANAPOLIS, IN 46204 | 3/30/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7619 TOWN OF CHAPEL HILL<br>ATTN: MAYOR OR CITY ATTORNEY<br>2202 UNIONVILLE ROAD<br>CHAPEL HILL, TN 37034 | UNKNOWN<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7620 TOWN OF CHARLESTOWN, RI<br>ATTN: CLERK<br>OFFICE OF THE TOWN CLERK<br>4540 SOUTH COUNTY TRAIL<br>CHARLESTOWN, RI 02813 | 3/26/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7621 TOWN OF CHARLTON<br>ATTN: TOWN TREASURER/COLLECTOR<br>TOWN OF CHARLTON<br>DEPARTMENT 3320 - P.O. BOX 4110<br>WOBURN, MA 01888 | 5/17/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7622 TOWN OF CHARLTON<br>ATTN: TOWN CLERK & TOWN TREASURER/COLLECTOR<br>37 MAIN STREET<br>CHARLTON, MA 01507 | 5/17/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1064**

**Purdue Pharma L.P.**                                         **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7623** TOWN OF CHELMSFORD<br>ATTN: TOWN CLERK, FINANCE DIRECTOR/TREASURER-COLLECTOR, TOWN COUNSEL<br>TOWN OFFICES<br>50 BILLERICA ROAD<br>CHELMSFORD, MA 01824 | 7/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7624** TOWN OF CLARKSBURG<br>ATTN: TOWN TREASURER; TOWN CLERK<br>TOWN HALL<br>111 RIVER ROAD<br>CLARKSBURG, MA 01247 | 6/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7625** TOWN OF CORNERSVILLE<br>ATTN: MAYOR OR ALDERMEN<br>118 SOUTH MAIN STREET<br>PO BOX 128<br>CORNERVILLE, TN 37047 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7626** TOWN OF COVENTRY<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7627** TOWN OF COVENTRY, RI<br>ATTN: TOWN MANAGER<br>1670 FLAT RIVER ROAD<br>COVENTRY, RI 02816 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7628** TOWN OF CUMBERLAND GAP<br>ATTN: CITY ATTORNEY<br>P.O. BOX 770<br>TAZEWELL, TN 37879 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7629** TOWN OF CUMBERLAND GAP<br>ATTN: MAYOR<br>330 COLWYN AVENUE<br>P.O. BOX 78<br>CUMBERLAND GAP, TN 37724 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7630** TOWN OF CUMBERLAND, RI<br>ATTN: MAYOR<br>45 BROAD STREET<br>CUMBERLAND, RI 02864 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7631** TOWN OF DANDRIDGE<br>ATTN: MAYOR & CITY ATTORNEY<br>131 EAST MAIN STREET<br>PO BOX 249<br>DANDRIDGE, TN 37725 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1065

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7632** TOWN OF DANVERS ATTN: TOWN TREASURER/COLLECTOR, TOWN CLERK, TOWN COUNSEL DANVERS TOWN HALL 1 SYLVAN STREET DANVERS, MA 01923 | 6/5/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7633** TOWN OF DANVILLE, INDIANA ATTN: PRESIDENT OF TOWN COUNCIL 49 NORTH WAYNE STREET DANVILLE, IN 46122 | 3/7/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7634** TOWN OF DANVILLE, INDIANA ATTN: CURTIS T. HILL, JR. STATE OF INDIANA ATTORNEY GENERAL INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR - 302 WEST WASHINGTON STREET INDIANAPOLIS, IN 46204 | 3/7/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7635** TOWN OF DECATUR ATTN: MAYOR 116 NORTH MAIN STREET DECATUR, TN 37322 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7636** TOWN OF DECATUR ATTN: CITY ATTORNEY PO BOX 533 ATHENS, TN 37371 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7637** TOWN OF DEDHAM, MASSACHUSETTS ATTN: TOWN TREASURER/COLLECTOR, TOWN CLERK DEDHAM TOWN HALL 26 BRYANT STREET DEDHAM, MA 02026 | 12/20/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7638** TOWN OF DEDHAM, MASSACHUSETTS ATTN: CHAIRMAN OF THE BOARD OF SELECTMEN, TOWN COUNSEL DEDHAM TOWN HALL 26 BRYANT STREET DEDHAM, MA 02026 | 12/20/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7639** TOWN OF DENNIS, MASSACHUSETTS ATTN: TOWN TREASURER/COLLECTOR, TOWN CLERK DENNIS MASSACHUSETTS 685 ROUTE 134 SOUTH DENNIS, MA 02660 | 2/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7640** TOWN OF DERRY, NEW HAMPSHIRE ATTN: TOWN COUNCIL AND TOWN CLERK 14 MANNING STREET DERRY, NH 03038 | 4/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1066**

**Purdue Pharma L.P.**                                   **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7641 TOWN OF DOUBLE SPRINGS, ALABAMA, A MUNICIPAL CORPORATION<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 5/25/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7642 TOWN OF DOUBLE SPRINGS, ALABAMA, A MUNICIPAL CORPORATION<br>ATTN: MAYOR<br>21 MAIN STREET<br>DOUBLE SPRINGS, AL 35553 | 5/25/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7643 TOWN OF DOUBLE SPRINGS, ALABAMA, A MUNICIPAL CORPORATION<br>ATTN: MAYOR OR CLERK<br>PO BOX 279<br>DOUBLE SPRINGS, AL 35553 | 5/25/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7644 TOWN OF DOUGLAS<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>THE TOWN OF DOUGLAS MUNICIPAL CENTER<br>29 DEPOT STREET<br>DOUGLAS, MA 01516 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7645 TOWN OF DOUGLAS, AL<br>ATTN: MAYOR AND TOWN CLERK<br>55 ALABAMA HIGHWAY 168<br>DOUGLAS, AL 35964 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7646 TOWN OF DOUGLAS, AL<br>ATTN: TOWN CLERK<br>P. O. BOX 45<br>DOUGLAS, AL 35964 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7647 TOWN OF DOUGLAS, AL<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7648 TOWN OF DOUGLAS, AL<br>ATTN: MAYOR AND TOWN CLERK<br>55 ALABAMA HIGHWAY 168<br>DOUGLAS, AL 35964 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7649 TOWN OF DOWELLTOWN<br>ATTN: MAYOR AND BOARD OF ALDERMEN<br>PO BOX 100<br>DOWELLTOWN, TN 37059 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1067

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　**Case Number:** 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| 3.7650 TOWN OF DOWELLTOWN ATTN: CITY ATTORNEY 124 WEST MAIN STREET SMITHVILLE, TN 37166 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7651 TOWN OF DOYLE ATTN: MAYOR 158 WOMACK STREET DOYLE, TN 38559 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7652 TOWN OF DUDLEY ATTN: TOWN TREASURER AND TOWN CLERK TOWN OF DUDLEY TOWN HALL 71 WEST MAIN STREET DUDLEY, MA 01571 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7653 TOWN OF EAST BRIDGEWATER 175 CENTRAL STREET PO BOX 387 EAST BRIDGEWATER, MA 02333-0000 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7654 TOWN OF EAST BRIDGEWATER ATTN: TOWN TREASURER AND TOWN CLERK 175 CENTRAL STREET P.O. BOX 386 EAST BRIDGEWATER, MA 02333-0000 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7655 TOWN OF EAST GREENWICH ATTN: TOWN CLERK AND TOWN MANAGER 125 MAIN STREET 2ND FLOOR EAST GREENWICH, RI 02818 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7656 TOWN OF EAST GREENWICH ATTN: TOWN CLERK AND TOWN MANAGER 125 MAIN STREET 2ND FLOOR EAST GREENWICH, RI 02818 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7657 TOWN OF EAST GREENWICH ATTN: TOWN CLERK AND TOWN MANAGER TOWN CLERK P.O. BOX 111 EAST GREENWICH, RI 02818 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7658 TOWN OF EAST HARTFORD JAMES E. HARTLEY JR. 500 CHASE PARKWAY WATERBURY, CT 06708 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1068**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7659** TOWN OF EAST HARTFORD<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7660** TOWN OF EAST HARTFORD<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7661** TOWN OF EAST HARTFORD<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7662** TOWN OF EAST HARTFORD<br>ATTN: TOWN CLERK<br>740 MAIN STREET<br>EAST HARTFORD, CT 06108 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7663** TOWN OF EAST HARTFORD<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7664** TOWN OF EAST HARTFORD<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7665** TOWN OF EAST HARTFORD<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7666** TOWN OF EASTHAM<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>2500 STATE HIGHWAY<br>EASTHAM, MA 02642 | 6/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7667** TOWN OF ENFIELD<br>ATTN: TOWN CLERK<br>820 ENFIELD STREET<br>ENFIELD, CT 06082 | 4/9/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1069**

**Purdue Pharma L.P.**                                                      **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7668 TOWN OF ENGLEWOOD ATTN: MAYOR 111 SOUTH NIOTA ROAD PO BOX 150 ENGLEWOOD, TN 37329 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7669 TOWN OF ENGLEWOOD ATTN: CITY ATTORNEY PO BOX 804 ETOWAH, TN 37331-0804 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7670 TOWN OF ERWIN ATTN: MAYOR PO BOX 59 211 NORTH MAIN STREET ERWIN, TN 37650 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7671 TOWN OF ERWIN ATTN: CITY ATTORNEY THE SEELEY LAW FIRM 109 EAST MAIN STREET - SUITE 201 JONESBOROUGH, TN 37659 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7672 TOWN OF ESTILL SPRINGS ATTN: CITY ATTORNEY 705 DINAH SHORE BOULEVARD WINCHESTER, TN 37398 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7673 TOWN OF ESTILL SPRINGS ATTN: MAYOR PO DRAWER 100 ESTILL SPRINGS, TN 37330 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7674 TOWN OF ETHRIDGE ATTN: MAYOR, CITY ATTORNEY OR CITY JUDGE PO BOX 173 ETHRIDGE, TN 38456 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7675 TOWN OF FAIRFIELD CHARLES S. HELLMAN 1177 AVENUE OF THE AMERICAS 44TH FLOOR NEW YORK, NY 10036 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7676 TOWN OF FAIRFIELD JAMES E. HARTLEY JR. 500 CHASE PARKWAY WATERBURY, CT 06708 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1070**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7677** TOWN OF FAIRFIELD<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE, 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7678** TOWN OF FAIRFIELD<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7679** TOWN OF FAIRFIELD<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7680** TOWN OF FAIRFIELD<br>ATTN: TOWN CLERK<br>OLD TOWN HALL<br>611 OLD POST ROAD<br>FAIRFIELD, CT 06824 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7681** TOWN OF FAIRFIELD<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7682** TOWN OF FAIRFIELD<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7683** TOWN OF FAIRHAVEN, MASSACHUSETTS<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>TOWN HALL<br>40 CENTER STREET<br>FAIRHAVEN, MA 02719-0000 | 1/23/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7684** TOWN OF FALMOUTH<br>59 TOWN HALL SQUARE<br>FALMOUTH, MA 02541 | 8/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7685** TOWN OF FALMOUTH<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>59 TOWN HALL SQUARE<br>MAIN FLOOR IN TOWN HALL<br>FALMOUTH, MA 02540 | 8/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1071**

**Purdue Pharma L.P.**                                      **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| 3.7686 | TOWN OF FALMOUTH<br>59 TOWN HALL SQUARE<br>MAIN FLOOR IN TOWN HALL<br>FALMOUTH, MA 02540 | 8/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7687 | TOWN OF FARRAGUT<br>ATTN: MAYOR AND CITY ATTORNEY<br>11408 MUNICPAL CENTER DRIVE<br>FARRAGUT, TN 37934 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7688 | TOWN OF FERRIDAY, LOUISIANA<br>ATTN: MAYOR<br>1116 2ND ST<br>FERRIDAY, LA 71334 | 10/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7689 | TOWN OF FORT DEPOSIT, ALABAMA<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7690 | TOWN OF FORT DEPOSIT, ALABAMA<br>ATTN: MAYOR; TOWN COUNCIL; CLERK<br>260 OLD FORT ROAD<br>FORT DEPOSIT, AL 36032 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7691 | TOWN OF FORT GAY, WEST VIRGINIA<br>ATTN: MAYOR AND CHAIRPERSON, BOARD OF COUNCILS<br>AND RECORDER<br>3407 WAYNE STREET<br>FORT GAY, WV 25514 | 3/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7692 | TOWN OF FOSTER<br>ATTN: TOWN CLERK AND TOWN COUNCIL<br>FOSTER TOWN HALL<br>181 HOWARD HILL ROAD<br>FOSTER, RI 02825-0000 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7693 | TOWN OF FREETOWN<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>TOWN HALL, 1ST FLOOR<br>3 NORTH MAIN STREET - P.O. BOX 438<br>ASSONET, MA 02702-0000 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7694 | TOWN OF FREETOWN<br>3 NORTH MAIN ST<br>P O BOX 438<br>ASSONET, MA 02702 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1072

**Purdue Pharma L.P.**  Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:  List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7695 TOWN OF GEORGETOWN<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>TOWN HALL<br>1 LIBRARY STREET<br>GEORGETOWN, MA 01833-0000 | 6/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7696 TOWN OF GERALDINE, ALABAMA<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 6/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7697 TOWN OF GERALDINE, ALABAMA<br>ATTN: MAYOR, TOWN OF GERALDINE AND TOWN CLERK<br>PO BOX 183<br>GERALDINE, AL 35974 | 6/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7698 TOWN OF GLOCESTER<br>ATTN: TOWN CLERK AND TOWN COUNCIL<br>GLOCESTER TOWN HALL<br>P.O. BOX B<br>CHEPACHET, RI 02814-0702 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7699 TOWN OF GLOCESTER<br>ATTN: TOWN CLERK AND TOWN COUNCIL<br>TOWN HALL<br>1145 PUTNAM PIKE<br>CHEPACHET, RI 02814 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7700 TOWN OF GRAFTON<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>GRAFTON MEMORIAL MUNICIPAL CENTER<br>30 PROVIDENCE ROAD<br>GRAFTON, MA 01519 | 6/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7701 TOWN OF GRANT, AL<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7702 TOWN OF GRANT, AL<br>ATTN: MAYOR, CLERK<br>4766 MAIN STREET<br>GRANT, AL 35747 | 2/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7703 TOWN OF GRAYSVILLE<br>ATTN: MAYOR<br>136 HARRISON AVE<br>GRAYSVILLE, TN 37338 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

NAS1073

**Purdue Pharma L.P.**                                                           **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7704** TOWN OF GRAYSVILLE ATTN: CITY ATTORNEY 264 THIRD AVENUE PIKEVILLE, TN 37321 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7705** TOWN OF GREENEVILLE ATTN: MAYOR 200 NORTH COLLEGE STREET GREENVILLE, TN 37745 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7706** TOWN OF GREENEVILLE ATTN: CITY ATTORNEY PO BOX 1060 GREENVILLE, TN 37744 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7707** TOWN OF HAMMONDVILLE, ALABAMA ATTN: MAYOR CITY HALL HAMMONDVILLE 37669 U.S. HIGHWAY 11 HAMMONDVILLE, AL 35989 | 3/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7708** TOWN OF HAMMONDVILLE, ALABAMA ATTN: STEVE MARSHALL STATE OF ALABAMA ATTORNEY GENERAL 501 WASHINGTON AVE. - P.O. BOX 300152 MONTGOMERY, AL 36130-0152 | 3/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7709** TOWN OF HANSON ATTN: TOWN CLERK AND TOWN TREASURER TOWN HALL 542 LIBERTY STREET - FIRST FLOOR HANSON, MA 02341 | 5/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7710** TOWN OF HARRISVILLE ATTN: MAYOR OR MEMBERS OF COUNCIL 1501 E. MAIN ST. HARRISVILLE, WV 26362 | 5/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7711** TOWN OF HARRISVILLE ATTN: MAYOR OR MEMBERS OF COUNCIL P.O. BOX 243 HARRISVILLE, WV 26362 | 5/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7712** TOWN OF HOLLISTON ATTN: TOWN CLERK AND TREASURER TOWN HALL 703 WASHINGTON STREET HOLLISTON, MA 01746 | 7/6/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1074**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7713** TOWN OF HOPEDALE<br>ATTN: TOWN CLERK<br>TOWN HALL<br>74 HOPEDALE STREET<br>HOPEDALE, MA 01747 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7714** TOWN OF HOPEDALE<br>ATTN: TREASURER<br>78 HOPEDALE STREET<br>HOPEDALE, MA 01747 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7715** TOWN OF HOPKINTON, RI<br>ATTN: TOWN CLERK AND TOWN MANAGER<br>TOWN HALL<br>18 MAIN STREET<br>HOPKINTON, RI 01748 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7716** TOWN OF HUDSON<br>ATTN: MAYOR, TOWN MANAGER, AND TOWN CLERK<br>50 SOUTH BEECH STREET<br>HUDSON, CO 80642 | 1/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7717** TOWN OF HUDSON<br>ATTN: MAYOR, TOWN MANAGER, TOWN CLERK<br>50 S. BEECH STREET<br>P.O. BOX 351<br>HUDSON, CO 80642 | 1/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7718** TOWN OF HUDSON<br>ATTN: PHIL WEISER<br>STATE OF COLORADO ATTORNEY GENERAL<br>RALPH L. CARR COLORADO JUDICIAL CENTER - 1300 BROADWAY, 10TH FLOOR<br>DENVER, CO 80203 | 1/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7719** TOWN OF HUNTLAND<br>ATTN: CITY ATTORNEY<br>300 SOUTH COLLEGE STREET<br>WINCHESTER, TN 37398 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7720** TOWN OF HUNTLAND<br>ATTN: MAYOR<br>100 BANKS STEET<br>PO DRAWER H<br>HUNTLAND, TN 37345 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7721** TOWN OF HUNTSVILLE<br>ATTN: MAYOR<br>3053 BAKER HIGHWAY<br>HUNTSVILLE, TN 37756 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1075**

**Purdue Pharma L.P.**                                                   **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|-----------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7722  TOWN OF JACKSBORO ATTN: MAYOR PO BOX 1391 JACKSBORO, TN 37766 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7723  TOWN OF JACKSBORO ATTN: MAYOR 585 MAIN STREET P.O. BOX 75 JACKSBORO, TN 37757 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7724  TOWN OF JAMESTOWN, A MUNICIPAL CORPORATION C/O PETER D. RUGGIERO 20 CENTERVILLE ROAD WARWICK, RI 02886 | 3/26/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7725  TOWN OF JAMESTOWN, A MUNICIPAL CORPORATION ATTN: TOWN CLERK AND TOWN MANAGER TOWN HALL 93 NARRAGANSETT AVENUE - 1ST FLOOR JAMESTOWN, RI 02835-0000 | 3/26/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7726  TOWN OF JASPER ATTN: CITY ATTORNEY SWAFFOR, JENKINS & RAINES 32 COURTHOUSE SQUARE JASPER, TN 37347 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7727  TOWN OF JASPER ATTN: MAYOR 4460 MAIN STREET JASPER, TN 37347 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7728  TOWN OF JOHNSTON, RI ATTN: TOWN CLERK AND TOWN COUNCIL TOWN HALL 1385 HARTFORD AVENUE JOHNSTON, RI 02919 | 3/26/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7729  TOWN OF KIMBALL ATTN: TOWN ATTORNEY 675 MAIN STREET KIMBALL, TN 37347 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7730  TOWN OF KIMBALL ATTN: MAYOR 675 MAIN STREET KIMBALL, TN 37347 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7731  TOWN OF LAKE PROVIDENCE, LOUISIANA ATTN: MAYOR 201 SPARROW STREET LAKE PROVIDENCE, LA 71254 | 8/27/2018  ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

NAS1076

**Purdue Pharma L.P.**                                               **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7732**   TOWN OF LAKEVILLE<br>ATTN: TOWN CLERK AND TREASURER<br>346 BEDFORD STREET<br>LAKEVILLE, MA 02347 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7733**   TOWN OF LEICESTER<br>ATTN: TOWN CLERK AND TOWN TREASURER<br>3 WASHBURN SQUARE<br>LEICHESTER, MA 01524 | 5/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7734**   TOWN OF LEIGHTON, ALABAMA<br>ATTN: MAYOR AND CITY CLERK<br>8900 MAIN STREET<br>LEIGHTON, AL 35646 | 3/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7735**   TOWN OF LEIGHTON, ALABAMA<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 3/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7736**   TOWN OF LEVERETT<br>ATTN: TOWN TREASURER/TAX COLLECTOR<br>PO BOX 300<br>LEVERETT, MA 01054 | 6/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7737**   TOWN OF LEVERETT<br>ATTN: TOWN CLERK AND TOWN TREASURER/TAX COLLECTOR<br>9 MONTAGUE ROAD<br>LEVERETT, MA 01054 | 6/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7738**   TOWN OF LIBERTY<br>ATTN: MAYOR AND BOARD OF ALDERMEN<br>MAIN STREET<br>PO BOX 8<br>LIBERTY, TN 37095 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7739**   TOWN OF LIVINGSTON<br>ATTN: MAYOR AND BOARD OF ALDERMEN<br>LIVINGSTON CITY HALL<br>301 MCHENRY CIRCLE<br>LIVINGSTON, TN 38570 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7740**   TOWN OF LONDONDERRY, NEW HAMPSHIRE<br>ATTN: TOWN COUNCIL, TOWN CLERK<br>268B MAMMOTH ROAD<br>LONDONDERRY, NH 03053 | 5/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7741**   TOWN OF LONGMEADOW<br>ATTN: TOWN CLERK AND TOWN TREASURER<br>20 WILLIAMS STREET<br>LONGMEADOW, MA 01106 | 8/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1077**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7742  TOWN OF LOUDON ATTN: MAYOR, AND CITY ATTORNEY 2480 HIGHWAY 72 NORTH LOUDON, TN 37774 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7743  TOWN OF LUDLOW ATTN: TREASURER OR TOWN CLERK TOWN HALL 2ND FLOOR - 488 CHAPIN STREET LUDLOW, MA 01056 | 7/9/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7744  TOWN OF LUNENBERG ATTN: TREASURER OR TOWN CLERK TOWN HALL 17 MAIN STREET - P.O. BOX 135 LUNENBERG, MA 01462 | 9/25/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7745  TOWN OF LYNNFIELD ATTN: TOWN CLERK AND TOWN TREASURER 55 SUMMER STREET LYNNFIELD, MA 01940 | 12/3/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7746  TOWN OF LYNNFIELD JUDITH SCOFNICK, ESQ. SCOTT + SCOTT ATTORNEYS AT LAW LLP THE HELMSLEY BUILDING - 230 PARK AVENUE, 17TH FLOOR NEW YORK, NY 10169 | 12/3/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7747  TOWN OF LYNNFIELD ATTN: ARTHUR PAUL KRIEGER, ESQ. ANDERSON & KRIEGER LLP 50 MILK STREET - 21ST FLOOR BOSTON, MA 02109 | 12/3/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7748  TOWN OF LYNNFIELD CHRISTINA MARSHALL, ESQ. ANDERSON & KRIEGER LLP 50 MILK STREET - 21ST FLOOR BOSTON, MA 02109 | 12/3/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7749  TOWN OF LYNNVILLE ATTN: TOWN ATTORNEY TULL LAW FIRM SPEDALE COURT - SUITE 1 SPRING HILL, TN 37174 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7750  TOWN OF LYNNVILLE ATTN: MAYOR 151 MILL STREET PO BOX 158 LYNNVILLE, TN 38472 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1078**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.7751** | TOWN OF MADISONVILLE<br>ATTN: MAYOR AND TOWN CLERK<br>403 SAINT FRANCIS STREET<br>MADISONVILLE, LA 70447 | 8/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7752** | TOWN OF MARBLEHEAD<br>MARY ALLEY MUNICIPAL BUILDING<br>7 WIDGER ROAD<br>MARBLEHEAD, MA 01945 | 6/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7753** | TOWN OF MARBLEHEAD<br>ATTN: TOWN CLERK<br>188 WASHINGTON STREET<br>MARBLEHEAD, MA 01945 | 6/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7754** | TOWN OF MARSHFIELD<br>ATTN: TREASURER OR TOWN CLERK<br>TOWN HALL<br>870 MORAINE STREET<br>MARSHFIELD, MA 02050 | 6/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7755** | TOWN OF MASHPEE<br>ATTN: TREASURER OR TOWN CLERK<br>16 GREAT NECK ROAD NORTH<br>MASHPEE, MA 02649 | 6/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7756** | TOWN OF MATTAPOISETT<br>ATTN: TREASURER OR TOWN CLERK<br>16 MAIN STREET<br>MATTAPOISETT, MA 02739 | 6/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7757** | TOWN OF MCKENZIE, AL<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 3/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7758** | TOWN OF MCKENZIE, AL<br>ATTN: MAYOR AND CITY CLERK<br>CITY OF GREENVILLE<br>119 EAST COMMERCE STREET<br>GREENVILLE, AL 36037 | 3/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7759** | TOWN OF MIDDLEBOROUGH<br>ATTN: TOWN CLERK<br>20 CENTRE STREET (TOWN HALL ANNEX - EASTERN BANK)<br>1ST FLOOR<br>MIDDLEBOROUGH, MA 02346 | 10/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1079**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **3.7760** | TOWN OF MIDDLEBOROUGH<br>ATTN: TREASURER<br>20 CENTER STREET<br>3RD FLOOR<br>MIDDLEBOROUGH, MA 02346 | 10/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7761** | TOWN OF MIDDLEBURY<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7762** | TOWN OF MIDDLETOWN, RHODE ISLAND, A MUNICIPAL CORPORATION<br>ATTN: TOWN CLERK AND TOWN COUNCIL<br>TOWN HALL<br>350 EAST MAIN ROAD<br>MIDDLETOWN, RI 02842 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7763** | TOWN OF MILFORD<br>TOWN HALL<br>52 MAIN STREET<br> - ROOM 12<br>MILFORD, MA 01757 | 6/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7764** | TOWN OF MILFORD<br>ATTN: TOWN TREASURER<br>TOWN HALL<br>52 MAIN STREET - ROOM 18<br>MILFORD, MA 01757 | 6/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7765** | TOWN OF MILFORD<br>ATTN: TOWN CLERK<br>TOWN HALL<br>52 MAIN STREET, ROOM 12<br>MILFORD, MA 01757 | 6/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7766** | TOWN OF MONROE, CONNECTICUT<br>ATTN: TOWN CLERK AND FIRST SELECTMAN<br>TOWN HALL<br>7 FAN HILL ROAD<br>MONROE, CT 06468 | 6/13/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7767** | TOWN OF MONTEAGLE<br>ATTN: MAYOR<br>PO BOX 127<br>MONTEAGLE, TN 37356 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7768** | TOWN OF MONTEAGLE<br>ATTN: CITY ATTORNEY<br>100 LAWYERS BUILDING<br>JASPER, TN 37347 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1080**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7769 TOWN OF MONTEAGLE ATTN: CITY ATTORNEY 100 LAWYERS BUILDING JASPER, TN 37347 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7770 TOWN OF MONTEAGLE ATTN: MAYOR P.O. BOX 136 MONTEAGLE, TN 37356 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7771 TOWN OF MONTEREY ATTN: CITY ATTORNEY 302 EAST COMMERCIAL AVENUE MONTEREY, TN 38574 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7772 TOWN OF MONTEREY ATTN: MAYOR 302 EAST COMMERCIAL AVENUE MONTEREY, TN 38574 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7773 TOWN OF MOORESVILLE, INDIANA ATTN: CURTIS T. HILL, JR. STATE OF INDIANA ATTORNEY GENERAL INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR - 302 WEST WASHINGTON STREET INDIANAPOLIS, IN 46204 | 12/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7774 TOWN OF MOORESVILLE, INDIANA ATTN: PRESIDENT OF TOWN COUNCIL 4 EAST HARRISON ST. MOORESVILLE, IN 46158 | 12/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7775 TOWN OF MORRISON ATTN: MAYOR 130 W MAPLE STREET MORRISON, TN 37357 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7776 TOWN OF MORRISON ATTN: CITY ATTORNEY 104 NORTH CHURCH STREET MURFREESBORO, TN 37130 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7777 TOWN OF MOSHEIM ATTN: CITY ATTORNEY 401 WEST IRISH STREET GREENEVILLE, TN 37743 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7778 TOWN OF MOSHEIM ATTN: MAYOR TOWN HALL 1000 MAIN STREET MOSHEIM, TN 37818-4010 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1081**

**Purdue Pharma L.P.**                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7779** TOWN OF MOUNT CARMEL<br>ATTN: MAYOR<br>100 MAIN STREET EAST<br>PO BOX 1421<br>MOUNT CARMEL, TN 37645 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7780** TOWN OF MOUNT CARMEL<br>ATTN: CITY ATTORNEY<br>MILLIGAN & COLEMAN, PLLP<br>PO BOX 1060 - 230 WEST DEPOT STREET<br>GREENVILLE, TN 37743 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7781** TOWN OF MOUNT PLEASANT<br>ATTN: MARGARET E. CORDNER<br>MARC J. BERN & PARTNERS LLP<br>ONE GRAND CENTRAL PLACE - 60 EAST 42ND STREET, SUITE 950<br>NEW YORK, NY 10165 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7782** TOWN OF MOUNT PLEASANT<br>ATTN: JOSEPH J. CAPPELLI<br>MARC J. BERN & PARTNERS LLP<br>ONE GRAND CENTRAL PLACE - 60 EAST 42ND STREET, SUITE 950<br>NEW YORK, NY 10165 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7783** TOWN OF MOUNT PLEASANT<br>ATTN: MARC J. BERN, JOSEPH J. CAPPELLI, MARGARET E. CORDNER, CARMEN A. DE GISI<br>MARC J. BERN & PARTNERS LLP<br>ONE GRAND CENTRAL PLACE - 60 EAST 42ND STREET, SUITE 950<br>NEW YORK, NY 10165 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7784** TOWN OF MOUNT PLEASANT<br>ATTN: SANDRA J. SENN<br>SENN LEGAL, LLC<br>P.O. BOX 12279<br>CHARLESTON, SC 29422 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7785** TOWN OF MOUNT PLEASANT<br>ATTN: TOWN SOLICITOR<br>100 ANN EDWARDS LANE<br>MOUNT PLEASANT, SC 29464 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7786** TOWN OF MOUNT PLEASANT<br>ATTN: CARMEN A. DE GISI<br>MARC J. BERN & PARTNERS LLP<br>ONE GRAND CENTRAL PLACE - 60 EAST 42ND STREET, SUITE 950<br>NEW YORK, NY 10165 | 8/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1082**

**Purdue Pharma L.P.**                                           **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.7787** TOWN OF MUNFORD, ALABAMA, A MUNICIPAL CORPORATION ATTN: STEVE MARSHALL STATE OF ALABAMA ATTORNEY GENERAL 501 WASHINGTON AVE. - P.O. BOX 300152 MONTGOMERY, AL 36130-0152 | 5/29/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7788** TOWN OF MUNFORD, ALABAMA, A MUNICIPAL CORPORATION ATTN: MAYOR 115 LIONS ROAD MUNFORD, AL 36268 | 5/29/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7789** TOWN OF NANTUCKET ATTN: TOWN CLERK 16 BROAD STREET NANTUCKET, MA 02554 | 5/18/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7790** TOWN OF NANTUCKET 16 BROAD STREET NANTUCKET, MA 02554 | 5/18/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7791** TOWN OF NANTUCKET ATTN: TREASURER 37 WASHINGTON STREET NANTUCKET, MA 02554 | 5/18/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7792** TOWN OF NARRAGANSETT ATTN: TOWN CLERK AND TOWN MANAGER TOWN HALL 25 FIFTH AVE NARRAGANSETT, RI 02882 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7793** TOWN OF NATICK ATTN: TOWN CLERK; TREASURER NATICK TOWN HALL 1ST FLOOR - 13 EAST CENTRAL STREET NATICK, MA 01760 | 3/7/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7794** TOWN OF NEW DELHI, LOUISIANA ATTN: CITY MANAGER; MAYOR; CITY CLERK 209 BROADWAY STREET DELHI, LA 71232 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7795** TOWN OF NEW MARKET ATTN: MAYOR 1024 VOLUNTEER STREET PO BOX 300 NEW MARKET, TN 37820 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1083**

**Purdue Pharma L.P.**  **Case Number:** 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7796 | TOWN OF NEW MARKET<br>ATTN: CITY ATTORNEY<br>PO BOX 798<br>DANDRIDGE, TN 37725 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7797 | TOWN OF NEW MILFORD<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7798 | TOWN OF NEW TAZEWELL<br>ATTN: CITY ATTORNEY<br>P.O. BOX 177<br>TAZWELL, TN 37879 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7799 | TOWN OF NEW TAZEWELL<br>ATTN: MAYOR<br>413 1ST AVENUE<br>P.O. BOX 609<br>NEW TAZEWELL, TN 37825 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7800 | TOWN OF NEWTOWN<br>ATTN: TOWN CLERK<br>NEWTOWN MUNICIPAL CENTER<br>3 PRIMROSE STREET<br>NEWTOWN, CT 06470 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7801 | TOWN OF NEWTOWN<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7802 | TOWN OF NEWTOWN<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7803 | TOWN OF NEWTOWN<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7804 | TOWN OF NEWTOWN<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1084**

**Purdue Pharma L.P.** | **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7805 | TOWN OF NEWTOWN<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7806 | TOWN OF NEWTOWN<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7807 | TOWN OF NEWTOWN<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7808 | TOWN OF NORMANDY<br>ATTN: MAYOR<br>PO BOX 68<br>NORMANDY, TN 37360 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7809 | TOWN OF NORTH ANDOVER<br>ATTN: OFFICE OF THE TOWN CLERK;<br>TREASURER/COLLECTOR<br>120 MAIN STREET<br>NORTH ANDOVER, MA 01845 | 9/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7810 | TOWN OF NORTH ATTLEBOROUGH<br>TOWN HALL<br>43 SOUTH WASHINGTON STREET<br>- PO BOX 871<br>NORTH ATTLEBOROUGH, MA 02761 | 5/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7811 | TOWN OF NORTH ATTLEBOROUGH<br>ATTN: TOWN TREASURER / COLLECTOR<br>PO BOX 871<br>NORTH ATTLEBOROUGH, MA 02761-0871 | 5/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7812 | TOWN OF NORTH ATTLEBOROUGH<br>ATTN: TOWN CLERK, TOWN TREASURER/COLLECTOR<br>43 SOUTH WASHINGTON STREET<br>NORTH ATTLEBOROUGH, MA 02760 | 5/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7813 | TOWN OF NORTH HAVEN<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7814 | TOWN OF NORTH HAVEN<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1085**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7815  TOWN OF NORTH HAVEN<br>ATTN: TOWN CLERK<br>18 CHURCH ST.<br>NORTH HAVEN, CT 06473 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7816  TOWN OF NORTH HAVEN<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7817  TOWN OF NORTH HAVEN<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7818  TOWN OF NORTH HAVEN<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7819  TOWN OF NORTH HAVEN<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7820  TOWN OF NORTH HAVEN<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7821  TOWN OF NORTH KINGSTOWN<br>ATTN: TOWN CLERK AND TOWN MANAGER<br>TOWN HALL<br>100 FAIRWAY DRIVE<br>NORTH KINGSTOWN, RI 02852 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7822  TOWN OF NORTH PROVIDENCE<br>ATTN: MAYOR AND TOWN CLERK<br>2000 SMITH STREET<br>NORTH PROVIDENCE, RI 02911 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7823  TOWN OF NORTH READING<br>ATTN: TREASURER/COLLECTOR, TOWN CLERK<br>235 NORTH STREET<br>NORTH READING, MA 01864 | 6/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1086**

**Purdue Pharma L.P.** **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7824 TOWN OF NORTON<br>ATTN: TREASURER AND TOWN CLERK<br>70 EAST MAIN STREET<br>NORTON TOWN HALL, FIRST FLOOR<br>NORTON, MA 02766 | 6/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7825 TOWN OF NORWELL<br>ATTN: TREASURER<br>345 MAIN STREET<br>NORWELL, MA 02061 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7826 TOWN OF NORWELL<br>NORWELL TOWN OFFICES<br>345 MAIN STREET<br>- PO BOX 295<br>NORWELL, MA 02061 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7827 TOWN OF NORWELL<br>ATTN: TOWN CLERK<br>345 MAIN STREET<br>PO BOX 295<br>NORWELL, MA 02061 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7828 TOWN OF NORWOOD, MASSACHUSETTS<br>566 WASHINGTON STREET<br>2ND FLOOR, ROOM 32<br>NORWOOD, MA 02062 | 1/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7829 TOWN OF NORWOOD, MASSACHUSETTS<br>ATTN: TREASURER / COLLECTOR<br>566 WASHINGTON STREET<br>FIRST FLOOR, ROOM 22<br>NORWOOD, MA 02062 | 1/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7830 TOWN OF OAKDALE<br>ATTN: MAYOR<br>204 QUEEN STREET<br>PO BOX 116<br>OAKDALE, TN 37829 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7831 TOWN OF OLIVER SPRINGS<br>ATTN: CITY ATTORNEY<br>PO BOX 4038<br>OAK RIDGE, TN 37831 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7832 TOWN OF OLIVER SPRINGS<br>ATTN: MAYOR<br>717 MAIN STREET<br>OLIVER SPRINGS, TN 37841 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1087**

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.7833 | TOWN OF ONEIDA<br>ATTN: MAYOR, AND CITY ATTORNEY<br>19922 ALBERTA STREET<br>P.O. BOX 4237<br>ONEIDA, TN 37841 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7834 | TOWN OF ORANGE, MASSACHUSETTS<br>ATTN: TREASURER AND TOWN CLERK<br>6 PROSPECT STREET<br>ORANGE, MA 01364 | 12/20/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7835 | TOWN OF ORME<br>ATTN: MAYOR<br>860 ORME ROAD<br>SOUTH PITTSBURG, TN 37380 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7836 | TOWN OF OXFORD<br>ATTN: TOWN CLERK<br>OXFORD TOWN HALL<br>486 OXFORD ROAD<br>OXFORD, CT 06478 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7837 | TOWN OF OXFORD<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7838 | TOWN OF OXFORD<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7839 | TOWN OF OXFORD<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7840 | TOWN OF OXFORD<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7841 | TOWN OF OXFORD<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1088**

**Purdue Pharma L.P.**                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7842 TOWN OF OXFORD<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7843 TOWN OF OXFORD<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7844 TOWN OF OXFORD, MASSACHUSETTS<br>TOWN HALL - FIRST FLOOR<br>325 MAIN STREET<br>OXFORD, MA 01540 | 6/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7845 TOWN OF OXFORD, MASSACHUSETTS<br>ATTN: TOWN CLERK<br>325 MAIN STREET<br>OXFORD, MA 01540 | 6/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7846 TOWN OF PALMER<br>ATTN: TOWN CLERK AND TREASURER<br>4417 MAIN STREET<br>PALMER, MA 01069 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7847 TOWN OF PALMER<br>ATTN: MAYOR<br>35 SCHOOL ROAD<br>P.O. BOX 219<br>PALMER, TN 37365 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7848 TOWN OF PARROTTSVILLE<br>ATTN: CITY ATTORNEY<br>321 EAST BROADWAY<br>NEWPORT, TN 37821 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7849 TOWN OF PARROTTSVILLE<br>ATTN: MAYOR<br>PO BOX 300<br>PARROTSVILLE, TN 37843 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7850 TOWN OF PEARL RIVER<br>ATTN: MAYOR<br>TOWN HALL<br>39460 WILLIS ALLEY<br>PEARL RIVER, LA 70452 | 6/12/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1089**

**Purdue Pharma L.P.**  ***Case Number:  19-23649 (RDD)***

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7851**   TOWN OF PEARL RIVER ATTN: MAYOR TOWN HALL 39460 WILLIS ALLEY PEARL RIVER, LA 70452 | 6/12/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7852**   TOWN OF PEMBROKE 100 CENTER STREET PEMBROKE, MA 02359 | 5/31/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7853**   TOWN OF PEMBROKE ATTN: TOWN CLERK TOWN HALL, ROOM 11 100 CENTER STREET PEMBROKE, MA 02359 | 5/31/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7854**   TOWN OF PENDLETON ATTN: COUNCIL PRESIDENT 100 WEST STATE STREET PO BOX 230 PENDLETON, IN 46064 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7855**   TOWN OF PENDLETON ATTN: CURTIS T. HILL, JR. STATE OF INDIANA ATTORNEY GENERAL INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR - 302 WEST WASHINGTON STREET INDIANAPOLIS, IN 46204 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7856**   TOWN OF PENDLETON ATTN: COUNCIL PRESIDENT 100 WEST STATE STREET PENDLETON, IN 46064 | 10/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7857**   TOWN OF PETERBURG ATTN: MAYOR PO BOX 215 PETERSBURG, TN 37144 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7858**   TOWN OF PETERBURG ATTN: MAYOR 101 W COMMERCE STREET LEWISBURG, TN 37091 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7859**   TOWN OF PITTMAN CENTER ATTN: CITY ATTORNEY GENTRY, TIPTON & MCLEMORE, P.C. 2540 SAND PIKE BLOUVARD - SUITE 2 PIGEON FORGE, TN 37863 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1090**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7860** TOWN OF PITTMAN CENTER<br>ATTN: MAYOR<br>2839 WEBB CREEK ROAD<br>SEVIERVILLE, TN 37876 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7861** TOWN OF PLAINFIELD, INDIANA<br>ATTN: TOWN COUNCIL PRESIDENT, TOWN COUNCIL VICE PRESIDENT, TOWN CLERK/TREASURER<br>206 WEST MAIN STREET<br>PLAINFIELD, IN 46168 | 12/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7862** TOWN OF PLAINVILLE<br>ATTN: TOWN CLERK<br>190 SOUTH STREET<br>PO BOX 1717<br>PLAINVILLE, MA 02762 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7863** TOWN OF PLAINVILLE<br>P.O. BOX 1795<br>190 SOUTH STREET<br>PLAINVILLE, MA 02762 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7864** TOWN OF PLEASANT HILL<br>ATTN: MAYOR<br>351 MAIN STREET<br>PLEASANT HILL, TN 38571 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7865** TOWN OF PLYMOUTH<br>ATTN: TREASURER/COLLECTOR OR TOWN CLERK<br>26 COURT STREET<br>PLYMOUTH, MA 02360 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7866** TOWN OF PORTSMOUTH, RHODE ISLAND, A MUNICIPAL CORPORATION<br>ATTN: TOWN CLERK AND TOWN SOLICITOR AND CHAIRPERSON BOARDS AND COMMISSIONS<br>2200 EAST MAIN ROAD<br>PORTSMOUTH, RI 02871 | 6/6/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7867** TOWN OF POWELLS CROSSROADS<br>ATTN: CITY ATTORNEY<br>WOODEN LAW FIRM,P.C.<br>730 CHERRY STREET - SUITE B<br>CHATTANOOGA, TN 37402-4806 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7868** TOWN OF POWELLS CROSSROADS<br>ATTN: MAYOR<br>105 HIGHWAY 27<br>POWELLS CROSSROADS, TN 37397 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1091**

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7869** TOWN OF PROSPECT<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7870** TOWN OF PROVINCETOWN, MASSACHUSETTS<br>ATTN: TREASURER OR TOWN CLERK<br>260 COMMERCIAL STREET<br>PROVINCETOWN, MA 02657 | 2/15/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7871** TOWN OF QUINWOOD, WEST VIRGINIA<br>ATTN: OFFICE OF THE MAYOR<br>219 SCHOOL STREET<br>QUINWOOD, WV 25981 | 3/16/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7872** TOWN OF RANDOLPH<br>ATTN: CLERK/REGISTRAR & TREASURER/COLLECTOR<br>41 SOUTH MAIN STREET<br>RANDOLPH, MA 02368 | 3/27/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7873** TOWN OF REHOBOTH, MASSACHUSETTS<br>ATTN: TAX COLLECTOR/TREASURER OR TOWN CLERK<br>148 PECK STREET<br>REHOBOTH, MA 02769 | 1/23/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7874** TOWN OF RICHMOND<br>ATTN: TOWN CLERK; FINANCE DIRECTOR; CHAIRPERSON<br>5 RICHMOND TOWNHOUSE ROAD<br>WYOMING, RI 02898 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7875** TOWN OF RICHWOOD, LOUISIANA<br>ATTN: MAYOR<br>2710 MARTIN LUTHER KING DR.<br>RICHWOOD, LA 71202 | 7/2/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7876** TOWN OF ROCKLAND<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>TOWN HALL<br>242 UNION STREET<br>ROCKLAND, MA 02370 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7877** TOWN OF ROGERSVILLE<br>ATTN: MAYOR, VICE MAYOR OR ALDERMAN<br>106 EAST KYLE STREET<br>- P.O. BOX 788<br>ROGERSVILLE, TN 37857 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7878** TOWN OF ROGERSVILLE<br>ATTN: CITY ATTORNEY<br>FIRST CITIZENS BANK BLDG.<br>- 210 EAST MAIN STREET<br>ROGERSVILLE, TN 37857 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1092**

**Purdue Pharma L.P.**                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.7879 TOWN OF ROXBURY<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7880 TOWN OF RUTLEDGE<br>ATTN: MAYOR<br>8655 RUTLEDGE PIKE<br>RUTLEDGE, TN 37861 | UNKNOWN<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7881 TOWN OF RUTLEDGE<br>ATTN: CITY ATTORNEY<br>8655 RUTLEDGE PIKE<br>RUTLEDGE, TN 37861 | UNKNOWN<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7882 TOWN OF SALISBURY<br>ATTN: TREASURER OR TOWN CLERK<br>5 BEACH ROAD<br>SALISBURY, MA 01952 | 4/3/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7883 TOWN OF SANDWICH<br>ATTN: TOWN TREASURER<br>130 MAIN STREET<br>SANDWICH, MA 02563 | 5/31/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7884 TOWN OF SANDWICH<br>145 MAIN STREET<br>SANDWICH, MA 02563 | 5/31/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7885 TOWN OF SCITUATE, MASSACHUSETTS<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>600 CHIEF JUSTICE CUSHING HIGHWAY<br>SCITUATE, MA 02066 | 1/23/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7886 TOWN OF SCITUATE, RHODE ISLAND, A MUNICIPAL CORPORATION<br>ATTN: SCITUATE TOWN CLERK AND SCITUATE TOWN TREASURER<br>195 DANIELSON PIKE<br>SCITUATE, RI 02857 | 4/2/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7887 TOWN OF SEEKONK<br>ATTN: TOWN TREASURER OR TOWN CLERK<br>SEEKONK TOWN HALL<br>100 PECK STREET<br>SEEKONK, MA 02771 | 6/28/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7888 TOWN OF SEYMOUR<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1093**

**Purdue Pharma L.P.**                                                      **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.7889 | TOWN OF SHEFFIELD<br>ATTN: TREASURER OR TOWN CLERK<br>TOWN HALL<br>21 DEPOT SQUARE<br>SHEFFIELD, MA 01257 | 6/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7890 | TOWN OF SHERIDAN<br>ATTN: CURTIS T. HILL, JR.<br>STATE OF INDIANA ATTORNEY GENERAL<br>INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR -<br>302 WEST WASHINGTON STREET<br>INDIANAPOLIS, IN 46204 | 12/16/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7891 | TOWN OF SHERIDAN<br>ATTN: PRESIDENT OF THE SHERIDAN TOWN COUNCIL<br>506 SOUTH MAIN STREET<br>SHERIDAN, IN 46069 | 12/16/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7892 | TOWN OF SHIRLEY<br>ATTN: TOWN TREASURER<br>SHIRLEY TOWN OFFICE<br>FIRST FLOOR IN COLLECTOR'S OFFICE - 7 KEADY WAY<br>SHIRLEY, MA 01464 | 6/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7893 | TOWN OF SHIRLEY<br>TOWN OFFICES<br>1ST FLOOR<br> - 7 KEADY WAY<br>SHIRLEY, MA 01464 | 6/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7894 | TOWN OF SMITHFIELD<br>ATTN: TOWN MANAGER AND TOWN CLERK<br>SMITHFIELD TOWN HALL<br>64 FARNUM PIKE<br>SMITHFIELD, RI 02917 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7895 | TOWN OF SMYRNA<br>ATTN: MAYOR<br>SMYRNA TOWN HALL<br>315 SOUTH LOWRY STREET<br>SMYRNA, TN 37167 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7896 | TOWN OF SNEEDVILLE<br>ATTN: CITY ATTORNEY<br>SNEEDVILLE CITY HALL<br>292 JAIL STREET<br>SNEEDVILLE, TN 37869 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7897 | TOWN OF SNEEDVILLE<br>ATTN: MAYOR<br>SNEEDVILLE CITY HALL<br>292 JAIL STREET<br>SNEEDVILLE, TN 37869 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.7898** TOWN OF SOMERSET ATTN: TREASURER ROOM 6 FIRST FLOOR 140 WOOD STREET SOMERSET, MA 02726 | 6/5/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7899** TOWN OF SOMERSET ATTN: TOWN CLERK 140 WOOD STREET SOMERSET, MA 02726 | 6/5/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7900** TOWN OF SOUTH HADLEY ATTN: TREASURER 116 MAIN STREET ROOM 107 SOUTH HADLEY, MA 01075 | 7/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7901** TOWN OF SOUTH HADLEY ATTN: TOWN CLERK 116 MAIN STREET ROOM 108 SOUTH HADLEY, MA 01075 | 7/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7902** TOWN OF SOUTH KINGSTOWN MUNICIPAL CORPORATION ATTN: TOWN CLERK AND TOWN MANAGER 180 HIGH STREET WAKEFIELD, RI 02879 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7903** TOWN OF SOUTHBRIDGE ATTN: TREASURER OR TOWN CLERK 41 ELM STREET SOUTHBRIDGE, MA 01550 | 5/14/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7904** TOWN OF SOUTHBURY JAMES E. HARTLEY JR. 500 CHASE PARKWAY WATERBURY, CT 06708 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7905** TOWN OF SOUTHBURY ATTN: TOWN CLERK 501 MAIN STREET SOUTH ROOM 202 SOUTHBURY, CT 06488 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7906** TOWN OF SOUTHBURY ATTN: ANDREA BIERSTEIN SIMMONS HANLY CONROY LLC 112 MADISON AVENUE NEW YORK, NY 10016 | 1/9/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1095**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7907** TOWN OF SOUTHBURY<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7908** TOWN OF SOUTHBURY<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7909** TOWN OF SOUTHBURY<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7910** TOWN OF SOUTHBURY<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7911** TOWN OF SOUTHBURY<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE, 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7912** TOWN OF SOUTHINGTON<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7913** TOWN OF SOUTHINGTON<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7914** TOWN OF SOUTHINGTON<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7915** TOWN OF SOUTHINGTON<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1096**

**Purdue Pharma L.P.**                                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.7916 TOWN OF SOUTHINGTON<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7917 TOWN OF SOUTHINGTON<br>ATTN: TOWN CLERK<br>75 MAIN STREET<br>SOUTHINGTON, CT 06489 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7918 TOWN OF SOUTHINGTON<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7919 TOWN OF SOUTHINGTON<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7920 TOWN OF SPENCER<br>ATTN: TREASURER OR TOWN CLERK<br>157 MAIN STREET<br>SPENCER, MA 01562 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7921 TOWN OF SPENCER<br>ATTN: MAYOR<br>PO BOX 187<br>12180 STATE HIGHWAY 111<br>SPENCER, TN 38585 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7922 TOWN OF SPENCER<br>ATTN: CITY ATTORNEY<br>PO BOX 1025<br>47 CITTY HALL STREET<br>PIKEVILLE, TN 37367 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7923 TOWN OF SPRING CITY<br>ATTN: CITY ATTORNEY<br>264 THIRD AVENUE<br>DAYTON, TN 37321 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.7924 TOWN OF SPRING CITY<br>ATTN: MAYOR<br>229 FRONT STREET<br>PO BOX 369<br>SPRING CITY, TN 37381 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1097**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** **List All Creditors with NONPRIORITY Unsecured Claims**

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.7925** TOWN OF SPRINGFIELD ATTN: CITY CLERK CITY HALL ROOM 123 - 36 COURT STREET SPRINGFIELD, MA 01103 | 12/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7926** TOWN OF SPRINGFIELD ATTN: TREASURER CITY HALL ROOM 112 36 COURT STREET SPRINGFIELD, MA 01103 | 12/18/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7927** TOWN OF STONEHAM ATTN: TREASURER, TOWN CLERK 35 CENTRAL STREET 1ST FLOOR STONEHAM, MA 02180 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7928** TOWN OF STOUGHTON, MASSACHUSETTS ATTN: TREASURER STOUGHTON TOWN HALL 10 PEARL STREET STOUGHTON, MA 02072 | 12/20/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7929** TOWN OF STOUGHTON, MASSACHUSETTS ATTN: TOWN CLERK 10 PEARL STREET, 1ST FLOOR STOUGHTON, MA 02072 | 12/20/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7930** TOWN OF STRATFORD JAMES E. HARTLEY JR. 500 CHASE PARKWAY WATERBURY, CT 06708 | 8/13/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7931** TOWN OF STURBRIDGE ATTN: TREASURER, TOWN CLERK 308 MAIN STREET STURBRIDGE, MA 01566 | 7/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7932** TOWN OF SUDBURY ATTN: TOWN CLERK 322 CONCORD ROAD SUDBURY, MA 01776 | 6/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7933** TOWN OF SUDBURY ATTN: TREASURER FLYNN BUILDING 278 OLD SUDBURY ROAD SUDBURY, MA 01776-0000 | 6/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1098**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7934**  TOWN OF SUMMIT, MISSISSIPPI ATTN: MAYOR 706 WEST RAILROAD AVENUE SUMMIT, MS 39666 | 6/10/2019  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7935**  TOWN OF SURGOINSVILLE ATTN: CITY ATTORNEY 130 WEST MAIN STREET PO BOX 1804 MOUNT CARMEL, TN 37645 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7936**  TOWN OF SURGOINSVILLE ATTN: MAYOR 1735 MAIN STREET PO BOX 67 SURGOINSVILLE, TN 37873-0067 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7937**  TOWN OF SUTTON ATTN: TOWN CLERK; TREASURER 4 UXBRIDGE ROAD SUTTON, MA 01590 | 5/31/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7938**  TOWN OF SWAMPSCOTT ATTN: CLERK, TREASURER 22 MONUMENT AVE SWAMPSCOTT, MA 01907 | 7/6/2018  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7939**  TOWN OF TAZEWELL ATTN: MAYOR 1830 MAIN STREET P.O. BOX 206 TAZEWELL, TN 37879 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7940**  TOWN OF TAZEWELL ATTN: CITY ATTORNEY STANIFER & STANIFER P.O. BOX 203 TAZEWELL, TN 37879 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7941**  TOWN OF TELLICO PLAINS ATTN: CITY ATTORNEY PO BOX 444 401 SWEATWATER-VONORE ROAD SWEETWATER, TN 37874 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7942**  TOWN OF TELLICO PLAINS ATTN: MAYOR 405 VETERANS MEMORIAL DRIVE TELLICO PLAINS, TN 37385 | UNKNOWN  ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1099**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　Case Number:　19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7943** TOWN OF TEMPLETON<br>ATTN: TOWN CLERK<br>PO BOX 620<br>EAST TEMPLETON, MA 01438 | 6/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7944** TOWN OF TEMPLETON<br>ATTN: TOWN CLERK, TREASURER<br>PO BOX 620<br>EAST TEMPLETON, MA 01438 | 6/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7945** TOWN OF TEMPLETON<br>ATTN: OFFICE OF THE TREASURER & TOWN CLERK<br>TOWN HALL<br>160 PATRIOTS ROAD - PO BOX 620<br>EAST TEMPLETON, MA 01438 | 6/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7946** TOWN OF TEMPLETON<br>ATTN: CLERK, TREASURER<br>160 PATRIOTS ROAD<br>EAST TEMPLETON, MA 01438 | 6/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7947** TOWN OF TEWKSBURY, MASSACHUSETTS<br>ATTN: CLERK<br>TOWN HALL<br>1009 MAIN STREET, 1ST FLOOR<br>TEWKSBURY, MA 01876 | 1/23/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7948** TOWN OF TEWKSBURY, MASSACHUSETTS<br>ATTN: TREASURER<br>11 TOWN HALL AVENUE<br>TEWKSBURY, MA 01876 | 1/23/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7949** TOWN OF THOMASTON<br>ATTN: TOWN CLERK<br>158 MAIN STREET, LEVEL 3<br>THOMASTON, CT 06787 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7950** TOWN OF THOMASTON<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7951** TOWN OF THOMASTON<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1100**

**Purdue Pharma L.P.**                                              **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7952** TOWN OF THOMASTON<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7953** TOWN OF THOMASTON<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7954** TOWN OF THOMASTON<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7955** TOWN OF THOMASTON<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7956** TOWN OF THOMASTON<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7957** TOWN OF TOLLAND<br>ATTN: TOWN CLERK<br>HICKS MEMORIAL MUNICIPAL CENTER<br>21 TOLLAND GREEN, 5TH LEVEL<br>TOLLAND, CT 06084 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7958** TOWN OF TOLLAND<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7959** TOWN OF TOLLAND<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7960** TOWN OF TOLLAND<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE - 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1101**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7961** TOWN OF TOLLAND<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7962** TOWN OF TOLLAND<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7963** TOWN OF TOLLAND<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7964** TOWN OF TOLLAND<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7965** TOWN OF TRACY CITY<br>ATTN: CITY ATTORNEY<br>300 SOUTH COLLEGE STREET<br>WINCHESTER, TN 37398 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7966** TOWN OF TRACY CITY<br>ATTN: CITY ATTORNEY<br>300 SOUTH COLLEGE STREET<br>WINCHESTER, TN 37398 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7967** TOWN OF TRACY CITY<br>ATTN: MAYOR<br>TOWN HALL<br>50 MAIN STREET - P.O. BOX 277<br>TRACY CITY, TN 37387 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7968** TOWN OF TRURO<br>ATTN: CLERK, TREASURER<br>24 TOWN HALL ROAD<br>TRURO, MA 02666 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7969** TOWN OF TRURO<br>ATTN: CLERK, TREASURER<br>PO BOX 2012<br>TRURO, MA 02666-0000 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7970** TOWN OF TYNGSBOROUGH<br>ATTN: CLERK, TREASURER<br>25 BRYANT LANE<br>TYNGSBOROUGH, MA 01879 | 6/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1102**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7971** TOWN OF UNICOI ATTN: CITY ATTORNEY PO BOX 129 ERWIN, TN 37650 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7972** TOWN OF UNICOI ATTN: MAYOR TOWN HALL, 3600 UNICOI DRIVE PO BOX 39 UNICOI, TN 37692 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7973** TOWN OF UPLAND, INDIANA ATTN: TOWN COUNCIL PRESIDENT, TOWN COUNCIL VICE PRESIDENT, TOWN ATTORNEY 87 NORTH MAIN STREET PO BOX 428 UPLAND, IN 46989 | 11/30/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7974** TOWN OF UPTON ATTN: CLERK TOWN HALL ROOM 101 1 MAIN STREET BOX 11 UPTON, MA 01568 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7975** TOWN OF UPTON TOWN HALL ROOM G01 1 MAIN STREET BOX 2 UPTON, MA 01568 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7976** TOWN OF UPTON ATTN: TREASURER TOWN HALL ROOM G01 1 MAIN STREET BOX 2 UPTON, MA 01568-0000 | 9/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7977** TOWN OF VIOLA ATTN: MAYOR HIGHWAY 108 PO BOX 66 VIOLA TN 37394 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7978** TOWN OF VONORE ATTN: MAYOR & CITY ATTORNEY 613 CHURCH STREEET PO BOX 218 VONORE, TN 37885 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7979** TOWN OF WAKEFIELD ATTN: TREASURER 5 COMMON STREET WAKEFIELD, MA 01880 | 12/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1103**

**Purdue Pharma L.P.**                                        **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7980** TOWN OF WAKEFIELD<br>ATTN: CLERK<br>1 LAFAYETTE ST.<br>WAKEFIELD, MA 01880 | 12/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7981** TOWN OF WALLINGFORD<br>ATTN: CHAIRMAN OF THE TOWN COUNCIL<br>45 SOUTH MAIN STREET<br>ROOM 220<br>WALLINGFORD, CT 06492 | 4/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7982** TOWN OF WALLINGFORD<br>ATTN: TOWN CLERK<br>45 SOUTH MAIN STREET<br>ROOM 108<br>WALLINGFORD, CT 06492 | 4/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7983** TOWN OF WALLINGFORD<br>ATTN: MAYOR<br>45 SOUTH MAIN STREET<br>ROOM 310<br>WALLINGFORD, CT 06492 | 4/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7984** TOWN OF WALLINGFORD<br>ATTN: TOWN CLERK<br>45 SOUTH MAIN STREET<br>ROOM 108<br>WALLINGFORD, CT 06492 | 4/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7985** TOWN OF WALLINGFORD<br>156 SOUTH MAIN STREET<br>SCOTT + SCOTT ATTORNEYS AT LAW<br>PO BOX 192<br>COLCHESTER, CT 06415 | 4/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7986** TOWN OF WARE<br>126 MAIN STREET<br>SUITE C<br>WARE, MA 01082-1370 | 7/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7987** TOWN OF WARE<br>ATTN: TOWN CLERK<br>126 MAIN STREET<br>SUITE F<br>WARE, MA 01082 | 7/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7988** TOWN OF WARREN<br>ATTN: TOWN TREASURER AND TOWN CLERK<br>48 HIGH STREET<br>WARREN, MA 01083 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1104**

**Purdue Pharma L.P.**                                              **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|-------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7989** TOWN OF WARREN<br>ATTN: TOWN CLERK<br>?48 HIGH STREET<br>P.O. BOX 603<br>WARREN, MA 01083-0000 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7990** TOWN OF WARREN, RHODE ISLAND, A MUNICIPAL CORPORATION<br>ATTN: TOWN MANAGER AND TOWN CLEKRK<br>514 MAIN STREET<br>WARREN, RI 02885 | 4/2/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7991** TOWN OF WARTRACE<br>ATTN: MAYOR<br>29 MAIN STREET EAST<br>PO BOX 158<br>WARTRACE, TN 37183 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7992** TOWN OF WATERTOWN<br>ATTN: TREASURER AND CLERK<br>149 MAIN STREET<br>WATERTOWN, MA 02472 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7993** TOWN OF WELLFLEET, MASSACHUSETTS<br>ATTN: TOWN CLERK AND TOWN TREASURER<br>TOWN HALL<br>300 MAIN STREET<br>WELLFLEET, MA 02667 | 5/30/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7994** TOWN OF WEST BOYLSTON<br>ATTN: TOWN CLERK AND TREASURER/COLLECTOR<br>140 WORCESTER STREET<br>WEST BOYLSTON, MA 01583 | 6/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7995** TOWN OF WEST BRIDGEWATER<br>P.O. BOX 369<br>WEST BRIDGEWATER, MA 02379 | 8/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7996** TOWN OF WEST BRIDGEWATER<br>ATTN: TOWN CLERK AND TOWN TREASURER<br>65 NORTH MAIN STREET<br>WEST BRIDGEWATER, MA 02379-0000 | 8/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7997** TOWN OF WEST GREENWICH<br>ATTN: TOWN CLERK AND TOWN ADMINISTARTOR AND TOWN TREASURER<br>TOWN HALL<br>280 VICTORY HIGHWAY<br>WEST GREENWICH, RI 02817 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1105**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.7998** TOWN OF WEST SPRINGFIELD<br>ATTN: TOWN CLERK AND TREASURER<br>26 CENTRAL STREET<br>SPRINGFIELD, MA 01089-0000 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.7999** TOWN OF WEST WARWICK, RI<br>ATTN: TOWN MANAGER AND TOWN CLERK<br>WEST WARWICK TOWN HALL<br>1170 MAIN STREET<br>WEST WARWICK, RI 02893 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8000** TOWN OF WESTBOROUGH<br>ATTN: TOWN CLERK AND TREASURER / COLLECTOR<br>34 WEST MAIN STREET<br>WESTBOROUGH, MA 01581 | 6/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8001** TOWN OF WESTERLY<br>ATTN: TOWN MANAGER, TOWN CLERK, TOWN SOLICITOR<br>45 BROAD STREET<br>WESTERLY, RI 02891 | 3/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8002** TOWN OF WESTFORD<br>ATTN: TOWN CLERK<br>55 MAIN STREET<br>WESTFORD, MA 01886 | 6/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8003** TOWN OF WETHERSFIELD<br>ATTN: TOWN CLERK<br>505 SILAS DEANE HIGHWAY<br>WETHERSFIELD, CT 06109 | 5/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8004** TOWN OF WEYMOUTH<br>ATTN: TOWN CLERK AND TREASURER<br>TOWN HALL<br>75 MIDDLE STREET<br>WEYMOUTH, MA 02189 | 7/1/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8005** TOWN OF WHITE PINE<br>ATTN: MAYOR<br>1548 MAIN STREET<br>PO BOX 66<br>WHITE PINE, TN 37890-0066 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8006** TOWN OF WHITE PINE<br>ATTN: CITY ATTORNEY<br>PO BOX 1760<br>DANDRIDGE, TN 37725 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8007** TOWN OF WILMINGTON<br>ATTN: TOWN CLERK<br>TOWN HALL<br>121 GLEN ROAD - ROOM 12<br>WILMINGTON, MA 01887 | 9/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1106**

**Purdue Pharma L.P.**                                                     Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8008** TOWN OF WILMINGTON<br>121 GLEN ROAD<br>ROOM 1<br>WILMINGTON, MA 01887-0000 | 9/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8009** TOWN OF WINCHENDON, MASSACHUSETTS<br>ATTN: TOWN CLERK<br>109 FRONT STREET<br>DEPARTMENT 3<br>WINCHENDON, MA 01475 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8010** TOWN OF WINCHENDON, MASSACHUSETTS<br>ATTN: COLLECTOR/TREASURER<br>109 FRONT STREET<br>DEPARTMENT 2<br>WINCHENDON, MA 01475 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8011** TOWN OF WINFIELD<br>ATTN: MAYOR AND CITY ATTORNEY<br>24961 SCOTT HIGHWAY<br>WINFIELD, TN 37892 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8012** TOWN OF WINTHROP<br>ATTN: TOWN CLERK<br>WINTHROP TOWN HALL<br>1 METCLAF SQUARE - ROOM 5<br>WINTHROP, MA 02152 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8013** TOWN OF WINTHROP<br>ATTN: TREASURER<br>TOWN HALL<br>1 METCALF SQUARE<br>WINTHROP, MA 02152 | 5/31/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8014** TOWN OF WOLCOTT<br>JAMES A. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 8/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8015** TOWN OF WOODBURY<br>SARAH S. BURNS<br>SIMMONS HANLY CONROY LLC<br>ONE COURT STREET<br>ALTON, IL 62002 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8016** TOWN OF WOODBURY<br>ATTN: TOWN CLERK<br>281 MAIN ST. S.<br>WOODBURY, CT 06798 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1107**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8017   TOWN OF WOODBURY<br>P.O. BOX 9<br>SLAVIN STAUFFACHER & SCOTT LLC<br>WATERTOWN, CT 06795 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8018   TOWN OF WOODBURY<br>PAUL J. HANLY JR.<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE, 7TH FLOOR<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8019   TOWN OF WOODBURY<br>JAMES E. HARTLEY JR.<br>500 CHASE PARKWAY<br>WATERBURY, CT 06708 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8020   TOWN OF WOODBURY<br>400 ORANGE STREET<br>CLENDENEN & SHEA LLC<br>NEW HAVEN, CT 06511 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8021   TOWN OF WOODBURY<br>CHARLES S. HELLMAN<br>1177 AVENUE OF THE AMERICAS<br>44TH FLOOR<br>NEW YORK, NY 10036 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8022   TOWN OF WOODBURY<br>ATTN: ANDREA BIERSTEIN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8023   TOWN OF WOODBURY<br>THOMAS SHERIDAN<br>SIMMONS HANLY CONROY LLC<br>112 MADISON AVENUE<br>NEW YORK, NY 10016 | 1/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8024   TOWN OF WOODBURY<br>ATTN: MAYOR<br>101 WEST WATER STREET<br>WOODBURY, TN 37190 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8025   TOWN OF WOODVILLE, ALABAMA<br>ATTN: MAYOR AND CITY CLERK<br>WOODVILLE CITY HALL. PO BOX 94<br>29923 AL HIGHWAY 35<br>WOODVILLE, AL 35776 | 6/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1108**

**Purdue Pharma L.P.**                                                           **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8026** TOWN OF WOODVILLE, ALABAMA<br>ATTN: STEVE MARSHALL<br>STATE OF ALABAMA ATTORNEY GENERAL<br>501 WASHINGTON AVE. - P.O. BOX 300152<br>MONTGOMERY, AL 36130-0152 | 6/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8027** TOWN OF WOONSOCKET, RHODE ISLAND, A MUNICIPAL CORPORATION<br>ATTN: MAYOR, CITY CLERK, CITY SOLICITOR<br>CITY OF WOONSOCKET<br>169 MAIN STREET<br>WOONSOCKET, RI 02895 | 4/22/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8028** TOWN OF YELLOW BLUFF, ALABAMA<br>ATTN: CIRCUIT CLERK<br>12 WATER STREET<br>CAMDEN, AL 36726 | 3/15/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8029** TOWN OF ZIONSVILLE, INDIANA<br>ATTN: MAYOR, DEPUTY MAYOR, TOWN COUNCIL PRESIDENT, TOWN COUNCIL VICE PRESIDENT, TOWN ATTORNEY<br>1100 WEST OAK STREET<br>ZIONSVILLE, IN 46077 | 6/22/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8030** TOWNER COUNTY<br>ATTN: CHAIRMAN AND BOARD OF COMMISSIONERS<br>TOWNER COUNTY COURTHOUSE<br>COMMISSIONERS ROOM - 315 2ND STREET<br>CANDO, ND 58324 | 6/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8031** TOWNS COUNTY, GEORGIA<br>CLERK OF SUPERIOR COURT<br>48 RIVER STREET<br> - SUITE E<br>HIAWASSEE, GA 30546 | 3/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8032** TOWNS COUNTY, GEORGIA<br>ATTN: COUNTY COMMISSIONER<br>48 RIVER STREET<br>SUITE B<br>HIAWASSEE, GA 30546 | 3/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8033** TOWNSHIP OF BLOOMFIELD<br>ATTN: MAYOR<br>1 MUNICIPAL PLAZA<br>ROOM 209<br>BLOOMFIELD, NJ 07003 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8034** TOWNSHIP OF BLOOMFIELD<br>ATTN: TOWNSHIP ATTORNEY<br>1 MUNICIPAL PLAZA<br>BLOOMFIELD, NJ 07003 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1109**

**Purdue Pharma L.P.**                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8035** TOWNSHIP OF BLOOMFIELD<br>ATTN: MUNICIPAL CLERK<br>1 MUNICIPAL PLAZA<br>2ND FLOOR - ROOM 214<br>BLOOMFIELD, NJ 07003 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8036** TOWNSHIP OF BRICK<br>ATTN: PETER W. SMITH, ESQ.<br>3120 FIRE ROAD, SUITE 100<br>EGG HARBOR TOWNSHIP, NJ 08234 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8037** TOWNSHIP OF BRICK<br>ATTN: LINDA SINGER<br>MOTLEY RICE LLC<br>401 9TH STREET NORTHWEST - SUITE 1001<br>WASHINGTON, DC 20004 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8038** TOWNSHIP OF BRICK<br>ATTN: TOWNSHIP CLERK<br>401 CHAMBERS BRIDGE RD<br>BRICK, NJ 08723 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8039** TOWNSHIP OF BRICK<br>ATTN: ANDREW D'ARCY, ESQ.<br>3120 FIRE ROAD, SUITE 100<br>EGG HARBOR TOWNSHIP, NJ 08234 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8040** TOWNSHIP OF BRICK<br>ATTN: DAVID I. ACKERMAN<br>MOTLEY RICE LLC<br>401 9TH STREET NORTHWEST - SUITE 1001<br>WASHINGTON, DC 20004 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8041** TOWNSHIP OF IRVINGTON<br>ATTN: MAYOR<br>MUNICIPAL BUILDING<br>1 CIVIC SQUARE<br>IRVINGTON, NJ 07111 | 11/28/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8042** TOWNSHIP OF IRVINGTON<br>ATTN: MUNICIPAL CLERK<br>MUNICIPAL BUILDING<br>1 CIVIC SQUARE - ROOM 116<br>IRVINGTON, NJ 07111 | 11/28/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8043** TOWNSHIP OF IRVINGTON<br>ATTN: TOWNSHIP ATTORNEY<br>MUNICIPAL BUILDING<br>1 CIVIC SQUARE - ROOM 206<br>IRVINGTON, NJ 07111 | 11/28/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1110**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8044 | TOWNSHIP OF SADDLE BROOK, NEW JERSEY<br>ATTN: MAYOR AND TOWNSHIP CLERK<br>93 MARKET STREET<br>SADDLE BROOK, NJ 07663 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8045 | TOWNSHIP OF TEANECK, NJ<br>ATTN: MAYOR, CLERK, TOWNSHIP ATTORNEY<br>MUNICIPAL BUILDING<br>818 TEANECK ROAD<br>TEANECK, NJ 07666 | 3/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8046 | TREATMENT WORKS INC. D/B/A ABSOLUTE HOUSE<br>ATTN: DIRECTOR<br>7835 HARVARD AVENUE<br>CLEVELAND, OH 44105 | 11/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8047 | TREATMENT WORKS INC. D/B/A ABSOLUTE HOUSE<br>ATTN: DIRECTOR OF OPERATIONS, AND TREATMENT<br>WORKS INC. D/B/A ABSOLUTE HOUSE<br>7835 HARVARD AVENUE<br>CLEVELAND, OH 44105 | 11/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8048 | TREATMENT WORKS INC. D/B/A ABSOLUTE HOUSE<br>ATTN: SECRETARY OF STATE<br>SECRETARY OF STATE'S OFFICE<br>180 EAST BROAD STREET - 16TH FLOOR<br>COLUMBUS, OH 43215 | 11/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8049 | TREATMENT WORKS INC. D/B/A ABSOLUTE HOUSE<br>ATTN: REGISTRANT AGENT<br>SSSB SERVICE COMANY, INC<br>1375 E NINTH ST - STE 900<br>CLEVELAND, OH 44114 | 11/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8050 | TREMPEALEAU COUNTY<br>ATTN: BOARD OF SUPERVISORS CHAIR AND COUNTY<br>COURT OF TREMPEALEAU COUNTY<br>36245 MAIN STREET<br>P.O. 67<br>WHITEHALL, WI 54773 | 11/7/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8051 | TRIAD OF ALABAMA, LLC<br>ATTN: REGISTERED AGENT<br>641 SOUTH LAWRENCE STREET<br>MONTGOMERY, AL 36104 | 9/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8052 | TRIAD OF ALABAMA, LLC<br>ATTN: CEO, PARTNER, OR MANAGER<br>P.O. BOX 1459<br>LA JOLLA, CA 92038-1459 | 9/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1111**

**Purdue Pharma L.P.**                                                          **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **3.8053** | TRIAD OF ALABAMA, LLC<br>ATTN: CEO, PARTNER, OR MANAGER<br>5800 TENNYSON PARKWAY<br>PLANTO, TX 75024 | 9/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8054** | TRIAD OF ALABAMA, LLC<br>ATTN: CEO, PARTNER, OR MANAGER<br>4370 WEST MAIN STREET<br>DOTHAN, AL 36305 | 9/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8055** | TRI-COUNTY HEALTH DEPARTMENT<br>ATTN: CLERK<br>147 E MAIN<br>VERNAL, UT 84078 | 6/4/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8056** | TRI-COUNTY HEALTH DEPARTMENT<br>ATTN: EXECUTIVE DIRECTOR AND DEPUTY DIRECTOR<br>EXECUTIVE STAFF<br>6162 SOUTH WILLOW DRIVE - SUITE 100<br>GREENWOOD VILLAGE, CO 80111 | 1/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8057** | TRI-COUNTY HEALTH DEPARTMENT<br>ATTN: PHIL WEISER<br>STATE OF COLORADO ATTORNEY GENERAL<br>RALPH L. CARR COLORADO JUDICIAL CENTER - 1300<br>BROADWAY, 10TH FLOOR<br>DENVER, CO 80203 | 1/11/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8058** | TRI-COUNTY HEALTH DEPARTMENT<br>ATTN: SEAN REYES<br>STATE OF UTAH ATTORNEY GENERAL<br>STATE CAPITOL, RM. 236<br>SALT LAKE CITY, UT 84114-0810 | 6/4/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8059** | TROUP COUNTY, GEORGIA<br>ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS<br>100 RIDLEY AVENUE<br>LAGRANGE, GA 30240 | 6/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8060** | TUCSON MEDICAL CENTER, A CORPORATION<br>ATTN: PRESIDENT, CHIEF EXECUTIVE OFFICER AND<br>SENIOR VICE PRESIDENT, CHIEF OPERATING OFFICER<br>5301 EAST GRANT ROAD<br>TUCSON, AZ 85712 | 10/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8061** | TUCSON MEDICAL CENTER, A CORPORATION<br>ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER<br>5301 EAST GRANT ROAD<br>TUCSON, AZ 85712 | 10/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8062** | TULALIP TRIBES<br>6406 MARINE DRIVE<br>TULALIP, WA 98271 | 4/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1112**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

### Part 2: List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8063** TULE RIVER INDIAN TRIBE OF CALIFORNIA ATTN: CHAIRPERSON 340 N RESERVATION RD PORTERVILLE, CA 93257 | 6/7/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8064** TULLAHOMA HMA, LLC F/K/A TULLAHOMA HMA, INC. ATTN: CHIEF EXECUTIVE OFFICER 1801 NORTH JACKSON STREET TENNOVA HEALTHCARE - HARTON HOSPITAL TULLAHOMA, TN 37388 | 7/11/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8065** TULLAHOMA HMA, LLC F/K/A TULLAHOMA HMA, INC. ATTN: REGISTERED AGENT; MANAGING MEMBER 4000 MERIDIAN BOULEVARD COMMUNITY HEALTH SYSTEMS FRANKLIN, TN 37067-6325 | 7/11/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8066** TUNICA-BILOXI TRIBE OF LOUISIANA ATTN: CHAIRMAN AND CHIEF EXECUTIVE OFFICER 150 MELACON ROAD MARKSVILLE, LA 71351 | 8/6/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8067** TURNER, NATASHA H NOT AVAILABLE | 10/28/2016 ACCOUNT NO.: AB50540162602 | ☐ | ☑ | ☐ | Automobile | ☐ | UNDETERMINED |
| **3.8068** TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS ATTN: TRIBAL CHAIRMAN AND CHIEF EXECUTIVE OFFICER OF THE TURTLE MOUNTAIN BAND OF CHIPPEWA INDIANS TRIBAL HEADQUARTERS 4180 HIGHWAY 281 BELCOURT, ND 58316 | 5/3/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8069** TUSCALOOSA COUNTY, ALABAMA ATTN: COUNTY COMMISIONER, AND CLERK 714 GREENSBORO AVE TUSCALOOSA, AL 35401 | 2/1/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8070** TWIGGS COUNTY, GEORGIA ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS TWIGGS COUNTY COMMISSIONERS 425 RAILROAD STREET - PO BOX 202 JEFFERSONVILLE, GA 31044 | 3/22/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8071** TYLER COUNTY COMMISSION ATTN: TYLER COUNTY PROSECUTOR 225 1/2 MAIN STREET OLD TYLER COUNTY BANK BUILDING - 2ND FLOOR MIDDLEBOURNE, WV 26149 | 12/13/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1113**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### <u>Litigation</u>

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.8072** TYLER COUNTY COMMISSION<br>ATTN: TYLER COUNTY PROSECUTOR<br>P.O. BOX 125<br>MIDDLEBOURNE, WV 26149 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8073** TYLER COUNTY COMMISSION<br>ATTN: COUNTY COMMISSIONERS AND CLERK<br>TYLER COUNTY COURTHOUSE<br>121 MAIN STREET<br>MIDDLEBOURNE, WV 26149 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8074** TYLER COUNTY COMMISSION<br>ATTN: COUNTY COMMISSIONERS AND CLERK<br>POBOX 66<br>MIDDLEBOURNE, WV 26149 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8075** TYLER COUNTY COMMISSION<br>PAUL J. NAPOLI<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8076** TYLER COUNTY COMMISSION<br>JOSEPH F. SHAFFER<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8077** TYLER COUNTY COMMISSION<br>JOSEPH L. CIACCIO<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8078** TYLER COUNTY COMMISSION<br>CLAYTON J. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8079** TYLER COUNTY COMMISSION<br>MARK A. COLANTONIO<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8080** TYLER COUNTY COMMISSION<br>DANIEL J. GUIDA<br>GUIDA LAW OFFICE<br>3374 MAIN STREET<br>WEIRTON, WV 26062 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1114**

Purdue Pharma L.P.                                                    Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8081** TYLER COUNTY COMMISSION<br>HUNTER J. SHKOLNIK<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8082** TYLER COUNTY COMMISSION<br>ROBERT P. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8083** TYLER COUNTY COMMISSION<br>JONATHAN E. TURAK<br>GOLD, KHOUREY & TURAK<br>510 TOMLINSON AVENUE<br>MOUNDSVILLE, WV 26041 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8084** TYLER COUNTY COMMISSION<br>SALVATORE C. BADALA<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8085** TYLER COUNTY COMMISSION<br>SHAYNA E. SACKS<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8086** TYLER COUNTY COMMISSION<br>SAMUEL D. MADIA<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 12/13/2017<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8087** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: William P. Gibbens<br>Schonekas, Evans, McGoey & McEachin, LLC<br>909 Poydras Street, Suite 1600<br>New Orleans, LA 70112 | 2/26/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8088** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Barry James Cooper, Jr., Celeste Brustowicz<br>Cooper Law Firm, LLC<br>1525 Religious Street<br>New Orleans, LA 70130 | 2/26/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1115**

Purdue Pharma L.P.                                                    Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.8089** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Lawrence J. Centola, III<br>Martzell & Bickford<br>338 Lafayette St.<br>New Orlean, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8090** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Neil Franz Nazareth<br>Martzell & Bickford<br>338 Lafayette St.<br>New Orleans, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8091** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Jason Zachary Landry<br>Martzell & Bickford<br>338 Lafayette St.<br>New Orleans, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8092** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Warren Perrin<br>Perrin, Landry, deLaunay<br>251 La Rue France - P.O. Box 53597<br>Lafayette, LA 70505 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8093** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Jack W. Harang<br>Law Offices of Jack W. Harang<br>2433 Taffy Dr.<br>Kenner, LA 70065 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8094** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Spencer R. Doody<br>Martzell & Bickford<br>338 Lafayette St.<br>New Orleans, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8095** Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Justin Winch<br>Winch Law Firm, LLC<br>14616 Leon Road, Suite 101<br>Abbeville, LA 70510 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1116**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.8096** | Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Celeste Brustowicz<br>Cooper Law Firm, LLC<br>1525 Religious Street<br>New Orleans, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8097** | Tyler M. Roach, natural Tutor on behalf of his minor child, Baby K.E.R., and as class representative for all Neonatal Abstinence Syndrome afflicted babies born in Louisiana<br>Attn: Scott R. Bickford<br>Martzell & Bickford<br>338 Lafayette St.<br>New Orleans, LA 70130 | 2/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8098** | TYRRELL COUNTY<br>ATTN: JOSH STEIN<br>STATE OF NORTH CAROLINA ATTORNEY GENERAL<br>DEPT. OF JUSTICE, P.O.BOX 629<br>RALEIGH, NC 27602-0629 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8099** | TYRRELL COUNTY<br>1466 RHODES ROAD<br>COLUMBIA, NC 27925 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8100** | TYRRELL COUNTY<br>ATTN: COUNTY MANAGER<br>PO BOX 449<br>COLUMBIA, NC 27925 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8101** | U.S. EX REL., ROBERT E. MANCHESTER, ET AL.<br>ATTN: MAURA HEALEY<br>STATE OF MASSACHUSETTS ATTORNEY GENERAL<br>1 ASHBURTON PLACE<br>BOSTON, MA 02108-1698 | 5/25/2016<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8102** | U.S. EX REL., ROBERT E. MANCHESTER, ET AL.<br>ATTN: FRANCIS G. CONRAD<br>THE CONRAD LAW FIRM<br>P.O. BOX 68<br>HULETTS LANDING, NY 12841 | 5/25/2016<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8103** | UFCW LOCAL 23 AND EMPLOYERS HEALTH FUND<br>ATTN: PRESIDENT, CHAIRPERSON<br>UFCW LOCAL 23 & EMPLOYERS BENEFIT FUND<br>345 SOUTHPOINTE BOULEVARD - SUITE 200<br>CANONSBURG, PA 15317 | 4/24/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8104** | UINTAH COUNTY, UTAH<br>ATTN: COUNTY CLERK<br>147 EAST MAIN STREET<br>VERNAL, UT 84078 | 6/4/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1117**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 124 of 1000

**Purdue Pharma L.P.**                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.8105 | UNICOI COUNTY ATTN: COUNTY MAYOR & CLERK PO BOX 169 ERWIN, TN 37650 | UNKNOWN<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8106 | UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS ATTN: COUNTY CLERK CITY HALL 701 NORTH 7TH STREET - SUITE 323 KANSAS CITY, KS 66101 | 12/18/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8107 | UNIFIED GOVERNMENT OF WYANDOTTE COUNTY/KANSAS CITY, KANSAS ATTN: COUNTY COMMISSIONERS CITY HALL 701 NORTH 7TH STREET - SUITE 979 KANSAS CITY, KS 66101 | 12/18/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8108 | UNION COUNTY ATTN: AUDITOR 300 NORTH PINE STREET SUITE 2 CRESTON, IA 50801 | 3/8/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8109 | UNION COUNTY ATTN: BOARD OF SUPERVISORS CHAIR 2021 240TH STREET SHANNON CITY, IA 50861 | 3/8/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8110 | UNION COUNTY ATTN: COUNTY MAYOR 901 MAIN STREET SUITE 100 MAYNARDVILLE, TN 37807 | UNKNOWN<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8111 | UNION COUNTY ATTN: COUNTY CLERK UNION COUNTY COURTHOUSE 2 BROAD STREET ELIZABETH, NJ 07207 | 12/20/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8112 | UNION COUNTY ATTN: COUNTY CLERK 825 MAIN STREET MAYNARDVILLE, TN 37807 | UNKNOWN<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8113 | UNION COUNTY ATTN: CHAIR OF THE BOARD OF CHOSEN FREEHOLDERS 10 ELIZABETHTOWN PLAZA ELIZABETH, NJ 07207 | 12/20/2018<br><br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1118**

**Purdue Pharma L.P.**

**Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.8114 | UNION COUNTY, FLORIDA<br>ATTN: CLERK OF THE CIRCUIT COURT<br>55 WEST MAIN STREET, ROOM 103<br>LAKE BUTLER, FL 32054 | 6/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8115 | UNION COUNTY, FLORIDA<br>ATTN: CHAIRWOMAN OF BOARD OF COUNTY COMMISSIONERS<br>15 NE 1ST STREET<br>LAKE BUTLER, FL 32054 | 6/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8116 | UNION COUNTY, GEORGIA<br>ATTN: SOLE COMMISSIONER AND COUNTY MANAGER<br>65 COURTHOSUE STREET<br>SUITE 1<br>BLAIRSVILLE, GA 30512 | 10/25/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8117 | UNION COUNTY, MISS.<br>ATTN: PRESIDENT OF THE BOARD OF SUPERVISORS<br>PO BOX 847<br>109 E. MAIN ST.<br>NEW ALBANY, MS 38652 | 1/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8118 | UNION PARISH<br>100 EAST BAYOU STREET, SUITE 105<br>FARMERVILLE, LA 71241 | 10/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8119 | UNION PARISH<br>ATTN: PRESIDENT OF POLICE JURY<br>303 EAST WATER STREET<br>FARMERVILLE, LA 71241 | 10/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8120 | UNITED FOOD AND COMMERCIAL WORKERS HEALTH AND WELFARE FUND OF NORTHEASTERN PENNSYLVANIA<br>ATTN: PRESIDENT AND FUND ADMINISTRATOR<br>3031B WALTON ROAD<br>PLYMOUTH MEETING, PA 19462 | 11/9/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8121 | UNITED FOOD AND COMMERCIAL WORKERS HEALTH AND WELFARE FUND OF NORTHEASTERN PENNSYLVANIA<br>ATTN: ATTN: PRESIDENT AND FUND ADMINISTRATOR<br>66 GRAND AVENUE<br>ENGLEWOOD, NJ 07631 | 11/9/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8122 | UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1000 OKLAHOMA HEALTH AND WELFARE FUND<br>ATTN: PRESIDENT<br>967 WEST WALL STREET<br>SUITE 100<br>GRAPEVINE, TX 76051 | 6/15/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1119**

**Purdue Pharma L.P.**                                            Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8123** UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1995 EMPLOYERS HEALTH AND WELFARE FUND ATTN: REGISTERED AGENT CT CORPORATION SYSTEM 289 SOUTH CULVER STREET LAWRENCEVILLE, GA 30046 | 9/27/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8124** UNITED FOOD AND COMMERCIAL WORKERS LOCAL 1995 EMPLOYERS HEALTH AND WELFARE FUND ATTN: EXECUTIVE DIRECTOR UFCW UNITONS AND EMPLOYERS BENEFITS ADMINISTRATION, LLC 1740 PHOENIX PARKWAY ATLANTA, GA 30349 | 9/27/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8125** UNITED FOOD AND COMMERCIAL WORKERS UNION UFCW LOCAL 1529 AND EMPLOYERS HEALTH AND WELFARE PLAN AND TRUST ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER, AND SECRETARY-TREASURER 8205 MACON ROAD CORDOVA, TN 38018 | 6/8/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8126** UNITED FOOD AND COMMERCIAL WORKERS UNION UFCW LOCAL 1529 AND EMPLOYERS HEALTH AND WELFARE PLAN AND TRUST ATTN: ADMINISTRATOR, AND PRESIDENT AND CHIEF EXECUITVE OFFICER 661 N. ERICSON ROAD CORDOVA, TN 38018 | 6/8/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8127** UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS HEALTH AND WELFARE FUND - ATLANTA ATTN: PRESIDENT OF THE FUND 1800 PHOENIX BLVD #310 ATLANTA, GA 30349 | 1/11/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8128** UNITED FOOD AND COMMERCIAL WORKERS UNIONS AND EMPLOYERS HEALTH AND WELFARE FUND - ATLANTA ATTN: PRESIDENT, SECRETARY-TREASURER UFCW CONSOLIDATED PENSION FUND (HEALTH & WELFARE OFFICE) 1740 PHENIX PARKWAY ATLANTA, GA 30349 | 1/11/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8129** UNITED GOVERNMENT OF ATHENS-CLARKE COUNTY GEORGIA CITY HALL 301 COLLEGE AVENUE - SUITE 303 ATHENS, GA 30601 | 2/7/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1120**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.8130** UNITED GOVERNMENT OF ATHENS-CLARKE COUNTY GEORGIA<br>ATTN: MAYOR<br>301 COLLEGE AVENUE<br>SUITE 300<br>ATHENS, GA 30601 | 2/7/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8131** UNITED HOSPITAL CENTER, INC.<br>ATTN: REGISTERED AGENT<br>MICHAEL C. TILLMAN<br>327 MEDICAL PARK DRIVE<br>BRIDGEPORT, WV 26330 | 4/29/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8132** UNITED HOSPITAL CENTER, INC.<br>ATTN: PRESIDENT<br>327 MEDICAL PARK DRIVE<br>C/O JIM RUTKOWSKI<br>BRIDGEPORT, WV 26330 | 4/29/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8133** UNITED KEETOOWAH BAND OF CHEROKEE INDIANS<br>ATTN: CHIEF AND EXECUTIVE OFFICER OF THE UNITED KEETOOWAH BAND OF CHEROKEE INDIANS<br>18263 WEST KEETOOWAH CIRCLE<br>TAHLEQUAH, OK 74464 | 6/13/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8134** UPPER SIOUX COMMUNITY<br>ATTN: PRESIDENT<br>PEZIHUTAZIZI OYATE<br>5722 TRAVERS LANE - PO BOX 147<br>GRANITE FALLS, MN 56241 | 8/16/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8135** UPSHUR COUNTY COMMISSION<br>ATTN: MEMBERS OF THE COUNTY COMMISSION AND COUNTY ADMINISTRATOR<br>UPSHUR COUNTY ADMINISTRATIVE ANNEX<br>91 WEST MAIN STREET - SUITE 101<br>BUCKHANNON, WV 26201 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8136** UPSHUR COUNTY COMMISSION<br>SALVATORE C. BADALA<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8137** UPSHUR COUNTY COMMISSION<br>ROBERT P. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8138** UPSHUR COUNTY COMMISSION<br>CLAYTON J. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1121**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8139 | UPSHUR COUNTY COMMISSION<br>MARK A. COLANTONIO<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8140 | UPSHUR COUNTY COMMISSION<br>PAUL J. NAPOLI<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8141 | UPSHUR COUNTY COMMISSION<br>HUNTER J. SHKOLNIK<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8142 | UPSHUR COUNTY COMMISSION<br>SHAYNA E. SACKS<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8143 | UPSHUR COUNTY COMMISSION<br>SAMUEL D. MADIA<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8144 | UPSHUR COUNTY COMMISSION<br>JOSEPH F. SHAFFER<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8145 | UPSHUR COUNTY COMMISSION<br>JOSEPH L. CIACCIO<br>NAPOLI SHKOLNIK PLLC<br>360 LEXINGTON AVENUE - 11TH FLOOR<br>NEW YORK, NY 10017 | 9/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8146 | UTAH COUNTY, UTAH<br>111 S. UNIVERSITY AVENUE<br>PROVO, UT 84601 | 10/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8147 | UTAH COUNTY, UTAH<br>ATTN: UTAH COUNTY CLERK/AUDITOR<br>100 EAST CENTER STREET<br>PROVO, UT 84606 | 10/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1122**

**Purdue Pharma L.P.**                                                     Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8148** UTAH DIVISION OF CONSUMER PROTECTION STATE OF UTAH ATTORNEY GENERAL ATTN: SEAN REYES STATE CAPITOL, RM. 236 SALT LAKE CITY, UT 84114-0810 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8149** UTAH DIVISION OF CONSUMER PROTECTION STATE OF UTAH ATTORNEY GENERAL ATTN: SEAN REYES STATE CAPITOL, RM. 236 SALT LAKE CITY, UT 84114-0810 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8150** UTAH DIVISION OF CONSUMER PROTECTION ATTN: ATTORNEY GENERAL UTAH STATE HEBER M. WELLS BUILDING P.O. BOX 140811 SALT LAKE CITY, UT 84114 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8151** UTAH DIVISION OF CONSUMER PROTECTION ATTN: ATTORNEY GENERAL UTAH STATE OFFICE OF THE ATTORNEY GENERAL P.O. BOX 142320 SALT LAKE CITY, UT 84114-2320 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8152** UTAH DIVISION OF CONSUMER PROTECTION ATTN: ATTORNEY GENERAL UTAH STATE OFFICE OF THE ATTORNEY GENERAL PO BOX 142320 SALT LAKE CITY, UT 84114-2320 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8153** UTAH DIVISION OF CONSUMER PROTECTION ATTN: ATTORNEY GENERAL UTAH STATE HEBER M. WELLS BUILDING P.O. BOX 140811 SALT LAKE CITY, UT 84114 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8154** UTAH DIVISION OF CONSUMER PROTECTION ATTN: ATTORNEY GENERAL UTAH STATE UTAH STATE CAPITOL COMPLEX 350 NORTH STATE STREET, SUITE 230 SALT LAKE CITY, UT 84114-2320 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8155** UTAH DIVISION OF CONSUMER PROTECTION ATTN: KEVIN MCLEAN, ROBERT WING HEBER M. WELLS BUILDING 160 WEST 300 SOUTH - P.O. BOX 146704 SALT LAKE CITY, UT 84114 | 1/30/2019<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8156** VALLEY FIRE DISTRICT ATTN: CHAIR OF THE BOARD OF TRUSTEES 5287 DOGWOOD DRIVE PENINSULA, OH 44264 | 6/30/2018<br>ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

NAS1123

**Purdue Pharma L.P.**                                            Case Number: **19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:  List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8157 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: DAVID J. REBEIN REBEIN BANGERTER REBEIN PA 810 FRONTVIEW - PO BOX 1147 DODGE CITY, KS 67801 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8158 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: AARON L. KITE KITE LAW FIRM, LLC 808 WEST MCARTOR ROAD - PO BOX 22 DODGE CITY, KS 67801 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8159 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: W. MARK LANIER THE LANIER LAW FIRM 6810 FM 1960 WEST HOUSTON, TX 77069 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8160 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: REAGAN E. BRADFORD THE LANIER LAW FIRM 6810 FM 1960 WEST HOUSTON, TX 77069 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8161 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: REX A. SHARP REX A. SHARP, PA 5301 W. 75TH STREET PRAIRIE VILLAGE, KS 66208 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8162 VALLEY HOPE ASSOCIATION, ON BEHALF OF ITSELF AND ALL OTHER ENTITIES SIMILARLY SITUATED ATTN: TODD GRIMMETT THE LANIER LAW FIRM 6810 FM 1960 WEST HOUSTON, TX 77069 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8163 VAN BUREN COUNTY ATTN: COUNTY CLERK 121 TAFT DRIVE SPENCER, TN 38585 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8164 VAN BUREN COUNTY ATTN: CIRCUIT COURT CLERK PO BOX 126 179 VETERANS SQUARE SPENCER, TN 38585 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1124**

**Purdue Pharma L.P.**                                     Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.8165 VAN BUREN COUNTY<br>ATTN: MAYOR<br>121 TAFT DRIVE<br>SPENCER, TN 38585 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8166 VAN WERT COUNTY BOARD OF COUNTY COMMISSIONERS<br>ATTN: COUNTY COMISSIONERS AND COUNTY CLERK COMMISSIONERS OFFICE<br>114 E. MAIN STREET - SUITE 200<br>VAN WERT, OH 45891 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8167 VAN WERT COUNTY BOARD OF COUNTY COMMISSIONERS<br>VAN WERT COUNTY PROSECUTOR'S OFFICE<br>120 W. MAIN ST<br> - SUITE 100<br>VAN WERT, OH 45891 | 5/14/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8168 VANCE COUNTY<br>ATTN: JOSH STEIN<br>STATE OF NORTH CAROLINA ATTORNEY GENERAL<br>DEPT. OF JUSTICE, P.O.BOX 629<br>RALEIGH, NC 27602-0629 | 6/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8169 VANCE COUNTY<br>259 DOCTOR FINCH ROAD<br>HENDERSON, NC 27537 | 6/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8170 VANCE COUNTY<br>ATTN: COUNTY MANAGER<br>122 YOUNG STREET<br>SUITE B<br>HENDERSON, NC 27536 | 6/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8171 VANDERBURGH COUNTY<br>ATTN: PRESIDENT OF THE COUNTY COMMISSIONERS; VICE PRESIDENT OF THE COUNTY COMMISSIONERS;<br>1 NORTHWEST MARTIN LUTHER KING JR BLVD<br>CIVIC CENTER COMPLEX - ROOM 305<br>EVANSVILLE, IN 47708 | 4/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8172 VANDERBURGH COUNTY<br>ATTN: PRESIDENT OF THE COUNTY COUNCIL, VICE-PRESIDENT OF THE COUNTY COUNCIL<br>1 NORTHWEST MARTIN LUTHER KING JR BLVD<br>CIVIC CENTER COMPLEX - ROOM 303<br>EVANSVILLE, IN 47708 | 4/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8173 VERMILION PARISH POLICE JURY<br>ATTN: PRESIDENT, VERMILION PARISH POLICE JURY<br>100 NORTH STATE STREET<br>ABBEVILLE, LA 70510 | 10/26/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1125**

**Purdue Pharma L.P.**  **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **3.8174** VERNON COUNTY<br>ATTN: COUNTY BOARD CHAIRMAN OF VERNON COUNTY<br>ROOM 307 COURTHOUSE ANNEX<br>VIROQUA, WI 54665 | 11/7/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8175** VERNON COUNTY<br>ATTN: COUNTY CLERK OF VERNON COUNTY<br>108 COURTHOUSE ANNEX<br>VIROQUA, WI 54665 | 11/7/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8176** VHS ACQUISITION SUBSIDIARY NUMBER 1, INC.<br>ATTN: SECRETARY OF STATE<br>OFFICE OF THE SECRETARY OF STATE<br>1700 WEST WASHINGTON STREET<br>FLOOR 7, AZ 85007-2808 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8177** VHS ACQUISITION SUBSIDIARY NUMBER 1, INC.<br>ATTN: REGISTERED AGENT<br>CT CORPORATION SYSTEM<br>3800 NORTH CENTRAL AVENUE - SUITE 460<br>PHOENIX, AZ 85012 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8178** VHS ACQUISITION SUBSIDIARY NUMBER 1, INC.<br>ATTN: PRESIDENT<br>1445 ROSS AVENUE<br>SUITE 1400<br>DALLAS, TX 75202 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8179** VHS BROWNSVILLE HOSPITAL COMPANY, LLC<br>D/B/AVALLEY BAPTIST MEDICAL CENTER - BROWNSVILLE<br>ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD<br>1040 WEST JEFFERSON STREET<br>BROWNSVILLE, TX 78520 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8180** VHS HARLINGEN HOSPITAL COMPANY, LLC D/B/A<br>VALLEY BAPTIST MEDICAL CENTER<br>ATTN: REGISTERED AGENT AND CHAIR OF THE BOARD<br>1999 BRYAN STREET<br>SUITE 900<br>DALLAS, TX 75201 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8181** VHS OF ARROWHEAD, INC.<br>ATTN: SECRETARY OF STATE<br>OFFICE OF THE SECRETARY OF STATE<br>1700 WEST WASHINGTON STREET - FLOOR 7<br>PHOENIX, AZ 85007-2808 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8182** VHS OF ARROWHEAD, INC.<br>ATTN: MARKET CEO<br>ABRAZO ARROWHEAD CAMPUS<br>18701 NORTH 67TH AVENUE<br>GLENDALE, AZ 85308 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1126**

**Purdue Pharma L.P.**                                                    Case Number:   19-23649 (RDD)

---

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| **3.8183** VHS OF ARROWHEAD, INC.<br>ATTN: REGISTERED AGENT<br>1445 ROSS AVENUE<br>SUITE 1400<br>DALLAS, TX 75202 | 6/18/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8184** VHS San Antonio Partners, LLC d/b/a Baptist Medical Center, Mission Trail Baptist Hospital, North Central Baptist Hospital, Northeast Baptist Hospital, and St. Luke's Baptist Hospital<br>Attn: CEO, Partner, or Manager<br>1445 Ross Avenue<br>Suite 1400<br>Dallas, TX 75202-2703 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8185** VHS San Antonio Partners, LLC d/b/a Baptist Medical Center, Mission Trail Baptist Hospital, North Central Baptist Hospital, Northeast Baptist Hospital, and St. Luke's Baptist Hospital<br>Attn: CEO, Partner, or Manager<br>1999 Bryan Street<br>Suite 900<br>Dallas, TX 75201 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8186** VHS San Antonio Partners, LLC d/b/a Baptist Medical Center, Mission Trail Baptist Hospital, North Central Baptist Hospital, Northeast Baptist Hospital, and St. Luke's Baptist Hospital<br>Attn: CEO, Partner, or Manager<br>1150 Brussels Street<br>San Antonio, TX 78219 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8187** VHS SAN ANTONIO PARTNERS, LLC D/B/A BAPTIST MEDICAL CENTER, MISSION TRAIL BAPTIST HOSPITAL, NORTH CENTRAL BAPTIST HOSPITAL, NORTHEAST BAPTIST HOSPITAL, AND ST. LUKE'S BAPTIST HOSPITAL<br>ATTN: REGISTERED AGENT<br>1999 BRYAN STREET<br>SUITE 900<br>DALLAS, TX 75201 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8188** VICTORIA OF TEXAS, L.P. D/B/A DETAR HOSPITAL NAVARRO AND DETAR HOSPITAL NORTH<br>ATTN: CEO, PARTNER, OR MANAGER<br>101 MEDICAL DRIVE<br>VICTORIA, TX 77904 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8189** VICTORIA OF TEXAS, L.P. D/B/A DETAR HOSPITAL NAVARRO AND DETAR HOSPITAL NORTH<br>ATTN: CEO, PARTNER, OR MANAGER<br>506 EAST SAN ANTONIO STREET<br>VICTORIA, TX 77901-6060 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8190** VIGO COUNTY, INDIANA<br>ATTN: CURTIS T. HILL, JR.<br>STATE OF INDIANA ATTORNEY GENERAL<br>INDIANA GOVERNMENT CENTER SOUTH - 5TH FLOOR -<br>302 WEST WASHINGTON STREET<br>INDIANAPOLIS, IN 46204 | 1/7/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1127**

**Purdue Pharma L.P.**                                          **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8191 | VIGO COUNTY, INDIANA<br>ATTN: COUNTY COUNCIL ADMINISTRATOR<br>VIGO COUNTY GOVERNMENT CENTER<br>127 OAK STREET<br>TERRE HAUTE, IN 47807 | 1/7/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8192 | VILAS COUNTY<br>ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD<br>330 COURT ST.<br>EAGLE RIVER, WI 54521 | 5/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8193 | VILAS COUNTY<br>ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD<br>1147 JOHNSON CREEK ROAD<br>ARBOR VITAE, WI 54568-9914 | 5/29/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8194 | VILLAGE OF BELWOOD<br>ATTN: PRESIDENT OF THE BOARD OF TRUSTEES OR VILLAGE CLERK<br>3200 WASHINGTON BOULEVARD<br>BELLWOOD, IL 60104 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8195 | VILLAGE OF BERKELEY<br>ATTN: VILLAGE PRESIDENT OR VILLAGE CLERK<br>5819 ELECTRIC AVENUE<br>BERKELEY, IL 60163 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8196 | VILLAGE OF BRIDGEVIEW<br>ATTN: PRESIDENT OF BOARD OF TRUSTEES AND VILLAGE CLERK<br>7500 S. OKETO AVENUE, IL<br>BRIDGEVIEW, IL 60455 | 9/4/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8197 | VILLAGE OF BROADVIEW<br>ATTN: VILLAGE PRESIDENT/MAYOR OR VILLAGE CLERK<br>VILLAGE OF BROADVIEW MUNICIPAL BUILDING<br>2350 SOUTH 25TH AVENUE<br>BROADVIEW, IL 60155 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8198 | VILLAGE OF BROOKLYN HEIGHTS<br>ATTN: MAYOR AND CLERK/TREASURER AND LAW DIRECTOR<br>BH MUNICIPAL CENTER<br>345 TUXEDO AVENUE<br>BROOKLYN HEIGHTS, OH 44131 | 4/17/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8199 | VILLAGE OF CHICAGO RIDGE<br>ATTN: PRESIDENT OF THE BOARD OF TRUSTEES OR VILLAGE CLERK<br>10455 SOUTH RIDGELAND AVENUE<br>CHICAGO RIDGE, IL 60415 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1128**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　**Case Number:** 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**　　List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8200** VILLAGE OF CLINTON<br>209 SOUTH MAIN STREET, 3RD FLOOR<br>AKRON, OH 44308 | 6/30/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8201** VILLAGE OF DOLTON<br>ATTN: PRESIDENT OF THE BOARD OF TRUSTEES OR VILLAGE CLERK<br>14122 CHICAGO ROAD<br>DOLTON, IL 60419 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8202** VILLAGE OF HERKIMER, NEW YORK<br>ATTN: MAYOR AND VILLAGE CLERK TREASURER<br>120 GREEN ST.<br>MUNICIPAL HALL<br>HERKIMER, NY 13350 | 7/5/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8203** VILLAGE OF HILLSIDE<br>ATTN: MAYOR/CHAIRMAN OF THE BOARD OF TRUSTEES<br>VILLAGE HALL<br>425 HILLSIDE AVENUE<br>HILSIDE, IL 60162 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8204** VILLAGE OF HILLSIDE<br>ATTN: VILLAGE CLERK<br>425 NORTH HILLSIDE AVENUE<br>HILLSIDE, IL 60162 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8205** VILLAGE OF HODGKINS<br>ATTN: PRESIDENT OF BOARD OF TRUSTEES AND VILLAGE CLERK<br>8990 LYONS STREET<br>HODGKINS, IL 60525 | 9/7/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8206** VILLAGE OF HOFFMAN ESTATES<br>ATTN: MAYOR / PRESIDENT OF BOARD OF TRUSTEES AND VILLAGE CLERK<br>1900 HASSELL ROAD<br>HOFFMAN ESTATES, IL 60169 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8207** VILLAGE OF MARRIONETTE PARK<br>ATTN: VILLAGE CLERK<br>11720 SOUTH KEDZIE AVENUE<br>MERRIONETTE PARK, IL 60803 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8208** VILLAGE OF MARRIONETTE PARK<br>ATTN: PRESIDENT OF BOARD OF TRUSTEES / MAYOR<br>11720 SOUTH KEDZIE<br>MERRIONETTE PARK, IL 60803 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1129**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8209** VILLAGE OF MAYWOOD<br>ATTN: PRESIDENT OF VILLAGE BOARD AND VILLAGE CLERK<br>40 MADISON STREET<br>MAYWOOD, IL 60153 | 7/19/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8210** VILLAGE OF MELROSE PARK<br>ATTN: PRESIDENT, BOARD OF TRUSTEES AND VILLAGE CLERK<br>1000 N. 25TH AVENUE<br>MELROSE PARK, IL 60160 | 5/23/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8211** VILLAGE OF NEWBURGH HEIGHTS<br>ATTN: MAYOR AND VILLAGE SOLICITOR AND VILLAGE FISCAL OFFICER<br>NEWBURGH HEIGHTS VILLAGE HALL<br>3801 HARVARD AVENUE<br>NEWBURGH HEIGHTS, OH 44105 | 4/17/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8212** VILLAGE OF NORTH RIVERSIDE<br>ATTN: VILLAGE PRESIDENT / MAYOR AND VILLAGE CLERK<br>2401 SOUTH DESPLAINES AVENUE<br>NORTH RIVERSIDE, IL 60546 | 7/19/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8213** VILLAGE OF OAK LAWN<br>ATTN: VILLAGE PRESIDENT / MAYOR AND VILLAGE CLERK<br>9446 SOUTH RAYMOND AVENUE<br>OAK LAWN, IL 60453 | 5/23/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8214** VILLAGE OF ORLAND PARK<br>ATTN: VILLAGE PRESIDENT / MAYOR<br>14700 RAVINIA AVE<br>ORLAND PARK, IL 60462 | 7/19/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8215** VILLAGE OF ORLAND PARK<br>ATTN: VILLAGE CLERK<br>14700 SOUTH RAVINIA AVE<br>ORLAND PARK, IL 60462 | 7/19/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8216** VILLAGE OF POSEN<br>ATTN: VILLAGE BOARD<br>VILLAGE HALL<br>2440 WALTER ZIMNY DRIVE<br>POSEN, IL 60469 | 7/19/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8217** VILLAGE OF RIVER FOREST<br>ATTN: VILLAGE PRESIDENT<br>400 PARK AVENUE<br>RIVER FOREST, IL 60305 | 5/23/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1130**

**Purdue Pharma L.P.**                                          Case Number:   19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8218** VILLAGE OF RIVER GROVE<br>ATTN: VILLAGE PRESIDENT, CLERK<br>2621 NORTH THATCHER AVENUE<br>VILLAGE OF RIVER GROVE, IL 60171 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8219** VILLAGE OF STONE PARK<br>ATTN: VILLAGE PRESIDENT, CLERK<br>1825 NORTH 32ND AVENUE<br>STONE PARK, IL 60165 | 7/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8220** VILLAGE OF TINLEY PARK<br>ATTN: PRESIDENT, BOARD OF TRUSTEES AND VILLAGE CLERK<br>16250 SOUTH OAK PARK AVENUE<br>TINLEY PARK, IL 60477 | 5/23/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8221** VINTON COUNTY BOARD OF COUNTY COMMISSIONERS<br>ATTN: CLERK OF THE BOARD OF COUNTY COMMISSIONERS; PRESIDENT OF BOARD OF COUNTY OF COMMISSIONERS<br>VINTON COUNTY COURTHOUSE<br>FIRST FLOOR - 100 EAST MAIN STREET<br>MCARTHUR, OH 45651 | 10/11/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8222** W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: ANDREW M MUTTER<br>CHAMBLISS, BAHNER & STOPHEL, PC<br>605 CHESTNUT STREET, SUITE 1700<br>CHATTANOOGA, TN 37450 | 8/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8223** W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: WILLIAM S CONSOVOY<br>CONSOVOY MCCARTHY PARK PLLC<br>3033 WILSON BOULEVARD - SUITE 700<br>ARLINGTON, VA 22201 | 8/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8224** W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: TRAVIS LENKNER<br>KELLER LENKNER LLC<br>150 NORTH RIVERSIDE PLAZA - SUITE 2570<br>CHICAGO, IL 60606 | 8/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8225** W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: THOMAS R MCCARTHY<br>CONSOVOY MCCARTHY PARK PLLC<br>3033 WILSON BOULEVARD - SUITE 700<br>ARLINGTON, VA 22201 | 8/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1131**

**Purdue Pharma L.P.**                                                           **Case Number:    19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.8226 | W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: SETH MEYER KELLER LENKNER LLC 150 NORTH RIVERSIDE PLAZA - SUITE 2570 CHICAGO, IL 60606 | 8/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8227 | W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: MICHAEL H PARK ATTN: MICHAEL H PARK 745 FIFTH AVENUE - SUITE 500 NEW YORK, NY 10151 | 8/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8228 | W. ANDREW FOX, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: ASHLEY C. KELLER KELLER LENKNER LLC 150 NORTH RIVERSIDE PLAZA - SUITE 2750 CHICAGO, IL 60606 | 8/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8229 | W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: KELLY COX BILEK THE BILEK LAW FIRM, L.L.P. 700 LOUISIANA - SUITE 3950 HOUSTON, TX 77002 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8230 | W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: MATTHEW D. ROGENES STAG LIUZZA, L.L.C. 365 CANAL STREET - SUITE 2850 NEW ORLEANS, LA 70130 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8231 | W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: ASHLEY M. LIUZZA STAG LIUZZA, L.L.C. 365 CANAL STREET - SUITE 2850 NEW ORLEANS, LA 70130 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8232 | W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: J.K. WESTON, ANDREW SACKS SACKS WESTON DIAMOND, LLC 1845 WALNUT STREET - SUITE 1600 PHILADELPHIA, PA 19103 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1132**

**Purdue Pharma L.P.**                                                     **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **3.8233** W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: JOHN WESTON SACKS WESTON DIAMOND, LLC 1845 WALNUT STREET - SUITE 1600 PHILADELPHIA, PA 19103 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8234** W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: THOMAS E. BILEK, KELLY COX BILEK THE BILEK LAW FIRM, L.L.P 700 LOUISIANA - SUITE 3950 HOUSTON, TX 77002 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8235** W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: MICHAEL G. STAG, ASHLEY M. LIUZZA, MATTHEW D. ROGENES STAG LIUZZA, L.L.C. 365 CANAL STREET - SUITE 2850 NEW ORLEANS, LA 70130 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8236** W.E., ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, BY AND THROUGH HER NEXT FRIEND PAMELA OSBORNE ATTN: RODNEY G. DAVIS DAVID LAW P.S.C. 230 NORTH SECOND STREET - P.O. BOX 1060 RICHMOND, KY 40476 | 11/28/2018 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8237** WAIKEISHA RICHARDSON, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF BABIES E.M.1. AND E.M.2. ATTN: CELESTE BRUSTOWICZ COOPER LAW FIRM, LLC 1525 RELIGIOUS STREET NEW ORLEANS, LA 70130 | 6/20/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8238** WALDO COUNTY ATTN: COUNTY COMMISSIONERS; COUNTY CLERK; TREASURER 39B SPRING STREET BELFAST, ME 04915 | 2/1/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8239** WALDO COUNTY ATTN: COUNTY COMMISSIONERS; COUNTY CLERK; TREASURER 39B SPRING STREET BELFAST, ME 04915 | 2/1/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8240** WALGREENS BOOTS ALLIANCE, INC. ATTN: EXECUTIVE CHAIRMAN, CHIEF EXECUTIVE OFFICER 108 WILMOT ROAD DEERFIELD, IL 60015 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1133**

**Purdue Pharma L.P.**                                                   **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8241** WALGREENS BOOTS ALLIANCE, INC. ATTN: REGISTERED AGENT 801 ADLAI STEVENSON DRIVE SPRINGFIELD, IL 62703 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8242** WALKER COUNTY ATTN: COUNTY COMMISSIONER; CLERK 1801 3RD AVENUE SOUTH, SUITE 113 JASPER, AL 35501 | 1/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8243** WALKER RIVER PAIUTE TRIBE OF THE WALKER RIVER RESERVATION ATTN: TRIBAL CHAIRMAN AND CHIEF EXECUTIVE OFFICER OF THE WALKER RIVER PAIUTE TRIBE OF THE WALKER RIVER RESERVATION WALKER RIVER PAIUTE TRIBE P.O. BOX 220 - 1022 HOSPITAL ROAD SCHURZ, NV 89427 | 6/8/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8244** WALLA WALLA COUNTY ATTN: AUDITOR 315 WEST MAIN STREET SECOND FLOOR - RM 201 WALLA WALLA, WA 99362 | 8/7/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8245** WALSH COUNTY ATTN: CHAIRMAN AND BOARD OF COMMISSIONERS COURT HOUSE BUILDING BOARD ROOM - 600 COOPER AVENUE GRAFTON, ND 58237 | 6/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8246** WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: KEVIN W. THOMPSON THOMPSON BARNEY 2030 KANAWHA BOULEVARD, EAST CHARLESTON, WV 25311-2204 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8247** WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: STEPHEN H. WUSSOW COOPER LAW FIRM 1525 RELIGIOUS STREET NEW ORLEANS, LA 70130 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8248** WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: VICTOR T. COBB COOPER LAW FIRM 1525 RELIGIOUS STREET NEW ORLEANS, LA 70130 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1134**

**Purdue Pharma L.P.**                                    Case Number: **19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8249 | WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: SUSAN J. VANZANT P.O. BOX 987 WILLIAMSON, WV 25661 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8250 | WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: CELESTE BRUSTOWICZ COOPER LAW FIRM 1525 RELIGIOUS STREET NEW ORLEANS, LA 70130 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8251 | Walter and Virginia Salmons, individually and as the next friend or guardian of Minor W.D. and on behalf of all other similarly situated Attn: Kevin W. Thompson, David R. Barney, Jr. Thompson Barney Law Firm 2030 Kanawha Boulevard, East Charleston, WV 25311-2204 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8252 | Walter and Virginia Salmons, individually and as the next friend or guardian of Minor W.D. and on behalf of all other similarly situated Attn: Barry James Cooper, Jr., Celeste Brustowicz, Stephen H. Wussow, Victor T. Cobb Cooper Law Firm, LLC 1525 Religious Street New Orleans, LA 70130 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8253 | WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: JOHN W. ALDERMAN, III LAW OFFICES OF JOHN W. ALDERMAN, III 3 MONTICELLO PLACE CHARLESTON, WV 25314 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8254 | WALTER AND VIRGINIA SALMONS, INDIVIDUALLY AND AS THE NEXT FRIEND OR GUARDIAN OF MINOR W.D. AND ON BEHALF OF ALL OTHER SIMILARLY SITUATED ATTN: SUSAN J. VANZANT, L.C. 68 EAST 2ND AVENUE WILLIAMSON, WV 25661-3534 | 3/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8255 | WALTHALL COUNTY, MISS. ATTN: PRESIDENT OF THE BOARD OF SUPERVISORS AND CLERK AND RECORDS, CHANCERY COURT WALTHALL COUNTY COURTHOUSE 200 BALL AVENUE - P.O. BOX 351 TYLERTOWN, MS 39667 | 3/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1135**

**Purdue Pharma L.P.**                                            Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.8256 | WALTON COUNTY, FLORIDA<br>ATTN: CHAIR OF THE COUNTY BOARD OF COMMISSIONERS<br>76 N 6TH STREET<br>DEFUNIAK SPRINGS, FL 32433 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8257 | WALTON COUNTY, FLORIDA<br>PO BOX 1355<br>DEFUNIAK SPRINGS, FL 32433 | 6/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8258 | WALTON COUNTY, GEORGIA<br>ATTN: CHAIR OF THE BOARD OF COMMISSIONERS<br>303 SOUTH HAMMOND DRIVE<br>SUITE 330<br>MONROE, GA 30655 | 3/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8259 | WALWORTH COUNTY, WISCONSIN<br>ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD<br>100 WEST WALWORTH ST.<br>P. O. BOX 1001<br>ELKHORN, WI 53121 | 8/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8260 | WALWORTH COUNTY, WISCONSIN<br>ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD<br>1720 FAIRVIEW DRIVE<br>LAKE GENEVA, WI 53147 | 8/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8261 | WAMPUM BOROUGH<br>ATTN: MAYOR, SECRETARY, SOLICITOR<br>WAMPUM BOROUGH OFFICE<br>355 MAIN STREET<br>WAMPUM, PA 16157 | 7/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8262 | WARD COUNTY<br>ATTN: BOARD OF WARD COUNTY COMMISSIONERS<br>COMMISSIONER'S CHAMBERS<br>225 THIRD STREET SOUTHEAST<br>MINOT, ND 58701 | 8/13/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8263 | WARREN COUNTY<br>ATTN: COUNTY EXECUTIVE<br>201 LOCUST STREET<br>SUITE 1<br>MCMINNVILLE, RN 37110 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8264 | WARREN COUNTY<br>ATTN: COUNTY CLERK<br>201 LOCUST STREET<br>SUITE 2P<br>MCMINNVILLE, TN 37110 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1136**

**Purdue Pharma L.P.**                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|------------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8265** WARREN COUNTY, GEORGIA ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS 521 MAIN STREET WARRENTON, GA 30828 | 4/13/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8266** WARREN COUNTY, MISSOURI ATTN: COUNTY CLERK 101 MOCKINGBIRD LANE MO SUITE 302 WARRENTON, MO 63383 | 10/29/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8267** WARREN COUNTY, NC ATTN: JOSH STEIN STATE OF NORTH CAROLINA ATTORNEY GENERAL DEPT. OF JUSTICE, P.O.BOX 629 RALEIGH, NC 27602-0629 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8268** WARREN COUNTY, NC 146 NORTHSIDE DRIVE LITTLETON, NC 27850 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8269** WARREN COUNTY, NC ATTN: COUNTY MANAGER 602 WEST RIDGEWAY STREET WARRENTON, NC 27589 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8270** WARRENSVILLE HEIGHTS, OHIO ATTN: MAYOR 4301 WARRENSVILLE CENTER ROAD WARRENSVILLE HEIGHTS, OH 44128 | 12/6/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8271** WARRINGTON TOWNSHIP ATTN: DONALD A. BROGGI SCOTT & SCOTT ATTORNEYS AT LAW LLP THE HELMSLEY BUILDING - 230 PARK AVENUE 17TH FLOOR NEW YORK, NY 10169 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8272** WARRINGTON TOWNSHIP ATTN: BETH A. KASWAN SCOTT & SCOTT ATTORNEYS AT LAW LLP THE HELMSLEY BUILDING - 230 PARK AVENUE 17TH FLOOR NEW YORK, NY 10169 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8273** WARRINGTON TOWNSHIP ATTN: JUDITH S. SCOLNICK SCOTT & SCOTT ATTORNEYS AT LAW LLP THE HELMSLEY BUILDING - 230 PARK AVENUE 17TH FLOOR NEW YORK, NY 10169 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1137**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8274** WARRINGTON TOWNSHIP<br>ATTN: SEAN T. MASSON<br>SCOTT & SCOTT ATTORNEYS AT LAW LLP<br>THE HELMSLEY BUILDING - 230 PARK AVENUE 17TH FLOOR<br>NEW YORK, NY 10169 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8275** WARRINGTON TOWNSHIP<br>ATTN: TOWNSHIP TAX COLLECTOR<br>3400 PICKERTOWN RD., UNIT #1<br>CHALFONT, PA 18914 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8276** WARRINGTON TOWNSHIP<br>ATTN: JOSEPH G. CLEEMAN<br>SCOTT & SCOTT ATTORNEYS AT LAW LLP<br>THE HELMSLEY BUILDING - 230 PARK AVENUE 17TH FLOOR<br>NEW YORK, NY 10169 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8277** WASATCH COUNTY, UTAH<br>ATTN: COUNTY CLERK<br>25 NORTH MAIN<br>HEBER CITY, UT 84032 | 6/28/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8278** WASECA COUNTY, MINNESOTA<br>ATTN: COUNTY AUDITOR/TREASURER<br>307 N STATE ST<br>WASECA, MN 56093 | 8/29/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8279** WASHBURN COUNTY<br>ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD<br>PO BOX 639<br>10 4TH AVENUE<br>SHELL LAKE, WI 54871 | 11/7/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8280** WASHINGTON COUNTY<br>ATTN: COUNTY COMMISSIONERS; COUNTY CLERK; TREASURER<br>COUNTY OF WASHINGTON<br>PO BOX 297 - 85 COURT STREET<br>MACHIAS, ME 04654 | 11/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8281** WASHINGTON COUNTY<br>COUNTY OF WASHINGTON<br>85 COURT STREET<br>MACHIAS, ME 04654 | 11/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8282** WASHINGTON COUNTY<br>ATTN: COUNTY ATTORNEY<br>GOVERNMENT CENTER BUILDING<br>1 GOVERNMENT CENTER PLACE - SUITE A<br>ABINGDON, VA 24210 | 8/6/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1138**

**Purdue Pharma L.P.**         **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

**Litigation**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| 3.8283   WASHINGTON COUNTY<br>ATTN: CLERK OF THE COUNTY COMMISSION<br>102 NORTH MISSOURI STREET<br>POTOSI, MO 63664 | 8/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8284   WASHINGTON COUNTY<br>ATTN: COUNTY BOARD CHAIRPERSON<br>WASHINGTON COUNTY GOVERNMENT CENTER<br>432 EAST WASHINGTON STREET - SUITE 3029<br>WEST BEND, WI 53095 | 11/28/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8285   WASHINGTON COUNTY<br>ATTN: CHAIR, BOARD OF COMMISSIONERS & CLERK TO THE BOARD OF COMMISSIONERS<br>WASHINGTON COUNTY GOVERNMENT<br>ADMINISTRATIVE BUILDING - PO BOX 1007<br>PLYMOUTH, NC 27962 | 12/10/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8286   WASHINGTON COUNTY<br>ATTN: WASHINGTON COUNTY CLERK<br>100 EAST MAIN STREET<br>JONESBOROUGH, TN 37659 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8287   WASHINGTON COUNTY<br>ATTN: CLERK OF COUNTY COMMISSION<br>COURTHOUSE<br>102 NORTH MISSOURI STREET<br>POTOSI, MO 63664 | 1/29/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8288   WASHINGTON COUNTY<br>ATTN: WASHINGTON COUNTY MAYOR<br>100 EAST MAIN STREET<br>JONESBOROUGH, TN 37659 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8289   WASHINGTON COUNTY, ALABAMA<br>ATTN: COUNTY COMMISSIONER; ADMINISTRATOR; CLERK<br>45 COURT STREET<br>CHATOM, AL 36518-0548 | 2/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8290   WASHINGTON COUNTY, FLORIDA<br>ATTN: CHAIRPERSON OF THE BOARD OF COMMISSIONERS<br>1331 SOUTH BLVD.<br>CHIPLEY, FL 32428 | 4/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8291   WASHINGTON COUNTY, FLORIDA<br>ATTN: CLERK<br>1293 JACKSON AVENUE STE 101<br>CHIPLEY, FL 32428 | 4/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1139**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8292 WASHINGTON COUNTY, GEORGIA<br>ATTN: CHAIRMAN, BOARD OF COMMISSIONERS<br>PO BOX 271<br>119 JONES STREET<br>SANDERSVILLE, GA 31082 | 5/11/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8293 WASHINGTON COUNTY, MISS.<br>P.O. BOX 309<br>GREENVILLE, MS 38702 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8294 WASHINGTON COUNTY, MISS.<br>ATTN: VICE-PRESIDENT, BOARD OF SUPERVISORS<br>PO BOX 158<br>GREENVILLE, MS 38702 | 12/21/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8295 WASHINGTON COUNTY, MN<br>GOVERNMENT CENTER<br>14949 62ND STREET NORTH<br>STILLWATER, MN 55082 | 11/30/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8296 WASHINGTON COUNTY, MN<br>ATTN: CHAIR<br>PO BOX 6<br>14949 62ND ST NORTH<br>STILLWATER, MN 55082 | 11/30/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8297 WASHINGTON COUNTY, OHIO<br>ATTN: WASHINGTON COUNTY BOARD OF COUNTY COMMISSIONERS<br>1115 GILMAN AVENUE<br>MARIETTA, OH 45750 | 11/7/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8298 WASHINGTON COUNTY, TN<br>ATTN: CIRCUIT COURT CLERK<br>108 W. JACKSON BLVD., JONESBOROUGH, TN 37659<br>JONESBOROUGH, TN 37659 | 11/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8299 WASHINGTON COUNTY, TN<br>ATTN: MAYOR WAHINGTON COUNTY AND COUNTY CLERK<br>100 E. MAIN STREET<br>JONESBOROUGH, TN 37959 | 11/19/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8300 WASHINGTON COUNTY, UTAH<br>ATTN: COUNTY CLERK<br>197 EAST TABERNACLE STREET<br>ST. GEORGE, UT 84770 | 4/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8301 WASHINGTON PARISH GOVERNMENT<br>ATTN: PARISH PRESIDENT, CHAIRMAN OF THE PARISH COUNCIL<br>909 PEARL STREET<br>FRANKLINTON, LA 70438-1712 | 5/19/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1140**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8302 WASHINGTON PARISH GOVERNMENT ATTN: PARISH PRESIDENT OF WASHINGTON PARISH GOVERNMENT WASHINGTON PARISH GOVERNMENT 909 PEARL STREET FRANKLINTON, LA 70438-1712 | 5/19/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8303 WASHINGTON POST COMPANY, LLC ATTN: MANAGING MEMBER, OFFICERS, AND AGENTS GRAHAM HOLDINGS, LLC 1300 NORTH 17TH STREET - SUITE 1700 ARLINGTON, VA 22209 | 9/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8304 WASHINGTON POST COMPANY, LLC ATTN: REGISTERED AGENT C T CORPORATION SYSTEM 4701 COX ROAD - SUITE 285 GLEN ALLEN, VA 23060 | 9/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8305 WASHINGTON POST COMPANY, LLC ATTN: MANAGING MEMBER, OFFICERS, AND AGENTS 1150 15TH STREET NW WASHINGTON, DC 20071 | 9/12/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8306 WATAUGA COUNTY, NC ATTN: COUNTY MANAGER & CHAIRMAN OF THE BOARD OF COMMISSIONERS 814 WEST KING STREET SUITE 205 BOONE, NC 28607 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8307 WATAUGA COUNTY, NC ATTN: JOSH STEIN STATE OF NORTH CAROLINA ATTORNEY GENERAL DEPT. OF JUSTICE, P.O.BOX 629 RALEIGH, NC 27602-0629 | 4/17/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8308 WAUKESHA COUNTY, WISCONSIN ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD WAUKESHA COUNTY ADMINISTRATION CENTER 515 WEST MORELAND BLVD.-ROOM 120 WAUKESHA, WI 53188 | 7/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8309 WAUPACA COUNTY ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 107 ROHRER ST CLINTONVILLE, WI 54929 | 11/7/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8310 WAUPACA COUNTY ATTN: CLERK AND CHAIRPERSON OF THE COUNTY BOARD 811 HARDING STREET WAUPACA, WI 54981 | 11/7/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1141**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8311 WAUSHARA COUNTY ATTN: OFFICE OF THE COUNTY CLERK WAUSHARA COUNTY COURTHOUSE 209 S. STE MARIE STREET - PO BOX 488 WAUTOMA, WI 54982 | 1/5/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8312 WAYNE COUNTY ATTN: COUNTY EXECUTIVE 100 COURT CIRCLE PO BOX 848 - SUITE 300 WAYNEBORO, TN 38485 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8313 WAYNE COUNTY ATTN: COUNTY CLERK 100 COURT CIRCLE PO BOX 367, SUITE 200 WAYNESBORO, TN 38485 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8314 WAYNE COUNTY BOARD OF COUNTY COMMISSIONERS ATTN: COUNTY COMMISSIONERS COUNTY ADMINISTRATION BUILDING 428 WEST LIBERTY STREET WOOSTER, OH 44691 | 2/2/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8315 WAYNE COUNTY, GEORGIA ATTN: CHAIRPERSON OF THE WAYNE COUNTY BOARD OF COMMISSIONERS 341 E WALNUT ST JESUP, GA 31546 | 3/28/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8316 WAYNE COUNTY, NORTH CAROLINA ATTN: JOSH STEIN STATE OF NORTH CAROLINA ATTORNEY GENERAL DEPT. OF JUSTICE, P.O.BOX 629 RALEIGH, NC 27602-0629 | 4/27/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8317 WAYNE COUNTY, NORTH CAROLINA 2236 US HIGHWAY 581 NORTH PIKEVILLE, NC 27863 | 4/27/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8318 WAYNE COUNTY, NORTH CAROLINA ATTN: COUNTY MANAGER 224 EAST WALNUT STREET ROOM 466 GOLDSBORO, OH 27530 | 4/27/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8319 WEBER COUNTY, UTAH ATTN: COUNTY CLERK 2380 WASHINGTON BLVD, SUITE #320 OGDEN, UT 84401 | 5/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1142**

**Purdue Pharma L.P.**                                                   Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8320** WEBSTER COUNTY MEMORIAL HOSPITAL, INC. ATTN: REGISTERED AGENT JIM PARKER P.O. BOX 312 WEBSTER SPRINGS, WV 26288 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8321** WEBSTER COUNTY MEMORIAL HOSPITAL, INC. ATTN: PRESIDENT AND CHIEF OPERATING OFFICER 324 MILLER MOUNTAIN DRIVE WEBSTER SPRINGS, WV 26288 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8322** WEBSTER COUNTY, MISSOURI ATTN: COUNTY CLERK 101 SOUTH CRITTENDEN ROOM 12 MARSHFIELD, MO 65706 | 12/21/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8323** WEBSTER HEALTH SERVICES, INC. ATTN: EXECUTIVE OFFICER, AND ADMINISTRATOR 70 MEDICAL PLAZA EUPORA, MS 39744 | 3/19/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8324** WEBSTER HEALTH SERVICES, INC. ATTN: REGISTERED AGENT BRUCE J. TOPPIN 830 SOUTH GLOSTER TUPELO, MS 38801 | 3/19/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8325** WEBSTER PARISH ATTN: PARISH POLICE JURY PRESIDENT, PARISH POLICE JURY VICE-PRESIDENT 401 MAIN STREET 1ST FLOOR - P.O. BOX 389 MINDEN, LA 71058 | 7/27/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8326** WELLMONT HEALTH SYSTEM F/K/A BRMC/HVHMC, INC. ATTN: CHIEF EXECUTIVE OFFICER 303 MED TECH PARKWAY BALLAD HEALTH CORPORATE HEADQUARTERS JOHNSON CITY, TN 37604 | 7/11/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8327** WELLMONT HEALTH SYSTEM F/K/A BRMC/HVHMC, INC. ATTN: REGISTERED AGENT TIMOTHY BELISLE, GENERAL COUNSEL 400 NORTH STATE OF FRANKLIN ROAD - JOHNSON CITY MEDICAL CENTER JOHNSON CITY, TN 37604-6035 | 7/11/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8328** WELLS COUNTY ATTN: CHAIRMAN AND BOARD OF COMMISSIONERS 700 RAILWAY STREET NORTH FESSENDEN, ND 58438 | 7/9/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1143**

**Purdue Pharma L.P.**                                                      **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**     **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8329 WENDY STEWART, INDIVIDUALLY AND AS NEXT FRIEND AND GUARDIAN OF BABY K.J.C., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED ATTN: CELESTE BRUSTOWICZ COOPER LAW FIRM, LLC 1525 RELIGIOUS STREET NEW ORLEANS, LA 70130 | 6/15/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8330 WEST BATON ROUGE FIRE PROTECTION DISTRICT NO. 1 WEST BATON ROUGE PARISH COUNCIL 880 NORTH ALEXANDER AVENUE - P.O. BOX 757 PORT ALLEN, LA 70767 | 10/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8331 West Baton Rouge Fire Protection District No. 1 Attn: Chairman, West Baton Rouge Parish Fire Protection District #1 Civil Service Board, Vice-Chairman, West Baton Rouge Parish Fire Protection District #1 Civil Service Board, Clerk PO Box 757 Port Allen, LA 70767 | 10/26/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8332 WEST BEND MUTUAL INSURANCE COMPANY ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER 1900 SOUTH 18TH AVENUE WEST BEND, WI 53095 | 2/28/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8333 WEST BOCA MEDICAL CENTER, INC. ATTN: PRESIDENT OR CHIEF EXECUTIVE OFFICER OR REGISTERED AGENT 21644 STATE ROAD 7 WEST BOCA, FL 33428 | 5/4/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8334 WEST VIRGINIA UNIVERSITY HOSPITALS INC. ATTN: REGISTERED AGENT CHRISTINE VAGLIENTI 1238 SUNCREDT TOWNE CENTRE MORGANTOWN, WV 26506 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8335 WEST VIRGINIA UNIVERSITY HOSPITALS INC. ATTN: PRESIDENT AND SECRETARY ONE MEDICAL CENTER DRIVE MORGANTOWN, WV 26506 | 4/29/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8336 WEST VOLUSIA HOSPITAL AUTHORITY ATTN: PRESIDENT 131 E NEW YORK AVE DELAND, FL 32724 | 9/10/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8337 WEST VOLUSIA HOSPITAL AUTHORITY ATTN: PRESIDENT P.O. BOX 940 DELAND, FL 32721-0940 | 9/10/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1144**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**  **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8338 | WEST VOLUSIA HOSPITAL AUTHORITY<br>ATTN: ERIC ROMANO<br>ROMANO LAW GROUP<br>801 SPENCER DRIVE<br>WEST PALM BEACH, FL 33409-4027 | 9/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8339 | WEST VOLUSIA HOSPITAL AUTHORITY<br>ATTN: MICHAEL H. KAHN<br>MICHAEL H. KAHN, PA<br>482 NORTH HARBOR CITY BOULEVARD<br>MELBOURNE, FL 32935 | 9/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8340 | WEST VOLUSIA HOSPITAL AUTHORITY<br>ATTN: DOUGLAS R. BEAM<br>DOUGLAS R. BEAM, PA<br>25 WEST HAVEN AVENUE, SUITE C - P.O. BOX 640<br>MELBOURNE, FL 32902-0640 | 9/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8341 | WEST WHARTON COUNTY HOSPITAL DISTRICT<br>ATTN: NATHAN TUDOR<br>TEXAS REGISTERED AGENT AND PRESIDENT<br>303 SANDY CORNER RD., EL CAMPO, TX 77437<br>EL CAMPO, TX 77437 | 3/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8342 | WESTCARE FOUNDATION, INC.<br>ATTN: CHIEF EXECUTIVE OFFICER/PRESIDENT<br>1711 WHITNEY MESA DRIVE<br>HENDERSON, NV 89014-2080 | 5/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8343 | WESTCARE FOUNDATION, INC.<br>ATTN: AARON FORD<br>STATE OF NEVADA ATTORNEY GENERAL<br>OLD SUPREME CT. BLDG. - 100 N. CARSON ST.<br>CARSON CITY, NV 89701 | 5/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8344 | WESTCARE FOUNDATION, INC.<br>ATTN: REGISTERED AGENT<br>701 SOUTH CARSON STREET<br>SUITE 200<br>CARSON CITY, NV 89701 | 5/21/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8345 | WESTCHESTER HEAVY CONSTRUCTION LABORERS LOCAL 60 HEALTH & WELFARE FUND<br>ATTN: PRESIDENT, VICE PRESIDENT, AND SECRETARY-TREASURER<br>LABORERS' LOCAL 60<br>140 BROADWAY<br>HAWTHORNE, NY 10532 | 8/29/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8346 | WESTERN PENNSYLVANIA ELECTRICAL EMPLOYEES INSURANCE TRUST FUND<br>ATTN: BUSINESS FUND MANAGER AND PRESIDENT<br>5 HOT METAL STREET<br>SUITE 200<br>PITTSBURGH, PA 15203 | 12/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✓ | ✓ | ✓ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1145**

Case 7:21-cv-07532-CM Document 158-3 Filed 11/15/21 Page 152 of 1000

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8347** WESTWEGO CITY<br>ATTN: MAYOR, CITY COUNCIL MEMBER<br>CITY HALL<br>1100 FOURTH STREET<br>WESTWEGO, LA 70094 | 1/17/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8348** WETZEL COUNTY COMMISSION<br>ATTN: COMMISSIONERS AND PROSECUTING ATTORNEY<br>200 MAIN STREET<br>NEW MARTINSVILLE, WV 26155 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8349** WETZEL COUNTY COMMISSION<br>MARK A. COLANTONIO<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8350** WETZEL COUNTY COMMISSION<br>JONATHAN E. TURAK<br>GOLD, KHOUREY & TURAK<br>510 TOMLINSON AVENUE<br>MOUNDSVILLE, WV 26041 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8351** WETZEL COUNTY COMMISSION<br>HUNTER J. SHKOLNIK<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8352** WETZEL COUNTY COMMISSION<br>JOSEPH L. CIACCIO<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8353** WETZEL COUNTY COMMISSION<br>SHAYNA E. SACKS<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8354** WETZEL COUNTY COMMISSION<br>ROBERT P. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8355** WETZEL COUNTY COMMISSION<br>SALVATORE C. BADALA<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1146**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8356** WETZEL COUNTY COMMISSION<br>PAUL J. NAPOLI<br>NAPOLI SHKOLNIK PLLC<br>400 BROADHOLLOW ROAD - SUITE 305<br>MELVILLE, NY 11747 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8357** WETZEL COUNTY COMMISSION<br>JOSEPH F. SHAFFER<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8358** WETZEL COUNTY COMMISSION<br>CLAYTON J. FITZSIMMONS<br>FITZSIMMONS LAW FIRM PLLC<br>1609 WARWOOD AVENUE<br>WHEELING, WV 26003 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8359** WETZEL COUNTY COMMISSION<br>SAMUEL D. MADIA<br>SHAFFER MADIA LAW PLLC<br>343 WEST MAIN STREET<br>CLARKSBURG, WV 26301 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8360** WETZEL COUNTY COMMISSION<br>DANIEL J. GUIDA<br>GUIDA LAW OFFICE<br>3374 MAIN STREET<br>WEIRTON, WV 26062 | 12/13/2017<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8361** WHATCOM COUNTY<br>ATTN: COUNTY AUDITOR<br>311 GRAND AVENUE<br>SUITE 103<br>BELLINGHAM, WA 98225 | 6/27/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8362** WHITE COUNTY<br>ATTN: COUNTY EXECUTIVE<br>1 EAST BOCKMAN WAY<br>ROOM 205<br>SPARTA, TN 38583 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8363** WHITE COUNTY<br>ATTN: COUNTY CLERK<br>1 EAST BOCKMAN WAY<br>ROOM 115<br>SPARTA, TN 38583 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8364** WHITE EARTH NATION<br>ATTN: VICE CHAIRMAN OF THE WHITE EARTH<br>NATION/EUGENE TIBBETTS<br>WHITE EARTH TRIBAL HEADQUARTERS<br>35500 EAGLE VIEW ROAD<br>OGEMA, MN 56569 | 5/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1147**

**Purdue Pharma L.P.**                                    **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |
| **Litigation** | | | | | | | |
| **3.8365** WHITE EARTH NATION<br>15542 STATE HIGHWAY 371 NORTHWEST<br>CASS LAKE, MN 56633 | 5/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8366** WHITFIELD COUNTY<br>ATTN: CHAIRMAN<br>201 S HAMILTON ST<br>5TH FLOOR<br>DALTON, GA 30720 | 3/2/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8367** WHITMAN COUNTY<br>ATTN: AUDITOR<br>400 NORTH MAIN STREET<br>COLFAX, WA 99111 | 8/9/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8368** WILCOX COUNTY, ALABAMA<br>ATTN: CIRCUIT CLERK<br>PO BOX 608<br>CAMDEN, AL 36726-0608 | 2/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8369** WILCOX COUNTY, ALBAMA<br>ATTN: CIRCUIT CLERK<br>PO BOX 608<br>CAMDEN, AL 36726-0608 | 2/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8370** WILKES COUNTY<br>ATTN: CHAIRMAN, BOARD OF COMMISSIONERS<br>WILKES COUNTY OFFICES<br>110 NORTH STREET<br>WILKESBORO, NC 28697 | 2/16/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8371** WILKES COUNTY<br>110 NORTH STREET<br>ROOM 101<br>WILKESBORO, NC 28697 | 2/16/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8372** WILKES COUNTY, GEORGIA<br>ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS<br>23 COURT STREET<br>ROOM 222<br>WASHINGTON, GA 30673 | 3/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8373** WILKES-BARRE TOWNSHIP, PENNSYLVANIA<br>ATTN: JOSH SHAPIRO<br>STATE OF PENNSYLVANIA ATTORNEY GENERAL<br>PENNSYLVANIA OFFICE OF ATTORNEY GENERAL - 16TH<br>FLOOR, STRAWBERRY SQUARE<br>HARRISBURG, PA 17120 | 4/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8374** WILKES-BARRE TOWNSHIP, PENNSYLVANIA<br>ATTN: MAYOR<br>150 WATSON STREET<br>WILKES-BARRE TOWNSHIP, PA 18702 | 4/25/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1148**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**  **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8375** WILKINSON COUNTY, GEORGIA ATTN: CHAIRMAN 100 BACON STREET IRWINTON, GA 31042 | 5/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8376** WILKINSON COUNTY, GEORGIA ATTN: CHAIRMAN COUNTY BOARD OF COMMISSIONERS, COUNTY MANAGER PO BOX 161 IRWINTON, GA 31042 | 5/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8377** WILKINSON COUNTY, GEORGIA ATTN: CHAIRMAN BOARD OF COMMISSIONERS 100 BACON STREET IRWINTON, GA 31042 | 5/16/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8378** WILLIAM C. MASSE, JR., IN HIS OFFOCIAL CAPACITY AS THE SHERRIFF OF BALDWIN COUNTY, GEORGIA ATTN: CHAIRMAN OF THE BOARD OF COMMISSIONERS 121 N. WILKINSON STREET SUITE 314 MILLEDGEVILLE, GA 31061 | 6/4/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8379** WILLIAM HILTON, SHERIFF OF RAPIDES PARISH ATTN: SHERIFF RAPIDES PARISH SHERIFF'S OFFICE 700 MURRAY STREET ALEXANDRIA, LA 71301 | 12/6/2017 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8380** WILLIAMS COUNTY ATTN: CHAIRMAN AND BOARD OF COMMISSIONERS COURT HOUSE BUILDING (3RD FLOOR) 600 COOPER AVENUE GRAFTON, ND 58237 | 6/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8381** WILLIAMS COUNTY WILLIAMS COUNTY ADMINISTRATION BUILDING 206 E BROADWAY - PO BOX 2047 GRAFTON, ND 58802-2047 | 6/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8382** WILLIAMS COUNTY ATTN: CHAIRMAN OF THE COMMISSIONERS 222 14TH ST E WILLISTON, ND 58801 | 6/14/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8383** WILLIAMS COUNTY BOARD OF COUNTY COMMISSIONERS ATTN: PRESIDENT OF THE BOARD OF COMMISSIONERS, VICE-PRESIDENT OF THE BOARD OF COMMISSIONERS ONE COURTHOUSE SQUARE 4TH FLOOR BRYAN, OH 43506 | 3/15/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1149**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8384 WILLIAMS COUNTY BOARD OF COUNTY COMMISSIONERS<br>1425 E HIGH STREET<br>SUITE 115<br>BRYAN, OH 43506 | 3/15/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8385 WILLIAMSON COUNTY, TN<br>ATTN: MAYOR<br>1320 WEST MAIN STREET<br>SUITE 125<br>FRANKLIN, TN 37064 | 1/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8386 WILLIAMSON COUNTY, TN<br>1320 WEST MAIN STREET<br>SUITE 135<br>FRANKLIN, TN 37064 | 1/3/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8387 WINN PARISH, LOUISIANA<br>ATTN: WINN PARISH POLICE JURY<br>119 W MAIN STREET #102<br>WINNFIELD, LA 71483 | 5/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8388 WINNEBAGO COUNTY<br>ATTN: CHAIRPERSON OF THE COUNTY BOARD AND COUNTY CLERK<br>404 ELM STREET<br>ROCKFORD, IL 61101 | 3/13/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8389 WINNEBAGO TRIBE OF NEBRASKA<br>ATTN: TRIBAL COUNCIL CHAIRMAN, CHIEF EXECUTIVE OFFICER AND TRIBAL ATTORNEY<br>WINNEBAGO TRIBE OF NEBRASKA<br>100 BUFF STREET<br>WINNEBAGO, NE 68071 | 5/8/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8390 WINONA COUNTY<br>177 MAIN STREET<br>WINONA, MN 55987 | 3/28/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8391 WINONA COUNTY<br>ATTN: CHAIR<br>133 WHISPERING LANE<br>WINONA, MN 55987 | 3/28/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8392 WINSTON MEDICAL CENTER<br>ATTN: CHIEF EXECUTIVE OFFICER, DIRECTOR OF MARKETING/PUBLIC RELATIONS, AND REGISTERED AGENT<br>17550 EAST MAIN STREET<br>P. O. BOX 967<br>LOUISVILLE, MS 39339 | 2/1/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1150**

**Purdue Pharma L.P.**            **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Litigation

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8393 | WIRT COUNTY COMMISSION<br>ATTN: COUNTY PROSECUTING ATTORNEY<br>P.O. BOX 387<br>ELIZABETH, WV 26143 | 5/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8394 | WIRT COUNTY COMMISSION<br>ATTN: COMMISSIONERS OR COUNTY CLERK<br>P.O. BOX 53<br>ELIZABETH, WV 26143 | 5/3/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8395 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: PAUL T. FARRELL, JR.<br>GREENE, KETCHUM, FARRELL, BAILEY & TWEEL LLP<br>419 - 11TH STREET (25701) - P.O. BOX 2389<br>HUNGTINGTON, WV 25724-2389 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8396 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: BERT KETCHUM<br>GREENE, KETCHUM, FARRELL, BAILEY & TWEEL LLP<br>419 - 11TH STREET (25701) - P.O. BOX 2389<br>HUNGTINGTON, WV 25724-2389 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8397 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: J. BURTON LEBLANC, IV<br>BARON & BUDD, P.C.<br>3102 OAK LAWN AVENUE - SUITE 1100<br>DALLAS, TX 75219 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8398 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN:TERRY G. KILGORE<br>KILGORE LAW OFFICE<br>197 WEST JACKSON - P.O. BOX 669<br>GATE CITY, VA 24251 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8399 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: ANTHONY J. MAJESTRO<br>POWELL & MAJESTRO, PLLC<br>405 CAPITOL STREET - SUITE P-1200<br>CHARLESTON, WV 25301 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8400 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: PETER J. MOUGEY<br>LEVIN, PAPANTONIO, THOMAS, MITCHELL ET AL.<br>316 SOUTH BAYLEN STREET - SUITE 600<br>PENSACOLA, FL 32502-5996 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8401 | WISE COUNTY BOARD OF SUPERVISORS<br>ATTN: JAMES C. PETERSON<br>HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC<br>NORTHGATE BUSINESS PARK<br>CHARLESTON, WV 25311 | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1151**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8402 WISE COUNTY BOARD OF SUPERVISORS ATTN: MICHAEL J. FULLER, JR. MCHUGH FULLER LAW GROUP, PLLC 97 ELIAS WHIDDON ROAD HATTIESBURG, MS 39402 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8403 WISE COUNTY BOARD OF SUPERVISORS ATTN: WISE COUNTY BOARD OF SUPERVISORS C/O OFFICE OF CNTY ADMIN FOR CHAIRMAN OF THE BD P.O. BOX 570 WISE, VA 24293-0570 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8404 WISE COUNTY BOARD OF SUPERVISORS ATTN: WISE COUNTY BOARD OF SUPERVISORS C/O OFFICE OF CNTY ADMIN FOR CHAIRMAN OF THE BD 206 EAST MAIN STREET - SUITE 223 WISE, VA 24293 | UNKNOWN ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8405 WOOD COUNTY ATTN: COUNTY CLERK WOOD COUNTY COURTHOUSE 1ST FLOOR, ROOM 101 - 400 MARKET STREET WISCONSIN RAPIDS, WI 54494 | 3/7/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8406 WOOD COUNTY COMMISSION ATTN: PROSECUTING ATTORNEY 317 MARKET ST. PARKERSBURG, WV 26102 | 5/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8407 WOOD COUNTY COMMISSION ATTN: COUNTY CLERK 1 COURT SQUARE P.O. BOX 1474 PARKERSBURG, WV 26102 | 5/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8408 WOOD COUNTY COMMISSION ATTN: COMMISSIONERS #1 COURT SQUARE SUITE 205 PARKERSBURG, WV 26101 | 5/3/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8409 WOODRING, VICKI NOT AVAILABLE | 1/6/2015 ACCOUNT NO.: WC390D80347 | ☐ | ☑ | ☐ | Workers Compensation | ☐ | UNDETERMINED |
| 3.8410 WORTH COUNTY ATTN: AUDITOR; CHAIR OF SUPERVISORS 1000 CENTRAL AVENUE NORTHWOOD, IA 50459 | 3/8/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1152**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8411 WORTH COUNTY, GEORGIA<br>ATTN: CHAIRMAN BOARD OF COMMISSIONERS, COUNTY ADMINISTRATOR<br>201 NORTH MAIN STREET, SUITE 30<br>SYLVESTER, GA 31791 | 5/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8412 WORTH COUNTY, MISSOURI<br>ATTN: CLERK OF WORTH COUNTY COMMISSION<br>11 WEST 4TH STREET<br>GRANT CITY, MO 64456 | 6/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8413 WRIGHT COUNTY, MINNESOTA<br>ATTN: CHAIRPERSON<br>WRIGHT COUNTY GOVERNMENT CENTER<br>10 2ND STREET NW<br>BUFFALO, MN 55313 | 7/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8414 WRIGHT COUNTY, MINNESOTA<br>10 2ND STREET NW<br>ROOM 230<br>BUFFALO, MN 55313 | 7/10/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8415 WRIGHT COUNTY, MISSOURI<br>ATTN: COUNTY CLERK AND COMMISSIONER<br>WRIGHT COUNTY COURTHOUSE<br>125 COURT SQUARE - P.O. BOX 98<br>HARTVILLE, MO 65667 | 6/6/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8416 WRIGHT TOWNSHIP, PENNSYLVANIA<br>ATTN: CHAIRMAN OF THE BOARD OF SUPERVISORS<br>WRIGHT TOWNSHIP MUNICIPAL BUILDING<br>321 S MOUNTAIN BOULEVARD<br>MOUNTAIN TOP, PA 18707 | 6/5/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8417 WRIGHT TOWNSHIP, PENNSYLVANIA<br>ATTN: JOSH SHAPIRO<br>STATE OF PENNSYLVANIA ATTORNEY GENERAL<br>PENNSYLVANIA OFFICE OF ATTORNEY GENERAL - 16TH FLOOR, STRAWBERRY SQUARE<br>HARRISBURG, PA 17120 | 6/5/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8418 WYANDOT COUNTY BOARD OF COUNTY COMMISSIONERS<br>ATTN: BOARD OF COUNTY COMMISSIONERS<br>109 S. SANDUSKY AVENUE<br>SANDUSKY, OH 43351 | 9/18/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8419 WYANDOTTE NATION<br>ATTN: CHIEF AND EXECUTIVE OFFICER OF THE WYANDOTTE NATION<br>64700 EAST HIGHWAY 60<br>WYANDOTTE, OK 74370 | 6/14/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1153**

**Purdue Pharma L.P.**             **Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**    List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8420** WYDETTE WILLIAMS, SHERIFF OF EAST CARROLL PARISH ATTN: SHERIFF P. O. BOX 246 LAKE PROVIDENCE, LA 71254 | 1/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8421** WYDETTE WILLIAMS, SHERIFF OF EAST CARROLL PARISH EAST CARROLL SHERIFF'S ANNEX BUILDING 301 FIRST STREET LAKE PROVIDENCE, LA 71254 | 1/25/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8422** WYOMING COUNTY, PA ATTN: COUNTY COMMISSIONER, CHAIRMAN AND COUNTY CLERK 1 COURTHOUSE SQUARE SECOND FL TUNKHANNOCK, PA 18657 | 4/5/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8423** WYOMING COUNTY, PA ATTN: JOSH SHAPIRO STATE OF PENNSYLVANIA ATTORNEY GENERAL PENNSYLVANIA OFFICE OF ATTORNEY GENERAL - 16TH FLOOR, STRAWBERRY SQUARE HARRISBURG, PA 17120 | 4/5/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8424** WYTHE COUNTY, VIRGINIA ATTN: COMMONWEALTH ATTORNEY SOUTH FOURTH STREET SUITE 105 WYTHEVILLE, VA 24382 | 7/19/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8425** YADKIN COUNTY ATTN: CHAIRMAN, COUNTY COMMISSIONERS & COUNTY MANAGER 217 E. WILLOW ST. PO BOX 220 YADKINVILLE, NC 27055 | 12/1/2017 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8426** YALOBUSHA COUNTY, MISSISSIPPI PO BOX 260 COFFEEVILLE, MS 38922 | 3/1/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8427** YALOBUSHA COUNTY, MISSISSIPPI ATTN: PRESIDENT, BOARD OF SUPERVISORS AND YALOBUSHA COUNTY CHANCERY CLERK 201 BLACKMUR DRIVE PO BOX 664 WATER VALLEY, MS 38965-0664 | 3/1/2019 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8428** YANCEY COUNTY 110 TOWN SQUARE ROOM 11 BURNSVILLE, NC 28714 | 8/23/2018 ACCOUNT NO.: NOT AVAILABLE | ✔ | ✔ | ✔ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1154**

Purdue Pharma L.P.                                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---------|-----------------------------------------------------|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| **3.8429** YANCEY COUNTY<br>ATTN: CHAIRMAN, BOARD OF COMMISSIONERS<br>YANCEY COUNTY GOVERNMENT<br>110 TOWN SQUARE<br>BURNSVILLE, NC 28714 | 8/23/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8430** YELLOW MEDICINE COUNTY, MINNESOTA<br>ATTN: COUNTY ADMINISTRATOR, CHAIRMAN BOARD OF COMMISSIONERS<br>COMMISSIONERS ROOM IN THE GOVERNMENT CENTER<br>180 8TH AVENUE<br>GRANITE FALLS, MN 56241 | 5/14/2019<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8431** YERINGTON PAIUTE TRIBE<br>ATTN: TRIBAL COUNCIL CHAIRMAN; TRIBAL CHIEF EXECUTIVE OFFICER<br>YERINGTON PAIUTE TRIBE<br>171 CAMPBELL LANE<br>YERINGTON, NV 89447 | 12/3/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8432** YORK COUNTY<br>ATTN: COUNTY COMMISSIONERS; COUNTY CLERK; TREASURER<br>149 JORDAN SPRINGS ROAD<br>ALFRED, ME 04002 | 11/21/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8433** YORK COUNTY<br>ATTN: COUNTY COMMISSIONERS; COUNTY CLERK; TREASURER<br>45 KENNEBUNK ROAD<br>ALFRED, ME 04002 | 11/21/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8434** YORK COUNTY<br>ATTN: COUNTY COMMISSIONERS; COUNTY MANAGER<br>45 KENNEBUNK ROAD<br>ALFRED, ME 04002 | 11/21/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8435** YORK COUNTY<br>ATTN: COUNTY COMMISSIONERS; COUNTY MANAGER<br>149 JORDAN SPRINGS ROAD<br>ALFRED, ME 04002 | 11/21/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8436** YUKON-KUSKOKWIM HEALTH CORPORATION<br>ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER<br>PO BOX 528<br>BETHEL, AK 99559 | 10/30/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| **3.8437** YUROK TRIBE<br>ATTN: OFFICE OF THE TRIBAL ATTORNEY<br>190 KLAMATH BLVD<br>KLAMATH, CA 95548 | 3/12/2018<br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1155**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |
| --- | --- |

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
| --- | --- | --- | --- | --- | --- | --- | --- |

### Litigation

| | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 3.8438 | YUROK TRIBE<br>ATTN: CHAIRPERSON<br>190 KLAMATH BLVD<br>PO BOX 1027<br>KLAMATH, CA 95548 | 3/12/2018<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8439 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: MICHAEL H. PARK<br>ATTN: MICHAEL H PARK<br>745 FIFTH AVENUE - SUITE 500<br>NEW YORK, NY 10151 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8440 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: ASHLEY KELLER<br>KELLER LENKNER LLC<br>150 NORTH RIVERSIDE PLACE - SUITE 4270<br>CHICAGO, IL 60606 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8441 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: BENJAMIN H. RICHMAN<br>EDELSON PC<br>350 NORTH LASALLE STREET - 14TH FLOOR<br>CHICAGO, IL 60654 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8442 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: JAY EDELSON<br>EDELSON P.C.<br>350 NORTH LASALLE STREET - 14TH FLOOR<br>CHICAGO, IL 60654 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8443 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: RAFEY S. BALABANIAN<br>EDELSON PC<br>123 TOWNSEND STREET - SUITE 100<br>SAN FRANCISCO, CA 94107 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8444 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: SETH MEYER<br>KELLER LENKNER LLC<br>150 NORTH RIVERSIDE PLAZA - SUITE 2570<br>CHICAGO, IL 60606 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8445 | ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED<br>ATTN: STEVEN G. KLUENDER<br>THE PREVIANT LAW FIRM SC<br>310 WEST WISCONSIN AVE - SUITE 100 MW<br>MILWAUKEE, WI 53203 | 4/26/2019<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1156**

**Purdue Pharma L.P.**                                        **Case Number:   19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:**   **List All Creditors with NONPRIORITY Unsecured Claims**

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8446 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: THOMAS R. MCCARTHY CONSOVOY MCCARTHY PARK PLLC 3033 WILSON BOULEVARD - SUITE 700 ARLINGTON, VA 22201 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8447 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: TODD LOGAN EDELSON PC 123 TOWNSEND STREET - SUITE 100 SAN FRANCISCO, CA 94107 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8448 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: TRAVIS LENKNER KELLER LENKNER LLC 150 NORTH RIVERSIDE PLAZA - SUITE 2570 CHICAGO, IL 60606 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8449 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: CASEY PAUL SHORTS PREVIANT LAW FIRM 310 WEST WISCONSIN AVE - SUITE 100 MILWAUKEE, WI 53207 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8450 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: WILLIAM S. CONSOVOY CONSOVOY MCCARTHY PARK PLLC 3033 WILSON BLVD - STE 700 ARLINGTON, VA 22201 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8451 ZACHARY R. SCHNEIDER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED ATTN: DAVID I. MINDELL EDELSON PC 350 N LASALLE ST - 14TH FL CHICAGO, IL 60654 | 4/26/2019 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8452 ZEMBLE, GERALD NOT AVAILABLE | 5/30/2012 ACCOUNT NO.: WC555A61609 | ☐ | ☑ | ☐ | Workers Compensation | ☐ | UNDETERMINED |
| 3.8453 ZENITH INSURANCE COMPANY ATTN: PRESIDENT AND CHIEF OPERATING OFFICER & CHAIRMAN OF THE BOARD 21255 CALIFA STREET WOODLAND HILLS, CA 91367 | 10/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

**NAS1157**

Purdue Pharma L.P.

Case Number: 19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 2:** List All Creditors with NONPRIORITY Unsecured Claims

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|
| **Litigation** | | | | | | | |
| 3.8454 ZENITH INSURANCE COMPANY ATTN: AGENT FOR SERVICE OF PROCESS CT CORPORATION SYSTEM C/O NATIONAL REGISTERED AGENTS, INC. - 818 WEST SEVENTH STREET, SUITE 930 NEW YORK, NY 10005 | 10/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8455 ZEPEDA, TANIA NOT AVAILABLE | 3/13/2017 ACCOUNT NO.: P 22014958901 | ☐ | ☑ | ☐ | General | ☐ | UNDETERMINED |
| 3.8456 ZNAT INSURANCE COMPANY ATTN: PRESIDENT AND CHIEF EXECUTIVE OFFICER 21255 CALIFA STREET WOODLAND HILLS, CA 91367 | 10/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |
| 3.8457 ZNAT INSURANCE COMPANY ATTN: AGENT FOR SERVICE OF PROCESS C/O CT CORPORATION SYSTEM C/O NATIONAL REGISTERED AGENTS, INC. - 111 EIGHTH AVENUE, 13TH FLOOR NEW YORK, NY 10011 | 10/2/2018 ACCOUNT NO.: NOT AVAILABLE | ☑ | ☑ | ☑ | Opioid Matter | ☐ | UNDETERMINED |

Litigation Total: **UNDETERMINED**

**NAS1158**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
|---|---|

| Creditor's Name, Mailing Address Including Zip Code | Date Claim Was Incurred And Account Number | C | U | D | Basis For Claim | Offset | Amount of Claim |
|---|---|---|---|---|---|---|---|

### Unpaid Prepetition Trade Payables to Affiliated Entities

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3.8458  MUNDIPHARMA RESEARCH LTD<br>194 CAMBRIDGE SCIENCE PARK<br>CAMBRIDGE,  CB4 0A<br>UNITED KINGDOM | UNKNOWN<br><br>ACCOUNT NO.:<br>NOT AVAILABLE | ☐ | ☐ | ☐ | | ☐ | $75,909 |

**Unpaid Prepetition Trade Payables to Affiliated Entities Total:**       **$75,909**

**NAS1159**

**Purdue Pharma L.P.**                                                    Case Number:  19-23649 (RDD)

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 2: | List All Creditors with NONPRIORITY Unsecured Claims |
| --- | --- |

| | |
| --- | --- |
| Total: All Creditors with NONPRIORITY Unsecured Claims | $14,250,045 |

**NAS1160**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---------|---------------------------------------------------|

4.  List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

| Creditor's Name, Mailing Address Including Zip Code | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| **4.1**    NONE | | |

**NAS1161**

Case 7:21-cv-07532-CM Document 158-3 Filed 11/15/21 Page 168 of 1000

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule E/F: Creditors Who Have Unsecured Claims

**Part 4:**    **Total Amounts of the Priority and Nonpriority Unsecured Claims**

5.    **Add the amounts of priority and nonpriority unsecured claims.**

|  |  | **Total of claim amounts** |
|---|---|---|
| 5a.  **Total claims from Part 1** | 5a. | $1,627,548 |
| 5b.  **Total claims from Part 2** | 5b.  **+** | $14,250,045 |
| 5c.  **Total of Parts 1 and 2** | 5c. | $15,877,593 |
| Lines 5a + 5b = 5c. | | |

**NAS1162**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

1.  **Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B).

2.  **List all contracts and unexpired leases**

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Service and/or Supply Agreements** | | | | | |
| 2. 1  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 25, 2016 | | 100003 | ☐ | 1798 CONSULTANTS INC | ATTN: ROSHAWN BLUNT, MANAGING DIRECTOR 828 PROSPECT ST SUITE H LA JOLLA, CA 92037 |
| 2. 2  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 15, 2016 | | 100004 | ☐ | 3D COMMUNICATIONS, LLC | ATTN: NATHAN GEDE, ESQ. 15480 ANNAPOLIS ROAD SUITE 202 PMB 198 BOWIE, MD 20715 |
| 2. 3  AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 31, 2016 | | 100006 | ☐ | 4TH DOWN SOFTWARE DEVELOPMENT, LLC | ATTN: JAMES BODAJLO, VP SOLUTIONS 9 BRADY ROAD WARREN, NJ 07059 |
| 2. 4  AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 31, 2016 | | 100008 | ☐ | 4TH DOWN SOLUTIONS, LLC | ATTN: JAMES BODAJLO, VP SOLUTIONS 9 BRADY ROAD WARREN, NJ 07059 |
| 2. 5  ANTHONY H. WILLIAMS CSA CW2365159 (LH.RA) EFFECTIVE JANUARY 14, 2019 | 1/31/2020 | 105935 | ☐ | A H WILLIAMS | NOT AVAILABLE |
| 2. 6  SERVICE AGREEMENT DATED JULY 17, 1998 | | 100010 | ☐ | AAI | ATTN: GENERAL COUNSEL 1206 NORTH 23RD STREET WILMINGTON, NC 28405 |
| 2. 7  PROJECT SPECIFICATION ORDER #9 TO MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 08, 2015 | | 100011 | ☐ | AAIPHARMA SERVICES CORP. | ATTN: GENERAL COUNSEL 2320 SCIENTIFIC PARK DRIVE WILMINGTON, NC 28405 |

**NAS1163**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 8  LIMITED PARTNERSHIP AGREEMENT DATED APRIL 01, 1993 | | 100012 | ☐ | AB GENERICS L.P. | C/O/ THE PRENTICE-HALL CORPORATION SYSTEM, INC. 32 LOOCKERMAN SQUARE SUITE L-100 DOVER, DE 19901 |
| 2. 9  LIMITED PARTNERSHIP AGREEMENT DATED APRIL 01, 1993 | | 100013 | ☐ | AB GENERICS L.P. | ATTN: STUART D. BAKER CHADBOURNE & PARKE 30 ROCKEFELLER PLAZA NEW YORK, NY 10112 |
| 2. 10  DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN ABHAI, LLC AND CERTAIN ASSOCIATED COMPANIES AND PURDUE PHARMA L.P., DATED DECEMBER 22, 2017 | | 106207 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 11  DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN ABHAI, LLC AND CERTAIN ASSOCIATED COMPANIES AND PURDUE PHARMA L.P., DATED DECEMBER 22, 2017 | | 106211 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 12  DISTRIBUTION AND SUPPLY AGREEMENT DATED DECEMBER 22, 2017 | | 100033 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 13  PHARMACOVIGILANCE AGREEMENT DATED DECEMBER 22, 2017 | | 100034 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 14  QUALITY AGREEMENT DATED DECEMBER 22, 2017 | | 100036 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 15  AMENDMENT NO. 2 TO MASTER PROJECT SPECIFICATION ORDER DATED FEBRUARY 17, 2017 | | 100044 | ☐ | ABSORPTION SYSTEMS LP | ATTN: GENERAL COUNSEL OAKLAND CORPORATE CENTER 436 CREAMERY WAY, SUITE 600 EXTON, PA 19341 |

**NAS1164**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 16 AMENDMENT NO. 3 TO MASTER LABORATORY SERVICES AGREEMENT DATED FEBRUARY 17, 2017 | | 100043 | ☐ | ABSORPTION SYSTEMS LP | ATTN: GENERAL COUNSEL OAKLAND CORPORATE CENTER 436 CREAMERY WAY, SUITE 600 EXTON, PA 19341 |
| 2. 17 AMENDMENT NO. 3 TO MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF OCTOBER 10, 2018 | | 100042 | ☐ | ABSORPTION SYSTEMS LP | ATTN: GENERAL COUNSEL OAKLAND CORPORATE CENTER 436 CREAMERY WAY, SUITE 600 EXTON, PA 19341 |
| 2. 18 MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF MARCH 18, 2011 | | 100045 | ☐ | ABSORPTION SYSTEMS LP | ATTN: GENERAL COUNSEL OAKLAND CORPORATE CENTER 436 CREAMERY WAY, SUITE 600 EXTON, PA 19341 |
| 2. 19 PROJECT AGREEMENT DATED JULY 02, 2003 | | 100046 | ☐ | ABT ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 2503 CAVES FOREST ROAD OWINGS MILLS, MD 21117 |
| 2. 20 PROJECT AGREEMENT DATED OCTOBER 08, 2003 | | 100047 | ☐ | ABT ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 2503 CAVES FOREST ROAD OWINGS MILLS, MD 21117 |
| 2. 21 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED AUGUST 01, 2018 | | 100059 | ☐ | ACCENCIO LLC | ATTN: GENERAL COUNSEL 2417 WELSH RD STE 21 PHILADELPHIA, PA 19114 |
| 2. 22 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 19, 2017 | | 100067 | ☐ | ACLAIRO PHARMACEUTICAL DEVELOPMENT GROUP, INC | ATTN: EMILIA KOSTADINOVA 1950 OLD GALLOWS ROAD SUITE 300 VIENNA, VA 22182 |
| 2. 23 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 100070 | ☐ | ACTAVIS INC | ATTN: CHIEF LEGAL OFFICER - GLOBAL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07053 |

**NAS1165**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 24 QUALITY AGREEMENT DATED AUGUST 20, 2014 | | 100078 | ☐ | ACTAVIS PHARMA INC | ATTN: CHIEF LEGAL OFFICER - GLOBAL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07053 |
| 2. 25 AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED SEPTEMBER 26, 2014 | | 100081 | ☐ | ACTAVIS PHARMA, INC. | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 26 AMENDMENT NO. 1 TO PHARMACOVIGILANCE AGREEMENT DATED DECEMBER 15, 2015 | | 100079 | ☐ | ACTAVIS PHARMA, INC. | ATTN: CHIEF LEGAL OFFICER - GLOBAL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07053 |
| 2. 27 AMENDMENT NO. 2 TO PHARMACOVIGILANCE AGREEMENT EFFECTIVE AS OF FEBRUARY 29, 2016 | | 100080 | ☐ | ACTAVIS PHARMA, INC. | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 28 PHARMACOVIGILANCE AGREEMENT EXECUTED JULY 07, 2014 | | 100082 | ☐ | ACTAVIS PHARMA, INC. | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 29 DISTRIBUTION AND SUPPLY AGREEMENT EFFECTIVE AS OF JULY 31, 2009 | | 100087 | ☐ | ACTAVIS TOTWA LLC | ATTN: GENERAL COUNSEL 4 TAFT ROAD TOTOWA, NJ 07512 |
| 2. 30 AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED OCTOBER 31, 2017 | | 100093 | ☐ | ACTIVUS SOLUTIONS, LLC | ATTN: GENERAL COUNSEL PO BOX 1034 YARMOUTH, ME 04096 |
| 2. 31 AMENDMENT #1 TO STATEMENT OF WORK EFFECTIVE AS OF NOVEMBER 10, 2017 | | 100094 | ☐ | ACTIVUS SOLUTIONS, LLC. | ATTN: GENERAL COUNSEL PO BOX 1034 YARMOUTH, ME 04096 |

NAS1166

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 32 | MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 06, 2018 | | 100097 | ☐ | ADARE PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL PRINCETON PIKE CORPORATE CENTER 1200 LENOX DRIVE, SUITE 100 LAWERENCEVILLE, NJ 08648 |
| 2. 33 | PROED COMMUNICATIONS INC MSA CW2364054 MSR AD COM (LH.RA) DATED OCTOBER 04, 2018 | | 100098 | ☐ | ADCOM | ATTN: GENERAL COUNSEL |
| 2. 34 | PROPOSAL FOR TRAFFIC ENGINEERING SERVICES DATED MAY 15, 2002 | | 100101 | ☐ | ADLER CONSULTING, TRANSPORTATION PLANNING & TRAFFIC ENGINEERING, PLLC | ATTN: GENERAL COUNSEL 235 MAIN STREET WHITE PLAINS, NY 10601 |
| 2. 35 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 20, 2015 | | 100104 | ☐ | ADVANCED CLINICAL, LLC | ATTN: GENERAL COUNSEL 10 PARKWAY NORTH, SUITE 350 DEERFIELD, IL 60015 |
| 2. 36 | AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 11, 2003 | | 100107 | ☐ | ADVANCED PAIN MANAGEMENT AND REHABILITATION | ATTN: GENERAL COUNSEL HILLTOP MEDICAL CENTER 1788 REPUBLIC ROAD #200 VIRGINIA BEACH, VA 23454 |
| 2. 37 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF DECEMBER 30, 2003 | | 100109 | ☐ | ADVANCED PAIN MANAGEMENT AND REHABILITATION, P.C. | ATTN: GENERAL COUNSEL HILLTOP MEDICAL CENTER 1788 REPUBLIC ROAD #200 VIRGINIA BEACH, VA 23454 |
| 2. 38 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 09, 2002 | | 100110 | ☐ | ADVANCED PAIN MANAGEMENT AND REHABILITATION, P.C. | ATTN: GENERAL COUNSEL HILLTOP MEDICAL CENTER 1788 REPUBLIC ROAD #200 VIRGINIA BEACH, VA 23454 |
| 2. 39 | STUDY SPECIFICATION ORDER #002 TO MASTER SERVICES AGREEMENT DATED 09-AUGUST-02 EFFECTIVE AS OF DECEMBER 30, 2003 | | 100108 | ☐ | ADVANCED PAIN MANAGEMENT AND REHABILITATION, P.C. | ATTN: STEVEN GERSHON, MD HILLTOP MEDICAL CENTER 1788 REPUBLIC RD. #200 VIRGINIA BEACH, VA 23454 |
| 2. 40 | SEARCH FIRM AGREEMENT EFFECTIVE AS OF JULY 15, 2009 | | 100111 | ☐ | ADVANCED RECRUITERS, INC | ATTN: GENERAL COUNSEL 1192 TRIOPIA ROAD CONCORD, IL 62631 |

**NAS1167**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 41 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 01, 2016 | | 100113 | ☐ | AECOM TECHNICAL SERVICES, INC | ATTN: GENERAL COUNSEL PURDUE: 4701 PURDUE DRIVE WILSON, NC 27893 1600 PERIMETER PARK DRIVE, SUITE 400 MORRISVILLE, NC 27560 |
| 2. 42 | AMENDMENT #2 TO MASTER SERVICES AGREEMENT DATED SEPTEMBER 29, 2016 | | 100117 | ☐ | AGILENT TECHNOLOGIES INC. | ATTN: GENERAL COUNSEL 2850 CENTERVILLE ROAD WILMINGTON, DE 19808 |
| 2. 43 | MSA DATED FEBRUARY 10, 2014 | | 100119 | ☐ | AIRGAS, INC. | 259 N. RADNOR-CHESTER ROAD, SUITE 100 RADNOR, PA 19087 |
| 2. 44 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2016 | | 100120 | ☐ | AIRMID CONSULTING LIMITED | ATTN: ANTONIA DANIEL RICH GOCH, HALFWAY BRIDGE BANGOR, GWYNEDD LL57 3AX |
| 2. 45 | TERMS AND CONDITIONS EXECUTED APRIL 07, 2015 | | 100123 | ☐ | AKAMAI TECHNOLOGIES, INC. | NOT AVAILABLE |
| 2. 46 | ALACRITA CONSULTING INC CSA CW2365284 (LH.RA) EFFECTIVE JANUARY 25, 2019 | 1/24/2020 | 105943 | ☐ | ALACRITA CONSULTING INC | NOT AVAILABLE |
| 2. 47 | AMENDMENT #2 TO MASTER LABORATORY AND CLINICAL SUPPLIES SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 12, 2017 | | 100132 | ☐ | ALBANY MOLECULAR RESEARCH, INC. | ATTN: GENERAL COUNSEL 26 CORPORATE CIRCLE POB 1508 ALBANY, NY 12212 |
| 2. 48 | STATEMENT OF WORK TO MASTER LABORATORY AND CLINICAL SUPPLIES SERVICES AGREEMENT DATED JANUARY 05, 2017 | | 100131 | ☐ | ALBANY MOLECULAR RESEARCH, INC. | ATTN: GENERAL COUNSEL 26 CORPORATE CIRCLE POB 1508 ALBANY, NY 12212 |
| 2. 49 | MASTER SUPPLY AGREEMENT DATED JANUARY 1, 2015 (LAST AMENDED IN OCTOBER 29, 2015) BETWEEN ALCALIBER, S.A., AND THE COMPANY | | 106217 | ☐ | ALCALIBER, S.A. | NOT AVAILABLE |

**NAS1168**

Purdue Pharma L.P.                                                            Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 50 AMENDMENT NO.1 MASTER SERVICES AGREEMENT DATED SEPTEMBER 04, 2018 | | 100135 | ☐ | ALL STAR SOFTWARE SYSTEMS, LLC | ATTN: GENERAL COUNSEL 440 SMITH STREET MIDDLETOWN, CT 06457 |
| 2. 51 STATEMENT OF WORK #2018-1 UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 10, 2018 | | 100136 | ☐ | ALL STAR SOFTWARE SYSTEMS, LLC | ATTN: GENERAL COUNSEL 440 SMITH STREET MIDDLETOWN, CT 06457 |
| 2. 52 CHANGE ORDER #1 TO PROJECT SPECIFICATION ORDER DATED NOVEMBER 17, 2003 | | 100141 | ☐ | ALLIANCE MARKETING SERVICE GROUP, INC. | ATTN: GENERAL COUNSEL 2370 YORK ROAD, SUITE B-1 JAMISON, PA 18929 |
| 2. 53 AMENDMENT NO. 1 TO MASTER SERVICE PROVIDER AGREEMENT DATED JUNE 28, 2001 | | 100142 | ☐ | ALLIANCE MARKETING SERVICES GROUP, INC. | ATTN: GENERAL COUNSEL 2370 YORK ROAD, SUITE B-1 JAMISON, PA 18929 |
| 2. 54 CALL CENTER OPERATIONS FOR STUDY PROTOCOL EFFECTIVE AS OF NOVEMBER 01, 2002 | | 100143 | ☐ | ALLIANCE MARKETING SERVICES GROUP, INC. | ATTN: SHIRLEY ORTLEIB 2370 YORK ROAD BUILDING B JAMISON, PA 18929 |
| 2. 55 AMENDMENT NO. 4 TO MASTER MANUFACTURING SERVICES AGREEMENT DATED MARCH 14, 2018 | | 100145 | ☐ | ALMAC CLINICAL SERVICES (IRELAND) LIMITED | ATTN: GENERAL COUNSEL RIVERSIDE ONE SIR JOHN RICHARDSONS QUAY DUBLIN 2 IRAN, ISLAMIC REPUBLIC OF |
| 2. 56 QUALITY AGREEMENT EFFECTIVE AS OF NOVEMBER 18, 2015 | | 100155 | ☐ | ALMAC PHARMA SERVICES LLC | ATTN: GENERAL COUNSEL 2661 AUDUBON ROAD AUDUBON, PA 19403 |
| 2. 57 ALPHA SCRIP SOW HYSINGLA CW2366640 (SD.RA) EFFECTIVE APRIL 26, 2019 | 12/31/2019 | 106167 | ☐ | ALPHA SCRIP INCORPORATED | NOT AVAILABLE |
| 2. 58 ALPHA SCRIP, INCORPORATED - MASTER SERVICES AGREEMENT CW2366530 (SD.RA) EFFECTIVE APRIL 19, 2019 | 12/31/2021 | 106160 | ☐ | ALPHA SCRIP INCORPORATED | NOT AVAILABLE |

**NAS1169**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 59　ALPHA SCRIP, INCORPORATED - SOW OXYCONTIN CW2366642 (SD.RA) EFFECTIVE APRIL 26, 2019 | 12/31/2019 | 106168 | ☐ | ALPHA SCRIP INCORPORATED | NOT AVAILABLE |
| 2. 60　STUDY SPECIFICATION ORDER #003 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JANUARY 22, 2004 | | 100159 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 61　AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JUNE 14, 2004 | | 100161 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 62　AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF OCTOBER 10, 2003 | | 100162 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 63　AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 22, 2005 | | 100172 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 64　AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 100163 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 65　AMENDMENT NO.3 TO STUDY SPECIFICATION EFFECTIVE AS OF JANUARY 19, 2005 | | 100171 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 66　STUDY SPECIFICATION ORDER #002 TO MASTER CLINICAL TRIAL AGREEMENT DATED OCTOBER 10, 2003 | | 100160 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |

NAS1170

**Purdue Pharma L.P.**                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 67  STUDY SPECIFICATION ORDER #004 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF MARCH 11, 2005 | | 100173 | ☐ | ALTOONA CENTER FOR CLINICAL RESEARCH, PC | ATTN: LISA RILEY 1125 OLD RT. 220 NORTH P.O. BOX 1018 DUNCANSVILLE, PA 16635 |
| 2. 68  AMENDMENT NO. 1 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 11, 2014 | | 100174 | ☐ | ALTREOS RESEARCH PARTNERS, INC. | ATTN: GENERAL COUNSEL 50 WANDA ROAD TORONTO, ONTARIO M6P 1C6 CANADA |
| 2. 69  PROFESSIONAL VALUATION SERVICES CONTRACT DATED DECEMBER 07, 2005 | | 100180 | ☐ | AMERICAN APPRAISAL ASSOCIATES | ATTN: GENERAL COUNSEL 6 LANDMARK SQUARE, 4TH FLOOR STAMFORD, CT 06901 |
| 2. 70  AMENDMENT NO. 4 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100197 | ☐ | AMERICASDOCTOR, INC. | ATTN: GENERAL COUNSEL 1325 TRI-STATE PARKWAY GURNEE, IL 60031 |
| 2. 71  MEDVANTX INC. MSA CW2365465 (SD.RA) EFFECTIVE FEBRUARY 14, 2019 | 2/13/2022 | 106171 | ☐ | AMERIPHARM INC | NOT AVAILABLE |
| 2. 72  AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2014 | | 100202 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 73  AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2014 | | 100203 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 74  AMENDMENT NO. 1 TO LOGISTICS SERVICES AGREEMENT  DATED JULY 01, 2018 | | 100206 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 75  AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2015 | | 100204 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 76  AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2015 | | 100205 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |

**NAS1171**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 77 AMENDMENT NO. 3 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2017 | | 100209 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 78 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2012 | | 100198 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 79 DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2012 | | 100201 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: VP BRANDED RX 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 80 DRUG DISTRIBUTION SERVICE AGREEMENT  EFFECTIVE AS OF APRIL 01, 2006 | | 100199 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 81 DRUG DISTRIBUTION SERVICE AGREEMENT AMENDMENT EFFECTIVE AS OF OCTOBER 01, 2009 | | 100200 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 82 LOGISTICS SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2015 | | 100212 | ☐ | AMERISOURCEBERGEN DRUG CORPORATION | ATTN: GROUP GENERAL COUNSEL 3101 GAYLORD PARKWAY FRISCO, TX 75034 |
| 2. 83 AMENDMENT #3 TO MASTER SERVICES AGREEMENT DATED OCTOBER 09, 2017 | | 100222 | ☐ | ANALYSIS GROUP, INC. | NOT AVAILABLE |
| 2. 84 AMENDMENT TO MASTER SERVICES AGREEMENT DATED NOVEMBER 28, 2016 | | 100221 | ☐ | ANALYSIS GROUP, INC. | NOT AVAILABLE |
| 2. 85 ANAQUA INC. - SOW 2019-1 DOCKETING SERVICES 2019-2022 CW2366578 (PB.RA) EFFECTIVE APRIL 01, 2019 | 3/31/2022 | 106043 | ☐ | ANAQUA INC | NOT AVAILABLE |
| 2. 86 IP RIGHTS MAINTENANCE SERVICE AGREEMENT DATED DECEMBER 19, 2016 | | 100224 | ☐ | ANAQUA SERVICES, INC. | ATTN: GENERAL COUNSEL 31 ST. JAMES AVENUE 11TH FLOOR BOSTON, MA 02116 |

**NAS1172**

**Purdue Pharma L.P.**                                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 87 AMENDMENT #1 TO THE IPRMSA AGREEMENT DATED JUNE 09, 2017 | | 100227 | ☐ | ANAQUA, INC. | ATTN: CHIEF EXECUTIVE OFFICER 745 BOYLSTON STREET, 6TH FLOOR BOSTON, MA 02116 |
| 2. 88 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 24, 2011 | | 100225 | ☐ | ANAQUA, INC. | ATTN: CHIEF EXECUTIVE OFFICER 745 BOYLSTON STREET, 6TH FLOOR BOSTON, MA 02116 |
| 2. 89 SUBSCRIPTION AGREEMENT DATED DECEMBER 15, 2016 | | 100226 | ☐ | ANAQUA, INC. | ATTN: CHIEF EXECUTIVE OFFICER 745 BOYLSTON STREET, 6TH FLOOR BOSTON, MA 02116 |
| 2. 90 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED APRIL 15, 2016 | | 100231 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |
| 2. 91 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 100230 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |
| 2. 92 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  DATED JUNE 30, 2017 | | 100232 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |
| 2. 93 AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED JUNE 01, 2018 | | 100233 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |
| 2. 94 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100228 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |
| 2. 95 DISTRIBUTION PERFORMANCE AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 100229 | ☐ | ANDA INC. | ATTN: GENERAL COUNSEL 2915 WESTON ROAD WESTON, FL 33331 |

**NAS1173**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 96 CONTRACT SERVICES QUALITY AGREEMENT DATED SEPTEMBER 03, 2015 | | 100234 | ☐ | ANDERSONBRECON INC. DBA PCI OF ILLINOIS | ATTN: GENERAL COUNSEL 4545 ASSEMBLY DRIVE ROCKFORD, IL 61109 |
| 2. 97 AMENDMENT #7 TO SUPPLY AGREEMENT DATED MARCH 31, 2017 | | 100235 | ☐ | ANDERSONBRECON, INC. D/B/A/ PCI OF ILLINOIS F/K/A ANDERSON PACKAGING INC. | ATTN: GENERAL COUNSEL 4545 ASSEMBLY DRIVE ROCKFORD, IL 61109 |
| 2. 98 GLOBAL CLINICAL SUPPLY SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 31, 2015 | | 100236 | ☐ | ANDERSONBRECON, INC., D/B/A PCI OF ILLINOIS | ATTN: GENERAL COUNSEL 4545 ASSEMBLY DRIVE ROCKFORD, IL 61109 |
| 2. 99 SEARCH FIRM AGREEMENT DATED JANUARY 25, 2012 | | 100237 | ☐ | ANDOS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 2 STONE HOUSE ROAD MENDHAM, NJ 07945 |
| 2. 100 ANDREW CUTLER WO CW2365580 SUPPORT AWARENESS OF ADHANSIA XRÂ¢ (LH.RA) EFFECTIVE FEBRUARY 07, 2019 | 12/31/2019 | 105944 | ☐ | ANDREW J. CULTER, M.D. | ATTN: GENERAL COUNSEL 10800 ALPHARETTA HIGHWAY SUITE 208 ROSEWELL, GA 30076 |
| 2. 101 AUTHORSHIP AGREEMENT DATED MARCH 27, 2018 | | 100244 | ☐ | ANGELA DE VEAUGH-GEISS, PH.D., MS | ATTN: GENERAL COUNSEL 333 EAST 43RD STREET #503 NEW YORK, NY 10017 |
| 2. 102 MANAGEMENT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2018 | | 100249 | ☐ | APC WORKFORCE SOLUTIONS, LLC D/B/A ZEROCHAOS | ATTN: LEGAL 420 S. ORANGE AVENUE ORLANDO, FL 32601 |
| 2. 103 MASTER SERVICES AND CLOUD AGREEMENT EFFECTIVE AS OF NOVEMBER 22, 2016 | | 100251 | ☐ | APEX HEALTH INNOVATIONS, LLC | ATTN: GENERAL COUNSEL 3158 EVELYN AVENUE SIMI VALLEY, CA 93063 |
| 2. 104 DISTRIBUTION AND SUPPLY AGREEMENT DATED AUGUST 31, 2009 | | 100256 | ☐ | APOTEX CORP. | ATTN: CHIEF COMMERCIAL OFFICER 2400 NORTH COMMERCE PARKWAY SUITE 400 WESTON, FL 33326 |

**NAS1174**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 105 QUALITY AGREEMENT DATED DECEMBER 17, 2009 | | 100259 | ☐ | APOTEX INC. | ATTN: CHIEF COMMERCIAL OFFICER; VP GLOBAL INTELLECTUAL PROPERTIES 2400 NORTH COMMERCE PARKWAY SUITE 400 WESTON, FL 33326 |
| 2. 106 APTUS HEALTH - SOW 2019-1 PATIENT FEEDBACK PROGRAM CW2366538 (SD.RA) EFFECTIVE APRIL 01, 2019 | 12/31/2019 | 106154 | ☐ | APTUS HEALTH | ATTN: GENERAL COUNSEL 55 WALKERS BRROK DR STE 500 READING, MA 01867 |
| 2. 107 APTUS HEALTH AMENDMENT TO MSA CW2364608 (SD.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2021 | 106141 | ☐ | APTUS HEALTH | ATTN: GENERAL COUNSEL 55 WALKERS BRROK DR STE 500 READING, MA 01867 |
| 2. 108 RIDER #1 TO ORDER FORM #1 UNDER CLOUD SERVICES AGREEMENT DATED SEPTEMBER 15, 2014 | | 100265 | ☐ | ARIBA, INC | ATTN: GENERAL COUNSEL 910 HERMOSA COURT SUNNYSIDE, CA 94085 |
| 2. 109 ORDER FORM #1 UNDER GENERAL TERMS AND CONDITIONS FOR SAP CLOUD SERVICES EFFECTIVE AS OF SEPTEMBER 30, 2014 | | 100266 | ☐ | ARIBA, INC. | ATTN: GENERAL COUNSEL 910 HERMOSA COURT SUNNYSIDE, CA 94085 |
| 2. 110 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 02, 2004 | | 100267 | ☐ | ARKANSAS CHILDREN'S HOSPITAL RESEARCH INSTITUTE | NOT AVAILABLE |
| 2. 111 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2003 | | 100273 | ☐ | ARTHRITIS AND OSTEOPOROSIS CENTER, P.A. | NOT AVAILABLE |
| 2. 112 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 100271 | ☐ | ARTHRITIS AND OSTEOPOROSIS CENTER, P.A. | NOT AVAILABLE |
| 2. 113 AMENDMENT NO. 2 TO STUDY SPECIFICATION DATED DECEMBER 02, 2004 | | 100274 | ☐ | ARTHRITIS AND OSTEOPOROSIS CENTER, P.A. | NOT AVAILABLE |

**NAS1175**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 114  MASTER SERVICES AND CLOUD AGREEMENT EFFECTIVE AS OF SEPTEMBER 15, 2015 | | 100278 | ☐ | ARTIA SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 2619 CENTENNIAL BLVD SUITE 102 TALLAHASSEE, FL 32308 |
| 2. 115  DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN PURDUE PHARMA, L.P. AND ASCENT PHARMACEUTICALS, INC. DATED MARCH 27, 2019 | | 106221 | ☐ | ASCENT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 400 S. TECHNOLOGY DRIVE CENTRAL SLIP, NY 11722 |
| 2. 116  AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 29, 2003 | | 100289 | ☐ | ASSOCIATED MEDICAL SERVICES | NOT AVAILABLE |
| 2. 117  AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF JUNE 14, 2004 | | 100290 | ☐ | ASSOCIATED MEDICAL SERVICES | NOT AVAILABLE |
| 2. 118  AMENDMENT NO. 4 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100291 | ☐ | ASSOCIATED MEDICAL SERVICES | NOT AVAILABLE |
| 2. 119  ATHENA SOLUTIONS GROUP, LLC CSA CW2366605 (LH.RA) EFFECTIVE MAY 01, 2019 | 12/31/2020 | 105979 | ☐ | ATHENA SOLUTIONS LLC | NOT AVAILABLE |
| 2. 120  SERVICES AGREEMENT DATED FEBRUARY 01, 2008 | | 100297 | ☐ | ATLANTIC AIR ENTERPRISES | ATTN: GENERAL COUNSEL 856 ELSTON STREET RAHWAY, NJ 07065 |
| 2. 121  MASTER SERVICES AGREEMENT DATED MARCH 06, 2008 | | 100299 | ☐ | ATLANTIC INFORMATION MANAGEMENT GROUP, LLC | ATTN: GENERAL COUNSEL ONE COMMERCE CENTER 10320 LITTLE PATUXENT PARKWAY, SUITE 1104 COLUMBIA, MD 21044 |
| 2. 122  STATEMENT OF WORK DATED DECEMBER 04, 2001 | | 100300 | ☐ | ATMOSPHERE INTERACTIVE | ATTN: GENERAL COUNSEL 1375 BROADWAY NEW YORK, NY 10018 |

**NAS1176**

**Purdue Pharma L.P.**                                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 123 WORK ORDER UNDER MASTER CRO SERVICES AGREEMENT DATED OCTOBER 01, 2016 | | 100307 | ☐ | ATP, LLC D/B/A PPD MEDICAL COMMUNICATIONS | ATTN: GENERAL COUNSEL 1400 PERIMETER PARK DRIVE MORRISVILLE, NC 27560 |
| 2. 124 ATRASH, SHEBLI CSA CW2367013 (SS.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2020 | 105914 | ☐ | ATRASH, SHEBLI | NOT AVAILABLE |
| 2. 125 AVALERE HEALTH LLC AMEND MSA CW2365725 (SD.RA) EFFECTIVE MARCH 12, 2019 | 3/11/2022 | 106185 | ☐ | AVALERE HEALTH | NOT AVAILABLE |
| 2. 126 PROJECT SPECIFICATION ORDER NO. 9 DATED NOVEMBER 15, 2001 | | 100319 | ☐ | AVALON HEALTH SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1601 WALNUT STREET SUITE 1507 PHILADELPHIA, PA 19102 |
| 2. 127 STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 04, 2005 | | 100328 | ☐ | AVANCIA CLINICAL RESEARCH | ATTN: KAREN BUSCH 1900 N. UNIVERSITY DRIVE SUITE 103 PEMBROKE PINES, FL 33024 |
| 2. 128 AMENDMENT #1: TO STUDY SPECIFICATION ORDER #002 DATED FEBRUARY 22, 2005 | | 100329 | ☐ | AVANCIA RESEARCH LLC | NOT AVAILABLE |
| 2. 129 MASTER LABORATORY SERVICES AGREEMENT DATED FEBRUARY 27, 2018 | | 100335 | ☐ | AVISTA PHARMA SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3501 TRICENTER BOULEVARD SUITE C DURHAM, NC 27713-1849 |
| 2. 130 MASTER PROFESSIONAL SERVICES AGREEMENT DATED MARCH 18, 2004 | | 100339 | ☐ | AXWAY INC. | NOT AVAILABLE |
| 2. 131 STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF JANUARY 26, 2004 | | 100355 | ☐ | BARRY BOCKOW, MD | ATTN: GENERAL COUNSEL 16122 8TH AVENUE SW SUITE D-3 SEATTLE, WA 98166 |

**NAS1177**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 132 | AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 100356 | ☐ | BARRY BOCKOW, MD, P.S. | ATTN: GENERAL COUNSEL 16122 8TH AVENUE SW SUITE D-3 SEATTLE, WA 98166 |
| 2. 133 | BASHIR, QAISER CSA CW2367021 (SS.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2020 | 105917 | ☐ | BASHIR, QAISER | NOT AVAILABLE |
| 2. 134 | QUALITY AGREEMENT EFFECTIVE AS OF AUGUST 12, 2014 | | 100360 | ☐ | BD RX INC | ATTN: GENERAL COUNSEL 1 BECTON DRIVE FRANKLIN LAKES, NJ 07417 |
| 2. 135 | AMENDMENT NO. 1 TO PHARMACOVIGILANCE AGREEMENT DATED OCTOBER 01, 2015 | | 100361 | ☐ | BD RX INC. | ATTN: GENERAL COUNSEL 1 BECTON DRIVE FRANKLIN LAKES, NJ 07417 |
| 2. 136 | PHARMACOVIGILANCE AGREEMENT EFFECTIVE AS OF JUNE 02, 2014 | | 100362 | ☐ | BD RX INC. | ATTN: GENERAL COUNSEL 1 BECTON DRIVE FRANKLIN LAKES, NJ 07417 |
| 2. 137 | AMENDMENT NO. 1 TO MASTER STATEMENT OF WORK DATED DECEMBER 14, 2017 | | 100367 | ☐ | BELLUSCI CREATIVE LLC | ATTN: MARK BELLUSCI 104 HEMLOCK DRIVE STAMFORD, CT 06902 |
| 2. 138 | MASTER SERVICES AGREEMENT DATED JANUARY 12, 2017 | | 100366 | ☐ | BELLUSCI CREATIVE LLC | ATTN: MARK BELLUSCI 104 HEMLOCK DRIVE STAMFORD, CT 06902 |
| 2. 139 | AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED JANUARY 01, 2016 | | 100371 | ☐ | BELWAY ELECTRICAL CONTRACTING CORPORATION | ATTN: GENERAL COUNSEL 66 SOUTH CENTRAL AVENUE ELMSFORD, NY 10523 |
| 2. 140 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2013 | | 100370 | ☐ | BELWAY ELECTRICAL CONTRACTING CORPORATION | ATTN: GENERAL COUNSEL 66 SOUTH CENTRAL AVENUE ELMSFORD, NY 10523 |
| 2. 141 | AMENDMENT NO. 2 TO STUDY SPECIFICATION EFFECTIVE AS OF JANUARY 21, 2004 | | 100377 | ☐ | BENCHMARK RESEARCH | ATTN: MELISSA REYNOLDS 4504 BOAT CLUB ROAD SUITE 800 FORTH WORTH, TX 76135 |

**NAS1178**

**Purdue Pharma L.P.**                                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 142   STUDY SPECIFICATION ORDER #001 DATED DECEMBER 31, 2001 | | 100374 | ☐ | BENCHMARK RESEARCH | ATTN: MELISSA REYNOLDS 4504 BOAT CLUB ROAD SUITE 800 FORTH WORTH, TX 76135 |
| 2. 143   STUDY SPECIFICATION ORDER #002 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JANUARY 21, 2004 | | 100375 | ☐ | BENCHMARK RESEARCH | ATTN: MELISSA REYNOLDS 4504 BOAT CLUB ROAD SUITE 800 FORTH WORTH, TX 76135 |
| 2. 144   BENEFITFOCUS.COM INC HIPPA ADDENDUM CW2366072 (SD.RA) EFFECTIVE MARCH 29, 2019 | 3/28/2022 | 106149 | ☐ | BENEFITFOCUS.COM INC | ATTN: GENERAL COUNSEL DEPT 3383 PO BOX 123383 DALLAS, TX 75312 |
| 2. 145   BENEFITFOCUS.COM INC ORDER FORM CW2366070(SD.RA) EFFECTIVE MARCH 29, 2019 | 3/28/2022 | 106150 | ☐ | BENEFITFOCUS.COM INC | ATTN: GENERAL COUNSEL DEPT 3383 PO BOX 123383 DALLAS, TX 75312 |
| 2. 146   BENEFITFOCUS.COM INC. CLIENT SERVICES AGREEMENT CW2366057 (SD.RA) EFFECTIVE MARCH 29, 2019 | 3/28/2022 | 106147 | ☐ | BENEFITFOCUS.COM INC | ATTN: GENERAL COUNSEL DEPT 3383 PO BOX 123383 DALLAS, TX 75312 |
| 2. 147   BENNANI, NORA CSA CW2367283 (SS.SD) EFFECTIVE JUNE 15, 2019 | 6/30/2020 | 105928 | ☐ | BENNANI, NORA | NOT AVAILABLE |
| 2. 148   AGREEMENT FOR LEGAL SERVICES DATED SEPTEMBER 21, 2001 | | 100378 | ☐ | BENNETT BIGELOW & LEEDOM, P.S. | NOT AVAILABLE |
| 2. 149   MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 100383 | ☐ | BFPE INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 115 BESTWOOD DRIVE CLAYTON, NC 27520 |
| 2. 150   MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 100385 | ☐ | BFPE INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 115 BESTWOOD DRIVE CLAYTON, NC 27520 |
| 2. 151   BHARGAVE, SUVRAT CSA 01012019 CW2364579 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105927 | ☐ | BHARGAVE, SUVRAT | NOT AVAILABLE |

**NAS1179**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 152  AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED OCTOBER 13, 2003 | | 100387 | ☐ | BI, A TRADENAME OF SCHOENECKERS | ATTN: GENERAL COUNSEL 7630 BUSH LAKE ROAD MINNEAPOLIS, MN 55439 |
| 2. 153  SOW RE PRODUCT LAUNCH AWARDS PROGRAM DATED SEPTEMBER 09, 2003 | | 100386 | ☐ | BI, A TRADENAME OF SCHOENECKERS | ATTN: GENERAL COUNSEL 7630 BUSH LAKE ROAD MINNEAPOLIS, MN 55439 |
| 2. 154  MASTER SERVICES AGREEMENT DATED JULY 01, 2016 | | 100388 | ☐ | BIOCENTRIC, INC. | ATTN: GENERAL COUNSEL 700 COLLINGS AVENUE COLLINGSWOOD, NJ 08107 |
| 2. 155  PROJECT SPECIFICATION ORDER #2017-2 UNDER MASTER SERVICES AGREEMENT DATED JUNE 08, 2017 | | 100394 | ☐ | BIOKEY, INC. | ATTN: GENERAL COUNSEL 44370 OLD WARM SPRINGS BOULEVARD FREMONT, CA 94538 |
| 2. 156  PROJECT SPECIFICATION ORDER DATED JUNE 30, 2017 | | 100395 | ☐ | BIOKEY, INC. | ATTN: GENERAL COUNSEL 44370 OLD WARM SPRINGS BLVD. FREMONT, CA 94538 |
| 2. 157  QUALITY AGREEMENT DATED FEBRUARY 07, 2013 | | 100392 | ☐ | BIOKEY, INC. | ATTN: GENERAL COUNSEL 44370 OLD WARM SPRINGS BOULEVARD FREMONT, CA 94538 |
| 2. 158  STATEMENT OF WORK #1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 25, 2016 | | 100393 | ☐ | BIOKEY, INC. | ATTN: GENERAL COUNSEL 44370 OLD WARM SPRINGS BOULEVARD FREMONT, CA 94538 |
| 2. 159  AGREEMENT RE: CLINICAL TRIAL SERVICES EFFECTIVE AS OF JUNE 12, 2001 | | 100399 | ☐ | BIO-KINETIC EUROPE, LTD. | ATTN: GENERAL COUNSEL 83-85 GREAT VICTORIA STREET BELFAST, NORTHERN IRELAND BT2 7AF |
| 2. 160  MASTER LABORATORY SERVICES AGREEMENT DATED MARCH 01, 2017 | | 100406 | ☐ | BIORELIANCE CORPORATION | ATTN: GENERAL COUNSEL 14920 BROSCHART ROAD ROCKVILLE, MD 20850-3499 |

**Purdue Pharma L.P.**    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 161 MASTER PROJECT SPECIFICATION ORDER DATED JANUARY 13, 2017 | | 100407 | ☐ | BIORELIANCE CORPORATION LABS, INC. | ATTN: GENERAL COUNSEL 14920 BROASCHART ROAD ROCKVILLE, MD 20850 |
| 2. 162 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2011 | | 100408 | ☐ | BIOTAGE LLC | ATTN: GENERAL COUNSEL 10430 HARRIS OAKS BOULEVARD SUITE C CHARLOTTE, NC 28269 |
| 2. 163 AMENDMENT #2 TO MASTER SERVICE AGREEMENT DATED APRIL 01, 2016 | | 100409 | ☐ | BIOTAGE, LLC | ATTN: GENERAL COUNSEL 10430 HARRIS OAKS BOULEVARD SUITE C CHARLOTTE, NC 28269 |
| 2. 164 BLUE MATTER LLC - AMENDMENT TO MSA CW2366441 (SD.RA) EFFECTIVE APRIL 11, 2019 | 7/31/2022 | 106157 | ☐ | BLUE MATTER LLC | ATTN: ASHWIN DANDEKAR 400 OYSTER POINT BOULEVARD SUITE 309 SOUTH SAN FRANCISCO, CA 94080 |
| 2. 165 MASTER SERVICES AGREEMENT DATED AUGUST 01, 2016 | | 100419 | ☐ | BLUE MATTER LLC | ATTN: ASHWIN DANDEKAR 400 OYSTER POINT BOULEVARD SUITE 309 SOUTH SAN FRANCISCO, CA 94080 |
| 2. 166 AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED JULY 31, 2018 | | 100420 | ☐ | BLUEPRINT RESEARCH GROUP, LLC | NOT AVAILABLE |
| 2. 167 MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 13, 2007 | | 100421 | ☐ | BMC SOFTWARE SERVICES, INC. | ATTN: GENERAL COUNSEL 2101 CITY WEST BLVD. HOUSTON, TX 77042-2827 |
| 2. 168 STATEMENT OF WORK DATED JUNE 27, 2009 | | 100423 | ☐ | BMC SOFTWARE SERVICES, INC. | ATTN: GENERAL COUNSEL 2101 CITYWEST BLVD. HOUSTON, TX 77042 |
| 2. 169 STATEMENT OF WORK DATED MAY 15, 2007 | | 100422 | ☐ | BMC SOFTWARE SERVICES, INC. | ATTN: GENERAL COUNSEL 2101 CITYWEST BLVD. HOUSTON, TX 77042 |

NAS1181

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 170 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 27, 2003 | | 100431 | ☐ | BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA FOR THE UNIVERSITY OF ALABAMA AT BIRMINGHAM | ATTN: GENERAL COUNSEL |
| 2. 171 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 27, 2003 | | 100433 | ☐ | BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA FOR THE UNIVERSITY OF ALABAMA AT BIRMINGHAM | ATTN: GENERAL COUNSEL |
| 2. 172 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 19, 2003 | | 100435 | ☐ | BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS ON BEHALF OF THE UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES | ATTN: GENERAL COUNSEL |
| 2. 173 | STUDY SPECIFICATION ORDER 001 DATED APRIL 06, 2004 | | 100434 | ☐ | BOARD OF TRUSTEES OF THE UNIVERSITY OF ARKANSAS ON BEHALF OF THE UNIVERSITY OF ARKANSAS FOR MEDICAL SCIENCES | ATTN: GENERAL COUNSEL 4301 WEST MARKHAM STREET, MS515 LITTLE ROCK, AR 72205 |
| 2. 174 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 27, 2016 | | 100437 | ☐ | BOSTON CONSULTING GROUP INC. | ATTN: GENERAL COUNSEL ONE PROSPECT STREET SUMMIT, NJ 07901 |
| 2. 175 | BRAJAK CONSULTING LLC - SOW 2019-1 MONITORING SERVICES CW2367916 (SD.RA) EFFECTIVE AUGUST 12, 2019 | 12/31/2019 | 106140 | ☐ | BRAJAK CONSULTING LLC | 6 SHADY MILL LN MILFORD, NJ 08848-1529 |
| 2. 176 | BRAJAK CONSULTING LLC AMENDMENT TO MCSA CW2367221 (SD.RA) EFFECTIVE MAY 01, 2019 | 4/30/2022 | 106180 | ☐ | BRAJAK CONSULTING LLC | 6 SHADY MILL LN MILFORD, NJ 08848-1529 |
| 2. 177 | STATEMENT OF WORK #2017-1 DATED MARCH 01, 2017 | | 100453 | ☐ | BRAJAK CONSULTING LLC | ATTN: GENERAL COUNSEL 6 SHADY MILL LANE MILFORD, NJ 08848 |
| 2. 178 | STATEMENT OF WORK DATED APRIL 14, 2011 | | 100451 | ☐ | BRAJAK CONSULTING LLC | ATTN: GENERAL COUNSEL 6 SHADY MILL LNAE MILFORD, NJ 08848 |

**NAS1182**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 179 STATEMENT OF WORK DATED MAY 01, 2016 | | 100452 | ☐ | BRAJAK CONSULTING LLC | ATTN: GENERAL COUNSEL 6 SHADY MILL LANE MILFORD, NJ 08848 |
| 2. 180 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 25, 2016 | | 100457 | ☐ | BRAND DEVELOPMENT NETWORK INTERNATIONAL | ATTN: RICHARD CZERNIAWSKI 430 ABBOTSFORD RD KENILWORTH, IL 60043 |
| 2. 181 BRETT SNODGRASS MSN, APRN, FNP-BC AMD CSA CW2356956 (KP.RA) DATED OCTOBER 09, 2017 | | 100462 | ☐ | BRETT SNODGRASS, MSN, APRN, FNP-BC | ATTN: GENERAL COUNSEL |
| 2. 182 RELOCATION SERVICES AGREEMENT EFFECTIVE AS OF JUNE 17, 2014 | | 100467 | ☐ | BROOKFIELD RELOCATION INC. | ATTN: GENERAL COUNSEL 16260 NORTH 71ST STREET SCOTTSDALE, AR 85254 |
| 2. 183 BROWN, THOMAS CSA 01012019 CW2364630 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105920 | ☐ | BROWN, THOMAS | NOT AVAILABLE |
| 2. 184 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 100475 | ☐ | BRUNSWICK GROUP LLC | NOT AVAILABLE |
| 2. 185 AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED MAY 23, 2016 | | 100480 | ☐ | BUREAU VERITAS NORTH AMERICA, INC. | NOT AVAILABLE |
| 2. 186 AMENDMENT NO. 2 TO STATEMENT OF WORK #1 EFFECTIVE AS OF JANUARY 17, 2017 | | 100482 | ☐ | BURKHART CONSULTING LLC | ATTN: GENERAL COUNSEL 12223 QUORN LANE RESTON, VA 20191 |
| 2. 187 BURKHART CONSULTING LLC - HCP CSA CW2367692 (LH.RA) EFFECTIVE JULY 15, 2019 | 7/14/2023 | 105967 | ☐ | BURKHART CONSULTING LLC | ATTN: GENERAL COUNSEL 12223 QUORN LANE RESTON, VA 20191 |
| 2. 188 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 100487 | ☐ | BURLINGTON DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 91 CATAMOUNT DRIVE MILTON, VT 05468 |

**NAS1183**

**Purdue Pharma L.P.**                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 189 | AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  DATED JUNE 30, 2017 | | 100488 | ☐ | BURLINGTON DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 91 CATAMOUNT DRIVE MILTON, VT 05468 |
| 2. 190 | AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100485 | ☐ | BURLINGTON DRUG COMPANY INC. | ATTN: MEG GLAZER 91 CATAMOUNT DRIVE MILTON, VT 05468 |
| 2. 191 | DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100486 | ☐ | BURLINGTON DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 91 CATAMOUNT DRIVE MILTON, VT 05468 |
| 2. 192 | BUSINESSWIRE SERVICEAGREEMENT CW2366691 NEWSHQ (LH.RA) EFFECTIVE MAY 21, 2019 | 5/20/2020 | 105983 | ☐ | BUSINESS WIRE INC | NOT AVAILABLE |
| 2. 193 | PROJECT SPECIFICATION ORDER EFFECTIVE AS OF FEBRUARY 01, 2017 | | 100490 | ☐ | BUZZEOPDMA LLC | ATTN: GENERAL COUNSEL SUITE 301 RICHMOND, VA 23225 |
| 2. 194 | PROJECT SPECIFICATION ORDER DATED DECEMBER 22, 2008 | | 100492 | ☐ | BUZZEOPDMA, LLC | ATTN: GENERAL COUNSEL SUITE 301 RICHMOND, VA 23225 |
| 2. 195 | AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED SEPTEMBER 03, 2018 | | 100493 | ☐ | C SPACE | NOT AVAILABLE |
| 2. 196 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100494 | ☐ | C&E COMMUNICATIONS INC. DBA DE WITT COMMUNICATIONS | PO BOX 4952 EAST LANSING, MI 48826 |
| 2. 197 | SEARCH FIRM AGREEMENT DATED APRIL 20, 2012 | | 100495 | ☐ | C.A. MCINNIS & ASSOCIATES | ATTN: GENERAL COUNSEL 203 BROAD STREET MILFORD, CT 06460 |
| 2. 198 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 08, 2017 | | 100496 | ☐ | C/O DIRAY MEDIA, INC. | ATTN: GENERAL COUNSEL 327 DANBURY ROAD WILTON, CT 06897 |

**NAS1184**

**Purdue Pharma L.P.**                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 199 STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 08, 2017 | | 100497 | ☐ | C/O DIRAY MEDIA, INC. | ATTN: GENERAL COUNSEL 327 DANBURY ROAD WILTON, CT 06897 |
| 2. 200 AMENDMENT #4 TO MASTER AGREEMENT DATED FEBRUARY 27, 2012 | | 100498 | ☐ | C/O EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: LEGAL DEPARTMENT EXPRESS SCRIPTS, INC. ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 201 DEVELOPMENT AGREEMENT DATED DECEMBER 03, 1999 | | 100501 | ☐ | C/O PRIMATECH | ATTN: GENERAL COUNSEL 84-35 62ND DRIVE SUITE T-65 MIDDLE VILLAGE, NY 11379 |
| 2. 202 LETTER: CONSENT EXECUTED DECEMBER 12, 2013 | | 100503 | ☐ | C4PAIN | ATTN: HANS CHER, HOECK MD PHD HOBROVEJ 42 D, 3 AALBORG DK-9000 GERMANY |
| 2. 203 STATEMENT OF WORK EFFECTIVE AS OF JUNE 30, 2008 | | 100505 | ☐ | CA, INC. | ATTN: GENERAL COUNSEL ONE CA PLAZA ISLANDIA, NY 11749 |
| 2. 204 FOOD SERVICE OPERATING CONTRACT EFFECTIVE AS OF OCTOBER 06, 2009 | | 100506 | ☐ | CAFE 107, INC, | ATTN: HOLLY TRUMP PO BOX 3202 PRINCETON, NJ 08543 |
| 2. 205 CAMBRIDGE UNIVERSITY TECHNICAL SERVICES LIMITED (CUTS)  CSA CW2365516 (LH.RA) EFFECTIVE FEBRUARY 01, 2019 | 12/31/2019 | 105948 | ☐ | CAMBRIDGE UNIVERISITY TECHNICAL | NOT AVAILABLE |
| 2. 206 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 100512 | ☐ | CAMPBELL ALLIANCE LTD. | NOT AVAILABLE |

**NAS1185**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 207 CLINICAL TRIAL AGREEMENT DATED DECEMBER 04, 2003 | | 100513 | ☐ | CAPITAL HEALTH AND THE GOVERNORS OF THE UNIVERSITY OF ALBERTA | ATTN: GENERAL COUNSEL RESEARCH ADMINISTRATION OFFICE, SUITE 1800 8215-112 STREET EDMONTON, AB T6G 2C8 CANADA |
| 2. 208 CLINICAL TRIAL AGREEMENT DATED DECEMBER 04, 2003 | | 100514 | ☐ | CAPITAL HEALTH AND THE GOVERNORS OF THE UNIVERSITY OF ALBERTA | ATTN: GENERAL COUNSEL RESEARCH ADMINISTRATION OFFICE, SUITE 1800 8215-112 STREET EDMONTON, AB T6G 2C8 CANADA |
| 2. 209 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF APRIL 15, 2016 | | 100516 | ☐ | CAPITAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 873 WILLIAMS AVENUE COLUMBUS, OH 43212 |
| 2. 210 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 100517 | ☐ | CAPITAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 973 WILLIAMS AVENUE COLUMBUS, OH 43212 |
| 2. 211 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100515 | ☐ | CAPITAL WHOLESALE DRUG COMPANY | ATTN: DAVID FRANKLIN 873 WILLIAMS AVENUE COLUMBUS, OH 43212 |
| 2. 212 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 21, 2016 | | 100518 | ☐ | CAPSUGEL US, LLC | ATTN: GENERAL COUNSEL 412 MT. KEMBLE AVEENUE, SUITE 200 C MORRISTOWN, NJ 07960 |
| 2. 213 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF AUGUST 31, 2015 | | 100527 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 214 AMENDMENT NO. 1 TO CENTRAL DISTRIBUTION SERVICES AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 100524 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 215 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 31, 2015 | | 100525 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |

NAS1186

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 216 | AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 100532 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 217 | AMENDMENT NO. 2 TO CENTRAL DISTRIBUTION SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 31, 2015 | | 100528 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 218 | AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF AUGUST 31, 2015 | | 100530 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 219 | AMENDMENT NO. 3 TO CENTRAL DISTRIBUTION SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 01, 2018 | | 100533 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 220 | AMENDMENT NO. 3 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2015 | | 100531 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 221 | AMENDMENT NO. 4 TO CENTRAL DISTRIBUTION SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100534 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 222 | AMENDMENT NO. 4 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100535 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 223 | AUTHORIZED DISTRIBUTOR AGREEMENT ("ADA"), DATED AS OF JULY 1, 2012, BY AND BETWEEN PURDUE PHARMA L.P. AND CARDINAL HEALTH (LAST AMENDED JUNE 30, 2017) | | 90001 | ☐ | CARDINAL HEALTH | ATTN: VICE PRESIDENT, STRATEGIC SOURCING PROJECT MANAGEMENT BRANDED 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 224 | CENTRAL DISTRIBUTION SERVICES AGREEMENT ("CDSA"), DATED AS OF JULY 1, 2012, BY AND BETWEEN PURDUE PHARMA L.P. AND CARDINAL HEALTH (LAST AMENDED JANUARY 1, 2019) | | 100522 | ☐ | CARDINAL HEALTH | ATTN: VICE PRESIDENT, STRATEGIC SOURCING PROJECT MANAGEMENT BRANDED 7000 CARDINAL PLACE DUBLIN, OH 43017 |

**NAS1187**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 225　CENTRAL DISTRIBUTION SERVICES AGREEMENT DATED AUGUST 31, 2015 | | 100526 | ☐ | CARDINAL HEALTH | ATTN: GENERAL COUNSEL 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 226　DISTRIBUTION PERFORMANCE AGREEMENT ("DPA"), DATED AS OF JULY 1, 2012, BY AND BETWEEN PURDUE PHARMA L.P. AND CARDINAL HEALTH (LAST AMENDED JANUARY 1, 2019) | | 100523 | ☐ | CARDINAL HEALTH | ATTN: VICE PRESIDENT, STRATEGIC SOURCING PROJECT MANAGEMENT BRANDED 7000 CARDINAL PLACE DUBLIN, OH 43017 |
| 2. 227　AMENDMENT TO THE PHARMACY SUPPLIER AGREEMENT  EFFECTIVE AS OF APRIL 02, 2018 | | 100538 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 228　AMENDMENT TO THE PHARMACY SUPPLIER AGREEMENT  EFFECTIVE AS OF JULY 01, 2019 | | 100540 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 229　AMENDMENT TO THE PHARMACY SUPPLIER AGREEMENT  EFFECTIVE AS OF JULY 01, 2019 | | 100541 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 230　AMENDMENT TO THE PHARMACY SUPPLIER AGREEMENT  EFFECTIVE AS OF OCTOBER 09, 2017 | | 100537 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 231　AMENDMENT TO THE PHARMACY SUPPLIER AGREEMENT  EFFECTIVE AS OF OCTOBER 15, 2018 | | 100539 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 232　CONSENT AND CONFIRMATION STATEMENT EXECUTED DECEMBER 23, 2002 | | 100543 | ☐ | CARDINAL HEALTH PTS, INC F/K/A MAGELLAN LABORATORIES INCORPORATED | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |

**NAS1188**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 233 | WORK ORDER UNDER MASTER LABORATORY SERVICES AGREEMENT DATED MAY 07, 2003 | | 100542 | ☐ | CARDINAL HEALTH PTS, INC F/K/A MAGELLAN LABORATORIES INCORPORATED | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 234 | QUOTATION FOR ANALYTICAL DEVELOPMENT DATED JULY 20, 2005 | | 100544 | ☐ | CARDINAL HEALTH PTS, LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 235 | AMENDMENT NO. 2 TO SUPPLY AGREEMENT DATED JANUARY 29, 1998 | | 100552 | ☐ | CATALENT PHARMA SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 2725 SCHERER DRIVE NORTH ST. PETERSBURG, FL 33716 |
| 2. 236 | AMENDMENT NO. 6 TO THE MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 17, 2016 | | 100553 | ☐ | CATALENT PHARMA SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 2725 SCHERER DRIVE NORTH ST. PETERSBURG, FL 33716 |
| 2. 237 | PROJECT SPECIFICATION ORDER #2018-1 DATED OCTOBER 26, 2018 | | 100554 | ☐ | CATALENT PHARMA SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 160 PHARMA DRIVE MORRISVILLE, NC 27560-9570 |
| 2. 238 | PROJECT AGREEMENT DATED FEBRUARY 04, 2002 | | 100556 | ☐ | CATCHWORD | ATTN: GENERAL COUNSEL 405 LEXINGTON AVENUE 26TH FLOOR NEW YORK, NY 10174 |
| 2. 239 | PROJECT AGREEMENT DATED JANUARY 16, 2002 | | 100555 | ☐ | CATCHWORD | ATTN: GENERAL COUNSEL 405 LEXINGTON AVENUE, 26TH FLOOR NEW YORK, NY 10174 |
| 2. 240 | AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED OCTOBER 10, 2018 | | 100557 | ☐ | CC FORD GROUP, LLC | NOT AVAILABLE |
| 2. 241 | MASTER CRO SERVICES AGREEMENT DATED MARCH 24, 2014 | | 100558 | ☐ | CE3, INC. | ATTN: TIM GARRELTS 246 GOOSE LANE SUITE 202 GUILFORD, CT 06437 |

**NAS1189**

**Purdue Pharma L.P.**                                                                                                     **Case Number:   19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 242 EQUIPMENT SUPPLY CONTRACT DATED APRIL 19, 2000 | | 100560 | ☐ | CEDAR MEDICAL CENTER | ATTN: GENERAL COUNSEL 1901 SOUTH CEDAR SUITE 205 TACOMA, WA 94085 |
| 2. 243 COMPUTER EQUIPMENT AGREEMENT DATED APRIL 19, 2000 | | 100561 | ☐ | CEDAR-CROSSE RESEARCH CENTER | ATTN: GENERAL COUNSEL 800 SOUTH WELLS STREET M15 CHICAGO, IL 60607 |
| 2. 244 COMMON INTEREST AGREEMENT EFFECTIVE AS OF APRIL 18, 2014 | | 100564 | ☐ | CELLTRION HEALTHCARE CO., LTD. AND CELLTRION, INC. | NOT AVAILABLE |
| 2. 245 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 08, 2016 | | 100565 | ☐ | CENTER FOR CREATIVE LEADERSHIP | ATTN: MANAGING DIRECTOR ONE LEADERSHIP PLACE GREENSBORO, NC 27410 |
| 2. 246 STATEMENT OF WORK EFFECTIVE AS OF DECEMBER 08, 2016 | | 100566 | ☐ | CENTER FOR CREATIVE LEADERSHIP | ATTN: MANAGING DIRECTOR ONE LEADERSHIP PLACE GREENSBORO, NC 27410 |
| 2. 247 MASTER SERVICES AGREEMENT DATED APRIL 02, 2015 | | 100567 | ☐ | CENTER FOR HEALTH RESEARCH | ATTN: GENERAL COUNSEL 3800 N. INTERSTATE AVENUE PORTLAND, OR 97227 |
| 2. 248 MASTER SERVICES AGREEMENT DATED APRIL 02, 2015 | | 100568 | ☐ | CENTER FOR HEALTH RESEARCH | ATTN: GENERAL COUNSEL 3800 N INTERSTATE AVENUE PORTLAND, OR 97227 |
| 2. 249 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF DECEMBER 15, 2014 | | 100570 | ☐ | CENTRAL IOWA HOSPITAL CORPORATION | ATTN: GENERAL COUNSEL 1200 PLEASANT STREET DES MOINES, IA 50309 |
| 2. 250 SERVICE AGREEMENT EFFECTIVE AS OF NOVEMBER 21, 2012 | | 100574 | ☐ | CERIDIAN CORPORATION | ATTN: GENERAL COUNSEL 3311 EAST OLD SHAKOPEE ROAD MINNEAPOLIS, MN 55425 |
| 2. 251 WORK ORDER 1 TO SERVICE AGREEMENT DATED NOVEMBER 21, 2012 | | 100576 | ☐ | CERIDIAN CORPORATION | ATTN: GENERAL COUNSEL 3311 EAST OLD SHAKOPEE ROAD MINNEAPOLIS, MN 55425 |

**NAS1190**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 252 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF APRIL 15, 2016 | | 100578 | ☐ | CESAR CASTILLO INC. | ATTN: GENERAL COUNSEL RD. #1 KM 21.1 SECTOR LA MUDA GUAYNABO, PR 00971 |
| 2. 253 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 100580 | ☐ | CESAR CASTILLO INC. | ATTN: GENERAL COUNSEL RD. #1 KM 21.1 SECTOR LA MUDA GUAYNABO, PR 00971 |
| 2. 254 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100577 | ☐ | CESAR CASTILLO INC. | ATTN: LUIS VAZQUEZ RD. #1 KM 21.1 SECTOR LA MUDA GUAYNABO, PR 00971 |
| 2. 255 FIRST AMENDMENT TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 100581 | ☐ | CESAR CASTILLO, INC. | ATTN: GENERAL COUNSEL RD. #1 KM 21.1 SECTOR LA MUDA GUAYNABO, PR 00971 |
| 2. 256 STUDY WORK ORDER EXECUTED NOVEMBER 19, 2009 | | 100584 | ☐ | CHANTEST CORPORATION | ATTN: ROBERT D. SCHULTEK 14656 NEO PARKWAY CLEVELAND, OH 44128 |
| 2. 257 STUDY SPECIFICATION ORDER TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF DECEMBER 16, 2003 | | 100587 | ☐ | CHARLES GARO AVETIAN, DO | ATTN: GENERAL COUNSEL TWO MILL CT SPRINGTON ESTATES NEWTOWN SQUARE, PA 19073 |
| 2. 258 CHARLES RIVER LABORATORIES PSO NAG FEMALE FERTILITY STUDY CW2366328 (LH.KM) EFFECTIVE APRIL 02, 2019 | 10/5/2020 | 105962 | ☐ | CHARLES RIVER LABORATORIES | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |
| 2. 259 AMENDMENT NO. 3 NONCLINICAL MASTER SERVICES AGREEMENT DATED MARCH 09, 2018 | | 100589 | ☐ | CHARLES RIVER LABORATORIES,  INC. | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |
| 2. 260 AMENDMENT NO. 1 TO PROJECT SPECIFICATION ORDER #2018-3 DATED SEPTEMBER 28, 2018 | | 100591 | ☐ | CHARLES RIVER LABORATORIES, INC. | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |

**NAS1191**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 261  AMENDMENT NO. 2 TO PROJECT SPECIFICATION ORDER #2018-3 DATED FEBRUARY 20, 2019 | | 100592 | ☐ | CHARLES RIVER LABORATORIES, INC. | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |
| 2. 262  PROJECT SPECIFICATION ORDER #2018-1 NONCLINICAL MASTER SERVICES AGREEMENT DATED MARCH 14, 2018 | | 100590 | ☐ | CHARLES RIVER LABORATORIES, INC. | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |
| 2. 263  AMENDMENT NO. 1 TO PROJECT AGREEMENT DATED NOVEMBER 06, 2003 | | 100597 | ☐ | CHASE MEDICAL COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 65 OLD RIDGEFIELD ROAD WILTON, CT 06897 |
| 2. 264  AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 DATED DECEMBER 11, 2003 | | 100602 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: GENERAL COUNSEL PO BOX 8285 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |
| 2. 265  AMENDMENT #1: TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF DECEMBER 10, 2003 | | 100599 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: GENERAL COUNSEL PO BOX 8285 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |
| 2. 266  AMENDMENT NO. 2 TO STUDY SPECIFICATION DATED MARCH 02, 2000 | | 100604 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: GENERAL COUNSEL PO BOX 8285 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |
| 2. 267  AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF JANUARY 19, 2005 | | 100600 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: GENERAL COUNSEL PO BOX 8285 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |
| 2. 268  STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 20, 2002 | | 100601 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: GENERAL COUNSEL PO BOX 8285 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |

NAS1192

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 269 STUDY SPECIFICATION ORDER #003 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF DECEMBER 11, 2003 | | 100603 | ☐ | CHERRY HILL ORTHOPEDIC SURGEONS, P.A. | ATTN: MARK REINER, DO PO BOX 8252 RT. 38 AND HADDON FIELD ROAD CHERRY HILL, NJ 08002 |
| 2. 270 AMENDMENT NO. 3 TO MASTER SERVICES AGREEMENT DATED APRIL 17, 2017 | | 100605 | ☐ | CHILD RELATED RESEARCH, INC. | NOT AVAILABLE |
| 2. 271 STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF APRIL 22, 2003 | | 100607 | ☐ | CHILDREN'S MEMORIAL HOSPITAL INSTITUTE FOR EDUCATION | ATTN: PHILLIP V. SPINA, CRA; CHARLES COTE, M.D. 2300 CHILDREN'S PLAZA CHICAGO, IL 60657 |
| 2. 272 AMENDMENT #1 TO MASTER MATERIALS TESTING AND PROFESSIONAL SERVICES AGREEMENT DATED DECEMBER 19, 2014 | | 100609 | ☐ | CHILWORTH TECHNOLOGY, INC. | 250 PLAINSBORO ROAD, BUILDING #7 PLAINSBORO, NJ 08536 |
| 2. 273 STATEMENT OF WORK EFFECTIVE AS OF JUNE 09, 2009 | | 100608 | ☐ | CHILWORTH TECHNOLOGY, INC. | 250 PLAINSBORO ROAD, BUILDING #7 PLAINSBORO, NJ 08536 |
| 2. 274 SUBSCRIBER APPLICATION AND SERVICE AGREEMENT EFFECTIVE AS OF OCTOBER 26, 2004 | | 100610 | ☐ | CHOICEPOINT PUBLIC RECORDS INC. | ATTN: LEGAL DEPARTMENT 1000 ALDERMAN DRIVE ALPHARETTA, GA 30005 |
| 2. 275 CI SCIENTISTS CSA CW2366783 (SD.RA) EFFECTIVE MAY 15, 2019 | 5/7/2022 | 106161 | ☐ | CI SCIENTISTS PRIVATE LIMITED | NOT AVAILABLE |
| 2. 276 ADMINISTRATIVE SERVICES ONLY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2014 | | 100615 | ☐ | CIGNA HEALTH AND LIFE INSURANCE COMPANY | ATTN: CAROLYN BATTISTA, UNDERWRITING MANAGER 900 COTTAGE GROVE ROAD, WILDE HARTFORD, CT 06152 |
| 2. 277 AMENDMENT TO THE ADMINISTRATIVE SERVICES ONLY AGREEMENT DATED SEPTEMBER 11, 2009 | | 100619 | ☐ | CIGNA HEALTHCARE | ATTN: GENERAL COUNSEL 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |

**NAS1193**

**Purdue Pharma L.P.**                                                         **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 278 WEBEX SERVICES AGREEMENT EFFECTIVE AS OF APRIL 08, 2015 | | 100625 | ☐ | CISCO WEBEX LLC | ATTN: DIRECTOR, FINANCE 170 WEST TASMAN SAN JOSE, CA 95134 |
| 2. 279 ORDER FORM UNDER MASTER SERVICES OR SUBSCRIPTION AGREEMENT DATED AUGUST 13, 2018 | | 100626 | ☐ | CISION US INC. | ATTN: GENERAL COUNSEL 130 E. RANDOLPH STREET CHICAGO, IL 60601 |
| 2. 280 SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 04, 2018 | | 100630 | ☐ | CLARIVATE ANALYTICS (US) LLC | ATTN: GENERAL COUNSEL 1500 SPRING GARDEN STREET FOURTH FLOOR PHILADELPHIA, PA 19130 |
| 2. 281 STATEMENT OF WORK #2018-1 UNDER SERVICES AGREEMENT DATED DECEMBER 31, 2018 | | 100631 | ☐ | CLARIVATE ANALYTICS (US) LLC | ATTN: GENERAL COUNSEL 1500 SPRING GARDEN STREET FOURTH FLOOR PHILADELPHIA, PA 19130 |
| 2. 282 STUDY SPECIFICATION ORDER #003 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF APRIL 28, 2005 | | 100633 | ☐ | CLAYTON MEDICAL ASSOCIATES, PC | ATTN: DONNA MANN, RN, CCRC; JACKIE TERRELL, RN, CCRC 6400 CLAYTON ROAD SUITE 110 ST. LOUIS, MO 63317 |
| 2. 283 AGREEMENT FOR CLINICAL SERVICES DATED SEPTEMBER 14, 1995 | | 100636 | ☐ | CLIENT RESEARCH GROUP | ATTN: LYNN S. BACHRACH POST OFFICE BOX 127 HAVERFORD, PA 19041-0127 |
| 2. 284 AMENDMENT NO. 1 TO STATEMENT OF WORK DATED AUGUST 15, 2002 | | 100638 | ☐ | CLINFORCE, INC. | NOT AVAILABLE |
| 2. 285 WOLTERS KLUWER AMENDMENT 8 CW2368043 (SD.RA) EFFECTIVE AUGUST 01, 2019 | 7/31/2020 | 106142 | ☐ | CLINICAL DRUG INFORMATION, LLC (FORMERLY MEDI-SPAN, A PART OF WOLTERS KLUWER HEALTH, INC). | NOT AVAILABLE |
| 2. 286 AMENDMENT NO. 1 TO LETTER OF AGREEMENT EFFECTIVE AS OF APRIL 03, 2017 | | 100639 | ☐ | CLINICAL PHARMACOLOGY SERVICES, INC. | ATTN: GENERAL COUNSEL 6285 EAST FOWLER AVENUE TAMPA, FL 33617 |

**NAS1194**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 287 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 14, 2004 | | 100645 | ☐ | CLINICAL TRIAL MANAGEMENT, LLC | NOT AVAILABLE |
| 2. 288 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100647 | ☐ | CLINICAL TRIAL NETWORK | ATTN: GENERAL COUNSEL 8303 SOUTHWEST FREEWAY SUITE 500 HOUSTON, TX 77074 |
| 2. 289 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100649 | ☐ | CLINICAL TRIAL NETWORK | ATTN: GENERAL COUNSEL 8303 SOUTHWEST FREEWAY SUITE 500 HOUSTON, TX 77074 |
| 2. 290 STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF DECEMBER 28, 2004 | | 100646 | ☐ | CLINICAL TRIAL NETWORK | ATTN: GENERAL COUNSEL 8303 SOUTHWEST FREEWAY SUITE 500 HOUSTON, TX 77074 |
| 2. 291 STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF DECEMBER 28, 2004 | | 100648 | ☐ | CLINICAL TRIAL NETWORK | ATTN: GENERAL COUNSEL 8303 SOUTHWEST FREEWAY SUITE 500 HOUSTON, TX 77074 |
| 2. 292 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #002 TO MASTER SITE MANAGEMENT AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100651 | ☐ | CLINICAL TRIALS MANAGEMENT L.L.C. | ATTN: GENERAL COUNSEL 3901 HOUMA BOULEVARD MEDICAL PLAZA II, SUITE 405 METAIRIE, LA 70006 |
| 2. 293 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF MAY 16, 2004 | | 100652 | ☐ | CLINICAL TRIALS MANAGEMENT LLC | ATTN: GENERAL COUNSEL 3901 HOUMA BOULEVARD MEDICAL PLAZA II, SUITE 405 METAIRIE, LA 70006 |
| 2. 294 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 12, 2004 | | 100653 | ☐ | CLINICAL TRIALS MANAGEMENT, LLC | ATTN: GENERAL COUNSEL 3901 HOUMA BOULEVARD MEDICAL PLAZA II, SUITE 405 METAIRIE, LA 70006 |

NAS1195

**Purdue Pharma L.P.**                                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 295 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2002 | | 100654 | ☐ | CLINICAL TRIALS MANAGEMENT, LLC | ATTN: GENERAL COUNSEL 3901 HOUMA BOULEVARD MEDICAL PLAZA II, SUITE 405 METAIRIE, LA 70006 |
| 2. 296 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED MAY 06, 2005 | | 100656 | ☐ | CLINICAL TRIALS RESEARCH | ATTN: GENERAL COUNSEL 1544 EUREKA ROAD SUITE 160 ROSEVILLE, CA 95661 |
| 2. 297 STUDY SPECIFICATION ORDER #001 DATED NOVEMBER 30, 2004 | | 100655 | ☐ | CLINICAL TRIALS RESEARCH | ATTN: GENERAL COUNSEL 1544 EUREKA ROAD SUITE 160 ROSEVILLE, CA 95661 |
| 2. 298 AMENDMENT NO. 1 TO MASTER SERVICE AGREEMENT DATED APRIL 05, 2017 | | 100658 | ☐ | CLOCKWELL STRATEGY | ATTN: GENERAL COUNSEL 3 LAURA LANE SARATOGA SPRINGS, NY 12866 |
| 2. 299 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2016 | | 100659 | ☐ | CM ENGINEERS, LLC | ATTN: JOSEPH T. MISTRETTA PO BOX 764 BERNARDSVILLE, NJ 07924 |
| 2. 300 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 21, 2016 | | 100660 | ☐ | CMDI LLC | ATTN: SERVI BARRIENTOS 130 BELLEVUE AVENUE SUITE 201 NEWPORT, RI 02840 |
| 2. 301 MASTER SERVICES AGREEMENT EXECUTED SEPTEMBER 30, 2016 | | 100661 | ☐ | CMGRP, INC. (DBA DNA) | ATTN: GENERAL COUNSEL 909 3RD AVENUE NEW YORK, NY 10022 |
| 2. 302 CONSENT TO SUBLEASE EFFECTIVE AS OF JANUARY 09, 2018 | | 100662 | ☐ | CNBB OWNER LLC | ATTN: GENERAL COUNSEL C/O PARAMOUNT GROUP, INC. 1633 BROADWAY, SUITE 1801 NEW YORK, NY 10019 |
| 2. 303 AMENDMENT NO. 1 TO STATEMENT OF WORK #2018-1 DATED JULY 02, 2018 | | 100667 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: CANDICE CORBY 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |

**NAS1196**

**Purdue Pharma L.P.**                                                                        **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 304 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 22, 2018 | | 100665 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET AUSTIN, TX 78703 |
| 2. 305 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 22, 2018 | | 100666 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: CANDICE CORBY 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |
| 2. 306 | STATEMENT OF WORK #2018-1 UNDER MASTER AGREEMENT DATED JUNE 22, 2018 | | 100664 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET, SUITE 112 AUSTIN, TX 78703 |
| 2. 307 | STATEMENT OF WORK #2019-1 UNDER MASTER SERVICES AGREEMENT DATED FEBRUARY 07, 2019 | | 100668 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |
| 2. 308 | AMENDMENT NO. 2 TO INVESTIGATORS-INITIATED RESEARCH AGREEMENT DATED JULY 24, 2018 | | 100669 | ☐ | COGNIFISENSE, INC. | NOT AVAILABLE |
| 2. 309 | AMENDMENT NO. 6 TO MASTER SERVICES AGREEMENT DATED FEBRUARY 27, 2018 | | 100671 | ☐ | COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION | ATTN: GENERAL COUNSEL 24721 NETWORK PL CHICAGO, IL 60673 |
| 2. 310 | COGNIZANT - SOW 2019-1 SERIALIZATION SUPPORT - BASIS SECURITY ABAP CW2366901 (PB.RA) EFFECTIVE MAY 06, 2019 | 4/30/2020 | 106040 | ☐ | COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION | ATTN: GENERAL COUNSEL 24721 NETWORK PL CHICAGO, IL 60673 |
| 2. 311 | STATEMENT OF WORK #2018-1 EFFECTIVE AS OF JULY 01, 2018 | | 100672 | ☐ | COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION | ATTN: GENERAL COUNSEL 24721 NETWORK PL CHICAGO, IL 60673 |
| 2. 312 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 100686 | ☐ | COMMONWEALTH BIOMEDICAL RESEARCH, LLC | NOT AVAILABLE |

**NAS1197**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 313 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 100687 | ☐ | COMMONWEALTH BIOMEDICAL RESEARCH, LLC | NOT AVAILABLE |
| 2. 314 STUDY SPECIFICATION ORDER #001 DATED MAY 09, 2005 | | 100695 | ☐ | COMMUNITY ASSOCIATION FOR RESEARCH AND EDUCATION | ATTN: GENERAL COUNSEL 10459 MOUNTAIN VIEW AVENUE LOMA LINDA, CA 92354 |
| 2. 315 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 15, 2015 | | 100704 | ☐ | COMPREHENSIVE HEALTH INSIGHTS, INC. | ATTN: BOBBLE WHEET 515 WEST MARKET STREET 7TH FLOOR LOUISVILLE, KY 40202 |
| 2. 316 AMENDED AND RESTATED CHANGE ORDER NO. 2 TO STATEMENTS OF WORK DATED DECEMBER 01, 2017 | | 100709 | ☐ | COMPUTER SCIENCES CORPORATION | ATTN: GENERAL COUNSEL 1775 TYSONS BLVD. TYSONS, VA 22102 |
| 2. 317 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 01, 2017 | | 100708 | ☐ | COMPUTER SCIENCES CORPORATION | ATTN: GENERAL COUNSEL 1775 TYSONS BLVD. TYSONS, VA 22102 |
| 2. 318 CONEXUS SOLUTIONS, INC. - CSA CW2367161 (PB.RA) EFFECTIVE JUNE 10, 2019 | 6/9/2022 | 106038 | ☐ | CONEXUS SOLUTIONS, INC. | NOT AVAILABLE |
| 2. 319 ADMINISTRATIVE SERVICES ONLY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2006 | | 100711 | ☐ | CONNECTICUT GENERAL LIFE INSURANCE COMPANY | ATTN: ANDREW M. DUNN 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 320 RETIREE DRUG SUBSIDY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2006 | | 100714 | ☐ | CONNECTICUT GENERAL LIFE INSURANCE COMPANY | ATTN: ANDREW M. DUNN CIGNA HEATHCARE, ROUTING: ER32 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 321 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2017 | | 100715 | ☐ | CONNECTIONS MEDIA LLC | ATTN: JONAH SEIGER 1728 14TH STREET NW 4TH FLOOR WASHINGTON, DC 20009 |

**NAS1198**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 322 MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 06, 2017 | | 100725 | ☐ | CONSUMER PRODUCT TESTING COMPANY, INC. | ATTN: GENERAL COUNSEL 70 NEW DUTCH LANE FAIRFIELD, NJ 07004 |
| 2. 323 MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 22, 2017 | | 100726 | ☐ | CONTINUUM CLINICAL, LLC | ATTN: JEFFREY P. TROTTER 650 DUNDEE ROAD SUITE 250 NORTHBROOK, IL 60062 |
| 2. 324 AMENDMENT NO. 3 SUPPLY AGREEMENT DATED APRIL 01, 2011 | | 100728 | ☐ | CONTRACT PHARMACAL CORP. | ATTN: GENERAL COUNSEL 135 ADAMS AVENUE HAUPPAUGE, NY 11788 |
| 2. 325 AMENDMENT NO. 2 TO PROJECT SPECIFICATION DATED NOVEMBER 22, 2002 | | 100730 | ☐ | CONVANCE PERIAPPROVAL SERVICES INC. | NOT AVAILABLE |
| 2. 326 MASTER SERVICES AGREEMENT EXECUTED DECEMBER 14, 2018 | | 100732 | ☐ | CONVERCENT, INC. | ATTN: GENERAL COUNSEL 3858 WALNUT STREET SUITE #255 DENVER, CO 80205 |
| 2. 327 ORDER FORM UNDER MASTER SERVICES AGREEMENT DATED DECEMBER 14, 2018 | | 100731 | ☐ | CONVERCENT, INC. | ATTN: GENERAL COUNSEL 3858 WALNUT STREET SUITE 255 DENVER, CO 80205 |
| 2. 328 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 24, 2015 | | 100734 | ☐ | CORE ACCESS GROUP LLC | ATTN: GREG BERZOLLA, SENIOR PRINCIPAL 9100 KEYSTONE CROSSING SUITE 250 INDIANAPOLIS, IN 46240 |
| 2. 329 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 21, 2016 | | 100742 | ☐ | CORPORATE STRATEGIES BY SKILLPATH | ATTN: GENERAL COUNSEL 6900 SQUIBB ROAD MISSION, KS 66202 |
| 2. 330 AMENDMENT NO. 1 NONCLINICAL MASTER SERVICES AGREEMENT DATED DECEMBER 31, 2012 | | 100745 | ☐ | COVANCE BIOANALYTICAL SERVICES LLC | ATTN: GENERAL COUNSEL 8211 SCICOR DRIVE SUITE B INDIANAPOLIS, IN 46214 |

**NAS1199**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 331  PROJECT SPECIFICATION ORDER TO MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 14, 2012 | | 100746 | ☐ | COVANCE CENTRAL LABORATORY SERVICES, L.P. | ATTN: GENERAL COUNSEL 8211 SCICOR DRIVE INDIANAPOLIS, IN 46214-2985 |
| 2. 332  AMENDMENT NO. 1 NONCLINICAL MASTER SERVICES AGREEMENT DATED DECEMBER 31, 2012 | | 100748 | ☐ | COVANCE LABORATORIES INC. | ATTN: GENERAL COUNSEL 3301 KINSMAN BOULEVARD MADISON, WI 53704 |
| 2. 333  MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 20, 2017 | | 100749 | ☐ | COVANCE LABORATORIES INC. | ATTN: GENERAL COUNSEL OTLEY ROAD HARROGATE, N. YORKSHIRE HG3 1P7 |
| 2. 334  MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 20, 2017 | | 100750 | ☐ | COVANCE LABORATORIES INC. | ATTN: GENERAL COUNSEL OTLEY ROAD HARROGATE, N. YORKSHIRE HG3 1P7 |
| 2. 335  MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 20, 2017 | | 100751 | ☐ | COVANCE LABORATORIES INC. | ATTN: GENERAL COUNSEL 8211 SCICOR DRIVE SUITE B INDIANAPOLIS, IN 46214 |
| 2. 336  MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 20, 2017 | | 100752 | ☐ | COVANCE LABORATORIES INC. | ATTN: GENERAL COUNSEL 29 KESSELFELD MUNSTER 48163 GEORGIA |
| 2. 337  AMENDMENT NO. 1 NONCLINICAL MASTER SERVICES AGREEMENT DATED DECEMBER 31, 2012 | | 100753 | ☐ | COVANCE LABORATORIES LTD | ATTN: GENERAL COUNSEL OTLEY ROAD HARROGATE, N. YORKSHIRE HG3 1P7 |
| 2. 338  CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF APRIL 10, 2002 | | 100754 | ☐ | COVANCE PERIAPPROVAL SERVICES INC | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |

**NAS1200**

**Purdue Pharma L.P.**                                                                            **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 339 AMENDMENT NO. 1 TO PROJECT SPECIFICATION ORDER #1 DATED APRIL 26, 2004 | | 100766 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 340 AMENDMENT NO. 2 TO PROJECT SPECIFICATION DATED NOVEMBER 22, 2002 | | 100757 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 341 CHANGE ORDER #1 TO PROJECT SPECIFICATION ORDER #2 DATED JULY 02, 2002 | | 100767 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 342 CHANGE ORDER #10 TO PROJECT SPECIFICATION ORDER #2 DATED DECEMBER 16, 2002 | | 100758 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 343 CHANGE ORDER #11 TO PROJECT SPECIFICATION ORDER #2 DATED DECEMBER 16, 2002 | | 100759 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 344 CHANGE ORDER #14 TO PROJECT SPECIFICATION ORDER #2 DATED JULY 30, 2003 | | 100761 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 345 CHANGE ORDER #16 TO PROJECT SPECIFICATION ORDER #2 DATED JANUARY 13, 2004 | | 100764 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |

**NAS1201**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 346  CHANGE ORDER #2 TO PROJECT SPECIFICATION ORDER #2 DATED SEPTEMBER 19, 2002 | | 100756 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 347  CHANGE ORDER #3 TO PROJECT SPECIFICATION ORDER #2 DATED SEPTEMBER 16, 2002 | | 100755 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 348  CHANGE ORDER #9 TO PROJECT SPECIFICATION ORDER #2 DATED DECEMBER 16, 2002 | | 100760 | ☐ | COVANCE PERIAPPROVAL SERVICES, INC. | ATTN: GENERAL COUNSEL ONE RADNOR CORPORATE CENTER SUITE 300 RADNOR, PA 19087 |
| 2. 349  AMENDMENT NO. 1 NONCLINICAL MASTER SERVICES AGREEMENT DATED DECEMBER 31, 2012 | | 100768 | ☐ | COVANCE PRECLINICAL SERVICES GMBH | ATTN: GENERAL COUNSEL 29 KESSELFELD MUNSTER 48163 GEORGIA |
| 2. 350  AMENDMENT NO. 1 MASTER SERVICES AGREEMENT DATED JUNE 26, 2017 | | 100769 | ☐ | COVERMYMEDS LLC | NOT AVAILABLE |
| 2. 351  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2016 | | 100770 | ☐ | CRA INTERNATIONAL INC DBA CHARLES RIVER ASSOCIATES | ATTN: ANDREW PARECE 200 CLARENDON STREET BOSTON, MA 02116 |
| 2. 352  PROFESSIONAL SERVICES MASTER AGREEMENT DATED JANUARY 01, 1998 | | 100787 | ☐ | C-SHELL, INC. | ATTN: GENERAL COUNSEL 257 LAKE AVENUE METUCHEN, NJ 08840 |
| 2. 353  PROFESSIONAL SERVICES MASTER AGREEMENT DATED JANUARY 01, 1998 | | 100788 | ☐ | C-SHELL, INC. | ATTN: GENERAL COUNSEL 257 LAKE AVENUE METUCHEN, NJ 08840 |
| 2. 354  AMENDMENT #3 TO FOOD SERVICE AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2014 | | 100795 | ☐ | CULINART, INC. | ATTN: THOMAS R. EICH, PRESIDENT 175 SUNNYSIDE BOULEVARD PLAINVIEW, NY 11803 |

**NAS1202**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 355 FOOD SERVICE AGREEMENT DATED NOVEMBER 17, 2004 | | 100792 | ☐ | CULINART, INC. | ATTN: GENERAL COUNSEL 1979 MARCUS AVENUE LAKE SUCCESS, NY 11042 |
| 2. 356 FOOD SERVICE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2011 | | 100794 | ☐ | CULINART, INC. | ATTN: THOMAS R. EICH, PRESIDENT 175 SUNNYSIDE BOULEVARD PLAINVIEW, NY 11803 |
| 2. 357 SERVICE TERMS EXECUTED APRIL 25, 2016 | | 100797 | ☐ | CULTURE AMP PTY. LTD. | ATTN: GENERAL COUNSEL LEVEL 3 41 STEWART STREET VICTORIA AUSTRALIA |
| 2. 358 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 100798 | ☐ | CUMBERLAND CONSULTING GROUP, LLC | ATTN: GARY MEYER, CFO 720 COOL SPRINGS BLVD SUITE 550 FRANKLIN, TN 37067 |
| 2. 359 AUTHORSHIP AGREEMENT DATED DECEMBER 01, 2017 | | 100807 | ☐ | CYNTHIA BARTLETT, BSC, MMATH | ATTN: GENERAL COUNSEL 604-590 QUEEN STREET FREDERICTON, NB E3B 7H9 CANADA |
| 2. 360 AGREEMENT MODIFICATION NO. 1 ARCHITECT SERVICE AGREEMENT DATED JANUARY 28, 1998 | | 100809 | ☐ | D.F. GIBSON ARCHITECTS, P.C. | ATTN: GENERAL COUNSEL 40 CLINTON STREET NEWARK, NJ 07102 |
| 2. 361 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 100815 | ☐ | DAKOTA DRUG INC. | ATTN: GENERAL COUNSEL 1101 LUND BLVD ANOKA, MN 55303 |
| 2. 362 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100814 | ☐ | DAKOTA DRUG INC. | ATTN: GENERAL COUNSEL 28-32 NORTH MAIN STREET MILNOT, ND 58702 |
| 2. 363 AMENDMENT TO SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 21, 2017 | | 100826 | ☐ | DATA NICHE ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110N DEERFIELD, IL 60015 |

**NAS1203**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 364 PROFESSIONAL SERVICES AGREEMENT DATED JULY 14, 2004 | | 100833 | ☐ | DATAFARM, INC. | ATTN: GENERAL COUNSEL 221 BOSTON POST ROAD EAST SUITE 480 MARLBORO, MA 01752 |
| 2. 365 SEARCH FIRM AGREEMENT DATED SEPTEMBER 16, 2010 | | 100834 | ☐ | DATAPATH SEARCHCORPORATION | ATTN: GENERAL COUNSEL 32 SHERWOOD PLACE GREENWICH, CT 06830 |
| 2. 366 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2016 | | 100836 | ☐ | DATAWATCH CORPORATION | ATTN: LEGAL DEPT BEDFORD, MA 01730 |
| 2. 367 LETTER OF AGREEMENT DATED OCTOBER 20, 2017 | | 100838 | ☐ | DAVID BRUSHWOOD, R. PH., J.D. | ATTN: GENERAL COUNSEL 690 RHAPSODY ROAD SEDONA, AZ 86336 |
| 2. 368 DAVID S. CRAIG, PHARM.D. - HCP CSA CW2367522 (LH.RA) EFFECTIVE JULY 01, 2019 | 7/31/2021 | 106016 | ☐ | DAVID S CRAIG | NOT AVAILABLE |
| 2. 369 TENEO STRATEGY LLC - DAVIS POLK - PURDUE CSA CW2367893 (RA) EFFECTIVE JULY 01, 2019 | 6/30/2020 | 105911 | ☐ | DAVIS POLK AND WARDWELL LLP | 450 LEXINGTON AVE NEW YORK, NY 10017 |
| 2. 370 US WARRANTY PARTS REENROLLMENT TERMS AND CONDITIONS DATED MARCH 30, 2006 | | 100856 | ☐ | DELL, INC. | NOT AVAILABLE |
| 2. 371 AMENDMENT NO. 3 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 16, 2018 | | 100861 | ☐ | DELOITTE CONSULTING LLP | ONE WORLD FINANCIAL CENTER NEW YORK, NY 10281 |
| 2. 372 STATEMENT OF WORK AMENDMENT UNDER MASTER SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 100860 | ☐ | DELOITTE CONSULTING LLP | ONE WORLD FINANCIAL CENTER NEW YORK, NY 10281 |
| 2. 373 STATEMENT OF WORK EFFECTIVE AS OF JANUARY 01, 2018 | | 100858 | ☐ | DELOITTE CONSULTING LLP | ONE WORLD FINANCIAL CENTER NEW YORK, NY 10281 |

**Purdue Pharma L.P.**                                                                         **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 374 AMENDMENT #1 TO SERVICE ORDER NUMBER 1 DATED DECEMBER 21, 2006 | | 100865 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 375 AMENDMENT #1 TO SUBSCRIPTION SERVICES AGREEMENT AND AMENDMENT #2 TO SERVICE ORDER NUMBER 1 DATED DECEMBER 10, 2007 | | 100866 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 376 AMENDMENT NO. 6 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 100883 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 377 DENVER HEALTH HOSPITAL AUTHORITY SOW CW2365780 DART - OXYCONTIN ADVISORY COMMITTEE CONSULTING (LH.RA) EFFECTIVE JANUARY 02, 2019 | 3/31/2020 | 105932 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 660 BANNOCK STREET MC 1919 DENVER, CO 80204 |
| 2. 378 FIFTH AMENDATORY SERVICE ORDER #5 TO SUBSCRIPTION SERVICES AGREEMENT DATED DECEMBER 09, 2014 | | 100872 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 379 FOURTH AMENDATORY SERVICE ORDER #5 TO SUBSCRIPTION SERVICES AGREEMENT DATED NOVEMBER 26, 2013 | | 100871 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 380 PROJECT SPECIFICATION ORDER #7 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 100878 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 381 PROJECT SPECIFICATION ORDER #8 UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2018 | | 100879 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 382 SERVICE ORDER #4 TO SUBSCRIPTION SERVICE AGREEMENT DATED JANUARY 01, 2009 | | 100867 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |

**NAS1205**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 383 | SERVICE ORDER #5 TO SUBSCRIPTION SERVICES AGREEMENT DATED JANUARY 01, 2010 | | 100869 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 384 | SERVICE ORDER #9 DATED JANUARY 01, 2019 | | 100882 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 385 | SIXTH AMENDATORY SERVICE ORDER #5 DATED JANUARY 28, 2016 | | 100873 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 386 | SUBSCRIPTION SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2006 | | 100875 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 387 | THIRD AMENDATORY SERVICE ORDER NO. 5 TO SUBSCRIPTION SERVICES AGREEMENT DATED FEBRUARY 06, 2013 | | 100877 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 388 | SERVICE ORDER #8 EFFECTIVE AS OF JANUARY 01, 2019 | | 100886 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY/ DHHA | ATTN: GENERAL COUNSEL 601 BROADWAY DENVER, CO 80203 |
| 2. 389 | ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 100897 | ☐ | DEPOMED INC | ATTN: GENERAL COUNSEL 7999 GATEWAY BLVD, SUITE 300, NEWARK, CA 94560 |
| 2. 390 | AGREEMENT MODIFICATION NO. 2 ARCHITECT SERVICE AGREEMENT EXECUTED JANUARY 28, 1998 | | 100903 | ☐ | DF GIBSON ARCHITECTS PC | ATTN: GENERAL COUNSEL 40 CLINTON STREET NEWARK, NY 07102 |
| 2. 391 | SEARCH FIRM AGREEMENT DATED JULY 29, 2010 | | 100907 | ☐ | DIGITAL INTELLIGENCE SYSTEMS CORPORATION | ATTN: GENERAL COUNSEL 8270 GREENSOBOR DRIVE SUITE 900 MCLEAN, VA 22102 |
| 2. 392 | MASTER AGREEMENT EFFECTIVE AS OF MARCH 10, 2008 | | 100909 | ☐ | DIMENSION DATA | ATTN: GENERAL COUNSEL 550 COCHITUATE ROAD FRAMINGHAM, MA 01701 |

NAS1206

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 393 STATEMENT OF WORK DATED JULY 14, 2009 | | 100911 | ☐ | DIMENSION DATA NORTH AMERICA, INC. | ATTN: GENERAL COUNSEL 550 COCHITUATE ROAD FRAMINGHAM, MA 01701 |
| 2. 394 STATEMENT OF WORK EFFECTIVE AS OF JULY 30, 2009 | | 100913 | ☐ | DIMENSION DATA NORTH AMERICA, INC. | ATTN: GENERAL COUNSEL 550 COCHITUATE ROAD FRAMINGHAM, MA 01701 |
| 2. 395 STATEMENT OF WORK EFFECTIVE AS OF JUNE 25, 2009 | | 100910 | ☐ | DIMENSION DATA NORTH AMERICA, INC. | ATTN: GENERAL COUNSEL 550 COCHITUATE ROAD FRAMINGHAM, MA 01701 |
| 2. 396 MASTERS SERVICES AGREEMENT EFFECTIVE AS OF MARCH 19, 2018 | | 100917 | ☐ | DISTEK, INC | ATTN: JEFF SEELY 121 NORTH CENTER NORTH BRUNSWICK, NJ 08902 |
| 2. 397 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 19, 2018 | | 100918 | ☐ | DISTEK, INC. | ATTN: JEFF SEELY 121 NORTH CENTER DRIVE NORTH BRUNSWICK, NJ 08902 |
| 2. 398 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 19, 2018 | | 100920 | ☐ | DISTEK, INC. | ATTN: GENERAL COUNSEL 121 NORTH CENTER DRIVE NORTH BRUNSWICK, NJ 08902 |
| 2. 399 DL GLOBAL PARTNERS WO CW2366431 EDWARD SELLERS ORF AD BOARD (LH.SD) EFFECTIVE MAY 01, 2019 | 4/30/2020 | 105988 | ☐ | DL GLOBAL PARTNERS INC | NOT AVAILABLE |
| 2. 400 DMD AMERICA INC. CSA CW2366960 (SD.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2022 | 106148 | ☐ | DMD AMERICA INC | NOT AVAILABLE |
| 2. 401 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED JUNE 30, 2017 | | 100922 | ☐ | DMS PHARMACEUTICAL GROUP INC. | ATTN: GENERAL COUNSEL 810 BUSSE HIGHWAY PARK RIDGE, IL 60068 |
| 2. 402 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 100921 | ☐ | DMS PHARMACEUTICAL GROUP INC. | ATTN: BILL ANDERSON 810 BUSSE HIGHWAY PARK RIDGE, IL 60068 |

**NAS1207**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 403 | AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 01, 2005 | | 100929 | ☐ | DOLBY RESEARCH, LLC | ATTN: CHISTOPHER MARRERO, M.D.; DICKSON OGBOMAH 6030 BULLARD AVENUE SUITE 250 NEW ORLEANS, LA 70128 |
| 2. 404 | STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF MARCH 31, 2005 | | 100928 | ☐ | DOLBY RESEARCH, LLC | ATTN: CHISTOPHER MARRERO, M.D.; DICKSON OGBOMAH 6030 BULLARD AVENUE SUITE 250 NEW ORLEANS, LA 70128 |
| 2. 405 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 09, 2016 | | 100933 | ☐ | DOTTIKON EXCLUSIVE SYNTHESIS AG | ATTN: GENERAL COUNSEL HEMBRUNNSTRASSE 17 5605 DOTTIKON |
| 2. 406 | STATEMENT OF WORK NO. 1 DATED FEBRUARY 01, 2017 | | 100932 | ☐ | DOTTIKON EXCLUSIVE SYNTHESIS AG | ATTN: GENERAL COUNSEL HEMBRUNNSTRASSE 17 5605 DOTTIKON |
| 2. 407 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 22, 2017 | | 100942 | ☐ | DOXIMITY, INC. | ATTN: FINANCE AND LEGAL DEPARTMENTS ATTN: GENERAL COUNSEL 500 3RD STREET, SUITE 510 SAN FRANCISCO, CA 94107 |
| 2. 408 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF NOVEMBER 18, 2003 | | 100945 | ☐ | DR. JAMES GREGORY SULLIVAN D/B/A PARKWAY MEDICAL CENTER | NOT AVAILABLE |
| 2. 409 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JUNE 14, 2004 | | 100947 | ☐ | DR. JAMES GREGORY SULLIVAN D/B/A PARKWAY MEDICAL CENTER | NOT AVAILABLE |
| 2. 410 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 18, 2003 | | 100946 | ☐ | DR. JAMES GREGORY SULLIVAN D/B/A PARKWAY MEDICAL CENTER | NOT AVAILABLE |

**NAS1208**

**Purdue Pharma L.P.**                                                                              **Case Number:   19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 411  CLINICAL TRIAL AGREEMENT DATED AUGUST 21, 2003 | | 100948 | ☐ | DR. KORAVANGATTU SANKARAN | ATTN: GENERAL COUNSEL ROYAL UNIVERSITY HOSPITAL 103 HOSPITAL DRIVE SASKATOON, SK S7N 0W8 CANADA |
| 2. 412  AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF APRIL 15, 2016 | | 100952 | ☐ | DROGUERIA BETANCES INC. | ATTN: GENERAL COUNSEL AVE LUIS MARIN ESQ TROCHE FINAL CAGUAS, PR 00725 |
| 2. 413  AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JUNE 30, 2017 | | 100953 | ☐ | DROGUERIA BETANCES INC. | ATTN: GENERAL COUNSEL AVE LUIS MARIN ESQ TROCHE FINAL CAGUAS, PR 00725 |
| 2. 414  AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 100951 | ☐ | DROGUERIA BETANCES INC. | ATTN: GENERAL COUNSEL AVE LUIS MARIN ESQ TROCHE FINAL CAGUAS, PR 00725 |
| 2. 415  AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 100954 | ☐ | DROGUERIA CENTRAL INC. | ATTN: GENERAL COUNSEL PEPSI INDUSTRIAL PARK CARR. 2 TOA BAJA, PR 00953 |
| 2. 416  AMENDMENT #1 TO MASTER SERVICE AGREEMENT EFFECTIVE AS OF JUNE 17, 2016 | | 100956 | ☐ | DRUGSCAN, INC. | ATTN: GENERAL COUNSEL 200 PRECISION ROAD, SUITE 200 HORSHAM, PA 19044 |
| 2. 417  AMENDMENT #2 TO MASTER SERVICE AGREEMENT EFFECTIVE AS OF JUNE 18, 2013 | | 100955 | ☐ | DRUGSCAN, INC. | ATTN: GENERAL COUNSEL 200 PRECISION ROAD, SUITE 200 HORSHAM, PA 19044 |
| 2. 418  PREFERRED ESCROW AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2003 | | 100957 | ☐ | DSI TECHNOLOGY ESCROW SERVICES INC | ATTN: GENERAL COUNSEL 9365 SKY PARK COURT SUITE 202 SAN DIEGO, CA 92123 |
| 2. 419  D'SOUZA, ANITA CSA CW2367026 (SS.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2020 | 105918 | ☐ | D'SOUZA, ANITA | NOT AVAILABLE |

**NAS1209**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 420 | PROJECT AGREEMENT DATED NOVEMBER 18, 2003 | | 100958 | ☐ | DTW MARKETING RESEARCH GROUP, INC, | ATTN: GENERAL COUNSEL 227 ROUTE 206 FLANDERS, NJ 07836 |
| 2. 421 | STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF APRIL 18, 2018 | | 100959 | ☐ | DUKE UNIVERSITY | ATTN: GENERAL COUNSEL P.O. BOX 602651 CHARLOTTE, NC 28260-2651 |
| 2. 422 | LIFE SCIENCES REGULATORY CLOUD ORDER UNDER MASTER SERVICES AGREEMENT DATED DECEMBER 01, 2017 | | 100969 | ☐ | DXC. TECHNOLOGY/ COMPUTER SCIENCES CORPORATION | NOT AVAILABLE |
| 2. 423 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100971 | ☐ | ECKEL & VAUGHAN | ATTN: GENERAL COUNSEL ATTN: HARRIS VAUGHAN, PARTNER 706 HILLSBOROUGH ST., SUITE 102 RALEIGH, NC 27603 |
| 2. 424 | MASTER SERVICES AGREEMENT DATED JULY 08, 2013 | | 100973 | ☐ | ECP ELECTRIC, LLC | ATTN: GENERAL COUNSEL 857 POST ROAD #315 FAIRFIELD, CT 06824 |
| 2. 425 | EDWARDS INC. MASTER CONSTRUCTION SERVICES AGREEMENT CW2368065 (LH.RA) EFFECTIVE SEPTEMBER 03, 2019 | 8/31/2020 | 105950 | ☐ | EDWARDS INC | ATTN: GENERAL COUNSEL 4119 SHEEP PASTURE ROAD SPRING HOPE, NC 27882 |
| 2. 426 | PHARMACOVIGILANCE AGREEMENT | | 100997 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 427 | PHARMACOVIGILANCE AGREEMENT EXECUTED NOVEMBER 11, 2015 | | 100990 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 428 | MATERIALS TRANSFER AGREEMENT DATED MAY 06, 2004 | | 101001 | ☐ | ELITE LABORATORIES, INC. | ATTN: GENERAL COUNSEL 165 LUDLOW AVENUE NORTHVALE, NJ 07647 |

**NAS1210**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 429 | LETTER OF INTENT NOT TO RENEW MSA EFFECTIVE AS OF SEPTEMBER 29, 2015 | | 101003 | ☐ | ELM SOLUTIONS | ATTN: GENERAL COUNSEL 20 CHURCH STREET HARTFORD, CT 06237 |
| 2. 430 | SUBSCRIPTION AGREEMENT DATED DECEMBER 22, 2017 | | 101007 | ☐ | ELSEVIER B.V. | ATTN: GENERAL COUNSEL RADARWEG 29 AMSTERDAM 1043 NX NIGER |
| 2. 431 | AMENDMENT #3 TO MASTER SERVICE AGREEMENT DATED MARCH 21, 2016 | | 101012 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 432 | AMENDMENT #3 TO MASTER SERVICE AGREEMENT DATED MARCH 21, 2016 | | 101013 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 433 | BASIC ORDER AGREEMENT DATED JUNE 27, 2003 | | 101009 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 434 | BASIC ORDERING AGREEMENT DATED JUNE 27, 2003 | | 101008 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 435 | CHANGE REQUEST TO STATEMENT OF WORK DATED JANUARY 01, 2018 | | 101014 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 436 | AMENDMENT #6 TO MASTER SERVICE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101018 | ☐ | EMD MILLIPORE CORPORATION | ATTN: GENERAL COUNSEL 290 CONCORD ROAD BILLERICA, MA 01821 |
| 2. 437 | AMENDMENT #6 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101017 | ☐ | EMD MILLIPORE CORPORATION | ATTN: GENERAL COUNSEL 290 CONCORD ROAD BILLERICA, MA 01821 |
| 2. 438 | AMENDMENT #7 TO MASTER SERVICES AGREEMENT DATED MARCH 12, 2008 | | 101019 | ☐ | EMD MILLIPORE CORPORATION | ATTN: GENERAL COUNSEL 290 CONCORD ROAD BILLERICA, MA 01821 |

**NAS1211**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 439 SERVICES LOGISTICS AGREEMENT DATED APRIL 26, 2017 | | 101021 | ☐ | EMERSON HEALTHCARE, LLC | ATTN: GENERAL COUNSEL ATTN: SCOTT EMERSON 407 EAST LANCASTER AVENUE WAYNE, PA 19087 |
| 2. 440 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED SEPTEMBER 10, 2003 | | 101023 | ☐ | EMORY UNIVERSITY | NOT AVAILABLE |
| 2. 441 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF SEPTEMBER 10, 2003 | | 101024 | ☐ | EMORY UNIVERSITY | NOT AVAILABLE |
| 2. 442 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 101026 | ☐ | ENDO PHARMACEUTICALS INC | ATTN: CHIEF LEGAL OFFICER 100 ENDO BOULEVARD CHADDS FORD, PA 19317 |
| 2. 443 DATA USE AGREEMENT EFFECTIVE AS OF JANUARY 25, 2017 | | 101030 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: CHIEF LEGAL OFFICER 100 ENDO BOULEVARD CHADDS FORD, PA 19317 |
| 2. 444 MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 20, 2017 | | 101037 | ☐ | ENVIGO CRS, INC. | ATTN: GENERAL COUNSEL 100 METTLERS ROAD EAST MILLSTONE, NJ 08875 |
| 2. 445 MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 20, 2017 | | 101038 | ☐ | ENVIRGO CRS, INC. | ATTN: GENERAL COUNSEL 100 METTLERS ROAD EAST MILLSTONE, NJ 08875 |
| 2. 446 AGREEMENT RE: START-UP ACTIVITIES DATED JANUARY 09, 2003 | | 101065 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 447 CHANGE ORDER #1 TO WORK ORDER DATED DECEMBER 17, 2003 | | 101059 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 448 WORK ORDER BUP3012ERT007 CHANGE ORDER #1 DATED JANUARY 22, 2004 | | 101060 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |

**NAS1212**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 449 WORK ORDER BUP3012ERT202 CHANGE ORDER #2 DATED MAY 13, 2004 | | 101061 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 450 WORK ORDER BUP3012ERT202 CHANGE ORDER #3 DATED DECEMBER 20, 2004 | | 101062 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 451 WORK ORDER BUP3015ERT206 CHANGE ORDER #1 DATED MARCH 01, 2005 | | 101063 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 452 WORK ORDER NO. 1 DATED MAY 30, 2000 | | 101044 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 453 WORK ORDER NO. 2 DATED MAY 30, 2000 | | 101045 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 454 WORK ORDER NO. 3 DATED MAY 30, 2000 | | 101047 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 455 WORK ORDER NO. 4 DATED MAY 30, 2000 | | 101046 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 456 WORK ORDER NO. 5 DATED NOVEMBER 15, 2000 | | 101049 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 457 WORK ORDER TO AMEND DIAGNOSTIC SERVICE AGREEMENT EFFECTIVE AS OF JANUARY 09, 2003 | | 101051 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 458 WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT DATED AUGUST 19, 2003 | | 101052 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |

**NAS1213**

**Purdue Pharma L.P.**                                                                                       **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 459 | WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT DATED DECEMBER 05, 2003 | | 101057 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 460 | WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT DATED DECEMBER 20, 2005 | | 101064 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 461 | WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT DATED NOVEMBER 07, 2003 | | 101055 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 462 | WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT DATED NOVEMBER 24, 2003 | | 101056 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 463 | WORK ORDER TO AMENDED AND RESTATED MASTER SERVICE AGREEMENT EFFECTIVE AS OF NOVEMBER 03, 2003 | | 101053 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 464 | WORK ORDER TO AMENDED DIAGNOSTIC SERVICE AGREEMENT DATED JANUARY 09, 2003 | | 101050 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 465 | ERX NETWORK, LLC - SOW 2019-1 CW2366836 (SD.RA) EFFECTIVE JUNE 17, 2019 | 12/31/2020 | 106155 | ☐ | ERX NETWORK HOLDINGS INC | PO BOX 25485 SALT LAKE CITY, UT 84125 |
| 2. 466 | AMENDMENT #1 TO STATEMENT OF WORK DATED MARCH 01, 2019 | | 101070 | ☐ | ERX NETWORK, LLC | NOT AVAILABLE |
| 2. 467 | AMENDMENT #1 TO LIVE SUPPORT SERVICES DATED MARCH 21, 2018 | | 101071 | ☐ | ESKILLS CORP. | NOT AVAILABLE |

**NAS1214**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 468 | AMENDMENT NO. 1 TO STATEMENT OF WORK EFFECTIVE AS OF SEPTEMBER 24, 2003 | | 101073 | ☐ | EURO SYSTEMS INTERNATIONAL INC. | ATTN: GENERAL COUNSEL 2 CORPORATE DRIVE SUITE 300 SHELTON, CT 06484 |
| 2. 469 | TERMS AND CONDITION FOR QUOTATION # PP 15152 DATED APRIL 28, 2006 | | 101083 | ☐ | EUROSCREEN S.A | ATTN: DR. JEAN COMBALBERT, PRESIDENT AND CEO 802 ROUTE DE LENNIK BRUSSELS 1070 BELGIUM |
| 2. 470 | AMENDMENT TO MASTER CRO SERVICES AGREEMENT DATED FEBRUARY 15, 2018 | | 101088 | ☐ | EVIDERA INC | ATTN: GENERAL COUNSEL P.O. BOX 758641 BALTIMORE, MD 21275 |
| 2. 471 | WORK ORDER UNDER MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 10, 2018 | | 101089 | ☐ | EVIDERA, INC. | ATTN: GENERAL COUNSEL P.O. BOX 758641 BALTIMORE, MD 21275 |
| 2. 472 | WORK ORDER UNDER MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 10, 2018 | | 101090 | ☐ | EVIDERA, INC. | ATTN: GENERAL COUNSEL P.O. BOX 758641 BALTIMORE, MD 21275 |
| 2. 473 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 19, 2017 | | 101097 | ☐ | EXPERIMENTAL PATHOLOGY LABORATORIES, INC. | ATTN: GEORGE BOURAS, CHIEF FINANCIAL OFFICER 45600 TERMINAL DRIVE STERLING, VA 20166 |
| 2. 474 | AMENDMENT #1 TO MASTER AGREEMENT DATED JULY 01, 2007 | | 101115 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 475 | AMENDMENT TO MASTER AGREEMENT (PATIENT ASSISTANCE PROGRAM) DATED JUNE 01, 2007 | | 101114 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |

**NAS1215**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 476   AMENDMENT: EXTENSION AMENDMENT TO MASTER AGREEMENT DATED DECEMBER 01, 2005 | | 101112 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 477   AMENDMENT: EXTENSION AMENDMENT TO MASTER AGREEMENT DATED FEBRUARY 01, 2004 | | 101109 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 478   AMENDMENT: EXTENSION AMENDMENT TO MASTER AGREEMENT DATED FEBRUARY 01, 2006 | | 101113 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 479   EXTENSION AMENDMENT DATED FEBRUARY 01, 2002 | | 101110 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 480   EXTENSION AMENDMENT EFFECTIVE AS OF AUGUST 01, 2005 | | 101111 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 481   EXTENSION AMENDMENT TO MASTER AGREEMENT EFFECTIVE AS OF MARCH 01, 2006 | | 101117 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 482   FIFTH AMENDMENT TO MASTER AGREEMENT (PATIENT ASSISTANCE PROGRAM) DATED APRIL 26, 2012 | | 101116 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |

**NAS1216**

**Purdue Pharma L.P.**
**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 483 AMENDMENT #1: TO PROJECT SPECIFICATION ORDER #2018-1 DATED JANUARY 31, 2019 | | 101124 | ☐ | EYECRO, LLC | ATTN: GENERAL COUNSEL 5301 N. BEVERLY DRIVE OKLAHOMA CITY, OK 73105 |
| 2. 484 MASTER LABORATORY AND NON-CLINICAL SERVICES AGREEMENT EFFECTIVE AS OF APRIL 19, 2018 | | 101120 | ☐ | EYECRO, LLC | ATTN: GENERAL COUNSEL 5301 N. BEVERLY DRIVE OKLAHOMA CITY, OK 73105 |
| 2. 485 MASTER LABORATORY AND NON-CLINICAL SERVICES AGREEMENT EFFECTIVE AS OF APRIL 19, 2018 | | 101121 | ☐ | EYECRO, LLC | ATTN: GENERAL COUNSEL 5301 N. BEVERLY DRIVE OKLAHOMA CITY, OK 73105 |
| 2. 486 MASTER AGREEMENT DATED JULY 08, 2013 | | 101128 | ☐ | FACTIVA INC AN AFFILIATE OF DOW JONES COMPANY | ATTN: GENERAL COUNSEL 1211 6TH AVENUE NEW YORK, NY 10036 |
| 2. 487 FACULTY CONNECTION, LLC-DANIEL BENJAMIN CSA CW2366314 2019 (LH.RA) EFFECTIVE APRIL 15, 2019 | 4/30/2021 | 105960 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBUM VILLAGE DRIVE DURHAM, NC 27713 |
| 2. 488 G2 UPGRADE ENGINEERING CHANGE ORDER DATED JUNE 19, 2007 | | 101136 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |
| 2. 489 GRASP UPGRADE ENGINEERING CHANGE ORDER FORM DATED JUNE 06, 2005 | | 101141 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |
| 2. 490 MASTER SERVICES AGREEMENT DATED APRIL 15, 2001 | | 101139 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |

**NAS1217**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 491 UPGRADE ENGINEERING CHANGE ORDER (ECO) FORM EFFECTIVE AS OF FEBRUARY 24, 2007 | | 101135 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |
| 2. 492 AMENDMENT #1 TO ELECTRICAL CONTRACTING SERVICES AGREEMENT DATED APRIL 01, 2013 | | 101153 | ☐ | FIRST CHOICE ELECTRIC INC. | ATTN: GENERAL COUNSEL 34 OVERLOOK DRIVE JACKSON, NJ 08527 |
| 2. 493 ELECTRICAL CONTRACTING SERVICES AGREEMENT DATED MARCH 01, 2009 | | 101154 | ☐ | FIRST CHOICE ELECTRIC, INC. | ATTN: GENERAL COUNSEL ATTN: TOM SKWAIT, OWNER 34 OVERLOOK DRIVE JACKSON, NJ 08527 |
| 2. 494 AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED MAY 31, 2017 | | 101155 | ☐ | FIRST DERIVATIVES PLC | ATTN: GENERAL COUNSEL 3 CANAL QUAY, NEWRY CO DOWN |
| 2. 495 QUALITY AGREEMENT EFFECTIVE AS OF NOVEMBER 24, 2015 | | 101161 | ☐ | FISHER CLINICAL SERVICES INC. | ATTN: GENERAL COUNSEL 7554 SCHANTZ ROAD ALLENTOWN, PA 18106 |
| 2. 496 AMENDED AND RESTATED MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2012 | | 101163 | ☐ | FISHER CLINICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 7554 SCHANTZ ROAD ALLENTOWN, PA 18106 |
| 2. 497 QUALITY AGREEMENT EFFECTIVE AS OF NOVEMBER 24, 2015 | | 101162 | ☐ | FISHER CLINICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 7554 SCHANTZ ROAD ALLENTOWN, PA 18106 |
| 2. 498 F BUD SWEET III CSA CW2366986 (LH.SD) EFFECTIVE JUNE 01, 2019 | 5/31/2021 | 105951 | ☐ | FLOYD B SWEET III | NOT AVAILABLE |
| 2. 499 AMENDMENT #4 TO MASTER SERVICES AGREEMENT DATED AUGUST 20, 2018 | | 101167 | ☐ | FOCUSVISION WORLDWIDE, INC. | ATTN: GENERAL COUNSEL 1266 EAST MAIN STREET STAMFORD, CT 06902 |
| 2. 500 STATEMENT OF WORK #2018-1 DATED OCTOBER 26, 2018 | | 101168 | ☐ | FOCUSVISION WORLDWIDE, INC. | ATTN: GENERAL COUNSEL 1266 EAST MAIN STREET STAMFORD, CT 06902 |

NAS1218

**Purdue Pharma L.P.**                                                                                              **Case Number:   19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 501 SEARCH FIRM AGREEMENT DATED APRIL 14, 2006 | | 101169 | ☐ | FOGARTHY KNAPP & ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1150 SUMMER STREET STAMFORD, CT 06905 |
| 2. 502 YOUNKER MSA 10152016 CW2321137 NP WORKSHOP SPEAKER (SS.PMM) DATED OCTOBER 15, 2016 | | 101180 | ☐ | FRANK S. YOUNKER | ATTN: GENERAL COUNSEL 409 BEECHWOOD BOULEVARD BULTER, PA 16001 |
| 2. 503 REIMHERR, FRED CSA 01012019 CW2364604 (SS.SD) DATED JANUARY 01, 2019 | | 101183 | ☐ | FRED REIMHERR, M.D | ATTN: GENERAL COUNSEL 1522 SOUTH 1100 EAST SALT LAKE CITY, UT 84105 |
| 2. 504 MASTER SERVICES AGREEMENT DATED NOVEMBER 30, 2017 | | 101186 | ☐ | FREUND-VECTOR CORPORATION F/K/A VECTOR CORPORATION | ATTN: GENERAL COUNSEL 675 44TH STREET MARION, IA 52302 |
| 2. 505 AMENDMENT #3 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 31, 2017 | | 101187 | ☐ | FREUND-VECTOR CORPORATION, F/K/A VECTOR CORPORATION | ATTN: GENERAL COUNSEL 675 44TH STREET MARION, IA 52302 |
| 2. 506 AMENDMENT NO. 4 TO MASTER SERVICES AGREEMENT DATED NOVEMBER 07, 2018 | | 101192 | ☐ | FTI CONSULTING (SC), INC. | ATTN: GENERAL COUNSEL 3 TIMES SQUARE 9TH FLOOR NEW YORK, NY 10036 |
| 2. 507 DATA USE AGREEMENT DATED MAY 24, 2018 | | 101191 | ☐ | FTI CONSULTING (SC), INC. | ATTN: GENERAL COUNSEL 3 TIMES SQUARE 9TH FLOOR NEW YORK, NY 10036 |
| 2. 508 GALINKIN CONSULTING, LLC - HCP CSA CW2367457 (LH.SD) EFFECTIVE JULY 01, 2019 | 6/30/2021 | 106034 | ☐ | GALINKIN CONSULTING LLC | NOT AVAILABLE |
| 2. 509 GALINKIN CONSULTING, LLC - WO 2019-1 CW2367504 HCP (LH.SD) EFFECTIVE JULY 01, 2019 | 6/30/2021 | 106015 | ☐ | GALINKIN CONSULTING LLC | NOT AVAILABLE |
| 2. 510 GALLOWAY RESEARCH SERVICE DATED OCTOBER 30, 2000 | | 101200 | ☐ | GALLOWAY RESEARCH SERVICE, INC. | ATTN: GENERAL COUNSEL 4751 HAMILTON WOLFE SAN ANTONIO, TX 78229 |

NAS1219

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 511  AMENDMENT TO THE MASTER CLIENT AGREEMENT DATED APRIL 25, 2009 | | 101202 | ☐ | GARTNER, INC. | ATTN: GENERAL COUNSEL 12600 GATEWAY BOULEVARD FORT MYERS, FL 33913 |
| 2. 512  EXPENSELINK SERVICE AGREEMENT EXECUTED APRIL 30, 1999 | | 101208 | ☐ | GEICO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 513  RESEARCH AND COLLABORATION AGREEMENT EFFECTIVE AS OF OCTOBER 23, 2017 | | 101210 | ☐ | GEISINGER CLINIC FOR HEALTH RESEARCH | ATTN: GENERAL COUNSEL 100 NORTH ACADEMY AVENUE DANVILLE, PA 17822-3057 |
| 2. 514  GELCO INFORMATION NETWORK EXPENSELINK SERVICE AGREEMENT FEE SCHEDULE EFFECTIVE AS OF AUGUST 01, 1999 | | 101211 | ☐ | GELCO INFORMATION NETWORK | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 515  STATEMENT OF WORK DATED APRIL 21, 2005 | | 101216 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 516  STATEMENT OF WORK DATED APRIL 30, 1999 | | 101213 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 517  STATEMENT OF WORK DATED FEBRUARY 25, 2004 | | 101214 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 518  STATEMENT OF WORK DATED FEBRUARY 25, 2004 | | 101215 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 519  STATEMENT OF WORK EXECUTED FEBRUARY 21, 2006 | | 101218 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 520  STATEMENT OF WORK EXECUTED MAY 20, 2004 | | 101217 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |

**NAS1220**

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 521 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2016 | | 101220 | ☐ | GENESIS ENGINEERS, INC. | ATTN: GENERAL COUNSEL 1850 N. GRAVERS ROAD SUITE 300 PLYMOUTH MEETING, PA 19462 |
| 2. 522 AMENDMENT NO. 1 MASTER SERVICES AGREEMENT DATED OCTOBER 20, 2017 | | 101221 | ☐ | GENESIS RESEARCH LLC | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 523 AMENDMENT NO. 1 MASTER SERVICES AGREEMENT DATED OCTOBER 20, 2017 | | 101222 | ☐ | GENESIS RESEARCH LLC | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 524 AMENDMENT #2 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101223 | ☐ | GENESIS RESEARCH LLC. | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 525 MASTER SERVICES AGREEMENT DATED DECEMBER 05, 2016 | | 101224 | ☐ | GENESIS RESEARCH, LLC | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 526 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 05, 2016 | | 101225 | ☐ | GENESIS RESEARCH, LLC | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 527 CANCER ANTIGEN DISCOVERY AGREEMENT DATED OCTOBER 01, 2000 | | 101226 | ☐ | GENZYME CORPORATION | ATTN: PRESIDENT, GENZYME MOLECULAR ONCOLOGY 15 PLEASANT STREET CONNECTOR PO BOX 9322 FRAMINGHAM, MA 01701-9322 |
| 2. 528 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 18, 2016 | | 101230 | ☐ | GERSON LEHRMAN GROUP | ATTN: GENERAL COUNSEL 60 EAST 42ND STREET 3RD FLOOR NEW YORK, NY 10165 |

NAS1221

**Purdue Pharma L.P.**                                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 529 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 18, 2016 | | 101231 | ☐ | GERSON LEHRMAN GROUP, INC. | ATTN: GENERAL COUNSEL 60 EAST 42ND STREET 3RD FLOOR NEW YORK, NY 10165 |
| 2. 530 AMENDMENT NO. 3 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 01, 2017 | | 101233 | ☐ | GIBRALTAR LABORATORIES, INC. | ATTN: GENERAL COUNSEL 122 FAIRFIELD ROAD FAIRFIELD, NJ 07004 |
| 2. 531 MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 07, 2014 | | 101234 | ☐ | GILLETTE CHILDREN'S SPECIALTY HEALTHCARE | ATTN: GENERAL COUNSEL 200 EAST UNIVERSITY AVENUE ST. PAUL, MN 55101 |
| 2. 532 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 19, 2018 | | 101235 | ☐ | GLATT AIR TECHNIQUES, INC. | ATTN: GENERAL COUNSEL 20 SPEAR ROAD RAMSEY, NJ 07466 |
| 2. 533 STATEMENT OF WORK NO. 1 EFFECTIVE AS OF DECEMBER 19, 2018 | | 101236 | ☐ | GLATT AIR TECHNIQUES, INC. | ATTN: GENERAL COUNSEL 20 SPEAR ROAD RAMSEY, NJ 07466 |
| 2. 534 AMENDMENT NO. 2 TO STATEMENT OF WORK EFFECTIVE AS OF OCTOBER 01, 2018 | | 101237 | ☐ | GLEMSER TECHNOLOGIES CORPORATION | NOT AVAILABLE |
| 2. 535 GERSON LEHRMAN GROUP AMEND MSA CW2365817(SD.RA) EFFECTIVE MARCH 05, 2019 | 6/30/2022 | 106190 | ☐ | GLG | BOX 200589 PITTSBURGH, PA 15251-0589 |
| 2. 536 GERSON LEHRMAN GROUP SOW CW2365835 (SD.RA) EFFECTIVE FEBRUARY 19, 2019 | 6/18/2020 | 106192 | ☐ | GLG | BOX 200589 PITTSBURGH, PA 15251-0589 |
| 2. 537 PROJECT AGREEMENT DATED APRIL 04, 2002 | | 101239 | ☐ | GLICKMAN RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 160 PARIS AVENUE NORTHVALE, NJ 07647 |
| 2. 538 MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 15, 2016 | | 101241 | ☐ | GLOBAL PHARMA ALLIANCE, INC. | ATTN: GENERAL COUNSEL 1200 ROUTE 22 EAST SUITE 200 PMB2031 BRIDGEWATER 08807 |

NAS1222

**Purdue Pharma L.P.**                                                                                          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 539 STATEMENT OF WORK DATED APRIL 09, 2018 | | 101240 | ☐ | GLOBAL PHARMA ALLIANCE, INC. | ATTN: GENERAL COUNSEL 5 MARINE VIEW PLAZA SUITE 312 HOBOKEN, NJ 07030 |
| 2. 540 ARTWORK SERVICE QUOTATION # PP15050 EFFECTIVE AS OF APRIL 28, 2006 | | 101247 | ☐ | GLOBAL VISION INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 541 TERMS AND CONDITIONS FOR QUOTATION # PP 15100-B DATED APRIL 28, 2006 | | 101245 | ☐ | GLOBAL VISION INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 |
| 2. 542 TERMS AND CONDITIONS FOR QUOTATION # PP 15151 DATED APRIL 28, 2006 | | 101246 | ☐ | GLOBAL VISION INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 543 STUDY SPECIFICATION ORDER #005 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JANUARY 13, 2005 | | 101259 | ☐ | GOLD COAST RESEARCH, LLC | ATTN: LYNDA HALE 2965 SURREY LANE WESTON, FL 33331 |
| 2. 544 PROJECT AGREEMENT DATED DECEMBER 18, 2002 | | 101260 | ☐ | GOLDMAN & YOUNG GROUP | ATTN: GENERAL COUNSEL 545 MADISON AVENUE NEW YORK, NY 10022 |
| 2. 545 AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT DATED JUNE 14, 2017 | | 101261 | ☐ | GOLDMAN SACHS ASSET MANAGEMENT, L.P. | ATTN: GENERAL COUNSEL / LEGAL DEPARTMENT 200 WEST STREET NEW YORK, NY 10282-2198 |
| 2. 546 AMENDMENT NO. 1 TO STATEMENT OF WORK DATED APRIL 24, 2003 | | 101267 | ☐ | GREGG FRANK CORPORATION | ATTN: GENERAL COUNSEL 6 NURSERY LANE SUITE B RYE, NY 10580 |
| 2. 547 LETTER OF AGREEMENT DATED JANUARY 05, 2018 | | 101268 | ☐ | GREGORY A. BURKHART, M.D., M.S. | ATTN: GENERAL COUNSEL 1224 QUORN LANE RESTON, VA 20191 |

**NAS1223**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 548  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 30, 2010 | | 101269 | ☐ | GRM INFORMATION MANAGEMENT SERVICES, INC | ATTN: GENERAL COUNSEL 215 COLES STREET JERSEY CITY, NJ 07310 |
| 2. 549  AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED MAY 25, 2017 | | 101314 | ☐ | GUIDEPOINT GLOBAL, LLC. | ATTN: GENERAL COUNSEL 730 THIRD AVENUE 11TH FLOOR NEW YORK, NY 10017 |
| 2. 550  AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JUNE 30, 2017 | | 101316 | ☐ | H.D. SMITH LLC | ATTN: GENERAL COUNSEL 3201 WEST WHITE OAKS DRIVE SUITE 400 SPRINGFIELD, IL 62704 |
| 2. 551  AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2018 | | 101317 | ☐ | H.D. SMITH LLC | ATTN: GENERAL COUNSEL 3201 WEST WHITE OAKS DRIVE SUITE 400 SPRINGFIELD, IL 62704 |
| 2. 552  AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 01, 2018 | | 101318 | ☐ | H.D. SMITH LLC | ATTN: GENERAL COUNSEL 3201 WEST WHITE OAKS DRIVE SUITE 400 SPRINGFIELD, IL 62704 |
| 2. 553  AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 101319 | ☐ | H.D. SMITH LLC. F/K/A H.D. SMITH WHOLESALE DRUG CO. | ATTN: GENERAL COUNSEL 3063 FIAT AVENUE SPRINGFIELD, IL 62703 |
| 2. 554  AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101320 | ☐ | H.D. SMITH WHOLESALE DRUG CO. | ATTN: GENERAL COUNSEL 3063 FIAT AVENUE SPRINGFIELD, IL 62703 |
| 2. 555  DISTRIBUTION PERFORMANCE AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101321 | ☐ | H.D. SMITH WHOLESALE DRUG CO. | ATTN: GENERAL COUNSEL 3063 FIAT AVENUE SPRINGFIELD, IL 62703 |
| 2. 556  J. DAVID HADDOX, D.D.S., M.D. - CONSULTANT SERVICES AGREEMENT 7MAR19 (AM.CG) EFFECTIVE MARCH 07, 2019 | 12/31/2019 | 106089 | ☐ | HADDOX, J. DAVID DDS, M.D. | NOT AVAILABLE |

**NAS1224**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 557 GENERAL CONTRACTOR CONSTRUCTION SERVICES AGREEMENT DATED AUGUST 17, 2007 | | 101323 | ☐ | HAHR & LYONS CONSTRUCTION, LLC | ATTN: PAUL HAHR 24 COKESBURY ROAD, SUITE 8 LEBANON 08833 |
| 2. 558 GENERAL CONTRACTOR CONSTRUCTION SERVICES AGREEMENT DATED JUNE 07, 2010 | | 101325 | ☐ | HAHR & LYONS CONSTRUCTION, LLC | ATTN: PAUL H. HAHR, PRESIDENT 24 COKESBURY ROAD, SUITE 8 LEBANON, NJ 08833 |
| 2. 559 GENERAL CONTRACTOR CONSTRUCTION SERVICES AGREEMENT DATED SEPTEMBER 01, 2009 | | 101324 | ☐ | HAHR & LYONS CONSTRUCTION, LLC | ATTN: PAUL H. HAHR 24 COKESBURY ROAD SUITE 8 LEBANON, NJ 08833 |
| 2. 560 MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 26, 2016 | | 101326 | ☐ | HALE ADVISORS, INC. | ATTN: GENERAL COUNSEL 1 NORTH FRONT STREET 2ND FLOOR KINGSTON, NY |
| 2. 561 QUALITY AGREEMENT EFFECTIVE AS OF AUGUST 07, 2015 | | 101327 | ☐ | HALO PHARMACEUTICAL INC | ATTN: GENERAL COUNSEL 30 NORTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 562 MASTER MANUFACTURING AND SUPPLY AGREEMENT DATED JANUARY 27, 2010 (LAST AMENDED JANUARY 19, 2017) BETWEEN HALO PHARMACEUTICAL, INC. AND THE COMPANY | | 106241 | ☐ | HALO PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 30 NORTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 563 QUALITY AGREEMENT DATED JUNE 26, 2009 | | 101328 | ☐ | HALO PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 30 NORTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 564 SUPPLY AGREEMENT DATED DECEMBER 1, 2008 (LAST AMENDED JUNE 13, 2017) BETWEEN HALO PHARMACEUTICAL, INC. AND THE COMPANY | | 101328 | ☐ | HALO PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 30 NORTH JEFFERSON ROAD WHIPPANY, NJ 07981 |

**NAS1225**

**Purdue Pharma L.P.**                                                               **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 565  CLINICAL AGREEMENT DATED DECEMBER 16, 1996 | | 101334 | ☐ | HARRIS LABORATORIES, INC. | ATTN: GENERAL COUNSEL 621 ROSE STREET PO BOX 80837 LINCOLN, NE 68501 |
| 2. 566  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 30, 2011 | | 101348 | ☐ | HB COMMUNICATIONS INC | ATTN: TIMOTHY HUTTON 60 DODGE AVENUE NORTH HAVEN, CT 06473 |
| 2. 567  AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED MAY 15, 2016 | | 101349 | ☐ | HB COMMUNICATIONS, INC. | ATTN: TIMOTHY HUTTON 60 DODGE AVENUE NORTH HAVEN, CT 06473 |
| 2. 568  STATEMENT OF WORK NO. 19 DATED OCTOBER 31, 2016 | | 101351 | ☐ | HB COMMUNICATIONS, INC. | ATTN: TIMOTHY HUTTON 60 DODGE AVENUE NORTH HAVEN, CT 06473 |
| 2. 569  STATEMENT OF WORK NO. 19 TO MASTER SERVICES AGREEMENT DATED OCTOBER 31, 2016 | | 101350 | ☐ | HB COMMUNICATIONS, INC. | ATTN: TIMOTHY HUTTON 60 DODGE AVENUE NORTH HAVEN, CT 06473 |
| 2. 570  MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2016 | | 101352 | ☐ | HB LIVE, INC | ATTN: JONATHAN KAUFMAN 60 DODGE AVENUE NORTH HAVEN, CT 06473 |
| 2. 571  AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED MARCH 12, 2016 | | 101353 | ☐ | HBE SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 415 MADISON AVENUE 13TH FLOOR NEW YORK, NY 10017 |
| 2. 572  MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 31, 2013 | | 101354 | ☐ | HBE SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 415 MADISON AVENUE 13TH FLOOR NEW YORK, NY 10017 |
| 2. 573  AMENDMENT NO. 1 TO STATEMENT OF WORK DATED APRIL 14, 2015 | | 101358 | ☐ | HCL AMERICA INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |

**NAS1226**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 574 AMENDMENT TO STATEMENT OF WORK DATED JANUARY 25, 2017 | | 101359 | ☐ | HCL AMERICA INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 575 STATEMENT OF WORK DATED APRIL 10, 2014 | | 101355 | ☐ | HCL AMERICA INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 576 STATEMENT OF WORK EFFECTIVE AS OF MAY 01, 2014 | | 101356 | ☐ | HCL AMERICA INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 577 TELEPHONE NUMBER RETENTION AGREEMENT EFFECTIVE AS OF JULY 15, 2014 | | 101357 | ☐ | HCL AMERICA INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 578 AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED JUNE 06, 2014 | | 101361 | ☐ | HCL AMERICA, INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 579 AMENDMENT NO. 2 TO STATEMENT OF WORK DATED JULY 15, 2015 | | 101363 | ☐ | HCL AMERICA, INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 580 MASTER SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 01, 2009 | | 101360 | ☐ | HCL AMERICA, INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 581 STATEMENT OF WORK EFFECTIVE AS OF JANUARY 01, 2019 | | 101364 | ☐ | HCL TECHNOLOGIES LIMITED | ATTN: GENERAL COUNSEL 806 SIDDHARTH 96 NEHRU PLACE NEW DELHI 110019 INDIA |

**NAS1227**

**Purdue Pharma L.P.**                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 582   HEALTHACE LTD. SOW CW2367851 SD.RA) EFFECTIVE AUGUST 01, 2019 | 7/31/2020 | 106139 | ☐ | HEALTHACE LTD | ATTN: GENERAL COUNSEL 370 LEXINGTON AVE. SUITE 1702 NEW YORK, NY 10017 |
| 2. 583   TERMS OF SERVICE EFFECTIVE AS OF AUGUST 01, 2019 | | 101368 | ☐ | HEALTHACE LTD | ATTN: GENERAL COUNSEL 370 LEXINGTON AVE. SUITE 1702 NEW YORK, NY 10017 |
| 2. 584   MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 01, 2017 | | 101369 | ☐ | HEALTHAGEN LLC | ATTN: LOUIS SANQUINI 151 FARMINGTON AVENUE HARTFORD, CT 06156 |
| 2. 585   MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 15, 2016 | | 101371 | ☐ | HEALTHCARE INNOVATION AND TECHNOLOGY LAB, INC. | ATTN: STAN KACHNOWSKI AND LAURA PUGLLESE 3960 BROADWAY, LAB 501 NEW YORK, NY 10032 |
| 2. 586   AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 101372 | ☐ | HEALTHCARE RESEARCH, LLC, | ATTN: GENERAL COUNSEL 711 OLD BALLAS ROAD SUITE 104 ST. LOUIS, MO 63141 |
| 2. 587   AMENDMENT TO NO. 4 TO STATEMENT OF WORK NO. 1 DATED JANUARY 10, 2019 | | 101374 | ☐ | HEALTHCORE INC | ATTN: GENERAL COUNSEL 123 JUSTISON STREET, SUITE 200 WILMINGTON, DE 19801 |
| 2. 588   MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 19, 2016 | | 101373 | ☐ | HEALTHCORE INC | ATTN: GENERAL COUNSEL 123 JUSTISON STREET, SUITE 200 WILMINGTON, DE 19801 |
| 2. 589   EQUIPMENT SUPPLY CONTRACT DATED APRIL 19, 2000 | | 101389 | ☐ | HENRY FORD HEALTH SYSTEMS | ATTN: GENERAL COUNSEL 2799 WEST GRAND BOULEVARD K-16 DETROIT, MI 48202 |
| 2. 590   MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 06, 2016 | | 101390 | ☐ | HERRMANN INTERNATIONAL INC. | ATTN: GENERAL COUNSEL 794 BUFFALO CREEK ROAD LAKE LURE, NC 28746 |

**NAS1228**

**Purdue Pharma L.P.**                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 591 HP CUSTOMER TERMS DATED OCTOBER 15, 2013 | | 101398 | ☐ | HEWLETT-PACKARD COMPANY | ATTN: GENERAL COUNSEL 9737 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 592 COMPUTER EQUIPMENT AGREEMENT DATED APRIL 19, 2000 | | 101400 | ☐ | HILL TOP RESEARCH, INC. | ATTN: GENERAL COUNSEL 7555 EAST OSBORN ROAD SUITE 200 SCOTTSDALE, AZ 85251 |
| 2. 593 HOFMEISTER, CRAIG, M.D. - CSA CW2367031 (SS.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2020 | 105924 | ☐ | HOFMEISTER, CRAIG, M.D. | NOT AVAILABLE |
| 2. 594 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF DECEMBER 29, 2003 | | 101402 | ☐ | HOLSTON MEDICAL GROUP, PC | ATTN: GENERAL COUNSEL 2323 N JOHN B DENNIS HWY, KINGSPORT, TN 37660 |
| 2. 595 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101403 | ☐ | HOLSTON MEDICAL GROUP, PC | ATTN: GENERAL COUNSEL 2324 N JOHN B DENNIS HWY, KINGSPORT, TN 37660 |
| 2. 596 AMENDMENT #001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF MARCH 28, 2003 | | 101408 | ☐ | HOPE RESEARCH INSTITUTE, LLC. | NOT AVAILABLE |
| 2. 597 QUALITY AGREEMENT DATED AUGUST 29, 2011 | | 101409 | ☐ | HOSPIRA, INC. | ATTN: GENERAL COUNSEL 275 NORTH FIELD DRIVE LAKE FOREST, IL |
| 2. 598 AMENDMENT NO. 4 MASTER SERVICES AGREEMENT DATED FEBRUARY 01, 2018 | | 101414 | ☐ | HR FOCAL POINT, LLC | NOT AVAILABLE |
| 2. 599 SEARCH FIRM AGREEMENT DATED FEBRUARY 01, 2012 | | 101415 | ☐ | HR SEARCH PARTNERS | ATTN: GENERAL COUNSEL 1501 BROADWAY 12TH FLOOR NEW YORK, NY 10036 |
| 2. 600 SERVICE AGREEMENT - CPG DATED DECEMBER 15, 2016 | | 101422 | ☐ | IBOTTA, INC. | ATTN: GENERAL COUNSEL 1801 CALIFORNIA ST, SUITE 400 DENVER, CO 80202 |

NAS1229

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 601  IEP TECHNOLOGIES   MSA CW2366899                (AH.KM) EFFECTIVE MAY 17, 2019 | 5/31/2021 | 106118 | ☐ | IEP TECHNOLOGIES LLC | NOT AVAILABLE |
| 2. 602  PREFERRED ESCROW AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2003 | | 101431 | ☐ | IMAGE SOLUTIONS, INC. | ATTN: SUNJOO SHIN 100 SOUTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 603  MASTER SERVICES AGREEMENT DATED MARCH 07, 2016 | | 101437 | ☐ | IMPACT LEARNING & DEVELOPMENT, INC. (DBA IMPACT INTERNATIONAL) | ATTN: GENERAL COUNSEL 18 WEST PUTNAM AVENUE GREENWICH, CT 06901 |
| 2. 604  DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN IMPAX LABORATORIES, INC. AND PURDUE PHARMA L.P., DATED NOVEMBER 27, 2013 | | 106246 | ☐ | IMPAX LABORATORIES, INC. | ATTN: GENERAL COUNSEL 31047 GENSTAR ROAD HAYWARD, CA 94544 |
| 2. 605  PHARMACOVIGILANCE AGREEMENT EXECUTED DECEMBER 21, 2015 | | 101440 | ☐ | IMPAX LABORATORIES, INC. | ATTN: GENERAL COUNSEL 31047 GENSTAR ROAD HAYWARD, CA 94544 |
| 2. 606  QUALITY AGREEMENT DATED DECEMBER 15, 2015 | | 101439 | ☐ | IMPAX LABORATORIES, INC. | ATTN: TIM BAUER, SENIOR DIRECTOR EXTERNAL MANUFACTURING QUALITY 2 WALNUT GROVE DRIVE, SUITE 190 HORSHAM, PA 19044 |
| 2. 607  STATEMENT OF WORK EFFECTIVE AS OF JANUARY 13, 2016 | | 101445 | ☐ | IMS HEALTH INCORPORATED | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOTH MEETING, PA 19462 |
| 2. 608  CONTRACT STUDY AGREEMENT EFFECTIVE AS OF JANUARY 16, 2008 | | 101449 | ☐ | INA RESEARCH INC. | ATTN: GENERAL COUNSEL 2148-188 NISHIMINOWA INA-SHI NAGANO-KEN 399-4501 |

**NAS1230**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 609 PROJECT SPECIFICATION ORDER EFFECTIVE AS OF MARCH 23, 2018 | | 101452 | ☐ | INC RESEARCH TORONTO, INC | ATTN: GENERAL COUNSEL 720 KING STREET WEST, 7TH FLOOR TORONTO, ON M5V 2T3 CANADA |
| 2. 610 AMENDMENT NO. 3 TO MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF MARCH 07, 2011 | | 101453 | ☐ | INC RESEARCH, LLC | ATTN: GENERAL COUNSEL 3201 BEECHLEAF COURT, SUITE 600 RALEIGH, NC 27604 |
| 2. 611 MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF MARCH 07, 2011 | | 101454 | ☐ | INC RESEARCH, LLC | ATTN: GENERAL COUNSEL 3201 BEECHLEAF COURT, SUITE 600 RALEIGH, NC 27604 |
| 2. 612 PROJECT SPECIFICATION ORDER TO MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF MAY 27, 2013 | | 101455 | ☐ | INC RESEARCH, LLC | ATTN: GENERAL COUNSEL 3201 BEECHLEAF COURT, SUITE 600 RALEIGH, NC 27604 |
| 2. 613 LETTER: CONSENT EXECUTED JANUARY 07, 2014 | | 101456 | ☐ | INC. RESEARCH | ATTN: ANDREW SHAW, SENIOR CORPORATE COUNSEL 3201 BEECHLEAF COURT RALEIGH, NC 27604 |
| 2. 614 STUDY SPECIFICATION ORDER #001 DATED NOVEMBER 11, 2003 | | 101461 | ☐ | INDEPENDENT RESEARCH NURSES D/B/A OMEGA MEDICAL RESEARCH | ATTN: GENERAL COUNSEL 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 615 AMENDMENT#1: TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 03, 2003 | | 101462 | ☐ | INDEPENDENT RESEARCH NURSES, INC. | ATTN: GENERAL COUNSEL 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 616 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER EXECUTED AUGUST 16, 2004 | | 101463 | ☐ | INDEPENDENT RESEARCH NURSES, INC. D/B/A OMEGA MEDICAL RESEARCH | ATTN: GENERAL COUNSEL 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 617 INDUSTRIAL AND CONSTRUCTION ENTERPRISES, INC. - MASTER SERVICES AGREEMENT (AH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2020 | 106129 | ☐ | INDUSTRIAL CONSTRUCTION ENTERPRISES | NOT AVAILABLE |

**NAS1231**

**Purdue Pharma L.P.**  |  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 618 INFO-TECH RESEARCH GROUP INC. - CSA CW2366753 (PB.RA) EFFECTIVE MAY 06, 2019 | 5/5/2021 | 106037 | ☐ | INFO TECH RESEARCH GROUP INC | NOT AVAILABLE |
| 2. 619 INFORMA BUSINESS INTELLIGENCE, INC. - CSA CW2367111 AML ANALYSIS (LH.RA) EFFECTIVE MAY 30, 2019 | 5/29/2020 | 106027 | ☐ | INFORMA BUSINESS INTELLIGENCE INC | PO BOX 415214 BOSTON, MA 02241 |
| 2. 620 AMENDMENT 3 TO CONTRACT FOR INFOSCAN SERVICES DATED JULY 14, 2003 | | 101469 | ☐ | INFORMATION RESOURCES, INC. | NOT AVAILABLE |
| 2. 621 SERVICES AGREEMENT DATED JULY 01, 2004 | | 101470 | ☐ | INFOTRIEVE, INC. | ATTN: GENERAL COUNSEL 11755 WILSHIRE BOULEVARD 19TH FLOOR LOS ANGELES, CA 90025 |
| 2. 622 AMENDMENT #1 TO PROJECT SPECIFICATION ORDER #1 DATED NOVEMBER 09, 2001 | | 101471 | ☐ | INGENIX PHARMACEUTICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 1001 WINSTEAD DRIVE SUITE 530 CARY, NC 27513 |
| 2. 623 AMENDMENT TO CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF OCTOBER 09, 2003 | | 101473 | ☐ | INGENIX PHARMACEUTICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 131 MORRISTOWN ROAD BASKING RIDGE, NJ 07920 |
| 2. 624 AMENDMENT TO CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF OCTOBER 09, 2003 | | 101474 | ☐ | INGENIX PHARMACEUTICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 131 MORRISTOWN ROAD BASKING RIDGE, NJ 07920 |
| 2. 625 INVESTIGATOR AGREEMENT EFFECTIVE AS OF SEPTEMBER 24, 2001 | | 101472 | ☐ | INGENIX PHARMACEUTICAL SERVICES, INC. | ATTN: GENERAL COUNSEL 1001 WINSTEAD DRIVE SUITE 530 CARY, NC 27513 |
| 2. 626 MED-TURN (INMAR) RETURNS MGMT AGREEMENT 1AUG2018 CW2362683 (RJ.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2021 | 106047 | ☐ | INMAR RX SOLUTIONS INC | NOT AVAILABLE |

**NAS1232**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 627 | MED-TURN AMD RECALL MANAGEMENT AGREEMENT CW2360722 (RJ.JM) EFFECTIVE JANUARY 01, 2019 | 12/31/2021 | 106048 | ☐ | INMAR RX SOLUTIONS INC | NOT AVAILABLE |
| 2. 628 | INNOPLEXUS HOLDINGS INC. CSA CW2367048 (SD.RA) EFFECTIVE MAY 29, 2019 | 5/28/2022 | 106193 | ☐ | INNOPLEXUS HOLDINGS INC | NOT AVAILABLE |
| 2. 629 | AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED DECEMBER 18, 2014 | | 101476 | ☐ | INNOVATIVE INFORMATION SOLUTIONS, INC. | NOT AVAILABLE |
| 2. 630 | AMENDMENT #1: TO STUDY SPECIFICATION ORDER #002 DATED JUNE 14, 2004 | | 101477 | ☐ | INNOVATIVE RESEARCH CONSULTING, LLC | ATTN: GENERAL COUNSEL D/B/A SOUTHBAY PHARMA RESEARCH 6888 LINCOLN AVENUE, SUITE M BUENA PARK, CA 90620 |
| 2. 631 | STUDY SPECIFICATION ORDER TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 13, 2004 | | 101478 | ☐ | INNOVATIVE RESEARCH CONSULTING, LLC | ATTN: GENERAL COUNSEL D/B/A SOUTHBAY PHARMA RESEARCH 6888 LINCOLN AVENUE, SUITE M BUENA PARK, CA 90620 |
| 2. 632 | STUDY SPECIFICATION ORDER #002 TO MASTER CLINICAL TRIAL AGREEMENT DATED MAY 20, 2004 | | 101479 | ☐ | INNOVATIVE RESEARCH CONSULTING, LLC D/B/A SOUTHBAY PHARMA RESEARCH | ATTN: VIOLET LUISZER 6888 LINCOLN AVENUE, SUITE L BUENA PARK, CA 90620 |
| 2. 633 | AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 101481 | ☐ | INNOVATIVE RESEARCH OF WEST FL INC. | ATTN: GENERAL COUNSEL 360 CLEARWATER LARGO RD. LARGO, FL 33770 |
| 2. 634 | AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 101482 | ☐ | INNOVATIVE RESEARCH OF WEST FL INC. | ATTN: GENERAL COUNSEL 360 CLEARWATER LARGO RD. LARGO, FL 33770 |
| 2. 635 | AMENDMENT NO. 2 TO STUDY SPECIFICATION DATED FEBRUARY 04, 2012 | | 101483 | ☐ | INNOVATIVE RESEARCH OF WEST FL INC. | ATTN: GENERAL COUNSEL 360 CLEARWATER LARGO RD. LARGO, FL 33770 |

**NAS1233**

**Purdue Pharma L.P.**                                           **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 636 STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF FEBRUARY 27, 2004 | | 101480 | ☐ | INNOVATIVE RESEARCH OF WEST FL INC. | ATTN: GENERAL COUNSEL 360 CLEARWATER LARGO RD. LARGO, FL 33770 |
| 2. 637 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 22, 2005 | | 101484 | ☐ | INNOVATIVE RESEARCH OF WEST FL. INC. | ATTN: GENERAL COUNSEL 360 CLEARWATER LARGO RD. LARGO, FL 33770 |
| 2. 638 MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 01, 2016 | | 101485 | ☐ | INSTRON, INC. | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 639 STATEMENT OF WORK NO.3 TO MASTER SERVICES AGREEMENT DATED APRIL 01, 2016 | | 101486 | ☐ | INSTRON, INC. | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 640 INTEGRATED BEHAVIORAL HEALTH_INFLEXXION SOW CW2366066 OXYCONTIN AD BOARD CONSULTING - JODY GREEN (LH.RA) EFFECTIVE MARCH 25, 2019 | 3/31/2020 | 105970 | ☐ | INTEGRATED BEHAVIORAL HEALTH, INC. | 3070 BRISTOL ST STE 350 COSTA MESA, CA 92626 |
| 2. 641 AMENDMENT NO. 1 TO LOGISTICS SERVICES AGREEMENT DATED JULY 01, 2018 | | 101499 | ☐ | INTEGRATED COMMERCIALIZATION SOLUTIONS INC. | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 642 LOGISTICS SERVICES AGREEMENT DATED NOVEMBER 01, 2015 | | 101497 | ☐ | INTEGRATED COMMERCIALIZATION SOLUTIONS INC. | ATTN: PRESIDENT 3101 GAYLORD PARKWAY FRISCO, TX 75034 |
| 2. 643 LOGISTICS SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2015 | | 101498 | ☐ | INTEGRATED COMMERCIALIZATION SOLUTIONS INC. | ATTN: PRESIDENT 3101 GAYLORD PARKWAY FRISCO, TX 75034 |

**NAS1234**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 644 LOGISTICS SERVICES AGREEMENT ("LSA"), DATED AS OF NOVEMBER 1, 2015, BY AND AMONG PURDUE PHARMA. L.P. AND INTEGRATED COMMERCIALIZATION SOLUTIONS INC. AND AMERISOURCEBERGEN DRUG CORPORATION | | 106250 | ☐ | INTEGRATED COMMERCIALIZATION SOLUTIONS INC. | NOT AVAILABLE |
| 2. 645 AMENDMENT #1 TO LOGISTICS SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 31, 2016 | | 101500 | ☐ | INTEGRATED COMMERCIALIZATION SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1300 MORRIS DRIVE CHESTERBROOK, PA 19087 |
| 2. 646 AGREEMENT RE: DESIGN/BUILD SERVICES DATED SEPTEMBER 03, 2003 | | 101501 | ☐ | INTEGRATED PROJECT SERVICES, INC. | ATTN: GENERAL COUNSEL 105 RAIDER BOULEVARD HILLSBOROUGH, NJ 08844 |
| 2. 647 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101503 | ☐ | INTEGREON MANAGED SOLUTIONS, INC. | ATTN: LEGAL DEPARTMENT 1450 BROADWAY, SUITE 620 NEW YORK, NY 10018 |
| 2. 648 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2017 | | 101504 | ☐ | INTEGREON MANAGED SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1450 BROADWAY SUITE 1100 NEW YORK, NY 10018 |
| 2. 649 STATEMENT OF WORK #4 UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 23, 2018 | | 101506 | ☐ | INTEGREON MANAGED SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1450 BROADWAY SUITE 1100 NEW YORK, NY 10018 |
| 2. 650 STATEMENT OF WORK NO.3 UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2018 | | 101505 | ☐ | INTEGREON MANAGED SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1450 BROADWAY SUITE 1100 NEW YORK, NY 10018 |
| 2. 651 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101509 | ☐ | INTEGRITY CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1059 JONES BOULEVARD MILAN, TX 38358 |
| 2. 652 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF JANUARY 19, 2005 | | 101510 | ☐ | INTEGRITY CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1059 JONES BOULEVARD MILAN, TX 38358 |

**NAS1235**

**Purdue Pharma L.P.**                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 653 STUDY SPECIFICATION ORDER #001 DATED DECEMBER 01, 2003 | | 101508 | ☐ | INTEGRITY CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1059 JONES BOULEVARD MILAN, TX 38358 |
| 2. 654 AMENDMENT TO DISTRIBUTION AGREEMENT DATED MARCH 29, 1995 | | 101517 | ☐ | INTERFERON SCIENCES, INC. | NOT AVAILABLE |
| 2. 655 KOL DATABASE SOW EXTENSION 2019 CW2364617 PB.RA DATED DECEMBER 19, 2018 | | 101523 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 1 ORCHARD ROAD ARMONK, NY 10504 |
| 2. 656 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 101526 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91910 |
| 2. 657 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 101527 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91910 |
| 2. 658 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED DECEMBER 01, 2004 | | 101530 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91910 |
| 2. 659 STUDY SPECIFICATION ORDER #001 DATED JANUARY 14, 2004 | | 101525 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91910 |
| 2. 660 STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF MARCH 11, 2004 | | 101528 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91910 |
| 2. 661 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 101531 | ☐ | INTERNATIONAL CLINICAL RESEARCH NETWORK, INC. | ATTN: GENERAL COUNSEL 855 THIRD AVENUE SUITE 2210 CHULA VISTA, CA 91911 |

**NAS1236**

**Purdue Pharma L.P.**                                                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 662 SERVICES AGREEMENT EFFECTIVE AS OF JUNE 30, 1998 | | 101532 | ☐ | INTERNATIONAL MEDICAL TECHNICAL CONSULTANTS, INC. | ATTN: GENERAL COUNSEL 16300 COLLEGE BOULEVARD LENEXA, KS 66219 |
| 2. 663 PROGRAM SERVICES AGREEMENT DATED DECEMBER 10, 2003 | | 101534 | ☐ | INTERNATIONAL PHARMACEUTICAL EXCIPIENTS AUDITING, INC. | NOT AVAILABLE |
| 2. 664 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 101536 | ☐ | INTERNIST ASSOCIATES OF CNY | ATTN: GENERAL COUNSEL 739 IRVING AVENUE SUITE 200 SYRACUSE, NY 13210 |
| 2. 665 STUDY SPECIFICATION ORDER #001 DATED DECEMBER 19, 2003 | | 101535 | ☐ | INTERNIST ASSOCIATES OF CNY | ATTN: GENERAL COUNSEL 739 IRVING AVENUE SUITE 200 SYRACUSE, NY 13210 |
| 2. 666 INVENTIV COMMERICAL SERVICE SOW CSO CW2366741 (SD.RA) EFFECTIVE MAY 10, 2019 | 7/28/2021 | 106162 | ☐ | INVENTIV COMMERCIAL SERVICES LLC | 500 ATRIUM DR SOMERSET, NJ 08873 |
| 2. 667 AMENDED AND RESTATED MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF JANUARY 01, 2017 | | 101538 | ☐ | INVENTIV HEALTH CLINIC LAB, INC. | ATTN: GENERAL COUNSEL P.O. BOX 415914 BOSTON, MA 02241-8302 |
| 2. 668 LETTER: CONSENT EXECUTED JANUARY 24, 2014 | | 101540 | ☐ | INVENTIV HEALTH CLINICAL | ATTN: GENERAL COUNSEL 1787 SENTRY PARKWAY WEST SUITE 300, BUILDING 16 BLUE BELL, PA 19422 |
| 2. 669 INVENTIV PSO CW2367113 NAL1002 (LH.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2020 | 106011 | ☐ | INVENTIV HEALTH CLINICAL LAB INC | PO BOX 415914 BOSTON, MA 02241 |
| 2. 670 MASTER PROJECT SPECIFICATION ORDER TO MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101542 | ☐ | INVENTIVE HEALTH CLINICAL LAB, INC. | ATTN: GENERAL COUNSEL 1787 SENTRY PARKWAY WEST SUITE 300, BUILDING 16 BLUE BELL, PA 19422 |
| 2. 671 AGREEMENT LETTER DATED MAY 25, 2017 | | 101547 | ☐ | IOKINETIC, LLC | ATTN: GENERAL COUNSEL 95 STILES ROAD SALEM, NH 03079 |

NAS1237

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 672 AMENDED AND RESTATED PRODUCT/SERVICE ORDER EFFECTIVE AS OF JANUARY 14, 2019 | | 101555 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 673 IQVIA INC. - AMENDMENT 1 TO SOW VALUCENTRIC SCORECARD CW2367563 (SD.RA) EFFECTIVE JULY 01, 2019 | 12/31/2019 | 106169 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 674 IQVIA INC. - AMENDMENT 8 TO VALUECENTRIC HOSTED SERVICES AGREEMENT CW2367664 (SD.RA) EFFECTIVE JULY 01, 2019 | 12/31/2019 | 106132 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 675 IQVIA INC. - AMENDMENT TO SOW MASTER DATA CW2365832(SD.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2020 | 106191 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 676 IQVIA INC. - AMENDMENT TO SOW OPIOID DATA CW2367027(SD.RA) EFFECTIVE MAY 06, 2019 | 12/31/2020 | 106145 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 677 IQVIA INC. - PSO REGULATORY CONSULTING CW2365794 (SD.RA) EFFECTIVE FEBRUARY 25, 2019 | 2/24/2020 | 106189 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 678 IQVIA INC. - SOW - OPIOID PATIENT COUNTS CW2367867 (RA) EFFECTIVE JULY 19, 2019 | 7/19/2020 | 106080 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 679 IQVIA INC. - SOW PARALLEL TESTING SUPPORT CW2367801(SD.RA) EFFECTIVE JUNE 27, 2019 | 7/27/2020 | 106137 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 680 IQVIA INC. SOW TRACKER CW2366807 (SD.RA) EFFECTIVE MAY 08, 2019 | 3/31/2020 | 106159 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 681 STATEMENT OF WORK EFFECTIVE AS OF FEBRUARY 12, 2019 | | 101556 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |

NAS1238

**Purdue Pharma L.P.**                                                                            **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 682 | STATEMENT OF WORK EFFECTIVE AS OF FEBRUARY 15, 2019 | | 101551 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOTH MEETING, PA 19462 |
| 2. 683 | STATEMENT OF WORK EFFECTIVE AS OF JANUARY 01, 2018 | | 101552 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 684 | STATEMENT OF WORK EFFECTIVE AS OF SEPTEMBER 14, 2018 | | 101550 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 685 | MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 29, 2017 | | 101558 | ☐ | IRIS PHARMA | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 686 | QUALITY AGREEMENT DATED MARCH 14, 2005 | | 101563 | ☐ | IVAX PHARMACEUTICALS, INC. | ATTN: ADEL KHEIR-ELDIN, VICE PRESIDENT, QUALITY; JUAN CARLOS TORRES, MANAGER REGULATORY; KATH KEES, ASSOCIAT DIRECTOR, QA & DEA |
| 2. 687 | AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF NOVEMBER 20, 2003 | | 101572 | ☐ | J. LEWIS RESEARCH INC. | ATTN: GENERAL COUNSEL 3191 SOUTH 330 EAST SUITE 100C SALT LAKE CITY, UT 84109 |
| 2. 688 | STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF NOVEMBER 30, 2003 | | 101571 | ☐ | J. LEWIS RESEARCH INC. | ATTN: GENERAL COUNSEL 3191 SOUTH 330 EAST SUITE 100C SALT LAKE CITY, UT 84109 |
| 2. 689 | STUDY SPECIFICATION ORDER #002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED NOVEMBER 20, 2003 | | 101570 | ☐ | J. LEWIS RESEARCH INC. | ATTN: JANET LEWIS 3191 SOUTH 3300 EAST, SUITE 100C SALT LAKE CITY, UT 84109 |
| 2. 690 | AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101573 | ☐ | J. LEWIS RESEARCH, INC. | ATTN: GENERAL COUNSEL 3191 SOUTH 330 EAST SUITE 100C SALT LAKE CITY, UT 84109 |

**NAS1239**

**Purdue Pharma L.P.**           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 691 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 11, 2017 | | 101574 | ☐ | J.KNIPPER AND COMPANY, INC. | ATTN: GENERAL COUNSEL ONE HEALTHCARE WAY LAKEWOOD 08701 |
| 2. 692 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 101581 | ☐ | JANSSEN PHARMACEUTICALS INC | ATTN: GENERAL COUNSEL JANSSEN PHARMACEUTICALAAN 3 GEEL, BELGIUM 2440 |
| 2. 693 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 22, 2005 | | 101589 | ☐ | JBA RESEARCH | ATTN: GENERAL COUNSEL 1045 E 3900 SOUTH SALT LAKE CITY, UT 84124 |
| 2. 694 STUDY SPECIFICATION ORDER #002 DATED JULY 15, 2003 | | 101587 | ☐ | JBA RESEARCH | ATTN: GENERAL COUNSEL 1045 E 3900 SOUTH SALT LAKE CITY, UT 84124 |
| 2. 695 STUDY SPECIFICATION ORDER #003 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF MARCH 01, 2004 | | 101590 | ☐ | JBA RESEARCH | ATTN: MINDI TURPIN; RONI O'CALLAHAN 1045 E. 3900 SOUTH SALT LAKE CITY, UT 82124 |
| 2. 696 WASSERSTEIN, JEANETTE CSA 0101019 CW2364676 (SS.SD) DATED JANUARY 01, 2019 | | 101593 | ☐ | JEANETTE WASSERSTEIN, PH.D. | ATTN: GENERAL COUNSEL 1160 FIFTH AVENUE, SUITE 112 NEW YORK, NY 10029 |
| 2. 697 AMENDMENT TO STATEMENTS OF WORK EFFECTIVE AS OF JUNE 02, 2016 | | 101597 | ☐ | JEFFREY GUDIN, MD | ATTN: GENERAL COUNSEL 5506 S. EMPORIA CIRCLE GREENWOOD VILLAGE, CO 80111 |
| 2. 698 SERVICE AGREEMENT DATED MARCH 13, 2003 | | 101601 | ☐ | JL SHAPIRO ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 292 FERNWOOD AVENUE EDISON, NJ 08837 |
| 2. 699 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF APRIL 15, 2016 | | 101607 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |
| 2. 700 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 101604 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |

**NAS1240**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 701 | AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JUNE 30, 2017 | | 101605 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |
| 2. 702 | AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT AND TERMINATION AGREEMENT  EFFECTIVE AS OF MAY 04, 2018 | | 101606 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |
| 2. 703 | AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101602 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |
| 2. 704 | DISTRIBUTION PERFORMANCE AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101603 | ☐ | JM SMITH CORPORATION | ATTN: GENERAL COUNSEL 9098 FAIRFOREST ROAD SPARTANBURG, SC 29301 |
| 2. 705 | ARCHITECT SERVICES AGREEMENT DATED AUGUST 18, 2003 | | 101614 | ☐ | JOHN STANDISH PERRIN ARCHITECT, LLC | ATTN: JOHN STANDISH PERRIN 1164 FOOTHILL WAY MOUNTAINSIDE, NJ 07092 |
| 2. 706 | STATEMENT OF WORK #20 EFFECTIVE AS OF MAY 01, 2016 | | 101615 | ☐ | JOHNSON CONTROLS, INC. | ATTN: GENERAL COUNSEL 5757 NORTH GREEN BAY AVENUE MILWAUKEE, WI 53209 |
| 2. 707 | AFFILIATE ELECTION ADDENDUM DATED JUNE 09, 2005 | | 101622 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |
| 2. 708 | AFFILIATE ELECTION ADDENDUM DATED JUNE 09, 2005 | | 101623 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |

**NAS1241**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 709 AFFILIATE ELECTION ADDENDUM DATED JUNE 09, 2005 | | 101624 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |
| 2. 710 AFFILIATE ELECTION ADDENDUM DATED JUNE 09, 2005 | | 101625 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |
| 2. 711 AFFILIATE ELECTION ADDENDUM DATED JUNE 09, 2005 | | 101626 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |
| 2. 712 MASTER IMPLEMENTATION FORM EXECUTED JUNE 13, 2005 | | 101627 | ☐ | JPMORGAN CHASE BANK, N.A. | ATTN: MASTER PRODUCT AGREEMENT MANAGER TREASURY SERVICES 1 CHASE MANHATTAN PLAZA, 9TH FLOOR NEW YORK, NY 10081 |
| 2. 713 AUTHORSHIP AGREEMENT DATED NOVEMBER 20, 2017 | | 101628 | ☐ | JULIE KANTER-WASHKO, M.D. | ATTN: GENERAL COUNSEL 102 PRESIDENT CIRCLE SUMMERVILLE, SC 29483 |
| 2. 714 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED JUNE 22, 2016 | | 101630 | ☐ | JUNIPER CONSULTING GROUP | NOT AVAILABLE |
| 2. 715 AMENDMENT #4 MASTER SERVICES AGREEMENT DATED OCTOBER 16, 2018 | | 101636 | ☐ | KANTAR HEALTH INC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |

**NAS1242**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 716　MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 28, 2011 | | 101635 | ☐ | KANTAR HEALTH INC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |
| 2. 717　STATEMENT OF WORK #2018-3 UNDER MASTER SERVICE AGREEMENT DATED OCTOBER 16, 2018 | | 101637 | ☐ | KANTAR HEALTH LLC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |
| 2. 718　STATEMENT OF WORK UNDER MASTER AGREEMENT EFFECTIVE AS OF OCTOBER 16, 2018 | | 101638 | ☐ | KANTAR HEALTH LLC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |
| 2. 719　MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 06, 2017 | | 101639 | ☐ | KANTAR LLC D/B/A KANTAR MILLWARD BROWN | ATTN: GENERAL COUNSEL 401 MERRITT 7 3RD FLOOR NORWALK, CT 06851 |
| 2. 720　DISTRIBUTION AND SUPPLY AGREEMENT AMONG PURDUE PHARMA L.P., AND KASHIV PHARMA, LLC DATED AUGUST 9, 2018 | | 106253 | ☐ | KASHIV PHARMA, LLC | ATTN: GENERAL COUNSEL 1 NEW ENGLAND AVE, PISCATAWAY, NJ 08854 |
| 2. 721　SEARCH FIRM AGREEMENT DATED MAY 19, 2011 | | 101644 | ☐ | KELLY SERVICES, INC. | ATTN: GENERAL COUNSEL 999 WEST BIG BEAVER ROAD TROY, MI 48084 |
| 2. 722　AMENDMENT #1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 31, 2017 | | 101646 | ☐ | KERNEL RESEARCH | NOT AVAILABLE |
| 2. 723　AMENDMENT #002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF MARCH 28, 2003 | | 101656 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 724　AMENDMENT #1 TO STUDY SPECIFICATION ORDER #004 EFFECTIVE AS OF JUNE 14, 2004 | | 101659 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |

**NAS1243**

**Purdue Pharma L.P.**                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 725 AMENDMENT #1: TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF NOVEMBER 13, 2003 | | 101649 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3900 INDUSTRIAL PARK DRIVE SUITE 9 ALTOONA, PA 16602 |
| 2. 726 AMENDMENT #1: TO STUDY SPECIFICATION ORDER #005 DATED JUNE 14, 2004 | | 101655 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 727 AMENDMENT #1: TO STUDY SPECIFICATION ORDER #006 DATED JUNE 14, 2004 | | 101654 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 728 AMENDMENT NO. 2 TO STUDY SPECIFICATION EFFECTIVE AS OF DECEMBER 01, 2004 | | 101660 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 729 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 02, 2004 | | 101657 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 730 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101658 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 731 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 101661 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |

**NAS1244**

**Purdue Pharma L.P.**                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 732 | AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 101662 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3900 INDUSTRIAL PARK DRIVE, SUITE 8 ALTOONA, PA 16602 |
| 2. 733 | STUDY SPECIFICATION ORDER #002 DATED FEBRUARY 04, 2002 | | 101647 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3900 INDUSTRIAL PARK DRIVE SUITE 9 ALTOONA, PA 16602 |
| 2. 734 | STUDY SPECIFICATION ORDER #003 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF NOVEMBER 13, 2003 | | 101650 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 735 | STUDY SPECIFICATION ORDER #004 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JANUARY 26, 2004 | | 101651 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 736 | STUDY SPECIFICATION ORDER #005 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JANUARY 26, 2004 | | 101652 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 737 | STUDY SPECIFICATION ORDER #006 MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JANUARY 26, 2004 | | 101653 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: SHARI ELLIOTT-EDEVANE; KAREN HASS 3900 INDUSTRIAL PARK DRIVE SUITE 8 ALTOONA, PA 16602 |
| 2. 738 | AMENDMENT NO. 1 TO STATEMENT OF WORK EFFECTIVE AS OF MARCH 17, 2003 | | 101663 | ☐ | KFORCE INC. | ATTN: GENERAL COUNSEL 1001 EAST PALM AVENUE TAMPA, FL 33605 |
| 2. 739 | AMENDMENT TO CLINICAL TRIAL AGREEMENT DATED NOVEMBER 17, 2000 | | 101666 | ☐ | KINGS HARBOR MULTICARE CENTER/SUBACUTE NETWORK, LLC | ATTN: GENERAL COUNSEL 1979 MARCUS AVENUE LAKE SUCCESS, NY 11042 |

**NAS1245**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 740 STUDY SPECIFICATION ORDER #003 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 19, 2004 | | 101669 | ☐ | KKR MEDICAL RESEARCH | ATTN: CATHY MONROE; ROBERT FREEDENFELD 811 SOUTH CENTRAL EXPRESSWAY SUITE 436 RICHARDSON, TX 75080 |
| 2. 741 DEVELOPMENT AGREEMENT DATED AUGUST 08, 2017 | | 101670 | ☐ | KLARIA AB | ATTN: CHIEF EXECUTIVE OFFICER VIRDING ALLÉ 2 UPPSALA, SWEDEN 75450 |
| 2. 742 KLICK USA, INC. ORDER FORM KINETIQ CW2366174 (SD.RA) EFFECTIVE FEBRUARY 27, 2019 | 2/27/2020 | 106151 | ☐ | KLICK USA INC | ATTN: GENERAL COUNSEL 500 NORTH MICHIGAN AVENUE SUITE 600 CHICAGO, IL |
| 2. 743 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 10, 2017 | | 101673 | ☐ | KMR GROUP, INC. | ATTN: GENERAL COUNSEL 15 N. WACKER DRIVE, 1070 CHICAGO, IL 60606 |
| 2. 744 AMENDMENT #1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2016 | | 101677 | ☐ | KORSCH AMERICA, INC | ATTN: FREDERICK J MURRAY, PRESIDENT 18 BRISTOL DRIVE SOUTH EASTON, MA 02375 |
| 2. 745 STATEMENT OF WORK EFFECTIVE AS OF MAY 16, 2018 | | 101678 | ☐ | KPMG LLP | ATTN: GENERAL COUNSEL 1350 AVENUE OF THE AMERICAS NEW YORK, NY 10019 |
| 2. 746 AMENDMENT #1: TO STUDY SPECIFICATION ORDER #003 DATED JUNE 14, 2004 | | 101684 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 747 AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JANUARY 09, 2004 | | 101685 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |

**NAS1246**

**Purdue Pharma L.P.**                                                                       **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 748 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED DECEMBER 03, 2004 | | 101687 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 749 AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101686 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 750 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF DECEMBER 10, 2004 | | 101689 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 751 AMENDMENT NO. 3 TO STUDY SPECIFICATION EFFECTIVE AS OF FEBRUARY 22, 2005 | | 101690 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 752 STUDY SPECIFICATION ORDER #002 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JANUARY 09, 2004 | | 101683 | ☐ | KRK MEDICAL RESEARCH | ATTN: ROBERT FREEDENFELD, SITE MANAGER 811 S/ CENTRAL EXPWY, STE 436 RICHARDSON, TX 75080 |
| 2. 753 DISTRIBUTION AND SUPPLY AGREEMENT DATED JUNE 09, 2009 | | 101691 | ☐ | KV PHARMACEUTICAK COMPANY | ATTN: GENERAL COUNSEL 2503 SOUTH HANLEY ROAD SAINT LOUIS, MO 63144 |
| 2. 754 AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED JULY 28, 2009 | | 101693 | ☐ | KV PHARMACEUTICAL COMPANY | ATTN: GENERAL COUNSEL 2503 SOUTH HANLEY ROAD SAINT LOUIS, MO 63144 |
| 2. 755 DISTRIBUTION AND SUPPLY AGREEMENT DATED DECEMBER 22, 2017 | | 101695 | ☐ | KVK-TECH, INC | ATTN: GENERAL COUNSEL 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 756 PHARMACOVIGILANCE AGREEMENT DATED DECEMBER 22, 2017 | | 101696 | ☐ | KVK-TECH, INC | ATTN: GENERAL COUNSEL 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |

**NAS1247**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 757  QUALITY AGREEMENT DATED DECEMBER 22, 2017 | | 101697 | ☐ | KVK-TECH, INC | ATTN: GENERAL COUNSEL 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 758  AMENDMENT TO SUPPLY AGREEMENT DATED MAY 01, 2005 | | 101704 | ☐ | LABOPHARM EUROPE LIMITED | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 759  SUPPLY AGREEMENT DATED OCTOBER 31, 2005 | | 101703 | ☐ | LABOPHARM EUROPE LIMITED | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 760  QUALITY AGREEMENT DATED DECEMBER 23, 2011 | | 101709 | ☐ | LABOPHARM INC. | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 761  QUALITY AGREEMENT DATED FEBRUARY 16, 2006 | | 101706 | ☐ | LABOPHARM INC. | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 762  QUALITY AGREEMENT DATED MARCH 16, 2010 | | 101707 | ☐ | LABOPHARM INC. | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 763  SECOND AMMENDMENT TO SUPPLY AGREEMENT  DATED JANUARY 01, 2012 | | 101712 | ☐ | LABOPHARM INC. | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |

**NAS1248**

**Purdue Pharma L.P.**                                                                                   **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 764 DRAFT MANUFACTURING AND SUPPLY AGREEMENT | | 101719 | ☐ | LABORATORIES DEL DR. ESTEVE S.A. | ATTN: GENERAL COUNSEL, LEGAL DEPARTMENT 221 AVINGUDA DEL LA MARE DE DEU DE MONTSERRAT BARCELONA, SPAIN 8041 |
| 2. 765 MASTER CLINICAL TRIALS LABORATORY SERVICES AGREEMENT DATED FEBRUARY 22, 1999 | | 101722 | ☐ | LABORATORY CORPORATION OF AMERICA HOLDINGS | ATTN: GENERAL COUNSEL 358 SOUTH MAIN STREET BURLINGTON, NC 27215 |
| 2. 766 AMENDMENT #1 TO MASTER CLINICAL TRIALS LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2004 | | 101723 | ☐ | LABORATORY CORPORATION OF AMERICA HOLDINGS SERVICES | ATTN: GENERAL COUNSEL 1904 ALEXANDER DRIVE RESEARCH TRIANGLE PARK, NC 27709 |
| 2. 767 AMENDMENT #2 TO MASTER SERVICES AGREEMENT DATED FEBRUARY 14, 2018 | | 101728 | ☐ | LABWARE, INC. | ATTN: GENERAL COUNSEL THREE MILL ROAD WILMINGTON, DE 19806 |
| 2. 768 AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED FEBRUARY 14, 2018 | | 101726 | ☐ | LABWARE, INC. | ATTN: GENERAL COUNSEL THREE MILL ROAD WILMINGTON, DE 19806 |
| 2. 769 KNOW-HOW ASSIGNMENT DATED JULY 28, 2005 | | 101734 | ☐ | LADENBURG BV | ATTN: GENERAL COUNSEL VAN ALKEMADELAAN 1 DEN HAAG 2597-AA NIGER |
| 2. 770 LATITUDE PHARMACEUTICALS INC. - PSO RILUZOLE FORMULATION CW2366883 (LH.RA) EFFECTIVE MAY 15, 2019 | 5/14/2020 | 105990 | ☐ | LATITUDE PHARMACEUTICALS INC. | NOT AVAILABLE |
| 2. 771 MASTER LABORATORY SERVICES AGREEMENT DATED MARCH 01, 2018 | | 101740 | ☐ | LATITUDE PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 9675 BUSINESSPARK AENUE SAN DIEGO, CA 92131 |
| 2. 772 PROJECT SPECIFICATION ORDER #2018-1 TO MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF MARCH 28, 2018 | | 101739 | ☐ | LATITUDE PHARMACEUTICALS INC. | ATTN: MATTHEW A. SINGER, PHD 9675 BUSINESSPARK AVENUE SAN DIEGO, CA 92131 |

**NAS1249**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 773 MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 01, 2014 | | 101751 | ☐ | LE BONHEUR CHILDREN'S HOSPITAL FOUNDATION-LE BONHEUR HEALTHCARE | ATTN: GENERAL COUNSEL 1211 UNION AVENUE, SUITE 700 MEMPHIS, TN 38104 |
| 2. 774 MASTER SERVICES AGREEMENT DATED SEPTEMBER 15, 2016 | | 101753 | ☐ | LEARNING PLUS INC | ATTN: MARTI MATTHEWS 1140 HIGHLAND AVENUE ROCHESTER, NY 14620 |
| 2. 775 AGREEMENT RELATING TO THE PROVISION OF CLINICAL TRIAL SERVICES EXECUTED JUNE 26, 2001 | | 101755 | ☐ | LEICESTER CLINICAL RESEARCH CENTRE LTD | ATTN: GENERAL COUNSEL 72 HOSPITAL CLOSE LEICESTER LES 4WW |
| 2. 776 RISK MANAGEMENT SERVICES ORDER FORM DATED APRIL 13, 2012 | | 101761 | ☐ | LEXISNEXIS | ATTN: GENERAL COUNSEL 1000 ALDERMAN DRIVE ALPHARETTA, GA 30005 |
| 2. 777 SUBSCRIPTION PLAN AMENDMENT DATED FEBRUARY 01, 2003 | | 101760 | ☐ | LEXISNEXIS | ATTN: GENERAL COUNSEL 1000 ALDERMAN DRIVE ALPHARETTA, GA 30005 |
| 2. 778 AMENDMENT #3 TO INTEGRATION SERVICES ORDER #001 DATED DECEMBER 01, 2018 | | 101762 | ☐ | LIAISON TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 3157 ROYAL DRIVE, SUITE 200 ALPHARETTA, GA 30022 |
| 2. 779 SEARCH FIRM SERVICE AGREEMENT DATED DECEMBER 17, 2003 | | 101764 | ☐ | LIBRARY CONSULTING SERVICES | NOT AVAILABLE |
| 2. 780 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED MAY 22, 2018 | | 101768 | ☐ | LIEBERMAN, INC. | NOT AVAILABLE |
| 2. 781 LIGHTPATH SERVICE AGREEMENT CW2357075 (DS.RA) DATED AUGUST 11, 2017 | | 101770 | ☐ | LIGHTPATH, INC. | ATTN: GENERAL COUNSEL 200 JERICHO QUANDRANGLE JERICHO, NY 11753 |
| 2. 782 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED MAY 27, 2018 | | 101779 | ☐ | LINGUIS-TECHS INC. DBA SOMMER CONSULTING | NOT AVAILABLE |

**NAS1250**

**Purdue Pharma L.P.**                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 783 MASTER SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 19, 2016 | | 101795 | ☐ | LIVINGSTON CONSULTING GROUP, INC. | ATTN: GENERAL COUNSEL 2829 AUTUMN BREEZE WAY KISSIMMEE, FL 34744 |
| 2. 784 LLX SOLUTIONS LLC MSA CW2366472 (LH.RA) EFFECTIVE APRIL 15, 2019 | 4/14/2023 | 105993 | ☐ | LLX SOLUTIONS INC | NOT AVAILABLE |
| 2. 785 LLX SOLUTIONS LLC MSA CW2366472 (LH.RA) EFFECTIVE APRIL 15, 2019 | 4/14/2023 | 105992 | ☐ | LLX SOLUTIONS, LLC | NOT AVAILABLE |
| 2. 786 NORTHEAST SERIES OF LOCKTON COMPANIES, LLC - MSA CW2365755 (PB.RA) EFFECTIVE MARCH 01, 2019 | 2/28/2022 | 106044 | ☐ | LOCKTON COMPANIES | NOT AVAILABLE |
| 2. 787 AUGUSTENBORG CONSULTING  LLC - CONSULTANT ENGAGEMENT LETTER CW2366554 (SD.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2022 | 106163 | ☐ | LON D AUGUSTENBORG | NOT AVAILABLE |
| 2. 788 LOUIS CHRISTOS CSA CW2366850 (LH.SD) EFFECTIVE MAY 15, 2019 | 5/14/2021 | 105994 | ☐ | LOUIS CHRISTOS | NOT AVAILABLE |
| 2. 789 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF APRIL 15, 2016 | | 101804 | ☐ | LOUISANA WHOLESALE DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 2085 I-49 SOUTH SERVICE ROAD SUNSET, LA 70584 |
| 2. 790 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  DATED JUNE 30, 2017 | | 101805 | ☐ | LOUISANA WHOLESALE DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 2085 I-49 SOUTH SERVICE ROAD SUNSET, LA 70584 |
| 2. 791 AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101803 | ☐ | LOUISANA WHOLESALE DRUG COMPANY INC. | ATTN: GENERAL COUNSEL 2085 I-49 SOUTH SERVICE ROAD SUNSET, LA 70584 |
| 2. 792 AMENDMENT TO CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF OCTOBER 09, 2003 | | 101806 | ☐ | LOVELACE SCIENTIFIC RESEARCH INC. | NOT AVAILABLE |

**NAS1251**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 793 LPW TRAINING SERVICES LLC CSA CW2366582 (SD.RA) EFFECTIVE APRIL 24, 2019 | 4/23/2022 | 106164 | ☐ | LPW TRAINING SERVICES LLC | NOT AVAILABLE |
| 2. 794 EIGHTH AMENDMENT TO KNOWLEDGE SERVICE PROVIDER AGREEMENT DATED DECEMBER 15, 2014 | | 101807 | ☐ | LRN CORPORATION | ATTN: GENERAL COUNSEL 1100 GLENDON AVENUE SUITE 700 LOS ANGELES, CA 90024 |
| 2. 795 AMENDMENT 01: SOW EXECUTED NOVEMBER 23, 2015 | | 101840 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 796 AMENDMENT 02: SOW EXECUTED APRIL 21, 2016 | | 101841 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 797 AMENDMENT NO. 3 TO MANUFACTURING AND SUPPLY AGREEMENT DATED NOVEMBER 03, 2014 | | 101815 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 798 AMENDMENT NO. 4 TO MANUFACTURING AND SUPPLY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101831 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 799 AMENDMENT TO MANUFACTURING AND SUPPLY AGREEMENT DATED APRIL 12, 1995 | | 101826 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 800 AMENDMENT TO MANUFACTURING AND SUPPLY AGREEMENT DATED JULY 19, 2013 | | 101813 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 801 AMENDMENT TO MANUFACTURING AND SUPPLY AGREEMENT EFFECTIVE AS OF JULY 19, 2013 | | 101812 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |

**NAS1252**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 259 of 1000

**Purdue Pharma L.P.**                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 802  AMENDMENT TO TECHNOLOGY TRANSFER AND INVESTMENT AGREEMENT DATED JUNE 01, 2009 | | 101836 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 803  MANUFACTURING AND SUPPLY AGREEMENT EFFECTIVE AS OF DECEMBER 21, 2010 | | 101821 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 804  QUALITY AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 101830 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 805  QUALITY ASSURANCE AGREEMENT DATED APRIL 12, 1995 | | 101833 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 806  QUALITY ASSURANCE AGREEMENT DATED JULY 23, 2008 | | 101835 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 807  AMENDMENT EXECUTED JULY 19, 1996 | | 101842 | ☐ | LTS LOHMANN THERAPIE-SYSTEME GMBH | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 808  MANUFACTURING AND SUPPLY AGREEMENT EFFECTIVE AS OF DECEMBER 21, 2010 | | 101844 | ☐ | LTS LOHMANN THERAPY SYSTEMS CORP. | ATTN: GENERAL COUNSEL 21 HENDERSON DRIVE WEST CALDWELLL, NJ 07006 |
| 2. 809  QUALITY ASSURANCE AGREEMENT EFFECTIVE AS OF FEBRUARY 09, 2015 | | 101845 | ☐ | LTS LOHMANN THERAPY SYSTEMS CORP. | ATTN: GENERAL COUNSEL 21 HENDERSON DRIVE WEST CALDWELL, NJ 07006 |
| 2. 810  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101847 | ☐ | LZ LIFESCIENCE US INC. | ATTN: LEGAL DEPARTMENT 751 ARBOR WAY SUITE 115 BLUE BELL, PA 19422 |

**NAS1253**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 811  AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2018 | | 101852 | ☐ | MAGTYPE COMPUTER RESOURCES LLC | NOT AVAILABLE |
| 2. 812  AMENDMENT NO. 1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF NOVEMBER 20, 2003 | | 101854 | ☐ | MAIA U. CHAKERIAN, M.D. D/B/A SAMARITAN CENTER FOR MEDICAL RESEARCH MEDICAL GROUP | ATTN: GENERAL COUNSEL 14651 S. BASCOM AVENUE, SUITE 260 LOS GATOS, CA 95032 |
| 2. 813  AMENDMENT NO. 2 TO STUDY SPECIFICATION ORDER DATED JUNE 14, 2004 | | 101855 | ☐ | MAIA U. CHAKERIAN, M.D. D/B/A SAMARITAN CENTER FOR MEDICAL RESEARCH MEDICAL GROUP | ATTN: GENERAL COUNSEL 14651 S. BASCOM AVENUE, SUITE 260 LOS GATOS, CA 95032 |
| 2. 814  STUDY SPECIFICATION ORDER #001 DATED NOVEMBER 20, 2003 | | 101853 | ☐ | MAIA U. CHAKERIAN, M.D. D/B/A SAMARITAN CENTER FOR MEDICAL RESEARCH MEDICAL GROUP | ATTN: GENERAL COUNSEL 14651 S. BASCOM AVENUE, SUITE 260 LOS GATOS, CA 95032 |
| 2. 815  STUDY SPECIFICATION ORDER #002 TO MASTER CLINICAL TRIAL AGREEMENT DATED MAY 19, 2005 | | 101856 | ☐ | MAIA U. CHAKERIAN, M.D. D/B/A SAMARITAN CENTER FOR MEDICAL RESEARCH MEDICAL GROUP | ATTN: MAIA CHAKERIAN, MD 14651 S. BASCOME AVENUE, SUITE 260 LOS GATOS, CA 95032 |
| 2. 816  MAINTENANCE SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 18, 2003 | | 101857 | ☐ | MAINTENANCE ASSISTANCE PROGRAM, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINS, IL 60016 |
| 2. 817  AMENDMENT #3 TO THE MAINTENANCE ASSISTANCE PROGRAMS, INC. DATED FEBRUARY 18, 2003 | | 101858 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 818  AMENDMENT NO. 1 TO MAINTENANCE ASSISTANCE PROGRAM, INC. SERVICE AGREEMENT DATED MARCH 09, 2005 | | 101863 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 819  AMENDMENT NO. 2 TO THE MAINTENANCE ASSISTANCE PROGRAMS, INC. SERVICE AGREEMENT DATED MARCH 28, 2011 | | 101864 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARKAND PLACE DES PLAINES, IL 60016 |

**NAS1254**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 820　AMENDMENT NO. 5 TO THE MAINTENANCE SERVICE AGREEMENT DATED FEBRUARY 18, 2003 | | 101859 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 821　AMENDMENT NO. 6 TO THE MAINTENANCE ASSISTANCE PROGRAMS, INC. DATED FEBRUARY 01, 2017 | | 101861 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 822　AMENDMENT NO. 6 TO THE MAINTENANCE SERVICE AGREEMENT DATED FEBRUARY 01, 2017 | | 101862 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 823　SERVICES AGREEMENT DATED FEBRUARY 18, 2003 | | 101860 | ☐ | MAINTENANCE ASSISTANCE PROGRAMS, INC. | ATTN: GENERAL COUNSEL 666 GARLAND PLACE DES PLAINES, IL 60016 |
| 2. 824　ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 101865 | ☐ | MALLINCKRODT PHARMACEUTICALS | 675 MCDONNELL BOULEVARD HAZELWOOD, MO 63042 |
| 2. 825　SEARCH FIRM AGREEMENT DATED JANUARY 28, 2008 | | 101879 | ☐ | MANAGEMENT RECRUITERS OF MYRTLE BEACH | ATTN: GENERAL COUNSEL 1500 HIGHWAY 17 N. SUITE 308 SURFSIDE BEACH, SC 29575 |
| 2. 826　SEARCH FIRM AGREEMENT DATED FEBRUARY 08, 2011 | | 101880 | ☐ | MANAGEMENT RECRUITERS OF RALEIGH | ATTN: GENERAL COUNSEL 5171 GLENWOOD AVENUE, SUITE 350 RALEIGH, NC 27612 |
| 2. 827　SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101882 | ☐ | MANAGEMENT RECRUITERS OF WILLIAMSBURG | ATTN: GENERAL COUNSEL 356 MCLAWS CIRCLE SUITE 3 WILLIAMSBURG, VA 23185 |
| 2. 828　SEARCH FIRM AGREEMENT DATED AUGUST 02, 2007 | | 101883 | ☐ | MANAGEMENT RECRUITERS OF WOODBURY | ATTN: GENERAL COUNSEL 100 CROSSWAYS PARK W SUITE 208 WOODBURY, NY 11797 |

**NAS1255**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 829   SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101884 | ☐ | MANKUTA GALLAGHER & ASSOCIATES, INC. | ATTN: GENERAL COUNSEL<br>8333 W. MCNAB ROAD<br>SUITE 231<br>FT. LAUDERDALE, FL 33321 |
| 2. 830   LETTER OF AGREEMENT (AUTHORSHIP) DATED OCTOBER 01, 2017 | | 101885 | ☐ | MARC FLEMING, PH.D. | 2714 AUTUMN FALLS DRIVE<br>PEARLAND, TX 77584 |
| 2. 831   OWENS, MARK, M.D. CSA 1JAN19 CW2364666 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105916 | ☐ | MARK OWENS | NOT AVAILABLE |
| 2. 832   QUALITY AGREEMENT EFFECTIVE AS OF JUNE 03, 2014 | | 101896 | ☐ | MARYPAUL LABORATORIES, INC. | ATTN: GENERAL COUNSEL<br>P.O. BOX 952<br>70 SPARTA AVENUE<br>SPARTA, NJ 07871 |
| 2. 833   MASTER SERVICE AGREEMENT DATED DECEMBER 05, 2011 | | 101897 | ☐ | MASERGY | ATTN: GENERAL COUNSEL<br>COMMUNICATONS (UK) LIMITED<br>32 FARRINGDON STREET<br>LONDON EC4A 4HJ |
| 2. 834   SEARCH FIRM AGREEMENT DATED JUNE 19, 2012 | | 101909 | ☐ | MBR & ASSOCIATES, LLC | ATTN: GENERAL COUNSEL<br>40604 N. KEARNEY WAY<br>PHOENIX, AZ 85086 |
| 2. 835   MASTER SERVICES AGREEMENT DATED NOVEMBER 20, 2017 | | 101910 | ☐ | MC3, INC | ATTN: ROBERT ARMSTRONG, PRESIDENT<br>1180 MCDERMOTT DRIVE<br>WESTCHESTER, PA 19380 |
| 2. 836   STATEMENT OF WORK DATED SEPTEMBER 14, 2018 | | 101911 | ☐ | MC3, INC. | ATTN: GENERAL COUNSEL<br>1180 MCDERMOTT DRIVE<br>WEST CHESTER, PA 19380 |
| 2. 837   MASTER SERVICES AGREEMENT DATED DECEMBER 01, 2017 | | 101912 | ☐ | MCCRONE ASSOCIATES, INC. | ATTN: GENERAL COUNSEL<br>850 PASQUINELLI DRIVE<br>WESTMONT, IL 60559 |

**NAS1256**

Purdue Pharma L.P.                                                                                    Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 838 FIRST AMENDMENT TO THE MCI SERVICE AGREEMENT EFFECTIVE AS OF DECEMBER 20, 2004 | | 101914 | ☐ | MCI WORLDCOM COMMUNICATIONS, INC. | NOT AVAILABLE |
| 2. 839 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JUNE 30, 2017 | | 101920 | ☐ | MCKENSSON CORPORATION | ATTN: GENERAL COUNSEL ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 840 AMENDMENT NO. 1 TO CENTRAL DISTRIBUTION SERVICES AGREEMENT EFFECTIVE AS OF JUNE 30, 2016 | | 101918 | ☐ | MCKENSSON CORPORATION | ATTN: GENERAL COUNSEL ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 841 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2016 | | 101919 | ☐ | MCKENSSON CORPORATION | ATTN: GENERAL COUNSEL ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 842 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 101916 | ☐ | MCKENSSON CORPORATION | ATTN: LEGAL COUNSEL MCKESSON PHARMACEUTICAL ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 843 CENTRAL DISTRIBUTION SERVICES AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101915 | ☐ | MCKENSSON CORPORATION | ATTN: GENERAL COUNSEL ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 844 DISTRIBUTION PERFORMANCE AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 101917 | ☐ | MCKENSSON CORPORATION | ATTN: GREG YONKO, SENIOR VICE PRESIDENT, PURCHASING ONE POST STREET SAN FRANCISCO, CA 94104 |
| 2. 845 AMENDMENT NO. 2 TO SCHEDULE 9A DATED OCTOBER 15, 2018 | | 101922 | ☐ | MCKESSON SPECIALTY ARIZONA, INC. | ATTN: GENERAL COUNSEL 13796 COLLECTIONS CENTER DR CHICAGO, IL 60693 |
| 2. 846 AMENDMENT NO. 7 TO SERVICE AGREEMENT EFFECTIVE AS OF APRIL 01, 2018 | | 101921 | ☐ | MCKESSON SPECIALTY ARIZONA, INC. | ATTN: GENERAL COUNSEL 13796 COLLECTIONS CENTER DR CHICAGO, IL 60693 |

NAS1257

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 847 REVISED CLINICAL AGREEMENT DATED JUNE 02, 1997 | | 101935 | ☐ | MDS HARRIS LABORATORIES, INC. | ATTN: ACCOUNTS RECEIVABLE 621 ROSE STREET PO BOX 80837 LINCOLN, NE 68501 |
| 2. 848 MATERIALS TRANSFER AGREEMENT DATED JULY 20, 2016 | | 101938 | ☐ | MEBIAS DISCOVERY, LLC | ATTN: GENERAL COUNSEL 3001 MARKET STREET SUITE 140 PHILADELPHIA, PA 19104 |
| 2. 849 AMENDMENT #2 TO PROJECT SPECIFICATION ORDER #1 DATED FEBRUARY 01, 2001 | | 101939 | ☐ | MEDICAL & TECHNICAL RESEARCH ASSOCIATES INC. | NOT AVAILABLE |
| 2. 850 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 DATED JUNE 14, 2004 | | 101941 | ☐ | MEDICAL COLLEGE OF GEORGIA RESEARCH INSTITUTE | NOT AVAILABLE |
| 2. 851 PROJECT AGREEMENT DATED AUGUST 29, 2001 | | 101942 | ☐ | MEDICAL EDUCATION NETWORK | ATTN: GENERAL COUNSEL 450 7TH AVENUE SUITE 1300 NEW YORK, NY 10123 |
| 2. 852 MASTER AGREEMENT FOR SERVICES DATED AUGUST 07, 2013 | | 101943 | ☐ | MEDICAL RESEARCH CONSULTANTS | ATTN: GENERAL COUNSEL 10114 W. SAM HOUSTON PARKWAY SOUTH, SUITE 200 HOUSTON, TX 77099 |
| 2. 853 MASTER AGREEMENT FOR SERVICES EFFECTIVE AS OF AUGUST 01, 2016 | | 101944 | ☐ | MEDICAL RESEARCH CONSULTANTS | ATTN: GENERAL COUNSEL 10114 W. SAM HOUSTON PARKWAY SOUTH, SUITE 200 HOUSTON, TX 77099 |
| 2. 854 SEARCH FIRM AGREEMENT DATED OCTOBER 08, 2007 | | 101945 | ☐ | MEDICAL STAFFING NETWORK, INC. | ATTN: GENERAL COUNSEL 6110 EXECUTIVE ROAD SUITE 204 ROCKVILLE, MD 20852 |
| 2. 855 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 101947 | ☐ | MEDISPHERE MEDICAL RESEARCH CENTER, LLC | NOT AVAILABLE |

**NAS1258**

**Purdue Pharma L.P.**                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 856  AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 04, 2003 | | 101946 | ☐ | MEDISPHERE MEDICAL RESEARCH CENTER, LLC | NOT AVAILABLE |
| 2. 857  MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 01, 2017 | | 101951 | ☐ | MEDPHARM LIMITED | ATTN: GENERAL COUNSEL UNIT 3, CHANCELLOR COURT 50 OCCAM ROAD, SURREY RESEARCH PARK GUILDFORD, SURREY GU27YN |
| 2. 858  MEHTA, AMITKUMAR CSA CW2367279 (SS.SD) EFFECTIVE JUNE 15, 2019 | 6/30/2020 | 105926 | ☐ | MEHTA, AMITKUMAR | NOT AVAILABLE |
| 2. 859  MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 02, 2017 | | 101957 | ☐ | MELIOR DISCOVERY, INC. | ATTN: PATRIZIA FERRANTE ATTN: GENERAL COUNSEL 860 SPRINGDALE, SUITE 500 EXTON, PA 19341 |
| 2. 860  STATEMENT OF WORK DATED NOVEMBER 28, 2016 | | 101961 | ☐ | MERCER HEALTH & BENEFITS LLC | ATTN: GENERAL COUNSEL 501 MERRITT 7 NORWALK, CT 06856 |
| 2. 861  AMENDMENT #10 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2018 | | 101968 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 862  AMENDMENT NO. 10 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED FEBRUARY 20, 2007 | | 101966 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 863  AMENDMENT NO. 7 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED JULY 27, 2015 | | 101962 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 864  AMENDMENT NO. 7 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED OCTOBER 19, 2011 | | 101973 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 865  AMENDMENT NO. 9 AND 10 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED FEBRUARY 02, 2007 | | 101965 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |

**NAS1259**

**Purdue Pharma L.P.**          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 866 | AMENDMENT NO. 9 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED FEBRUARY 02, 2007 | | 101963 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 867 | AMENDMENT NO. 9 TO OCCUPATIONAL HEALTH SERVICES AGREEMENT DATED FEBRUARY 02, 2007 | | 101964 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 868 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 11, 2018 | | 101975 | ☐ | METROHM USA, INC. | ATTN: GENERAL COUNSEL 9250 CAMDEN FIELD PARKWAY RIVERVIEW, FL 33578 |
| 2. 869 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 11, 2018 | | 101976 | ☐ | METROHM USA, INC. | ATTN: GENERAL COUNSEL 9250 CAMDEN FIELD PARKWAY RIVERVIEW, FL 33578 |
| 2. 870 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 06, 2017 | | 101977 | ☐ | MFD COMMUNICATIONS, LLC | ATTN: LINDSAY GORDON, PRESIDENT 3207 MEADOWVIEW CIRCLE FURLONG, PA 18925 |
| 2. 871 | MANOS, MICHAEL CSA 01012019 CW2364766 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105921 | ☐ | MICHAEL J MANOS PHD | NOT AVAILABLE |
| 2. 872 | SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101983 | ☐ | MICHAEL PAGE INTERNATIONAL | ATTN: GENERAL COUNSEL 405 LEXINGTON AVENUE 28TH FLOOR NEW YORK, NY 10174 |
| 2. 873 | INITIAL ORDER TO MASTER AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2016 | | 101999 | ☐ | MICROSTRATEGY SERVICES CORPORATION | ATTN: GENERAL COUNSEL |
| 2. 874 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF OCTOBER 17, 2003 | | 102001 | ☐ | MIDWEST REGIONAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 4336 STATE ROUTE 725 BELLBROOK, OH 45305 |

**NAS1260**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 875 STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 14-JAN-03 DATED OCTOBER 17, 2003 | | 102000 | ☐ | MIDWEST REGIONAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 4336 STATE ROUTE 725 BELLBROOK, OH 45305 |
| 2. 876 MSA DATED MARCH 12, 2008 | | 102012 | ☐ | MILLIPORE CORPORATION | 290 CONCORD ROAD BILLERICA, MA 01821 |
| 2. 877 EXCLUSIVE SUPPLY AND DISTRIBUTION AGREEMENT EFFECTIVE AS OF DECEMBER 29, 2000 | | 102014 | ☐ | MINNESOTA MINING AND MANUFACTURING COMPANY (3M) | ATTN: GENERAL COUNSEL 3M CENTER ST. PAUL, MN 55144 |
| 2. 878 AMENDED AND RESTATED STUDY SPECIFICATION ORDER EFFECTIVE AS OF AUGUST 12, 2004 | | 102018 | ☐ | MIRAY MEDICAL CENTER | ATTN: GENERAL COUNSEL 348 NORTH PEARL STREET, UNIT #8 BROCKTON, MA 02301 |
| 2. 879 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 12, 2004 | | 102019 | ☐ | MIRAY MEDICAL CENTER | ATTN: GENERAL COUNSEL 48 NORTH PEARL STREET, UNIT #8 BROCKTON, MA 02301 |
| 2. 880 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 23, 2005 | | 102020 | ☐ | MIRAY MEDICAL CENTER | ATTN: GENERAL COUNSEL 48 NORTH PEARL STREET, UNIT #8 BROCKTON, MA 02301 |
| 2. 881 STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT AUGUST 12, 2004 DATED AUGUST 12, 2004 | | 102021 | ☐ | MIRAY MEDICAL CENTER | ATTN: GENERAL COUNSEL 348 NORTH PEARL STREET, UNIT #48 BROCKTON, MA 02301 |
| 2. 882 PURCHASE ORDER EFFECTIVE AS OF NOVEMBER 20, 2015 | | 102025 | ☐ | MITRATECH HOLDINGS INC. | ATTN: GENERAL COUNSEL 5001 PL ON THE LAKE STE 111 AUSTIN, TX 78746 |
| 2. 883 SERVICE AGREEMENT DATED JULY 15, 1996 | | 102027 | ☐ | MITSUBISHI CORPORATION | ATTN: GENERAL COUNSEL 6-3 MARUNOUCHI 2-CHROME CHIYODA-KU, TOKYO 100-86 |

**NAS1261**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 884 MMDLOPES, LLC - MARIA LOPES - SOW - ADHANSIA AD BOARD CW2366860 (LH.SD) EFFECTIVE MAY 15, 2019 | 12/31/2019 | 105997 | ☐ | MMD LOPES LLC | ATTN: GENERAL COUNSEL 117 TRUMAN DRIVE CRESSKILL, NJ 07626 |
| 2. 885 SERVICES CHANGE ORDER DATED NOVEMBER 03, 2014 | | 102033 | ☐ | MOBILE IRON INC | ATTN: GENERAL COUNSEL 815A EAST MIDDLEFIELD ROAD MOUNTIAN VIEW, CA 94043 |
| 2. 886 AMENDMENT #1 TO PROJECT SPECIFICATION ORDER #2 DATED DECEMBER 14, 2000 | | 102038 | ☐ | MONITECH SERVICES, INC | ATTN: GENERAL COUNSEL 36 GYPSY ROCK ROAD STUYVESANT, NY 12173 |
| 2. 887 PSO 1 TO MATER SERVICE AGREEMENT BETWEEN PURDUE PHARMA L.P. AND MONITECH SERVICES, INC. DATED FEBRUARY 07, 2000 | | 102039 | ☐ | MONITECH SERVICES, INC. | ATTN: GENERAL COUNSEL 3 GYPSY ROCK ROAD STUYVESANT, NY 12173 |
| 2. 888 PSO 2 TO MATER SERVICE AGREEMENT BETWEEN PURDUE PHARMA L.P. AND MONITECH SERVICES, INC. DATED FEBRUARY 24, 2000 | | 102040 | ☐ | MONITECH SERVICES, INC. | ATTN: GENERAL COUNSEL 36 GYPSY ROCK ROAD STUYVESANT, NY 12173 |
| 2. 889 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102043 | ☐ | MONROE STAFFING SERVICES, LLC | ATTN: GENERAL COUNSEL 500 PURDY HILL ROAD MONROE, CT 06468 |
| 2. 890 EDUCATIONAL GRANT AGREEMENT DATED MAY 02, 2002 | | 102044 | ☐ | MOREHOUSE SCHOOL OF MEDICINE | NOT AVAILABLE |
| 2. 891 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 102047 | ☐ | MORRIS & DICKSON CO. LLC | ATTN: GENERAL COUNSEL 410 KAY LANE SHREVEPORT, LA 71135 |
| 2. 892 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 102046 | ☐ | MORRIS & DICKSON CO. LLC | ATTN: GENERAL COUNSEL 410 KAY LANE SHREVEPORT, LA 71135 |
| 2. 893 CONSENT TO ASSIGNMENT AND AMENDMENT DATED OCTOBER 09, 2017 | | 102048 | ☐ | MOTIVILITAS CONSULTING LLC | ATTN: LEGAL DEPARTMENT 10330 OLD COLUMBIA ROAD COLUMBIA, MD 21046 |

NAS1262

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 894 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF DECEMBER 04, 2003 | | 102050 | ☐ | MOUNTAIN VIEW CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 3865 CHERRY CREEK DR. NORTH #250 DENVER, CO 80209 |
| 2. 895 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF DECEMBER 04, 2003 | | 102051 | ☐ | MOUNTAIN VIEW CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 3865 CHERRY CREEK DR. NORTH #250 DENVER, CO 80209 |
| 2. 896 STUDY SPECIFICATION ORDER 002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED DECEMBER 4, 2003 DATED DECEMBER 04, 2003 | | 102049 | ☐ | MOUNTAIN VIEW CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 3865 CHERRY CREEK DR. NORTH #250 DENVER, CO 80209 |
| 2. 897 SEARCH FIRM AGREEMENT DATED JANUARY 13, 2009 | | 102053 | ☐ | MRI NETWORK SALES CONSULTANTS OF BRIDGEWATER | ATTN: GENERAL COUNSEL 991 ROUTE 22 WEST SUITE 106 BRIDGEWATER 08807 |
| 2. 898 SOW DATED 12303 DATED JANUARY 31, 2003 | | 102055 | ☐ | MTI TECHNOLOGY, INC. | ATTN: GENERAL COUNSEL 14661 FRANKLIN AVE. TUSTIN, CA 92780 |
| 2. 899 AMENDMENT #3 TO MASTER SERVICES AGREEMENT DATED JUNE 01, 2008 | | 102057 | ☐ | MULVANEY MECHANICAL, INC. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 900 MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 17, 2018 | | 102177 | ☐ | NANOMERICS, LTD. | ATTN: GENERAL COUNSEL 30-34 NEW BRIDGE STREET LONDON, UNITED KINGDOM LONDON EC4V 6BJ |
| 2. 901 STATEMENT OF WORK DATED APRIL 02, 1998 | | 102178 | ☐ | NANOSYSTEMS | ATTN: GENERAL COUNSEL 3000 HORIZON DRIVE KING OF PRUSSIA, PA 19406 |

**NAS1263**

**Purdue Pharma L.P.**                                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 902 SUBSCRIBER AGREEMENT DATED JANUARY 21, 2005 | | 102181 | ☐ | NATIONAL HOTLINE SERVICES, INC. | ATTN: GENERAL COUNSEL 620 KENMORE AVENUE, SUITE B FREDERICKSBURG, VA 22401 |
| 2. 903 PAIN AWARENESS PROGRAMS LETTER OF AGREEMENT EXECUTED DECEMBER 18, 2007 | | 102184 | ☐ | NATIONAL PAIN FOUNDATION | NOT AVAILABLE |
| 2. 904 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 102194 | ☐ | NEEMAN MEDICAL INTERNATIONAL INCORPORATED | NOT AVAILABLE |
| 2. 905 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #005 EFFECTIVE AS OF JUNE 14, 2005 | | 102195 | ☐ | NEEMAN MEDICAL INTERNATIONAL INCORPORATED | NOT AVAILABLE |
| 2. 906 NEW HORIZONS LEARNING SOLUTIONS CORPORATION - CSA CW2367154 (PB.RA) EFFECTIVE JUNE 10, 2019 | 6/9/2022 | 106036 | ☐ | NEW HORIZONS COMPUTER LEARNING CTR | NOT AVAILABLE |
| 2. 907 STUDY SPECIFICATION ORDER 001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2002 DATED NOVEMBER 14, 2003 | | 102203 | ☐ | NEW ORLEANS CLINCIAL TRIAL MANAGEMENT, INC. | ATTN: GENERAL COUNSEL 3901 HOUMA BLVD., MEDICAL PLAZA II, SUITE 405 METARIE, LA 70006 |
| 2. 908 STUDY SPECIFICATION ORDER 002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 14-JUN-02 DATED DECEMBER 31, 2003 | | 102204 | ☐ | NEW ORLEANS CLINCIAL TRIAL MANAGEMENT, INC. | ATTN: GENERAL COUNSEL 3901 HOUMA BLVD., MEDICAL PLAZA II, SUITE 405 METARIE, LA 70006 |
| 2. 909 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF NOVEMBER 14, 2003 | | 102205 | ☐ | NEW ORLEANS CLINCIAL TRIAL MANAGEMENT, INC. | ATTN: GENERAL COUNSEL 3901 HOUMA BLVD., MEDICAL PLAZA II, SUITE 405 METARIE, LA 70006 |
| 2. 910 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2016 | | 102206 | ☐ | NEW SIGNATURE | ATTN:  LEGAL DEPARTMENT; AND GARRY ANZAROOT 1101 NEW YORK AVENUE NORTHWEST SUITE 675 WASHINGTON, DC 20005 |

**NAS1264**

**Purdue Pharma L.P.**                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 911 AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED JUNE 01, 2013 | | 102212 | ☐ | NNE PHARMAPLAN, INC. | ATTN: GENERAL COUNSEL 3005 CARRINGTON MALL BLVD. SUITE 380 MORRISVILLE, NC 21560 |
| 2. 912 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2013 | | 102211 | ☐ | NNE PHARMAPLAN, INC. | ATTN: GENERAL COUNSEL 3005 CARRINGTON MALL BLVD. SUITE 380 MORRISVILLE, NC 21560 |
| 2. 913 NOAHSPHARM LTD. - SOW - HYDROCODONE 30NOV18 (PS) DATED NOVEMBER 30, 2018 | | 102214 | ☐ | NOAHSPHARM | ATTN: GENERAL COUNSEL 227 HONEY LOCUST DRIVE AVONDALE, PA 19311 |
| 2. 914 NOAHSPHARM LTD. - SOW - OXYCODONE 30NOV18 (PS) DATED NOVEMBER 30, 2018 | | 102215 | ☐ | NOAHSPHARM | ATTN: GENERAL COUNSEL 227 HONEY LOCUST DRIVE AVONDALE, PA 19311 |
| 2. 915 MASTER SUPPLY AGREEMENT BETWEEN  AND PURDUE PHARMA L.P., DATED JANUARY 1, 2008, AS AMENDED BY AMENDMENTS 1 – 6 | | 106222 | ☐ | NORAMCO INC. | ATTN: GENERAL COUNSEL 500 SWEDES LANDING ROAD WILMINGTON, DE 19801 |
| 2. 916 STUDY SPECIFICATION ORDER 001 DATED NOVEMBER 04, 2003 | | 102226 | ☐ | NORTH TEXAS CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 1110 COTTONWOOD LANE IRVING, TX 75038 |
| 2. 917 PSO FORM TO MASTER SERVICES AGREEMENT DATED DECEMBER 05, 2000 | | 102227 | ☐ | NORTHERN BIOMEDICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 930 WEST SHERMAN BLVD. MUSKEGON, MI 49441 |
| 2. 918 PSO FORM TO MASTER SERVICES AGREEMENT DATED JANUARY 10, 2001 | | 102228 | ☐ | NORTHERN BIOMEDICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 930 WEST SHERMAN BLVD. MUSKEGON, MI 49441 |
| 2. 919 PSO FORM TO MASTER SERVICES AGREEMENT DATED JANUARY 17, 2001 | | 102229 | ☐ | NORTHERN BIOMEDICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 930 WEST SHERMAN BLVD. MUSKEGON, MI 49441 |

**NAS1265**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 920　PHARMACY SUPPLY AGREEMENT EFFECTIVE AS OF NOVEMBER 15, 2013 | | 102233 | ☐ | NOVATION LLC | ATTN: GENERAL COUNSEL 125 EAST JOHN CARPENTER FREEWAY IRVING, TX 75062-2324 |
| 2. 921　NOVUS INTELLIGENCE LLC MSA CW2365261 (SD.RA) EFFECTIVE JANUARY 25, 2019 | 1/31/2022 | 106134 | ☐ | NOVUS INTELLIGENCE LLC | NOT AVAILABLE |
| 2. 922　MSA NEPC CW2352834 (DT.RA) DATED MARCH 16, 2017 | | 102234 | ☐ | NPEC, LLC | ATTN: GENERAL COUNSEL |
| 2. 923　MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 21, 2016 | | 102235 | ☐ | NSF HEALTH SCIENCES, LLC | ATTN: GENERAL COUNSEL 2001 PENNSYLVANIA AVE. SUITE 950 WASHINGTON, DC 20006 |
| 2. 924　AMENDMENT NO. 1 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2017 | | 102236 | ☐ | NSPRO INC. | NOT AVAILABLE |
| 2. 925　AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JULY 16, 2001 | | 102237 | ☐ | NTOUCH RESEARCH CORPORATION | ATTN: GENERAL COUNSEL |
| 2. 926　AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF JUNE 14, 2004 | | 102241 | ☐ | NULIFE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1020 S. ANAHELM BOULEVARD, SUITE 209 ANAHEIM, CA 92805 |
| 2. 927　AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102242 | ☐ | NULIFE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1020 S. ANAHELM BOULEVARD, SUITE 209 ANAHEIM, CA 92805 |
| 2. 928　STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 22-APR-04 DATED APRIL 22, 2004 | | 102240 | ☐ | NULIFE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1020 S. ANAHELM BOULEVARD, SUITE 209 ANAHEIM, CA 92805 |

**NAS1266**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 929 | STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED 22-APRIL-04 DATED MARCH 18, 2005 | | 102243 | ☐ | NULIFE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1020 S. ANAHELM BOULEVARD, SUITE 209 ANAHEIM, CA 92805 |
| 2. 930 | AMENDMENT NO. 2 TO MASTER SERVICES AGREEMENT DATED DECEMBER 18, 2017 | | 102247 | ☐ | NWN CORPORATION | NOT AVAILABLE |
| 2. 931 | AMENDMENT #7 TO SUPPLY AGREEMENT DATED DECEMBER 01, 2008 | | 102250 | ☐ | O.BERK COMPANY | ATTN: GENERAL COUNSEL 3 MILLTOWN COURT UNION, NJ 07083 |
| 2. 932 | QUALITY AGREEMENT EFFECTIVE AS OF JULY 15, 2014 | | 102249 | ☐ | O.BERK COMPANY | ATTN: GENERAL COUNSEL 3 MILLTOWN COURT UNION, NJ 07083 |
| 2. 933 | STATEMENT OF WORK DATED APRIL 01, 2016 | | 102251 | ☐ | OCEAN COMPUTER GROUP, INC. | ATTN: GENERAL COUNSEL |
| 2. 934 | MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 08, 2016 | | 102253 | ☐ | OCTANT8, LLC D/B/A NYC MEETING FACILITATORS | ATTN: GENERAL COUNSEL 360 7TH STREET, SUITE 3 JERSEY CITY, NJ 07302 |
| 2. 935 | MATERIAL TRANSFER AGREEMENT EFFECTIVE NOVEMBER 4, 2018 | | 106268 | ☐ | OCULAR THERAPEUTIX, INC. | ATTN: CFO 15 CROSBY DRIVE BEDFORD, MA 01730 |
| 2. 936 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER DATED MARCH 03, 2004 | | 102254 | ☐ | ODEYSSEY & COMPANY D/B/A CLINICAL RESEARCH CONSORTIUM | ATTN: GENERAL COUNSEL 4275 SOUTH BURNHAM, SUITE 128 LAS VEGAS, NV 89119 |
| 2. 937 | AMENDMENT #001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED APRIL 18, 2005 | | 102256 | ☐ | ODYSSET & COMPANY D/B/A CLINICAL RESEARCH CONSORTIUM | ATTN: GENERAL COUNSEL 2250 E. TROPICANA AVE. #19-203 LAS VEGAS, NV 89119 |
| 2. 938 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 09, 2004 | | 102258 | ☐ | ODYSSEY & COMPANY D/B/A CLINICAL RESEARCH CONSORTIUM | ATTN: GENERAL COUNSEL 4275 SOUTH BURNHAM, SUITE 128 LAS VEGAS, NV 89119 |

**NAS1267**

**Purdue Pharma L.P.**                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 939 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 14, 2004 | | 102259 | ☐ | ODYSSEY & COMPANY D/B/A CLINICAL RESEARCH CONSORTIUM | ATTN: GENERAL COUNSEL 4275 SOUTH BURNHAM, SUITE 128 LAS VEGAS, NV 89119 |
| 2. 940 STUDY SPECIFICATION ORDER 001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED MARCH 09, 2004 | | 102257 | ☐ | ODYSSEY & COMPANY D/B/A CLINICAL RESEARCH CONSORTIUM | ATTN: GENERAL COUNSEL 1338 SOUTH FOOTHILL DRIVE, #113 SALT LAKE CITY, UT 84108 |
| 2. 941 AMENDMENT #1 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2004 | | 102267 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 942 AMENDMENT #1 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2004 | | 102268 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 943 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF OCTOBER 08, 2003 | | 102261 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 944 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED MAY 17, 2002 | | 102270 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 945 AMENDMENT #2 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED MAY 17, 2002 | | 102272 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 946 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #005 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF JUNE 14, 2004 | | 102255 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 947 AMENDMENT TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT(PAYMENT AND BUDGET SCHEDULE) EFFECTIVE AS OF DECEMBER 05, 2003 | | 102273 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |

**NAS1268**

**Purdue Pharma L.P.**                                                                                   **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 948 STUDY SPECIFICATION ORDER 003 TO MASTER SITE MANAGEMENT AGREEMENT DATED 17-MAY-02 DATED OCTOBER 08, 2003 | | 102260 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARK, ND 58501 |
| 2. 949 STUDY SPECIFICATION ORDER 005 TO MASTER SITE MANAGEMENT AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102274 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 E. MAIN AVENUE BISMARCK, ND 58501 |
| 2. 950 STUDY SPECIFICATION ORDER 006 TO MASTER SITE MANAGEMENT AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102262 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 951 STUDY SPECIFICATION ORDER 007 TO MASTER SITE MANAGEMENT AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102263 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 952 STUDY SPECIFICATION ORDER 008 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102264 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 953 STUDY SPECIFICATION ORDER 009 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102265 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 954 STUDY SPECIFICATION ORDER 009 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 17-MAY-02 DATED MAY 17, 2002 | | 102266 | ☐ | ODYSSEY RESEARCH SERVICES, INC. | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 955 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 102277 | ☐ | OHIO CLINICAL TRIALS, INC. | ATTN: GENERAL COUNSEL 1380 EDGEHILL ROAD COLUMBUS, OH 43212 |

**NAS1269**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 956  OHIO CLINICAL TRIALS INC. (OCT) MASTER CLINICAL TRIAL AGMT 2019 CW2364656 EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 106197 | ☐ | OHIO CLINICAL TRIALS, INC. | ATTN: GENERAL COUNSEL 1380 EDGEHILL ROAD COLUMBUS, OH 43212 |
| 2. 957  OHIO CLINICAL TRIALS STUDY SPECIFICATION ORDER CW2361260 OAG1010  (LK.RA) DATED JANUARY 01, 2018 | | 102276 | ☐ | OHIO CLINICAL TRIALS, INC. | ATTN: GENERAL COUNSEL 1380 EDGEHILL ROAD COLUMBUS, OH 43212 |
| 2. 958  AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 102281 | ☐ | OMEGA MEDICAL RESEARCH | ATTN: JOHNNA PEZZULLO 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 959  AMENDMENT NO. 2 TO STUDY SPECIFICATION EFFECTIVE AS OF DECEMBER 15, 2004 | | 102283 | ☐ | OMEGA MEDICAL RESEARCH | ATTN: JOHNNA PEZZULLO 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 960  STUDY SPECIFICATION ORDER #002 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 13, 2004 | | 102282 | ☐ | OMEGA MEDICAL RESEARCH | ATTN: JOHNNA PEZZULLO 400 BALD HILL ROAD WARWICK, RI 02886 |
| 2. 961  AMENDMENT #1 TO CONTRACT RESEARCH ORGANIZATION AGREEMENT DATED SEPTEMBER 15, 2000 | | 102286 | ☐ | OMNICARE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 630 ALLENDALE ROAD KING OF PRUSSIA, PA 19406 |
| 2. 962  AMENDMENT #1 TO PROJECT SPECIFICATION ORDER #3 DATED MAY 30, 2001 | | 102284 | ☐ | OMNICARE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 630 ALLENDALE ROAD KING OF PRUSSIA, PA 19406 |
| 2. 963  PSO 2 DATED OCTOBER 24, 2000 | | 102285 | ☐ | OMNICARE CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 630 ALLENDALE ROAD KING OF PRUSSIA, PA 19406 |
| 2. 964  MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 30, 2016 | | 102292 | ☐ | ONLINE BUSINESS APPLICATIONS, INC. | ATTN: GENERAL COUNSEL 9018 HERITAGE PARKWAY, SUITE 600 WOODRIDGE, IL 60517 |

**NAS1270**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 965 SEARCH FIRM AGREEMENT EFFECTIVE AS OF JULY 10, 2012 | | 102293 | ☐ | ONWARD SEARCH, INC. D/B/A ONWARD ITG | ATTN: GENERAL COUNSEL 64 DANBURY ROAD SUITE 100 WILTON, CT 06897 |
| 2. 966 OPTIMAL STRAGEGIX GROUP, INC. MSA 09022016 CW2319575 (AB.MCR) DATED SEPTEMBER 02, 2016 | | 102298 | ☐ | OPTIMAL STRATEGIX GROUP, INC. | ATTN: GENERAL COUNSEL 100 TERRY DRIVE, SUITE 118 NEWTOWN, PA 18940 |
| 2. 967 AMENDMENT #3 TO STUDY APPLICATION ORDER #001 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102300 | ☐ | OPTIMED RESEARCH, LLC | ATTN: GENERAL COUNSEL 8100 RAVINES EDGE COURT, SUITE 240 COLUMBUS, OH 43235 |
| 2. 968 STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 05, 2004 | | 102299 | ☐ | OPTIMED RESEARCH, LLC | ATTN: GENERAL COUNSEL 8100 RAVINES EDGE COURT, SUITE 240 COLUMBUS, OH 43235 |
| 2. 969 AMENDMENT #1 TO STUDY SPECIFICATION ORDER DATED MARCH 04, 2004 | | 102301 | ☐ | OPTIMED RESEARCH, LLC. | ATTN: GENERAL COUNSEL 8100 RAVINES EDGE COURT, SUITE 240 COLUMBUS, OH 43235 |
| 2. 970 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 04, 2004 | | 102302 | ☐ | OPTIMED RESEARCH, LLC. | ATTN: GENERAL COUNSEL 8100 RAVINES EDGE COURT, SUITE 240 COLUMBUS, OH 43235 |
| 2. 971 OPTIMIZERX CORPORATION - SOW 2019-1 DRUG FILE INTEGRATION CW2367169 (SD.RA) EFFECTIVE JUNE 06, 2019 | 12/31/2019 | 106184 | ☐ | OPTIMIZERX CORPORATION | ATTN: GENERAL COUNSEL 400 WATER ST STE 200 ROCHESTER, MI 48307 |
| 2. 972 OPTIMIZERX CORPORATION - SOW 2019-2 MESSAGING CW2367251(SD.RA) EFFECTIVE JUNE 13, 2019 | 12/31/2019 | 106176 | ☐ | OPTIMIZERX CORPORATION | ATTN: GENERAL COUNSEL 400 WATER ST STE 200 ROCHESTER, MI 48307 |
| 2. 973 OPTIMIZERX CORPORATION MSA CW2366638 (SD.RA) EFFECTIVE APRIL 26, 2019 | 4/25/2022 | 106166 | ☐ | OPTIMIZERX CORPORATION | ATTN: GENERAL COUNSEL 400 WATER ST STE 200 ROCHESTER, MI 48307 |

**NAS1271**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 974 AMENDMENT #3 TO MSA DATED MARCH 30, 2011 | | 102305 | ☐ | OPTUMINSIGHT LIFE SCIENCES, INC. | ATTN: GENERAL COUNSEL 1301 ATWOOD AVE, SUITE 311N JOHNSTON, RI 2919 |
| 2. 975 OPTUM  MSA AMENDMENT 1 PRO SCALE 01252018 CW2360031 (LK.RA) DATED FEBRUARY 05, 2018 | | 102304 | ☐ | OPTUMINSIGHT LIFE SCIENCES, INC. | ATTN: GENERAL COUNSEL 1301 ATWOOD AVE, SUITE 311N JOHNSTON, RI 2919 |
| 2. 976 AMENDMENT ONE FOR ORDERING DOCUMENT DATED NOVEMBER 02, 2011 | | 102311 | ☐ | ORACLE AMERICA, INC. | ATTN: GENERAL COUNSEL |
| 2. 977 SERVICES AGREEMENT DATED APRIL 9, 2001 DATED APRIL 09, 2001 | | 102314 | ☐ | ORACLE COPORATION | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 978 AMENDMENT ONE TO ORDERING DOCUMENT DATED AUGUST 31, 2001 | | 102316 | ☐ | ORACLE CORPORATION | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 979 AMENDMENT ONE TO SERVICES AGREEMENT EFFECTIVE AS OF APRIL 09, 2001 | | 102315 | ☐ | ORACLE CORPORATION | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 980 ORDERING DOCUMENT EFFECTIVE AS OF AUGUST 26, 2009 | | 102318 | ☐ | ORACLE USA, INC. | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD SHORES, CA 94065 |
| 2. 981 DR. MICHAEL ORR CSA CW2364352 (LH.RA) DATED NOVEMBER 26, 2018 | | 102319 | ☐ | ORR NONCLINICAL CONSULTING LLC | ATTN: GENERAL COUNSEL 12173 HIDDEN BROOK TERRACE NORTH POTOMAC, MD 20878 |
| 2. 982 QUALITY AGREEMENT DATED DECEMBER 07, 2007 | | 102326 | ☐ | OTHER | ATTN: GENERAL COUNSEL 575 GRANITE COURT, PICKERING ONTARIO L1W 3W8 CANADA |
| 2. 983 MASTER LABORATORY AND NON-CLINICAL SERVICES AGREEMENT EFFECTIVE AS OF MARCH 03, 2017 | | 102327 | ☐ | OTOSCIENCE LABS, LLC | ATTN: GENERAL COUNSEL 1225 TENDICK STREET JACKSONVILLE, IL 62650 |

**NAS1272**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 984 MASTER PROJECT SPECIFICATION ORDER EFFECTIVE AS OF MARCH 03, 2017 | | 102328 | ☐ | OTOSCIENCE LABS, LLC | ATTN: GENERAL COUNSEL 1225 TENDICK STREET JACKSONVILLE, IL 62650 |
| 2. 985 PROJECT AGREEMENT DATED JUNE 17, 2003 | | 102330 | ☐ | P \S \L GROUP AMERICA LIMITED | ATTN: GENERAL COUNSEL PARK 80 WEST PLAZA II SUITE 200 SADDLE BROOK, NJ 07663 |
| 2. 986 AMENDMENT #2 TO MASTER SERVICES AGREEMENT DATED JANUARY 01, 2014 | | 102334 | ☐ | PACKETLOGIX INC. | 140 LINCOLN AVENUE BARRINGTON, RI 02806 |
| 2. 987 PADILLA SPEER BEARDSLEY INC. - CSA CW2367175 OXYCONTIN SUPPORT (LH.RA) EFFECTIVE JUNE 10, 2019 | 6/9/2022 | 106009 | ☐ | PADILLA | NOT AVAILABLE |
| 2. 988 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF JUNE 14, 2004 | | 102337 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |
| 2. 989 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 102338 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |
| 2. 990 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 06, 2003 | | 102340 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |
| 2. 991 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 06, 2003 | | 102347 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL |
| 2. 992 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102342 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |

**NAS1273**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 993 | AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102341 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |
| 2. 994 | STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 05, 2004 | | 102339 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 NORTH LASALLIE STREET, SUIRE 610 CHICAGO, IL 61610 |
| 2. 995 | STUDY SPECIFICATION ORDER 003 DATED FEBRUARY 12, 2004 | | 102336 | ☐ | PAIN & REHABILITATION CLINIC OF CHICAGO | ATTN: GENERAL COUNSEL 640 N. LASALLE STREET, SUITE 610 CHICAGO, IL 61610 |
| 2. 996 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #005 EFFECTIVE AS OF JUNE 14, 2004 | | 102344 | ☐ | PAIN AND PHARMACEUTICAL C-TRIALS, INC. | NOT AVAILABLE |
| 2. 997 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #010 DATED JUNE 14, 2004 | | 102343 | ☐ | PAIN AND PHARMACEUTICAL C-TRIALS, INC. | NOT AVAILABLE |
| 2. 998 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 102345 | ☐ | PAIN AND PHARMACEUTICAL C-TRIALS. INC | NOT AVAILABLE |
| 2. 999 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 14, 2004 | | 102346 | ☐ | PAIN AND PHARMACEUTICAL C-TRIALS. INC | NOT AVAILABLE |
| 2. 1000 | STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 91304 DATED SEPTEMBER 20, 2004 | | 102348 | ☐ | PAIN RESEARCH INSTITUTE OF THE CAROLINAS | ATTN: GENERAL COUNSEL 2001 RANDOLPH ROAD CHARLOTTE, NC 28207 |
| 2. 1001 | STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED 91304 DATED APRIL 13, 2005 | | 102349 | ☐ | PAIN RESEARCH INSTITUTE OF THE CAROLINAS | ATTN: GENERAL COUNSEL 2001 RANDOLPH ROAD CHARLOTTE, NC 28207 |

**NAS1274**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1002 SEARCH FIRM AGREEMENT DATED OCTOBER 12, 2009 | | 102350 | ☐ | PALMER & YOUNG, INC. | ATTN: GENERAL COUNSEL P.O. BOX 805 WILLSBORO, NY 12996 |
| 2. 1003 PANGEA3 US LLC MSA CW2365615 (LH.RA) EFFECTIVE MARCH 01, 2019 | 2/29/2024 | 105931 | ☐ | PANGEA3 US LLC | NOT AVAILABLE |
| 2. 1004 AMENDMENT #1 TO PHARMACOVIGILANCE AGREEMENT DATED JUNE 05, 2014 | | 102351 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 6 RAM RIDGE ROAD CHESNUT RIDGE, NY 10977 |
| 2. 1005 DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN PAR PHARMACEUTICAL, INC. AND PURDUE PHARMA L.P., DATED SEPTEMBER 20, 2013 | | 106272 | ☐ | PAR PHARMACEUTICAL, INC. | GENERAL COUNSEL ONE RAM RIDGE ROAD SPRING VALLEY, NY 10977 |
| 2. 1006 DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN PAR PHARMACEUTICAL, INC. AND PURDUE PHARMA L.P., DATED SEPTEMBER 20, 2013 | | 106273 | ☐ | PAR PHARMACEUTICAL, INC. | GENERAL COUNSEL ONE RAM RIDGE ROAD SPRING VALLEY, NY 10977 |
| 2. 1007 DISTRIBUTION AND SUPPLY AGREEMENT DATED SEPTEMBER 20, 2013 | | 102353 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 300 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 1008 PHARMACOVIGILANCE AGREEMENT EXECUTED JUNE 05, 2014 | | 102358 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 300 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 1009 QUALITY AGREEMENT DATED MAY 20, 2014 | | 102357 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 300 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 1010 LETTER OF AGREEMENT DATED JULY 14, 2000 | | 102360 | ☐ | PAREXEL INTERNATIONAL CORPORATION | ATTN: GENERAL COUNSEL 200 WEST STREET WALTHAM, MA 02451-1163 |

**NAS1275**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1011 PSO 1 TO MASTER AND FILINGS AGREEMENT DATED NOVEMBER 30, 2000 | | 102361 | ☐ | PAREXEL INTERNATIONAL CORPORATION | ATTN: GENERAL COUNSEL |
| 2. 1012 SEARCH FIRM AGREEMENT EFFECTIVE AS OF JUNE 24, 2008 | | 102362 | ☐ | PARKWOOD INTERNATIONAL | ATTN: GENERAL COUNSEL 3550 PARKWOOD BLVD SUITE 500 FRISCO, TX 75034 |
| 2. 1013 PARTICLE SCIENCES SOW 19NOV18 CW2364581 PUR2863 NALMEFENE CLINICAL MFG (RJ.RA) DATED NOVEMBER 19, 2018 | | 102364 | ☐ | PARTICLE SCIENCES, INC. | ATTN: GENERAL COUNSEL 3894 COURTNEY STREET, SUITE 180 BETHLELEM, PA 18017 |
| 2. 1014 MASTER SERVICE AGREEMENT EFFECTIVE AS OF NOVEMBER 05, 2018 | | 102365 | ☐ | PARTICLE SCIENCES, LLC | ATTN: GENERAL COUNSEL 3894 COURTNEY STREET, SUITE 180 BETHLEHEM, PA 18017 |
| 2. 1015 MASTER SERVICE AGREEMENT EFFECTIVE AS OF NOVEMBER 26, 2018 | | 102366 | ☐ | PARTICLE SCIENCES, LLC | ATTN: GENERAL COUNSEL 3894 COURTNEY STREET, SUITE 180 BETHLEHEM, PA 18017 |
| 2. 1016 PARX SOLUTIONS, INC. - SOW 2019-1 CW2367165 (SD.RA) EFFECTIVE JUNE 06, 2019 | 6/5/2020 | 106182 | ☐ | PARX SOLUTIONS INC | NOT AVAILABLE |
| 2. 1017 PARX SOLUTIONS, INC. MSA CW2366809 (SD.RA) EFFECTIVE MAY 17, 2019 | 5/16/2022 | 106158 | ☐ | PARX SOLUTIONS INC | NOT AVAILABLE |
| 2. 1018 MANUFACTURING AND SUPPLY AGREEMENT DATED FEBRUARY 25, 2016 BETWEEN PATHEON MANUFACTURING SERVICES LLC AND THE COMPANY | | 106274 | ☐ | PATHEON MANUFACTURING SERVICES LLC | NOT AVAILABLE |

**NAS1276**

**Purdue Pharma L.P.**                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1019 MANUFACTURING SERVICES AGREEMENT DATED MARCH 22, 2011 | | 102367 | ☐ | PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 2110 EAST GALBRAITH ROAD, CINCINNATI, OH 45237 4721 EMPEROR BOULEVARD, RESEARCH TRIANGLE PARK, NC 27703 |
| 2. 1020 MASTER AGREEMENT FOR PHARMACEUTICAL DEVELOPMENT AND TECHNOLOGY TRANSFER SERVICES DATED AUGUST 30, 2018 BETWEEN PATHEON PHARMACEUTICALS INC. AND THE COMPANY | | 106275 | ☐ | PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 2110 EAST GALBRAITH ROAD CINCINNATI, OH 45237 |
| 2. 1021 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2016 | | 102368 | ☐ | PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 2110 EAST GALBRAITH ROAD CINCINNATI, OH 45237 |
| 2. 1022 QUALITY AGREEMENT DATED JULY 31, 2009 | | 102369 | ☐ | PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 2110 EAST GALBRAITH ROAD CINCINNATI, OH 45237 |
| 2. 1023 MANUFACTURING SERVICES AGREEMENT EFFECTIVE AS OF JULY 25, 2017 | | 102371 | ☐ | PATHEON SOFTGELS, INC. | ATTN: GENERAL COUNSEL 4125 PREMIER DRIVE HIGH POINT, NC 27265 |
| 2. 1024 AUTHORSHIP AGREEMENT DATED OCTOBER 05, 2017 | | 102380 | ☐ | PAUL L. BIGLIARDI | ATTN: GENERAL COUNSEL 222A OCEAN DRIVE #06-28 SINGAPORE 098619 SLOVENIA |
| 2. 1025 AMENDMENT NO. 1 TO WORK ORDER TO MASTER CRO AGREEMENT EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102382 | ☐ | PDD GLOBAL CENTRAL LABS, LLC | NOT AVAILABLE |
| 2. 1026 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 27, 2017 | | 102383 | ☐ | PDQ COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 105 STEWART AVENUE GARDEN CITY, NY 11530 |

**NAS1277**

**Purdue Pharma L.P.**                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1027 CONSENT TO ASSIGNMENT AND AMENDMENT DATED OCTOBER 09, 2017 | | 102386 | ☐ | PEAK-RYZEX INC | ATTN: GENERAL COUNSEL 10330 OLD COLUMBIA ROAD COLUMBIA, MD 21046 |
| 2. 1028 MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 05, 2014 | | 102387 | ☐ | PEAK-RYZEX, INC. | ATTN: GENERAL COUNSEL 10330 OLD COLUMBIA ROAD COLUMBIA, MD 21046 |
| 2. 1029 INDEPENDENT CONTRACTOR AGREEMENT DATED APRIL 30, 1997 | | 102390 | ☐ | PEOPLE-TO-PEOPLE HEALTH FOUNDATION, INC. | ATTN: GENERAL COUNSEL 7500 OLD GEORGETOWN ROAD SUITE 600 BETHESDA, MD 20814-6133 |
| 2. 1030 STATEMENT OF WORK DATED SEPTEMBER 19, 2018 | | 102392 | ☐ | PEREGRINE MARKET ACCESS | ATTN: GENERAL COUNSEL 125 HIGH ROCK AVENUE, SUITE 300 SARATOGA SPRINGS, NY 12866 |
| 2. 1031 AMENDMENT #4 TO MASTER SERVICES AGREEMENT DATED APRIL 01, 2008 | | 102393 | ☐ | PERKINELMER HEALTH SCIENCES, INC. | ATTN: GENERAL COUNSEL |
| 2. 1032 SEARCH FIRM AGREEMENT DATED AUGUST 17, 2010 | | 102394 | ☐ | PERMANENT SOLUTIONS GROUP, INC. | ATTN: GENERAL COUNSEL 135 SULLY'S TRAIL SUITE 6 PITTSFORD, NY 14534 |
| 2. 1033 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 102395 | ☐ | PERNIX THERAPEUTICS HOLDINGS INC | ATTN: GENERAL COUNSEL 10 NORTH PARK PLACE, SUITE 201, MORRISTOWN, NJ 07960 |
| 2. 1034 AMENDMENT #1 TO STATEMENT OF WORK DATED JANUARY 01, 2018 | | 102399 | ☐ | PETER J. PITTS | ATTN: GENERAL COUNSEL 54 RIVERSIDE DRIVE, SUITE D NEW YORK, NY 10025 |
| 2. 1035 AMENDMENT #2 TO STATEMENT OF WORK DATED DECEMBER 31, 2018 | | 102400 | ☐ | PETER J. PITTS | ATTN: GENERAL COUNSEL 54 RIVERSIDE DRIVE, SUITE D NEW YORK, NY 10025 |
| 2. 1036 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 102402 | ☐ | PFIZER INC | 235 EAST 42ND STREET NEW YORK, NY 10017 |

**NAS1278**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1037 AMENDMENT TO MASTER SERVICES AGREEMENT DATED NOVEMBER 18, 2013 | | 102405 | ☐ | PHARMA DIGITAL COMMUNICATIONS | ATTN: GENERAL COUNSEL |
| 2. 1038 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 16, 2016 | | 102407 | ☐ | PHARMACENTRA LLC | ATTN: GENERAL COUNSEL 105 INDUSTRIAL DRIVE AMERICUS, GA 31717 |
| 2. 1039 PHARMACENTRA LLC - SOW 2019-2 PHARMACY LOCATOR SERVCIES ADHANSIA CW2367003 (SD.RA) EFFECTIVE APRIL 19, 2019 | 7/31/2020 | 106146 | ☐ | PHARMACENTRA LLC | ATTN: GENERAL COUNSEL 105 INDUSTRIAL DRIVE AMERICUS, GA 31717 |
| 2. 1040 PHARMACENTRA SOW PHARMACY LOCATOR SERVCIES CW2365974 (SD.RA) EFFECTIVE FEBRUARY 01, 2019 | 1/31/2020 | 106144 | ☐ | PHARMACENTRA LLC | ATTN: GENERAL COUNSEL 105 INDUSTRIAL DRIVE AMERICUS, GA 31717 |
| 2. 1041 PHARMACENTRA, LLC - AMEND 1 TO MSA CW2365971 (SD.RA) EFFECTIVE MARCH 18, 2019 | 6/15/2022 | 106194 | ☐ | PHARMACENTRA LLC | ATTN: GENERAL COUNSEL 105 INDUSTRIAL DRIVE AMERICUS, GA 31717 |
| 2. 1042 STUDY SPECIFICATION ORDER 005 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102409 | ☐ | PHARMACEUTICAL C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1043 STUDY SPECIFICATION ORDER 006 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102410 | ☐ | PHARMACEUTICAL C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1044 STUDY SPECIFICATION ORDER 007 TO MASTER CLINICAL TRIAL AGREEMENT DATED 111903 DATED NOVEMBER 19, 2003 | | 102411 | ☐ | PHARMACEUTICAL C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1045 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102412 | ☐ | PHARMACEUTICAL C-TRIALS, INC. | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1046 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102413 | ☐ | PHARMACEUTICAL C-TRIALS, INC. | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |

**NAS1279**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1047 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #005 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102414 | ☐ | PHARMACEUTICAL C-TRIALS, INC. | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1048 MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 17, 2017 | | 102415 | ☐ | PHARMACEUTICAL DATA SERVICES, INC. | ATTN: GENERAL COUNSEL 43 MARNE STREET REAR HAMDEN, CT 06514 |
| 2. 1049 AMENDMENT TO MASTER SERVICES AGREEMENT DATED APRIL 10, 1998 | | 102421 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 1050 AMENDMENT TO TASK ORDERS EFFECTIVE AS OF SEPTEMBER 30, 1999 | | 102425 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 2400 OLD IVY ROAD CHARLOTTESVILLE, VA 22903 |
| 2. 1051 CONSENT AGREEMENT DATED DECEMBER 20, 2013 | | 102424 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4130 PARK LAKE AVENUE SUITE 400 RELEIGH, NC 27612 |
| 2. 1052 MASTER SERVICES AGREEMENT DATED APRIL 10, 1998 | | 102419 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 1053 TASK ORDER #7 DATED APRIL 10, 1998 | | 102420 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 1054 TASK ORDER 1 OXYCODONE PROJECT DATED APRIL 27, 1998 | | 102417 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 1055 TASK ORDER 2 HYDROCODONE PROJECT DATED APRIL 27, 1998 | | 102418 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 1056 THIRD AMENDMENT TO TASK ORDERS DATED APRIL 17, 2000 | | 102422 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |

**NAS1280**

**Purdue Pharma L.P.**                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1057 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102430 | ☐ | PHARMACEUTICAL SEARCH, INC. | ATTN: GENERAL COUNSEL 5032 REMINGTON DRIVE COOPERSBURG, PA 18036 |
| 2. 1058 STUDY SPECIFICATION ORDER 008 TO MASTER CLINICAL TRIAL AGREEMENT DATED 111903 DATED NOVEMBER 19, 2003 | | 102432 | ☐ | PHARMACEUTICALS C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1059 STUDY SPECIFICATION ORDER 009 TO MASTER CLINICAL TRIAL AGREEMENT DATED 111903 DATED NOVEMBER 19, 2003 | | 102433 | ☐ | PHARMACEUTICALS C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1060 STUDY SPECIFICATION ORDER 010 TO MASTER CLINICAL TRIAL AGREEMENT DATED 111903 DATED NOVEMBER 19, 2003 | | 102431 | ☐ | PHARMACEUTICALS C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1061 STUDY SPECIFICATION ORDER 011 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 111903 DATED NOVEMBER 19, 2003 | | 102434 | ☐ | PHARMACEUTICALS C-TRIALS, INC | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1062 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102435 | ☐ | PHARMACEUTICALS C-TRIALS, INC. | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1063 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 19, 2003 | | 102436 | ☐ | PHARMACEUTICALS C-TRIALS, INC. | ATTN: GENERAL COUNSEL 1550 NORWOOD DRIVE, SUITE 100 HURST, TX 76054 |
| 2. 1064 MILLING PROJECT PROPOSAL DATED JANUARY 06, 2000 | | 102438 | ☐ | PHARMACEUTICS INTERNATIONAL INC. | ATTN: GENERAL COUNSEL 10819 GILROY ROAD HUNT VALLEY, MD 21031 |
| 2. 1065 QUALITY AGREEMENT DATED OCTOBER 21, 2009 | | 102437 | ☐ | PHARMACEUTICS INTERNATIONAL, INC. (PII) | ATTN: GENERAL COUNSEL 10819 GILROY ROAD HUNT VALLEY, MD 21031 |

**NAS1281**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1066  COLLABORATION AGREEMENT DATED APRIL 30, 1996 | | 102440 | ☐ | PHARMACO PTY. LTD. | ATTN: GENERAL COUNSEL GROUND FLOOR, BUILDING 1 PYMBLE CORPORATE CENTRE, 20 BRIDGE ST. PYMBLE, NSW, AUSTRALIA 2073 |
| 2. 1067  AMENDMENT #3 TO MASTER SERVICES AGREEMENT DATED JULY 19, 2010 | | 102441 | ☐ | PHARMACY & HEALTHCARE COMMUNICATIONS, LLC | ATTN: GENERAL COUNSEL |
| 2. 1068  AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED JUNE 30, 2017 | | 102445 | ☐ | PHARMACY BUYING ASSOCIATION INC. | ATTN: GENERAL COUNSEL 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 1069  AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED JUNE 30, 2015 | | 102444 | ☐ | PHARMACY BUYING ASSOCIATION INC. | ATTN: GENERAL COUNSEL 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 1070  AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED JUNE 01, 2018 | | 102446 | ☐ | PHARMACY BUYING ASSOCIATION INC. | ATTN: GENERAL COUNSEL 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 1071  AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 102442 | ☐ | PHARMACY BUYING ASSOCIATION INC. | ATTN: NICK SMOCK 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 1072  DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 102443 | ☐ | PHARMACY BUYING ASSOCIATION INC. | ATTN: NICK SMOCK 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 1073  STATEMENT OF WORK EFFECTIVE AS OF AUGUST 18, 2016 | | 102449 | ☐ | PHARMALEX US CORP. | ATTN: GENERAL COUNSEL 9302 LEE HWY #700 FAIRFAX, VA 22031 |
| 2. 1074  STATEMENT OF WORK EFFECTIVE AS OF AUGUST 21, 2018 | | 102450 | ☐ | PHARMALEX US CORP. | ATTN: GENERAL COUNSEL 9302 LEE HWY #700 FAIRFAX, VA 22031 |
| 2. 1075  MASTER SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 18, 2016 | | 102451 | ☐ | PHARMALEX US, LLC | ATTN: GENERAL COUNSEL 942 LITTLE MEADOW ROAD P.O. BOX 441 GUILFORD, CT 06437 |

**NAS1282**

**Purdue Pharma L.P.**                                                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1076 MASTER SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 18, 2016 | | 102452 | ☐ | PHARMALEX US, LLC | ATTN: GENERAL COUNSEL 942 LITTLE MEADOW ROAD P.O. BOX 441 GUILFORD, CT 06437 |
| 2. 1077 INDEPENDENT CONTRACTOR AGREEMENT EFFECTIVE AS OF MARCH 26, 2014 | | 102453 | ☐ | PHARMALOGICS RECRUITING, LLC | ATTN: MEGAN DRISCOLL 2 HERITAGE DRIVE QUINCY, MA 02171 |
| 2. 1078 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT BETWEEN PURDUE PHARMA L.P. AND PHARMALYTICA SERVICES LLC DATED NOVEMBER 08, 2002 | | 102454 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |
| 2. 1079 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT DATED FEBRUARY 07, 2003 | | 102455 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |
| 2. 1080 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT DATED FEBRUARY 07, 2003 | | 102456 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |
| 2. 1081 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT DATED JULY 14, 2003 | | 102457 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |
| 2. 1082 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT DATED JULY 23, 2003 | | 102458 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |
| 2. 1083 PSO FORM TO NONCLINICAL MASTER SERVICE AGREEMENT DATED JULY 25, 2003 | | 102459 | ☐ | PHARMALYTICA SERVICES LLC | ATTN: GENERAL COUNSEL NSF INTERNATIONAL 789 N. DIXBORO ROAD ANN ARBOR, MI 48105 |

**NAS1283**

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1084  CME AGREEMENT - CONTINUING MEDICAL EDUCATION EFFECTIVE AS OF FEBRUARY 25, 2003 | | 102460 | ☐ | PHARMCON | ATTN: GENERAL COUNSEL 603 LAKEVIEW PROFESSIONAL PARK POST OFFICE ROAD, SUITE 106 WALDORF, MD 20602-1914 |
| 2. 1085  AMENDMENT TO SUPPLY AGREEMENT EFFECTIVE AS OF FEBRUARY 11, 1998 | | 102461 | ☐ | PHARMETRIX DIVISION OF TECHNICAL CHEMICALS & PRODUCTS, INC. | ATTN: GENERAL COUNSEL 1330 O'BRIEN DRIVE MENLO PARK, CA 94025 |
| 2. 1086  AMENDMENT TO SUPPLY AGREEMENT EFFECTIVE AS OF FEBRUARY 11, 1998 | | 102462 | ☐ | PHARMETRIX DIVISION OF TECHNICAL CHEMICALS & PRODUCTS, INC. | ATTN: GENERAL COUNSEL 1330 O'BRIEN DRIVE MENLO PARK, CA 94025 |
| 2. 1087  SUPPLY AGREEMENT DATED FEBRUARY 11, 1998 | | 102464 | ☐ | PHARMETRIX DIVISION OF TECHNICAL CHEMICALS & PRODUCTS, INC. | ATTN: GENERAL COUNSEL 1330 O'BRIEN DRIVE MENLO PARK, CA 94025 |
| 2. 1088  SUPPLY AGREEMENT EFFECTIVE AS OF FEBRUARY 11, 1998 | | 102463 | ☐ | PHARMETRIX DIVISION OF TECHNICAL CHEMICALS & PRODUCTS, INC. | ATTN: GENERAL COUNSEL 1330 O'BRIEN DRIVE MENLO PARK, CA 94025 |
| 2. 1089  AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102466 | ☐ | PHARMQUEST, LLC | NOT AVAILABLE |
| 2. 1090  MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 05, 2000 | | 102469 | ☐ | PHASE FORWARD INCORPORATED | ATTN: GENERAL COUNSEL 610 LINCOLN STREET WALTHAM, MA 02451 |
| 2. 1091  PSO 1 - PROVIDING ELECTRONIC DATA CAPTURE SERVICES. DATED MAY 05, 2000 | | 102470 | ☐ | PHASE FORWARD, INC. | ATTN: GENERAL COUNSEL DE |
| 2. 1092  STUDY SPECIFICATION ORDER 002 DATED OCTOBER 06, 2003 | | 102471 | ☐ | PHILADELPHIA HEALTH & EDUCATION CORPORATION D/B/A DREXEL UNVIERSITY COLLEGE OF MEDICINE | ATTN: GENERAL COUNSEL 3201 ARCH STREET PHILADELPHIA, PA 19104 |
| 2. 1093  AMENDMENT #2 TO TASK ORDER EFFECTIVE AS OF JANUARY 01, 2018 | | 102474 | ☐ | PHLEXGLOBAL LIMITED | ATTN: GENERAL COUNSEL |

**NAS1284**

**Purdue Pharma L.P.**                                                                                   **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1094 AMENDMENT #3 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 02, 2018 | | 102475 | ☐ | PHLEXGLOBAL LIMITED | ATTN: GENERAL COUNSEL |
| 2. 1095 SCIENTIFIC RESEARCH SERVICES AGREEMENT DATED JUNE 03, 1998 | | 102476 | ☐ | PHOENIX INTERNATIONAL LIFE SCIENCES INC. | ATTN: GENERAL COUNSEL 5642 HAMILTON AVENUE CINCINNATI, OH 45224 |
| 2. 1096 MATERIALS TRANSFER AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2015 | | 102477 | ☐ | PHOENIX PHARMALABS, INC. | ATTN: GENERAL COUNSEL 1753 SOUTH 1800 WEST WOODS CROSS, UT 84087 |
| 2. 1097 ZEE MCSA 06012016 CW2231608 (AA.LLS) LCW00431717 DATED JUNE 01, 2016 | | 102482 | ☐ | PHYLLIS ZEE, MD, PHD | ATTN: GENERAL COUNSEL 505 N. LAHESHORE DRIVE, #6804 CHICAGO, IL 60611 |
| 2. 1098 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JUNE 14, 2004 | | 102489 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1091 S. HAWTHORNE ROAD, SUITE 306 WINSTON-SALEM, NC 27103 |
| 2. 1099 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102493 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1958 WEST STATE STREET BRISTOL, TN 37620 |
| 2. 1100 AMENDMENT #1 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 05, 2004 | | 102485 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL |
| 2. 1101 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 05, 2004 | | 102490 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1091 S. HAWTHORNE ROAD, SUITE 306 WINSTON-SALEM, NC 27103 |
| 2. 1102 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102492 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1958 WEST STATE STREET BRISTOL, TN 37620 |

**NAS1285**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1103 STUDY SPECIFICATION ORDER 001 DATED FEBRUARY 05, 2004 | | 102487 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1091 S. HAWTHORNE ROAD, SUITE 306 WINSTON-SALEM, NC 27103 |
| 2. 1104 STUDY SPECIFICATION ORDER 002 DATED MARCH 16, 2004 | | 102488 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1091 S. HAWTHORNE ROAD, SUITE 306 WINSTON-SALEM, NC 27103 |
| 2. 1105 STUDY SPECIFICATION ORDER 003 DATED FEBRUARY 17, 2005 | | 102491 | ☐ | PIEDMONT MEDICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1958 WEST STATE STREET BRISTOL, TN 37620 |
| 2. 1106 MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 29, 2015 | | 102496 | ☐ | PINNACLE HEALTH COMMUNICATIONS, LLC | ATTN: GENERAL COUNSEL 259 VETERANS LANE, SUITE 301 DOYLESTOWN, PA 18901 |
| 2. 1107 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JANUARY 05, 2004 | | 102497 | ☐ | PINNACLE TRAILS, INC. | ATTN: GENERAL COUNSEL 3626 BUFORD HIGHWAY, SUITE B3 ATLANTA, GA 30329 |
| 2. 1108 SOW 002 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED FEBRUARY 11, 2004 | | 102499 | ☐ | PINNACLE TRIALS, INC. | ATTN: GENERAL COUNSEL 3626 BUFORD HIGHWAY, SUITE B3 ATLANTA, GA 30329 |
| 2. 1109 STUDY SPECIFICATION ORDER 001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JANUARY 5, 2004 DATED JANUARY 12, 2004 | | 102498 | ☐ | PINNACLE TRIALS, INC. | ATTN: GENERAL COUNSEL 3626 BUFORD HIGHWAY, SUITE B3 ATLANTA, GA 30329 |
| 2. 1110 PINNEY ASSOCIATES PSO CW2366435 SIDNEY SCHNOLL ORF AD BOARD (LH.RA) EFFECTIVE MAY 01, 2019 | 5/31/2020 | 105987 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTOGMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 1111 PINNEY ASSOCIATES SOW CW2365403 OPIOID USE DISORDER (LH.RA) DATED FEBRUARY 01, 2019 | | 102501 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTOGMERY LANE, SUITE 400 BETHESDA, MD 20814 |

**NAS1286**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1112 PINNEY ASSOCIATES, INC. - SOW SCHNOLL COMPENSATED AUTHOR CW2366028 (LH.RA) EFFECTIVE MARCH 19, 2019 | 3/19/2021 | 106023 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTOGMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 1113 PROJECT SPECIFICATION ORDER EFFECTIVE AS OF FEBRUARY 01, 2019 | | 102503 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTOGMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 1114 PL DEVELOPMENT AMENDMENT 3 CW2366685        (AH.JB) EFFECTIVE APRIL 30, 2019 | 1/31/2022 | 106127 | ☐ | PL DEVELOPMENTS OF NEW YORK CORPORATION ALSO PL DEVELOPMENT OF NEW YORK CORPORATION | NOT AVAILABLE |
| 2. 1115 SUPPLY AGREEMENT LETTER EFFECTIVE AS OF JULY 31, 2009 | | 102512 | ☐ | PLANTEX USA, INC. | ATTN: GENERAL COUNSEL 2 UNIVERSITY PLAZA, SUITE 305 HACKENSACK, NJ 07601 |
| 2. 1116 TERMINATION OF MSA DATED AUGUST 31, 2013 | | 102513 | ☐ | PLEIO, INC. | ATTN: GENERAL COUNSEL 385 CONCORD AVE. #201A BELMONT, MA 02478 |
| 2. 1117 POMS CORPORATION - CSA CW2367327 (PB.RA) EFFECTIVE JUNE 17, 2019 | 6/16/2022 | 106041 | ☐ | POMS CORPORATION | NOT AVAILABLE |
| 2. 1118 PORSOLT CSA CW2366051 MODAFINIL AND ANIRACETAM (LH.RA) EFFECTIVE MARCH 19, 2019 | 3/19/2024 | 105965 | ☐ | PORSOLT SAS | NOT AVAILABLE |
| 2. 1119 SERVICE AGREEMENT  DATED JANUARY 18, 2002 | | 102517 | ☐ | PORTER NOVELLI INC. | ATTN: GENERAL COUNSEL EAST 42ND STREET NEW YORK, NY 10017 |
| 2. 1120 AMENDMENT NO. 2 TO THE SUBSCRIPTION AGREEMENT DATED FEBRUARY 01, 2011 | | 102518 | ☐ | PORZIO LIFE SCIENCES LLC | NOT AVAILABLE |
| 2. 1121 MASTER SERVICES AGREEMENT EFFECTIVE AS OF APRIL 25, 2002 | | 102527 | ☐ | PPD DEVELOPMENT, INC. | ATTN: GENERAL COUNSEL 2 TESSENEER DRIVE HIGHLAND HEIGHTS, KY 41076 |

**NAS1287**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1122 AMENDMENT #1 TO PROJECT SPECIFICATION ORDER #5 DATED MAY 24, 2001 | | 102523 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706 BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1123 CONSENT AND WAIVER DATED JUNE 24, 2011 | | 102534 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706A BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1124 CONSENT AND WAIVER EXECUTED JANUARY 09, 2014 | | 102533 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706A BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1125 LETTER OF AGREEMENT RE: NAME CHANGE DATED OCTOBER 16, 2000 | | 102528 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706A BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1126 PPD DEVELOPMENT, L.P. - QUALITY AGREEMENT CW2365254 DATED JANUARY 21, 2019 | | 102526 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706A BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1127 PSO 4 TO MASTER SERVICES AGREEMENT DATED OCTOBER 01, 2000 | | 102522 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 706A BEN WHITE BOULEVARD WEST AUSTIN, TX 78704-7016 |
| 2. 1128 AMENDMENT #1 TO MASTER CRO SERVICES AGREEMENT DATED DECEMBER 15, 2017 | | 102536 | ☐ | PPD DEVELOPMENT, LP | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |
| 2. 1129 MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2016 | | 102535 | ☐ | PPD DEVELOPMENT, LP | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |
| 2. 1130 PPD PSO CW2364874 PV SERVICES 2019-2021 (LH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2021 | 105941 | ☐ | PPD DEVELOPMENT, LP | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |

**NAS1288**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1131 WORK ORDER UNDER MASTER CRO SERVICES AGREEMENT DATED OCTOBER 01, 2016 | | 102537 | ☐ | PPD DEVELOPMENT, LP | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |
| 2. 1132 AMENDMENT #1 TO WORK ORDER DATED JUNE 1, 2015 TO MASTER CRO AGREEMENT DATED SEPTEMBER 28, 2015 | | 102544 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1133 WORK ORDER ; ; OM PROJECT NAME PGX0033-MSR1003 DATED JUNE 01, 2015 | | 102540 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1134 WORK ORDER DATED 02172016; ; OM PROJECT NAME OGX013PPD065-OAG1004 DATED FEBRUARY 17, 2016 | | 102546 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1135 WORK ORDER 9042014 TO MASTER CRO AGREEMENT; ; OM PROJECT NAME PFX002PPD028-BUP1026 DATED SEPTEMBER 04, 2014 | | 102539 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1136 WORK ORDER TO MASTER CRO AGREEMENT ; ; OM PROJECT NAME PGX006PPD039-MSR1006 DATED AUGUST 26, 2015 | | 102542 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1137 WORK ORDER TO MASTER CRO AGREEMENT DATED JUNE 24, 2011 | | 102547 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1138 WORK ORDER TO MASTER CRO AGREEMENT DATED OCTOBER 01, 2016 | | 102548 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1139 WORK ORDER TO MASTER CRO AGREEMENT; ; OM PROJECT NAME PGX005PP038-BUP1030 DATED AUGUST 18, 2015 | | 102541 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |

**NAS1289**

**Purdue Pharma L.P.**    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1140 WORK ORDER TO MASTER CRO AGREEMENT; ; OM PROJECT NAME PGX007PPD040-MSR1007 DATED AUGUST 26, 2015 | | 102543 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1141 WORK ORDER TO MASTER CRO AGREEMENT; ; OM PROJECT NAME PGX008PPD048-HCA1003 DATED OCTOBER 22, 2015 | | 102545 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1142 WORK ORDER; ; OM PROJECT NAME PGX001PPD010-PGX TRANSITION DATED APRIL 19, 2013 | | 102538 | ☐ | PPD GLOBAL CENTRAL LABS, LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1143 TRANSFER OF OWNERSHIP ACCEPTANCE LETTER DATED FEBRUARY 21, 2018 | | 102550 | ☐ | PRAXIS PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 101 MAIN STREET SUITE 1210 CAMBRIDGE, MA 02142 |
| 2. 1144 AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED NOVEMBER 24, 2015 | | 102552 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 4 LANDMARK SQUARE STAMFORD, CT 06901 |
| 2. 1145 AMENDMENT #2 TO MASTER SERVICES AGREEMENT DATED DECEMBER 19, 2018 | | 102554 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 4 LANDMARK SQUARE STAMFORD, CT 06901 |
| 2. 1146 PRECISION PROMOTIONAL EFFECTIVENESS LLC SOW CW2362760 INSOMINA ADOPTION PROPENSITY MODELING (SD.RA) DATED AUGUST 01, 2018 | | 102553 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 4 LANDMARK SQUARE STAMFORD, CT 06901 |
| 2. 1147 STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT DATED SEPTEMBER 10, 2018 | | 102551 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 4 LANDMARK SQUARE STAMFORD, CT 06901 |
| 2. 1148 STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT DATED NOVEMBER 24, 2015 | | 102557 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC. | ATTN: GENERAL COUNSEL 4 LANDMARK SQUARE STAMFORD, CT 06901 |

NAS1290

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1149  AMENDMENT NUMBER 29 TO GROUP PURCHASING AGREEMENT EFFECTIVE JANUARY 3, 2019 | | PPPH18PDF02.29 | ☐ | PREMIER HEALTHCARE ALLIANCE, L.P. | ATTN: GENERAL COUNSEL 13034 BALLANTYNE CORPORATE PLA SUITE 430 CHARLOTTE, NC 28277 |
| 2. 1150  GROUP PURCHASING AGREEMENT DATED JULY 1, 2015 | | PPPH18PDF02 | ☐ | PREMIER HEALTHCARE ALLIANCE, L.P. | ATTN: GENERAL COUNSEL 13034 BALLANTYNE CORPORATE PLA SUITE 430 CHARLOTTE, NC 28277 |
| 2. 1151  AMENDMENT #1 TO STATEMENT OF WORK EFFECTIVE AS OF DECEMBER 15, 2017 | | 102562 | ☐ | PREMIER HEALTHCARE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 13034 BALLANTYNE CORPORATE PLACE CHARLOTTE, NC 28277 |
| 2. 1152  MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 31, 2017 | | 102560 | ☐ | PREMIER HEALTHCARE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 13034 BALLANTYNE CORPORATE PLACE CHARLOTTE, NC 28277 |
| 2. 1153  STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT DATED OCTOBER 31, 2017 | | 102561 | ☐ | PREMIER HEALTHCARE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 13034 BALLANTYNE CORPORATE PLACE CHARLOTTE, NC 28277 |
| 2. 1154  AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED APRIL 15, 2016 | | 102565 | ☐ | PRESCRIPTION SUPPLY INC | ATTN: GENERAL COUNSEL 2233 TRACY ROAD NORTHWOOD, OH 43619 |
| 2. 1155  AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JUNE 30, 2017 | | 102566 | ☐ | PRESCRIPTION SUPPLY INC | ATTN: GENERAL COUNSEL 2233 TRACY ROAD NORTHWOOD, OH 43619 |
| 2. 1156  AUTHORIZED DISTRIBUTOR AGREEMENT DATED JULY 01, 2012 | | 102564 | ☐ | PRESCRIPTION SUPPLY INC | ATTN: JOHN CROMLY 2233 TRACY ROAD NORTHWOOD, OH 43619 |
| 2. 1157  SERVICES AGREEMENT DATED APRIL 05, 2005 | | 102568 | ☐ | PRG-SCHULTZ USA, INC. | ATTN: GENERAL COUNSEL 600 GALLERIA PARKWAY SUITE 100 ATLANTA, GA 30339 |

**NAS1291**

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1158   SOW 1 DATED OCTOBER 15, 2007 | | 102576 | ☐ | PRIME TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL |
| 2. 1159   PROJECT SPECIFICATION ORDER DATED DECEMBER 08, 2000 | | 102605 | ☐ | PRIMEDICA CORPORATION | ATTN: GENERAL COUNSEL DE |
| 2. 1160   PROJECT SPECIFICATION ORDER DATED JANUARY 29, 2001 | | 102609 | ☐ | PRIMEDICA CORPORATION | ATTN: GENERAL COUNSEL DE |
| 2. 1161   AMENDMENT #2 TO MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF JUNE 27, 2017 | | 102613 | ☐ | PRIMERA ANALYTICAL SOLUTIONS CORP. | ATTN: GENERAL COUNSEL |
| 2. 1162   MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 28, 2011 | | 102611 | ☐ | PRIMERA ANALYTICAL SOLUTIONS CORP. | ATTN: GENERAL COUNSEL |
| 2. 1163   MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 15, 2014 | | 102620 | ☐ | PRINCIPLED STRATEGIES, INC. | ATTN: GENERAL COUNSEL 400 SOUTH SIERRA AVENUE, SUITE 104 SOLANA BEACH, CA 92075 |
| 2. 1164   SERVICE AGREEMENT  DATED DECEMBER 18, 1997 | | 102626 | ☐ | PROCLINICAL PHARMACEUTICAL SERVICES | ATTN: GENERAL COUNSEL 300 KIMBERTON ROAD PHOENIXVILLE, PA 19460-2114 |
| 2. 1165   PROED COMMUNICATIONS INC MSA CW2364054 MSR AD COM (LH.RA) | | 102633 | ☐ | PROED COMMUNICATIONS,  INC. | ATTN: GENERAL COUNSEL |
| 2. 1166   SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102635 | ☐ | PROFESSIONAL OUTLOOK, INC. | ATTN: GENERAL COUNSEL 662 BUTTERNUT DRIVE HOLLAND, MI 49424 |
| 2. 1167   STATEMENT OF WORK #1 TO GENERAL TERMS AND CONDITIONS DATED NOVEMBER 24, 2015 | | 102638 | ☐ | PROOFPOINT INC | ATTN: GENERAL COUNSEL 892 ROSS DRIVE SUNNYVALE, CA 94089 |
| 2. 1168   AMENDMENT TO RELOCATION SERVICES AGREEMENT DATED APRIL 27, 2011 | | 102651 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 16260 NORTH 71ST STREET SCOTTSDALE, AZ 85254 |

NAS1292

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1169   AMENDMENT TO SERVICE CONTRACT DATED SEPTEMBER 15, 2005 | | 102648 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1170   RELOCATION SERVICES AGREEMENT DATED JANUARY 03, 2001 | | 102645 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1171   RELOCATION SERVICES AGREEMENT PRUDENTIAL RELOCATION SERVICES DATED APRIL 27, 2011 | | 102650 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 16260 NORTH 71ST STREET SCOTTSDALE, AZ 85254 |
| 2. 1172   RELOCATION SERVICES AGREEMENT. DATED MARCH 14, 2002 | | 102647 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1173   RELOCATION SERVICES. DATED APRIL 17, 2001 | | 102646 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1174   RELOCATION SERVICES. PRUDENTIAL RELOCATION SVCS DATED AUGUST 13, 2008 | | 102649 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 16260 NORTH 71ST STREET SCOTTSDALE, AZ 85254 |
| 2. 1175   TERMS OF AMENDMENT DATED APRIL 26, 2012 | | 102652 | ☐ | PRUDENTIAL RELOCATION, INC. | ATTN: GENERAL COUNSEL 16260 NORTH 71ST STREET SCOTTSDALE, AZ 85254 |
| 2. 1176   INTERNET SITE AGREEMENT DATED JANUARY 03, 2001 | | 102653 | ☐ | PRUDENTIAL RESIDENTIAL SERVICES LIMITED PARTNERSHIP | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1177   AMENDMENT TO INTERNATIONAL SERVICE AGREEMENT DATED JUNE 20, 2002 | | 102656 | ☐ | PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP D/B/A PRUDENTIAL RELOCATION | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1178   BRIDGE LOAN AGREEMENT EFFECTIVE AS OF FEBRUARY 05, 2001 | | 102655 | ☐ | PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP D/B/A PRUDENTIAL RELOCATION | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |

NAS1293

**Purdue Pharma L.P.**  |  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1179 HOUSEHOLD GOODS TRANSPORTATION MANAGEMENT AGREEMENT DATED SEPTEMBER 27, 2000 | | 102654 | ☐ | PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP D/B/A PRUDENTIAL RELOCATION | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1180 INTERNATIONAL SERVICE AGREEMENT DATED OCTOBER 16, 2001 | | 102657 | ☐ | PRUDENTIAL RESIDENTIAL SERVICES, LIMITED PARTNERSHIP D/B/A PRUDENTIAL RELOCATION | ATTN: GENERAL COUNSEL 200 SUMMIT LAKE DRIVE VALHALLA, NY 10595 |
| 2. 1181 PURPLE STRATEGIES SOW CW2359216 2018-19 (LH.RA) DATED JANUARY 01, 2018 | | 102680 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1182 PURPLE STRATEGIES SOW CW2359216 2018-19 (LH.RA) DATED JUNE 01, 2017 | | 102675 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1183 PURPLE STRATEGIES SOW CW2359216 2018-19 (LH.RA) DATED JUNE 01, 2017 | | 102676 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1184 PURPLE STRATEGIES SOW CW2359216 RETAINER (LH.RA) DATED SEPTEMBER 01, 2018 | | 102682 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1185 PURPLE STRATEGIES, LLC AND DECHERT LLP - SERVICES AGREEMENT 26MAR19 (RA) EFFECTIVE MARCH 26, 2019 | 3/25/2020 | 106081 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1186 PURPLE STRATEGIES, LLC AND DECHERT LLP - SERVICES AGREEMENT 26MAR19 (RA) EFFECTIVE MARCH 26, 2019 | 3/25/2020 | 106082 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1187 STATEMENT OF WORK EFFECTIVE AS OF JANUARY 01, 2018 | | 102681 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |

**NAS1294**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1188    STATEMENT OF WORK TO MASTER SERVICES AGREEMENT DATED JUNE 01, 2017 | | 102673 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 1189    STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT DATED SEPTEMBER 01, 2018 | | 102674 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRAI, VA 22314 |
| 2. 1190    PUTNAM ASSOCIATES LLC CSA CW2365294(SD.RA) EFFECTIVE JANUARY 25, 2019 | 1/24/2023 | 106196 | ☐ | PUTNAM ASSOCIATES LLC | NOT AVAILABLE |
| 2. 1191    QDISCOVERY AMENDED AND RESTATED MSA 01OCT2014 CW2351660 EXTENDED TERM (AP.CAG) DATED SEPTEMBER 16, 1996 | | 102684 | ☐ | Q.E.D. INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 20 MADISON AVE VALHALLA, NY 10595 |
| 2. 1192    SERVICES AGREEMENT DATED SEPTEMBER 16, 1996 | | 102683 | ☐ | Q.E.D. INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 200 MADISON AVE VALHALLA, NY 10595 |
| 2. 1193    QDISCOVERY MASTER SOW 03012017 CW2351765 EDISCOVERY SERVICES (AP.RA) DATED MARCH 01, 2017 | | 102686 | ☐ | QDISCOVERY LLC | ATTN: GENERAL COUNSEL |
| 2. 1194    MASTER SUBSCRIPTION AGREEMENT EFFECTIVE AS OF JULY 01, 2014 | | 102695 | ☐ | QSTREAM, INC. | NOT AVAILABLE |
| 2. 1195    AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 31, 2003 | | 102696 | ☐ | QUALITY OF LIFE MEDICAL & RESEARCH CENTER, LLC | ATTN: GENERAL COUNSEL |
| 2. 1196    QUALTRICS, LLC -  MSA AND CLOUD AGMT. 20DEC16 CW2323148 FEEDBACK SURVEYS PLATFORM (NK.CAG) DATED DECEMBER 20, 2016 | | 102697 | ☐ | QUALTRICS, LLC | ATTN: GENERAL COUNSEL 2250 N UNIVERSITY PKWY #48C PROVO, UT 84604 |
| 2. 1197    ADDENDUM NO. 11 TO MASTER AGREEMENT DATED MARCH 07, 2001 | | 102701 | ☐ | QUEST DIAGNOSTICS CLINICAL TRIALS | ATTN: GENERAL COUNSEL 1201 SOUTH COLLEGEVILLE ROAD COLLEGEVILLE, PA |

**NAS1295**

**Purdue Pharma L.P.**             **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1198   AMENDMENT NO. 1 TO MASTER AGREEMENT DATED SEPTEMBER 01, 2000 | | 102700 | ☐ | QUEST DIAGNOSTICS CLINICAL TRIALS | ATTN: LEGAL DEPARTMENT 1201 SOUTH COLLEGEVILLE ROAD COLLEGEVILLE, PA 19426 |
| 2. 1199   AMENDMENT NO. 1 TO MASTER AGREEMENT DATED FEBRUARY 22, 2001 | | 102705 | ☐ | QUEST DIAGNOSTICS INCORPORATED D/B/A QUEST DIAGNOSTICS CLINICAL TRIALS | ATTN: GENERAL COUNSEL 1201 SOUTH COLLEGEVILLE ROAD COLLEGEVILLE, PA 19426 |
| 2. 1200   MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 28, 2002 | | 102707 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL DELAWARE TECHNOLOGY PARK 3, INNOVATION WAY. SUITE 240 NEWARK, DE 19711 |
| 2. 1201   PROJECT SPECIFICATION ORDER DATED AUGUST 30, 2002 | | 102718 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1202   PROJECT SPECIFICATION ORDER DATED DECEMBER 12, 2002 | | 102735 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1203   PROJECT SPECIFICATION ORDER DATED NOVEMBER 01, 2002 | | 102731 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1204   PROJECT SPECIFICATION ORDER DATED NOVEMBER 01, 2002 | | 102732 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1205   PROJECT SPECIFICATION ORDER DATED NOVEMBER 01, 2002 | | 102734 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1206   PROJECT SPECIFICATION ORDER DATED SEPTEMBER 09, 2002 | | 102720 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1207   PROJECT SPECIFICATION ORDER DATED SEPTEMBER 09, 2002 | | 102721 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |

**NAS1296**

**Purdue Pharma L.P.**                                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1208  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 09, 2002 | | 102722 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1209  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 16, 2002 | | 102723 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1210  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 16, 2002 | | 102724 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1211  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 16, 2002 | | 102725 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1212  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 23, 2002 | | 102726 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1213  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 24, 2002 | | 102727 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1214  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 24, 2002 | | 102728 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1215  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 25, 2002 | | 102729 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1216  PROJECT SPECIFICATION ORDER DATED SEPTEMBER 25, 2002 | | 102730 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 NEWARK, DE 19711 |
| 2. 1217  PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102708 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |

**NAS1297**

**Purdue Pharma L.P.**                                                                                       Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1218 PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102709 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |
| 2. 1219 PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102710 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |
| 2. 1220 PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102714 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |
| 2. 1221 PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102715 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |
| 2. 1222 PROJECT SPECIFICATION ORDER DATED FEBRUARY 28, 2002 | | 102716 | ☐ | QUEST PHARMACEUTICALS SERVICES, LLC | ATTN: GENERAL COUNSEL 3 INNOVATION WAY, SUITE 240 DELAWARE TECHNOLOGY PARK NEWARK, DE 19711 |
| 2. 1223 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 08, 2011 | | 102739 | ☐ | QUINTILES COMMERCIAL US, INC. | ATTN: GENERAL COUNSEL 10 WATERVIEW BOULEVARD PARSIPPANY, NJ 07054 |
| 2. 1224 AMENDMENT NO. 4 TO HEALTHCARE INFORMATION AND SOLUTIONS AGREEMENT DATED FEBRUARY 28, 2017 | | 102745 | ☐ | QUINTILES IMS INCORPORATED | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110 DEERFIELD, IL 60015 |
| 2. 1225 PROJECT/ SERVICE ORDER EFFECTIVE AS OF DECEMBER 22, 2008 | | 102744 | ☐ | QUINTILES IMS INCORPORATED | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110 DEERFIELD, IL 60015 |

**NAS1298**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1226 LOCAL REPRESENTATIVE AGREEMENT EFFECTIVE AS OF DECEMBER 22, 2003 | | 102751 | ☐ | QUINTILES PTY LTD | ATTN: GENERAL COUNSEL 100 MILLER STREET NORTH SYDNEY NSW 2060 AUSTRALIA |
| 2. 1227 LETTER: CONSENT EXECUTED DECEMBER 19, 2013 | | 102752 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 1228 MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2016 | | 102754 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 1229 START UP WORK ORDER EXECUTED SEPTEMBER 07, 2016 | | 102757 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 1230 START UP WORK ORDER UNDER MASTER SERVICES AGREEMENT DATED JULY 21, 2006 | | 102756 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 1231 AMENDMENT NO. 1 TO LITIGATION SERVICES AGREEMENT | | 102766 | ☐ | QUORUM LITIGATION SERVICES | ATTN: GENERAL COUNSEL 950 BLUE GENTIAN ROAD, SUITE 100 EAGAN, MN 55121-1500 |
| 2. 1232 SEARCH FIRM AGREEMENT EFFECTIVE AS OF APRIL 28, 2009 | | 102768 | ☐ | R&D PARTNERS | ATTN: MATTHEW ZAPP 3031 N ROCKY POINT ROAD W, SUITE 175 TAMPA, FL 33607 |
| 2. 1233 AMENDED AND RESTATED STUDY SPECIFICATION ORDER DATED JUNE 13, 2003 | | 102777 | ☐ | RADIANT RESEARCH, INC. | ATTN: GENERAL COUNSEL DEPT. 4300, C/O B OF A WHOLESALE LOCKBOX WAI-501-11-30, 800 5TH AVENUE SEATTLE, WA 98104 |
| 2. 1234 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 13, 2003 | | 102778 | ☐ | RADIANT RESEARCH, INC. | ATTN: GENERAL COUNSEL DEPT. 4300, C/O B OF A WHOLESALE LOCKBOX WAI-501-11-30, 800 5TH AVENUE SEATTLE, WA 98104 |

NAS1299

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1235 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JUNE 13, 2003 | | 102779 | ☐ | RADIANT RESEARCH, INC. | ATTN: GENERAL COUNSEL DEPT. 4300, C/O B OF A WHOLESALE LOCKBOX WAI-501-11-30, 800 5TH AVENUE SEATTLE, WA 98104 |
| 2. 1236 | RALPH D'AGOSTINO, JR., PH.D. - CSA CW2367590 (LH.RA) EFFECTIVE JULY 01, 2019 | 6/30/2021 | 106018 | ☐ | RALPH D AGOSTINO JR | NOT AVAILABLE |
| 2. 1237 | DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN RANBAXY PHARMACEUTICALS INC. AND PURDUE PHARMA L.P., DATED DECEMBER 28, 2012 | | 106283 | ☐ | RANBAXY PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 1238 | DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN RANBAXY PHARMACEUTICALS INC. AND PURDUE PHARMA L.P., DATED DECEMBER 28, 2012 | | 106287 | ☐ | RANBAXY PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 1239 | AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED DECEMBER 28, 2012 | | 102790 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 1240 | DISTRIBUTION AND SUPPLY AGREEMENT DATED DECEMBER 28, 2012 | | 102782 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: VICE PRESIDENT - SALES, MARKETING & DISTRIBUTION 9431 FLORIDA MINING BOULEVARD EAST JACKSONVILLE, FL 32257 |
| 2. 1241 | DISTRIBUTION AND SUPPLY AGREEMENT DATED NOVEMBER 13, 2009 | | 102781 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: VICE PRESIDENT - SALES, MARKETING & DISTRIBUTION 9431 FLORIDA MINING BOULEVARD EAST JACKSONVILLE, FL 32257 |
| 2. 1242 | PHARMACOVIGILANCE AGREEMENT EXECUTED AUGUST 06, 2014 | | 102784 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: HUNTER MURDOCK, ESQ 600 COLLEGE ROAD EAST PRINCETON, NJ 08540 |

**NAS1300**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1243 QUALITY AGREEMENT DATED AUGUST 18, 2014 | | 102783 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: LAVESH SAMTANI 600 COLLEGE ROAD EAST PRINCETON, NJ 08540 |
| 2. 1244 SEARCH FIRM AGREEMENT EFFECTIVE AS OF JUNE 26, 2009 | | 102792 | ☐ | RAPID RESOURCES RECRUITERS, LLC | ATTN: GENERAL COUNSEL 10 PINEWOOD CT. RACINE, WI 53402 |
| 2. 1245 RAZORFISH HEALTH AMENDMENT 7 TO MSA CW2363318 (SD.RA) DATED SEPTEMBER 12, 2018 | | 102794 | ☐ | RAZORFISH HEALTH | ATTN: GENERAL COUNSEL |
| 2. 1246 HALKIAS CSA CW2354339 GOVERNMENT AFFAIRS (AB.RA) DATED MAY 01, 2017 | | 102795 | ☐ | REBECCA L. HALKIAS | ATTN: GENERAL COUNSEL 325 7TH STREET, SUITE 400 WASHINGTON, DC 20004 |
| 2. 1247 NAVIGATOR(TM) FOR DRUG LABELS ORDER FORM DATED MAY 01, 2018 | | 102796 | ☐ | REED TECH | ATTN: GRANT FALATOVICH 7 WALNUT GROVE DRIVE HORSHAM, PA 19044 |
| 2. 1248 SEARCH FIRM AGREEMENT DATED JANUARY 18, 2010 | | 102797 | ☐ | REEVE & ASSOCIATES LLC | ATTN: GENERAL COUNSEL 1127 HIGH RIDGE ROAD # 306 STAMFORD, CT 06905 |
| 2. 1249 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF APRIL 16, 2014 | | 102799 | ☐ | REGENTS OF THE UNIVERSITY OF CALIFORNIA WITH OFFICES AT CLINICAL TRIALS ADMINISTRATION OFFICE | ATTN: GENERAL COUNSEL 10911 WEYBURN AVENUE, 3RD FLOOR LOS ANGELES, CA 90095 |
| 2. 1250 REIMHERR, FRED CSA 01012019 CW2364604 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105925 | ☐ | REIMHERR, FRED | NOT AVAILABLE |
| 2. 1251 NDCRELAYHEALTHSOW27APR2017CW23 53610 SYMPROIC(AB.RA) DATED JULY 01, 2017 | | 102802 | ☐ | RELAYHEALTH | ATTN: GENERAL COUNSEL 1564 N.E. EXPRESSWAY ATLANTA, GA 30329 |
| 2. 1252 RELAYHEALTH AMEND MSA CW2360124 (LB.RA) DATED FEBRUARY 12, 2018 | | 102803 | ☐ | RELAYHEALTH | ATTN: GENERAL COUNSEL 1564 N.E. EXPRESSWAY ATLANTA, GA 30329 |

**NAS1301**

**Purdue Pharma L.P.**                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1253  MSA AMENDMENT 2 REMUND GROUP CW2359919 (DS.RA) DATED JANUARY 02, 2018 | | 102822 | ☐ | REMUND GROUP, LLC | ATTN: GENERAL COUNSEL |
| 2. 1254  CLINICAL TRIAL AGREEMENT DATED FEBRUARY 10, 2004 | | 102823 | ☐ | RENSTAR INC. | ATTN: GENERAL COUNSEL 104 SE 1ST SUITE B OCALA, FL 34471 |
| 2. 1255  CLINICAL TRIAL AGREEMENT DATED MARCH 23, 2004 | | 102824 | ☐ | RENSTAR INC. | ATTN: GENERAL COUNSEL 104 SE 1ST SUITE B OCALA, FL 34471 |
| 2. 1256  CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF APRIL 10, 2002 | | 102825 | ☐ | RESEARCH ACROSS AMERICA | ATTN: GENERAL COUNSEL RHD PROFESSIONAL PLAZA 4 9 MEDICAL PARKWAY, SUITE 202 DALLAS, TX 75234 |
| 2. 1257  AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 102826 | ☐ | RESEARCH CENTER OF LOUISIANA | ATTN: GENERAL COUNSEL 3600 PRYTANIA STREET SUITE 4 NEW ORLEANS, LA 70115 |
| 2. 1258  STUDY SPECIFICATION ORDER 002 DATED DECEMBER 30, 2004 | | 102827 | ☐ | RESEARCH CENTER OF THE OZARKS | ATTN: GENERAL COUNSEL 118 WEST COMMERICAL STREET, P.O. BOX 111 EVERTON, MO 65646 |
| 2. 1259  RTI HEALTH SOLUTIONS OTH 100916 CW2320826 AMENDMENT 3 TO SOW 3 (LH.LLS) DATED SEPTEMBER 29, 2016 | | 102830 | ☐ | RESEARCH TRIANGLE INSTITUTE D/B/A RTI HEALTH SOLUTIONS | ATTN: GENERAL COUNSEL |
| 2. 1260  RTI OTH 101916 CW2320816 AMENDMENT TO MSA 101013 (LH.LLS) DATED SEPTEMBER 29, 2016 | | 102829 | ☐ | RESEARCH TRIANGLE INSTITUTE D/B/A RTI HEALTH SOLUTIONS | ATTN: GENERAL COUNSEL |
| 2. 1261  WUXI CLINICAL DEVELOPMENT, INC CSA CW2366357 ONCOLOGY CONSULTING BY HAUSHEER (LH.RA) EFFECTIVE APRIL 08, 2019 | 4/7/2022 | 105964 | ☐ | RESEARCHPOINT GLOBAL | NOT AVAILABLE |

**NAS1302**

**Purdue Pharma L.P.**                                                                     **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1262   SEARCH FIRM AGREEMENT EFFECTIVE AS OF AUGUST 12, 2009 | | 102833 | ☐ | RESPONSE COMPANIES | ATTN: GENERAL COUNSEL 10 EAST 40TH STREET 5TH FLOOR NEW YORK, NY 10016 |
| 2. 1263   ADDENDUM TO INTERNET SERVICES AGREEMENT | | 102837 | ☐ | REUTERS AMERICA LLC | NOT AVAILABLE |
| 2. 1264   INTERNET SERVICES ORDER FORM EXECUTED FEBRUARY 02, 2005 | | 102840 | ☐ | REUTERS HEALTH INFORMATION LLC | ATTN: GENERAL COUNSEL THREE TIMES SQUARE NEW YORK, NY 10036 |
| 2. 1265   AMENDMENT #1 TO STUDY SPECIFICATION ORDER DATED FEBRUARY 04, 2002 | | 102848 | ☐ | RHEUMATOLOGY ASSOCIATES OF NORTH ALABAMA | ATTN: GENERAL COUNSEL |
| 2. 1266   CONTRACT AGREEMENT EXECUTED APRIL 06, 1998 | | 102849 | ☐ | RHEUMATOLOGY RESEARCH INTERNATIONAL, LLC | ATTN: DON CROSBIE SUITE 545 5939 HARRY HINES BOULEVARD DALLAS, TX 75235 |
| 2. 1267   AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED NOVEMBER 17, 2003 | | 102850 | ☐ | RHEUMATOLOGY, PC | ATTN: GENERAL COUNSEL |
| 2. 1268   CONSENT AGREEMENT EXECUTED JANUARY 17, 2014 | | 102851 | ☐ | RHO, INC | ATTN: GENERAL COUNSEL LAURA HELMS REECE 6330 QUADRANGLE DRIVE, SUITE 500 CHAPEL HILL, NC 27515 |
| 2. 1269   LETTER: CONSENT EXECUTED JANUARY 17, 2014 | | 102852 | ☐ | RHO, INC. | ATTN: GENERAL COUNSEL LAURA HELMS REECE 6330 QUADRANGLE DRIVE, SUITE 500 CHAPEL HILL, NC 27515 |
| 2. 1270   MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JUNE 04, 2014 | | 102853 | ☐ | RHODE ISLAND HOSPITAL | ATTN: LIFESPAN OFFICE OF RESEARCH ADMINISTRATION ONE HOPPIN STREET BOX 42, SUITE 1.300 PROVIDENCE, RI 02903 |

**NAS1303**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1271 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF OCTOBER 17, 2003 | | 102887 | ☐ | RICHARD J. WINKLE, MD INC. D/B/A ORANGE COUNTY CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 11741 VALLEY VIEW STREET CYPRESS, CA 90630 |
| 2. 1272 STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED OCTOBER 17, 2003 | | 102886 | ☐ | RICHARD J. WINKLE, MD INC. D/B/A ORANGE COUNTY CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 11741 VALLEY VIEW STREET CYPRESS, CA 90630 |
| 2. 1273 SLUTSKY MD MCSA 09012016 CW2319971 ADDICTION AD BOARD (LH.PMM) DATED SEPTEMBER 01, 2016 | | 102890 | ☐ | RICHARD M. SLUTSKY, MD | ATTN: GENERAL COUNSEL 1450 WASHINGTON BLVD. STAMFORD, CT 06902 |
| 2. 1274 RIGHT MANAGEMENT MSA CW2366613(SD.RA) EFFECTIVE APRIL 03, 2019 | 4/2/2022 | 106165 | ☐ | RIGHT MANAGEMENT CONSULTANTS | NOT AVAILABLE |
| 2. 1275 AMENDMENT #1 TO CAREER TRANSITION SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 24, 2018 | | 102892 | ☐ | RIGHT MANAGEMENT INC. | NOT AVAILABLE |
| 2. 1276 SERVICE AGREEMENT DATED FEBRUARY 25, 2015 | | 102895 | ☐ | RITE AID | ATTN: GENERAL COUNSEL 30 HUNTER LANE CAMP HILL, PA 17011 |
| 2. 1277 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102896 | ☐ | RJM TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 9620 MAURY ROAD FAIRFAX, VA 22032 |
| 2. 1278 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102898 | ☐ | RJS ASSOCIATES | ATTN: GENERAL COUNSEL 10 COLUMBUS BOULEVARD HARTFORD, CT 06106 |
| 2. 1279 RK GROUP LLC (BITTON) MCSA 08102016 CW2319371 (LH.ER) DATED AUGUST 10, 2016 | | 102899 | ☐ | RK GROUP LLC | ATTN: GENERAL COUNSEL 6335 APPLE DEW AVENUE LAS VEGAS, NV 891331 |
| 2. 1280 SEARCH FIRM AGREEMENT EFFECTIVE AS OF AUGUST 10, 2011 | | 102900 | ☐ | ROBERT HALF INTERNATIONAL | ATTN: GENERAL COUNSEL 2613 CAMINO RAMON SAN RAMON, CA 94583 |

**NAS1304**

**Purdue Pharma L.P.**                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1281 CONSTRUCTION AGREEMENT BETWEEN OWNER AND CONTRACTOR DATED OCTOBER 28, 2005 | | 102902 | ☐ | ROBERT M. HERLING | ATTN: GENERAL COUNSEL 2500 MAIN STREET SUITE 3 SAYREVILLE, NJ 07424 |
| 2. 1282 SCHOENHAUS MCSA CW2319179 (LH.ER) DATED AUGUST 10, 2016 | | 102905 | ☐ | ROBERT SCHOENHAUS, PHARMD | ATTN: GENERAL COUNSEL 17005 BUTTERFIELD TRAIL POWAY, CA 92064 |
| 2. 1283 ROBINSON REGDOCS SOW 07012016 CW2221280 BUTRANS QT MANUSCRIPT (LH.CG) DATED JULY 28, 2016 | | 102908 | ☐ | ROBINSON REGDOCS, INC. | ATTN: GENERAL COUNSEL 4145 HERBST DRIVE DOLYESTOWN, PA 18902 |
| 2. 1284 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF APRIL 15, 2016 | | 102914 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1285 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 102913 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1286 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 102915 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1287 AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 01, 2018 | | 102916 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1288 AUTHORIZED DISTRIBUTOR AGREEMENT   EFFECTIVE AS OF JULY 01, 2012 | | 102917 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1289 DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 102911 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: ED KIRKER 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 1290 AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED SEPTEMBER 04, 2002 | | 102922 | ☐ | ROCKY MOUNTAIN CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 29 ROGERS COURT GOLDEN, CO 80401 |

NAS1305

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1291 AMENDMENT #3 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 16, 2015 | | 102927 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 1292 RODA CREATIVE SERVICES OTH CW2364192 AMEND TO 2018 - 2019 SOW (LH.RA) DATED NOVEMBER 01, 2018 | | 102930 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 1293 RODA CREATIVE SERVICES SOW CW2359060 2018 - 2019 (LH.RA) DATED DECEMBER 14, 2017 | | 102928 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 1294 RODA CREATIVE SERVICES, LTD. OTH CW2365151 AMEND2 TO SOW 2018-1 (LH.RA) DATED JANUARY 01, 2019 | | 102931 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 1295 SEARCH FIRM AGREEMENT EFFECTIVE AS OF OCTOBER 04, 2007 | | 102933 | ☐ | ROSE AND JONES ASSOCIATES | ATTN: GENERAL COUNSEL 46 BAYNARD STREET, SUITE 209 NEW BRUNSWICK, NJ 08901 |
| 2. 1296 ADDENDUM NO. 1 TO AMENDED AND RESTATED STATEMENT OF WORK EFFECTIVE AS OF APRIL 01, 2015 | | 102935 | ☐ | ROXANNE LABORATORIES | NOT AVAILABLE |
| 2. 1297 AMENDMENT #1 TO STUDY SPECIFICATION ORDER DATED AUGUST 13, 2003 | | 102946 | ☐ | RUSH PRESBYTERIAN-ST. LUKES MEDICAL CENTER | ATTN: GENERAL COUNSEL |
| 2. 1298 STUDY SPECIFICATION ORDER 001 DATED OCTOBER 07, 2003 | | 102947 | ☐ | RUSH PRESBYTERIAN-ST.LUKES MEDICAL CENTER | ATTN: GENERAL COUNSEL 1653 WEST CONGRESS PARKWAY CHICAGO, IL 60612 |
| 2. 1299 AMENDMENT TO MASTER SERVICES AGREEMENT DATED DECEMBER 03, 2000 | | 102948 | ☐ | RUSK (NYU) NY MEDICAL CENTER | ATTN: GENERAL COUNSEL 317 EAST 34TH STREET NEW YORK, NY 10016 |
| 2. 1300 RXMOSAIC CSA CW2364879 (LH.RA) EFFECTIVE JANUARY 04, 2019 | 1/31/2022 | 105942 | ☐ | RXMOSAIC LLC | NOT AVAILABLE |

**NAS1306**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1301  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 102953 | ☐ | S. ALTMAN ASSOCIATES | ATTN: GENERAL COUNSEL 48 HOLLY RIBBONS CIRCLE BLUFFTON, SC 29909 |
| 2. 1302  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 102961 | ☐ | SALADOPS SOLUTIONS | ATTN: GENERAL COUNSEL 303 WEST 66TH ST. APT. 12DW NEW YORK, NY 10023 |
| 2. 1303  SEARCH FIRM AGREEMENT EFFECTIVE AS OF SEPTEMBER 20, 2011 | | 102962 | ☐ | SALES CONSULTANTS OF CARY D/B/A PERSONIFY SEARCH | ATTN: GENERAL COUNSEL 5020 WESTON PARKWAY CARY, NC 27513 |
| 2. 1304  MASTER SERVICE AGREEMENT DATED JULY 23, 2001 | | 102963 | ☐ | SAMETZ BLACKSTONE ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 40 WEST NEWTON STREET BOSTON, MA 02118 |
| 2. 1305  DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN SANDOZ INC. AND PURDUE PHARMA L.P., DATED JANUARY 5, 2014 | | 106288 | ☐ | SANDOZ INC. | ATTN: VICE PRESIDENT, INTELLECTUAL PROPERTY ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 1306  DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN SANDOZ INC. AND PURDUE PHARMA L.P., DATED JANUARY 5, 2014 | | 106292 | ☐ | SANDOZ INC. | ATTN: VICE PRESIDENT, INTELLECTUAL PROPERTY ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 1307  AMENDMENT #1 TO PHARMACOVIGILANCE AGREEMENT DATED MAY 23, 2014 | | 102978 | ☐ | SANDOZ, INC. | ATTN: GENERAL COUNSEL 11101 W 120TH AVENUE SUITE 120 BROOMFIELD, CO 80021 |
| 2. 1308  DISTRIBUTION AND SUPPLY AGREEMENT DATED JANUARY 05, 2014 | | 102972 | ☐ | SANDOZ, INC. | ATTN: VICE PRESIDENT, INTELLECTUAL PROPERTY ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 1309  PHARMACOVIGILANCE AGREEMENT EFFECTIVE AS OF MAY 23, 2014 | | 102977 | ☐ | SANDOZ, INC. | ATTN: BRIAN WATSON 2555 WEST MIDWAY BOULEVARD BROOMFIELD, CO 80516 |

**NAS1307**

**Purdue Pharma L.P.**                                                                              **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1310 QUALITY AGREEMENT DATED MAY 28, 2014 | | 102973 | ☐ | SANDOZ, INC. | ATTN: BRIAN WATSON 2555 WEST MIDWAY BOULEVARD BROOMFIELD, CO 80516 |
| 2. 1311 QUALITY AGREEMENT EFFECTIVE AS OF MAY 21, 2012 | | 102991 | ☐ | SANOFL-AVENTIS US, LLC/P.F. LABORATORIES | ATTN: GENERAL COUNSEL 55 CORPORATE DRIVE, BRIDGEWATER, NJ 08807 |
| 2. 1312 MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 06, 2016 | | 103013 | ☐ | SARD VERBINNEN & CO., LLC | ATTN: GENERAL COUNSEL 630 THIRD AVENUE, 9TH FLOOR NEW YORK, NY 10017 |
| 2. 1313 AMENDMENT NO. 1 TO MASTER SERVICES AGREEMENT DATED JANUARY 12, 2018 | | 103030 | ☐ | SCHOENECKERS, INC. D/B/A BI WORLDWIDE | NOT AVAILABLE |
| 2. 1314 SEARCH FIRM AGREEMENT DATED MAY 15, 2008 | | 103035 | ☐ | SCIENTIFIC SEARCH | ATTN: GENERAL COUNSEL 101 EAST GATE DRIVE CHERRY HILL, NJ 08034 |
| 2. 1315 SCIOSCIENTIFIC LLC CSA CW2364541 (SD.RA) DATED DECEMBER 07, 2008 | | 103036 | ☐ | SCIOSCIENTIFIC, LLC | ATTN: GENERAL COUNSEL 163 MADISON AVENUE, SUITE 220 MORRISTOWN, NJ 07960 |
| 2. 1316 SEAN HENNESSY PHARM.D., PH.D., LLC - AMEND 1 TO CSA OTH CW2367271 (LH.SD) EFFECTIVE JANUARY 01, 2019 | 6/30/2020 | 106006 | ☐ | SEAN HENNESSY | NOT AVAILABLE |
| 2. 1317 INVESTIGATIVE SERVICES AGREEMENT DATED FEBRUARY 09, 2004 | | 103039 | ☐ | SECURITY SERVICES OF CONNECTICUT, INC. | ATTN: ROBERT J. ARIUS 417 KNOWLTON STREET BRIDGEPORT, CT 06606 |
| 2. 1318 SEARCH FIRM AGREEMENT DATED OCTOBER 08, 2007 | | 103041 | ☐ | SEGULA TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 13A RED ROOF LANE P.O. BOX 30 SALEM, NH 03079 |
| 2. 1319 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 25, 2003 | | 103045 | ☐ | SENTARA MEDICAL GROUP | ATTN: GENERAL COUNSEL |

**NAS1308**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1320 PROMOTION SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 1996 | | 103051 | ☐ | SHARED MARKETING SERVICES, INC. | ATTN: GENERAL COUNSEL 233 N. MICHIGAN AVE. SUITE 2700 CHICAGO, IL 60601 |
| 2. 1321 STOCKING AGREEMENT EFFECTIVE AS OF JANUARY 01, 1996 | | 103052 | ☐ | SHARED MARKETING SERVICES, INC. | ATTN: GENERAL COUNSEL 233 N. MICHIGAN AVE. SUITE 2700 CHICAGO, IL 60601 |
| 2. 1322 AMENDMENT #8 TO SUPPLY AGREEMENT DATED JULY 03, 2006 | | 103056 | ☐ | SHARP CORPORATION | ATTN: GENERAL COUNSEL 7451 KEEBLER WAY ALLENTOWN, PA 18106 |
| 2. 1323 AMENDMENT TO QUALITY AGREEMENT DATED JULY 03, 2006 | | 103055 | ☐ | SHARP CORPORATION | ATTN: GENERAL COUNSEL 7451 KEEBLER WAY ALLENTOWN, PA 18106 |
| 2. 1324 QUALITY AGREEMENT DATED JULY 03, 2006 | | 103054 | ☐ | SHARP CORPORATION | ATTN: GENERAL COUNSEL 7451 KEEBLER WAY ALLENTOWN, PA 18106 |
| 2. 1325 QUALITY AGREEMENT DATED JULY 03, 2006 | | 103057 | ☐ | SHARP CORPORATION | ATTN: GENERAL COUNSEL 7451 KEEBLER WAY ALLENTOWN, PA 18106 |
| 2. 1326 AMENDMENT #3 TO MASTER SERVICES AGREEMENT DATED MAY 01, 2009 | | 103059 | ☐ | SHIMADZU SCIENTIFIC INSTRUMENTS, INC. | ATTN: GENERAL COUNSEL |
| 2. 1327 AMENDMENT NO. 1 TO DISTRIBUTION AND PROMOTION COLLABORATION AGREEMENT DATED FEBRUARY 16, 2017 | | 103077 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1328 AMENDMENT NO. 2 TO DISTRIBUTION AND PROMOTION COLLABORATION AGREEMENT DATED APRIL 14, 2017 | | 103079 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1329 AMENDMENT, TERMINATION AND REVERSION AGREEMENT EFFECTIVE JUNE 25, 2018 | | 9022 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |

**NAS1309**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1330 DISTRIBUTION AND PROMOTION COLLABORATION AGREEMENT DATED DECEMBER 17, 2016 | | 103083 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1331 MANUFACTURING AND SUPPLY AGREEMENT DATED SEPTEMBER 28, 2017 | | 103080 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1332 PHARMACOVIGILANCE AGREEMENT DATED DECEMBER 17, 2016 | | 103089 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1333 PHARMACOVIGILANCE AGREEMENT DATED FEBRUARY 22, 2017 | | 103078 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1334 SHIONOGI CO. LTD. - QUALITY AGREEMENT (SYMPROIC) (EGA) DATED NOVEMBER 22, 2017 | | 103088 | ☐ | SHIONOGI INC | ATTN: GENERAL COUNSEL 300 CAMPUS DRIVE FLORHAM PARK, NJ 07932 |
| 2. 1335 MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 26, 2015 | | 103090 | ☐ | SHYFT ANALYTICS, INC. | ATTN: GENERAL COUNSEL 203 CRESCENT STREET WALTHAM, MA 02453 |
| 2. 1336 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 103099 | ☐ | SIEMENS INDUSTRY, INC. | ATTN: JENNIFER ROSSI BUILDING TECHNOLOGIES 1000 DEERFIELD PARKWAY BUFFALO GROVE, IL 60089 |
| 2. 1337 SIEMENS INDUSTRY, INC. - SOW 1 1JAN17 CW2324030 GENENTECH AND CCURE STAMFORD (RA.PT) DATED JANUARY 01, 2017 | | 103096 | ☐ | SIEMENS INDUSTRY, INC. | ATTN: JENNIFER ROSSI BUILDING TECHNOLOGIES 1000 DEERFIELD PARKWAY BUFFALO GROVE, IL 60089 |
| 2. 1338 SIEMENS INDUSTRY, INC. - SOW 2 1JAN17 CW2324032 GENETECH AND CCURE CRANBURY (RA.PT) DATED JANUARY 01, 2017 | | 103097 | ☐ | SIEMENS INDUSTRY, INC. | ATTN: JENNIFER ROSSI BUILDING TECHNOLOGIES 1000 DEERFIELD PARKWAY BUFFALO GROVE, IL 60089 |
| 2. 1339 SEARCH AGREEMENT DATED MAY 15, 2013 | | 103100 | ☐ | SILVERCHAIR PARTNERS | NOT AVAILABLE |

**NAS1310**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1340 SIMON-KUCHER MSA 062716 CW2221330 (LH.RA) DATED JUNE 27, 2016 | | 103101 | ☐ | SIMON-KUCHER & PARTNERS, STRATEGY AND MARKETING CONSULTANTS, LLC | ATTN: GENERAL COUNSEL ONE CANAL PARK CAMBRIDGE, MA 02141 |
| 2. 1341 SIMPSON CSA CW2353657 COGNOS (SA.EGA) DATED MAY 05, 2017 | | 103102 | ☐ | SIMPSON ASSOCIATES | ATTN: GENERAL COUNSEL THIRD FLOOR, REGENCY HOUSE, YORK BUSINESS PARK, POPPLETON, YORK, NORTH YORKSHIRE YO26 6RW |
| 2. 1342 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 02, 2016 | | 103103 | ☐ | SIMR, INC. | ATTN: GENERAL COUNSEL 211 NORTH 4TH AVENUE, SUITE 2B ANN ARBOR, MI 48104 |
| 2. 1343 STATINMED OTH CW2362982 AMENDMENT 5 TO SOW DTD 11042016 (LH.RA) DATED AUGUST 16, 2018 | | 103104 | ☐ | SIMR, INC. | ATTN: GENERAL COUNSEL 211 NORTH 4TH AVENUE, SUITE 2B ANN ARBOR, MI 48104 |
| 2. 1344 STATINMED OTH CW2363071 AMENDMENT 6 TO SOW DTD 11042016 DATED AUGUST 23, 2018 | | 103105 | ☐ | SIMR, INC. | ATTN: GENERAL COUNSEL 211 NORTH 4TH AVENUE, SUITE 2B ANN ARBOR, MI 48104 |
| 2. 1345 AMENDMENT #7 TO STATEMENT OF WORK DATED FEBRUARY 13, 2019 | | 103106 | ☐ | SIMR, LLC D/B/A STATINMED RESEARCH | ATTN: GENERAL COUNSEL 211 NORTH 4TH AVENUE, SUITE 2B ANN ARBOR, MI 48104 |
| 2. 1346 MSA SKIPTA 06SEPT2016 CW2319842 MANAGED MARKETS PROMO (AB.LLS) DATED OCTOBER 14, 2016 | | 103112 | ☐ | SKIPTA LLC | ATTN: GENERAL COUNSEL 8 NORTH QUEEN STREET LANCASTER, PA 17603 |
| 2. 1347 SMART ANALYST, INC. CSA CW2367794 (SD.RA) EFFECTIVE JULY 26, 2019 | 7/25/2022 | 106138 | ☐ | SMART ANALYST INC | NOT AVAILABLE |
| 2. 1348 SEARCH FIRM AGREEMENT DATED FEBRUARY 12, 2008 | | 103117 | ☐ | SMITH HANLEY ASSOCIATES, L.L.C. | ATTN: GENERAL COUNSEL 107 JOHN STREET 2ND FLOOR SOUTHPORT, CT 06890 |

**NAS1311**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1349  SMITH, ANDERSON, BLOUNT, DORSETT, MITCHELL JERNIGAN, L.L.P. CSA CW2356878 (LH.RA) DATED NOVEMBER 01, 2017 | | 103118 | ☐ | SMITH, ANDERSON, BLOUNT, DORSET, MITCHELL & JERNIGAN, L.L.P., | ATTN: GENERAL COUNSEL 150 FAYETTEVILLE STREET, WELLS FARGO CAPITOL CENTER, SUITE 2300 RALEIGH, NC 27601 |
| 2. 1350  ATTACHMENT B - STANDARD SERVICES EFFECTIVE AS OF APRIL 01, 1999 | | 103119 | ☐ | SMITHKLINE BEECHAM. CLINICAL LABORATORIES, INC | NOT AVAILABLE |
| 2. 1351  SOCRATES MSA AMENDMENT CW2354185  (RA.DT) DATED JULY 15, 2017 | | 103121 | ☐ | SOCRATES LTD | ATTN: GENERAL COUNSEL WEALHAY, LAVENDER SQUARE BAMPTON OX18 2LR, OXON, ENGLAND |
| 2. 1352  SODEXO MSA DURHAM, NC CW2319782 CAFETERIA SERVICES (KL.CG) DATED NOVEMBER 18, 2016 | | 103122 | ☐ | SODEXO OPERATIONS, LLC | ATTN: GENERAL COUNSEL 9801 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 1353  SODEXO MSA WILSON CW2319913 (KL.CAG) DATED NOVEMBER 17, 2016 | | 103123 | ☐ | SODEXO OPERATIONS, LLC | ATTN: GENERAL COUNSEL 9801 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 1354  SODEXO MSA WILSON CW2319913 (KL.CAG) DATED NOVEMBER 17, 2016 | | 103124 | ☐ | SODEXO OPERATIONS, LLC | ATTN: GENERAL COUNSEL 9801 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 1355  SEARCH FIRM AGREEMENT EFFECTIVE AS OF OCTOBER 04, 2007 | | 103127 | ☐ | SOLOMON-PAGE GROUP, LLC | ATTN: GENERAL COUNSEL 1140 AVENUE OF THE AMERICAS NEW YORK, NY 10036 |
| 2. 1356  SOLVIAS AG MSA 30SEPT2016 CW2320217 LH.MP DATED SEPTEMBER 29, 2016 | | 103128 | ☐ | SOLVIAS AG | ATTN: GENERAL COUNSEL ROMERPARK 2            4303 KAISERAUGST, CH(SWITZERLAND) |
| 2. 1357  AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JANUARY 21, 2004 | | 103142 | ☐ | SONORA CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1520 W. STATE STREET, STE 221 BOISE, ID 83702 |

**NAS1312**

**Purdue Pharma L.P.**                                                                                           **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1358   AMENDMENT #3 TO STUDY SPECIFICATION ORDER #001 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 103144 | ☐ | SONORA CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1520 W. STATE STREET, STE 221 BOISE, ID 83702 |
| 2. 1359   STUDY SPECIFICATION ORDER 003 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 012104 DATED FEBRUARY 11, 2005 | | 103143 | ☐ | SONORA CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1520 W. STATE STREET, STE 221 BOISE, ID 83702 |
| 2. 1360   STUDY SPEIFICATION ORDER 001 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED 012104 DATED JANUARY 21, 2004 | | 103141 | ☐ | SONORA CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1520 W. STATE STREET, STE 221 BOISE, ID 83702 |
| 2. 1361   AMENDMENT #3 TO MASTER SERVICES AGREEMENT DATED MAY 12, 2009 | | 103146 | ☐ | SOTAX CORPORATION | ATTN: GENERAL COUNSEL 411 CAREDEAN DRIVE, SUITE A HORSHAM, PA 19044 |
| 2. 1362   MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 12, 2009 | | 103145 | ☐ | SOTAX CORPORATION | ATTN: GENERAL COUNSEL 411 CAREDEAN DRIVE, SUITE A HORSHAM, PA 19044 |
| 2. 1363   SERVICES AGREEMENT DATED FEBRUARY 05, 2007 | | 103149 | ☐ | SOURCE HEALTH ANALYTICS, INC. | ATTN: GENERAL COUNSEL 1010 STONY HILL ROAD, SUITE 200 YARDLEY, PA 19067 |
| 2. 1364   STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 093003 DATED OCTOBER 07, | | 103150 | ☐ | SOUTH ALABAMA MEDICAL SCIENCE FOUNDATION | ATTN: GENERAL COUNSEL 307 N. UNIVERSITY BOULEVARD, CSAB 170 MOBILE, AL 36688 |
| 2. 1365   AMENDMENT #1 TO STUDY SPECIFICATION ORDER #001 EFFECTIVE AS OF JUNE 14, 2004 | | 103153 | ☐ | SOUTH TEXAS APPLIED RESEARCH, INC. | ATTN: GENERAL COUNSEL 3765 SOUTH ALAMEDA, SUITE 422 CORPUS CHRISTI, TX 78411 |
| 2. 1366   STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 012904 DATED MARCH 10, 2004 | | 103152 | ☐ | SOUTH TEXAS APPLIED RESEARCH, INC. | ATTN: GENERAL COUNSEL 3765 SOUTH ALAMEDA, SUITE 422 CORPUS CHRISTI, TX 78411 |

**NAS1313**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1367 SOUTHERN ELEVATOR COMPANY, INC. - AMEND. 4 TO MSA (AH.RA) DATED NOVEMBER 15, 2018 | | 103154 | ☐ | SOUTHERN ELEVATOR COMPANY, INC. | ATTN: GENERAL COUNSEL |
| 2. 1368 MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 15, 2016 | | 103155 | ☐ | SPACEBYTE AG | ATTN: OMAR LAHYANI ZUGERSTRASSE 34 6312 STEINHAUSEN |
| 2. 1369 SERVICE AGREEMENT DATED JULY 19, 2000 | | 103164 | ☐ | SPECIALTY DISPOSAL SERVICES, INC. | ATTN: GENERAL COUNSEL 115 ROUTE 46 WEST BUILDING E-37 & 38 MOUNTAIN LAKES, NJ 07046 |
| 2. 1370 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MARCH 14, 2016 | | 103167 | ☐ | SPEECH IMPROVEMENT COMPANY | ATTN: GENERAL COUNSEL WORLD HEADQUARTERS BOSTON 1614 BEACON STREET BOSTON, MA 02446 |
| 2. 1371 SEARCH FIRM AGREEMENT DATED OCTOBER 24, 2006 | | 103168 | ☐ | SPENKEL CO., INC. DBA ACCOUNTANTS INC. | ATTN: GENERAL COUNSEL 60 LONG RIDGE ROAD #400 STAMFORD, CT 06902 |
| 2. 1372 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 103169 | ☐ | SPHERION ATLANTIC ENTERPRISES, LLC D/B/A SPHERION CORPORATION | ATTN: GENERAL COUNSEL 2050 SPECTRUM BOULEVARD FORT LAUDERDALE 33309 |
| 2. 1373 STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRAIL AGREEMENT DATED 120403 DATED DECEMBER 17, 2003 | | 103170 | ☐ | SPINECARE USA | ATTN: GENERAL COUNSEL 7500 BEECHNUT #150 HOUSTON, US 77074 |
| 2. 1374 MATTINGLY, GREG CSA 01012019 CW2364822 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105922 | ☐ | ST. CHARLES PSYCHIATRIC ASSOCIATES (GREG MATTINGLY M.D.) | ATTN: GENERAL COUNSEL 4801 WELDON SPRING PARKWAY, SUITE 300 ST. CHARLES, US 63304 |
| 2. 1375 MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2016 | | 103175 | ☐ | STA PHARMACEUTICAL HONG KONG LIMITED | ATTN: GENERAL COUNSEL FLAT/ROOM 1303, 13/F BEVERLY HOUSE, 93-107 LOCKHART WANCHAI, HONG KONG SWITZERLAND |

**NAS1314**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1376 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JUNE 14, 2004 | | 103178 | ☐ | STAMFORD THERAPEUTICS CONSORTIUM | NOT AVAILABLE |
| 2. 1377 STATE AND FEDERAL COMMUNICATIONS CSA CW2357239 (LH.RA) DATED OCTOBER 01, 2017 | | 103179 | ☐ | STATE AND FEDERAL COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 80 SUMMIT STREET, SUITE 100 AKRON, US 44308 |
| 2. 1378 STATESIDE ASSOCIATES, INC. CSA CW2358756 (LH.RA) DATED JANUARY 01, 2018 | | 103183 | ☐ | STATESIDE ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1101 WILSON BOULEVARD, 16TH FLOOR ARLINGTON, US 22209 |
| 2. 1379 STERICYCLE AMD 2 TO GENERATOR WASTE MANAGEMENT SERVICES AGREEMENT CW2355719 (KL.JM) DATED JANUARY 01, 2016 | | 103192 | ☐ | STERICYCLE INC. | ATTN: GENERAL COUNSEL |
| 2. 1380 STERICYCLE, INC. - SERVICES AGREEMENT CW2357524 (AB.RA) DATED OCTOBER 11, 2017 | | 103193 | ☐ | STERICYCLE INC. | ATTN: GENERAL COUNSEL 2670 EXECUTIVE DRIVE INDIANAPOLIS, IN 46241 |
| 2. 1381 AMENDMENT 3 TO AGREEMENT FOR DATA TRANSMISSION SERVICES SUPPLIER EFFECTIVE AS OF DECEMBER 31, 1982 | | 103195 | ☐ | STERLING COMMERCE (AMERICA), INC. | ATTN: GENERAL COUNSEL 4600 LAKEHURST COURT DUBLIN, OH 43016-2000 |
| 2. 1382 AMENDMENT NO. 2 TO DATA TRANSMISSION SERVICES SUPPLIER EXECUTED DECEMBER 21, 2004 | | 103199 | ☐ | STERLING COMMERCE (AMERICA), INC. | ATTN: GENERAL COUNSEL 4600 LAKEHURST COURT DUBLIN, OH 43016-2000 |
| 2. 1383 PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 03, 2008 | | 103198 | ☐ | STERLING COMMERCE (AMERICA), INC. | ATTN: GENERAL COUNSEL 4600 LAKEHURST COURT DUBLIN, OH 43016-2000 |
| 2. 1384 STATEMENT OF WORK UNDER PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 04, 1994 | | 103194 | ☐ | STERLING COMMERCE (AMERICA), INC. | ATTN: GENERAL COUNSEL 4600 LAKEHURST COURT DUBLIN, OH 43016-2000 |

**NAS1315**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1385  STERLING MSA CW2355114   (DT.RA) DATED JULY 27, 2017 | | 103200 | ☐ | STERLING INFOSYSTEMS, INC. DBA STERLING TALENT SOLUTIONS | ATTN: GENERAL COUNSEL 1 STATE STREET PLAZA, 24TH FLOOR NEW YORK, NY 10004 |
| 2. 1386  STERLING MSA CW2355114   (DT.RA) DATED JULY 27, 2017 | | 103201 | ☐ | STERLING INFOSYSTEMS, INC. DBA STERLING TALENT SOLUTIONS | ATTN: GENERAL COUNSEL 1 STATE STREET PLAZA, 24TH FLOOR NEW YORK, NY 10004 |
| 2. 1387  STERLING MSA CW2355114   (DT.RA) EXECUTED OCTOBER 31, 2017 | | 103202 | ☐ | STERLING INFOSYSTEMS, INC. DBA STERLING TALENT SOLUTIONS | ATTN: GENERAL COUNSEL 1 STATE STREET PLAZA, 24TH FLOOR NEW YORK, NY 10004 |
| 2. 1388  JAFFE, STEVEN, M.D. - CSA 1JAN19 CW2364652 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105919 | ☐ | STEVEN L JAFFE MD | NOT AVAILABLE |
| 2. 1389  STEVEN TREFF MCSA 120116 CW2322940 (LH.ER) DATED DECEMBER 01, 2016 | | 103205 | ☐ | STEVEN TREFF | ATTN: GENERAL COUNSEL 6245 HARROW TRACE STAMFORD, CT 30092 |
| 2. 1390  STEXCON CSA CW2222 (RA.DT) DATED APRIL 01, 2017 | | 103206 | ☐ | STEXCON BVBA | ATTN: GENERAL COUNSEL MILSESTRAAT 64, 3053 HAASRODE, BELGUIM |
| 2. 1391  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JULY 25, 2016 | | 103209 | ☐ | STIRLING ADVISORS, LLC | ATTN: KAREN STIRLING 49 NORTH FEDERAL HIGHWAY #185 POMPANO BEACH, FL 33062 |
| 2. 1392  STRATEGIC PUBLIC PARTNERS MSA070116 CW2220619 PUBLIC AFFAIRS (AB.LLS) DATED JULY 01, 2016 | | 103222 | ☐ | STRATEGIC PUBLIC PARTNERS, LLC | ATTN: GENERAL COUNSEL 88 EAST BROAD STREET, SUITE 1770 COLUMBUS, OH 43215 |
| 2. 1393  STRATEGIC RESEARCH CSA CW2353005 (AB.RA) DATED APRIL 05, 2017 | | 103223 | ☐ | STRATEGIC RESEARCH INSIGHTS, INC. | ATTN: GENERAL COUNSEL 700 ALEXANDER PARK DRIVE #100 PRINCETON, NJ 08540 |

**NAS1316**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1394  SEARCH FIRM AGREEMENT DATED JULY 10, 2008 | | 103225 | ☐ | STRATEGIC STAFFING SOLUTIONS, L.C. | ATTN: DAVID L. FOX 645 GRISWALD SUITE 2900 DETROIT, MI 48226 |
| 2. 1395  AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED NOVEMBER 02, 2015 | | 103227 | ☐ | SUDLER HENNESSEY, LLC D/B/A COMMAND CENTRAL AND INTRAMED EDUCATIONAL GROUP | ATTN: GENERAL COUNSEL |
| 2. 1396  ADDENDUM TO RECOVERY SERVICES AGREEMENT DATED JULY 01, 1998 | | 103229 | ☐ | SUNGARD AVAILABILITY SERVICES LP | NOT AVAILABLE |
| 2. 1397  CONSENT AGREEMENT EXECUTED JANUARY 13, 2014 | | 103251 | ☐ | SYMBIANCE, INC. | ATTN: SHAWKI SALEM 231 CLARKSVILLE ROAD SUITE #1 PRINCETON JUNCTION, NJ 08550 |
| 2. 1398  LETTER: CONSENT EXECUTED JANUARY 13, 2014 | | 103253 | ☐ | SYMBIANCE, INC. | ATTN: SHAWKI SALEM 231 CLARKSVILLE ROAD, SUITE #1 PRINCETON JUNCTION, NJ 08550 |
| 2. 1399  PSO 1 TO CONTRACT RESEARCH ORGANIZATION AGREEMENT DATED SEPTEMBER 21, 1999 | | 103255 | ☐ | SYMBIANCE, INC. | ATTN: SHAWKI SALEM 231 CLARKSVILLE ROAD, SUITE #1 PRINCETON JUNCTION, NJ 08550 |
| 2. 1400  PSO 2 TO CONTRACT RESEARCH ORGANIZATION AGREEMENT DATED MARCH 07, 2000 | | 103256 | ☐ | SYMBIANCE, INC. | ATTN: SHAWKI SALEM 231 CLARKSVILLE ROAD, SUITE #1 PRINCETON JUNCTION, NJ 08550 |
| 2. 1401  PSO 3 TO CONTRACT RESEARCH ORGANIZATION AGREEMENT DATED JUNE 02, 2000 | | 103257 | ☐ | SYMBIANCE, INC. | ATTN: SHAWKI SALEM 231 CLARKSVILLE ROAD, SUITE #1 PRINCETON JUNCTION, NJ 08550 |
| 2. 1402  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2009 | | 103264 | ☐ | SYSTECH INTERNATIONAL | ATTN: GENERAL COUNSEL 2540 ROUTE 130, SUITE 138 CRANBURY, NJ 08512 |
| 2. 1403  SYSTECH AMENDMENT 2 TO MSA 15MAY16 (NK.EGA) CW2319636 DATED MAY 15, 2016 | | 103265 | ☐ | SYS-TECH SOLUTIONS, INC. | ATTN: GENERAL COUNSEL ONE RESEARCH WAY PRINCETON, NJ 08540 |

**NAS1317**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1404 SYSTEMS MAINTENANCE SERVICES AMD 1 TO MSA LCW00431605 DATED MAY 15, 2016 | | 103266 | ☐ | SYSTEM MAINTENANCE SERVICES, | ATTN: GENERAL COUNSEL |
| 2. 1405 AMENDMENT #1 TO MASTER SERVICES AGREEMENT DATED JULY 01, 2013 | | 103268 | ☐ | SYSTEM MAINTENENCE SERVICES, | ATTN: GENERAL COUNSEL |
| 2. 1406 SYSTEMS MANAGEMENT PLANNING, INC. - MASTER SERVICES AGMT DATED JUNE 07, 2017 | | 103270 | ☐ | SYSTEMS MANAGEMENT PLANNING, INC. | ATTN: GENERAL COUNSEL 1020 JOHN STREET WEST HENRIETTA, NY 14586 |
| 2. 1407 SYSTEMS MANAGEMENT PLANNING, INC. - MSA CW2351519 DATED JUNE 07, 2017 | | 103269 | ☐ | SYSTEMS MANAGEMENT PLANNING, INC. | ATTN: GENERAL COUNSEL 1020 JOHN STREET WEST HENRIETTA, NY 14586 |
| 2. 1408 TM PROTECTION SVCS AMENDMENT MSA CW2354137 (DT.RA) DATED JULY 01, 2017 | | 103271 | ☐ | T&M PROTECTION RESOURCES, LLC | ATTN: GENERAL COUNSEL 230 PARK AVENUE, SUITE 440 NEW YORK, NY 10169 |
| 2. 1409 SEARCH FIRM AGREEMENT DATED JULY 01, 2010 | | 103272 | ☐ | T. M. BURKE AND ASSOCIATES, LLC D/B/A BURKE & ASSOCIATES, LLC | ATTN: GENERAL COUNSEL 1234 SUMMER STREET SUITE 201 STAMFORD, CT 06905 |
| 2. 1410 AMENDMENT #2 TO MOTOR CARRIER SERVICES AGREEMENT DATED JANUARY 01, 2018 | | 103274 | ☐ | T.F. BOYLE TRANSPORTATION, INC. D/B/A BOYLE TRANSPORTATION | 15 RIVERHURST ROAD BILLERICA, MA 01821 |
| 2. 1411 MOTOR CARRIER SERVICES AGREEMENT DATED DECEMBER 01, 2011 | | 103273 | ☐ | T.F. BOYLE TRANSPORTATION, INC. D/B/A BOYLE TRANSPORTATION | 15 RIVERHURST ROAD BILLERICA, MA 01821 |
| 2. 1412 AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 16, 2003 | | 103279 | ☐ | TAMPA MEDICAL GROUP, P.A. | ATTN: GENERAL COUNSEL 4700 N. HABANA AVENUE, SUITE 303 TAMPA, FL 33614 |
| 2. 1413 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED DECEMBER 16, 2003 | | 103280 | ☐ | TAMPA MEDICAL GROUP, P.A. | ATTN: GENERAL COUNSEL 4700 N. HABANA AVENUE, SUITE 303 TAMPA, FL 33614 |

**NAS1318**

**Purdue Pharma L.P.**   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1414 STUDY SPECIFICATION ORDER 001 TO MASTER SITE CLINICAL TRIAL DATED FEBRUARY 24, 2004 | | 103278 | ☐ | TAMPA MEDICAL GROUP, P.A. | ATTN: GENERAL COUNSEL 4700 N. HABANA AVENUE, SUITE 303 TAMPA, FL 33614 |
| 2. 1415 MAINTENANCE & SUPPORT AGREEMENT EXECUTED JANUARY 06, 2004 | | 103284 | ☐ | TDS TOXICOLOGY DATA SYSTEMS LTD. | ATTN: GENERAL COUNSEL HAUPTSTRASSE 56 4127 BIRSFELDEN BASEL |
| 2. 1416 TECHNOLOGY CONCEPTS AND DESIGN, INC. MSA CW2366007 (LH.KM) EFFECTIVE MAY 01, 2019 | 2/28/2022 | 106020 | ☐ | TECHNOLOGY CONCEPTS & DESIGN INC | NOT AVAILABLE |
| 2. 1417 TENEO STRATEGY LLC - AMENDMENT TO SERVICES AGREEMENT (JM.RA) DATED FEBRUARY 05, 2019 | | 103288 | ☐ | TENEO STRATEGY, LLC | ATTN: GENERAL COUNSEL 280 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10017 |
| 2. 1418 TENEO STRATEGY LLC - DAVIS POLK - PURDUE CSA CW2367893 (RA) EFFECTIVE JULY 01, 2019 | 6/30/2020 | 105913 | ☐ | TENEO STRATEGY, LLC | ATTN: GENERAL COUNSEL 280 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10017 |
| 2. 1419 ADDENDUM TO CLINICAL STUDY AGREEMENT EFFECTIVE AS OF OCTOBER 30, 1996 | | 103292 | ☐ | TERESA LONG MD | NOT AVAILABLE |
| 2. 1420 ADDENDUM TO CLINICAL STUDY AGREEMENT EFFECTIVE AS OF OCTOBER 30, 1996 | | 103294 | ☐ | TERESA LONG MD | NOT AVAILABLE |
| 2. 1421 CLINICAL STUDY AGREEMENT DATED OCTOBER 30, 1996 | | 103291 | ☐ | TERESA LONG MD | NOT AVAILABLE |
| 2. 1422 CLINICAL STUDY AGREEMENT EFFECTIVE AS OF OCTOBER 30, 1996 | | 103293 | ☐ | TERESA LONG MD | NOT AVAILABLE |
| 2. 1423 AMENDMENT #1 TO PHARMACOVIGILANCE AGREEMENT DATED FEBRUARY 29, 2016 | | 103297 | ☐ | TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM 201 TRESSER BLVD. STAMFORD, CT 06901 |

**NAS1319**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1424  PHARMACOVIGILANCE AGREEMENT EFFECTIVE AS OF DECEMBER 18, 2014 | | 103298 | ☐ | TEVA BRANDED PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD HORSHAM, PA 19044 |
| 2. 1425  SUPPLY AGREEMENT DATED NOVEMBER 21, 2016 (LAST AMENDED FEBRUARY 2018) AMONG TEVA CANADA AND TEVA PHARMACEUTICAL INDUSTRIES LIMITED AND THE COMPANY | | 106294 | ☐ | TEVA CANADA | NOT AVAILABLE |
| 2. 1426  SUPPLY AGREEMENT DATED NOVEMBER 21, 2016 (LAST AMENDED FEBRUARY 2018) AMONG TEVA CANADA AND TEVA PHARMACEUTICAL INDUSTRIES LIMITED AND THE COMPANY | | 106295 | ☐ | TEVA PHARMACEUTICAL INDUSTRIES LIMITED | ATTN: GENERAL COUNSEL 16 BASEL ST. PETACH TIKVA, ISRAEL 4951008 |
| 2. 1427  AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED AUGUST 02, 2016 | | 103301 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 1428  DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN TEVA PHARMACEUTICALS USA, INC. AND PURDUE PHARMA L.P.., DATED DECEMBER 18, 2014, AS AMENDED BY AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED AUGUST 2, 2016 | | 106297 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 1429  DISTRIBUTION AND SUPPLY AGREEMENT BY AND BETWEEN TEVA PHARMACEUTICALS USA, INC. AND PURDUE PHARMA L.P.., DATED DECEMBER 18, 2014, AS AMENDED BY AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED AUGUST 2, 2016 | | 106298 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |

**NAS1320**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1430  DISTRIBUTION AND SUPPLY AGREEMENT DATED DECEMBER 18, 2014 | | 103305 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 1431  QUALITY AGREEMENT DATED DECEMBER 18, 2014 | | 103306 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 1432  TEVA PHARMACEUTICALS USA, INC.- QUALITY AGREEMENT DATED DECEMBER 13, 2016 | | 103304 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 1433  CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF SEPTEMBER 23, 2004 | | 103309 | ☐ | TEXAS RESEARCH CENTER, LLP | ATTN: GENERAL COUNSEL 16659 SOUTHWEST FREEWAY, SUITE 235 SUGAR LAND, TX 77479 |
| 2. 1434  AMENDMENT #1 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 28, 2014 | | 103310 | ☐ | TGAS ADVISORS, LLC | ATTN: GENERAL COUNSEL 301 EAST GERMANTOWN PIKE EAST NORRITON, PA 19401 |
| 2. 1435  MASTER SERVICES AGREEMENT DATED JANUARY 28, 2014 | | 103312 | ☐ | TGAS ADVISORS, LLC | ATTN: GENERAL COUNSEL 301 EAST GERMANTOWN PIKE EAST NORRITON, PA 19401 |
| 2. 1436  TGAS ADVISORS LLC SOW CW2364137 2019 RENEWAL (SD.RA) DATED JANUARY 01, 2019 | | 103311 | ☐ | TGAS ADVISORS, LLC | ATTN: GENERAL COUNSEL 301 EAST GERMANTOWN PIKE EAST NORRITON, PA 19401 |
| 2. 1437  TGAS ADVISORS LLC SOW CW2364137 2019 RENEWAL (SD.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 106195 | ☐ | TGAS ADVISORS, LLC | ATTN: GENERAL COUNSEL 301 EAST GERMANTOWN PIKE EAST NORRITON, PA 19401 |
| 2. 1438  EXECUTIVE SEARCH AGREEMENT DATED JULY 15, 2013 | | 103317 | ☐ | THE ALDRICH GROUP, INC. | ATTN: GENERAL COUNSEL 43 SHERMAN HILL ROAD WOODBURY, CT 06798 |

**NAS1321**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1439 EXECUTIVE SEARCH AGREEMENT DATED MAY 10, 2010 | | 103313 | ☐ | THE ALDRICH GROUP, INC. | ATTN: GENERAL COUNSEL 43 SHERMAN HILL ROAD WOODBURY, CT 06798 |
| 2. 1440 EXECUTIVE SEARCH AGREEMENT EFFECTIVE AS OF APRIL 25, 2011 | | 103315 | ☐ | THE ALDRICH GROUP, INC. | ATTN: GENERAL COUNSEL 43 SHERMAN HILL ROAD SUITE 104D WOODBURY, CT 06798 |
| 2. 1441 EXECUTIVE SEARCH AGREEMENT EFFECTIVE AS OF JANUARY 06, 2011 | | 103314 | ☐ | THE ALDRICH GROUP, INC. | ATTN: GENERAL COUNSEL 43 SHERMAN HILL ROAD SUITE 104D WOODBURY, CT 06798 |
| 2. 1442 EXECUTIVE SEARCH AGREEMENT EFFECTIVE AS OF JUNE 20, 2011 | | 103316 | ☐ | THE ALDRICH GROUP, INC. | ATTN: GENERAL COUNSEL 43 SHERMAN HILL ROAD SUITE 104D WOODBURY, CT 06798 |
| 2. 1443 AMERICAN ASSOCIATION OF POISON CONTROL CENTERS (AAPPC) CSA CW2367204 (LH.RA) EFFECTIVE JUNE 12, 2019 | 6/30/2021 | 106005 | ☐ | THE AMERICAN ASSN OF POISON | NOT AVAILABLE |
| 2. 1444 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2003 | | 103319 | ☐ | THE ARTHRITIS CLINIC OF NORTHERN VIRGINIA, PC | NOT AVAILABLE |
| 2. 1445 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF NOVEMBER 21, 2002 | | 103320 | ☐ | THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | ATTN: KATHY PYKE, SENIOR CONTRACTS OFFICER 1215 WELCH ROAD #B STANFORD, CA 94305-5401 |
| 2. 1446 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF NOVEMBER 21, 2002 | | 103322 | ☐ | THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | ATTN: KATHY PYKE, SENIOR CONTRACTS OFFICER STANFORD UNIVERSITY 1215 WELCH ROAD, #B STANFORD, CA 94305-5401 |

**NAS1322**

**Purdue Pharma L.P.**                                                                                     **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1447 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF NOVEMBER 21, 2002 | | 103323 | ☐ | THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | ATTN: GENERAL COUNSEL STANFORD UNIVERSITY 1215 WELCH ROAD, #B STANFORD, CA 94305-5401 |
| 2. 1448 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF OCTOBER 17, 2002 | | 103321 | ☐ | THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY | ATTN: KATHY PYKE, SENIOR CONTRACTS OFFICER STANFORD UNIVERSITY 1215 WELCH ROAD, #B STANFORD, CA 94305-5401 |
| 2. 1449 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JUNE 14, 2004 | | 103324 | ☐ | THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA FOR THE UNIVERSITY OF ALABAMA AT BIRMINGHAM | ATTN: GENERAL COUNSEL 701 20TH STREET SOUTH, 1170 ADMINISTRATION BUILDING BIRMINGHAM, AL 35294 |
| 2. 1450 STUDY SPECIFICATION ORDER 001 DATED MARCH 22, 2004 | | 103325 | ☐ | THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA FOR THE UNIVERSITY OF BIRMINGHAM | ATTN: GENERAL COUNSEL 701 20TH STREET SOUTH, 1170 ADMINISTRATION BUILDING BIRMINGHAM, AL 35294 |
| 2. 1451 STUDY SPECIFICATION ORDER 002 DATED MARCH 22, 2004 | | 103326 | ☐ | THE BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA FOR THE UNIVERSITY OF BIRMINGHAM | ATTN: GENERAL COUNSEL 701 20TH STREET SOUTH, 1170 ADMINISTRATION BUILDING BIRMINGHAM, AL 35294 |
| 2. 1452 INVESTIGATOR-INITIATED CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JULY 21, 2016 | | 103327 | ☐ | THE BRIGHAM AND WOMEN'S HOSPITAL, INC. | ATTN: KRISTIN COLLINS, JD PARTNERS CLINICAL TRIALS OFFICE 399 REVOLUTION DRIVE, SUITE 760 SOMERVILLE, MA 02145 |
| 2. 1453 MASTER SERVICES AGREEMENT - STATISTICAL AND DATA ANALYSIS SERVICES DATED FEBRUARY 14, 2017 | | 103328 | ☐ | THE CENTER FOR INFORMATION & STUDY ON CLINICAL RESEARCH PARTICIPATION | ATTN: GENERAL COUNSEL ONE LIBERTY SQUARE SUITE 510 BOSTON, MA 02109 |
| 2. 1454 STATEMENT OF WORK UNDER MASTER SERVICE AGREEMENT - CLINICAL TRIAL RESULTS SUMMARIES DATED FEBRUARY 14, 2017 | | 103329 | ☐ | THE CENTER FOR INFORMATION & STUDY ON CLINICAL RESEARCH PARTICIPATION | ATTN: GENERAL COUNSEL ONE LIBERTY SQUARE SUITE 510 BOSTON, MA 02109 |

**NAS1323**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1455 ADDENDUM TO THE STANDARD TERMS AND CONDITIONS TO THE STANDARD SERVICE AGREEMENT DATED SEPTEMBER 01, 2003 | | 103335 | ☐ | THE DIALOG CORPORATION | NOT AVAILABLE |
| 2. 1456 AMENDMENT NO. 1 TO INTERNET USER AGREEMENT DATED APRIL 01, 2002 | | 103339 | ☐ | THE ECONOMIST INTELLIGENCE UNIT N.A INCORPORATED | ATTN: GENERAL COUNSEL THE ECONOMIST BUILDING 111 WEST 57TH STREET NEW YORK, NY 10019 |
| 2. 1457 AMENDMENT #3 TO MASTER SERVICE AGREEMENT DATED JULY 01, 2018 | | 103341 | ☐ | THE EMERSON GROUP | ATTN: GENERAL COUNSEL 407 EAST LANCASTER AVE WAYNE, PA 19087 |
| 2. 1458 NATIONAL SALES & MARKETING AGREEMENT DATED JANUARY 1, 2015 (LAST AMENDED JUNE 1, 2018) AMONG PURDUE PHARMA L.P., AVRIO HEALTH L.P. AND THE EMERSON GROUP. | | 105762 | ☐ | THE EMERSON GROUP | ATTN: GENERAL COUNSEL 407 EAST LANCASTER AVE WAYNE, PA 19087 |
| 2. 1459 MASTER SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 23, 2016 | | 103343 | ☐ | THE EXEQUOR GROUP, LLC | ATTN: CHRISTOPHER LISANTI 109 RIVERSIDE DRIVE FOURTH FLOOR NEW YORK, NY 10024 |
| 2. 1460 AMENDMENT #1: TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 06, 2003 | | 103344 | ☐ | THE HENRY M. JACKSON FOUNDATION FOR THE ADVANCEMENT OF MILITARY MEDICINE, INC. | NOT AVAILABLE |
| 2. 1461 SEARCH FIRM AGREEMENT EFFECTIVE AS OF OCTOBER 04, 2007 | | 103347 | ☐ | THE LYLE GROUP, LLC | ATTN: GENERAL COUNSEL 555 MAIN STREET MANCHESTER, CT 06040 |
| 2. 1462 THE MEDICAL AFFAIRS COMPANY (TMAC) CSA CW2363449 (LH.RA) DATED AUGUST 24, 2018 | | 103349 | ☐ | THE MEDICAL AFFAIRS COMPANY LLC | ATTN: GENERAL COUNSEL 125 TOWNPARK DRIVE, #450 KENNESAW, GA 30144 |
| 2. 1463 STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED 01-05-04 DATED FEBRUARY 23, 2004 | | 103350 | ☐ | THE MONROE MEDICAL FOUNDATION FOR RESEARCH AND EDUCATION, INC. | ATTN: GENERAL COUNSEL 411 22ND AVENUE MONROE, WI 53566 |

**NAS1324**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1464 AMENDMENT #1 TO SERVICE AGREEMENT EFFECTIVE AS OF MAY 24, 2011 | | 103351 | ☐ | THE NETWORK, INC. | ATTN: GENERAL COUNSEL |
| 2. 1465 AMENDMENT #2 TO SERVICE AGREEMENT DATED DECEMBER 16, 2009 | | 103352 | ☐ | THE NETWORK, INC. | ATTN: GENERAL COUNSEL |
| 2. 1466 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF APRIL 15, 2016 | | 103357 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1467 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 30, 2015 | | 103356 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1468 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 103358 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1469 AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JUNE 01, 2018 | | 103359 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1470 AUTHORIZED DISTRIBUTOR AGREEMENT  EFFECTIVE AS OF JULY 01, 2012 | | 103354 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: HAL HARRISON 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1471 DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 103353 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: HAL HARRISON 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1472 LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 103355 | ☐ | THE NORTH CAROLINA MUTUAL WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 1473 STUDY SPECIFICATION ORDER 005 TO MASTER CLINICAL TRIAL AGREEMENT DATED 07-AUG-01 DATED AUGUST 07, 2001 | | 103363 | ☐ | THE OHIO STATE UNIVERSITY RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL 1960 KENNY ROAD COLUMBUS, OH 43210 |

NAS1325

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1474 STUDY SPECIFICATION ORDER 011 TO MASTER CLINICAL TRIAL AGREEMENT DATED 07-AUG-01 DATED AUGUST 07, 2001 | | 103364 | ☐ | THE OHIO STATE UNIVERSITY RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL 1960 KENNY ROAD COLUMBUS, OH 43210 |
| 2. 1475 STUDY SPECIFICATION ORDER 1 TO MASTER CLINICAL TRIAL AGREEMENT DATED 07-AUG-01 DATED AUGUST 07, 2001 | | 103362 | ☐ | THE OHIO STATE UNIVERSITY RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL 1960 KENNY ROAD COLUMBUS, OH 43210 |
| 2. 1476 SEARCH FIRM AGREEMENT DATED JUNE 18, 2013 | | 103369 | ☐ | THE PETERSAN GROUP | ATTN: GENERAL COUNSEL 1450 BROADWAY SUITE 1501 NEW YORK, NY 10018 |
| 2. 1477 AMENDMENT #1 TO STUDY SPECIFICATION ORDER EFFECTIVE AS OF SEPTEMBER 09, 2003 | | 103371 | ☐ | THE PHYSICIANS CLINIC OF SPOKANE | ATTN: GENERAL COUNSEL |
| 2. 1478 STUDY SPECIFICATION ORDER 001 DATED SEPTEMBER 09, 2003 | | 103370 | ☐ | THE PHYSICIANS CLINIC OF SPOKANE | ATTN: GENERAL COUNSEL 820 S. MCCLELLAN ST. SUITE #200 SPOKANE, WA 99204 |
| 2. 1479 STUDY SPECIFICATION ORDER 001 DATED FEBRUARY 03, 2004 | | 103379 | ☐ | THE REGENTS OF THE UNIVERSITY OF CALIFORNIA | ATTN: GENERAL COUNSEL UNIVERSITY OF CALIFORNIA, DAVIS, SHIELDS AVENUE DAVIS, CA 95616 |
| 2. 1480 LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 26, 2002 | | 103380 | ☐ | THE REGENTS OF THE UNIVERSITY OF MICHIGAN | ATTN: GENERAL COUNSEL 3003 S. STATE STREET ANN ARBOR, MI 48109-1274 |
| 2. 1481 STUDY SPECIFICATION ORDER 004 DATED OCTOBER 09, 2003 | | 103381 | ☐ | THE REGENTS OF THE UNIVERSITY OF MICHIGAN | ATTN: GENERAL COUNSEL 3003 S. STATE STREET, ROOM 1070 ANN ARBOR, MI 48109 |
| 2. 1482 EXECUTIVE SEARCH AGREEMENT EFFECTIVE AS OF NOVEMBER 19, 2009 | | 103386 | ☐ | THE STEVENSON GROUP | ATTN: GENERAL COUNSEL 1530 PLAISADE AVENUE FORT LEE, NJ 07024 |

**NAS1326**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1483 MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2012 | | 103389 | ☐ | THE WERCS, LTD. | ATTN: GENERAL COUNSEL PURDUE: 6 CEDARBROOK DRIVE CRANBURY, NJ 08512 23 BRITISH AMERICAN BOULEVARD LATHAM, NY 12110 |
| 2. 1484 THE WILLIS GROUP, LLC CSA CW2358793 (LH.RA) DATED JANUARY 01, 2018 | | 103393 | ☐ | THE WILLIS GROUP, LLC | ATTN: GENERAL COUNSEL 4 THE GREEN DOVER, DE 19901 |
| 2. 1485 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 103394 | ☐ | THE YAISER GROUP | ATTN: GENERAL COUNSEL 118 NEW YORK AVENUE PORT PLEASANT BEACH 08742 |
| 2. 1486 THE ZITTER GROUP AMEND MSA CW2362710 (SD.RA) DATED AUGUST 15, 2018 | | 103395 | ☐ | THE ZITTER GROUP | ATTN: GENERAL COUNSEL |
| 2. 1487 THERESA MALLICK-SEARLE MCSA 07012016 CW2221502 NP TTT (AA.PMM) DATED JULY 01, 2016 | | 103396 | ☐ | THERESA MALLICK-SEARLE, MSN, RN-BC, APN-BC | ATTN: GENERAL COUNSEL 3001 MADISON WAY ANCHORAGE, AL 99508 |
| 2. 1488 THERMO ELECTRON MASTER SERVICE AGREEMENT - CW2359798 - (AH.JM) DATED FEBRUARY 01, 2018 | | 103397 | ☐ | THERMO ELECTRON NORTH AMERICA LLC | ATTN: GENERAL COUNSEL |
| 2. 1489 THOMAS PAPPAS ASSOCIATES CSA CW2356895 (LH.RA) DATED NOVEMBER 01, 2017 | | 103400 | ☐ | THOMAS P. PAPPAS & ASSOCIATES | ATTN: GENERAL COUNSEL 66 EAST LYNN STREET, SUITE 2000 COLUMBUS, OH 43215 |
| 2. 1490 ROTH MCSA 06012016 (AA.LLS) DATED JUNE 01, 2016 | | 103404 | ☐ | THOMAS ROTH, PHD | ATTN: GENERAL COUNSEL 2799 WEST GRAND BLVD, CFP-3 DETROIT, MI 48202 |
| 2. 1491 SCAMMELL MCSA 06012016 LCW00431715 (AA.LLS) DATED JUNE 01, 2016 | | 103405 | ☐ | THOMAS SCAMMELL, MD | ATTN: GENERAL COUNSEL 79 MAYO ROAD WELLESLEY, MA 02482 |

**NAS1327**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1492 AMENDMENT NO. 3 TO MASTER PROFESSIONAL SERVICES AGREEMENT DATED APRIL 30, 2015 | | 103410 | ☐ | TIGERNET SYSTEMS INC D/B/A THE TNS GROUP | NOT AVAILABLE |
| 2. 1493 SERVICE AGREEMENT EFFECTIVE AS OF FEBRUARY 04, 2015 | | 103411 | ☐ | TIME WARNER CABLE | ATTN: GENERAL COUNSEL 2460 PERIMETER PERK DRIVE CHARLOTTE, NC 27660 |
| 2. 1494 TERMS AND CONDITIONS, SERVICE ORDER, SERVICE AGREEMENT EXECUTED SEPTEMBER 05, 2014 | | 103412 | ☐ | TIME WARNER CABLE | ATTN: GENERAL COUNSEL 2460 PERIMETER PERK DRIVE CHARLOTTE, NC 27660 |
| 2. 1495 ORDER FORM FOR INTRASTATE ETHERNET DATED SEPTEMBER 11, 2014 | | 103413 | ☐ | TIME WARNER CABLE BUSINESS CLASS | ATTN: GENERAL COUNSEL 2460 PERIMETER PARK DR CHARLOTTE, NC 27660 |
| 2. 1496 TIMOTHY ROEHRS PHD CW2355593 18JULY17 CSA (KP.RA) DATED AUGUST 01, 2017 | | 103414 | ☐ | TIMOTHY A. ROEHRS, PH.D. | ATTN: GENERAL COUNSEL 33080 VENETIAN POINT DRIVE HARRISON TOWNSHIP, MI 48045 |
| 2. 1497 WIGAL, TIMOTHY CSA 01012019 CW2364672 (SS.SD) DATED JANUARY 01, 2019 | | 103416 | ☐ | TIMOTHY WIGAL, PHD | ATTN: GENERAL COUNSEL 4 VIRGIL COURT IRVINE, CA 92614 |
| 2. 1498 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2017 | | 103417 | ☐ | TMIT CONSULTING, LLC | ATTN: GENERAL COUNSEL 363 SADDLEBROOK LANE NAPLES, FL 34110 |
| 2. 1499 TOTAL LEADERSHIP CSA CW2221464 ACCELERATOR PROGRAM (LH.JK) DATED JUNE 20, 2016 | | 103433 | ☐ | TOTAL LEADERSHIP, INC. | ATTN: GENERAL COUNSEL 417 SYCAMORE AVENUE MERION, PA 19066 |
| 2. 1500 TOXICOLOGY SOLUTIONS, INC. MSA CW2354330 (LH.RA) DATED MAY 22, 2017 | | 103435 | ☐ | TOXICOLOGY SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3525 DEL MAR HEIGHTS ROAD, #336 SAN DIEGO, CA 92130 |
| 2. 1501 ENTERPRISE AGREEMENT EFFECTIVE AS OF SEPTEMBER 29, 2014 | | 103436 | ☐ | TRACELINK INC | ATTN: GENERAL COUNSEL 200 QUANNAPOWITT PARKWAY WAKEFIELD, MA 01880 |

NAS1328

**Purdue Pharma L.P.**           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1502 FIRST AMENDMENT IN LEGAL INTEREST/ JOINT DEFENSE AGREEMENT DATED FEBRUARY 14, 2013 | | 103444 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVS. SUITE 110 PT. RICHMOND, CA 94804 |
| 2. 1503 MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 08, 2017 | | 103452 | ☐ | TRANSCRIP PARTNERS, LLP | ATTN: GENERAL COUNSEL SPRING PARK HOUSE, BASING VIEW BASINGSTOKE, HAMPSHIRE RG21 4HG |
| 2. 1504 TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC. - AMENDMENT 4 TO MCSA CW2357024 ALLOWING POS (LH.RA) DATED OCTOBER 01, 2017 | | 103453 | ☐ | TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL |
| 2. 1505 TRIALCARD INC. SOW COPAY PROGRAM CW2367194(SD.RA) EFFECTIVE JUNE 07, 2019 | 6/9/2020 | 106181 | ☐ | TRIALCARD INCORPORATED | ATTN: GENERAL COUNSEL 6501 WESTON PARKWAY, SUITE 370 CARY, NC 27513 |
| 2. 1506 TRIALCARD INCORPORATED - CHANGE ORDER NUMBER 1 TO SOW CW2367527 (SD.RA) EFFECTIVE JUNE 10, 2019 | 6/9/2020 | 106170 | ☐ | TRIALCARD INCORPORATED | ATTN: GENERAL COUNSEL 6501 WESTON PARKWAY, SUITE 370 CARY, NC 27513 |
| 2. 1507 TRIALCARD INCORPORATED - MSA CW2366881 (SD.RA) EFFECTIVE MAY 17, 2019 | 5/16/2023 | 106153 | ☐ | TRIALCARD INCORPORATED | ATTN: GENERAL COUNSEL 6501 WESTON PARKWAY, SUITE 370 CARY, NC 27513 |
| 2. 1508 STUDY SPECIFICATION ORDER 001 DATED AUGUST 27, 2004 | | 103457 | ☐ | TRIANGLE ORTHOPEDIC ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 120 WILLIAM PENN PLAZA DURHAM, NC 27704 |
| 2. 1509 STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED APRIL 29, 2005 | | 103458 | ☐ | TRIANGLE ORTHOPEDIC ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 120 WILLIAM PENN PLAZA DURHAM, NC 27704 |
| 2. 1510 AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 27, 2004 | | 103460 | ☐ | TRIANGLE ORTHOPEDIC ASSOCIATES, P.A. | ATTN: GENERAL COUNSEL 120 WILLIAM PENN PLAZA DURHAM, NC 27704 |

**NAS1329**

**Purdue Pharma L.P.**                                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1511  AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 27, 2004 | | 103459 | ☐ | TRIANGLE ORTHOPEDIC ASSOCIATES, P.A. | ATTN: GENERAL COUNSEL 120 WILLIAM PENN PLAZA DURHAM, NC 27704 |
| 2. 1512  PROJECT AGREEMENT DATED MARCH 21, 2002 | | 103467 | ☐ | TRIGENESIS COMMUNICATIONS | ATTN: GENERAL COUNSEL 26 MAIN STREET CHATHAM, NJ 07928 |
| 2. 1513  STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED SEPTEMBER 05, 2003 | | 103468 | ☐ | TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA | ATTN: GENERAL COUNSEL 3451 WALNUT STREET, RM 221 PHILADELPHIA, PA 19104 |
| 2. 1514  TRUVEN HEALTH ANALYTICS SOW 09012016 CW2318150 MANUSCRIPTS (LH.ER) DATED SEPTEMBER 19, 2016 | | 103470 | ☐ | TRUVEN HEALTH ANALYTICS INC. | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1515  TRUVEN HEALTH (FORMERLY HBE) AMD MSA CW2360782 NAME CHANGE (RH.RA) DATED JANUARY 01, 2018 | | 103473 | ☐ | TRUVEN HEALTH ANALYTICS LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1516  SERVICE AGREEMENT DATED MAY 31, 2001 | | 100002 | ☐ | TRW INC. | ATTN: GENERAL COUNSEL 12011 SUNSET HILLS ROAD RESTON, VA 20190-3285 |
| 2. 1517  ADMINISTRATIVE SERVICES ONLY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2014 | | 103475 | ☐ | TUFTS BENEFIT ADMINISTRATORS, INC. | NOT AVAILABLE |
| 2. 1518  CONSTRUCTION SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 07, 2015 | | 103478 | ☐ | TURNER CONSTRUCTION COMPANY | ATTN: GENERAL COUNSEL 50 WATERVIEW DRIVE SHELTON, CT 06484 |
| 2. 1519  PROJECT AGREEMENT DATED MARCH 07, 2003 | | 103480 | ☐ | TVG, INC. | ATTN: GENERAL COUNSEL 520 VIRGINIA DRIVE FORT WASHINGTON, PA 19034 |
| 2. 1520  SEARCH FIRM AGREEMENT DATED JANUARY 30, 2009 | | 103483 | ☐ | TWIN IMAGE RECRUITING, LLC | ATTN: GENERAL COUNSEL PO BOX 1053 MOUNT LAUREL, NJ 08054 |

**NAS1330**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1521  MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF MARCH 30, 2015 | | 103485 | ☐ | UIC OFFICE OF RESEARCH SERVICES | C/O MITRA DUTTA, PH.D., VICE CHANCELLOR FOR RESEARCH ATTN: WALTER K. KNORR, COMPTROLLER 1737 W. POLK STREET, 304AOB BUILDING CHICAGO, IL 60612-7227 |
| 2. 1522  MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 06, 2005 | | 103487 | ☐ | UNISYS CORPORATION | ATTN: GENERAL COUNSEL UNISYS WAY BLUE BELL, PA 19424 |
| 2. 1523  SUPPLEMENTAL SCHEDULE ORDER DATED MAY 30, 2000 | | 103486 | ☐ | UNISYS CORPORATION | ATTN: GENERAL COUNSEL UNISYS WAY BLUE BELL, PA 19424 |
| 2. 1524  CONNECTOR MODEL SERVICE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2015 | | 103489 | ☐ | UNITED HEALTHCARE INSURANCE COMPANY | ATTN: PRESIDENT 9800 HEALTH CARE LANE MINNETONKA, MN 55343 |
| 2. 1525  ADMINISTRATIVE SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2011 | | 103490 | ☐ | UNITED HEALTHCARE SERVICES INC | ATTN: GENERAL COUNSEL 185 ASYLUM STREET HARTFORD, CT 06103-3408 |
| 2. 1526  AMENDMENT TO ADMINISTRATIVE SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2012 | | 103491 | ☐ | UNITED HEALTHCARE SERVICES, INC. | ATTN: GENERAL COUNSEL |
| 2. 1527  AMENDMENT #4 TO SERVICES AGREEMENT DATED JANUARY 01, 2008 | | 103493 | ☐ | UNITED SERVICES OF AMERICA | ATTN: GENERAL COUNSEL |
| 2. 1528  MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 13, 2016 | | 103495 | ☐ | UNIVERSAL GRAPHICS | ATTN: GENERAL COUNSEL 375 MORGAN LANE, SUITE 203 WEST HAVEN, CT 06516 |
| 2. 1529  STUDY SPECIFICATION ORDER 002 DATED OCTOBER 03, 2003 | | 103496 | ☐ | UNIVERSITY CLINCIAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |

**NAS1331**

**Purdue Pharma L.P.**                                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1530 STUDY SPECIFICATION ORDER 003 DATED JANUARY 21, 2004 | | 103497 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 N. SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1531 STUDY SPECIFICATION ORDER 001 TO MASTER CLINICAL TRIAL AGREEMENT DATED 10-FEB-04 DATED FEBRUARY 10, 2004 | | 103501 | ☐ | UNIVERSITY CLINICAL RESEACH INC. | ATTN: GENERAL COUNSEL 1150 NORTH UNIVERSITY DRIVE PEMBROKE PINES, FL 33024 |
| 2. 1532 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF OCTOBER 03, 2003 | | 103508 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1533 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 103510 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1534 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 07, 2002 | | 103509 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1535 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 07, 2003 | | 103512 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1536 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #002 TO MASTER SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 19, 2005 | | 103516 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 1537 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #003 TO MASTER CLINIC TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 103517 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 860 PEACHWOOD DRIVE DELAND, FL 32720 |
| 2. 1538 STUDY SPECIFICATION ORDER 004 DATED MAY 11, 2005 | | 103519 | ☐ | UNIVERSITY CLINICAL RESEARCH DELAND, INC. | ATTN: GENERAL COUNSEL 860 PEACHWOOD DRIVE DELAND, FL 32720 |

**NAS1332**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1539 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 10, 2004 | | 103521 | ☐ | UNIVERSITY CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1150 NORTH UNIVERSITY DRIVE PEMBROKE PINES, FL 33024 |
| 2. 1540 | AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED FEBRUARY 10, 2004 | | 103526 | ☐ | UNIVERSITY CLINICAL RESEARCH, INC. | ATTN: GENERAL COUNSEL 1150 NORTH UNIVERSITY DRIVE PEMBROKE PINES, FL 33024 |
| 2. 1541 | ADDENDUM TO CLINICAL STUDY AGREEMENT EFFECTIVE AS OF OCTOBER 30, 1996 | | 103533 | ☐ | UNIVERSITY OF KANSAS MEDICAL CENTER RESEARCH INSTITUTE, INC | ATTN: GENERAL COUNSEL 3901 RAINBOW BOULEVARD KANSAS CITY, KS 66160 |
| 2. 1542 | ADDENDUM TO CLINICAL STUDY AGREEMENT EFFECTIVE AS OF OCTOBER 30, 1996 | | 103540 | ☐ | UNIVERSITY OF KANSAS MEDICAL CENTER RESEARCH INSTITUTE, INC. | ATTN: GENERAL COUNSEL 3901 RAINBOW BOULEVARD KANSAS CITY, KS 66160 |
| 2. 1543 | CLINICAL STUDY AGREEMENT DATED OCTOBER 30, 1996 | | 103538 | ☐ | UNIVERSITY OF KANSAS MEDICAL CENTER RESEARCH INSTITUTE, INC. | ATTN: GENERAL COUNSEL 3901 RAINBOW BOULEVARD KANSAS CITY, KS 66160 |
| 2. 1544 | CLINICAL STUDY AGREEMENT DATED OCTOBER 30, 1996 | | 103539 | ☐ | UNIVERSITY OF KANSAS MEDICAL CENTER RESEARCH INSTITUTE, INC. | ATTN: GENERAL COUNSEL 3901 RAINBOW BOULEVARD KANSAS CITY, KS 66160 |
| 2. 1545 | STUDY SPECIFICATION ORDER 001 DATED FEBRUARY 09, 2004 | | 103542 | ☐ | UNIVERSITY OF KENTUCKY RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL 740 S. LIMESTONE STREET, J402, KY CLINIC LEXINGTON, KY 40536 |
| 2. 1546 | STUDY SPECIFICATION ORDER 002 DATED MARCH 04, 2004 | | 103543 | ☐ | UNIVERSITY OF KENTUCKY RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL 109 KINKEAD HALL LEXINGTON, KY 40506 |
| 2. 1547 | AMENDMENT #1 TO MASTER CLINICAL TRIAL AGREEMENT DATED MARCH 03, 2004 | | 103545 | ☐ | UNIVERSITY OF LOUISVILLE RESEARCH FOUNDATION, INC. | ATTN: GENERAL COUNSEL LOUISVILLE, KY |
| 2. 1548 | STUDY SPECIFICATION ORDER 001 DATED MARCH 18, 2004 | | 103544 | ☐ | UNIVERSITY OF LOUISVILLE RESEARCH FOUNDATION, INC. | ATTN: GENERAL COUNSEL MEDICENTER ONE, SUITE 200, 501 EAST BROADWAY LOUISVILLE, KY 40202 |

**NAS1333**

**Purdue Pharma L.P.**                                                    Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1549 STUDY SPECIFICATION ORDER 001 DATED NOVEMBER 17, 2004 | | 103548 | ☐ | UNIVERSITY OF MEDICINE AND DENTISTRY OF NEW JERSEY-SCHOOL OF OSTEOPATHIC MEDICINE | ATTN: GENERAL COUNSEL 40 EAST LAUREL ROAD, SUITE 1040 STRATFORD, NJ 08084 |
| 2. 1550 STUDY SPECIFICATION ORDER 001 DATED SEPTEMBER 24, 2003 | | 103549 | ☐ | UNIVERSITY OF MIAMI | ATTN: GENERAL COUNSEL P.O. BOX 016960 MIAMI, FL 33101 |
| 2. 1551 CLINICAL TRIAL AGREEMENT DATED NOVEMBER 06, 2002 | | 103553 | ☐ | UNIVERSITY OF PITTSBURGH | ATTN: DIRECTOR OFFICE OF RESEARCH 350 THACKERAY HALL PITTSBURGH, PA 15620 |
| 2. 1552 CLINICAL TRIAL AGREEMENT DATED AUGUST 21, 2003 | | 103555 | ☐ | UNIVERSITY OF SASKATCHEWAN | ATTN: CONTRACTS OFFICER ROOM 1607 110 GYMNASIUM PLACE, BOX 5000 RPO UNIVERSITY SASKATOON, SK S7N 438 CANADA |
| 2. 1553 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF AUGUST 21, 2003 | | 103557 | ☐ | UNIVERSITY OF SASKATCHEWAN | ATTN: GENERAL COUNSEL ROOM 1607, 110 GYMNASIUM PLACE BOX 5000 RPO UNIVERSITY SASKATOON, SK, SASKATOON, CAN SK S7N 4J8 CANADA |
| 2. 1554 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF AUGUST 21, 2003 | | 103558 | ☐ | UNIVERSITY OF SASKATCHEWAN | ATTN: GENERAL COUNSEL ROOM 1607, 110 GYMNASIUM PLACE BOX 5000 RPO UNIVERSITY SASKATOON, SK, SASKATOON, CAN SK S7N 4J8 CANADA |
| 2. 1555 STUDY SPECIFICATION ORDER 001 DATED AUGUST 21, 2003 | | 103554 | ☐ | UNIVERSITY OF SASKATCHEWAN | ATTN: GENERAL COUNSEL ROOM 1607, 110 GYMNASIUM PLACE, BOX 5000 RPO UNIVERSITY, SASKATOON, SK S7N 4J8 |

**NAS1334**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1556 STUDY SPECIFICATION ORDER 002 DATED AUGUST 21, 2003 | | 103562 | ☐ | UNIVERSITY OF SASKATCHEWAN/ DR. SANKARAN | ATTN: GENERAL COUNSEL ROYAL UNIVERSITY HOSPITAL 103 HOSPITAL DRIVE SASKATOON, SK S7N 0W6 |
| 2. 1557 CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF AUGUST 21, 2003 | | 103564 | ☐ | UNIVERSITY OF SASKATCHEWAN/DR. K. SANKARAN | ATTN: GENERAL COUNSEL SASKATCHEWAN: ROOM 1607, 110 GYMNASIUM PLACE BOX 5000 RPO UNIVERSITY, SASKATOON, SK S7N 4J8 DR. K. SANKARAN: DEPARTMENT OF PEDIATRICS, ROYAL UNIVERSITY HOSPITAL, 103 HOSPITAL DRIVE SASKATOON, SK S7N 0W8 SASKATOON, SK, CANADA SK S7 |
| 2. 1558 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF AUGUST 21, 2003 | | 103573 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1559 AMENDMENT #1 TO STUDY SPECIFICATION ORDER #003 EFFECTIVE AS OF JUNE 14, 2004 | | 103577 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1560 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JANUARY 17, 2003 | | 103575 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1561 AMENDMENT #2 TO MASTER CLINICAL TRIAL AGREEMENT DATED JANUARY 17, 2003 | | 103580 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1562 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #003 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 103582 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1563 STUDY SPECIFICATION ORDER 002 DATED AUGUST 21, 2003 | | 103572 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |

**NAS1335**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1564 STUDY SPECIFICATION ORDER 003 DATED JANUARY 29, 2004 | | 103574 | ☐ | UNIVERSITY ORTHOPEDICS CENTER | ATTN: GENERAL COUNSEL 101 REGENT COURT STATE COLLEGE, PA 16801 |
| 2. 1565 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2013 | | 103584 | ☐ | UPMC OSPARS | ATTN: EXECUTIVE DIRECTOR 600 GRANT STREET, 58TH FLOOR UST 01-58-01 PITTSBURGH, PA 15219 |
| 2. 1566 QUALITY AGREEMENT EFFECTIVE AS OF JUNE 21, 2013 | | 103587 | ☐ | UPS SUPPLY CHAIN SOLUTIONS | ATTN: GENERAL COUNSEL 12380 MORRIS ROAD ALPHARETTA, GA 30005 |
| 2. 1567 SCHEDULE NO. 1 - WAREHOUSE DISTRIBUTION SERVICES DATED JULY 01, 2015 | | 103588 | ☐ | UPS SUPPLY CHAIN SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 12380 MORRIS ROAD ALPHARETTA, GA 30005 |
| 2. 1568 UPS AMD 1 TO MSA01JAN2018 CW2359330 UPDATE SCOPE AND PRICE (RJ.EA) DATED JANUARY 01, 2018 | | 103591 | ☐ | UPS SUPPLY CHAIN SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 12380 MORRIS ROAD ALPHARETTA, GA 30005 |
| 2. 1569 MASTER SERVICES AGREEMENT DATED JUNE 24, 2002 | | 103595 | ☐ | UPS SUPPLY CHAIN SOLUTIONS/SCS ASIA | ATTN: GENERAL COUNSEL PURDUE: 4701 PURDUE DRIVE WILSON, NC 27893 12380 MORRIS ROAD ALPHARETTA, GA 30005 |
| 2. 1570 LETTER: CONSENT EXECUTED JANUARY 14, 2014 | | 103596 | ☐ | UPSTATE CLINICAL RESEARCH ASSOC. | ATTN: GENERAL COUNSEL 8201 MAIN STREET, SUITE 1 WILLIAMSVILLE, NY 14221 |
| 2. 1571 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JUNE 30, 2017 | | 103626 | ☐ | VALLEY WHOLESALE DRUG CO. INC. | ATTN: GENERAL COUNSEL 1401 WEST FREMONT STREET STOCKTON, CA 95203 |
| 2. 1572 AUTHORIZED DISTRIBUTOR AGREEMENT EFFECTIVE AS OF JULY 01, 2012 | | 103625 | ☐ | VALLEY WHOLESALE DRUG CO. INC. | ATTN: DAN MATTCOLI 1401 WEST FREMONT STREET STOCKTON, CA 95203 |

**NAS1336**

Purdue Pharma L.P.                                                                    Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1573 DRUG DISTRIBUTION SERVICE AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2008 | | 103627 | ☐ | VALLEY WHOLESALE DRUG COMPANY | ATTN: GENERAL COUNSEL 1401 WEST FREMONT STREET STOCKTON, CA 95203 |
| 2. 1574 VALUCENTRIC SOW PIPELINE INVENTORY CW2364217 (SD.RA) DATED OCTOBER 01, 2018 | | 103630 | ☐ | VALUE CENTRIC, LLC | ATTN: GENERAL COUNSEL 23 COBHAM DRIVE ORCHARD PARK, NY 14127 |
| 2. 1575 AMENDMENT NO. 1 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED APRIL 15, 2016 | | 103635 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL ONE GOLF VIEW DRIVE ALTOONA, PA 16601 |
| 2. 1576 AMENDMENT NO. 1 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED DECEMBER 31, 2015 | | 103633 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |
| 2. 1577 AMENDMENT NO. 2 TO AUTHORIZED DISTRIBUTOR AGREEMENT DATED JUNE 30, 2017 | | 103636 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |
| 2. 1578 AMENDMENT NO. 2 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED JUNE 01, 2018 | | 103639 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |
| 2. 1579 AMENDMENT NO. 3 TO DISTRIBUTION PERFORMANCE AGREEMENT DATED OCTOBER 18, 2018 | | 103641 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |
| 2. 1580 AUTHORIZED DISTRIBUTOR AGREEMENT EXECUTED OCTOBER 09, 2012 | | 103644 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL ONE GOLF VIEW DRIVE ALTOONA, PA 16601 |
| 2. 1581 DISTRIBUTION PERFORMANCE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2013 | | 103631 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL ONE GOLF VIEW DRIVE ALTOONA, PA 16601 |
| 2. 1582 VALUE DRUG COMPANY - SECOND AMENDMENT TO DISTRIBUTION PERFORMANCE AGREEMENT CW2361856 (SD.RA) DATED JUNE 01, 2018 | | 103638 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |

NAS1337

**Purdue Pharma L.P.**                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1583 VALUE DRUG COMPANY - THIRD AMENDMENT TO DISTRIBUTION PERFORMANCE AGREEMENT (RP.RA) DATED OCTOBER 18, 2018 | | 103640 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL 195 THEATER DRIVE DUNCANSVILLE, PA 16635 |
| 2. 1584 HOSTED SERVICES AGREEMENT DATED NOVEMBER 01, 2008 | | 103646 | ☐ | VALUECENTRIC, LLC | ATTN: GENERAL COUNSEL 23 COBHAM DRIVE ORCHARD PARK, NY 14127 |
| 2. 1585 VANGUARD PAIN MANAGEMENT CONSULTING WO CW2366427 TIMOTHY ATKINSON ORF AD BOARD (LH.SD) EFFECTIVE MAY 01, 2019 | 4/30/2020 | 105989 | ☐ | VANGUARD PAIN MANAGEMENT CONSULTING LLC | NOT AVAILABLE |
| 2. 1586 MASTER SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2016 | | 103651 | ☐ | VANTAGE CONSULTING SERVICES, INC. | ATTN: GENERAL COUNSEL 601 RT. 206, STE 26-700 HILLSBOROUGH, NJ 08844 |
| 2. 1587 MASTER SUBSCRIPTION AND SERVICES AGREEMENT EFFECTIVE AS OF JULY 15, 2015 | | 103661 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1588 VEEVA MEDCOMM SOWCW2356792 (DS.RA) DATED JANUARY 01, 2018 | | 103659 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1589 VEEVA MEDCOMM SOWCW2356792 (DS.RA) DATED OCTOBER 02, 2017 | | 103658 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1590 VEEVA PROMOMATS RENEWAL ORDER CW2362498 PB.RA DATED JULY 27, 2018 | | 103656 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1591 VEEVA SOW 9 PROMOMATS AND MEDCOMMS MANAGED SERVICES 2019 CW2364510 PB.EA DATED JANUARY 01, 2019 | | 103660 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1592  VEEVA SOW 9 PROMOMATS AND MEDCOMMS MANAGED SERVICES 2019 CW2364510 PB.EA EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 106045 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1593  VEEVA VAULT SUBMISSIONS RENEWAL ORDER CW2362500 PB.RA DATED AUGUST 01, 2018 | | 103657 | ☐ | VEEVA SYSTEMS, INC. | ATTN: GENERAL COUNSEL 4637 CHABOT DRIVE, SUITE 210 PLEASANTON, CA 94588 |
| 2. 1594  PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF JUNE 12, 2002 | | 103662 | ☐ | VELQUEST CORPORATION | ATTN: GENERAL COUNSEL 35 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 1595  VENDORMATE MSA 07132016 CW2221866 (SD.PMM) DATED AUGUST 15, 2016 | | 103666 | ☐ | VENDORMATE, INCOPORATED | ATTN: GENERAL COUNSEL 1315 CENTURY DR., SUITE 100 LOUISVILLE, CO 80027 |
| 2. 1596  VENEBIO GROUP MSA 27MAR2018 CW2360988 (RJ.RA) DATED APRIL 17, 2018 | | 103667 | ☐ | VENEBIO GROUP, LLC | ATTN: GENERAL COUNSEL 7400 BEAUFONT SPRINGS DRIVE, SUITE 300 RICHMOND, VA 23225 |
| 2. 1597  AMENDMENT #2 TO MASTER WASTE MANAGEMENT SERVICES AGREEMENT DATED DECEMBER 15, 2015 | | 103669 | ☐ | VEOLIA ES TECHNICAL SOLUTIONS L.L.C. | DEPARTMENT 73709 CHICAGO, IL 60673 |
| 2. 1598  ZUDY MSA AMENDMENT CW2354595 (DS.EA) DATED AUGUST 11, 2015 | | 103675 | ☐ | VINYL DEVELOPMENT, LLC D/B/A ZUDY | ATTN: GENERAL COUNSEL |
| 2. 1599  MASTER SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 10, 2016 | | 103677 | ☐ | VIRTUAL REGULATORY SOLUTIONS INC. | ATTN: GENERAL COUNSEL 673 SPRING MOUNT ROAD SCHWENKSVILLE, PA 19473 |
| 2. 1600  CHANGE ORDER FORM DATED JANUARY 09, 2009 | | 103685 | ☐ | VITAL PATH, INC. | ATTN: GENERAL COUNSEL |
| 2. 1601  EXECUTIVE SEARCH AGREEMENT EFFECTIVE AS OF AUGUST 25, 2009 | | 103707 | ☐ | W.A. RUTLEDGE & ASSOCIATES | ATTN: GENERAL COUNSEL 6 MEADOWCREST DRIVE WOODBURY, CT 06798 |

**NAS1339**

**Purdue Pharma L.P.**                                                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1602 | AMENDMENT #1 TO STUDY SPECIFICATION ORDER #002 EFFECTIVE AS OF JUNE 14, 2004 | | 103710 | ☐ | WAKE RESEARCH ASSOCIATES, LLC | ATTN: GENERAL COUNSEL 3100 BLUE RIDGE ROAD, SUITE 200 RALEIGH, NC 27612 |
| 2. 1603 | STUDY SPECIFICATION ORDER 002 DATED FEBRUARY 10, 2004 | | 103709 | ☐ | WAKE RESEARCH ASSOCIATES, LLC | ATTN: GENERAL COUNSEL 3100 BLUE RIDGE ROAD, SUITE 200 RALEIGH, NC 27612 |
| 2. 1604 | PHARMACY INSIGHTS MASTER SERVICES AGREEMENT DATED SEPTEMBER 20, 2016 | | 103712 | ☐ | WALGREENS CO. | ATTN: PHARMACY PURCHASING & DEVELOPMENT LAW 104 WILMOT ROAD MS #1425 DEERFIELD, IL 60015 |
| 2. 1605 | WALGREENSMSA07JUN2017 CW2354825 MSA(AB.RA) DATED JULY 15, 2017 | | 103711 | ☐ | WALGREENS CO. | ATTN: GENERAL COUNSEL 1417 LAKE COOK ROAD DEERFIELD, IL 60015 |
| 2. 1606 | WALKER PAINT AMD 3 TO MSA CW2356084 (KL.EGA) DATED OCTOBER 01, 2017 | | 103713 | ☐ | WALKER PAINT COMPANY, INC. | ATTN: GENERAL COUNSEL |
| 2. 1607 | WALRUS MSA CW2358482 SLOMAG (AB.RA) DATED NOVEMBER 20, 2017 | | 103715 | ☐ | WALRUS, LLC | ATTN: GENERAL COUNSEL 18 EAST 17TH STREET, 4TH FLOOR NEW YORK, NY 10003 |
| 2. 1608 | WASSERSTEIN, JEANETTE CSA 0101019 CW2364676 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105923 | ☐ | WASSERSTEIN, JEANETTE | NOT AVAILABLE |
| 2. 1609 | MASTER SERVICES AGREEMENT DATED JANUARY 01, 2008 | | 103720 | ☐ | WATERS TECHNOLOGIES CORPORATION | ATTN: GENERAL COUNSEL 34 MAPLE STREET MILFORD, MA 01757 |
| 2. 1610 | AMENDMENT #1 TO AMENDED AND RESTATED MASTER SERVICES AGREEMENT DATED NOVEMBER 15, 2015 | | 103721 | ☐ | WATERS TECHNOLOGIES CORPORATION D/B/A WATERS CORPORATION | 34 MAPLE STREET MILFORD, MA 01757 |

**NAS1340**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 347 of 1000

**Purdue Pharma L.P.**                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1611 WATERS SOW 2019-1  CW2364348 TOTAL ASSURANCE PLAN FOR 2019 (RJ.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 106049 | ☐ | WATERS TECHNOLOGIES CORPORATION D/B/A WATERS CORPORATION | 34 MAPLE STREET MILFORD, MA 01757 |
| 2. 1612 DISTRIBUTION AND SUPPLY AGREEMENT BETWEEN WATSON PHARMA, INC. AND PURDUE PHARMA L.P., DATED APRIL 25, 2013, AS AMENDED BY AMENDMENT NO. 1 TO DISTRIBUTION AND SUPPLY AGREEMENT DATED SEPTEMBER 26, 2014 | | 106299 | ☐ | WATSON PHARMA, INC. | NOT AVAILABLE |
| 2. 1613 DISTRIBUTION AND SUPPLY AGREEMENT DATED APRIL 25, 2013 | | 103722 | ☐ | WATSON PHARMA, INC. | ATTN: CHIEF LEGAL OFFICER - GLOBAL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07053 |
| 2. 1614 DISTRIBUTION AND SUPPLY AGREEMENT DATED APRIL 25, 2013 | | 103723 | ☐ | WATSON PHARMA, INC. | ATTN: CHIEF LEGAL OFFICER - GLOBAL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 1615 DISTRIBUTION AND SUPPLY AGREEMENT DATED APRIL 25, 2013 | | 103724 | ☐ | WATSON PHARMA, INC. | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07053 |
| 2. 1616 STUDY SPECIFICATION ORDER 003 TO MASTER CLINICAL TRIAL AGREEMENT DATED AUGUST 22, 2003 | | 103726 | ☐ | WAYNE STATE UNIVERSITY | ATTN: GENERAL COUNSEL 540 E. CANFIELD RM 1128 DETROIT, MI 48201 |
| 2. 1617 MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF JUNE 27, 2014 | | 103727 | ☐ | WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY | ATTN: GENERAL COUNSEL JOINT MEDICAL TRIALS OFFICE 1300 YORK AVENUE, BOX 305 NEW YORK, NY 10065 |
| 2. 1618 WEST VIRGINIA LOBBYIST GROUP, LLC CSA CW2356899 (LH.RA) DATED NOVEMBER 01, 2017 | | 103730 | ☐ | WEST VIRGINIA LOBBYIST GROUP, LLC | ATTN: GENERAL COUNSEL 650 MAIN STREET BARBOURSVILLE, WV 25504 |

**NAS1341**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1619 STUDY SPECIFICATION ORDER 001 DATED OCTOBER 29, 2003 | | 103731 | ☐ | WIETZNER, YONKER, KAINE, MD PA/D/B/A SARASOTA ARTHRITIS CENTER | ATTN: GENERAL COUNSEL 1945 VERSAILLES STREET, SUITE 101 SARASOTA, FL 34239 |
| 2. 1620 WIGAL, TIMOTHY CSA 01012019 CW2364672 (SS.SD) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105915 | ☐ | WIGAL, TIMOTHY | NOT AVAILABLE |
| 2. 1621 CHRISTOPHER GUINTHER CSA CW2366844 (LH.RA) EFFECTIVE MAY 15, 2019 | 5/14/2021 | 105991 | ☐ | WILLIAM C GUINTHER | NOT AVAILABLE |
| 2. 1622 AUTHORIZED PROVIDER AGREEMENT DATED OCTOBER 01, 2007 | | 103738 | ☐ | WILSON/GREENE RED CROSS | ATTN: LIBBY PRIVETTE 2305 SUITE G WELLINGTON DRIVE WILSON, NC 27893 |
| 2. 1623 AMENDMENT #3 TO STUDY SPECIFICATION ORDER #002 TO MASTER CLINICAL TRIAL AGREEMENT EFFECTIVE AS OF FEBRUARY 22, 2005 | | 103742 | ☐ | WINSTON PHYSICIAN SERVICES, LLC | ATTN: GENERAL COUNSEL 904 26TH STREET HALLEYVILLE, AL 35565 |
| 2. 1624 STUDY SPECIFICATION ORDER 002 TO MASTER CLINICAL TRIAL AGREEMENT DATED 10303 BETWEEN PURDUE PHARMA L.P. AND WINSTON PHYSCIAN SERVICES, LLC DATED DECEMBER 18, 2003 | | 103741 | ☐ | WINSTON PHYSICIAN SERVICES, LLC | ATTN: GENERAL COUNSEL 904 26TH STREET HALLEYVILLE, AL 35565 |
| 2. 1625 WONG BAKER SOW26FEB17 CW2352087  WONG BAKER FACES SUBLICENSE DATED MARCH 06, 2017 | | 103745 | ☐ | WONG-BAKER FACES FOUNDATION | ATTN: GENERAL COUNSEL 13919 B-N. MAY AVE #125 OKLAHOMA CITY, OK 73134 |
| 2. 1626 AMENDMENT #4 TO STATEMENT OF WORK DATED NOVEMBER 14, 2018 | | 103746 | ☐ | WORLD HEALTH INFORMATION SCIENCE CONSULTANTS | ATTN: GENERAL COUNSEL 725 GROVE STREET NEWTON, MA 02466 |
| 2. 1627 STATEMENT OF WORK UNDER MASTER SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 14, 2019 | | 103747 | ☐ | WORLD HEALTH INFORMATION SCIENCE CONSULTANTS | ATTN: GENERAL COUNSEL 725 GROVE STREET NEWTON, MA 02466 |

**NAS1342**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1628   CONSENT AGREEMENT EXECUTED DECEMBER 12, 2013 | | 103752 | ☐ | WORLDWIDE CLINICAL TRIALS, INC. | ATTN: CHRISTOPHER L. CRUCITTI, EXECUTIVE VICE PRESIDENT 1000 CONTINENTAL DRIVE SUITE 209 KING OF PRUSSIA, PA 19406 |
| 2. 1629   XBL (WUXI) OTH CW2362361 MSA EXTENSION (LH.RA) DATED JUNE 29, 2018 | | 103753 | ☐ | XENOBIOTIC LABORATORIES, INC. | ATTN: GENERAL COUNSEL |
| 2. 1630   YALE CSA 061516 CW2221469 ACCELERATOR PROGRAM (LH.JK) DATED JULY 21, 2016 | | 103755 | ☐ | YALE UNIVERSITY | ATTN: GENERAL COUNSEL 165 WHITNEY AVENUE NEW HAVEN, CT |
| 2. 1631   SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 103757 | ☐ | Z HEADHUNTERS LLC | ATTN: GENERAL COUNSEL 397 POST ROAD SUITE 203 DARIEN, CT 06820 |
| 2. 1632   MASTER SUBSCRIPTION AGREEMENT EFFECTIVE AS OF MARCH 31, 2015 | | 103759 | ☐ | ZEPHYR HEALTH, INC | ATTN: CHIEF INFORMATION SECURITY & PRIVACY OFFICER 450 MISSION STREET SUITE 201 SAN FRANCISCO 94105 CANADA |
| 2. 1633   ZOUBEK CSA CW2359624   (DT.RA) DATED JANUARY 15, 2018 | | 103763 | ☐ | ZOUBEK CONSULTING, LLC | ATTN: GENERAL COUNSEL 3047 UNIVERSITY AVENUE, SUITE 211 SAN DIEGO, CA 92104 |
| 2. 1634   AMENDMENT #1 TO STATEMENT OF WORK EFFECTIVE AS OF JULY 01, 2018 | | 103776 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1635   MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 22, 2016 | | 103764 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1636   MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 22, 2016 | | 103765 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |

**NAS1343**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1637   MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 22, 2016 | | 103766 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1638   MASTER SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 22, 2016 | | 103767 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1639   ZS ASSOCIATES SOW 27JUNE2017 CW2355235 OPERATIONAL SUPPORT FOR MDM DATED JUNE 26, 2017 | | 103773 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1640   ZS ASSOCIATES SOW CW2352468 JAVELIN TERRITORY DESIGNER STANDARD (EGA.NK) DATED MARCH 01, 2017 | | 103768 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1641   ZS ASSOCIATES SOW11 09MAR17 CW2352420  INCENTIVE COMPENSATION SOLUTION IMPLEMENTATION OPERATIONS DATED MARCH 01, 2017 | | 103769 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1642   ZS ASSOCIATES SOW11MAR17 CW2352472 JAVELIN ALIGNMENT MANAGER JAVELIN ROSTER MANAGER USA SHAPES DATED MARCH 21, 2017 | | 103771 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |
| 2. 1643   AMENDMENT #2 TO MASTER SUBSCRIPTION AGREEMENT DATED JULY 31, 2013 | | 103777 | ☐ | ZSCALER, INC. | ATTN: GENERAL COUNSEL 500 7TH AVENUE, 8TH FLOOR NEW YORK, NY 10018 |

**NAS1344**

Purdue Pharma L.P.                                                                                                              Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Real Property Leases** | | | | | |
| 2. 1644 LEASE AMENDMENT - 502 CANAL STREET | 11/30/2019 | G-1005 | ☐ | 502-538 CANAL STREET, LLC | ANTHONY RUBINO<br>502-538 CANAL STREET, LLC<br>560 CANAL STREET<br>STAMFORD, CT 06902 |
| 2. 1645 SUBLEASE | 8/31/2028 | G-1021 | ☐ | AIRCASTLE ADVISORS LLC | GENERAL COUNSEL<br>300 FIRST STAMFORD PLACE, 5TH FLOOR<br>STAMFORD, CT 06902 |
| 2. 1646 SUBLEASE | 9/27/2021 | G-1022 | ☐ | BROOKSIDE EQUITY PARTNERS | DONALD L.HAWKS III & RAYMOND F. WELDON<br>ONE STAMFORD FORUM<br>201 TRESSER BOULEVARD<br>STAMFORD, CT 06901 |
| 2. 1647 SECOND AMENDMENT TO SUBLEASE | 4/30/2021 | G-1024 | ☐ | CHARTER COMMUNICATIONS HOLDING COMPANY, LLC | CHARTER REAL ESTATE, FILE ID: CT0026<br>C/O CHARTER COMMUNICATIONS<br>6360 S. FIDDLERS GREEN CIRCLE, SUITE 100<br>GREENWOOD VILLAGE, CO 80111 |
| 2. 1648 SUBLEASE | | G-1023 | ☐ | CHARTER COMMUNICATIONS HOLDING COMPANY, LLC | CHARTER REAL ESTATE, FILE ID: CT0026<br>C/O CHARTER COMMUNICATIONS<br>6399 S. FIDDLERS GREEN CIRCLE, SUITE 600<br>GREENWOOD VILLAGE, CO 80111 |
| 2. 1649 AMENDED AND RESTATED SUBLEASE | 9/27/2021 | G-1027 | ☐ | HILLSIDE CAPITAL INCORPORATED | JOHN N. IRWIN III AND RAYMOND F. WELDON<br>80 FIELD POINT ROAD, 3RD FLOOR<br>GREENWICH, CT 06830 |
| 2. 1650 AMENDED AND RESTATED SUBLEASE | 9/27/2021 | G-1028 | ☐ | KOKINO LLC | DOUGLAS KLINE AND STEPHEN A. IVES<br>ONE STAMFORD FORUM<br>201 TRESSER BOULEVARD<br>STAMFORD, CT 06901 |

NAS1345

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1651  AMENDMENT TO LEASE | 6/30/2031 | G-1010 | ☐ | ONE STAMFORD REALTY L.P. | DIANA LENKOWSKY<br>ONE STAMFORD FORUM<br>201 BOULEVARD<br>STAMFORD, CT 06901 |
| 2. 1652  LEASE | 3/31/2037 | G-1009 | ☐ | ONE STAMFORD REALTY L.P. | DIANA LENKOWSKY<br>ONE STAMFORD FORUM<br>201 BOULEVARD<br>STAMFORD, CT 06901 |
| 2. 1653  SUBLEASE | 6/30/2028 | G-1029 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. | EDWARD MAHONY<br>ONE STAMFORD FORUM<br>201 TRESSER BOULEVARD<br>STAMFORD, CT 06901 |
| 2. 1654  PRINCETON SOUTH CORPORATE CENTER OFFICE LEASE | | G-1011 | ☐ | PRINCETON OFFICE CENTER, LLC | C/O VISION<br>1 BLOOMFIELD AVE<br>MOUNTAIN LAKES, NJ 07046 |
| 2. 1655  SUBLEASE AGREEMENT | 4/30/2025 | G-1020 | ☐ | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | OFFICE ADMINISTRATOR<br>1440 NEW YORK AVENUE, NW<br>2ND FLOOR<br>WASHINGTON, DC 20005 |
| 2. 1656  APARTMENT LEASE CONTRACT | 9/12/2020 | G-1015 | ☐ | THE VAULT APARTMENTS | 120 TOWNE STREET<br>STAMFORD, CT 06902 |
| 2. 1657  LEASE CONTRACT | 9/12/2019 | G-1014 | ☐ | THE VAULT APARTMENTS | 120 TOWNE STREET<br>STAMFORD, CT 06902 |
| 2. 1658  LEASE CONTRACT | 1/23/2020 | G-1016 | ☐ | THE VAULT APARTMENTS | 120 TOWNE STREET<br>STAMFORD, CT 06902 |
| 2. 1659  LEASE AGREEMENT | 9/1/2020 | G-1004 | ☐ | THREE HARBOR POINT SQUARE, LLC | 1 ELMCROFT ROAD, SUITE 500<br>STAMFORD, CT 06902 |
| 2. 1660  SUBLEASE | 6/30/2028 | G-1030 | ☐ | TXP SERVICES INC. | EDWARD MAHONY<br>ONE STAMFORD FORUM<br>201 TRESSER BOULEVARD<br>STAMFORD, CT 06901 |

**NAS1346**

**Purdue Pharma L.P.**                                                                                    Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1661   SUBLEASE | 12/30/2020 | G-1013 | ☐ | UBS AG | CORPORATE REAL ESTATE UBS FINANCIAL SERVICES INC. 1000 HARBOR BOULEVARD, FIFTH FLOOR WEEHAWKEN, NJ 07086 |
| 2. 1662   SUBLEASE | 12/30/2020 | G-1031 | ☐ | UBS FINANCIAL SERVICES INC. | CORPORATE REAL ESTATE 1000 HARBOR BOULEVARD, FIFTH FLOOR WEEHAWKEN, NJ 07086 |
| 2. 1663   LEASE | 10/22/2014 | G-1018 | ☐ | VIADUCT LANDHOLDINGS MANAGEMENT & DEVELOPEMENT, LLC | 494 GLENBROOK ROAD-SUITE #5 STAMFORD, CT 06906 |
| 2. 1664   LEASE EXTENSION AGREEMENT | 10/23/2018 | G-1017 | ☐ | VIADUCT LANDHOLDINGS MANAGEMENT & DEVELOPEMENT, LLC | 494 GLENBROOK ROAD-SUITE #5 STAMFORD, CT 06906 |
| 2. 1665   LEASE MODIFICATION AGREEMENT | 10/22/2017 | G-1019 | ☐ | VIADUCT LANDHOLDINGS MANAGEMENT & DEVELOPEMENT, LLC | 494 GLENBROOK ROAD-SUITE #5 STAMFORD, CT 06906 |
| 2. 1666   FIRST DEUTSCH SUBLEASE | 3/31/2027 | G-1025 | ☐ | W.J. DEUTSCH & SONS LTD., DBA DEUTSCH FAMILY WINE & SPIRITS | PETER DEUTSCH 709 WESTCHESTER AVENUE WHITE PLAINS, NY 10604 |
| 2. 1667   SECOND DEUTSCH SUBLEASE | 3/31/2027 | G-1026 | ☐ | W.J. DEUTSCH & SONS LTD., DBA DEUTSCH FAMILY WINE & SPIRITS | PETER DEUTSCH 709 WESTCHESTER AVENUE WHITE PLAINS, NY 10604 |

**NAS1347**

**Purdue Pharma L.P.**  Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

### Intercompany Agreements

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1668 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - ISREAL | | G-3001 | ☐ | LADENBURG B.V. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1669 AMENDMENT TO HEAD LICENSE AGREEMENT EFFECTIVE AS OF 1 OCTOBER 2013, DATED AUGUST 28, 2019 | | G-3002 | ☐ | MUNDIPHARMA BRADENTON B.V. | LEUSDEREND 16 3832 RC LEUSDEN AMERSFOORT 3800 CB NIGER |
| 2. 1670 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - ARAB STATES | | G-3014 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1671 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - AUSTRIA | | G-3041 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1672 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - BELGIUM | | G-3013 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1673 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - CEE | | G-3040 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1674 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - CHINA | | G-3039 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1348**

**Purdue Pharma L.P.**                                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1675 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - CYPRUS | | G-3038 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1676 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - DENMARK | | G-3037 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1677 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - EGYPT | | G-3036 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1678 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - FINLAND | | G-3035 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1679 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - FRANCE | | G-3034 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1680 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - GERMANY | | G-3033 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1681 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - HONG KONG | | G-3032 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1349**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1682  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - ICELAND | | G-3031 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1683  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - IRELAND | | G-3030 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1684  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - ITALY | | G-3029 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1685  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - JORDAN | | G-3028 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1686  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - KUWAIT | | G-3027 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1687  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - LEBANON | | G-3026 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1688  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - NETHERLANDS | | G-3025 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1350**

**Purdue Pharma L.P.**  Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1689  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - NEW ZEALAND | | G-3024 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1690  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - NORWAY | | G-3023 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1691  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - PHILIPPINES | | G-3022 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1692  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - POLAND | | G-3021 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1693  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SAUDI ARABIA | | G-3020 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1694  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SINGAPORE | | G-3019 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1695  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SOUTH AFRICA | | G-3018 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1351**

**Purdue Pharma L.P.**                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1696  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SPAIN | | G-3017 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1697  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SWEDEN | | G-3016 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1698  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - SWITZERLAND | | G-3015 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1699  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCODONE (NON-ADF) - UNITED KINGDOM | | G-3042 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1700  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN AUSTRALIA DATED MAY 1, 2016 | | G-3003 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1701  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN CANADA DATED FEBRUARY 1, 2016 | | G-3011 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1702  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN KOREA DATED JANUARY 1, 2017 | | G-3004 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1352**

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1703  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN LEBANON DATED JUNE 1, 2017 | | G-3006 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1704  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN MALAYSIA DATED JUNE 1, 2017 | | G-3009 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1705  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN PHILIPPINES DATED JUNE 1, 2017 | | G-3005 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1706  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN SINGAPORE DATED SEPTEMBER 1, 2017 | | G-3010 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1707  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN THAILAND DATED NOVEMBER 1, 2017 | | G-3008 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1708  MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN VIETNAM DATED APRIL 1, 2017 | | G-3007 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |
| 2. 1709  MANUFACTURER'S LICENSE AGREEMENT FOR OXYNEO IN INDIA DATED JANUARY 1, 2017 | | G-3012 | ☐ | MUNDIPHARMA DC B.V. | LEUSDEREND 16 3832 RC LEUSDEN POSTBUS 2084 AMERSFOORT 3800 CB NIGER |

**NAS1353**

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1710 ADMINISTRATIVE SERVICES AGREEMENT (LEGAL SERVICES RELATED TO ONCOLOGY ASSETS) | | G-3043 | ☐ | MUNDIPHARMA INTERNATIONAL LIMITED | 196 CAMBRIDGE SCIENCE PARK MILTON RD MILTON, CAMBRIDGE CB4 0AB |
| 2. 1711 IT SERVICES AGREEMENT DATED AS OF JANUARY 1, 2018 BETWEEN PURDUE PHARMA L.P. AND MUNDIPHARMA IT SERVICES LIMITED (UK). | | G-3044 | ☐ | MUNDIPHARMA IT SERVICES LIMITED | 9TH FLOOR, NEW ZEALAND HOUSE 80 HAYMARKET ATTN: PHILIPPE MAZAS |
| 2. 1712 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN BRAZIL DATED JANUARY 1, 2017 | | G-3045 | ☐ | MUNDIPHARMA LABORATORIES GMBH | ST. ALBAN-RHEINWEG 74 BASEL CH-4020 |
| 2. 1713 MANUFACTURER'S LICENSE AGREEMENT FOR OXYCONTIN OTR IN MEXICO DATED JANUARY 1, 2017 | | G-3046 | ☐ | MUNDIPHARMA LABORATORIES GMBH | ST. ALBAN-RHEINWEG 74 BASEL CH-4020 |
| 2. 1714 RESEARCH SERVICES AGREEMENT | | G-3048 | ☐ | MUNDIPHARMA RESEARCH LIMITED | UNIT 194 CAMBRIDGE SCIENCE PARK MILTON RD MILTON, CAMBRIDGE CB4 0AB |
| 2. 1715 SERVICES AGREEMENT RELATED TO SERVICES PROVIDED BY PPLP TO MRL | | G-3047 | ☐ | MUNDIPHARMA RESEARCH LIMITED | UNIT 194 CAMBRIDGE SCIENCE PARK MILTON RD MILTON, CAMBRIDGE CB4 0AB |
| 2. 1716 SERVICES AGREEMENT - FACILITIES AND ADMINISTRATIVE SERVICES EFFECTIVE AS OF JULY 1, 2018 | | G-3049 | ☐ | ONE STAMFORD REALTY L.P. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1717 LICENSE AGREEMENT EXPENSES AGREEMENT | | G-3050 | ☐ | PHARMA ASSOCIATES L.P. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1718 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - ARAB STATES | | G-3056 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1719 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - AUSTRIA | | G-3053 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |

**NAS1354**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1720 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - BELGIUM | | G-3055 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1721 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - CEE | | G-3052 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1722 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - CHINA | | G-3051 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1723 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - CYPRUS | | G-3080 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1724 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - DENMARK | | G-3079 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1725 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - EGYPT | | G-3078 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1726 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - FINLAND | | G-3077 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1727 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - FRANCE | | G-3076 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1728 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - GERMANY | | G-3075 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1729 | ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - HONG KONG | | G-3074 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |

**NAS1355**

**Purdue Pharma L.P.**                                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1730  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - ICELAND | | G-3073 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1731  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - IRELAND | | G-3072 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1732  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - ITALY | | G-3071 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1733  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - JORDAN | | G-3070 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1734  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - KUWAIT | | G-3069 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1735  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - LEBANON | | G-3068 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1736  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - NETHERLANDS | | G-3067 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1737  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - NEW ZEALAND | | G-3066 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1738  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - NORWAY | | G-3065 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1739  ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - PHILIPPINES | | G-3064 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |

**NAS1356**

**Purdue Pharma L.P.**                                                                          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1740 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - POLAND | | G-3063 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1741 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - SAUDI ARABIA | | G-3062 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1742 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - SINGAPORE | | G-3061 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1743 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - SOUTH AFRICA | | G-3060 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1744 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - SWITZERLAND | | G-3057 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1745 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NON-ADF) - UNITED KINGDOM | | G-3054 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1746 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NONCADF) - SPAIN | | G-3059 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1747 ASSIGNMENT AND ASSUMPTION AGREEMENT FOR OXYCODONE (NONCADF) - SWEDEN | | G-3058 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES L.P. (F/K/A PURDUE HOLDINGS L.P.) | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1748 ADLON THERAPEUTICS L.P. - LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550013 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1749 AVRIO HEALTH L.P. (FKA PURDUE PRODUCTS L.P.) - THIRD AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JULY 11, 2019 | | 550014 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |

**NAS1357**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1750　GREENFIELD BIOVENTURES L.P. - LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550016 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1751　IMBRIUM THERAPEUTICS L.P. - LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550017 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1752　PURDUE NEUROSCIENCE COMPANY - AMENDED AND RESTATED GENERAL PARTNERSHIP AGREEMENT DATED JULY 11, 2019 | | 550001 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1753　PURDUE PHARMA MANUFACTURING L.P. - AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550002 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1754　PURDUE PHARMACEUTICAL PRODUCTS L.P. - THIRD AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JULY 11, 2019 | | 550004 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1755　PURDUE PHARMACEUTICALS L.P. - AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550005 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1756　PURDUE TRANSDERMAL TECHNOLOGIES L.P. - AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JUNE 20, 2019 | | 550006 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1757　RHODES PHARMACEUTICALS L.P. - AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JULY 11, 2019 | | 550009 | ☐ | PURDUE PHARMA INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1758　AMENDED AND RESTATED QUALITY SERVICES AGREEMENT | | G-3081 | ☐ | RHODES PHARMACEUTICALS LP | 498 WASHINGTON STREET COVENTRY, RI 02816 |

**NAS1358**

**Purdue Pharma L.P.**                                                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1759 AMENDED AND RESTATED QUALITY SERVICES AGREEMENT | | G-3082 | ☐ | RHODES TECHNOLOGIES | 498 WASHINGTON STREET COVENTRY, RI 02816 |
| 2. 1760 UDF LP - AMENDED AND RESTATED LIMITED PARTNERSHIP AGREEMENT DATED JULY 24, 2019 | | 550012 | ☐ | RHODES TECHNOLOGIES | 498 WASHINGTON ST. COVENTRY, RI 02816 |
| 2. 1761 AMENDMENT TO SERVICES AGREEMENT DATED AUGUST 8, 2019 | | G-3083 | ☐ | TXP SERVICES INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 1762 SERVICES AGREEMENT - DCG & T&E, FINANCE & ACCOUNTING SERVICES, PAYROLL, TAXATION, ACCOUNTS PAYABLE, CASH MANAGEMENT AND INSURANCE EFFECTIVE AS OF JULY 1, 2018 | | G-3084 | ☐ | TXP SERVICES INC. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |

**NAS1359**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

### Employment Agreements

| | | | | | |
|---|---|---|---|---|---|
| 2. 1763 EMPLOYMENT AGREEMENT, DATED JULY 25, 2019 | | G-4003 | ☐ | CHRISTIAN MAZZI | CONFIDENTIAL - AVAILABLE UPON REQUEST |
| 2. 1764 EMPLOYMENT AGREEMENT, DATED AS OF OCTOBER 5, 2017, AS AMENDED AS OF MARCH 22, 2018, JUNE 8, 2918 AND APRIL 12, 2019 | 12/31/2022 | G-4001 | ☐ | CRAIG J. LANDAU | CONFIDENTIAL - AVAILABLE UPON REQUEST |
| 2. 1765 EMPLOYMENT AGREEMENT, DATED JULY 25, 2019 | | G-4004 | ☐ | JULIE DUCHARME | CONFIDENTIAL - AVAILABLE UPON REQUEST |
| 2. 1766 EMPLOYMENT AGREEMENT, DATED AS OF JULY 12, 2018, AS AMENDED AS OF APRIL 12, 2019 | | G-4002 | ☐ | MARC KESSELMAN | NOT AVAILABLE |

**NAS1360**

**Purdue Pharma L.P.**                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **IT Agreements** | | | | | |
| 2. 1767  AMENDMENT NO. 1 TO SOFTWARE LICENSE AGREEMENT | | 100103 | ☐ | ADVANCED CHEMISTRY DEVELOPMENT, INC. | ATTN: GENERAL COUNSEL 8 KING STREET EAST, SUITE 107 TORONTO, ONTARIO M5C 1B5 CANADA |
| 2. 1768  SOFTWARE LICENSE AGREEMENT | | 100102 | ☐ | ADVANCED CHEMISTRY DEVELOPMENT, INC. | ATTN: GENERAL COUNSEL 8 KING STREET EAST, SUITE 107 TORONTO, ONTARIO M5C 1B5 CANADA |
| 2. 1769  SCIFINDER SOFTWARE LICENSE | | 100189 | ☐ | AMERICAN CHEMICAL SOCIETY | ATTN: GENERAL COUNSEL 2540 OLENTANGY RIVER ROAD COLUMBUS, OH 43202-1505 |
| 2. 1770  AMENDMENT #1 TO SOFTWARE LICENSE AGREEMENT | | 100216 | ☐ | AMG IT SYSTEMS LIMITED | ATTN: GENERAL COUNSEL GARDEN COTTAGE, BROWNINGHILL BAUGHURST, HAMPSHIRE RG26 5JZ |
| 2. 1771  SECOND AMENDMENT TO SOFTWARE LICENSE AGREEMENT | | 100217 | ☐ | AMG IT SYSTEMS LIMITED | ATTN: GENERAL COUNSEL GARDEN COTTAGE, BROWNINGHILL BAUGHURST, HAMPSHIRE RG26 5JZ |
| 2. 1772  SOFTWARE LICENSE AGREEMENT | | 100215 | ☐ | AMG IT SYSTEMS LIMITED | ATTN: GENERAL COUNSEL GARDEN COTTAGE, BROWNINGHILL BAUGHURST, HAMPSHIRE RG26 5JZ |
| 2. 1773  SOFTWARE EVALUATION AGREEMENT | | 100262 | ☐ | APPROVA CORPORATION | 13560 MORRIS ROAD SUITE 4100 ALPHARETTA, GA 30004 |
| 2. 1774  SOFTWARE LICENSE AGREEMENT | | 100286 | ☐ | ASKME CORPORATION | ATTN: CONTRACTS ADMINISTRATOR 3290 146TH AVENUE PLACE SE, SUITE D BELLEVUE, WA 98007 |

**NAS1361**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 368 of 1000

**Purdue Pharma L.P.**                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1775 END-USER SOFTWARE LICENSE AGREEMENT | | 100295 | ☐ | ATEMPO AMERICAS, INC. | 2465 E BAYSHORE RD<br>PALO ALTO, CA 94303 |
| 2. 1776 MAINTENANCE AGREEMENT | | 100296 | ☐ | ATEMPO AMERICAS, INC. | 2465 E BAYSHORE RD<br>PALO ALTO, CA 94303 |
| 2. 1777 SOFTWARE SERVICE AGREEMENT | | 100304 | ☐ | ATOMUS INC. | ATTN: GENERAL COUNSEL<br>1003 HIGH HOUSE ROAD<br>SUITE 202<br>CARY, NC 27513 |
| 2. 1778 SOFTWARE SERVICE AGREEMENT | | 100305 | ☐ | ATOMUS, INC. | ATTN: GENERAL COUNSEL<br>1003 HIGH HOUSE ROAD<br>CARY, NC 27513 |
| 2. 1779 AMENDMENT NO. 1 TO SOFTWARE LICENSE AND SERVICES AGREEMENT | | 100326 | ☐ | AVAMED CONSULTING GROUP, INC. | ATTN: GENERAL COUNSEL<br>528 RIVERSHIRE PLACE<br>LINCOLNSHIRE, IL 60069-3812 |
| 2. 1780 SOFTWARE LICENSE AND SERVICES AGREEMENT | | 100327 | ☐ | AVAMED CONSULTING GROUP, INC. | ATTN: GENERAL COUNSEL<br>528 RIVERSHIRE PLACE<br>LINCOLNSHIRE, IL 60069-3812 |
| 2. 1781 MASTER SERVICES AGREEMENT | | 100332 | ☐ | AVEPOINT, INC. | ATTN: GENERAL COUNSEL<br>HARBORSIDE FINANCIAL CENTER<br>PLAZA 10, 3 SECOND STREET, 9TH FLOOR<br>JERSEY CITY, NJ 07311 |
| 2. 1782 MASTER SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 100330 | ☐ | AVEPOINT, INC. | ATTN: GENERAL COUNSEL<br>HARBORSIDE FINANCIAL CENTER<br>PLAZA 10 3 SECOND STREET, 9TH FLOOR<br>JERSEY CITY, NJ 073111 |
| 2. 1783 MASTER SOFTWARE SUPPORT ADDENDUM | | 100331 | ☐ | AVEPOINT, INC. | ATTN: GENERAL COUNSEL<br>HARBORSIDE FINANCIAL CENTER<br>PLAZA 10 3 SECOND STREET, 9TH FLOOR<br>JERSEY CITY, NJ 073111 |

**NAS1362**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1784  SOFTWARE LICENSE AGREEMENT | | 100333 | ☐ | AVEPOINT, INC. | ATTN: GENERAL COUNSEL HARBORSIDE FINANCIAL CENTER PLAZA 10, 3 SECOND STREET, SUITE 202 JERSEY CITY, NJ 07311 |
| 2. 1785  SOFTWARE AND DATA LICENSE AGREEMENT | | 100404 | ☐ | BIOPHARM INSIGHT, A DIVISION OF INFINATA, INC. | ATTN: GENERAL COUNSEL 100 RIVER RIDGE DRIVE, SUITE 204 |
| 2. 1786  SOFTWARE LICENSE AGREEMENT | | 100463 | ☐ | BROMIUM INC | ATTN: GENERAL COUNSEL 20813 STEVENS CREEK BOULEVARD SUITE 150 CUPERTINO, CA 95014 |
| 2. 1787  CUSTOMER AGREEMENT SUPPLEMENT #1 | | 100500 | ☐ | C/O MOBILEIRON | ATTN: GENERAL COUNSEL 415 EAST MIDDLEFIELD ROAD MOUNTAIN VIEW, CA 94043 |
| 2. 1788  SOFTWARE SUBSCRIPTION AND LICENSE AGREEMENT | | 100624 | ☐ | CISCO WEBEX | 16720 COLLECTIONS CENTER DR CHICAGO, IL |
| 2. 1789  SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100634 | ☐ | CLEARWELL SYSTEMS, INC. | ATTN: GENERAL COUNSEL 2901 TASMAN DRIVE SUITE 100 SANTA CLARA, CA 95054 |
| 2. 1790  GENERAL SOFTWARE LICENSE SUPPORT & SERVICE TERMS | | 100675 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 15 WAYSIDE ROAD BURLINGTON, MA 01803 |
| 2. 1791  SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 100674 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 67 SOUTH BEDFORD STREET BURLINGTON, MA 01803 |
| 2. 1792  SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100673 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 67 SOUTH BEDFORD STREET BURLINGTON, MA 01803 |

NAS1363

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1793 SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100676 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 67 SOUTH BEDFORD STREET BURLINGTON, MA 01803 |
| 2. 1794 SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100677 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 67 SOUTH BEDFORD STREET BURLINGTON, MA 01803 |
| 2. 1795 SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100678 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 15 WAYSIDE ROAD BURLINGTON, MA 01803 |
| 2. 1796 SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100679 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 15 WAYSIDE ROAD BURLINGTON, MA 01803 |
| 2. 1797 SOFTWARE ORDER, SUPPORT AND LICENSE AGREEMENT | | 100680 | ☐ | COGNOS CORPORATION | ATTN: GENERAL COUNSEL 15 WAYSIDE ROAD BURLINGTON, MA 01803 |
| 2. 1798 NOTIFICATION OF LICENSED SOFTWARE USER | | 100681 | ☐ | COGNOS INCORPORATED | 3755 RIVERSIDE DRIVE PO BOX 9707 STATION T OTTAWA, ONTARIO K1G 4K9 CANADA |
| 2. 1799 SOFTWARE LICENSE AGREEMENT | | 100789 | ☐ | CSS INFORMATICS, INC | ATTN: GENERAL COUNSEL 1255 POST STREET SAN FRANCISCO, CA 94109 |
| 2. 1800 SOFTWARE LICENSE AGREEMENT | | 100790 | ☐ | CUADRA ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 11835 W. OLYMPIC BLVD, SUITE 855 LOS ANGELES, CA 90064 |
| 2. 1801 END SOFTWARE PRODUCT LICENSE AGREEMENT | | 100805 | ☐ | CYA TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 100 TECHNOLOGY DRIVE TRUMBULL, CT 06611 |

**NAS1364**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1802 ADDENDUM F TO ENTERPRISE SOFTWARE LICENSE AND SUPPORT | | 100810 | ☐ | D2C SOFTWARE SOLUTIONS LTD | ATTN: ROBIN-JAN DELANGE CHIEF TECHNOLOGY OFFICER 777 POST OAK BOULEVARD, SUITE 975 HOUSTON, TX 77056 |
| 2. 1803 ADDENDUM E TO ENTERPRISE SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 100812 | ☐ | D2C SOFTWARE SOLUTIONS LTD. | ATTN: ROBIN-JAN DE LANGE CHIEF TECHNOLOGY OFFICER |
| 2. 1804 SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 100813 | ☐ | D2C SOLUTIONS | ATTN: GENERAL COUNSEL 777 POST OAK, SUITE 975 HOUSTON, TX 77056 |
| 2. 1805 MASTER SERVICES AGREEMENT | | 100824 | ☐ | DATA DESIGN CONSULTING INC | ATTN: DAN CONSULTING INC 4 TERRACE PARK GARDEN CITY, NY 11530 |
| 2. 1806 DATABASICS, INC. - SOW 2019-1 MODIFICATIONS CW2367557 (LH.RA) EFFECTIVE JULY 01, 2019 | 6/30/2020 | 106017 | ☐ | DATABASICS INC | ATTN: GENERAL COUNSEL 12700 SUNRISE VALLEY DR STE 102 RESTON, VA 20191 |
| 2. 1807 SOFTWARE LICENSE AGREEMENT | | 100830 | ☐ | DATAFARM, INC. | ATTN: SHYLENDRA KUMAR 221 BOSTON POST ROAD EAST, SUITE 480 MARLBOROUGH, MA 01752 |
| 2. 1808 SOFTWARE SUPPORT AGREEMENT | | 100829 | ☐ | DATAFARM, INC. | ATTN: GENERAL COUNSEL 221 BOSTON POST ROAD EAST, SUITE 480 MARLBOROUGH, MA 01752 |
| 2. 1809 SOFTWARE LICENSE AGREEMENT | | 100864 | ☐ | DENDRITE INTERNATIONAL INC. | ATTN: GENERAL COUNSEL 1200 MT. KEMBLE AVENUE MORRISTOWN, NJ 07960 |
| 2. 1810 SOFTWARE LICENSE AGREEMENT | | 100916 | ☐ | DISCUSS DATA SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 505 EIGHTH AVENUE, SUITE 802 NEW YORK, NY 10018 |

**NAS1365**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1811 ADDENDUM #2 TO SOFTWARE END USER LICENSE AGREEMENT | | 100925 | ☐ | DOCUMENTUM, INC. | 6801 KOLL CENTER PARKWAY PLEASANTON, CA 94566-7047 |
| 2. 1812 FIRST ADDENDUM TO SOFTWARE END USER LICENSE AGREEMENT | | 100924 | ☐ | DOCUMENTUM, INC. | 6801 KOLL CENTER PARKWAY PLEASANTON, CA 94566-7047 |
| 2. 1813 SOFTWARE END USER LICENSE AGREEMENT | | 100926 | ☐ | DOCUMENTUM, INC. | ATTN: GENERAL COUNSEL 4683 CHABOT DRIVE, SUITE 102 PLEASANTON, CA 94588` |
| 2. 1814 THE THIRD ADDENDUM TO SOFTWARE END USER LICENSE AGREEMENT | | 100927 | ☐ | DOCUMENTUM, INC. | 6801 KOLL CENTER PARKWAY PLEASANTON, CA 94566-7047 |
| 2. 1815 PERPETUAL SOFTWARE LICENSE | | 100972 | ☐ | ECORA CORPORATION | ESW CAPITAL, LLC 1675 S STATE ST STE B DOVER, DE 19901 |
| 2. 1816 AMENDMENT NO. 1 TO SOFTWARE LICENSE AGREEMENT | | 100976 | ☐ | EDGE DYNAMICS, INC. | ATTN: GENERAL COUNSEL 1001 MARSHALL STREET, SUITE 500 REDWOOD CITY, CA 94063 |
| 2. 1817 SOFTWARE LICENSE AGREEMENT WITH EDGE DYNAMICS | | 100975 | ☐ | EDGE DYNAMICS, INC. | ATTN: GENERAL COUNSEL 1001 MARSHALL STREET, SUITE 500 REDWOOD CITY, CA 94063 |
| 2. 1818 SOFTWARE END USER LICENSE AGREEMENT | | 101015 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 1819 MASTER SERVICES AGREEMENT | | 101040 | ☐ | ENVISION PHARMA INC | ATTN: GENERAL COUNSEL 3530 POST ROAD SOUTHPORT, CT 06890 |
| 2. 1820 SOFTWARE LICENSE AND SERVICE AGREEMENT | | 101041 | ☐ | ENVISION PHARMA, INC. | ATTN: GENERAL COUNSEL 3530 POST ROAD SOUTHPORT, CT 06890 |

**NAS1366**

**Purdue Pharma L.P.**                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1821 LICENSE AGREEMENT | | 101042 | ☐ | EOS INTERNATIONAL | 3300 NORTH ASHTON BLVD SUITE 500 LEHI, UT 84043 |
| 2. 1822 SUPPORT AND MAINTENANCE AGREEMENT | | 101142 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: GENERAL COUNSEL 575 EAST SWEDESFORD ROAD WAYNE, PA 19087 |
| 2. 1823 SOFTWARE LICENSE AGREEMENT | | 101175 | ☐ | FOUNDSTONE, INC. | ATTN: GENERAL COUNSEL 27201 PUERTA REAL, SUITE 400 MISSION VIEJO, CA 92691 |
| 2. 1824 MASTER CLIENT AGREEMENT | | 101203 | ☐ | GARTNER, INC. | ATTN: GENERAL COUNSEL 56 TOP GALLANT ROAD P.O. BOX 10212 STAMFORD, CT 06904 |
| 2. 1825 QUOTE AND TERMS AND CONDITIONS FOR DOCU-PROOF SOFTWARE | | 101248 | ☐ | GLOBAL VISION INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BLVD WEST MONTREAL, QC H9H 1C5 CANADA |
| 2. 1826 AMENDMENT NO. 1 CONTENT COMPARATOR SOFTWARE AGREEMENT | | 101251 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 1827 AMENDMENT NO. 1 INSPECTION SOFTWARE AGREEMENT | | 101250 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 1828 AMENDMENT NO. 5 TO SOFTWARE TERMS AND CONDITIONS | | 101253 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 1829 AMENDMENT NO. 5 TO SOFTWARE TERMS AND CONDITIONS | | 101254 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |

**NAS1367**

**Purdue Pharma L.P.**                                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1830  IBM SOFTWARE QUOTATION | | 101420 | ☐ | IBM | ATTN: GENERAL COUNSEL<br>550 KING STREET LKG1<br>LITTLETON, MA 01460 |
| 2. 1831  ADDENDUM 2 TO IDBS SOFTWARE LICENSE AGREEMENT 202354-EK | | 101425 | ☐ | ID BUSINESS SOLUTIONS LIMITED | ATTN: GENERAL COUNSEL<br>2 OCCAM COURT<br>SURREY RESEARCH PARK<br>GUILDFORD, SURREY GU2 7QB |
| 2. 1832  ADDENDUM 3 TO IDBS SOFTWARE LICENSE AGREEMENT 202354-EK | | 101424 | ☐ | ID BUSINESS SOLUTIONS LIMITED | ATTN: GENERAL COUNSEL<br>2 OCCAM COURT<br>SURREY RESEARCH PARK<br>GUILDFORD, SURREY GU2 7QB |
| 2. 1833  SOFTWARE LICENSE AGREEMENT | | 101423 | ☐ | ID BUSINESS SOLUTIONS LIMITED | ATTN: NEIL KIPLING<br>2 OCCAM COURT, SURREY<br>RESEARCH PARK<br>GUILDFORD<br>GU2 7QB |
| 2. 1834  AMENDMENT ONE TO SOFTWARE LICENSE AGREEMENT | | 101427 | ☐ | IDS SCHEER AMERICAS, INC. | ATTN: GENERAL COUNSEL<br>11175 CICERO DR<br>ALPHARETTA, GA 30022 |
| 2. 1835  AMENDMENT ONE TO SOFTWARE MAINTENANCE AGREEMENT | | 101426 | ☐ | IDS SCHEER AMERICAS, INC. | ATTN: GENERAL COUNSEL<br>11175 CICERO DR<br>ALPHARETTA, GA 30022 |
| 2. 1836  SCHEDULE A-1 TO THE SOFTWARE LICENSE AGREEMENT | | 101428 | ☐ | IDS SCHEER AMERICAS, INC. | ATTN: GENERAL COUNSEL<br>11175 CICERO DR<br>ALPHARETTA, GA 30022 |
| 2. 1837  SOFTWARE LICENSE AGREEMENT | | 101429 | ☐ | IDS SCHEER, INC. | ATTN: GENERAL COUNSEL<br>1205 WESTLAKES DRIVE, SUITE 270<br>BERWYN, PA 19312 |
| 2. 1838  AMENDMENT NO. 2 TO CRFTRACK AND DOCCOMPOSER LICENSE AGREEMENT | | 101433 | ☐ | IMAGE SOLUTIONS, INC. | 4669 CROSSROADS INDUSTRIAL<br>BRIDGETON, MO 63044 |

**NAS1368**

**Purdue Pharma L.P.**                                                               **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1839 AMENDMENT NO. 6 TO MASTER LICENSE AND MAINTENANCE AGREEMENT | | 101435 | ☐ | IMANY INC. | ATTN: GENERAL COUNSEL 37TH FLOOR 1735 MARKET STREET, PHILADELPHIA, PA 19103 |
| 2. 1840 USER-CUSTOMER AGREEMENT | | 101448 | ☐ | IMS HEALTH INCORPORATED | ATTN: GENERAL COUNSEL 200 CAMPUS DRIVE COLLEGEVILLE, PA 19426 |
| 2. 1841 SOFTWARE LICENSE AGREEMENT | | 101493 | ☐ | INTEGRATED CLINICAL SYSTEMS, INC | ATTN: GENERAL COUNSEL 38 MILLTOWN ROAD STOCKTON, NJ 08559 |
| 2. 1842 AMENDMENT NO. 1 TO SOFTWARE LICENSE AGREEMENT | | 101494 | ☐ | INTEGRATED CLINICAL SYSTEMS, INC. | ATTN: GENERAL COUNSEL 38 MILL TOWN ROAD STOCKTON, NJ 05889 |
| 2. 1843 AMENDMENT NO. 1 TO SOFTWARE LICENSE AGREEMENT | | 101544 | ☐ | INXIGHT SOFTWARE INC. | ATTN: GENERAL COUNSEL 500 MACARA AVENUE SUNNYVALE, CA 94085 |
| 2. 1844 AMENDMENT NO. 2 TO SOFTWARE LICENSE AGREEMENT | | 101546 | ☐ | INXIGHT SOFTWARE, INC. | ATTN: GENERAL COUNSEL 500 MACARA AVENUE SUNNYVALE, CA 94085 |
| 2. 1845 INXIGHT SOFTWARE LICENSE AGREEMENT | | 101545 | ☐ | INXIGHT SOFTWARE, INC. | ATTN: GENERAL COUNSEL 500 MACARA AVENUE SUNNYVALE, CA 94085 |
| 2. 1846 SOFTWARE LICENSE AGREEMENT | | 101549 | ☐ | IOMOSAIC CORPORATION | ATTN: GENERAL COUNSEL 93 STILES ROAD SALEM, NH 03079 |
| 2. 1847 SUPPORT TERMS AND CONDITIONS | | 101565 | ☐ | IVO NETWORKS, INC. | 1840 GATEWAY DR SAN MATEO, CA 94404 |
| 2. 1848 SOFTWARE LICENSE AGREEMENT | | 101674 | ☐ | KNOWLEDGE MANAGEMENT SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 839 ELKRIDGE LANDING ROAD, SUITE 2015 LINTHICUM, MD 21090 |

**NAS1369**

**Purdue Pharma L.P.**                                                                         **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1849 SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 101675 | ☐ | KOFAX, INC. | ATTN: GENERAL COUNSEL 15211 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1850 KDB+ SOFTWARE LICENSE AGREEMENT | | 101698 | ☐ | KX SYSTEMS, INC. | ATTN: GENERAL COUNSEL 555 BRYANT STREET SUITE 375 PALO ALTO, CA 94301 |
| 2. 1851 LICENSED CORE EXPANSION ADDENDUM NO.1 TO SOFTWARE LICENSE AGREEMENT | | 101699 | ☐ | KX SYSTEMS, INC. | ATTN: GENERAL COUNSEL 555 BRYANT STREET #375 PALO ALTO, CA 94301 |
| 2. 1852 MASTER SOFTWARE LICENSE AGREEMENT | | 101724 | ☐ | LABWARE LIMS | ATTN: JO WEBBER THREE MILL ROAD SUITE 102 WILMINGTON, DE 19806 |
| 2. 1853 AMENDMENT #4 TO MASTER SOFTWARE LICENSE AGREEMENT | | 101725 | ☐ | LABWARE, INC. | ATTN: GENERAL COUNSEL THREE MILL ROAD, SUITE 102 WILMINGTON, DE 19806 |
| 2. 1854 MASTER SOFTWARE LICENSE AGREEMENT | | 101727 | ☐ | LABWARE, INC. | ATTN: GENERAL COUNSEL THREE MILL ROAD WILMINGTON, DE 19806 |
| 2. 1855 MASTER SOFTWARE LICENSE AGREEMENT | | 101763 | ☐ | LIBERTY INFORMATION MANAGEMENT SYSTEMS | ATTN: GENERAL COUNSEL 3158 RED HILL  AVE SUITE 100 COSTA MESA, CA 92626 |
| 2. 1856 SOFTWARE LICENSE AND SERVICES AGREEMENT | | 101773 | ☐ | LINCOLN TECHNOLOGIES | ATTN: GENERAL COUNSEL 880 WINTER STREET WALTHAM, MA 02451 |
| 2. 1857 SOFTWARE ESCROW AGREEMENT BETWEEN LINCOLN-PARRY SOFTESCROW, INC. AND QUMAS LIMITED AND ITS SUBSIDIARY QUMAS INC. | | 101774 | ☐ | LINCOLN-PARRY SOFTESCROW, INC. | ATTN: GENERAL COUNSEL 400 INERVNESS DRIVE, SOUTH SUITE 200 ENGLEWOOD, CO 80112 |

**NAS1370**

**Purdue Pharma L.P.**                                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1858 END USER SOFTWARE EVALUATION LICENSE AGREEMENT | | 101786 | ☐ | LIQUENT, INC. | ATTN: GENERAL COUNSEL 1300 VIRGINIA DRIVE SUITE 125 WASHIINGTON, PA 19034 |
| 2. 1859 SOFTWARE LICENSE AND SERVICE AGREEMENT | | 101797 | ☐ | LORENZ INTERNATIONAL LLC | ATTN: GENERAL COUNSEL 1515 MARKET ST., SUITE 200 PHILADELPHIA, PA 19102 |
| 2. 1860 MASERGY ORD16AUG16 CW2319114 INSTALLATION OF NETWORKING CIRCUIT (NDK) | | 101898 | ☐ | MASERGY | ATTN: GENERAL COUNSEL ONE GRAND CENTRAL PLACE, 60 E 42ND ST NEW YORK, NY 10165 |
| 2. 1861 SOFTWARE LICENSE AND SUPPORT AGREEMENT | | 101933 | ☐ | MDL INFORMATION SYSTEMS, INC. | ATTN: GENERAL COUNSEL SUITE 710 SAN LEANDRO, CA 94577 |
| 2. 1862 FOURTH AMENDMENT TO THE SERVICES AND LICENSE AGREEMENT | | 101952 | ☐ | MEDSTAT | ATTN: GENERAL COUNSEL 777 EAST EISENHOWER PARKWAY ANN ARBOR, MI 48108 |
| 2. 1863 SELECT PLUS SIGNATURE FORM AND AFFILIATE REGISTRATION FORM | | 101986 | ☐ | MICROSOFT CORP. | ATTN: GENERAL COUNSEL ONE MICROSOFT WAY REDMOND, WA 98052 |
| 2. 1864 TAP FRAMEWORK PARTICIPATION AGREEMENT | | 101987 | ☐ | MICROSOFT CORPORATION | ATTN: GENERAL COUNSEL ONE MICROSOFT WAY REDMOND, WA 98052-7329 |
| 2. 1865 MICROSOFT BUSINESS AGREEMENT | | 101988 | ☐ | MICROSOFT LAW AND CORPORATE AFFAIRS/MSLI, GP | ATTN: GENERAL COUNSEL MSLI: 6100 NEIL ROAD, SUITE 210 RENO, NV 89511 ONE MICROSOFT WAY, REDMOND, WA 98052 |
| 2. 1866 LICENSING AGREEMENT | | 101989 | ☐ | MICROSOFT LICENSING GP | ATTN: GENERAL COUNSEL DEPT 551, VOLUME LICENSING 6100 NEIL ROAD, SUITE 210 RENO, NV 89511 |

**NAS1371**

**Purdue Pharma L.P.**                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1867  AMENDMENT 1 TO BUSINESS AGREEMENT | | 101993 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL DEPT. 551, VOLUME LICENSING 6100 NEIL ROAD, SUITE 201 RENO, NV 89511 |
| 2. 1868  MICROSOFT SERVICES AGREEMENT | | 101990 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL 6100 NEIL ROAD, SUITE 210 RENO, NV 89511 |
| 2. 1869  MICROSOFT TESTING & ADOPTION PROGRAM | | 101994 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL 6100 NEIL ROAD, SUITE 210 RENO, NV 89511 |
| 2. 1870  VOLUME LICENSING AGREEMENT | | 101992 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL DEPT. 551. VOLUME LICENSING 6100 NEIL ROAD, SUITE 210 RENO, NV 89511 |
| 2. 1871  MASTER SOFTWARE LICENSE AND SERVICES AGREEMENT | | 101998 | ☐ | MICROSTRATEGY SERVICES CORPORATION | ATTN: GENERAL COUNSEL 1861 INTERNATIONAL DRIVE MCLEAN, VA 22102 |
| 2. 1872  AMENDMENT #1 TO END USER LICENSE AGREEMENT | | 102032 | ☐ | MOBILE IRON INC | ATTN: GENERAL COUNSEL 815A EAST MIDDLEFIELD ROAD MOUNTIAN VIEW, CA 94043 |
| 2. 1873  SUPPORT AND MAINTENANCE AGREEMENT | | 102196 | ☐ | NETWORK ASSOCIATES, INC | ATTN: DAVE ROGERS 3965 FREEDOM CIRCLE SANTA CLARA, CA 95054 |
| 2. 1874  MASTER PERPETUAL SOFTWARE LICENSE AGREEMENT | | 102197 | ☐ | NETWORK ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 3965 FREEDOM CIRCLE SANTA CLARA, CA 95054 |
| 2. 1875  PERPETUAL SOFTWARE LICENSE AGREEMENT | | 102199 | ☐ | NETWORKS ASSOCIATES, INC | ATTN: DAVE ROGERS 3965 FREEDOM CIRCLE SANTA CLARA, CA 95054 |
| 2. 1876  ADDENDUM NO. 11 TO WORK AUTHORIZATION AND SCHEDULE OF FEES | | 102290 | ☐ | ONLINE BUSINESS APPLICATIONS, INC. | 9018 HERITAGE PKY SUITE 00 WOODRIDGE, IL |

**NAS1372**

**Purdue Pharma L.P.**                                                                                 Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1877  SOFTWARE LICENSE AGREEMENT NO. 990601 | | 102291 | ☐ | ONLINE BUSINESS APPLICATIONS, INC. | ATTN: GENERAL COUNSEL 602 EXECUTIVE DRIVE WILLOWBROOK, IL 60521 |
| 2. 1878  SOFTWARE MAINTENANCE AGREEMENT | | 102289 | ☐ | ONLINE BUSINESS APPLICATIONS, INC. | ATTN: GENERAL COUNSEL 9018 HERITAGE PARKWAY SUITE 600 WOODRIDGE, IL 60517 |
| 2. 1879  LICENSE AND SERVICES AGREEMENT | | 102310 | ☐ | ORACLE AMERICA, INC. | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 1880  AMENDMENT 3 TO MASTER SERVIES AGREEMENT | | 102335 | ☐ | PACKETLOGIX, INC. | ATTN: GENERAL COUNSEL 16 CUTLER ST WARREN, RI 02885 |
| 2. 1881  SOFTWARE TERMS AND CONDITIONS | | 102363 | ☐ | PARTEK INCORPORATED | ATTN: GENERAL COUNSEL 4 RESEARCH PARK DRIVE SUITE 100 ST. CHARLES, MO 63304 |
| 2. 1882  SOFTWARE LICENSE AGREEMENT | | 102373 | ☐ | PATHOLOGY DATA SYSTEMS LTD (PDS) | ATTN: GENERAL COUNSEL HAUPTSTRASSE 56 4127 BIRSFELDEN BASEL |
| 2. 1883  SOFTWARE, LICENSE, SUPPORT PROFESSIONAL SERVICES AGREEMENT | | 102516 | ☐ | POMS CORPORATION | ATTN: GENERAL COUNSEL 21641 RIDGETOP CIR #200 STERLING, VA 20166 |
| 2. 1884  ADDENDUM NO. 3 TO SUBSCRIPTION AGREEMENT | | 102519 | ☐ | PORZIO LIFE SCIENCES, LLC | ATTN: GENERAL COUNSEL 100 SOUTHGATE PARKWAY MORRISTOWN, NJ 07962-1997 |
| 2. 1885  PPD STATISTICAL ANALYSIS APPLICATIONS MULTI-STUDY LIMITED SOFTWARE CODE LICENSE AGREEMENT 11302016 CW2323324 | | 102524 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |

**NAS1373**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1886 AMENDMENT #1 TO MASTER SERVICES AGREEMENT | | 102559 | ☐ | PREEMINENT SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1225 FRANKLIN AVENUE, SUITE 325 GARDEN CITY, NJ 11530 |
| 2. 1887 MASTER SERVICES AGREEMENT | | 102558 | ☐ | PREEMINENT SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1225 FRANKLIN AVENUE, SUITE 325 GARDEN CITY, NJ 11530 |
| 2. 1888 AMENDMENT #4 TO MASTER SERVICES AGREEMENT | | 102567 | ☐ | PRESIDIO NETWORKED SOLUTIONS GROUP, LLC F/K/A BLUEWATER COMMUNICATIONS GROUP, LLC | ATTN: GENERAL COUNSEL 1 PENNSYLVANIA PLAZA NEW YORK, NY 10119 |
| 2. 1889 AMENDMENT #1 TO SOFTWARE LICENSE AGREEMENT | | 102577 | ☐ | PRIME TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 20 HAGERTY BOULEVARD, SUITE #1 WEST CHESTER, PA 19382 |
| 2. 1890 SOFTWARE LICENSE AGREEMENT | | 102578 | ☐ | PRIME TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 20 HAGERTY BOULEVARD, SUITE #1 WEST CHESTER, PA 19382 |
| 2. 1891 SCHEDULE 01 FOR SOFTWARE LICENSE AGREEMENT | | 102642 | ☐ | PROPACK DATA CORPORATION | ATTN: GENERAL COUNSEL 2000 REGENCY PARKWAY, SUITE 675 CARY, NC 27511 |
| 2. 1892 SOFTWARE LICENSE AGREEMENT | | 102643 | ☐ | PROPACK DATA CORPORATION | ATTN: GENERAL COUNSEL 2000 REGENCY PARKWAY, SUITE 675 CARY, NC 27511 |
| 2. 1893 ADDENDUM NO.1 TO SOFTWARE LICENSE AGREEMENT | | 102761 | ☐ | QUMAS INC. | ATTN: GENERAL COUNSEL 325 COLUMBIA TURNPIKE FLORHAM PARK, NJ 07932 |
| 2. 1894 SOFTWARE LICENSE AGREEMENT | | 102759 | ☐ | QUMAS INC. | ATTN: GENERAL COUNSEL 325 COLUMBIA TURNPIKE FLORHAM PARK, NJ 07932 |

**NAS1374**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1895 | ADDENDUM NO. 2 TO SOFTWARE LICENSE AGREEMENT AND SOFTWARE MAINTENANCE AGREEMENT | | 102763 | ☐ | QUMAS, INC. | ATTN: GENERAL COUNSEL 66 YORK STREET JERSEY CITY, NJ 07302 |
| 2. 1896 | ADDENDUM NO. 3 TO SOFTWARE LICENSE AGREEMENT TO MAINTENANCE AGREEMENT | | 102764 | ☐ | QUMAS, INC. | ATTN: GENERAL COUNSEL 66 YORK STREET JERSEY CITY, NJ 07302 |
| 2. 1897 | ADDENDUM TO LICENSE AGREEMENT | | 102821 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1898 | FIFTH AMENDMENT TO LICENSE AGREEMENT | | 102814 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1899 | FIRST AMENDMENT TO LICENSE AGREEMENT | | 102812 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1900 | FIRST AMENDMENT TO MODULE MAINTENANCE AGREEMENT | | 102813 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1901 | FOURTH AMENDMENT TO MAINTENANCE AGREEMENT | | 102820 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAUGNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1902 | LICENSE AGREEMENT | | 102810 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 16267 LAGUNA CANYON ROAD, P.O. BOX 50700 IRVINE, CA 92619 |
| 2. 1903 | SECOND AMENDMENT TO LICENSE AGREEMENT | | 102806 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |

**NAS1375**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1904 SECOND AMENDMENT TO MAINTENANCE AGREEMENT | | 102807 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1905 STATEMENT OF WORK | | 102804 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1906 STATEMENT OF WORK | | 102805 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1907 THIRD AMENDMENT TO LICENSE AGREEMENT | | 102808 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1908 THIRD AMENDMENT TO MIANTENANCE AGREEMENT | | 102809 | ☐ | RELSYS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 16267 LAGUNA CANYON ROAD IRVINE, CA 92618 |
| 2. 1909 SOFTWARE EVALUATION AGREEMENT | | 102844 | ☐ | REVOLUTION ANALYTICS, INC. | ATTN: GENERAL COUNSEL 2570 WEST EL CAMINO REAL SUITE 222 MOUNTAIN VIEW, CA 94040 |
| 2. 1910 SOFTWARE LICENSE AGREEMENT AND QUOTE | | 102842 | ☐ | REVOLUTION ANALYTICS, INC. | ATTN: GENERAL COUNSEL 2570 W. EL CAMINO REAL, SUITE 222, MOUNTAIN VIEW PALO ALTO, CA 94040 |
| 2. 1911 PROFESSIONAL SERVICES AGREEMENT | | 102939 | ☐ | RSA SECURITY, INC. | ATTN: GENERAL COUNSEL 174 MIDDLESEX TURNPIKE BEDFORD, MA 10730 |
| 2. 1912 DEMONSTRATION SOFTWARE LICENSE AGREEMENT | | 102945 | ☐ | RTI-HEALTH SOLUTIONS | PO BOX 12194 3040 EAST CORNWALLIS ROAD RESEARCH TRIANGLE PARK, NC 27709-2194 |

**NAS1376**

**Purdue Pharma L.P.**                                                                                      **Case Number:   19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1913   SOFTWARE LICENSE AGREEMENT | | 102956 | ☐ | SAFEBOOT, LLC | ATTN: GENERAL COUNSEL SPECTRUM OFFICE SYSTEMS INC. 11320 RANDOM HILLS ROAD, SUITE 630 FAIRFAX, VA 22030 |
| 2. 1914   GENERAL TERMS AND CONDITIONS FOR CLOUD SERVICES AGREEMENT | | 102993 | ☐ | SAP AMERICA, INC | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1915   SUCCESSFACTORS - 2019 RENEWAL ORDER FORM FOR SAP CLOUD SERVICES CW2366773 (PB.RA) EFFECTIVE JUNE 29, 2019 | 6/29/2020 | 106039 | ☐ | SAP AMERICA, INC | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1916   AMENDMENT #3 TO SOFTWARE END USER LICENSE AGREEMENT | | 103004 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1917   AMENDMENT 1 TO MAINTENANCE SCHEDULE TO SOFTWARE END-USER LICENSE AGREEMENT | | 103003 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1918   AMENDMENT 1 TO STATEMENT OF WORK TO PROFESSIONAL SERVICES AGREEMENT | | 103008 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1919   AMENDMENT 5 TO SOFTWARE END-USER LICENSE AGREEMENT | | 103006 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1920   LETTER AGREEMENT | | 103000 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WESTCHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 1921   PROFESSIONAL SERVICES AGREEMENT | | 103009 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL 3999 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1922  SAP ORD CW2358039 S4 HANA (DS.EA) | | 103007 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL<br>3999 WEST CHESTER PIKE<br>NEWTOWN SQUARE, PA 19073 |
| 2. 1923  SOFTWARE END-USER LICENSE AGREEMENT | | 102998 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL<br>3999 WEST CHESTER PIKE<br>NEWTOWN SQUARE, PA 19073 |
| 2. 1924  SOFTWARE ORDER FORM NO. 32 | | 103005 | ☐ | SAP AMERICA, INC. | ATTN: GENERAL COUNSEL<br>3999 WEST CHESTER PIKE<br>NEWTOWN SQUARE, PA 19073 |
| 2. 1925  AMENDMENT NO. 1 TO INSTITUTE LICENSE AGREEMENT SOURCE CODE ESCROW | | 103020 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL<br>SAS CAMPUS DRIVE<br>CARY, NC 27513 |
| 2. 1926  AMENDMENT NO. 4 TO MASTER LICENSE AGREEMENT ELECTRONIC SOFTWARE DOWNLOAD | | 103017 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL<br>SAS CAMPUS DRIVE<br>CARY, NC 27513 |
| 2. 1927  MASTER LICENSE AND SUPPORT AGREEMENT | | 103047 | ☐ | SERVICE-NOW.COM | ATTN: GENERAL COUNSEL<br>LEGAL COUNSEL: 12225 EL CAMINO REAL, SUITE 100<br>SAN DIEGO, CA 92130 |
| 2. 1928  MASTER LICENSE AGREEMENT | | 103110 | ☐ | SKILLSOFT CORPORATION | ATTN: GENERAL COUNSEL<br>107 NORTHEASTERN BLVD<br>NASHUA, NH 03062 |
| 2. 1929  SOFTWARE ORDER FORM | | 103111 | ☐ | SKILLSOFT CORPORATION | ATTN: GENERAL COUNSEL<br>107 NORTHEASTERN BLVD<br>NASHUA, NH 03062 |
| 2. 1930  SOFTWARE LICENSE AGREEMENT | | 103113 | ☐ | SKURA CORPORATION, INC. | ATTN: GENERAL COUNSEL<br>2275 UPPER MIDDLE ROAD EAST, SUITE 200<br>OAKVILLE, ONTARIO, CANADA ON L6H 0O3<br>CANADA |

**NAS1378**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1931   LICENSE AND USE AGREEMENT | | 103115 | ☐ | SMG MARKETING GROUP INC | ATTN: GENERAL COUNSEL<br>875 NORTH MICHIGAN AVENUE<br>CHICAGO, IL 60611 |
| 2. 1932   DATABASE LICENSE USE & PURCHASE AGREEMENT | | 103116 | ☐ | SMG MARKETING GROUP INC. | ATTN: GENERAL COUNSEL<br>875 NORTH MICHIGAN AVENUE<br>CHICAGO, IL 60611 |
| 2. 1933   SOFTWARE LICENSE AGREEMENT - AMENDMENT NO. 3 | | 103125 | ☐ | SOFTWARE AG USA, INC. | ATTN: GENERAL COUNSEL<br>2 PENNSYLVANIA PLAZA<br>NEW YORK, NY 10001 |
| 2. 1934   TERMS OF SERVICE AGREEMENT | | 103171 | ☐ | SPLUNK INC. | ATTN: GENERAL COUNSEL<br>250 BRANNAN STREET<br>SAN FRANCISCO 94107 |
| 2. 1935   SPOTFIRE SOFTWARE LICENSE AND MAINTENANCE AGREEMENT | | 103172 | ☐ | SPOTFIRE, INC. | ATTN: GENERAL COUNSEL<br>212 ELM STREET<br>SOMERVILLE, MA 02144 |
| 2. 1936   SOFTWARE LICENSE AGREEMENT | | 103186 | ☐ | STEEPROCK, INC. | ATTN: GENERAL COUNSEL<br>19 BRISTOL STREET<br>CAMBRIDGE, MA 02142 |
| 2. 1937   SOFTWARE LICENSE AGREEMENT | | 103187 | ☐ | STEEPROCK, INC. | ATTN: GENERAL COUNSEL<br>19 BRISTOL STREET<br>CAMBRIDGE, MA 02142 |
| 2. 1938   SOFTWARE LICENSE AGREEMENT | | 103188 | ☐ | STEEPROCK, INC. | ATTN: GENERAL COUNSEL<br>19 BRISTOL STREET<br>CAMBRIDGE, MA 02142 |
| 2. 1939   AMENDMENT G TO TERM SOFTWARE LICENSE AGREEMENT | | 103196 | ☐ | STERLING COMMERCE (AMERICA), INC. | 350 NORTH SAINT PAUL STREET<br>DALLAS, TX 75201 |
| 2. 1940   YEAR 2000 SERVICES AGREEMENT | | 103215 | ☐ | STRATEGIA CORPORATION | ATTN: GENERAL COUNSEL<br>P.O. BOX 37144<br>LOUISVILLE, KY 40233 |

**NAS1379**

Purdue Pharma L.P.                                                                                    Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1941   CONTRACT ASSUMPTION AGREEMENT | | 103230 | ☐ | SUPPLY CHAIN TECHNOLOGIES LLC | ATTN: GENERAL COUNSEL<br>303 ROUTE 35<br>UNIT 5<br>POINT PLEASANT BEACH 08742 |
| 2. 1942   ADDENDUM TO THE STATEMENT OF WORK | | 103239 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>350 ELLIS STREET<br>MOUNTAIN VIEW, CA 94043 |
| 2. 1943   AMENDMENT 1 TO MANAGED SECURITY SERVICES CERTIFICATE | | 103242 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>350 ELLIS STREET<br>MOUNTAIN VIEW, CA 94043 |
| 2. 1944   AMENDMENT NO. 1 TO SERVICES AGREEMENT | | 103240 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>350 ELLIS STREET<br>MOUNTAIN VIEW, CA 94043 |
| 2. 1945   CHANGE ORDER FORM | | 103238 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>20330 STEVENS CREEK BOULEVARD<br>CUPERTINO, CA 95014 |
| 2. 1946   CHANGES ADDENDUM TO THE REWARDS PROGRAM | | 103244 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>20330 STEVENS CREEK BOULEVARD<br>CUPERTINO, CA 95014 |
| 2. 1947   MASTER SERVICES AGREEMENT | | 103237 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>20330 STEVENS CREEK BOULEVARD<br>CUPERTINO, CA 95014 |
| 2. 1948   REWARDS PROGRAM AGREEMENT - TERMS AND CONDITIONS | | 103245 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>350 ELLIS STREET<br>MOUNTAIN VIEW, CA 94043 |
| 2. 1949   SOW TO MASTER SERVICES AGMT. | | 103246 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL<br>20330 STEVENS CREEK BOULEVARD<br>CUPERTINO, CA 95014 |

NAS1380

**Purdue Pharma L.P.**                                                                                         **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1950 SOW TO MASTER SERVICES AGMT. | | 103248 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL 20330 STEVENS CREEK BOULEVARD CUPERTINO, CA 95014 |
| 2. 1951 TERMINATION LETTER - TERMINATES SOW DATED 6122007 | | 103249 | ☐ | SYMANTEC CORPORATION | ATTN: GENERAL COUNSEL 350 ELLIS STREET MOUNTAIN VIEW, CA 94043 |
| 2. 1952 SCHEDULE #7 TO ISIS DESKTOP/HOST SOFTWARE LICENSE AGREEMENT | | 103261 | ☐ | SYMYX SOFTWARE INC | ATTN: GENERAL COUNSEL 2440 CAMINO RAMON SUITE 300 SAN RAMON, CA 94583 |
| 2. 1953 SCHEDULE 6 TO SOFTWARE LICENSE AGREEMENT | | 103259 | ☐ | SYMYX SOFTWARE INC | ATTN: GENERAL COUNSEL 2440 CAMINO RAMON SUITE 300 SAN RAMON, CA 94583 |
| 2. 1954 SCHEDULE #7 TO ISIS DESKTOP/HOST SOFTWARE LICENSE AGREEMENT | | 103263 | ☐ | SYMYX SOFTWARE, INC. | ATTN: GENERAL COUNSEL 2440 CAMINO RAMON SUITE 300 SAN RAMON, CA 94583 |
| 2. 1955 SOFTWARE LICENSE AGREEMENT | | 103285 | ☐ | TDS TOXICOLOGY DATA SYSTEMS, LTD. | ATTN: GENERAL COUNSEL HAUPTSTRASSE 56 4127 BIRSFELDEN BASEL |
| 2. 1956 SOFTWARE LICENSE AGREEMENT | | 103287 | ☐ | TENABLE NETWORK SECURITY | ATTN: GENERAL COUNSEL 7063 COLUMBIA GATEWAY DRIVE, SUITE 100 COLUMBIA, MD 21046 |
| 2. 1957 LEASE AGREEMENT | | 103346 | ☐ | THE JOLT AGENCY, LLC | ATTN: GENERAL COUNSEL 210 SUMMIT AVENUE MONTVALE, NJ 07645 |
| 2. 1958 AMENDMENT TO SOFTWARE LICENSE & MAINTENANCE AGREEMENT | | 103409 | ☐ | TIBCO SOFTWARE, INC. | ATTN: GENERAL COUNSEL 3307 HILLVIEW AVENUE PALO ALTO, CA 94304 |

**NAS1381**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 388 of 1000

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1959 SOFTWARE LICENSE AND MAINTENANCE AGREEMENT | | 103408 | ☐ | TIBCO SOFTWARE, INC. | ATTN: GENERAL COUNSEL PURDUE: 6 CEDARBROOK DRIVE CRANBURY, NJ 08512 212 ELM STREET SOMERVILLE, MA 02144 |
| 2. 1960 SCHEDULE FOR CONTRACT NEGOTIATION SERVICES | | 103418 | ☐ | TNT PARTNERS, LLC | ATTN: GENERAL COUNSEL 19 WHISPER LN BELTON, MO 64012 |
| 2. 1961 TELECOM CONTRACT NEGOTIATIONS SCOPE DOCUMENT | | 103419 | ☐ | TNT PARTNERS, LLC | ATTN: GENERAL COUNSEL 19 WHISPER LN BELTON, MO 64012 |
| 2. 1962 IBM MSA CW2365546 FORMERLY TRUVEN (LH.RA) EFFECTIVE MARCH 28, 2019 | 3/27/2049 | 105946 | ☐ | TRUVEN HEALTH ANALYTICS LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1963 IBM MSA CW2365546 FORMERLY TRUVEN (LH.RA) EFFECTIVE MARCH 28, 2019 | 3/27/2049 | 105947 | ☐ | TRUVEN HEALTH ANALYTICS LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 1964 SOURCE CODE ESCROW AGREEMENT | | 103474 | ☐ | TRW INC. | ATTN: GENERAL COUNSEL 12011 SUNSET HILLS ROAD RESTON, VA 20190 |
| 2. 1965 SOFTWARE LICENSE AGREEMENT | | 103645 | ☐ | VALUE LINE, INC. | ATTN: GENERAL COUNSEL 551 FIFTH AVENUE 3RD NEW YORK, NY 10176 |
| 2. 1966 VARONIS SUPPORT SERVICES AGREEMENT AND LICENSE AGREEMENT | | 103654 | ☐ | VARONIS SYSTEMS, INC. | ATTN: GENERAL COUNSEL 499 SEVENTH AV., NEW YORK, NY 10018 |
| 2. 1967 AMENDMENT #1 TO MASTER SERVICES AGREEMENT | | 103665 | ☐ | VENAFI, INC. | ATTN: GENERAL COUNSEL 126 WEST SEGO LILY DRIVE, SUITE 126 SANDY, UT 84070 |

**NAS1382**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1968 AMENDMENT ONE TO THE MASTER SOFTWARE LICENSE AND SERVICES AGREEMENT | | 103664 | ☐ | VENAFI, INC. | ATTN: GENERAL COUNSEL 126 WEST SEGO LILY DRIVE, SUITE 126 SANDY, UT 84070 |
| 2. 1969 MASTER SOFTWARE LICENSE AND SERVICES AGREEMENT | | 103663 | ☐ | VENAFI, INC. | ATTN: GENERAL COUNSEL 126 W. SEGO LILY DRIVE, SUITE 126 SANDY, UT 84070 |
| 2. 1970 MASTER SERVICES AGREEMENT | | 103672 | ☐ | VEROXITY TECHNOLOGY PARTNERS | ATTN: GENERAL COUNSEL 182 BEN BURTON CIRCLE, #300 BOGART, GA 30622 |
| 2. 1971 MASTER SOFTWARE LICENSE AND SUBSCRIPTION AGREEMENT | | 103676 | ☐ | VINYL DEVELOPMENT, LLC DBA ZUDY | ATTN: PRESIDENT 690 LINCOLN RAOD SUITE 201 MIAMI BEACH, FL 33139 |
| 2. 1972 AMENDMENT NO. 3 TO SOFTWARE LICENSE AGREEMENT | | 103682 | ☐ | VITAL PATH INC. | ATTN: GENERAL COUNSEL 501 CAMBRIA AVE BENSALEM, PA 19020 |
| 2. 1973 SOFTWARE LICENSE AGREEMENT | | 103683 | ☐ | VITAL PATH INC. | ATTN: GENERAL COUNSEL 501 CAMBRIA AVE BENSALEM, PA 19020 |
| 2. 1974 SOFTWARE LICENSING AGREEMENT | | 103681 | ☐ | VITAL PATH INC. | ATTN: GENERAL COUNSEL 501 CAMBRIA AVE BENSALEM, PA 19020 |
| 2. 1975 SOFTWARE MAINTENANCE AGREEMENT | | 103684 | ☐ | VITAL PATH INC. | ATTN: GENERAL COUNSEL 501 CAMBRIA AVE.        SUITE 140 BENSALEM, PA 19020 |
| 2. 1976 VITALYST - MSA CW JULY2016 (CG) | | 103688 | ☐ | VITALYST, LLC | ATTN: GENERAL COUNSEL ONE BALA PLAZA, SUITE 434 BALA CYNWYD, PA 19004 |

**NAS1383**

Case 7:21-cv-07532-CM   Document 158-2   Filed 11/15/21   Page 390 of 1000

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1977   PROOF OF CONCEPT AGREEMENT | | 103690 | ☐ | VIVISIMO, INC. | ATTN: GENERAL COUNSEL<br>1710 MURRAY AVENUE<br>PITTSBURGH, PA 15217 |
| 2. 1978   MASTER SOFTWARE LICENSE AGREEMENT | | 103706 | ☐ | W VENTURE, LLC | ATTN: GENERAL COUNSEL<br>5866 BIRCH COURT<br>OAKLAND, CA 94618 |
| 2. 1979   SOFTWARE LICENSE AGREEMENT | | 103740 | ☐ | WINSHUTTLE, LLC | ATTN: GENERAL COUNSEL<br>20021 120TH AVE. NE STE 101<br>BOTHELL, WA 98011 |
| 2. 1980   MASTER SUBSCRIPTION AGREEMENT | | 103762 | ☐ | ZOOM VIDEO COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL<br>HTTP://WWW.ZOOM.US<br>55 ALMADEN BLVD #600<br>SAN JOSE, CA 95113 |
| 2. 1981   AMENDMENT #1 TO MASTER SUBSCRIPTION AGREEMENT | | 103780 | ☐ | ZSCALER, INC. | ATTN: GENERAL COUNSEL<br>392 PROTRERO AVENUE<br>SUNNYVALE, CA 94085 |
| 2. 1982   MASTER SERVICES AGREEMENT | | 103778 | ☐ | ZSCALER, INC. | ATTN: GENERAL COUNSEL<br>392 PROTRERO AVENUE<br>SUNNYVALE, CA 94085 |
| 2. 1983   ZSCALER AMD 3 TO MSA CW2355647 (RH.RA) | | 103781 | ☐ | ZSCALER, INC. | ATTN: GENERAL COUNSEL<br>500 7TH AVENUE, 8TH FLOOR<br>NEW YORK, NY 10018 |

**NAS1384**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Financial Agreements** | | | | | |
| 2. 1984　COLLATERAL TRUST AGREEMENT | | G-3008 | ☐ | COLUMBIA CASUALTY COMPANY, AS BENEFICIARY | ATTN: COLLATERAL CONTROL UNIT, 19TH FLOOR 333 S. WABASH AVENUE CHICAGO, IL 60604 |
| 2. 1985　TRUST AGREEMENT | | G-3007 | ☐ | ISOSCELES INSURANCE LTD., ACTING IN RESPECT OF SEPARATE ACCOUNT NO PLP-01 | ATTN: MR. RICHARD DALEY 29 RICHMOND ROAD 2ND FLOOR PEMBROKE HM 08 BELGIUM |
| 2. 1986　ESCROW AGREEMENT | | G-3002 | ☐ | LIBERTY MUTUAL INSURANCE COMPANY | ATTN: STEVE WHALEN 175 BERKELEY STREET BOSTON, MA 02116 |
| 2. 1987　ESCROW AGREEMENT ADDENDUM | | G-3001 | ☐ | LIBERTY MUTUAL INSURANCE COMPANY | ATTN: STEVE WHALEN 175 BERKELEY STREET BOSTON, MA 02116 |
| 2. 1988　TRUST ACCOUNT AGREEMENT | | G-3006 | ☐ | METROPOLITAN COMMERCIAL BANK, THE TRUSTEE | ATTN: M. GUARINO, LEGAL / P. GUIDI, OPERATIONS 99 PARK AVE. NEW YORK, NY 10016 |
| 2. 1989　ESCROW, SECURITY AND CONTROL AGREEMENT FOR PAYMENT AGREEMENT OBLIGATIONS | | G-3004 | ☐ | NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, AS BENEFICIARY | ATTN: COLLATERAL MANAGEMENT P.O. BOX 923 WALL STREET STATION NEW YORK, NY 10268 |
| 2. 1990　TREATY TRUST ACCOUNT AGREEMENT | | G-3003 | ☐ | OLD REPUBLIC INSURANCE COMPANY, AS BENEFICIARY | ATTN: CFO C/O OLD REPUBLIC RISK MANAGEMENT, INC. 445 SOUTH MOORLAND ROAD, SUITE 300 BROOKFIELD, WI 53005 |

**NAS1385**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 1991 TRUST ACCOUNT AGREEMENT | | G-3006 | ☐ | OPTUM RX, INC. | ATTN: S.V.P. INDUSTRY RELATIONS 17900 VON KARMEN AVE. M/S CA 016-0202 IRVINE, CA 92614 |
| 2. 1992 ESCROW AGREEMENT | | G-3002 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS ESCROW AGENT | ATTN: KWEKU ASARE, CORPORATE, MUNICIPAL AND ESCROW SOLUTIONS 150 EAST 42ND STREET 40TH FLOOR NEW YORK, NY 10017 |
| 2. 1993 ESCROW AGREEMENT ADDENDUM | | G-3001 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS ESCROW AGENT | ATTN: KWEKU ASARE, CORPORATE, MUNICIPAL AND ESCROW SOLUTIONS 150 EAST 42ND STREET 40TH FLOOR NEW YORK, NY 10017 |
| 2. 1994 ESCROW, SECURITY AND CONTROL AGREEMENT FOR PAYMENT AGREEMENT OBLIGATIONS | | G-3004 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS ESCROW AGENT | ATTN: JARRETT SHERRON 150 EAST 42ND STREET 40TH FLOOR NEW YORK, NY 10017 |
| 2. 1995 COLLATERAL TRUST AGREEMENT | | G-3008 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE | ATTN: CLIENT SERVICE CONSULTANT FOR CNA INSURANCE INSURANCE TRUST GROUP 150 EAST 42ND STREET, 40TH FLOOR NEW YORK, NY 10017 |
| 2. 1996 TREATY TRUST ACCOUNT AGREEMENT | | G-3003 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE | ATTN: STEPHEN M. BRUCE, VICE PRESIDENT 150 EAST 42ND STREET 40TH FLOOR NEW YORK, NY 10017 |

**NAS1386**

Case 7:21-cv-07532-CM   Document 158-2   Filed 11/15/21   Page 393 of 1000

**Purdue Pharma L.P.**                                                                    Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2.  1997    TRUST AGREEMENT | | G-3007 | ☐ | WELLS FARGO BANK, NATIONAL ASSOCIATION, AS TRUSTEE | ATTN: JARRETT SHERRON CORPORATE TRUST SERVICES 150 EAST 42ND STREET 40TH FLOOR NEW YORK, NY 10017 |

**NAS1387**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Vehicle & Equipment Leases** | | | | | |
| 2. 1998 LEASE AGREEMENT EXECUTED APRIL 24, 2015 | | EL-8830 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 1999 LEASE AGREEMENT EXECUTED AUGUST 31, 2015 | | EL-4207 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2000 LEASE AGREEMENT EXECUTED DECEMBER 15, 2015 | | EL-5793 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2001 LEASE AGREEMENT EXECUTED DECEMBER 7, 2016 | | EL-3612 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2002 LEASE AGREEMENT EXECUTED JANUARY 21, 2015 | | EL-1322 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2003 LEASE AGREEMENT EXECUTED JULY 20, 2017 | | EL-8197 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2004 LEASE AGREEMENT EXECUTED MARCH 5, 2018 | | EL-8041 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |
| 2. 2005 LEASE AGREEMENT EXECUTED SEPTEMBER 25, 2018 | | EL-1356 | ☐ | RICOH USA, INC. | ATTN: GENERAL COUNSEL 70 VALLEY STREAM PARKWAY MALVERN, PA 19355 |

**NAS1388**

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Confidentiality and/or Disclosure Agreements** | | | | | |
| 2. 2006   ACCOY PHARMACEUTICALS, INC. - CDA 31JAN19 (DS.RA) EFFECTIVE JANUARY 31, 2019 | 1/30/2024 | 106054 | ☐ | ACCOY PHARMACEUTICALS, INC. | NOT AVAILABLE |
| 2. 2007   CONFIDENTIAL DISCLOSURE AGREEMENT EFFECTIVE MARCH 28, 2012 | | 105904 | ☐ | ACTAVIS, INC./ENDO PHARMA/JANSSEN PHARMA/MALLINCKRODT LLC/MYLAN, INC./NOVEN PHARMA/PFIZER, INC./ROXANE LABORATORIES/SANDOZ, INC./TEVA PHARMA USA/THEPHARMANETWORK/VISTA PHARM/WATSON LABS, INC./APOTEX, INC./IMPAX LABS, INC./LAVIPHARM/RANBAXY PHARMA/UPSHER-S | ATTN: GENERAL COUNSEL 6272 LEE VISTA BOULEVARD ORLANDO, FL 32822 |
| 2. 2008   ADRIANA DIFAZIO LLC CDA CW2366345 (LH.RA) EFFECTIVE APRIL 04, 2019 | 4/3/2024 | 105963 | ☐ | ADRIANA DIFAZIO | NOT AVAILABLE |
| 2. 2009   AICURE, LLC - CDA 1APR19 CW2366132 (LH.RA) EFFECTIVE APRIL 01, 2019 | 3/31/2024 | 105976 | ☐ | AICURE, LLC | NOT AVAILABLE |
| 2. 2010   ALACRITA CONSULTING INC. - CDA 7JAN19 CW2365040 (LH.RA) EFFECTIVE JANUARY 07, 2019 | 1/6/2024 | 105938 | ☐ | ALACRITA CONSULTING INC | NOT AVAILABLE |
| 2. 2011   ALPHA SCRIP, INC. CDA 20FEB19 CW2365648 (SD.RA) EFFECTIVE FEBRUARY 20, 2019 | 2/19/2024 | 106178 | ☐ | ALPHA SCRIP INCORPORATED | NOT AVAILABLE |
| 2. 2012   DATA USE AGREEMENT EFFECTIVE JUNE 01, 2010 | | 100187 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | 515 KING ST #510 ALEXANDRIA, VA 22314 |
| 2. 2013   DATA USE AGREEMENT EXECUTED | | 100185 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | 515 KING ST #510 ALEXANDRIA, VA 22314 |
| 2. 2014   DATA USE AGREEMENT EXECUTED | | 100186 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | 515 KING ST #510 ALEXANDRIA, VA 22314 |

**NAS1389**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2015  CONFIDENTIALITY AGREEMENT EFFECTIVE JANUARY 23, 2013 | | 100261 | ☐ | APPLE INC. | ATTN: GENERAL COUNSEL 1 INFINITE LOOP CUPERTINO, CA 95014 |
| 2. 2016  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE JANUARY 30, 2017 | | 105887 | ☐ | ARBOR PHARMACEUTICALS, LLC | ATTN: GENERAL COUNSEL SIX CONCOURSE PARKWAY, SUITE 1800, ATLANTA, GA 30328 USA |
| 2. 2017  CONFIDENTIALITY AGREEMENT EFFECTIVE MAY 14, 2015 | | 100285 | ☐ | ASHLAND SPECIALTY INGREDIENTS GP | ATTN: GENERAL COUNSEL 1005 US 202/206 BRIDGEWATER 08807 |
| 2. 2018  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 14, 2017 | | 105888 | ☐ | AVADEL IRELAND (FLAMEL IRELAND LTD.) | ATTN: GENERAL COUNSEL AVADEL: BLOCK 10-1 BLANCHARDSTOWN CORPORATE PARK, BALLYCOOLIN, DUBLIN 15, IRELAND PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA L1W 3W8 |
| 2. 2019  BANC OF CALIFORNIA, N.A. - CDA 29MAY19 (WC.RA) EFFECTIVE MAY 29, 2019 | 5/28/2024 | 106067 | ☐ | BANC OF CALIFORNIA, N.A. | NOT AVAILABLE |
| 2. 2020  CONSENT AGREEMENT TO UPLOAD INFORMATION EXECUTED DECEMBER 12, 2013 | | 100504 | ☐ | C4PAIN | ATTN: HOECK HANS CHR MD PHD HOBRIVEJ 42 D, 34 AALBORG DK-9000 GERMANY |
| 2. 2021  CONFIDENTIAL DISCLOSURE AGREEMENT EFFECTIVE OCTOBER 04, 2012 | | 100519 | ☐ | CAPSUGEL, US, LLC | ATTN: GENERAL COUNSEL PURDUE: ONE STAMFORD FORUM, STAMFORD, CT 06901 CAPSUGEL: 412 MT. KEMBLE AVE., SUITE 200C MORRISTOWN, NJ 07960 |
| 2. 2022  CATALENT PHARMA SOLUTIONS LLC - FIRST AMENDMENT TO CDA 30JAN19 (KF.RA) EFFECTIVE JANUARY 30, 2019 | 10/5/2022 | 106097 | ☐ | CATALENT PHARMA SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 14 SCHOOLHOUSE ROAD SOMERSET, NJ 08873 |

**NAS1390**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2023  CBRE GLOBAL INVESTORS - CDA 15MAY19 (JL.RA) EFFECTIVE MAY 15, 2019 | 5/14/2020 | 106102 | ☐ | CBRE GLOBAL INVESTORS | NOT AVAILABLE |
| 2. 2024  AUDIT CONFIDENTIALITY AGREEMENT | | 100618 | ☐ | CIGNA HEALTH AND LIFE INSURANCE COMPANY | ATTN: GENERAL COUNSEL 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2025  CLEXIO BIOSCIENCES LTD. - CDA 14FEB19 (AM.RA) EFFECTIVE FEBRUARY 14, 2019 | 2/13/2024 | 106096 | ☐ | CLEXIO BIOSCIENCES LTD. | NOT AVAILABLE |
| 2. 2026  FIRST AMENDMENT TO CONFIDENTIALITY AGREEMENT EFFECTIVE JANUARY 26, 2015 | | 100682 | ☐ | COLLEGIUM PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 780 DEDHAM STREET, SUITE 800 CANTON, MA 02021 |
| 2. 2027  COMERICA BANK - CDA 6MAY19 (WC.RA) EFFECTIVE MAY 06, 2019 | 5/5/2022 | 106103 | ☐ | COMERICA BANK | NOT AVAILABLE |
| 2. 2028  COMMUNITIES 4 ACTION - CDA 4SEPT19 CW2368236 (LH.RA) EFFECTIVE SEPTEMBER 04, 2019 | 9/3/2024 | 105954 | ☐ | COMMUNITIES 4 ACTION INC | NOT AVAILABLE |
| 2. 2029  CONTOURAL, INC. - CDA 5JUN19 CW2367177 (PB.RA) EFFECTIVE JUNE 05, 2019 | 6/5/2022 | 106042 | ☐ | CONTOURAL, INC. | NOT AVAILABLE |
| 2. 2030  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 09, 2017 | | 105889 | ☐ | COVIS PHARMA, S.A.R.L. | ATTN: GENERAL COUNSEL COVIS: BAHNHOFSTRASSE 11, CH-6300, ZUG, SWITZERLAND PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA L1W 3W8 |
| 2. 2031  CREATIVE BIO-PEPTIDES, INC. - CDA 17JAN19 (JG.RA) EFFECTIVE JANUARY 17, 2019 | 1/16/2024 | 106058 | ☐ | CREATIVE BIO-PEPTIDES, INC. | NOT AVAILABLE |
| 2. 2032  NOVALIQ GMBH - CDA 12JAN19 (AM.RA) EFFECTIVE JANUARY 12, 2019 | 1/11/2024 | 106059 | ☐ | CREATIVE BIO-PEPTIDES, INC. | NOT AVAILABLE |

**NAS1391**

**Purdue Pharma L.P.**                                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2033 | DAYA CNS LLC - CDA 1MAR19 (AM.RA) EFFECTIVE MARCH 01, 2019 | 2/29/2024 | 106093 | ☐ | DAYA CNS LLC | NOT AVAILABLE |
| 2. 2034 | DONNELLEY FINANCIAL L.L.C. - CDA 22JUL19 (RA) EFFECTIVE JULY 22, 2019 | 7/22/2024 | 106051 | ☐ | DONNELLEY FINANCIAL L.L.C | NOT AVAILABLE |
| 2. 2035 | DR. WILLIAM CHIN - CDA 14MAR19 (JM.RA) EFFECTIVE MARCH 14, 2019 | 3/13/2024 | 106091 | ☐ | DR. WILLIAM CHIN | NOT AVAILABLE |
| 2. 2036 | DUKE CLINICAL RESEARCH INSTITUTE CDA CW2364998 (LH.RA) EFFECTIVE JANUARY 25, 2019 | 1/31/2022 | 105939 | ☐ | DUKE CLINICAL RESEARCH INSTITUTE | NOT AVAILABLE |
| 2. 2037 | DUKE UNIVERSITY CDA CW2367656 INVESTIGATOR INITIATED RESEARCH (LH.SD) EFFECTIVE JULY 10, 2019 | 7/9/2024 | 106025 | ☐ | DUKE UNIVERSITY | ATTN: GENERAL COUNSEL DUKE UNIVERSITY MEDICAL CENTER 107 SEELEY G MUDD BUILDING- BOX 3001 DURHAM, NC 27710 |
| 2. 2038 | EAST WEST BANK - CDA 31MAY19 (WC.RA) EFFECTIVE MAY 31, 2019 | 5/30/2024 | 106068 | ☐ | EAST WEST BANK | NOT AVAILABLE |
| 2. 2039 | E-BEAM SERVICES, INC. - CDA CW2365827 (LH.RA) EFFECTIVE MARCH 05, 2019 | 3/4/2024 | 106010 | ☐ | E-BEAM SERVICES, INC. | NOT AVAILABLE |
| 2. 2040 | ELIZABETH BEZYK CDA CW2364914 (LH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105940 | ☐ | ELIZABETH BEZYK | NOT AVAILABLE |
| 2. 2041 | EMAGINE COMMUNICATIONS, LLC - CDA 25JAN19 (M. LEIPOLD, R. ALEALI) EFFECTIVE JANUARY 25, 2019 | 1/24/2024 | 106057 | ☐ | EMAGINE COMMUNICATIONS, LLC | NOT AVAILABLE |
| 2. 2042 | ENORMOUS CREATIVE LLC CDA 20FEB19 CW2365664 (LH.RA) EFFECTIVE FEBRUARY 20, 2019 | 2/19/2024 | 105933 | ☐ | ENORMOUS CREATIVE LLC | NOT AVAILABLE |
| 2. 2043 | EPICENTRX, INC. - CDA 25JAN19 (AM.RA) EFFECTIVE JANUARY 25, 2019 | 1/24/2024 | 106056 | ☐ | EPICENTRX, INC. | NOT AVAILABLE |

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2044 | EPIQ EDISCOVERY SOLUTIONS, INC. - CDA 20MAY19 CW2366907 (LH.RA) EFFECTIVE MAY 20, 2019 | 5/19/2024 | 105957 | ☐ | EPIQ EDISCOVERY SOLUTIONS, INC. | NOT AVAILABLE |
| 2. 2045 | FLAG THERAPEUTICS, INC. - CDA 4JAN19 (JG.RA) EFFECTIVE JANUARY 04, 2019 | 1/3/2024 | 106063 | ☐ | FLAG THERAPEUTICS, INC. | NOT AVAILABLE |
| 2. 2046 | FRINK-HAMLETT LEGAL SOLUTIONS, INC. CDA CW2367073 (LH.RA) EFFECTIVE JUNE 01, 2019 | 5/31/2024 | 105969 | ☐ | FRINK-HAMLETT LEGAL SOLUTIONS, INC. | NOT AVAILABLE |
| 2. 2047 | COMMON INTEREST PRIVILEGE AGREEMENT EXECUTED | | 101312 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2048 | HANCOCK, DANIEL AND JOHNSON, P.C. - CDA 4SEPT19 CW2368240 (LH.RA) EFFECTIVE SEPTEMBER 04, 2019 | 9/3/2024 | 105953 | ☐ | HANCOCK, DANIEL & JOHNSON, P.C. | NOT AVAILABLE |
| 2. 2049 | HIKMA PHARMACEUTICALS USA INC. - FIRST AMENDMENT TO CDA 11APR19 (DS.RA) EFFECTIVE APRIL 11, 2019 | 3/12/2022 | 106112 | ☐ | HIKMA PHARMACEUTICALS USA INC. | 246 INDUSTRIAL WAY WEST EATONTOWN, NJ 07724 |
| 2. 2050 | HIKMA PHARMACEUTICALS USA INC. CDA 13MAR19 CW2365842 (LH.RA) EFFECTIVE MARCH 13, 2019 | 3/13/2022 | 106012 | ☐ | HIKMA PHARMACEUTICALS USA INC. | 246 INDUSTRIAL WAY WEST EATONTOWN, NJ 07724 |
| 2. 2051 | 2015 AMENDMENT TO USER-CUSTOMER AGREEMENT FOR AMA PHYSICIAN PROFESSIONAL DATA DATED OCTOBER 01, 2014 | | 101447 | ☐ | IMS HEALTH INCORPORATED | C/O IQVIA 4820 EMPEROR BLVD DURHAM, NC 27703 |
| 2. 2052 | CONFIDENTIALITY AND PROPRIETARY CONTRACT EFFECTIVE MAY 08, 2003 | | 101442 | ☐ | IMS HEALTH INCORPORATED | ATTN: GENERAL COUNSEL 860 WEST GERMANTOWN PIKE PLYMOUTH MEETING, PA 19462 |

**NAS1393**

**Purdue Pharma L.P.**                                                                                       **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2053   CONSENT AGREEMENT TO UPLOAD INFORMATION EXECUTED JANUARY 07, 2014 | | 101450 | ☐ | INC RESEARCH | ATTN: ANDREW SHAW SENIOR CORPORATE COUNSEL 3201 BEECH LEAF COURT RALEIGH, NC 27604 |
| 2. 2054   INFORMA BUSINESS INTELLIGENCE, INC. - CDA 23MAY19 CW2367001 (LH.RA) EFFECTIVE MAY 23, 2019 | 5/23/2021 | 105973 | ☐ | INFORMA BUSINESS INTELLIGENCE INC | PO BOX 415214 BOSTON, MA 02241 |
| 2. 2055   INNOVATIVE DISCOVERY, LLC CDA CW2367424 (LH.RA) EFFECTIVE JUNE 25, 2019 | 6/24/2024 | 106035 | ☐ | INNOVATIVE DISCOVERY, LLC | NOT AVAILABLE |
| 2. 2056   INSTEDD - CDA 15JUL19 CW2367673 (LH.RA) EFFECTIVE JULY 15, 2019 | 7/14/2021 | 106026 | ☐ | INSTEDD | NOT AVAILABLE |
| 2. 2057   MUTUAL NON-DISCLOSURE AGREEMENT EFFECTIVE JUNE 07, 2001 | | 101513 | ☐ | INTERBRAND CORPORATION | ATTN: GENERAL COUNSEL 130 FIFTH AVENUE NEW YORK, NY 10011 |
| 2. 2058   INTRALINKS, INC. - CDA 15JUL19 (RA) EFFECTIVE JULY 15, 2019 | 7/14/2024 | 106109 | ☐ | INTRALINKS, INC. | NOT AVAILABLE |
| 2. 2059   JLT SPECIALTY INSURANCE SERVICES INC. - CDA 22JAN19 (MCR.RA) EFFECTIVE JANUARY 22, 2019 | 1/21/2024 | 106061 | ☐ | JLT SPECIALTY INSURANCE SERVICES INC. | NOT AVAILABLE |
| 2. 2060   LARA KLINE - CDA 25APR19 (JM.RA) EFFECTIVE APRIL 26, 2019 | 4/25/2024 | 106106 | ☐ | LARA KLINE | NOT AVAILABLE |
| 2. 2061   LEVERAGE POINT MEDIA CDA 12FEB19 CW2365469 (SD.RA) EFFECTIVE FEBRUARY 12, 2019 | 2/11/2024 | 106172 | ☐ | LEVERAGEPOINT MEDIA | NOT AVAILABLE |
| 2. 2062   FIRST AMENDMENT TO AGREEMENT EXECUTED | | 101778 | ☐ | LINEBERRY RESEARCH ASSOCIATES | ATTN: GENERAL COUNSEL PO BOX 14626 RESEARCH TRIANGLE PARK, NC 27709 |

**NAS1394**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2063  LLX SOLUTIONS, LLC CDA 9JAN19 CW2365071 (LH.RA) EFFECTIVE JANUARY 09, 2019 | 1/9/2024 | 105937 | ☐ | LLX SOLUTIONS, LLC | NOT AVAILABLE |
| 2. 2064  AMENDMENT NO. 2 TO TECHNOLOGY TRANSFER AND INVESTMENT AGREEMENT EFFECTIVE JUNE 01, 2009 | | 101818 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 56626 ANDERNACH FEDERAL REPUBLIC OF GERMANY |
| 2. 2065  LTS LOHMANN THERAPIE-SYSTEME AG - CDA 5JUL19 (P. STRASSBURGER) EFFECTIVE JULY 05, 2019 | 7/3/2020 | 106083 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 56626 ANDERNACH FEDERAL REPUBLIC OF GERMANY |
| 2. 2066  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE JANUARY 27, 2017 | | 105891 | ☐ | LUPIN, INC. | ATTN: GENERAL COUNSEL LUPIN: 111 SOUTH CALVERT STREET BOSTON, MD 21202, USA PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, L1W 3W8 CANADA |
| 2. 2067  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE JANUARY 27, 2017 | | 105897 | ☐ | LUPIN, INC. | ATTN: GENERAL COUNSEL PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA, L1W 3W8 LUPIN: 111 SOUTH CALVERT STREET BALTIMORE, MD 21202, USA |
| 2. 2068  MALVERN PANALYTICAL INC. - CDA CW2366236 (AH.RA) EFFECTIVE APRIL 02, 2019 | 4/1/2024 | 106130 | ☐ | MALVERN PANALYTICAL INC | NOT AVAILABLE |
| 2. 2069  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 09, 2017 | | 105892 | ☐ | MAYNE PHARMA, LLC | ATTN: GENERAL COUNSEL MAYNE: 1240 SUGG PARKWAY GREENVILLE, NC 27834, USA PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO L1W 3W8 CANADA |

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|---|
| 2. 2070 | AMENDMENT # 1 TO CONFIDENTIALITY & INTELLECTUAL PROPERTY AGREEMENT EXECUTED | | 101929 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |
| 2. 2071 | MEDNET SOLUTIONS CDA CW2366005 (LH.RA) EFFECTIVE MARCH 20, 2019 | 3/20/2024 | 106019 | ☐ | MEDNET SOLUTIONS | NOT AVAILABLE |
| 2. 2072 | MERRILL COMMUNICATIONS LLC - CDA 22JUL19 EFFECTIVE JULY 22, 2019 | 7/22/2024 | 106050 | ☐ | MERRILL COMMUNICATIONS LLC | NOT AVAILABLE |
| 2. 2073 | MESSAGEBANK, LLC - CDA 17MAY19 (AS.RA) EFFECTIVE MAY 17, 2019 | 5/16/2029 | 106100 | ☐ | MESSAGEBANK, LLC | NOT AVAILABLE |
| 2. 2074 | METRIXDATA 360, INC. - CDA 11APR19 CW2366405 (PB.RA) EFFECTIVE APRIL 11, 2019 | 4/10/2024 | 106046 | ☐ | METRIXDATA 360, INC. | NOT AVAILABLE |
| 2. 2075 | METYS PHARMACEUTICALS AG - CDA 29JAN19 (AM.RA) EFFECTIVE JANUARY 29, 2019 | 1/28/2024 | 106053 | ☐ | METYS PHARMACEUTICALS AG | NOT AVAILABLE |
| 2. 2076 | CONFIDENTIALITY AGREEMENT EFFECTIVE JUNE 04, 2012 | | 102172 | ☐ | MYLAN INC. | ATTN: GENERAL COUNSEL 1500 CORPORATE DRIVE, SUITE 400 CANONSBURG, PA 15317 |
| 2. 2077 | NATHANIEL RICKLES, PHARM.D. - CDA 5SEPT19 CW2368271 (LH.RA) EFFECTIVE SEPTEMBER 05, 2019 | 9/4/2024 | 105955 | ☐ | NATHANIEL RICKLES | NOT AVAILABLE |
| 2. 2078 | NOVAREMED AG - CDA 4FEB19 (AM.RA) EFFECTIVE FEBRUARY 04, 2019 | 2/3/2024 | 106052 | ☐ | NOVAREMED AG | NOT AVAILABLE |
| 2. 2079 | OMPI OF AMERICA INC. - CDA 11JUL19 CW2367420 (LH.RA) EFFECTIVE JULY 11, 2019 | 7/10/2024 | 106030 | ☐ | OMPI OF AMERICA INC | NOT AVAILABLE |

**NAS1396**

**Purdue Pharma L.P.**                                                        **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2080 OPTIMIZERX CORPORATION CDA 4MAR19 CW2365773 (SD.RA) EFFECTIVE MARCH 04, 2019 | 3/3/2024 | 106187 | ☐ | OPTIMIZERX CORPORATION | ATTN: GENERAL COUNSEL 400 WATER ST STE 200 ROCHESTER, MI 48307 |
| 2. 2081 MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE MAY 23, 2017 | | 105893 | ☐ | OTSUKA PHARMACEUTICAL CO., LTD. | ATTN: GENERAL COUNSEL OTSUKA: SHINAGAWA GRAND CENTRAL TOWER, 2-16-4 KONAN, MINATO-KU, TOKYO, JAPAN PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA, L1W 3W8 |
| 2. 2082 PADILLA - CDA 10APR19 CW2366416 (LH.RA) EFFECTIVE APRIL 09, 2019 | 4/10/2024 | 105985 | ☐ | PADILLA | NOT AVAILABLE |
| 2. 2083 TRILATERAL CONFIDENTIALITY AGREEMENT EFFECTIVE NOVEMBER 06, 2018 | | 105894 | ☐ | PATHEON PHARMACEUTICALS SERVICES, INC. | ATTN: GENERAL COUNSEL PATHEON: 4815 EMPEROR BOULEVARD, DURHAM, NC 27703 PURDUE: ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 2084 TRILATERAL CONFIDENTIALITY AGREEMENT EFFECTIVE NOVEMBER 06, 2018 | | 105895 | ☐ | PATHEON PHARMACEUTICALS SERVICES, INC. | ATTN: GENERAL COUNSEL PURDUE: ONE STAMFORD FORUM, 201 TRESSER BOULEVARD, STAMFORD, CT 06901 PATHEON: 4815 EMPEROR |
| 2. 2085 PHARMA PACKAGING SOLUTIONS - CDA 17MAY19 (KF.RA) EFFECTIVE MAY 17, 2019 | 5/16/2024 | 106101 | ☐ | PHARMA PACKAGING SOLUTIONS | NOT AVAILABLE |
| 2. 2086 PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA - CDA 16JAN19 CW2365161(SD.RA) EFFECTIVE JANUARY 16, 2019 | 1/15/2024 | 106136 | ☐ | PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 2087 PRICEWATERHOUSECOOPERS ADVISORY LLC CDA 26FEB19 CW2365738 (SD.RA) EFFECTIVE FEBRUARY 26, 2019 | 2/25/2022 | 106186 | ☐ | PRICEWATERHOUSECOOPERS INC | ATTN: GENERAL COUNSEL 18 YORK STREET STE 2600 TORONTO, ON M5J 0B2 CANADA |

**Purdue Pharma L.P.**                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2088  PRIORITY AIR EXPRESS (PATHEON LOGISTICS) - CDA 13 FEB19 (KF.RA) EFFECTIVE FEBRUARY 13, 2019 | 2/12/2024 | 106095 | ☐ | PRIORITY AIR EXPRESS (PATHEON LOGISTICS) | NOT AVAILABLE |
| 2. 2089  PRISMIC PHARMACEUTICALS, INC. - CDA 30JAN19 (AM.RA) EFFECTIVE JANUARY 30, 2019 | 1/29/2024 | 106055 | ☐ | PRISMIC PHARMACEUTICALS, INC. | NOT AVAILABLE |
| 2. 2090  PSKW, LLC DBA CONNECTIVERX CDA 14FEB19 CW2365556 (SD.RA) EFFECTIVE FEBRUARY 14, 2019 | 2/13/2024 | 106175 | ☐ | PSKW, LLC | NOT AVAILABLE |
| 2. 2091  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT  EFFECTIVE FEBRUARY 08, 2017 |  | 105890 | ☐ | PURDUE PHARMA | ATTN: GENERAL COUNSEL KASTLE: 181 W. MADISON, SUITE 3400, CHICAGO, IL 60602, USA PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA L1W 3W8 |
| 2. 2092  QUALICAPS, INC. - CDA  21MAY19 CW2366955 (AH.KM) EFFECTIVE MAY 01, 2019 | 5/31/2022 | 106117 | ☐ | QUALICAPS, INC. | ATTN: GENERAL COUNSEL 6505 FRANZ WARNER PARKWAY WHITSETT, NC 27377 |
| 2. 2093  RH NANOPHARMACEUTICALS LLC - CDA 27FEB19 (AM.RA) EFFECTIVE FEBRUARY 27, 2019 | 2/26/2024 | 106092 | ☐ | RH NANOPHARMACEUTICALS LLC | NOT AVAILABLE |
| 2. 2094  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 16, 2017 |  | 105898 | ☐ | ROUNDTABLE HEALTHCARE MANAGEMENT IV, LLC | ATTN: GENERAL COUNSEL PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA L1W 3W8 ROUNDTABLE: 272 EAST DEERPATH ROAD, SUITE 350, LAKE FOREST, IL 60045, USA |
| 2. 2095  MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 16, 2017 |  | 105901 | ☐ | ROUNDTABLE HEALTHCARE MANAGEMENT IV, LLC | ATTN: GENERAL COUNSEL ROUNDTABLE: 272 EAST DEERPATH ROAD, SUITE 350, LAKE FOREST, IL 60045, USA PURDUE: 575 GRANITE COURT PICKERING, ONTARIO, L1W 3W8, CANADA |

**NAS1398**

**Purdue Pharma L.P.**                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2096 | RXDATASCIENCE INC. CDA CW2367923 (FELTZ.RA) EFFECTIVE AUGUST 06, 2019 | 8/5/2024 | 105912 | ☐ | RXDATASCIENCE INC. | NOT AVAILABLE |
| 2. 2097 | SAATCHI AND SAATCHI CDA CW2365601 (SD.RA) EFFECTIVE FEBRUARY 15, 2019 | 2/14/2024 | 106177 | ☐ | SAATCHI AND SAATCHI | NOT AVAILABLE |
| 2. 2098 | SOTERA HEALTH LLC (STERIGENICS) CDA 4APR19 CW2366201 (LH.RA) EFFECTIVE APRIL 04, 2019 | 4/4/2024 | 105956 | ☐ | SOTERA HEALTH LLC DBA STERIGENICS | NOT AVAILABLE |
| 2. 2099 | STANWICH GROUP LLC - CDA 28MAY19 (RA) EFFECTIVE MAY 28, 2019 | 5/27/2024 | 106066 | ☐ | STANWICH GROUP LLC | NOT AVAILABLE |
| 2. 2100 | STRETTO - CDA 28MAY19 (WC.RA) EFFECTIVE MAY 28, 2019 | 5/27/2024 | 106071 | ☐ | STRETTO | NOT AVAILABLE |
| 2. 2101 | MUTUAL CONFIDENTIAL DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 07, 2017 | | 105903 | ☐ | SUNOVION PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL SUNOVION: 84 WATERFORD DRIVE MARLBOROUGH, MA 01752, USA PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO L1W 3W8, CANADA |
| 2. 2102 | MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 07, 2017 | | 105899 | ☐ | SUNOVION PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO, CANADA L1W 3W8 SUNOVION: 84 WATERFORD DRIVE MARLBOROUGH, MA 01752, USA |
| 2. 2103 | MUTUAL CONFIDENTIALITY DISCLOSURE AGREEMENT EFFECTIVE FEBRUARY 07, 2017 | | 105902 | ☐ | SUNOVION PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL SUNOVION: 84 WATERFORD DRIVE MARLBOROUGH, MA 01752, USA PURDUE: 575 GRANITE COURT, PICKERING, ONTARIO L1W 3W8, CANADA |

**NAS1399**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2104 | 1ST AMENDMENT OF THE CONFIDENTIALITY AGREEMENT BETWEEN THE DOW CHEMICAL COMPANY AND PURDUE PHARMA L.P. EFFECTIVE OCTOBER 25, 2016 | | 103338 | ☐ | THE DOW CHEMICAL COMPANY | 2030 DOW CENTER MIDLAND, MI 48674 |
| 2. 2105 | THE HUNTINGTON NATIONAL BANK - CDA 4JUN19 (WC.RA) EFFECTIVE JUNE 04, 2019 | 6/3/2022 | 106070 | ☐ | THE HUNTINGTON NATIONAL BANK | NOT AVAILABLE |
| 2. 2106 | THE OGILVY GROUP CDA 25FEB19 CW2365701 (SD.RA) EFFECTIVE FEBRUARY 25, 2019 | 2/24/2024 | 106183 | ☐ | THE OGILVY GROUP CDA | NOT AVAILABLE |
| 2. 2107 | THE TASK FORCE FOR GLOBAL HEALTH - CDA 7JAN19 (LM.RA) EFFECTIVE JANUARY 07, 2019 | 1/6/2024 | 106062 | ☐ | THE TASK FORCE FOR GLOBAL HEALTH | NOT AVAILABLE |
| 2. 2108 | TOWARD ZERO CO. - CDA 30APR19 (KF.RA) EFFECTIVE APRIL 30, 2019 | 4/29/2024 | 106104 | ☐ | TOWARD ZERO CO. | NOT AVAILABLE |
| 2. 2109 | TRIAL CARD INC. CDA CW2365477(SD.RA) EFFECTIVE FEBRUARY 11, 2019 | 2/10/2024 | 106173 | ☐ | TRIALCARD INCORPORATED | ATTN: GENERAL COUNSEL 6501 WESTON PARKWAY, SUITE 370 CARY, NC 27513 |
| 2. 2110 | TRIS PHARMA, INC. - CDA 2APR19 CW2366248 (DS.RA) EFFECTIVE APRIL 02, 2019 | 4/1/2024 | 106114 | ☐ | TRIS PHARMA, INC. | ATTN: GENERAL COUNSEL 2031 ROUTE 130, SUITE D MONMOUTH JUNCTION, NJ 08552 |
| 2. 2111 | MUTUAL CONFIDENTIAL DISCLOSURE AGREEMENT EFFECTIVE OCTOBER 25, 2016 | | 103571 | ☐ | UNIVERSITY OF TEXAS HEALTH SCIENCES CENTER HOUSTON | ATTN: GENERAL COUNSEL 7000 FANNIN STREET SUITE 720 HOUSTON, TX 77030 |
| 2. 2112 | CONFIDENTIALITY AGREEMENT EFFECTIVE OCTOBER 10, 2012 | | 103653 | ☐ | VARAM INC./KVK-TECH, INC. | ATTN: GENERAL COUNSEL 100 TERRY DRIVE, SUITE 200 NEWTOWN, PA 18940 |

**NAS1400**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2113 VELTEK ASSOCIATES, INC. CDA CW2366377 (AH.RA) EFFECTIVE APRIL 15, 2019 | 4/30/2024 | 106122 | ☐ | VELTEK ASSOCIATES, INC. | NOT AVAILABLE |
| 2. 2114 VISUAL COMMUNICATIONS INC. - CDA 12APR19 CW2366443 (SD.RA) EFFECTIVE APRIL 12, 2019 | 4/11/2024 | 106156 | ☐ | VISUAL COMMUNICATIONS, INC. | NOT AVAILABLE |
| 2. 2115 WESTROCK MWV, LLC - CDA 4SEP19 CW2368232 (LH.RA) EFFECTIVE SEPTEMBER 04, 2019 | 9/3/2024 | 105952 | ☐ | WESTROCK CP LLC | NOT AVAILABLE |
| 2. 2116 CONFIDENTIAL INDEMNIFICATION AGREEMENT EXECUTED MAY 23, 2016 | | 103743 | ☐ | WIRB-COPERNICUS GROUP, INC. | ATTN: GENERAL COUNSEL 202 CARNEGIE CENTER SUITE 107 PRINCETON, NJ 08540 |

**NAS1401**

**Purdue Pharma L.P.**                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Discount/Rebate/Reimbursement Agreement** | | | | | |
| 2. 2117 AMENDMENT NO. 7 TO MANUFACTURER'S DISCOUNT AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 100114 | ☐ | AETNA HEALTH MANAGEMENT LLC | ATTN: HEAD OF FORMULARY CONTRACTING 151 FARMINGTON AVENUE RT62 HARTFORD, CT 06156 |
| 2. 2118 AMENDMENT NO. 8 TO MANUFACTURER'S DISCOUNT AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 100115 | ☐ | AETNA HEALTH MANAGEMENT LLC | ATTN: HEAD OF FORMULARY CONTRACTING 151 FARMINGTON AVENUE RT62 HARTFORD, CT 06156 |
| 2. 2119 MEDI-CAL TOTAL DRUG REBATE AGREEMENT DATED AUGUST 24, 2016 | | 100507 | ☐ | CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES | ATTN: PHARMACY BENEFITS DIVISION 1501 CAPITOL AVENUE SUITE 71.5131, MS 4604 SACRAMENTO, CA 95814 |
| 2. 2120 AMENDMENT NO. 4 TO THE REBATE AGREEMENT EFFECTIVE APRIL 01, 2016 | | 100545 | ☐ | CAREMARKPCS HEALTH, LLC | C/O CAREMARK ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |
| 2. 2121 AMENDMENT NO. 7 TO THE REBATE AGREEMENT EFFECTIVE OCTOBER 01, 2017 | | 100546 | ☐ | CAREMARKPCS HEALTH, LLC | C/O CAREMARK ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |
| 2. 2122 AMENDMENT NO. 8 TO REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 100547 | ☐ | CAREMARKPCS HEALTH, LLC | C/O CAREMARK ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |

**NAS1402**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2123   REBATE AGREEMENT DATED JANUARY 1, 2014 (LAST AMENDED JANUARY 1, 2019) AMONG CAREMARKPCS HEALTH, LLC AND THE COMPANY | | 106207 | ☐ | CAREMARKPCS HEALTH, LLC | C/O CAREMARK ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |
| 2. 2124   DISCOUNT PROGRAM DATA AGREEMENT EXECUTED SEPTEMBER 23, 2010 | | 100569 | ☐ | CENTERS FOR MEDICARE & MEDICAID SERVICES | ATTN: LEGAL 7500 SECURITY BLVD BALTIMORE, MD 21244 |
| 2. 2125   PARTICIPATING STATE AMENDMENT TO SUPPLEMENTAL DRUG REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 100611 | ☐ | CHRIS STEWART, DIVISION DIRECTOR | ATTN: GENERAL COUNSEL DEPARTMENT FOR MEDICAID SERVICES 27 EAST MAIN STREET 6W-D FRANKFORT, KY 40621 |
| 2. 2126   PARTICIPATING STATE AMENDMENT TO SUPPLEMENTAL DRUG REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 100612 | ☐ | CHRIS STEWART, DIVISION DIRECTOR | ATTN: GENERAL COUNSEL DEPARTMENT FOR MEDICAID SERVICES 275 EAST MAIN STREET 6W-D FRANKFORT, KY 40621 |
| 2. 2127   STATE AMENDMENT TO SUPPLEMENTAL DRUG REBATE DATED JULY 01, 2004 | | 100613 | ☐ | CHRIS STEWART, DIVISION DIRECTOR | ATTN: GENERAL COUNSEL DEPARTMENT FOR MEDICAID SERVICES 27 EAST MAIN STREET 6W-D FRANKFORT, KY 40621 |
| 2. 2128   AMENDMENT NO. 3 TO REBATE AGREEMENT EFFECTIVE MARCH 01, 2018 | | 100617 | ☐ | CIGNA HEALTH AND LIFE INSURANCE COMPANY | ATTN: GENERAL COUNSEL 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2129   AMENDMENT NO. 6 TO REBATE AGREEMENT EFFECTIVE APRIL 01, 2015 | | 100616 | ☐ | CIGNA HEALTH AND LIFE INSURANCE COMPANY | ATTN: JODY NICHOLS, VICE PRESIDENT, PHARMACEUTICAL CONTRACTING 500 GREAT CIRCLE ROAD NASHVILLE, TN 37228 |

**NAS1403**

**Purdue Pharma L.P.**                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2130   REBATE AGREEMENT EFFECTIVE APRIL 01, 2015 | | 100620 | ☐ | CIGNA HEALTHCARE | ATTN: ALEX G. KRIKORIAN, VICE PRESIDENT, PHARMACEUTICAL CONTRACTING 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2131   APPLICATION FOR PARTICIPATION IN THE CONNPACE REBATE PROGRAM EFFECTIVE APRIL 01, 1996 | | 100716 | ☐ | CONNPACE | ATTN: BETTE A. SMITH MANUFACTURER REBATE PROGRAM DEPARTMENT OF SOCIAL SERVICES, 25 SIGOURNEY STREET, 11TH FLOOR HARTFORD, CT 06106-5033 |
| 2. 2132   MEDICARE PART D PROGRAM REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 100802 | ☐ | CVS CAREMARK PART D SERVICES LLC | C/O CVS CAREMARK ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |
| 2. 2133   PARTICIPATING STATE AMENDMENT TO SUPPLEMENTAL DRUG REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 100820 | ☐ | DAN PETERSON | ATTN: GENERAL COUNSEL MONTANA DPHHS, MEDICAID PHARMACY PROGRAM OFFICER 1400 BROADWAY, P.O. BOX 202951 HELENA, MT 59620 |
| 2. 2134   MEDICARE COVERAGE GAP DISCOUNT PROGRAM AGREEMENT EFFECTIVE JANUARY 01, 2011 | | 100888 | ☐ | DEPARTMENT OF HEALTH AND HUMAN SERVICES | ATTN: GENERAL COUNSEL CENTER FOR MEDICARE, DIVISION OF PHARMACEUTICAL MANUFACTURER MANAGEMENT, MAILSTOP C1-26-16 7500 SECURITY BOULEVARD BALTIMORE, MD 21244-1850 |
| 2. 2135   REBATE AGREEMENT EXECUTED NOVEMBER 21, 1995 | | 100891 | ☐ | DEPARTMENT OF HEALTH AND HUMAN SERVICES | ATTN: GENERAL COUNSEL OFFICE OF MEDICAID MANAGEMENT, MEDICAID BUREAU P.O. BOX 26686 BALTIMORE, MD 21207 |

**NAS1404**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2136 APPLICATION FOR PARTICIPATION IN THE GENERAL ASSISTANCE DRUG REBATE PROGRAM DATED JUNE 10, 1996 | | 100893 | ☐ | DEPARTMENT OF SOCIAL SERVICES | ATTN: DIRECTOR OF MEDICAL OPERATIONS, STATE OF CONNECTICUT 25 SIGOURNEY STREET HARTFORD, CT 06106 |
| 2. 2137 DISCOUNT/SET ASIDE EFFECTIVE SEPTEMBER 27, 2013 | | 105878 | ☐ | DLA TROOP SUPPORT | ATTN: LEGAL 700 ROBBINS AVE PHILADELPHIA, PA 19111 |
| 2. 2138 AMENDMENT NO. 11 TO PREFERRED SAVINGS GRID REBATE PROGRAM AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101104 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2139 AMENDMENT NO. 11 TO THE MEDICARE PART D REBATE PROGRAM AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101107 | ☐ | EXPRESS SCRIPTS SENIOR CARE HOLDINGS INC. | C/O EXPRESS SCRIPTS, INC. ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2140 MEDICARE PART D REBATE PROGRAM AGREEMENT EFFECTIVE JANUARY 01, 2011 | | 101105 | ☐ | EXPRESS SCRIPTS SENIOR CARE HOLDINGS INC. | C/O EXPRESS SCRIPTS, INC. ATTN: F EVERETT NEVILLE, VP ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2141 REBATE AGREEMENT DATED JANUARY 1, 2011 (LAST AMENDED JANUARY 1, 2019) AMONG EXPRESS SCRIPTS SENIOR CARE HOLDINGS, INC AND THE COMPANY | | 106206 | ☐ | EXPRESS SCRIPTS SENIOR CARE HOLDINGS, INC | C/O EXPRESS SCRIPTS, INC. ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2142 PARTICIPATING STATE AMENDMENT TO SUPPLEMENTAL DRUG-REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 101156 | ☐ | FIRST HEALTH SERVICES CORP. | CHRIS STEWART. DIVISON DIRECTOR DEPARTMENT OF MEDICAID SERVICES 275 EAST MAIN ST. 6W-D FRANKFORT, KY 40621 |

**NAS1405**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2143  AMENDMENT TO REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 101158 | ☐ | FIRST HEALTH SERVICES CORPORATION | ATTN: GENERAL COUNSEL COMMONWEALTH OF KENTUCKY DEPARTMENT FOR MEDICAID SERVICES 275 EAST MAIN ST. 6W-D FRANKFORT, KY 40621 |
| 2. 2144  NEW PARTICIPATING STATE AMENDMENT TO SUPPLEMENT DRUG-REBATE AGREEMENT EFFECTIVE JULY 01, 2004 | | 101157 | ☐ | FIRST HEALTH SERVICES CORPORATION | ATTN: MARY KELLY CHARUBIN PDP PROGRAM MANAGER, BUREAU OF PROGRAM GUIDANCE, OFFICE OF MEDICAID MANGEMENT, NYSDOH 99 WASHINGTON AVENUE, SUITE 720 ALBANY, NY 12210-2808 |
| 2. 2145  PROGRAM DISCOUNT AGREEMENT EFFECTIVE JANUARY 01, 2011 | | 101171 | ☐ | FOR THE SECRETARY OF HEALTH AND HUMAN SERVICES | DEPARTMENT OF HEALTH AND HUMAN SERVICES, HEALTH RESOURCES & SERVICES ADMINISTRATION HEALTHCARE SYSTEMS BUREAU ROCKVILLE, MD 20857 |
| 2. 2146  AMENDMENT NO. 1 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE NOVEMBER 01, 2013 | | 101338 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2147  AMENDMENT NO. 2 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2015 | | 101339 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2148  AMENDMENT NO. 3 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2015 | | 101340 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2149  AMENDMENT NO. 4 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2016 | | 101341 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |

NAS1406

**Purdue Pharma L.P.**                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2150  AMENDMENT NO. 5 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE APRIL 01, 2016 | | 101342 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2151  AMENDMENT NO. 6 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE APRIL 01, 2016 | | 101343 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2152  AMENDMENT NO. 7 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2017 | | 101344 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2153  AMENDMENT NO. 8 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE APRIL 01, 2018 | | 101345 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 2154  COMMERCIAL REBATE AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 101366 | ☐ | HEALTH NET PHARMACEUTICAL SERVICES | ATTN: GENERAL COUNSEL 2868 PROSPECT PARK DRIVE SUITE 230 RANCHO CORDOVA, CA 95670 |
| 2. 2155  AMENDMENT NO. 1 TO MANAGED CARE REBATE AGREEMENT  EFFECTIVE JULY 01, 2018 | | 101376 | ☐ | HEALTHPARTNERS INC. | ATTN: PHARMACEUTICAL CONTRACT RELATIONS PROGRAM MANAGER 8170 - 33RD AVENUE SOUTH MAIL STOP 21111B BLOOMINGTON, MN 55425 |
| 2. 2156  AMENDMENT NO. 2 TO MANAGED CARE REBATE AGREEMENT  EFFECTIVE AUGUST 01, 2018 | | 101377 | ☐ | HEALTHPARTNERS INC. | ATTN: PHARMACEUTICAL CONTRACT RELATIONS PROGRAM MANAGER 8170 - 33RD AVENUE SOUTH MAIL STOP 21111B BLOOMINGTON, MN 55425 |

**NAS1407**

**Purdue Pharma L.P.**  Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2157 MANAGED CARE REBATE AGREEMENT EFFECTIVE JULY 01, 2017 | | 101375 | ☐ | HEALTHPARTNERS INC. | ATTN: PHARMACEUTICAL CONTRACT RELATIONS PROGRAM MANAGER 8170 - 33RD AVENUE SOUTH MAIL STOP 21111B BLOOMINGTON, MN 55425 |
| 2. 2158 AMENDMENT #2 TO THE REIMBURSEMENT AGREEMENT DATED JANUARY 01, 2019 | | 101458 | ☐ | INDEPENDENT HEALTH ASSOCIATION INC. | ATTN: GENERAL COUNSEL 511 FARBER LAKES DRIVE BUFFALO, NY 14221 |
| 2. 2159 AMENDMENT NO. 2 TO THE REIMBURSEMENT AGREEMENT DATED JANUARY 01, 2019 | | 101459 | ☐ | INDEPENDENT HEALTH ASSOCIATION INC. | ATTN: GENERAL COUNSEL 511 FARBER LAKES DRIVE BUFFALO, NY 14221 |
| 2. 2160 SALES AND REBATE AGREEMENT FOR MEDICARE PART D SERVICES EFFECTIVE JANUARY 01, 2014 | | 101457 | ☐ | INDEPENDENT HEALTH ASSOCIATION INC. | ATTN: GENERAL COUNSEL 511 FARBER LAKES DRIVE BUFFALO, NY 14221 |
| 2. 2161 AMENDMENT NO. 4 TO REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2014 | | 101460 | ☐ | INDEPENDENT HEALTH'S PHARMACY BENEFIT DIMENSIONS LLC | ATTN: GENERAL COUNSEL 511 FARBER LAKES DRIVE BUFFALO, NY 14221 |
| 2. 2162 AMENDMENT NO.1 TO ORDER FORM FOR GOVERNMENT REBATE ANALYZER SERVICES EFFECTIVE NOVEMBER 09, 2018 | | 101553 | ☐ | IQVIA INC | ATTN: GENERAL COUNSEL ONE  IMS DRIVE PLYMOUTH MEETING, PA 19462 |
| 2. 2163 AMENDMENT NO. 2 TO REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101907 | ☐ | MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH | ATTN: GENERAL COUNSEL 200 FIRST ST. S.W. ROCHESTER, MN 55905 |
| 2. 2164 AMENDMENT NO. 11 TO SALES AND REBATE AGREEMENT FOR MEDICARE PART D SERVICES EFFECTIVE JANUARY 01, 2019 | | 101950 | ☐ | MEDLMPACT HEALTHCARE SYSTEMS INC. | ATTN: GENERAL COUNSEL 10680 TREENA STREET 5TH FLOOR SAN DIEGO, CA 92131 |
| 2. 2165 AMENDMENT NO. 14 TO REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101949 | ☐ | MEDLMPACT HEALTHCARE SYSTEMS INC. | ATTN: GENERAL COUNSEL 10680 TREENA STREET 5TH FLOOR SAN DIEGO, CA 92131 |

**NAS1408**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2166 SALES AND REBATE AGREEMENT FOR MEDICARE PART D SERVICES EFFECTIVE JANUARY 01, 2007 | | 101948 | ☐ | MEDLMPACT HEALTHCARE SYSTEMS INC. | ATTN: GENERAL COUNSEL 10680 TREENA STREET 5TH FLOOR SAN DIEGO, CA 92131 |
| 2. 2167 MISSOURI SUPPLEMENTAL DRUG-REBATE AGREEMENT DATED APRIL 01, 2018 | | 102030 | ☐ | MO HEALTHNET DIVISION | ATTN: STEPHEN COLLOWAY, R.PH 615 HOWERTON CT, 2ND FLOOR JEFFERSON CITY, MO 65109 |
| 2. 2168 AMENDMENT NO. 3 TO REIMBURSEMENT AGREEMENT EFFECTIVE JULY 01, 2018 | | 102188 | ☐ | NAVITUS HEALTH SOLUTIONS LLC | ATTN: GENERAL COUNSEL 2601 WEST BETLINE HIGHWAY SUITE 600 MADISON, WI 53713 |
| 2. 2169 AMENDMENT NO. 3 TO SALES AND REBATE AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 102187 | ☐ | NAVITUS HEALTH SOLUTIONS LLC | ATTN: GENERAL COUNSEL 2601 WEST BETLINE HIGHWAY SUITE 600 MADISON, WI 53713 |
| 2. 2170 SALES AND REBATE AGREEMENT FOR MEDICARE PART D SERVICES EFFECTIVE JANUARY 01, 2015 | | 102186 | ☐ | NAVITUS HEALTH SOLUTIONS LLC | ATTN: GENERAL COUNSEL 2601 WEST BETLINE HIGHWAY SUITE 600 MADISON, WI 53713 |
| 2. 2171 WORK FIRST NEW JERSEY GENERAL ASSISTANCE WRAP AROUND PROGRAM DRUG REBATE AGREEMENT EXECUTED SEPTEMBER 05, 2008 | | 102202 | ☐ | NEW JERSEY DEPARTMENT OF HUMAN SERVICES | ATTN: GENERAL COUNSEL OFFICE OF LEGAL AND REGULATORY AFFAIRS 222 S. WARREN STREET, 6TH FLOOR TRENTON, NJ 08625 |
| 2. 2172 SUPPLEMENTAL REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 102278 | ☐ | OKLAHOMA HEALTH CARE AUTHORITY | ATTENTION: KERRI WADE 4345 N LINCOLN BLVD OKLAHOMA CITY, OK 73105-5101 |
| 2. 2173 AMENDMENT NO. 6 TO REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 102308 | ☐ | OPTUM RX, INC. | ATTN: S.V.P., INDUSTRY RELATIONS 17900 VON KARMAN AVENUE M/S CA016-0202 IRVINE, CA 92614 |

**NAS1409**

**Purdue Pharma L.P.**                                                                                   **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2174 AMENDMENT NO. 8 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2017 | | 102307 | ☐ | OPTUM RX, INC. | ATTN: S.V.P., INDUSTRY RELATIONS 17900 VON KARMAN AVENUE M/S CA016-0202 IRVINE, CA 92614 |
| 2. 2175 MEDICARE PART D REBATE AGREEMENT DATED AUGUST 1, 2009 (LAST AMENDED JANUARY 1, 2017) AMONG OPTUM RX., INC AND THE COMPANY | | 106210 | ☐ | OPTUM RX, INC. | ATTN: S.V.P. INDUSTRY RELATIONS 17900 VON KARMEN AVE. M/S CA 016-0202 IRVINE, CA 92614 |
| 2. 2176 REBATE AGREEMENT DATED JANUARY 1, 2013 (LAST AMENDED JANUARY 1, 2019) AMONG OPTUM RX, INC. AND THE COMPANY | | 106211 | ☐ | OPTUM RX, INC. | ATTN: S.V.P. INDUSTRY RELATIONS 17900 VON KARMEN AVE. M/S CA 016-0202 IRVINE, CA 92614 |
| 2. 2177 REBATE AGREEMENT | | 102448 | ☐ | PHARMACY DRUG REBATE UNIT, OFFICE OF UTILIZATION MANAGEMENT | ATTN: GENERAL COUNSEL DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES P.O. BOX 712, MAIL CODE 54 TRENTON, NJ 08625 |
| 2. 2178 AMENDMENT NO. 1 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2016 | | 102599 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2179 AMENDMENT NO. 2 TO COMMERCIAL REBATE AND ADMINISTRATIVE FEE AGREEMENT EFFECTIVE JULY 01, 2018 | | 102602 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2180 AMENDMENT NO. 2 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2017 | | 102600 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |

**NAS1410**

**Purdue Pharma L.P.**                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2181 AMENDMENT NO. 3 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 102601 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2182 AMENDMENT NO. 4 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 102603 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2183 AMENDMENT NO. 4 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 102604 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2184 MEDICARE PART D REBATE AGREEMENT DATED JANUARY 1, 2015 (LAST AMENDED JANUARY 1, 2019) AMONG PRIME THERAPEUTICS AND THE COMPANY | | 102581 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2185 MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2015 | | 102581 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2186 REBATE AGREEMENT DATED JANUARY 1, 2018 (LAST AMENDED JULY 1, 2018) AMONG PRIME THERAPEUTICS LLC AND THE COMPANY | | 102582 | ☐ | PRIME THERAPEUTICS LLC | ATTN: VICE PRESIDENT PHARMACEUTICAL TRADE RELATIONS 2900 AMES CROSSING ROAD EAGAN, MN 55121 |
| 2. 2187 AMENDMENT NO. 7 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE OCTOBER 01, 2017 | | 102624 | ☐ | PROCARE PHARMACY BENEFIT MANAGER INC. | ATTN: GENERAL COUNSEL 3090 PREMIERE PARKWAY SUITE 100 DULUTH, GA 30097 |

**NAS1411**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2188  REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2011 | | 102622 | ☐ | PROCARE PHARMACY BENEFIT MANAGER INC. | ATTN: GENERAL COUNSEL 3090 PREMIERE PARKWAY SUITE 100 DULUTH, GA 30097 |
| 2. 2189  MEDICARE PART D REBATE AGREEMENT EFFECTIVE AUGUST 01, 2009 | | 102952 | ☐ | RXSOLUTIONS INC. D/B/A PRESCRIPTION SOLUTIONS | ATTN: ANGELO GIAMBRONE, SVP, INDUSTRY AND NETWORK RELATIONS 5994 PLAZA DRIVE M/S 112-0535 CYPRESS, CA 90630 |
| 2. 2190  PHARMACEUTICAL PRICING AGREEMENT (DISCOUNT) EFFECTIVE JANUARY 01, 1996 | | 105879 | ☐ | SECRETARY OF DEPARTMENT OF VETERANS AFFAIRS | DEPARTMENT OF VETERANS AFFAIRS OFFICE OF ACQUISITION, LOGISTICS, AND CONSTRUCTION NATIONAL ACQUISITION CENTER P.O. BOX 76 HINES, IL 60141 |
| 2. 2191  MEDICARE COVERAGE GAP DISCOUNT PROGRAM AGREEMENT EFFECTIVE JANUARY 01, 2011 | | 105882 | ☐ | SECRETARY OF HEALTH AND HUMAN SERVICES | DEPARTMENT OF HEALTH AND HUMAN SERVICES, HEALTH RESOURCES & SERVICES ADMINISTRATION HEALTHCARE SYSTEMS BUREAU ROCKVILLE, MD 20857 |
| 2. 2192  PHARMACEUTICAL PRICING AGREEMENT (DISCOUNT) EFFECTIVE NOVEMBER 21, 1995 | | 105881 | ☐ | SECRETARY OF HEALTH AND HUMAN SERVICES | DEPARTMENT OF HEALTH AND HUMAN SERVICES, HEALTH RESOURCES & SERVICES ADMINISTRATION HEALTHCARE SYSTEMS BUREAU ROCKVILLE, MD 20857 |
| 2. 2193  REBATE AGREEMENT EFFECTIVE JUNE 03, 2018 | | 105880 | ☐ | SECRETARY OF HEALTH AND HUMAN SERVICES | DEPARTMENT OF HEALTH AND HUMAN SERVICES, HEALTH RESOURCES & SERVICES ADMINISTRATION HEALTHCARE SYSTEMS BUREAU ROCKVILLE, MD 20857 |

**NAS1412**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2194 | AMENDMENT NO. 1 TO THE MEDICARE PART D REBATE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 103043 | ☐ | SELECTHEALTH INC | ATTN: CONTRACT MANAGER 5381 GREEN STREET MURRAY, UT 84123 |
| 2. 2195 | MEDICARE PART D REBATE AGREEMENT EFFECTIVE DECEMBER 31, 2018 | | 103042 | ☐ | SELECTHEALTH INC | ATTN: CONTRACT MANAGER 5381 GREEN STREET MURRAY, UT 84123 |
| 2. 2196 | ARKANSAS SUPPLEMENTAL REBATE AGREEMENT EFFECTIVE JANUARY 01, 2017 | | 103181 | ☐ | STATE OF ARKANSAS DEPARTMENT OF HUMAN SERVICES | ATTN: GENERAL COUNSEL 700 MAIN STREET, SLOT S-415 LITTLE ROCK 72201 |
| 2. 2197 | MISSOURI SUPPLEMENTAL DRUG-REBATE AGREEMENT EFFECTIVE APRIL 01, 2018 | | 103182 | ☐ | STATE OF MISSOURI HEALTHNET DIVISION | ATTN: STEPHEN CALLOWAY, DIRECTOR OF PHARMACY MO HEALTHNET DIVISION JEFFERSON CITY 65109 |
| 2. 2198 | NATIONAL DRUG REBATE AGREEMENT EXECUTED JUNE 13, 2018 | | 103382 | ☐ | THE SECRETARY OF HEALTH AND HUMAN SERVICES | ATTN: GENERAL COUNSEL 7500 SECURITY BOULVARD MAIL STOP S2-14-26 BALTIMORE, MA 21244-1850 |
| 2. 2199 | REBATE AGREEMENT EXECUTED NOVEMBER 21, 1995 | | 103383 | ☐ | THE SECRETARY OF HEALTH AND HUMAN SERVICES | ATTN: CHIEF, NON-INSTITUTIONAL PAYMENT POLICY BRANCH OFFICE OF MEDICAID POLICY, MEDICAID BUREAU POST OFFICE BOX 26686 BALTIMORE, MD 21207-0486 |
| 2. 2200 | REBATE AGREEMENT EFFECTIVE NOVEMBER 03, 2009 | | 105883 | ☐ | TRICARE MANAGEMENT ACTIVITY | PHARMACEUTICAL OPERATIONAL DIRECTORATE TRICARE RETAIL REFUND PROGRAM 7700 ARLINGTON BLVD, SUITE 5101 FALLS CHURCH, VA 22042 |

**NAS1413**

**Purdue Pharma L.P.**                                                 Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2201 | DOD RETAIL REFUND PRICING AGREEMENT DATED APRIL 4, 2014 BETWEEN TRICARE MANAGEMENT ACTIVITY (TMA) AND THE COMPANY | | 106221 | ☐ | TRICARE MANAGEMENT ACTIVITY (TMA) | ATTN: GENERAL COUNSEL PHARMACEUTICAL OPERATIONAL DIRECTORATE,TRICARE RETAIL REFUND PROGRAM SKYLINE 5 SUITE 810, 5111 LEESBURG PIKE FALLS CHURCH, VA 22041-3206 |
| 2. 2202 | DOD SECTION 703 PRICING AGREEMENT DATED NOVEMBER 3, 2009 BETWEEN TRICARE MANAGEMENT ACTIVITY (TMA) AND THE COMPANY | | 105884 | ☐ | TRICARE MANAGEMENT ACTIVITY (TMA) | ATTN: GENERAL COUNSEL PHARMACEUTICAL OPERATIONAL DIRECTORATE,TRICARE RETAIL REFUND PROGRAM SKYLINE 5 SUITE 810, 5111 LEESBURG PIKE FALLS CHURCH, VA 22041-3206 |
| 2. 2203 | FEDERAL SUPPLY SCHEDULE (DISCOUNT) EFFECTIVE MAY 01, 2012 | | 105884 | ☐ | U.S. DEPARTMENT OF VETERAN AFFAIRS | DEPARTMENT OF VETERANS AFFAIRS OFFICE OF ACQUISITION, LOGISTICS, AND CONSTRUCTION NATIONAL ACQUISITION CENTER P.O. BOX 76 HINES, IL 60141 |
| 2. 2204 | AMENDMENT #1 TO THE REIMBURSEMENT AGREEMENT EFFECTIVE JANUARY 01, 2018 | | 103668 | ☐ | VENTEGRA INC | ATTN: GENERAL COUNSEL 450 NORTH BRAND BOULEVARD SUITE 600 GLENDALE, CA 91203 |
| 2. 2205 | REBATE AGREEMENT EFFECTIVE MAY 31, 2001 | | 103671 | ☐ | VERMONT PREVENTION ASSISTANCE TRANSITION AND HEALTH ACCESS | ATTN: GENERAL COUNSEL |

**NAS1414**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

### Intellectual Property Agreements

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2206 ASSIGNMENT AND ASSUMPTION AGREEMENT DATED JANUARY 01, 2017 | | 100007 | ☐ | 4TH DOWN SOFTWARE DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 9 BRADY RD WARREN, NJ 07059 |
| 2. 2207 AMENDED AND RESTATED LICENSE AGREEMENT BETWEEN ABBOT LABORATORIES AND PURDUE PHARMA L.P., DATED MARCH 21, 2011 (EFFECTIVE DECEMBER 21, 2007), AS AMENDED BY AMENDMENT 1 AND 2 | | 106206 | ☐ | ABBOT LABORATORIES | ATTN: GENERAL COUNSEL 100 ABBOTT PARK ROAD BUILDING AP34, DEPARTMENT R50A ABBOTT PARK, IL 60064-3500 |
| 2. 2208 AMENDED AND RESTATED LICENSE AGREEMENT DATED MARCH 21, 2011 | | 100016 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2209 AMENDED AND RESTATED LICENSE AGREEMENT EFFECTIVE DECEMBER 21, 2007 | | 100017 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT PHARMACEUTICAL PRODUCTS 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2210 AMENDMENT #1 TO LICENSE AGREEMENT DATED MARCH 26, 2010 | | 100024 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2211 AMENDMENT #1 TO LICENSE AGREEMENTS EFFECTIVE APRIL 10, 2009 | | 100021 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: GENERAL COUNSEL 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2212 AMENDMENT NO. 1 TO AMENDED AND RESTATED LICENSE AGREEMENT DATED APRIL 15, 2011 | | 100028 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2213 AMENDMENT NO. 2 TO AMENDED AND RESTATED LICENSE AGREEMENT DATED FEBRUARY 20, 2014 | | 100030 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |

**NAS1415**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2214 ASSIGNMENT OF CANADIAN PATENT APPLICATION DATED APRIL 29, 2010 | | 100027 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: GENERAL COUNSEL 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064 |
| 2. 2215 LICENSE AGREEMENT DATED AUGUST 31, 2006 | | 100014 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS DIVISION 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2216 LICENSE AGREEMENT DATED DECEMBER 21, 2007 | | 100015 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS DIVISION 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2217 LICENSE AGREEMENT DATED OCTOBER 05, 2009 | | 100022 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS DIVISION 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2218 LICENSE AGREEMENT DATED OCTOBER 13, 2008 | | 100018 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS DIVISION 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064 |
| 2. 2219 LICENSE AGREEMENT DATED OCTOBER 13, 2008 | | 100020 | ☐ | ABBVIE INC. (F/K/A ABBOTT LABORATORIES) | ATTN: PRESIDENT, PHARMACEUTICAL PRODUCTS DIVISION 100 ABBOTT PARK ROAD ABBOTT PARK, IL 60064-3500 |
| 2. 2220 PATENT LICENSE AGREEMENT AMONG ABHAI, LLC AND CERTAIN ASSOCIATED COMPANIES AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED DECEMBER 22, 2017 | | 106208 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |

NAS1416

**Purdue Pharma L.P.**                                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2221 AMENDMENT #1 TO MASTER LICENSE/SERVICES AGREEMENT DATED JUNE 01, 2013 | | 100051 | ☐ | ACCELERYS SOFTWARE INC. | ATTN: GENERAL COUNSEL 10188 TELESIS COURT SUITE 100 SAN DIEGO, CA 92121 |
| 2. 2222 LICENSE AGREEMENT EFFECTIVE MAY 26, 2004 | | 100052 | ☐ | ACCELLION, INC. | ATTN: GENERAL COUNSEL 1900 EMBARCADERO ROAD SUITE 207 PALO ALTO, CA 94303 |
| 2. 2223 ADDENDUM 4 TO LICENSE PURCHASE AGREEMENT DATED DECEMBER 27, 2002 | | 100053 | ☐ | ACCELRYS INC. | ATTN: GENERAL COUNSEL 9685 SCRANTON ROAD SAN DIEGO, CA 92121 |
| 2. 2224 MASTER LICENSE AND SERVICE AGREEMENT EFFECTIVE DECEMBER 20, 2012 | | 100055 | ☐ | ACCELRYS SOFTWARE INC. | ATTN: GENERAL COUNSEL 10188 TELESIS COURT SUITE 100 SAN DIEGO, CA 92121 |
| 2. 2225 AMENDMENT 4 TO ADDENDUM 4 TO LICENSE PURCHASE AGREEMENT DATED NOVEMBER 06, 2006 | | 100056 | ☐ | ACCELRYS SOFTWARE SOLUTIONS INC. | ATTN: GENERAL COUNSEL 10188 TELESIS COURT SAN DIEGO, CA 92121 |
| 2. 2226 EVALUATION AND DEMONSTRATION LICENSE AGREEMENT EFFECTIVE MARCH 02, 2010 | | 100060 | ☐ | ACCENTURE LLP | ATTN: GENERAL COUNSEL 161 NORTH CLARK STREET CHICAGO, IL |
| 2. 2227 PATENT LICENSE AGREEMENT AMONG ACTAVIS, INC. (F/K/A WATSON PHARMACEUTICALS INC.) AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED APRIL 25, 2013 | | 106214 | ☐ | ACTAVIS, INC. (F/K/A WATSON PHARMACEUTICALS INC.) | ATTN: DAVID BUCHEN MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 2228 NON-EXCLUSIVE LICENSE AGREEMENT DATED OCTOBER 26, 2011 | | 100127 | ☐ | ALAUNUS PHARMACEUTICAL, LLC | ATTN: GENERAL COUNSEL 687 WAVERLY STREET FRAMINGHAM, MA 01702 |
| 2. 2229 AMENDMENT #1 TO SITE LICENSE AGREEMENT EFFECTIVE OCTOBER 01, 2010 | | 100195 | ☐ | AMERICAN MEDICAL ASSOCIATION | ATTN: GENERAL COUNSEL 515 NORTH STATE STREET CHICAGO, IL 60610 |

NAS1417

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2230  LICENSE AGREEMENT DATED OCTOBER 01, 2007 | | 100194 | ☐ | AMERICAN MEDICAL ASSOCIATION | ATTN: GENERAL COUNSEL 515 NORTH STATE STREET CHICAGO, IL 60610 |
| 2. 2231  LICENSE AND DEVELOPMENT AGREEMENT DATED DECEMBER 2, 2016 | | 9049 | ☐ | ANABIOS CORPORATION | ATTN: ANDRE GHETTI, PHD, CEO SAN DIEGO SCIENCE CENTER 3030 BUNKER HILL STREET, SUITE 312 SAN DIEGO, CA 92109 |
| 2. 2232  LICENSE AGREEMENT EFFECTIVE DECEMBER 15, 2016 | | 100252 | ☐ | APEX HEALTH INNOVATIONS, LLC | ATTN: GENERAL COUNSEL 3156 EVELYN AVENUE SIMI VALLEY, CA 93063 |
| 2. 2233  PATENT LICENSE AGREEMENT DATED AUGUST 31, 2009 | | 100257 | ☐ | APOTEX INC. | ATTN: CHIEF COMMERCIAL OFFICER ATTN: GENERAL COUNSEL 2400 NORTH COMMERCE PARKWAY, SUITE 400 WESTON, FL 33326 |
| 2. 2234  PATENT LICENSE AGREEMENT AMONG PURDUE PHARMA, L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA TECHNOLOGIES INC., RHODES TECHNOLOGIES, AND ASCENT PHARMACEUTICALS, INC. DATED MARCH 27, 2019 | | 106218 | ☐ | ASCENT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 400 S. TECHNOLOGY DRIVE CENTRAL SLIP, NY 11722 |
| 2. 2235  PATENT LICENSE AGREEMENT DATED DECEMBER 24, 2013 | | 100315 | ☐ | AUROLIFE PHARMA LLC; AUROBINDO PHARMA USA INC. | ATTN: ROBERT G. CUNARD 6 WHEELING ROAD DAYTON 08810 |
| 2. 2236  APPLICATION SERVICE PROVIDER AGREEMENT DATED JUNE 29, 2007 | | 100337 | ☐ | AXENTIS, INC. | ATTN: GENERAL COUNSEL SKYLIGHT OFFICE TOWER 1660 WEST 2ND STREET, SUITE 250 CLEVELAND, OH 44113 |

**NAS1418**

**Purdue Pharma L.P.**                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2237  ASSIGNMENT AND ASSUMPTION AGREEMENT EFFECTIVE OCTOBER 17, 2001 | | 100352 | ☐ | BARD BIOPHARMA L.P. | ATTN: GENERAL COUNSEL COLLEGE RD E PRINCETON, NJ 08540 |
| 2. 2238  ASSIGNMENT AND NON-EXCLUSIVE LICENSE AGREEMENT DATED MARCH 01, 2005 | | 100364 | ☐ | BEACON HILL TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL 55 BEACH PLUM LANE SCITUATE, MA 02066 |
| 2. 2239  LICENSE, SUPPLY AND DISTRIBUTION AGREEMENT DATED JUNE 02, 1994 | | 100391 | ☐ | BIOFILL PRODUCTOS BIOTECNOLOGICS S.A. | ATTN: GENERAL COUNSEL RUA MATEUS LEME NO. 2.418 CENTRO CIVICO CURITIBA, PARANA BRAZIL |
| 2. 2240  END USER LICENSE AGREEMENT DATED SEPTEMBER 29, 2009 | | 100436 | ☐ | BOMGAR CORPORATION (BOMGAR)(F/K/A NETWORKSTREAMING,INC.) | ATTN: GENERAL COUNSEL 578 HIGHLAND COLONY PARKWAY PARAGON CENTER, SUITE 300 RIDGELAND, MS 39157 |
| 2. 2241  DATA EXTRACTION TOOL SOURCE CODE LICENSE DATED MARCH 28, 2013 | | 100499 | ☐ | C/O MEDIADATA SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 79 FIFTH AVENUE 8TH FLOOR NEW YORK, NY 10003 |
| 2. 2242  LICENSE AGREEMENT DATED SEPTEMBER 30, 2011 | | 100509 | ☐ | CAMBRIDGE SOFT CORPORATION | ATTN: GENERAL COUNSEL PURDUE: 6 CEDARBROOK DRIVE CRANBURY, NJ 08512 100 CAMBRIDGEPARK DRIVE CAMBRIDGE, MA 02140 |
| 2. 2243  SECOND AMENDMENT TO LICENSE AGREEMENT  DATED NOVEMBER 13, 2013 | | 100510 | ☐ | CAMBRIDGESOFT CORP. | ATTN: GENERAL COUNSEL 940 WINTER STREET WALTHAM, MA 02451 |
| 2. 2244  AMENDMENT #1 TO LICENSE AGREEMENT DATED JUNE 28, 2013 | | 100511 | ☐ | CAMBRIDGESOFT CORPORATION | ATTN: CONTRACTS DEPARTMENT - INFORMATICS 940 WINTER STREET WALTHAM, MA 02451 |

**NAS1419**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2245  EXCLUSIVE LICENSE AGREEMENT (EX-US) BY AND AMONG CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN AND CELLACT PHARMA GMBH DATED JULY 31, 2017 AND ACCOMPANYING EXHIBITS("CHARITÉ LICENSE EX-US") [ASSIGNED BY CELLACT TO MICL] | | 106231 | ☐ | CELLACT PHARMA GMBH | ATTN: GENERAL COUNSEL OTTO-HAHN-STRAßE 15, 44227 DORTMUND, GERMANY |
| 2. 2246  EXCLUSIVE LICENSE AGREEMENT (US) BY AND AMONG CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN AND CELLACT PHARMA GMBH DATED JULY 31, 2017 AND ACCOMPANYING EXHIBITS ("CHARITÉ LICENSE US") [ASSIGNED BY CELLACT TO PPLP] | | 106230 | ☐ | CELLACT PHARMA GMBH | ATTN: GENERAL COUNSEL OTTO-HAHN-STRAßE 15, 44227 DORTMUND, GERMANY |
| 2. 2247  EXCLUSIVE LICENSE AGREEMENT (EX-US) BY AND AMONG CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN AND CELLACT PHARMA GMBH DATED JULY 31, 2017 AND ACCOMPANYING EXHIBITS("CHARITÉ LICENSE EX-US") [ASSIGNED BY CELLACT TO MICL] | | 106233 | ☐ | CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN | ATTN: GENERAL COUNSEL CHARITÉPL. 1, 10117 BERLIN, GERMANY |
| 2. 2248  EXCLUSIVE LICENSE AGREEMENT (US) BY AND AMONG CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN AND CELLACT PHARMA GMBH DATED JULY 31, 2017 AND ACCOMPANYING EXHIBITS ("CHARITÉ LICENSE US") [ASSIGNED BY CELLACT TO PPLP] | | 106232 | ☐ | CHARITÉ-UNIVERSITÄTSMEDIZIN BERLIN | ATTN: GENERAL COUNSEL CHARITÉPL. 1, 10117 BERLIN, GERMANY |
| 2. 2249  PROJECT AGREEMENT DATED JANUARY 17, 2003 | | 100596 | ☐ | CHASE MEDICAL COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 65 OLD RIDGEFIELD ROAD WILTON, CT 06897 |
| 2. 2250  ASSIGNMENT AND LICENSE AGREEMENT EFFECTIVE DECEMBER 23, 2004 | | 100629 | ☐ | CLARIOS CORPORATION | ATTN: GENERAL COUNSEL 131 VARICK SUITE 937 NEW YORK, NY 10013 |

**NAS1420**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2251  ASSIGNMENT AND NON-EXCLUSIVE LICENSE AGREEMENT DATED NOVEMBER 22, 2004 | | 100697 | ☐ | COMPLIANCE DEVELOPMENT, INC. | ATTN: GENERAL COUNSEL 16 WARD LANE DARIEN, CT 06820 |
| 2. 2252  AMENDMENT NO. 2 TO LICENSE AGREEMENT EFFECTIVE AUGUST 15, 2013 | | 100710 | ☐ | COMPUZED INC. | ATTN: GENERAL COUNSEL C/O VISUAL ENTERPRISE ARCHITECTURE 25-13 OLD KINGS HWY N DARIEN, CT 06820 |
| 2. 2253  SERVICE AND LICENSE AGREEMENT EFFECTIVE MAY 18, 2015 | | 100735 | ☐ | COREHEALTH TECHNOLOGIES, INC. | ATTN: GENERAL COUNSEL #202 - 3275 LAKESHORE ROAD KELOWNA, BC V1W 3S9 CANADA |
| 2. 2254  GUARANTY OF RESEARCH, DEVELOPMENT, AND LICENSE AGREEMENT DATED SEPTEMBER 21, 2000 | | 100737 | ☐ | CORIXA CORPORATION | ATTN: GENERAL COUNSEL 1124 COLUMBIA STREET SUITE 200 SEATTLE, WA 98104 |
| 2. 2255  RESEARCH, DEVELOPMENT AND LICENSE AGREEMENT EFFECTIVE SEPTEMBER 21, 2002 | | 100740 | ☐ | CORIXA CORPORATION | ATTN: CHIEF OPERATING OFFICER; GENERAL COUNSEL 1124 COLUMBIA STREET SUITE 200 SEATTLE, WA 98104 |
| 2. 2256  RESTATED AND AMENDED RESEARCH, DEVELOPMENT, AND LICENSE AGREEMENT AND RELEASE EFFECTIVE JULY 11, 2005 | | 100739 | ☐ | CORIXA CORPORATION | ATTN: CHIEF OPERATING OFFICER 1900 9TH AVENUE SUITE 1100 SEATTLE, WA 98104 |
| 2. 2257  END USER LICENSE AGREEMENT EFFECTIVE JUNE 27, 2014 | | 100744 | ☐ | COURION CORPORATION | ATTN: GENERAL COUNSEL 1900 WEST PARK DRIVE 1ST FLOOR WESTBOROUGH, MA 01581-3919 |
| 2. 2258  SALE AND LICENSE AGREEMENT DATED JUNE 22, 2001 | | 100842 | ☐ | DAVID LEW SIMON, M.D. | ATTN: GENERAL COUNSEL 109 VALLEY STREET WILLIMANTIC, CT 06626 |

**NAS1421**

**Purdue Pharma L.P.**                                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2259 SECOND AMENDATORY SERVICE ORDER #5 TO SUBSCRIPTION SERVICES AGREEMENT DATED JANUARY 01, 2012 | | 100870 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 660 BANNOCK STREET DENVER, CO 80204 |
| 2. 2260 SECOND AMENDATORY SUBSCRIPTION SERVICES AGREEMENT DATED SEPTEMBER 04, 2009 | | 100868 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 660 BANNOCK STREET MC 1919 DENVER, CO 80204 |
| 2. 2261 NON-EXCLUSIVE SUB-LICENSE AGREEMENT EFFECTIVE APRIL 07, 2003 | | 100923 | ☐ | DNL | NOT AVAILABLE |
| 2. 2262 MASTER LICENSE AGREEMENT EFFECTIVE JUNE 20, 2013 | | 100941 | ☐ | DOWNSOFTWARE DEVELOPMENT LLC | ATTN: JAMES C. BODAJLO, MANAGING MEMEBER 4 FAWN LANE MARTINSVILLE, NJ 08836 |
| 2. 2263 NON-EXCLUSIVE LICENSE AGREEMENT DATED JUNE 17, 2003 | | 100943 | ☐ | DR. ANDREAS ZIMMER | SIGMUND FREUD STRASSE 25 53105 BONN GEORGIA |
| 2. 2264 LICENSE AGREEMENT DATED JUNE 24, 2015 | | 100950 | ☐ | DR/DECISION RESOURCES, LLC | PO BOX 83122 WOBURN, MA 01813-3122 |
| 2. 2265 LICENSE AGREEMENT DATED OCTOBER 16, 1997 | | 100998 | ☐ | ELECTRONIC SUBMISSION PUBLISHING SYSTEMS, INC. | ATTN: GENERAL COUNSEL 1300 VIRGINIA DRIVE SUITE 215 FORT WASHINGTON, PA |
| 2. 2266 COLLABORATIVE DEVELOPMENT AND LICENSE AGREEMENT DATED DECEMBER 19, 2012 | | 101006 | ☐ | ELMINDA LTD. | ATTN: PRESIDENT AND CEO 16 HAMINHARA STREET HERZLIYA 46586 ICELAND |
| 2. 2267 AMENDMENT, TERMINATION AND LICENSE AGREEMENT DATED DECEMBER 21, 2018 | | 9033 | ☐ | ESTEVE PHARMACEUTICALS, S.A. | FAO: DANIEL GIRONA, GENERAL COUNSEL PASSEIG DE LA ZONA FRANCA 109, 4A PLANTA BARCELONA, SPAIN 08038 |

**NAS1422**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2268   ASSIGNMENT OF PATENTS DATED OCTOBER 14, 2005 | | 101074 | ☐ | EURO-CELTIQUE S.A. | ATTN: GENERAL COUNSEL 122 BOULEVARD DE LA PETRUSSE L-2330 LUXEMBOURG |
| 2. 2269   ASSIGNMENT OF PATENTS DATED OCTOBER 25, 2005 | | 101080 | ☐ | EURO-CELTIQUE, S.A. | ATTN: GENERAL COUNSEL 122 BOULEVARD DE LA PETRUSSE L-2330 LUXEMBOURG |
| 2. 2270   ASSIGNMENT OF PATENTS DATED OCTOBER 25, 2005 | | 101081 | ☐ | EURO-CELTIQUE, S.A. | ATTN: GENERAL COUNSEL 122 BOULEVARD DE LA PETRUSSE L02330 LUXEMBOURG |
| 2. 2271   ASSIGNMENT OF PATENTS DATED SEPTEMBER 22, 2011 | | 101082 | ☐ | EURO-CELTIQUE, S.A. | ATTN: GENERAL COUNSEL 122 BOULEVARD DE LA PETRUSSE L-2330 LUXEMBOURG |
| 2. 2272   AMENDMENT TO FIRSTDOCS FOR R & D SERVICE AND LICENSE AGREEMENT EFFECTIVE JANUARY 01, 2008 | | 101140 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |
| 2. 2273   AMENDMENT TO FIRSTDOCS FOR R&D SERVICE & LICENSE AGREEMENT EFFECTIVE FEBRUARY 24, 2007 | | 101138 | ☐ | FCG CSI, INC. DBA FIRST CONSULTING GROUP | ATTN: EXECUTIVE VICE PRESIDENT 575 EAST SWEDESFORD ROAD SUITE 200 WAYNE, PA 19087 |
| 2. 2274   END USER LICENSE AGREEMENT EFFECTIVE FEBRUARY 01, 2008 | | 101173 | ☐ | FORMEDIX | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM 201 TRESSER BOULEVARD STAMFORD, CT 06901-3431 |
| 2. 2275   AMENDMENT #1 TO END USER LICENSE AGREEMENT DATED JANUARY 31, 2009 | | 101174 | ☐ | FORMEDIX, LTD. | ATTN: GENERAL COUNSEL 35 CORPORATE DRIVE, 4TH FLOOR BURLINGTON, MA 01803 |

**NAS1423**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2276   TRADEMARK LICENSE AGREEMENT EFFECTIVE NOVEMBER 01, 2019 | | 105910 | ☐ | FRESENIUS KABI USA, LLC | ATTN: GENERAL COUNSEL THREE CORPORATE DRIVE LAKE ZURICH, IL |
| 2. 2277   LICENSE AGREEMENT DATED MARCH 12, 2002 | | 101229 | ☐ | GERMIN X BIOTECHNOLOGIES INC. | ATTN: GENERAL COUNSEL 3575 PLACE DU PARC SUITE 5322 MONTREAL, QC H2W 2M9 CANADA |
| 2. 2278   AMENDMENT # 13 TO PATENT LICENSE DATED OCTOBER 01, 2018 | | 101296 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2279   AMENDMENT #1 TO PATENT LICENSE DATED DECEMBER 17, 2014 | | 101281 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2280   AMENDMENT #1 TO PATENT LICENSE DATED JULY 14, 2009 | | 101278 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2281   AMENDMENT #4 TO PATENT LICENSE DATED AUGUST 16, 2011 | | 101284 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2282   AMENDMENT NO. 10 TO PATENT LICENSE DATED APRIL 25, 2017 | | 101294 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2283   AMENDMENT NO. 10 TO PATENT LICENSE DATED APRIL 25, 2017 | | 101295 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |

**NAS1424**

**Purdue Pharma L.P.**                                                         Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2284  AMENDMENT NO. 10 TO PATENT LICENSE DATED NOVEMBER 01, 2016 | | 101290 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2285  AMENDMENT NO. 2 TO PATENT LICENSE DATED NOVEMBER 07, 2016 | | 101291 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2286  AMENDMENT NO. 2 TO PATENT LICENSE DATED NOVEMBER 07, 2016 | | 101309 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2287  AMENDMENT NO. 3 TO PATENT LICENSE AGREEMENT DATED APRIL 25, 2017 | | 101292 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2288  AMENDMENT NO. 6 TO PATENT LICENSE DATED MARCH 17, 2009 | | 101313 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2289  AMENDMENT NO. 7 TO PATENT LICENSE DATED OCTOBER 31, 2016 | | 101306 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2290  AMENDMENT NO. 8 TO PATENT LICENSE DATED NOVEMBER 01, 2016 | | 101307 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2291  ASSIGNMENT AND ASSUMPTION AGREEMENT DATED SEPTEMBER 13, 2016 | | 101305 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |

**NAS1425**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2292 FIFTH AMENDMENT: TO PATENT LICENSE DATED SEPTEMBER 30, 2013 | | 101289 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2293 PATENT LICENSE AGREEMENT DATED MARCH 17, 2009 | | 101275 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2294 PATENT LICENSE AGREEMENT DATED MARCH 17, 2009 | | 101276 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2295 PATENT LICENSE AGREEMENT DATED MARCH 17, 2009 | | 101302 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2296 PATENT LICENSE AGREEMENT DATED MAY 24, 2013 | | 101287 | ☐ | GRUNENTHAL GMBH | ATTN: SENIOR VICE PRESIDENT BUSINESS DEVELOPMENT ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2297 PATENT LICENSE AGREEMENT EFFECTIVE MAY 24, 2013 | | 101288 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2298 PATENT LICENSE AGREEMENT EFFECTIVE MAY 24, 2013 | | 101304 | ☐ | GRUNENTHAL GMBH | ATTN: SENIOR VICE PRESIDENT BUSINESS DEVELOPMENT ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2299 PATENT LICENSE EFFECTIVE APRIL 25, 2017 | | 101310 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |

**NAS1426**

**Purdue Pharma L.P.**                                                                      Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2300  PATENT LICENSE EFFECTIVE JULY 29, 2011 | | 101282 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2301  PATENT LICENSE EFFECTIVE JULY 29, 2011 | | 101303 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2302  PATENT LICENSE EFFECTIVE MARCH 17, 2009 | | 101277 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2303  PATENT LICENSE EFFECTIVE NOVEMBER 02, 2016 | | 101308 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2304  PATENT LICENSE EFFECTIVE OCTOBER 01, 2018 | | 101311 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2305  SECOND AMENDMENT TO PATENT LICENSE DATED FEBRUARY 25, 2011 | | 101279 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2306  SECRECY AGREEMENT DATED DECEMBER 07, 2007 | | 101274 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2307  THIRD AMENDMENT TO PATENT LICENSE DATED MARCH 17, 2009 | | 101280 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |

**NAS1427**

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2308 PATENT LICENSE AGREEMENT (TRF/MORPHINE ER) BETWEEN GRÜNENTHAL GMBH AND PURDUE PHARMA L.P., DATED MAY 24, 2013, AS AMENDED BY AMENDMENT 1, AND ASSIGNED TO RHODES ON OCTOBER 1, 2016 | | 106239 | ☐ | GRÜNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN, GERMANY 52078 GEORGIA |
| 2. 2309 PATENT LICENSE AGREEMENT BETWEEN GRÜNENTHAL GMBH AND PURDUE PHARMA L.P., DATED JULY 29, 2011, AS AMENDED BY AMENDMENTS NOS. 1 AND 2 | | 106240 | ☐ | GRÜNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN, GERMANY 52078 GEORGIA |
| 2. 2310 PATENT LICENSE AGREEMENT BETWEEN GRÜNENTHAL GMBH AND PURDUE PHARMA L.P., DATED MARCH 17, 2009, AS AMENDED BY AMENDMENTS NOS. 1 – 13 | | 106238 | ☐ | GRÜNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN, GERMANY 52078 GEORGIA |
| 2. 2311 HP ACTIVATION KEY AGREEMENT DATED MAY 08, 2003 | | 101395 | ☐ | HEWLETT-PACKARD COMPANY | ATTN: GENERAL COUNSEL 9737 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 2312 NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE AUGUST 01, 2012 | | 101399 | ☐ | HIKMA (MAPLE) LTD./WEST-WARD PHARMACEUTICAL CORP. | ATTN: GENERAL COUNSEL HIKMA: 13 HANOVER SQUARE, LONDON, W1S, 1HL, UNITED KINGDOM WEST-WARD: 401 INDUSTRIAL WAY WEST, EATONTOWN, NJ 07724 USA |
| 2. 2313 NON-EXCLUSIVE LICENSE AGREEMENT DATED JULY 26, 2011 | | 101410 | ☐ | HOSPIRA, INC. | ATTN: GENERAL COUNSEL 275 NORTH FIELD DRIVE LAKE FOREST, IL 60045 |
| 2. 2314 LICENSE AGREEMENT EFFECTIVE NOVEMBER 10, 2015 | | 101418 | ☐ | HYLAND SOFTWARE, INC. | ATTN: GENERAL COUNSEL 28500 CLEMENS ROAD WESTLAKE, OH 44145 |

**NAS1428**

**Purdue Pharma L.P.**                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2315 ISITOOLBOX PHARMA LICENSE AGREEMENT EFFECTIVE DECEMBER 19, 2003 | | 101432 | ☐ | IMAGE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 100 SOUTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 2316 LICENSE AGREEMENT EFFECTIVE MARCH 30, 2007 | | 101430 | ☐ | IMAGE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL ATTN: VICE PRESIDENT, SALES AND MARKETING 100 S. JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 2317 AMENDED & RESTATED LICENSE AGREEMENT EFFECTIVE APRIL 19, 2008 | | 101434 | ☐ | IMAGE SOLUTIONS, INC. (ISI) | ATTN: GENERAL COUNSEL 100 SOUTH JEFFERSON ROAD WHIPPANY, NJ 07981 |
| 2. 2318 AMENDMENT NO. 5 TO MASTER LICENSE AND MAINTENANCE AGREEMENT DATED SEPTEMBER 28, 2001 | | 101436 | ☐ | IMANY INC. | ATTN: GENERAL COUNSEL 37TH FLOOR 1735 MARKET STREET, PHILADELPHIA, PA 19103 |
| 2. 2319 PATENT LICENSE AGREEMENT AMONG IMPAX LABORATORIES, INC. AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED NOVEMBER 27, 2013 | | 106247 | ☐ | IMPAX LABORATORIES, INC. | ATTN: GENERAL COUNSEL 31047 GENSTAR ROAD HAYWARD, CA 94544 |
| 2. 2320 SECOND AMENDMENT TO USER-CUSTOMER AGREEMENT DATED SEPTEMBER 23, 2013 | | 101444 | ☐ | IMS HEALTH INCORPORATED | ATTN: GENERAL COUNSEL ONE IMS DRIVE PLYMOTH MEETING, PA 19462 |
| 2. 2321 NON-EXCLUSIVE LICENSE AGREEMENT DATED OCTOBER 11, 2013 | | 101464 | ☐ | INDIANA UNIVERSITY RESEARCH AND TECHNOLOGY CORPORATION | ATTN: IURTC AGREEMENT NO. PUR-1013 JS 351 W. 10TH STREET INDIANAPOLIS, IN 46202 |
| 2. 2322 LICENSE AGREEMENT EFFECTIVE MAY 07, 2007 | | 101468 | ☐ | INFORMATION REQUIREMENTS CLEARINGHOUSE, INC. | ATTN: GENERAL COUNSEL 5600 SOUTH QUEBEC STREET, SUITE 250-C ENGLEWOOD, CO 80111 |

**NAS1429**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2323　ASSIGNMENT, ASSUMPTION AND CONSENT AGREEMENT DATED MARCH 01, 2017 | | 101502 | ☐ | INTEGREON MANAGED SOLUTIONS, INC. | ATTN: LEGAL DEPARTMENT 1450 BROADWAY, SUITE 620 NEW YORK, NY 10018 |
| 2. 2324　SALES, LICENSE AND SERVICES AGREEMENT EFFECTIVE AUGUST 15, 2013 | | 101511 | ☐ | INTERACTIVE CAPTURE SYSTEMS, LLC | ATTN: GENERAL COUNSEL 2 CARNEGIE ROAD LAWRENCEVILLE, NJ 08648 |
| 2. 2325　LICENSE AGREEMENT DATED MAY 02, 1997 | | 101518 | ☐ | INTERNATIONAL BIOIMMUNE SYSTEMS, INC. | ATTN: GENERAL COUNSEL 600 NORTHERN BOULEVARD SUITE 111 GREAT NECK, NY 11021 |
| 2. 2326　18TH ADDENDUM TO THE SERVICES AND LICENSE AGREEMENT EFFECTIVE NOVEMBER 15, 2001 | | 101522 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 1 ORCHARD RD ARMONK, NY 10504 |
| 2. 2327　FIRST AMENDMENT TO THE SEVENTEENTH ADDENDUM TO THE SERVICES AND LICENSE AGREEMENT EFFECTIVE DECEMBER 17, 2018 | | 101520 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 1 ORCHARD RD ARMONK, NY 10504 |
| 2. 2328　FIRST AMENDMENT TO THE SEVENTEENTH ADDENDUM TO THE SERVICES AND LICENSE AGREEMENT EFFECTIVE DECEMBER 17, 2018 | | 101521 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 1 ORCHARD RD ARMONK, NY 10504 |
| 2. 2329　LICENSE CONVERSION AGREEMENT EFFECTIVE NOVEMBER 18, 2009 | | 101519 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 1 ORCHARD RD ARMONK, NY 10504 |
| 2. 2330　ASSIGNMENT AND ASSUMPTION AGREEMENT EFFECTIVE DECEMBER 20, 2005 | | 101557 | ☐ | IRC 1446 WITHHOLDING PARTNERSHIP LP | NOT AVAILABLE |
| 2. 2331　MASTER LICENSE AGREEMENT EFFECTIVE APRIL 30, 2004 | | 101562 | ☐ | ISOFT CORPORATION | ATTN: GENERAL COUNSEL 15303 DALLAS PARKWAY SUITE 1110 ADDISON, TX 75001 |

**NAS1430**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2332  SCHEDULE TO MASTER LICENSE AGREEMENT DATED MAY 18, 2006 | | 101560 | ☐ | ISOFT CORPORATION | ATTN: GENERAL COUNSEL 15303 DALLAS PARKWAY SUITE 1110 ADDISON, TX 75001 |
| 2. 2333  SECOND AMENDMENT TO MASTER LICENSE AGREEMENT DATED APRIL 30, 2004 | | 101559 | ☐ | ISOFT CORPORATION | ATTN: GENERAL COUNSEL 15303 DALLAS PARKWAY SUITE 1110 ADDISON, TX 75001 |
| 2. 2334  LICENSE AGREEMENT WITH WARRANTY DATED MARCH 31, 2013 | | 101564 | ☐ | IVO NETWORKS, INC. | 1840 GATEWAY DR SAN MATEO, CA 94404 |
| 2. 2335  DEVELOPING, LICENSING AND MARKETING AGREEMENT DATED DECEMBER 23, 2016 | | 101579 | ☐ | JAGOTEC AG | ATTN: GENERAL COUNSEL EPTINGERSTRASSE 61 MUTTENZ, SWITZERLAND 4132 |
| 2. 2336  LICENSE AGREEMENT DATED SEPTEMBER 18, 1997 | | 101583 | ☐ | JANSSEN-ORTHO, INC. | ATTN: GENERAL COUNSEL 19 GREEN BELT DRIVE NORTH YORK, ON M3C 1L9 CANADA |
| 2. 2337  ASSIGNMENT AND CONSENT AGREEMENT DATED OCTOBER 03, 2003 | | 101600 | ☐ | JK SYSTEMS, INC. | ATTN: GENERAL COUNSEL 128 NORTH TAYLOR AVENUE NORWALK, CT 06854 |
| 2. 2338  NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE FEBRUARY 09, 2005 | | 101611 | ☐ | JOHN HOPKINS UNIVERSITY SCHOOL OF MEDICINE | ATTN: GENERAL COUNSEL 113 GARLAND HALL 3400 NORTH CHARLES STREET BALTIMORE, MD 21218 |
| 2. 2339  AGREEMENT RE: INTERFERENCE, APPEAL, CROSS-APPEAL AND OTHER MATTERS EFFECTIVE FEBRUARY 17, 2009 | | 101616 | ☐ | JOHNSON MATTHEY INC. | ATTN: PRESIDENT PHARMACEUTICAL MATERIALS 2003 NOLTE DRIVE WEST DEPTFORD, NJ 08066 |
| 2. 2340  PATENT LICENSE AGREEMENT AMONG PURDUE PHARMA L.P., AND KASHIV PHARMA, LLC DATED AUGUST 9, 2018 | | 106252 | ☐ | KASHIV PHARMA, LLC | ATTN: GENERAL COUNSEL 1 NEW ENGLAND AVE, PISCATAWAY, NJ 08854 |

**NAS1431**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2341 PATENT LICENSE AGREEMENT DATED JUNE 09, 2009 | | 101694 | ☐ | KV PHARMACEUTICAL COMPANY | ATTN: PAUL BRADY 2503 SOUTH HANLEY ROAD ST. LOUIS, MO 63144 |
| 2. 2342 LICENSE AGREEMENT BETWEEN PURDUE PHARMA L.P. AND L. PERRIGO COMPANY DATED FEBRUARY 27, 2004 | | 106256 | ☐ | L. PERRIGO COMPANY | ATTN: ASSISTANT GENERAL COUNSEL 515 EASTERN AVENUE ALLEGAN, MI 49010 |
| 2. 2343 LICENSE AGREEMENT DATED FEBRUARY 27, 2004 | | 101700 | ☐ | L. PERRIGO COMPANY | ATTN: ASSISTANT GENERAL COUNSEL 515 EASTERN AVENUE ALLEGAN, MI 49010 |
| 2. 2344 EXCLUSIVE LICENSE AGREEMENT EFFECTIVE AUGUST 12, 2005 | | 101701 | ☐ | LABOPHARM EUROPE LIMITED | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 2345 SECOND AMENDMENT TO EXCLUSIVE LICENSE AGREEMENT  DATED DECEMBER 31, 2010 | | 101708 | ☐ | LABOPHARM INC. | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 2346 SIGMA1 OPTION AGREEMENT DATED DECEMBER 22, 2014 | | 101718 | ☐ | LABORATORIES DEL DR. ESTEVE S.A. | ATTN: GENERAL COUNSEL, LEGAL DEPARTMENT 221 AVINGUADA DE LA MARE DE DEU DE MONTSERRAT BARCELONA, SPAIN 8041 |
| 2. 2347 SIGMA1 OPTION AGREEMENT SIDE LETTER DATED DECEMBER 22, 2014 | | 101717 | ☐ | LABORATORIES DEL DR. ESTEVE S.A. | ATTN: GENERAL COUNSEL, LEGAL DEPARTMENT 221 AVINGUADA DE LA MARE DE DEU DE MONTSERRAT BARCELONA, SPAIN 8041 |

**NAS1432**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2348 | MUMO1 DEVELOPMENT AND LICENSE AGREEMENT DATED DECEMBER 22, 2014 BETWEEN LABORATORIOS DEL DR. ESTEVE, S.A. AND THE COMPANY | | 9031 | ☐ | LABORATORIOS DEL DR. ESTEVE, S.A. | ATTN: GENERAL COUNSEL, LEGAL DEPARTMENT 221 AVINGUADA DE LA MARE DE DEU DE MONTSERRAT BARCELONA, SPAIN 8041 |
| 2. 2349 | SIGMA1 DEVELOPMENT AND LICENSE AGREEMENT DATED DECEMBER 22, 2014 BETWEEN LABORATORIOS DEL DR. ESTEVE, S.A. AND THE COMPANY | | 9032 | ☐ | LABORATORIOS DEL DR. ESTEVE, S.A. | ATTN: GENERAL COUNSEL, LEGAL DEPARTMENT 221 AVINGUADA DE LA MARE DE DEU DE MONTSERRAT BARCELONA, SPAIN 8041 |
| 2. 2350 | COPYRIGHT ASSIGNMENT EFFECTIVE JULY 29, 2005 | | 101730 | ☐ | LADENBURG B.V. | ATTN: GENERAL COUNSEL VAN ALKEMADELAAN 1, 2597-AA DEN HAAG, THE NETHERLANDS |
| 2. 2351 | PATENTS TRANSFER & ASSIGNMENT AGREEMENT EFFECTIVE JULY 27, 2005 | | 101729 | ☐ | LADENBURG B.V. | ATTN: GENERAL COUNSEL VAN ALKEMADELAAN 1, 2597-AA DEN HAAG, THE NETHERLANDS |
| 2. 2352 | EXCLUSIVE LICENSE AND MANUFACTURERS AGREEMENT DATED JULY 14, 2005 | | 101733 | ☐ | LADENBURG BV | ATTN: GENERAL COUNSEL VAN ALKEMADELAAN 1 DEN HAAG 2597-AA NIGER |
| 2. 2353 | EXCLUSIVE LICENSE AND MANUFACTURER'S AGREEMENT DATED JULY 14, 2005 | | 101736 | ☐ | LADENBURG BV OF VAN ALKEMADELAAN 1 | ATTN: GENERAL COUNSEL DEN HAAG 2597-AA NIGER |
| 2. 2354 | AMENDMENT A-7 TO THE ESPS COREDOSSIER LICENSE AGREEMENT DATED OCTOBER 16, 1997 | | 101780 | ☐ | LIQUENT, INC. | ATTN: GENERAL COUNSEL 1300 VIRGINIA DRIVE SUITE 125 WASHIINGTON, PA 19034 |
| 2. 2355 | AMENDMENT #1 TO PATENT ASSIGNMENT AND PATEN AND KNOW-HOW LICENSE AGREEMENT DATED APRIL 09, 2015 | | 101825 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 3 ANDERNACH D-56605 GEORGIA |

**NAS1433**

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2356  AMENDMENT NO. 1 TO PATENT ASSIGNMENT AND PATENT AND KNOW-HOW LICENSE AGREEMENT DATED APRIL 09, 2015 | | 101810 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2357  AMENDMENT NO. 2 TO PATENT ASSIGNMENT AND PATENT DATED APRIL 09, 2015 | | 101814 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2358  AMENDMENT TO LICENSE AGREEMENT DATED APRIL 12, 1995 | | 101822 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2359  AMENDMENT TO LICENSE AGREEMENT DATED FEBRUARY 08, 2013 | | 101824 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2360  AMENDMENT TO LICENSE AGREEMENT EFFECTIVE MARCH 01, 2011 | | 101809 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2361  AMENDMENT TO LICENSE AGREEMENT EFFECTIVE NOVEMBER 28, 2012 | | 101811 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56605 GEORGIA |
| 2. 2362  CONFIRMATORY PATENT ASSIGNMENT DATED APRIL 09, 2015 | | 101828 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 4 ANDERNACH D-56605 GEORGIA |
| 2. 2363  SECOND AMENDMENT TO PATENT ASSIGNMENT AND PATENT AND KNOW-HOW LICENSE AGREEMENT DATED APRIL 09, 2015 | | 101829 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 5 ANDERNACH D-56605 GEORGIA |

**NAS1434**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2364   THIRD AMENDMENT TO PATIENT ASSIGNMENT AND PATIENT AND KNOW-HOW LICENSE AGREEMENT DATED APRIL 12, 1995 | | 101832 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 6 ANDERNACH D-56605 GEORGIA |
| 2. 2365   LICENSE AGREEMENT BETWEEN PURDUE PHARMA L.P. AND LTS LOHMANN THERAPIE-SYSTEME GMBH & CO. KG DATED APRIL 12, 1995, AS AMENDED AND SUPPLEMENTED | | 106257 | ☐ | LTS LOHMANN THERAPIE-SYSTEME GMBH & CO. KG | NOT AVAILABLE |
| 2. 2366   MASTER LICENSE AGREEMENT DATED DECEMBER 16, 2014 | | 101877 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2367   MASTER LICENSE AGREEMENT DATED DECEMBER 16, 2014 | | 101878 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2368   STATEMENT OF WORK DATED DECEMBER 16, 2014 | | 101876 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2369   STATEMENT OF WORK NO. 019-1 TO MASTER LICENSE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101873 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2370   STATEMENT OF WORK TO MASTER LICENSE SERVICES AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101874 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2371   STATEMENT OF WORK UNDER MASTER LICENSE AGREEMENT EFFECTIVE JANUARY 01, 2019 | | 101875 | ☐ | MANAGED MARKETS INSIGHTS & TECHNOLOGY, LLC | ATTN: GENERAL COUNSEL 1040 STONY HILL ROAD SUITE 300 YARDLEY, PA 19067 |
| 2. 2372   AMENDED AND RESTATED ASSIGNMENT AGREEMENT DATED MAY 30, 2002 | | 101906 | ☐ | MAXIM PHARMACEUTICALS | ATTN: GENERAL COUNSEL 8899 UNIVERSITY CENTER LANE SUITE 400 SAN DIEGO, CA |

**NAS1435**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2373  LICENSE AGREEMENT EFFECTIVE MARCH 20, 2003 | | 101954 | ☐ | MEIJI SEIKA KAISHA, LTD. | ATTN: GENERAL COUNSEL 4-16, KYOBASHI 2-CHROME CHUO-KU TOKYO |
| 2. 2374  AMENDMENT 2 VOLUME LICENSING - PROGRAM SIGNATURE FORM EFFECTIVE JANUARY 01, 2014 | | 101995 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL DEPT. 551, VOLUME LICENSING 6100 NEIL ROAD, SUITE 201 RENO, NV 89511 |
| 2. 2375  AMENDMENT 3 VOLUME LICENSING - PROGRAM SIGNATURE FORM EFFECTIVE SEPTEMBER 22, 2014 | | 101997 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL DEPT. 551, VOLUME LICENSING 6100 NEIL ROAD, SUITE 201 RENO, NV 89511 |
| 2. 2376  MICROSOFT ENTERPRISE AGREEMENT EFFECTIVE JANUARY 01, 2005 | | 101991 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL DEPT. 551, VOLUME LICENSING 6100 NEIL ROAD, SUITE 201 RENO, NV 89511 |
| 2. 2377  PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102002 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2378  PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102003 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2379  PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102004 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2380  PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102005 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2381  PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102006 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |

**NAS1436**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2382 PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102007 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2383 PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102008 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2384 PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102009 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2385 PATENT MARKETING AGREEMENT EFFECTIVE NOVEMBER 08, 2004 | | 102010 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 2386 LICENSE AGREEMENT EFFECTIVE APRIL 17, 2001 | | 102013 | ☐ | MINIMENTAL LLC | ATTN: GENERAL COUNSEL 31 SAINT JAMES AVENUE BOSTON, MA |
| 2. 2387 MASTER AGREEMENT EFFECTIVE NOVEMBER 20, 2015 | | 102026 | ☐ | MITRATECH HOLDINGS, INC | ATTN: GENERAL COUNSEL 5001 PLAZA ON THE LAKE SUITE 111 AUSTIN, TX |
| 2. 2388 END USER AGREEMENT EFFECTIVE DECEMBER 22, 2010 | | 102031 | ☐ | MOBILE IRON INC | ATTN: GENERAL COUNSEL 815A EAST MIDDLEFIELD ROAD MOUNTIAN VIEW, CA 94043 |
| 2. 2389 REVITAS - AMEND 9 TO LICENSE AGMT CW2324412 (CG.NK) DATED MARCH 16, 2017 | | 102034 | ☐ | MODEL N, INC. | ATTN: GENERAL COUNSEL 1600 SEAPORT BLVD, SUITE 400 REDWOOD CITY, CA |
| 2. 2390 ADDENDUM TO CORPORATE LICENSE AGREEMENT DATED OCTOBER 02, 2006 | | 102185 | ☐ | NATURE AMERICA. INC. | ATTN: GENERAL COUNSEL NATURE PUBLISHING GROUP 75 VARICK STREET, 9TH FLOOR NEW YORK, NY |
| 2. 2391 THIS LICENSE AGREEMENT MAY BE RENEWED FOR ADDITIONAL 1 YEAR PERIODS. DATED JULY 01, 2001 | | 102207 | ☐ | NEW YORK MEDICAL COLLEGE | ATTN: GENERAL COUNSEL VALHALLA, NY |

**NAS1437**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2392  EXCLUSIVE LICENSE MANUFACTURER'S AGREEMENT EFFECTIVE APRIL 21, 2004 | | 102218 | ☐ | NORAPHARMA A/S | ATTN: GENERAL COUNSEL SLOTSMARKEN 15, 2970 HORSHOLM, DENMARK |
| 2. 2393  EXCLUSIVE LICENSE AGREEMENT DATED JANUARY 01, 2008 | | 102219 | ☐ | NORAPHARMA A/S, SLOTSMARKEN | ATTN: GENERAL COUNSEL 15, DK 2970 HORSHOLM, DENMARK |
| 2. 2394  EXCLUSIVE LICENSE AGREEMENT DATED JANUARY 01, 2008 | | 102220 | ☐ | NORAPHARMA A/S, SLOTSMARKEN | ATTN: GENERAL COUNSEL 15, DK 2970 HORSHOLM, DENMARK |
| 2. 2395  CONFIRMATORY EXCLUSIVE PATENT LICENSE AGREEMENT DATED APRIL 21, 2004 | | 102222 | ☐ | NORPHARMA A/S | ATTN: GENERAL COUNSEL SLOTSMARKEN 15 2970 HORSHOLM HORSHOLM, DENMARK |
| 2. 2396  CONFIRMATORY EXCLUSIVE PATENT LICENSE AGREEMENT EFFECTIVE JUNE 17, 2004 | | 102223 | ☐ | NORPHARMA A/S | ATTN: GENERAL COUNSEL SLOTSMARKEN 15 2970 HORSHOLM HORSHOLM, DENMARK |
| 2. 2397  CONFIRMATORY EXCLUSIVE PATENT LICENSE AGREEMENT EFFECTIVE JUNE 17, 2004 | | 102224 | ☐ | NORPHARMA A/S | ATTN: GENERAL COUNSEL SLOTSMARKEN 15 2970 HORSHOLM HORSHOLM, DENMARK |
| 2. 2398  TRADEMARK ASSIGNMENT DATED SEPTEMBER 22, 2011 | | 102225 | ☐ | NORPHARMA A/S. SLOTSMARKEN | ATTN: GENERAL COUNSEL 15, DK 2970 HORSHOLM, DENMARK |
| 2. 2399  CUSTOMER AGREEMENT FOR LICENSED PRODUCTS EFFECTIVE MARCH 01, 2001 | | 102239 | ☐ | NUGENESIS TECHNOLOGIES CORPORATION | ATTN: GENERAL COUNSEL 1900 WEST PARK DRIVE WESTBOROUGH, MA |
| 2. 2400  LETTER OF AGREEMENT EFFECTIVE OCTOBER 01, 2000 | | 102248 | ☐ | NYS DEPT. OF HEALTH | ATTN: GENERAL COUNSEL REVENUE UNIT ROOM 1717 ALBANY, NY 12237-0016 |

**NAS1438**

**Purdue Pharma L.P.**                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2401 NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE JULY 03, 2013 | | 102275 | ☐ | OFFICE OF LICENSING & VENTURES | ATTN: GENERAL COUNSEL BOX 90083 DUKE UNIVERSITY DURHAM, NC |
| 2. 2402 LICENSE AGREEMENT EFFECTIVE SEPTEMBER 30, 2013 | | 102279 | ☐ | OKTA, INC. | ATTN: CHIEF FINANCIAL OFFICER 301 BRANNAN STREET SUITE 300 SAN FRANCISCO, CA |
| 2. 2403 PMR COLLABORATION AGREEMENT EFFECTIVE OCTOBER 01, 2013 | | 102294 | ☐ | OPIOID PMR CONSORTIUM | ATTN: GENERAL COUNSEL |
| 2. 2404 MASTER LICENSE AGREEMENT EFFECTIVE NOVEMBER 01, 2018 | | 102306 | ☐ | OPTUMINSIGHT LIFE SCIENCES, INC. | ATTN: GENERAL COUNSEL 1301 ATWOOD AVE, SUITE 311N JOHNSTON, RI |
| 2. 2405 AMENDMENT 1 TO LICENSE AGREEMENT EFFECTIVE AUGUST 31, 2005 | | 102317 | ☐ | ORACLE USA, INC. | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 2406 AGREEMENT FOR CO-PROMOTION EFFECTIVE SEPTEMBER 18, 1997 | | 102322 | ☐ | ORTHO-MCNEIL PHARMACEUTICALS | ATTN: PRESIDENT P.O. BOX 300 1000 ROUTE 202 RARITAN, NJ |
| 2. 2407 LICENSE AGREEMENT EFFECTIVE SEPTEMBER 18, 1997 | | 102323 | ☐ | ORTHO-MCNEIL PHARMACEUTICALS | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 1000 ROUTE 202 SOUTH RARITAN, NJ |
| 2. 2408 LICENSE AGREEMENT EFFECTIVE NOVEMBER 03, 2005 | | 102324 | ☐ | ORTHO-MCNEIL, INC. | ATTN: GENERAL COUNSEL 1000 ROUTE 202 SOUTH RARITAN, NJ |
| 2. 2409 AGREEMENT FOR LICENSE MATERIALS EFFECTIVE FEBRUARY 12, 2001 | | 102329 | ☐ | OXFORD BIOMEDICAL RESEARCH, INC. | NOT AVAILABLE |

**NAS1439**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2410 CONTROLLED RELEASE PATENT LICENSE AGREEMENT AMONG PAR PHARMACEUTICAL, INC. AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED SEPTEMBER 20, 2013 | | 106269 | ☐ | PAR PHARMACEUTICAL, INC. | GENERAL COUNSEL ONE RAM RIDGE ROAD SPRING VALLEY, NY 10977 |
| 2. 2411 AMENDMENT TO LICENSE AGREEMENT EFFECTIVE FEBRUARY 22, 2010 | | 102384 | ☐ | PDR NETWORK, LLC | ATTN: GENERAL COUNSEL 5 PARAGON DRIVE MONTVALE, NJ |
| 2. 2412 AMENDED AND RESTATED LICENSE AGREEMENT DATED APRIL 08, 2003 | | 102426 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 2413 AMENDED AND RESTATED LICENSE AGREEMENT DATED APRIL 08, 2003 | | 102427 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |
| 2. 2414 NON-EXCLUSIVE PATENT LICENSE AGREEMENT EFFECTIVE MARCH 15, 2004 | | 102478 | ☐ | PHS (PUBLIC HEATH SERVICES)/OFFICE OF TECHNOLOGY TRANSFER, NATIONAL INSTITUTES OF HEALTH | ATTN: GENERAL COUNSEL PURDUE: 444 SAW MILL RIVER ROAD, ARDSLEY, NY 10502 6011 EXECUTIVE BOULEVARD, SUITE 325 ROCKVILLE, MD |
| 2. 2415 NON-EXCLUSIVE PATENT LICENSE AGREEMENT EFFECTIVE MARCH 15, 2004 | | 102479 | ☐ | PHS (PUBLIC HEATH SERVICES)/OFFICE OF TECHNOLOGY TRANSFER, NATIONAL INSTITUTES OF HEALTH | ATTN: GENERAL COUNSEL PURDUE: 444 SAW MILL RIVER ROAD, ARDSLEY, NY 10502 6011 EXECUTIVE BOULEVARD, SUITE 325 ROCKVILLE, MD |
| 2. 2416 PRODUCT LITERATURE DATABASE LICENSE AGREEMENT EFFECTIVE DECEMBER 12, 2007 | | 102483 | ☐ | PI2 SOLUTIONS, LTD. | ATTN: GENERAL COUNSEL 62A HIGH STREET, POTTERS BAR HERTFORDSHIRE, ENGLAND |
| 2. 2417 AMENDMENT #1 TO PROGRAM LICENSE AGREEMENT DATED JANUARY 31, 2014 | | 102507 | ☐ | PLANISWARE USA, INC | ATTN: GENERAL COUNSEL 300 MONTGOMERY STREET, SUITE 930 SAN FRANCISCO, CA |

**NAS1440**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2418   ADDENDUM TO PROGRAM LICENSE AGREEMENT EFFECTIVE SEPTEMBER 18, 2012 | | 102510 | ☐ | PLANISWARE USA, INC. | ATTN: GENERAL COUNSEL 300 MONTGOMERY STREET, SUITE 930 SAN FRANCISCO, CA |
| 2. 2419   PROGRAM LICENSE AGREEMENT EFFECTIVE SEPTEMBER 18, 2012 | | 102509 | ☐ | PLANISWARE USA, INC. | ATTN: GENERAL COUNSEL 300 MONTGOMERY STREET, SUITE 930 SAN FRANCISCO, CA |
| 2. 2420   MANUFACTURER'S LICENSE AGREEMENT BETWEEN PURDUE PHARMA L.P., PLP ASSOCIATES HOLDINGS LP AND MUNDIPHARMA AG DATED JANUARY 1, 2008, ASSIGNED BY PPLP TO RHODES PHARMACEUTICALS L.P. ON OCTOBER 1, 2016 | | 106278 | ☐ | PLP ASSOCIATES HOLDINGS LP | NOT AVAILABLE |
| 2. 2421   ADDENDUM NO. 4 TO SUBSCRIPTION AGREEMENT EFFECTIVE FEBRUARY 27, 2017 | | 102520 | ☐ | PORZIO LIFE SCIENCES, LLC | ATTN: GENERAL COUNSEL 100 SOUTHGATE PARKWAY MORRISTOWN, NJ 07962-1997 |
| 2. 2422   LICENCE AGREEMENT EFFECTIVE OCTOBER 22, 2018 | | 102555 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 9100 KEYSTONE CROSSING, SUITE 250 INDIANAPOLIS, IN |
| 2. 2423   PRECISION LICENSE AGREEMENT EFFECTIVE OCTOBER 22, 2018 | | 102556 | ☐ | PRECISION PROMOTIONAL EFFECTIVENESS, LLC | ATTN: GENERAL COUNSEL 9100 KEYSTONE CROSSING, SUITE 250 INDIANAPOLIS, IN |
| 2. 2424   PATENT TRANSFER AGREEMENT DATED DECEMBER 03, 2012 | | 102618 | ☐ | PRINCIPLED STRATEGIES, INC. | ATTN: PATRICK J. BURNS, PRESIDENT 179 CALLE MAGDALENA SUITE 200 ENCINITAS, CA |
| 2. 2425   LICENSE AGREEMENT DATED JUNE 30, 1999 | | 102636 | ☐ | PROFESSOR COLIN STANLEY GOODCHILD | ATTN: GENERAL COUNSEL 38 SOMERS AVENUE MALVERN, VICTORIA |

**NAS1441**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2426  LICENSE AGREEMENT DATED JUNE 30, 1999 | | 102637 | ☐ | PROFESSOR COLIN STANLEY GOODCHILD | ATTN: GENERAL COUNSEL 38 SOMERS AVENUE MALVERN, VICTORIA |
| 2. 2427  QUALYSGUARD SERVICE USER AGREEMENT DATED FEBRUARY 22, 2006 | | 102698 | ☐ | QUALYS, INC. | ATTN: GENERAL COUNSEL 1600 BRIDGE PARKWAY, SUITE 201 REDWOOD SHORES, CA |
| 2. 2428  SDK LICENSE AGREEMENT DATED APRIL 13, 2016 | | 102760 | ☐ | QUMAS INC. | ATTN: GENERAL COUNSEL |
| 2. 2429  PATENT LICENSE AGREEMENT AMONG RANBAXY PHARMACEUTICALS INC. AND PURDUE PHARMA L.PU., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED DECEMBER 28, 2012 | | 106284 | ☐ | RANBAXY PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 2430  PATENT LICENSE AGREEMENT EFFECTIVE DECEMBER 28, 2012 | | 102789 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 2431  PATENT LICENSE AGREEMENT EFFECTIVE NOVEMBER 13, 2009 | | 102786 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 2432  RESOLVER LICENSE (PREV PPM 2000) CW2357177  (DT.RA) DATED SEPTEMBER 22, 2017 | | 102831 | ☐ | RESOLVER, INC. | ATTN: GENERAL COUNSEL 111 PETER STREET, SUITE 302 TORONTO CANADA |
| 2. 2433  SECOND AMENDATORY SERVICE ORDER #5 TO SUBSCRIPTION SERVICES AGREEMENT DATED JANUARY 01, 2012 | | 102925 | ☐ | ROCKY MOUNTAIN POISON AND DRUG CENTER | ATTN: GENERAL COUNSEL 777 BANNOCK STREET DENVER, CO |
| 2. 2434  PATENT LICENSE AGREEMENT EFFECTIVE OCTOBER 16, 2012 | | 102934 | ☐ | ROUND ROCK RESEARCH, LLC | ATTN: GENERAL COUNSEL 26 DEER CREEK LANE MOUNT KISCO, NY |

**NAS1442**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2435   LICENSE AGREEMENT EFFECTIVE DECEMBER 31, 2002 | | 102940 | ☐ | RSA SECURITY, INC. | ATTN: GENERAL COUNSEL 2955 CAMPUS DRIVE SAN MATEO, CA |
| 2. 2436   PATENT LICENSE AGREEMENT AMONG SANDOZ INC. AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, DATED JANUARY 5, 2014 | | 106289 | ☐ | SANDOZ INC. | ATTN: VICE PRESIDENT, INTELLECTUAL PROPERTY ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 2437   PATENT LICENSE AGREEMENT EFFECTIVE JANUARY 05, 2014 | | 102983 | ☐ | SANDOZ, INC. | ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 2438   AMENDMENT NO. 1 TO MASTER LICENSE AGREEMENT EFFECTIVE SEPTEMBER 01, 2000 | | 103021 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2439   AMENDMENT NO. 1 TO MASTER LICENSE AGREEMENT EFFECTIVE SEPTEMBER 01, 2000 | | 103022 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2440   AMENDMENT NO. 3 TO MASTER LICENSE AGREEMENT EFFECTIVE SEPTEMBER 01, 2003 | | 103024 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2441   AMENDMENT NO. 3 TO MASTER LICENSE AGREEMENT FOR INSTITUTE PRODUCTS ON MICROCOMPUTERS EFFECTIVE SEPTEMBER 01, 2003 | | 103014 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2442   SUPPLEMENT 21 LICENSE AGREEMENT NUMBER 14647 DATED FEBRUARY 22, 2001 | | 103023 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2443   SUPPLEMENT 28 TO LICENSE AGREEMENT NUMBER 14647 DATED DECEMBER 01, 2003 | | 103025 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |

**NAS1443**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2444 SUPPLEMENT 28 TO LICENSE AGREEMENT NUMBER 14647 DATED DECEMBER 01, 2003 | | 103027 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2445 SUPPLEMENT 29 TO LICENSE AGREEMENT DATED DECEMBER 01, 2003 | | 103028 | ☐ | SAS INSTITUTE, INC. | ATTN: GENERAL COUNSEL SAS CAMPUS DRIVE CARY, NC 27513 |
| 2. 2446 AMENDMENT TO TERMS AND CONDITIONS OF LICENSING AGREEMENT EFFECTIVE NOVEMBER 01, 2010 | | 103031 | ☐ | SCIENTEK SOFTWARE, INC. | ATTN: GENERAL COUNSEL 123 MAIN STREET, SUITE 200 TUSTIN, CA 92782 |
| 2. 2447 NON-EXCLUSIVE ORL-1 LICENSE AGREEMENT EFFECTIVE APRIL 26, 2010 | | 103067 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 12-4 SGISU 5-CHOME FUKUSHIMA-KU |
| 2. 2448 NON-EXCLUSIVE ORL-1 LICENSE AGREEMENT EFFECTIVE APRIL 26, 2010 | | 103068 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 12-4 SGISU 5-CHOME FUKUSHIMA-KU |
| 2. 2449 SHIONOGI CO., LTD. - CONFIRMATORY PATENT ASSIGNMENT 30MAR18 (A. KOLLER) DATED MARCH 30, 2018 | | 103072 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 2450 AMENDMENT #1 TO LICENSE AGREEMENT DATED MARCH 26, 2012 | | 103159 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2451 AMENDMENT #2 TO LICENSE AGREEMENT DATED SEPTEMBER 17, 2013 | | 103157 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2452 AMENDMENT #3 TO LICENSE AGREEMENT DATED MARCH 26, 2012 | | 103160 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |

**NAS1444**

**Purdue Pharma L.P.**  Case Number: **19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2453 AMENDMENT NO. 4 TO LICENSE AGREEMENT DATED FEBRUARY 18, 2015 | | 103156 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2454 SPARTA SYSTEMS, INC. - AMENDMENT NO. 5 TO LICENSE AGREEMENT CW2362415 (PB.RA) DATED SEPTEMBER 26, 2016 | | 103161 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2455 SPARTA SYSTEMS, INC. - AMENDMENT NO. 6 TO LICENSE AGREEMENT CW2362417 (PB.RA) DATED DECEMBER 21, 2017 | | 103162 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2456 SPARTA SYSTEMS, INC. - AMENDMENT NO. 7 TO TRACKWISE LICENSE AND SUPPORT AGREEMENT CW2361539 AFFILIATE UPDATES (PB.JM) DATED MAY 09, 2018 | | 103163 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2457 TRACKWISE LICENSE AND SUPPORT AGREEMENT DATED MARCH 26, 2012 | | 103158 | ☐ | SPARTA SYSTEMS, INC. | ATTN: GENERAL COUNSEL HOLMDEL CORPORATE PLAZA 2137 HIGHWAY 35 HOLMDEL, NJ 07733 |
| 2. 2458 LICENSE AGREEMENT EFFECTIVE MARCH 15, 2016 | | 103208 | ☐ | STICHTING EUROQOL RESEARCH FOUNDATION | ATTN: GERBEN BAKKER, USER SUPPORT OFFICER MARTEN MEESWEG 107 ROTTERDAM |
| 2. 2459 SCHEDULE #6 TO LICENSE AND SUPPORT AGREEMENT DATED JULY 21, 2009 | | 103262 | ☐ | SYMYX SOFTWARE, INC. | ATTN: GENERAL COUNSEL 2440 CAMINO RAMON SUITE 300 SAN RAMON, CA 94583 |
| 2. 2460 LICENSE AND SUBSCRIPTION AGREEMENT EFFECTIVE APRIL 01, 2003 | | 103283 | ☐ | TARIUS INTERACTIVE | ATTN: NINA LINDHOLST, VICE PRESIDENT HERSTEDVANG 12 2620 ALBERTSLUND |

**NAS1445**

**Purdue Pharma L.P.**                                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2461 PATENT LICENSE AGREEMENT AMONG TEVA PHARMACEUTICALS USA AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES, INC., DATED DECEMBER 18, 2014 | | 106296 | ☐ | TEVA PHARMACEUTICALS USA | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2462 PATENT LICENSE AGREEMENT DATED DECEMBER 18, 2014 | | 103308 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 1090 HORSHAM ROAD NORTH WALES, PA 19454 |
| 2. 2463 AMENDMENT TO LICENSE AGREEMENT DATED MAY 31, 2008 | | 103402 | ☐ | THOMAS REUTERS (SCIENTIFIC), LLC | ATTN: GENERAL COUNSEL 1500 GARDEN STREET, 4TH FLOOR PHILADELPHIA, PA |
| 2. 2464 AGREEMENT EFFECTIVE MARCH 27, 2000 | | 103423 | ☐ | TORAY INDUSTRIES, INC. | ATTN: GENERAL COUNSEL 2-2-1, NIHONBASHI-MUROMACHI, CHUO-KU TOKYO |
| 2. 2465 AGREEMENT EFFECTIVE MARCH 27, 2000 | | 103424 | ☐ | TORAY INDUSTRIES, INC. | ATTN: GENERAL COUNSEL 2-2-1, NIHONBASHI-MUROMACHI, CHUO-KU TOKYO |
| 2. 2466 AGREEMENT EFFECTIVE MARCH 27, 2000 | | 103427 | ☐ | TORAY INDUSTRIES, INC. | ATTN: GENERAL COUNSEL 2-2-1, NIHONBASHI-MUROMACHI, CHUO-KU TOKYO |
| 2. 2467 AGREEMENT EFFECTIVE MARCH 27, 2000 | | 103429 | ☐ | TORAY INDUSTRIES, INC. | ATTN: GENERAL COUNSEL 2-2-1, NIHONBASHI-MUROMACHI, CHUO-KU TOKYO |

**NAS1446**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2468 PARTIAL ASSIGNMENT AGREEMENT EFFECTIVE APRIL 01, 2011 | | 103438 | ☐ | TRANCEPT PHARMA, INC./PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL TRANSCEPT: 1003 W. CUTTING BLVS. SUITE 110 PT. RICHARD, CA 94804 PATHEON: 4721 EMPEROR BOULEVARD, RESEARCH TRIANGLE PARK, NC 27703 |
| 2. 2469 PARTIAL ASSIGNMENT AGREEMENT EFFECTIVE APRIL 01, 2011 | | 103439 | ☐ | TRANCEPT PHARMA, INC./PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL TRANSCEPT: 1003 W. CUTTING BLVS. SUITE 110 PT. RICHARD, CA 94804 PATHEON: 4721 EMPEROR BOULEVARD, RESEARCH TRIANGLE PARK, NC 27703 |
| 2. 2470 U.S. LICENSE AND COLLABORATION AGREEMENT - SEE CONTRACT NOTES SECTION DATED JULY 31, 2009 | | 103442 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVS. SUITE 110 PT. RICHMOND, CA 94804 |
| 2. 2471 AMENDMENT #1 TO SERVICES AND LICENSE AGREEMENT DATED JULY 02, 2015 | | 103469 | ☐ | TRUVEN HEALTH ANALYTICS INC. | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 2472 TRUVEN HEALTH ANALYTICS AMD 4 01132016 CW2350799 AMEND 4 TO SERVICES AND LICENSE AGREEMENT (LH.LLS) DATED JANUARY 30, 2017 | | 103472 | ☐ | TRUVEN HEALTH ANALYTICS LLC | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 2473 NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE DECEMBER 19, 2013 | | 103532 | ☐ | UNIVERSITY OF CHICAGO TECH | ATTN: GENERAL COUNSEL EDELSTONE CENTER, 2S 6030 S. ELLIS AVE CHICAGO, IL |
| 2. 2474 AMENDMENT #1 TO EXCLUSIVE LICENSE AGREEMENT DATED AUGUST 28, 1990 | | 103566 | ☐ | UNIVERSITY OF SOUTHERN CALIFORNIA/THE ROCKEFELLER UNIVERSITY | ATTN: GENERAL COUNSEL USC: UNIVERSITY PARK, LOS ANGELES, CALIFORNIA 90089 ROCKEFELLER: 1230 YORK AVENUE NEW YORK, NY 10021 |

**NAS1447**

**Purdue Pharma L.P.**                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2475  LICENSE AGREEMENT EFFECTIVE NOVEMBER 04, 1998 | | 103585 | ☐ | UPPSALA MONITORING CENTRE | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 STORA TORGET 3, S-753 20 UPPSALA, SWEDEN |
| 2. 2476  TRUMIGRATE  TRUCOMPARE LICENSE AGREEMENT DATED JULY 26, 2015 | | 103621 | ☐ | VALIANCE PARTNERS CORPORATED | ATTN: GENERAL COUNSEL 80 MORRISTOWN ROAD BERNARDSVILLE, NJ |
| 2. 2477  NON-EXCLUSIVE LICENSE AGREEMENT DATED FEBRUARY 09, 2009 | | 103647 | ☐ | VANDERBILT UNIVERSITY OFFICE OF TECHNOLOGY TRANSFER AND ENTERPRISE DEVELOPMENT | ATTN: GENERAL COUNSEL 1207 17TH AVENUE SOUTH SUITE 105 NASHVILLE, TN |
| 2. 2478  NON-EXCLUSIVE LICENSE AGREEMENT DATED JULY 08, 2011 | | 103674 | ☐ | VINTAGE PHARMACEUTICALS, LLC D/B/A QUALITEST PHARMACEUTICALS | ATTN: GENERAL COUNSEL 130 VINTAGE DRIVE HUNTSVILLE, AL |
| 2. 2479  LICENSE AGREEMENT DATED FEBRUARY 26, 2008 | | 103678 | ☐ | VISUAL ENTERPRISE ARCHITECTURE | ATTN: GENERAL COUNSEL 25-12 OLD KINGS HIGHWAY NORTH, SUITE #305 DARIEN |
| 2. 2480  CROSS LICENSE AGREEMENT  DATED SEPTEMBER 04, 2015 | | 103691 | ☐ | VM ONCOLOGY LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |
| 2. 2481  CROSS LICENSE AGREEMENT EFFECTIVE SEPTEMBER 04, 2015 | | 103694 | ☐ | VM ONCOLOGY, LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |
| 2. 2482  ASSIGNMENT AGREEMENT DATED SEPTEMBER 04, 2015 | | 103699 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |
| 2. 2483  ASSIGNMENT AGREEMENT DATED SEPTEMBER 04, 2015 | | 103701 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |

**NAS1448**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2484  ASSIGNMENT AGREEMENT DATED SEPTEMBER 04, 2015 | | 103702 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |
| 2. 2485  ASSIGNMENT OF PATENT RIGHTS DATED SEPTEMBER 04, 2015 | | 103703 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA |
| 2. 2486  END USER AGREEMENT EFFECTIVE NOVEMBER 06, 2013 | | 103704 | ☐ | VOICE PRINT INTERNATIONAL | ATTN: GENERAL COUNSEL 160 CAMINO RUIZ CAMARILLO, CA |
| 2. 2487  ENHANCED ACCESS LICENSE AGREEMENT EFFECTIVE JANUARY 01, 2002 | | 103734 | ☐ | WILEY SUBSCRIPTION SERVICES INC | ATTN: GENERAL COUNSEL C/O JOHN WILEY & SONS INC 605 THIRD AVENUE NEW YORK, NY |
| 2. 2488  AMENDMENT TO BIOMATERIALS LICENSE AGREEMENT DATED OCTOBER 01, 2000 | | 103744 | ☐ | WISCONSIN ALUMNI RESEARCH FOUNDATION | ATTN: GENERAL COUNSEL |
| 2. 2489  ZS SAAS JAVELIN CW2353878 05052017 (DS.EA) DATED AUGUST 01, 2017 | | 103774 | ☐ | ZS ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 1800 SHERMAN AVENUE EVANSTON, IL 60201 |

**NAS1449**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|

### Settlement / Release Agreements

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2490 SETTLEMENT AGREEMENT, DATED AS OF DECEMBER 22, 2017, BY AND AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., RHODES TECHNOLOGIES, ABHAI, LLC, AND KVK-TECH, INC. | | 106212 | ☐ | ABHAI, LLC | C/O KVK-TECH INC 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 2491 ABHAI AND KVK-TECH RELEASE AGREEMENT CW2359672 (RK) DATED DECEMBER 22, 2017 | | 100039 | ☐ | ABHAI, LLC & KVK-TECH, INC. AND ASSOCIATED COMPANIES | ATTN: GENERAL COUNSEL 194 INLET DRIVE STREET, ST. AUGUSTINE, FL 32080 110 TERRY DRIVE, SUITE 200, NEWTOWN, PA 18940 |
| 2. 2492 ABHAI, LLC AND KVK-TECH, INC. RELEASE CW2359674 (RK) DATED DECEMBER 22, 2017 | | 100040 | ☐ | ABHAI, LLC & KVK-TECH, INC. AND ASSOCIATED COMPANIES | ATTN: GENERAL COUNSEL 194 INLET DRIVE STREET, ST. AUGUSTINE, FL 32080 110 TERRY DRIVE, SUITE 200, NEWTOWN, PA 18940 |
| 2. 2493 ABHAI, LLC AND KVK-TECH SETTLEMENT AGREEMENT CW2359676 (RK) DATED DECEMBER 22, 2017 | | 100041 | ☐ | ABHAI, LLC AND KVK-TECH, INC | ATTN: GENERAL COUNSEL 110 TERRY DRIVE NEWTOWN SQUARE, PA 18940 |
| 2. 2494 SUPPLEMENT TO SETTLEMENT AGREEMENT AND PATENT LICENSE AGREEMENT DATED APRIL 09, 2012 | | 100062 | ☐ | ACINO GROUP | ATTN: GENERAL COUNSEL ERLENSTRASSE 1, CH-4058 BASEL GRAF-ARCO-STRASSE, 89079 ULM, GERMANY |
| 2. 2495 THIRD PARTY SETTLEMENT AGREEMENT DATED AUGUST 16, 2011 | | 100063 | ☐ | ACINO PHARMA AG | ATTN: GENERAL COUNSEL ERLENSTRASSE 1, CH-4058 BASEL GRAF-ARCO-STRASSE, 89079 ULM, GERMANY |
| 2. 2496 THIRD PARTY SETTLEMENT AGREEMENT DATED AUGUST 16, 2011 | | 100065 | ☐ | ACINO PHARMA AG / RATIOPHARM GMBH | ATTN: GENERAL COUNSEL ERLENSTRASSE 1, CH-4058 BASEL GRAF-ARCO-STRASSE, 89079 ULM, GERMANY |

**NAS1450**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2497 THIRD PARTY SETTLEMENT AGREEMENT DATED AUGUST 16, 2011 | | 100066 | ☐ | ACINO PHARMA AG / RATIOPHARM GMBH | ATTN: GENERAL COUNSEL ERLENSTRASSE 1, CH-4058 BASEL GRAF-ARCO-STRASSE, 89079 ULM, GERMANY |
| 2. 2498 SETTLEMENT AGREEMENT DATED APRIL 25, 2013 | | 100069 | ☐ | ACTAVIS ELIZABETH LLC | ATTN: GENERAL COUNSEL 200 ELMORA AVENUE ELIZABETH, NJ 07207 |
| 2. 2499 SETTLEMENT AGREEMENT DATED DECEMBER 18, 2017 | | 100073 | ☐ | ACTAVIS LABORATORIES FL, INC | C/O TEVA PHARMACEUTICALS USA, INC ATTN: GENERAL COUNSEL 425 PRIVET ROAD, PO BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2500 SETTLEMENT AGREEMENT DATED DECEMBER 18, 2017 | | 100077 | ☐ | ACTAVIS LABORATORIES FL, INC; TEVA PHARMACEUTICALS USA, INC | C/O TEVA PHARMACEUTICALS USA, INC ATTN: GENERAL COUNSEL 425 PRIVET ROAD, PO BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2501 SETTLEMENT AGREEMENT DATED APRIL 16, 2009 | | 100083 | ☐ | ACTAVIS TOTOWA LLC | ATTN: GENERAL COUNSEL 60 COLUMBIA ROAD BUILDING B MORRISTOWN, NJ 07960 |
| 2. 2502 SETTLEMENT AGREEMENT DATED APRIL 25, 2013 | | 100090 | ☐ | ACTAVIS, INC. | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III 400 INTERSPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 2503 SETTLEMENT AGREEMENT DATED JUNE 27, 2014 | | 100095 | ☐ | ACURA PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 616 NORTH NORTH COURT SUITE 120 PALATINE, IL 60067 |
| 2. 2504 SETTLEMENT AGREEMENT DATED MAY 20, 2016 | | 100096 | ☐ | ACURA PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 616 N. NORTH COURT, SUITE 120 PALATINE, IL 60047 |

**NAS1451**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2505  SETTLEMENT AGREEMENT DATED JULY 23, 2010 | | 100157 | ☐ | ALPHARMA, INC. | ATTN: GENERAL COUNSEL 1 NEW ENGLAND AVE, PISCATAWAY, NJ 08854 |
| 2. 2506  SETTLEMENT AND PATENT LICENSE AGREEMENT BETWEEN PURDUE PHARMA L.P.,  THE P.F. LABORATORIES, INC., AND PURDUE PHARMACEUTICALS L.P., AND ALVOGEN PINEBROOK LLC DATED AS OF APRIL 22, 2018 | | 106310 | ☐ | ALVOGEN PINEBROOK LLC | ATTN: GENERAL COUNSEL 10B BLOOMFIELD AVE, PINE BROOK, NJ 07058 |
| 2. 2507  SETTLEMENT AGREEMENT DATED APRIL 25, 2013 | | 100243 | ☐ | ANDRX LABS, LLC | ATTN: GENERAL COUNSEL 1955 ORANGE DRIVE DAVIE, FL 33314 |
| 2. 2508  SETTLEMENT AGREEMENT DATED AUGUST 31, 2009 | | 100258 | ☐ | APOTEX INC. | ATTN: GENERAL COUNSEL 150 SIGNET DRIVE TORONTO, ON CANADA |
| 2. 2509  SETTLEMENT AGREEMENT, DATED AS OF MARCH 27, 2019, BY AND AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA TECHNOLOGIES INC., RHODES TECHNOLOGIES, ASCENT PHARMACEUTICALS, INC., HETERO FZCO AND CAMBER PHARMAC | | 106222 | ☐ | ASCENT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 400 S. TECHNOLOGY DRIVE CENTRAL SLIP, NY 11722 |
| 2. 2510  SETTLEMENT AGREEMENT AMONG PURDUE PHARMA L.P. AND ASSERTIO THERAPEUTICS, INC., DATED AUGUST 28, 2018 | | 100287 | ☐ | ASSERTIO THERAPEUTICS, INC. | ATTN: GENERAL COUNSEL 100 S. SAUNDERS RD., SUITE 300 LAKE FOREST, IL 60045 |
| 2. 2511  SETTLEMENT AGREEMENT EXECUTED DECEMBER 16, 2013 | | 100311 | ☐ | AUROLIFE PHARMA LLC | ATTN: ROBERT G. CUNARD 6 WHEELING ROAD DAYTON 08810 |
| 2. 2512  SETTLEMENT AGREEMENT DATED DECEMBER 13, 2013 | | 100317 | ☐ | AUROLIFE PHARMA, LLC; AUROBINDO PHARMA USA, INC. | ATTN: ROBERT G. CUNARD 6 WHEELING ROAD DAYTON 08810 |

**NAS1452**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2513 SETTLEMENT AGREEMENT DATED DECEMBER 24, 2013 | | 100318 | ☐ | AUROLIFE PHARMA, LLC; AUROBINDO PHARMA USA, INC. | ATTN: ROBERT G. CUNARD 6 WHEELING ROAD DAYTON 08810 |
| 2. 2514 SETTLEMENT AGREEMENT, DATED AS OF MARCH 27, 2019, BY AND AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA TECHNOLOGIES INC., RHODES TECHNOLOGIES, ASCENT PHARMACEUTICALS, INC., HETERO FZCO AND CAMBER PHARMAC | | 106225 | ☐ | CAMBER PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1031 CENTENNIAL AVE, PISCATAWAY, NJ 0885 |
| 2. 2515 SETTLEMENT AGREEMENT EFFECTIVE SEPTEMBER 16, 2016 | | 100803 | ☐ | CVS CAREMARK PART D SERVICES, LLC | ATTN: SENIOR VICE PRESIDENT, TRADE RELATIONS 2211 SANDERS ROAD NORTHBROOK, IL 60062 |
| 2. 2516 SETTLEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE JANUARY 30, 2017 | | 100845 | ☐ | DAVID R. GASTFRIEND, MD | ATTN: GENERAL COUNSEL 30 ORIENT AVENUE NEWTON, MA 02459 |
| 2. 2517 RELEASE AND SETTLEMENT AGREEMENT DATED OCTOBER 27, 2014 | | 100930 | ☐ | DOLLAR GENERAL CORPORATION | ATTN: GENERAL COUNSEL 100 MISSION RIDGE GOODLETTSVILLE, TN 37072 |
| 2. 2518 RELEASE AND SETTLEMENT AGREEMENT EFFECTIVE OCTOBER 27, 2014 | | 100931 | ☐ | DOLLAR GENERAL CORPORATION | ATTN: GENERAL COUNSEL 100 MISSION RIDGE GOODLETTSVILLE, TN 37072 |
| 2. 2519 SETTLEMENT AGREEMENT DATED MAY 20, 2016 | | 100096 | ☐ | EGALET CORPORATOIN | C/O ACURA PHARMACEUTICALS, INC. ATTN: GENERAL COUNSEL 616 N. NORTH COURT, SUITE 120 PALATINE, IL 60047 |
| 2. 2520 SETTLEMENT AGREEMENT EFFECTIVE FEBRUARY 08, 2010 | | 101028 | ☐ | ENDO PHARMACEUTICALS INC | ATTN: CHIEF LEGAL OFFICER 100 ENDO BOULEVARD CHADDS FORD, PA 19317 |

**NAS1453**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2521  SETTLEMENT AGREEMENT EFFECTIVE FEBRUARY 08, 2010 | | 101029 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: CHIEF LEGAL OFFICER 100 ENDO BOULEVARD CHADDS FORD, PA 19317 |
| 2. 2522  SETTLEMENT AGREEMENT AMONG PURDUE PHARMA L.P., P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, AND EPIC PHARMA, LLC AND PURACAP PHARMACEUTICAL, LLC, DATED AUGUST 17, 2018 | | 106235 | ☐ | EPIC PHARMA, LLC | ATTN: GENERAL COUNSEL 227-15 NORTH CONDUIT AVENUE LAURELTON, NY 11413 |
| 2. 2523  SETTLEMENT & CROSS-LICENSE AGREEMENT DATED FEBRUARY 16, 2001 | | 101125 | ☐ | F.H. FAULDING & CO. LIMITED | ATTN: GENERAL COUNSEL 650 FROM ROAD PARAMUS, NJ 07652 |
| 2. 2524  SETTLEMENT AND CROSS-LICENSE AGREEMENT DATED FEBRUARY 16, 2001 | | 101134 | ☐ | FAULDING , INC. | ATTN: GENERAL COUNSEL 650 FROM ROAD PARAMUS, NJ 07652 |
| 2. 2525  SETTLEMENT AGREEMENT, DATED AS OF MARCH 27, 2019, BY AND AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., PURDUE PHARMA TECHNOLOGIES INC., RHODES TECHNOLOGIES, ASCENT PHARMACEUTICALS, INC., HETERO FZCO AND CAMBER PHARMAC | | 106243 | ☐ | HETERO FZCO | NOT AVAILABLE |
| 2. 2526  SETTLEMENT AGREEMENT DATED JUNE 29, 2007 | | 101585 | ☐ | JARED R. WHEAT / HI-TECH PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 6015-B UNITY DRIVE NORCROSS, GA 30071 |
| 2. 2527  SETTLEMENT AGREEMENT BETWEEN JOHNSON MATTHEY INC. AND PURDUE PHARMA L.P., DATED FEBRUARY 17, 2009 | | 106251 | ☐ | JOHNSON MATTHEY INC. | NOT AVAILABLE |
| 2. 2528  SETTLEMENT AGREEMENT DATED JULY 23, 2010 | | 100157 | ☐ | KING PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 501 5TH ST. BRISTOL, TN 3762 |

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2529  SETTLEMENT AGREEMENT DATED JUNE 09, 2009 | | 101692 | ☐ | KV PHARMACEUTICAL COMPANY | ATTN: GENERAL COUNSEL 2503 SOUTH HANLEY ROAD ST. LOUIS, MO 63144 |
| 2. 2530  SETTLEMENT AGREEMENT, DATED AS OF DECEMBER 22, 2017, BY AND AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., RHODES TECHNOLOGIES, ABHAI, LLC, AND KVK-TECH, INC. | | 106254 | ☐ | KVK-TECH, INC. | ATTN: GENERAL COUNSEL 110 TERRY DRIVE SUITE 200 NEWTON, PA 18940 |
| 2. 2531  SETTLEMENT AGREEMENT AND NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE AUGUST 30, 2016 | | 101737 | ☐ | LANNETT COMPANY INC | ATTN: GENERAL COUNSEL 103 FOULK ROAD SUITE 202 WILLMINGTON, DE 19803 |
| 2. 2532  SETTLEMENT AGREEMENT AND NON-EXCLUSIVE LICENSE AGREEMENT EFFECTIVE AUGUST 30, 2016 | | 101738 | ☐ | LANNETT HOLDINGS, INC. | ATTN: KRISTIE STEPHENS, VICE PRESIDENT OF REGULATORY AFFAIRS 103 FOULK ROAD SUITE 202 WILLMINGTON, DE 19803 |
| 2. 2533  RELEASE DATED SEPTEMBER 15, 2003 | | 101801 | ☐ | LOUIS M. WEINER, M.D. | ATTN: GENERAL COUNSEL FOX CHASE CANCER CENTER, 333 COTTMAN AVENUE PHILADELPHIA, PA 19111 |
| 2. 2534  RELEASE RE RECORDINGS EXECUTED JULY 11, 2003 | | 102022 | ☐ | MIROSLAV BACKONJA, MD | UNIVERSITY OF WISCONSIN DEPARTMENT OF NEUROLOGY CSC H6-5, 600 HIGHLAND AVENUE MADISON, WI 53792 |
| 2. 2535  SETTLEMENT AGREEMENT AMONG PURDUE PHARMA L.P., P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, AND MYLAN INC., DATED SEPTEMBER 14, 2017 | | 106262 | ☐ | MYLAN INC. | ATTN: GENERAL COUNSEL 1500 CORPORATE DRIVE, SUITE 400 CANONSBURG, PA 15317 |

**NAS1455**

**Purdue Pharma L.P.**                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2536 SETTLEMENT AGREEMENT AMONG NORAMCO, INC. AND CERTAIN ASSOCIATED COMPANIES AND PURDUE PHARMA L.P., THE P.F. LABORATORIES, PURDUE PHARMACEUTICALS L.P. AND RHODES TECHNOLOGIES, DATED DECEMBER 21, 2012 | | 106263 | ☐ | NORAMCO, INC. | ATTN: GENERAL COUNSEL 500 SWEDES LANDING ROAD WILMINGTON, DE 19801 |
| 2. 2537 SETTLEMENT AGREEMENT EFFECTIVE DECEMBER 21, 2012 | | 102217 | ☐ | NORAMCO, INC. | ATTN: GENERAL COUNSEL 500 SWEDES LANDING ROAD WILMINGTON, DE 19801 |
| 2. 2538 SETTLEMENT AGREEMENT AND RELEASE BY AND BETWEEN PPLP AND ORTHO-MCNEIL ENTITIES DATED NOVEMBER 03, 2005 | | 102321 | ☐ | ORTHO-MCNEIL PHARMACEUTICAL, INC., THE ROBERT WOOD JOHNSON PHARMACEUTICAL RESEARCH INSTITUTE, AND JOHNSON & JOHNSON PHARMACEUTICAL RESEARCH & DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 1000 ROUTE 202 SOUTH RARITAN, NJ |
| 2. 2539 RELEASE GRANTED BY PAR TO THE PURDUE COMPANIES DATED SEPTEMBER 30, 2013 | | 102356 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL ONE RAM RIDGE SPRING VALLEY, NY 10977 |
| 2. 2540 RELEASE GRANTED BY THE PURDUE COMPANIES TO PAR DATED SEPTEMBER 20, 2013 | | 102355 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL ONE RAM RIDGE SPRING VALLEY, NY 10977 |
| 2. 2541 SETTLEMENT AGREEMENT DATED SEPTEMBER 20, 2013 | | 102354 | ☐ | PAR PHARMACEUTICAL, INC. | ATTN: GENERAL COUNSEL 300 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2542 SETTLEMENT AGREEMENT AMONG PURDUE PHARMA L.P., P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., RHODES TECHNOLOGIES, AND EPIC PHARMA, LLC AND PURACAP PHARMACEUTICAL, LLC, DATED AUGUST 17, 2018 | | 106279 | ☐ | PURACAP PHARMACEUTICAL, LLC | ATTN: GENERAL COUNSEL 20 KINGSBRIDGE RD PISCATAWAY, NJ 08854 |
| 2. 2543 QDISCOVERY LLC - RELEASE AGREEMENT 121AUG17 DATED AUGUST 21, 2017 | | 102694 | ☐ | QDISCOVERY LLC | ATTN: GENERAL COUNSEL |

**NAS1456**

**Purdue Pharma L.P.**                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2544 SETTLEMENT AND PATENT LICENSE AGREEMENT BETWEEN PURDUE PHARMA L.P.,  THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P., AND RHODES TECHNOLOGIES AND RANBAXY INC., RANBAXY PHARMACEUTICALS INC., RANBAXY LABORATORIES LIMITED DATED AS OF DECEMBER 28, 20 | | 106311 | ☐ | RANBAXY PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 9431 FLORIDA MINING BLVD. EAST JACKSONVILLE, FL 32257 |
| 2. 2545 RELEASE GRANTED BY RANBAXY TO THE PURDUE COMPANIES DATED DECEMBER 28, 2012 | | 102788 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 600 COLLEGE ROAD EAST, SUITE 2100 PRINCETON, NJ 08540 |
| 2. 2546 SETTLEMENT AGREEMENT DATED DECEMBER 28, 2012 | | 102787 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 600 COLLEGE ROAD EAST PRINCETON, NJ 08540 |
| 2. 2547 SETTLEMENT AGREEMENT DATED NOVEMBER 13, 2009 | | 102785 | ☐ | RANBAXY PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 600 COLLEGE ROAD EAST PRINCETON, NJ 08540 |
| 2. 2548 SETTLEMENT AGREEMENT DATED NOVEMBER 8, 2007 DATED NOVEMBER 08, 2007 | | 102828 | ☐ | RESEARCH TRIANGLE INSTITUTE D/B/A RTI HEALTH SOLUTIONS | ATTN: GENERAL COUNSEL 3040 CORNWALLIS ROAD RESEARCH TRIANGLE PARK, NC 27709 |
| 2. 2549 RELEASE AND CREDIT AGREEMENT DATED DECEMBER 23, 2014 | | 102841 | ☐ | REVITAS, INC. | ATTN: GENERAL COUNSEL 1735 MARKET STREET PHILADELPHIA, 37TH FLOOR, PA 9901 |
| 2. 2550 RELEASE GRANTED BY SANDOZ TO THE PURDUE COMPANIES DATED JANUARY 05, 2014 | | 102969 | ☐ | SANDOZ, INC. | ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |

**NAS1457**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2551  SETTLEMENT AGREEMENT AMONG PURDUE PHARMA L.P., THE P.F. LABORATORIES, INC., PURDUE PHARMACEUTICALS L.P. AND RHODES TECHNOLOGIES DATED JANUARY 05, 2014 | | 102966 | ☐ | SANDOZ, INC. | ATTN: GENERAL COUNSEL 506 CARNEGIE CENTER, SUITE 400 PRINCETON, NJ 08540 |
| 2. 2552  CONFIDENTIAL RELEASE OF CLAIMS DATED AUGUST 22, 2016 | | 103211 | ☐ | STITES & HARBISON, PLLC | ATTN: GENERAL COUNSEL |
| 2. 2553  TEVA MMA ACT FILING TO SETTLEMENT AGMT CW2322325 08162016 RSK DATED AUGUST 02, 2016 | | 103300 | ☐ | TEVA PHARMACEUTICALS INDUSTRIES, LTD. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2554  SETTLEMENT AGREEMENT DATED DECEMBER 18, 2017 | | 103303 | ☐ | TEVA PHARMACEUTICALS USA, INC | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2555  SETTLEMENT AGREEMENT EXECUTED DECEMBER 18, 2014 | | 103307 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2556  SETTLEMENT AGREEMENT EXECUTED DECEMBER 18, 2014 | | 105909 | ☐ | TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL 425 PRIVET ROAD P.O. BOX 1005 HORSHAM, PA 19044-8005 |
| 2. 2557  RELEASE DATED JULY 11, 2003 | | 103479 | ☐ | TURO NURMIKKO, M.D. | ATTN: GENERAL COUNSEL PAIN RELIEF FOUNDATION CLINICAL SCIENCES CENTRE UNIVERSITY HOSPITAL AINTREE LOWER LANE LIVERPOOL L9 7AL |
| 2. 2558  SETTLEMENT AGREEMENT DATED APRIL 25, 2013 | | 103718 | ☐ | WASTON LABORATORIES, INC. | ATTN: GENERAL COUNSEL 1955 ORANGE DRIVE DAVIE, FL 33314 |

**NAS1458**

Case 7:21-cv-07532-CM Document 158-3 Filed 11/15/21 Page 465 of 1000

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2559 SETTLEMENT AGREEMENT DATED OCTOBER 26, 2001 | | 103754 | ☐ | XL INSURANCE SWITZERLAND LTD. | ATTN: GENERAL COUNSEL 505 EAGLEVIEW BOULEVARD EXTON, PA 19341 |

**NAS1459**

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| **Other Agreements** | | | | | |
| 2. 2560 CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 27, 2018 | | 100050 | ☐ | ACCELERATED RX ANALYTICS, LLC | ATTN: GENERAL COUNSEL 345 US HIGHWAY 9 SUITE 184 MANALAPAN, NJ 07726 |
| 2. 2561 ACCENCIO LLC - PATENT LICENSE AGREEMENT CW2366189 (A. KOLLER) EFFECTIVE MARCH 28, 2019 | 12/31/2049 | 106088 | ☐ | ACCENCIO LLC | ATTN: GENERAL COUNSEL 2417 WELSH RD STE 21 PHILADELPHIA, PA 19114 |
| 2. 2562 SEARCH FIRM AGREEMENT EFFECTIVE AS OF DECEMBER 10, 2009 | | 100061 | ☐ | ACCOUNTANTS INTERNATIONAL | ATTN: GENERAL COUNSEL 111 ANZA BOULEVARD, #400 BURLINGAME, CA 94010 |
| 2. 2563 RELEASE DATED APRIL 25, 2013 | | 100068 | ☐ | ACTAVIS ELIZABETH LLC | ATTN: GENERAL COUNSEL 200 ELMORA AVENUE ELIZABETH, NJ 07207 |
| 2. 2564 ASSIGNABLE COVENANTS AGREEMENT EFFECTIVE AS OF DECEMBER 18, 2017 | | 100074 | ☐ | ACTAVIS LABORATORIES FL, INC./TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL TEVA: 425 PRIVET ROAD, P.O. BOX 1005 HORSHAM, PA 19044 ACTAVIS: MORRIS CORPORATE CENTER III, 400 INTERPACE PARKWAY, PARSIPPANY, NJ 07054 |
| 2. 2565 ASSIGNABLE COVENANTS AGREEMENT EFFECTIVE AS OF DECEMBER 18, 2017 | | 100075 | ☐ | ACTAVIS LABORATORIES FL, INC./TEVA PHARMACEUTICALS USA, INC. | ATTN: GENERAL COUNSEL TEVA: 425 PRIVET ROAD, P.O. BOX 1005 HORSHAM, PA 19044 ACTAVIS: MORRIS CORPORATE CENTER III, 400 INTERPACE PARKWAY, PARSIPPANY, NJ 07054 |
| 2. 2566 RELEASE DATED APRIL 25, 2013 | | 100084 | ☐ | ACTAVIS TOTOWA LLC | ATTN: GENERAL COUNSEL 60 COLUMBIA ROAD BUILDING B MORRISTOWN, NJ 07960 |
| 2. 2567 AMENDMENT NO. 1 TO TERMINATION AGREEMENT DATED AUGUST 02, 2016 | | 100086 | ☐ | ACTAVIS TOTOWA LLC; ANDRX LABS LLC, ACTAVIS ELIZABETH LLC, ACTAVIS PHARMA, INC.; ACTAVIS LABORATORIES FL, INC. | ATTN: GENERAL COUNSEL 60 COLUMBIA ROAD BUILDING B MORRISTOWN, NJ 07960 |

**NAS1460**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2568 CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | ACTAVIS, INC | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III, 400 INTERPACE PARKWAY, PARSIPPANY, NJ 07054 |
| 2. 2569 TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | ACTAVIS, INC | ATTN: GENERAL COUNSEL MORRIS CORPORATE CENTER III, 400 INTERPACE PARKWAY, PARSIPPANY, NJ 07054 |
| 2. 2570 LETTER AGREEMENT DATED APRIL 26, 2013 | | 100092 | ☐ | ACTAVIS, INC. | ATTN: DAVID BUCHEN MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 2571 RELEASE DATED APRIL 25, 2013 | | 100088 | ☐ | ACTAVIS, INC. | ATTN: DAVID BUCHEN MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 2572 TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 100071 | ☐ | ACTAVIS, INC. | ATTN: DAVID BUCHEN MORRIS CORPORATE CENTER III 400 INTERPACE PARKWAY PARSIPPANY, NJ 07054 |
| 2. 2573 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 07, 2017 | | 100099 | ☐ | ADDISON WHITNEY, LLC | ATTN: GENERAL COUNSEL 11525 NORTH COMMUNITY ROAD SUITE 400 CHARLOTTE, NC 28277 |
| 2. 2574 AUTHORSHIP AGREEMENT EFFECTIVE AS OF MAY 05, 2017 | | 100100 | ☐ | ADITI KADAKIA | ATTN: GENERAL COUNSEL 26 BEACON STREET APT. 16E BURLINGTON, MA 01803 |
| 2. 2575 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF MAY 01, 2018 | | 100105 | ☐ | ADVANCED INVESTIGATIVE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 292 HUNTERS POINT PLACE SIMPSONVILLE, KY 40067 |

**NAS1461**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2576 CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 01, 2017 | | 100112 | ☐ | ADVOCACY & MANAGEMENT GROUP | ATTN: GENERAL COUNSEL 150 WEST STATE STREET SUITE 100 TRENTON, NJ 08608 |
| 2. 2577 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 100116 | ☐ | AFSANEH BARZI, M.D., PH.D | ATTN: GENERAL COUNSEL 912 REGENT PARK DRIVE LA CANADA, CA 91011 |
| 2. 2578 PRODUCT SALE AGREEMENT EFFECTIVE AS OF JANUARY 22, 2018 | | 100118 | ☐ | AIRGAS USA, LLC | ATTN: GENERAL COUNSEL 5311 77 CENTER DRIVE CHARLOTTE, NC 28217 |
| 2. 2579 AJINOMOTO ALTHEA, INC. DBA AJINOMOTO BIO-PHARMA SERVICES - SERVICES AGREEMENT AND STATEMENT OF WORK (K. FOGLE) EFFECTIVE MAY 17, 2019 | 5/15/2022 | 106065 | ☐ | AJINOMOTO BIO-PHARMA SERVICES | NOT AVAILABLE |
| 2. 2580 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 100124 | ☐ | AL B. BENSON III, M.D. | ATTN: GENERAL COUNSEL 1524 WILMETTE AVENUE WILMETTE, IL 60091 |
| 2. 2581 CONSULTANT SERVICES AGREEMENT DATED JANUARY 16, 2001 | | 100125 | ☐ | AL LEWIS, J.D. | ATTN: GENERAL COUNSEL 1037 CHESTNUT STREET NEWTON, MA 02464 |
| 2. 2582 CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 26, 2018 | | 100126 | ☐ | ALAN MILLAR | ATTN: GENERAL COUNSEL 4904 RIDGESTON PL HOLLY SPRINGS, NC 27540 |
| 2. 2583 RE NOTIFICATION PURSUANT TO SECTION 505J2BII OF THE FEDERAL FOOD, DRUG AND COSMETIC ACT DATED DECEMBER 15, 2011 | | 100129 | ☐ | ALAUNUS PHARMACEUTICAL, LLC | ATTN: GENERAL COUNSEL 687 WAVERLY STREET FRAMINGHAM, MA 01702 |
| 2. 2584 PROPOSAL TO CONDUCT THE REPACKAGING OF RSC117957B DATED FEBRUARY 06, 2012 | | 100130 | ☐ | ALBANY MOLECULAR RESEACH, INC. | ATTN: GENERAL COUNSEL 26 CORPORATE CIRCLE ALBANY, NY 12212-5098 |

NAS1462

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2585 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2001 | | 100133 | ☐ | ALBERT I. WERTHEIMER | ATTN: GENERAL COUNSEL 3307 N. BROAD STREET PHILADELPHIA, PA 19140 |
| 2. 2586 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 100134 | ☐ | ALICE MAO, MD | ATTN: GENERAL COUNSEL 550 WESTCOTT STREET, #520 HOUSTON, TX 77007 |
| 2. 2587 MASTER CONSULTING AGREEMENT DATED AUGUST 25, 2016 | | 100137 | ☐ | ALLAN BASBAUM, PHD | ATTN: GENERAL COUNSEL 129 KINROSS DR. SAN RAFAEL, CA 94901 |
| 2. 2588 AMENDMENT #2 TO CONSULTANT SERVICES AGREEMENT DATED MARCH 04, 2019 | | 100138 | ☐ | ALLEN AND ASSOCIATES | NOT AVAILABLE |
| 2. 2589 AMENDMENT TO MASTER CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 01, 2017 | | 100139 | ☐ | ALLEN BECKER, B.S., PHARM, R. PH | NOT AVAILABLE |
| 2. 2590 ALLEN AND ASSOCIATES OTH AMD 3 TO CSA EXTEND TERM CW2367482 (LH.RA) EFFECTIVE JULY 01, 2019 | 12/31/2019 | 106013 | ☐ | ALLEN JAMES W | NOT AVAILABLE |
| 2. 2591 AMENDMENT NO. 1 TO TERMINATION AGREEMENT DATED AUGUST 02, 2016 | | 100140 | ☐ | ALLERGAN FINANCE, LLC | ATTN: GENERAL COUNSEL 5 GIRALDA FARMS MADISON, NJ 07940 |
| 2. 2592 FIRST AMENDMENT TO INTERNET MARKETING AGREEMENT | | 100144 | ☐ | ALLSCRIPTS, LLC | PHYSICIANS INTERACTIVE DIVISION ATTN: PRESIDENT & GENERAL COUNSEL 2401 COMMERCE DRIVE LIBERTY, IL 60045 |
| 2. 2593 PROJECT AGREEMENT DATED NOVEMBER 18, 2003 | | 100156 | ☐ | ALPHADETAIL, INC. | ATTN: GENERAL COUNSEL 2440 SAND HILL ROAD MENLO PARK, CA 94025 |

**NAS1463**

**Purdue Pharma L.P.**                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2594 SEARCH FIRM AGREEMENT EFFECTIVE AS OF JUNE 19, 2013 | | 100158 | ☐ | ALTA ASSOCIATES | ATTN: GENERAL COUNSEL 8 BARTLES CORNER ROAD, SUITE 021 FLEMINGTON 08822 |
| 2. 2595 ALVAREZ AND MARSAL VALUATION SERVICES, LLC - SUPPLEMENT TO ENGAGEMENT LETTER DATED JANUARY 21, 2019 (P. STRASSBURGER) EFFECTIVE JULY 15, 2019 | 1/20/2020 | 106074 | ☐ | ALVAREZ & MARSAL VALUATION SERVICES, LLC | ATTN: GENERAL COUNSEL 600 MADISON AVENUE, 8TH FLOOR NEW YORK, NY 10022 |
| 2. 2596 ENGAGEMENT LETTER DATED JANUARY 21, 2019 | | 100176 | ☐ | ALVAREZ & MARSAL VALUATION SERVICES, LLC | ATTN: GENERAL COUNSEL 600 MADISON AVENUE, 8TH FLOOR NEW YORK, NY 10022 |
| 2. 2597 LETTER AGREEMENT DATED DECEMBER 07, 2018 | | 100175 | ☐ | ALVAREZ & MARSAL VALUATION SERVICES, LLC | ATTN: GENERAL COUNSEL 600 MADISON AVENUE, 6TH FLOOR NEW YORK, NY 10022 |
| 2. 2598 PROJECT AGREEMENT DATED SEPTEMBER 22, 2003 | | 100177 | ☐ | AM MEDICA COMMUNICATIONS GROUP | ATTN: GENERAL COUNSEL 335 WEST 16TH STREET 4TH FLOOR NEW YORK, NY 10011 |
| 2. 2599 CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 01, 2005 | | 100178 | ☐ | AMERICAN APPRAISAL ASSOCIATES | ATTN: GENERAL COUNSEL 6 LANDMARK SQUARE, 4TH FLOOR STAMFORD, CT 06901 |
| 2. 2600 CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 29, 2005 | | 100179 | ☐ | AMERICAN APPRAISAL ASSOCIATES | ATTN: GENERAL COUNSEL 6 LANDMARK SQUARE, 4TH FLOOR STAMFORD, CT 06901 |
| 2. 2601 LETTER OF AGREEMENT DATED APRIL 08, 2011 | | 100188 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | ATTN: GENERAL COUNSEL 515 KING STREET SUITE 510 ALEXANDRIA, VA 22314 |
| 2. 2602 LETTER OF AGREEMENT DATED AUGUST 22, 2013 | | 100183 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | ATTN: GENERAL COUNSEL 515 KING STREET SUITE 510 ALEXANDRIA, VA 22314 |

**NAS1464**

**Purdue Pharma L.P.**                                                            **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2603 LETTER OF AGREEMENT DATED NOVEMBER 25, 2013 | | 100184 | ☐ | AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | ATTN: GENERAL COUNSEL 55 KING STREET SUITE 510 ALEXANDRIA, VA 22314 |
| 2. 2604 LETTER OF AGREEMENT FOR SAFETY AND EFFICACY STUDIES EFFECTIVE AS OF SEPTEMBER 19, 2017 | | 100190 | ☐ | AMERICAN CLEANING INSTITUTE | ATTN: GENERAL COUNSEL 1331 L STREET, NW SUITE 650 WASHINGTON, DC 20005 |
| 2. 2605 AMENDMENT TO CORPORATE SERVICES COMMERCIAL ACCOUNT AGREEMENT DATED APRIL 01, 2008 | | 100191 | ☐ | AMERICAN EXPRESS | ATTN: GENERAL COUNSEL AMERICAN EXPRESS COMPANY, CORPORATE SERVICES OPERATIONS, AESC-P 20022 NORTH 31ST AVE, MAIL CODE AZ-08-03-11 PHOENIX, AZ 85027 |
| 2. 2606 CORPORATE SERVICES COMMERCIAL ACCOUNT AGREEMENT DATED APRIL 01, 2008 | | 100192 | ☐ | AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC. | ATTN: GENERAL COUNSEL AMERICAN EXPRESS COMPANY, CORPORATE SERVICES OPERATIONS, AESC-P 20022 NORTH 31ST AVE, MAIL CODE AZ-08-03-11 PHOENIX, AZ 85027 |
| 2. 2607 CONSULTING SERVICES AGREEMENT DATED DECEMBER 09, 2016 | | 100193 | ☐ | AMERICAN MANAGEMENT ASSOCIATION | ATTN: GENERAL COUNSEL 600 AMA WAY SARANAC LAKE, NY 12983 |
| 2. 2608 PROJECT RESEARCH AND DEVELOPMENT FUNDING AGREEMENT DATED AUGUST 22, 2001 | | 100196 | ☐ | AMERICAN MEDICAL ASSOCIATION | ATTN: GENERAL COUNSEL 515 NORTH STATE STREET CHICAGO, IL 60610 |
| 2. 2609 MEMBERSHIP AGREEMENT FOR SUPPORT SERVICES DATED OCTOBER 01, 2003 | | 100218 | ☐ | AMR RESEARCH, INC. | ATTN: GENERAL COUNSEL 2 OLIVER STREET FIFTH FLOOR BOSTON, MA 02109 |
| 2. 2610 MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 01, 2017 | | 100219 | ☐ | ANALGESIC SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 232 POND STREET NATICK, MA 01760 |

**NAS1465**

**Purdue Pharma L.P.**                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2611 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 01, 2017 | | 100220 | ☐ | ANALGESIC SOLUTIONS, LLC | ATTN: GENERAL COUNSEL 232 POND STREET NATICK, MA 01760 |
| 2. 2612 SEARCH FIRM AGREEMENT DATED APRIL 07, 2010 | | 100223 | ☐ | ANALYSTS INTERNATIONAL CORPORATION | ATTN: GENERAL COUNSEL 909 AVIATION PARKWAY, SUITE 1200 MORRISVILLE, NC 27560 |
| 2. 2613 CONSULTING SERVICES AGREEMENT DATED MAY 01, 2017 | | 100238 | ☐ | ANDREA CERCEK, M.D. | ATTN: GENERAL COUNSEL 505 EAST 79TH STREET APT. 12A NEW YORK, NY 10075 |
| 2. 2614 CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100240 | ☐ | ANDREW J. CULTER, M.D. | ATTN: GENERAL COUNSEL 10800 ALPHARETTA HIGHWAY SUITE 208 ROSEWELL, GA 30076 |
| 2. 2615 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2016 | | 100241 | ☐ | ANDREW KRYSTAL, MD | ATTN: GENERAL COUNSEL DEPARTMENT OF PSYCHIATRY DUKE UNIVERSITY MEDICAL CENTER, BOX 3309 DURHAM, NC 27710 |
| 2. 2616 CONSULTANT ENGAGEMENT LETTER DATED SEPTEMBER 06, 2017 | | 100242 | ☐ | ANDREWS INTERNATIONAL, INC. | ATTN: GENERAL COUNSEL 475 PARK AVENUE SOUTH 12TH FLOOR NEW YORK, NY 10016 |
| 2. 2617 CONSULTANT SERVICES AGREEMENT DATED JUNE 03, 1998 | | 100245 | ☐ | ANIL ABRAHAM | ATTN: GENERAL COUNSEL 138 CANDLEWOOD DRIVE YONKERS, NY 10710 |
| 2. 2618 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 100246 | ☐ | ANN CHILDRESS, M.D. | 7351 PRAIRIE FALCON ROAD SUITE 160 LAS VEGAS, NV 89128 |
| 2. 2619 STATEMENT OF CONFIDENTIALITY AND LIABILITY EFFECTIVE AS OF JULY 24, 2001 | | 100247 | ☐ | ANSWERTHINK, INC. | NOT AVAILABLE |

**NAS1466**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2620 AMENDMENT NO. 5 TO MANAGED STAFFING AGREEMENT DATED APRIL 01, 2009 | | 100248 | ☐ | APC WORKFORCE SOLUTIONS L.L.C. | ATTN: LEGAL 420 S. ORANGE AVENUE ORLANDO, FL 32601 |
| 2. 2621 AMENDMENT TO MANAGED STAFFING AGREEMENT DATED DECEMBER 22, 2017 | | 100250 | ☐ | APC WORKFORCE SOLUTIONS, LLC D/B/A ZEROCHAOS | ATTN: LEGAL 420 S. ORANGE AVENUE ORLANDO, FL 32601 |
| 2. 2622 SEARCH FIRM AGREEMENT DATED APRIL 13, 2012 | | 100260 | ☐ | APPLE AND ASSOCIATES | ATTN: GENERAL COUNSEL PO BOX 996 CHAPIN, SC 29036 |
| 2. 2623 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100263 | ☐ | APR EXECUTIVE SEARCH INC. | ATTN: GENERAL COUNSEL 1 LINDEN PLACE, SUITE 405 GREAT NECK, NY 11021 |
| 2. 2624 DISCONTINUATION AGREEMENT EFFECTIVE AS OF APRIL 01, 2009 | | 100264 | ☐ | APTUIT CONSULTING, INC. | NOT AVAILABLE |
| 2. 2625 LEGAL RETAINER AGREEMENT DATED JANUARY 17, 2013 | | 100268 | ☐ | ARMALL GOLDEN GREGORY LLP | ATTN: GENERAL COUNSEL 171 17TH STREET NW SUITE 2100 ATLANTA, GA 30363-1031 |
| 2. 2626 LEGAL RETAINER AGREEMENT DATED SEPTEMBER 30, 2013 | | 100269 | ☐ | ARNOLD & PORTER LLP | ATTN: GENERAL COUNSEL 555 TWELFTH STREET, NW WASHINGTON, DC 20004-1206 |
| 2. 2627 PRIVILEGED AND CONFIDENTIAL DATED JANUARY 19, 2006 | | 100270 | ☐ | ARROWSMITH- LOWE, MD FACP | ATTN: GENERAL COUNSEL 185 EAGLE CREEK CANYON RUIDOSO, NM 88355 |
| 2. 2628 LETTER TO AMEND AGREEMENT DATED FEBRUARY 02, 2001 | | 100275 | ☐ | ARTHRITIS SURGERY RESEARCH FOUNDATION, INC. | ATTN: GENERAL COUNSEL 1321 NW 14TH STREET WEST BUILDING, SUITE 203 MIAMI, FL 33125 |
| 2. 2629 LETTER TO AMEND AGREEMENT DATED FEBRUARY 02, 2001 | | 100276 | ☐ | ARTHRITIS SURGERY RESEARCH FOUNDATION, INC. | ATTN: GENERAL COUNSEL 1321 NW 14TH STREET WEST BUILDING, SUITE 203 MIAMI, FL 33125 |

**NAS1467**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2630  CONSULTANT SERVICES AGREEMENT DATED DECEMBER 01, 2018 | | 100279 | ☐ | ASCENT STRATEGIES, LLC | ATTN: GENERAL COUNSEL 1410 GRANT STREET SUITE C306 DENVER, CO 80203 |
| 2. 2631  LETTER PURCHASING AGREEMENT EFFECTIVE AS OF JULY 01, 2015 | | 100280 | ☐ | ASCENSION HEALTH RESOURCE AND SUPPLY MANAGEMENT GROUP LLC | ATTN: SOURCING MANAGER, PHARMACY 11775 BORMAN DRIVE, SUITE 340 ST. LOUIS, MO 63146 |
| 2. 2632  MASTER AGREEMENT EFFECTIVE AS OF MAY 12, 2017 | | 100292 | ☐ | AT&T | ATTN: MASTER AGREEMENT SUPPORT TEAM ONE AT&T WAT BEDMINSTER, NJ 07921-0752 |
| 2. 2633  STATEMENT OF WORK DATED DECEMBER 04, 2001 | | 100303 | ☐ | ATMOSPHERE INTERACTIVE | ATTN: GENERAL COUNSEL 1375 BROADWAY NEW YORK, NY 10018 |
| 2. 2634  ATUL KHULLAR MD OTH CW2366042 NON-COMPENSATED AUTHORSHIP (LH.RA) EFFECTIVE MARCH 25, 2019 | 3/31/2021 | 106024 | ☐ | ATUL KHULLAR, MD | NOT AVAILABLE |
| 2. 2635  CONSULTANT ENGAGEMENT LETTER DATED MAY 18, 2016 | | 100309 | ☐ | AUGUSTENBORG CONSULTING, LLC | ATTN: GENERAL COUNSEL LON D. AUGUSTENBORG 6603 QUINTEN STREET FALLS CHURCH, VA 22043 |
| 2. 2636  PROJECT SPECIFICATION ORDER #8 TO MASTER CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 15, 2001 | | 100325 | ☐ | AVALON HEALTH SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1601 WALNUT STREET SUITE 1507 PHILADELPHIA, PA 19102 |
| 2. 2637  PROJECT SPECIFICATION ORDER NO. 1 TO MASTER CONSULTANT SERVICES AGREEMENT DATED AUGUST 16, 2000 | | 100324 | ☐ | AVALON HEALTH SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1601 WALNUT STREET SUITE 1507 PHILADELPHIA, PA 19102 |
| 2. 2638  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 13, 2018 | | 100334 | ☐ | AVI MAMIDI, PHARM.D BCPS | ATTN: GENERAL COUNSEL 4727 SOUTH SPAGO DRIVE DUBLIN, CA 94568 |

**NAS1468**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2639 AMENDMENT #3 TO MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 28, 2018 | | 100336 | ☐ | AVOCA GROUP, INC. | NOT AVAILABLE |
| 2. 2640 FEASIBILITY EVALUATION AGREEMENT DATED MARCH 25, 1999 | | 100351 | ☐ | BANNER PHARMACAPS, INC. | ATTN: VICE PRESIDENT, SALES & MARKETING 4125 PREMIER DRIVE HIGH POINT, NC 27265-8144 |
| 2. 2641 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 1998 | | 100358 | ☐ | BASSETT CONSULTING SERVICES, INC. | ATTN: GENERAL COUNSEL 10 PLEASANT DRIVE NORTH HAVEN, CT 06473 |
| 2. 2642 RELEASE AND COVENANT EFFECTIVE AS OF AUGUST 01, 2012 | | 100359 | ☐ | BAXTER INTERNATIONAL INC.; BAXTER HEALTHCARE CORPORATION | ATTN: GENERAL COUNSEL ONE BAXTER PARKWAY, DF-2E DEERFIELD, IL 60015-4633 |
| 2. 2643 CONSULTING SERVICES AGREEMENT DATED NOVEMBER 08, 2017 | | 100363 | ☐ | BDO USA, LLP | ATTN: GENERAL COUNSEL 8401 GREENSBORO DRIVE SUITE 800 MCLEAN, VI 22102 |
| 2. 2644 PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 11, 2008 | | 100365 | ☐ | BECKER & ASSOCIATES CONSULTING INC | ATTN: GENERAL COUNSEL 2001 PENNSYLVANIA AVENUE NORTHWEST SUITE 950 WASHINGTON, DC 20006 |
| 2. 2645 AMENDMENT #1: TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2004 | | 100372 | ☐ | BENCHMARK RESEARCH | ATTN: MELISSA REYNOLDS 4504 BOAT CLUB ROAD SUITE 800 FORTH WORTH, TX 76135 |
| 2. 2646 AMENDMENT #1: TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2004 | | 100373 | ☐ | BENCHMARK RESEARCH | ATTN: MELISSA REYNOLDS 4504 BOAT CLUB ROAD SUITE 800 FORTH WORTH, TX 76135 |
| 2. 2647 SEARCH FIRM AGREEMENT EFFECTIVE AS OF OCTOBER 04, 2007 | | 100379 | ☐ | BERKELEY ASSOCIATES D/B/A JUDGE INC. | ATTN: GENERAL COUNSEL 300 CONSHOHOCKEN, SUITE 300 WEST CONSHOHOCHEN, PA 19428 |

**NAS1469**

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2648   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 30, 2018 | | 100381 | ☐ | BERRY CONSULTANTS, LLC. | ATTN: GENERAL COUNSEL 3345 BEE CAVES ROAD SUITE 201 AUSTIN, TX 78746 |
| 2. 2649   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 29, 2018 | | 100382 | ☐ | BEST PRACTICES BENCHMARKING & CONSULTING, LLC DBA BEST PRACTICES, LLC | ATTN: GENERAL COUNSEL 6350 QUADRANGLE DRIVE SUITE 2200 CHAPEL HILL, NC 27517 |
| 2. 2650   SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100389 | ☐ | BIO-DIGM, LLC | ATTN: GENERAL COUNSEL 29 EAST BIJOU STREET, #15 COLORADO SPRINGS, CO 80902 |
| 2. 2651   SEARCH FIRM AGREEMENT DATED JULY 17, 2013 | | 100405 | ☐ | BIOPHARMA SEARCH PARTNERS | ATTN: GENERAL COUNSEL 6 FORGE GATE DRIVE, G8B COLD SPRING, NY 10516 |
| 2. 2652   CONSULTANT SERVICES AGREEMENT DATED JULY 22, 1998 | | 100411 | ☐ | BIOTECHNICAL SERVICES, INC | ATTN: GENERAL COUNSEL 4610 WEST COMMERICAL DRIVE NORTH LITTLE ROCK, AR 72116-7059 |
| 2. 2653   CONSULTANT SERVICES AGREEMENT DATED JULY 22, 1998 | | 100412 | ☐ | BIOTECHNICAL SERVICES, INC | ATTN: GENERAL COUNSEL 4610 WEST COMMERICAL DRIVE NORTH LITTLE ROCK, AR 72116-7059 |
| 2. 2654   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100413 | ☐ | BIRGIT AMANN, M.D. | ATTN: GENERAL COUNSEL 1639 E. BIG BEAVER SUITE 201 TROY, MI 48083 |
| 2. 2655   CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2018 | | 100414 | ☐ | BIVENS & ASSOCIATES LLC | ATTN: GENERAL COUNSEL 511 UNION STREET SUITE 2615 NASHVILLE, TN 37219 |
| 2. 2656   PURCHASE AND SERVICE AGREEMENT DATED FEBRUARY 01, 2007 | | 100415 | ☐ | BLAKE WORKS, INC, | ATTN: GENERAL COUNSEL 248 EAST MAIN STREET GLOUCESTER, MA 01930 |

**NAS1470**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2657 AMENDMENT #1 TO STATEMENT OF WORK DATED AUGUST 01, 2018 | | 100417 | ☐ | BLAUVELT CONSULTING, LLC | ATTN: GENERAL COUNSEL 17700 UPPER CHERRY LANE LAKE OSWEGO, OR 97034 |
| 2. 2658 CONSULTANT SERVICES AGREEMENT DATED DECEMBER 19, 2016 | | 100416 | ☐ | BLAUVELT CONSULTING, LLC | ATTN: GENERAL COUNSEL 17700 UPPER CHERRY LANE LAKE OSWEGO, OR 97034 |
| 2. 2659 CONSULTANT SERVICES AGREEMENT DATED MARCH 01, 2017 | | 100418 | ☐ | BLUE FIN GROUP, INC. | ATTN: GENERAL COUNSEL 219 MAIN STREET # 405 CHATHAM, NJ 07928 |
| 2. 2660 CONTRACT CHANGE ORDER EFFECTIVE AS OF SEPTEMBER 02, 2008 | | 100428 | ☐ | BMC SOFTWARE, INC. | NOT AVAILABLE |
| 2. 2661 MASTER CONSULTANT AGREEMENT EFFECTIVE AS OF AUGUST 26, 2016 | | 100438 | ☐ | BOSTON HEALTH ECONOMICS, INC. | ATTN: GENERAL COUNSEL 20 FOX ROAD WALTHAM, MA 02451 |
| 2. 2662 PARTNERSHIP AGREEMENT DATED JANUARY 01, 2004 | | 100439 | ☐ | BR HOLDINGS ASSOCIATES L.P. | ATTN: MORTIMER D. SACKLER, M.D.; KATHE A SACKLER, M.D.; AND RICHARD S. SACKLER, M.D. ONE STAMFORD FORUM STAMFORD, CT 06901-3431 |
| 2. 2663 PARTNERSHIP AGREEMENT DATED JANUARY 01, 2004 | | 100440 | ☐ | BR HOLDINGS ASSOCIATES L.P. | ATTN: MORTIMER D. SACKLER, M.D.; KATHE A SACKLER, M.D.; AND RICHARD S. SACKLER, M.D. ONE STAMFORD FORUM STAMFORD, CT 06901-3431 |
| 2. 2664 MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 25, 2015 | | 100447 | ☐ | BRAINS ON-LINE LLC | ATTN: ARASH RASSOULPOUR 7000 SHORELINE COURT SUITE 275 SAN FRANCISCO, CA 94080 |
| 2. 2665 AMENDMENT NO. 2 TO MASTER CONSULTANT/VENDOR SERVICES AGREEMENT DATED APRIL 08, 2016 | | 100450 | ☐ | BRAJAK CONSULTING LLC | ATTN: GENERAL COUNSEL 6 SHADY MILL LANE MILFORD, NJ 08848 |

**NAS1471**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2666 MASTER CONSULTANT/VENDOR SERVICES AGREEMENT DATED APRIL 11, 2011 | | 100449 | ☐ | BRAJAK CONSULTING LLC | ATTN: SHAWN M. REARDON 6 SHADY MILL LANE MILFORD, NJ 08848 |
| 2. 2667 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 19, 2017 | | 100458 | ☐ | BRANDWIDTH GLOBAL | ATTN: GENERAL COUNSEL 79 COLEYTOWN ROAD WESTPORT, CO 06680 |
| 2. 2668 AMENDMENT NO. 1 CONSULTING SERVICES AGREEMENT DATED MARCH 06, 2018 | | 100459 | ☐ | BRAVO GROUP, INC. | NOT AVAILABLE |
| 2. 2669 AMENDMENT TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 28, 2016 | | 100461 | ☐ | BRENNAN SALES INSTITUTE | NOT AVAILABLE |
| 2. 2670 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 25, 2019 | | 100473 | ☐ | BROWNSTEIN HYATT FARBER SCHRECK | ATTN: GENERAL COUNSEL 410 SEVENTEENTH STREET SUITE 2200 DENVER, CO 80202-4432 |
| 2. 2671 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 100474 | ☐ | BRUCE MCCORMICK PH.D. ABMP | ATTN: GENERAL COUNSEL 1842 IRVING PLACE SHREVEPORT, LA 71101 |
| 2. 2672 AMENDMENT NO. 1 TO MASTER CONSULTANT VENDOR SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 17, 2017 | | 100483 | ☐ | BURKHART CONSULTING LLC | ATTN: GENERAL COUNSEL 12223 QUORN LANE RESTON, VA 20191 |
| 2. 2673 STATEMENT OF WORK NO. 1 DATED JANUARY 17, 2014 | | 100481 | ☐ | BURKHART CONSULTING LLC | ATTN: GENERAL COUNSEL 12223 QUORN LANE RESTON, VA 20191 |
| 2. 2674 LETTER AGREEMENT EFFECTIVE AS OF MARCH 03, 2006 | | 100489 | ☐ | BURRILL & COMPANY LLC | ATTN: GENERAL COUNSEL ONE EMBARCADERO CENTER SUITE 2700 SAN FRANCISCO, CA 94111 |

**NAS1472**

**Purdue Pharma L.P.**                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2675  BUSINESS WIRE - AMEND. 1 TO SPECIAL PRICING AGREEMENT CW2367603 (LH.RA) EFFECTIVE JULY 01, 2019 | 6/30/2021 | 106021 | ☐ | BUSINESS WIRE INC | NOT AVAILABLE |
| 2. 2676  SKADDEN LETTER AGREEMENT 07212016 CW2324294 CONSULTING SERVICES (MB.LH) DATED JULY 21, 2016 | | 100491 | ☐ | BUZZEOPDMA, LLC | ATTN: GENERAL COUNSEL SUITE 301 RICHMOND, VA 23225 |
| 2. 2677  CUSTOMER ENGAGEMENT, BETA, AND FEEDBACK AGREEMENT DATED NOVEMBER 18, 2013 | | 100502 | ☐ | C/O/ SPARTA SYSTEMS | ATTN: GENERAL COUNSEL 2000 WATERVIEW DRIVE HAMILTON 08691 |
| 2. 2678  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100508 | ☐ | CAMBRIDGE GROUP LTD | ATTN: GENERAL COUNSEL 1175 POST ROAD EAST WESTPORT, CT 06880 |
| 2. 2679  CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF JUNE 01, 2017 | | 100520 | ☐ | CARCO GROUP, INC. D/B/A CISIVE | ATTN: GENERAL COUNSEL 5000 CORPORATE COURT SUITE 203 HOLTSVILLE, NY 11742 |
| 2. 2680  LETTER PURCHASING AGREEMENT DATED JUNE 06, 2017 | | 100536 | ☐ | CARDINAL HEALTH PHARMACEUTICAL CONTRACTING LLC | ATTN: DIEGO ARMENDARIZ, DIRECTOR OF CONTRACTING 1330 ENCLAVE PARKWAY HOUSTON, TX 77077 |
| 2. 2681  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100548 | ☐ | CARLYLE CONSULTING SERVICES, INC | ATTN: GENERAL COUNSEL 641 LEXINGTON AVENUE NEW YORK, NY 10022 |
| 2. 2682  CONSULTANT SERVICES AGREEMENT DATED JULY 06, 1998 | | 100549 | ☐ | CAROL A. JOHMANN, PH.D. | ATTN: GENERAL COUNSEL 202 WEXFORD PLACE WEBSTER, NY 14580 |
| 2. 2683  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100550 | ☐ | CAROLYN DAVIS | ATTN: GENERAL COUNSEL 131 WELTON WAY MOORESVILLE, NC 28117 |

**NAS1473**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2684  MASTER CONSULTANT SERVICES AGREEMENT DATED DECEMBER 15, 2016 | | 100551 | ☐ | CAROLYNE M. WOLF, PHARM. D | ATTN: GENERAL COUNSEL 520 NORTH OAKLAWN AVENUE ELMHURST, IL 60126 |
| 2. 2685  STANDARD LETTER OF AGREEMENT EFFECTIVE AS OF JUNE 01, 2018 | | 100559 | ☐ | CEB COMPLIANCE & ETHICS LEADERSHIP COUNCIL | ATTN: GENERAL COUNSEL |
| 2. 2686  SEARCH FIRM AGREEMENT DATED JUNE 28, 2006 | | 100562 | ☐ | CELERITY TECHNOLOGY SERVICES, INC. | ATTN: GENERAL COUNSEL 2001 WEST MAIN STREET, SUITE 135 STAMFORD, CT 06902 |
| 2. 2687  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100563 | ☐ | CELERITY TECHNOLOGY SERVICES, INC. | ATTN: GENERAL COUNSEL 2001 WEST MAIN STREET, SUITE 135 STAMFORD, CT 06902 |
| 2. 2688  ASSET PURCHASE AGREEMENT BY AND AMONG CELLACT PHARMA GMBH AND MUNDIPHARMA INTERNATIONAL CORPORATION LIMITED DATED JULY 29, 2017 (EX-US) AND ACCOMPANYING EXHIBITS ("CELLACT APA EX-US") | | 106229 | ☐ | CELLACT PHARMA GMBH | ATTN: GENERAL COUNSEL OTTO-HAHN-STRAßE 15, 44227 DORTMUND, GERMANY |
| 2. 2689  ASSET PURCHASE AGREEMENT BY AND AMONG CELLACT PHARMA GMBH AND PURDUE PHARMA L.P. DATED JULY 29, 2017 (US) AND ACCOMPANYING EXHIBITS ("CELLACT APA US") | | 106228 | ☐ | CELLACT PHARMA GMBH | ATTN: GENERAL COUNSEL OTTO-HAHN-STRAßE 15, 44227 DORTMUND, GERMANY |
| 2. 2690  MATERIALS TRANSFER AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2015 | | 100572 | ☐ | CENTREXION THERAPEUTICS CORPORATION | ATTN: GENERAL COUNSEL 509 S EXETER STREET SUITE 202 BALTIMORE, MD 21202 |
| 2. 2691  CONSULTANT SERVICES AGREEMENT DATED MARCH 08, 1999 | | 100573 | ☐ | CENTRO AF DE ESTUDIOS TECNOLOGICOS SA | ATTN: GENERAL COUNSEL NICOLAS SAN JUAN 1024 COLONIA DEL VALLE; MEXICO D.F., MEXICO 03100 |
| 2. 2692  SERVICE AGREEMENT EFFECTIVE AS OF NOVEMBER 12, 2012 | | 100575 | ☐ | CERIDIAN CORPORATION | ATTN: LEGAL 3311 EAST OLD SHAKOPEE RD MINNEAPOLIS, MN 55425 |

**NAS1474**

**Purdue Pharma L.P.**                                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2693 CERILLIANT CORPORATION - AMENDMENT 1 TO MLSA OTH CW2365944 (LH.RA) EFFECTIVE FEBRUARY 01, 2019 | 1/31/2022 | 106002 | ☐ | CERILLIANT CORPORATION | NOT AVAILABLE |
| 2. 2694 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 20, 2018 | | 100582 | ☐ | CFO SOLUTIONS LLC | ATTN: GENERAL COUNSEL 6 UNIVERSITY DRIVE SUITE 206-209 AMHERST, MA 01002 |
| 2. 2695 SEARCH FIRM AGREEMENT DATED NOVEMBER 20, 2008 | | 100583 | ☐ | CHALONER ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 580 BROADWAY, SUITE 1208 NEW YORK, NY 10012 |
| 2. 2696 MASTER CONSULTANT SERVICES AGREEMENT DATED JUNE 01, 2016 | | 100586 | ☐ | CHARLES ARGOFF, MD | ATTN: GENERAL COUNSEL 4 LADON LANE NORTH LOUDONVILLE, NY 12211 |
| 2. 2697 CONSULTANT SERVICES AGREEMENT DATED MAY 17, 1999 | | 100588 | ☐ | CHARLES GRUDZINSKAS, PH.D. | ATTN: GENERAL COUNSEL 720 RIVERVIEW TERRACE ANNAPOLIS, MD 21401 |
| 2. 2698 CHARLES RIVER OTH AMENDMENT 1 TO PSO 2019-1 CW2367432 (LH.RA) EFFECTIVE JUNE 28, 2019 | 10/5/2020 | 106031 | ☐ | CHARLES RIVER LABORATORIES | ATTN: GENERAL COUNSEL ELPHINSTONE RESEARCH CENTRE TRANENT EH33 2NE EDINBURGH |
| 2. 2699 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2017 | | 100593 | ☐ | CHARLES STEFANINI CONSULTING LLC | ATTN: GENERAL COUNSEL 15 CUNNINGHAM DRIVE FRAMINGHAM, MA 01701 |
| 2. 2700 CONSULTANCY AGREEMENT EFFECTIVE AS OF JANUARY 16, 1997 | | 100594 | ☐ | CHARTER SYSTEMS, INC. | ATTN: GENERAL COUNSEL 110 WASHINGTON AVENUE NORTH HAVEN, CT 06473 |
| 2. 2701 MASTER IMPLEMENTATION FORM DATED AUGUST 10, 2005 | | 100595 | ☐ | CHASE I-SOLUTIONS | ATTN: GENERAL COUNSEL 1201 MARKET STREET 9TH FLOOR WILMINGTON, DE 19801 |

**NAS1475**

Case 7:21-cv-07532-CM   Document 158-2   Filed 11/15/21   Page 482 of 1000

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2702  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100598 | ☐ | CHAVES & ASSOCIATES LLP DBA INSITE SEARCH | ATTN: GENERAL COUNSEL 22 CRESCENT ROAD WESTPORT, CT 06880 |
| 2. 2703  AMENDMENT NO. 1 CONSULTING SERVICES AGREEMENT DATED MAY 01, 2017 | | 100614 | ☐ | CHRISTOPHER DELAFOREST | NOT AVAILABLE |
| 2. 2704  EMPLOYEE WELFARE BENEFIT PLAN APPOINTMENT FOR CLAIM FIDUCIARY DATED JANUARY 01, 2008 | | 100621 | ☐ | CIGNA LIFE INSURANCE COMPANY OF NEW YORK | ATTN: GENERAL COUNSEL 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2705  MASTER LABORATORY AND NON-CLINICAL SERVICES AGREEMENT EXECUTED OCTOBER 15, 2018 | | 100622 | ☐ | CILCARE | ATTN: GENERAL COUNSEL 2214 BD DE LA LIRONDE- BAT. 12 MONTFERRIER SUR LEZ 34980 FRANCE |
| 2. 2706  CONSULTANT SERVICES AGREEMENT DATED JUNE 08, 1999 | | 100623 | ☐ | CIMQUEST, INC. | ATTN: GENERAL COUNSEL 262 CHAPMAN ROAD SUITE 105 NEWARK, DE 19702 |
| 2. 2707  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2017 | | 100627 | ☐ | CIVIC POINT - A SUBSIDIARY OF FROST BROWN TODD LLC | ATTN: GENERAL COUNSEL 201 NORTH ILLINOIS STREET SUITE 1900 INDIANAPOLIS, IN 46204-4236 |
| 2. 2708  SEARCH FIRM AGREEMENT DATED SEPTEMBER 02, 2011 | | 100628 | ☐ | CKR ASSOCIATES, LLC | ATTN: GENERAL COUNSEL 1955 HIGHWAY 34, SUITE 3A WALL, NJ 07719 |
| 2. 2709  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100632 | ☐ | CLARK DAVIS ASSOCIATES | ATTN: GENERAL COUNSEL 5 CENTURY DRIVE PARSIPPANY, NJ 07054 |
| 2. 2710  EVALUATION AGREEMENT DATED SEPTEMBER 14, 2006 | | 100635 | ☐ | CLEARWELL SYSTEMS, INC. | ATTN: GENERAL COUNSEL 2901 TASMAN DRIVE SUITE 100 SANTA CLARA, CA 95054 |

**NAS1476**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 483 of 1000

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2711 CONSULTANT SERVICES AGREEMENT DATED JUNE 08, 1999 | | 100637 | ☐ | CLIMQUEST, INC. | ATTN: EXECUTIVE VICE PRESIDENT 262 CHAPMAN ROAD SUITE 105 NEWARK, DE 19702 |
| 2. 2712 REQUEST FOR CONSENT TO ASSIGN AGREEMENT DATED NOVEMBER 08, 2001 | | 100640 | ☐ | CLINICAL STUDIES, LTD | ATTN: GENERAL COUNSEL 10 DORRANCE STREET SUITE 400 PROVIDENCE, RI 02903 |
| 2. 2713 REQUEST FOR CONSENT TO ASSIGN AGREEMENT DATED NOVEMBER 08, 2001 | | 100641 | ☐ | CLINICAL STUDIES, LTD | ATTN: GENERAL COUNSEL 101 DORRANCE STREET SUITE 400 PROVIDENCE, RI 02903 |
| 2. 2714 AMENDMENT #2 TO MASTER HCP CONSULTANT SERVICES AGREEMENT DATED APRIL 01, 2012 | | 100642 | ☐ | CLINICAL TRIAL CONSULTANTS, LLC | NOT AVAILABLE |
| 2. 2715 STATEMENT OF WORK TO MASTER HCP CONSULTANT SERVICES AGREEMENT DATED APRIL 01, 2012 | | 100643 | ☐ | CLINICAL TRIAL CONSULTANTS, LLC | ATTN: GLEN APSELOFF |
| 2. 2716 CLINICAL TRIAL CONSULTANTS OTH CW2367320 AMEND 1 TO SOW 2017-1 APSELOFF (LH.RA) EFFECTIVE JUNE 20, 2019 | 6/19/2022 | 106028 | ☐ | CLINICAL TRIAL CONSULTANTS, LLC (GLEN APSELOFF - OHIO STATE UNIVERSITY) | NOT AVAILABLE |
| 2. 2717 CLINICAL TRIAL CONSULTANTS, LLC - OTH MSA AMEND 3 GLEN APSELOFF CW2367309 (LH.RA) EFFECTIVE JUNE 20, 2019 | 6/19/2022 | 106029 | ☐ | CLINICAL TRIAL CONSULTANTS, LLC (GLEN APSELOFF - OHIO STATE UNIVERSITY) | NOT AVAILABLE |
| 2. 2718 CONSULTING SERVICES AGREEMENT DATED JULY 01, 1997 | | 100650 | ☐ | CLINICAL TRIAL SERVICES | ATTN: TIMOTHY S. BREWER, CEO 2661 AUDUBON ROAD AUDUBON, PA 19407 |
| 2. 2719 MASTER CRO SERVICES AGREEMENT EFFECTIVE AS OF APRIL 01, 2017 | | 100657 | ☐ | CLINILABS, INC. | ATTN: GENERAL COUNSEL 423 WEST 55TH STREET NEW YORK, NY 10019 |

**NAS1477**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2720  AMENDMENT NO. 4 TO MASTER CONSULTANT SERVICES AGREEMENT DATED JULY 31, 2017 | | 100663 | ☐ | COBBS CREEK HEALTHCARE, LLC | NOT AVAILABLE |
| 2. 2721  COBRA OTH CW2365889 AMEND1 TO MSA MODIFY EARLY PAYMENT DISCOUNT (LH.RA) EFFECTIVE MARCH 11, 2019 | 6/21/2021 | 105998 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |
| 2. 2722  COBRA OTH CW2365898 AMEND1 TO SOW2019-1 MODIFY PRICING DUE TO EARLY PAYMENT DISCOUNT  CHANGE (LH.RA) EFFECTIVE MARCH 11, 2019 | 6/21/2021 | 106000 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |
| 2. 2723  COBRA OTH CW2365901 AMEND2 TO SOW 2018-1 MODIFY PRICING DUE TO CHANGED EARLY PAYMENT DISCOUNT AND EXTEND TERM (LH.RA) EFFECTIVE MARCH 11, 2019 | 6/21/2021 | 105999 | ☐ | COBRA LEGAL SOLUTIONS LLC | ATTN: GENERAL COUNSEL 1717 WEST SIXTH STREET SUITE 112 AUSTIN, TX 78703 |
| 2. 2724  CONVERSION AGREEMENT AND AMENDMENT DATED NOVEMBER 18, 2016 | | 9005 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2725  FIRST AMENDMENT TO NOTE AND WARRANT PURCHASE AGREEMENT | | 9042 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2726  MANAGEMENT RIGHTS LETTER DATED MAY 19, 2016 | | 9043 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2727  NOTE AND WARRANT PURCHASE AGREEMENT DATED MARCH 15, 2016 | | 9041 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |

**NAS1478**

**Purdue Pharma L.P.**            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2728 THIRD AMENDED AND RESTATED INVESTORS' RIGHTS AGREEMENT DATED MARCH 20, 2014 | | 9006 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2729 THIRD AMENDED AND RESTATED RIGHT OF FIRST REFUSAL AND CO-SALE AGREEMENT | | 9007 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2730 THIRD AMENDED AND RESTATED VOTING AGREEMENT DATED MARCH 20, 2014 | | 9004 | ☐ | COGNITION THERAPEUTICS, INC. | ATTN: CEO AND PRESIDENT 2403 SIDNEY STREET SUITE 261 PITTSBURGH, PA 15203 |
| 2. 2731 AGREEMENT RE: COGNITIVE TESTING SERVICES DATED MARCH 20, 2003 | | 100670 | ☐ | COGNITIVE DRUG RESEARCH LIMITED | ATTN: GENERAL COUNSEL CDR HOUSE 24 PORTMAN ROAD READING RG30 1EA |
| 2. 2732 TERMINATION AGREEMENT EFFECTIVE AS OF FEBRUARY 18, 2015 | | 100683 | ☐ | COLPMAN CONSULTING LTD | NOT AVAILABLE |
| 2. 2733 ADDENDUM 1 TO COMDATA MASTERCARD CORPORATE CARD AGREEMENT DATED MAY 04, 2012 | | 100684 | ☐ | COMDATA NETWORK INC. | NOT AVAILABLE |
| 2. 2734 COMDATA MASTERCARD CORPORATE CARD AGREEMENT EXECUTED MAY 04, 2012 | | 100685 | ☐ | COMDATA NETWORK, INC. | ATTN: CORY GUERRENO, SALES 5301 MARYLAND WAY BRENTWOOD, TN 37027 |
| 2. 2735 AMENDMENT NO. 1 TO AGREEMENT DATED FEBRUARY 21, 2018 | | 100688 | ☐ | COMMONWEALTH OF VIRGINIA, DEPARTMENT OF HEALTH PROFESSIONALS | NOT AVAILABLE |
| 2. 2736 AMENDMENT NO. 1 TO COST OPTIMIZATION ANALYSIS AGREEMENT DATED FEBRUARY 24, 2004 | | 100689 | ☐ | COMMUNICATION RESEARCH CONSULTANTS, INC. | NOT AVAILABLE |

**NAS1479**

**Purdue Pharma L.P.**                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2737 CONSULTANT SERVICES AGREEMENT DATED JULY 07, 1997 | | 100691 | ☐ | COMMUNICATIONS IN MEDICINE, LLC | ATTN: GENERAL COUNSEL 333 PEARL STREET, SUITE 25B NEW YORK, NY 10038 |
| 2. 2738 CONSULTANT SERVICES AGREEMENT DATED JULY 17, 1997 | | 100690 | ☐ | COMMUNICATIONS IN MEDICINE, LLC | ATTN: MICHAEL E. MARGOLIES 333 PEARL STREET NEW YORK, NY 10038 |
| 2. 2739 CONSULTANT SERVICES AGREEMENT DATED OCTOBER 23, 1998 | | 100693 | ☐ | COMMUNICATIONS IN MEDICINE, LLC | ATTN: MICHAEL E. MARGOLIES 333 PEARL STREET SUITE 25B NEW YORK, NY 10038 |
| 2. 2740 CONSULTANT SERVICES AGREEMENT EXECUTED NOVEMBER 06, 1998 | | 100694 | ☐ | COMMUNICATIONS IN MEDICINE, LLC | ATTN: GENERAL COUNSEL 333 PEARL STREET, SUITE 25B NEW YORK, NY 10038 |
| 2. 2741 AMENDMENT #1 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 31, 2010 | | 100698 | ☐ | COMPLIANCE IMPLEMENTATION SERVICES, LLC | ATTN: JAMES J. COLLINS 1400 NORTH PROVIDENCE ROAD BUILDING II, SUITE 3005 MEDIA, PA 19063 |
| 2. 2742 MASTER CONSULTANT SERVICES AGREEMENT DATED AUGUST 01, 2011 | | 100699 | ☐ | COMPLIANCE IMPLEMENTATION SERVICES, LLC | ATTN: JAMES J. COLLINS 1400 NORTH PROVIDENCE ROAD BUILDING II, SUITE 3005 MEDIA, PA 19063 |
| 2. 2743 MASTER CONSULTING SERVICES AGREEMENT AND CHARGEBACK PROCESSING DATED JUNE 30, 2015 | | 100702 | ☐ | COMPLIANCE IMPLEMENTATION SERVICES, LLC | ATTN: GENERAL COUNSEL 3809 WEST CHESTER PIKE SUITE 100 NEWTOWN SQUARE, PA 19073 |
| 2. 2744 MASTER CONSULTING SERVICES AGREEMENT AND CHARGEBACK PROCESSING DATED JUNE 30, 2015 | | 100703 | ☐ | COMPLIANCE IMPLEMENTATION SERVICES, LLC | ATTN: GENERAL COUNSEL 3809 WEST CHESTER PIKE NEWTOWN SQUARE, PA 19073 |
| 2. 2745 STATEMENT OF WORK NO. 2 DATED DECEMBER 12, 2011 | | 100701 | ☐ | COMPLIANCE IMPLEMENTATION SERVICES, LLC | ATTN: GENERAL COUNSEL 1400 N. PROVIDENCE ROAD BUILDING II, SUITE 3005 MEDIA, PA 19063 |

**NAS1480**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2746 INDEMNIFICATION AGREEMENT EXECUTED MAY 28, 2003 | | 100705 | ☐ | COMPREHENSIVE NEUROSCIENCES, INC. | ATTN: GENERAL COUNSEL 21 BLOOMINGDALE ROAD WHITE PLAINS, NY 10605 |
| 2. 2747 AMENDMENT #1 TO ADMINISTRATIVE SERVICES ONLY AGREEMENT EFFECTIVE AS OF JANUARY 01, 2007 | | 100712 | ☐ | CONNECTICUT GENERAL LIFE INSURANCE COMPANY | ATTN: ANDREW M. DUNN CIGNA HEATHCARE, ROUTING: ER32 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2748 EMPLOYEE WELFARE BENEFIT PLAN APPOINTMENT FOR CLAIM FIDUCIARY DATED JANUARY 01, 2008 | | 100713 | ☐ | CONNECTICUT GENERAL LIFE INSURANCE COMPANY | ATTN: ANDREW M. DUNN CIGNA HEATHCARE, ROUTING: ER32 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 2749 SEARCH FIRM AGREEMENT DATED JUNE 10, 2010 | | 100717 | ☐ | CONSELIUM PARTNERS L.P. | ATTN: GENERAL COUNSEL 14850 MONTFORT DRIVE, SUITE 106 DALLAS, TX 75254 |
| 2. 2750 AMENDMENT NO. 2 MASTER CONSULTANT SERVICES AGREEMENT DATED OCTOBER 17, 2016 | | 100718 | ☐ | CONSOLIDATED RESEARCH  INC. | ATTN: GENERAL COUNSEL 10490 HOLMAN AVENUE LOS ANGELES, CA 90024 |
| 2. 2751 FIRST AMENDMENT TO LETTER OF AGREEMENT DATED OCTOBER 12, 2017 | | 100721 | ☐ | CONSOLIDATED RESEARCH, INC. | ATTN: GENERAL COUNSEL 10490 HOLMAN AVENUE LOS ANGELES, CA 90024 |
| 2. 2752 LETTER OF RETENTION DATED MAY 08, 2014 | | 100722 | ☐ | CONSTANTINE CANNON | ATTN: GENERAL COUNSEL 1301 K STREET NW WASHINGTON, DC 20005 |
| 2. 2753 SUBLEASE AGREEMENT EFFECTIVE AS OF JANUARY 01, 2012 | | 100724 | ☐ | CONSTANTINE CANNON LLP | ATTN: S. MICHAEL KAYAN, ESQ. ONE FRANKLIN SQUARE 1301 K STREET, NW, SUITE 1050 EAST TOWER WASHINGTON, DC 20005 |
| 2. 2754 LETTER: CONSENT EXECUTED APRIL 02, 2014 | | 100727 | ☐ | CONTRACT LOGIX LLC | NOT AVAILABLE |

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2755  CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF MAY 24, 2018 | | 100729 | ☐ | CONTROL RISKS GROUP, LLC | NOT AVAILABLE |
| 2. 2756  AMENDMENT #2: TO CONSULTANT SERVICES AGREEMENT DATED OCTOBER 10, 2018 | | 100733 | ☐ | CORCORAN & ASSOCIATES, INC. | NOT AVAILABLE |
| 2. 2757  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100736 | ☐ | CORESTAFF SERVICES LP | ATTN: GENERAL COUNSEL 1775 ST. JAMES PLACE HOUSTON, TX 77056 |
| 2. 2758  TRAINING AND EDUCATION FELLOWSHIP AGREEMENT EFFECTIVE AS OF APRIL 03, 2001 | | 100741 | ☐ | CORNELL UNIVERSITY FOR THE JOAN AND SANFORD I. WEILL MEDICAL COLLEGE | ATTN: GENERAL COUNSEL 1300 YORK AVENUE NEW YORK, NY 10021 |
| 2. 2759  INDEMNIFICATION AGREEMENT DATED JULY 31, 2001 | | 100743 | ☐ | CORPUS CHRISTI MEDICAL CENTER INSTITUTIONAL REVIEW BOARD | NOT AVAILABLE |
| 2. 2760  CONSENT AND WAIVER EXECUTED OCTOBER 29, 2013 | | 100747 | ☐ | COVANCE CENTRAL LABS | ATTN: GENERAL COUNSEL 8211 SCICOR DRIVE INDIANAPOLIS, IN 46214 |
| 2. 2761  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100771 | ☐ | CRAIG KUNINS, M.D. | ATTN: GENERAL COUNSEL 2840 SEABREEZE DRIVE SOUTH ST. PETERSBURG, FL 33707 |
| 2. 2762  CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 07, 2018 | | 100773 | ☐ | CRAIG SURMAN, M.D. | ATTN: GENERAL COUNSEL 21 ELIOT STREET NATICK, MA 01760 |
| 2. 2763  CRAIG SURMAN OTH CW2366512 NON-COMPENSATED AUTHORSHIP (LH.RA) EFFECTIVE APRIL 22, 2019 | 4/30/2021 | 105996 | ☐ | CRAIG SURMAN, M.D. | ATTN: GENERAL COUNSEL 21 ELIOT STREET NATICK, MA 01760 |
| 2. 2764  AMENDMENT NO. 1 INFORMATION SERVICES AGREEMENT DATED OCTOBER 24, 2018 | | 100783 | ☐ | CRITICAL MENTION, INC. | NOT AVAILABLE |

**NAS1482**

Purdue Pharma L.P.                                                                                    Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2765 LETTER AGREEMENT RE: CONSULTING SERVICES DATED SEPTEMBER 30, 2002 | | 100784 | ☐ | CROWLEY ASSOCIATES LLC | ATTN: GENERAL COUNSEL PO BOX 985 ELGIN, SC 29045 |
| 2. 2766 ASSIGNMENT AGREEMENT DATED NOVEMBER 21, 2012 BETWEEN NORTHLAKE INTERNATIONAL LLC, NORTHLAKE BIOSCIENCES LLC, CRYSTAL BIOPHARMACEUTICAL LLC AND THE COMPANY | | 106219 | ☐ | CRYSTAL BIOPHARMACEUTICAL LLC | NOT AVAILABLE |
| 2. 2767 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 10, 2016 | | 100785 | ☐ | CRYSTAL HENDERSON, PHARMD, BCPP | ATTN: GENERAL COUNSEL 704 ROCKINGHAM DRIVE IRVING, TX 75063 |
| 2. 2768 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 10, 2018 | | 100786 | ☐ | CRYSTAL RIGGS, PHARM.D., FASCP | 10409 CANNON WAY AUSTIN, TX 78717 |
| 2. 2769 STATEMENT OF WORK EFFECTIVE AS OF JANUARY 01, 2017 | | 100799 | ☐ | CUMBERLAND CONSULTING GROUP, LLC | ATTN: GENERAL COUNSEL 343 THORNALL AVE SUITE 515 EDISON, NJ 08837 |
| 2. 2770 PROJECT AGREEMENT DATED OCTOBER 26, 2001 | | 100800 | ☐ | CUNNINGHAM ASSOCIATES | ATTN: GENERAL COUNSEL 180 OLD TAPPAN ROAD OLD TAPPAN, NJ 07675 |
| 2. 2771 AGREEMENT JANUARY 28, 2019 | | 106309 | ☐ | CURL, GLASSON & PATRASCIOIU, P.L.C. | ATTN: DAVID L. CURL 485 S. MAIN AVE. BLDG. 1 TUCSON, AZ 85701 |
| 2. 2772 RETURN OF GOODS LETTER AGREEMENT DATED NOVEMBER 08, 2016 | | 100804 | ☐ | CVS PHARMACY INC. | ATTN: JAMES ALLEN SYDNOR, JR. HUIE FERNAMBUCQ & STEWART THREE PROTECTIVE CENTER, 2801 HIGHWAY 280 SOUTH, STE. 200 BIRMINGHAM, AL 35223 |
| 2. 2773 ARCHITECT SERVICE AGREEMENT EFFECTIVE AS OF FEBRUARY 20, 1997 | | 100808 | ☐ | D.F. GIBSON ARCHITECTS P.C. | ATTN: GENERAL COUNSEL 40 CLINTON STREET NEWARK, NJ 07102 |

NAS1483

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2774 CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF JULY 30, 2008 | | 100816 | ☐ | DALE CARNEGIE & ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 21 MAPLE STREET NAUGATUCK, CT 06770 |
| 2. 2775 SPONSOR AUTHORIZATION INVESTIGATOR MEETING SERVICES SUBCONTRACTING INGENIX PHARMACEUTICAL SERVICES, INC. DATED MARCH 07, 2001 | | 100817 | ☐ | DALLAS FAN FARES, INC. | ATTN: GENERAL COUNSEL |
| 2. 2776 SPONSOR AUTHORIZATION INVESTIGATOR MEETING SERVICES SUBCONTRACTING INGENIX- PHARMACEUTICAL SERVICES, INC. DATED JUNE 28, 2001 | | 100819 | ☐ | DALLAS FAN FARES, INC. | ATTN: GENERAL COUNSEL |
| 2. 2777 CONSULTANT SERVICES AGREEMENT DATED MAY 01, 2017 | | 100821 | ☐ | DANIEL MORRIS DO | ATTN: GENERAL COUNSEL 11313 SOUTH HARVARD AVENUE TULSA, OK 74137 |
| 2. 2778 CONSULTING SERVICES AGREEMENT DATED JANUARY 16, 2004 | | 100823 | ☐ | DANNY D. SHEN, PH.D. | ATTN: GENERAL COUNSEL DEPARTMENT OF PHARMACY, H375X HEALTH SCIENCES CENTER, BOX 357630 SEATTLE, WA 98195-7630 |
| 2. 2779 ORDER FORM UNDER MASTER CUSTOMER AGREEMENT DATED NOVEMBER 14, 2003 | | 100825 | ☐ | DATA NICHE ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110N DEERFIELD, IL 60015 |
| 2. 2780 ENGAGEMENT AGREEMENT DATED JANUARY 04, 2016 | | 100827 | ☐ | DATA PRIVACY LEGAL (DPLEGAL) | NOT AVAILABLE |
| 2. 2781 SEARCH FIRM AGREEMENT DATED NOVEMBER 19, 2012 | | 100828 | ☐ | DATA PROCESSING CONSULTANTS, INC. | ATTN: GENERAL COUNSEL 1116 WOODBERN WAY, SUITE 101 TALLAHASSEE, FL 32304 |

**NAS1484**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2782 CONSULTING SERVICES AGREEMENT DATED JANUARY 02, 2018 | | 100835 | ☐ | DATAPOSITIVE, LLC DBA REVOLUTION DIGITAL | ATTN: GENERAL COUNSEL 20 HEADQUARTERS PLAZA 7TH FLOOR MORRISTOWN, NJ 07960 |
| 2. 2783 CONSULTANT SERVICES AGREEMENT DATED JULY 31, 2000 | | 100840 | ☐ | DAVID DOWNING, MD | ATTN: GENERAL COUNSEL 106 IRVING STREET, N.W. SUITE 309 WASHINGTON, DC 20010 |
| 2. 2784 CONSULTANT SERVICES AGREEMENT DATED APRIL 19, 2019 | | 100841 | ☐ | DAVID J. COX | ATTN: GENERAL COUNSEL 593 PIPING PLOVER LANE JOHNS ISLAND, SC 29455 |
| 2. 2785 MASTER CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2016 | | 100843 | ☐ | DAVID NEUBAUER, MD | ATTN: GENERAL COUNSEL 11 ENGLISH SADDLE COURT PARKTON, MD 21120 |
| 2. 2786 MASTER CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 01, 2016 | | 100844 | ☐ | DAVID R. GASTFRIEND, MD | ATTN: GENERAL COUNSEL 30 ORIENT AVENUE NEWTON, MA 02459 |
| 2. 2787 AGREEMENT DATED JANUARY 11, 2019 | | 106302 | ☐ | DAVIS & GILBERT LLP | ATTN: DAVIS S. GREENBERG 1740 BROADWAY NEW YORK, NY 10019 |
| 2. 2788 AGREEMENT DATED MAY 16, 2019 | | 106301 | ☐ | DAVIS & GILBERT LLP | ATTN: DAVIS S. GREENBERG 1740 BROADWAY NEW YORK, NY 10019 |
| 2. 2789 CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 23, 2017 | | 100846 | ☐ | DCH ADVISORS,  LLC. | ATTN: GENERAL COUNSEL 11 KNOCKERBOCKER  DRIVE BELLE MEAD, NJ 08502 |
| 2. 2790 CONSULTANT SERVICES AGREEMENT DATED APRIL 03, 2017 | | 100847 | ☐ | DEAN J MARIANO MD | 17 HICKORY LANE WEST HARTFORD, CT 06107 |
| 2. 2791 MASTER CONSULTING AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100848 | ☐ | DEB KILEY DNP, FNP, FAANP | ATTN: GENERAL COUNSEL 3001 MADISON WAY ANCHORAGE, AK 99508 |

**NAS1485**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2792 MASTER CONSULTING AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100849 | ☐ | DEBBIE GUNTER, RN, CMSN,MN,FNP-BC,ACPN | ATTN: GENERAL COUNSEL 9110 PRESWICK CLUB DRIVE DULUTH, GA 30097 |
| 2. 2793 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 23, 2016 | | 100850 | ☐ | DEBORAH HASIN, PHD | ATTN: GENERAL COUNSEL 360 EAST 88TH STREET, APT. 19C NEW YORK, NY 10128 |
| 2. 2794 SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 100851 | ☐ | DECHERT LLP | ATTN: GENERAL COUNSEL 3 BRYANT PARK 1095 AVENUE OF THE AMERICAS NEW YORK, NY 10036-6797 |
| 2. 2795 AGREEMENT FOR SUBSCRIPTION SERVICES EXECUTED AUGUST 21, 2006 | | 100852 | ☐ | DECISION RESOURCES, INC. | ATTN: GENERAL COUNSEL 260 CHARLES STREET WALTHAM, MA 02453 |
| 2. 2796 ENGAGEMENT AGREEMENT EFFECTIVE AS OF MARCH 20, 2002 | | 100853 | ☐ | DECISION STRATEGIES | ATTN: GENERAL COUNSEL 505 PARK AVENUE NEW YORK, NY 10022 |
| 2. 2797 CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 19, 2018 | | 100854 | ☐ | DEERFIELD AGENCY, INC. | ATTN: GENERAL COUNSEL 950 WEST VALLEY ROAD SUITE 3000 WAYNE, PA 19087 |
| 2. 2798 CHRISTOPHER DELAFOREST CONSULTING OTH AMEND 2 EXTEND CSA CW2367143 (LH.RA) EFFECTIVE JUNE 01, 2019 | 6/2/2020 | 106008 | ☐ | DELAFOREST CONSULTING LLC | NOT AVAILABLE |
| 2. 2799 AMENDMENT TO WARRANTY PARTS DIRECT PROGRAM AGREEMENT EXECUTED MAY 09, 2007 | | 100855 | ☐ | DELL MARKETING L.P. | NOT AVAILABLE |
| 2. 2800 STATEMENT OF WORK EFFECTIVE AS OF OCTOBER 22, 2018 | | 100859 | ☐ | DELOITTE CONSULTING LLP | ONE WORLD FINANCIAL CENTER NEW YORK, NY 10281 |
| 2. 2801 SERVICES AGREEMENT DATED NOVEMBER 11, 2014 | | 100862 | ☐ | DELOITTE CONSULTING, LLP | ATTN: CAMERON C. MCCLEARN 140 BROADWAY NEW YORK, NY 10005 |

**NAS1486**

**Purdue Pharma L.P.**  |  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2802 PROJECT AGREEMENT DATED JUNE 14, 2002 | | 100863 | ☐ | DELTA MARKETING DYNAMICS | ATTN: GENERAL COUNSEL 5760 COMMONS PARK DRIVE EAST SYRACUSE, NY 13057 |
| 2. 2803 DENVER HEALTH AND HOSPITAL AUTHORITY OTH CW2367901 AMD 1 TO SOW 2019-1 DART-OXYCONTIN ADVISORY COMMITTEE CONSULTING (LH.RA) EFFECTIVE AUGUST 06, 2019 | 12/31/2020 | 105972 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: GENERAL COUNSEL 660 BANNOCK STREET MC 1919 DENVER, CO 80204 |
| 2. 2804 LETTER OF AGREEMENT (AUTHORSHIP) DATED JULY 02, 2018 | | 100881 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY | ATTN: RICHARD C. DART, M.D., PH.D. 777 BANNOCK STREET MAIL CODE 0180 DENVER, CO 80204-4508 |
| 2. 2805 DRUG ABUSE PREVENTION AGREEMENT EFFECTIVE AS OF MAY 12, 2009 | | 100885 | ☐ | DENVER HEALTH AND HOSPITAL AUTHORITY C/O RMPDC | ATTN: RICHARD DART, M.D., PH.D. 777 BANNOCK STREET, MC 0180 DENVER, CO 80204 |
| 2. 2806 LETTER AGREEMENT EFFECTIVE AS OF DECEMBER 03, 2018 | | 100887 | ☐ | DENVER HEALTH AND HOSPITALITY AUTHORITY | ATTN: RICHARD C. DART, M.D., PH.D ATTN: GENERAL COUNSEL 777 BANNOCK STREET, MAIL CODE 0180 DENVER, CO 80204-4508 |
| 2. 2807 PHARMACEUTICAL PRICING AGREEMENT ADDENDUM DATED JANUARY 18, 2017 | | 100889 | ☐ | DEPARTMENT OF HEALTH AND HUMAN SERVICES | ATTN: THE SECRETARY OF HEALTH AND HUMAN SERVICES 56000 FISHERS LANE ROCKVILLE, MA 20857 |
| 2. 2808 PHARMACEUTICAL PRICING AGREEMENT ADDENDUM DATED JANUARY 18, 2017 | | 100890 | ☐ | DEPARTMENT OF HEALTH AND HUMAN SERVICES | ATTN: THE SECRETARY OF HEALTH AND HUMAN SERVICES 56000 FISHERS LANE ROCKVILLE, MA 20857 |
| 2. 2809 PHARMACEUTICAL PRICING AGREEMENT ADDENDUM EXECUTED JANUARY 18, 2017 | | 100892 | ☐ | DEPARTMENT OF HEALTH AND HUMAN SERVICES | ATTN: THE SECRETARY OF HEALTH AND HUMAN SERVICES 5600 FISHERS LANE ROOM 10C-031 ROCKVILLE, MD 20857 |

**NAS1487**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2810 AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT EFFECTIVE AS OF JANUARY 01, 2019 | | 100896 | ☐ | DEPARTMENT OF VETERAN AFFAIRS | ATTN: GENERAL COUNSEL OPAL NATIONAL ACQUISITION CENTER 1ST AVENUE, ONE BLOCK NORTH OF CERMAK, BUILDING 37 HINES, IL 60141 |
| 2. 2811 BILATERAL MODIFICATION OF CONTRACT PRICING DATED MAY 01, 2012 | | 100895 | ☐ | DEPARTMENT OF VETERAN AFFAIRS | ATTN: GENERAL COUNSEL OPAL NATIONAL ACQUISITION CENTER 1ST AVENUE, ONE BLOCK NORTH OF CERMAK, BUILDING 37 HINES, IL 60141 |
| 2. 2812 INTERIM CONTRACT AGREEMENT EFFECTIVE AS OF JANUARY 01, 1996 | | 100894 | ☐ | DEPARTMENT OF VETERAN AFFAIRS | ATTN: GENERAL COUNSEL OPAL NATIONAL ACQUISITION CENTER 1ST AVENUE, ONE BLOCK NORTH OF CERMAK, BUILDING 37 HINES, IL 60141 |
| 2. 2813 TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 100898 | ☐ | DEPOMED INC | ATTN: GENERAL COUNSEL 7999 GATEWAY BLVD, SUITE 300, NEWARK, CA 94560 |
| 2. 2814 CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | DEPOMED, INC | ATTN: GENERAL COUNSEL 7999 GATEWAY BLVD, SUITE 300, NEWARK, CA 94560 |
| 2. 2815 TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | DEPOMED, INC | ATTN: GENERAL COUNSEL 7999 GATEWAY BLVD, SUITE 300, NEWARK, CA 94560 |
| 2. 2816 EDUCATIONAL SERVICES AGREEMENT EFFECTIVE AS OF JUNE 08, 2000 | | 100899 | ☐ | DESTINY CORPORATION | ATTN: GENERAL COUNSEL 100 GREAT MEADOW ROAD SUITE 601 WETHERFIELD, CT 06109-2379 |

NAS1488

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 495 of 1000

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2817 | LETTER AGREEMENT RE: EDUCATIONAL BENEFITS EFFECTIVE AS OF APRIL 26, 2012 | | 100900 | ☐ | DEVRY UNIVERSITY INC | ATTN: NICK MOTTLOW, SR MANAGER, FIELD OPERATIONS HIGHLAND LANDMARK V 3005 HIGHLAND PARKWAY - SUITE 100 DOWNERS GROVE, IL 60515-5799 |
| 2. 2818 | CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 28, 2018 | | 100902 | ☐ | DEZENHALL RESOURCES, LTD | ATTN: GENERAL COUNSEL 2121 K STREET, N.W. SUITE 920 WASHINGTON, DC 20037 |
| 2. 2819 | CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2018 | | 100905 | ☐ | DICKINSON & AVELLA PLLC | ATTN: GENERAL COUNSEL 111 WASHINTON AVENUE SUITE 606 ALBANY, NY 12210 |
| 2. 2820 | LEGAL RETAINER AGREEMENT DATED NOVEMBER 17, 2010 | | 100906 | ☐ | DICKSTEIN SHAPIRO LLP | 1633 BROADWAY 1633 BROADWAY NEW YORK, NY 10019-6708 |
| 2. 2821 | STATEMENT OF WORK EFFECTIVE AS OF MARCH 24, 2009 | | 100908 | ☐ | DIMENSION DATA | ATTN: GENERAL COUNSEL 550 COCHITUATE ROAD FRAMINGHAM, MA 01701 |
| 2. 2822 | CONSULTING SERVICES AGREEMENT DATED SEPTEMBER 05, 2001 | | 100914 | ☐ | DINSE, KNAPP & MCANDREW, P.C. | ATTN: SPENCER R. KNAPP 209 BATTERY STREET BURLINGTON, VT 05401-0988 |
| 2. 2823 | AMENDMENT NO. 2 TO STATEMENT OF WORK EFFECTIVE AS OF JUNE 25, 2018 | | 100915 | ☐ | DIRAY MEDIA, INC. | NOT AVAILABLE |
| 2. 2824 | QUOTE WITH GENERAL TERMS AND CONDITIONS OF SALE DATED JANUARY 15, 2019 | | 100919 | ☐ | DISTEK, INC. | ATTN: GENERAL COUNSEL 121 NORTH CENTER DRIVE NORTH BRUNSWICK, NJ 08902 |
| 2. 2825 | PURDUE PHARMA L.P. AGREEMENT EXECUTED OCTOBER 8, 2018 | | 106303 | ☐ | DLA PIPER LLP | ATTN: EDWARD SCHEIDEMAN |

**NAS1489**

**Purdue Pharma L.P.**                                                       **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2826 STATEMENT OF WORK NO. 2 DATED NOVEMBER 09, 2016 | | 100934 | ☐ | DOTTIKON EXCLUSIVE SYNTHESIS AG | ATTN: GENERAL COUNSEL HEMBRUNNSTRASSE 17 5605 DOTTIKON |
| 2. 2827 STATEMENT OF WORK NO. 3 DATED MARCH 23, 2018 | | 100935 | ☐ | DOTTIKON EXCLUSIVE SYNTHESIS AG (DOTTIKON) | ATTN: GENERAL COUNSEL HEMBRUNNSTRASSE 17 5605 DOTTIKON |
| 2. 2828 STATEMENT OF WORK NO. 4 DATED MAY 09, 2018 | | 100936 | ☐ | DOTTIKON EXCLUSIVE SYNTHESIS AG (DOTTIKON) | ATTN: GENERAL COUNSEL HEMBRUNNSTRASSE 17 5605 DOTTIKON |
| 2. 2829 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 15, 2016 | | 100937 | ☐ | DOUGLAS A. DROSSMAN, M.D. | ATTN: GENERAL COUNSEL 901 KINGS MILL ROAD CHAPEL HILL, NC 27517 |
| 2. 2830 CONTRACT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 14, 2017 | | 100938 | ☐ | DOUGLAS KORNBRUST PHD | ATTN: GENERAL COUNSEL 7245 LINGFIELD DRIVE RENO, NV 89502 |
| 2. 2831 INDEMNIFICATION AGREEMENT EXECUTED NOVEMBER 07, 2000 | | 100939 | ☐ | DOUGLAS OWENS MD | NOT AVAILABLE |
| 2. 2832 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 100940 | ☐ | DOUGLAS W. WISOR, MD | ATTN: GENERAL COUNSEL 11905 LERADE COURT GLEN ALLEN, VA 23059 |
| 2. 2833 CONSULTANT SERVICES AGREEMENT DATED JUNE 01, 2000 | | 100944 | ☐ | DR. CARL L. NELSON | ATTN: GENERAL COUNSEL 14 RIVER OAKS CIRCLE LITTLE ROCK, AR 72207 |
| 2. 2834 AMENDMENT #4 TO MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 31, 2017 | | 100949 | ☐ | DR/DECISION RESOURCES, LLC | PO BOX 83122 WOBURN, MA 01813-3122 |
| 2. 2835 CONVERSION AGREEMENT AND AMENDMENT DATED NOVEMBER 18, 2016 | | 9005 | ☐ | DUANE MORRIS LLP | ATTN: KATHLEEN M. SHAY 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103-4196 |

**NAS1490**

Purdue Pharma L.P.

Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2836 CLINICAL STUDY AND RESEARCH AGREEMENT EXECUTED JULY 11, 2000 | | 100960 | ☐ | DUKE UNIVERSITY | ATTN: GENERAL COUNSEL DUKE UNIVERSITY MEDICAL CENTER 107 SEELEY G MUDD BUILDING-BOX 3001 DURHAM, NC 27710 |
| 2. 2837 DUKE CLINICAL RESEARCH OTH CW2365640 PMR AMD1 2923-2- A NATIONALLY REPRESENTATIVE DRUG UTILIZATION STUDY OF OXYCONTIN IN CHILDREN AGED 17 YEARS AND YOUNGER (LH.RA) EFFECTIVE FEBRUARY 22, 2019 | 2/28/2021 | 105930 | ☐ | DUKE UNIVERSITY | ATTN: GENERAL COUNSEL DUKE UNIVERSITY MEDICAL CENTER 107 SEELEY G MUDD BUILDING-BOX 3001 DURHAM, NC 27710 |
| 2. 2838 DUKE OTH CW2366631 PMR 2923-2 AMD 2 A NATIONALLY REPRESENTATIVE DRUG UTILIZATION STUDY OF OXYCONTIN IN CHILDREN AGED 17 YEARS AND YOUNGER (LH.SD) EFFECTIVE MAY 31, 2019 | 2/28/2021 | 105982 | ☐ | DUKE UNIVERSITY | ATTN: GENERAL COUNSEL DUKE UNIVERSITY MEDICAL CENTER 107 SEELEY G MUDD BUILDING-BOX 3001 DURHAM, NC 27710 |
| 2. 2839 AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT EFFECTIVE AS OF OCTOBER 09, 2017 | | 100965 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2840 AMENDMENT TO THE PURCHASING AGREEMENT EFFECTIVE AS OF MAY 15, 2017 | | 100964 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2841 AMENDMENT TO THE PURCHASING AGREEMENT EXECUTED JANUARY 26, 2017 | | 100966 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2842 AMENDMENT TO THE PURCHASING AGREEMENT EXECUTED OCTOBER 30, 2018 | | 100967 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2843 GENERAL TERMS AND CONDITIONS OF SALE EFFECTIVE AS OF MARCH 03, 2015 | | 100961 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |

NAS1491

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2844 LETTER AMENDMENT RE: PRICE INCREASE DATED JANUARY 29, 2016 | | 100963 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2845 LETTER PURCHASING AGREEMENT EFFECTIVE AS OF MAY 01, 2015 | | 100962 | ☐ | DUKE UNIVERSITY HEALTH SYSTEM | ATTN: GENERAL COUNSEL 310 TRENT DRIVE, SUITE 154 DURHAM, NC 27710 |
| 2. 2846 MATERIALS AND TECHNOLOGY AGREEMENT EFFECTIVE AS OF APRIL 18, 2008 | | 100968 | ☐ | DURECT CORPORATION | NOT AVAILABLE |
| 2. 2847 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 100970 | ☐ | EAGLE RESEARCH, INC. | ATTN: GENERAL COUNSEL 373D ROUTE 46 WEST, 2ND FLOOR FAIRFIELD, NJ 07004 |
| 2. 2848 SEARCH FIRM AGREEMENT DATED MARCH 08, 2012 | | 100974 | ☐ | EDGE CONSULTING CONNECT INC. | ATTN: GENERAL COUNSEL 1520 ALTON ROAD, SUITE348 MIAMI BEACH, FL 33139 |
| 2. 2849 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 10, 2016 | | 100977 | ☐ | EDMUND PEZALLA, MD | ATTN: GENERAL COUNSEL 580 WOLCOTT HILL ROAD WHETHERSFIELD, CT 06109 |
| 2. 2850 CONSULTANT SERVICES AGREEMENT DATED AUGUST 17, 1999 | | 100979 | ☐ | EDP CONTRACT SERVICES | ATTN: GENERAL COUNSEL 727 POST ROAD EAST WESTPORT, CT 06880 |
| 2. 2851 STATEMENT OF WORK DATED AUGUST 17, 1999 | | 100978 | ☐ | EDP CONTRACT SERVICES | ATTN: GENERAL COUNSEL 727 POST ROAD EAST WESTPORT, CT 06880 |
| 2. 2852 STATEMENT OF WORK DATED MAY 03, 2000 | | 100980 | ☐ | EDP CONTRACT SERVICES | ATTN: GENERAL COUNSEL 727 POST ROAD EAST WESTPORT, CT 06880 |
| 2. 2853 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 12, 2017 | | 100981 | ☐ | EDWARD MICHNA, MD | NOT AVAILABLE |

**NAS1492**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2854 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 100982 | ☐ | EDWARD V. NUNES, JR, MD | ATTN: GENERAL COUNSEL 411 WEST END AVENUE APT 15B NEW YORK, NY 10024 |
| 2. 2855 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 100983 | ☐ | EDWARD V. NUNES, JR. MD | ATTN: GENERAL COUNSEL 411 WEST END AVENUE APT 15B NEW YORK, NY 10024 |
| 2. 2856 AMENDED AND RESTATED NOTE MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 12, 2017 | | 100984 | ☐ | EDWARD, MICHNA, MD | ATTN: GENERAL COUNSEL 62 ALBA ROAD WELLESLEY, MA 02481 |
| 2. 2857 LEGAL ENGAGEMENT LETTER DATED FEBRUARY 07, 2014 | | 100985 | ☐ | EDWARDS WILDMAN PALMER, LLP | ATTN: GENERAL COUNSEL 111 HUNTINGTON AVENUE BOSTON, MA 02199 |
| 2. 2858 CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 28, 2016 | | 100987 | ☐ | EFRAT AHARONOVICH, PHD | ATTN: GENERAL COUNSEL 360 EAST 88TH STREET APARTMENT 19C NEW YORK, NY 10128 |
| 2. 2859 STATEMENT OF WORK UNDER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 29, 2016 | | 100986 | ☐ | EFRAT AHARONOVICH, PHD | ATTN: GENERAL COUNSEL 360 EAST 88TH STREET APARTMENT 19C NEW YORK, NY 10128 |
| 2. 2860 MASTER PURCHASE AGREEMENT EXECUTED MARCH 13, 2007 | | 100988 | ☐ | EGENERA, INC. | ATTN: GENERAL COUNSEL 165 FOREST STREET MARLBORO, MA 01752 |
| 2. 2861 AMENDMENT NO. 1 TO COLLABORATION AGREEMENT ENTERED INTO AUGUST 18, 2016 | | 100994 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2862 AMENDMENT NO. 2 TO COLLABORATION AGREEMENT ENTERED INTO AUGUST 19, 2016 | | 100995 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |

**NAS1493**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2863 AMENDMENT NO. 3 TO COLLABORATION AGREEMENT ENTERED INTO MAY 24, 2018 | | 100996 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2864 COLLABORATION AGREEMENT DATED AUGUST 28, 2015 | | 100989 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2865 COLLABORATION AGREEMENT DATED AUGUST 28, 2015 | | 100991 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2866 COLLABORATION AGREEMENT DATED AUGUST 28, 2015 | | 100992 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2867 EISAI INC. - CONFIDENTIAL BUYOUT AGREEMENT 30APR19 (PS.RA) EFFECTIVE APRIL 30, 2019 | 12/31/2049 | 106107 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2868 TIMELINE OF TERMS AND OBLIGATIONS UNDER COLLABORATION AGREEMENT DATED AUGUST 28, 2015 | | 100993 | ☐ | EISAI INC. | ATTN: PRESIDENT; GENERAL COUNSEL 100 TICE BOULEVARD WOODCLIFF LAKE, NJ 07677 |
| 2. 2869 COLLABORATION AGREEMENT BETWEEN EISAI, INC. AND PURDUE PHARMA L.P., DATED AUGUST 28, 2015, AS AMENDED BY AMENDMENTS NOS. 1 – 3 | | 106234 | ☐ | EISAI, INC. | ATTN: PRESIDENT; GENERAL COUNSEL |
| 2. 2870 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 100999 | ☐ | ELIAS H. SARKIS, M.D. | 611-C NW 60TH STREET GAINESVILLE, FL 32607 |

**NAS1494**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2871 OPTION AGREEMENT DATED MAY 07, 2004 | | 101000 | ☐ | ELITE LABORATORIES, INC. | ATTN: BERNARDBER, CEO ATTN: GENERAL COUNSEL 165 LUDLOW AVENUE NORTHVALE, NJ 07647 |
| 2. 2872 AMENDMENT #2 TO CONSULTANT SERVICES AGREEMENT DATED AUGUST 01, 2017 | | 101002 | ☐ | ELLEN BATTISTA, DNS, ANP, PNP | NOT AVAILABLE |
| 2. 2873 CUSTOMER TESTING PROGRAM MASTER PRODUCT TEST AGREEMENT EXECUTED JUNE 04, 2015 | | 101016 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 176 SOUTH STREET HOPKINTON, MA 01748 |
| 2. 2874 LETTER AGREEMENT RE: HARDWARE SALE EFFECTIVE AS OF OCTOBER 01, 2003 | | 101010 | ☐ | EMC CORPORATION | ATTN: GENERAL COUNSEL 383 MAIN AVE, 7TH FLOOR NORWALK, CT 06851 |
| 2. 2875 TERMS & CONDITIONS FOR CONTINUOUS COVERAGE PRODUCT MAINTENANCE  DATED DECEMBER 15, 2008 | | 101011 | ☐ | EMC CORPORATION | 5 TECHNOLOGY DRIVE MILFORD, MA 01757 |
| 2. 2876 RETENTION LETTER AGREEMENT DATED OCTOBER 19, 2018 | | 9012 | ☐ | EMILY MEYERING | NOT AVAILABLE |
| 2. 2877 CONSULTING SERVICES AGREEMENT DATED APRIL 04, 2017 | | 101022 | ☐ | EMMA GUTTMAN, M.D. PH.D. | ATTN: GENERAL COUNSEL 430 EAST 63 STREET NEW YORK, NY 10065 |
| 2. 2878 TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 101027 | ☐ | ENDO PHARMACEUTICALS INC | ATTN: CHIEF LEGAL OFFICER 100 ENDO BOULEVARD CHADDS FORD, PA 19317 |
| 2. 2879 AGREEMENT RE: KAO PATENTS EFFECTIVE AS OF OCTOBER 25, 2013 | | 101031 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 1400 ATWATER DRIVE MALVERN, PA 09355 |
| 2. 2880 CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 1400 ATWATER DRIVE MALVERN, PA 19355 |

**NAS1495**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2881　PROTOCOL AGREEMENT EFFECTIVE AS OF OCTOBER 25, 2013 | | 101032 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: CHIEF LEGAL OFFICER 1400 ATWATER DRIVE MALVERN, PA 19355 |
| 2. 2882　TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | ENDO PHARMACEUTICALS INC. | ATTN: GENERAL COUNSEL 1400 ATWATER DRIVE MALVERN, PA 19355 |
| 2. 2883　MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 30, 2016 | | 101033 | ☐ | ENGINOLOGI, INC. | ATTN: GENERAL COUNSEL 136 RIDGE AVENUE NEWTOWN, MA 02459 |
| 2. 2884　MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 13, 2016 | | 101034 | ☐ | ENLIGHTMENT BIOCONSULT | ATTN: GENERAL COUNSEL 580 WOLCOTT HILL ROAD WETHERSFIELD, CT 06109 |
| 2. 2885　PRODUCT EVALUATION AGREEMENT DATED OCTOBER 21, 2002 | | 101035 | ☐ | ENTERASYS NETWORKS SALES & SERVICE, INC. | ATTN: GENERAL COUNSEL 35 INDUSTRIAL WAY ROCHESTER, NH 03867 |
| 2. 2886　MASTER RENTAL AGREEMENT EFFECTIVE AS OF SEPTEMBER 08, 2004 | | 101036 | ☐ | ENTERPRISE RENT-A-CAR | NOT AVAILABLE |
| 2. 2887　CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MARCH 06, 2018 | | 101039 | ☐ | ENVIRONMENTAL RESOURCE CENTER | ATTN: GENERAL COUNSEL 101 CENTER POINTE DRIVE CARY, NC 27513-5702 |
| 2. 2888　RETAINER AGREEMENT DATED JUNE 03, 2004 | | 101043 | ☐ | EPSTEIN BECKER & GREEN, P.C. | ATTN: GENERAL COUNSEL 250 PARK AVENUE NEW YORK, NY 10177-1211 |
| 2. 2889　INDEMNIFICATION AGREEMENT DATED JUNE 06, 2006 | | 101066 | ☐ | ERESEARCHTECHONLOGY INC. | ATTN: GENERAL COUNSEL 30 SOUTH 17TH STREET PHILADELPHIA, PA 19103 |
| 2. 2890　CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 13, 2018 | | 101067 | ☐ | ERICA R, CLARK, PHARM.D. | ATTN: GENERAL COUNSEL 3872 WOODSTREAM DRIVE, SW GRAND RAPIDS, MI 49534 |

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2891 AUDIT SERVICES AGREEMENT DATED NOVEMBER 22, 2016 | | 101068 | ☐ | ERNST & YOUNG LLP | ATTN: GENERAL COUNSEL 300 FIRST STAMFORD PLACE STAMFORD, CT 06902 |
| 2. 2892 LETTER: AUDIT AGREEMENT DATED NOVEMBER 07, 2018 | | 101069 | ☐ | ERNST & YOUNG LLP | ATTN: GENERAL COUNSEL 300 FIRST STAMFORD PLACE STAMFORD, CT 06902-6765 |
| 2. 2893 SEARCH FIRM AGREEMENT DATED DECEMBER 19, 2008 | | 101072 | ☐ | ESP INCORPORATED D/B/A CHRISTOPHER & LONG | ATTN: GENERAL COUNSEL 600 BROADWAY, SUITE 690 KANSAS CITY, MO 64105 |
| 2. 2894 AGREEMENT RE: PROVIDING CELL RECEPTOR EFFECTIVE AS OF AUGUST 23, 2002 | | 101084 | ☐ | EUROSCREEN S.A. CAMPUS ERASME | ATTN: GENERAL COUNSEL 802 ROUTE DE LENNIK BRUSSELS B-1070 BELGIUM |
| 2. 2895 AGREEMENT RE: PROVIDING CELL RECEPTOR EFFECTIVE AS OF AUGUST 23, 2002 | | 101085 | ☐ | EUROSCREEN S.A. CAMPUS ERASME | ATTN: GENERAL COUNSEL 802 ROUTE DE LENNIK BRUSSELS B-1070 BELGIUM |
| 2. 2896 ADDENDUM TO CO-SPONSOR AGREEMENT DATED MAY 29, 2018 | | 101087 | ☐ | EVERFI INC | ATTN: SHIRLEY BORROMEO 3299 K STREET NW, 4TH FLOOR WASHINGTON, DC 20007 |
| 2. 2897 CO-SPONSOR AGREEMENT DATED OCTOBER 12, 2017 | | 101086 | ☐ | EVERFI INC | ATTN: SHIRLEY BORROMEO 3299 K STREET NW, 4TH FLOOR WASHINGTON, DC 20007 |
| 2. 2898 EVERFI OTH CW2367019 ADDENDUM 2 TO CO-SPONSOR AGMT FOR ADLON (LH.RA) EFFECTIVE MAY 31, 2019 | 5/31/2022 | 105971 | ☐ | EVERFI INC | ATTN: SHIRLEY BORROMEO 3299 K STREET NW, 4TH FLOOR WASHINGTON, DC 20007 |
| 2. 2899 EVERFI, INC. OTH ADDENDUM 4 TO CO-SPONSOR AGREEMENT - EXPAND PROJECTS ALL KNOWLEDGE AREAS SEARCH KNOWLEDGE CW2367837 (LH.RA) EFFECTIVE JULY 31, 2019 | 7/30/2022 | 105984 | ☐ | EVERFI INC | ATTN: SHIRLEY BORROMEO 3299 K STREET NW, 4TH FLOOR WASHINGTON, DC 20007 |

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2900 SEARCH FIRM AGREEMENT DATED MAY 15, 2013 | | 101091 | ☐ | EXCEL PARTNERS, INC | ATTN: GENERAL COUNSEL 1177 SUMMER STREET STAMFORD, CT 06905 |
| 2. 2901 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF MARCH 01, 2017 | | 101092 | ☐ | EXECPROTECT, INC. D/B/A ALPHA GROUP | ATTN: GENERAL COUNSEL 100 BROADHOLLOW ROAD SUITE 200 FARMINGDALE, NY 11735 |
| 2. 2902 SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101093 | ☐ | EXECU-SYS, LTD. | ATTN: GENERAL COUNSEL ONE PENN PLAZA, SUITE 700 NEW YORK, NY 10119 |
| 2. 2903 SEARCH FIRM AGREEMENT DATED FEBRUARY 01, 2008 | | 101094 | ☐ | EXECUTIVE RECRUITERS INC. | ATTN: GENERAL COUNSEL 11345 FALLING WATER WAY FISHERS, IN 46037 |
| 2. 2904 SEARCH FIRM AGREEMENT DATED AUGUST 28, 2006 | | 101095 | ☐ | EXECUTIVE SYSTEMS, LTD. | ATTN: GENERAL COUNSEL ONE PENN PLAZA, SUITE 700 NEW YORK, NY 10119 |
| 2. 2905 COLLABORATION AGREEMENT DATED DECEMBER 2, 2016 BETWEEN EXICURE, INC., NORTHWESTERN UNIVERSITY AND THE COMPANY | | 106220 | ☐ | EXICURE, INC. | ATTN: GENERAL COUNSEL 8045 LAMON AVE SUITE 410, SKOKIE, IL 60077 |
| 2. 2906 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MARCH 02, 2017 | | 101096 | ☐ | EXPERIENCEPOINT, INC. | ATTN: GENERAL COUNSEL 20 DUNCAN STREET, SUITE 200 TORONTO, ON M5H3G8 CANADA |
| 2. 2907 AMENDMENT NO. 1 TO THE INFLATION AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101099 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2908 AMENDMENT NO. 2 TO THE INFLATION AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101100 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |

**NAS1498**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2909  AMENDMENT NO. 3 TO THE INFLATION AGREEMENT EFFECTIVE AS OF NOVEMBER 06, 2017 | | 101101 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2910  AMENDMENT NO. 4 TO THE INFLATION AGREEMENT EFFECTIVE AS OF JULY 01, 2018 | | 101102 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2911  AMENDMENT NO. 5 TO THE INFLATION AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101103 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2912  INFLATION AGREEMENT EFFECTIVE AS OF JANUARY 01, 2016 | | 101098 | ☐ | EXPRESS SCRIPTS INC. | ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL STRATEGIES AND SOLUTIONS ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2913  AMENDMENT NO. 2 TO THE MEDICARE PART D INFLATION AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101108 | ☐ | EXPRESS SCRIPTS SENIOR CARE HOLDINGS INC. | C/O EXPRESS SCRIPTS, INC. ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2914  MEDICARE PART D INFLATION AGREEMENT EFFECTIVE AS OF JANUARY 01, 2017 | | 101106 | ☐ | EXPRESS SCRIPTS SENIOR CARE HOLDINGS INC. | C/O EXPRESS SCRIPTS, INC. ATTN: EDWARD J ADAMCIK, VP PHARMACEUTICAL ONE EXPRESS WAY ST. LOUIS, MO 63121 |
| 2. 2915  MASTER AGREEMENT EFFECTIVE AS OF MAY 01, 2006 | | 101118 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |

**NAS1499**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2916 THIRD AMENDMENT TO MASTER AGREEMENT (PATIENT ASSISTANCE PROGRAM) DATED MAY 01, 2006 | | 101119 | ☐ | EXPRESS SCRIPTS SPECIALTY DISTRIBUTION SERVICES, INC. | ATTN: VICE PRESIDENT  & GENERAL MANAGER 3168 RIVERPORT TECH CENTER DRIVE MARYLAND HEIGHTS, MO 63043 |
| 2. 2917 LETTER AGREEMENT FOR INDEMNIFICATION DATED FEBRUARY 16, 2001 | | 101126 | ☐ | F.H. FAULDING & CO. LIMITED | ATTN: GENERAL COUNSEL 650 FROM ROAD PARAMUS, NJ 07652 |
| 2. 2918 CONSULTANT SERVICES AGREEMENT DATED APRIL 28, 2017 | | 101129 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBURN VILLAGE DRIVE DURHAM, NC 27713 |
| 2. 2919 CONSULTANT SERVICES AGREEMENT DATED APRIL 28, 2017 | | 101130 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBURN VILLAGE DRIVE DURHAM, NC 27713 |
| 2. 2920 CONSULTANT SERVICES AGREEMENT DATED JULY 06, 2018 | | 101131 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBURN VILLAGE DRIVE DURHAM, NC 27713 |
| 2. 2921 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 11, 2018 | | 101132 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBURN VILLAGE DRIVE DURNHAM, NC 27713 |
| 2. 2922 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 11, 2018 | | 101133 | ☐ | FACULTY CONNECTION, LLC | ATTN: GENERAL COUNSEL 1232 AUBURN VILLAGE DRIVE DURHAM, NC 27713 |
| 2. 2923 CONSULTING SERVICE AND LICENSE AGREEMENT EFFECTIVE AS OF APRIL 15, 2001 | | 101137 | ☐ | FCG CSI, INC | ATTN: VICE PRESIDENT, DOCUMENT MANAGEMENT FIRST CONSULTING GROUP 575 E. SWEDESFORD ROAD, SUITE 200 WAYNE, PA 19087 |
| 2. 2924 AGREEMENT DATED APRIL 10, 2019 | | 106300 | ☐ | FICK & MARX LLP | ATTN: DANIEL N. MARX 24 FEDERAL STREET 4TH FLOOR BOSTON, MA 02110 |

**NAS1500**

Purdue Pharma L.P.

Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2925 AMENDMENT NO. 1 TO TRUST AGREEMENT DATED OCTOBER 31, 2003 | | 101147 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2926 AMENDMENT NO. 10 TO TRUST AGREEMENT EFFECTIVE AS OF MARCH 02, 2015 | | 101145 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2927 AMENDMENT NO. 11 TO TRUST AGREEMENT DATED JULY 01, 2015 | | 101146 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2928 AMENDMENT NO. 3 TO TRUST AGREEMENT DATED JULY 02, 2007 | | 101148 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2929 AMENDMENT NO. 4 TO TRUST AGREEMENT EFFECTIVE AS OF MARCH 24, 2011 | | 101144 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2930 AMENDMENT NO. 6 TO TRUST AGREEMENT DATED JANUARY 01, 2012 | | 101149 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2931 AMENDMENT NO. 9 TO TRUST AGREEMENT DATED OCTOBER 01, 2014 | | 101151 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2932 EIGHTH AMENDMENT TO TRUST AGREEMENT DATED JULY 01, 2013 | | 101150 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2933 SECOND AMENDMENT TO TRUST AGREEMENT DATED MARCH 15, 2005 | | 101143 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 245 SUMMER STREET BOSTON, MA 02210 |
| 2. 2934 TRUST AGREEMENT DATED JANUARY 01, 2003 | | 101152 | ☐ | FIDELITY MANAGEMENT TRUST COMPANY | ATTN: GENERAL COUNSEL 82 DEVONSHIRE STREET BOSTON, MA 02109 |

NAS1501

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 508 of 1000

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:　19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2935 AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT EFFECTIVE AS OF APRIL 02, 2018 | | 101159 | ☐ | FIRSTCHOICE COOPERATIVE MANAGEMENT SERIVCES | ATTN: MARK BOMBYK, COO/CFO 4815 TROUP HIGHWAY TYLER, TX 75703 |
| 2. 2936 AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2018 | | 101160 | ☐ | FIRSTCHOICE COOPERATIVE MANAGEMENT SERIVCES | ATTN: MARK BOMBYK, COO/CFO 4815 TROUP HIGHWAY TYLER, TX 75703 |
| 2. 2937 AMENDMENT NO. 4 TO CONSULTING AGREEMENT DATED JANUARY 11, 2011 | | 101164 | ☐ | FITNESS COACH, LLC | ATTN: GENERAL COUNSEL 242 WEST AVENUE DARIEN, CT 06820 |
| 2. 2938 CONSULTING AGREEMENT EFFECTIVE AS OF JANUARY 11, 2011 | | 101165 | ☐ | FITNESS COACH, LLC | ATTN: GENERAL COUNSEL 242 WEST AVENUE DARIEN, CT 06820 |
| 2. 2939 CONSULTING SERVICES AGREEMENT DATED SEPTEMBER 03, 1997 | | 101166 | ☐ | FOCUS RESEARCH, INC. | ATTN: GENERAL COUNSEL 162 DRIVE BERTEL COVINGTON, LA 70433 |
| 2. 2940 ATTACHMENT TO CONSULTING AGREEMENT EFFECTIVE AS OF JUNE 23, 2003 | | 101170 | ☐ | FOOD AND DRUG ADMINISTRATION | ATTN: GENERAL COUNSEL |
| 2. 2941 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF NOVEMBER 01, 2017 | | 101172 | ☐ | FORENSICPATHWAYS, INC. | ATTN: GENERAL COUNSEL P.O. BOX 57 PINE, CO 80470 |
| 2. 2942 MASTER CONSULTANT SERVICES AGREEMENT DATED JULY 06, 2016 | | 101176 | ☐ | FPM COMMUNICATIONS, LLC | ATTN: THOMAS ALFIERI 10 LAKE FARRINGTON DRIVE NORTH BRUNSWICK, NJ 08902 |
| 2. 2943 MASTER CONSULTING SERVICES AGREEMENT DATED JULY 01, 2016 | | 101177 | ☐ | FRANCINE HOH, PHD, APN, ACHPN, APPMN | ATTN: GENERAL COUNSEL 1 INDEPENDENT COURT SOMERSET, NJ 08873 |
| 2. 2944 MASTER CONSULTANT SERVICES EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 101178 | ☐ | FRANK KUNKEL, MD | ATTN: GENERAL COUNSEL 9585 ALBEMARLE DRIVE PITTSBURGH, PA 15237 |

**NAS1502**

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2945  STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 101179 | ☐ | FRANK KUNKEL, MD | ATTN: GENERAL COUNSEL 9585 ALBEMARLE DRIVE PITSBURGH, PA 15237 |
| 2. 2946  SEARCH FIRM AGREEMENT DATED MAY 19, 2009 | | 101181 | ☐ | FRANKEL STAFFING PARTNERS | ATTN: GENERAL COUNSEL 3700 NATIONAL DRIVE, SUITE 109 RALEIGH, NC 27612 |
| 2. 2947  LETTER OF AGREEMENT DATED APRIL 20, 2000 | | 101182 | ☐ | FRASER WILLIAMS PHARMA SYSTEMS LTD. | NOT AVAILABLE |
| 2. 2948  CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF MARCH 21, 2016 | | 101185 | ☐ | FREDERICK WELLS BRASON, II | ATTN: GENERAL COUNSEL 5350 NC  HIGHWAY 16 SOUTH MORAVIAN FALLS, NC 28654 |
| 2. 2949  LEGAL RETAINER AGREEMENT DATED SEPTEMBER 11, 2015 | | 101188 | ☐ | FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP | ATTN: GENERAL COUNSEL ONE NEW YORK PLAZA NEW YORK, NY 10004 |
| 2. 2950  AMENDMENT TO SERVICE AGREEMENT DATED APRIL 09, 1999 | | 101189 | ☐ | FRIENDLY ADVANCED SOFTWARE TECHNOLOGY INC. | NOT AVAILABLE |
| 2. 2951  ENGAGEMENT AGREEMENT DATED JUNE 11, 2009 | | 101193 | ☐ | FTI CONSULTING, INC. | ATTN: GENERAL COUNSEL 3 TIMES SQUARE 9TH FLOOR NEW YORK, NY 10035 |
| 2. 2952  LETTER AGREEMENT RE: CONSULTING SERVICES DATED JUNE 11, 2009 | | 101190 | ☐ | FTI CONSULTING, INC. | ATTN: GENERAL COUNSEL 3 TIMES SQUARE 9TH FLOOR NEW YORK, NY 10036 |
| 2. 2953  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 101194 | ☐ | G.I.C. ADVICE | NOT AVAILABLE |
| 2. 2954  CONSULTANT SERVICES AGREEMENT DATED DECEMBER 01, 2017 | | 101195 | ☐ | GAFFNEY, BENNETT & ASSOCIATES, INC. | ATTN: GENERAL COUNSEL ONE LIBERTY SQUARE, 2ND FLOOR NEW BRITAIN, CT 06051 |

**NAS1503**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2955 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 02, 2001 | | 101197 | ☐ | GALLOWAY RESEARCH SERVICE | ATTN: GENERAL COUNSEL 4346 NORTHWEST LOOP 410 SAN ANTONIO, TX 78229 |
| 2. 2956 STATEMENT OF WORK #4 DATED FEBRUARY 28, 2001 | | 101196 | ☐ | GALLOWAY RESEARCH SERVICE | ATTN: GENERAL COUNSEL 4751 HAMILTON WOLFE SAN ANTONIO, TX 78229 |
| 2. 2957 STATEMENT OF WORK DATED MAY 02, 2003 | | 101199 | ☐ | GALLOWAY RESEARCH SERVICE, INC. | ATTN: GENERAL COUNSEL 4751 HAMILTON WOLFE SAN ANTONIO, TX 78229 |
| 2. 2958 STATEMENT OF WORK DATED MAY 07, 2003 | | 101198 | ☐ | GALLOWAY RESEARCH SERVICE, INC. | ATTN: GENERAL COUNSEL 4751 HAMILTON WOLFE SAN ANTONIO, TX 78229 |
| 2. 2959 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF SEPTEMBER 01, 2018 | | 101201 | ☐ | GARDA WORLD CONSULTING & INVESTIGATION SERVICES | ATTN: LOUIS LAFRAMBOISE, CFE, C11, VICE PRESIDENT 1390 BARRE STREET MONTREAL, QC H3C 1N4 CANADA |
| 2. 2960 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 05, 2016 | | 101204 | ☐ | GARY ZAMMIT, PHD. | ATTN: GENERAL COUNSEL 423 WEST 55TH STREET, 4TH FLOOR NEW YORK, NY 10019 |
| 2. 2961 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 24, 2017 | | 101207 | ☐ | GCI HEALTH | ATTN: GENERAL COUNSEL 200 FIFTH AVENUE NEW YORK, NY 10010 |
| 2. 2962 STATEMENT OF WORK #2018-3 UNDER CONSULTANT SERVICES AGREEMENT DATED JUNE 29, 2018 | | 101206 | ☐ | GCI HEALTH | ATTN: GENERAL COUNSEL 200 FIFTH AVENUE NEW YORK, NY 10010 |
| 2. 2963 AMENDED AND RESTATED RESEARCH AND COLLABORATION AGREEMENT EFFECTIVE AS OF AUGUST 23, 2018 | | 101209 | ☐ | GEISINGER CLINIC | ATTN: RESEARCH CONTRACTS 100 NORTH ACADEMY AVENUE DANVILLE, PA 17822-3057 |

**NAS1504**

**Purdue Pharma L.P.**  |  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2964  GEISINGER CLINIC - OTH CW2367463 AMENDMENT 1 TO RESEARCH AND COLLABORATION AGREEMENT (LH.RA) EFFECTIVE JUNE 25, 2019 | 6/14/2021 | 106033 | ☐ | GEISINGER CLINIC | NOT AVAILABLE |
| 2. 2965  CUSTOM REPORT DEVELOPMENT AGREEMENT EXECUTED MAY 21, 2002 | | 101219 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 2966  SERVICE ORDER FORM EFFECTIVE AS OF OCTOBER 31, 2002 | | 101212 | ☐ | GELCO INFORMATION NETWORK, INC. | ATTN: GENERAL COUNSEL 10700 PRAIRIE LAKES DRIVE EDEN PRAIRIE, MN 55344 |
| 2. 2967  MATERIALS TRANSFER AGREEMENT EFFECTIVE AS OF JULY 18, 2003 | | 101227 | ☐ | GENZYME CORPORATION | ATTN: GENERAL COUNSEL ONE MOUNTAIN ROAD FRAMINGHAM, MA 01701 |
| 2. 2968  AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2018 | | 101228 | ☐ | GERIMED INC. | ATTN: SUSAN M. RHODUS, SENIOR VICE PRESIDENT, CONTRACT ADMINSTRATION 9707 SHELBYVILLE ROAD LOUISVILLE, KY 40223 |
| 2. 2969  CONSULTANT SERVICES AGREEMENT DATED APRIL 23, 2018 | | 101232 | ☐ | GHG GREYHEALTH GROUP LLC | ATTN: GENERAL COUNSEL 200 FIFTH AVENUE NEW YORK, NY 10010 |
| 2. 2970  AUTHORSHIP AGREEMENT DATED JANUARY 15, 2018 | | 101238 | ☐ | GLEN APSELOFF, M.D., F.C.P. | ATTN: GENERAL COUNSEL 1380 EDGEHILL ROAD COLUMBUS, OH 43212 |
| 2. 2971  CONSULTANCY AGREEMENT DATED OCTOBER 18, 2002 | | 101242 | ☐ | GLOBAL REGULATORY SOLUTIONS, LTD. | ATTN: GENERAL COUNSEL 98 BATCHWOOD DRIVE ST. ALBANS, HERTS AL3 5SA |
| 2. 2972  LETTER OF AGREEMENT RE: PROVISION OF TRAINING COURSE EXECUTED MAY 23, 2003 | | 101243 | ☐ | GLOBAL REGULATORY SOLUTIONS, LTD. | ATTN: GENERAL COUNSEL 98 BATCHWOOD DRIVE ST. ALBANS, HERTS AL3 55A |

NAS1505

**Purdue Pharma L.P.**                                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2973    SEARCH FIRM AGREEMENT DATED JUNE 18, 2013 | | 101244 | ☐ | GLOBAL RESOURCES LTD | ATTN: GENERAL COUNSEL 106 APPLE STREET, SUITE 114A TINTON FALLS, NJ 07724 |
| 2. 2974    AMENDMENT NO. 1 SCANNER BASED SYSTEMS EFFECTIVE AS OF JUNE 21, 2006 | | 101249 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 2975    AMENDMENT NO. 5 GLOBAL VISION SCANNER BASED SYSTEMS AGREEMENT EFFECTIVE AS OF FEBRUARY 19, 2014 | | 101252 | ☐ | GLOBAL VISION, INC. | ATTN: GENERAL COUNSEL 15795 GOUIN BOULEVARD MONTREAL, QC H9H 1C5 CANADA |
| 2. 2976    CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MARCH 29, 2017 | | 101255 | ☐ | GLOBALDATA | ATTN: GENERAL COUNSEL 441 LEXINGTON AVENUE NEW YORK, NY 10017 |
| 2. 2977    SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101256 | ☐ | GLOBALSOURCE INFORMATION TECHNOLOGY, INC | ATTN: GENERAL COUNSEL 2835 N. MAYFAIR RD, SUITE 34 MILWAUKEE, WI 53222 |
| 2. 2978    MONITORSHIP AGREEMENT DATED MAY 05, 2002 | | 101257 | ☐ | GLOVER ASSOCIATES | ATTN: GENERAL COUNSEL 2783 WELBOURNE CT. SUITE 100 OAKTON, VA 22124 |
| 2. 2979    MONITORSHIP AGREEMENT DATED MAY 05, 2002 | | 101258 | ☐ | GLOVER ASSOCIATES | ATTN: GENERAL COUNSEL 2783 WELBOURNE CT. SUITE 100 OAKTON, VA 22124 |
| 2. 2980    GOLDMAN SACHS ASSET MANAGEMENT, L.P. - SECOND AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT 4JAN19 DATED JANUARY 04, 2019 | | 101262 | ☐ | GOLDMAN SACHS ASSET MANAGEMENT, L.P. | ATTN: GENERAL COUNSEL 200 WEST STREET NEW YORK, NY 10282-2198 |

**NAS1506**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2981  GOLDMAN SACHS ASSET MANAGEMENT, L.P. - SECOND AMENDED AND RESTATED INVESTMENT MANAGEMENT AGREEMENT 4JAN19 EFFECTIVE JANUARY 04, 2019 | 12/31/2049 | 106064 | ☐ | GOLDMAN SACHS ASSET MANAGEMENT, L.P. | ATTN: GENERAL COUNSEL 200 WEST ST NEW YORK, NY 10282 |
| 2. 2982  INVESTMENT MANAGEMENT AGREEMENT DATED MARCH 27, 2017 | | 101263 | ☐ | GOLDMAN SACHS ASSET MANAGEMENT, L.P. | ATTN: LEGAL DEPARTMENT 200 WEST STREET NEW YORK, NY 10282-2198 |
| 2. 2983  INVESTMENT MANAGEMENT AGREEMENT DATED MARCH 27, 2017 | | 101264 | ☐ | GOLDMAN SACHS ASSET MANAGEMENT, L.P. | ATTN: LEGAL DEPARTMENT 200 WEST STREET NEW YORK, NY 10282-2198 |
| 2. 2984  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 26, 2017 | | 101265 | ☐ | GP STRATEGIES CORPORATION | ATTN: GENERAL COUNSEL 11000 BROKEN LAND PARKWAY SUITE 200 COLUMBIA, MD 21044-3555 |
| 2. 2985  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 17, 2017 | | 101266 | ☐ | GREEN ROOM COMMUNICATIONS, LLC | ATTN: GENERAL COUNSEL 333 W MAIN STREET SUITE #1 BOONTON, NJ 07005 |
| 2. 2986  GREGORY W. MATTINGLY, M.D OTH CW2366294 NON-COMPENSATED AUTHORSHIP (LH.RA) EFFECTIVE APRIL 08, 2019 | 4/30/2021 | 105958 | ☐ | GREGORY W. MATTINGLY | NOT AVAILABLE |
| 2. 2987  AMENDMENT NO. 1 TO PROJECT AGREEMENT DATED OCTOBER 10, 2003 | | 101273 | ☐ | GROUP PLUS, INC. | ATTN: GENERAL COUNSEL 23 HUBBARD ROAD WILTON, CT 06987 |
| 2. 2988  PROJECT AGREEMENT DATED MAY 30, 2002 | | 101270 | ☐ | GROUP PLUS, INC. | ATTN: GENERAL COUNSEL 23 HUBBARD ROAD WILTON, CT 06987 |
| 2. 2989  PROJECT AGREEMENT DATED MAY 30, 2002 | | 101272 | ☐ | GROUP PLUS, INC. | ATTN: GENERAL COUNSEL 23 HUBBARD ROAD WILTON, CT 06987 |

**NAS1507**

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2990   PROJECT AGREEMENT DATED SEPTEMBER 17, 2003 | | 101271 | ☐ | GROUP PLUS, INC. | ATTN: GENERAL COUNSEL 23 HUBBARD ROAD WILTON, CT 06987 |
| 2. 2991   AMENDMENT #1 & #3 TO COMMON INTEREST PRIVILEGE AGREEMENTS EFFECTIVE AS OF DECEMBER 06, 2012 | | 101286 | ☐ | GRUNENTHAL GMBH | ATTN: DR. SABINE KROHN, VICE PRESIDENT, HEAD OF PATENTS;DR. THIERNO MARX, SENIOR DIRECTOR PATENTS;DR. RALF STOWASSER, SENIOR DIRECTOR PATENTS |
| 2. 2992   AMENDMENT #2 TO COMMON INTEREST PRIVILEGE AGREEMENT DATED MARCH 02, 2012 | | 101285 | ☐ | GRUNENTHAL GMBH | ATTN: STEPHEN D. HOFFMAN WILK AUSLANDER LLP 1515 BROADWAY, 43RD FLOOR NEW YORK, NY 10036 |
| 2. 2993   COMMON INTEREST PRIVILEGE AGREEMENT DATED MARCH 18, 2011 | | 101297 | ☐ | GRUNENTHAL GMBH | ATTN: DR. KURT HELLFELDT, HEAD OF CORPORATE PATENTS ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2994   LETTER OF COMMON UNDERSTANDING DATED APRIL 26, 2018 | | 101301 | ☐ | GRUNENTHAL GMBH | ATTN: GENERAL COUNSEL ZIEGLERSTRASSE 6 AACHEN 52078 GEORGIA |
| 2. 2995   MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 10, 2016 | | 101315 | ☐ | H. ERIC CANNON, PHARMD, FAMCP | ATTN: GENERAL COUNSEL 2958 WAILUA WAY SALT LAKE CITY, UT 84117 |
| 2. 2996   AMENDMENT #1 TO MASTER CONSULTANT SERVICES AGREEMENT DATED AUGUST 01, 2003 | | 101322 | ☐ | H.L. YOH COMPANY LLC D/B/A YOH SCIENTIFIC | NOT AVAILABLE |
| 2. 2997   SEARCH FIRM AGREEMENT EFFECTIVE AS OF OCTOBER 04, 2007 | | 101329 | ☐ | HARBOR ASSOCIATES | ATTN: GENERAL COUNSEL 70 NEW CANAAN AVENUE NORWALK, CT 06850 |

**NAS1508**

**Purdue Pharma L.P.**                                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 2998  LETTER AGREEMENT - CDA DATED NOVEMBER 09, 2017 | | 101330 | ☐ | HARM REDUCTION THERAPEUTICS INC. | ATTN: GENERAL COUNSEL 4800 MONTGOMERY LANE SUITE 400 BETHESDA, MD 20814 |
| 2. 2999  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 101331 | ☐ | HAROLD PERL, PH.D. | ATTN: GENERAL COUNSEL PO BOX 169 ARROYO SECO, NM 87514 |
| 2. 3000  STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 101332 | ☐ | HAROLD PERL, PH.D. | ATTN: GENERAL COUNSEL PO BOX 169 ARROYO SECO, NM 87514 |
| 2. 3001  CONSULTANT SERVICES AGREEMENT DATED OCTOBER 02, 2018 | | 101333 | ☐ | HARRIS INSIGHTS & ANALYTICS, LLC. | ATTN: GENERAL COUNSEL 300 NORTH LASALLE DRIVE SUITE 5575 CHICAGO, IL 60654 |
| 2. 3002  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 04, 2017 | | 101335 | ☐ | HARRISON HAYES, LLC | ATTN: GENERAL COUNSEL 456 WASHINGTON STREET, 9D NEW YORK, NY 10013 |
| 2. 3003  FUND AGREEMENT DATED MARCH 05, 2003 | | 101336 | ☐ | HARVARD MEDICAL SCHOOL | ATTN: GENERAL COUNSEL 25 SHATTUCK STREET BOSTON, MA 02115 |
| 2. 3004  REIMBURSEMENT AGREEMENT EFFECTIVE AS OF JANUARY 11, 2011 | | 101337 | ☐ | HARVARD PILGRIM HEALTH CARE | ATTN: GENERAL COUNSEL 93 WORCHESTER STREET 3RD FLOOR WELLESLEY, MA 02481 |
| 2. 3005  FUND AGREEMENT DATED MARCH 05, 2003 | | 101346 | ☐ | HARVARD UNIVERSITY | NOT AVAILABLE |
| 2. 3006  AMENDMENT NO. 4 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 05, 2017 | | 101347 | ☐ | HAVAS HEALTH, INC | NOT AVAILABLE |

**NAS1509**

**Purdue Pharma L.P.**                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3007 DEVICE ACCESS AGREEMENT EFFECTIVE AS OF JANUARY 08, 2015 | | 101362 | ☐ | HCL AMERICA, INC. | ATTN: MANOJ KENKARE, ACCOUNT MANAGER 330 POTRERO AVENUE SUNNYVALE, CA 94085 |
| 2. 3008 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2018 | | 101365 | ☐ | HEALTH ADVANCES LLC | ATTN: GENERAL COUNSEL 9 RIVERSIDE ROAD WESTON, MA 02493 |
| 2. 3009 PHARMACEUTICAL PRICING AGREEMENT EXECUTED NOVEMBER 21, 1995 | | 101367 | ☐ | HEALTH RESOURCES AND SERVICES ADMINISTRATION | ATTN: GENERAL COUNSEL 4350 EAST WEST HIGHWAY, ROOM 10-1A1 BETHESDA, MD 20814 |
| 2. 3010 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF AUGUST 27, 2018 | | 101370 | ☐ | HEALTHCARE DISTRIBUTION ALLIANCE | ATTN: CHUCK FORSAITH, SENIOR DIRECTOR ATTN: GENERAL COUNSEL 901 NORTH GLEBE ROAD, SUITE 1000 ARLINGTON, VA 22203 |
| 2. 3011 HEALTHCORE OTH CW2366323 SOW AMD 5 IMPACT OF ABUSE DETERRENT OXYCONTIN ON INCIDENCE OF FATAL AND NONFATAL OVERDOSE (LH.RA) EFFECTIVE APRIL 09, 2019 | 12/31/2019 | 105961 | ☐ | HEALTHCORE INC | ATTN: GENERAL COUNSEL 123 JUSTISON STREET, SUITE 200 WILMINGTON, DE 19801 |
| 2. 3012 AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT EFFECTIVE AS OF NOVEMBER 15, 2018 | | 101385 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3013 AMENDMENT TO PURCHASING AGREEMENT DATED JULY 01, 2018 | | 101384 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3014 AMENDMENT TO PURCHASING AGREEMENT DATED JUNE 01, 2011 | | 101379 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |

**NAS1510**

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3015   AMENDMENT TO PURCHASING AGREEMENT EFFECTIVE AS OF JANUARY 05, 2015 | | 101382 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3016   AMENDMENT TO PURCHASING AGREEMENT EFFECTIVE AS OF JULY 01, 2013 | | 101380 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3017   AMENDMENT TO PURCHASING AGREEMENT EFFECTIVE AS OF JULY 01, 2015 | | 101383 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3018   AMENDMENT TO PURCHASING AGREEMENT EFFECTIVE AS OF OCTOBER 02, 2014 | | 101381 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3019   AMENDMENT TO PURCHASING AGREEMENT EXECUTED DECEMBER 06, 2018 | | 101388 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3020   AMENDMENT TO PURCHASING AGREEMENT EXECUTED SEPTEMBER 29, 2016 | | 101387 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3021   LETTER AMENDMENT RE: PRICING INCREASE DATED JANUARY 03, 2019 | | 101386 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3022   PURCHASING AGREEMENT  EFFECTIVE AS OF MAY 01, 2011 | | 101378 | ☐ | HEALTHTRUST PURCHASING GROUP LP | ATTN: GENERAL COUNSEL 1100 CHARLOTTE AVENUE SUITE 1100 NASHVILLE, TN 37203 |
| 2. 3023   RETENTION LETTER AGREEMENT DATED OCTOBER 19, 2018 | | 9011 | ☐ | HENRY MEYER | NOT AVAILABLE |

**NAS1511**

**Purdue Pharma L.P.**                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3024 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF JUNE 15, 2018 | | 101391 | ☐ | HETHERINGTON GROUP | ATTN: GENERAL COUNSEL 400 RINGWOOD AVENUE WANAQUE, NJ 07465 |
| 2. 3025 CUSTOMER AGREEMENT FOR PROFESSIONAL SERVICES EFFECTIVE AS OF MAY 31, 2010 | | 101392 | ☐ | HEWLETT- PACKARD COMPANY | ATTN: GENERAL COUNSEL 9633 18TH AVENUE CIRCLE NORTHWEST BRADENTON, FL 34209 |
| 2. 3026 STATEMENT OF WORK DATED JUNE 27, 2001 | | 101393 | ☐ | HEWLETT- PACKARD COMPANY | ATTN: LINDA FRANKLIN 29 BURLINGTON MALL ROAD BURLINGTON, MA 01803 |
| 2. 3027 AMENDMENT TO MASTER LOAN AGREEMENT EFFECTIVE AS OF MARCH 26, 2004 | | 101397 | ☐ | HEWLETT-PACKARD COMPANY | ATTN: GENERAL COUNSEL 9737 WASHINGTONIAN BLVD. GAITHERSBURG, MD 20878 |
| 2. 3028 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 16, 2018 | | 101401 | ☐ | HOLLY R. HENDRICKSON YEE, PHARM.D., R.PH | ATTN: GENERAL COUNSEL 1596 HOYT STREET LAKEWOOD, CO 80232 |
| 2. 3029 AMENDMENT NO. 3 TO STUDY AGREEMENT SPECIFICATION EFFECTIVE AS OF DECEMBER 09, 2004 | | 101406 | ☐ | HOLSTON MEDICAL GROUP, PC | ATTN: GENERAL COUNSEL 2325 N JOHN B DENNIS HWY, KINGSPORT, TN 37660 |
| 2. 3030 AGREEMENT RE: WRITING SERVICES DATED JULY 07, 1998 | | 101407 | ☐ | HOLTZMAN COMMUNICATIONS | ATTN: GENERAL COUNSEL 220 SULLIVAN STREET NEW YORK, NY 10012 |
| 2. 3031 PRODUCT AND SERVICE SUBSCRIPTION ORDER DATED MARCH 28, 2018 | | 101411 | ☐ | HOST ANALYTICS, INC. | ATTN: GENERAL COUNSEL 555 TWIN DOLPHIN DRIVE SUITE 400 REDWOOD CITY, CA 94065 |
| 2. 3032 AMENDMENT TO CONSULTANT SERVICES AGREEMENT DATED DECEMBER 06, 2016 | | 101412 | ☐ | HOWARD MAIBACH | ATTN: GENERAL COUNSEL 2745 LARKIN STREET SAN FRANCISCO, CA 94109 |
| 2. 3033 CONSULTING SERVICES AGREEMENT DATED APRIL 30, 2017 | | 101413 | ☐ | HOWARD S. HOCSTER, M.D. | ATTN: GENERAL COUNSEL 17 OVER ROCK LANE WESTPORT, CT 06880 |

NAS1512

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3034  SEARCH FIRM AGREEMENT DATED JUNE 06, 2017 | | 101416 | ☐ | HRA - HEALTHCARE RESEARCH & ANALYTICS, LLC | ATTN: GENERAL COUNSEL 2 CLARKE DRIVE, SUITE 100 CRANBURY, NJ 08512 |
| 2. 3035  LETTER AGREEMENT DATED OCTOBER 31, 2017 | | 101417 | ☐ | HUI CHENG, PH. D. | ATTN: GENERAL COUNSEL 1520 SOUTH 450 EAST RUSHVILLE, IN 46173 |
| 2. 3036  RETAINER LETTER DATED DECEMBER 09, 2015 | | 101419 | ☐ | HYMAN, PHELPS & MCNAMARA, P.C. | ATTN: GENERAL COUNSEL 700 THIRTEENTH STREET, N.W. SUITE  1200 WASHINGTON, DC 20005-5929 |
| 2. 3037  INTERNATIONAL PASSPORT ADVANTAGE AGREEMENT | | 101421 | ☐ | IBM | ATTN: GENERAL COUNSEL 550 KING STREET LKG1 LITTLETON, MA 01460 |
| 2. 3038  SEARCH FIRM AGREEMENT EFFECTIVE AS OF FEBRUARY 19, 2009 | | 101438 | ☐ | IMPACT PERSONNEL, INC. | ATTN: GENERAL COUNSEL 40 RICHARDS AVENUE NORWALK, CT 06854 |
| 2. 3039  CONSULTANT ENGAGEMENT LETTER DATED FEBRUARY 01, 2018 | | 101441 | ☐ | IMPERA INTELLIGENCE GROUP, LLC | ATTN: GENERAL COUNSEL 110 EAST 59TH STREET, 22ND FLOOR NEW YORK, NY 10022 |
| 2. 3040  AMENDMENT #1 TO USER-CUSTOMER AGREEMENT DATED JANUARY 01, 2013 | | 101446 | ☐ | IMS HEALTH INCORPORATED | ATTN: AMA, DIRECTOR OF DATABASE LICENSING;GENERAL COUNSEL |
| 2. 3041  THIRD PARTY ACCESS AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2002 | | 101443 | ☐ | IMS HEALTH INCORPORATED | ATTN: GENERAL COUNSEL 100 CAMPUS ROAD, TOTOWA, NJ 07512 |
| 2. 3042  TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 101451 | ☐ | INC RESEARCH LLC | ATTN: ANDREW SHAW SENIOR CORPORATE COUNSEL 3201 BEECH LEAF COURT RALEIGH, NC 27604 |

**NAS1513**

**Purdue Pharma L.P.**                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3043  TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | INC RESEARCH, LLC | ATTN: GENERAL COUNSEL 3201 BEECHLEAF COURT, SUITE 600, RALEIGH, NC 27604 |
| 2. 3044  SECURITIES PURCHASE AGREEMENT DATED NOVEMBER 19, 2008 | | 101465 | ☐ | INFINITY PHARMACEUTICALS, INC. | ATTN: GERALD E. QUIRK, ESQ., GENERAL COUNSEL 780 MEMORIAL DRIVE CAMBRIDGE, MA 02139 |
| 2. 3045  AMENDMENT #5 TO MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 09, 2018 | | 101467 | ☐ | INFLEXXION, INC. | NOT AVAILABLE |
| 2. 3046  AMENDMENT NO. 5 TO SERVICES AGREEMENT EFFECTIVE AS OF JULY 09, 2008 | | 101475 | ☐ | INNOVATIVE HEALTH STRATEGIES, INC. | NOT AVAILABLE |
| 2. 3047  AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF APRIL 02, 2018 | | 101488 | ☐ | INTALERE INC | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 3048  AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF JULY 01, 2018 | | 101489 | ☐ | INTALERE INC | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 3049  AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF OCTOBER 05, 2018 | | 101491 | ☐ | INTALERE INC | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 3050  AMENDMENT TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF SEPTEMBER 07, 2018 | | 101490 | ☐ | INTALERE INC | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |
| 2. 3051  GROUP PURCHASING AGREEMENT EFFECTIVE AS OF AUGUST 01, 2015 | | 101487 | ☐ | INTALERE INC | ATTN: GENERAL COUNSEL TWO CITY PLACE DRIVE SUITE 400 ST. LOUIS, MO 63141 |

**NAS1514**

**Purdue Pharma L.P.**                                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3052  AMENDMENT NO. 6 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 11, 2018 | | 101492 | ☐ | INTEGRATED BEHAVIORAL HEALTH, INC. | 3070 BRISTOL ST STE 350 COSTA MESA, CA 92626 |
| 2. 3053  INFLEXXION INC., AN INTEGRATED BEHAVIORAL HEALTH, INC. COMPANY OTH AMEND. 1 TO SOW JODY GREEN AD BOARD CW2367930 (LH.RA) EFFECTIVE AUGUST 07, 2019 | 4/1/2021 | 105974 | ☐ | INTEGRATED BEHAVIORAL HEALTH, INC. | 3070 BRISTOL ST STE 350 COSTA MESA, CA 92626 |
| 2. 3054  AMENDMENT NO. 2 TO CONSULTANT SERVICES AGREEMENT DATED AUGUST 08, 2003 | | 101495 | ☐ | INTEGRATED CLINICAL SYSTEMS, INC. | ATTN: GENERAL COUNSEL 38 MILLTOWN ROAD STOCKTON, NJ 08559 |
| 2. 3055  AMENDMENT #1: TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED DECEMBER 01, 2003 | | 101507 | ☐ | INTEGRITY CLINICAL RESEARCH, LLC | ATTN: GENERAL COUNSEL 1059 JONES BOULEVARD MILAN, TX 38358 |
| 2. 3056  AGREEMENT RE: BRAND NAME DEVELOPMENT DATED AUGUST 05, 1998 | | 101512 | ☐ | INTERBRAND | ATTN: GENERAL COUNSEL 437 MADISON AVENUE NEW YORK, NY 10022 |
| 2. 3057  AGREEMENT RE: BRAND NAME DEVELOPMENT DATED JULY 25, 2001 | | 101514 | ☐ | INTERBRAND CORPORATION | ATTN: GENERAL COUNSEL 130 FIFTH AVENUE NEW YORK, NY 10011 |
| 2. 3058  AMENDED CONSULTING AGREEMENT DATED OCTOBER 25, 2001 | | 101515 | ☐ | INTERBRAND CORPORATION | ATTN: GENERAL COUNSEL 130 FIFTH AVENUE NEW YORK, NY 10011 |
| 2. 3059  AGREEMENT FOR CLINICAL RESEARCH CONSULTANTS EFFECTIVE AS OF DECEMBER 10, 1999 | | 101516 | ☐ | INTERCOAST QUALITY ASSURANCE A DIVISION OF INTERCOAST SALES & MARKETING, INC. | ATTN: GENERAL COUNSEL 31 WHITETAIL LANE PARKESBURG, PA 19365-9114 |
| 2. 3060  CUSTOMER AGREEMENT EXECUTED MAY 13, 1999 | | 101524 | ☐ | INTERNATIONAL BUSINESS MACHINES CORPORATION | ATTN: GENERAL COUNSEL 27 COMMERCE DRIVE CRANFORD, NJ 07016 |

**NAS1515**

**Purdue Pharma L.P.**                                                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3061 CONSULTANT SERVICES AGREEMENT DATED APRIL 27, 2003 | | 101533 | ☐ | INTERNATIONAL PHARMACEUTICAL CONSULTANTS, INC. | ATTN: GENERAL COUNSEL POST OFFICE BOX 626 SCARSDALE, NY 10583 |
| 2. 3062 IBM OTH CW2366053 IBM MARKETSCAN TPA RIDER FOR GENESIS ACCESS (LH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2020 | 105966 | ☐ | INTL BUSINESS MACHINE CORP | NOT AVAILABLE |
| 2. 3063 IBM_TRUVEN OTH CW2366607 1ST AMEND TO 18TH ADDENDUM (LH.RA) EFFECTIVE APRIL 10, 2019 | 12/31/2020 | 105980 | ☐ | INTL BUSINESS MACHINE CORP | NOT AVAILABLE |
| 2. 3064 THIRD PARTY ACCESS AGREEMENT DATED OCTOBER 15, 2009 | | 101537 | ☐ | INTRINSIQ, LLC | ATTN: GENERAL COUNSEL 404 WYMAN STREET, STE 100 WALTHAM, MA 02541 |
| 2. 3065 CONSENT AGREEMENT EXECUTED JANUARY 24, 2014 | | 101539 | ☐ | INVENTIV HEALTH CLINICAL | ATTN: GENERAL COUNSEL 1787 SENTRY PARKWAY WEST SUITE 300, BUILDING 16 BLUE BELL, PA 19422 |
| 2. 3066 INVENTIV HEALTH CLINICAL, LAB, INC., A SYNEOS HEALTH GROUP COMPANY - AMENDMENT 2 TO MLSA CW2367426 (LH.RA) EFFECTIVE JUNE 24, 2019 | 12/31/2020 | 106032 | ☐ | INVENTIV HEALTH CLINICAL LAB INC | PO BOX 415914 BOSTON, MA 02241 |
| 2. 3067 AMENDMENT #1 TO MASTER LABORATORY SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 30, 2018 | | 101541 | ☐ | INVENTIV HEALTH CLINICAL, LAB INC. | ATTN: GENERAL COUNSEL 301 D COLLEGE ROAD EAST PRINCETON, NJ 08540 |
| 2. 3068 AMENDMENT NO. 1 TO OPIOID REMS PROGRAM AGREEMENT EFFECTIVE AS OF JANUARY 01, 2015 | | 102938 | ☐ | INVENTIV HEALTH CONSULTING, INC | ATTN: GENERAL COUNSEL INVENTIV HEALTH CONSULTING, INC., 8045 ARCO CORPORATE DRIVE, SUITE 200. RALEIGH, NC 27617, USA |
| 2. 3069 OPIOID REMS PROGRAM AGREEMENT EFFECTIVE AS OF JANUARY 01, 2012 | | 102937 | ☐ | INVENTIV HEALTH CONSULTING, INC | ATTN: GENERAL COUNSEL INVENTIV HEALTH CONSULTING, INC., 8045 ARCO CORPORATE DRIVE, SUITE 200. RALEIGH, NC 27617, USA |

**NAS1516**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3070  SPONSOR AGREEMENT PROJECT DATED MARCH 24, 2005 | | 101543 | ☐ | INVESTIGATOR LOCATION SERVICES, INC | NOT AVAILABLE |
| 2. 3071  MASTER MATERIALS TESTING AND PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2015 | | 101548 | ☐ | IOKINETIC, LLC | ATTN: MICHELLE MURPHY, PARTNER 95 STILES ROAD SALEM, NH 03079 |
| 2. 3072  AMENDMENT #1 TO CONSULTANT SERVICES AGREEMENT DATED FEBRUARY 28, 2019 | | 101568 | ☐ | J. ALEXANDER HUNT INC. | NOT AVAILABLE |
| 2. 3073  CONSULTANT SERVICES AGREEMENT DATED DECEMBER 01, 2018 | | 101567 | ☐ | J. ALEXANDER HUNT INC. | ATTN: GENERAL COUNSEL 117 AURORA AVENUE NAPERVILLE, IL 60540 |
| 2. 3074  SUBLEASE AGREEMENT EFFECTIVE AS OF JULY 15, 2017 | | 101569 | ☐ | J. KNIPPER AND COMPANY, INC. | NOT AVAILABLE |
| 2. 3075  CONSULTANT SERVICES AGREEMENT DATED JULY 22, 1997 | | 101575 | ☐ | J.L.S. ASSOCIATES | ATTN: GENERAL COUNSEL 6114 LASALLE AVE. SUITE 263 OAKLAND, CA 94611 |
| 2. 3076  CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF JULY 01, 2017 | | 101576 | ☐ | J.M. GATTO CONSULTING, LLC | ATTN: GENERAL COUNSEL 145 HIGHLAND ROAD SEDONA, AZ 86336 |
| 2. 3077  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 30, 2018 | | 101577 | ☐ | J.S. MCCARTHY CO., INC. DBA J.S. MCCARTHY PRINTERS | ATTN: GENERAL COUNSEL 15 DARIN DRIVE AUGUSTA, ME 04330 |
| 2. 3078  LETTER OF AGREEMENT DATED DECEMBER 05, 2018 | | 101578 | ☐ | JACK L. TSENG, | ATTN: GENERAL COUNSEL 209 RUSHMORE ROAD STORMVILLE, NY 12582 |
| 2. 3079  LICENSING AGREEMENT DATED DECEMBER 23, 2016 BETWEEN JAGOTEC AG AND THE COMPANY | | 9026 | ☐ | JAGOTEC AG | ATTN: GENERAL COUNSEL EPTINGERSTRASSE 61 MUTTENZ, SWITZERLAND 4132 |

**NAS1517**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3080 | SIDE LETTER DATED DECEMBER 23, 2016 | | 9027 | ☐ | JAGOTEC AG | ATTN: GENERAL COUNSEL EPTINGERSTRASSE 61 MUTTENZ, SWEDEN 4132 |
| 2. 3081 | TERMINATION NOTICE DATED MARCH 29, 2018 | | 9028 | ☐ | JAGOTEC AG | ATTN: GENERAL COUNSEL EPTINGERSTRASSE 61 MUTTENZ, SWEDEN 4132 |
| 2. 3082 | MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101580 | ☐ | JANINE ZUROMSKI, ARNP-BC, MPH | ATTN: GENERAL COUNSEL 12 EDELWEISS AVENUE LINCOLN, RI 02865 |
| 2. 3083 | CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | JANSSEN PHARMA | ATTN: GENERAL COUNSEL 1125 TRENTON-HARBOURTON ROAD, TITUSVILLE, NJ 08560 |
| 2. 3084 | TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | JANSSEN PHARMA | ATTN: GENERAL COUNSEL 1125 TRENTON-HARBOURTON ROAD, TITUSVILLE, NJ 08560 |
| 2. 3085 | TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 101582 | ☐ | JANSSEN PHARMACEUTICALS INC | ATTN: GENERAL COUNSEL JANSSEN PHARMACEUTICALAAN 3 GEEL, BELGIUM 2440 |
| 2. 3086 | INDEMNIFICATION AGREEMENT EXECUTED APRIL 19, 2005 | | 101586 | ☐ | JASPER CLINIC INC. | ATTN: GENERAL COUNSEL 526 JASPER STREET KALAMAZOO, MI 49007 |
| 2. 3087 | AMENDMENT #1: TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED JUNE 14, 2004 | | 101588 | ☐ | JBA RESEARCH | ATTN: MINDI TURPIN; RONI O'CALLAHAN 1045 E. 3900 SOUTH SALT LAKE CITY, UT 82124 |
| 2. 3088 | SEARCH FIRM AGREEMENT DATED OCTOBER 12, 2009 | | 101591 | ☐ | JDL CONSULTING | ATTN: GENERAL COUNSEL 2427 SOUTH GARFIELD STREET DENVER, CO 80210 |
| 2. 3089 | MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101592 | ☐ | JEAN AERTKER | ATTN: GENERAL COUNSEL 646 RIVIERA DRIVE TAMPA, FL 33608 |

NAS1518

**Purdue Pharma L.P.**

**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3090  LETTER OF AGREEMENT DATED NOVEMBER 28, 2017 | | 101594 | ☐ | JEFFREY GALINKIN, M.D. | ATTN: GENERAL COUNSEL 5506 S. EMPORIA CIRCLE GREENWOOD VILLAGE, CO 80111 |
| 2. 3091  LETTER OF AGREEMENT DATED NOVEMBER 28, 2017 | | 101595 | ☐ | JEFFREY GALINKIN, M.D. | ATTN: GENERAL COUNSEL 5506 S. EMPORIA CIRCLE GREENWOOD VILLAGE, CO 80111 |
| 2. 3092  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 02, 2016 | | 101596 | ☐ | JEFFREY GUDIN, MD | ATTN: GENERAL COUNSEL P.O. BOX 9044 BARDONIA, NY 10954 |
| 2. 3093  RETENTION LETTER AGREEMENT DATED OCTOBER 19, 2018 | | 9010 | ☐ | JEFFREY MISSLING | NOT AVAILABLE |
| 2. 3094  CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101598 | ☐ | JEFFREY NEWCORN, M.D. | ATTN: GENERAL COUNSEL 120 STONEHEDGE DRIVE N., GREENWICH, CT 06831 |
| 2. 3095  INDEMNIFICATION AGREEMENT EXECUTED NOVEMBER 22, 2000 | | 101599 | ☐ | JIM CHRISTENSEN MD | NOT AVAILABLE |
| 2. 3096  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101608 | ☐ | JOEL L. YOUNG, M.D. | 441 SOUTH LIVERNOIS ROAD SUITE 100 ROCHESTER HILLS, MI 48307 |
| 2. 3097  AUTHORSHIP AGREEMENT EFFECTIVE AS OF NOVEMBER 20, 2017 | | 101609 | ☐ | JOHN BERKENBOSCH, M.D. | ATTN: GENERAL COUNSEL 517 OAK BRANCH ROAD LOUISVILLE, KY 40245 |
| 2. 3098  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 22, 2016 | | 101610 | ☐ | JOHN E.D. FLYNN | ATTN: GENERAL COUNSEL 611 NORTHERN BOULEVARD SUITE 150 GREAT NECK, NY 11021 |
| 2. 3099  CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF MARCH 15, 2018 | | 101612 | ☐ | JOHN R. MONTEROSSO, PH.D. | ATTN: GENERAL COUNSEL 2213 CAMDEN AVENUE LOS ANGELES, CA 90064 |

**NAS1519**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3100 INDEMNIFICATION AGREEMENT EXECUTED MAY 28, 2003 | | 101613 | ☐ | JOHN RUBINO MD | NOT AVAILABLE |
| 2. 3101 ACCREDITATION AGREEMENT DATED APRIL 13, 2000 | | 101618 | ☐ | JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS | ATTN: GENERAL COUNSEL ONE RENAISSANCE BOULEVARD OAKBROOK TERRACE, IL 60181 |
| 2. 3102 COMMERCIAL SUPPORT AGREEMENT EFFECTIVE AS OF MARCH 29, 2000 | | 101617 | ☐ | JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS | ATTN: GENERAL COUNSEL ONE RENAISSANCE BOULEVARD OAKBROOK TERRACE, IL 60181 |
| 2. 3103 PROJECT RESEARCH AND DEVELOPMENT FUNDING AGREEMENT DATED AUGUST 22, 2001 | | 101619 | ☐ | JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS | ATTN: GENERAL COUNSEL ONE RENAISSANCE BOULEVARD OAKBROOK TERRACE, IL 60181 |
| 2. 3104 COMMERCIAL SUPPORT AGREEMENT EFFECTIVE AS OF MARCH 29, 2000 | | 101620 | ☐ | JOINT COMMISSION SATELLITE NETWORK/PRIMEDIA HEALTHCARE | NOT AVAILABLE |
| 2. 3105 LETTER AGREEMENT RE: MEDICAL LICENSE DATED OCTOBER 21, 2014 | | 101621 | ☐ | JOSE R CRUZ CESTERO, MD | TORRO SAN CRISTOBAL, #402 COTO LAUREL, PR 00780 |
| 2. 3106 MASTER CONSULTANT SERVICES AGREEMENT DATED MARCH 07, 2016 | | 101629 | ☐ | JUNE SONNENBERG-REINES | ATTN: GENERAL COUNSEL 44 WOODMONT DRIVE LAWRENCEVILLE, NJ 08648 |
| 2. 3107 AMENDMENT TO KAISER PERMANENTE MEDICAL CARE PROGRAM AGREEMENT  EFFECTIVE AS OF APRIL 01, 2018 | | 101632 | ☐ | KAISER FOUNDATION HEALTH PLANS INC. | ATTN: DIRECTOR, PHARMACY CONTRACTING 300 PULLMAN STREET ADMINISTRATION BUILDING LIVERMORE, CA 94551 |
| 2. 3108 PRODUCT PURCHASE AGREEMENT EFFECTIVE AS OF MARCH 01, 2010 | | 101631 | ☐ | KAISER FOUNDATION HEALTH PLANS INC. | ATTN: DIRECTOR, PHARMACY CONTRACTING 300 PULLMAN STREET ADMINISTRATION BUILDING LIVERMORE, CA 94551 |
| 2. 3109 AMENDMENT TO KAISER PERMANENTE MEDICAL CARE PROGRAM AGREEMENT  EFFECTIVE AS OF APRIL 01, 2018 | | 101634 | ☐ | KAISER FOUNDATION HOSPITALS; KAISER FOUNDATION HEALTH PLAN INC., SUBSIDIARIES AND ASSOCIATED ORGANIZATIONS | ATTN: DIRECTOR, PHARMACY CONTRACTING 300 PULLMAN STREET ADMINISTRATION BUILDING LIVERMORE, CA 94551 |

**NAS1520**

**Purdue Pharma L.P.**                                                                                          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3110  AMENDMENT TO KAISER PERMANENTE MEDICAL CARE PROGRAM AGREEMENT EFFECTIVE JULY 1, 2019 | 3/31/2020 | 90002 | ☐ | KAISER FOUNDATION HOSPITALS; KAISER FOUNDATION HEALTH PLAN INC., SUBSIDIARIES AND ASSOCIATED ORGANIZATIONS | ATTN: KATHY MITCHELL, OPERATIONS MANAGER 3020 CARRINGTON MILL BLVD. STE 400 MORRISVILLE, NC 27560 |
| 2. 3111  KAISER PERMANENTE MEDICAL CARE PROGRAM AGREEMENT | | 90003 | ☐ | KAISER FOUNDATION HOSPITALS; KAISER FOUNDATION HEALTH PLAN INC., SUBSIDIARIES AND ASSOCIATED ORGANIZATIONS | ATTN: KATHY MITCHELL, OPERATIONS MANAGER 3020 CARRINGTON MILL BLVD. STE 400 MORRISVILLE, NC 27560 |
| 2. 3112  PRODUCT PURCHASE AGREEMENT EFFECTIVE AS OF MARCH 01, 2010 | | 101633 | ☐ | KAISER FOUNDATION HOSPITALS; KAISER FOUNDATION HEALTH PLAN INC., SUBSIDIARIES AND ASSOCIATED ORGANIZATIONS | ATTN: DIRECTOR, PHARMACY CONTRACTING 300 PULLMAN STREET ADMINISTRATION BUILDING LIVERMORE, CA 94551 |
| 2. 3113  KANTAR HEALTH LLC - OTH CW2367211 AMD 2 TO SOW 2018-3 RETROSPECTIVE CHART SURVEY FOR ADHD TREATMENT PATTERNS (LH.RA) EFFECTIVE JUNE 12, 2019 | 9/30/2020 | 106004 | ☐ | KANTAR HEALTH INC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |
| 2. 3114  KANTAR OTH CW2365544 AMEND 1 TO SOW RETROSPECTIVE CHART SURVEY FOR ADHD TREATMENT PATTERNS LH.RA) EFFECTIVE FEBRUARY 18, 2019 | 1/30/2020 | 105945 | ☐ | KANTAR HEALTH INC | ATTN: GENERAL COUNSEL 11 MADISON AVENUE NEW YORK, NY 10010 |
| 2. 3115  SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 101640 | ☐ | KAPLAN SCIENTIFIC CONSULTANTS, INC | ATTN: GENERAL COUNSEL 76 ELM STREET NEW CANAAN, CT 06840 |
| 2. 3116  TERMS AND CONDITIONS OF EMPLOYMENT DATED JANUARY 09, 2014 | | 101641 | ☐ | KASOWITZ, BENSON, TORRES & FRIEDMAN LLP | ATTN: GENERAL COUNSEL 2200 PENNSYLVANIA AVEENUE, NW SUITE 680 WEST WASHINGTON, DC 20037 |
| 2. 3117  NOTIFICATION AND CONSENT LETTER AGREEMENT DATED JULY 29, 2013 | | 101642 | ☐ | KAYE SCHOLER LLP | ATTN: GENERAL COUNSEL 425 PARK AVENUE NEW YORK, NY 10022-3598 |

**NAS1521**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3118 SEARCH FIRM AGREEMENT DATED MAY 14, 2009 | | 101643 | ☐ | KEEFER HEALTHCARE RECRUITING, INC | ATTN: GENERAL COUNSEL 1705 GASCONY ROAD ENCINITAS, CA 92024 |
| 2. 3119 SEARCH FIRM AGREEMENT DATED MAY 15, 2013 | | 101645 | ☐ | KENZIE & COMPANY, LLC D/B/A THE MCINTYRE GROUP | ATTN: GENERAL COUNSEL 63 GLOVER AVENUE NORWALK, CT 06850 |
| 2. 3120 AMENDMENT #1: TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT EFFECTIVE AS OF OCTOBER 29, 2003 | | 101648 | ☐ | KEYSTONE CLINICAL SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 3900 INDUSTRIAL PARK DRIVE, SUITE 8 ALTOONA, PA 16602 |
| 2. 3121 CONSULTANT SERVICES AGREEMENT DATED OCTOBER 31, 2016 | | 101664 | ☐ | KIMBERLY NEW | 724 HAMPTON ROADS DRIVE KNOXVILLE, TN 37934 |
| 2. 3122 TOLLING AND STANDSTILL AGREEMENT DATED JANUARY 29, 2014 | | 101665 | ☐ | KING & SPALDING LLP | ATTN: GENERAL COUNSEL 1180 PEACHTREE STREET N.E. ATLANTA, GA 30309-3521 |
| 2. 3123 LEGAL RETAINER AGREEMENT DATED NOVEMBER 17, 2014 | | 101667 | ☐ | KIRKLAND & ELLIS LLP | ATTN: GENERAL COUNSEL 601 LEXINGTON AVE NEW YORK, NY 10022 |
| 2. 3124 SEARCH FIRM AGREEMENT DATED MAY 19, 2009 | | 101671 | ☐ | KLEIN HERSH INTERNATIONAL | ATTN: GENERAL COUNSEL 2300 COMPUTER AVENUE, SUITE C-15 WILLOW GROVE, PA 19090 |
| 2. 3125 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 24, 2018 | | 101672 | ☐ | KLICK USA, INC. DBA KATALYST | ATTN: GENERAL COUNSEL 500 NORTH MICHIGAN AVENUE SUITE 600 CHICAGO, IL |
| 2. 3126 CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 01, 2015 | | 101676 | ☐ | KONSULT PHARMA SERVICES LTD | ATTN: GENERAL COUNSEL C/O BARRETT & CO. TITHE HOUSE, 15 DUKES RIDE, CROWTHORNE BERKS RG45 6LZ |

**NAS1522**

**Purdue Pharma L.P.**                                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3127   MASTER PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 18, 2016 | | 101680 | ☐ | KPMG LLP | ATTN: GENERAL COUNSEL 550 SOUTH HOPE STREET LOS ANGELES, CA 90071 |
| 2. 3128   LEGAL RETAINER AGREEMENT DATED MARCH 07, 2013 | | 101682 | ☐ | KRIEG DEVAULT  LLP | ATTN: GENERAL COUNSEL 30 NORTH LASALLE STREET, SUITE 2800 CHICAGO, IL 60602 |
| 2. 3129   PATENT ENFORCEMENT AGREEMENT EFFECTIVE AS OF JANUARY 28, 2009 | | 101705 | ☐ | LABOPHARM EUROPE LIMITED | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD DUBLIN IRAN, ISLAMIC REPUBLIC OF |
| 2. 3130   WAIVER OF CERTAIN CLOSING CONDITION BY LABOPHARM EUROPE LIMITED DATED AUGUST 15, 2005 | | 101702 | ☐ | LABOPHARM EUROPE LIMITED | ATTN: GENERAL COUNSEL 5 THE SEAPOINT BUILDING, 45 CLONTARF ROAD, DUBLIN 3, IRELAND |
| 2. 3131   LARRY KLASSEN OTH CW2366062 NON-COMPENSATED AUTHOR (LH.RA) EFFECTIVE MARCH 25, 2019 | 3/31/2021 | 105968 | ☐ | LARRY KLASSEN | NOT AVAILABLE |
| 2. 3132   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 13, 2019 | | 101741 | ☐ | LATOYA HAYNES | ATTN: GENERAL COUNSEL 771 WYNGATE ROAD SOMERDALE, NJ 08083 |
| 2. 3133   SEARCH FIRM AGREEMENT DATED DECEMBER 09, 2009 | | 101742 | ☐ | LAUNCH EXECUTIVE CONSULTANTS | ATTN: GENERAL COUNSEL 1829 PINE STREET, #202 PHILADELPHIA, PA 19103 |
| 2. 3134   FIRST AMENDMENT TO LETTER OF AGREEMENT DATED NOVEMBER 30, 2016 | | 101743 | ☐ | LAURA E. WALLACE | ATTN: GENERAL COUNSEL 1 WHIPPOORWILL ROAD BETHEL, CT 06801 |
| 2. 3135   MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101744 | ☐ | LAURA ROONY, DNP, APRN, FNP-BC, DCC | ATTN: GENERAL COUNSEL 6901 BERTNER AVENUE HOUSTON, TX 77030 |

**NAS1523**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3136 PRODUCT DEVELOPMENT AND CONTRACT MANUFACTURING AGREEMENT DATED APRIL 27, 2004 | | 101746 | ☐ | LAUREATE PHARMA L.P | ATTN: GENERAL COUNSEL 201 COLLEGE ROAD EAST PRINCETON, NJ 07512 |
| 2. 3137 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101747 | ☐ | LAUREN DELUCIA | ATTN: GENERAL COUNSEL 1702 73RD STREET NORTH BERGEN, NJ 07047 |
| 2. 3138 AMENDMENT #1 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 10, 2016 | | 101749 | ☐ | LAZAR ASSOCIATES, LLC / DR. JEFFREY LAZAR | ATTN: GENERAL COUNSEL 107 NAUTILUS AVENUE AUSTIN, TX 78738 |
| 2. 3139 MASTER CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF MARCH 09, 2016 | | 101748 | ☐ | LAZAR ASSOCIATES, LLC / DR. JEFFREY LAZAR | ATTN: GENERAL COUNSEL 107 NAUTILUS AVENUE AUSTIN, TX 78738 |
| 2. 3140 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2017 | | 101750 | ☐ | LAZAR CREATIVE GROUP | ATTN: GENERAL COUNSEL 4 DAVENPORT TERRACE WEST NYACK, NY 10994 |
| 2. 3141 AGREEMENT AND MUTUAL RELEASE EFFECTIVE AS OF OCTOBER 03, 2011 | | 101752 | ☐ | LEAPFROGRX, INC. | NOT AVAILABLE |
| 2. 3142 CONSULTANT SERVICES AGREEMENT DATED OCTOBER 01, 2000 | | 101754 | ☐ | LEFERMAN ASSOCIATES INC | ATTN: GENERAL COUNSEL 22 KNAPP STREET STAMFORD, CT 06907 |
| 2. 3143 INDEMNIFICATION AGREEMENT EXECUTED JUNE 14, 2005 | | 101756 | ☐ | LEO CHRETIEN MD | NOT AVAILABLE |
| 2. 3144 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 28, 2018 | | 101757 | ☐ | LEVERAGE GLOBAL CONSULTING LLC | ATTN: GENERAL COUNSEL 37 BAY VIEW DRIVE JAMESTOWN, RI 02835 |
| 2. 3145 AMENDMENT TO SUBSCRIPTION PLAN DATED DECEMBER 01, 2001 | | 101759 | ☐ | LEXISNEXIS | ATTN: GENERAL COUNSEL |
| 2. 3146 AMENDMENT TO SUBSCRIPTION PLAN DATED DECEMBER 21, 2001 | | 101758 | ☐ | LEXISNEXIS | ATTN: GENERAL COUNSEL |

**NAS1524**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3147 AMENDMENT TO PROJECT AGREEMENT DATED JULY 01, 2008 | | 101765 | ☐ | LIEBERMAN RESEARCH WORLDWIDE | ATTN: GENERAL COUNSEL 7777 CENTER AVENUE SUITE 440 HUNTINGTON BEACH, CA 92647 |
| 2. 3148 PROJECT AGREEMENT DATED JULY 01, 2008 | | 101767 | ☐ | LIEBERMAN RESEARCH WORLDWIDE | ATTN: GENERAL COUNSEL 7777 CENTER AVENUE SUITE 440 HUNTINGTON BEACH, CA 92647 |
| 2. 3149 PROJECT AGREEMENT DATED MAY 01, 2008 | | 101766 | ☐ | LIEBERMAN RESEARCH WORLDWIDE | ATTN: GENERAL COUNSEL 7777 CENTER AVENUE SUITE 440 HUNTINGTON BEACH, CA 92647 |
| 2. 3150 EMPLOYEE WELFARE BENEFIT PLAN APPOINTMENT FOR CLAIM FIDUCIARY DATED JANUARY 01, 2008 | | 101769 | ☐ | LIFE INSURANCE COMPANY OF NORTH AMERICA | NOT AVAILABLE |
| 2. 3151 LIFE INSURANCE COMPANY OF NORTH AMERICA EFFECTIVE AS OF JANUARY 01, 2008 | | 101771 | ☐ | LINA BENEFIT PAYMENTS, INC. | ATTN: GENERAL COUNSEL CIGNA GROUP INSURANCE TAX COMPLIANCE UNIT, S-M16, 900 COTTAGE GROVE ROAD HARTFORD, CT 06152 |
| 2. 3152 CONSULTANT SERVICES AGREEMENT DATED FEBRUARY 10, 2000 | | 101775 | ☐ | LINDA CALISTI | 224 NORTH SECOND STREET JEANNETTE, PA 15644 |
| 2. 3153 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 101776 | ☐ | LINDA HARPER, M.D. | ATTN: GENERAL COUNSEL 618 E. SOUTH STREET SUITE 100 ORLANDO, FL 32801 |
| 2. 3154 CONSULTANT SERVICES AGREEMENT DATED AUGUST 05, 1997 | | 101777 | ☐ | LINEBERRY RESEARCH ASSOCIATES | ATTN: GENERAL COUNSEL 79 T.W. ALEXANDER DRIVE BLDG. 4401, SUITE 219, PO BOX 14626 RESEARCH TRIANGLE PARK, NC 27709 |

**NAS1525**

**Purdue Pharma L.P.**                                                                 **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3155 MASTER CONSULTANT SERVICES AGREEMENT DATED JULY 01, 2016 | | 101790 | ☐ | LISA BYRD PHD, FNP-BC, GNP-BC | ATTN: GENERAL COUNSEL 475 CHEYENNE LANE MADISION, WI 39110 |
| 2. 3156 CONSULTANT SERVICES AGREEMENT DATED JANUARY 18, 2019 | | 101791 | ☐ | LISA GALBRAITH | ATTN: GENERAL COUNSEL 100 BOOTH HILL ROAD SHELTON, CT 06484 |
| 2. 3157 MASTER CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 01, 2016 | | 101792 | ☐ | LISA MARSCH, PHD | ATTN: GENERAL COUNSEL 15 GRANT ROAD HANOVER, NH 03755 |
| 2. 3158 CONSULTANT SERVICES AGREEMENT DATED JULY 18, 1997 | | 101793 | ☐ | LISA MELILLI, MPH | ATTN: GENERAL COUNSEL 2 HIGH STREET KATONAH, NY 10536 |
| 2. 3159 CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 03, 1997 | | 101794 | ☐ | LISA MELILLI, MPH | ATTN: GENERAL COUNSEL 2 HIGH STREET KATONAH, NY 10536 |
| 2. 3160 CONSULTANT SERVICES AGREEMENT DATED MARCH 18, 1998 | | 101796 | ☐ | LOIS R. GRUMET | ATTN: GENERAL COUNSEL 9 MATSON COURT CHESTNUT RIDGE, NJ 10977 |
| 2. 3161 AMENDMENT #1 TO CONSULTANT SERVICES AGREEMENT DATED JANUARY 30, 2017 | | 101798 | ☐ | LOUIS BAXTER JR., MD | NOT AVAILABLE |
| 2. 3162 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 101799 | ☐ | LOUIS E. BAXTER SR. M.D. | NOT AVAILABLE |
| 2. 3163 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 101800 | ☐ | LOUIS E. BAXTER SR. M.D. | NOT AVAILABLE |
| 2. 3164 AMENDMENT #1 TO CONSULTING LETTER OF AGREEMENT DATED APRIL 23, 2003 | | 101802 | ☐ | LOUIS W. SULLIVAN, M.D. | ATTN: NORTH POWERS FERRY CORPORATION 5287 NORTH POWERS FERRY ROAD ATLANTA, GA 30327 |

NAS1526

**Purdue Pharma L.P.**                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3165  SEARCH FIRM AGREEMENT DATED JULY 26, 2012 | | 101808 | ☐ | LT STAFFING, INC. | ATTN: GENERAL COUNSEL 373 N. MAIN STREET FALL RIVER, MA 02720 |
| 2. 3166  COMMON INTEREST PRIVILEGE AGREEMENT DATED JULY 11, 2011 | | 101837 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3167  LETTER AGREEMENT RE: DEVELOPMENT OF ADDITIONAL DOSAGE STRENGTH DATED DECEMBER 01, 2009 | | 101820 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3168  LETTER AGREEMENT RE: DEVELOPMENT OF ADDITIONAL DOSAGE STRENGTH EFFECTIVE AS OF JUNE 01, 2012 | | 101823 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3169  LETTER AGREEMENT RE: DEVELOPMENT OF ADDITIONAL DOSAGE STRENGTHS DATED APRIL 01, 2008 | | 101816 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3170  LETTER AGREEMENT RE: DEVELOPMENT OF SECOND GENERATION PATCH DATED JUNE 23, 2009 | | 101819 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3171  NON BINDING MANUFACTURING OFFER DATED AUGUST 14, 2015 | | 101838 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3172  NON BINDING MANUFACTURING OFFER DATED AUGUST 14, 2015 | | 101839 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |

**NAS1527**

**Purdue Pharma L.P.**                                                                                                          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3173  TECHNOLOGY TRANSFER AGREEMENT EFFECTIVE AS OF NOVEMBER 03, 2014 | | 101827 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3174  TECHNOLOGY TRANSFER AND INVESTMENT AGREEMENT EFFECTIVE AS OF JUNE 01, 2009 | | 101817 | ☐ | LTS LOHMANN THERAPIE-SYSTEME AG | ATTN: GENERAL COUNSEL LOHMANNSTRASSE 2 ANDERNACH D-56626 GEORGIA |
| 2. 3175  SEARCH FIRM AGREEMENT DATED NOVEMBER 06, 2013 | | 101846 | ☐ | LUCAS GROUP MILITARY TRANSITION DIVISION | ATTN: GENERAL COUNSEL 1747 PENNSYLVANIA AVENUE NW, SUITE 425 WASHINGTON, DC 20006 |
| 2. 3176  FINAL PROTOCOL: DETERMINATION OF SELF-ADMINISTRATION ABUSE LIABILITY POTENTIAL OF V117884 IN CYNOMOLGUS MONKEYS EXECUTED APRIL 13, 2010 | | 101848 | ☐ | MACCINE PTE LTD | ATTN: DAVID HYGATE, BSC, TEAM LEADER, PAIN AND INFLAMMATION;ALEX WILSON, BSC, PHD, CHIEF SCIENTIFIC OFFICER 10 SCIENCE PARK ROAD #01-05 THE ALPHA SINGAPORE SCIENCE PARK II 117684 SLOVENIA |
| 2. 3177  PROTOCOL AMENDMENT NO 1. TO MACCINE STUDY NO:LHX0001 EXECUTED JULY 18, 2011 | | 101850 | ☐ | MACCINE PTE LTD | ATTN: GENERAL COUNSEL 10 SCIENCE PARK ROAD #01-05 THE ALPHA, SINGAPORE SCIENCE PARK II 117684 SLOVENIA |
| 2. 3178  PROTOCOL AMENDMENT NO 1. TO MACCINE STUDY NO:LHX0002 EXECUTED JUNE 07, 2011 | | 101849 | ☐ | MACCINE PTE LTD | ATTN: GENERAL COUNSEL 10 SCIENCE PARK ROAD #01-05 THE ALPHA, SINGAPORE SCIENCE PARK II 117684 SLOVENIA |

**NAS1528**

**Purdue Pharma L.P.**                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3179  FINAL PROTOCOL: DETERMINATION OF SELF-ADMINISTRATION ABUSE LIABILITY POTENTIAL OF V117290 IN CYNOMOLGUS MONKEYS EXECUTED MARCH 12, 2010 | | 101851 | ☐ | MACCINE PTE LTD. | ATTN: DAVID HYGATE, BSC, TEAM LEADER, PAIN AND INFLAMMATION;ALEX WILSON, BSC, PHD, CHIEF SCIENTIFIC OFFICER 10 SCIENCE PARK ROAD #01-05 THE ALPHA SINGAPORE SCIENCE PARK II 117684 SLOVENIA |
| 2. 3180  CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | MALLINCKRODT PHARMACEUTICALS | ATTN: GENERAL COUNSEL 675 MCDONNELL BLVD. HAZELWOOD, MO 63042 |
| 2. 3181  TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | MALLINCKRODT PHARMACEUTICALS | ATTN: GENERAL COUNSEL 675 MCDONNELL BLVD. HAZELWOOD, MO 63042 |
| 2. 3182  TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 101866 | ☐ | MALLINCKRODT PHARMACEUTICALS | ATTN: GENERAL COUNSEL 675 MCDONNELL BLVD. HAZELWOOD, MO 63042 |
| 2. 3183  EIGHT AMENDMENT TO PURCHASING AGREEMENT EFFECTIVE AS OF APRIL 02, 2018 | | 101869 | ☐ | MANAGED HEALTH CARE ASSOCIATES INC | ATTN: JACQUELYN CHAGULA, CONTRACT MANAGER 25-A VREELAND ROAD, SUITE 200 FLORHAM PARK, NJ 07932 |
| 2. 3184  FIRST AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF APRIL 02, 2018 | | 101868 | ☐ | MANAGED HEALTH CARE ASSOCIATES INC | ATTN: JACQUELYN CHAGULA, CONTRACT MANAGER 25-A VREELAND ROAD, SUITE 200 FLORHAM PARK, NJ 07932 |
| 2. 3185  LETTER PURCHASING AGREEMENT DATED NOVEMBER 01, 2017 | | 101867 | ☐ | MANAGED HEALTH CARE ASSOCIATES INC | ATTN: PRESIDENT 25-A VREELAND ROAD, SUITE 200 FLORHAM PARK, NJ 07932 |
| 2. 3186  SECOND AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF OCTOBER 01, 2018 | | 101870 | ☐ | MANAGED HEALTH CARE ASSOCIATES INC | ATTN: JACQUELYN CHAGULA, CONTRACT MANAGER 25-A VREELAND ROAD, SUITE 200 FLORHAM PARK, NJ 07932 |

**NAS1529**

**Purdue Pharma L.P.**                                                         **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3187  THIRD AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF OCTOBER 15, 2018 | | 101871 | ☐ | MANAGED HEALTH CARE ASSOCIATES INC | ATTN: JACQUELYN CHAGULA, CONTRACT MANAGER 25-A VREELAND ROAD, SUITE 200 FLORHAM PARK, NJ 07932 |
| 2. 3188  SEARCH FIRM AGREEMENT DATED MAY 02, 2006 | | 101881 | ☐ | MANAGEMENT RECRUITERS OF SALT LAKE CITY, INC. | ATTN: GENERAL COUNSEL 6600 S 1100 E SUITE 350 SALT LAKE CITY, UT 84121 |
| 2. 3189  AMENDMENT NO. 1 TO MASTER CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 01, 2017 | | 101886 | ☐ | MARCIA A. PALMER, PHARM.D. | NOT AVAILABLE |
| 2. 3190  MARCUM LLP - ADDENDUM 1 TO ENGAGEMENT LETTER 17APR19 (M. GERACI) EFFECTIVE APRIL 17, 2019 | 12/31/2049 | 106108 | ☐ | MARCUM LLP | NOT AVAILABLE |
| 2. 3191  MARCUM LLP - ENGAGEMENT LETTER 19FEB19 (M. GERACI.RA) EFFECTIVE FEBRUARY 19, 2019 | 2/18/2020 | 106115 | ☐ | MARCUM LLP | NOT AVAILABLE |
| 2. 3192  AUTHORSHIP AGREEMENT DATED OCTOBER 09, 2017 | | 101887 | ☐ | MAREN EGGERS | ATTN: GENERAL COUNSEL ROSENBERGSTRABE 85 STRUTTGART 70193 GEORGIA |
| 2. 3193  CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 101888 | ☐ | MARGARET D. WEISS M.D., PH.D. | ATTN: GENERAL COUNSEL 1493 CAMBRIDGE STREET CAMBRIDGE, MA 02139 |
| 2. 3194  MARGARET WEISS, MD, PHD, FRCP OTH CW2366017 NON-COMPENSATED AUTHORSHIP (LH.RA) EFFECTIVE MARCH 18, 2019 | 3/31/2021 | 106022 | ☐ | MARGARET WEISS | NOT AVAILABLE |
| 2. 3195  MARK A. STEIN, PH.D. OTH CW2365927 AUTHORSHIP (LH.RA) EFFECTIVE MARCH 18, 2019 | 3/31/2021 | 106001 | ☐ | MARK A. STEIN | NOT AVAILABLE |

**NAS1530**

**Purdue Pharma L.P.**

**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3196 CONSULTANT SERVICES AGREEMENT DATED JANUARY 03, 2018 | | 101890 | ☐ | MARKETVISION RESEARCH, INC. | ATTN: GENERAL COUNSEL 5151 PFEIFFER ROAD SUITE 300 BLUE ASH, OH 45242 |
| 2. 3197 MARTIN A. KATZMAN OTH CW2366290 NONCOMPENSATED AUTHORSHIP (LH.RA) EFFECTIVE APRIL 08, 2019 | 4/30/2021 | 105959 | ☐ | MARTIN A. KATZMAN | NOT AVAILABLE |
| 2. 3198 CONSULTANT SERVICES AGREEMENT DATED AUGUST 03, 1998 | | 101892 | ☐ | MARY CLARK | 5101 BELLGRAVE CIRCLE WILMINGTON, NC 28403 |
| 2. 3199 CONSULTANT SERVICES AGREEMENT DATED AUGUST 21, 1997 | | 101891 | ☐ | MARY CLARK | 2300 AVENT FERRY ROAD #F-5 RALEIGH, NC 27606 |
| 2. 3200 CONSULTANCY AGREEMENT DATED JUNE 30, 1997 | | 101893 | ☐ | MARY PALATINI | ATTN: GENERAL COUNSEL 31 NUGENT DRIVE CLIFTON, NJ 07012 |
| 2. 3201 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 1997 | | 101894 | ☐ | MARYPAUL LABORATORIES, INC. | ATTN: GENERAL COUNSEL P.O. BOX 952 70 SPARTA AVENUE SPARTA, NJ 07871 |
| 2. 3202 FUND AGREEMENT DATED JANUARY 25, 2002 | | 101899 | ☐ | MASSACHUSETTS GENERAL HOSPITAL | ATTN: GENERAL COUNSEL DEVELOPMENT OFFICE 100 CHARLES RIVER PLAZA, SUITE 600 BOSTON, MA 02114-2792 |
| 2. 3203 FUND AGREEMENT DATED MARCH 05, 2003 | | 101900 | ☐ | MASSACHUSETTS GENERAL HOSPITAL | ATTN: GENERAL COUNSEL 55 FRUIT STREET BOSTON, MA 02114-3117 |
| 2. 3204 FUND AGREEMENT DATED MARCH 05, 2003 | | 101901 | ☐ | MASSACHUSETTS GENERAL HOSPITAL | ATTN: GENERAL COUNSEL BOSTON, MA 02114-2696 |

**NAS1531**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3205 FUND AGREEMENT EXECUTED FEBRUARY 08, 2002 | | 101902 | ☐ | MASSACHUSETTS GENERAL HOSPITAL | ATTN: GENERAL COUNSEL 100 CHARLES RIVER PLAZA SUITE 600 BOSTON, MA 02114-2792 |
| 2. 3206 CONSULTANT SERVICES AGREEMENT DATED MAY 01, 2017 | | 101904 | ☐ | MATT BACK GOVERNMENT RELATIONS | ATTN: GENERAL COUNSEL 1301 I STREET SACRAMENTO, CA 95814 |
| 2. 3207 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT DATED FEBRUARY 13, 2003 | | 101905 | ☐ | MATTESON CONSULTING GROUP | NOT AVAILABLE |
| 2. 3208 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 12, 1995 | | 101908 | ☐ | MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH | ATTN: GENERAL COUNSEL 200 FIRST STREET SOUTHWEST ROCHESTER, MN 55905 |
| 2. 3209 REPRESENTATION AGREEMENT DATED DECEMBER 04, 2009 | | 101913 | ☐ | MCDERMOTT WILL & EMERY LLP | ATTN: GENERAL COUNSEL 340 MADISON AVENUE NEW YORK, NY 10173 |
| 2. 3210 STATEMENT OF SERVICES EFFECTIVE AS OF JANUARY 12, 2016 | | 101923 | ☐ | MCKINSEL & COMPANY, INC. | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |
| 2. 3211 AMENDMENT NO. 1 TO MASTER CONSULTING AGREEMENT DATED OCTOBER 01, 2016 | | 101927 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |
| 2. 3212 MASTER CONSULTING AGREEMENT EFFECTIVE AS OF MARCH 01, 2004 | | 101925 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 3 LANDMARK SQUARE, SUITE 100 STAMFORD, CT 06901 |
| 2. 3213 STATEMENT OF SERVICES EFFECTIVE AS OF JANUARY 30, 2017 | | 101928 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |

**NAS1532**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 539 of 1000

**Purdue Pharma L.P.**  Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3214 STATEMENT OF SERVICES TO MASTER CONSULTING AGREEMENT DATED MARCH 01, 2004 | | 101924 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |
| 2. 3215 STATEMENT OF SERVICES TO MASTER CONSULTING AGREEMENT EFFECTIVE AS OF JANUARY 12, 2016 | | 101926 | ☐ | MCKINSEY & COMPANY, INC. UNITED STATES | ATTN: GENERAL COUNSEL 1 DEFOREST AVENUE SUITE 300 SUMMIT, NJ 07901 |
| 2. 3216 ENGAGEMENT LETTER DATED JUNE 03, 2005 | | 101930 | ☐ | MCKOOL SMITH | ATTN: GENERAL COUNSEL 300 WEST SIXTH STREET, SUITE 1700 AUSTIN, TX 78701 |
| 2. 3217 CONSULTANT SERVICES AGREEMENT DATED OCTOBER 16, 2017 | | 101931 | ☐ | MCMAHON PUBLISHING GROUP | ATTN: GENERAL COUNSEL 545 WEST 45TH STREET 8TH FLOOR NEW YORK, NY 10036 |
| 2. 3218 PROJECT AGREEMENT DATED DECEMBER 01, 2001 | | 101932 | ☐ | MD LINX, INC. | ATTN: GENERAL COUNSEL 1025 VERMOT AVENUE N2 SUITE 810 WASHINGTON, DC 20005 |
| 2. 3219 REVISED CLINICAL AGREEMENT DATED JUNE 02, 1997 | | 101934 | ☐ | MDS HARRIS LABORATORIES, INC. | ATTN: ACCOUNTS RECEIVABLE 621 ROSE STREET PO BOX 80837 LINCOLN, NE 68501 |
| 2. 3220 REVISED CLINICAL AGREEMENT FOR PROTOCOL HY97-0804 DATED OCTOBER 03, 1997 | | 101936 | ☐ | MDS HARRIS LABORATORIES, LTD. | ATTN: ACCOUNTS RECEIVABLE 621 ROSE STREET PO BOX 80837 LINCOLN, NE 68501 |
| 2. 3221 DISCLOSURE LETTER AGREEMENT DATED MARCH 16, 2017 | | 101937 | ☐ | MEBIAS DISCOVERY, LLC | ATTN: GENERAL COUNSEL 3001 MARKET STREET SUITE 140 PHILADELPHIA, PA 19104 |

NAS1533

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3222 REGARDING TO THE TERMS, CONDITIONS AND PURPOSES OF AN EDUCATIONAL GRANT BETWEEN PURDUE PHARMA L.P. AND MEDICAL ANSWERS DATED JANUARY 18, 2000 | | 101940 | ☐ | MEDICAL ANSWERS | ATTN: GENERAL COUNSEL |
| 2. 3223 MEDICAL RESEARCH CONSULTANTS OTH CW2367192 AMEND. 3 TO MSA (LH.RA) EFFECTIVE JUNE 06, 2019 | 7/30/2022 | 106003 | ☐ | MEDICAL RESEARCH CONSULTANTS | ATTN: GENERAL COUNSEL 10114 W. SAM HOUSTON PARKWAY SOUTH, SUITE 200 HOUSTON, TX 77099 |
| 2. 3224 AGREEMENT DATED AUGUST 31, 2019 | | 106306 | ☐ | MEHAFFYWEBER PC | ATTN: JAMES MARTINGANO 500 DALLAS SUITE 1200 HOUSTON, TX 77002 |
| 2. 3225 AMENDMENT TO REPORTING AGREEMENT DATED MARCH 20, 2003 | | 101955 | ☐ | MEIJI SEIKA KAISHA, LTD. | ATTN: GENERAL COUNSEL 4-16, KYOBASHI 2-CHROME CHUO-KU TOKYO, JAPAN 104-8002 |
| 2. 3226 LETTER AGREEMENT DATED JUNE 15, 2004 | | 101953 | ☐ | MEIJI SEIKA KAISHA, LTD. | ATTN: GENERAL COUNSEL 4-16 KYOBASHI 2 CHOME CHUO-KU TOKYO, JAPAN 104-8002 |
| 2. 3227 SPECTRACEF ADDITIONAL INCENTIVE PLAN-4TH QUARTER 2004 DATED DECEMBER 03, 2004 | | 101956 | ☐ | MEJI SEIKA KAISHA, LTD. | ATTN: GENERAL COUNSEL MEJI SEIKA KAISHA, LTD. 4-16, KYOBASHI 2-CHOME, CHUO-KU, TOKOYO 104-8002 JAPAN |
| 2. 3228 CONSULTANT SERVICES AGREEMENT DATED OCTOBER 09, 2000 | | 101960 | ☐ | MERANT INC. | ATTN: GENERAL COUNSEL 9420 KEY WEST AVENUE ROCKVILLE, MD 20850 |
| 2. 3229 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 09, 2001 | | 101959 | ☐ | MERANT INC. | ATTN: GENERAL COUNSEL 9420 KEY WEST AVENUE ROCKVILLE, MD 20850 |
| 2. 3230 AMENDMENT NO. 9 DATED FEBRUARY 02, 2007 | | 101971 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |

**NAS1534**

**Purdue Pharma L.P.**        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3231 BID EXCEPTION FORM DATED APRIL 27, 2018 | | 101967 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 3232 MERIDIAN COMP AMD 11 (STAMFORD) CW2361510 (RJ.RA) DATED MARCH 01, 2018 | | 101972 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 3233 MERIDIAN HEALTH STAMFORD AMD 10 CW2357140  (RA.DT) DATED MARCH 01, 2017 | | 101970 | ☐ | MERIDAN COMP OF NEW YORK, INC. | ATTN: GENERAL COUNSEL 275 MADISON AVE FL 32, NEW YORK, NY 10016 |
| 2. 3234 CUSTOMER AGREEMENT EFFECTIVE AS OF APRIL 28, 2003 | | 101974 | ☐ | MESSAGELABS, INC. | ATTN: GENERAL COUNSEL 8500 NORMANDALE LAKE BLVD. SUITE 650 MINNEAPOLIS, MN 55437 |
| 2. 3235 LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 101978 | ☐ | MIAMI-LUKEN, INC. | ATTN: GENERAL COUNSEL 265 PIONEER BOULEVARD SPRINGBORO, OH 45066 |
| 2. 3236 CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 01, 2016 | | 101979 | ☐ | MICHAEL GLOTH, M.D. | ATTN: GENERAL COUNSEL 5855 ROLLING PINES DRIVE NAPLES, FL 34110 |
| 2. 3237 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 101980 | ☐ | MICHAEL MANOS, PH.D | ATTN: GENERAL COUNSEL 3356 LANSMERE ROAD SHAKER HEIGHTS, OH 44122 |
| 2. 3238 MASTER CONSULTANT SERVICES AGREEMENT DATED OCTOBER 01, 2016 | | 101981 | ☐ | MICHAEL MILLER MD | ATTN: GENERAL COUNSEL 27 SETTLER HILL CIRCLE MADISON, WI 53717 |
| 2. 3239 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICE AGREEMENT DATED JANUARY 30, 2017 | | 101982 | ☐ | MICHAEL MILLER MD | ATTN: GENERAL COUNSEL 27 SETTLER HILL CIRCLE MADISON, WI 53717 |
| 2. 3240 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 101984 | ☐ | MICHELLE SCHMERGE | ATTN: GENERAL COUNSEL 8401 MEDICAL PLAZA DRIVE, SUITE 365 CHARLOTTE, NC 28262 |

**Purdue Pharma L.P.**                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3241  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2017 | | 101985 | ☐ | MICHIGAN LEGISLATIVE CONSULTANTS | ATTN: GENERAL COUNSEL 110 WEST MICHIGAN AVENUE, SUITE 500 LANSING, MI 48933 |
| 2. 3242  NOTIFICATION LETTER EFFECTIVE AS OF AUGUST 17, 2014 | | 101996 | ☐ | MICROSOFT LICENSING, GP | ATTN: GENERAL COUNSEL 6100 NEIL ROAD RENO, NV 89511 |
| 2. 3243  PATENT MARKETING AGREEMENT EFFECTIVE AS OF APRIL 22, 2005 | | 102011 | ☐ | MILLENNIUM MARKETING GROUP, LTD. | ATTN: GENERAL COUNSEL 10550 MARTY STREET OVERLAND PARK, KS 66212 |
| 2. 3244  AGREEMENT DATED MARCH 27, 2019 | | 106305 | ☐ | MILLER & CHEVALIER CHARTERED | ATTN: BRIAN A. HILL 900 16TH STREET NW WASHINGTON, DC 20006 |
| 2. 3245  AMENDMENT  TO THE PHARMACEUTICAL PURCHASE AGREEMENT  EFFECTIVE AS OF OCTOBER 15, 2018 | | 102017 | ☐ | MINNESOTA MULTISTATE CONTRACTING ALLIANCE FOR PHARMACY | ATTN: BRANDON SIS, PHARMA.D MBA, MMCAP SENIOR PHARMACIST - CORRECTIONS 50 SHERBURNE AVENUE 112 ADMINISTRATION BUILDING ST. PAUL, MN 55155 |
| 2. 3246  AMENDMENT NO. 1 TO MMCAP CONTRACT NO. MMS18012 EFFECTIVE AS OF AUGUST 15, 2018 | | 102016 | ☐ | MINNESOTA MULTISTATE CONTRACTING ALLIANCE FOR PHARMACY | ATTN: BRANDON SIS, PHARMA.D MBA, MMCAP SENIOR PHARMACIST - CORRECTIONS 50 SHERBURNE AVENUE 112 ADMINISTRATION BUILDING ST. PAUL, MN 55155 |
| 2. 3247  PURCHASING AGREEMENT  EFFECTIVE AS OF AUGUST 01, 2018 | | 102015 | ☐ | MINNESOTA MULTISTATE CONTRACTING ALLIANCE FOR PHARMACY | C/O MMCAP ATTN: CONTRACT MANAGER 50 SHERBURNE AVENUE, 112 ADMINISTRATION BUILDING ST. PAUL, MN 55155 |
| 2. 3248  INDEMNIFICATION AGREEMENT EXECUTED JUNE 01, 2000 | | 102024 | ☐ | MITCHELL RESEARCH GROUP, INC | NOT AVAILABLE |
| 2. 3249  INDEMNIFICATION AGREEMENT EXECUTED MAY 22, 2000 | | 102023 | ☐ | MITCHELL RESEARCH GROUP, INC | NOT AVAILABLE |

**NAS1536**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　　**Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3250 MARIA LOPES OTH AMENDMENT 1 TO MCSA TO EXTEND TERM CW2366858 CSA (LH.SD) EFFECTIVE MAY 15, 2019 | 5/14/2022 | 105995 | ☐ | MMD LOPES LLC | ATTN: GENERAL COUNSEL 117 TRUMAN DRIVE CRESSKILL, NJ 07626 |
| 2. 3251 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 102028 | ☐ | MMDLOPES, LLC | ATTN: GENERAL COUNSEL 117 TRUMAN DRIVE CRESSKILL, NJ 07626 |
| 2. 3252 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 102029 | ☐ | MMDLOPES, LLC | ATTN: GENERAL COUNSEL 117 TRUMAN DRIVE CRESSKILL, NJ 07626 |
| 2. 3253 CONSULTANCY AGREEMENT DATED SEPTEMBER 15, 1997 | | 102037 | ☐ | MONITECH SERVICES | ATTN: MONA CICHELLO 36 GYPSY ROCK ROAD STUYVESANT, NY 12173 |
| 2. 3254 CONSULTANCY AGREEMENT EFFECTIVE AS OF AUGUST 15, 1996 | | 102036 | ☐ | MONITECH SERVICES | ATTN: GENERAL COUNSEL 36 GYPSY ROCK ROAD STUYVESANT, NY 12173 |
| 2. 3255 LETTER AGREEMENT DATED OCTOBER 04, 2011 | | 102042 | ☐ | MONROE COLLEGE | ATTN: GENERAL COUNSEL 2501 JEROME AVENUE BRONX, NY 10468 |
| 2. 3256 STATEMENT OF WORK DATED SEPTEMBER 29, 2017 | | 102052 | ☐ | MOVILITAS CONSULTING LLC | ATTN: GENERAL COUNSEL 10330 OLD COLUMBIA ROAD COLUMBIA, MD 21046 |
| 2. 3257 AUTHORSHIP AGREEMENT DATED FEBRUARY 18, 2019 | | 102054 | ☐ | MS. SARUNA GHIMIRE | ATTN: GENERAL COUNSEL 4441 ESCONDIDO STREET APT. 6204 LAS VEGAS, NV 89119 |
| 2. 3258 INDEMNIFICATION AGREEMENT EXECUTED MAY 28, 2003 | | 102056 | ☐ | MULTI-SPECIALTY RESEARCH ASSOCIATES OF NORTH CAROLINA | ATTN: GENERAL COUNSEL 3509 HAWORTH DRIVE, SUITE 100 RELEIGH, NC 27609 |

NAS1537

**Purdue Pharma L.P.**                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3259 AMENDMENT TO HEAD LICENSE AGREEMENT BETWEEN PPLP AND MUNDIPHARMA BRADENTON, B.V. 28AUG19 (P. STRASSBURGER) EFFECTIVE AUGUST 28, 2019 | 12/31/2049 | 106076 | ☐ | MUNDIPHARMA BRADENTON B.V. | LEUSDEREND 16 3832 RC LEUSDEN AMERSFOORT 3800 CB NIGER |
| 2. 3260 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 16, 2017 | | 102171 | ☐ | MUTUAL DRUG COMPANY | ATTN: GENERAL COUNSEL 816 ELLIS ROAD DURHAM, NC 27703 |
| 2. 3261 CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 19, 2016 | | 102174 | ☐ | NADINE EVANS | 26 GLENDALE ROAD SHARON, MA 02067 |
| 2. 3262 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MARCH 15, 2013 | | 102175 | ☐ | NALAS ENGINEERING SERVICES, INC | ATTN: GENERAL COUNSEL 85 WESTBROOK ROAD CENTERBROOK, CT 06409 |
| 2. 3263 AMENDMENT TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 29, 2016 | | 102176 | ☐ | NALAS ENGINEERING SERVICES, INC. | 85 WESTBROOK ROAD CENTERBROOK, CT 06409 |
| 2. 3264 INDEMNIFICATION AGREEMENT EXECUTED NOVEMBER 22, 2000 | | 102179 | ☐ | NARES RESEARCH & EDUCATION SOCIETY | ATTN: GENERAL COUNSEL 2300 SOUTH RANCHO SUITE 203 LAS VEGAS, NV 89102 |
| 2. 3265 PROJECT RESEARCH AND DEVELOPMENT FUNDING AGREEMENT DATED AUGUST 22, 2001 | | 102180 | ☐ | NATIONAL COMMITTEE FOR QUALITY ASSURANCE | ATTN: GENERAL COUNSEL 2000 L STREET NORTHWEST SUITE 500 WASHINGTON, DC 20036 |
| 2. 3266 AGREEMENT FOR SUBMITTING COMPOUNDS EXECUTED JUNE 12, 2003 | | 102182 | ☐ | NATIONAL INSTITUTE OF NEUROLOGICAL DISORDERS AND STROKE | NOT AVAILABLE |
| 2. 3267 PAIN AWARENESS PROGRAMS LETTER OF AGREEMENT EXECUTED JANUARY 19, 2006 | | 102183 | ☐ | NATIONAL PAIN FOUNDATION | NOT AVAILABLE |

**NAS1538**

**Purdue Pharma L.P.**                                                                                      **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3268 LETTER OF INTENT EFFECTIVE AS OF MAY 31, 1997 | | 102189 | ☐ | NCGS AND ASSOCIATES, INC. | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 NCGS: ONE UNITY ALLEY, SUITE 3000 CHARLESTON, SC 29401 |
| 2. 3269 NDA PARTNERS LLC OTH092116 CW2320525 RETAINER LTR (CHARLES GRUDZINSKAS PHD ASSIGNED CONSULTANT) (PCS) DATED AUGUST 25, 2016 | | 102190 | ☐ | NDA PARTNERS, LLC | ATTN: GENERAL COUNSEL 40 COMMERCE LANE, SUITE D ROCHELLE, VA 22738 |
| 2. 3270 NDA PARTNERS LLC OTH092116 CW2320525 RETAINER LTR (CHARLES GRUDZINSKAS PHD ASSIGNED CONSULTANT) (PCS) DATED AUGUST 25, 2016 | | 102191 | ☐ | NDA PARTNERS, LLC | ATTN: GENERAL COUNSEL 40 COMMERCE LANE, SUITE D ROCHELLE, VA 22738 |
| 2. 3271 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2000 | | 102192 | ☐ | NDC HEALTH INFORMATION SERVICES | ATTN: GENERAL COUNSEL 105 TERRY DRIVE, SUITE 118 NEWTOWN, PA 18940 |
| 2. 3272 SUBCONTRACTOR CUSTOMER AGREEMENT DATED JANUARY 01, 2003 | | 102193 | ☐ | NDC HEALTH INFORMATION SERVICES, INC. | ATTN: GENERAL COUNSEL 2394 EAST CAMELBACK ROAD PHOENIX, AZ 85016 |
| 2. 3273 MAINTENANCE AGREEMENT EFFECTIVE AS OF JULY 11, 2002 | | 102198 | ☐ | NETWORK ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 3965 FREEDOM CIRCLE SANTA CLARA, CA 95054 |
| 2. 3274 SEARCH FIRM AGREEMENT DATED FEBRUARY 14, 2012 | | 102200 | ☐ | NEUROSEARCH DIVISION OF DIEDRE MOIRE CORPORATION | ATTN: GENERAL COUNSEL 510 HORIZON CENTER ROBBINSVILLE, US 08691 |
| 2. 3275 COVENANT NOT TO SUE EFFECTIVE AS OF APRIL 17, 2002 | | 102201 | ☐ | NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION | ATTN: GENERAL COUNSEL BUREAU OF FIELD OPERATIONS P.O. BOX 435, 401 EAST STATE STREET TRENTON, NJ 08625 |

**NAS1539**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3276  MASTER CONSULTING SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 102208 | ☐ | NICHOLE LOPEZ, FNP-C | ATTN: GENERAL COUNSEL 611 NORTHERN BOULEVARD SUITE 150 GREAT NECK, NY 11021 |
| 2. 3277  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MARCH 01, 2008 | | 102210 | ☐ | NMS LABS | ATTN: GENERAL COUNSEL 3701 WELSH ROAD WILLOW GROVE, PA 19090 |
| 2. 3278  ADDENDUM TO PROPOSAL EFFECTIVE AS OF NOVEMBER 30, 2018 | | 102213 | ☐ | NOAHSPHARM | ATTN: GENERAL COUNSEL 227 HONEY LOCUST DRIVE AVONDALE, PA 19311 |
| 2. 3279  CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 24, 2018 | | 102216 | ☐ | NOAHSPHARM | ATTN: GENERAL COUNSEL 227 HONEY LOCUST DRIVE AVONDALE, PA 19311 |
| 2. 3280  NOAHSPHARM LTD - AMENDMENT 1 TO CSA CW2367478 (LH.RA) EFFECTIVE JUNE 26, 2019 | 12/31/2020 | 106014 | ☐ | NOAHSPHARM | ATTN: GENERAL COUNSEL 227 HONEY LOCUST DRIVE AVONDALE, PA 19311 |
| 2. 3281  AGREEMENT BY AND BETWEEN PURDUE PHARMA L.P. AND NORAMCO, INC., DATED AS OF DECEMBER 21, 2012 | | 106266 | ☐ | NORAMCO, INC. | ATTN: GENERAL COUNSEL 500 SWEDES LANDING ROAD WILMINGTON, DE 19801 |
| 2. 3282  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 102221 | ☐ | NORDIC BIOSCIENCE A/S | ATTN: GENERAL COUNSEL HERLEV HOVEDGADE 205-207 HERLEV, DENMARK 2730 |
| 2. 3283  ASSIGNMENT AGREEMENT DATED NOVEMBER 21, 2012 BETWEEN NORTHLAKE INTERNATIONAL LLC, NORTHLAKE BIOSCIENCES LLC, CRYSTAL BIOPHARMACEUTICAL LLC AND THE COMPANY | | 106219 | ☐ | NORTHLAKE BIOSCIENCES LLC | ATTN: YI CHEN 44 EMERSON GARDENS ROAD LEXINGTON, MA |
| 2. 3284  ASSIGNMENT AGREEMENT DATED NOVEMBER 21, 2012 BETWEEN NORTHLAKE INTERNATIONAL LLC, NORTHLAKE BIOSCIENCES LLC, CRYSTAL BIOPHARMACEUTICAL LLC AND THE COMPANY | | 106268 | ☐ | NORTHLAKE INTERNATIONAL LLC | ATTN: XIAOJUN LIU 2711 CENTERVILLE ROAD SUITE 400 WILMINGTON, DE |

**NAS1540**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3285   SUBSCRIPTION AGREEMENT DATED JULY 29, 2004 | | 102230 | ☐ | NORTHROP GRUMMAN FEDERAL CIVIL SYSTEMS, INC. | NOT AVAILABLE |
| 2. 3286   SUBSCRIPTION AGREEMENT DATED JUNE 05, 2008 | | 102231 | ☐ | NORTHROP GRUMMAN INFORMATION TECHNOLOGY, INC. | NOT AVAILABLE |
| 2. 3287   COLLABORATION AGREEMENT DATED DECEMBER 2, 2016 BETWEEN EXICURE, INC., NORTHWESTERN UNIVERSITY AND THE COMPANY | | 106220 | ☐ | NORTHWESTERN UNIVERSITY | NOT AVAILABLE |
| 2. 3288   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 24, 2018 | | 102232 | ☐ | NOVATEUR VENTURES INC. | ATTN: GENERAL COUNSEL 1055 WEST GEORGIA STREET, SUITE 2100 VANCOUVER, BC V6E 3P3 CANADA |
| 2. 3289   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2003 | | 102238 | ☐ | NU WAVE TECHNOLOGIES LLP | ATTN: GENERAL COUNSEL 3652 HARDING AVENUE HONOLULU, HI 96816 |
| 2. 3290   SECOND AMENDMENT TO OPTION AGREEMENT  DATED FEBRUARY 10, 2013 | | 102245 | ☐ | NUTRIPHARM INC. | ATTN: GENERAL COUNSEL MEDIA, PA 19063 |
| 2. 3291   SOW TO CONSULTANT SERVICES AGREEMENT DATED JANUARY 15, 2003 | | 102246 | ☐ | NUWAVE TECHNOLOGIES LLP | ATTN: GENERAL COUNSEL 3652 HARDING AVENUE HONOLULU, HI 96816 |
| 2. 3292   LETTER AGREEMENT DATED JANUARY 06, 2003 | | 102252 | ☐ | O'CONNOR & HANNAN, LLP | ATTN: GENERAL COUNSEL 1666 K STREET, NW, SUITE 500 WASHINGTON, D.C., WASHINGTON, D.C 20005 |
| 2. 3293   AMENDMENT #2 TO MASTER SITE MANAGEMENT ORGANIZATION AGREEMENT DATED MAY 17, 2002 | | 102269 | ☐ | ODYSSEY RESEARCH SERVICES | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |
| 2. 3294   AMENDMENT #2 TO MASTER SITE ORGANIZATION AGREEMENT DATED MAY 17, 2002 | | 102271 | ☐ | ODYSSEY RESEARCH SERVICES | ATTN: GENERAL COUNSEL 705 EAST MAIN AVENUE BISMARCK, ND 58501 |

**NAS1541**

**Purdue Pharma L.P.**                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3295 OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH SCIENCES - AGREEMENT (BLOOD SAMPLES AND DATA BASE) 15AUG19 (P. STRASSBURGER) EFFECTIVE AUGUST 15, 2019 | 12/31/2049 | 106079 | ☐ | OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH SCIENCES | ATTN: GENERAL COUNSEL 1111 W 17TH ST, TULSA, OK 74107 |
| 2. 3296 OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH SCIENCES (OSU) - AGREEMENT 15AUG19 (P. STRASSBURGER) EFFECTIVE AUGUST 15, 2019 | 12/31/2049 | 106078 | ☐ | OKLAHOMA STATE UNIVERSITY CENTER FOR HEALTH SCIENCES | ATTN: GENERAL COUNSEL 1111 W 17TH ST, TULSA, OK 74107 |
| 2. 3297 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 102280 | ☐ | OLATUNJI B. ALESE, M.D. | ATTN: GENERAL COUNSEL 3132 PRESERVATION CIRCLE LILBURN, GA 30047 |
| 2. 3298 PROJECT AGREEMENT EFFECTIVE AS OF JULY 27, 2001 | | 102287 | ☐ | ONCOLOGY SPECIAL EDITION | ATTN: GENERAL COUNSEL 545 WEST 45TH STREET 8 FLOOR NEW YORK, NY 10036 |
| 2. 3299 SERIES A PREFERED STOCK PURCHASE AGREEMENT DATED JULY 25, 2007 | | 102297 | ☐ | OPTHERION, INC. | ATTN: GENERAL COUNSEL 250 WEST MAIN STREET BRANFORD, CT 06405 |
| 2. 3300 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF APRIL 19, 2018 | | 102303 | ☐ | OPTIMUM TALENT, INC. | ATTN: GENERAL COUNSEL 300 RUE LEO-PARISEAU, SUITE 6000 MONTREAL, QUEBEC H2X 4B8 CANADA |
| 2. 3301 OPTUMRX, INC. - TRUST ACCOUNT AGREEMENT (R. ALEALI) EFFECTIVE JUNE 27, 2019 | 12/31/2049 | 106073 | ☐ | OPTUM RX, INC. | ATTN: S.V.P., INDUSTRY RELATIONS 17900 VON KARMAN AVENUE M/S CA016-0202 IRVINE, CA 92614 |
| 2. 3302 LETTER AGREEMENT DATED AUGUST 30, 2008 | | 102312 | ☐ | ORACLE AMERICA, INC. | ATTN: GENERAL COUNSEL 530 MADISON AVENUE, 31ST FLOOR NEW YORK, NY 10022 |

**NAS1542**

**Purdue Pharma L.P.**                                                          **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3303  RE  ORACLE EMPIRICA SYSTEM DATED APRIL 18, 2016 | | 102313 | ☐ | ORACLE AMERICA, INC. | ATTN: GENERAL COUNSEL 500 ORACLE PARKWAY REDWOOD CITY, CA 94065 |
| 2. 3304  INDEMNIFICATION AGREEMENT EXECUTED JULY 14, 2000 | | 102320 | ☐ | ORTHO ASSOCIATES, P.A. DBA PARK PLACE ORTHOPEDICS & REHABILITATION | ATTN: GENERAL COUNSEL 301 NORTHWEST 84TH AVENUE SUITE 304 PLANTATION, FL 33324 |
| 2. 3305  INDEMNIFICATION AGREEMENT DATED AUGUST 08, 2001 | | 102325 | ☐ | ORTHOPAEDIC CENTER OF ILLINOIS AND ORTHOPEDIC SURGEONS OF ILLINOIS | NOT AVAILABLE |
| 2. 3306  PSL PEER DIRECT  DATED JANUARY 04, 2017 | | 102333 | ☐ | P/S/L GROUP AMERICA INC. | ATTN: GENERAL COUNSEL 1140 AVENUE OF THE AMERICAS, 14TH FLOOR NEW YORK, NY 10036 |
| 2. 3307  AMENDMENT #1 TO SAFETY DATA EXCHANGE AGREEMENT EFFECTIVE AS OF NOVEMBER 15, 2014 | | 102359 | ☐ | PARATEK PHARMACEUTICALS, INC., | ATTN: GENERAL COUNSEL 75 KNEELAND ST BOSTON, MA 02111 |
| 2. 3308  PATHEON SA 22MAY2018  CW2361675 COLACE BATCH SIZE INCREASE (RJ.EA) DATED MAY 12, 2018 | | 102370 | ☐ | PATHEON PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 4815 EMPEROR BLVD. DURHAM, NC 27703-8470 |
| 2. 3309  CHEWABLE CONTRACT PROPOSAL EFFECTIVE AS OF JANUARY 08, 2018 | | 102372 | ☐ | PATHEON, INC. | ATTN: GENERAL COUNSEL 4125 PREMIER DRIVE HIGH POINT, NC 27265 |
| 2. 3310  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2015 | | 102374 | ☐ | PATRICK J. ROGERS, LLC | ATTN: GENERAL COUNSEL 20 FIRST PLAZA CENTER, NW, SUITE 725 ALBUQUERQUE, NM 87102 |
| 2. 3311  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 01, 2017 | | 102375 | ☐ | PATRICK J. ROGERS, LLC | ATTN: GENERAL COUNSEL 20 FIRST PLAZA CENTER, NW, SUITE 725 ALBUQUERQUE, NM 87102 |

**NAS1543**

**Purdue Pharma L.P.**                                                    **Case Number:   19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3312  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 28, 2018 | | 102376 | ☐ | PAUL BARNETT, INC. D/B/A NOW WHAT RESEARCH | ATTN: GENERAL COUNSEL 45 MAIN STREET, SUITE 1006 BROOKLYN, NY 11201 |
| 2. 3313  AUTHORSHIP AGREEMENT EFFECTIVE AS OF JANUARY 01, 2018 | | 102377 | ☐ | PAUL COPLAN, SCD, MBA, FISPE | ATTN: GENERAL COUNSEL 1205 WARDEN WAY FORT WASHINGTON, PA 19034 |
| 2. 3314  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 102378 | ☐ | PAUL ELIEZER OBERSTIEN, M.D. | ATTN: GENERAL COUNSEL 3777 INDEPENDENCE AVE, 3H BRONX, NY 10463 |
| 2. 3315  OBERSTEIN RESUME EFFECTIVE AS OF JANUARY 05, 2017 | | 102379 | ☐ | PAUL ELIEZER OBERSTIEN, M.D., COLUMBIA UNIVERSITY MEDICAL CENTER | ATTN: GENERAL COUNSEL 161 FT. WASHINGTON AVE, 8TH FLOOR NEW YORK, NY 10032 |
| 2. 3316  PAUL MEDEIROS - COPYRIGHT ASSIGNMENT (A. KOLLER) EFFECTIVE APRIL 09, 2019 | 12/31/2049 | 106110 | ☐ | PAUL MEDEIROS | NOT AVAILABLE |
| 2. 3317  AGREEMENT EFFECTIVE AS OF JANUARY 27, 2003 | | 102381 | ☐ | PAULUS SOKOLOSKI AND SARTOR ARCHITECTURE, PC | ATTN: GENERAL COUNSEL PURDUE: 444 SAW MILL RIVER ROAD, ARDSLEY, NY 10502 |
| 2. 3318  MAINTENANCE AND SUPPORT AGREEMENT EFFECTIVE AS OF JANUARY 06, 2003 | | 102385 | ☐ | PDS PATHOLOGY DATA SYSTEMS, LTD. | ATTN: GENERAL COUNSEL HAUPTSTRASSE 56 BASEL, SWITZERLAND 4127 BIRSFELDEN/BASEL |
| 2. 3319  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 102388 | ☐ | PENNSIDE PARTNERS, LTD. | ATTN: GENERAL COUNSEL 1220 BROADCASTING ROAD, SUITE 200 WYOMISSING, PA 19610 |
| 2. 3320  CORPORATE PROCUREMENT EFFECTIVE AS OF MAY 01, 2017 | | 102389 | ☐ | PENNSIDE PARTNERS, LTD. | ATTN: GENERAL COUNSEL 1220 BROADCASTING ROAD, SUITE 200 WYOMISSING, PA 19610 |

**NAS1544**

**Purdue Pharma L.P.**                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3321  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 19, 2018 | | 102391 | ☐ | PEREGRINE MARKET ACCESS | ATTN: GENERAL COUNSEL 125 HIGH ROCK AVENUE, SUITE 300 SARATOGA SPRINGS, NY 12866 |
| 2. 3322  CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | PERNIX THERAPEUTICS HOLDINGS | ATTN: GENERAL COUNSEL 10 NORTH PARK PLACE, SUITE 201, MORRISTOWN, NJ 07960 |
| 2. 3323  TRANSFER OF REGULATORY OBLIGATIONS EFFECTIVE AS OF SEPTEMBER 28, 2015 | | 102296 | ☐ | PERNIX THERAPEUTICS HOLDINGS | ATTN: GENERAL COUNSEL 10 NORTH PARK PLACE, SUITE 201, MORRISTOWN, NJ 07960 |
| 2. 3324  TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 102396 | ☐ | PERNIX THERAPEUTICS HOLDINGS INC | ATTN: GENERAL COUNSEL 10 NORTH PARK PLACE, SUITE 201, MORRISTOWN, NJ 07960 |
| 2. 3325  CONSULTANT SERVICES AGREEMENT DATED JULY 28, 2000 | | 102397 | ☐ | PETER A. MCCROSKERY, M.D., LLC | ATTN: GENERAL COUNSEL 1275 SUMMER STREET SUITE 313 STAMFORD, CT 06905 |
| 2. 3326  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2016 | | 102398 | ☐ | PETER J. PITTS | ATTN: GENERAL COUNSEL 54 RIVERSIDE DRIVE, SUITE D NEW YORK, NY 10025 |
| 2. 3327  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2016 | | 102401 | ☐ | PETER J. PITTS D/B/A PETER J. PITTS HEALTH POLICY CONSULTING | ATTN: GENERAL COUNSEL 54 RIVERSIDE DRIVE, SUITE D NEW YORK, NY 10025 |
| 2. 3328  TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 102403 | ☐ | PFIZER INC | 235 EAST 42ND STREET NEW YORK, NY 10017 |
| 2. 3329  CENTRAL LABORATORY INDEMNIFICATION AGREEMENT EFFECTIVE AS OF JULY 28, 2015 | | 102295 | ☐ | PFIZER: | ATTN: GENERAL COUNSEL 235 EAST 42ND STREET, NEW YORK, NY 10017 |

**NAS1545**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3330 PSO 1 TO MASTER CONSULTANT SERVICES AGREEMENT BETWEEN PURDUE PHARMA L.P. AND PHARMA COMMUNICATIONS, INC. DATED APRIL 01, 2000 | | 102404 | ☐ | PHARMA COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 202 CARNEGIE CENTER, SUITE 101 PRINCETON, NJ 08540 |
| 2. 3331 TERMS OF SERVICE LETTER EFFECTIVE AS OF MAY 15, 2008 | | 102406 | ☐ | PHARMA VOXX | ATTN: GENERAL COUNSEL 750 THE CITY DRIVE, SUITE 490 ORANGE, CA 92868 |
| 2. 3332 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 20, 2016 | | 102408 | ☐ | PHARMACEUTIAL DIVERSION EDUCATION, INC. | ATTN: GENERAL COUNSEL P.O. BOX 146 BETHEL, OH 45106 |
| 2. 3333 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2016 | | 102416 | ☐ | PHARMACEUTICAL DIVERSION RESOURCES, INC. | ATTN: GENERAL COUNSEL P.O. BOX 54760 CINCINNATI, OH 45254 |
| 2. 3334 CONSENT AGREEMENT DATED DECEMBER 20, 2013 | | 102428 | ☐ | PHARMACEUTICAL RESEARCH ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4130 PARK LANE AVENUE SUITE 400 RALEIGH, NC 27612 |
| 2. 3335 RECRUITMENT SERVICES FOR PURDUE PROTOCOL NOS. BUP3014, BUP3015 AND BUP3019 STUDIES DATED DECEMBER 04, 2003 | | 102429 | ☐ | PHARMACEUTICAL RESEARCH PLUS, INC. | ATTN: GENERAL COUNSEL 645 BALTIMORE-ANNAPOLIS BLVD, SUITE 111 SEVERNA PARK, MD 21146 |
| 2. 3336 PLACEBO FOR CO 102862 SUSPENSION EFFECTIVE AS OF JANUARY 06, 2000 | | 102439 | ☐ | PHARMACEUTICS INTERNATIONAL, INC. (PII) | ATTN: GENERAL COUNSEL 10819 GILROY ROAD HUNT VALLEY, MD 21031 |
| 2. 3337 LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 102447 | ☐ | PHARMACY BUYING ASSOCIATION, INC. | ATTN: GENERAL COUNSEL 6300 ENTERPRISE ROAD KANSAS CITY, MO 64120 |
| 2. 3338 LIMITED PARTNERSHIP AGREEMENT EFFECTIVE AS OF SEPTEMBER 02, 2014 | | 102465 | ☐ | PHARMIT INC. | ATTN: GENERAL COUNSEL ONE STAMFORD FORUM STAMFORD, CT 06901 |

**NAS1546**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3339 AUDIT LETTER FOR AMENDED AGREEMENT DATED JULY 31, 2003 | | 102467 | ☐ | PHARSIGHT CORPORATION | ATTN: GENERAL COUNSEL 800 WEST EL CAMINO, SUITE 200 MOUNTAIN VIEW, CA 94040 |
| 2. 3340 STANDARD TABULAR AND GRAPHICAL REPORTS OF ALL ADVERSE EVENTS SUBMISSIONS LISTED WITHIN FDA FOI, AERS AND SRS FOR OXYCONTIN, HYDROCODONE, AND METHODONE MISUSE, ABUSE AND OVERDOSE - 1996 - Q1 2008 DATED OCTOBER 17, 2008 | | 102468 | ☐ | PHASE FORWARD INC. | ATTN: GENERAL COUNSEL DE |
| 2. 3341 AMENDMENT #1 TO CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 28, 2018 | | 102473 | ☐ | PHILIP E. BICKLER, M.D., PH.D. | ATTN: GENERAL COUNSEL 91 POLHEMUS WAY LARKSPUR, CA 94939 |
| 2. 3342 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 28, 2016 | | 102472 | ☐ | PHILIP E. BICKLER, M.D., PH.D. | ATTN: GENERAL COUNSEL 91 POLHEMUS WAY LARKSPUR, CA 94939 |
| 2. 3343 SPONSOR AUTHORIZATION IVRS SERVICES SUBCONTRACTING INGENIX PHARMACEUTICAL SERVICES INC. DATED JUNE 28, 2001 | | 102480 | ☐ | PHT CORP. | ATTN: GENERAL COUNSEL |
| 2. 3344 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 15, 2008 | | 102481 | ☐ | PHYLLIS PITTMAN COMMUNICATIONS LTD | ATTN: GENERAL COUNSEL 3555 TIMMONS LANE SUITE 655 HOUSTON, TX 77027 |
| 2. 3345 RENEWAL AND AMENDMENT DATED OCTOBER 15, 2015 | | 102484 | ☐ | PI2 SOLUTIONS, LTD. | ATTN: GENERAL COUNSEL 789 E. EISENHOWER PARKWAY ANN ARBOR, MI 48108 |
| 2. 3346 AMENDMENT #2 TO MASTER CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 06, 2003 | | 102494 | ☐ | PINACOM INC. | NOT AVAILABLE |
| 2. 3347 AMENDMENT #2 TO MASTER CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 06, 2003 | | 102495 | ☐ | PINACOM INC. | NOT AVAILABLE |

**NAS1547**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3348 AMENDMENT #2 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 25, 2008 | | 102502 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTGOMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 3349 AMENDMENT #3 TO PROJECT SPECIFICATION ORDER UNDER MASTER CONSULTANT SERVICES AGREEMENT DATED DECEMBER 31, 2018 | | 102500 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTGOMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 3350 PINNEY ASSOCIATES, INC. - OTH AMEND. 1 TO PSO CW2367136 EXTEND OPIOID USE DISORDER (LH.KM) EFFECTIVE JUNE 30, 2019 | 12/31/2019 | 106007 | ☐ | PINNEY ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 4800 MONTGMERY LANE, SUITE 400 BETHESDA, MD 20814 |
| 2. 3351 AMENDMENT #2 TO MASTER CONSULTANT SERVICES AGREEMENT DATED AUGUST 27, 2013 | | 102505 | ☐ | PJ QUINN, INC. | ATTN: GENERAL COUNSEL |
| 2. 3352 AMENDMENT TO MASTER CONSULTANT SERVICES AGREEMENT DATED AUGUST 27, 2013 | | 102504 | ☐ | PJ QUINN, INC. | ATTN: GENERAL COUNSEL |
| 2. 3353 LETTER AGREEMENT DATED DECEMBER 22, 2017 | | 102506 | ☐ | PJT PARTNERS, LP | ATTN: GENERAL COUNSEL 280 PARK AVENUE NEW YORK, NY 10017 |
| 2. 3354 PJT PARTNERS - LETTER AGREEMENT 6MAY19 (R. ALEALI) EFFECTIVE MAY 06, 2019 | 12/31/2049 | 106105 | ☐ | PJT PARTNERS, LP | ATTN: GENERAL COUNSEL 280 PARK AVENUE NEW YORK, NY 10017 |
| 2. 3355 AMENDMENT #1 TO ADDENDUM TO PROGRAM LICENSE AGREEMENT - CONFIGURATION AND CONSULTING SERVICES DATED JANUARY 31, 2014 | | 102508 | ☐ | PLANISWARE USA, INC. | ATTN: GENERAL COUNSEL 300 MONTGOMERY STREET, SUITE 930 SAN FRANCISCO, CA |
| 2. 3356 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 07, 2009 | | 102514 | ☐ | POLARIS MANAGEMENT PARTNERS | ATTN: ANDY BENDER 38 EAST 2ND STREET 6TH FLOOR NEW YORK, NY 10016 |

**NAS1548**

**Purdue Pharma L.P.**                                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3357 SUBSCRIPTION AGREEMENT EFFECTIVE AS OF FEBRUARY 01, 2011 | | 102521 | ☐ | PORZIO PHARMACEUTICALS | ATTN: GENERAL COUNSEL 100 SOUTHGATE PARKWAY MORRISTOWN, NJ 07962-1997 |
| 2. 3358 INDEMNIFICATION AGREEMENT EXECUTED SEPTEMBER 27, 2001 | | 102532 | ☐ | PPD DEVELOPMENT, LLC | ATTN: GENERAL COUNSEL 1400 PERIMETER PARK DRIVE, SUITE 150 MORRISVILLE, NC 27560 |
| 2. 3359 PPD DEVELOPMENT, L.P. - QUALITY AGREEMENT CW2365254 EFFECTIVE JANUARY 21, 2019 | 12/31/2049 | 106060 | ☐ | PPD DEVELOPMENT, LP | ATTN: GENERAL COUNSEL 929 NORTH FRONT STREET WILMINGTON, NC 28401 |
| 2. 3360 PROJECT SPECIFICATION ORDER #1 TO MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 01, 1999 | | 102549 | ☐ | PRACTICE PATTERNS SCIENCE, INC. | ATTN: GENERAL COUNSEL |
| 2. 3361 GROUP PURCHASING AGREEMENT PHARMACEUTICAL  EFFECTIVE AS OF JULY 01, 2015 | | 102563 | ☐ | PREMIER HEALTHECARE ALLIANCE L.P. | ATTN: LEGAL DEPARTMENT 13034 BALLANTYNE CORPORATE PLACE CHARLOTTE, NC 28277 |
| 2. 3362 ENGAGEMENT LETTER EFFECTIVE AS OF MARCH 20, 2018 | | 102575 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 1075 PEACHTREE ST. NE, SUITE 2600 ATLANTA, GA 30309 |
| 2. 3363 LOADED WORKSPACE DATED JUNE 01, 2017 | | 102572 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 18 YORK STREET STE 2600 TORONTO, ON M5J 0B2 CANADA |
| 2. 3364 PRICE WATERHOUSE COOPERS OTH 090916 CW2320015 AMENDMENT TO ADVISORY SERVICES DTD 040915 (LH.RA) DATED JUNE 01, 2017 | | 102573 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 18 YORK STREET STE 2600 TORONTO, ON M5J 0B2 CANADA |
| 2. 3365 PRICE WATERHOUSE COOPERS OTH 090916 CW2320015 AMENDMENT TO ADVISORY SERVICES DTD 040915 (LH.RA) DATED JUNE 01, 2017 | | 102574 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 18 YORK STREET STE 2600 TORONTO, ON M5J 0B2 CANADA |

**NAS1549**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3366  RE  ABANDONED AND UNCLAIMED PROPERTY DATED AUGUST 31, 2006 | | 102571 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 300 MADISON AVE NEW YORK, NY 10017 |
| 2. 3367  RE  QPA - PHASE I FEASIBILITY ANALYSIS DATED JULY 10, 2006 | | 102570 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 300 ATLANTIC STREET STAMFORD, CT 06901 |
| 2. 3368  SAP - RETENTION AND ARCHIVING FOR TAX RAFT DATED APRIL 29, 2003 | | 102569 | ☐ | PRICEWATERHOUSE COOPERS LLP | ATTN: GENERAL COUNSEL 300 ATLANTIC STREET          P.O. BOX 9316 STAMFORD, CT 06904 |
| 2. 3369  LETTER AGREEMENT EFFECTIVE AS OF JANUARY 21, 2014 | | 102579 | ☐ | PRIME TELECOM CONSULTING | ATTN: GENERAL COUNSEL 6 APPLETREE LANE, SUITE 2D SPARTA, NJ 07871 |
| 2. 3370  TELECOMM AUTHORIZING LETTERS DATED JANUARY 21, 2014 | | 102580 | ☐ | PRIME TELECOM CONSULTING, LLC | ATTN: GENERAL COUNSEL 6 APPLETREE LANE, SUITE 2D SPARTA, NJ 07871 |
| 2. 3371  REVISED QUOTE 0041567 DATED APRIL 19, 2000 | | 102628 | ☐ | PROCLINICAL PHARMACEUTICAL SERVICES | ATTN: GENERAL COUNSEL 300 KIMBERTON ROAD PHOENIXVILLE, PA 19460 |
| 2. 3372  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 19, 2018 | | 102634 | ☐ | PROED COMMUNICATIONS, INC. | ATTN: GENERAL COUNSEL 25101 CHAGRIN BOULEVARD, SUITE 230 BEACHWOOD, OH 44122 |
| 2. 3373  GENERAL TERMS AND CONDITIONS EFFECTIVE AS OF NOVEMBER 09, 2015 | | 102640 | ☐ | PROOFPOINT INC. | ATTN: GENERAL COUNSEL 892 ROSS DRIVE SUNNYVALE, CA 94089 |
| 2. 3374  LETTER PURCHASING AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 102644 | ☐ | PROVIDER PPI LLC | ATTN: DIRECTOR OF PHARMACY CONTRACTING EAST COMMONS PROFESSIONAL BUILDING FOUR ALLEGHENY CENTER, 9TH FLOOR, 120 FIFTH AVE PLACE PITTSBURGH, PA 15222 |

**NAS1550**

**Purdue Pharma L.P.**                                                                        **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3375 CONSULTANT SERVICES AGREEMENT DATED MARCH 27, 2017 | | 102658 | ☐ | PSYCHOLOGICAL CONSULTANTS, INC | ATTN: GENERAL COUNSEL 6724 PATTERSON AVENUE RICHMOND, VA 23226 |
| 2. 3376 LETTER OF ENGAGEMENT DATED MARCH 11, 2004 | | 102659 | ☐ | PT HILL KONSULTAN INDONESIA | NOT AVAILABLE |
| 2. 3377 ADVERTISING AGREEMENT EXECUTED SEPTEMBER 09, 2015 | | 102660 | ☐ | PUB MAN, INC. | ATTN: GENERAL COUNSEL 2030 POWERS FERRY ROAD SUITE 218 ATLANTA, GA 30339 |
| 2. 3378 PUBLIC AFFAIRS SUPPORT SERVICES, INC. - AMD 1 TO CSA CW2365982 EFFECTIVE MARCH 15, 2019 | 12/31/2049 | 106090 | ☐ | PUBLIC AFFAIRS SUPPORT SERVICES INC | NOT AVAILABLE |
| 2. 3379 ADDENDUM TO CONSULTANT AGREEMENT DATED NOVEMBER 17, 2015 | | 102662 | ☐ | PUBLIC AFFAIRS SUPPORT SERVICES, INC. | ATTN: GENERAL COUNSEL 1950 ROLAND CLARKE PLACE SUITE 300 RESTON, VA 20191 |
| 2. 3380 CONSULTANT AGREEMENT EFFECTIVE AS OF APRIL 01, 2015 | | 102661 | ☐ | PUBLIC AFFAIRS SUPPORT SERVICES, INC. | ATTN: GENERAL COUNSEL 1950 ROLAND CLARKE PLACE, SUITE 300 RESTON, VA 20191 |
| 2. 3381 RHODES PHARMACEUTICALS L.P. - ASSIGNMENT AND ASSUMPTION AGREEMENT (P. STRASSBURGER) EFFECTIVE MARCH 26, 2019 | 12/31/2049 | 106084 | ☐ | PURDUE PHARMA L.P. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 3382 RHODES PHARMACEUTICALS L.P. - SIDE LETTER (P. STRASSBURGER) EFFECTIVE MARCH 26, 2019 | 12/31/2049 | 106087 | ☐ | PURDUE PHARMA L.P. | ONE STAMFORD FORUM 201 TRESSER BLVD STAMFORD, CT 06901 |
| 2. 3383 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2017 | | 102677 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |

**NAS1551**

**Purdue Pharma L.P.**  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3384   CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 01, 2017 | | 102679 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 3385   PURPLE STRATEGIES, LLC AND DECHERT LLP OTH CW2367954 AMD 26MAR19 SA (LH.RA) EFFECTIVE SEPTEMBER 01, 2019 | 3/25/2020 | 105975 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 3386   PURPLE STRATEGIES, LLC AND DECHERT LLP OTH CW2367954 AMD 26MAR19 SA (LH.RA) EFFECTIVE SEPTEMBER 01, 2019 | 3/25/2020 | 105977 | ☐ | PURPLE STRATEGIES, LLC | ATTN: GENERAL COUNSEL 815 SLATERS LANE ALEXANDRIA, VA 22314 |
| 2. 3387   SEARCH FIRM AGREEMENT DATED APRIL 29, 2011 | | 102699 | ☐ | QUEST ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 765 MOUNTAIN AVE, #260 SPRINGFIELD, NJ 07081 |
| 2. 3388   ADDENDUM NO. 15 TO MASTER AGREEMENT DATED OCTOBER 11, 2001 | | 102702 | ☐ | QUEST DIAGNOSTICS INCORPORATED | ATTN: GENERAL COUNSEL PO BOX 7780-4282 PHILADELPHIA, PA 19182-4282 |
| 2. 3389   HOLD HARMLESS AGREEMENT EFFECTIVE AS OF JUNE 11, 2001 | | 102704 | ☐ | QUEST DIAGNOSTICS INCORPORATED D/B/A QUEST DIAGNOSTICS CLINICAL TRIALS | ATTN: GENERAL COUNSEL 1201 SOUTH COLLEGEVILLE ROAD COLLEGEVILLE, PA 19426 |
| 2. 3390   HOLD HARMLESS AGREEMENT EFFECTIVE AS OF JUNE 11, 2001 | | 102706 | ☐ | QUEST DIAGNOSTICS INCORPORATED D/B/A QUEST DIAGNOSTICS CLINICAL TRIALS | ATTN: GENERAL COUNSEL 1201 SOUTH COLLEGEVILLE ROAD COLLEGEVILLE, PA 19426 |
| 2. 3391   COUNSEL ENGAGEMENT LETTER DATED JUNE 03, 2014 | | 102736 | ☐ | QUINN EMANUEL URQUHART & SULLIVAN | ATTN: GENERAL COUNSEL 51 MADISON AVENUE 22ND FLOOR NEW YORK, NY 10010 |
| 2. 3392   GENERAL CONSULTING AGREEMENT EXECUTED JUNE 19, 2001 | | 102740 | ☐ | QUINTILES CONSULTING | ATTN: RONALD M. JOHNSON, EXECUTIVE VICE PRESIDENT 3130 FAIRVIEW PARK DRIVE SUITE 800 FALLS CHURCH, VA 22042 |

**NAS1552**

**Purdue Pharma L.P.**                                                                     **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3393 AMENDMENT NO. 1 TO PRODUCT/SERVICE ORDER EFFECTIVE AS OF MAY 19, 2017 | | 102746 | ☐ | QUINTILES IMS INCORPORATED | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110 DEERFIELD, IL 60015 |
| 2. 3394 PRODUCT/SERVICE ORDER DATED APRIL 19, 2017 | | 102747 | ☐ | QUINTILES IMS INCORPORATED | ATTN: GENERAL COUNSEL 6737 WEST WASHINGTON STREET SUITE 3480 MILWAUKEE, WI 53214 |
| 2. 3395 PRODUCT/SERVICE ORDER DATED JANUARY 01, 2017 | | 102749 | ☐ | QUINTILES IMS INCORPORATED | ATTN: GENERAL COUNSEL 3 PARKWAY NORTH SUITE 110 DEERFIELD, IL 60015 |
| 2. 3396 CONSENT AGREEMENT EXECUTED DECEMBER 19, 2013 | | 102750 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 3397 INDEMNITY AGREEMENT REGARDING WOMAC 3.1 INDEX EXECUTED JANUARY 30, 2017 | | 102758 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL 4820 EMPEROR BOULEVARD DURHAM, NC 27703 |
| 2. 3398 LETTER OF AGREEMENT EFFECTIVE AS OF DECEMBER 15, 2000 | | 102753 | ☐ | QUINTILES, INC. | ATTN: GENERAL COUNSEL PO BOX 13979 RESEARCH TRIANGLE PARK, NC 27709 |
| 2. 3399 MAINTENANCE AGREEMENT EFFECTIVE AS OF JUNE 01, 2001 | | 102762 | ☐ | QUMAS, INC. | ATTN: GENERAL COUNSEL 325 COLUMBIA TURNPIKE FLORHAM PARK, NJ 07932 |
| 2. 3400 AGREEMENT FOR LITIGATION SERVICES DATED MARCH 25, 2004 | | 102767 | ☐ | QUORUM LITIGATION SERVICES | ATTN: GENERAL COUNSEL 950 BLUE GENTIAN ROAD, SUITE 100 EAGAN, MN 55121-1500 |
| 2. 3401 STATEMENT OF SERVICES DATED MARCH 31, 2004 | | 102765 | ☐ | QUORUM LITIGATION SERVICES | ATTN: GENERAL COUNSEL 950 BLUE GENTIAN ROAD, SUITE 100 EAGAN, MN 55121-1500 |

**NAS1553**

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3402 INDEMNIFICATION AGREEMENT EXECUTED JUNE 14, 2005 | | 102769 | ☐ | R/D CLINICAL RESEARCH, INC | ATTN: GENERAL COUNSEL 561 THIS WAY LAKE JACKSON, TX 77566 |
| 2. 3403 INDEMNIFICATION AGREEMENT DATED JANUARY 07, 2002 | | 102772 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 12131 113TH AVENUE NE., SUITE 202 KIRKLAND, WA 98034-6902 |
| 2. 3404 INDEMNIFICATION AGREEMENT DATED JANUARY 07, 2002 | | 102773 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 12131 113TH AVENUE NE., SUITE 202 KIRKLAND, WA 98034-6902 |
| 2. 3405 INDEMNIFICATION AGREEMENT DATED JANUARY 07, 2002 | | 102774 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 12131 113TH AVENUE NE., SUITE 202 KIRKLAND, WA 98034-6902 |
| 2. 3406 INDEMNIFICATION AGREEMENT EXECUTED NOVEMBER 07, 2000 | | 102771 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 12131 113TH AVENUE NE., SUITE 202 KIRKLAND, WA 98034-6902 |
| 2. 3407 INDEMNIFICATION AGREEMENT EXECUTED SEPTEMBER 29, 2003 | | 102775 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 1120 112 AVE. NE, SUITE 480 BELLEVUE, WA 98004 |
| 2. 3408 INDEMNIFICATION AGREEMENT EXECUTED SEPTEMBER 29, 2003 | | 102776 | ☐ | RADIANT RESEARCH, INC | ATTN: GENERAL COUNSEL 1120 112 AVE. NE, SUITE 480 BELLEVUE, WA 98004 |
| 2. 3409 LETTER AGREEMENT RE: TERMS OF AUTHORSHIP DATED NOVEMBER 20, 2017 | | 102780 | ☐ | RALF GEBHARD, M.D. | ATTN: GENERAL COUNSEL 951 BRICKELL AVENUE #2204 MIAMI, FL 33131 |
| 2. 3410 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 102793 | ☐ | RAUN MELMED, M.D. | ATTN: GENERAL COUNSEL 4848 E. CACTUS ROAD, #940 SCOTTSDALE, AZ 85254 |

**NAS1554**

**Purdue Pharma L.P.**                                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3411 NONCLINICAL STUDY AGREEMENT DATED APRIL 01, 2002 | | 102800 | ☐ | REGENTS OF THE UNIVERSITY OF NEW MEXICO / HEALTH SCIENCES CENTER | ATTN: GENERAL COUNSEL CONTROLLER'S OFFICE HSSB ROOM #102, 915 CAMINO DE SALUD NE ALBUQUERQUE, NM 87131 |
| 2. 3412 REGULATORY AND TOXICOLOGY CONSULTANT CSA CW2354982 (LH.RA) DATED JUNE 14, 2017 | | 102801 | ☐ | REGULATORY AND TOXICOLOGY CONSULTANT, LLC | ATTN: GENERAL COUNSEL 13810 BERRYVILLE ROAD GERMANTOWN, MD |
| 2. 3413 LETTER PURCHASING AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2015 | | 102832 | ☐ | RESOURCE OPTIMIZATION & INNOVATION LLC | ATTN: PHARMACY CONTRACT DIRECTOR 645 MARYVILLE CENTRE DRIVE, SUITE 200 ST. LOUIS, MO 63141 |
| 2. 3414 CONSULTANT SERVICES AGREEMENT DATED JUNE 01, 1998 | | 102834 | ☐ | RESQ ASSOCIATES, INC. | ATTN: GLEN ANN HAGEMAN 95 CLEARVIEW DRIVE BROOKFIELD, CT 06804 |
| 2. 3415 RHODES PHARMACEUTICALS L.P. - ASSIGNMENT AND ASSUMPTION AGREEMENT (P. STRASSBURGER) EFFECTIVE MARCH 26, 2019 | 12/31/2049 | 106085 | ☐ | RHODES PHARMACEUTICALS LP | 498 WASHINGTON STREET COVENTRY, RI 02816 |
| 2. 3416 RHODES PHARMACEUTICALS L.P. - SIDE LETTER (P. STRASSBURGER) EFFECTIVE MARCH 26, 2019 | 12/31/2049 | 106086 | ☐ | RHODES PHARMACEUTICALS LP | 498 WASHINGTON STREET COVENTRY, RI 02816 |
| 2. 3417 AGREEMENT DATED JANUARY 24, 2019 | | 106307 | ☐ | RICHARD J. PRENDERGAST LTD | ATTN: MICHAEL T. LAYDEN 111 WEST WASHINGTON STREET SUITE 1100 CHICAGO, IL 60602 |
| 2. 3418 CONSULTANT SERVICES AGREEMENT DATED JANUARY 01, 2019 | | 102888 | ☐ | RICHARD JACKSON MD | ATTN: GENERAL COUNSEL 16376 PANTHEON PASS DELRAY BEACH, FL 33446 |
| 2. 3419 RICHARD SLUTSKY SOW 012617 CW2351255 HCP CONSULT (LH.ER) DATED JANUARY 30, 2017 | | 102891 | ☐ | RICHARD M. SLUTSKY, MD | ATTN: GENERAL COUNSEL 1450 WASHINGTON BLVD. STAMFORD, CT 06902 |

**NAS1555**

**Purdue Pharma L.P.**　　　　　　　　　　　　　　　　　　　　　　　　**Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3420　AGREEMENT DATED JANUARY 4, 2019 | | 106304 | ☐ | RIKER DANZIG SCHERER HYLAND & PERRETTI LLP | ATTN: MAHA KABBASH HEADQUARTERS PLAZA ONE SPEEDWELL AVENUE MORRISTOWN, NJ 07962-1981 |
| 2. 3421　CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 01, 2018 | | 102894 | ☐ | RISA HELLER COMMUNICATIONS LLC | ATTN: GENERAL COUNSEL 233 BROADWAY #2701 NEW YORK, NY 10279 |
| 2. 3422　LETTER AGREEMENT EFFECTIVE AS OF JULY 11, 2006 | | 102906 | ☐ | ROBERT SHOOK | ATTN: GENERAL COUNSEL 261 SOUTH COLUMBIA AVENUE COLUMBUS, OH 43209 |
| 2. 3423　MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 102907 | ☐ | ROBERTA A. DUARTE, MD | ATTN: GENERAL COUNSEL 611 NORTHERN BOULEVARD SUITE 150 GREAT NECK, NY 11021 |
| 2. 3424　ROBINSON REGDOCS MASTER 07012016 CW2221277 (LH.CG) DATED JULY 28, 2016 | | 102909 | ☐ | ROBINSON REGDOCS, INC. | ATTN: GENERAL COUNSEL 4145 HERBST DRIVE DOLYESTOWN, PA 18902 |
| 2. 3425　CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 23, 1999 | | 102910 | ☐ | ROCHELLE AND ASSOCIATES, INC. | ATTN: GENERAL COUNSEL 3938 WHITE ROSE WAY ELLICOTT CITY, MD 21042 |
| 2. 3426　LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 102918 | ☐ | ROCHESTER DRUG CO-OPERATIVE, INC. | ATTN: GENERAL COUNSEL 50 JET VIEW DRIVE ROCHESTER, NY 14624 |
| 2. 3427　INDEMNIFICATION AGREEMENT EXECUTED DECEMBER 30, 2002 | | 102919 | ☐ | ROCKWOOD CLINIC, P.S. | ATTN: GENERAL COUNSEL 400 EAST 5TH AVENUE SPOKANE, WA 99202 |
| 2. 3428　INDEMNIFICATION AGREEMENT EXECUTED DECEMBER 30, 2002 | | 102921 | ☐ | ROCKWOOD CLINIC, P.S. | ATTN: GENERAL COUNSEL 400 EAST FIFTH AVENUE SPOKANE, WA 99202 |
| 2. 3429　INDEMNIFICATION AGREEMENT FOR THE PRINCIPAL INVESTOR EFFECTIVE AS OF DECEMBER 30, 2002 | | 102920 | ☐ | ROCKWOOD CLINIC, P.S. | ATTN: GENERAL COUNSEL 400 EAST FIFTH AVENUE SPOKANE, WA 99202 |

**NAS1556**

**Purdue Pharma L.P.**                                                                              **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3430  CORRECTION OF AMENDMENT 1 DATED MAY 21, 2003 | | 102923 | ☐ | ROCKY MOUNTAIN CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 29 ROGERS COURT GOLDEN, CO 80401 |
| 2. 3431  RODA CREATIVE SERVICES, LTD. OTH CW2365151 AMEND2 TO SOW 2018-1 (LH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2019 | 105936 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 3432  RODA CREATIVE SERVICES, LTD. OTH CW2365355 AMEND3 TO SOW 2018-1 (LH.RA) EFFECTIVE FEBRUARY 01, 2019 | 12/31/2019 | 105934 | ☐ | RODA CREATIVE SERVICES | ATTN: GENERAL COUNSEL 1381 W POPLAR ST STE 200 YORK, PA 17404 |
| 2. 3433  CONSENT TO DISCLOSE CONFIDENTIAL INFORMATION DATED MARCH 23, 2011 | | 102932 | ☐ | ROPES & GRAY LLP | ATTN: GENERAL COUNSEL 1211 AVE OF THE AMERICAS NEW YORK, NY 10036-8701 |
| 2. 3434  TRANSFER OF REGULATORY OBLIGATIONS EXECUTED SEPTEMBER 28, 2015 | | 102936 | ☐ | ROXANNE LABORATORIES | NOT AVAILABLE |
| 2. 3435  CONSULTANT SERVICES AGREEMENT DATED NOVEMBER 10, 2017 | | 102955 | ☐ | SAB GROUP LLC D/B/A PRISM LEARNING GROUP | ATTN: GENERAL COUNSEL 9316 NE 30TH STREET CLYDE HILL, WA 98004 |
| 2. 3436  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 17, 2017 | | 102958 | ☐ | SAFETY PERFORMANCE SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 610 N. MAIN STREET, SUITE 228 BLACKSBURG, VA 24060 |
| 2. 3437  SAMIR ROY PHD CSA 020617 CW2351554 TOPICAL FORMULATION CONSULTANT (LH.MP) DATED FEBRUARY 06, 2017 | | 102964 | ☐ | SAMIR ROY, PHD | ATTN: GENERAL COUNSEL 2795 BAY CANYON COURT SAN DIEGO, CA 92117 |
| 2. 3438  PATENT AND EXCLUSIVITY CERTIFICATION EFFECTIVE AS OF JANUARY 05, 2014 | | 102984 | ☐ | SANDOZ, INC. | ATTN: GENERAL COUNSEL ONE HEALTH PLAZA BUILDING 434, OFFICE 246 EAST HANOVER, NJ 07936 |
| 2. 3439  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 01, 2016 | | 102985 | ☐ | SANDY GALLO | 7401 W. VILLA RITA DRIVE GLENDALE, AZ 85308 |

**NAS1557**

Case 7:21-cv-07532-CM Document 158-3 Filed 11/15/21 Page 564 of 1000

**Purdue Pharma L.P.**                                                                         **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3440  FEEDBACK AGREEMENT 882016 LCW00429581 DATED AUGUST 08, 2016 | | 103012 | ☐ | SAP SE | ATTN: GENERAL COUNSEL DIETMAR-HOOP-ALLEE 16, 69190 WALLDORF, DE(GERMANY) |
| 2. 3441  RENTAL EQUIPMENT; ; TERMS AND AGREEMENT DATED MAY 02, 2011 | | 103029 | ☐ | SCHENCK ACCURATE, INC. | ATTN: GENERAL COUNSEL |
| 2. 3442  NOVAK AUTHORSHIP AGREEMENT EFFECTIVE AS OF JUNE 15, 2017 | | 103037 | ☐ | SCOTT NOVAK, PH.D. | ATTN: GENERAL COUNSEL 102 CHALKWELL COURT CARY, NC 27519 |
| 2. 3443  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JULY 06, 2018 | | 103038 | ☐ | SCRIPPS MEDIA INC. | ATTN: GENERAL COUNSEL 312 WALNUT SUITE 2800 CINCINNATI, OH 45202 |
| 2. 3444  CONSULTANT SERVICES AGREEMENT DATED SEPTEMBER 28, 2018 | | 103040 | ☐ | SEGMEDICA, INC. | ATTN: GENERAL COUNSEL 935 SHERIDAN DRIVE, SUITE 120 TONAWANDA, NY 14150 |
| 2. 3445  CONSULTANT SERVICES AGREEMENT DATED JANUARY 31, 2018 | | 103046 | ☐ | SERMO, INC. | ATTN: GENERAL COUNSEL 200 PAK AVENUE S #1310 NEW YORK, NY 10003 |
| 2. 3446  CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF APRIL 01, 2016 | | 103050 | ☐ | SEYMOUR INVESTIGATIVE SERVICES LLC | ATTN: GENERAL COUNSEL 929 WHITE PLAINS ROAD, SUITE 378 TRUMBULL, CT 06611 |
| 2. 3447  PURCHASE AGREEMENT DATED FEBRUARY 01, 1997 | | 103053 | ☐ | SHARED MARKETING SERVICES, INC. | ATTN: GENERAL COUNSEL 233 N. MICHIGAN AVE. SUITE 2700 CHICAGO, IL 60601 |
| 2. 3448  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 10, 2016 | | 103058 | ☐ | SHEILA ARQUETTE, RPH | ATTN: GENERAL COUNSEL 24 CAMBRIDGE COURT LANCASTER, NY 14086 |
| 2. 3449  AMENDMENT NO. 3 TO COLLABORATION AGREEMENT  EFFECTIVE AS OF DECEMBER 01, 2014 | | 103064 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |

**NAS1558**

**Purdue Pharma L.P.**                                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3450 AMENDMENT NO. 4 TO COLLABORATION AGREEMENT DATED DECEMBER 01, 2014 | | 103066 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3451 COLLABORATION AGREEMENT DATED DECEMBER 15, 2005 | | 103061 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3452 COLLABORATION AGREEMENT FOR TRP-V1 DATED DECEMBER 15, 2005 | | 103074 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3453 COMMON INTEREST AGREEMENT DATED DECEMBER 15, 2005 | | 103073 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3454 FIFTH AMENDMENT TO COLLABORATION AGREEMENT EFFECTIVE AS OF SEPTEMBER 30, 2017 | | 103060 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3455 FIRST AMENDMENT TO COLLABORATION AGREEMENT EFFECTIVE AS OF FEBRUARY 17, 2010 | | 103062 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3456 FOURTH AMENDMENT TO COLLABORATION AGREEMENT EFFECTIVE AS OF DECEMBER 01, 2014 | | 103075 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3457 RE ADJUSTMENT OF V116517 DEVELOPMENT COST DATED NOVEMBER 26, 2010 | | 103070 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3458 SECOND AMENDMENT TO COLLABORATION AGREEMENT EFFECTIVE AS OF OCTOBER 15, 2011 | | 103063 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3459 SECOND AMENDMENT TO MATERIALS TRANSFER AGREEMENT DATED JULY 04, 2005 | | 103069 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |

**NAS1559**

**Purdue Pharma L.P.**  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3460 THIRD AMENDMENT TO COLLABORATION AGREEMENT DATED DECEMBER 01, 2014 | | 103071 | ☐ | SHIONOGI & CO., LTD | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3461 AMENDMENT TO THE CONFIDENTIAL AGREEMENT EFFECTIVE MAY 31, 2017 | | 9024 | ☐ | SHIONOGI & CO., LTD. | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3462 CONFIDENTIALITY AGREEMENT EFFECTIVE NOVEMBER 25, 2015 | | 9023 | ☐ | SHIONOGI & CO., LTD. | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3463 SUPERSEDING EXISTING CONFIDENTIALITY AGREEMENT DATED DECEMBER 17, 2016 | | 9025 | ☐ | SHIONOGI & CO., LTD. | ATTN: GENERAL COUNSEL 1-8, DOSHOMACHI 3-CHOME, CHUO-KU, OSAKA, 541-0045, JAPAN |
| 2. 3464 AGREEMENT DATED AUGUST 31, 2019 | | 106308 | ☐ | SHUMAN, MCCUSKEY & SLICER PLLC | ATTN: WILLIAM R. SLICER 1411 VIRGINIA STREET EAST SUITE 20 (25301), PO BOX 3953 CHARLESTON, WV 25339 |
| 2. 3465 ENGAGEMENT LETTER DATED OCTOBER 14, 2010 | | 103091 | ☐ | SIDLEY AUSTIN LP | ATTN: GENERAL COUNSEL NEO BUILDING RUE MONTOYER 51 MONTOYERSTRAAT, B-1000 BRUSSELS BELGIUM |
| 2. 3466 PROFESSIONAL SERVICES AGREEMENT EFFECTIVE AS OF FEBRUARY 11, 2008 | | 103092 | ☐ | SIDLEY AUSTIN, LLP | ATTN: GENERAL COUNSEL 1501 K STREET NORTHWEST WASHINGTON, DC 20005 |
| 2. 3467 CONSULTING SERVICES AGREEMENT DATED NOVEMBER 19, 2003 | | 103094 | ☐ | SIDNEY D. NELSON, PHD | ATTN: GENERAL COUNSEL 3706 97TH PLACE SOUTHEAST EVERETT, WA 98208 |
| 2. 3468 SIMR OTH CW2366170 STATINMED MSA AMD (LH.RA) EFFECTIVE MARCH 28, 2019 | 5/31/2022 | 105978 | ☐ | SIMR, INC. | ATTN: GENERAL COUNSEL 211 NORTH 4TH AVENUE, SUITE 2B ANN ARBOR, MI 48104 |

**NAS1560**

**Purdue Pharma L.P.**  Case Number: 19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3469 LAW FIRM RETAINER LETTER DATED APRIL 29, 2013 | | 103107 | ☐ | SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP | ATTN: GENERAL COUNSEL 1440 NEW YORK AVENUE N.W. WASHINGTON, DC 20005 |
| 2. 3470 SKADDEN, ARPS, SLATE, MEAGHER FLOM LLP - SUBLEASE OF WASHINGTON, DC OFFICE SPACE (EGA) DATED DECEMBER 08, 2017 | | 103108 | ☐ | SKADDEN, ARPS, SLATE, MEAGHER, & FLOM LLP | ATTN: GENERAL COUNSEL 1440 NEW YORK AVENUE, N.W. WASHINGTON, D.C. 20005 |
| 2. 3471 CONSULTING SERVICES AGREEMENT DATED MAY 19, 1997 | | 103114 | ☐ | SLI ASSOCIATES INC. | ATTN: GENERAL COUNSEL 2100 CONSTITUTION BLVD SARASOTA, FL 34231 |
| 2. 3472 SNAPENGAGE MSA CW2319837 CLICK TO CHAT WEBSITE FEATURE (NK.CAG) DATED JULY 05, 2017 | | 103120 | ☐ | SNAPENGAGE | ATTN: GENERAL COUNSEL 1722 14TH ST, SUITE 220 BOULDER, CO |
| 2. 3473 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF APRIL 01, 2016 | | 103126 | ☐ | SOLIZ & ASSOCIATES | ATTN: GENERAL COUNSEL EJERCITO NACIONAL #418, INTERIOR 811 COLONIA CHAPULTEPEC MORALES, MEXICO |
| 2. 3474 SOLVIAS AMD MASTER TO ALLOW FOR POS CW2356429 (LH.RA) DATED SEPTEMBER 14, 2017 | | 103129 | ☐ | SOLVIAS AG | ATTN: GENERAL COUNSEL |
| 2. 3475 MASTER CONSULTANT SERVICES AGREEMENT DATED JUNE 01, 2016 | | 103138 | ☐ | SONIA ANCOLI-ISRAEL, PHD | ATTN: GENERAL COUNSEL 4280 ARGUELLO STREET SAN DIEGO, CA 92103 |
| 2. 3476 STRATEGIC CONSULTING SERVICES IN CONNECTION WITH PURDUE'S RISK EVALUATION AND MITIGATION STRATEGIES REMS DATED JANUARY 07, 2009 | | 103140 | ☐ | SONNENSCHEIN NATH & ROSENTHAL LLP | ATTN: GENERAL COUNSEL |
| 2. 3477 SOTAX CORPORATION OTH CW2366749 AMEND 4 EXTENSION TO MSA (LH.RA) EFFECTIVE MAY 01, 2019 | 4/30/2022 | 105981 | ☐ | SOTAX CORP | NOT AVAILABLE |

**NAS1561**

**Purdue Pharma L.P.**                                                                **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3478  COMPUTER LOAN AGREEMENT EFFECTIVE AS OF JANUARY 02, 2001 | | 103147 | ☐ | SOUNDVIEW MEDICAL ASSOCIATES | ATTN: GENERAL COUNSEL 520 WEST AVENUE NORWALK, CT 06850 |
| 2. 3479  INVESTOR RIGHTS SIDE LETTER AGREEMENT DATED NOVEMBER 1, 2018 | | 9009 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3480  OPTION AND AGREEMENT AND PLAN OF MERGER DATED OCTOBER 19, 2018 | | 9035 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3481  SECOND AMENDED AND RESTATED INVESTOR RIGHTS AGREEMENT ENTERED INTO NOVEMBER 1, 2018 | | 9008 | ☐ | SPINETHERA INC. | ATTN: PRESIDENT AND CEO 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3482  STOCK PURCHASE AGREEMENT ENTERED NOVEMBER 1, 2018 | | 9036 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3483  VOTING AND SUPPORT AGREEMENT (DAVE WOOD) DATED OCTOBER 17, 2018 | | 9013 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3484  VOTING AND SUPPORT AGREEMENT (JEFF MISSLING) DATED OCTOBER 16, 2018 | | 9021 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3485  VOTING AND SUPPORT AGREEMENT (JEROME K. JEROME) DATED OCTOBER 16, 2018 | | 9020 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |

**NAS1562**

**Purdue Pharma L.P.**                                                  **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3486  VOTING AND SUPPORT AGREEMENT (MARK JOHNSON) DATED OCTOBER 16, 2018 | | 9019 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3487  VOTING AND SUPPORT AGREEMENT (PROMED MOLDED PRODUCTS, INC.) DATED OCTOBER 16, 2018 | | 9018 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3488  VOTING AND SUPPORT AGREEMENT (PROMED PHARMA LLC) DATED OCTOBER 17, 2018 | | 9017 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3489  VOTING AND SUPPORT AGREEMENT (PYOTT TRUST) DATED OCTOBER 17, 2018 | | 9016 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3490  VOTING AND SUPPORT AGREEMENT (ROBERT MISSLING) DATED OCTOBER 16, 2018 | | 9015 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3491  VOTING AND SUPPORT AGREEMENT (WAYNE KELLY) DATED OCTOBER 16, 2018 | | 9014 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3492  WRITTEN CONSENT RESOLUTIONS OF THE STOCKHOLDERS OF SPINETHERA, INC. DATED OCTOBER 16, 2018 | | 9034 | ☐ | SPINETHERA INC. | ATTN: GENERAL COUNSEL 15600 MEDINA ROAD SUITE 247 PLYMOUTH, MN 55447 |
| 2. 3493  CUSTOM SERVICE AGREEMENT EFFECTIVE AS OF OCTOBER 25, 2004 | | 103173 | ☐ | SPRINT SOLUTIONS, INC. | ATTN: VL LAW DEPARTMENT, MARKETING & SALES KSOPHT0101-Z2525 6391 SPRINT PARKWAY OVERLAND PARK 66251-2525 |

**NAS1563**

**Purdue Pharma L.P.**                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3494   LETTER AGREEMENT DATED NOVEMBER 05, 2014 | | 103174 | ☐ | ST. THOMAS AQUINAS COLLEGE | ATTN: GENERAL COUNSEL 125 ROUTE 340 SPARKILL, US 10976 |
| 2. 3495   SEARCH FIRM AGREEMENT DATED OCTOBER 04, 2007 | | 103177 | ☐ | STAFFING SERVICES INC. | ATTN: GENERAL COUNSEL 169 ARBOR CREST SOMERS, US 10589 |
| 2. 3496   TOLLING AGREEMENT DATED MAY 12, 2004 | | 103180 | ☐ | STATE ATTORNEY GENERAL | ATTN: GENERAL COUNSEL 55 ELM STREET HARTFORD, CT 06106 |
| 2. 3497   LETTER AGREEMENT DATED MAY 09, 2003 | | 103185 | ☐ | STEEL HECTOR & DAVIS LLP | ATTN: GENERAL COUNSEL 1900 PHILLIPS POINT WEST 777 SOUTH FLAGLER DRIVE WEST PALM BEACH, US 33401 |
| 2. 3498   INDEMNIFICATION AGREEMENT EFFECTIVE AS OF DECEMBER 30, 2002 | | 103189 | ☐ | STEPHEN LUBER, M.D. | ATTN: GENERAL COUNSEL 400 EAST 5TH AVENUE SPOKANE, WA 99202 |
| 2. 3499   INDEMNIFICATION AGREEMENT EXECUTED DECEMBER 30, 2002 | | 103190 | ☐ | STEPHEN LUBER, M.D. | ATTN: GENERAL COUNSEL 400 EAST 5TH AVENUE SPOKANE, WA 99202 |
| 2. 3500   INDEMNIFICATION AGREEMENT EXECUTED DECEMBER 30, 2002 | | 103191 | ☐ | STEPHEN LUBER, M.D. | ATTN: GENERAL COUNSEL 400 EAST 5TH AVENUE SPOKANE, WA 99202 |
| 2. 3501   AUTHORSHIP AGREEMENT EFFECTIVE AS OF MARCH 23, 2018 | | 103203 | ☐ | STEVEN E. LABKOFF, M.D., FACP, FACMI | ATTN: GENERAL COUNSEL 82 BLACK WOOD LANE STAMFORD, CT 06903 |
| 2. 3502   CONSULTANT SERVICES AGREEMENT DATED OCTOBER 31, 2001 | | 103204 | ☐ | STEVEN K. BRAUER C/O CORSOLUTIONS, INC. | ATTN: GENERAL COUNSEL 1371A ABBOTT COURT BUFFALO GROVE, IL 60089 |
| 2. 3503   TOLLING AND STANDSTILL AGREEMENT DATED JANUARY 30, 2014 | | 103210 | ☐ | STITES & HARBISON PLLC | ATTN: GENERAL COUNSEL 400 WEST MARKET STREET, SUITE 1800 LOUISVILLE, KY 40202 |

**NAS1564**

Case 7:21-cv-07532-CM Document 158-2 Filed 11/15/21 Page 571 of 1000

**Purdue Pharma L.P.**                                                            **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3504  CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF APRIL 01, 2016 | | 103212 | ☐ | STONECOLD INVESTIGATIONS, LLC | ATTN: GENERAL COUNSEL 1060 KANE CONCOURSE BAY HARBOR ISLANDS, FL 33154 |
| 2. 3505  INVESTMENT MANAGEMENT AGREEMENT DATED MARCH 02, 2015 | | 103217 | ☐ | STRATEGIC ADVISERS, INC. | ATTN: GENERAL COUNSEL 82 DEVONSHIRE STREET BOSTON, MA |
| 2. 3506  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF NOVEMBER 06, 2000 | | 103218 | ☐ | STRATEGIC HEALTHCARE CONSULTING, LTD. | ATTN: GENERAL COUNSEL 90 NORWOOD ROAD WEST HARTFORD, CT 06117 |
| 2. 3507  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 16, 2001 | | 103219 | ☐ | STRATEGIC MARKETING CORPORATION | ATTN: BRIAN ATTIG, PH.D. ONE BELMONT AVENUE SUITE 802 BALA CYNWYD, PA 19004-1645 |
| 2. 3508  PRICING AND FORECASTING STUDY AGREEMENT DATED SEPTEMBER 15, 2000 | | 103220 | ☐ | STRATEGIC MARKETING CORPORATION | ATTN: T.H. KERN, M.A. PROJECT MANAGER ONE BELMONT AVENUE SUITE 802 BALA CYNWYD, PA 19004-1645 |
| 2. 3509  CONSULTING AGREEMENT DATED APRIL 08, 1999 | | 103224 | ☐ | STRATEGIC SOLUTIONS NA, INC. | ATTN: GENERAL COUNSEL 1982 WASHINGTON VALLEY ROAD SUITE 156, P.O. BOX 309 MARTINSVILLE, NJ 08836 |
| 2. 3510  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 01, 2018 | | 103226 | ☐ | STU LOESER & CO. | ATTN: GENERAL COUNSEL 1460 BROADWAY NEW YORK, NY 10036 |
| 2. 3511  INDEMNIFICATION AGREEMENT EXECUTED JULY 25, 2000 | | 103228 | ☐ | SUMMIT RESEARCH NETWORK, INC. | ATTN: GENERAL COUNSEL 4704 HARLAN STREET SUITE 500 DENVER, CO 80212 |
| 2. 3512  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 103231 | ☐ | SUVRAT BHARGAVE, M.D. | ATTN: GENERAL COUNSEL 120 HANDLEY ROAD, SUITE 310 TYRONE, GA 30269 |

**NAS1565**

**Purdue Pharma L.P.**                                                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3513  SYMBIANCE AMD4 TO MCRO AGREEMENT CW2359056 (LK.RA) DATED DECEMBER 21, 2017 | | 103258 | ☐ | SYMBIANCE, INC. | ATTN: GENERAL COUNSEL |
| 2. 3514  T11 GROUP CONSULTING ENGAGEMENT LETTER CW2359940 (DT.RA) DATED FEBRUARY 01, 2018 | | 103275 | ☐ | T-11 GROUP CONSULTING, INC. | ATTN: GENERAL COUNSEL 135 SCHOONER LANE COPIAGUE, NY 11725 |
| 2. 3515  ADVANTAGE PREMIUM SUPPORT AGREEMENT EFFECTIVE AS OF SEPTEMBER 05, 2008 | | 103276 | ☐ | TA INSTRUMENTS-WATERS LLC | ATTN: GENERAL COUNSEL 109 LUKENS DRIVE NEW CASTLE, DE 19720 |
| 2. 3516  CONSULTANT SERVICES AGREEMENT DATED FEBRUARY 27, 2017 | | 103277 | ☐ | TAMAR LASKY, PHD | ATTN: GENERAL COUNSEL 6913 BONNIE RIDGE DRIVE APT. 102 BALTIMORE, MD 21209 |
| 2. 3517  AMENDMENT #1 TO CONSULTANT STATEMENT OF WORK DATED AUGUST 28, 2001 DATED JANUARY 07, 2002 | | 103282 | ☐ | TARATEC DEVELOPMENT CORPORATION | NOT AVAILABLE |
| 2. 3518  TTC PREAUDIT AND PAYMENTSA 21NOV2016  CW2350757 AMENDMENT 1 (RJ.EA) DATED JANUARY 25, 2017 | | 103286 | ☐ | TECHNICAL TRAFFIC CONSULTANTS CORP. | ATTN: GENERAL COUNSEL |
| 2. 3519  TENEO STRATEGY LLC - AMENDMENT TO SERVICES AGREEMENT (JM.RA) EFFECTIVE FEBRUARY 01, 2019 | 9/30/2021 | 106094 | ☐ | TENEO STRATEGY, LLC | ATTN: GENERAL COUNSEL 280 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10017 |
| 2. 3520  TENEO STRATEGY LLC - TRADEMARK AND COPYRIGHT ASSIGNMENT AGREEMENT (P. STRASSBURGER) EFFECTIVE APRIL 08, 2019 | 12/31/2049 | 106113 | ☐ | TENEO STRATEGY, LLC | ATTN: GENERAL COUNSEL 280 PARK AVENUE, 4TH FLOOR NEW YORK, NY 10017 |
| 2. 3521  CONSULTANT SERVICES AGREEMENT DATED AUGUST 04, 1997 | | 103290 | ☐ | TENERE CONSULTING | ATTN: GENERAL COUNSEL 27 LOH AVENUE TARRYTOWN, NY 10591-4631 |

**NAS1566**

**Purdue Pharma L.P.**                                                                                           **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3522 CONSULTANT SERVICES AGREEMENT DATED JULY 29, 1997 | | 103289 | ☐ | TENERE CONSULTING | ATTN: DAVID INNES CARGILL, PH.D. 27 LOH AVENUE TARRYTOWN, NY 10591-4631 |
| 2. 3523 LOCKBOX DEPOSIT SERVICE AGREEMENT DATED DECEMBER 07, 2011 | | 103318 | ☐ | THE AMERICAN ASSOCIATION OF POISON CONTROL CENTERS | ATTN: GENERAL COUNSEL 515 KING STREET SUITE 510 ALEXANDRIA, VA 22314 |
| 2. 3524 NON-BINDING MEMORANDUM OF UNDERSTANDING | | 9044 | ☐ | THE BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA | ATTN: OFFICE OF THE CHANCELLOR UNIVERSITY OF NEBRASKA MEDICAL CENTER 986605 NEBRASKA MEDICAL CENTER OMAHA, NE 68198-6605 |
| 2. 3525 AGREEMENT FOR PAYMENT FOR FILLING MEDICAL WRITER CONSULTANT POSITION DATED JULY 17, 1997 | | 103330 | ☐ | THE CENTURY GROUP | ATTN: GENERAL COUNSEL 8400 WEST 110TH STREET SUITE 310 OVERLAND PARK, KS 66210 |
| 2. 3526 AMENDMENT #2 TO STATEMENT OF WORK #3 UNDER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 26, 2018 | | 103331 | ☐ | THE COLORADO PREVENTION CENTER DBA CPC CLINICAL RESEARCH | NOT AVAILABLE |
| 2. 3527 LETTER AGREEMENT FOR ENERGY EFFICIENCY SERVICES DATED AUGUST 26, 1999 | | 103333 | ☐ | THE CONNECTICUT LIGHT AND POWER COMPANY | ATTN: GENERAL COUNSEL 9 TINDALL AVENUE NORWALK, CT 06851 |
| 2. 3528 LETTER AGREEMENT FOR ENERGY EFFICIENCY SERVICES DATED AUGUST 31, 1999 | | 103334 | ☐ | THE CONNECTICUT LIGHT AND POWER COMPANY | ATTN: GENERAL COUNSEL 9 TINDALL AVENUE NORWALK, CT 06851 |
| 2. 3529 AMENDMENT #1 TO CONSULTANT SERVICES AGREEMENT DATED DECEMBER 19, 2017 DATED NOVEMBER 01, 2018 | | 103336 | ☐ | THE DILENSCHNEIDER GROUP, INC. | NOT AVAILABLE |

**NAS1567**

**Purdue Pharma L.P.**                                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3530  FEASIBILITY STUDY AGREEMENT EFFECTIVE AS OF NOVEMBER 09, 2009 | | 103337 | ☐ | THE DOW CHEMICAL COMPANY | ATTN: GLOBAL R&D DIRECTOR, DOW WOLFF CELLLOSICS 2040 DOW CENTER MIDLAND, MI 48674 |
| 2. 3531  AMENDMENT NO. 2 TO NATIONAL SALES TO MARKETING AGREEMENT DATED FEBRUARY 01, 2018 | | 103340 | ☐ | THE EMERSON GROUP | ATTN: GENERAL COUNSEL 407 EAST LANCASTER AVE WAYNE, PA 19087 |
| 2. 3532  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 16, 2017 | | 103342 | ☐ | THE EQUINOX GROUP INC | ATTN: GENERAL COUNSEL 70 WESTVIEW STREET LEXINGTON, MA 02421 |
| 2. 3533  THE IMPERIAL MARKETPLACE WEBSITE ACCESS AGREEMENT EXECUTED DECEMBER 18, 2003 | | 103345 | ☐ | THE IMPERIAL MARKETPLACE | NOT AVAILABLE |
| 2. 3534  CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JUNE 05, 2017 | | 103348 | ☐ | THE MEDICAL AFFAIRS COMPANY | ATTN: GENERAL COUNSEL 125 TOWNPARK DRIVE, #450 KENNESAW, GA 30144 |
| 2. 3535  OFFICE OF THE ATTORNEY GENERAL - STATE OF FLORIDA - AMD TO AGREEMENT DATED 11.1.2002 PPLP AND PURDUE FREDERICK (EGA) DATED APRIL 20, 2003 | | 103361 | ☐ | THE OFFICE OF THE ATTORNEY GENERAL | ATTN: THE OFFICE OF THE ATTORNEY GENERAL FL |
| 2. 3536  OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA AGREEMENT - PPLP AND PURDUE FREDERICK (EGA) DATED OCTOBER 01, 2002 | | 103360 | ☐ | THE OFFICE OF THE ATTORNEY GENERAL | ATTN: THE OFFICE OF THE ATTORNEY GENERAL FL |
| 2. 3537  LETTER OF AGREEMENT EFFECTIVE AS OF OCTOBER 01, 2000 | | 103368 | ☐ | THE PEOPLE OF THE STATE OF NEW YORK FOR THE ELDERLY PHARMACEUTICAL INSURANCE COVERAGE (EPIC) PROGRAM | NOT AVAILABLE |
| 2. 3538  SEARCH FIRM AGREEMENT EFFECTIVE AS OF DECEMBER 13, 2010 | | 103378 | ☐ | THE RALEIGH, NC, OFFICE OF HUDSON PROFESSIONAL | ATTN: GENERAL COUNSEL 2300 REXWOODS DRIVE SUITE 380 RALEIGH, NC 27607 |

**NAS1568**

**Purdue Pharma L.P.**                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3539 AGREEMENT EFFECTIVE AS OF APRIL 19, 2002 | | 103384 | ☐ | THE STANDARD REGISTER COMPANY | ATTN: GENERAL COUNSEL 600 ALBNAY STREET DAYTON, OH 45408 |
| 2. 3540 AGREEMENT OF SALE DATED OCTOBER 02, 2003 | | 103385 | ☐ | THE STANDARD REGISTER COMPANY | ATTN: GENERAL COUNSEL 600 ALBANY STREET DAYTON, OH 45408-1442 |
| 2. 3541 THE STEVENSON GROUP - SEARCH FIRM AGREEMENT (RA) DATED SEPTEMBER 10, 2018 | | 103387 | ☐ | THE STEVENSON GROUP | ATTN: GENERAL COUNSEL 2115 LINWOOD AVENUE, SUITE 301 FORT LEE, NJ 07024 |
| 2. 3542 UNIVERSITY OF NEBRASKA MEDICAL CENTER (UNMC) - COLLABORATION AGREEMENT DATED DECEMBER 14, 2016 | | 103388 | ☐ | THE UNIVERSITY OF NEBRASKA MEDICAL CENTER | ATTN: GENERAL COUNSEL 986605 NEBRASKA MEDICAL CENTER OMAHA, NE 68198 |
| 2. 3543 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2019 | | 103398 | ☐ | THOMAS BROWN, PH.D. | ATTN: GENERAL COUNSEL 500 S. SEPULVEDA BOULEVARD, SUITE 281 MANHATTAN BEACH, CA 90266 |
| 2. 3544 STATEMENT OF WORK UNDER MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 30, 2017 | | 103399 | ☐ | THOMAS KOSTEN, MD | NOT AVAILABLE |
| 2. 3545 MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 01, 2016 | | 103401 | ☐ | THOMAS R. KOSTEN, MD | ATTN: GENERAL COUNSEL 4615 HOLT STREET BELLAIRE, TX 77401 |
| 2. 3546 THOMSON REUTERS OTH CW2363840 TERMINATION LETTER FOR WESTLAW (LH.RA) DATED MARCH 28, 2018 | | 103406 | ☐ | THOMSON REUTERS | ATTN: GENERAL COUNSEL 610 OPPERMAN DRIVE EAGEN, MN 55123 |
| 2. 3547 THOMSON REUTERS OTH CW2363840 TERMINATION LETTER FOR WESTLAW (LH.RA) EFFECTIVE FEBRUARY 04, 2019 | 3/31/2020 | 105929 | ☐ | THOMSON REUTERS HEALTHCARE INC. | NOT AVAILABLE |
| 2. 3548 SAAS SERVICES ORDER FORM - EMPLOYEE VOLUNTEERING MODULE DATED DECEMBER 10, 2018 | | 103407 | ☐ | THRIVE CSR LIMITED | ATTN: GENERAL COUNSEL 131 HIGH STREET HOLYWOOD, CO. DOWN BT 18 0QA |

NAS1569

**Purdue Pharma L.P.**                                                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3549 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF SEPTEMBER 19, 2018 | | 103415 | ☐ | TIMOTHY BILKEY, MD, F.R.C.P. | ATTN: GENERAL COUNSEL 245-400 BAYFIELD ST BARRIE, ON, CANADA ON N5A 1J2 CANADA |
| 2. 3550 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 01, 2018 | | 103420 | ☐ | TOM KWIECIAK CONSULTING, LLC | ATTN: GENERAL COUNSEL 3408 33RD WAY NW OLYMPIA, WA 98502 |
| 2. 3551 TONKON TORP OTH CW2363825 AMEND TO EXTEND THRU 12312020 (LH.RA) DATED OCTOBER 10, 2018 | | 103421 | ☐ | TONKON TORP LLP | ATTN: GENERAL COUNSEL |
| 2. 3552 MATERIAL TRANSFER AGREEMENT DATED APRIL 22, 1998 | | 103422 | ☐ | TORAY INDUSTRIES, INC. | ATTN: GENERAL COUNSEL 2-1 NIHONBASHI-MUROMACHI 2-CHROME CHUO-KU TOKYO, JAPAN 103-8666 |
| 2. 3553 PURCHASE AGREEMENT DATED FEBRUARY 01, 2001 | | 103434 | ☐ | TOTALS COMMUNICATIONS SOLUTIONS, INC. | ATTN: GENERAL COUNSEL 139 FULON STREET, SUITE 818C NEW YORK, NY 10038 |
| 2. 3554 TRACELINK AMENDMENT CW2354545 05252017 (DS.EA) DATED AUGUST 31, 2017 | | 103437 | ☐ | TRACELINK, INC. | ATTN: GENERAL COUNSEL 400 RIVERPARK DRIVE, SUITE 200 NORTH READING, MA 01864 |
| 2. 3555 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF OCTOBER 27, 1997 | | 103440 | ☐ | TRANSACTION INFORMATION SYSTEMS | ATTN: GENERAL COUNSEL PURDUE: 100 CONNECTICUT AVENUE, NORWALK CT 06850 TRANSACTION: 115 BROADWAY, NEW YORK, NY 10006 |
| 2. 3556 AMENDMENT TO LETTER AGREEMENT DATED JULY 31, 2009 | | 103446 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVS. SUITE 110 PT. RICHMOND, CA 94804 |
| 2. 3557 COMMON INTEREST AGREEMENT DATED JULY 31, 2009 | | 103443 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVS. SUITE #110 PT. RICHMOND, CA 94804 |

**NAS1570**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3558 COVENANT NOT TO SUE CONCERNING U.S. PAT. NO. 7,658,945 DATED MARCH 21, 2013 | | 103449 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVS. SUITE 110 PT. RICHMOND, CA 94804 |
| 2. 3559 SAFETY DATA EXCHANGE AGREEMENT DATED JULY 01, 2011 | | 103445 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVD, SUITE 110 POINT RICHMOND, CA 94804 |
| 2. 3560 SAFETY DATA EXCHANGE AGREEMENT DATED OCTOBER 07, 2013 | | 103448 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVD, SUITE 110 POINT RICHMOND, CA 94804 |
| 2. 3561 SAFETY DATA EXCHANGE AGREEMENT EXECUTED JULY 01, 2011 | | 103441 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 WEST CUTTING BOULEVARD SUITE #110 PT. RICHMOND, CA 94804 |
| 2. 3562 SIDE LETTER AGREEMENT RE MISCELLANEOUS MANUFACTURING ITEMS DATED NOVEMBER 28, 2011 | | 103447 | ☐ | TRANSCEPT PHARMACEUTICALS, INC. | ATTN: GENERAL COUNSEL 1003 W. CUTTING BLVD, SUITE 110 POINT  RICHMOND, CA 94804 |
| 2. 3563 COVENANT NOT TO SUE EFFECTIVE AS OF APRIL 29, 2013 | | 103451 | ☐ | TRANSCEPT PHARMACEUTICALS/NOVEL LABORATORIES, INC. | ATTN: GENERAL COUNSEL TRANSCEPT: 1003 W. CUTTING BLVS. SUITE 110 PT. RICHARD, CA 94804 |
| 2. 3564 AMENDMENT #3 TO MASTER CONSULTANT SERVICES AGREEMENT DATED OCTOBER 10, 2011 | | 103455 | ☐ | TRANSPERFECT TRANSLATIONS, INC. | ATTN: GENERAL COUNSEL 3 PARK AVENUE, 39TH FLOOR NEW YORK, NY 10016 |
| 2. 3565 MASTER CONSULTANT SERVICES EFFECTIVE AS OF OCTOBER 10, 2011 | | 103456 | ☐ | TRANSPERFECT, INC | ATTN: IN-HOUSE COUNSEL 3 PARK AVENUE, 39TH FLOOR NEW YORK, NY 10016 |
| 2. 3566 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 04, 2018 | | 103461 | ☐ | TRIBUNE BROADCASTING HARTFORD, LLC | ATTN: GENERAL COUNSEL 285 BROAD STREET HARTFORD, CT 06115 |

**NAS1571**

**Purdue Pharma L.P.**                                                  **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3567 DEPARTMENT OF DEFENSE ("DOD") SECTION 703 PRICING AGREEMENT ("AGREEMENT") EFFECTIVE AS OF NOVEMBER 03, 2009 | | 103462 | ☐ | TRICARE MANAGEMENT ACTIVITY | ATTN: GENERAL COUNSEL SKYLINE 5 SUITE 810 5112 LEESBURG PIKE FALLS CHURCH, VA 22041-3206 |
| 2. 3568 PRICING AGREEMENT EFFECTIVE AS OF OCTOBER 30, 2009 | | 103464 | ☐ | TRICARE MANAGEMENT ACTIVITY | ATTN: GENERAL COUNSEL PHARMACEUTICAL OPERATIONAL DIRECTORATE,TRICARE RETAIL REFUND PROGRAM SKYLINE 5 SUITE 810, 5111 LEESBURG PIKE FALLS CHURCH, VA 22041-3206 |
| 2. 3569 VOLUNTARY AGREEMENTS FOR TRICARE RETAIL PHARMACY REFUNDS FOR UNIFORM FORMULARY PLACEMENT DATED MAY 25, 2010 | | 103465 | ☐ | TRICARE RETAIL PHARMACY PROGRAM | ATTN: GENERAL COUNSEL SKYLINE 5 SUITE 810 5112 LEESBURG PIKE FALLS CHURCH, VA 22041-3206 |
| 2. 3570 PROJECT AGREEMENT EFFECTIVE AS OF MARCH 28, 2001 | | 103466 | ☐ | TRICOM PICTURES | ATTN: GENERAL COUNSEL |
| 2. 3571 TRUVEN HEALTH ANALYTICS AMD 11012016 CW2321919 MARKETSCAN DATA RENEWAL (LH.ER) DATED NOVEMBER 15, 2001 | | 103471 | ☐ | TRUVEN HEALTH ANALYTICS INC. | ATTN: GENERAL COUNSEL 26361 NETWORK PLACE CHICAGO, IL 60673 |
| 2. 3572 TUFTS MASTER 05162016 CW2221944 (LH.ER) DATED MAY 16, 2016 | | 103476 | ☐ | TUFTS MEDICAL CENTER, INC. | ATTN: GENERAL COUNSEL 800 WASHINGTON STREET, BOX 817 BOSTON, MA 02111 |
| 2. 3573 AGREEMENT EFFECTIVE AS OF OCTOBER 20, 1999 | | 103477 | ☐ | TUFTS UNIVERSITY SCHOOL OF MEDICINE | ATTN: GENERAL COUNSEL 136 HARRISON AVENUE BOSTON, MA 02111 |
| 2. 3574 CONSULTANT ENGAGEMENT LETTER EFFECTIVE AS OF APRIL 01, 2016 | | 103482 | ☐ | TWILIGHT INVESTIGATIONS, INC. | ATTN: GENERAL COUNSEL 1360 CLIFTON AVENUE, #225 CLIFTON, NJ 07012 |
| 2. 3575 UPS AMENDMENT 1 TO CARRIER AGREEMENT 11MAY2017 CW2354238 (RJ.EA) DATED NOVEMBER 20, 2006 | | 103492 | ☐ | UNITED PARCEL SERVICE, INC. | ATTN: GENERAL COUNSEL |

**NAS1572**

**Purdue Pharma L.P.**                                                                    **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3576 AGREEMENT BETWEEN OWNER AND CONTRACTOR DATED FEBRUARY 20, 2003 | | 103494 | ☐ | UNITY CONSTRUCTION SERVICES, INC. | ATTN: GENERAL COUNSEL 2500 MAIN STREET SAYREVILLE, NJ 08872 |
| 2. 3577 PROVIDING EQUIPMENT LETTER EFFECTIVE AS OF APRIL 19, 2000 | | 103504 | ☐ | UNIVERSITY CLINICAL RESEARCH | ATTN: GENERAL COUNSEL 1150 NORTH UNIVERSITY DRIVE PEMBROKE PINES, FL 33024 |
| 2. 3578 INDEMNIFICATION AGREEMENT EXECUTED JULY 24, 2000 | | 103506 | ☐ | UNIVERSITY CLINICAL RESEARCH - DELAND | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 3579 INDEMNIFICATION AGREEMENT EXECUTED JUNE 23, 2000 | | 103505 | ☐ | UNIVERSITY CLINICAL RESEARCH - DELAND | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 3580 INDEMNIFICATION AGREEMENT EXECUTED SEPTEMBER 26, 2000 | | 103507 | ☐ | UNIVERSITY CLINICAL RESEARCH - DELAND | ATTN: GENERAL COUNSEL 925 NORTH SPRING GARDEN AVENUE DELAND, FL 32720 |
| 2. 3581 AMENDMENT LETTER AGREEMENT DATED DECEMBER 02, 2011 | | 103531 | ☐ | UNIVERSITY OF BRIDGEPORT | ATTN: GENERAL COUNSEL 126 PARK AVENUE BRIDGEPORT, CT 06604 |
| 2. 3582 AMENDMENT TO LETTER AGREEMENT DATED DECEMBER 02, 2011 | | 103529 | ☐ | UNIVERSITY OF BRIDGEPORT | ATTN: GENERAL COUNSEL 126 PARK AVENUE BRIDGEPORT, CT 06604 |
| 2. 3583 AGREEMENT FOR SALE OF BIOLOGICAL MATERIAL EFFECTIVE AS OF MARCH 11, 2003 | | 103546 | ☐ | UNIVERSITY OF MEDICINE & DENTISTRY OF NEW JERSEY | ATTN: GENERAL COUNSEL LIBERTY PLAZA ROOM 3200, 335 GEORGE STREET NEW BRUNSWICK, NJ 08901 |
| 2. 3584 AMENDMENT LETTER AGREEMENT DATED FEBRUARY 22, 2012 | | 103551 | ☐ | UNIVERSITY OF NEW HAVEN | ATTN: GENERAL COUNSEL 300 BOSTON POST ROAD WEST HAVEN, CT 06516 |

**NAS1573**

**Purdue Pharma L.P.**                                                                                          **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3585 LETTER AGREEMENT EFFECTIVE AS OF APRIL 01, 2012 | | 103552 | ☐ | UNIVERSITY OF NEW HAVEN | ATTN: GENERAL COUNSEL 300 BOSTON POST ROAD WEST HAVEN, CT 06516 |
| 2. 3586 TERMINATION OF STUDY EFFECTIVE AS OF MAY 10, 2004 | | 103560 | ☐ | UNIVERSITY OF SASKATCHEWAN | ATTN: GENERAL COUNSEL ROOM 1607, 110 GYMNASIUM PLACE BOX 5000 RPO UNIVERSITY SASKATOON, SK, CANADA SK S7N 4J8 CANADA |
| 2. 3587 ACADEMIC ALLIANCE COLLABORATION AGREEMENT DATED FEBRUARY 16, 2017 | | 103567 | ☐ | UNIVERSITY OF TEXAS | ATTN: GENERAL COUNSEL 7000 FANNIN STREET SUITE 720 HOUSTON, TX 77030 |
| 2. 3588 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF MAY 01, 2017 | | 103583 | ☐ | UNIVERSITY PHYSICIANS INC. D/B/A UNIVERSITY OF COLORADA MEDICINE | ATTN: GENERAL COUNSEL 13199 E. MONTVIEW BOULEVARD AURORA, CO 80045 |
| 2. 3589 AGREEMENT EFFECTIVE AS OF NOVEMBER 20, 2006 | | 103601 | ☐ | UPS-UNITED PARCEL SERVICE, INC. | ATTN: GENERAL COUNSEL |
| 2. 3590 RETURNS MANAGEMENT AGREEMENT DATED DECEMBER 01, 2004 | | 103618 | ☐ | USF PROCESSSORS, INC. | ATTN: GENERAL COUNSEL 4055 VALLEY VIEW LANE DALLAS, TX 75244 |
| 2. 3591 SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS DATED APRIL 02, 2012 | | 103619 | ☐ | VA NATIONAL ACQUISITION CENTER | ATTN: GENERAL COUNSEL FEDERAL SUPPLY SCHEDULE SERVICE 049A2 PO BOX 76, BLDG 37 HINES, IL 60141 |
| 2. 3592 VALENTINO STELLA CSA 061716 CW2220953 PRODUCTSUBSTANCE_STABILITYCONSULTING (AA.MP) DATED AUGUST 01, 2016 | | 103620 | ☐ | VALENTINO J. STELLA, PHD | ATTN: GENERAL COUNSEL 1135 WEST CAMPUS ROAD LAWRENCE, KANSAS 66044 |

**NAS1574**

**Purdue Pharma L.P.**                                                                 **Case Number: 19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3593 LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 103622 | ☐ | VALLEY WHOLESALE DRUG CO, INC. | ATTN: GENERAL COUNSEL 1401 WEST FREMONT STREET STOCKTON, CA 95203 |
| 2. 3594 AMEND NUMBER7 VALUECENTRIC CW2357410 DATA(AB.RA) DATED SEPTEMBER 02, 2017 | | 103629 | ☐ | VALUE CENTRIC, LLC | ATTN: GENERAL COUNSEL |
| 2. 3595 VALUE CENTRIC AMD 6 01012017 CW2350836 AMENDMENT DATA (AB.LLS) DATED JANUARY 01, 2017 | | 103628 | ☐ | VALUE CENTRIC, LLC | ATTN: GENERAL COUNSEL |
| 2. 3596 LETTER OF CLARITY EFFECTIVE AS OF FEBRUARY 13, 2015 | | 103632 | ☐ | VALUE DRUG COMPANY | ATTN: GENERAL COUNSEL ONE GOLF VIEW DRIVE ALTOONA, PA 16601 |
| 2. 3597 VANGUARD PAIN MANAGEMENT CONSULTING OTH CW2366437 CSA AMD EXTEND ATKINSON (LH.RA) EFFECTIVE JANUARY 01, 2019 | 12/31/2021 | 105986 | ☐ | VANGUARD PAIN MANAGEMENT CONSULTING LLC | NOT AVAILABLE |
| 2. 3598 SEARCH FIRM AGREEMENT DATED MAY 16, 2007 | | 103650 | ☐ | VANGUARD TEMPORARIES, INC. | ATTN: GENERAL COUNSEL 633 3RD AVENUE NEW YORK, NY 10017 |
| 2. 3599 AGREEMENT AND MUTUAL RELEASE DATED DECEMBER 13, 2012 | | 103670 | ☐ | VERIX, INC. | NOT AVAILABLE |
| 2. 3600 BACKGROUND INFORMATION E-MAILS EFFECTIVE AS OF APRIL 17, 2015 | | 103673 | ☐ | VETERANS ADMINISTRATION | ATTN: GENERAL COUNSEL |
| 2. 3601 ASSET PURCHASE AGREEMENT DATED SEPTEMBER 04, 2015 | | 103698 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA 94538 |
| 2. 3602 ASSET PURCHASE AGREEMENT DATED SEPTEMBER 04, 2015 | | 103695 | ☐ | VM PHARMA LLC | ATTN: JAY WU, PH.D 45535 NORTHPORT LOOP EAST FREMONT, CA 94538 |

**NAS1575**

**Purdue Pharma L.P.**                                                                                   **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3603 ASSET PURCHASE AGREEMENT DATED SEPTEMBER 04, 2015 | | 103696 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA 94538 |
| 2. 3604 ASSET PURCHASE AGREEMENT DATED SEPTEMBER 04, 2015 | | 103697 | ☐ | VM PHARMA LLC | ATTN: GENERAL COUNSEL 45535 NORTHPORT LOOP EAST FREMONT, CA 94538 |
| 2. 3605 AMENDMENT #1 TO SUBSCRIPTION AGREEMENT DATED FEBRUARY 15, 2018 | | 103705 | ☐ | VOXX ANALYTICS | ATTN: GENERAL COUNSEL |
| 2. 3606 SHARED EMERGENCY GENERATOR SYSTEM AGREEMENT DATED MARCH 30, 2016 | | 103708 | ☐ | W.J. DEUTSCH & SONS LTD. | ATTN: GENERAL COUNSEL 201 TRESSER BOULEVARD STAMFORD, CT 06901 |
| 2. 3607 WELLNESS PROGRAM AGREEMENT DATED JANUARY 21, 2011 | | 103714 | ☐ | WALKINGSPREE USA LTD | ATTN: GENERAL COUNSEL 24165 INTERSTATE HIGHWAY 10, SUITE 217-485 SAN ANTONIO, TX 78257 |
| 2. 3608 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF AUGUST 12, 2016 | | 103716 | ☐ | WALTZER KUTZ, JR., MD | ATTN: GENERAL COUNSEL 480 HAZELWOOD COVE COPPELL, TX 75019 |
| 2. 3609 CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF JANUARY 16, 2001 | | 103717 | ☐ | WARREN E. TODD | ATTN: GENERAL COUNSEL 32 SUTTON FARM ROAD FLEMINGTON, NJ 08822 |
| 2. 3610 RELEASE DATED APRIL 25, 2013 | | 103719 | ☐ | WASTON LABORATORIES, INC.; ANDRX LABS, LLC | ATTN: GENERAL COUNSEL 1955 ORANGE DRIVE DAVIE, FL 33314 |
| 2. 3611 CONSULTANT SERVICES AGREEMENT DATED DECEMBER 20, 1999 | | 103725 | ☐ | WAY WITH WORDS COMMUNICATIONS | ATTN: BARBARA RUSSELL 29 THRUSH TERRACE EAST GREENBUSH, NY 12061 |
| 2. 3612 CHANGE IN PAYOR ON INVOICES EFFECTIVE AS OF AUGUST 28, 2012 | | 103729 | ☐ | WEST PUBLISHING | ATTN: GENERAL COUNSEL 610 OPPERMAN DRIVE P.O. BOX 64833 ST. PAUL, MN 55164 |

**NAS1576**

**Purdue Pharma L.P.**                                                      **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3613 LAWYER LETTER EFFECTIVE AS OF SEPTEMBER 08, 2011 | | 103732 | ☐ | WIGGIN AND DANA LLP | ATTN: GENERAL COUNSEL TWO STAMFORD PLAZA, 281 TRESSER BOULEVARD STAMFORD, CT 06901 |
| 2. 3614 RETENTION OF WIGGIN  DANA LLP RE PHYSICIANS HEALTHSOURCE, INC. DATED OCTOBER 02, 2012 | | 103733 | ☐ | WIGGIN AND DANA, LLP | ATTN: GENERAL COUNSEL ONE CENTURY TOWER        P.O. BOX 1832 NEW HAVEN, CT 06508 |
| 2. 3615 PURDUE BROCK CONSULTING AGREEMENT  DATED NOVEMBER 19, 2018 | | 103736 | ☐ | WILLIAM J. BROCK | ATTN: GENERAL COUNSEL 19909 HAMIL CIRCLE MONTGOMERY VILLAGE, MD 20886 |
| 2. 3616 ENGAGEMENT LETTER DATED JANUARY 13, 2003 | | 103737 | ☐ | WILMER CUTLER PICKERING HALE AND DORR, LLP | ATTN: GENERAL COUNSEL 60 STATE STREET BOSTON, MA 02109 |
| 2. 3617 SEARCH FIRM AGREEMENT DATED SEPTEMBER 30, 2010 | | 103739 | ☐ | WINDSOR RESOURCES, INC. | ATTN: GENERAL COUNSEL 1601 BROADWAY, 11TH FLOOR NEW YORK, NY 10019 |
| 2. 3618 WORLD HEALTH INFORMATION SCIENCE CONSULTANTS (WHISCON) AMD 1 TO MSA EXTEND MASTER CW2368017 (LH.RA) EFFECTIVE AUGUST 12, 2019 | 4/1/2021 | 105949 | ☐ | WORLD HEALTH INFORMATION SCIENCE | NOT AVAILABLE |
| 2. 3619 WORLD HEALTH INFORMATION SCIENCE CONSULTANTS 09092016 CW2319960 (LH.ER) DATED SEPTEMBER 09, 2016 | | 103748 | ☐ | WORLD HEALTH INFORMATION SCIENCE CONSULTANTS | ATTN: GENERAL COUNSEL 275 GROVE STREET NEWTOWN, MA 02466 |
| 2. 3620 WORLD WISE CONSULTING MSA AMD 2 CW2359850 (DT.RA) DATED FEBRUARY 01, 2018 | | 103749 | ☐ | WORLD WISE CONSULTING, INC. | ATTN: GENERAL COUNSEL |
| 2. 3621 WORLD WISE CONSULTING SOW 1 CW2359713 (DT.RA) DATED FEBRUARY 01, 2018 | | 103750 | ☐ | WORLD WISE CONSULTING, INC. | ATTN: GENERAL COUNSEL 1970 NW 70TH AVENUE MIAMI, FL 33126 |

NAS1577

**Purdue Pharma L.P.**                                                                 Case Number:  19-23649 (RDD)

## Schedule G: Executory Contracts and Unexpired Leases

| Nature of the Debtor's Interest | Expiration Date | Contract ID | Co-Debtor | Name | Address |
|---|---|---|---|---|---|
| 2. 3622  CONSENT AGREEMENT EXECUTED DECEMBER 12, 2013 | | 103751 | ☐ | WORLDWIDE CLINICAL TRIALS, INC. | ATTN: GENERAL COUNSEL 1000 CONTINENTAL DRIVE, SUITE 209 KING OF PRUSSIA, PA 19406 |
| 2. 3623  YPRIME AMD MASTER CW2352918 (LH.RA) DATED MARCH 31, 2017 | | 103756 | ☐ | YPRIME, INC. | ATTN: GENERAL COUNSEL 263 GREAT VALLEY PARKWAY MALVERN, PA 19355 |
| 2. 3624  MASTER CONSULTANT SERVICES AGREEMENT EFFECTIVE AS OF DECEMBER 01, 2016 | | 103758 | ☐ | ZACHARY CONTRERAS, PHARMD | ATTN: GENERAL COUNSEL 8716 CASA DEL RIO LANE FAIR OAKS 95628 CANADA |
| 2. 3625  ZETETIC INC - CONSULTING ENGAGEMENT LETTER 15OCT16 CW2322980 (PT  RA) DATED OCTOBER 15, 2016 | | 103760 | ☐ | ZETETIC, INC. | ATTN: GENERAL COUNSEL 114 N. OHIO STREET, SUITE 103 CELINA 75009 |
| 2. 3626  LETTER OF AGREEMENT - AUTHORSHIP OF MANUSCRIPTS AS AN INDEPENDENT CONTRACTOR DATED APRIL 03, 2018 | | 103761 | ☐ | ZIA CHAUDHRY | 90 POPLAR STREET TRUMBULL, CT 06611 |

**NAS1578**

**Purdue Pharma L.P.**                                                    **Case Number:  19-23649 (RDD)**

## Schedule G: Executory Contracts and Unexpired Leases

**TOTAL NUMBER OF CONTRACTS:  3626**

**NAS1579**

Case 7:21-cv-07532-CM    Document 158-2    Filed 11/15/21    Page 586 of 1000

**Purdue Pharma L.P.**                                    **Case Number:  19-23649 (RDD)**

## Schedule H: Codebtors

1.  **Does the debtor have any codebtors?**

    ☑ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

    ☐ Yes

2.  **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, Schedules D-G.**

    Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1 | Column 2 | Applicable Schedule | | |
|---|---|---|---|---|
| **Codebtor Name and Mailing Address** | **Creditor Name** | **D** | **E/F** | **G** |
| 2. 1 | | ☐ | ☐ | ☐ |

**Total Number of Co-Debtor / Creditor rows: 0**

**NAS1580**

Case 7:21-cv-07532-CM   Document 153-3   Filed 11/15/21   Page 587 of 1000

| Fill in this information to identify the case: | |
|---|---|
| Debtor Name: | Purdue Pharma L.P. |
| United States Bankruptcy Court for the: | SOUTHERN DISTRICT OF NEW YORK |
| Case Number (if known): | 19-23649 (RDD) |

☐ Check if this is an amended filing

## Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

**12/15**

---

### Part 1:   Summary of Assets

---

1. **Schedule A/B: Assets–Real and Personal Property**  (Official Form 206A/B)

    1a. **Real property:**

        Copy line 88 from Schedule A/B ...................................................................................

        $4,924,196

    1b. **Total personal property:**

        Copy line 91A from Schedule A/B ...............................................................................

        $1,538,351,742

        **+**

    1c. **Total of all property:**

        Copy line 92 from Schedule A/B ...............................................................................

        $1,543,275,938

---

### Part 2:   Summary of Liabilities

---

2. **Schedule D: Creditors Who Have Claims Secured by Property**  (Official Form 206D)

    Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D .............................

    $0

3. **Schedule E/F: Creditors Who Have Unsecured Claims**  (Official Form 206E/F)

    3a. **Total claim amounts of priority unsecured claims:**

        Copy the total claims from Part 1 from line 6a of Schedule E/F ...................................................

        $1,627,548

    3b. **Total amount of claims of nonpriority amount of unsecured claims:**

        Copy the total of the amount of claims from Part 2 from line 6b of Schedule E/F .......................................

        $14,250,045

        **+**

4. **Total liabilities**

    Lines 2 + 3a + 3b .................................................................................................

    $15,877,593

**NAS1581**

**Fill in this information to identify the case and this filing:**

Debtor Name: Purdue Pharma L.P.

United States Bankruptcy Court for the: SOUTHERN DISTRICT OF NEW YORK

Case Number (if known): 19-23649 (RDD)

## Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

Warning -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and Signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- [X] Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)
- [X] Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)
- [X] Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)
- [X] Schedule G:  Executory Contracts and Unexpired Leases (Official Form 206G)
- [X] Schedule H: Codebtors (Official Form (206H)
- [X] Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)
- [ ] Amended Schedule _____
- [ ] Other document that requires a declaration _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 28, 2019

Signature: _____

Jon Lowne, Senior Vice President and Chief Financial Officer, Purdue Pharma L.P.

**Name and Title**

**HEARING DATE: MAY 4, 2021**
**HEARING TIME: 10:00 A.M.**

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| PURDUE PHARMA L.P., *et al*., | : | Case No. 19-23649 (RDD) |
| | : | |
| Debtors.[1] | : | (Jointly Administered) |
| | : | |

## NAS AD HOC COMMITTEE'S LIMITED OBJECTION TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES MOTION

The NAS Children Ad Hoc Committee ("**NAS Ad Hoc**"), through its counsel, Tarter

Krinsky & Drogin LLP, respectfully submits this objection (the "**Objection**") to the (i) Debtors'

*First Amended Disclosure Statement for Chapter 11 Plan for Purdue Pharma L.P. and its Affiliated*

*Debtors* [Docket No. 2734] (the "**Disclosure Statement**") for the *First Amended Joint Chapter 11*

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).  The Debtors shall include their affiliates and other entities under their control. The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**NAS1583**

*Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* [Docket No. 2731] (the

"**Plan**")[2] and (ii) *Debtors' Motion to Approve (I) the Adequacy of Information in the Disclosure*

*Statement, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice*

*Procedures in Connection Therewith, and (IV) Certain Dates With Respect Thereto*, (the

"**Solicitation Procedures Motion**") [Docket No. 2489.  For its Objection, the NAS Ad Hoc

respectfully submits the *Declaration of Scott R. Bickford in Support of NAS Ad Hoc Committee's*

*Limited Objection to Disclosure Statement and Solicitation Procedures Motion* (the "**Bickford**

**Declaration**"), attached hereto as Exhibit 1, and respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Disclosure Statement, including the personal injury trust distribution

procedures (the "**PI TDP**") (drafted without the input of the NAS Ad Hoc[3]), filed less than 3 days

before the deadline to object to the Disclosure Statement as Exhibit C to the *Plan Supplement*

*Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P.*

*and its Affiliated Debtors* [Docket No. 2732],  fails to identify the eligibility or qualifications for

any NAS Child to obtain a distribution on account of a filed proof of claim.  This failure to disclose

is particularly devastating to the NAS Children because, under the PI TDP, it appears the NAS

Children, despite the thousands of claims filed on their behalf, will very likely receive ***no***

***distribution*** under the Plan.[4]  In fact, based on the NAS Ad Hoc's analysis of the PI TDP, the NAS

---

[2]     Capitalized terms used but not defined herein shall have the meaning given to such term in the Disclosure Statement or Plan, as the case may be.

[3]     Pursuant to the Order Appointing Mediators [Docket No. 895] (the "**Mediation Order**"), the NAS Ad Hoc participated in the Court ordered mediation for the NAS Monitoring Trust Documents.  The NAS Ad Hoc sought, but was denied, participation with respect to the PI Trust Documents.

[4]     While the NAS Ad Hoc received a version of the PI TDP prior its filing, the NAS Ad Hoc has not had ample opportunity to conduct a detailed review of the PI TDP.  In any event, it appears to be substantially similar to prior circulated versions of the PI TDP, none of which provide fair or adequate relief for the NAS Children.  Because NAS Ad Hoc received the PI TDP only a few days before the deadline to file this Objection, it reserves the right to supplement this Objection after it has had an opportunity to fully review the PI TDP.

**NAS1584**

Children will receive only *0.7% in the aggregate* of the $750 million to be distributed to adult personal injury claimants under the Plan. The Plan is therefore, at its core, inconsistent with the Court's admonition that: "the parties simply need to conclude these negotiations so that a plan can be filed because, as we all know, every day that passes some poor soul is not getting either the counseling that he or she needs, or an NAS baby is no longer a baby, and her grandparents are not getting the help they need." See In re Purdue Pharma, L.P., Case No. 19-23649(RDD) (Bankr. S.D.N.Y.), Dec. 15, 2020 Hr'g. Tr., at 36:6-11 (Judge Drain comments). Unfortunately, the Disclosure Statement fails to disclose the Plan fails to provide the NAS Children or their caregivers with the help they need.

2. Next, the Solicitation Procedures Motion does not provide a mechanism for voting the Class 9 NAS Monitoring Claims. Because the beneficiaries of this class are a class of claimants, as opposed to individual claimants, the equivalent of a class representative needs to be appointed to vote the claims in Class 9. A similar solution was utilized in In re Insys Therapeutics, Inc., et al., Case No 19-11292 (Bankr. D. Del.).

3. In addition, the Plan as currently constituted is patently unconfirmable, as it: (i) unfairly prejudices and improperly classifies the NAS Children; (ii) contains unconstitutional releases; and (iii) contains a non-consensual channeling injunction. The NAS Children should be separately classified under section 1122(a) of the Bankruptcy Code from all other unsecured claims because their injuries, in contrast to the injuries alleged by adults who claim addiction to opioids, are: (a) the result of involuntary in utero exposure to opioids; and (b) more severe and permanent, certainly with respect to impacts upon structural brain development.

4. Further, the claims of NAS Children have a higher value because they generally are not subject to the constraints of statutes of limitation or contributory-comparative negligence

NAS1585

defenses that are applicable to adult personal injury claimants. Moreover, a cursory review of the PI TDP shows that it unfairly prejudices the NAS Children, as it appears to (i) arbitrarily and artificially (a) require proof of a temporal relationship between the prescription of certain NDC-labeled Purdue opioids and the victim's first documented instance of addiction or substance abuse and (b) tie recovery to the direct and persistent use of a Purdue product, which is unique to individuals in that no other class of creditor, public or private, is compelled to prove that its harm resulted from a Purdue product and (ii) treat the NAS Children substantially different than other claimants within the personal injury Claimant Class, which violates Section 1123(a)(4) of the Bankruptcy Code. A plan that does not satisfy sections 1122 and 1123 of the Bankruptcy Code cannot satisfy the requirements of section 1129 of the Bankruptcy Code and therefore should not be distributed to creditors as it is patently unconfirmable.

5. Similarly, to the extent the release and channeling injunction provisions purport to release the claims of "any Cause of Action held by a natural person who is not yet born or who has not yet attained majority as of the Petition Date or as of the Effective Date," the same are unconstitutional. The Due Process Clause of the U.S. Constitution and numerous state constitutions prohibit such a release.

6. Lastly, the extraordinarily broad release provisions, which discharge from liability the Debtors' officers, directors, employees, etc., the non-Debtor affiliates, and anyone remotely connected to the foregoing, do not satisfy the standards set forth in Metromedia for a third-party release.

## **BACKGROUND**

7. The NAS Ad Hoc represents the legal interests of thousands of children injured by fetal exposure to synthetic opioids listed on the Debtor's Proof of Claim. As addressed herein, in

NAS1586

many instances the guardians are individuals other than the birth mother, a fact which presents unique difficulty to NAS Children in meeting certain requirements of the PI TDP.

8.     Often, the harm which opioids have caused to a NAS Child manifests shortly after birth in a neonatal intensive care unit ("**NICU**"). Among other problems, NAS Children experience tremors, seizures, mottling, skin excoriation, regurgitation, agitation, pain, tachypnea, hyperactive reflexes, excessive yawning, stuffiness, vomiting, inability to sleep, high pitched crying, excessive runny nose, diarrhea, inability to thrive, weight loss, prematurity, hydrocephalus, heavy sweating, inability to suck, and low birth weight.[5]

9.     Damages to the NAS Children reach far beyond the weeks spent withdrawing from opioids. Statistically significant numbers of these children are born with latent heart defects, spina bifida, and congenital malformations like cleft palate, club foot, and anklioglossia (tongue-tie), all requiring painful and expensive surgeries.

10.    Beyond the NICU, NAS Children may be subject to a statistically significant risk of developmental delays that can ruin the rest of their lives. The complications that NAS Children experience can include.

    a.  1st Year – Growth retardation and psychomotor developmental delays.[6]

    b.  One Year Old – Deficits in locomotor, personal/social, hearing and speech, hand/eye coordination and intellectual performance.[7]

    c.  Two to Three Years Old – Deficits in motor, expressive language and receptive language.[8]

---

[5]    See *Declaration of Dr. Kanwaljeet S. Anand* (attached as Exhibit B to the Bickford Declaration) at ¶4.

[6]    McGlone L, Mactier H. Infants of opioid-dependent mothers: neurodevelopment at six months. Early Hum Dev2015;91:19-21.

[7]    Hans SL, Jeremy RJ. Postneonatal mental and motor development of infants exposed in utero to opioid drugs. Infant Mental Health J 2001;22:300-15.

[8]    Conradt E, Flannery T, Aschner JL, et al. Prenatal Opioid Exposure: Neurodevelopmental Consequences and Future Research Priorities. Pediatrics 2019;144.Exhibit 1- Anand at ¶10.

NAS1587

    d. After Three Years Old – In addition, NAS Children can experience deficits in personality structure and functioning: decreased sense of well-being, responsibility, self-control, psychological mindedness, empathy and social maturity.[9]

    e. Four to Five Years Old – Decreased language comprehension and expression.[10]

    f. Five to Twelve Years Old – Deficits in verbal, performance, externalizing and internalizing problems.[11]

    g. Late Childhood – IQ impairment, lower language abilities in exposed children, higher rates of behavioral problems that become worse with time.[12]

11. In addition to the above, a significant number of NAS Children experience latent effects and damages, which may include: heart defects, brain damage, learning disabilities, behavioral and emotional disorders, attention deficit hyperactivity disorder, cognitive impairment, deficits in independent functioning, depression and anxiety disorders, and autism spectrum disorders.[13]

12. The legal representatives which comprise the NAS Ad Hoc and their associates are responsible for filing 87 actions on behalf of NAS Children, including class actions which seek medical surveillance filed in 34 states. Given the foregoing, the recovery of reasonable and necessary costs associated with damages and lifelong care needs of the NAS Children place this unique group of claimants at the top of the list of creditors. In fact, the aggregate value of the

---

[9]     Konijnenberg C, Sarfi M, Melinder A. Mother-child interaction and cognitive development in children prenatally exposed to methadone or buprenorphine. Early Hum Dev 2016;101:91-7.

[10]     Fill MA, Miller AM, Wilkinson RH, et al. Educational Disabilities Among Children Born With Neonatal Abstinence Syndrome. Pediatrics 2018;142:pii: e20180562.

[11]     Id.

[12]     Id.; Bauman PS, Levine SA. The development of children of drug addicts. Int J Addict 1986;21:849-63.

[13]     Broussard CS, Rasmussen SA, Reefhuis J, et al. Maternal treatment with opioid analgesics and risk for birth defects. Am J Obstet Gynecol 2011;204:314 e1-11; Dawson AL, Razzaghi H, Arth A, et al. Maternal exposures in the National Birth Defects Prevention Study: Time trends of selected exposures. Birth Defects Res A Clin Mol Teratol 2015;103:703-12; Lind JN, Interrante JD, Ailes EC, et al. Maternal Use of Opioids During Pregnancy and Congenital Malformations: A Systematic Review. Pediatrics 2017;139.

NAS1588

claims of NAS Children may very well exceed the real value of the claims of all other categories of personal injury claimants in the Debtors' cases.

13.     The NAS Ad Hoc has been monitoring and participating in this case from the outset. Beyond typical informal comments, mediation, and other negotiations with the Debtors and other parties in interest, the NAS Ad Hoc filed the following documents:

    a.  *Conditional Consent with Reservation of Rights of the NAS Children AD HOC Committee to Motion of Debtors for Entry of Order (i) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (ii) Approving Proof of Claim Forms and (iii) Approving the Form and Manner Thereof* [Docket No. 754] (the "**Bar Date Reservation of Rights**"), reserving its rights with respect to the Debtors' bar date motion;

    b.  *Motion For Entry of An Order Pursuant To Fed. R. Bankr. P. 9014 And 7023 Permitting Them To File A Class Proof of Claim And Granting Related Relief* [Docket No. 1362] (the "**NAS Class Motion**"), seeking to permit the NAS Ad Hoc to file a class proof of claim;

    c.  *Motion for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 Authorizing the Filing of Certain Information and Exhibits Under Seal in Connection with the NAS Children Ad Hoc Committee's Ex Parte Motion Requesting a Court Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [Docket No. 2139], seeking to file a redacted 2004 motion (the "2004 Motion");

    d.  *Motion for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 107(b) and Fed. R. Bankr. P. 9018 Authorizing the Filing of Certain Information and Exhibits Under Seal in Connection with the NAS Children Ad Hoc Committee's Ex Parte Motion Requesting a Court Order Authorizing Examinations Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [Docket No. 2340], seeking to file redacted exhibits related to the 2004 motion; and

    e.  *Motion to Authorize the NAS Children Ad Hoc Committee's Motion Entry of Order Pursuant to 11 U.S.C. Sections 105(a) and 107(b) and Fed. R. Bankr. P. 9018 Authorizing the Filing of Certain Information and Exhibits Under Seal in Connection with the Reply and Supplemental Declaration* [Docket No. 2538] (the "2004 Reply"), seeking to file a reply and supplemental declaration under seal in connection with the NAS Ad Hoc's 2004 motion.

14.     The NAS Ad Hoc first raised due process concerns in connection with the establishment of a deadline to file claims.  See Bar Date Reservation of Rights (noting that

**NAS1589**

constructive notice was likely insufficient to provide unknown creditors the proper due process). Those concerns remain given the extraordinarily broad releases sought by the Debtors in the Plan. See generally, Plan at § 10.6-10.9.

15.     Further, the PI TDP manipulates traditional tort recoveries available to NAS Children and would thereby set an unfairly high bar for recovery by the NAS Children, as opposed to the very low bar for recovery which the PI TDP sets for the adult personal injury claimants.  The NAS Ad Hoc has sought extensive discovery from the Debtors and their non-Debtor affiliates, the Sacklers and the so-called IACs in its efforts to meet this high bar.  See 2004 Reply.  To date, it has received some, but not all of the information it requested.

I.     **The Disclosure Statement Fails to Provide Creditors with "Adequate Information," as Required by Section 1125 of the Bankruptcy Code, by Failing to Disclose the Impact of the PI TDP on the NAS Children**

16.     Section 1125 of the Bankruptcy Code provides that a disclosure statement must contain "adequate information" describing a confirmable plan. 11 U.S.C. § 1125.  The Bankruptcy Code defines "adequate information" as: "[i]nformation of a kind, and in sufficient detail…that would enable such a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan…"  11 U.S.C. § 1125(a)(1).  Indeed, Congress intended the disclosure statement "to be the primary source of information upon which creditors and shareholders could rely in making an informed judgment about a plan of reorganization."  In re Scioto Valley Mortg. Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988); see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.), 25 F.3d 1132, 1136 (2d Cir. 1994) ("The Code obliges a Debtor to engage in full and fair disclosure"); In re Adelphia Commc'ns Corp., 352 B.R. 592, 596 (Bankr. S.D.N.Y. 2006) (The Bankruptcy Code "provides that acceptances or rejections

**NAS1590**

of a reorganization plan can't be solicited without first giving the creditors or others so solicited a court approved disclosure statement, which provides 'adequate information.'").

17.     To be approved, a disclosure statement must include sufficient information to apprise creditors of the risks and financial consequences of the proposed plan.  See In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) ("[S]ubstantial financial information with respect to the ramifications of any proposed plan will have to be provided to, and digested by, the creditors and other parties in interest in order to arrive at an informed decision concerning the acceptance or rejection of a proposed plan").

18.     Although the adequacy of the disclosure is determined on a case-by-case basis, the disclosure must "contain simple and clear language delineating the consequences of the proposed plan on [creditors'] claims and the possible [Bankruptcy] Code alternatives…" In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 981 (Bankr. N.D.N.Y. 1988).  Section 1125 of the Bankruptcy Code is biased towards more disclosure rather than less.  See In re Crowthers McCall Pattern, Inc., 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).   "[T]he 'adequate information' requirement merely establishes a floor, and not a ceiling for disclosure to voting creditors." Adelphia, 352 B.R. at 596 (citing Century Glove, Inc. v. First American Bank of New York, 860 F.2d 94, 100 (3d Cir. 1988)). "[O]nce the 'adequate disclosure' floor is satisfied, additional information can go into a disclosure statement too, at least so long as the additional information is accurate, and its inclusion is not misleading." Adelphia, 352 B.R. at 596.

19.     As set forth below, the Disclosure Statement falls far short of its statutory purpose because it omits the most basic information on the impact of the PI TDP on the NAS Children, critical information to the thousands of claims filed on behalf of the NAS Children.   While the Disclosure Statement states that "The Ad Hoc Group of Individual Victims has performed a

NAS1591

preliminary analysis that estimates that a qualified personal injury claimant will likely receive between $3,500 and $48,000 in distributions from such trust" (Disclosure Statement at §I.B), it does not state that, as applied to the NAS Children, the vast majority will not be entitled to **any** recovery, foreshadowing a trust distribution procedure which does not comport with traditional concepts of recovery under tort law and is so administratively complicated the trust corpus will primarily benefit the administrator as opposed to the victims.

20.     All PI Claims will be dealt with only through the PI TDP, and the Debtors' vague description of the claims process is unacceptable. In other words, the PI TDP is binding on all creditors subject to the Plan. See Plan at 5.7(g) ("The Creditor Trustees shall determine the eligibility, amount and Allowance (if applicable) of the applicable Channeled Claims, in accordance with, and to the extent provided in, the applicable Creditor Trust Documents. In accordance with the trust distribution procedures and other provisions of the applicable Creditor Trust Documents, the Creditor Trustees shall also make all determinations with respect to Distributions to be made by the applicable Creditor Trust, which shall be funded in accordance with the Public Entity Settlements and the Private Entity Settlements, as applicable. The foregoing determinations by the applicable Creditor Trustee shall be final and binding and shall not be subject to any challenge or review of any kind, by any court or other Person, except as set forth in the Creditor Trust Documents"). While the Disclosure Statement contains a summary of the PI TDP, it either omits or fails to include the following critical information in a clear and concise matter:

- Detailed descriptions of eligibility criteria;

- That the List of "Qualifying Drugs" excludes many drugs;[14]

---

[14]     See Bickford Declaration at ¶ 7-12.

NAS1592

●     Basis of the "scoring grid" criteria for assigning "points" to different compensable injuries;[15]

●     Description of required medical causation evidence and the standard of review applied;

●     Scope of pharmaceuticals manufactured, licensed, rebranded or patented by a Purdue entity which will be considered and to what extent Purdue's joint and several liability, as it would be subject to under the normal scheme of tort law, is applicable to claims, either children or adults;

●     An estimate of administrative costs that will be incurred to seek court approval of settlements with NAS Children, which costs may be significant; and

●     An estimate of certain fees to be paid to counsel to the adult PI Claimants.[16]

Without this information, creditors lack the sufficient information to determine the nature of their recoveries or how their claims will be liquidated and paid.

## II.     The Solicitation Procedures Motion does not Provide a Mechanism to Vote the NAS Monitoring Claim

21.     The Solicitation Procedures Motion does not contain any procedures whereby the holder of the Class 9 NAS Monitoring Claim may vote to accept or reject the Plan. Instead, the Debtors appear to believe individual claimants can vote in Class 9. The NAS Abatement Trust does not directly benefit any individual claimant. It is instead intended for the benefit of the NAS Children or their guardians. Thus, the NAS Monitoring Claim is more akin to a class claim, as set

---

[15]     The Disclosure Statement contains no disclosure on the statistical sample and modeling analysis. Instead, it merely states that "[t]he scoring grid, detailed in the TDP, <u>was developed using statistical sampling and modeling performed by financial analysts and experts</u>, based on scoring grids developed incomparable cases, and with unique customization based on the injuries suffered by victims of Purdue's opioid products and activities related thereto…" See Disclosure Statement at Article III.T.1 (emphasis added).

[16]     <u>See</u> Disclosure Statement at Article III.T.1("The amount of the PI Trust Funds available to make settlement payments to holders of qualifying opioid-related personal injury claims from the PI Trust **will be subject to certain deductions, including for the fees and expenses of administering the TDP**…Those deductions include, but are not limited to, the amount of fees and expenses of…(vii) professionals representing the Ad Hoc Group of Individual Victims, and (viii) other employees of the PI Trust as well as outside legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents…") (emphasis added).

NAS1593

forth in the NAS Class Motion, than a claim for any individual claimants. As such, a proper representative should be designated, with the approval of the parties and the Court, solely for the purpose of voting the NAS Monitoring Claim.

22. Recognizing this issue, the <u>Insys</u> court entered a non-precedential stipulation (<u>In re Insys Therapeutics, Inc.</u>, Case No. 19-11292 (KG) (Bankr. D. Del. Dec. 5, 2019) [Docket No. 962], a copy of which is attached to the Bickford Declaration as <u>Exhibit A</u>) that provided for an allowed NAS claim for all plan purposes. While non-precedential, because no party has proposed a viable alternative, the NAS Class Motion in this matter should be easily and readily resolved in similar fashion, and the designated class representative should be the only party permitted to vote the Class 9 NAS Monitoring Claim. Such a resolution will have the added benefits of eliminating: (i) the need to send multiple ballots to the caregivers for the NAS Children; and (ii) the potential for confusion amongst these caregivers, some, if not most, of whom are not as sophisticated as an ordinary creditor but who will nevertheless receive ballots for two different classes between which they must distinguish.

### III. The Disclosure Statement Cannot be Approved because the Plan, <u>as Currently Constituted, is Unconfirmable</u>

23. The Disclosure Statement describes a plan that is unconfirmable on its face and therefore should not be approved. <u>See, e.g.</u>, <u>In re 266 Washington Assocs.</u>, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."); <u>In re Am. Capital Equip., LLC</u>, 688 F.3d 145, 154 (3d Cir. 2012) ("Courts have recognized that if it appears there is a defect that makes a plan inherently or patently unconfirmable, the Court may consider and resolve that issue at the disclosure stage before requiring the parties to proceed with solicitation of acceptances and rejections and a contested confirmation hearing.") (internal quotations and citations omitted).

24.     In fact, if the Plan on its face cannot be confirmed, approval of the Disclosure Statement must be denied in order to prevent the diminution of estate assets that would result from the expense of soliciting votes and seeking confirmation on a unconfirmable plan.  See, e.g., In re Pecht, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation").

25.     The Plan is patently unconfirmable on its face in that it improperly classifies NAS Children in the same category as holders of all other types of personal injury claims.  In addition to such deficiency, the PI TDP is heavily and unfairly weighted in favor of adult personal injury claimants, to the detriment of the NAS Children.

A.     **The Plan Violates Section 1122 of the Bankruptcy Code Because the NAS Children's Claims are Wholly and Distinctly Separate from Adult Personal Injury Claims and Therefore Must be Separately Classified from Such Claimants**

26.     As detailed below, children who are born opiate dependent and are diagnosed with NAS go on to face life-long disabilities of delayed development and learning problems as a result of the fetal exposure to opioids they neither consumed nor consented to.[17]  They may further present with teratogenic injuries to their vision and organs.  In the tort system, most of these children are not constrained by statute of limitations until they reach majority.  They are not faced with legal defenses of comparative fault or contributory negligence.  They do not lose jobs or relationships, nor do they relapse into further opioid dependence or seek relief for their dependence through access to unprescribed drugs.  In short, their injuries are completely distinct and their

---

[17]     Baldacchino A, Arbuckle K, Petrie DJ, McCowan C. Neurobehavioral consequences of chronic intrauterine opioid exposure in infants and preschool children: a systematic review and meta-analysis. BMC Psychiatry 2014;14:104.

NAS1595

situation within the legal system is not comparable to situational damages occasioned by adult victims.

27.     Section 1122(a) of the Bankruptcy Code provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a); see also In re Sabine Oil & Gas Corp., 555 B.R. 180, 310 (Bankr. S.D.N.Y. 2016); In re LightSquared Inc., 513 B.R. 56, 82 (Bankr. S.D.N.Y. 2014). Put another way, substantially different claims may not be placed in the same class. In this case, all claims of NAS Children are classified with all other personal injury claims in Class 10 of the Plan. However, the claims of the NAS Children are not substantially similar to all other personal injury claims.

28.     There is precedent for classifying personal injury claimants in separate classes. For example, in In re Dow Corning Corp., 280 F.3d 648 (6th Cir. 2002), the Sixth Circuit held that classifying "foreign claims" differently from domestic claims was acceptable under section 1122 of the Bankruptcy Code. In that case, the Sixth Circuit affirmed the bankruptcy court's separate classifications because "without question, the evidence on the record shows that tort recoveries in the United States tend to be significantly higher than those in foreign jurisdictions." Id. at 662. Likewise, tort recoveries by permanently injured NAS Children who involuntarily ingested opioids will be higher than those of adults claiming the temporary condition of addiction due, in large point, to their voluntary ingestion of opioids.

29.     The Debtors' failure to properly classify the NAS Children separately from general holders of personal injury claims is directly at odds with section 1129(a)(1) of the Bankruptcy Code's requirement that the Plan comply with the applicable provisions of the Bankruptcy Code, as well as section 1129(a)(2)'s requirement that the Debtors comply with all applicable provisions

NAS1596

of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1). "The phrase 'applicable provisions' has been interpreted to include sections 1122 and 1123 of the Bankruptcy Code, which govern the classification of claims and interests and the contents of a chapter 11 plan." In re Aegerion Pharm., Inc., 605 B.R. 22, 30 (Bankr. S.D.N.Y. 2019). Here, the NAS Children's claims are fundamentally different than all other unsecured claims and may not be placed into the same class as the other personal injury claims.

### 1. Contributory Fault

30. The factual and legal merits of the claims of NAS Children are superior to those of the claims asserted by all other personal injury claimants. For example, unlike adult personal injury claimants, no NAS Child voluntarily used or ingested any opioid. This fact presents an inherent and irreconcilable difference between the claims of adults, whose damages are subject to comparative negligence reduction[18] or contributory negligence bar,[19] or wrongful conduct bar,[20]

---

[18]    See, e.g., Tug Valley Pharmacy, LLC v. All Plaintiffs Below In Mingo Cty., 235 W. Va. 283, 291–93, 773 S.E.2d 627, 635–37 (2015) (finding addicts subject to comparative fault doctrine in their cases against pharmacies and healthcare providers for negligently dispensing controlled substances, including Lortab, Oxycontin and Xanax); Weaver v. Lentz, 348 S.C. 672, 683–85, 561 S.E.2d 360, 366-67 (Ct. App. 2002) (finding addict 50% at fault under comparative fault doctrine in wrongful death case against doctor for negligently prescribing controlled substances); Clair v. Paris Rd. Drugs, Inc., 573 So. 2d 1219, 1224-26 (La. Ct. App.) (finding addict 35% at fault under comparative fault doctrine in case against pharmacy and pharmacist for negligently dispensing controlled substances), writ denied, 577 So. 2d 31 (La. 1991).

[19]    The doctrine of contributory negligence remains a complete bar to a plaintiff's claim in four States – Alabama, Maryland, North Carolina, and Virginia – and the District of Columbia. Contributory Negligence, 2 Jones on Evidence, §9.3 (7th ed. 2020). The remainder of the States have adopted the doctrine of comparative negligence, statutorily or by common law, which reduces the plaintiff's recovery proportionate to the degree of his or her fault. Id. However, as discussed infra, some of those states employ the wrongful conduct rule, which acts as a complete bar to recovery

[20]    Some States recognize the wrongful conduct rule as a complete bar to a plaintiff's claims when those claims arise from the plaintiff's own illegal conduct, including in cases where the plaintiff illegally procured and used controlled substances. See, e.g. Price v. Purdue Pharma Co., 920 So. 2d 479, 484-86 (Miss. 2006) (wrongful conduct rule precluded plaintiff from pursuing tort claims against doctors, pharmacies and drug manufacturers for injuries sustained from ingesting OxyContin where he illegally procured the drug through fraud, deception and subterfuge); Foister v. Purdue Pharma, L.P., 295 F. Supp. 2d 693, 704-05 (E.D. Ky. 2003) (same for plaintiffs who illegally procured and used OxyContin); Orzel by Orzel v. Scott Drug Co., 449 Mich. 550, 559-77, 537 N.W.2d 208, 212-21 (1995) (same for plaintiff's claim against pharmacy where he illegally procured and used controlled substance that caused him injury); Pappas v. Clark, 494 N.W.2d 245,247-248 (Iowa Ct. App. 1992) (same for wife's wrongful death

NAS1597

and the claims of NAS Children who, with no attendant fault, were born dependent upon opioids.
In fact, jurisdictions across the country actually protect the interests of children by foreclosing the
defense that a parent contributed to the child's injury through her tortious conduct.[21]

**2.      Unlike Adult Claims, the Claims of Most NAS Children are not Barred under Applicable Statutes of Limitations**

31.      Placing the NAS Children in the same class as other adult personal injury
claimants is fundamentally unfair for many reasons.  First, as a general matter, minority or infancy
tolls a statute of limitations, such that the same does not run against a NAS Child during his or her
minority.[22]  *Infancy Suspending Limitations Period, Generally*, 54 C.J.S. Limitations of Actions §
161.  In contrast to the claims of NAS Children, the limitations period applicable to an adult
claimant in most states begins to accrue on the date of injury or, at the latest, on the date on which
the claimant should have reasonably discovered the injury.  Hence, the claims of most NAS
Children are not burdened by limitations defenses the Debtors have prevailed on in all but one
published case where the courts have considered their statute of limitations defense.[23]

---

claim against pharmacy and other healthcare providers where husband illegally procured and used prescription drugs
that led to his addiction and death).

[21]      See, e.g. Ruffing ex rel. Calton v. Union Carbide Corp., 186 Misc. 2d 679, 682–90, 720 N.Y.S.2d 328, 330-
36 (Sup. Ct. 2000) (per state statute, neither contributory nor comparative negligence of parents in exposing child to
harmful chemicals *in utero* could be imputed to child for his personal injury claims against corporate defendants for
the same exposure); Harrison v. United States, 233 F. Supp. 2d 128, 135 (D. Mass. 2002) (per state statute, mother's
comparative negligence could not be imputed to child for assessment of damages in child's claim for personal injury);
Byrne v. Schneider's Iron & Metal, Inc., 190 Mich. App. 176, 189, 475 N.W.2d 854, 860 (1991) (finding "comparative
negligence of the parent may not be imputed to the recovery attributable to the child's damages"); Kochian v. Central
Conn. Coast YMCA, No. CV075011527S, 45 Conn. L. Rptr. 351, 355–57, 2008 WL 1735587, *3-6 (Conn.Super.
Mar. 31, 2008) (barring defendants from asserting parental comparative negligence in an effort to diminish minor
plaintiff's recovery); Francis ex rel. Goodridge v. Dahl, 107 P.3d 1171, 1173 (Colo. App. 2005) ("Colorado has long
refused to sustain the doctrine that the contributory or comparative negligence of the parents of a child of tender years
shall be imputed to the child."); Shafer v. Spencer Hosp., 10 Pa. D. & C.4th 276, 280 (Com. Pl. 1991) ("The law is
quite clear in Pennsylvania that an alleged negligent act or omission of a parent may not be imputed to his or her child
to bar or reduce the minor's claims[,]" including the claims of a minor injured *in utero*).

[22]      Only the following eight States do not recognize tolling of statutes of limitation during the period of minority
or infancy:   California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, and Virginia.
https://www.statuteoflimitation.info/statute-of-limitations-minors.html#, last visited 3/19/2021, 4:34 p.m. EST.

[23]      Yurcic v. Purdue Pharma, L.P., 343 F. Supp. 2d 386, 394 (M.D. Pa. 2004); Freund v. Purdue Pharma Co.,
No. 04-C-611, 2006 WL 482382, at *7 (E.D. Wis. Feb. 27, 2006); McKnight v. The Purdue Pharma Company, 2005

NAS1598

32.     Although some states recognize a "discovery rule" exception to statutes of limitations or repose, this exception likely does not apply to the adult personal injury claims given that, in 2008, certain Debtors pled guilty to criminal charges involving the very acts and omissions that form the basis of the adult personal injury claims in this bankruptcy, and where Purdue's role in creating the opioid crisis has been well documented.[24]  In fact, by 2010, there were well over 100 published lawsuits against the Debtors alleging the same theories and facts as the adult personal injury claimants in this bankruptcy.[25]  This is in addition to over one thousand injury and death cases filed against the Debtors which were consolidated in New York state court in 2005 and which the Debtors settled in 2007.[26]

33.     It is impossible to discern from the face of the proofs of claim how many of the adult personal injury claims are unenforceable as a matter of law because proofs of claim did not call for the identification of any dates of injury (or death) or ingestion of relevant drugs.  However, on information and belief, that number reaches the tens of thousands (if not the majority) of adult personal injury claims, none of which appear to be excluded from payment under the proposed PI TDP.

---

WL 3115276, Civ. A. No. 9:04-CV-116 (E.D.Tex. Nov.21, 2005); Franz v. Purdue Pharma Co., No. 05-CV-201-PB, 2006 WL 455998, at *3 (D.N.H. Feb. 22, 2006); Foister v. Purdue Pharma, L.P., 295 F. Supp. 2d 693, 708 (E.D. Ky. 2003); Gallina v. Purdue Pharma Co., No. 05-2380, 2006 WL 8434665, at *4 (W.D. Tenn. Apr. 28, 2006); Boysaw v. Purdue Pharma, No. 1:07CV00079, 2008 WL 2076667, at *1 (W.D. Va. May 16, 2008).

[24]     Meier, "U.S. Maker of OxyContin Pain Killer to Pay $600 Million in Guilty Plea," New York Times, May 11, 2007. https://www.nytimes.com/2007/05/11/business/worldbusiness/11iht-oxy.1.5665287.html?searchResultPosition=6 (last accessed April 1, 2021).

[25]     See generally Richard C. Ausness, *The Role of Litigation in the Fight Against Prescription Drug Abuse*, 116 W. Va. L. Rev. 1117 (2014).

[26]     In re OxyContin II, 23 Misc. 3d 974, 975, 881 N.Y.S.2d 812, 813 (Sup. Ct. 2009), rev'd sub nom. In re Oxycontin II, 76 A.D.3d 1019, 908 N.Y.S.2d 239 (2010).  The TDP does not disqualify adult personal injury claimants who previously released their claims against Purdue in earlier settlements.

NAS1599

34.     Thus, there is no justification for placing the NAS Children in the same class as thousands of adult personal injury claimants who could not recover outside the Plan. Moreover, unlike the NAS Children, adult personal injury claimants would be barred from filing claims under applicable non-bankruptcy law due to the expiration of the applicable statutes of limitation in their respective jurisdictions.

35.     These same laws that toll the minors' statutes of limitation during their infancy also render the release and channeling provisions of the plan unenforceable with respect to all NAS Children under the age of 18 as of the Effective Date.

### 3. NAS Children Have Claims Based on Different Theories of Liability than All Other Personal Injury Claimants

36.     Adult personal injury claims are based on the product liability theory the Debtors' marketing, lobbying, and sales efforts of Purdue branded prescriptions targeted vulnerable populations in such a manner as to spur a nationwide opioid crisis to profit the Debtors and the Sacklers. The effects of which the adult personal injury claimants are complaining of are clearly listed in the labels triggering the learned intermediary defense.

37.     However, the NAS Children's claims are based on civil conspiracy. Specifically, the NAS Children's claims arise from the allegation that Purdue initiated, led, and financed a civil conspiracy that deceived regulators, expectant mothers, women of child-bearing age, and their physicians by hiding and failing to report its scientific knowledge regarding the dangers which opioid use presented to developing fetuses.[27] That is, Purdue hid or ignored evidence of studies,

---

[27]     Scott Bickford, Esq., *Purdue Bankruptcy Joint NAS Proof of Claim, Question 10- Basis of Claim*, PrimeClerk Electronic Filings 7/15/2020, 7/22/2020, 7/28/2020 & 7/29/2020.

NAS1600

some  by its own scientists, that causally linked fetal opioid exposure to birth defects and other congenital malformations.[28]

38.    Because the Debtors cannot meet the requirements of section 1129(a)(1) and (a)(2) of the Bankruptcy Code, the Plan is patently unconfirmable.

**B.    Because the TDP Treats NAS Children Differently than Other Personal Injury Claimants, the PI TDP Violates Section 1123(a)(4) of the Bankruptcy Code.**

39.    While the NAS Ad Hoc was involved in certain discussions and negotiations (primarily with respect to the negotiation of the NAS Monitoring Trust Documents), the PI TDP was negotiated by counsel for the adult personal injury claimants and the public entities without the participation of the NAS Ad Hoc.[29]  Based on a cursory review of the PI TDP,[30] it clearly treats the NAS Children dramatically different than other similarly situated personal injury Claimants in contravention of section 1123(a)(4) of the Bankruptcy Code, which provides that "(a) [n]otwithstanding any otherwise applicable nonbankruptcy law, a plan shall—(4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest."  11 U.S.C. § 1123(a)(4).

40.    Neither the Code nor its legislative history precisely defines the standards for "equal treatment."  In re Adelphia Commc'ns Corp., 368 B.R. 140, 249 (Bankr. S.D.N.Y. 2007).

---

[28]    Supra, Broussard; Purdue OxyContin New Drug Application Reproductive Toxicology Studies: DSE-058, DSE-059, DSE-060, DSE-061.

[29]    The claims administrator under the PI TDP will be Ed Gentle.  See Disclosure Statement at Article III.T.1. The NAS Ad Hoc reserves its right to object to Mr. Gentle as the claims administrator on the grounds, among others, that he may not be an impartial adjudicator of the PI Claims. The NAS Ad Hoc reserves its right to object to Mr. Gentle as claims administrator to the extent of any conflicts of interest.

[30]    As stated previously, the NAS Ad Hoc had an opportunity to review prior versions of the PI TDP but only a few days to review the filed PI TDP.  The NAS Ad Hoc therefore reserves its right to supplement this Objection after it completes its review of the PI TDP.

NAS1601

"Even though neither the Code nor the legislative history precisely defines the standards of equal treatment, the most conspicuous inequality that § 1123(a)(4) prohibits is payment of different percentage settlements to co-class members." In re AOV Indus., Inc., 792 F.2d 1140, 1152 (D.C. Cir. 1986).

41.     In this case, the NAS Children are classified with all other personal injury claimants in Class 10, and all are being channeled to the PI Trust.  Plan at §4.10.  Despite inclusion of NAS Children in the larger personal injury claimant group, the NAS Children are being treated dissimilarly, and as a direct result, a NAS Children will receive substantially less than a similarly situated, adult personal injury claimant.  The PI TDP is unfairly prejudicial to NAS Children because: (a) the administrative burden on NAS Children is far higher than on other PI Claimants; (b) the PI Trustee's discretion is overly broad and excessive; and (c) the gating requirements are artificial and unfair to NAS Children.

42.     In the event of approval of the PI TDP, these unreasonable impediments will result in the vast majority of NAS Children not receiving any distribution and the lowest possible distribution for those NAS Children that do receive a distribution, despite the serious nature of the permanent injuries that have been sustained by the NAS Children.  In fact, the PI TDP is designed to not only favor all adult victims over NAS Children but likely favors one group of victims over all other victims, be they adult or children.

### 1.     The PI TDP Imposes a Greater Administrative Burden on the NAS Children

43.     Without a sound basis in tort law the PI TDP purports to arbitrarily and artificially require proof of a temporal relationship between the prescription of certain NDC-labeled Purdue opioids and the victim's first documented instance of addiction or substance abuse, that one of these drugs was used during the pregnancy or used for six months. See PI TDP at § 7(a)(i)(A)(2).

NAS1602

Simply put, in order to qualify under the PI TDP for any more than a minimum payment, a claimant must prove that a Purdue drug, as designated in the incomplete list of drugs, was the one drug which caused their very first addiction. Setting aside whether the distinction between a first addiction or subsequent exposures is meaningful, if first addiction can possibly be discerned with a reasonable degree of medical certainty, the subjective nature of the diagnosis of "first addiction" (dependency or substance abuse) will require extensive medical records or expert reports. Further, with respect to adult personal injury claimants, the occurrence of an assortment of subjective conditions or events in the claimant's life, to which conditions or events the PI TDP enhances the value of adult claims. This analysis applied to some purported 135,000 claims is as byzantine as it sounds and will lead to the sorting and dating of prescriptions by the PI Trustee, or more likely, to eschewment of such work by the PI Trustee in favor of the acceptance of the bald allegations in affidavits submitted by adults claiming addiction, which the PI TDP authorizes the PI Trustee to accept in lieu of objective documentary evidence. See PI TDP at § 5(g). Further, the drafters of the PI TDP have nimbly set up a temporality requirement which is illusory as to adult personal injury claimants who are authorized to offer factually uncorroborated affidavits to meet the temporality requirement.

44. The temporality burden is especially onerous, if not exclusionary, as applied to NAS Children. It has no relationship to the proof required under traditional applications of tort law. Unless the guardian is the birth mother of a NAS Child, the guardian has no legal right to acquire the birth mother's medical, pharmacy, or other records, but must nevertheless prove under the PI TDP that a prescribed Purdue opioid was **the** precipitating cause of the birth mother's addiction, that the birth mother used a Purdue-branded product during pregnancy or for more than six months. See PI TDP at §§ 7(a)(i)(A)(2)(bb); 7(a)(iii). Therefore, the PI TDP presents an

NAS1603

insurmountable and artificial burden of proof that cannot be met by guardians who have no legal right to the birth mother's records or who lack the birth mother's personal knowledge necessary to make out the affidavits required by the PI TDP in lieu of records.  For this reason, and unless the PI TDP is fairly written, it is likely that most NAS Children, whose interests are represented by guardians that are not their birth mothers, will be relegated to "Easy Pay" or equally valued Tier 3, the lowest compensation payable under the PI TDP, if they manage to qualify for payment at all.  See PI TDP at § 6.  Thus, a "one-size fits all" approach to all personal injury claims under the PI TDP is neither appropriate nor fair as applied to NAS Children.

45.     Further, even if the guardian of a NAS Child could produce the requisite affidavit(s), the drafters of the PI TDP demonstrate their prejudice against NAS Children by prohibiting the submission of an affidavit to establish a claim under Tiers 1 and 2, *i.e.,* those levels at which NAS Children with the most serious injuries would receive higher compensation.  See PI TDP at § 7(a)(i)(C) and 7(a)(iii)(C).  It is obvious that the PI TDP is designed to drive any surviving claims by NAS Children toward no reasonable distribution at all and to force them to accept "Easy Pay," despite the permanency and degree of the injuries NAS Children have sustained.

46.     The NAS Ad Hoc analyzed comprehensive data from a leading health insurer as a means of projecting the impact of the PI TDP on NAS Children.  See Bickford Declaration at ¶ 13.  Based on such analysis, sixty-five (65) out of every eighty-two (82) NAS Children, approximately eighty percent (80%) of all NAS Children, will be ineligible for any payment under the PI TDP – this extrapolates to 5,211 NAS Children of the 6,514 that filed proofs of claim.  Id. at ¶ 14.  Only twenty percent (20%) of NAS Children might be able to receive an award, and only 7% may be eligible to receive anything higher than the $3,500.00 of easy pay that the PI TDP affords.  Id. at ¶ 14-15.  Within the ninety-three percent (93%) of NAS Children who will receive nothing or be

22

NAS1604

forced to accept easy pay are children who were born with birth defects and/or have permanent brain damage or developmental impairments. Id. at ¶ 15.

47.     This is in part because the PI TDP ties an individual's right to compensation to exposure to a Purdue product, as if Purdue's only source of liability to individuals whose lives were destroyed by Purdue's role in the opioid crisis is products liability. This artificial bar to recovery is unique to individuals in that no other class of creditor, public or private, is compelled to prove that its harm resulted from a Purdue product. For instance, the hospitals and third-party payors are recovering hundreds of millions of dollars under the Plan for the same causes of action (e.g., conspiracy, nuisance) held by thousands of NAS Children who will receive little or no compensation under the Plan. Moreover, no public entity (state or municipality) is required to demonstrate causation directly related to a Purdue product in order to recover under the Plan. As applied to individuals but no other creditor, the PI TDP completely ignores Purdue's outsized role in creating the opioid crisis relative to its market share.

48.     Further, in the event that state-court approval is required for the approval of claims given to minors, collection of amounts received by NAS Children under the PI TDP, no NAS Child receiving the meager "easy pay" could economically justify the cost of such state court approval. In sum, based on the NAS Ad Hoc's analysis of the PI TDP, the NAS Children would receive no more in the aggregate than approximately $5,676,000 [$1/point, See PI TDP §8(b)] in the aggregate, which is a mere fraction (0.7%) of the $750 million fund the Debtors and public creditors have promised to representatives of the adult personal injury claimants. This comes nowhere close to equity with respect to NAS Children.

23

NAS1605

## 2. Gating Requirements Unfairly Disadvantage NAS Children

49. The PI TDP unfairly requires information not sought on the Proof of Claim form, which works to the disadvantage of NAS Children who either filed *pro se* or who lack, in many instances, the ability to acquire documentary evidence to establish temporality.

50. The prejudicial treatment of NAS Children extends to the tiering structure of the PI TDP Tiers 1 and 2 impose on NAS Children medical and causation requirements which exceed those placed on adult personal injury claimants alleging addiction to opioids. For instance, if a NAS Child makes a claim under Tier 1, the PI TDP requires the child's guardian provide, to the satisfaction of the PI Trustee, medical documentation and scientific literature to establish a causal link between opioids and the injury alleged. See PI TDP at § 7(a)(i)(C)(4).

51. Additionally, in order to qualify for a Tier 2 award, the PI TDP requires six or more months of opioid usage by the birth mother of a NAS Child. See PI TDP at § 7(a)(iii). This is an artificial restriction which has no basis in tort law nor is there a medical or scientific basis for such requirement, given that NAS and injuries related thereto are caused by less than six months of fetal opioid exposure. Presumably the Debtors propound the six-month period of Purdue opioid usage in an effort to establish a dose-response relationship. Given that all NAS Children must put forward evidence of opioid withdrawal symptoms at birth this arbitrary six-month exposure approach fails because "there are no questions of [fetal] opioid dose to address… all had significant exposure to pre-natal opioid pharmaceuticals via their mother. This was at a level which subsequently led to the postpartum diagnosis of NAS."[31]

---

[31]    *Dr. C.V. Howard's Declaration in Support of Class Certification* (attached to the Bickford Declaration as Exhibit C) at 18.

NAS1606

52. "The six month temporal relationship requirement between use of a qualifying product and the onset of addiction, dependence or substance abuse" is arbitrary, bears no relation to the science of addiction and is contrary to the state of the art medical practice for the diagnosis of OUD set forth in the DSM-V.[32] Moreover, the PI TDP overreaches, to the prejudice of NAS Children, in favor of adult personal injury claimants by allowing them to potentially double recover, an option which is unavailable to NAS Children. Under the PI TDP, an adult alleging addiction may "double dip" by recovering a base payment for "addiction, dependence, or substance abuse" and also an enhanced monetary award for "opioid use disorder" under Tier 1. See PI TDP at § 7(a)(i)(B)(1)(aa). This provision is nonsensical because the foregoing conditions are one and the same. In addition, the Tier 1 level award based on "OUD diagnosis" and "Death" do "not have to coincide in time to the provided qualifying product use," an exception so inconsistent that, with respect to adult personal injury claimants, it completely writes the temporality requirement out of the PI TDP.[33] The PI TDP affords no such exception to NAS Children, all of whom are required to prove temporality, *i.e.*, exposure to a qualifying opioid during the period of gestation to qualify for Tier 1.

53. In a final affront to NAS Children, the PI TDP affords significant rights of recovery to opioid addicted minors who voluntarily ingested "non-prescribed versions of a qualifying opioid," (presumably diversionary market drugs) whereas NAS Children, who did not voluntarily ingest anything, have no such recourse and are instead required to prove ingestion by the birth mother of a prescribed qualifying opioid within a tight temporal window to qualify for Tier 1. Compare PI TDP at § 3(a)(i) with PI TDP at § 7(a)(i)(A)(2).

---

[32] *Expert Report of Dr. Gregory Skipper, MD* (attached to the Bickford Declaration as Exhibit D) at ¶ 22-27.

[33] Id.

NAS1607

### 3. The PI TDP Grants Overly Broad and Excessive Discretion to the PI Trustee

54. With respect to NAS Children, the PI TDP vests the PI Trustee with overly broad and excessive discretion. The PI TDP requires that each NAS Child asserting "serious" injury submit data establishing scientific causation to the PI Trustee. See PI TDP at § 7(a)(i)(B)(2)(bb). In such regard, the PI TDP grants sole discretion to the PI Trustee to determine whether sufficient scientific evidence has been presented and whether there is a reasonable scientific basis for making an award. The drafters of the PI TDP do not, of course, impose this burden of proof on adult personal injury claimants or grant the PI Trustee similar discretion with regard to causation analysis of adult personal injury claims.

### C. The Plan Violates Section 1129(a)(3) because it was not Proposed in Good Faith

55. Section 1129(a)(3) of the Bankruptcy Code requires a bankruptcy court to deny confirmation of a plan if it is not proposed in "good faith" or contains provisions "forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has construed the good faith standard as requiring a showing that "the plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.), 843 F.2d 636, 649 (2d Cir. 1988) (internal quotations omitted); see also In re Texaco, Inc., 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988) ("[I]n the context of a [Chapter 11] reorganization . . . a plan is considered proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the [Bankruptcy] Code.") (internal quotations omitted). Additionally, courts generally hold that "good faith" should be evaluated in light of the totality of the circumstances surrounding confirmation. In re Cellular Info. Sys., Inc., 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994).

NAS1608

56.     Here, as set forth above, the Plan violates section 1122 of the Bankruptcy Code by
not separately classifying the NAS Children, and despite placing NAS Children and all other
personal injury claimants in the same class, the Plan violates section 1123 of the Bankruptcy Code
by failing to treat NAS Children the same as all other personal injury claimants.  Therefore, the
Plan cannot "achieve a result consistent with the standards prescribed under the [Bankruptcy]
Code."  Texaco, 84 B.R. at 907.

### D.     The Plan Releases are Inappropriate Under the Circumstances

57.     While the NAS Ad Hoc concedes that objections to the Plan's release provisions
are appropriately asserted in connection with confirmation of the Plan, it is necessary to draw the
Court's attention to an issue which is of constitutional magnitude.  The term "Causes of Action"
in the Plan "expressly includes (i) any Cause of Action held by a natural person who is not yet
born or who has not yet attained majority as of the Petition Date or as of the Effective Date."  Plan
at § 1.1.  Section 10.6 of the Plan further provides that all Releasing Parties (which includes all
Holders of Claims and Interests), shall release the Released Parties from any and all "Causes of
Action."  Plan at § 10.6(b).  With respect to the unborn, such release provisions are patently
unconstitutional because, by definition, an unborn NAS Children has yet to sustain any opioid-
related injury.

58.     Notice and an opportunity to be heard are fundamental requisites of the
constitutional guarantee of procedural due process, Eisen v. Carlisle & Jacquelin, 417 U.S. 156,
174 (1974), a guarantee which applies to the discharge of claims in bankruptcy court.  City of New
York v. New York, New Haven & Hartford R.R. Co., 344 U.S. 293, 296-97 (1953).  To satisfy due
process, "notice must be reasonably calculated, under all circumstances, to apprise interested

NAS1609

parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950).

59.     Over two decades ago, the Supreme Court cautioned against what this Plan proposes – an order that binds those "with no perceptible … disease," including those who "may not even know of their exposure, or realize the extent of the harm they may incur." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 628 (1997) (involving a global settlement seeking to resolve both current and future asbestos-related claims). Under principles of due process, one who does not receive adequate notice of bankruptcy proceedings, and whose claims are "abstract, unimaginable, and inchoate at the time," is not enjoined by an order of the bankruptcy court. In re Johns-Manville Corp., 600 F.3d 135, 158 (2d Cir. 2010). The NAS Ad Hoc respectfully submits that, as to unborn future NAS Children who can sustain no injury until birth, there is no notice pertinent to the Plan, or the right to object thereto, which could comport with due process and be deemed constitutionally sufficient.

60.     The Plan definitions also offend Article III of the United States Constitution, in that future NAS Children who have not been born or sustained injury lack any justiciable "claim or controversy" as required by Article III. Article III preserves the separation of powers by confining federal courts to their proper adjudicative function and preventing advisory opinions that would intrude on the legislative and policy-making functions that the Constitution assigns to Congress and the President. Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). Unaccrued, contingent tort claims of yet-to-be-born NAS Children do not meet the requirements of Article III, and the Plan's request that the Bankruptcy Court adjudicate the rights of such claimants undermines the adversarial system that Article III preserves.

NAS1610

61.     Moreover, the Plan contains broad third-party, non-debtor releases (including with respect to the Sackler Family) that may be inappropriate under the circumstances of these chapter 11 cases.  The NAS Ad Hoc joins and incorporates the *Objection of United States Trustee to Disclosure Statement for Chapter 11 Plan of Purdue Pharma, L.P. and its Affiliated Debtors* [Docket No. 2686], with respect to the Sackler family releases, proposed third-party releases and injunction, and the proposed discharge of the Debtors.

## RESERVATION OF RIGHTS

62.     Nothing contained herein shall constitute a waiver of any rights or remedies of the NAS Ad Hoc under title 11 of the United States Code or applicable law, including, without limitation, the right to: (i) amend, modify, or supplement this Objection, or (ii) raise any other additional arguments at a later date, including, but not limited to, in an objection to the Plan,

## CONCLUSION

63.     The NAS Ad Hoc respectfully requests that the Court not approve the Disclosure Statement and deny the Solicitation Procedures Motion.

Dated: New York, New York
April 26, 2021

> **TARTER KRINSKY & DROGIN LLP**
> *Counsel for NAS Ad Hoc Committee*
>
> By: __/s/ Scott S. Markowitz_____
>     Scott S. Markowitz, Esq.
>     Rocco A. Cavaliere, Esq.
>     Michael Z. Brownstein, Esq.
>     1350 Broadway, 11th Floor
>     New York, NY 10018
>     Tel: (212) 216-8000
>     Scott S. Markowitz, Esq.
>     Rocco A. Cavaliere, Esq.
>     Michael Z. Brownstein, Esq.
>     Email: smarkowitz@tarterkrinsky.com
>     Email: rcavaliere@tarterkrinsky.com
>     Email: mbrownstein@tarterkrinsky.com

**NAS1611**

**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

**CREADORE LAW FIRM PC**
450 Seventh Avenue, 14th Floor
New York, NY 10123
Telephone: 212.355.7200
Donald Creadore, Esq. (NY 2090702)
donald@creadorelawfirm.com

**LAW OFFICES OF KENT HARRISON
ROBBINS, P.A**.
242 Northeast 27th Street
Miami, Florida 33137
Telephone: (305) 532-0500
Facsimile: (305) 531-0150
Email: khr@khrlawoffices.com

NAS1612

**EXHIBIT 1**

NAS1613

**TARTER KRINSKY & DROGIN**
*Counsel for NAS Children Ad Hoc Committee*
1350 Broadway, 11th Floor
New York, NY 10018
Tel: (212) 216-8000
Scott S. Markowitz, Esq.
Rocco A. Cavaliere, Esq.
Michael Z. Brownstein, Esq.
Email: smarkowitz@tarterkrinsky.com
Email: rcavaliere@tarterkrinsky.com
Email: mbrownstein@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al.*, | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |

## DECLARATION OF SCOTT R. BICKFORD, ESQ. IN SUPPORT OF THE NAS CHILDREN AD HOC COMMITTEE'S *LIMITED OBJECTION TO DISCLOSURE STATEMENT AND SOLICITATION PROCEDURES* MOTION

Under 28 U.S.C. § 1746, I, Scott R. Bickford, declare under the penalty of perjury that

the following is true and correct to the best of my knowledge, information, and belief:

1.     This declaration ("Declaration") is submitted in support of *The NAS Children Ad*

*Hoc Committee's Limited Objection to Disclosure Statement and Solicitation Procedures Motion*.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014).

**NAS1614**

2.      I am an attorney in good standing admitted to practice in the State of Louisiana. I make this Declaration based on my own personal knowledge and belief, and upon documents and information available to me as counsel to the NAS Children Ad Hoc Committee.  Capitalized terms used but not defined herein shall have the meaning given to such term in the Objection or the PI Trust Distribution Procedures [Docket No. 2732, Ex. C], as the case may be.

*3.*      Attached hereto as **Exhibit A**, filed together with this Declaration, is a true and accurate copy of a court ordered non-precedential stipulation from <u>In re Insys Therapeutics, Inc.</u>, Case No. 19-11292 (KG) (Bankr. D. Del. Dec. 5, 2019) [Docket No. 962].

4.      Attached hereto as **Exhibit B** filed together with this Declaration, is a true and accurate copy of the *Declaration of Dr. Kanwaljeet S. Anand.*

5.      Attached as **Exhibit C**, filed together with this Declaration, is a true and accurate copy of *Dr. C.V. Howard's Declaration in Support of Class Certification.*

6.      Attached as **Exhibit D**, filed together with this Declaration, is a true and accurate copy of the *Expert Report of Dr. Gregory Skipper, MD*.

**A.  <u>Analysis of PI TDP Exhibit A's list of qualifying opioids</u>**

7.      For a PI Claimant to qualify for any payment, they must provide approved documentation of a prescription opioid included on Exhibit A to the PI TDP, which consists of a list of NDC (National Drug Code) numbers:[2]

§ 3.      INITIAL PI CLAIM ALLOWANCE.

 For a given PI Claim to qualify as an Allowed PI Claim, the applicable PI Claimant must, with respect to that PI Claim:

---

[2]      A NDC number is a unique 3-segment number that is the universal product identifier for drugs in the US. The first segment of each NDC number identifies the labeler (such as the manufacturer, repackager or distributer). The second segment identifies the product (the strength, dosage form and formulation of a drug for a specific labeler). The third segment is the package code, identifying package sizes and types). Only the first two segments are included in the Exhibit A list, thus appearing as XXXXX-YYY-, as opposed to XXXXX-YYY-ZZ.

NAS1615

        (a) Demonstrate usage of a qualifying prescribed opioid[3] listed on
           Exhibit A hereto…

8.      Many claims, including those of many NAS Claimants, are based upon prescribed generic and rebranded opioids linked to Purdue. For a Purdue linked generic opioid to qualify, the Claimant must provide documentation of a valid opioid prescription showing a corresponding NDC number in Exhibit A. PI TDP at § 4(b)(i) and § 5(a) – (e). The completeness of the list of NDC numbers is therefore paramount, as the PI TDP bars claims based upon generic opioids not on the list.[4]

9.      A footnote to § 4(b)(i) acknowledges the importance of Exhibit A's completeness, stating that the Exhibit A list is "subject to additional NDC numbers after discovery from Debtors." Counsel is unaware of any such discovery being undertaken.

10.     Counsel's preliminary comparison of the Schedule A list to other known NDC numbers for Purdue (labeler code 59011) and Rhodes (labeler code 42858) linked opioids reveals that the list is incomplete. For instance, at least two NDC numbers for Rhodes labeled generic opioid morphine sulphate, 42858-804- and 42858-805-, are inexplicably missing from Exhibit A.

11.     Further, Exhibit A sporadically includes opioids for labelers beyond Purdue and Rhodes but omits other generic and rebranded opioids of the same type from those same labelers. Two NDC numbers for morphine sulphate labeled by Ranbaxy, for example, are included on Exhibit A, while seven are excluded.

---

[3]     A lawful prescription is required for all but Claimants or birth mothers who were minors when they initiated usage of a non-prescribed version of a qualifying opioid in Exhibit A. § 3(a)(i).

[4]     There are two exceptions to the bar on generic opioids not included in Exhibit A:

        (1) "A notation in the record that the product is labeled by Rhodes or [Purdue]" (PI TDP at § 4(b)(ii)); or

        (2) the generic opioids are Oxycodone CR or Oxycodone ER. PI TDP at § 4(c).

12.     Exhibit A's list of qualifying opioids is clearly incomplete and will result in exclusion of otherwise valid claims as proposed.

   **B.  Modeling of NAS Claim Eligibility and Awards under PI TDP**

13.     The NAS Ad Hoc Committee undertook an objective analysis of comprehensive data from a leading health insurer on the prescription histories of eighty-two (82) birth mothers. This sample of birth mother prescription data was objectively selected, as it includes all such data produced by the health insurer to counsel to date—no produced birth mother prescription data was omitted.  The analysis involved comparing the TDP's requirements and list of qualifying opioids in Exhibit A to the PI TDP against the birth mothers' prescription histories and their children's medical histories in order to model the award outcomes for the NAS Children of these birth mothers under the proposed PI TDP.

14.     The modeling revealed that only 17 of the 82 (20.7%) NAS Claimant Children would stand to receive any award under the PI TDP as proposed, meaning 65 of the children (79.3%) would be completely ineligible for any payment under the PI TDP.  This ineligibility is the result of the exclusion of their birth mothers' prescriptions from the list of qualifying opioids under the PI TDP's Exhibit A despite the fact that the birth mother's prescriptions would meet the broader prescription list found on the Proof of Claim Form at question 14.

15.     Of the 17 that qualified at all, only 6 (7.3%) qualified for anything above the minimum payment of $3,500.  Only 2 (2.5%) qualified for Tier 1: 1 child qualified for Tier 1 Base, the other for Tier 1A.  Only 4 qualified for Tier 2 (4.8%): 3 qualified for Tier 2A, the other for Tier 2B.

16.     The NAS Ad Hoc Committee then modeled the value of these claims under the proposed PI TDP.  The TDP assigns a set number of points to each claim based upon award tier,

**NAS1617**

and estimates a dollar award amount per point of between $0.80 and $1.20. Assuming the mid-point of these estimates, $1 per point, all NAS Children would receive no more in the aggregate than approximately $5,676,000—0.7% of the $750 million fund under the proposed PI TDP.

NEW ORLEANS, LA.

Respectfully submitted this 26th day of April, 2021:

  /s/ Scott R. Bickford
_____

Scott R. Bickford, Esq.

**MARTZELL, BICKFORD & CENTOLA**
Scott R. Bickford (LA 1165)
Spencer R. Doody (LA 27795)
338 Lafayette Street
New Orleans, LA 70130
Telephone: 504-581-9065
Facsimile: 504-581-7635
sbickford@mbfirm.com
srd@mbfirm.com
usdcndoh@mbfirm.com

NAS1618

**EXHIBIT A**

NAS1619

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
                                  :

|  |  |  |
|---|---|---|
| **In re** | : | **Chapter 11** |
|  | : |  |
| **INSYS THERAPEUTICS, INC.,** *et al.,* | : | **Case No. 19-11292 (KG)** |
|  | : |  |
| **Debtors.**[1] | : | **Jointly Administered** |
|  | : |  |
|  | : | **Re: Docket No.** *628* |

------------------------------------------------------x

## ORDER APPROVING STIPULATION BY AND BETWEEN THE DEBTORS, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND THE NAS BABY CLAIMANTS ESTABLISHING CLASS CLAIMS PROCEDURES

Upon consideration of the *Stipulation By and Between the Debtors, the Official Committee of Unsecured Creditors, and the NAS Baby Claimants Establishing Class Claims Procedures* (the "**Stipulation**"),[2] a copy of which is attached hereto as **Exhibit 1**; and the Court having jurisdiction to consider the Stipulation pursuant to 28 U.S.C. § 1334; and approval of the Stipulation being a core matter pursuant to 28 U.S.C. § 157(b)(2); and sufficient notice of the NAS Baby Class Claimants' Motions having been provided; and it appearing that no other notice of the same is required under the circumstances; and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. The Stipulation is hereby approved.

2. Immediately upon the entry of this Order, the Stipulation shall become effective and the NAS Baby Class Claimants' Motions shall be deemed withdrawn without prejudice.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355, LLC (0155). The Debtors' mailing address is 410 S. Benson Lane, Chandler, Arizona 85224.

[2] Capitalized terms used but not defined in this Order have the meanings used in the Stipulation.

**NAS1620**

3.     The Parties are authorized to take any and all actions reasonably necessary to implement and effectuate the terms of the Stipulation.

4.     This Court retains jurisdiction over all matters arising from or related to the implementation or interpretation of this Order.

Dated: _December 5_, 2019
Wilmington, Delaware

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

RLF1 21965742v.4

**NAS1621**

**EXHIBIT 1**

**Stipulation**

RLF1 21965742v.4

NAS1622

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------x
                                    :
In re                               :      Chapter 11
                                    :
INSYS THERAPEUTICS, INC., et al.,   :      Case No. 19-11292 (KG)
                                    :
        Debtors.¹                   :      Jointly Administered
                                    :
                                    :      Re: Docket No. _____
                                    :
------------------------------------x
```

**STIPULATION BY AND BETWEEN THE DEBTORS,
THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND
THE NAS BABY CLAIMANTS ESTABLISHING CLASS CLAIMS PROCEDURES**

This stipulation (the "**Stipulation**") is made and entered into by and between Insys
Therapeutics, Inc. and its affiliated debtors, as debtors and debtors in possession (collectively, the
"**Debtors**"), the official committee of unsecured creditors (the "**Committee**"), and the NAS Baby
Claimants² (collectively, the "**Parties**"), by and through their respective undersigned counsel.

**RECITALS**

WHEREAS, on June 10, 2019 (the "**Petition Date**"), each of the Debtors commenced with
the United States Bankruptcy Court for the District of Delaware (the "**Court**") a voluntary case
under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy
Code**");

WHEREAS, on August 22, 2019, the NAS Baby Claimants filed the *Amended Motion by
NAS Baby Class Action Claimants Pursuant to Fed. R. Bankr. P. 9014 and 7023 to Make Federal*

---

¹ The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification
number, as applicable, are: Insys Therapeutics, Inc. (7886); IC Operations, LLC (9659); Insys Development
Company, Inc. (3020); Insys Manufacturing, LLC (0789); Insys Pharma, Inc. (9410); IPSC, LLC (6577); and IPT 355,
LLC (0155). The Debtors' mailing address is 410 S. Benson Lane, Chandler, Arizona 85224.

² The "**NAS Baby Claimants**" are represented by Amanda Hanlon, Walter and Virginia Salmons, and Christopher
Bardsley.

**NAS1623**

*Rule of Civil Procedure 23 Applicable to These Proceedings and to Permit the Filing of a Class Proof of Claim* [Docket No. 513] (the "**First NAS Baby Class Claimants' Motion**") and on September 18, 2019, the NAS Baby Claimants filed the *Motion by NAS Baby Claimants That Have Duly Received a Notice to File Proof of Claim in This Matter Pursuant to Fed. R. Bankr. P. 9014 and 7023 to Make Federal Rule of Civil Procedure 23 Applicable to These Proceedings and to Permit the Filing of a Class Proof of Claim on Their Behalf* [Docket No. 628] (together with the First NAS Baby Class Claimants' Motion, the "**NAS Baby Class Claimants' Motions**").

NOW THEREFORE, THE PARTIES, BY AND THROUGH THEIR RESPECTIVE UNDERSIGNED COUNSEL, HEREBY STIPULATE AND AGREE AS FOLLOWS:

1.      The above recitals are fully incorporated herein and made an express part of this Stipulation.

2.      Upon approval of this Stipulation by the Court, (a) the NAS Baby Class Claimants' Motions shall be deemed withdrawn without prejudice, (b) the procedures attached hereto as **Exhibit 1-A** (as may be amended or supplemented by agreement of the Parties in connection with confirmation of the Proposed Plan (as defined below), the "**NAS Baby Class Claims Procedures**") with respect to holders of claims represented by the NAS Baby Claimants under the terms of the NAS Baby Class Claims Procedures and the Proposed Plan (the "**NAS Baby Class**") shall become binding upon the Parties hereto in these chapter 11 cases, and (c) NAS Baby Claimants in the NAS Baby Class shall file, within ten (10) business days of the approval of this Stipulation, a Proof of Claim on behalf of the NAS Baby Class (the "**NAS Baby Class Claim**"), which shall be the NAS Baby Class Claim with respect to which the Debtors, or any successor thereto, will make distributions under the Proposed Plan, if confirmed.

**NAS1624**

3. Subject to approval by the Court, the Parties consent, and waive any right to object, to incorporation of the terms of the NAS Baby Class Claims Procedures into the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* [Docket No. 928] (as may be amended or modified from time to time, the "**Proposed Plan**") and the disclosure statement related thereto [Docket No. 929] (as may be amended or modified from time to time, the "**Proposed Disclosure Statement**"), and the Parties agree to be bound by such terms.

4. The NAS Baby Claimants may, upon written notice to the counsel for the Debtors and the Committee, terminate this Stipulation if any of the following shall occur: (i) the Proposed Plan (subject to non-material modifications) is not confirmed by the Court through and including the date of the expiration of the period during which the Debtors exclusively may file a plan (as the same may be extended from time to time); (ii) these chapter 11 cases shall be converted to cases under another chapter of the Bankruptcy Code; (iii) a trustee shall be appointed in these cases; or (iv) these cases shall be dismissed.

5. The Debtors, or any successor to the Debtors, may terminate this Stipulation on written notice to the NAS Baby Claimants if any of the following shall occur: (i) the Proposed Plan (subject to non-material modifications) is not confirmed by the Court through and including the date of the expiration of the period during which the Debtors exclusively may file a plan (as the same may be extended from time to time); (ii) these chapter 11 cases shall be converted to cases under another chapter of the Bankruptcy Code; (iii) a trustee shall be appointed in these cases; (iv) these cases shall be dismissed; or (v) if the NAS Baby Claimants fail to comply with any requirement of the NAS Baby Class Claims Procedures.

NAS1625

6.     If this Stipulation is terminated, (a) the designation of the NAS Baby Class Claim as a Claim filed on behalf of the NAS Baby Class shall be rescinded and the NAS Baby Class Claim and any other Proof of Claim filed in connection herewith shall be treated as filed solely on behalf of the NAS Baby Claimants, and (b) the NAS Baby Claimants shall be relieved of any further obligations under the NAS Baby Class Claims Procedures.

7.     This Stipulation constitutes the entire agreement between the Parties and supersedes all prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof and, except as otherwise expressly provided herein, is not intended to confer upon any other person any rights or remedies hereunder.

8.     Except as expressly set forth in this Stipulation or the NAS Baby Class Claims Procedures, nothing contained herein shall be an admission or waiver of the substantive or procedural rights, remedies, claims, or defenses of any of the parties in these chapter 11 cases, whether at law or equity.

9.     Each of the Parties shall bear its own attorneys' fees and costs with respect to the execution and delivery of this Stipulation and the NAS Baby Class Claims Procedures; *provided*, *however*, that the allowed attorneys' fees and costs of the Committee shall be paid pursuant to applicable provisions of the Bankruptcy Code and orders of the Court.

10.     This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile or electronic mail, and each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

11.     This Stipulation and the NAS Baby Class Claims Procedures may not be amended without the express written consent of all Parties hereto.

**NAS1626**

12.     It is acknowledged that each Party has participated in and jointly consented to the drafting of this Stipulation and the NAS Baby Class Claims Procedures and that any claimed ambiguity shall not be construed for or against either Party on account of such drafting.

13.     The Court shall retain jurisdiction over any and all disputes or other matters arising under or otherwise relating to this Stipulation.

RLF1 21965742v.4

NAS1627

Dated: December 4, 2019
Wilmington, Delaware

*/s/ Christopher M. De Lillo*
RICHARDS, LAYTON & FINGER, P.A.
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Amanda R. Steele (No. 5530)
Zachary I. Shapiro (No. 5103)
Christopher M. De Lillo (No. 6355)
One Rodney Square
920 N. King Street
Wilmington, DE 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701
knight@rlf.com
heath@rlf.com
steele@rlf.com
shapiro@rlf.com
delillo@rlf.com

-and-

WEIL, GOTSHAL & MANGES LLP
Gary T. Holtzer (admitted *pro hac vice*)
Ronit J. Berkovich (admitted *pro hac vice*)
Peter Isakoff (admitted *pro hac vice*)
Brenda L. Funk (admitted *pro hac vice*)
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
gary.holtzer@weil.com
ronit.berkovich@weil.com
peter.isakoff@weil.com
brenda.funk@weil.com

*Attorneys for the Debtors
and Debtors in Possession*

*/s/ Justin R. Alberto*
BAYARD, P.A.
Justin R. Alberto (No. 5126)
Erin R. Fay (No. 5268)
Daniel N. Brogan (No. 5723)
600 N. King Street, Suite 400
Wilmington, DE 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395

-and-

AKIN GUMP STRAUSS HAUER
 & FELD LLP
Daniel H. Golden
Arik Preis
Mitchell P. Hurley
One Bryant Park
Bank of America Tower
New York, NY 10036-6745
Telephone: (212) 872-1000
Facsimile: (212) 872-1002

*Co-Counsel for the Official Committee of
Unsecured Creditors*

**NAS1628**

*/s/ David M. Klauder*
BIELLI & KLAUDER, LLC
David M. Klauder (No. 5769)
1204 N. King Street
Wilmington, DE 19801
Telephone: (302) 803-4600
Facsimile: (302) 397-2557
dklauder@bk-legal.com

-and-

MARTZELL, BICKFORD & CENTOLA
Scott R. Bickford
338 Lafayette Street
New Orleans, LA 70130
Telephone: (504) 581-9065
sbickford@mbfirm.com

-and-

THE CREADORE LAW FIRM, P.C.
Donald Creadore
450 Seventh Avenue – 1408
New York, NY 10123
Telephone: (212) 355-7200
donald@creadorelawfirm.com

-and-

COOPER LAW FIRM, LLC
Celeste Brustowicz
1525 Religious Street
New Orleans, LA 70130
Telephone: (504) 399-0009
cbrustowicz@sch-llc.com

-and-

THOMPSON BARNEY LAW FIRM
Kevin W. Thompson
2030 Kanawha Boulevard, East
Charleston, WV 25311
Telephone: (304) 343-4401
kwthompsonwv@gmail.com

*Attorneys for the NAS Baby Claimants*

NAS1629

**EXHIBIT 1-A**

NAS1630

**Class Claim Procedures**
**NAS Monitoring Class Claim**

1. The **NAS Monitoring Class** includes all NAS diagnosed children with a Claim for medical monitoring support against Insys.

2. No Distributions[1] will be made to the NAS Monitoring Class Representative (a trustee to be appointed pursuant to the Plan) on the NAS Monitoring Class Claim under the Plan, and instead, will be held by the Liquidating Trustee for the benefit of the NAS Monitoring Class, until an NAS Monitoring Allocation Plan has been approved by the Bankruptcy Court.

3. Within six months of the Effective Date of the Plan, the selected NAS Monitoring Class Representative will propose a plan based on expert analysis and empirical observation to allocate Distributions in support of the development and implementation of a national NAS children monitoring system (the "**NAS Monitoring Allocation Plan**" or "**NMAP**"). The NAS Monitoring Class Representative will file a motion and proposed order with the Bankruptcy Court seeking approval of the NAS Monitoring Allocation Plan, which will include provisions for the establishment of the NAS Escrow Account (described below).

4. If the NAS Monitoring Class Representative determines, after consultation with the Liquidating Trustee and after Bankruptcy Court approval of the NMAP, that implementation of the monitoring system would be uneconomical based on the amount of available Distributions, the NAS Monitoring Class Representative will establish an escrow account to hold Distributions (the "**NAS Escrow Account**") until such time as the funds available to the NAS Monitoring Class Representative are sufficient, in the NAS Monitoring Class Representative's sole discretion, to contribute to implementation of the national monitoring system. Upon the establishment of the NAS Escrow Account, the Liquidating Trustee will make Distributions under the Plan into the NAS Escrow Account.

5. The NAS Monitoring Class Representative will provide a status report to the Liquidating Trustee every 90 days from the date of the first payment into the NAS Escrow Account reflecting the status of the NAS Escrow Account until such time as the Distributions paid under the Plan into the NAS Escrow Account have been distributed in accordance with the NMAP.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Second Amended Joint Chapter 11 Plan of Liquidation of Insys Therapeutics, Inc. and Its Affiliated Debtors* [Docket No. 928] (as may be amended or modified from time to time, the "**Plan**").

WEIL:\97218971\1\53602.0003

**NAS1631**

**EXHIBIT B**

NAS1632

# DECLARATION OF DR. KANWALJEET S. ANAND

I am Dr. Kanwaljeet S. Anand, M.B.B.S., D.Phil., FAAP, FCCM, FRCPCH who files this declaration under penalty of perjury. I am a pediatrician specialized in the care of critically ill newborns and children. I serve as a fully tenured Professor of Pediatrics, Anesthesiology, Perioperative & Pain Medicine at Stanford University School of Medicine, and as Director of the Pain/Stress Neurobiology Laboratory at Children's Hospital Research Institute. For more than 30 years, I have conducted intensive research and study on the development of pain/stress in human newborns, their development during early childhood, and long-term outcomes. I have authored 311 scientific publications (125 in the last 10 years), edited 9 books, and received numerous professional awards. My true and correct Curriculum Vitae is attached. I am personally familiar with Opioid Use Disorder in adult females and Neonatal Abstinence Syndrome and have reviewed the materials referenced below.

The President of the United States had declared a national medical emergency caused by the Opioid Crisis in America[1]. The immediate effects of the Opioid Crisis, however, may be strikingly less consequential when compared to its effects on the individuals who were exposed to opioid drugs prenatally, many of whom were diagnosed with NAS. These children, through no fault of theirs, have been condemned to suffer from the short-term and long-term effects of opioid exposure from birth throughout their childhood, adolescence and into their adult lives. Though the current Opioid Crisis looms large on the thinking of social, medical, or government establishments, but its long-term impact is inestimable because of the pervasive and persistent effects of prenatal opioids on all aspects of an individual's development. Their cumulative burden of suffering, and the total impact of their exposures on all facets of our society is so huge and unparalleled in human history that this is truly the real emergency. Unless they are monitored/supported/treated NOW, the problems of these children will become intractable and unmanageable as they grow into adulthood, wiping away generations of human endeavor because of our short-sightedness. I offer the following statements for the Court's consideration:

**Definitions**

- Opioid Use Disorder (OUD) is defined in the DSM-5 as a problematic pattern of opioid use leading to clinically significant impairment or distress. OUD was previously classified as Opioid Abuse or Opioid Dependence in DSM-IV.
- OUD has also been referred to as "opioid addiction" in previous publications. Addiction is defined as a chronic, relapsing syndrome of psychological dependence and craving of a drug for its psychedelic, sedative, or euphoric effects; characterized by compulsion, loss of control, and continued use of a substance despite knowledge of its harmful effects[2].
- Infants and children are not "users" as defined under the DSM-5 criteria and are excluded from the class of persons suffering from OUD. Regardless, the birth mothers of children diagnosed with neonatal abstinence syndrome (NAS) would be included within the definition of OUD.
- Neonatal abstinence syndrome (NAS) or neonatal opioid withdrawal syndrome (NOWS) are terms used to denote a group of problems that occur in the children who were exposed to opioid or opiate drugs in the mother's womb. NAS is diagnosed clinically based on the clinical signs occurring in the 1 week after birth, characterized by neurologic hyperexcitability, gastrointestinal dysfunction, and autonomic instability. Most common neurologic signs include anxiety, agitation,

grimacing, insomnia, increased muscle tone/reflexes, exaggerated startle reflexes, high-pitched crying, tremors and abnormal movements, seizures; gastrointestinal symptoms include vomiting, diarrhea, poor sucking, dehydration; autonomic signs include elevated heart rate, respiratory rate, and blood pressure, fever, sweating, mottled skin, yawning, skin excoriation, cold extremities[2-5].

Notes: 1. Most clinicians diagnose NAS in children with modified Finnegan score of 8 or greater from two (2) consecutive assessments performed by a qualified healthcare practitioner with a minimum interval of 4 hours between the two consecutive NAS assessments[6-9]. Although the Finnegan NAS was criticized in various publications and alternatives were suggested, however, it is still the most widely used method for making a clinical diagnosis of NAS[10,11]. Simplified versions of the Finnegan NAS scale were developed and cross-validated against the original Finnegan score but did not show any significant improvement in psychometric properties[12-14]. Other methods for making the NAS diagnosis include the Rivers opiate withdrawal tool[15], the Lipsitz narcotic withdrawal score (cut-off score of 4 or more indicates NAS)[14], the neonatal narcotic withdrawal index (cut-off score of 5 or more indicates NAS)[16], and other less commonly used methods. Two recent studies have substantiated the validity of a clinical diagnosis for NAS coded within the patient's medical record at the time of hospital discharge[17,18]. A quality improvement (QI) initiative showed increases in the accuracy and consistency of Finnegan NAS scoring by nurses, but the effects of this training were short-lasting[19].

2. Although all children born to birth mothers suffering from OUD in pregnancy may or may not show signs/symptoms of NAS or NOWS, their brain development has been altered by repeated exposures to opioid drugs in the prenatal period. NAS signs/symptoms are the clinical manifestations resulting from sudden withdrawal of the prenatal opioid exposure, whereas the structural and functional alterations in their brain cells, connections, and architecture, as well as the brain damage from opioid-induced apoptosis (programmed cell death) occurs long before a child is born. These changes in brain development are permanent and will affect these children throughout their entire lifespan (see below). Therefore, we need to establish a class of individuals who were exposed to opioid drugs prenatally, particularly those who were diagnosed with NAS/NOWS after birth.

3. For the purposes of monitoring and surveillance, therefore, the following objective criteria will identify children with NAS and at risk for long-term neurodevelopmental consequences of prenatal opioid exposures:

a) Diagnosis of NAS or NOWS documented in the child's medical record, for example, using the diagnostic codes of: P96.1/P04.49 (ICD-10 CM), 779.5/760.72 (ICD-9 CM)[18]; and/or

b) Monitoring of NAS/NOWS score(s) after birth, meeting the diagnostic criteria as defined above; and/or

c) Postnatal weaning of opioid drugs (morphine, methadone, buprenorphine, or other opioids); and/or

d) Children who are already listed in a national registry or other registries established for NAS[20]; and/or

e) Toxicology screen of (a) maternal blood, urine, or hair analysis, (b) umbilical cord blood, (c) baby's meconium testing positive for opioids (excluding mothers who were prescribed opioids after the onset of, or for the purpose of treating labor pains, or for treating procedural pain).

**NAS1634**

**The numbers of babies exposed to prenatal opioids annually**

1) Based on trend analyses for birth mothers suffering from OUD in pregnancy, approximately 36,000 babies are likely to be born with prenatal opioid exposures in 2018[21] (projected using the CDC birth rate data)[22-24].  CDC data show that the documented rate for birth mother OUD was 6.5 per 1,000 delivery hospitalizations in 2014 (MMWR, August 2018[21]). This is a conservative estimate, since it does not include babies delivered at home, at maternity clinics, or birthing centers. Epidemiological studies show that rates of birth mother OUD may be higher among women who use non-hospital birthing centers or prefer delivering their baby at home[21,25-27].

2) Using data from 1999 to 2014[21], the National Average Annual increase in opioid exposed birth rates for mothers suffering from OUD was 0.39 per 1,000 delivery hospitalizations per year.  This estimate averages the increases in birth mother OUD rates over 16 years of collected data, although the rate of increase was much greater in the last 5 years of data collection (Figure 1).

FIGURE 1. National prevalence of opioid use disorder per 1,000 delivery hospitalizations* — National Inpatient Sample (NIS),† Healthcare Cost and Utilization Project (HCUP), United States, 1999–2014



Even using this conservative yearly rate increase (3.9%) will give us prenatal opioid exposure rates increasing up to 8.45 per 1,000 delivery hospitalizations in 2019.  However, if we project the prenatal opioid exposure rate increases from the past 5 years, National Average increases show an increased rate of 7.2% or 0.72 per 1,000 delivery hospitalizations per year.  This will give us prenatal opioid exposure rates increasing to 10.1 per 1,000 delivery hospitalizations in 2019.  These data are listed in **Table 1** on the next page.  Table 1 also includes the "corrected" prenatal opioid exposure rates after adjusting for: (1) women undergoing detox before the baby's birth, whose babies may not show signs of NAS; and (2) those women who do not deliver in a hospital (previous studies have reported higher OUD rates among these women).

**Annual growth rate of individuals at risk for NAS**

3) More than half (60-75%) of the individuals born to birth mothers with OUD in pregnancy are expected to be diagnosed with NAS as defined above[21,28-36].  Those diagnosed with NAS are more likely than non-NAS individuals to have <u>more significant exposures</u> to prenatal opioids and to have developed subcellular and other physiological changes as a result of such exposures.  CDC states that individuals at risk for NAS are **"clearly underestimated and under-reported"** but

NAS1635

the data available from 36 states in 2015 showed approximate increases of 7.2% occurring in each year between 2011 and 2015[21,26,27,37,38].

**Table 1: Numbers of Individuals at risk for NAS: Trend analyses from 2014 to 2019**

| | National Average Increase 0.39/year (**1999-2014** data) | | | National Average Increase 0.72/year (**2011-2014** data) | | | Estimates including babies who detox *in utero* and those born in non-hospital settings | | |
|---|---|---|---|---|---|---|---|---|---|
| | OUD rate/1000 hospital deliveries | Number of live-births: CDC data | Newborns with prenatal opioid exposures | OUD rate/1000 hospital deliveries | Number of live-births: CDC data | Newborns with prenatal opioid exposures | Corrected OUD rates/1000 live births | Number of live-births: CDC data | Newborns with prenatal opioid exposures |
| 2014 | 6.5 | 3,988,076 | 25,922 | 6.5 | 3,988,076 | 25,922 | 7.5 | 3,988,076 | 29,911 |
| 2015 | 6.89 | 3,978,497 | 27,412 | 7.22 | 3,978,497 | 28,725 | 8.5 | 3,978,497 | 33,817 |
| 2016 | 7.28 | 3,945,875 | 28,726 | 7.94 | 3,945,875 | 31,330 | 9.4 | 3,945,875 | 37,091 |
| 2017 | 7.67 | 3,853,472 | 29,556 | 8.66 | 3,853,472 | 33,371 | 10.3 | 3,853,472 | 39,691 |
| 2018* | 8.06 | 3,776,403 | 30,438 | 9.38 | 3,776,403 | 35,423 | 11.1 | 3,776,403 | 41,918 |
| 2019* | 8.45 | 3,738,639 | 31,591 | 10.1 | 3,738,639 | 37,760 | 11.9 | 3,738,639 | 44,490 |

*2018 Number of Live-births estimated with a 2% decrease in births from 2017; *2019 Number of Live-births estimated with a 1% decrease in births from 2018

**Constellation of clinical conditions associated with NAS**

4) Opioids are proven hazardous substances for prenatal human development. Thus, NAS is associated with premature birth, low birth weight, intrauterine growth retardation (IUGR), perinatal or neonatal mortality, increased birth defects, delayed cognitive development, long-term behavioral problems, ADHD, auditory deficits, speech delay, swallowing difficulty, gastro-esophageal reflux disease (GERD), digestive or gastrointestinal motility disorders, delayed feeding, failure to thrive, congenital neurological defects, and congenital heart defects[39-45].

**Time periods of interventions to achieve the best outcomes**

5) For most of the conditions listed above, the best possible outcomes can only be achieved with proper management of NAS before hospital discharge, coupled with increased monitoring and surveillance, as well as active multi-disciplinary interventions that are initiated just after birth and continued for the child's entire childhood and adolescence (up to 18 years of age)[30,39,46-56].

**Evidence suggesting that prenatal opioid exposure damages DNA**

6) Huge amounts of published data substantiate the findings that prenatal opioid exposures alter genetic regulation and DNA structure, although many of these studies were performed in animal models[57]. Almost 40 years ago, however, leading researchers discovered that prenatal opioid

**NAS1636**

exposure damages human DNA and/or prevents DNA repair occurring from other causes of DNA damage (e.g. UV light)[58]. Since then, accumulating data have shown the progressive and persistent effects of repetitive prenatal opioid exposure on DNA fragmentation occurring in the developing human brain and in peripheral blood cells[58-71]. More recently, several studies also documented the epigenetic effects of opioid addiction, capable of intergenerational and transgenerational transmission to the offspring of opioid addicts[72-80]. Although pregnant women were excluded from some of these studies, the underlying mechanisms are the same and will have extensive effects on the massive amounts of DNA synthesis occurring during prenatal human development[66,81].

Consequent to the opioid effects on human DNA cited above, a large number of studies have found a higher incidence of birth defects in the babies exposed to maternal opioids *in utero*[45]. Seventeen (17) studies found opioid exposure linked with facial/oral defects (e.g., cleft lip, cleft palate, or others), heart defects (e.g., ventricular septal defects, atrial septal defects, hypoplastic left heart syndrome, pulmonary valve stenosis, conoventricular septal defects), limb deformities (e.g., clubfoot), visceral organ defects (e.g., gastroschisis), or neural tube defects (e.g., spina bifida)[40,41,43-45]. Most of these conditions require multiple surgical operations and long-term medical care to support the optimal development of these severely affected children[43,82].

**Long-term cognitive and behavioral outcomes of individuals diagnosed with NAS**

7) Brain Development: Opioids have drastic and sustained effects on brain development in the fetal and postnatal periods, affecting the brain's size, architecture, networks and connections between brain cells, neurochemical and other functions of each cell, as well as the brain DNA's structure, its expression and regulation. Thus, prenatal opioid exposures have robust and long-term effects on the cognitive and behavioral outcomes of the individuals diagnosed with NAS[82]. Opioids affect brain development by disrupting oligodendrocyte development, altering the temporal sequencing and quality of nerve fiber myelination[83], decreasing the growth of nerve cell dendrites[84,85] and their branching pattern complexity of pyramidal neurons in the cerebral cortex[40], and by suppressing cell proliferation and neuronal migration to the cortical plate[86]. These effects may reduce regional brain volumes in the basal ganglia[87] and other brain areas[87-90], with lower developmental potential.

8) Brain Growth: A large number of studies have reported lower birth weights and smaller head circumferences in opioid-exposed babies with relatively increased risks in those exposed [20,36,87,91-99]. A controlled comparison showed that reduced fetal head and body growth in infants of opioid-dependent mothers were not explained by gestational age, cigarette smoking, area deprivation, infant gender, maternal age or parity[100]. Given the limited maternal/environmental effects on head circumference, it is likely that the robust effects of opioid exposure on head circumference occur by reducing brain growth[82,101]. This was confirmed in a pilot study of 16 infants, where volumetric MRI scans showed smaller whole brain volumes and basal ganglia volumes compared to age-matched population means[87]. In another follow-up MRI study that included 38 youths in the opioid-exposed group and 44 youths in the non-exposed group (aged 17 to 22 years), the drug-exposed group displayed smaller brain volumes, smaller surface areas of the cerebral cortex, and thinner cortical mantles than unexposed youth[88].

9) Functional Effects: The consequences of this impaired brain growth are also pervasive, with altered dyadic interactions between mothers and infants[102], impaired early development in all domains of the Griffith's Mental Development Scales[103], impaired visual acuity and visuomotor

functions (eye-hand coordination)[101,103,104], impaired language-related cognitive skills and executive functions[105,106], with inattention, hyperactivity, impulsivity, aggression, ADHD, other social and behavioral problems persisting into adolescence and even adulthood in those born to opioid-dependent mothers during pregnancy[88,91,107-109]. Baldacchino et al. identified 200 follow-up studies of opioid exposures during pregnancy, but only 8 studies met inclusion criteria with 4 studies in infancy, 3 assessing preschool children, and 1 on school children[110,111]. All these were case-control studies conducted within urbanized, low socioeconomic communities, with mothers exposed to either heroin or methadone. Five studies had data usable for meta-analysis, with a total of 218 opioid-exposed and 205 non-exposed children. In all outcomes opioid-exposed children had lower scores as compared to controls[110].

10) Neurodevelopmental Consequences: Differences in neurodevelopment between children with and without exposure to prenatal opioids are related to the age at which they were assessed, with milder differences occurring at birth, greater differences during infancy and early childhood but widening gaps noted during school age and adolescence. Individuals with NAS at birth had impaired behavioral regulation, greater excitability and arousal, and poorer quality of their movements[112-121]. Among infants and toddlers, NAS was associated with impaired mental and language development as well as poorer neuromotor and psychomotor development before 24 months of age[122]. Because of the very limited roles for cognitive or executive functions in early childhood, studies performed in the younger age groups showed minimal differences in cognitive or executive functions with and without NAS[123,124] (e.g., every infant is likely to fail an algebra test). In contrast, the Bayley Scales of Infant Development revealed more prominent neurodevelopment deficits, with greater vulnerability among boys than in girls[125-127]. Assessment in later childhood revealed differences in IQ, motor performance[128-131], language performance[132], lower IQ scores, behavior and attention problems compared with unexposed children at 8.5 years of age[107,108]. Children exposed to methadone prenatally also had elevated levels of aggression, fear, and anxiety[91,130,133]. Even after controlling for their sociodemographic factors and birth mother's medical history, elevated symptoms of ADHD occurred in children who were exposed to prenatal opioids compared with children not exposed to opioids *in utero*[91,130,134].

A recent systematic review and meta-analysis of cohort studies of 1,455 children from birth to 18 years found that prenatal opioid exposures negatively impacted neurocognitive outcomes and physical/motor development from age 6 months onwards, and this association persisted until adolescence[135]. The study could not differentiate between the contributions of prenatal opioid exposure vs. opioid treatment for NAS after birth and recommended that all NAS children should receive long-term monitoring, with social, emotional and educational support or intervention[135]. The long-term effects of prenatal opioids on cognition tended to increase over time, even in those children who were adopted or placed in foster care, thus being exposed to minimal postnatal risk factors[107]. NAS children discharged home with their birth mother, despite a longer hospital stay, had a higher likelihood of being referred for early intervention services (81%) compared to those placed in foster care (66%)[136].

11) Executive Functions: Executive functions are thinking skills that help us with the information processing, reasoning, planning, problem-solving, for coping with stress, regulating our emotions and managing our lives. As a child progresses through school, the executive functions assume greater importance in their academic success, goal setting, and employability[137]. Children exposed to prenatal opioids have difficulties with information processing[138], poorer performance on a

NAS1638

vigilance task[139], lower overall executive functioning[105], significantly lower visual acuity[101], impaired visual-motor and perceptual performances, and fewer goal-directed eye movements[140-142]. Children with NAS were far more likely to have developmental delays and lower IQ[143], 2.3 times more likely to be hospitalized for neuropsychiatric disorders[144], 4.5 times more likely to be hospitalized for child abuse[144] and die during hospitalization[144], perform poorly on educational testing[145], and show cognitive disabilities requiring extra classroom therapies and services[146]. CDC compared 1815 children with NAS and 5441 children without NAS (age 3-8 years). Children with NAS were more likely referred for disability evaluation (19.3% vs. 13.7%), have a learning disability (15.6% vs. 11.7%) and require classroom therapies (15.3% vs. 11.4%). These differences remained significant even after controlling for maternal smoking, maternal education, birth weight, gestational age, and/or NICU admission[146]. Children with NAS had lower scores on standardized testing in grade 3; by grade 7, children with NAS were scoring lower than other children in grade 5 and showing progressively greater deficits[145]. The increasingly complex cognitive processing and executive functioning required within a competitive high school environment place these children with NAS at progressively greater disadvantage and much higher likelihood of adverse outcomes, thus widening the gap between those with and without NAS.

12) Neuropsychiatric outcomes: Although Uebel et al. (2015) had found that more children with NAS were hospitalized with neuropsychiatric disorders (adjustment, conduct, anxiety, emotional, or speech disorders), three recent studies have highlighted the very high prevalence and distribution of mental health conditions among individuals with prenatal opioids. Using a Medicaid database, Sherman et al. (2019) found that half of all children with NAS were diagnosed with mental disorder before age 5, compared with 30% of all other births. Children with NAS were more likely to have conduct disturbances (2.7-fold), hyperkinetic syndromes (2.6-fold), adjustment difficulties (2.5-fold), stress/anxiety disorders (1.5-fold), emotional problems (1.9-fold), childhood-onset psychoses (1.7-fold), intellectual disabilities (2.3-fold), specific developmental delays (1.7-fold)[147]. Mental health conditions were 1.6-fold more prevalent in children with a history of NAS than the opioid-exposed children without a history of NAS, and 1.4-fold higher among children with Medicaid vs. commercial health insurance (Table 2 from Conner et al., 2019)[148]. From a longitudinally followed youth cohort (17-22 years) with prenatal opioid exposures (± other drugs) who were adopted/fostered before 1 year of age, Nygaard et al. (2019) found **2- to 8-fold higher lifetime risk of mental disorders** compared to matched controls[149]. These risks mainly included

**TABLE 2** Diagnoses of mental health conditions in children with and children without neonatal abstinence syndrome (NAS), by Medicaid or commercial insurance coverage

| Diagnosis (*ICD-9* code) | Commercial insurance (N=1,405,712) | | | | Medicaid[a] (N=270,772) | | | |
| | NAS (N=190) | | No NAS (N=1,405,522) | | NAS (N=1,046) | | No NAS (N=269,726) | |
| | N | % | N | % | N | % | N | % |
|---|---|---|---|---|---|---|---|---|
| Any mental health condition/diagnosis | 68 | 35.8 | 313,021 | 22.3 | 511 | 48.9 | 81,814 | 30.3 |
| Specific delays in development (315) | 48 | 25.3 | 115,785 | 8.2 | 327 | 31.3 | 49,591 | 18.4 |
| Disturbance of conduct (312) | 11 | 5.8 | 37,120 | 2.6 | 113 | 10.8 | 10,879 | 4.0 |
| Hyperkinetic syndrome of childhood (314) | 13 | 6.8 | 102,770 | 7.3 | 94 | 9.0 | 9,372 | 3.5 |
| Adjustment reaction (309) | 9 | 4.7 | 63,295 | 4.5 | 75 | 7.2 | 7,799 | 2.9 |
| Acute reaction to stress (308) | 2 | 1.1 | 6,995 | .5 | 49 | 4.7 | 8,123 | 3.0 |
| Neurotic disorders (300) | 9 | 4.7 | 60,749 | 4.3 | 43 | 4.1 | 7,365 | 2.7 |
| Special symptoms or syndromes (307) | 11 | 5.8 | 58,585 | 4.2 | 41 | 3.9 | 9,672 | 3.6 |
| Disturbance of emotion specific to childhood and adolescence (313) | 2 | 1.1 | 23,686 | 1.7 | 39 | 3.7 | 5,350 | 2.0 |
| Intellectual disabilities (317–319) | 1 | .5 | 2,596 | .2 | 37 | 3.5 | 4,074 | 1.5 |
| Psychoses with origin specific to childhood (299) | 8 | 4.2 | 26,860 | 1.9 | 32 | 3.1 | 4,752 | 1.8 |

[a] Source: Sherman et al., 2019 (2). Adapted by permission from American Psychiatric Association Publishing.

NAS1639

**major depression, alcohol abuse, ADHD**, and **aggressive behaviors** even after controlling for age, gender, and caregivers' education. These children not only engaged in sex at younger ages and had **more sexual partners** compared to controls, but also experienced **suicidality** (28.8%), **psychoses** (17.7%), or **antisocial personality disorder** (15.6%) more often than their peers[149].

Such bleak outcomes portend a future tsunami of neurocognitive and neuropsychiatric disorders among the children and youth with NAS. The Opioid Crisis has increased over the past 20 years; therefore, multiple generations of such children and youth have been affected. While we continue to argue about priorities and preferences, these children are growing up – and every day that passes without the medical monitoring or supportive services being offered to these children, it makes their problems more and more intractable, imposing on them poorer outcomes and greater societal disadvantages.

**Urgent need for more scientific investigations of individuals with NAS**

Despite the recent flurry of scientific publications on this topic, there are numerous unanswered questions about the epidemiology, risk factors, diagnoses, management, and responses to therapy in the children with NAS. Therefore, there is an urgent need for a court-appointed Science Panel with the imperative to document the long-term outcomes of children exposed to prenatal opioids, through multiple, well-designed, large studies that prospectively enroll adult women with OUD and ensure good retention rates, to longitudinally follow their children with NAS at least until 18 years of age. All these children will require detailed neurocognitive and neuropsychiatric testing, as well as functional monitoring. Such tests are not available during routine doctor visits or other healthcare settings. To be explicit, these needs exist well-above and beyond the routine pediatric care and/or schooling required for non-opioid exposed children. These needs are not currently covered by Medicaid, or any private health insurance or any kind of Special-Ed funding. To obtain such data and to ensure that appropriate therapies and social services are offered, these children require detailed medical monitoring and surveillance through a well-coordinated, standardized, multidisciplinary, and nationally implemented protocol as described below. The results of such monitoring and surveillance must be regularly evaluated by the court-appointed Science Panel, so that accumulating data and scientific insights can be applied to the ongoing care of these children. To inform members of the Science Panel, they must be given access to all scientific and medical studies, data, experiments, white papers, research forms, or other materials related to the synthetic opioids, regardless of whether such materials had ever been provided to the FDA or whether they were protected assert trade secret protection.

**Protocol for monitoring/surveillance of children diagnosed with NAS**

1) Biological variability is based on genetic and epigenetic mechanisms, or factors related to the prenatal opioid exposure that manifested NAS (specific drugs, dosage, period(s) of pregnancy affected, detox or treatment effects, exposures to smoking, alcohol, or other drugs), as well as the postnatal treatments for NAS. All these will influence the child's long-term neurodevelopmental consequences resulting from NAS. Individual differences occurring between humans are difficult to determine specifically, but a common medical monitoring program is absolutely essential for all NAS victims because they are all at high-risk for common detrimental outcomes, associated with 'hidden' or latent conditions and disorders that can be ameliorated through medical monitoring, scheduled assessments, surveillance procedures and appropriate therapies. The proposed monitoring is different from that normally recommended in the absence of opioid exposures and

there is immense clinical value in the early detection and diagnosis of long-term opioid effects. If our societal goal is to achieve the maximal developmental outcomes for all children, then uniform and robust program will be necessary. Although some children might ultimately benefit more than others, however, that can be attributed to a biological variability in response to therapy, other psychosocial factors, or presently unknown factors that require further scientific investigation.

2) Children with NAS are at higher risk for a variety of adverse outcomes as noted above. Therefore, they are worthy of a more structured and specialized program of monitoring and surveillance with scheduled extra assessments, for at least two reasons. First, their families/caregivers want to know if their child is healthy and growing and developing normally, and they want to know about the health or other problems likely to be encountered in the future. Special concerns often arise at childhood or social transition points, such as entering childcare or changing school levels, thus requiring careful guidance and advice. Second, most of their developmental problems can be ameliorated or prevented if detected early – identification of high-risk groups for targeted interventions can be both cost-effective and efficient. Multidisciplinary advice from Doyle et al. (2014)[150] was used to design the monitoring protocol as outlined below.

3) If these periodic diagnostic medical exams identify a particular deficit or disability, the child's caregivers must be provided access to the specific resources and treatment(s) that they will need to overcome the long-term impacts of NAS. Additionally, caring for a victim of NAS is difficult, associated with increased risks for repeated hospitalizations of the child. An educational program aimed at increasing the understanding of NAS in parents and other caregivers is recommended, including access (or referral) to resources for both the caregiver and the child.

4) Barriers for implementing standardized monitoring protocols must be anticipated and addressed. These may include providing funding for transportation to scheduled assessments or making the transport arrangements, providing token compensation to participants, facilitating access by offering home visits or assessments at a location convenient for the parent/caregiver, consideration for living situation, and other barriers.

5) Most of these assessments are required annually, unless specified otherwise. Certain specialist assessments may be required only once (e.g., cardiology evaluation to rule-out congenital heart disease), or to be determined by the results of the previous testing – more frequent assessments will be required for the NAS children with abnormal/atypical results.

6) The data gained from these assessments must be deidentified, aggregated and securely stored in a state-level database, with query access available to researchers, practitioners, social or healthcare agencies, advocacy groups and others.

In conclusion, implementation of the studies referenced herein as well as the long-term care and treatment of these babies is essential to the resolution of the Opioid Crisis and its impact on our society. This report is based upon the information available at the time it was prepared. With the recent increase in NAS cases, the scientific understanding of NAS and the outcomes of NAS victims continues to evolve. And yet, much work remains to be done, which is the goal of implementing a long-term Court-appointed Science Panel – to study the results of the monitoring and surveillance and to recommend interventions as needs arise. With the Court's permission, I

NAS1641

would like to reserve the right to update this report in order to reflect the accumulating scientific and medical evidence as necessary.

I certify under penalty of perjury that the foregoing is true and correct.

Executed on December 8, 2019.

_____

Dr. Kanwaljeet S. Anand,
M.B.B.S., D.Phil., FAAP, FCCM, FRCPCH

**References:**

1.     Terplan M. Beyond the Treatment Box: Perspectives on the Federal Response to Opioid Use, Pregnancy, and Neonatal Abstinence Syndrome. J Addict Med 2017;11:176-7.
2.     Anand KJS, Willson DF, Berger J, et al. Tolerance and withdrawal from prolonged opioid use in critically ill children. Pediatrics 2010;125:e1208-25.
3.     Anand KJS, Arnold JH. Opioid tolerance and dependence in infants and children. Crit Care Med 1994;22:334-42.
4.     Suresh S, Anand KJS. Opioid tolerance in neonates: mechanisms, diagnosis, assessment, and management. Semin Perinatol 1998;22:425-33.
5.     Suresh S, Anand KJS. Opioid tolerance in neonates: a state-of-the-art review. Paediatr Anaesth 2001;11:511-21.
6.     Finnegan LP, Connaughton JF, Jr., Kron RE, Emich JP. Neonatal abstinence syndrome: assessment and management. Addict Dis 1975;2:141-58.
7.     Finnegan LP, Kron RE, Connaughton JF, Emich JP. Assessment and treatment of abstinence in the infant of the drug-dependent mother. Int J Clin Pharmacol Biopharm 1975;12:19-32.
8.     Lifshitz M, Gavrilov V, Galil A, Landau D. A four year survey of neonatal narcotic withdrawal: evaluation and treatment. Isr Med Assoc J 2001;3:17-20.
9.     Zimmermann-Baer U, Notzli U, Rentsch K, Bucher HU. Finnegan neonatal abstinence scoring system: normal values for first 3 days and weeks 5-6 in non-addicted infants. Addiction 2010;105:524-8.
10.    Kocherlakota P. Neonatal abstinence syndrome. Pediatrics 2014;134:e547-61.
11.    Tolia VN, Patrick SW, Bennett MM, et al. Increasing incidence of the neonatal abstinence syndrome in U.S. neonatal ICUs. N Engl J Med 2015;372:2118-26.
12.    Maguire D, Cline GJ, Parnell L, Tai CY. Validation of the Finnegan neonatal abstinence syndrome tool-short form. Adv Neonatal Care 2013;13:430-7.
13.    Gomez Pomar E, Finnegan LP, Devlin L, et al. Simplification of the Finnegan Neonatal Abstinence Scoring System: retrospective study of two institutions in the USA. BMJ Open 2017;7:e016176.
14.    Lipsitz PJ. A proposed narcotic withdrawal score for use with newborn infants. A pragmatic evaluation of its efficacy. Clin Pediatr (Phila) 1975;14:592-4.
15.    Rivers RP. Neonatal opiate withdrawal. Arch Dis Child 1986;61:1236-9.
16.    Green M, Suffet F. The Neonatal Narcotic Withdrawal Index: a device for the improvement of care in the abstinence syndrome. Am J Drug Alcohol Abuse 1981;8:203-13.
17.    Yam P, Lok L, Eastwood J, et al. Validation of hospital discharge coding for neonatal abstinence syndrome. Acta Paediatr 2019;108:1786-92.
18.    Maalouf FI, Cooper WO, Stratton SM, et al. Positive Predictive Value of Administrative Data for Neonatal Abstinence Syndrome. Pediatrics 2019;143.
19.    Timpson W, Killoran C, Maranda L, Picarillo A, Bloch-Salisbury E. A Quality Improvement Initiative to Increase Scoring Consistency and Accuracy of the Finnegan Tool: Challenges in Obtaining Reliable Assessments of Drug Withdrawal in Neonatal Abstinence Syndrome. Adv Neonatal Care 2018;18:70-8.

**NAS1642**

20.   Nechanska B, Mravcik V, Skurtveit S, et al. Neonatal outcomes after fetal exposure to methadone and buprenorphine: national registry studies from the Czech Republic and Norway. Addiction 2018;113:1286-94.
21.   Haight SC, Ko JY, Tong VT, Bohm MK, Callaghan WM. Opioid Use Disorder Documented at Delivery Hospitalization - United States, 1999-2014. MMWR Morb Mortal Wkly Rep 2018;67:845-9.
22.   Martin JA, Hamilton BE, Osterman MJ, Driscoll AK, Mathews TJ. Births: Final Data for 2015. Natl Vital Stat Rep 2017;66:1.
23.   Martin JA, Hamilton BE, Osterman MJK, Driscoll AK, Drake P. Births: Final Data for 2016. Natl Vital Stat Rep 2018;67:1-55.
24.   Hamilton BE, Martin JA, Osterman MJ, Driscoll AK, Rossen LM. Births: Provisional Data for 2017. Washington, DC: Centers for Disease Control & Prevention, U.S. Department of Health and Human Services; 2018.
25.   Patrick SW, Schumacher RE, Benneyworth BD, Krans EE, McAllister JM, Davis MM. Neonatal abstinence syndrome and associated health care expenditures: United States, 2000-2009. JAMA 2012;307:1934-40.
26.   Atwell KA, Weiss HB, Gibson C, Miller R, Corden TE. Neonatal Abstinence Syndrome and Maternal Substance Use in Wisconsin, 2009-2014. WMJ 2016;115:287-94.
27.   Ko JY, Patrick SW, Tong VT, Patel RN, Lind JN, Barfield WD. Incidence of Neonatal Abstinence Syndrome - 28 States, 1999-2013. MMWR Morb Mortal Wkly Rep 2016;65:799-802.
28.   Ko JY, Wolicki S, Barfield WD, et al. CDC Grand Rounds: Public Health Strategies to Prevent Neonatal Abstinence Syndrome. MMWR Morb Mortal Wkly Rep 2017;66:242-5.
29.   Reddy UM, Davis JM, Ren Z, Greene MF, Opioid Use in Pregnancy NAS, Childhood Outcomes Workshop Invited S. Opioid Use in Pregnancy, Neonatal Abstinence Syndrome, and Childhood Outcomes: Executive Summary of a Joint Workshop by the Eunice Kennedy Shriver National Institute of Child Health and Human Development, American College of Obstetricians and Gynecologists, American Academy of Pediatrics, Society for Maternal-Fetal Medicine, Centers for Disease Control and Prevention, and the March of Dimes Foundation. Obstet Gynecol 2017;130:10-28.
30.   Kraft WK, Stover MW, Davis JM. Neonatal abstinence syndrome: Pharmacologic strategies for the mother and infant. Semin Perinatol 2016;40:203-12.
31.   Patrick SW, Davis MM, Lehmann CU, Cooper WO. Increasing incidence and geographic distribution of neonatal abstinence syndrome: United States 2009 to 2012. J Perinatol 2015;35:650-5.
32.   Patrick SW, Dudley J, Martin PR, et al. Prescription opioid epidemic and infant outcomes. Pediatrics 2015;135:842-50.
33.   Brandt L, Finnegan LP. Neonatal abstinence syndrome: where are we, and where do we go from here? Curr Opin Psychiatry 2017;30:268-74.
34.   Jansson LM, Velez M, Harrow C. The opioid-exposed newborn: assessment and pharmacologic management. J Opioid Manag 2009;5:47-55.
35.   McQueen KA, Murphy-Oikonen J, Desaulniers L. Maternal Substance Use and Neonatal Abstinence Syndrome: A Descriptive Study. Matern Child Health J 2015;19:1756-65.
36.   Hytinantti T, Kahila H, Renlund M, Jarvenpaa AL, Halmesmaki E, Kivitie-Kallio S. Neonatal outcome of 58 infants exposed to maternal buprenorphine in utero. Acta Paediatr 2008;97:1040-4.
37.   Lind JN, Petersen EE, Lederer PA, et al. Infant and maternal characteristics in neonatal abstinence syndrome--selected hospitals in Florida, 2010-2011. MMWR Morb Mortal Wkly Rep 2015;64:213-6.
38.   Okoroh EM, Gee RE, Jiang B, McNeil MB, Hardy-Decuir BA, Zapata AL. Neonatal Abstinence Syndrome: Trend and Expenditure in Louisiana Medicaid, 2003-2013. Matern Child Health J 2017;21:1479-87.
39.   Wolff K, Perez-Montejano R. Opioid neonatal abstinence syndrome: controversies and implications for practice. Curr Drug Abuse Rev 2014;7:44-58.
40.   Broussard CS, Rasmussen SA, Reefhuis J, et al. Maternal treatment with opioid analgesics and risk for birth defects. Am J Obstet Gynecol 2011;204:314 e1-11.
41.   Yazdy MM, Mitchell AA, Tinker SC, Parker SE, Werler MM. Periconceptional use of opioids and the risk of neural tube defects. Obstet Gynecol 2013;122:838-44.
42.   Dawson AL, Razzaghi H, Arth A, et al. Maternal exposures in the National Birth Defects Prevention Study: Time trends of selected exposures. Birth Defects Res A Clin Mol Teratol 2015;103:703-12.
43.   McCarthy M. Opioids are commonly prescribed to women of reproductive age despite birth defect risk, US CDC study shows. BMJ 2015;350:h456.
44.   Interrante JD, Ailes EC, Lind JN, et al. Risk comparison for prenatal use of analgesics and selected birth defects, National Birth Defects Prevention Study 1997-2011. Ann Epidemiol 2017;27:645-53 e2.
45.   Lind JN, Interrante JD, Ailes EC, et al. Maternal Use of Opioids During Pregnancy and Congenital Malformations: A Systematic Review. Pediatrics 2017;139.

**NAS1643**

46.    Ballard JL. Treatment of neonatal abstinence syndrome with breast milk containing methadone. J Perinat Neonatal Nurs 2002;15:76-85.
47.    Bell SG. Buprenorphine: a newer drug for treating neonatal abstinence syndrome. Neonatal Netw 2012;31:178-83.
48.    Kraft WK, van den Anker JN. Pharmacologic management of the opioid neonatal abstinence syndrome. Pediatr Clin North Am 2012;59:1147-65.
49.    Bagley SM, Wachman EM, Holland E, Brogly SB. Review of the assessment and management of neonatal abstinence syndrome. Addict Sci Clin Pract 2014;9:19.
50.    Patrick SW, Kaplan HC, Passarella M, Davis MM, Lorch SA. Variation in treatment of neonatal abstinence syndrome in US children's hospitals, 2004-2011. J Perinatol 2014;34:867-72.
51.    McPherson C. Pharmacotherapy for Neonatal Abstinence Syndrome: Choosing the Right Opioid or No Opioid at All. Neonatal Netw 2016;35:314-20.
52.    Grossman MR, Berkwitt AK, Osborn RR, et al. An Initiative to Improve the Quality of Care of Infants With Neonatal Abstinence Syndrome. Pediatrics 2017;139.
53.    Kraft WK, Adeniyi-Jones SC, Chervoneva I, et al. Buprenorphine for the Treatment of the Neonatal Abstinence Syndrome. N Engl J Med 2017;376:2341-8.
54.    Kraft WK, Adeniyi-Jones SC, Ehrlich ME. Buprenorphine for the Neonatal Abstinence Syndrome. N Engl J Med 2017;377:997-8.
55.    Pryor JR, Maalouf FI, Krans EE, Schumacher RE, Cooper WO, Patrick SW. The opioid epidemic and neonatal abstinence syndrome in the USA: a review of the continuum of care. Arch Dis Child Fetal Neonatal Ed 2017;102:F183-F7.
56.    Gadomski A, Riley M, Ramiza K, et al. Treating Neonatal Abstinence Syndrome in a Rural Hospital: Lessons Learned. Acad Pediatr 2018.
57.    Jimenez-Gonzalez A, Garcia-Concejo A, Leon-Lobera F, Rodriguez RE. Morphine delays neural stem cells differentiation by facilitating Nestin overexpression. Biochim Biophys Acta 2018;1862:474-84.
58.    Madden JJ, Falek A, Shafer DA, Glick JH. Effects of opiates and demographic factors on DNA repair synthesis in human leukocytes. Proc Natl Acad Sci U S A 1979;76:5769-73.
59.    McLaughlin P, Mactier H, Gillis C, et al. Increased DNA Methylation of ABCB1, CYP2D6, and OPRM1 Genes in Newborn Infants of Methadone-Maintained Opioid-Dependent Mothers. J Pediatr 2017;190:180-4 e1.
60.    Drobnis EZ, Nangia AK. Pain Medications and Male Reproduction. Adv Exp Med Biol 2017;1034:39-57.
61.    Abo-Elnazar S, Moaaz M, Ghoneim H, Molokhia T, El-Korany W. Th17/Treg imbalance in opioids and cannabinoids addiction: relationship to NF-kappaB activation in CD4+ T cells. Egypt J Immunol 2014;21:33-47.
62.    Feng YM, Jia YF, Su LY, et al. Decreased mitochondrial DNA copy number in the hippocampus and peripheral blood during opiate addiction is mediated by autophagy and can be salvaged by melatonin. Autophagy 2013;9:1395-406.
63.    Perez-Alvarez S, Iglesias-Guimarais V, Solesio ME, et al. Methadone induces CAD degradation and AIF-mediated necrotic-like cell death in neuroblastoma cells. Pharmacol Res 2011;63:352-60.
64.    Hu S, Sheng WS, Lokensgard JR, Peterson PK. Morphine induces apoptosis of human microglia and neurons. Neuropharmacology 2002;42:829-36.
65.    Zagon IS, Verderame MF, Allen SS, McLaughlin PJ. Cloning, sequencing, chromosomal location, and function of cDNAs encoding an opioid growth factor (OGFr) in humans. Brain Res 2000;856:75-83.
66.    Zagon IS, Wu Y, McLaughlin PJ. Opioid growth factor and organ development in rat and human embryos. Brain Res 1999;839:313-22.
67.    Madden JJ, Falek A. The use of nonneuronal cells as an in vitro model system for studying the genetic component of cellular response to opiates and other drugs of abuse. J Addict Dis 1991;10:229-38.
68.    Falek A, Donahoe RM, Madden JJ, Shafer DA. Opiates as immunosuppressive and genotoxic agents. Adv Exp Med Biol 1991;288:189-201.
69.    Shafer DA, Falek A, Donahoe RM, Madden JJ. Biogenetic effects of opiates. Int J Addict 1990;25:1-18.
70.    Falek A, Madden JJ, Shafer DA, Donahoe RM. Individual differences in opiate-induced alterations at the cytogenetic, DNA repair, and immunologic levels: opportunity for genetic assessment. NIDA Res Monogr 1986;66:11-24.
71.    Shafer DA, Falek A, Madden JJ, et al. Parallel increases in sister-chromatid exchanges at base level and with UV treatment in human opiate users. Mutat Res 1983;109:73-82.
72.    McCarthy JJ, Leamon MH, Finnegan LP, Fassbender C. Opioid dependence and pregnancy: minimizing stress on the fetal brain. Am J Obstet Gynecol 2017;216:226-31.
73.    Wachman EM, Hayes MJ, Lester BM, et al. Epigenetic variation in the mu-opioid receptor gene in infants with neonatal abstinence syndrome. J Pediatr 2014;165:472-8.
74.    Hurd YL, O'Brien CP. Molecular Genetics and New Medication Strategies for Opioid Addiction. Am J Psychiatry 2018:appiajp201818030352.

NAS1644

75. Goldberg LR, Gould TJ. Multigenerational and transgenerational effects of paternal exposure to drugs of abuse on behavioral and neural function. Eur J Neurosci 2018.

76. Crist RC, Reiner BC, Berrettini WH. A review of opioid addiction genetics. Curr Opin Psychol 2018;27:31-5.

77. Marie-Claire C, Jourdaine C, Lepine JP, Bellivier F, Bloch V, Vorspan F. Pharmacoepigenomics of opiates and methadone maintenance treatment: current data and perspectives. Pharmacogenomics 2017;18:1359-72.

78. Marie-Claire C, Crettol S, Cagnard N, et al. Variability of response to methadone: genome-wide DNA methylation analysis in two independent cohorts. Epigenomics 2016;8:181-95.

79. Andersen AM, Dogan MV, Beach SR, Philibert RA. Current and Future Prospects for Epigenetic Biomarkers of Substance Use Disorders. Genes (Basel) 2015;6:991-1022.

80. Nielsen DA, Utrankar A, Reyes JA, Simons DD, Kosten TR. Epigenetics of drug abuse: predisposition or response. Pharmacogenomics 2012;13:1149-60.

81. Oei JL, Xu HX, Abdel-Latif ME, et al. Dopamine D2 receptor gene polymorphisms in newborn infants of drug-using women. Arch Dis Child Fetal Neonatal Ed 2012;97:F193-8.

82. Anand KJS, Campbell-Yeo M. Consequences of prenatal opioid use for newborns. Acta Paediatr 2015;104:1066-9.

83. Svensson A-L, Bucht N, Hallberg M, Nyberg F. Reversal of opiate induced apoptosis by human recombinant growth hormone in murine foetus primary hippocampal neuronal cell cultures. PNAS 2008;105:7304-8.

84. Durrmeyer X, Vutskits L, Anand KJS, Rimensberger PC. Use of analgesic and sedative drugs in the NICU: integrating clinical trials and laboratory data. Pediatr Res 2010;67:117-27.

85. Nassogne M-C, Evrard P, Courtoy PJ. Selective neuronal toxicity of Cocaine in empryonic mouse brain co-cultures. PNAS 1995;92:11029-33.

86. Clowry G, Molnar Z, Rakic P. Renewed focus on the developing human neocortex. J Anat 2010;217:276-88.

87. Yuan Q, Rubic M, Seah J, et al. Do maternal opioids reduce neonatal regional brain volumes? A pilot study. J Perinatol 2014;34:909-13.

88. Nygaard E, Slinning K, Moe V, Due-Tonnessen P, Fjell A, Walhovd KB. Neuroanatomical characteristics of youths with prenatal opioid and poly-drug exposure. Neurotoxicol Teratol 2018;68:13-26.

89. van den Bosch GE, White T, El Marroun H, et al. Prematurity, Opioid Exposure and Neonatal Pain: Do They Affect the Developing Brain? Neonatology 2015;108:8-15.

90. Yazdy MM, Desai RJ, Brogly SB. Prescription opioids in pregnancy and birth outcomes a review of the literature. J Pediatric Genetics 2015;4:56-70.

91. Ornoy A, Michailevskaya V, Lukashov I, Bar-Hamburger R, Harel S. The developmental outcome of children born to heroin-dependent mothers, raised at home or adopted. Child Abuse Negl 1996;20:385-96.

92. Bier JB, Finger AS, Bier BA, Johnson TA, Coyle MG. Growth and developmental outcome of infants with in-utero exposure to methadone vs buprenorphine. J Perinatol 2015;35:656-9.

93. Brogly SB, Saia KA, Walley AY, Du HM, Sebastiani P. Prenatal buprenorphine versus methadone exposure and neonatal outcomes: systematic review and meta-analysis. Am J Epidemiol 2014;180:673-86.

94. Garrison L, Leeman L, Savich RD, Gutierrez H, Rayburn WF, Bakhireva LN. Fetal Growth Outcomes in a Cohort of Polydrug- and Opioid-Dependent Patients. J Reprod Med 2016;61:311-9.

95. Jones HE, Dengler E, Garrison A, et al. Neonatal outcomes and their relationship to maternal buprenorphine dose during pregnancy. Drug Alcohol Depend 2014;134:414-7.

96. Kelty E, Hulse G. A Retrospective Cohort Study of Birth Outcomes in Neonates Exposed to Naltrexone in Utero: A Comparison with Methadone-, Buprenorphine- and Non-opioid-Exposed Neonates. Drugs 2017;77:1211-9.

97. Visconti KC, Hennessy KC, Towers CV, Howard BC. Chronic opiate use in pregnancy and newborn head circumference. Am J Perinatol 2015;32:27-32.

98. Wiegand SL, Stringer EM, Stuebe AM, Jones H, Seashore C, Thorp J. Buprenorphine and naloxone compared with methadone treatment in pregnancy. Obstet Gynecol 2015;125:363-8.

99. Zedler BK, Mann AL, Kim MM, et al. Buprenorphine compared with methadone to treat pregnant women with opioid use disorder: a systematic review and meta-analysis of safety in the mother, fetus and child. Addiction 2016;111:2115-28.

100. Mactier H, Shipton D, Dryden C, Tappin DM. Reduced fetal growth in methadone-maintained pregnancies is not fully explained by smoking or socio-economic deprivation. Addiction 2014;109:482-8.

101. Walhovd KB, Bjornebekk A, Haabrekke K, et al. Child neuroanatomical, neurocognitive, and visual acuity outcomes with maternal opioid and polysubstance detoxification. Pediatr Neurol 2015;52:326-32 e1-3.

102. Sarfi M, Smith L, Waal H, Sundet JM. Risks and realities: dyadic interaction between 6-month-old infants and their mothers in opioid maintenance treatment. Infant Behav Dev 2011;34:578-89.

103. McGlone L, Mactier H. Infants of opioid-dependent mothers: neurodevelopment at six months. Early Hum Dev 2015;91:19-21.

104. Melinder A, Konijnenberg C, Sarfi M. Deviant smooth pursuit in preschool children exposed prenatally to methadone or buprenorphine and tobacco affects integrative visuomotor capabilities. Addiction 2013;108:2175-82.

105. Konijnenberg C, Sarfi M, Melinder A. Mother-child interaction and cognitive development in children prenatally exposed to methadone or buprenorphine. Early Hum Dev 2016;101:91-7.

106. Mactier H. Neonatal and longer term management following substance misuse in pregnancy. Early Hum Dev 2013;89:887-92.

107. Nygaard E, Moe V, Slinning K, Walhovd KB. Longitudinal cognitive development of children born to mothers with opioid and polysubstance use. Pediatr Res 2015;78:330-5.

108. Nygaard E, Slinning K, Moe V, Walhovd KB. Behavior and Attention Problems in Eight-Year-Old Children with Prenatal Opiate and Poly-Substance Exposure: A Longitudinal Study. PLoS One 2016;11:e0158054.

109. Nygaard E, Slinning K, Moe V, Walhovd KB. Cognitive function of youths born to mothers with opioid and poly-substance abuse problems during pregnancy. Child Neuropsychol 2017;23:159-87.

110. Baldacchino A, Arbuckle K, Petrie DJ, McCowan C. Neurobehavioral consequences of chronic intrauterine opioid exposure in infants and preschool children: a systematic review and meta-analysis. BMC Psychiatry 2014;14:104.

111. Baldacchino A, Arbuckle K, Petrie DJ, McCowan C. Erratum: neurobehavioral consequences of chronic intrauterine opioid exposure in infants and preschool children: a systematic review and meta-analysis. BMC Psychiatry 2015;15:134.

112. Bernstein V, Jeremy RJ, Hans SL, Marcus J. A longitudinal study of offspring born to methadone-maintained women. II. Dyadic interaction and infant behavior at 4 months. Am J Drug Alcohol Abuse 1984;10:161-93.

113. Marcus J, Hans SL, Jeremy RJ. A longitudinal study of offspring born to methadone-maintained women. III. Effects of multiple risk factors on development at 4, 8, and 12 months. Am J Drug Alcohol Abuse 1984;10:195-207.

114. Jeremy RJ, Hans SL. Behavior of neonates exposed in utero to methadone as assessed on the Brazelton scale. Infant Behav Dev 1985;8:323–36.

115. Johnson HL, Rosen TS. Prenatal methadone exposure: effects on behavior in early infancy. Pediatr Pharmacol (New York) 1982;2:113-20.

116. Lifschitz MH, Wilson GS. Patterns of growth and development in narcotic-exposed children. NIDA Res Monogr 1991;114:323-39.

117. Rosen TS, Johnson HL. Children of methadone-maintained mothers: follow-up to 18 months of age. J Pediatr 1982;101:192-6.

118. Wilson GS, Desmond MM, Wait RB. Follow-up of methadone-treated and untreated narcotic-dependent women and their infants: health, developmental, and social implications. J Pediatr 1981;98:716-22.

119. Hans SL, Marcus J. Motoric and attentional behavior in infants of methadone-maintained women. NIDA Res Monogr 1983;43:287-93.

120. Jones HE, O'Grady KE, Johnson RE, Velez M, Jansson LM. Infant neurobehavior following prenatal exposure to methadone or buprenorphine: results from the neonatal intensive care unit network neurobehavioral scale. Subst Use Misuse 2010;45:2244-57.

121. Heller NA, Logan BA, Morrison DG, Paul JA, Brown MS, Hayes MJ. Neonatal abstinence syndrome: Neurobehavior at 6 weeks of age in infants with or without pharmacological treatment for withdrawal. Dev Psychobiol 2017;59:574-82.

122. Conradt E, Flannery T, Aschner JL, et al. Prenatal Opioid Exposure: Neurodevelopmental Consequences and Future Research Priorities. Pediatrics 2019;144.

123. Hans SL, Jeremy RJ. Postnatal mental and motor development of infants exposed in utero to opioid drugs. Infant Mental Health J 2001;22:300-15.

124. Levine TA, Woodward LJ. Early inhibitory control and working memory abilities of children prenatally exposed to methadone. Early Hum Dev 2018;116:68-75.

125. Merhar SL, McAllister JM, Wedig-Stevie KE, Klein AC, Meinzen-Derr J, Poindexter BB. Retrospective review of neurodevelopmental outcomes in infants treated for neonatal abstinence syndrome. J Perinatol 2018;38:587-92.

126. Moe V, Slinning K. Prenatal drug exposure and the conceptualization of long-term effects. Scand J Psychol 2002;43:41-7.

127. Moe V, Slinning K. Children prenatally exposed to substances: gender-related differences in outcome from infancy to 3 years of age. Infant Ment Health J 2001;22:334-50.

128. van Baar AL, Soepatmi S, Gunning WB, Akkerhuis GW. Development after prenatal exposure to cocaine, heroin and methadone. Acta Paediatr Suppl 1994;404:40-6.

129. Davis DD, Templer DI. Neurobehavioral functioning in children exposed to narcotics in utero. Addict Behav 1988;13:275-83.

130. Ornoy A, Segal J, Bar-Hamburger R, Greenbaum C. Developmental outcome of school-age children born to mothers with heroin dependency: importance of environmental factors. Dev Med Child Neurol 2001;43:668-75.

NAS1646

131. Wilson GS, McCreary R, Kean J, Baxter JC. The development of preschool children of heroin-addicted mothers: a controlled study. Pediatrics 1979;63:135-41.

132. Hunt RW, Tzioumi D, Collins E, Jeffery HE. Adverse neurodevelopmental outcome of infants exposed to opiate in-utero. Early Hum Dev 2008;84:29-35.

133. de Cubas MM, Field T. Children of methadone-dependent women: developmental outcomes. Am J Orthopsychiatry 1993;63:266-76.

134. Sandtorv LB, Fevang SKE, Nilsen SA, et al. Symptoms Associated With Attention Deficit/Hyperactivity Disorder and Autism Spectrum Disorders in School-Aged Children Prenatally Exposed to Substances. Subst Abuse 2018;12:1178221818765773.

135. Yeoh SL, Eastwood J, Wright IM, et al. Cognitive and Motor Outcomes of Children With Prenatal Opioid Exposure: A Systematic Review and Meta-analysis. JAMA Netw Open 2019;2:e197025.

136. Peacock-Chambers E, Leyenaar JK, Foss S, et al. Early Intervention Referral and Enrollment Among Infants with Neonatal Abstinence Syndrome. J Dev Behav Pediatr 2019;40:441-50.

137. Blair C. Educating executive function. Wiley Interdiscip Rev Cogn Sci 2017;8.

138. Guo X, Spencer JW, Suess PE, Hickey JE, Better WE, Herning RI. Cognitive brain potential alterations in boys exposed to opiates: in utero and lifestyle comparisons. Addict Behav 1994;19:429-41.

139. Hickey JE, Suess PE, Newlin DB, Spurgeon L, Porges SW. Vagal tone regulation during sustained attention in boys exposed to opiates in utero. Addict Behav 1995;20:43-59.

140. Konijnenberg C, Melinder A. Neurodevelopmental investigation of the mirror neurone system in children of women receiving opioid maintenance therapy during pregnancy. Addiction 2013;108:154-60.

141. Moe V. Foster-placed and adopted children exposed in utero to opiates and other substances: prediction and outcome at four and a half years. J Dev Behav Pediatr 2002;23:330-9.

142. Walhovd KB, Bjørnebekk A, Haabrekke K, al. e. Child neuroanatomical, neurocognitive, and visual acuity outcomes with maternal opioid and polysubstance detoxification. Pediatr Neurol 2015;52:326-32.

143. Bauman PS, Levine SA. The development of children of drug addicts. Int J Addict 1986;21:849-63.

144. Uebel H, Wright IM, Burns L, et al. Reasons for Rehospitalization in Children Who Had Neonatal Abstinence Syndrome. Pediatrics 2015;136:e811-20.

145. Oei JL, Melhuish E, Uebel H, et al. Neonatal Abstinence Syndrome and High School Performance. Pediatrics 2017;139.

146. Fill MA, Miller AM, Wilkinson RH, et al. Educational Disabilities Among Children Born With Neonatal Abstinence Syndrome. Pediatrics 2018;142:pii: e20180562.

147. Sherman LJ, Ali MM, Mutter R, Larson J. Mental Disorders Among Children Born With Neonatal Abstinence Syndrome. Psychiatr Serv 2019;70:151.

148. Conner KL, Meadows AL, Delcher C, Talbert JC. Neonatal Abstinence Syndrome and Childhood Mental Health Conditions, 2009–2015: Commercial Versus Medicaid Populations. Psychiatric Services 2019;(Advance Publication).

149. Nygaard E, Slinning K, Moe V, Fjell A, Walhovd KB. Mental health in youth prenatally exposed to opioids and poly-drugs and raised in permanent foster/adoptive homes: A prospective longitudinal study. Early Hum Dev 2019;140:104910.

150. Doyle LW, Anderson PJ, Battin M, et al. Long term follow up of high risk children: who, why and how? BMC Pediatr 2014;14:279.

**EXHIBIT C**

NAS1648

## DR. C. V. HOWARD'S DECLARATION IN SUPPORT OF CLASS CERTIFICATION

### 1) Background

This is a report is prepared for the benefit of the Court.[1] I have been asked to prepare a report addressing the effects of opioids on the developing fetus. I understand my duties as an Expert witness pursuant to Part 35 of the Civil Procedure Rules; a statement of truth is enclosed following my opinion below.

I am a medically qualified toxico-pathologist specialising in the problems associated with the action of toxic substances on health, particularly during the period of development in the womb. My PhD Thesis addressed mechanisms of the selective stabilisation of neurons in developing mammalian brain. I am currently Emeritus Professor of Bioimaging at the University of Ulster and have authored/co-authored over 130 peer reviewed scientific papers, predominantly in the field of quantitative developmental toxicology. I append my Curriculum Vitae.

I am a Fellow of the Royal College of Pathologists, Fellow of the Collegium Ramazzini, Past President of the Royal Microscopical Society, Member of the British Society of Toxico-Pathologists, Past President of the International Society of Doctors for the Environment. I served for 6 years as a toxicologist on the United Kingdom Government DEFRA Advisory Committee on Pesticides which was the statutory body responsible for recommending licensing of agro-chemicals. I have addressed the House of Lords Select Committee on Science and Technology investigating the use of nanotechnology in food. More recently I have given evidence to the House of Commons Environmental Audit Committee on the toxicology of neonicotinoid pesticides to pollinating insects. This resulted in their report 'Pollinators and Pesticides' (HC 668, 2012-13).

Toxico-pathologists are skilled in assessing the effects of toxic substances on health. This includes consideration of routes of entry for toxic substances into the body, assessing the relevance of dose and timing of administration, target organ susceptibility, mechanism of action of toxins, types of pathology induced and dose response, with respect to single substances and mixtures. Such expertise is of relevance in this action because it concerns exposure of the fetus during intra-uterine life to opioids taken by the mother. Opioids have been shown to be able to increase the rate of apoptosis in developing neurons and this has a number of long-term sequelae. This pathological mechanism is within the scope and expertise of toxico-pathologists.

### 2) The Opioid Receptor (OR)

The opioid receptor system is ubiquitous throughout all vertebrate (animals with backbones) life. Opioid receptors consist of a family of four related proteins which are part of a large superfamily, the rhodopsin-like G-protein coupled receptors. Of the four related proteins, three types of opioid receptor unequivocally are associated with the control of pain in animal models.

---

[1] This report was developed in collaboration with Dr. Christopher Busby.

**NAS1649**

These are the ☐(MOR), ☐ (DOR) and ☐ (KOR) opioid receptor proteins. There is a fourth opioid receptor protein which is termed the nociception or orphanin (ORL) whose function is less well defined than the other three. The receptors have natural internally produced (endogenous) opioid peptide ligands which include beta-endorphin, met-and leu-enkephalin and dynorphin. The role of the endogenous opioid receptors on normal physiological activity is extensive; in addition to the obvious role in decreasing painful (nociceptive) sensations they are involved in reproduction, growth, development, respiration, blood pressure regulation, renal function, temperature control, hormonal regulation, seizures, stress, immune response, pregnancy and aging.

Phylogeny:

The OR developed at least 450 million years ago, at the time of the evolutionary emergence of vertebrates with jaws. Early in the evolution of animals there was a single opioid receptor. The first round of genome duplication, which occurred early in cordate evolution, produced the ancestral DOR/MOR and ORL/KOR genes. A further round of genome duplication led to the four opioid receptors found in all living vertebrates (Stevens, 2011). These four ORs are ubiquitous throughout vertebrate phylogeny and intimately involved in the control of reward responses and pain modulation as well as controlling aspects of ontogeny.

### 3)Opioid Drugs: pharmacology and commonality

Opioids have been used to alleviate pain for thousands of years and remain the most important class of pain-relieving drugs. Opioids exert their effects by mimicking naturally occurring substances in the body, called *endogenous opioid peptides* including *endorphins*. The different functions of this system include
(1) the best-known sensory role—prominent in inhibiting sensory responses to pain
(2) a modulatory role in gastrointestinal, endocrine and autonomic functions, and
(3) and an emotional role, evidenced in powerful rewarding and addictive properties.

Therefore, opioid activity is not restricted to pain relieving effects but in addition exhibit powerful and wide-ranging regulatory roles throughout the organism (Gutstein and Akil, 2006; Stein (2016); Stevens 2011).

In order to understand the effects of the opioids we begin with the production and distribution of the endogenous opioid peptides, since it is these which are mimicked by the opioid drugs which interact with the natural receptors (biological switches). The endogenous opioids are in three distinct families, *the enkephalins, the endorphins and the dynorphins* (Gutstein and Akil, 2006). These substances are small peptides which share a common amino terminal sequence of Tyr-Gly-Gly-Phe-Met (or Leu). This has been termed the *opioid motif* and is followed by various C-terminal extensions yielding peptides ranging from 5 to 31 residues (Gutstein and Akil, 2006).

The precursor protein for Beta Endorphin, *prepro-opiomelanocortin* (POMC) is relatively limited within the Central Nervous System, occurring mainly in the arcuate nucleus and nucleus of the tractus solitarius. These neurons project widely to limbic and brainstem areas and to the spinal cord (Gutstein and Akil, 2006).

**NAS1650**

The endogenous opioids exert their functions at protein receptors distributed in the brain, and these are the points where the opioid drug molecules, whether natural or synthetic also bind and have pharmacological activity. Opioid receptors consist of a family of four closely related proteins belonging to a large family of receptors called the G-protein coupled receptors. Receptors are large protein molecules which selectively bind pharmacological agents in order to switch on cellular activity that results in a measurable change in some aspect of the cell and the organism. The receptor can be seen as a molecular specific switch. It is believed that specific affinity between the active molecule and the receptor, which occurs only for molecules which can affect the receptor switch positively (termed *agonists*) and produce the effect, defines a class of compounds which have commonality. That is, they have the common molecular nature of causing the process being measured to occur (to a greater or lesser extent). This greater or lesser extent is a function of their *activity* and is measurable. Pharmacologists measure the effect, and plot this against the logarithm of the drug Dose. If the substance is acting at the same receptor, the result is a straight line, (for technical reasons which will not be addressed here). They are termed agonist (for the specific receptor). Compounds which bind to the same receptors but do not cause effects, rather they block the effects of the agonist, are termed antagonists. These also help define a common receptor. More recently, genetic approaches have also characterised families of opioid receptors and described their evolution in both mammalian and invertebrate evolution. Therefore, it is possible to say that the opioids and synthetic opioids, whatever their molecular structure, exert their influence at the same receptor(s) and may thus be considered as a common group (Creeley et al, 2013; Gutstein and Akil, 2006).

There are now considered to be three main types of receptor, termed classical types, the μ, κ and δ. All three have analgesic properties, the μ type causes euphoria, decreases respiratory function and gastrointestinal tract transit (constipation), increases feeding, increases sedation, increases release of growth hormone and prolactin, inhibits neurotransmitter release (acetylcholine and dopamine) and has various other peripheral effects. These examples show the profoundly powerful effects throughout the organism which are modulated by the opioids. It also shows how exposure to, and withdrawal from these species exhibits such wide-ranging effects. All three opioid receptors can modulate pre- and post- synaptic Ca++ channels, supress Ca++ influx and thereby attenuate the excitability of neurons and the release of pro-nociceptive neuropeptides (Gutstein and Akil, 2006). This behaviour is revisited below.

Identity and molecular structure of the opioids (https://webbook.nist.gov/cgi/cbook/).

The medicinally developed opioids are in two groups, those derived from natural products by chemical treatment or separation and those developed by chemical synthesis in order to have affinity and access to the various opioid receptors discussed. The search by pharmaceutical companies and others for substances which produced the analgesic and other valuable effects without side effects or the induction of dependence has been largely unsuccessful. Investment in research into substances which would act as treatments for addiction to morphine and the more powerful narcotic opioids resulted in the discovery and use of methadone and buprenorphine. However, these themselves also result in addiction and withdrawal effects. They are the agents of choice in some schemes of treatment for NAS. The molecular structures of all these compounds are designed to have affinity for the opioid receptors and therefore may

NAS1651

be considered to be one group for the purposes of arguing their membership of the "NAS producing group" of chemical substances. Most of them are semi-synthetic compounds made by chemical treatment of morphine itself or morphine alkaloids like Thebaine (Gutstein and Akil, 2006; O'Brien, 2006; Oates, 2006).

The principal opioids of concern in the current discussion are given in Table 1.

**Table 1**. Principal opioids associated with NAS (*examples of trade preparations*) [https://webbook.nist.gov/cgi/cbook/].

| Opioid | Nature | Note |
|---|---|---|
| Morphine | Main alkaloid constituent of opium; historic medicinal compound. *Avinza, Morphabond, Roxanol-T, Kadian, Mscontin* | Natural substance, main member of the opium poppy alkaloids which also include Thebaine Papaverine. |
| Hydrocodone | derived from morphine alkaloids. Semi synthetic. *Zohydro ER, Hysingla, Anexsia, Co-gesic, Ibudone, Norco* | Semisynthetic hydrogenated codeine derivative and opioid agonist with analgesic and antitussive effects. Hydrocodone primarily binds to and activates the mu-opioid receptor in the central nervous system (CNS). |
| Hydromorphone | Also called Dilaudid. Hydromorphone is the hydrogenated ketone of morphine, semi synthetic. *Dilaudid, Palladone,* | Hydromorphone selectively binds the mu-opioid receptor which is linked through G-proteins. Binding stimulates the exchange of guanosine triphosphate (GTP) for guanosine diphosphate (GDP) on the G-protein complex and interacts with and inhibits adenylate cyclase located at the inner surface of the plasma membrane. This leads to a reduction in intracellular cyclic 3',5'-adenosine monophosphate (cAMP). Further, voltage-gated potassium channels are activated, thereby causing hyperpolarization and reducing neuronal excitability. In addition, the opening of voltage-gated calcium channels is inhibited, thereby leading to an inhibition of calcium entry and a reduction in the release of various neurotransmitters, including GABA, vasopressin, somatostatin, insulin and glucagons. |
| Meperidine | Synthetic *Demerol* | Meperidine is a synthetic piperidine ester with opioid analgesic activity. Meperidine mimics the actions of endogenous neuropeptides via opioid receptors, thereby producing the characteristic morphine-like effects on the mu-opioid receptor, including analgesia, euphoria, sedation, respiratory depression, miosis, bradycardia and physical dependence. |
| Fentanyl | Synthetic *Abstral, Actiq, Fentora, Onsolis, Sublimaze, Duralgesic* | Powerful synthetic opioid 100 times more powerful than morphine in pain relief |
| Codeine | Derived from morphine by methylation of the phenolic -OH. | Naturally occurring phenanthrene alkaloid and opioid agonist with analgesic, antidiarrheal and antitussive activities. Codeine mimics the actions of endogenous |

NAS1652

| | | opioids by binding to the opioid receptors at many sites within the central nervous system (CNS). Stimulation of mu-subtype opioid receptors results in a decrease in the release of nociceptive neurotransmitters such as substance P, GABA, dopamine, acetylcholine and noradrenaline; in addition, the codeine metabolite morphine induces opening of G-protein-coupled inwardly rectifying potassium (GIRK) channels and blocks the opening of N-type voltage-gated calcium channels, resulting in hyperpolarization and reduced neuronal excitability. Stimulation of gut mu-subtype opioid receptors results in a reduction in intestinal motility and delayed intestinal transit times. Antitussive activity is mediated through codeine's action on the cough center in the medulla |
|---|---|---|
| Buprenorphine | Synthetic analogue of Thebaine from poppy alkaloids<br><br>*Butrans* | Buprenorphine is a morphinane alkaloid that is 7,8-dihydromorphine 6-O-methyl ether in which positions 6 and 14 are joined by a -CH2CH2- bridge, one of the hydrogens of the N-methyl group is substituted by cyclopropyl, and a hydrogen at position 7 is substituted by a 2-hydroxy-3,3-dimethylbutan-2-yl group. It has a role as an opioid analgesic, a mu-opioid receptor agonist, a kappa-opioid receptor agonist and a delta-opioid receptor antagonist. |
| Methadone | Synthetic<br><br>*Dolophine, Methadose* | Methadone is a synthetic opioid with analgesic activity. Methadone mimics the actions of endogenous peptides at CNS opioid receptors, primarily on the mu-receptor and has actions similar to those of morphine and morphine-like agents. The characteristic morphine-like effects include analgesia, euphoria, sedation, respiratory depression, miosis, bradycardia and physical dependence. However, the detoxification symptoms between morphine-like agents and methadone differ in that the onset of methadone's withdrawal symptoms is slower, the course is more prolonged and the symptoms are less severe. |
| Oxycodone | Semi synthetic. Derived from opium alkaloid Thebaine.<br><br>*Oxaydo, Xtampza ER, Oxycontin, Percodan, Percoset,* | Oxycodone is a semi-synthetic, morphine-like opioid alkaloid with analgesic activity. Oxycodone exerts its analgesic activity by binding to the mu-receptors in the central nervous system (CNS), thereby mimicking the effects of endogenous opioids. |
| Oxymorphone | Semi synthetic. Now taken off market in USA (2017)<br>*Opana, OpanaER* | A semisynthetic opioid with a potent analgesic property. Oxymorphone hydrochloride binds to and activates opiate receptors, specifically mu-receptors, in the central nervous system (CNS). |
| Heroin | Semi synthetic. Illegal in USA. | Heroin is a morphinane alkaloid that is morphine bearing two acetyl substituents on the O-3 and O-6 positions. As with other opioids, heroin is used as both an analgesic and a recreational drug. |

NAS1653

| | | |
|---|---|---|

Summary of pharmacology

The opioid compounds all act at the same biological receptors and mimic natural peptides which have powerful and wide-ranging activity in living systems. Thus, they can be considered a class of chemical drugs both in terms of their pharmacological dosage activity relationships and also their overall chemical structure. They produce common effects, bind to common receptors, the opioid receptors and also have similar chemical structures. They all produce addiction and dependence and cause withdrawal symptoms on removal. Their activity as modulators of neurological signalling make them especially hazardous in adults due to rebound effects but also they are now known to have significant effects on foetal development since they alter the cellular signalling environment. This issue will be considered below.

### 4)Dependence and withdrawal in opioids: pharmacology (O'Brien, 2006)

All perturbations of homeostatic systems that last a significant length of time result in two responses. The first is acquired tolerance, which results in a situation where larger doses of the stressor (in this case the opioid drug) are required to effect the same physiological response. The second results from the homeostatic pressure developed by the organism to retain the system's biological status prior to the disturbances created by the perturbation, in this case the chronic use of an opioid drug and the changes brought about in the various systems affected by the receptors. This physical dependence is often termed "Rebound" and is a common feature of withdrawal of all drugs which have Central Nervous System (CNS) effects. Thus, CNS hyperarousal results from re-adaptation to the absence of the drug of dependence (O'Brien, 2006). Since the effects produced by the opioids are so widespread (due to the systems that are perturbed through the 3 natural opiate receptors (at least these: more have been described) the withdrawal of the opioid alteration pressure leads to profound and painful mental and physical effects across a wide spectrum of conditions. Examples of the effects seen in adults are given in Table 2. In Table 3 are listed withdrawal effects seen in babies manifesting NAS. Naturally the same rebound effects are manifest in the babies as exist in the adults.

**Table 2** Withdrawal effects in adults seen in opioid removal after chronic use **(O'Brien, 2006)**

| Regular withdrawal | Protracted withdrawal (persist up to 6 months after removal of drug) |
|---|---|
| Craving for opioids | Anxiety |
| Restlessness, irritability | Insomnia |
| Increased sensitivity to pain | Drug craving |

| Nausea | Pupillary dilation |
|---|---|
| Cramps | Sweating |
| Muscle aches | Piloerection |
| Dysphoric mood | Tachycardia |
| Insomnia | Vomiting |
| Anxiety | Diarrhia |
| | Yawning |
| | Fever |
| | Cyclic changes in weight |
| | Pupil size |

**Table 3** Observed NAS withdrawal effects (Wolff K, Perez Montenajo R, 2014)

| Effect | Number of studies reporting 1972-2007 |
|---|---|
| **Neurological Excitability** | |
| High pitched crying | 8 |
| Irritability | 8 |
| Increased wakefulness/sleep disturbance | 8 |
| Hyperactive deep tendon reflexes | 9 |
| Hypertonia | 6 |
| Exaggerated Moro Reflex | 3 |
| Tremors | 9 |
| Seizures | 9 |
| Myoclonic jerks/ opisthotonic posturing | 5 |
| Hyperacusis | 1 |
| Intraventricular haemorrhage | 1 |
| EEG abnormalities | 1 |
| **Gastrointestinal dysfunction** | |
| Poor feeding | 8 |
| Uncoordinated and constant sucking | 7 |
| Vomiting | 10 |
| Diarrhoea | 10 |
| Dehydration | 4 |
| Regurgitation | 1 |
| Poor weight gain/ weight loss | 6 |
| Hyperphagic (2nd week) | 0 |
| Excessive salivation | 1 |
| **Central nervous system** | |
| Increased sweating | 8 |
| Yawning | 9 |
| Nasal stuffiness | 5 |
| Sneezing | 9 |
| Tachypnea | 6 |
| Mottled skin | 5 |
| Fever | 7 |
| Temperature instability | 3 |
| **Other** | |
| Increased REM sleep | 2 |

NAS1655

| | |
|---|---|
| Skin excoriating/ scratching | 5 |
| Tachycardia/ hypertension | 1 |

These effects are common to withdrawal in the case of all the opioids since these substances act on the same receptors. Of course, there are differences in activity between the various opioid drugs, some having very powerful effects at very low doses relative to morphine, the parent substance, and there is also a variation in the length of time the compound has its effect owing to variations in length of binding to receptors and other factors. The drug Methadone has a much longer period of action so it was chosen (or indeed developed) to act as a drug of choice for dealing with withdrawal from the more immediate effects of morphine and in particular the street drug Heroin. Buprenorphine also has a similar long lasting effect and is used as an alternative to Methadone for reducing the withdrawal effects listed in Tables 2 and 3. However, since both these drugs affect the same receptors that cause the withdrawal effects, it is arguable that their use may produce the same conditions that they are intended to treat. A list of analgesic activity for the various opioids is given in Table 4.

**Table 4** Equianalgesic doses for some opioids.

| Compound | Route | Dose mg |
|---|---|---|
| Codeine | PO | 200 |
| Hydrocodone | PO | 20-30 |
| Hydromorphone | PO | 7.5 |
| Hydromorphone | IV | 1.5 |
| Morphine | PO | 30 |
| Morphine | IV | 10 |
| Oxycodone | PO | 20 |
| Oxycodone | IV | 10 |
| Oxymorphone | PO | 10 |
| Oxymorphone | IV | 1 |
| Fentanyl | Nasal spray/ lozenge | 0.1-0.2 |

**5) Apoptosis**

It is important to introduce an aspect of basic biology which is of fundamental significance in fetal development. There are two ways in which cells in multicellular organisms can die. One is called 'necrosis' – for example if one of the coronary arteries blocks and deprives the heart muscle of oxygen, it will die by necrosis – which is a pathological process. The other mechanism is called 'apoptosis', otherwise known as 'programmed cell death'. This is part of normal biology, particularly during development. For example, almost all individuals had a tail at one stage of fetal life but in almost everybody it melts away by the process of programmed cell death. The hands were solid discs of tissue in their early development but the fissures between the digits appear because of apoptosis remodelling the original disc. There are three basic functions that apoptosis serves:

1) Phylogenetic apoptosis – deletion of vestigial structures
2) Histogenetic apoptosis – controlling cell numbers in the body

NAS1656

3) Morphogenetic apoptosis – remodelling structures

Histogenetic apoptosis is the predominant mode found in the adult. Phylogenetic and morphogenetic apoptosis predominate in the fetus and are indispensable for normal development. Sub optimal brain development and gross malformations (birth defects) have been associated with perturbations of apoptosis.

The Central Nervous System (CNS)

It is important that animal experimental data, as well as human data, is considered when addressing the impact of opioids on developing human brain. Opioid receptors are present in a number of different brain regions and there are several possible mechanisms that opioid exposure could perturb brain development (Yanai et al., 2003).  Alterations in the migration and survival of neurons in rat embryos has been demonstrated with exposure to opiates (Harlan, R. E. & Song, D. D., 1994). In vitro studies on human fetal neurons and microglia responses to morphine have been shown to have increased levels of apoptosis [Hu et al., 2002). Reduction in anatomical volumes and cortical thickness when compared to controls in children with heroin and polysubstance exposure

The central nervous system is particularly vulnerable to toxic insult for a number of reasons. The nerve cells that are a component of the adult brain have to last a life time. The adult neuron has a cell body from which a single axon (final common pathway) arises and this conducts a pulse modulated signal on to the next nerve cell in the chain. Whether or not a neuron depolarises to produce the next pulse in the signal chain going down the axon depends on an averaging of all synaptic inputs, excitatory and inhibitory, over the whole receptive surface of the nerve cell, which includes the cell body and the dendritic tree.

Many other organs in the body, for example the liver, can repair by cell proliferation. This does not apply to the nerve cells in the adult CNS, by far the majority of which cannot reproduce themselves. This statement does not hold true for the fetal brain nerve cells, as will be outlined below. The CNS has a very high metabolic rate and neurons have to maintain their microstructures over long distances. For example the axon, which carries outgoing signals from the neuron can be over 1 meter long. To maintain such structures in a healthy state there is a mechanism called 'axonal transport' which will deliver a number of substances and structures – in both directions to and from the neuron cell body. Transmitter substances help to deliver information across synapses to the next neurons in the neuronal chain by acting in either an excitatory or an inhibitory manner. The influence of a particular synaptic input onto a neuron will depend on its position on the target neuron and on the firing rate of the axon. 'Neurotrophins' are also secreted across the synapse and are essential to maintain the target neurons in good health. Mitochondria are the 'powerhouses' in which glucose is metabolised and maintain the high metabolic rate essential for neuronal health, even in the most distant parts of the nerve cell. 'Neuromodulators' are a class of biomolecules, to which the endogenous opioids belong, modify the action of transmitter substances at synapses.

NAS1657



### 6) The relevance of perturbing apoptosis in fetal brain

There are of the order 1015 connections between nerve cells in the adult human central nervous system (CNS). However, humans only have ~ 20,000 genes, which in addition also have to control many other aspects of development. This inevitably means that the development of the brain cannot be determined by the genome alone – there is a massive numerical mismatch. Therefore, nature has evolved a method of arriving at an intact functioning CNS which depends upon a highly probabilistic (chance) based mechanism, which is relatively loosely specified by the genes. The genes control the overall global form of the brain while, at the local level, whether developing cells live or die is decided predominantly by chance.

The importance of synapse formation in the development of brain circuitry was first posited by Changeaux and Danchin (1976) in their theory of 'selective stabilisation'. A more contemporary review has been written by Tau & Peterson (2010). Selective stabilisation involves the loss of a proportion the neurons in a developing brain region, based upon their functional status during critical developmental windows.

In the developing nervous systems of animals (including humans) there is an overproduction of neuroblasts (immature potential neurons) – often more than twice as many as will be finally required in the adult. These start to push out neurites (fibre-like feelers) that make contact with other developing nerve cells in that brain region. Some of the contacts they make at random will be excitatory and others will be inhibitory. At certain developmental times, cell signalling instructions will be broadcast within regions of the CNS and those nerve cells with the correct physiological properties (for example the firing rate of the nerve cell) will carry on with their normal development and the other developing nerve cells which are either under-responsive or over-responsive will undergo apoptosis and melt away. This process is known as 'selective stabilisation'. From this description it can be appreciated that this is largely based on chance connections between too many potential neurons and it leads to a stable functioning circuitry within the CNS with minimal deterministic instructions at the local level from the genes. The mechanism(s) controlling apoptosis in the developing fetal

NAS1658

brain are incompletely understood. However, many cell signalling molecules –including transmitter substances, neuromodulators and hormones are known to be involved. An important harbinger of impending apoptosis in a cell is the appearance of Fas protein being expressed on the cell surface. When this binds with Fas protein ligand (FasL) apoptosis is initiated.

From all of the above it is possible to appreciate how a drug that stimulates nerve cells could act as an 'excitotoxin' in the fetal brain while a neuronal depressant would work the other way. Both of these scenarios result in increases in the proportion of nerve cells undergoing cell death though apoptosis during windows of vulnerability as fetal development progresses. The final outcome in the adult, if this happens, will be sub-optimal development. Reed et al (2010) provide a morphological example. Opioids appear to increase the rate of apoptosis in fetal brain. This is a potential mechanism for neurological damage in the fetus.

Important points to note are:

1) Adverse changes incurred through increased apoptosis are irreversible
2) They generally take place at toxicant concentrations orders of magnitude lower than required to produce damage in an adult.
3) The timing of the toxic insult in the fetal developmental timetable is critical, as it passed through sequential windows of vulnerability

The effects of prenatal exposure to opioids has been reviewed by Anand and Cambell-Yeo (2015). It leads to changes in the temporal sequencing and quality of myelination by disrupting oligodendrocyte development (Svensson et al, 2008). It also decreases the dendritic growth (Nassogne et al, 1885)) and branching pattern complexity (Broussard et al, 2011) of pyramidal neurons in the cortex and suppresses cell proliferation and neuronal migration to the cortical plate. These effects may reduce regional brain volumes in the basal ganglia (McCarthy, 2015) and other brain areas (Yazdy et al, 2015), with long-term changes in subsequent behaviour (Patrick et al, 2015; Bignami et al, 1996; Kavlock et al, 1995), autonomic regulation (Patrick et al, 2015), visual-motor (Moe, 2002), strabismus (Gill et al, 2003), or swallowing (Gewolb et al, 2004) dysfunctions and lower developmental potential (McGlone & Mactier, 2015; Robinson, 2002; Tempel & Espinoza, 1992). Current data cannot clearly differentiate between the long-term neonatal outcomes resulting from the prenatal use of prescription opioids, illicit drugs or opioid maintenance therapy. Buprenorphine and methadone form the mainstay of opioid maintenance therapy during pregnancy. Buprenorphine is considered an attractive alternative, partly due to more favourable neonatal brain growth patterns (Welle-Strand et al, 2009); however, its long-term use cannot be considered benign and has been associated with poor child outcomes to three years of age (Kivisto et al, 2015).

## 7)The relevance of perturbing apoptosis to gross anatomical malformations

Beginning in the late 1990's the understanding of the mechanism of foetal development began to undergo a significant change through research which identified and defined the concept of

NAS1659

Apoptosis, or programmed cell death (Kerr et al, 1972; Jacobsen et al, 1997; Bartlett, 2018; Mazarakis et al, 1997; Olney et al, 2000). Jacobsen identified the importance of apoptosis in foetal development in 1997. The process itself was described by Kerr et al in 1972 and the Nobel prize for the discoveries was awarded in 2002.   It appeared that the foetus developed though the various foetal stages (which have been likened to evolutionary development of the human) by producing an enormous number of pluripotential cells, hugely more than are necessary, which are then selected though signalling from a set of chosen or pre-programmed cells to commit suicide. Research using animal and cell culture models illustrated a developmental plasticity which was controlled by signalling between cellular communities which became ultimately part of organ systems and neurological and other systems through switching off what were deemed to be superfluous or incorrect cells.

The system was controlled by signalling between cells. And since signalling between cells is also the domain of cell receptors and endogenous molecular ligands (for example the neurotransmitter molecules, the small peptide hormones like the endogenous opioids) it was clear that alteration of the developmental landscape through the addition of foreign agents with the ability to alter the sensitivity of the cell communication systems must also carry a serious risk of causing developmental effects, both hidden and morphologically clear in the baby at or after birth.

This problem was quickly addressed through research in the late 1990s and early 2000s since it was clear at that stage that theoretically, the possible causes of major congenital malformations but also hidden neurological, neuropsychiatric and psychosocial effects in children might follow from agents which were not themselves mutagens but which acted by altering the signalling environment during foetal development. It turned out very quickly that almost any agent which affected the homeostatic equilibrium of neurological (and indeed all) development when introduced to the foetus because of the mothers' exposure could cause such effects (Olney et al, 2000). The "teratogenic" effects of alcohol intake and smoking had already been described, though not explained mechanistically.

The opioids operate at the endogenous opioid receptors in the brain, the nervous system and other parts of the organism, as has been pointed out above. The opioid receptors are G-protein coupled receptors. Neural stem cells (cells that develop into the brain and nervous system) are self-renewing and pluripotent cells which give rise to the cells that ultimately make up the brain and nervous system: neurons, astrocytes, oligodendrocytes. In the developing cerebral cortex, neural stem cells differentiate into more committed progenitor cells and migrate into the regions where they lay down the basic structures that finally define the individual. Time lapse images show that cells migrate to the positions where they finally remain in various ways.  G-Protein coupled receptors constitute the largest family of transmembrane receptors and are responsible for converting a diverse array of extracellular stimuli into intracellular signalling events. They are involved in a variety of physiological processes such as proliferation, differentiation and migration.

It would therefore have been predictable that the perturbation of the developmental environment by the addition of powerful agents to the extracellular matrix, compounds which have affinity and activity at the G-protein opioid receptors would result in developmental

NAS1660

alterations. And laboratory studies demonstrated such effects (Mizuno et al, 2005). The essential nature of apoptosis in the normal development of palatal fusion is provided by Cuervo (2002). Mid-line fusion defects result from perturbed apoptosis. The importance of apoptosis in the normal development of the heart has been reviewed by van den Hoffa et al (2000). They also reviewed the importance of apoptosis in the effects of teratogens in the production of cardiac malformations.

As pointed out, the role of apoptosis in neural development and disease was described by 1997. This is of interest for the current case since the pharmaceutical companies which were marketing the opioids to pregnant mothers should have realised the potential for serious developmental problems in the foetus which were clear from the reviews which appeared by then (Mazarakis et al, 1997).

However, by the early 1990s it had been already suggested, through a significant body of research, that Cocaine (another G-protein agonist) exposure in utero caused serious alterations in the development of the central nervous system, with major downstream effects implied for the baby and child, including microcephaly and post-natal signs and conditions which were largely the same as those reported for the NAS babies (Nassogne et al, 1995). The question of occult neurophysiological and psychosocual sequelae was clearly implicit.

Evidence that opioids behaved as they were predicted to and caused major birth defects appeared in the results of the National Birth Defect Prevention Study published in 2010 (Broussard et al, 2011; McCarthy, 2015). The study looked at 17,449 cases and 6701 controls. Statistically Significant effects were found for associations between early pregnancy maternal opioid analgesic treatment and certain birth defects, notably heart defects, anencephaly, cleft palate and spina bifida. A list of the most notable birth defects and their Odds Ratios (the ratio between cases and controls) is given in Table 5.

Table 5 Association between maternal opioid analgesic treatment and specific major birth defects in National Birth Defects Prevention Study of 17449 cases and 6701 controls. Significance is starred * in the usual way (Broussard et al, 2011). Odds ratios were adjusted for maternal age, race/ethnicity, education, pre-pregnancy obesity, smoking.

| Birth defect | Total no | Odds Ratio (95%CI) |
|---|---|---|
| Anencephaly | 9 | 1.7 (0.84-3.4) |
| Spina bifida** | 26 | 2.0 (1.3-3.2) |
| Any included heart defect*** | 211 | 1.4 (1.1-1.7) |
| Atrioventricular septal defect* | 9 | 2.4 (1.2-4.8) |
| Conotruncal defects* | 41 | 1.5 (1.0-2.1) |
| Tetrology of Fallot* | 21 | 1.7 (1.1-2.8) |
| Ventricular septal defect* | 6 | 2.7 (1.1-6.3) |
| L ventricular outflow obstruction* | 36 | 1.5 (1.0-2.2) |
| Hypoplastic Left heart syndrome** | 17 | 2.4 (1.4-4.1) |
| R ventricular outflow obstruction* | 40 | 1.6 (1.1-2.3) |
| Pulmonary valve stenosis** | 34 | 1.7 (1.2-2.6) |
| Cleft palate | 25 | 1.3 (0.84-2.4) |
| Hydrocephaly* | 11 | 2.0 (1.0-3.7) |

NAS1661

| Esophageal atresia | 12 | 1.4 (0.76-2.5) |
| Gastroschisis* | 26 | 1.8 (1.1-2.9) |
| Anorectal atresia/ stenosis | 18 | 1.5 (0.9-2.4) |
| Diaphragmatic hernia | 12 | 1.2 (0.66-2.2) |

The study noted that the main results were associated with exposures to Codeine but positive results were also found for Hydrocodone, Oxycodone and Meperidine. Since the mechanism for these effects was by then well described and implicit in the research that had emerged from 1990 onward about neurodevelopment mechanisms, it should have been apparent to those marketing and selling the opioid drugs that warnings should have been given to those prescribing them and to those women taking them. These warnings should have been included in the labelling of the preparations.

**8) Communications between the FDA and pharmaceutical companies on opioid teratogenesis.**

In connection with this, I have read the following documents:

-ABDCMDL00002835_-Mallinckrodt Fentanyl Transdermal Patch Labelling
-JAN-0003-0002176 - Proposed Label Changes for Pregnancy- Tapentadol
-Acquired_Actavis_00184044_-Suboxone/Bupenorphine Labelling
-ACTAVIS0229401_-Actavis Fentanyl Transdermal Patch labelling
-CAH_MDL_PRIORPROD_DEA07_00870865_-Palladone Hydromorphone Insert
Labelling
-END00212911_-Opana Labelling
INSYS-MDL-000325903_-Morphine Sulphate Provider Insert
PAR_OPIOID_MDL_0000331039-Hydrocodone Ibuprofen Insert

Observations

The responses of the different companies are remarkably consistent, there is very little variation in what has been presented. There are warnings about the consumption of opioids in women who are pregnant or are of child bearing age. The general advice is that the risks to the fetus have to be weighed up against other possible clinical benefits.  Nowhere is there the suggestion that any opioid should not be prescribed during pregnancy.

The risk of teratogenesis in the animal studies cited by the manufacturers is largely explained through the mechanism of maternal toxicity rather than a direct teratogenic effect. I have not seen the studies that were relied upon but understand that these studies have not been released under discovery and are not available in the public domain. It is therefore difficult to make an objective assessment of the methodologies applied and the conclusions drawn.

However, it has been argued that if there is no teratognesis at the equivalent of 2x the human dose (on a body surface area basis) or ~ 5 x (on a body weight basis) then it is implied that there is nothing of concern and that opioid medicines should be safe for the medical profession to prescribe to pregnant women. Only gross anatomical malformations seem to

NAS1662

have been considered as toxicological endpoints. Functional deficits, particularly in the nervous system, generally occur at lower doses that those required to produce gross malformations and this has not been alluded to in communications between the FDA and the pharmaceutical companies.

There are a number of criticisms of this approach. Allometric scaling between different species is routine in toxicology. Some of the reasons for needing to do this are:

- Larger animals have lower metabolic rates

- Physiological process of larger animals is slower

- Larger animals required smaller drug dose on weight basis

- Allometry accounts for the difference in physiological time among species

- Allometric scaling is not valid to convert adult doses to fetal or infant doses.

Commonly accepted allometric conversion factors between species are:

Human dose (mg/kg) to mouse dose (mg/kg) - multiply by 12.3

Human dose (mg/kg) to rat dose (mg/kg) - multiply by 7.4

Human dose (mg/kg) to guinea pig dose (mg/kg) - multiply by 4.6

Human dose (mg/kg) to rabbit dose (mg/kg) - multiply by 3.1

Human dose (mg/kg) to dog dose (mg/kg) - multiply by 1.8

For rat and mouse, these allometric scaling ratios of 7.4 and 12.3 respectively, seem to have been ignored in communications to the FDA.

Examples of physiological differences between children and adults that may be significant in terms of toxicological response and which may not scale proportionally or continuously with body weight include the following:

• Respiration rate,

• Glomerular filtration rate,

• Active gastrointestinal absorption of nutrients,

• Composition and activity of intestinal flora

• Percentages of body fat and body water,

• Levels of CYP 450 isoforms and other phase I enzymes,

• Glucuronic acid conjugating ability, Phase 2 enzymes do not reach an efficient level in the infant until about 6 months post-natally.

• Biliary excretion ability, and

NAS1663

• Rates and patterns of growth in particular organs (bones, brain, immune system, etc.) which represent windows of vulnerability for damage during the developmental process.

Regulatory Toxicology

As well as the standard toxicology outlined above, there is an additional consideration that needs to be addressed. The rules of acceptance of a medication under informed consent, though they do apply to the mother, they do not apply to the fetus. In this scenario the fetus is receiving an outside agent, an opioid, which is certainly not being administered for the therapeutic benefit of the fetus. It could therefore be regarded, in this respect, as an external toxic agent.

When considering toxic agents in other life settings, for example pesticide residues on food, regulatory toxicologists try to estimate a 'No Effect Level' (NOEL) from the experimental evidence for a particular toxic agent. This NOEL is then subject to 'Uncertainty Factors' (UFs) which are typically x10 for species difference (when the data comes from a laboratory animal) and a further x10 because of inter-individual variability between humans. Therefore, the NOEL is divided by 10 x 10 = 100 to arrive at Tolerable Daily Intake (TDI). However, in the case of infants and fetuses there is sometimes an additional UF of x 10 applied to account for the additional vulnerability to harm associated with the developmental period. Under this condition the NOEL would have to be divided by 10 x 10 x 10 = 1,000 to arrive at a TDI. An example of this is provided under the US EPA Food Quality Protection Act (FQPA) which applies a UF of 1,000 in the case of infant exposures to toxic xenobiotics in food.

If the experimental data indicate that there is no safe dose then a NOEL cannot be determined and a regulatory TDI cannot be set. Examples of this is are provided by radiation exposure and genotoxic substances.

This brief overview of the regulatory toxicology approach highlights the inadequacy of the safety data put forward by the pharmaceutical industry to the FDA. In my opinion, the risk to the fetus has been understated.

## 9) Epigenetic effects of opioids

A Mini-Review by Gilardi et al (2018) 'Will Widespread Synthetic Opioid Consumption Induce Epigenetic Consequences in Future Generations?' discusses the animal experimental and human data currently available. Epigenetic changes can alter and regulate the way certain genes express themselves in the absence of mutations. This is achieved by remodelling the structure of the chromatin from 'open' (transcriptionally active) to 'closed' (transcriptionally inactive). A number of molecular mechanisms exist, including DNA methylation and post-translational modification of histones.

The review, while acknowledging the lack of transgenerational studies, "converging evidence suggests that opioids can induce long-lasting transgenerational changes in subsequent generations, particularly concerning drug sensitivity and tolerance, with possible implications for drug abuse vulnerability". A major part of this 'converging evidence' is the animal experimental data that Is available.

NAS1664

It is my opinion that epigenetic transgenerational effects should be considered in any future monitoring program of NAS sufferers

## 10) Causation – Sir Bradford Hill's methodology

In Bradford Hill's still widely used seminal paper of 1965i, which focuses on how we can move from an observed association to a robust causal inference, he identified nine "features" (often misnamed as "criteria") of the available, and often "ragged", evidence (Vandenbroucke J, Broadbent A & Pearce N, 2015) which, if present, could help justify a robust causal inference. Bradford Hill was careful to point out that even if these features of the evidence (Table 6) were absent, then that did not justify concluding that the agent being evaluated was not causing harm. In other words, the features of the evidence were asymmetrical, a word he did not use despite making the conceptual point very explicit when discussing several of the features of the evidence (Gee, 2008).

Bradford Hill would have approached the evidence with: "the decisive question… whether the frequency of the undesirable event B will be influenced by a change in the environmental feature A?". In this case event B is the diagnosis of NAS and the subsequent negative sequelae. Event A is the exposure of the pregnant mother to opioids.

From Table 6 I conclude that the overall weight of evidence supports a causal link between maternal opioid exposure during pregnancy and the appearance of NAS in the neonate. In my opinion, the causal relationship is strong and is beyond 'more likely than not' i.e. at or around the "balance of probabilities", or the "fair" strength of evidence, which Bradford Hill considered a sufficiency of evidence to justify preventative measures.

Table 6 - The Bradford Hill Approach Applied to NAS

| |
|---|
| Strength of association: case studies & clinical data indicate clear health impacts in significant proportions of exposed groups |
| Consistency: The clinical data is consistent with the known action of opioids and is similar across international boundaries. |
| Specificity: NAS is a syndrome with common neurological symptoms linked to maternal opioid exposure during pregnancy. |

NAS1665

> Temporality: Opioids have been present throughout recorded human history and therefore it is not possible to establish the position prior to regular human exposure. There is a temporal link in that there has to be maternal opioid exposure prior to the appearance of NAS in the resulting neonate.
>
> Biological gradient: higher maternal opioid exposure often causes greater health effects; but lower dose effects also apparent, suggesting non-linearity
>
> Plausibility: the known effects of opioids through the opioid receptor, which is universally present, support a causal link.
>
> Coherence: animal/human data support a causal link
>
> Experiment: animal experimental data supports a causal relationship between maternal opiate exposure and teratogenic effects (fetal malformations, functional neurological damage) through the principal mechanism of increased apoptosis.
>
> Analogy: Maternal exposure to other teratogenic agents during pregnancy leading to both functional and anatomical teratogenesis; eg lead, mercury, di-ethyl stilbestrol, thalidomide.

## 11)Summary and opinion

Opioids all act in common through the opioid receptor system, which is universally present in vertebrate life forms and is well conserved throughout their evolutionary history. Therefore, this class of drugs has a common mode of action.

Opioid pharmaceutical agents affect the rate of apoptosis in development. The rate of apoptosis (programmed cell death) is critical for the normal development of the fetus and perturbing that rate will lead to teratogenesis, both morphological and functional. Therefore, there is a recognised pathological mechanism in common across this class of pharmaceutical agents.

There are no questions concerning foetal opioid dose to address. The Plaintiffs in this Class Action all had significant exposure to pre-natal opioid pharmaceuticals via their mothers. This was at a level which subsequently led to the postpartum diagnosis of NAS. This diagnosis is casually linked with a higher risk of suffering a congenital malformation. It also causally linked with a higher risk of neurological damage which could be expressed through various latent negative health impacts. These are the reasonably certain consequences of their

NAS1666

exposures, which are the result of subcellular or other physiological changes and can also be manifested in physical or mental injury or disease.

Prescribing opioids to women during pregnancy will lead to fetal damage. This is because of the known toxicity of opioids to the fetus which leads to increased risk of latent disease in the child post-natally. This should be made clear to women of child bearing age who are on opioid maintenance therapy and who are at risk of becoming pregnant. In my opinion, regimes for maternal opioid withdrawal should be considered as a primary part of any risk benefit considerations. The manufacturer's submissions to the FDA do not indicate any support for this approach which, in my opinion, did not reflect known risks of neurologic, developmental or teratogenic effects.

The establishment of Scientific Panels to participate in a medical monitoring program would, in my opinion, be beneficial for the following reasons. Monitoring for the post-natal consequences NAS is reasonable and necessary, according to contemporary scientific principles. The monitoring program should include periodic diagnostic medical examinations as there is clinical value in early detection and diagnosis. Therefore, this is different from a typical post-natal monitoring regime in the absence of exposure. The collection of prospective epidemiological data from a large cohort of NAS sufferers will lead to very robust studies that will deliver a medical benefit to a wider group of NAS sufferers than just those who have received prescription opioids during pregnancy. There will be beneficial read-across data that is relevant to other classes of opioid exposed fetuses. Such Scientific Panels should be composed of experts from the multiple medical and scientific disciplines that are required to fully understand this complex condition, including (but not necessarily restricted to): paediatricians, epidemiologists, physicians specialising in opioid addiction, psychiatrists, behavioural psychologists, toxico-pathologists, neurobiologists.

In my opinion, on the balance of scientific and medical probabilities, these negative outcomes are attributable to the treatment of the mothers with opioids. This includes treatment of mothers-to-be prior to pregnancy, when addictions can be established, and then during pregnancy at a dose adequate to induce NAS in their infant, via the common mode of action of this class of medicines and through the common pathological mechanism identified.

## 12) Statement of Truth

I confirm that I have made clear which facts and matters referred to in this report are within my own knowledge and which are not. Those that are within my own knowledge I confirm to be true. The opinions I have expressed represent my true and complete professional opinions on the matters to which they refer.

**NAS1667**



_____

Dr. C.V. Howard     02/12/2019

**References**

Anand KJS & Campbell-Yeo M. Consequences of prenatal opioid use for newborns.   Acta Pædiatrica. 2015 104: 1066–1069

Bains R.K., Sibbons P.D., Murray R.D., Howard C.V. van Velzen D. (1996).'Stereological estimation of the absolute number of glomeruli in the kidneys of the lamb.' Research in Veterinary Science, 60:122-125.

Barker DJ, Winter PD, Osmond C, Margetts B, Simmonds SJ. Weight in infancy and death from ischaemic heart disease. Lancet. 1989; 2:577–80.

Bartlett Z (2018) Apoptosis in embryonic development. The Embryo Project Encyclopedia. https://embryo.asu.edu

Bignami G (1996) Economical test methods for developmental neurobehavioural toxicity.

Environmental Health Perspectives 104(S2) 285-298


Bradford Hill A. The Environment And Disease: Association Or Causation? In: Proceedings of the Royal Society of Medicine. Vol 58. Royal Society of Medicine Press; 1965:295-300.

Broussard C, Rasmussen SA, Reefhuis J et al (2011) Maternal treatment with opioid analgesics and risk for birth defects. Am.J.Obst.Gynecol. 204: 314 e1-11.

Changeux JP, Danchin A (1976). Selective stabilisation of developing synapses as a mechanism for the specification of neuronal networks. Nature 264: 705–712.

Conradt E, Sheinkopf SJ, Lester BM, Tronick E, LaGasse LL, Shankaran S, et al. Prenatal substance exposure: neurobiologic organization at 1 month. J Pediatr 2013; 163: 989–94 e1.

Coyle MG, Salisbury AL, Lester BM, Jones HE, Lin H, GrafRohrmeister K, et al. Neonatal neurobehavior effects following buprenorphine versus methadone exposure. Addiction 2012; 107 (Suppl. 1): 63–73.

**NAS1668**

Creeley CE, Dikranian KT, Johnson SA, Farber NB, Olnesy JW (2013) Alcohol induced apoptosis of oligodendrocytes in the fetal macaque brain. Acta Neuropathologica Communications 1: 23

Cuervo R, Concepcio´n Valencia, Roshantha A. S. Chandraratna, and Luis Covarrubias. Programmed Cell Death Is Required for Palate Shelf Fusion and Is Regulated by Retinoic Acid. Developmental Biology 245, 145–156 (2002).

Desai RJ, Huybrechts KF, Hernandez-Diaz S, Mogun H, Patorno E, Kaltenbach K, et al. Exposure to prescription opioid analgesics in utero and risk of neonatal abstinence syndrome: population based cohort study. BMJ 2015; 350: h2102.

Fodor A, Timar J, Zelena D. Behavioral effects of perinatal opioid exposure. Life Sci 2014; 104: 1–8.

Gee D. Establishing evidence for early action: the prevention of reproductive and developmental harm. Basic Clin Pharmacol Toxicol. 2008;102(2):257–266.

Gewolb IH, Fishman D, Qureshi MA, Vice FL. Coordination of suck-swallow-respiration in infants born to mothers with drug-abuse problems. Dev Med Child Neurol 2004; 46: 700–5.

Gilardi F, Marc Augsburger and Aurelien Thomas. Will Widespread Synthetic OpioidConsumption Induce Epigenetic Consequences in Future Generations? Front. Pharmacol. 2018, 9:702.. doi: 10.3389/fphar.2018.00702

Gill AC, Oei J, Lewis NL, Younan N, Kennedy I, Lui K. Strabismus in infants of opiate-dependent mothers. Acta Paediatr 2003; 92: 379–85.

Gutstein H B and Akil H (2006) Opioid Analgesics. Ch 26 In- Brunton LL, Lazo JS, Parker KL Goodman and Gilman's The pharmacological basis of Therapeutics. New York: McGraw Hill.

https://webbook.nist.gov/cgi/cbook/ Molecular structures and other characteristics of individual opioids: NIST Chemistry Web Book.

Harlan, R. E. & Song, D. D. Prenatal morphine treatment and the development of the striatum. Regul. Pept. 54, 117–118 (1994)

Hinchliffe S.A., Lynch M.R.J., Sargent P.H., Howard C.V., van Velzen D. (1992). 'The effect of human intrauterine growth retardation on the development of renal nephrons.' British Journal of Obstetrics and Gynaecology 99: 296-301.

Hu, S., Sheng, W. S., Lokensgard, J. R. & Peterson, P. K. Morphine induces apoptosis of human microglia and neurons. Neuropharmacology 42, 829–836 (2002)

Jacobsen MD, Weil M, Raff (1997) Programmed cell death in animal development. Cell 88 347-54

Kavlock RJ, Woodrow Seltzer R (1995) The road to embryologically based dose-response models. Environmental Health Perspectives. 104 S1 107-121

NAS1669

Kerr JF, Wyllie AH, Currie A R (1972) Apoptosis: A basic biological phenomenon with wide ranging implications in tissue kinetics. British Journal of Cancer. 26: 239-57

Kivisto K, Tupola S, Kivitie-Kallio S. Prenatally buprenorphine-exposed children: health to 3 years of age. Eur J Pediatr 2015. doi:10.1007/s00431-015-2562-0 [Epub ahead of print].

Liu AJW, Sithamparanathan S, Jones MP, et al Growth restriction in pregnancies of opioid-dependent mothers Archives of Disease in Childhood - Fetal and Neonatal Edition 2010;95:F258-F262.

Lu R, Liu X, Long H, Ma L. Effects of prenatal cocaine and heroin exposure on neuronal dendrite morphogenesis and spatial recognition memory in mice. Neurosci Lett 2012; 522: 128–33.

McCarthy M (2015) Opioids are commonly prescribed to women of reproductive age despite birth defect risk, US CDC study shows. BMJ 2015 350 h456

McGlone L, Mactier H. Infants of opioid-dependent mothers: neurodevelopment at six months. Early Hum Dev 2015;91:19–21.

Mazarakis ND, Edwards AD, Mehmet H (1997) Apoptosis in neural development and disease. Archives of diseases in childhood. 77 F165-F170

Mizuno N, Kokubu H, Sato M et al. (2005) G-Protein coupled receptor signalling through Gq and JNK negatively regulates neural progenitor cell migration. PNAS 102 (35) 12365-12370

Moe V. Foster-placed and adopted children exposed in utero to opiates and other substances: prediction and outcome at four and a half years. J Dev Behav Pediatr 2002; 23: 330–9.

Nassogne M-C, Evrard P, Courtoy PJ (1995) Selective neuronal toxicity of Cocaine in empryonic mouse brain co-cultures. PNAS 92 11029-11033

Oates JA (2006) The science of drug therapy. Ch 5 In- Brunton LL, Lazo JS, Parker KL Goodman and Gilman's The pharmacological basis of Therapeutics. New York: McGraw Hill.

O'Brien P (2006)  Drug addiction and drug abuse. Ch 23 In- Brunton LL, Lazo JS, Parker KL Goodman and Gilman's The pharmacological basis of Therapeutics. New York: McGraw Hill.

Olney PD, Farber NB, Wozniak DF, Jevtovik-Todorovi V, Ikonomidou C (2000) Environmental agents that have the potential to trigger massive apoptopic neurodegeneration in the developing brain. Environmental Health Perspectives 108 S3 383-388

Patrick S, Dudley J, Martin PR, Harrel FE, Warren MD, Hartmann KE, Wesley Ely KE, Grijalva CG, Cooper WO (2015) Prescription opioid epidemic and infant outcomes. Pediatrics 135(5) 842-850

Reed MG, Howard CV & Staats de Yanes G (2010). One-Stop Stereology: the estimation of 3D parameters using Isotropic Rulers. Journal of Microscopy, 239: 54-65.

NAS1670

Robinson SE. Effects of perinatal buprenorphine and methadone exposures on striatal cholinergic ontogeny. Neurotoxicol Teratol 2002; 24: 137–42.

Sadraie SH, Kaka GR, Sahraei H, Dashtnavard H, Bahadoran H, Mofid M, et al. Effects of maternal oral administration of morphine sulfate on developing rat fetal cerebrum: a morphometrical evaluation. Brain Res 2008; 1245: 36–40.

Stein C (2016) Opioid Receptors. Ann Rev.Med. 67: 433-51

Stephens CW (2011). The evolution of vertebrate opioid receptors. Front Biosci. 14:1247-1269

Svensson A-L, Bucht N, Hallberg M, Nyberg F (2008) Reversal of opiate induced apoptosis by human recombinant growth hormone in murine foetus primary hippocampal neuronal cell cultures. PNAS 105 (20) 7304-7308

Tau GZ and Peterson BS (2010). Normal Development of Brain Circuits. Neuropsychopharmacology Reviews 35: 147-168

Tempel A, Espinoza K. Morphine-induced downregulation of mu-opioid receptors and peptide synthesis in neonatal rat brain. Ann N Y Acad Sci 1992; 654: 529–30.

Vandenbroucke J, Broadbent A, Pearce N. Causality and causal inference in epidemiology - the need for a pluralistic approach. Int J Epidemiol. 2015:1-12.


Vestal-Laborde AA, Eschenroeder AC, Bigbee JW, Robinson SE, Sato-Bigbee C. The opioid system and brain development: effects of methadone on the oligodendrocyte lineage and the early stages of myelination. Dev Neurosci 2014; 36: 409–21.

Walhovd KB, Moe V, Slinning K, Due-Tonnessen P, Bjornerud A, Dale AM, et al. Volumetric cerebral characteristics of children exposed to opiates and other substances in utero. NeuroImage 2007; 36: 1331–44.

van den Hoffa M. J.B.,, Stefan M. van den Eijnde, Szabolcs Vira´gh, Antoon F.M. Moorman. Programmed cell death in the developing heart. Cardiovascular Research 45 (2000) 603–620

Welle-Strand GK, Skurtveit S, Jones HE, Waal H, Bakstad B, Bjarko L, et al. Neonatal outcomes following in utero exposure to methadone or buprenorphine: a National Cohort Study of opioid-agonist treatment of Pregnant Women in Norway from 1996 to 2009. Drug Alcohol Depend 2013; 127: 200–6.

Wolff K, Perez Montenajo R (2014) Opioid Neonatal abstinence syndrome: Controversies and implication for practice. Current drug abuse reviews. 7 44-58

Yanai, J. et al. Functional changes after prenatal opiate exposure related to opiate receptors' regulated alterations in cholinergic innervation. Int. J. Neuropsychopharmacol. 6, 253–265 (2003)

Yazdy MM, Desai RJ and Brogly SB (2015) Prescription opioids in pregnancy and birth outcomes a review of the literature. J.Pediatric Genetics. 4 (2) 56-70

NAS1671

Yuan Q, Rubic M, Seah J, Rae C, Wright IM, Kaltenbach K, et al. Do maternal opioids reduce neonatal regional brain volumes? A pilot study J Perinatol 2014; 34: 909–13.

Zandi-Nejad K1, Luyckx VA, Brenner BM. Adult hypertension and kidney disease: the role of fetal programming Hypertension. 2006 Mar;47(3):502-8. Epub 2006 Jan 16.

---

**EXHIBIT D**

NAS1673



**PROFESSIONALS TREATMENT PROGRAM &
COMPREHENSIVE DIAGNOSTIC EVALUATION PROGRAM**

I, Gregory E. Skipper, M.D., declare and state as follows:

1.    I am a medical doctor, currently licensed to practice medicine in the State of California.

2.    My full qualifications are set forth on my CV which is attached to this affidavit as Exhibit 1. In summary, I am board certified by the American Board of Internal Medicine and Addiction Medicine. I am a Distinguished Fellow of the American Society of Addiction Medicine. I am the Medical Director at the Center for Professional Recovery: Professionals Treatment Program and Comprehensive Diagnostic Evaluation Programs in Malibu CA, a position I have held from 2011 to present. I am also concurrently the Medical Director for Professional Boundaries, Inc., a position I have held from 2000 to present. I have also been a Medical Review Officer in Toxicology Consulting since 2005.

3.    In terms of my education, I obtained a B.S., Magna Cum Laude, from University of Alabama, in Tuscaloosa, AL, in 1971. Thereafter I obtained my Medical Degree and was part of the AOA Honorary Society from University of Alabama School of Medicine in Birmingham, AL, in 1974. From 1974-1975 I participated in a Residency in Physical Medicine and Rehabilitation at the Spain Rehabilitation Center in Birmingham, AL. From 1975-1978 I completed an Internship and Residency in Internal Medicine at the University of California, San Diego.

4.    I am a member of numerous professional groups/societies, and I have authored extensive scholarly publications, articles and editorials, book chapters, audio and video

6021 Galahad Dr. Malibu CA 90265  •  P 310-633-4595  •  F 213-210-2191
website:  www.centerforprofessionalrecovery.com  •  e-mail:  gregory.skipper@gmail.com

**NAS1674**

presentations, peer reviewed abstract presentations. I have spoken at national conferences with over 100 presentations on various topics related to Addiction Medicine.

5.      I have been a consultant for numerous government agencies, including the FDA, the DEA, and the Center for Substance Abuse Treatment (CSAT). I was appointed to the National Advisory Council for the Substance Abuse and Mental Health Services Administration (SAMHSA) by the Secretary of HHS and served in that government position from 2001 to 2006. I have consulted extensively with criminal courts, evaluated patients that are incarcerated, and have testified in county, state and federal courts. I have testified in over 100 administrative hearings.

6.      In addition to the above, I have extensive experience as a medical director of addiction treatment centers. My present duties include the direct management and supervision of other mental health professionals specifically as it relates to the overall assessment and care of addiction treatment from intake through discharge and discharge follow up.

7.      Based on my background, training, and experience, as well as my skill as a practicing Internal and Addiction Medicine physician, I am readily familiar with, and understand the requirements of the standard of care for diagnosis and treatment of patients with opioid use disorders.

8.      I have been compensated at a rate of $600 per hour for my work on this case.

9.      In rendering my opinions, I have reviewed and relied upon the 3/2/2021 document entitled "Individual Purdue Pharma LP Claimant Claims Evaluation Criteria" ("Claims Criteria") provided to me by counsel for the NASAHC, and the documents cited herein.

10.      In connection with the litigation, I have been asked to review the "temporal relationship requirement" for payment found in the Claims Criteria, Section 7(a)(i)(A)(3), which is later incorporated into the "level awards" which follow.

This provision reads:

2

NAS1675

> The showing required for a Tier 1A Base Payment is a temporal relationship between use of a qualifying product and the onset of addiction, dependence or substance abuse within six months after use of a qualifying product. There is a presumption that proof of qualifying product usage under the methods above within six months before the onset of addiction, dependence or substance abuse (as set forth in the Claim Form) is sufficient.

11.      My opinions are as follows: i) in the vast majority of cases, the "temporal relationship requirement" can only be met by rank speculation at best, and fraud at worst; ii) the six month "qualifying window" bears no relationship to the science of addiction; iii) the Base Payment (which does not require medical records but merely a statement by Claimants on a Claim Form) require Claimants to make an unqualified "self-diagnosis" of complex medical conditions based on undefined scientific terms "addiction," "dependence" and "substance abuse," and then speculate as to the date onset of these conditions, and iv) the Level Awards require a medical diagnosis of "Opioid Use Disorder" even though that medical diagnosis did not exist until 2013.

12. Further bases for my opinions are below.

13. The terms "addiction," "dependence" and "substance abuse" are medical terms and diagnoses undefined in the TDP.

14. The terms "addiction" and "dependence" and "substance abuse" are medical terms for conditions which a lay person (or claimant) is unqualified to diagnose.

15. Even among the medical community, the definitions and criteria for the diagnosis of these conditions have varied over the years by provider, medical organization and authority.

16. For instance, the most widely used text for the diagnosis of mental and behavioral disorders is the *Diagnostic and Statistical Manual of Mental Disorders* (*DSM*) published by the

3

NAS1676

American Psychiatric Association (APA).  The term "addiction" has not appeared within the text of the DSM since 1994 with the publication of the DSM-IV.[1]

17. Rather than refer to "addiction," the DSM-V, published in 2013, merged the former diagnoses of "substance abuse" and "substance dependence" into the category of "substance use disorders" (SUD) which is diagnosed based on the presence of 11 criteria.[2] The severity of an individual's SUD is qualified as *mild*, *moderate*, or *severe* based on how many of the 11 diagnostic criteria are met.  Regarding "dependence," the APA eliminated the diagnosis altogether, noting the confusion between "dependence" and "addiction," noting the former can be a normal body response to a substance.[3] [4]

18. Like the DSM, the International Classification of Diseases (ICD), which the CDC refers to as "the cornerstone of classifying diseases, injuries, health encounters and inpatient procedures," has not used the term "addiction" to refer to substance use disorders since 1964.[5] [6]  Rather than refer to "addiction," the 10th Revision of the ICD currently uses the term "dependence syndrome."[7]

---

[1] Schneider, J. (2019) **"What's In A Name? In This Case, That Which We Call Addiction Is Not Dependence."** Practical Pain Management, Volume 19, Issue 5, pp 6-7

[2]  Martin Guha, (2014), "Diagnostic and Statistical Manual of Mental Disorders: DSM-5 (5th edition)", *Reference Reviews*, Vol. 28 No. 3, pp. 36-37; Hasin DS, O'Brien CP, Auriacombe M, Borges G, Bucholz K, Budney A, et al. (August 2013). "DSM-5 criteria for substance use disorders: recommendations and rationale". *The American Journal of Psychiatry*. 170 (8): 834–51.

[3] https://www.psychiatry.org/File%20Library/Psychiatrists/Practice/DSM/APA_DSM-5-Substance-Use-Disorder.pdf

[4] Presumably, as written, a Claimant can qualify for compensation for "physical dependence" to an opioid, even though "physical dependence" and resulting "withdrawal" are normal biological responses to use of opioids and not alone diagnostic of "substance abuse" or "addiction."

[5] https://www.who.int/substance_abuse/terminology/definition1/en/#:~:text=ICD%2D10%20Diagnostic%20criteria% 20for%20research&text=A%20strong%20desire%20or%20sense%20of%20compulsion%20to%20take%20the%20s ubstance%3B,-Impaired%20capacity%20to&text=Persistent%20substance%20use%20despite%20clear,nature%20and%20extent% 20of%20harm.

[6] https://www.cdc.gov/nchs/icd/icd10cm_pcs_background.htm

[7] Seddon R. Savage, Definitions related to the medical use of opioids: Evolution towards universal agreement, Journal of Pain and Symptom Management, Volume 26, Issue 1, 2003, pp 655-667.

NAS1677

19. Noting the "the confusing panoply of terms and definitions," the American Medical Association's Council on Scientific Affairs Panel on Alcoholism and Drug Addiction created a task force in the early 1980s that attempted to reach consensus on addiction-related terminology.[8]  A panel of 80 experts from more than 20 professional organizations developed and rated definitions of 50 terms related to substance abuse, including *addiction, addict, physical dependence, tolerance*, and *chemical dependency.*  Savage, et al, observed that "although substantial agreement was achieved, these consensus definitions contained a curious blend of attributes that perpetuated, rather than clarified, the confusion."[9]  The current Merck Manual likewise observes that "the terms "addiction," "abuse," and "dependence" have traditionally been used in regard to people with substance use disorders. However, those terms are all too loosely and variably defined to be very useful…."[10]

20. Not only does the Base Payment require claimants to make an unqualified "self-diagnosis."

of complex (and undefined) medical conditions, it requires the claimant to speculate as to a "start date" on which these conditions started.  Even if one were to assume that "addiction" as used in the TDP meant "dependence syndrome" as used by the ICD-10, that would require the claimant to not only self-diagnose what the ICD-10 refers to as "a cluster of physiological, behavioral, and cognitive phenomena," but also reduce the presence of such "phenomena" to

---

[8] R.C. Rinaldi, E.M. Steindler, B.B. Wilford, *et al.*, Clarification and standardization of substance abuse terminology. JAMA, 259 (1988), pp. 555-557

[9] Seddon R. Savage, David E. Joranson, Edward C. Covington, Sidney H. Schnoll, Howard A. Heit, Aaron M. Gilson, Definitions related to the medical use of opioids: Evolution towards universal agreement,
Journal of Pain and Symptom Management,
Volume 26, Issue 1,
2003,
Pages 655-667,
[10]https://www.merckmanuals.com/home/mental-health-disorders/substance-related-disorders/substance-use-disorders?query=addiction

5

NAS1678

a particular date.  Addiction science does not lend to itself to such specificity.  In fact, ten of the DSM-V's eleven diagnostic criteria for "Opioid Use Disorder" (reproduced below) do not refer to discrete events or occurrences but to recurrences, trends, and/or progressions which render assigning a specific date to them impossible.[11]

1. Opioids are often taken in larger amounts or over a longer period than was intended.
2. There is a persistent desire or unsuccessful efforts to cut down or control opioid use.
3. A great deal of time is spent in activities necessary to obtain the opioid, use the opioid, or recover from its effects.
4. Craving, or a strong desire or urge to use opioids.
5. Recurrent opioid use resulting in a failure to fulfill major role obligations at work, school, or home.
6. Continued opioid use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of opioids.
7. Important social, occupational, or recreational activities are given up or reduced because of opioid use.
8. Recurrent opioid use in situations in which it is physically hazardous.
9. Continued opioid use despite knowledge of having a persistent or recurrent physical or psychological problem that is likely to have been caused or exacerbated by the substance.
10. Exhibits tolerance.
11. Exhibits withdrawal.

21. The six-month temporal relationship requirement "between use of a qualifying product and the onset of addiction, dependence or substance abuse" is arbitrary, bears no relation to the science of addiction and is contrary to the state of the art medical practice for the diagnosis of OUD set forth in the DSM-V.  If the purpose of the six-month temporal relationship requirement is to establish a cause and effect relationship between a claimant's use of a Purdue product and subsequent "substance abuse, dependence or addiction," it woefully fails.

---

[11] Although "withdrawal" could arguably relate to a discrete event, according to the DSM, "withdrawal" and "tolerance" are not to be considered evidence or criteria for opioid use disorder for persons taking opioids under appropriate medical supervision.

6

NAS1679

22. Generally speaking, "addiction" requires a) repeated exposures to a substance that triggers the reward center of the brain b) in a genetically susceptible individual c) with environmental or psychosocial risk factors.

23. It is impossible to know which of the repeated exposures was causative of the "cluster of physiological, behavioral, and cognitive phenomena" of addiction, and impossible to predict when the phenomena (or substance abuse) will occur in a given individual. I am unaware of any studies that even *attempt* to answer those questions anywhere in the universe of scientific literature. It would require rank speculation to predict whether phenomena (or substance abuse) will result within 6 months, 12 months, 24 months, or 48 months from a given exposure. In fact, in order to diagnose an OUD, the DSM-V requires the presence of two or more of its stated criteria over a period of 12 months.

24. The temporal relationship requirement also fails to establish cause and effect because it improperly ignores pivotal earlier exposures to opioids in favor of later exposures when both were equally causative of an OUD. "Addiction" simply cannot exist without both "priming" or initial exposures, and "reinforcing" or repeated exposures.

25. I believe the correct (and majority) view is that both priming and reinforcing exposures play equally important causative roles in any resulting addiction. For example, in an addiction-proned individual who was started on oxycodone for three months, switched to hydrocodone for the next 12 months, and did not meet the DSM-V criteria for moderate OUD until 15 months, *all* of the individual's exposures would be considered causative of the disorder. (The same would be true of an alcoholism-prone individual who began drinking vodka, switched to brandy and was drinking scotch by the time he met the criteria for alcohol use disorder).

7

NAS1680

26. I am also unaware of any literature that predicts when "substance abuse" may occur in susceptible individuals following a given exposure.

27. As stated above, the term "dependence" is undefined in the TDP and no longer appears in the DSM due in part to the loss of any consistent use or meaning.[12]   Assuming "dependence" is read to mean "physical dependence," physical dependence alone does not denote a medical harm from opioids nor is it diagnostic of an OUD.   Rather, physical dependence refers to the normal and expected physiological adaptation that occurs in the presence of medications which act on the central nervous system.[13]   Physical dependence is known to occur within as little as 5 days of appropriate, medically supervised, round the clock use of narcotics for post-operative pain and is a medical condition which cannot be diagnosed by a lay person.

28. The TDP states that in order to qualify for a Level Award (above and beyond a Base Award), a Claimant must furnish an "Opioid Use Disorder" diagnosis.   My two major concerns with this provision are that a) as this provision is written, in addition to furnishing an Opioid Use Disorder diagnosis, to qualify for a Level Award, the Claimant must still meet the scientifically fraught if not impossible temporal relationship requirement set forth for Base Awards, and b) "Opioid Use Disorder" is a medical term of art requiring specific criteria for a diagnosis that did not exist until the publication of the DSM-V in 2013.[14]   Unless it is the intent of the bankruptcy to limit Level Awards to those diagnosed with

---

[12] O'Brien C. Addiction and dependence in DSM-V. *Addiction*. 2011;106(5):866-867.
[13] Hasin DS, O'Brien CP, Auriacombe M, et al. DSM-5 criteria for substance use disorders: recommendations and rationale. *Am J Psychiatry*. 2013;170(8):834-851. doi:10.1176/appi.ajp.2013.12060782
[14] PubMed lists 3,315 articles containing the phrase "opioid use disorder." Of these, 3,289 were published in or after 2013.

NAS1681

OUD by their treaters in or after 2013, this provision would require claimants to seek a retrospective diagnosis made solely for the purpose of qualifying for payment under the TDP.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of <u>April, 2021</u> at Los Angeles, California.

_Gregory E. Skipper MD_ (signature)

Gregory E. Skipper, M.D.
Distinguished Fellow,
American Society of Addiction Medicine
Declarant

9

NAS1682

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## DISCLOSURE STATEMENT FOR FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN. ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THIS DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE. THIS DISCLOSURE STATEMENT IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**NAS1683**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Marshall S. Huebner
Benjamin S. Kaminetzky
Eli J. Vonnegut
James I. McClammy
Christopher S. Robertson

*Counsel to the Debtors and Debtors in Possession*

Dated: June 3, 2021
New York, New York

## DISCLAIMER

THIS DISCLOSURE STATEMENT CONTAINS A SUMMARY OF CERTAIN PROVISIONS OF THE PLAN AND CERTAIN OTHER DOCUMENTS AND INFORMATION. THE FINANCIAL INFORMATION INCLUDED HEREIN IS FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND SHOULD NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW AND WHETHER TO VOTE ON THE PLAN. THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE. THE SUMMARIES OF THE FINANCIAL INFORMATION AND THE DOCUMENTS THAT ARE ATTACHED HERETO ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO SUCH INFORMATION AND DOCUMENTS. IN THE EVENT OF ANY INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR SUCH OTHER PLAN-RELATED DOCUMENTS AND INFORMATION, THE PLAN OR SUCH OTHER PLAN-RELATED DOCUMENTS AND INFORMATION, AS THE CASE MAY BE, SHALL GOVERN FOR ALL PURPOSES.

THE STATEMENTS AND INFORMATION CONTAINED HEREIN HAVE BEEN MADE AS OF THE DATE HEREOF UNLESS OTHERWISE SPECIFIED. HOLDERS OF CLAIMS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER AT THE TIME OF SUCH REVIEW THAT THERE HAVE BEEN NO CHANGES IN THE FACTS SET FORTH HEREIN SINCE THE DATE HEREOF. EACH HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN SHOULD CAREFULLY REVIEW THE PLAN AND THIS DISCLOSURE STATEMENT IN THEIR ENTIRETY BEFORE CASTING A BALLOT (AS DEFINED HEREIN). THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. ANY PERSONS DESIRING ANY SUCH ADVICE OR OTHER ADVICE SHOULD CONSULT WITH THEIR OWN ADVISORS.

ALTHOUGH THE DEBTORS HAVE ATTEMPTED TO ENSURE THE ACCURACY OF THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT, EXCEPT WHERE SPECIFICALLY NOTED, THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED.

THE FINANCIAL PROJECTIONS (AS DEFINED HEREIN) PROVIDED IN THIS DISCLOSURE STATEMENT HAVE BEEN PREPARED BY THE MANAGEMENT OF THE DEBTORS AND THEIR FINANCIAL ADVISORS. THESE FINANCIAL PROJECTIONS, WHILE PRESENTED WITH NUMERICAL SPECIFICITY, ARE NECESSARILY BASED ON A VARIETY OF ESTIMATES AND ASSUMPTIONS THAT, ALTHOUGH CONSIDERED REASONABLE BY MANAGEMENT, MAY NOT BE REALIZED AND ARE INHERENTLY SUBJECT TO SIGNIFICANT BUSINESS, ECONOMIC, COMPETITIVE, INDUSTRY, REGULATORY, MARKET, AND FINANCIAL UNCERTAINTIES AND CONTINGENCIES, MANY OF WHICH ARE BEYOND THE DEBTORS' CONTROL. THE DEBTORS CAUTION THAT NO REPRESENTATIONS CAN BE MADE AS TO THE ACCURACY OF THESE FINANCIAL PROJECTIONS OR THE ABILITY TO ACHIEVE THE PROJECTED RESULTS. SOME ASSUMPTIONS INEVITABLY WILL NOT

NAS1685

MATERIALIZE. FURTHER, EVENTS AND CIRCUMSTANCES OCCURRING SUBSEQUENT TO THE DATE ON WHICH THESE FINANCIAL PROJECTIONS WERE PREPARED MAY BE DIFFERENT FROM THOSE ASSUMED AND/OR MAY HAVE BEEN UNANTICIPATED AND, THUS, THE OCCURRENCE OF THESE EVENTS MAY AFFECT FINANCIAL RESULTS IN A MATERIALLY ADVERSE OR MATERIALLY BENEFICIAL MANNER. THE FINANCIAL PROJECTIONS, THEREFORE, MAY NOT BE RELIED UPON AS A GUARANTEE OR OTHER ASSURANCE OF THE ACTUAL RESULTS THAT WILL OCCUR.

NO PARTY IS AUTHORIZED TO GIVE ANY INFORMATION WITH RESPECT TO THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT. NO REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY HAVE BEEN AUTHORIZED BY THE DEBTORS OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY INFORMATION, REPRESENTATIONS, OR INDUCEMENTS MADE TO OBTAIN AN ACCEPTANCE OF THE PLAN OTHER THAN, OR INCONSISTENT WITH, THE INFORMATION CONTAINED HEREIN AND IN THE PLAN SHOULD NOT BE RELIED UPON BY ANY HOLDER OF A CLAIM.

WITH RESPECT TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING, THREATENED, OR POTENTIAL LITIGATION OR ACTIONS, THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED BY ANY PARTY AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR WILL IT BE CONSTRUED TO CONSTITUTE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS IT RELATES TO THE HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS.

THE SECURITIES DESCRIBED HEREIN WILL BE ISSUED WITHOUT REGISTRATION UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "**SECURITIES ACT**"), OR ANY SIMILAR FEDERAL, STATE, OR LOCAL LAW, IN RELIANCE ON THE EXEMPTIONS SET FORTH IN SECTION 1145 OF THE BANKRUPTCY CODE. IN ACCORDANCE WITH SECTION 1125(E) OF THE BANKRUPTCY CODE, A DEBTOR OR ANY OF ITS AGENTS THAT PARTICIPATES, IN GOOD FAITH AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE, IN THE OFFER, ISSUANCE, SALE, OR PURCHASE OF A SECURITY, OFFERED OR SOLD UNDER THE PLAN, OF THE DEBTOR, OF AN AFFILIATE PARTICIPATING IN A JOINT PLAN WITH THE DEBTOR, OR OF A NEWLY ORGANIZED SUCCESSOR TO THE DEBTOR UNDER THE PLAN, IS NOT LIABLE, ON ACCOUNT OF SUCH PARTICIPATION, FOR VIOLATION OF ANY APPLICABLE LAW, RULE, OR REGULATION GOVERNING THE OFFER, ISSUANCE, SALE, OR PURCHASE OF SECURITIES.

NAS1686

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016(B) AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-APPLICABLE BANKRUPTCY LAWS. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION (THE "**SEC**"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.

SEE ARTICLE VIII OF THIS DISCLOSURE STATEMENT, ENTITLED "CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING," FOR A DISCUSSION OF CERTAIN CONSIDERATIONS IN CONNECTION WITH A DECISION BY A HOLDER OF AN IMPAIRED CLAIM TO ACCEPT THE PLAN.

NAS1687

# TABLE OF CONTENTS

PAGE

## ARTICLE I

INTRODUCTION ..................................................................................................... 1

A.      Purpose of the Disclosure Statement ........................................................... 1

B.      Executive Summary ..................................................................................... 2

C.      Summary of Classification and Treatment of Claims and Interests in the Debtors .......... 24

D.      The DOJ Resolution, Settlements with the Private Claimant Groups and Shareholder Contribution Are Interdependent and Vastly Superior to Potential Alternatives ............. 29

E.      Channeling Injunction ................................................................................ 31

F.      Releases ...................................................................................................... 32

G.      Confirmation of the Plan ............................................................................ 45

H.      Voting Procedures and Voting Deadline .................................................... 46

I.      Disclosure Statement Enclosures ............................................................... 47

J.      Confirmation Hearing ................................................................................ 47

## ARTICLE II

GENERAL INFORMATION REGARDING THE DEBTORS ........................................... 47

A.      The Debtors' Businesses, Structure, Management, and Employees .................. 47

B.      Debtors' Corporate Structure ..................................................................... 58

C.      The Debtors' Prepetition Capital Structure ................................................ 58

D.      Summary of Events Leading to the Chapter 11 Filings .............................. 58

E.      Independence of Company from Sacklers .................................................. 60

## ARTICLE III

THE CHAPTER 11 CASES ..................................................................................... 66

A.      First-Day Motions ..................................................................................... 66

B.      Appointment of Statutory Committee ........................................................ 66

C.      Filing of Schedules of Assets and Liabilities and Statements of Financial Affairs .......... 67

D.      Professional Advisors ................................................................................ 67

E.      CCAA Proceedings .................................................................................... 70

F.      Settlement Framework ............................................................................... 70

NAS1688

G.    Preliminary Injunction and Voluntary Injunction ........................................................71

H.    Appointment of Monitor ...............................................................................................73

I.    Appointment of Fee Examiner .......................................................................................74

J.    Emergency Relief Fund Negotiations ...........................................................................74

K.    Bar Date ........................................................................................................................75

L.    Entry into Stipulation in Respect of Certain Canadian Patient Litigation ........................77

M.    Sale of Rhodes Technologies Manufacturing Facility and Entry into Supply
Agreement .....................................................................................................................79

N.    Consideration of Unsolicited Offer for Certain Assets ....................................................80

O.    Continuation of Certain Prepetition Employee Compensation Programs ........................82

P.    Key Employee Incentive Program and Key Employee Retention Program .....................83

Q.    Extension of Exclusive Periods .....................................................................................84

R.    Information Sharing/Diligence .......................................................................................85

S.    Mediation .....................................................................................................................86

T.    Protocols for the Resolution of Healthcare Liens ........................................................125

U.    Negotiated Post-Effective Date Structure and Governance of NewCo ..........................126

V.    DOJ Resolution ...........................................................................................................132

W.    The Debtors' Acceptance of Responsibility and Apologies for Past Misconduct ..........133

X.    Public Document Repository .......................................................................................134

Y.    The Special Committee's Investigation and Approval of Settlement of Claims
Against the Sackler Families ........................................................................................136

Z.    The Terms of Settlement of Claims Against the Sackler Families .................................153

AA.    Evaluation of the Settlement with the Sackler Families ...............................................157

BB.    Creditor Investigations Related to the Settlement with the Sackler Families .................177

CC.    Prosecution of Claims and Causes of Action Related to the Debtors' Insurance
Coverage .....................................................................................................................179

DD.    Omnibus Claims Objection Procedures .......................................................................179

EE.    Disclosure Statement Hearing and Confirmation Hearing ...........................................179


ARTICLE IV

SUMMARY OF THE PLAN        180

A.    Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and
DOJ Forfeiture Judgment Claim ..................................................................................182

B.    Classification of Claims and Interests ...........................................................................184

**NAS1689**

C.     Treatment of Claims and Interests .................................................................. 185

D.     Means for Implementation ............................................................................... 198

E.     Distributions .................................................................................................... 246

F.     Procedures for Disputed Claims ...................................................................... 252

G.     Executory Contracts and Unexpired Leases .................................................... 254

H.     Conditions Precedent to the Occurrence of the Effective Date ...................... 262

I.     Effect of Confirmation .................................................................................... 264

J.     Retention of Jurisdiction ................................................................................. 292

K.     Miscellaneous Provisions ................................................................................ 295


ARTICLE V

VOTING REQUIREMENTS; ACCEPTANCE AND CONFIRMATION OF THE PLAN                    300

A.     General ............................................................................................................. 300

B.     Parties in Interest Entitled to Vote ................................................................. 301

C.     Classes Impaired and Entitled to Vote Under the Plan ................................... 301

D.     Voting Procedures and Requirements .............................................................. 302

E.     Acceptance of the Plan .................................................................................... 305

F.     Confirmation Without Necessary Acceptances; Cramdown ........................... 305

G.     Classification ................................................................................................... 306


ARTICLE VI

FEASIBILITY AND BEST INTERESTS OF CREDITORS                                      307

A.     Best Interests Test ........................................................................................... 307

B.     Liquidation Analysis ....................................................................................... 307

C.     Application of the Best Interests Test ............................................................. 308

D.     Feasibility ........................................................................................................ 308

E.     Valuation of the Debtors .................................................................................. 309

NAS1690

ARTICLE VII

SECURITIES LAW MATTERS ............................................................................... 309

ARTICLE VIII

CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING .......................... 310

A.     Risks Associated with the Bankruptcy Process ............................................310

B.     Risks Associated with the Debtors' and NewCo's Business Operations and
       Financial Condition ......................................................................................315

C.     Miscellaneous Risk Factors and Disclaimers ...............................................318

ARTICLE IX

CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN ................... 320

A.     General ..........................................................................................................320

B.     Consequences to the Debtors ........................................................................321

C.     Consequences to Holders of Certain Claims ................................................322

D.     Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor
       Trusts ............................................................................................................329

E.     Withholding on Distributions and Information Reporting .............................335

F.     Importance of Obtaining Professional Advice ..............................................336

ARTICLE X

RECOMMENDATION ........................................................................................... 336

## Appendices and Schedules

Appendix A     Debtors' Fifth Amended Chapter 11 Plan
Appendix B     Liquidation Analysis
Appendix C     Financial Projections
Appendix D     Valuation Analysis
Appendix E     Organizational Structure
Appendix F     Amended NewCo/TopCo Governance Term Sheet
Appendix G     Shareholder Settlement Term Sheet
Appendix H     Certain Shareholder Released Parties

NAS1691

# ARTICLE I

# INTRODUCTION

## A.  Purpose of the Disclosure Statement

On September 15, 2019 (the "**Petition Date**"), each of Purdue Pharma L.P. ("**Purdue Pharma**" or "**PPLP**"), its general partner Purdue Pharma Inc. ("**PPI**"), and Purdue Pharma's wholly owned direct and indirect subsidiaries (collectively, the "**Debtors**") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").  The Debtors' chapter 11 cases are being jointly administered under the caption *In re Purdue Pharma L.P.*, Case No. 19-23649 (the "**Chapter 11 Cases**").  The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors submit this disclosure statement (as may be amended, altered, modified, revised, or supplemented from time to time, the "**Disclosure Statement**") in connection with the solicitation of votes on the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors*, dated June 3, 2021 (the "**Plan**"), a copy of which is attached hereto as **Appendix A**.

The Debtors submit this Disclosure Statement pursuant to section 1125 of the Bankruptcy Code to holders of Claims against and Interests in the Debtors in connection with (i) the solicitation of acceptances of the Plan and (ii) a hearing to consider confirmation of the Plan.

The purpose of this Disclosure Statement is to describe the Plan and its provisions and to provide adequate information, as required under section 1125 of the Bankruptcy Code, to holders of Claims against the Debtors who will have the right to vote on the Plan so they can make informed decisions in doing so.  Holders entitled to vote to accept or reject the Plan will receive a Ballot together with this Disclosure Statement to enable them to vote on the Plan.

This Disclosure Statement includes, among other things, information pertaining to the Debtors' prepetition business operations and financial history, and the events leading up to the Chapter 11 Cases.  In addition, this Disclosure Statement includes an overview of the Plan (which overview sets forth certain terms and provisions of the Plan), the effects of confirmation of the Plan, certain risk factors associated with the Plan, and the manner in which distributions will be made under the Plan.  This Disclosure Statement also discusses the confirmation process and the procedures for voting, which procedures must be followed by the holders of Claims entitled to vote under the Plan in order for their votes to be counted.

NAS1692

## B.    Executive Summary[2]

On the very first day of these Chapter 11 Cases, the Debtors committed to turn over all of their assets for the benefit of their claimants and the American public, with the goal of directing as much of the value of their assets as possible to combatting the opioid crisis in this country. Today, the Debtors propose a Plan that delivers on this goal.

Under the Plan, the vast majority of the Debtors' assets will be dedicated to programs to abate the opioid crisis. Billions of dollars will flow into abatement trusts established for the benefit of states and localities, as well as other creditor groups such as Native American Tribes, hospitals, and children with a history of Neonatal Abstinence Syndrome and their guardians. Each of these abatement trusts will require that the funds be dedicated exclusively to opioid abatement efforts, and there will be transparency to so ensure.

The Plan also significantly improves on the initial settlement framework that was in place at the commencement of these Chapter 11 Cases, most notably by increasing the amount that Purdue Pharma's existing shareholders will be required to pay in the aggregate from $3.0 billion to $4.5 billion. Of this sum, $225 million has been paid by the shareholders to satisfy their civil settlement with the United States Department of Justice, leaving $4.275 billion for the creditors in this bankruptcy case. This material improvement in the recovery from the shareholders directly increases by $1.275 billion the amount of funds that can be directed toward abatement.

As for Purdue Pharma, it will cease to exist. On the Effective Date, the Debtors' businesses will be transferred to a newly created company, which will be indirectly owned by two of the opioid abatement trusts. No federal, state, or local governmental entity will own the equity of the new company. The new company will be a private company, will be required to operate in a responsible and sustainable manner, and will be subject to the same laws and regulations as any other pharmaceutical company. The new company will, however, be historic and unique because it will be governed by a charter that will require that it deploy its assets to address the opioid crisis in two ways. First, the new company will continue the Debtors' development of opioid overdose reversal and addiction treatment medications, and will be authorized to deliver an unlimited amount of such medications at cost when development is complete. Second, this new company will continue to grow the Debtors' non-opioid businesses, including developing its robust and diversified pipeline of non-opioid investigative candidates that have the potential to address several serious medical conditions, with resulting improvements in the value of the business benefiting the relevant opioid abatement trusts.

As a result of the improvements to the settlement framework, it is expected that approximately $5 billion in value will be provided to trusts, each with a mission to fund

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* (including all exhibits and schedules attached thereto, and as may be amended, altered, modified, or supplemented from time to time, the "**Plan**"); *provided*, that capitalized terms used herein that are not defined herein or in the Plan, but are defined in title 11 of the United States Code (the "**Bankruptcy Code**") or the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), shall have the meanings ascribed to such terms in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

NAS1693

abatement of the opioid crisis. An additional $700 to $750 million will be provided to a trust that will make distributions to qualified personal injury claimants.

The Plan is supported by most of the Debtors' creditor constituencies, including the Ad Hoc Committee, the MSGE, the Native American Tribes Group, the Ad Hoc Group of Individual Victims, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the Ratepayer Mediation Participants and the NAS Committee. A statement from the Official Committee of Unsecured Creditors regarding their support for the Plan is included in the Solicitation Package and can also be found at www.kccllc.net/PurdueCreditors. The negotiations leading up to the proposal of this widely supported Plan and the key terms of the Plan are summarized below.

The Debtors are pharmaceutical companies that manufacture, sell, or distribute, among other products, extended-release, long-acting, abuse-deterrent opioid pain medications. The marketing and sale of OxyContin® Extended-Release Tablets ("**OxyContin**"), Purdue Pharma's most prominent pain medication, and certain of the Debtors' other pain medications has been the target of more than 2,900 civil actions pending in various state and federal courts and other fora across the United States and its territories (the "**Pending Actions**"). These Pending Actions name as defendants Purdue Pharma and certain of the other Debtors (the "**Defendant Debtors**"), among other parties, and generally allege that the Defendant Debtors falsely and deceptively marketed OxyContin and other opioid pain medications. In addition to the Pending Actions, the Debtors were subject to investigation by multiple components of the United States Department of Justice (the "**DOJ**") since at least June 2016. Specifically, beginning in the summer of 2016, certain United States Attorney's Offices and components of the DOJ served subpoenas and other requests for documents and information on Purdue Pharma related to topics including but not limited to Purdue Pharma's opioid medications, including OxyContin, the Debtors' monitoring programs, payments to professionals, marketing practices, and other matters.

The Debtors commenced these Chapter 11 Cases because Chapter 11 provided the only framework for halting the destruction of value and unsustainable runaway costs associated with the Pending Actions, centralizing all of the claims against the Defendant Debtors, resolving the litigations rationally and efficiently, and maximizing the value of the Debtors' Estates for the benefit of their stakeholders and the American public. Litigation of thousands of Pending Actions to judgment and through appeals in the civil court system would have resulted in the financial and operational destruction of the Debtors and the immense value that they could otherwise provide, while squandering hundreds of millions of dollars on lawyers' and other professionals' fees. Pre-bankruptcy, professionals' fees relating to litigation and government investigations were accruing at an average rate of over $2 million per week, and that was before a single trial against Purdue had commenced.

Shortly before the Petition Date, after more than a year of intense negotiations, the Debtors, their ultimate owners (trusts for the benefit of members of the Raymond Sackler family and Mortimer Sackler family (the "**Sackler Families**")), and a critical mass of important plaintiff constituencies reached an agreement in principle on the structure of a global resolution of the Pending Actions (the "**Settlement Framework**"). The Settlement Framework had three key basic components. As part of a resolution of the litigation: (i) Purdue Pharma's existing shareholders would relinquish all of their equity interests in the Debtors and consent to the transfer of all of the Debtors' assets to a trust or similar post-emergence structure for the benefit

**NAS1694**

of claimants and the U.S. public, "free and clear" of liabilities to the fullest extent permitted by law; (ii) Purdue Pharma's existing shareholders would engage in a sale process for their ex-U.S. pharmaceutical companies; and (iii) Purdue Pharma's existing shareholders would contribute at least an additional $3 billion over seven years (in addition to 100% of the value of all 24 Debtors), with the hope of substantial further contemplated contributions from the sales of their ex-U.S. pharmaceutical businesses. *See* Article III.F for a further description of the Settlement Framework.

The Settlement Framework, however, was far from a final settlement. Indeed, the Debtors made clear on multiple occasions that the Settlement Framework left many items to be negotiated and resolved. The Debtors, together with the Creditors' Committee, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants (the "**AHC**" or "**Ad Hoc Committee**"), the Ad Hoc Group of Non-Consenting States (the "**NCSG**") and the Multi-State Governmental Entity Group (the "**MSGE**" and, together with the AHC and the NCSG, the "**Non-Federal Public Claimants**"), worked tirelessly for more than a year continuing to negotiate improved settlement terms that could be supported by a greater number of significant creditors. The negotiations included a Mediation, conducted by skilled, neutral mediators, lasting months that took place in two phases. The first phase of Mediation concerned how the value of the Debtors' Estates should be allocated among creditor constituencies, while the second primarily concerned settlement of the Debtors' and third-party civil causes of action against the Sackler Families.

The first phase of Mediation resulted not only in an agreement on allocation of estate resources among major creditor constituencies, but also an extraordinary commitment from the states, territories, tribes, municipalities and other governmental units, treatment providers, third-party payors and insurance carriers and legal guardians of children born with neonatal abstinence syndrome to accept distributions in the form of funding for programs designed to abate the opioid crisis (distributions to holders of PI Channeled Claims will not be subject to such provision). Under the structure agreed to in the first phase of Mediation, which is embodied in the Plan, funds created for the benefit of each group associated with the Private Claimants[3] will receive fixed cash distributions over time,[4] with varying values and time periods for each such group.

Specifically, of the approximately $5 billion in value that will be provided to trusts with a mission to fund abatement of the opioid crisis, approximately $250 million will be distributed to a trust for hospitals, $365 million will be distributed to a trust for insurers and other third-party payors, and $60 million will be distributed to a trust for NAS monitoring programs. The remainder will be distributed to the two abatement trusts established for non-federal domestic governmental entities and tribal authorities. A description of each of the abatement trusts, how they will be funded, which types of creditors may qualify for distributions from each trust and

---

[3] The Private Claimants, as referred to in the Mediators' Report [D.I. 1716] (the "**Mediators' Report**"), consist of (i) personal injury claimants, including guardian claimants asserting claims on behalf of minors with NAS due to exposure to opioids in utero, (ii) claimants comprising a putative class of NAS children seeking medical monitoring funding, (iii) hospitals, (iv) private health insurance carrier plaintiffs and third-party payors and (iv) purchasers of private health insurance.

[4] The Debtors will also make a $6.5 million donation (less attorneys' fees) to the Truth Initiative Foundation (whose mission includes youth and young adult education and prevention) in satisfaction of the Ratepayer Claims.

NAS1695

how distributions will be made is set forth in Article IIIS. Copies of the final trust distribution procedures (the "**Trust Distribution Procedures**") for each such trust (and the PI Trust, as defined below) will be included in the Plan Supplement by no later than the July 7, 2021 deadline to file the final Plan Supplement.[5] The current drafts of the Trust Distribution Procedures have already been filed.[6]

An additional $700 to $750 million, minus amounts prepaid to the United States on account of certain opioid-related claims and liens held by the United States against Holders of PI Claims ("**PI Claimants**") will be provided to a trust (the "**PI Trust**") that will make distributions to qualified personal injury claimants. Those funds will be split between two separate groups of personal injury claimants: "NAS PI Claimants," who are individuals with personal injury claims arising from intrauterine exposure to opioids resulting from opioid use by a biological mother, and "Non-NAS PI Claimants," who are individuals with personal injury claims arising from their own Purdue opioid use as well as individuals with claims arising from the death of someone else who used Purdue opioids. The funds provided to the PI Trust under the Plan will be split between a fund for NAS Claimants, which is entitled to receive $45 million in value, and a fund for the Non-NAS Claimants, which is entitled to receive $655 to $705 million in value, in each case gross of deductions and holdbacks for certain claims, liens, expenses, costs, and fees, as described in more detail herein.

Various federal healthcare programs hold claims or liens against PI Claimants or their recoveries under the Plan on the basis of amounts that the healthcare programs previously paid to, or on behalf of, those claimants for opioid-related injuries. The PI Trust (on behalf of the PI Claimants) has entered into a settlement with the United States to resolve these claims and liens in a way that minimizes administrative expense and maximizes the value that PI Claimants ultimately receive. This settlement is called the "United States-PI Claimant Medical Expense Claim Settlement" and is set forth in more detail in <u>Section 5.2(h)</u> of the Plan. In summary, the PI Trust has assigned to the United States the right to receive $26 million of the PI Trust's $700 million to $750 million of expected receipts under the Plan, and various United States healthcare programs have agreed to waive the claims and liens that otherwise would have entitled them to take a portion of recoveries away from some PI Claimants' Distributions. The $26 million is a prepayment by the PI Trust of amounts owed by certain PI Claimants. The PI Trust will equitably allocate that prepayment to, and recoup it from, the PI Claimants who actually owed

---

[5] The final Trust Distribution Procedures for the PI Trust and PI Trust Agreement will be included in a Plan Supplement by no later than June 30, 2021.

[6] Copies of the current drafts of such trust distribution procedures are attached to the *Notice of Filing of Sixth Plan Supplement Pursuant to the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2977] filed on June 2, 2021. In addition, final versions of the PI Trust Documents, the NAS Monitoring Trust Documents, the Hospital Trust Documents, the TPP Trust Documents, the NOAT Documents and the Tribe Trust Documents will be filed with the Plan Supplement on or prior to July 7, 2021, except that the final version of the PI Trust Documents will be filed on or prior to June 30, 2021. Copies thereof may be obtained at no charge from the Solicitation Agent by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

NAS1696

money to these federal healthcare programs. It will do so by reducing those claimants' Distributions under the PI TDP and the Plan.

The Ad Hoc Group of Individual Victims has performed a preliminary analysis that estimates that a qualified Non-NAS Claimant whose personal injury claim is liquidated pursuant to the streamlined procedures set forth in the Non-NAS distribution procedures (the "**Non-NAS PI TDP**")[7] will likely be entitled to a gross award ranging between $3,500 and $48,000 in distributions from the PI Trust, depending on the severity of the injuries. This amount will be reduced to pay certain fees, costs, claims, liens and expenses, as described in further detail below. Awards will in some cases be paid out in installments because the PI Trust will be funded in installments over five years, or because a court has ordered installment payments for minor claimants. In addition, Non-NAS Claimants who elect to liquidate their opioid-related personal injury claims against the Debtors in the tort system (i.e., by commencing a separate lawsuit) rather than pursuant to the streamlined procedures set forth in the Non-NAS PI TDP, and who successfully obtain a final judgment in respect of such claim, will receive payments on account thereof subject to certain limitations and caps that ensure, among other things, that no personal injury claimant receives more than its pro rata recovery on account of its opioid-related personal injury claims. A detailed description of the Non-NAS PI TDP that will be used to determine the amount of such distributions is set forth in Article III.T, and a copy of such distribution procedures is included in the Plan Supplement.

The NAS Committee has prepared a preliminary analysis that estimates that a qualified NAS Claimant whose NAS claims are liquidated pursuant to the streamlined procedures set forth in the NAS distribution procedures (the "**NAS PI TDP**")[8] will likely be entitled to a gross award of approximately $7,000 in distributions from such trust. This amount will be reduced to pay certain fees, costs, liens and expenses, as described in further detail below. Awards may be paid out in installments because the PI Trust will be funded in installments over five years, or because a court has ordered installment payments for minor claimants. In addition, NAS Claimants that elect to liquidate their opioid-related personal injury claims against the Debtors in the tort system (i.e., by commencing a separate lawsuit) rather than pursuant to the streamlined procedures set forth in the NAS TDP, and who successfully obtain a final judgment in respect of such NAS PI Claim, will receive payments on account thereof subject to certain limitations and caps that ensure, among other things, that no NAS personal injury claimant receives more than its pro rata recovery on account of its opioid-related NAS personal injury claims. A detailed description of the NAS PI TDP that will be used to determine the amount of such distributions is set forth in Article III.S, and a copy of such distribution procedures will be included in the Plan Supplement.

The chart below sets forth the approximate timing of the projected distributions to each of the Private Claimant trusts ($ millions):

| Trust | Effective Date | 2022 | 2023 | 2024 | 2025 | 2026 | Total |
|---|---|---|---|---|---|---|---|
| Hospital Trust | $25 | $35 | $45 | $45 | $50 | $50 | **$250** |
| TPP Trust | $1 | $121 | $121 | $122 | - | - | **$365** |

---

[7] A copy of the PI TDP is included in the Plan Supplement.
[8] A copy of the NAS PI TDP will be included in the Plan Supplement.

NAS1697

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| NAS Monitoring Trust | $1 | $24 | $35 | - | - | - | **$60** |
| PI Trust[9] | $300 | - | - | $200 | $100 | $100 | **$700 to $750[10]** |
| PI Futures Trust | $5 | | | | | | **$5** |
| **Total** | | | | | | | **$1,380 to $1,430** |

      The process by which each trust will make distributions to claimants is set forth in the Trust Distribution Procedures applicable to such trust, which are included in the Plan Supplement. **The description of the trust distribution procedures that follows is for explanatory purposes only and is qualified in its entirety by the Trust Distribution Procedures themselves that are filed as part of the Plan Supplement. In the event of any discrepancy between the following description and the Trust Distribution Procedures, the Trust Distribution Procedures control, so all holders of Channeled Claims are strongly encouraged to read the Trust Distribution Procedures for the applicable trust in their entirety.** Importantly, holders of personal injury claims, third-party payor claims, hospital claims or NAS monitoring claims will recover on such claims *only* from the applicable trust, because the Plan "channels" such claims to the trusts. In other words, if you hold one of these types of claims, you will not receive any recovery directly from Purdue Pharma or any other Debtor on account of such claim. The Trust Distribution Procedures describe what claims are channeled, how a claimant may apply to receive distributions from the applicable trust, what factors will determine whether a claimant is eligible to receive distributions, and how the amount of such distributions will be determined, as described in further detail in Article IIIS.

      ***Personal Injury Claims and the PI Trust***. Holders of personal injury claims are eligible to receive recoveries only from the PI Trust. The following requirements apply to you if you hold a claim against a Debtor for an opioid-related personal injury and your claim arose before Petition Date. It applies whether you are a member of a Tribe or are affiliated with any other group associated with a different Creditor Trust. These requirements differ, however, depending on whether you elect to have your PI Claim against the Debtors liquidated (i) pursuant to the streamlined liquidation procedures set forth in the PI TDP or (ii) through a lawsuit you commence against the PI Trust (and only the PI Trust) in the tort system. They also may differ depending on whether your personal injury claim is an NAS PI Claim or a Non-NAS PI Claim. Each is discussed below.

      ***Non-NAS PI Channeled Claims Liquidated pursuant to the Non-NAS PI TDP***. In order to be eligible to recover money on your Non-NAS PI Channeled Claim under the Non-NAS PI TDP, you must have *already* filed a Proof of Claim in the Chapter 11 Cases asserting

---

[9] Distributions to the PI Trust are subject to prepayment on a rolling basis as insurance proceeds from certain of Purdue's insurance policies are received by the MDT and paid forward to the PI Trust. The numbers in this chart include the value conferred upon the PI Trust when certain amounts are paid by the Debtors or MDT directly to the United States in the form of a prepayment of amounts due under claims and liens held by the United States against the recoveries of Holders of PI claims.

[10] The PI Trust will receive at least $700 million in value, and may receive an additional $50 million depending on the amount of proceeds received on account of certain of Purdue's insurance policies.

NAS1698

such Non-NAS PI Channeled Claim against one or more Debtors no later than April 23, 2021,[11] and your claim must have arisen prior to Petition Date. Further, you must complete, sign and submit an *additional* claim form **by the date that is 90 days[12] after such claim form is disseminated to Non-NAS PI Claimants[13]** describing your injury, electing your payment option, and attaching your evidence in support of your claim, as well as two HIPAA consent forms, and, if applicable, an heirship declaration. Only Non-NAS PI Claims based on injuries or facts occurring prior to the filing of your claim form with the PI Trust are eligible for recovery. All of these forms are attached to the Non-NAS PI TDP in the Plan Supplement, and will also be available on a website to be set up by the PI Trust. If you fail to complete and return your claim form by this deadline,[14] you will be deemed not to have "opted out" to commence your own lawsuit against the PI Trust in the tort system (as described later in this section), and will therefore be subject to the non-"opt out" provisions of the Non-NAS PI TDP described above, which provide that if you fail to complete and return the Non-NAS PI Claim Form by the deadline,[15] your personal injury claims will be Disallowed, you will not recover any money on them from the PI Trust, and you will be forever barred from pursuing your claims in any forum. If you choose to opt-out, **you do not need to fill out the sections of the claim form regarding supporting evidence of your claim**, but you will need to provide evidence to the court when you pursue your claim in the tort system.

You will be entitled to receive a recovery on your Non-NAS PI Channeled Claim only if you (or, if applicable, the decedent whose opioid use is the subject of your claim (the "**Decedent**")) can show that you (or the Decedent) used an opioid that was manufactured by Purdue Pharma or another Debtor. Furthermore, unless you (or the Decedent) were a minor when opioid usage started, you will be entitled to receive a recovery only if the opioid used was prescribed to the opioid user and was not, for example, obtained by unlawful means or by a prescription to another person. You will need to submit evidence to show that you satisfy these criteria.

The claims administrator for the PI Trust (the "**PI Claims Administrator**") will examine the evidence provided with each claim form to determine gross awards, which are expected to range from $3,500 to $48,000 before applicable PI Trust Deductions and Holdbacks, described below. The amount you receive will depend in part on which payment election you make on your supplemental claim form. You can choose between receiving either an "Easy Payment" of an estimated $3,500,[16] or a base-plus-level award that varies depending on the severity of your injury, as discussed in the next paragraph. Choosing the "Easy Payment" option will get you money sooner, but it means that you will be eligible to receive only a gross amount of $3,500 and no more.

---

[11] Subject to exceptions set forth in the Non-NAS PI TDP.

[12] Subject to extensions which the PI Trust claims administrator may give in his or her discretion.

[13] Within 60 days after the Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if a Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, the Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[14] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[15] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[16] This is an estimation of the Ad Hoc Group of Individual Victims based on the PI Claims filed and the money available for distribution and is subject to adjustment.

NAS1699

Base-plus-level awards range in value depending on (i) your ability to show that the opioid use disorder began with a Purdue opioid, (ii) the length of use of Purdue opioids, and (iii) the severity of the injuries that gave rise to your claim (e.g., death versus addiction).  If you elect the base-plus-level award, then the PI Trust will review your claim and assign it "points" based on the nature of your claim.  The more points assigned to your claim, the more money you are entitled to receive.  The number of points that will be assigned to each Non-NAS PI Claim is set forth in the grid below:

|  | Tier 1A<br><br>Addiction from Purdue Opioids | Tier 1B<br><br>Death on OxyContin | Tier 2<br><br>Purdue Opioids Use ≥6 months | Tier 3<br><br>No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 months |
|---|---|---|---|---|
| BASE PAYMENT | 20,000 pts[17] | 40,000 pts | 6,000 pts | $3,500 |
| LEVELS (one of the below)[18] |  |  |  |  |
| A | 10,000 pts<br><br>OUD Diagnosis, OR MAT for >6 months | N/A | 3,000 pts<br><br>OUD Diagnosis, OR MAT for >6 months | N/A |
| B | 20,000 pts<br><br>Death from an Opioid | N/A | 20,000 pts<br><br>Death from an Opioid | N/A |

These "points" will be converted to dollars to determine your distribution. The Ad Hoc Group of Individual Victims estimates that each point will be worth between $0.80 and $1.20 of gross award value, but the exact number is not yet known at this time, because it will depend on how many Non-NAS PI Claims are ultimately eligible for distribution and how many claimants choose the "Easy Payment" option.

---

[17] Non-NAS PI Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[18] If a Non-NAS PI Claimant does not qualify for an additional Level Award, he/she does not get additional money above the Base Payment. A Non-NAS PI Claimant can only qualify for one, but not multiple, Level Awards.

NAS1700

Your distribution amount under the Non-NAS PI TDP is a gross award subject to the following "**PI Trust Deductions and Holdbacks**": (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts held back under the Lien Resolution Program (the "**LRP Agreement**") (discussed below) to settle liens held by private insurance companies against you or your award, if any, (C) your equitable portion of amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare, or VA against you or your award, if any, (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[19]

The LRP Agreement is a document under which certain private "third-party payors" or "TPPs," have agreed to a consensual resolution of their liens against the recoveries of PI Claimants with respect to PI Channeled Claims that are liquidated under the liquidation provisions of the PI TDP. This consensual resolution includes voluntary reductions by those TPPs of their liens to 30% of the distribution or less or a cap on their recovery, plus a waiver of all liens against distribution amounts of $3,500 or less. That means that PI Claimants who choose the "Easy Payment" option will likely not have to pay any portion of their distribution to private TPPs, although they may still have to pay a portion to state agencies or certain tribal programs. Additional information about the NAS PI TDP may be found in Article III.T.

In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

***NAS PI Channeled Claims Liquidated Pursuant to the NAS PI TDP***. In order to be eligible to recover money on your NAS PI Channeled Claim under the NAS PI TDP, you must have already filed a Proof of Claim in the Chapter 11 Cases asserting such NAS PI Channeled Claim against one or more Debtors no later than April 23, 2021,[20] and your claim must have arisen prior to Petition Date. Further, you must complete, sign and submit *an additional* signed claim form **by the date that is 150 days[21] after such claim form is disseminated to NAS PI Claimants**,[22] describing your injury, electing your payment option, and attaching evidence in support of your claim, as well as two HIPAA consent forms and, if applicable, an heirship declaration. Only NAS PI Claims based on injuries or facts occurring prior to the filing of such claim form with the PI Trust are eligible for recovery. All of these forms will be attached to the NAS PI TDP in the Plan Supplement, and will also be available on a website to be set up by the PI Trust. If you fail to complete and return your claim form by this deadline,[23] you will be deemed not to have "opted out" to commence your own lawsuit against the PI Trust in the tort

---

[19] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[20] Subject to exceptions set forth in the NAS PI TDP.

[21] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[22] Within 60 days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if an NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, the NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[23] Subject to extensions which the PI Trust claims administrator may give in his discretion.

NAS1701

system (as described later in this section), and will therefore be subject to the non-"opt out" provisions of the NAS PI TDP described above, which provide that if you fail to complete and return the NAS PI Claim Form by the deadline,[24] your personal injury claims will be Disallowed, you will not recover any money on them from the PI Trust, and you will be forever barred from pursuing your claims in any forum.  If you choose to opt-out, **you do not need to fill out the sections of the claim form regarding supporting evidence of your claim**, but you will need to provide evidence to the court when you pursue your claim in the tort system.

In order to recover, the NAS PI Claim must be held by an NAS Child, which is a natural person who has been diagnosed by a licensed medical provider with a medical, physical, cognitive or emotional condition resulting from such natural person's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as neonatal abstinence syndrome.  The diagnosis can be made by any licensed medical professional, specifically including physicians, nurses, physician assistants, mental health counselor or therapist, or professional at a rehabilitation center.

You will be required to submit evidence showing that the NAS Child who is the subject of the claim was diagnosed by a licensed medical provider with a medical, physical, cognitive or emotional condition resulting from such natural person's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as neonatal abstinence syndrome ("**NAS**").  This evidence must include one of the following: (i) a document from a licensed medical provider diagnosing the NAS Child with a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as NAS; (ii) a document from a licensed medical provider affirming that the NAS Child had Neonatal Opioid Withdrawal Syndrome ("NOWS"); or (iii) other medical records evidencing that the NAS Child had an NAS diagnosis, post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

The PI Claims Administrator will examine the evidence provided with each claim form to determine which claims are eligible for recovery.  Claims that are eligible for recovery are expected to be allocated approximately a gross $7,000 per claimant, before deductions and holdbacks for costs, fees and expenses (discussed next).

Your distribution amount under the NAS PI TDP is a gross award subject to the PI Trust Deductions and Holdbacks, which are as follows: (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts held back under the LRP Agreement (discussed below) to settle liens held by private insurance companies against you or your award, if any, (C) your equitable portion of amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare, or VA against you or your award, if any, (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc

---

[24] Subject to extensions which the PI Trust claims administrator may give in his discretion.

NAS1702

Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[25]

The LRP Agreement is a document under which certain private "third-party payors" or "TPPs," have agreed to a consensual resolution of their liens against the recoveries of PI Claimants with respect to PI Channeled Claims that are liquidated under the liquidation provisions of the PI TDP. This consensual resolution includes voluntary reductions by those TPPs of their liens to 30% of the distribution or less or a cap on their recovery, plus a waiver of all liens against distribution amounts of $3,500 or less. Additional information about the Non-NAS PI TDP may be found in Article III.T.

In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

**PI Claimants Who Elect to Liquidate the Amount of Their PI Claims in the Tort System**. This discussion applies to you whether your claim is an NAS claim or a Non-NAS Claim. As an alternative to liquidating your PI Channeled Claims pursuant to the streamlined procedures set forth in the PI TDP, you may elect to "opt out" and instead commence your own lawsuit against the PI Trust in the tort system. If you choose to "opt out," you will be allowed to file in court your PI Claim and your PI Claim only; you will not be allowed to commence lawsuits with respect to any associated PI Channeled Claims (e.g., claims against the Sackler Families) that do not satisfy the definition of a "PI Claim" against a Debtor.

If you choose to "opt out," you must have *already* filed a Proof of Claim in the Chapter 11 Cases[26] asserting your PI Claim no later than that the General Bar Date of July 30, 2020. Further, you must complete, sign and submit an *additional* signed claim form **no later than (i) 90 days[27] after the dissemination of the Non-NAS PI Claim Form or (ii) 150 days[28] after the dissemination of the NAS PI Claim Form**, in each case indicating your election to "opt out." If you choose to opt-out, **you do not need to fill out the sections of the claim form regarding supporting evidence of your claim**, but you will need to provide evidence to the court when you pursue your claim in the tort system. These claim forms are attached to the NAS PI TDP and the Non-NAS PI TDP, as applicable, in the Plan Supplement, and will also be available on a website to be set up by the PI Trust. If you fail to complete and return your claim form by this deadline, you will be deemed not to have "opted out," and will therefore be subject to the non-"opt out" provisions of the PI TDP described above, which provide that if you fail to complete and return the NAS PI Claim Form by the deadline,[29] your personal injury claims will be Disallowed, you will not recover any money on them from the PI Trust, and you will be forever barred from pursuing your claims in any forum.

---

[25] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[26] Subject to exceptions set forth in the PI TDP.

[27] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[28] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[29] Subject to extensions which the PI Trust claims administrator may give in his discretion.

**NAS1703**

An election to liquidate your PI Claim in the tort system instead of under the PI TDP cannot be reversed. If you submit your claim form to the PI Trust electing to "opt out" of PI TDP liquidation, your only option to pursue your PI Claim will be to file a lawsuit in court against the PI Trust to prove your PI Claim under applicable law. You will be forever barred from accessing the streamlined and expedited liquidation processes under the PI TDP (including, in the case of Non-NAS PI Claimants, the right to choose to receive the quick "Easy Payment" of $3,500, and the right to the expedited appeal process set forth in Exhibit C of the Non-NAS PI TDP).

*Your PI Channeled Claim(s) will be channeled to the PI Trust under the Plan regardless of whether you choose to "opt out." Accordingly, <u>if you "opt out" of liquidation under the PI TDP but nonetheless wish to pursue recovery on account of your PI Claim, you will be filing a lawsuit asserting your PI Claim in the tort system against the PI Trust, and not against the Debtors or any members of the Sackler Families.</u> The Plan releases the Debtors and the members of the Sackler Families from any and all liability on your PI Channeled Claims (including your PI Claim). <u>Neither the Debtors nor members of the Sackler Families will defend the litigation of your PI Claim in the tort system.</u> Instead, the responsibility, costs and expenses of defending against your PI Claim will fall solely on the PI Trust, and will reduce the already-limited amount of money available to compensate other Purdue personal individual victims.*

*The Plan fixes a set amount of money available to compensate all PI Claimants for their opioid-related personal injuries. This number will not be increased, regardless of how many PI Claimants "opt out" of the liquidation provisions of the PI TDP. On average, it costs more money to resolve claims in the tort system than it does to resolve them under the streamlined liquidation procedures of PI TDP. Therefore, the more PI Claimants who "opt out," the less money will be available for the personal injury victims as a group. If you "opt out," your final judgment will still be paid out at a fractional rate specified under the PI TDP (and, if it is a very large judgment, even further reduced), which fractional rate is subject to adjustment over time. Moreover, if, even after reduction of your final judgment pursuant to the opt-out procedures, you ultimately receive more on your PI Claim than you would have received had you liquidated your PI Claim under the PI TDP, then your higher award will proportionally reduce the awards of the other similarly situated qualified personal injury victims of Purdue.*

The PI TDP are designed to be "user friendly" for all PI Claimants, including those who are not lawyers or businesspeople. It offers simplified procedures for you to submit required information and, if eligible, receive money. In contrast, you would likely need to hire a lawyer to file and prosecute your PI Claim in the tort system.

The liquidation process under the PI TDP is also designed to get you a recovery on your PI Claim relatively quickly and with minimal costs. While payments for large awards under the PI TDP may be paid in installments over time, litigating your PI Claim in court can take even longer, and can include large costs. Personal injury claim litigation can take many years and involve significant attorney fees that can be deducted from your recovery, including costs of your individual attorneys' fees and any expert witnesses needed to prove your PI Claim.

13

NAS1704

The liquidation process under the PI TDP requires you to submit minimal evidence to prove your claim. For example, for Non-NAS PI Claimants, evidence includes things like prescription records or an affidavit swearing that you took certain Purdue opioid products. For NAS PI Claimants, evidence includes things like a note from your doctor saying that you have NAS. By contrast, the tort system will require you to prove every legal "element" of your PI Claim, such as causation, "duties" owed to you by the tortfeasor, and injury. Thus, a PI Claimant without sufficient evidence to recover under the liquidation process under the PI TDP is unlikely to meet the higher burden of proof required to recover in court.

Further, the PI Trust will be entitled to assert all possible defenses against your PI Claim that the Debtors would have been able to assert, which may include contributory negligence and statutes of limitation. Some defenses may permit a court to dismiss your lawsuit as a matter of law, before the court even reaches the specific facts of your case.

If you do succeed in proving your PI Claim in court, the judgment may still be subject to appeal before it can become a final order. Appeals add additional time and expense to the litigation process, further reducing the amount of money you can ultimately receive.

Following the resolution of any appeals, any final judgment in respect of a PI Claim liquidated in the tort system is subject to further reduction and limitation before it can be paid from the PI Trust.[30]

For Non-NAS PI Claims, the Ad Hoc Group of Individual Victims estimates that, due to the limited amount of funds to be distributed to the PI Trust Non-NAS Fund from the Debtors' bankruptcy estates, Non-NAS PI Claims liquidated under the Non-NAS PI TDP will receive approximately 2.0% of the face amount of the judgment that they would have obtained if their claim were litigated in the tort system. PI Claimants who "opt out" and liquidate their PI Claims in the tort system will similarly receive approximately 2.0% of the amount of any final judgment, which number is subject to adjustment over time. This means that if your final judgment in the tort system is for $100,000, you would be entitled to receive at most $2,000 from the PI Trust (prior to fees and expenses). The amount that you may receive on account of your final judgment is also subject to a maximum cap that is three times the maximum amount you could recover under the liquidation provisions of the PI TDP, a multiple that acknowledges the extra costs you will have to incur to pursue your claim in the tort system.

For NAS PI Claims, the NAS Committee estimates that, due to the limited amount of funds to be distributed to the PI Trust NAS Fund from the Debtors' bankruptcy estates, NAS PI Claims liquidated under the NAS PI TDP will be paid by the PI Trust a fraction of the amount they would be awarded by a court if such PI Claims were litigated in the tort system. Final judgments of PI Claimants who "opt out" and liquidated their PI Claims in the tort system shall be reduced a similar percentage that will be set pursuant to the NAS PI TDP, which number will be subject to adjustment over time. Any final judgment in the tort system will also subject to a

---

[30] Any multiple, exemplary, statutory-enhanced and/or punitive damages, attorneys' fees and costs, and interest, awarded by a court as part of a final judgment will be excluded for purposes of calculating any payments to be made by the PI Trust in respect of such final judgment.

NAS1705

maximum cap that is three times the maximum amount that could be recovered under the liquidation provisions of the PI TDP.

Once the cap or percentage reduction is applied, you may discover that you are receiving less from the PI Trust on account of a final judgment obtained in the tort system than you would have received had you chosen to liquidate your PI Claim under the PI TDP. This is a risk that you bear by choosing to "opt out" of liquidation under the PI TDP; you will not be allowed to change your mind at this point and opt back in to the PI TDP.

Finally, PI Claimants who liquidate their PI Claims under the PI TDP benefit from the LRP Agreement, under which various private health insurance companies have agreed to reduce or limit liens they may hold against certain PI Claimants' recoveries on their PI Claims. PI Claimants who instead pursue their PI Claims in the tort system do not benefit from such agreement, which means that your health insurance company could take a larger portion of whatever recovery you receive.

***PI Claimants Who are Minors***. For PI Claimants who are minors under applicable law, an authorized adult will be required to act on behalf of the PI Claimant to make elections and submissions with respect to the PI Trust. This authorized adult could be the minor's custodial parent, a legal guardian, or another adult custodial caretaker. ***The PI Trust will hold any amounts owed to a minor PI Claimant in trust until the minor PI Claimant becomes a legal adult under applicable state law***, unless otherwise directed by a court of competent jurisdiction.

***Future PI Channeled Claims and the PI Futures Trust***. The Debtors do not believe that the pre-petition conduct of the Debtors and/or the Shareholder Released Parties can give rise to any Future PI Channeled Claims. The Debtors intend to seek findings to the effect that it is not possible for Future PI Channeled Claims to come into existence under the facts and circumstances presented in these Chapter 11 Cases. However, out of an abundance of caution, a PI Futures Trust will be established and funded with $5 million. Future PI Channeled Claims (to the extent any exist) will be channeled to the PI Futures Trust and may apply for distributions solely therefrom—and to no other Creditor Trust—pursuant to PI Futures Trust's trust distribution procedures. Although the trust distribution procedures for the PI Futures Trust will be substantially similar to the PI TDPs for PI Claimants, the PI Futures Trust and the PI Trust will be two separate and independent Creditor Trusts. **The PI Futures Trust will be the sole recourse of Holders of Future PI Channeled Claims as set forth in Section 5.7(d) of the Plan.** All amounts remaining in the PI Futures Trust upon the resolution of all Future PI Channeled Claims asserted by Holders of Future PI Channeled Claims on or before the sixth (6th) anniversary of the Effective Date shall be contributed pursuant to the Confirmation Order and in accordance with the PI Futures Trust Documents.

***Hospital Claims and the Hospital Trust***. The Hospital Trust is an abatement trust—all funds received from the Hospital Trust by any Holder of a Hospital Claim must be used for or applied to abatement purposes. Holders of claims against the Debtors that are hospitals, including both acute-care hospitals and other treatment providers, will only be entitled to receive a recovery (if eligible under the applicable Trust Distribution Procedures) from the Hospital Trust. For a Holder of a Hospital Claim to be eligible to receive a payment from the Hospital Trust, they must *either* (1) have filed a Proof of Claim prior to July 30, 2020 *or* (2) be (x) a non-

15

**NAS1706**

federal acute care hospital as defined by CMS or (y) a non-federal hospital or hospital district that is required by law to provide inpatient acute care and/or fund the provision of inpatient acute care, in each of cases (x) and (y) that is listed on the national registry of hospitals maintained by the American Hospital Directory®. After the Effective Date, the Hospital Trust will send a notice to each such holder of a Hospital Claim containing a Hospital abatement distribution form. **In order for a Holder of a Hospital Claim to receive any payment from the Hospital Trust, a Holder of a Hospital Claim <u>must</u> return the hospital abatement distribution form within forty-five (45) days of the deadline set forth on that notice, along with applicable evidence of their claim as described in the Hospital Trust Distribution Procedures.**

The Hospital Trustee will use the evidence provided by each eligible Holder of a Hospital Claim that timely submits a form to calculate the amounts of such Hospital's abatement distributions using a proprietary algorithm. That algorithm is based on unreimbursed charges incurred by the Hospital, and then applies a weighting formula where greater weight is given for higher units of morphine milligram equivalents dispensed in the Hospital's service area, a higher percentage of opioid-related patient population, more opioid-related unreimbursed charges and if a Holder of a Hospital Claim either timely filed a Proof of Claim or is a Safety Net Hospital under the CARES Act. The Hospital Trust will then pro-rate the re-weighted amounts based on the total amounts for all abatement distribution forms received from eligible Holders of Hospital Claims to determine each eligible Holder of a Hospital Claim's recovery. **Importantly, if you are a Holder of a Hospital Claim that receives a distribution from the Hospital Trust, you *must* use or apply those payments for authorized abatement purposes only, as set forth in further detail in the Hospital Trust Distribution Procedures and described in Article IIIS.1 below.**

***Third-Party Payor Claims and the TPP Trust.*** The TPP Trust is an abatement trust—all funds received from the TPP Trust by any Holder of a Third-Party Payor Claim must be used for or applied to abatement purposes. Holders of claims against the Debtors that are third-party payors will only be entitled to receive a recovery from the TPP Trust. For a Holder of a Third-Party Payor Claim to be eligible to receive a payment from the TPP Trust, they must have filed a Proof of Claim prior to July 30, 2020. After the Effective Date, the TPP Trust will send a notice to each such Holder of a Third-Party Payor Claim containing a TPP abatement claim form. **In order for a Holder of a Third-Party Payor Claim to receive a payment from the TPP Trust, such Holder of a Third-Party Payor Claim <u>must</u> return the TPP abatement claim form within forty-five (45) days of the deadline set forth on that notice, along with a calculation of their "Maximum Eligible Amount" which is based on their "Purdue-related Opioid Spend" as defined in the TPP Trust Distribution Procedures.**

The amount of the TPP Trust Assets available to make payments to holders of Third-Party Claims will be subject to certain deductions, including for the fees and expenses of administering the TPP Trust and the assessments to the Common Benefit Escrow (and, later, the Common Benefit Fund) of 5% of each Distribution made by the TPP Trust, paid pursuant to Section 5.8 of the Plan.

After reconciliation of claims, removal of duplicates, and other administrative analysis, the TPP Trustee will use the calculation of the Maximum Eligible Amounts provided by each eligible Holder of a Third-Party Payor Claim that timely submits a form to calculate the amounts

NAS1707

of such Holder's abatement distributions, pro-rated based on the total amounts for all abatement claim forms received to determine each eligible Holder's percentage recovery from the available funds remaining in the TPP Trust. The TPP Trust Distribution Procedures provide a mechanism for challenging such determinations, as set forth in further detail in Article IIIS.2. **Importantly, if you are a Holder of a Third-Party Payor Claim that receives a distribution from the TPP Trust, you must use or apply those payments for authorized abatement purposes only, as set forth in further detail in the TPP Trust Distribution Procedures and described in** Article IIIS.2. **below.**

*NAS Monitoring Trust and Grants.* Claims have been asserted against the Debtors relating to medical monitoring support, educational support, vocational support, familial support or similar related relief, and not for an alleged personal injury suffered by an NAS child. Such claims do not belong to an NAS child but instead are asserted by other parties on their behalf who provide medical monitoring support, educational support, vocational support, familial support or similar services to NAS children. All such claims are channeled to the NAS Monitoring Trust, and no claimant shall receive a direct recovery on account of those claims (although the Holders of NAS child claims may be entitled to a recovery from the PI Trust as described above). The NAS Monitoring Trust is an abatement trust, and all funds received from the NAS Monitoring Trust must be used for abatement, for legal fees and costs of administering the NAS Abatement Trust. The funds will not be distributed to NAS children or their guardians but shall instead be used to make grants to organizations that combat the effects of NAS. Specifically, pursuant to the terms of the NAS Monitoring Trust Documents, the NAS Monitoring Trust will make grants in the aggregate amount of (1) no less than 89% of such distributions (net of attorneys' fees, including funding of the Common Benefit Escrow and Common Benefit Fund) for the purpose of (x) preparing children with a history of NAS to be ready to enter school, (y) informing through evidence the Standard of Care for children ages birth through six years old affected by NAS, with priority given to those ages three through six or (z) enhancing the mother-child dyad of children affected by NAS and (2) up to 5% of such distributions (net of attorneys' fees, including funding of the Common Benefit Escrow and Common Benefit Fund) to research institutions to conduct and publish the results of research into approaches for helping children and families in instances of fetal opioid exposure, in each case as set forth in more detail in the NAS Monitoring Abatement Trust Documents and detailed below in Article IIIS.4, which includes the schedule for submission and review of grant proposals.

*Public Creditor Trusts.* In addition to the Private Creditor trusts described above, the settlement framework provides for the establishment of two public creditor trusts, which will receive the remainder of the approximately $5 billion in value to be provided for abatement. Specifically, residual value after satisfying other obligations under the Plan will be distributed through the National Opioid Abatement Trust ("**NOAT**") and the Tribe Trust,[31] on account of the Non-Federal Domestic Governmental Claims and Tribe Claims, respectively. All value distributed to NOAT and the Tribe Trust will be exclusively dedicated to programs designed to abate the opioid crisis and for no other purpose (other than to fund administration of the programs themselves and to pay fees and costs). A schedule of the distributions to be received by NOAT and the Tribe Trust is set forth below:

---

[31] The Tribe Trust refers to one or more trusts, limited liability companies or other Persons to be established in accordance with Section 5.7 of the Plan.

NAS1708

| Aggregate Amount Received | Allocation Between NOAT and the Tribe Trust | |
|---|---|---|
| | NOAT | Tribe Trust |
| $0 - $50 million | - | 100.0000% |
| $50 million – $1 billion | 100.0000% | - |
| $1 billion – $3 billion | 97.0650% | 2.9350% |
| $3 billion – $5 billion | 97.1875% | 2.8125% |
| $5+ billion | 97.0000% | 3.0000% |

*National Opioid Abatement Trust*.  The funds distributed to the NOAT under the Plan will be allocated to each state for use within that state based on a detailed mediation and settlement framework for the NOAT that resulted in a detailed methodology for determining the percentage of abatement funds allocated to each state, which is based on, among other things, prescription opioid sales, the prevalence of pain reliever use disorder, overdose deaths, population and other factors.  That methodology resulted in the state-by-state percentage allocations set forth in the table in Article III.S.5.  Within-state allocations of those funds to Local Governments and other non-Federal Domestic Governmental Entities within each state will be determined either by a default allocation mechanic or a "Statewide Abatement Agreement" if the required level of support can be reached within the applicable state no later than two weeks following the Effective Date.[32]  Under the default allocation mechanic, the within-state allocations of funds for abatement purposes shall be apportioned by region, and the specific abatement uses of the funds shall be determined by the State.  Each such State shall identify its mechanism (whether it be a council, board, committee, commission, taskforce, or other efficient and transparent structure) for consulting with its respective Local Governments (as defined in the NOAT TDPs) (the "**Government Participation Mechanism**" or "**GPM**") in a notice filed with the Bankruptcy Court identifying what **GPM** has been formed and describing the participation of its Local Governments in connection therewith.  These notices are reviewable by the Bankruptcy Court upon the motion of any Local Government in that State asserting that no **GPM** has been formed.  Notwithstanding the foregoing, a State and its Local Governments may instead agree to utilize the model developed by Christopher J. Ruhm, Professor of Public Policy and Economics at the University of Virginia.  Further detail on both inter-state allocation models and intra-state allocation mechanisms is described in Article III.S.5 and detailed in the NOAT TDPs.  The core abatement purposes for which each state may allocate abatement funds are described on Schedules A and B to the NOAT TDPs, with priority given to the "core strategies" set forth on Schedule A.

---

[32] The allocation of Public Funds within a Territory or the District of Columbia will be determined by its local legislative body within one year of the Effective Date, unless that legislative body is not in session, in which case, the allocation of Public Funds shall be distributed pursuant to the direction of the Territory's or District of Columbia's executive, in consultation – to the extent applicable – with its Government Participation Mechanism.

NAS1709

*Tribe Trust.* The final abatement trust is the Tribe Trust. Distributions to the Tribes will be required to be used exclusively for abatement purposes and permitted administrative costs, and will be made through one or more Tribe Trust entities that will abide by the Tribe Trust Distribution Procedures. The allocation of distributions among Tribes will be consistent with the Tribal Allocation Matrix set forth on **Schedule E** and the Tribal Allocation Percentages set forth on **Schedule C** to the Tribe Trust Distribution Procedures, which will be included as part of the Tribe Trust Documents filed with the Plan Supplement. The Tribes will use the tribal allocation of Abatement Funds for programs on the approved list of abatement strategies (see **Schedule B** to the Tribe Trust Distribution Procedures) and also for culturally appropriate activities, practices, teachings or ceremonies that are, in the judgment of a tribe or tribal health organization, aimed at or supportive of remediation and abatement of the opioid crisis within a tribal community. A list of representative examples of such culturally appropriate abatement strategies, practices, and programs is attached to the Tribe Trust Distribution Procedures as **Schedule D** (the "**Tribal Abatement Strategies**"). The separate allocation of abatement funding and illustrative list of Tribal Abatement Strategies recognizes that American Indian and Alaska Native Tribes and the communities they serve possess unique cultural histories, practices, wisdom, and needs that are highly relevant to the health and well-being of American Indian and Alaska Native people and that may play an important role in both individual and public health efforts and responses in Native communities.

The Plan also provides for payment of attorneys' contingency fees from the Creditor Trusts to be established under the Plan. Under Section 5.8 of the Plan, various attorney fee funds will be established and funded with specified percentages of distributions made under the Plan by the Creditor Trusts. Specifically (i) a fund for the payment of attorneys' fees and costs of Holders of Non-Federal Domestic Governmental Channeled Claims (other than States) and Holders of Tribe Channeled Claims (including any ad hoc group consisting of any of the foregoing), other than fees and costs paid pursuant to the AHC Reimbursement Agreement Assumption Order and MSGE Group Reimbursement Order, will be funded with 5.5% of each Public Creditor Trust Distribution, up to a maximum of $275 million in the aggregate, (ii) a fund for the payment of attorneys' fees and costs of the States (including any ad hoc group thereof), other than fees and costs paid pursuant to the AHC Reimbursement Agreement Assumption Order, will be funded with 4.5% of distributions by the public-creditor trusts, up to a maximum of $225 million in the aggregate, (iii) the Common Benefit Escrow will be established and funded by assessments equal to 5% of each Distribution made by the Private Creditor Trust and 5% of the Truth Initiative Contribution, which amounts will be held in escrow until an order is entered by the MDL Court establishing a Common Benefit Fund, at which time the funds held by the Common Benefit Escrow will be transferred to and distributed in accordance with the order establishing the Common Benefit Fund, (iv) a fund for the payment of attorneys' fees and costs of the Ad Hoc Group of Hospitals with respect to Hospital Channeled Claims shall be funded with 20% of each Abatement Distribution made by the Hospital Trust to Holders of Hospital Channeled Claims that have not retained (or are not part of an ad hoc group that has retained), on or before the General Bar Date as reflected in a timely filed Proof of Claim or representation to the Hospital Trust in accordance with the Hospital TDP, separate counsel through an individual contingency fee arrangement less the amount of such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund, (v) a fund for the payment of attorneys' fees and costs of the NAS Committee with respect to Holders of NAS Monitoring Channeled Claims shall be funded with 20% of each Distribution made by the NAS Monitoring Trust less the amount of

**NAS1710**

such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund and (vi) the attorneys' fees and costs of the Ratepayer Mediation Participants shall be paid from (i) 20% of the Truth Initiative Contribution less (ii) the amount of the Truth Initiative Contribution payable to the Common Benefit Escrow.

To the extent a Holder of a Hospital Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim, an NAS PI Channeled Claim or a Non-NAS PI Channeled Claim (or any ad hoc group consisting of Holders of any of the foregoing) has retained counsel through a contingency fee arrangement, the full amount payable under Section 5.8(c) of the Plan shall be deducted from any contingency fees owed to such contingency counsel. However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding 40% of the amount payable under Section 5.8(c) of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount **shall not reduce the contingency fee amounts payable to such counsel**.

The payment of the fees and costs from the applicable Creditor Trusts described in detail in Section 5.8 of the Plan was an integral part of the overall intercreditor settlements and is inextricably intertwined with and an integral part of all other intercreditor settlements embodied in the Plan, including the allocations to the Private Creditor Trusts, and use of distributions for abatement purposes agreed as part of Phase I of the mediation. The approval and payment of such fees in accordance with Section 5.8 of the Plan is an important condition to confirmation and material to creditors' votes with respect to the Plan. To the extent that it is determined that any payments contemplated by Section 5.8 of the Plan are subject to 1129(a)(4) as payments by the Debtors for services or for costs and expenses in or in connection with these Chapter 11 Cases or in connection with this Plan and incident to the Chapter 11 Cases, such payments, together with the process for disbursing such fees and costs shall be subject to Court approval in connection with confirmation. The process by which individual payments from each cost and fee fund will be requested, approved and paid by the applicable Creditor Trust will be disclosed prior to or in connection with confirmation.

Each Abatement Trust shall (i) monitor the use of funds received by Abatement Distribution recipients in accordance with Authorized Abatement Purposes and (ii) prepare and deliver to the Master Disbursement Trust for publication annual reports on the disbursement, use and, to the extent feasible and cost-effective, efficacy of Abatement Distributions from such Abatement Trust and the compliance by Abatement Distribution recipients with the Authorized Abatement Purposes set forth in the applicable Abatement Trust Documents. There are also enforcement mechanisms under each Abatement Trust. Each Abatement Trust retains the right to seek return by legal means of any expenditures which fail to comply with the requirements of the applicable Creditor Trust TDP. The Trustee of each Abatement Trusts will have the authority to take any actions to ensure that each Abatement Trust complies with of the applicable TDP.

The NOAT Trustees shall have the power to take any and all actions that in the judgment of the Trustees are necessary or proper to fulfill the purposes of NOAT, including the requirement that 100% of the NOAT Funds distributed under the Chapter 11 Plan (and not otherwise dedicated to the attorneys' fee fund set forth in Section 4 herein) shall be used to abate

NAS1711

the opioid crisis in accordance with the terms hereof. The TPP Trust retains the right to seek return by legal means of any expenditures which fail to comply with the requirements of this TPP TDP. The Debtors believe that funding these dedicated abatement funds, while allocating significant value for distribution to holders of PI Claims, is in the best interest of creditors and of the American public.

While the Mediation was ongoing, the Debtors also reached a settlement with the United States. On November 18, 2020, the Bankruptcy Court approved PPLP entering into (i) a plea agreement (the "**Plea Agreement**") by and among PPLP and the United States,[33] and (ii) a civil settlement agreement by and between PPLP and the United States (the "**Civil Settlement**," and together with the Plea Agreement, the "**DOJ Resolution**"). On November 24, 2020, in accordance with the terms of the DOJ Resolution, PPLP pled guilty in the United States District Court for the District of New Jersey (the "**New Jersey District Court**") to an information charging it with three felony offenses: one count charging a dual-object conspiracy to defraud the United States and to violate the Food, Drug, and Cosmetic Act, and two counts charging conspiracy to violate the Federal Anti-Kickback Statute. Consistent with the terms of the Plea Agreement, the New Jersey District Court's consideration of the Plea Agreement has been deferred to the sentencing hearing, which will occur following confirmation of the Debtors' Plan. If the Plea Agreement is accepted by the New Jersey District Court at the sentencing hearing, the DOJ Resolution will fully resolve the United States' civil and criminal investigations into the Debtors' past practices related to the production, sale, marketing and distribution of opioid products. Pursuant to the Plea Agreement, among other things, the Debtors and the United States agreed to a criminal forfeiture judgment in the amount of $2 billion (the "**Forfeiture Judgment**") that will be entered after confirmation of the Chapter 11 Plan and upon the New Jersey District Court's acceptance of the Plea Agreement, and will be deemed to have the status of an allowed superpriority administrative expense claim against PPLP.

Critically, the United States further agreed to provide a credit offsetting the Forfeiture Judgment (the "**Forfeiture Judgment Credit**") of up to $1.775 billion for value distributed or otherwise conferred by Purdue Pharma under the Plan in respect of claims asserted by state, tribal, or local government entities, *provided* that the Plan provides for the emergence of a public benefit company (or entity with a similar mission) and certain other terms and conditions as described in more detail in the Plea Agreement. The Forfeiture Judgment Credit therefore helps maximize the amount of value that can be dedicated to abatement purposes. Distribution of the value from the Debtors' Estates, which is estimated at more than $4 billion, to NOAT and the Tribe Trust to fund abatement programs under the Plan will satisfy the first primary requirement to realize the Forfeiture Judgment Credit. The transfer of the Debtors' business to NewCo, which is described in more detail below, will satisfy the second primary requirement. Accordingly, the Plan contemplates that the Debtors will be able to utilize the full amount of the Forfeiture Judgment Credit. *See* Article III.V for a further description of the DOJ Resolution.

Prior to and continuing during and after the second phase of Mediation, which primarily concerned causes of action against the Sackler Families, the Special Committee of the Debtors'

---

[33] Acting through the United States Attorney's Office for the District of New Jersey (the "**NJ USAO**"), the United States Attorney's Office for the District of Vermont ("**VT USAO**"), and the United States Department of Justice, Civil Division, Consumer Protection Branch.

NAS1712

Board of Directors, with the advice of legal and financial advisors, conducted a searching and exacting review of the claims of the Debtors and their estates against the Sackler Families and related entities (*see* Article III.E.2 below). The purpose of this comprehensive investigation was to enable the Debtors to continue to negotiate the terms of any final settlement with the Sackler Families and to determine whether proposed settlement terms would fall within the range of reasonableness and would satisfy the standards for approval of settlements in bankruptcy cases, including weighing the value of potential estate claims, the possibility of success on those claims (including the strength of any defenses), the need for protracted litigation with its attendant expense, uncertainty, inconvenience, and delay, and the challenges of collecting on a potential judgment, among other things, against the settlement's immediate and future benefits.

In the second phase of Mediation, the Debtors, the Creditors' Committee, the AHC, the MSGE and the NCSG negotiated with representatives of the Sackler Families regarding a potential resolution of the causes of action against the Sackler Families. These efforts resulted in material improvements to the terms of the initial Settlement Framework. Specifically, the amount that the Sackler Families will be required to pay in the aggregate has increased from $3 billion over seven years under the initial Settlement Framework to $4.5 billion over nine years (or ten years if certain amounts are paid ahead of schedule in the first six years), consisting of $4.275 billion that will be paid under the Plan and $225 million that has been paid by the Sackler Families to satisfy their civil settlement with the United States Department of Justice. The principal consideration for such payments required under the Plan are the release and injunction provisions with respect to specified parties associated with the Sackler Families provided for under the Plan. *See* Article III.Z below and the term sheet setting forth the principal terms of the agreement with the Sackler Families attached hereto as **Appendix G** for a more detailed description of the terms of this settlement. The release and injunction provisions are described in detail in Articles I.E-F below. In summary, the Plan provides for the release of any actual or potential claims or causes of action against the Shareholder Released Parties (defined in Article I.F.3 below) relating to the Debtors (including claims in connection with Opioid-Related Activities) and an associated channeling injunction. If confirmed, the Plan will conclusively, absolutely, unconditionally, irrevocably, and forever release the Shareholder Released Parties from actual or potential claims or causes of action relating to the Debtors (including claims relating to OxyContin and other opioid medications) held by Releasing Parties, including Holders of Claims against or Interests in the Debtors, or by any other Person (including a Person who does not hold a Claim against or Interest in the Debtors), subject to the conditions set forth in the Plan, including Sections 10.7(a) and (b) of the Plan. In addition, while the Debtors do not believe that the pre-petition conduct of the Debtors and/or the Shareholder Released Parties can give rise to any Channeled Claim that accrues after the Effective Date, and the Debtors intend to seek findings to the effect that it is not possible for such claims to come into existence under the facts and circumstances presented in these cases, the Debtors realize that that fact, and indeed any finding of the Court, may not be enough to prevent such claims from being pursued. In order to protect the reorganization process, the Plan provides that any and all such claims will be subject to the Channeling Injunction. **This summary is a summary only; you are strongly encouraged to read the detailed discussion regarding the release and channeling injunction provisions in Articles I.E-F below.**

Finally, PPLP will not emerge from Chapter 11. Instead, as noted above, substantially all of the Debtors' non-cash assets (other than certain causes of action and insurance rights),

NAS1713

including direct or indirect interests in PPLP's subsidiaries as separate legal entities except as otherwise provided by or permitted in the Plan, and approximately $200 million of cash will be transferred directly or indirectly to NewCo, a newly formed limited liability company under Delaware law as described in more detail in Section 5.4 of the Plan.  NewCo will be indirectly owned by NOAT and the Tribe Trust, and the net value generated by NewCo will ultimately be directed to abating the opioid crisis.  There will also be a guarantee by NewCo in favor of the Master Disbursement Trust as described in more detail in Section 5.2 of the Plan.

NewCo will be required to be operated in a responsible and sustainable manner, balancing: (i) the interests of its stakeholders to fund and provide abatement of the opioid crisis; (ii) effective deployment of its assets to address the opioid crisis; and (iii) the interests of those materially affected by its conduct.  As a result, NewCo will operate in an accountable manner with nearly all of the net value that it generates ultimately being used to abate the opioid crisis. The NewCo Managers—who will effectively function as a board of directors for the new company—will initially be selected by the Ad Hoc Committee, and acceptable to the MSGE Group, in consultation with the Debtors and the Creditors' Committee, and pursuant to a selection process that is reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process.[34]  The initial NewCo Managers must all be disinterested and independent, and any replacement NewCo Managers will be selected by the disinterested managers of TopCo, a newly created company that will hold the equity interests and voting rights in NewCo.  Additional information about the high-level governance structure of NewCo and TopCo is set forth in the Amended NewCo/TopCo Governance Term Sheet attached hereto as **Appendix F**.  The NewCo and TopCo organizational documents and identity of the initial NewCo Managers and initial TopCo Managers will be included in the Plan Supplement.  The Sackler Families will have no role in the selection of the NewCo Managers or in any other aspect of NewCo's or TopCo's governance or operations.

In sum, the cornerstone of the Plan is the recognition by most of the core stakeholder groups that more resources are urgently needed to combat the opioid crisis afflicting the United States.  The Plan enjoys broad support from most of the Debtors' significant creditor groups. This level of consensus is extraordinary, given the nature of the litigation against the Defendant Debtors and the heterogeneous views on fundamental settlement and allocation issues held over time by the various supporting stakeholders.

---

[34]  If determined to be necessary by the Governmental Consent Parties, NewCo may retain one or more of the four independent directors on PPLP's Special Committee for a period of time to serve as interim directors of NewCo to allow for a period of transition and onboarding of NewCo Managers.

NAS1714

THE DEBTORS, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE AD HOC COMMITTEE, THE MSGE, THE NATIVE AMERICAN TRIBES GROUP, THE AD HOC GROUP OF INDIVIDUAL VICTIMS, THE AD HOC GROUP OF HOSPITALS, THE THIRD-PARTY PAYOR GROUP, THE RATEPAYER MEDIATION PARTICIPANTS AND THE NAS COMMITTEE (COLLECTIVELY, THE "**SUPPORTING CLAIMANTS**") SUPPORT CONFIRMATION OF THE PLAN AND URGE ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN TO VOTE TO ACCEPT THE PLAN. THE SUPPORTING CLAIMANTS BELIEVE THAT THE PLAN PROVIDES THE HIGHEST AND BEST RECOVERY FOR ALL CREDITORS AND IS IN THE BEST INTERESTS OF STAKEHOLDERS OF THE DEBTORS.

### *DOJ Statement Regarding Confirmation of the Plan*

The Department of Justice has confirmed that, subject to resolution of the treatment of the general unsecured Claims of the Federal Government and agreement on acceptable operating principles and covenants for NewCo, the Plan (i) is consistent with the civil settlement agreement by and between PPLP and the United States and the plea agreement by and among PPLP and the United States that collectively constitute the DOJ Resolution and (ii) satisfies the two conditions precedent to the realization of the full $1.775 billion Forfeiture Judgment Credit—because the Plan provides for (a) the emergence of a public benefit company (or entity with a similar mission), and (b) at least $1.775 billion of value to be distributed or otherwise conferred by Purdue Pharma under the Plan in respect of claims asserted by state, tribal, or local government entities.

### *Creditors' Committee Statement Regarding Confirmation of the Plan*

The Debtors have agreed to include in the Solicitation Package a letter from the Creditors' Committee supporting the Plan and providing greater detail regarding the Creditors' Committee's position with respect to the Plan. The views expressed in such letter are those of the Creditors' Committee. The Debtors do not endorse or agree with all of the statements made therein.

### C. Summary of Classification and Treatment of Claims and Interests in the Debtors

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only, and constitutes a separate chapter 11 plan of reorganization for each Debtor. The Plan groups the Debtors together solely for purposes of describing treatment under the Plan, confirmation of the Plan and making distributions ("**Plan Distributions**") in respect of Claims against and/or Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal entity, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal entities, nor cause the transfer of any assets or the assumption of any liabilities; and, except as otherwise provided by or permitted in the Plan, all Debtors shall continue to exist as separate legal entities.

NAS1715

Over 614,000 Proofs of Claim were filed in these Chapter 11 Cases by the July 30, 2020 General Bar Date. More than 550,000 of those Proofs of Claim, approximately 90% of the total, did not state a claim amount. The approximately 10% of the Proofs of Claim that did state an amount asserted, in the aggregate, claims of over $140 trillion. Even if the single proof of claim asserting $100 trillion in damages is excluded, the approximately 10% of Proofs of Claim that state claim amounts assert, in the aggregate, claims of over $40 trillion. For comparison, the gross domestic product of the United States for 2020 is estimated at approximately $20.93 trillion,[35] and the gross domestic product of the entire world for 2019 is estimated at approximately $87.80 trillion.[36]

The vast majority of the filed Proofs of Claim assert unsecured opioid litigation claims, including the claims in the following classes: Non-Federal Domestic Governmental Claims (Class 4); Tribe Claims (Class 5); Hospital Claims (Class 6); Third-Party Payor Claims (Class 7); Ratepayer Claims (Class 8); NAS Monitoring Claims (Class 9); and PI Claims (Classes 10(a) and 10(b)). Many of the opioid litigation claims against the Debtors are based upon novel or untested legal theories. In addition to the legal uncertainties, the value of any opioid litigation claim will depend greatly on the facts and circumstances of the claim, and a number of highly particularized judgments about the quantum of economic and non-economic damages that the claimant has incurred and that are compensable under applicable law. The information necessary to determine these amounts is also generally not available from the Proofs of Claim, and, in litigation, would be learned through fact and expert discovery. Any estimate of the aggregate value of opioid litigation claims, and any estimate of the aggregate percentage recovery of a class of opioid litigation claims, would be so uncertain as not to provide claimants with information useful to make judgments about the proposed Plan.

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. For a summary of the treatment of each Class of Claims and Interests, *see* the description below and "Summary of the Plan" in Article IV.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 1 | Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Federal Government Unsecured Claims | Impaired | Yes |

---

[35] Gross Domestic Product, Fourth Quarter and Year 2020 (Second Estimate), BEA 21-06, U.S. Department of Commerce, Bureau of Economic Analysis (Feb. 25, 2021).
[36] GDP (current US$) (NY.GDP.MKTP.CD), World Bank (Feb. 28, 2021).

NAS1716

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 4 | Non-Federal Domestic Governmental Claims | Impaired | Yes |
| Class 5 | Tribe Claims | Impaired | Yes |
| Class 6 | Hospital Claims | Impaired | Yes |
| Class 7 | Third-Party Payor Claims | Impaired | Yes |
| Class 8 | Ratepayer Claims | Impaired | Yes |
| Class 9 | NAS Monitoring Claims | Impaired | Yes |
| Class 10(a) | NAS PI Claims | Impaired | Yes |
| Class 10(b) | Non-NAS PI Claims | Impaired | Yes |
| Class 11(a) | Avrio General Unsecured Claims | Unimpaired[37] | No (Presumed to Accept) |
| Class 11(b) | Adlon General Unsecured Claims | Unimpaired[38] | No (Presumed to Accept) |
| Class 11(c) | Other General Unsecured Claims | Impaired | Yes |
| Class 12 | Intercompany Claims | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |
| Class 13 | Shareholder Claims | Impaired | No (Deemed to Reject) |

---

[37] As discussed in the Liquidation Analysis (as defined below), the Debtors believe that the Holders of Avrio General Unsecured Claims would be paid in full in a hypothetical chapter 7 liquidation. Accordingly, the Plan provides that Holders of Avrio General Unsecured Claims will be paid in full under the Plan and are unimpaired.

[38] As discussed in the Liquidation Analysis (as defined below), the Debtors believe that the Holders of Adlon General Unsecured Claims would be paid in full in a hypothetical chapter 7 liquidation. Accordingly, the Plan provides that Holders of Adlon General Unsecured Claims will be paid in full under the Plan and are unimpaired.

NAS1717

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|-------|---------------------------|------------|------------------|
| Class 14 | Co-Defendant Claims | Impaired | No (Deemed to Reject) |
| Class 15 | Other Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 16 | PPLP Interests | Impaired | No (Deemed to Reject) |
| Class 17 | PPI Interests | Impaired | No (Deemed to Reject) |
| Class 18 | Intercompany Interests | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

For the reasons described above, a traditional recovery percentage for each impaired Class is not provided. The number of claims in and aggregate treatment provided to such Classes is summarized below. This summary does not take into account the timing of such distributions or other important factors and does not describe procedures for making distributions to individual claimants, which are discussed elsewhere in this Disclosure Statement.

With respect to the treatment of Other General Unsecured Claims (Class 11(c)), the Debtors estimate that, following completion of Claims litigation and related matters, the Other General Unsecured Claim Cash, which is reserved for distribution to Holders of Allowed Other General Unsecured Claims exclusively, will likely exceed the aggregate amount of Allowed Other General Unsecured Claims. This estimate is based on certain assumptions based on a variety of factors. Should these underlying assumptions prove incorrect, the actual Allowed Other General Unsecured Claims may differ from the Debtors' estimates, and such differences could be material. Because distributions to Holders of Other General Unsecured Claims are linked to the value of Allowed Other General Unsecured Claims, any material increase in the amount of Allowed Other General Unsecured Claims in excess of the Other General Unsecured Claim Cash would materially reduce the recovery to Holders of Other General Unsecured Claims under the Plan.

NAS1718

This summary is qualified in its entirety by the more detailed description provided in the "Summary of the Plan" in Article IV, which sets forth in detail the treatment for certain Classes and the procedures by which the aggregate value provided for a certain Class will be distributed on account of claims in that Class.

| Class | Type of Claim or Interest | Approximate Number of Timely Filed Proofs of Claim | Aggregate Treatment |
|---|---|---|---|
| Class 3 | Federal Government Unsecured Claims | 6 | The United States shall receive (i) the Initial Federal Government Distribution and (ii) the MDT Federal Government Claim, which collectively total $50 million in payment obligations. |
| Class 4 | Non-Federal Domestic Governmental Claims | 7,600 | Approximately $4.0 billion in estimated cash distributions to NOAT over time (excluding potential proceeds of insurance claims and any release of restricted cash) |
| Class 5 | Tribe Claims | 400 | Approximately $140 million in estimated cash distributions to the Tribe Trust over time (excluding potential proceeds of insurance claims and any release of restricted cash) |
| Class 6 | Hospital Claims | 1,180 | $250 million in funding of Hospital Trust |
| Class 7 | Third-Party Payor Claims | 467,108 | $365 million in funding of TPP Trust |
| Class 8 | Ratepayer Claims | 31 | $6.5 million (less attorneys' fees) Truth Initiative Contribution |
| Class 9 | NAS Monitoring Claims | 3,439 | $60 million in funding of NAS Monitoring Trust |
| Class 10(a) | NAS PI Claims | 6,283 | $45 million in funding of the PI Trust with respect to NAS PI Channeled Claims |

NAS1719

| Class | Type of Claim or Interest | Approximate Number of Timely Filed Proofs of Claim | Aggregate Treatment |
|---|---|---|---|
| Class 10(b) | Non-NAS PI Claims | 129,631 | $655 million to $705 million in funding of the PI Trust with respect to Non-NAS PI Channeled Claims |
| Class 11(c) | Other General Unsecured Claims | 773 | $15 million in aggregate Other General Unsecured Claim Cash |

### D. The DOJ Resolution, Settlements with the Private Claimant Groups and Shareholder Contribution Are Interdependent and Vastly Superior to Potential Alternatives

The Debtors and their key stakeholders have spent more than two years, at significant expense, to reach the point of proposing a highly negotiated Plan that will put the Debtors' assets and $4.275 billion from the Sackler Families to work abating the opioid crisis. The extraordinary benefits of the proposed Plan are further highlighted by the immensely value-destructive nature of the alternatives to the Plan, which are described below.

Absent the DOJ Resolution, the Debtors would face enormous and potentially catastrophic litigation, prosecution, and possible exclusion from healthcare programs administered by the federal government. If the United States were to prevail in a criminal prosecution of the Debtors, it is likely that any convicted party would be excluded from participating in federal healthcare programs. Additionally, the consequences of the United States prevailing could potentially include a $6.2 billion or more non-dischargeable criminal fine and/or a criminal forfeiture judgment of $3.5 billion. The DOJ also asserted a substantial claim for civil liability, which the DOJ asserted was non-dischargeable, totaling $2.8 billion or more in damages, which could be trebled to $8.4 billion, plus penalties, as well as claims for civil forfeiture. Accordingly, the DOJ's claims and the likely massive costs associated with litigation against the DOJ had the potential to wipe out all of the value of the Debtors' Estates—and still do if the conditions to the DOJ Resolution are not met. Preserving the DOJ Resolution should therefore be of paramount importance to all stakeholders.

The resolution with the Non-Federal Public Claimants embodied in the Plan is critical to preserving and realizing the full benefit of the DOJ Resolution. As explained above, if less than $1.775 billion of value is provided under the Plan in respect of claims asserted by state, tribal, or local government entities, then there is a dollar-for-dollar increase in the amount of the $2 billion Forfeiture Judgment that must be satisfied in cash rather than through the Forfeiture Judgment Credit, leaving less available for distribution to other creditors. In addition, the Forfeiture Judgment Credit is conditioned on confirmation of a plan of reorganization that provides for the emergence of a public benefit company or entity with a similar mission. Accordingly, under the

29

NAS1720

terms of the Plea Agreement, any alternative structure that does not provide for emergence of a public benefit company or entity with a similar mission would reduce the amount available for distribution to other creditors by at least $1.775 billion. Moreover, additional amounts paid to the DOJ in this scenario would be directed to the DOJ Asset Forfeiture Fund, rather than designated to fund the fight against the opioid crisis.

Preserving the resolutions reached with the Private Claimants in the Mediation (the "**Private-Side Resolutions**") is likewise critical. If the Debtors were to become unable to satisfy the terms of the Private-Side Resolutions, these bankruptcy proceedings would likely devolve into an unmitigated and value-destructive tempest, with the various Private Claimant groups vigorously disputing the claims of the Non-Federal Public Claimants, the United States and other Private Claimant groups, and each of those groups compelled to respond in kind against each of the other groups. The litigation of the complex issues presented by the claims of the Non-Federal Public Claimants and each of the Private Claimant groups, particularly in light of the large number of parties in interest who would be expected to participate with varying goals, would be protracted and incredibly costly. There can be no assurance that the claims of the Non-Federal Public Claimants would ultimately be allowed in a particular amount or at all at the eventual conclusion of such litigation. Accordingly, if the Private-Side Resolutions are not preserved, then confirmation of the Plan would be at the very least materially delayed, and, if the outcome of the litigation with the Private Claimants were to preclude providing at least $1.775 billion in respect of claims asserted by state, tribal, or local government entities or emergence of a public benefit company or entity with a similar mission, then the Forfeiture Judgment Credit would be reduced or entirely unavailable, requiring the Debtors to satisfy the $2 billion Forfeiture Judgment in cash. That is a judgment that the Debtors could not satisfy in full, and other creditors would be at risk of receiving no recovery.

The Debtor's Plan, by contrast, facilitates a fair and equitable distribution of funds with certainty regarding the timing of payments. The $4.5 billion in the aggregate paid by Purdue Pharma's shareholders under the settlement embodied in the Plan and their settlement with the DOJ ensures that there will be sufficient funds to meet the terms of the various public and private settlements. As explained above, the DOJ Resolution will require the Debtors to make $2.0 billion in distributions in respect of the Forfeiture Judgment in one form or another (given that the total amount of the Forfeiture Judgment must be either paid to the DOJ Asset Forfeiture Fund or conferred on the Non-Federal Claimants in a manner that allows the Debtors to realize the Forfeiture Judgment Credit) before any payments can be made to holders of unsecured claims, while the Private-Side Resolutions will require the Debtors to make a total of approximately $1.4 billion in distributions. There would be substantial execution risk associated with any structure intended to allow the Debtors to satisfy the Private-Side Resolutions, the DOJ Resolution and the resolution with the Non-Federal Public Claimants without the funding provided under the settlement with Purdue Pharma's shareholders. Accordingly, the contribution required under such settlement ensures that these Chapter 11 Cases will not collapse into the quagmire of expensive litigation and years of delay that would result if the Debtors cannot meet the terms of the Private-Side Resolutions, the DOJ Resolution, or the resolution with the Non-Federal Public Claimants, which are all embodied in the Plan.

The Debtors carefully considered emergence alternatives to raise funds, including assets sales or a sale of the entire company. While a limited portion of the Debtors' assets could

NAS1721

potentially be marketed if necessary and value-maximizing, the Debtors, with the assistance of their advisors, including PJT, determined that a sale of the Debtors' business would not be value maximizing or otherwise optimal at this time.

As described in more detail in Article III.N below, the Debtors were approached by one potential purchaser that expressed an interest in acquiring a majority of the Debtors' business, but despite diligent and extensive engagement, the Debtors never received an actionable proposal. Moreover, the Debtors, with the assistance of PJT, assessed the prospects for selling the Debtors' business and concluded that multiple factors weighed against pursuing a sale during the Chapter 11 Cases, including, without limitation, the fact that the revenue streams associated with the Debtors' opioid businesses were likely to be heavily discounted by potential purchasers and that the Debtors' pipeline of investments have not yet reached the stage at which they would traditionally be marketed by a typical pharmaceutical company and therefore are unlikely to be adequately valued by a purchaser. In any event, under the terms of the DOJ Resolution, such a sale would have resulted in the unavailability of the $1.775 billion Forfeiture Judgment Credit and required PPLP to satisfy the entire Forfeiture Judgment in cash. Transferring the Debtors' business to NewCo is therefore both value maximizing with respect to the business itself and with respect to best realizing the Forfeiture Judgment Credit by making the residual value of the business available to the Non-Federal Public Claimants to fund abatement programs.

Accordingly, each of the major compromises embodied in the Plan is necessary for a successful resolution of these Chapter 11 Cases, while a failure of the Plan is likely to result in a scenario that is, or is not materially better than, the outcome described in the Liquidation Analysis, involving years of delay, billions of dollars less in available value, and a foregone ability to use billions of dollars to abate the opioid crisis. The Debtors, like the Supporting Claimants, therefore strongly urge all eligible holders of impaired Claims to vote to accept the Plan.

## E.      Channeling Injunction

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in Sections 10.5, 10.6 and 10.7 of the Plan, the Plan provides for the Channeling Injunction to take effect as of the Effective Date to permanently channel all Channeled Claims against any Protected Party to the Creditor Trusts, which will forever stay, restrain, and enjoin all Persons that have held or asserted, or that hold or assert, any Channeled Claims from taking any action to directly or indirectly collect, recover, or receive payment, satisfaction, or recovery from any Protected Party with respect to any Channeled Claim. All Channeled Claims will be released and the Channeling Injunction will bar recovery or any action against any Protected Party for or in respect of all Channeled Claims. In other words, all Channeled Claims may be asserted only and exclusively against the Creditor Trusts and only to the extent of the right to treatment therefrom afforded under the Plan and the applicable Creditor Trust Documents.

Accordingly, the Channeling Injunction provides for a resolution process administered pursuant to the Plan in an attempt to provide final, fair, and efficient resolution of Channeled Claims against the Debtors and Released Claims. The Channeling Injunction would eliminate the need for prolonged and extremely expensive court involvement. The Plan provides for payment

31

NAS1722

to holders of PI Claims that qualify for payment pursuant to the PI Trust Documents and for treatment of Non-Federal Domestic Governmental Claims, Tribe Claims, Hospital Claims, Third-Party Payor Claims and NAS Monitoring Claims by means of Abatement Distributions made by the respective Abatement Trusts in accordance with the applicable Abatement Trust Documents.

The Debtors do not believe that the pre-petition conduct of the Debtors and/or the Shareholder Released Parties can give rise to any Future PI Channeled Claims. The Debtors intend to seek findings to the effect that it is not possible for Future PI Channeled Claims to come into existence under the facts and circumstances presented in these Chapter 11 Cases. However, out of an abundance of caution, a PI Futures Trust will be established and funded with $5 million. Future PI Channeled Claims (to the extent any exist) will be channeled to the PI Futures Trust and may apply for distributions solely therefrom—and to no other Creditor Trust—pursuant to PI Futures Trust's trust distribution procedures. Although the trust distribution procedures for the PI Futures Trust will be substantially similar to the PI TDPs for PI Claimants, the PI Futures Trust and the PI Trust will be two separate and independent Creditor Trusts. **The PI Futures Trust will be the sole recourse of Holders of Future PI Channeled Claims as set forth in Section 5.7(d) of the Plan.** All amounts remaining in the PI Futures Trust upon the resolution of all Future PI Channeled Claims asserted by Holders of Future PI Channeled Claims on or before the sixth (6th) anniversary of the Effective Date shall be contributed pursuant to the Confirmation Order and in accordance with the PI Futures Trust Documents.

"**Channeled Claims**" means, collectively, all Non-Federal Domestic Governmental Claims, Tribe Claims, Hospital Claims, Third-Party Payor Claims, NAS Monitoring Claims, PI Claims, Released Claims and Shareholder Released Claims.

"**Protected Parties**" means, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties, (iii) NewCo, (iv) TopCo, (v) the Plan Administration Trust, (vi) the Master Disbursement Trust, except, solely to the extent provided in the Master TDP, with respect to the Channeled Claims channeled to the Master Disbursement Trust, (vii) each Creditor Trust, except, solely to the extent provided in the applicable Creditor Trust TDP, with respect to the Channeled Claims channeled to such Creditor Trust and (viii) the Shareholder Released Parties, subject to Section 10.08(c) of the Plan with respect to the Shareholder Release Snapback Parties.

## F. Releases

As noted in the Executive Summary, a key element of the Plan is the settlement with the Sackler Families, pursuant to which members of the Sackler Families and Sackler Entities will pay $4.275 billion in cash to the Debtors over nine years (or ten years if certain amounts are paid ahead of schedule in the first six years, as described in detail in Article IIIZ) in exchange for a release of potential claims of the Debtors' Estates and of third parties against the Sackler Families, the Sackler Entities and certain other persons.

The release and injunction provisions in the Plan are described in detail in this section. The Special Committee's careful consideration of the Debtors' and third parties' potential claims against the Sackler Families and Sackler Entities and the Special Committee's evaluation of such

NAS1723

settlement, including agreeing to provide for such releases and injunctions in the Plan, are described in detail in Article IIIУ and Article IIIAA, respectively.

All releases provided for in the Plan specifically exclude from the scope thereof any criminal action or criminal proceeding arising under a criminal provision of any statute instituted (i) by a Domestic Governmental Entity that has authority to bring such a criminal action or criminal proceeding, and (ii) to adjudicate a person's guilt or to set a convicted person's punishment. In addition, Section 10.19 of the Plan provides that the discharge, release, and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action, or any criminal action.

The releases include releases that are deemed to be granted by any Person holding a claim based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates or the Chapter 11 Cases, including a Person that does not hold any Claim against or Interests in the Debtors.

The definitions of certain important terms that are used in the descriptions of the release are set forth below. The definitions of all defined terms used in the Plan (and which apply with respect to this Disclosure Statement as well) are set forth in Section 1.1 of the Plan, a copy of which is attached as **Appendix A** hereto, in alphabetical order.

"**Releasing Parties**" means, collectively, (i) the Supporting Claimants, solely in their respective capacities as such, (ii) all Holders of Claims against or Interests in the Debtors, (iii) all Holders of Future PI Channeled Claims, (iv) with respect to each of the Entities in the foregoing clauses (i) through (iii), each of their Related Parties, (v) each of the Debtors' Related Parties, in each case, other than any Shareholder Released Party and (vi) all other Persons.

"**Released Parties**" means, collectively, (i) the Debtors, (ii) each of the Debtors' Related Parties and (iii) solely for purposes of the Releases by the Debtors in Section 10.6(a) of the Plan, the Supporting Claimants, the Creditors' Committee and the Creditors' Committee's members and each of their respective professionals, in each case solely in their respective capacities as such; *provided, however*, that, notwithstanding the foregoing or anything herein to the contrary, no Excluded Party or Shareholder Release Snapback Party shall be a Released Party in any capacity or respect. For the avoidance of doubt, the Released Parties referenced in clause (ii) of this definition of Released Parties include Persons referenced in clause (ii) of the definition of Related Parties only to the extent (x) a claim arises from actions taken by such Person in its capacity as a Related Party of a Person referenced in clause (i) of the definition of Related Parties and (y) the underlying claim against the Released Party is released against the Person to which the Related Party is related.

"**Shareholder Released Parties**" means, collectively, (i) the Shareholder Payment Parties; (ii) the Persons identified on **Appendix H** to the Disclosure Statement; (iii) all Persons directly or indirectly owning an equity interest in any Debtor on the date on which such Debtor commenced its Chapter 11 Case; (iv) Sackler Family Members; (v) all trusts for the benefit of any of the Persons identified in the foregoing clause (iv) and the past, present and future trustees (including, without limitation, officers, directors and employees of any such trustees that are

33

NAS1724

corporate or limited liability company trustees and members and managers of trustees that are limited liability company trustees), protectors and beneficiaries thereof, solely in their respective capacities as such; (vi) all Persons (other than the Debtors) in which any of the Persons identified in any of the foregoing clauses (i) through (v) own, directly or indirectly, an Interest and/or any other Person that has otherwise received or will receive grants, gifts, property or funds from any of the Persons identified in any of the foregoing clauses (i) through (v), solely in their respective capacities as such; and (vii) with respect to each Person in the foregoing clauses (i) through (vi), such Person's (A) predecessors, successors, permitted assigns, subsidiaries, controlled affiliates, spouses, heirs, executors, estates and nominees, in each case solely in their respective capacities as such, (B) current and former officers and directors, principals, members, employees, financial advisors, attorneys (including, without limitation, attorneys retained by any director, in his or her capacity as such), accountants, investment bankers (including, without limitation, investment bankers retained by any director, in his or her capacity as such), consultants, experts and other professionals, solely in their respective capacities as such, and (C) property possessed or owned at any time or the proceeds therefrom; *provided* that the Debtors and the Excluded Parties shall not be Shareholder Released Parties.

"**Related Parties**" means, with respect to a Person, (i) such Person's predecessors, successors, assigns, Subsidiaries, affiliates, managed accounts or funds, past, present and future officers, board members, directors, principals, agents, servants, independent contractors, co-promoters, third-party sales representatives, medical liaisons, members, partners (general or limited), managers, employees, subcontractors, agents, advisory board members, financial advisors, attorneys and legal representatives, accountants, investment bankers, consultants, representatives, management companies, fund advisors and other professionals and advisors, trusts (including trusts established for the benefit of such Person), trustees, protectors, beneficiaries, direct or indirect owners and/or equityholders, parents, transferees, heirs, executors, estates, nominees, administrators, and legatees, in each case in their respective capacities as such, and (ii) the Related Parties of each of the foregoing, in each case in their respective capacities as such. For the avoidance of doubt, the citizens and residents of a State shall not be deemed to be Related Parties of such State solely as a result of being citizens or residents of such State.

NAS1725

"**Excluded Claim**" means (i) any criminal action or criminal proceeding arising under a criminal provision of any statute instituted (A) by a Domestic Governmental Entity that has authority to bring such a criminal action or criminal proceeding, and (B) to adjudicate a person's guilt or to set a convicted person's punishment; (ii) any Cause of Action against a Shareholder Released Party by any federal, state or local authority with respect to income taxes imposed on such Shareholder Released Party; (iii) any Cause of Action against an Excluded Party; (iv) any Estate Cause of Action identified on the Schedule of Retained Causes of Action; or (v) any Cause of Action against a Shareholder Released Party by a Person, or by a Shareholder Released Party against a Person, in each case, where such Person is such Shareholder Released Party's current or former officer, director, principal, member, employee, financial advisor, attorney (including, without limitation, any attorney retained by any director, in his or her capacity as such), accountant, investment banker (including, without limitation, investment banker retained by any director, in his or her capacity as such), consultant, expert or other professional, in each case, in such Person's capacity as such, and such Cause of Action is not against a Shareholder Released Party for indemnification, contribution or similar liability-sharing theory in connection with Opioid-Related Activities or Pending Opioid Actions.

To clarify, unless a Person qualifies as a Related Party of the Debtors under clause (i) of the definition of "Related Parties," such Person is generally released only for claims that both arise from actions or omissions that such Person took in its capacity as a Related Party and that are released against the Person through which the Related Party qualifies as related.

### 1.      *Releases by Debtors*

The releases granted by the Debtors and their Estates to the Released Parties is a key component of the Debtors' Plan.  Such releases are provided for in <u>Section 10.6(a)</u> of the Plan.

Specifically, the Plan provides that the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution,

NAS1726

indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.  The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in <u>Section 10.6(a)</u> of the Plan.

Notwithstanding anything in the Plan to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in <u>Section 10.6(a)</u> shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

## 2.    *Releases by Releasing Parties*

In addition to ordinary and customary Debtor releases and exculpations, the Plan provides for certain releases to be deemed granted by the Releasing Parties, including Holders of

NAS1727

Claims against or Interests in the Debtors, in favor of the Released Parties. Such release is provided for in Section 10.6(b) of the Plan.[39]

Specifically, the Plan provides that the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or

---

[39] The NAS Committee has requested that the Disclosure Statement specifically state that such releases in favor of the Debtors include, among other things, a release of any causes of action that allege that the Debtors were aware that (i) Oxycodone Hydrochloride must not be used during pregnancy and (ii) fetal exposure to opioids is an injury without a known cure.

NAS1728

any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its parens patriae or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything in the Plan to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in <u>Section 10.6(b)</u> of the Plan shall (A) release any Cause of Action against (I) any Shareholder Release Snapback Party or (II) any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such solely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything in the Plan to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim, and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

### 3. *Releases by Debtors of Holders of Claims*

The Plan also provides for releases granted by the Debtors and their Estates in favor of certain Holders of Claims.  Such release is provided for in <u>Section 10.6(c)</u> of the Plan.

NAS1729

Specifically, the Plan provides that, as of the Effective Date, all Holders of Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, (i) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing or (ii) such Holder's participation in the Pending Opioid Actions. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in Section 10.6(c) of the Plan.

As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything in the Plan to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in Section 10.6(c) of the Plan shall (A) release any contractual Estate Cause of Action or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed

39

**NAS1730**

to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

### 4. Shareholder Releases: Releases by Debtors

The Plan also provides for releases granted by the Debtors and their Estates in favor of the Shareholder Released Parties. Such release is provided for in <u>Section 10.7(a)</u> of the Plan.

Specifically, the Plan provides that the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of <u>Section 10.7(a)</u> of the Plan, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing,

NAS1731

labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in Section 10.7(a) of the Plan.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in Section 10.7(a) of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in Section 10.7(a) of the Plan shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of Section 10.7(a) of the Plan had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

**5.      Shareholder Releases: Releases by Non-Debtors**

The Plan also provides for certain releases to be deemed granted by the Releasing Parties and all other Persons, including Holders of Claims against or Interests in the Debtors, in favor of the Shareholder Released Parties. Such release is provided for in Section 10.7(b) of the Plan.

NAS1732

Specifically, the Plan provides that the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of <u>Section 10.7(b)</u> of the Plan, by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and

42

NAS1733

related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in Section 10.7(b) of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in Section 10.7(b) of the Plan shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the Releasing Parties with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

6.     ***Releases by Shareholder Released Parties***

The Plan also provides for the Shareholder Releasing Parties to provide reciprocal releases in favor of the Reciprocal Releasees. Such release is provided for in Section 10.7(c) of the Plan.

Specifically, the Plan provides that the Reciprocal Releasees shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of Section 10.7(c) of the Plan, by the Shareholder Released Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Shareholder Released Party, or that any other Person or party claiming under or through any Shareholder Released Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Shareholder Released Party or

43

NAS1734

any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), (iii) any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), (iv) any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, (v) the Restructuring Transactions, (vi) the Pending Opioid Actions, (vii) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (viii) any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (ix) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (x) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, (xi) the solicitation of votes with respect to the Plan, or (xii) any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in Section 10.7(c) of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, and including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any Claims held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the

44

NAS1735

commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in <u>Section 10.7(c)</u> of the Plan of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in <u>Section 10.7(c)</u> of the Plan shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

## G.    Confirmation of the Plan

### 1.    *Requirements*

The requirements for confirmation of the Plan are set forth in section 1129 of the Bankruptcy Code. The requirements for approval of the Disclosure Statement are set forth in section 1125 of the Bankruptcy Code.

### 2.    *Approval of the Plan and Confirmation Hearing*

To confirm the Plan, the Bankruptcy Court must hold a hearing to determine whether the Plan meets the requirements of section 1129 of the Bankruptcy Code.

### 3.    *Treatment and Classification of Claims and Interests*

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and Distributions under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes; *provided* that, to the extent any Claim satisfies the definition of a Shareholder Claim, a Co-Defendant Claim or an Other Subordinated Claim, such Claim shall be classified as such, notwithstanding that such Claim may satisfy the definition of another type of Claim. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released or otherwise settled prior to the Effective Date. In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.

### 4.    *Only Impaired Classes Vote*

NAS1736

Pursuant to the provisions of the Bankruptcy Code, only classes of claims or interests that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under a plan may vote to accept or reject such plan. Generally, a claim or interest is impaired under a plan if the applicable holder's legal, equitable, or contractual rights are modified under such plan. In addition, if the holders of claims or interests in an impaired class do not receive or retain any property under a plan on account of such claims or interests, such impaired class is deemed to have rejected such plan under section 1126(g) of the Bankruptcy Code and, therefore, such holders are not entitled to vote on such plan.

Under the Plan, holders of Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10(a), 10(b) and 11(c) are impaired and are entitled to vote on the Plan.

Under the Plan, holders of Claims and Interests in Classes 1, 2, 11(a) and 11(b) are unimpaired and therefore, deemed to accept the Plan.

Under the Plan, holders of Claims and Interests in Classes 13, 14, 15, 16 and 17 are impaired and will not receive or retain any property under the Plan on account of their Claims or Interests in such classes and, therefore, are (i) not entitled to vote on the Plan and (ii) deemed to reject the Plan.

Under the Plan, holders of Claims and Interests in Classes 12 and 18 are either conclusively presumed to have accepted the Plan or are deemed to have rejected the Plan. Accordingly, such Holders are not entitled to vote to accept or reject the Plan.

ACCORDINGLY, A BALLOT FOR ACCEPTANCE OR REJECTION OF THE PLAN IS BEING PROVIDED ONLY TO HOLDERS OF CLAIMS IN CLASSES 3, 4, 5, 6, 7, 8, 9, 10(A), 10(B) AND 11(C).

## H. Voting Procedures and Voting Deadline

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. To ensure your vote is counted, you must complete, date, sign, and promptly mail the Ballot enclosed with the notice or complete your Ballot using the online portal maintained by the solicitation agent (the "**Solicitation Agent**"), in each case indicating your decision to accept or reject the Plan in the boxes provided.

TO BE COUNTED, YOUR BALLOT INDICATING YOUR ACCEPTANCE OR REJECTION OF THE PLAN MUST BE RECEIVED BY THE SOLICITATION AGENT NO LATER THAN 4:00 P.M. (PREVAILING EASTERN TIME) ON **JULY 14, 2021** (THE "**VOTING DEADLINE**").

In order for the Plan to be accepted by an impaired Class of Claims, a majority in number and two-thirds in dollar amount of the Claims voting in such Class must vote to accept the Plan. At least one Voting Class, excluding the votes of insiders, must actually vote to accept the Plan.

Pursuant to the Solicitation Procedures, and subject to the parties' rights to seek allowance of a claim in different amount under the Solicitation Procedures, each Claim in Class 4 (Non-Federal Domestic Governmental Claims), Class 5 (Tribe Claims), Class 6 (Hospital

NAS1737

Claims), Class 7 (Third-Party Payor Claims), Class 8 (Ratepayer Claims), Class 9 (NAS Monitoring Claims), Class 10(a) (NAS PI Claims), and Class 10(b) (Non-NAS PI Claims) shall be accorded one (1) vote and valued at One Dollar ($1.00) for voting purposes only, and not for purposes of allowance or distribution. Accordingly, a vote of two-thirds in number will effectively be required in order for the Plan to be accepted in the case of each of these Classes of Claims.

The Debtors will argue to the Bankruptcy Court that if no holders of Claims in a particular Class that is entitled to vote on the Plan vote to accept or reject the Plan, then such Class shall be deemed to accept the Plan.

YOU ARE URGED TO COMPLETE, DATE, SIGN, AND PROMPTLY MAIL THE BALLOT ENCLOSED WITH THE NOTICE OR COMPLETE YOUR BALLOT USING THE ONLINE PORTAL MAINTAINED BY THE SOLICITATION AGENT. PLEASE BE SURE TO COMPLETE THE BALLOT PROPERLY AND LEGIBLY AND TO IDENTIFY THE EXACT AMOUNT OF YOUR CLAIM AND THE NAME OF THE HOLDER. IF YOU ARE A HOLDER OF A CLAIM ENTITLED TO VOTE ON THE PLAN AND YOU DID NOT RECEIVE A BALLOT, YOU RECEIVED A DAMAGED BALLOT, OR YOU LOST YOUR BALLOT, OR IF YOU HAVE ANY QUESTIONS CONCERNING THE DISCLOSURE STATEMENT, THE PLAN, OR PROCEDURES FOR VOTING ON THE PLAN, PLEASE CONTACT THE SOLICITATION AGENT AT (844) 217-0912 (DOMESTIC TOLL-FREE) OR (347) 859-8093 (IF CALLING FROM OUTSIDE THE U.S. OR CANADA) OR AT PURDUEPHARMABALLOTS@PRIMECLERK.COM. THE SOLICITATION AGENT IS NOT AUTHORIZED TO PROVIDE LEGAL ADVICE AND WILL NOT PROVIDE ANY SUCH ADVICE.

## I.    Disclosure Statement Enclosures

Accompanying this Disclosure Statement is a ballot (the "**Ballot**") for voting to accept or reject the Plan if you are the record holder of a Claim in a Class entitled to vote on the Plan (each, a "**Voting Class**").

## J.    Confirmation Hearing

The Bankruptcy Court has scheduled a hearing to consider confirmation of the Plan (the "**Confirmation Hearing**"). The Confirmation Hearing will take place on August 9, 2021 at 10:00 a.m. (prevailing Eastern Time). Parties in interest will have the opportunity to object to the confirmation of the Plan at the Confirmation Hearing.

## ARTICLE II

## GENERAL INFORMATION REGARDING THE DEBTORS

## A.    The Debtors' Businesses, Structure, Management, and Employees

### *1.    Overview*

NAS1738

The Debtors operate three main business segments through a number of operating subsidiaries: a branded prescription medication business, a generic prescription medication business, and an over-the-counter health and wellness business. The branded prescription medications business consists of both opioid and non-opioid medications, including investment in a robust and diversified pipeline of non-opioid investigative candidates that have the potential to address many serious medical conditions, as described in more detail below. In addition, as part of their commitment to advancing meaningful solutions to the opioid crisis, the Debtors continue to develop, and plan to have NewCo distribute on a nonprofit basis, opioid overdose reversal and addiction treatment medications (the "**Public Health Initiative**").

Purdue Pharma L.P., a Delaware limited partnership headquartered in Stamford, Connecticut, is the Debtors' main operating entity. Purdue Pharma's general partner is Purdue Pharma Inc. Purdue Pharma also has 22 wholly owned operating and nonoperating subsidiaries in the United States and the British Virgin Islands ("**Purdue Subsidiaries**"). An organizational chart setting forth this corporate structure is provided in **Appendix E**. Purdue Pharma and its direct and indirect subsidiaries other than the Rhodes Debtors (defined below) (the "**Purdue Debtors**") primarily operate a branded pharmaceuticals business, while Debtor Rhodes Associates L.P. and its direct and indirect subsidiaries (the "**Rhodes Debtors**") primarily develop and distribute generic pharmaceutical products. The Debtors are managed by a single board of directors and are wholly owned by the same ultimate owners: various trusts for the benefit of the descendants of Mortimer and Raymond Sackler.

(i) <b>Branded Prescription Medication Business</b>

The Debtors' branded prescription pharmaceutical business, operated by the Purdue Debtors, consists of both opioid and non-opioid medications. The Debtors' three principal branded opioid medications are OxyContin®, Hysingla ER®, and Butrans®:

- <u>OxyContin Extended-Release Tablets</u>: OxyContin is a Schedule II extended-release, long-acting opioid analgesic. Its active pharmaceutical ingredient ("**API**") is oxycodone.[40] OxyContin received United States Food and Drug Administration ("**FDA**") approval in 1995 and was launched in 1996. In 2010, the FDA approved, and the Purdue Debtors began selling, a new abuse-deterrent formulation of OxyContin formulated with physical and chemical properties intended to make abuse by injection difficult and to reduce abuse via the intranasal route.

- <u>Hysingla ER Extended-Release Tablets</u>: Hysingla ER is a Schedule II extended-release, long-acting, abuse-deterrent opioid analgesic formulated with physical and chemical properties intended to make abuse by injection difficult and to reduce abuse via the intranasal route. Its API is hydrocodone. Hysingla ER was approved by the FDA in 2014 and was launched in 2015.

---

[40] *See* U.S. Food and Drug Admin., OxyContin Full Prescribing Information, at 1 (Sept. 26, 2018), https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/022272s039lbl.pdf (hereinafter "**OxyContin FPI**").

NAS1739

-     <u>Butrans Transdermal System</u>: Butrans is a Schedule III,[41] seven-day, transdermal patch pain medication. Its API is buprenorphine.[42] Butrans was approved by the FDA in 2010 and launched in 2011.

The Purdue Debtors manufacture OxyContin and Hysingla for themselves and, in relatively limited amounts, manufacture OxyContin for certain foreign independent associated companies ultimately owned by the Sackler Families ("**IACs**"). Purdue Pharma also receives royalties from foreign IACs for sales of OxyContin outside the United States. Butrans is manufactured by a third party, LTS Lohmann Therapie-Systeme AG.

The FDA continues to strike a careful balance between the necessity of OxyContin and other opioid pain medications and the associated risks of misuse, abuse, and addiction.[43] While OxyContin is approved for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate, it is required to carry a label with a type of warning—commonly referred to as a black box warning —that is designed to call attention to serious or life-threatening risks. OxyContin carries the following black box warning:

---

[41] Schedule III drugs are defined as "drugs with a moderate to low potential for physical and psychological dependence," according to the U.S. Drug Enforcement Administration ("**DEA**"). *See* U.S. Drug Enf't Admin., Drug Schedule (last visited Sept. 15, 2019), https://www.dea.gov/drug-scheduling.

[42] *See* U.S. Food and Drug Admin., Butrans Full Prescribing Information, at 1 (Sept. 18, 2018), https://www.accessdata.fda.gov/drugsatfda_docs/label/2018/021306s032s034lbl.pdf (hereinafter "**Butrans FPI**").

[43] *See* Press Release, U.S. Food and Drug Admin., Statement of FDA Commissioner Scott Gottlieb, M.D., on balancing access to appropriate treatment for patients with chronic and end-of-life pain with need to take steps to stem misuse and abuse of opioids (July 9, 2018), https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-balancing-access-appropriate-treatment-patients-chronic. ("[T]he FDA remains focused on striking the right balance between reducing the rate of new addiction by decreasing exposure to opioids and rationalizing prescribing, while still enabling appropriate access to those patients who have legitimate medical need for these medicines.").

49

**NAS1740**

---

**WARNING: ADDICTION, ABUSE AND MISUSE; LIFE-THREATENING RESPIRATORY DEPRESSION; ACCIDENTAL INGESTION; NEONATAL OPIOID WITHDRAWAL SYNDROME; and CYTOCHROME P450 3A4 INTERACTION**
*See full prescribing information for complete boxed warning.*

- **OXYCONTIN exposes users to risks of addictions, abuse and misuse, which can lead to overdose and death. Assess each patient's risk before prescribing and monitor regularly for development of these behaviors and conditions. (5.1)**

- **Serious, life-threatening, or fatal respiratory depression may occur. Monitor closely, especially upon initiation or following a dose increase. Instruct patients to swallow OXYCONTIN tablets whole to avoid exposure to a potentially fatal dose of oxycodone. (5.2)**

- **Accidental ingestion of OXYCONTIN, especially in children, can result in a fatal overdose of oxycodone. (5.2)**

- **Prolonged use of OXYCONTIN during pregnancy can result in neonatal opioid withdrawal syndrome, which may be life-threatening if not recognized and treated. If opioid use is required for a prolonged period in a pregnant woman, advise the patient of the risk of neonatal opioid withdrawal syndrome and ensure that appropriate treatment will be available. (5.3)**

- **Initiation of CYP3A4 inhibitors (or discontinuation of CYP3A4 inducers) can result in a fatal overdose of oxycodone from OXYCONTIN. (5.14)**

---

In addition to prescription opioid medications, Purdue Pharma sells, through a subsidiary, a Schedule II, non-opioid branded prescription medication for the management of attention deficit hyperactivity disorder.

Purdue Pharma has also invested—and continues to invest—substantial resources in its pipeline of non-opioid investigative candidates that have the potential to address many serious medication conditions, including difficult-to-treat blood cancers, solid cancers, and central nervous system cancers, overactive bladder, chronic low back pain, bladder pain and insomnia associated with alcohol cessation. For example, Tinostamustine, a potentially first-in-class alkylating deacetylase inhibiting molecule in development for the treatment of certain cancers, is in Phase II trials; IMB-115, an internally discovered compound with a novel mechanism of action in clinical development for the treatment of insomnia associated with alcohol cessation has recently completed a phase 2 proof of concept study which has demonstrated that the drug is efficacious, and is now being progressed to larger phase 3 studies, as well as commencing Phase 1 studies in indications for overactive bladder and interstitial cystitis; and ALV-107, which promises fast-acting, targeted, safe and long-acting relief of bladder pain, is soon to begin Phase I-B trials.

     (ii)     **Generic Prescription Medication Business / API Business**

          a.     Rhodes Pharmaceuticals L.P.

50

NAS1741

The Debtors' generic prescription pharmaceutical business is operated by Purdue Pharma subsidiary Rhodes Pharmaceuticals L.P. ("**Rhodes Pharma**"), a Delaware limited partnership created in late 2007. Rhodes Pharma, which until May 2019 was separately managed from Purdue, *see* Article II.A..1.(ii).c, *infra*, sells a variety of generic prescription medications, including opioid (principally immediate-release) pain relievers. [44] Rhodes Pharma does not have—and never has had—sales representatives promote or market its opioid drugs to prescribers or patients.

Rhodes Pharma also sells generic non-opioid medications, such as medications to treat attention deficit hyperactivity disorder, high cholesterol, and depression. A Purdue Pharma subsidiary and other non-Debtor entities manufacture finished dosage forms for Rhodes Pharma.

  b.  Rhodes Technologies

Rhodes Technologies ("**Rhodes Tech**"), a Delaware general partnership, also became a Purdue Pharma subsidiary (as of May 2019) and a Debtor in the Chapter 11 Cases. Prior to December 31, 2020, Rhodes Tech manufactured active pharmaceutical ingredients (referred to as APIs) that Purdue Pharma used to manufacture its branded finished products and some of Rhodes Pharma's generic finished products.

As further described in Article III.L, on October 1, 2020, the Bankruptcy Court entered an order approving the sale of assets of Rhodes Tech to Noramco Coventry LLC and approving the Debtors' entry into a supply agreement (the "**Supply Agreement**") with Noramco LLC. The Supply Agreement secures provision of APIs to the Debtors for a minimum of seven years, with two two-year renewal options. Noramco LLC is an experienced API manufacturer with the capability to ensure high-quality supply at a cost substantially lower than previously incurred through the vertically integrated structure. The sale transaction closed and the parties entered into the Supply Agreement on December 31, 2020.

  c.  The Rhodes Entities Were Managed Separately Prior to May 2019

Prior to 2008, Rhodes Tech (or its predecessor) was a subsidiary of Purdue Pharma. On or around January 1, 2008, Rhodes Tech was moved to a different Sackler Families ownership chain (through Purdue Pharma's distribution of its interest in Rhodes Tech's parent to an affiliate) though with the same ultimate owners. Rhodes Tech then came under common ownership with newly created Rhodes Pharma. Until May 2019, Rhodes Pharma and Rhodes Tech were separately managed by different boards of directors from that of Purdue Pharma. [45] The ultimate

---

[44] Starting in 2017, Purdue Pharma authorized Rhodes Pharma to sell an authorized generic of Butrans (opioid transdermal patch) in exchange for a profit share. Rhodes Pharma's authorized generic Butrans has been sold as a generic product and never promoted to prescribers or patients. Moreover, although Rhodes Pharma's portfolio of products is composed mostly of generic products, in 2015, Rhodes Pharma expanded into a branded prescription product, Aptensio XR, a once-daily extended-release central nervous system stimulant (methylphenidate) indicated for the treatment of attention deficit hyperactivity disorder. Additionally, since 2017, Rhodes Pharma has sold MS Contin and Dilaudid branded opioid pain medications, which were contributed to Rhodes Pharma by Purdue. Rhodes Pharma has never promoted any Dilaudid or MS Contin product to prescribers or patients.

[45] Prior to May 2019, some Rhodes Pharma and Rhodes Tech directors served as directors or officers of Purdue Pharma.

NAS1742

owners of these Rhodes entities, however, have always been the same as Purdue Pharma's—various trusts for benefit of the Sackler Families.

In May 2019, Rhodes Pharma and Rhodes Tech were contributed to Purdue Pharma, becoming subsidiaries of PPLP. Thus, from and after that date, PPI effectively managed Rhodes Pharma and Rhodes Tech. This reorganization was undertaken, among other reasons, to achieve cost and operational efficiencies and so that a single board and management team would be at the helm of the U.S. pharmaceutical businesses in order to, among other things, help facilitate a complex settlement process, including one that potentially could be implemented through chapter 11.

### (iii) Over-the-Counter Health and Wellness Business

Avrio Health L.P. ("**Avrio**"), a Delaware limited partnership and also a Purdue Pharma subsidiary, operates the Debtors' over-the-counter ("**OTC**") business.[46] OTC products are FDA-regulated but do not require prescriptions. Avrio's primary products are Betadine (an antiseptic), Senokot and Colace (laxatives), and SlowMag (a supplement). Avrio has no role in the Debtors' branded or generic prescription medication business.

### (iv) Public Health Initiatives: Opioid Overdose Reversal and Addiction Treatment Medications

As part of their commitment to advance meaningful solutions to the opioid crisis, the Debtors are pursuing three initiatives: developing and distributing at low or no cost two medications to treat opioid overdoses and a medication to treat opioid addiction. Leading public health officials have encouraged the development of certain of these types of medications, and the Debtors have offered to develop and distribute millions of doses of each at no or low cost to communities throughout the country. During the Chapter 11 Cases, the Debtors have made substantial progress on these initiatives, and the Bankruptcy Court has authorized certain steps that have facilitated that progress.

First, the Debtors are developing emergency opioid overdose treatments containing the opioid antagonist nalmefene.[47] Emergency opioid overdose rescue drugs, when timely administered, can quickly restore normal respiration to a person whose breathing has slowed or stopped as a result of overdosing with a prescription or illicit opioid.[48] Synthetic opioids, such as illicit fentanyl and its analogues, are a principal driver of today's epidemic of opioid overdose

---

[46] Avrio engages in the marketing, sale, and distribution of four principal and well-known OTC medications: Betadine (an antiseptic that Purdue's predecessor developed 50 years ago for use at home and in hospitals, and which is an important defense against topical infections); Colace and Peri-Colace, now called Colace 2-IN-1 (stool softeners and stool stimulants to treat occasional constipation); Senokot (a laxative for occasional constipation); and SlowMag (a magnesium supplement with high-absorption magnesium chloride plus calcium).

[47] Opioid antagonists block or reverse the effects of opioids, including potentially fatal respiratory depression. *See* Nat'l Inst. on Drug Abuse, Medications to Treat Opioid Use Disorder (June 2018), https://www.drugabuse.gov/publications/research-reports/medications-to-treat-opioid-addiction/how-do-medications-to-treat-opioid-addiction-work.

[48] *See* U.S. Nat'l. Inst. on Drug Abuse, Opioid Overdose Reversal with Naloxone (Narcan, Evzio) (Apr. 2018), https://www.drugabuse.gov/related-topics/opioid-overdose-reversal-naloxone-narcan-evzio.

NAS1743

deaths.[49] Doses of existing opioid overdose reversal medications that could reverse prescription opioid or heroin overdoses may not be sufficiently strong or long-lasting to reverse the effects of fentanyl (which is 50 times more potent than heroin).[50] For this reason, the Directors of the National Institutes of Health and the National Institute on Drug Abuse have called for the development of "stronger, longer-acting formulations of antagonists."[51]

In response to that need, the Debtors are developing an opioid overdose reversal medication containing nalmefene,[52] a strong, long-acting opioid antagonist, in three different injectable forms: (1) a vial, (2) a pre-filled syringe, each for use by healthcare professionals and certain first responders, and (3) an autoinjector, an easy-to-use EpiPen®-like device, for use by friends, family, and caregivers without medical training, as well as by healthcare professionals and first responders. The FDA has granted all three forms of nalmefene expedited regulatory status, thus accelerating the regulatory process. For example, in February of 2019, the FDA granted the Debtors' nalmefene autoinjector "Fast Track" status. Fast Track is a formal designation by the FDA to expedite review and facilitate development of new drugs that the FDA determines are intended to treat a serious or life-threatening condition and fulfill an unmet medical need. The FDA also granted priority review (including expediting the target date by which to review) to an application for the approval of the nalmefene vial that the Debtors filed during these Chapter 11 Cases in December 2020.

On February 21, 2020, the Bankruptcy Court authorized an important element of the Debtors' nalmefene development program when it approved the Debtors' entry into an agreement with a technology partner to develop the nalmefene autoinjector. *See Order (I) Shortening Notice with Respect to Debtors' Motion for Authorization to Enter into Development Agreement and (II) Authorizing Entry into Development Agreement* [D.I. 868].

The Debtors believe that a settlement that enables them to continue to develop and, if approved by the FDA, distribute millions of doses of all three forms of injectable nalmefene, at no or low cost, to communities and individuals throughout the country could provide great benefit to the public health.

Second, the Debtors are aiding the development of a low-cost, non-prescription (over-the-counter or "**OTC**") naloxone nasal spray to reverse known or suspected opioid overdose. Although intranasal naloxone is currently available to consumers under the brand name Narcan®, access is limited because of Narcan's relatively high cost to consumers and first responders, and because of the requirement that consumers, when obtaining Narcan from a pharmacy, must get this prescription medication from a pharmacist. Even if a pharmacy stocks Narcan, this interaction can be difficult for the patient due to the ongoing stigma related to opioid use and addiction. Recognizing the importance of increasing access to naloxone, the FDA has

---

[49]   *See* Centers for Disease Control and Prevention, Opioid Overdose: Understanding the Epidemic, https://www.cdc.gov/drugoverdose/epidemic/index.html.

[50]   *See* Volkow N., Collins F., The Role of Science in Addressing the Opioid Crisis, N. Engl. J. Med. 377:4 (July 27, 2017), https://www.nejm.org/doi/full/10.1056/NEJMsr1706626.

[51]   *Id.*

[52]   A prior version of nalmefene was previously approved by the FDA and later withdrawn from sale by the manufacturer for reasons other than safety or effectiveness. Department of Health and Human Services; Food and Drug Administration. 82 Federal Register 51282 (November 3, 2017).

NAS1744

encouraged pharmaceutical companies to develop an OTC version of intranasal naloxone, including by taking the unprecedented step of developing a model Drug Facts label for the product and conducting the comprehensive testing that drug companies normally must complete themselves to demonstrate that the instructions on the label are simple to follow.[53]

Consistent with the FDA's encouragement, the Debtors are working with Harm Reduction Therapeutics ("**HRT**"), an independent pharmaceutical company seeking nonprofit status, to develop a low-cost OTC naloxone nasal spray. By reducing the cost to consumers and first responders, and allowing consumers to acquire the medication without the shame or fear of needing to procure a prescription or speak with a pharmacist, the Debtors hope to greatly improve access to this needed medication. To facilitate bringing this low-cost OTC medication to market, the Debtors have paid for HRT's development costs. On June 25, 2020, the Court entered the *Order Authorizing Debtors to Enter into Funding Agreement* [D.I. 1301], which authorized the Debtors to continue funding certain of those costs. The Debtors anticipate that it may be necessary to request authority to provide additional funding to HRT prior to confirmation of the Plan. To provide further assistance, the Debtors have licensed to HRT valuable technical know-how and data and provided regulatory and drug development advice. During the pendency of the Debtors' bankruptcy, HRT has continued to progress the development of OTC naloxone. For example, in January 2021, HRT concluded what is expected to be the sole clinical trial needed for FDA approval. If and when this medication is approved by the FDA, the Debtors intend to provide millions of doses at low or no cost to help combat the opioid crisis.

Third, during the Chapter 11 Cases, the Debtors, through Rhodes Pharma, have already developed, obtained FDA approval, and manufactured a generic version of Suboxone®[54] tablets, a leading opioid addiction treatment consisting of a combination of buprenorphine and naloxone. Despite evidence that medication-assisted treatment can help many people recover from opioid addiction, these medications remain underutilized, and the cost of treatment is one of the barriers to access.[55] To help ensure broader access, the FDA has facilitated the entry of generic versions of these medicines,[56] and, in March of 2020, approved the Debtors' generic version of Suboxone tablets. To increase access to these treatments, the Debtors intend to distribute tens of millions of doses of their buprenorphine/naloxone tablets at low or no cost.

---

[53] U.S. Food & Drug Administration, Statement from FDA Commissioner Scott Gottlieb, M.D., on unprecedented new efforts to support development of over-the-counter naloxone to help reduce opioid overdose deaths, https://www.fda.gov/news-events/press-announcements/statement-fda-commissioner-scott-gottlieb-md-unprecedented-new-efforts-support-development-over.

[54] *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=da90618a-5621-4b15-bc48-9dcc631418de&type=display.

[55] Centers for Disease Control and Prevention, CDC Guideline for Prescribing Opioids for Chronic Pain – United States, 2016, https://www.cdc.gov/mmwr/volumes/65/rr/rr6501e1.htm (though "buprenorphine has been shown to be more effective in preventing relapse among patients with opioid use disorder, ... patient cost can be a barrier to buprenorphine treatment because insurance coverage of buprenorphine for opioid use disorder is often limited"); *see* National Institutes of Health, Methadone and buprenorphine reduce risk of death after opioid overdose, https://www.nih.gov/news-events/news-releases/methadone-buprenorphine-reduce-risk-death-after-opioid-overdose.

[56] U.S. Food & Drug Administration, www.fda.gov/news-events/press-announcements/fda-approves-first-generic-versions-suboxone-sublingual-film-which-may-increase-access-treatment.

NAS1745

19-23649-rdd Doc 2983-CM Filed 06/03/21 15 Entered 06/03/21 11:24:31 Main Document
Pg 64 of 499

(v)    **Purdue Pharma Inc.**

PPI is the general partner of Purdue Pharma, and the board of directors of PPI ("**Board**") effectively manages the Debtors.[57]

*2.    Management*

The Debtors' current management team is composed of highly capable and experienced professionals. Information regarding the Debtors' senior management is as follows:

| Name | Position |
| --- | --- |
| Craig Landau | President and Chief Executive Officer |
| Jon Lowne | Executive Vice President, Chief Financial Officer |
| Marc L. Kesselman | Executive Vice President, General Counsel |
| David Lundie | Chief Technical Operations Officer |
| Vincent Mancinelli | President, Rhodes Pharmaceuticals L.P. |

(i)    **Craig Landau**

Craig Landau, M.D. has served as Chief Executive Officer and President at Purdue Pharma since June 2017. Under his leadership, the company voluntarily stopped promoting opioid pain medications to prescribers through sales representatives and via other channels, such as in medical journals, eliminated its opioid medication sales force and has taken meaningful action to address the opioid crisis through research and development as well as through multiple partnerships and other initiatives organized under the company's office of Corporate Social Responsibility. Additionally, he has established several wholly owned operating subsidiaries through which Purdue will develop its emerging portfolio of prescription and non-prescription products and further advance its R&D pipeline in the areas of oncology, CNS, and non-opioid pain.

Dr. Landau joined Purdue Pharma in October 1999 as an Associate Medical Director within the research and development group, until his appointment as President and CEO of Purdue Pharma (Canada) in 2013, and held roles of increasing responsibility within the R&D organization. Prior to this role in Canada, Craig's U.S. company responsibilities included clinical development, regulatory affairs, risk management as well as R&D innovation. In these roles, he and his organization were responsible for supporting important health policy initiatives as well as product development and registrations in the U.S. and other regions.

Prior to joining Purdue, he held positions of increasing responsibility for analgesic drug development within the Clinical R&D and Medical Affairs group at Knoll Pharmaceutical Company.

---

[57] As illustrated in **Appendix E**, the Purdue Subsidiaries have PPI as a general partner, are indirectly controlled by PPI pursuant to PPI's being a general partner of another Purdue subsidiary, or have Purdue Pharma, directly or indirectly, as their ultimate sole shareholder.

NAS1746

Dr. Landau earned his B.S. in physiology and anatomy from Cornell University and his M.D. from Mount Sinai School of Medicine. He completed his Anesthesiology residency at Yale University with specialty training in chronic pain management, obstetric and peripheral vascular anesthesia.

Dr. Landau is also a U.S. Army veteran, with 14 years of distinguished service as an officer throughout Operation Iraqi Freedom and Operation Enduring Freedom, concluding in 2005. He has advised and served on multiple boards for foundations and nonprofit organizations focusing on rare diseases such as Friedreich ataxia, Adrenoleukodystrophy, and Duchenne Muscular Dystrophy. He has most recently served as Purdue's Ambassador for the American Cancer Society's Real Men Wear Pink of Fairfield County Class of 2018.

(ii) **Jon Lowne**

Jon Lowne has served as Chief Financial Officer of Purdue Pharma since March 2018.

Mr. Lowne joined the company in 1995 after eight years with Price Waterhouse, working in the audit and business advisory group. Jon worked out of the London, England; Warsaw, Poland; Stamford, CT; and Morristown, NJ offices and gained experience in financial accounting, audit, taxation and due diligence reviews of acquisitions and divestitures across the U.S., the U.K., and Eastern Europe.

Mr. Lowne began his career at Purdue Pharma as Senior Internal Auditor. Mr. Lowne has gained increasing responsibility and over his tenure at Purdue Pharma, serving as Controller from 2005 to July 2017 and Acting CFO from August 2017 to February 2018 before accepting his current role. He is responsible for Finance, IT, Tax and Procurement. In his current role, Mr. Lowne provides leadership, management and strategic direction for all finance, accounting, treasury, risk management, procurement, tax, information technology services and operations, as well as financial planning and analysis. In his prior role as controller, Mr. Lowne directed and coordinated company financial planning and budget functions, oversaw the daily operations of the finance functions, and managed internal and external financial reporting processes, among other responsibilities.

Mr. Lowne earned his Bachelor's degree in industrial economics and accounting at Nottingham University, England. He became a Chartered Accountant in 1990.

(iii) **Marc L. Kesselman**

Marc L. Kesselman was appointed General Counsel of Purdue Pharma in July 2018, with responsibility for Purdue's legal strategy, corporate governance, compliance and government affairs.

Prior to joining Purdue Pharma, Mr. Kesselman worked for YUM! Brands, Inc. where he served as Chief Legal Officer, Corporate Secretary & Chief Public Policy Officer. In that role, he oversaw all aspects of legal, compliance, regulatory, government affairs, and sustainability agendas for one of the world's largest restaurant companies, with more than 45,000 restaurants in 135 countries and territories. Mr. Kesselman joined YUM! from Dean Foods where he held a similar role. Previously, he was Senior Vice President & General Counsel at PepsiCo Americas

NAS1747

Foods where he oversaw a wide variety of complex commercial, transactional, litigation, regulatory and government affairs issues relating to PepsiCo's food businesses in North and South America.

From 2006 through 2008, Mr. Kesselman served as General Counsel of the U.S. Department of Agriculture (the "**USDA**"), where he advised the Secretary of Agriculture and directed all legal activity for the USDA. From 2003 to 2006 he served as Deputy General Counsel in the White House Office of Management and Budget, where he handled a variety of regulatory, budgetary and legal policy matters. Mr. Kesselman also worked at the U.S. Department of Justice as Senior Counsel in the Office of Legal Policy and as a Trial Attorney in its Civil Division. His work there earned him the John Marshall Award, the Attorney General's highest recognition for trial of litigation.

Mr. Kesselman currently serves on the Board of the U.S. Chamber of Commerce Litigation Center and the Penn Law Alumni Board of Managers. He also recently served as a public member of the Administrative Conference of the United States and a member of the Leadership Council on Legal Diversity. He has previously served on the Board of the Dallas Symphony, on the Campaign Cabinet of the United Way of Metropolitan Dallas, and as Chair of the D.C. Bar Administrative Law Section. Mr. Kesselman holds a J.D. from the University of Pennsylvania, and a B.S. in government from Cornell University.

(iv)    **David Lundie**

David Lundie has served as the Chief Technical Operations Officer of Purdue Pharma since January 9, 2020. Mr. Lundie is responsible for all U.S. manufacturing, quality, active pharmaceutical ingredient (API) supply and supply chain activities, including oversight of the operations in the Wilson, NC facility. He is responsible for strategic alignment of Technical Operations with corporate objectives. He was the business lead for the sale of the Coventry Facility and related assets in 2020.

Mr. Lundie previously served as Chief Operating Officer of Rhodes Tech and Rhodes Pharma from December 2018 to January 2020. Before that, Mr. Lundie served as Senior Vice President, Technical Operations at Purdue Pharma from January 2015 to December 2018, during which time he also served as Senior Vice President, Technical Operations and Technical Operations Director at Mundipharma.

Mr. Lundie joined Purdue Pharmaceuticals LP in 2004 as Vice President, Plant Manager after a successful career with Élan Pharmaceuticals, where he held key management positions in the U.S. and Ireland. He subsequently served as Vice President, Manufacturing and Supply Chain and Vice President, Technical Operations.

Mr. Lundie has a Bachelor of Science degree in molecular genetics from Trinity College in Dublin, Ireland, and a Diploma in Management from the Irish Management Institute.

(v)    **Vincent Mancinelli**

Vincent Mancinelli II is the President of Rhodes Pharmaceuticals and has over 34 years of leadership experience in the pharmaceutical industry. He began leading Rhodes

57

NAS1748

Pharmaceuticals in November 2010. From 2009 to 2010 he was a co-founder and Chief Operating Officer of GenPak Solutions, a specialty pharmaceutical packaging company. Previously, he held various senior executive roles at Mylan from 1986 to 2009 including Mylan's Head of North American Operations and General Manager and Executive Vice President and General Manager of UDL Laboratories, a subsidiary of Mylan.

Mr. Mancinelli graduated magna cum laude from West Virginia University with a Bachelor's degree in biology.

### 3. The Debtors' Employees

The Debtors maintain a workforce of dedicated employees that has enabled them to continue to achieve their high standards of performance, productivity, and safety. The Debtors employ approximately 500 people in active status,[58] which represents an approximately 30% reduction since the Petition Date and an approximately 75% reduction since 2017. These employees work in both full-time and part-time positions, including executives, business and operational managers, sales and marketing personnel, medical affairs personnel, research and development personnel, technology operations personnel, human resource professionals, information technology specialists, administrative support staff and other personnel ("**Employees**").

### B. Debtors' Corporate Structure

Purdue Pharma L.P., a Delaware limited partnership, is the Debtors' main operating entity. Purdue Pharma's general partner is PPI. Purdue Pharma also has 22 wholly owned operating and nonoperating subsidiaries in the United States and the British Virgin Islands ("**Purdue Subsidiaries**"). A chart showing the organizational structure of the Debtors is attached hereto as **Appendix E**.

### C. The Debtors' Prepetition Capital Structure

Unlike most debtors, the Debtors have no funded debt, no material past-due trade obligations, and no judgment creditors.

### D. Summary of Events Leading to the Chapter 11 Filings

As noted above in Article I.B, OxyContin, Purdue Pharma's most prominent pain medication, and certain other opioid pain medications have been the target of the Pending Actions, which name the Defendant Debtors, among other parties, and generally allege that the Defendant Debtors falsely and deceptively marketed OxyContin and opioid pain medications. Many further allege that Defendant Debtors and certain related parties are liable for the national opioid crisis.

---

[58] The sale transaction between Rhodes Tech and Normaco Coventry LLC resulted in a headcount reduction of approximately 120 Employees, many of whom received offers of employment from Noramco. The number of employees in active status listed above is after completion of such transaction.

NAS1749

A common set of factual allegations forms the core of these actions: that the Defendant Debtors acted improperly in the marketing and sale of prescription opioid medications, including, principally, OxyContin. The specific causes of action asserted against the Defendant Debtors in the Pending Actions are predicated on both federal and state laws—with variations among the laws of each state. They include: (i) state and federal false claims acts; (ii) state consumer protection laws; (iii) statutory and common law public nuisance; (iv) fraud, fraudulent concealment, deceit, and other willful misconduct; (v) negligence, including negligent misrepresentation, negligence *per se*, and gross negligence; (vi) unjust enrichment; (vii) federal and state civil RICO laws, as well as civil conspiracy; (viii) state-controlled substances acts; (ix) intentional and constructive fraudulent conveyance or transfer; (x) strict products liability; and (xi) wrongful deaths and loss of consortium.

As of the Petition Date, approximately 2,200 of the Pending Actions had been consolidated in a multidistrict litigation pending in the United States District Court for the Northern District of Ohio. There were also hundreds of actions pending against the Debtors in state and territorial courts throughout the country. The state court actions included those asserted by Attorneys General of 46 states (which are not part of the Ohio MDL). Certain of the Defendant Debtors were also named in 13 actions in Canada (the "**Canadian Actions**"). The Canadian Actions were brought on behalf of both private individuals and governmental entities and raised claims predicated on similar allegations and causes of action as the Pending Actions in the United States.

In addition to the Pending Actions, as of the Petition Date, Purdue Pharma was responding to subpoenas and civil investigative demands issued by various components of the DOJ in connection with criminal and civil investigations of Purdue Pharma. The Debtors had been subject to investigation by the DOJ since at least June 2016. Specifically, PPLP received a subpoena from a United States Attorney's Office in the summer of 2016 seeking documents and information relating to the marketing of OxyContin and, beginning in December 2017, received additional subpoenas and other requests for documents and information from several other United States Attorney's Offices and components of the DOJ seeking various documents and other information related to topics including but not limited to PPLP's opioid medications, the Debtors' monitoring programs, payments to professionals, marketing practices, and other matters. In response to the various DOJ requests, to date PPLP has produced to the DOJ more than 13 million documents (totaling over 100 million pages), including more than 2.7 million documents (totaling more than 17 million pages) produced in direct response to the DOJ's requests and millions of additional documents previously produced in civil litigation, state government investigations or Purdue's bankruptcy proceeding and reproduced to the DOJ. PPLP also provided numerous presentations and submissions to the DOJ in cooperation with its investigations and in the course of plea and settlement negotiations.

The sheer number and scale of the Pending Actions were possibly without precedent. Purdue is a mid-sized pharmaceutical company that had approximately 700 employees as of the Petition Date.[59] The lawsuits were spread among courts across the country, involve thousands of plaintiffs with differing interests, include scores of legal claims and theories of damages under multiple states' laws, and were at various procedural stages.

---

[59] Plus approximately 40 employees on short-term disability, long-term disability or severance as of such date.

NAS1750

The onslaught of litigation posed a grave threat to the Debtors' continued viability. Litigation of thousands of Pending Actions to judgment and through appeals in the civil court system would have resulted only in the financial and operational destruction of the Debtors and the immense value they could otherwise provide, and the squandering of hundreds of millions of dollars on legal and other professional fees. Pre-bankruptcy, professionals' fees relating to litigation and government investigations were accruing at an average rate of over $2 million per week, and that was before a single trial against Purdue had commenced.

Moreover, the case-by-case mass tort litigation of the type the Defendant Debtors faced prior to the Petition Date in the civil tort system was neither an efficient nor an equitable way to resolve the asserted liability. Such litigation incentivized a multiplicity of "races to the courthouse" as various plaintiffs vied to be the first to trial. For example, several plaintiffs commenced administrative proceedings seeking dozens of trial days to bypass the normal court process and expedite the time by months or years to a final determination of their claims. This kaleidoscope of piecemeal litigation was all but guaranteed to continue to result in inconsistent outcomes and inequitable treatment, as well as unsustainable cost. Any judgments or settlements extracted in the process would, at best, potentially have benefited only those select few plaintiffs who happened to have been positioned at the beginning of the trial and judgment queue. And it would not have benefited even them, because defending over 2,600 lawsuits to conclusion would almost certainly have forced the Defendant Debtors to file for Chapter 11 protection even had they suffered only a small number of significant adverse judgments at the trial level.

The Debtors commenced the Chapter 11 Cases because chapter 11 was the only way to halt the destruction of value and runaway costs associated with the Pending Actions; centralize all of the claims against the Defendant Debtors; address the claims asserted against them efficiently; resolve the litigation rationally; and consummate a global resolution of the Pending Actions—all while conserving the assets of the Debtors' Estates so that billions of dollars in value could be preserved and vital opioid overdose rescue and addiction treatment medications could be delivered to communities across the country impacted by the opioid crisis.

### E.    Independence of Company from Sacklers

#### 1.    Independent Board

No member of the Sackler Families is currently a member of the Board or employed by the Debtors. The last member of the Sackler Families to serve on the Board resigned in January 2019. The current Board is composed of the following seven directors (the "**Directors**") (a majority of whom have no prior connection to the Sackler Families):

(i)    **Robert S. "Steve" Miller (Chairman of the Board, appointed in July 2018)**

Mr. Miller has a storied, nearly 50-year career in corporate restructuring, including the successful restructurings of Chrysler (during which he served as the CFO), Delphi Corp. (during which he served as the Chairman and CEO), and American International Group, Inc., where he was Non-Executive Chairman. He authored the 2008 book, *The Turnaround Kid*. He has served on more than a dozen corporate boards including U.S. Bank, United Airlines and Dow DuPont.

NAS1751

### (ii) Kenneth Buckfire (At-Large Director, appointed in May 2019)

Kenneth A. Buckfire is President of Miller Buckfire & Co., LLC and a Vice-Chairman of Stifel Financial Corporation's Institutional Banking Group. He specializes in the restructuring and refinancing of highly leveraged companies in the energy, telecommunications, consumer products, technology and information services industries. He has won many awards for leading major restructurings such as the City of Detroit, Calpine and General Growth Properties, and for his innovations in the restructuring field. Prior to co-founding Miller Buckfire in 2002, he was a Managing Director and Co-Head of the Financial Restructuring Group of Wasserstein Perella & Co. He has been a director and co-founder of many public and private companies, and has served as a trustee of several philanthropic and education institutions. He is a Visiting Professor at the Columbia Business School.

Mr. Buckfire received his Bachelor's degree in economics and philosophy from the University of Michigan (1980) and his MBA from Columbia University (1987).

### (iii) John S. Dubel (At-Large Director, appointed in July 2019)

John S. Dubel is the Chief Executive Officer of Dubel & Associates, LLC, a provider of restructuring and turnaround services to underperforming companies, which he founded in 1999. He has over 35 years of experience in Board representation, turnaround management, crisis management, operational restructurings and divestments with respect to distressed companies. Over the course of his career, John has served as an independent board member for numerous companies. In addition, he has served as the Chief Executive Officer of SunEdison, a renewable energy development company, Chief Executive Officer of Financial Guaranty Insurance Company (FGIC), a monoline insurance company, among others, and as a partner in Gradient Partners, L.P., a single-strategy distressed hedge fund.

Mr. Dubel is a member of the Turnaround Management Association and the American Bankruptcy Institute. Mr. Dubel received a Bachelor in Business Administration degree from the College of William and Mary.

### (iv) Michael Cola (Class A Director, appointed in February 2019; At-Large Director, appointed in July 2019)

Michael Cola is the CEO of Cerecor Inc. He was appointed CEO in February 2020 in connection with the merger of Cerecor Inc. with Aevi Genomic Medicine, where he served as the President and CEO since September 2013. Prior to joining Aevi Genomic Medicine, Mr. Cola served as President of Specialty Pharmaceuticals at Shire plc, a global specialty pharmaceutical company, from 2007 until April 2012. He joined Shire in 2005 as EVP of Global Therapeutic Business Units and Portfolio Management. Prior to joining Shire, he was with Safeguard Scientifics, Inc., a growth capital provider to life sciences and technology companies, where he served as President of the Life Sciences Group. While at Safeguard, Mr. Cola served as Chairman and CEO of Clarient, Inc., a cancer diagnostics company subsequently acquired by GE Healthcare, and as Chairman of Laureate Pharma, Inc. Prior to Safeguard Scientifics, Mr. Cola held senior positions in product development and commercialization at Astra Merck, a pharmaceutical company, and at Astra Zeneca, a global biopharmaceutical company. Mr. Cola

61

NAS1752

received a B.A. in biology and physics from Ursinus College and an M.S. in biomedical science from Drexel University. He serves on the Board of Directors of Sage Therapeutics and Phathom Pharmaceuticals, and currently serves as Chairman of the Board of Governors of the Boys & Girls Clubs of Philadelphia.

(v) **Anthony Roncalli (Class B Director, appointed in December 2018)**

Anthony Roncalli is an attorney and former partner at Norton Rose Fulbright LLP. Mr. Roncalli has extensive experience advising the Debtors, IACs, and other pharmaceutical and other companies on corporate governance matters and complex tax and structure planning. Mr. Roncalli also has extensive pharmaceutical transaction experience including licensing, asset acquisition and divestiture transactions and complex pharmaceutical research, development and collaboration transactions. Mr. Roncalli received his Bachelor's degree from Georgetown University and his J.D. from Boston College Law School.

(vi) **Cecil Pickett, Ph.D. (Class A Director, appointed in January 2010)**

Dr. Cecil B. Pickett recently served as the President of Research and Development at Biogen and a member of the Board of Directors. Dr. Pickett earned his B.S. in biology from California State University at Hayward and his Ph.D. in cell biology from University of California, Los Angeles. He previously served as Senior Vice President and President of Schering-Plough Research Institute, the pharmaceutical research arm of Schering-Plough Corporation. Dr. Pickett came to Schering-Plough Research Institute from Merck Research Laboratories, Montreal, Canada, and West Point, Pa., where he served as Senior Vice President of Basic Research. During his 15 years at Merck & Co., Dr. Pickett held various positions of increasing responsibility, including Research Fellow, Biochemical Regulation; Associate Director, Department of Molecular Pharmacology and Biochemistry; Director, Department of Molecular Pharmacology and Biochemistry; Executive Director of Research at the Merck Frosst Center for Therapeutic Research, Montreal; and Vice President of the center. Dr. Pickett also served as a member of the Zimmer Biomet Board of Directors from 2008 through 2018. Dr. Pickett is currently a member of the Board of Directors of Yumanity Therapeutics, Inc.

Dr. Pickett is an expert in drug discovery and development. During his career, he has overseen all aspects of the internal research and collaboration with partners aimed at developing advanced drug therapies and has played an integral role in bringing several large and small molecule candidates into clinical development.

Dr. Pickett has published extensively in leading research journals and has been a frequent speaker at scientific symposia and conferences. He has received several major academic awards, appointments and fellowships and has served on a number of scientific committees and editorial boards of research journals and organizations. His awards and honors include the UCLA Alumni Association Award for Scholarly Achievement and Academic Distinction; the first Robert A. Scala Award and Lectureship in Toxicology of Rutgers University and the University of Medicine and Dentistry of New Jersey; and the CIIT Centers for Health Research Founders' Award. Dr. Pickett served as a member of the FDA Science Board, the Advisory Committee to the Director of the National Institutes of Health and the National Cancer Policy Board of the Institute of Medicine. He was elected to the National Academy of Medicine in 1993 and has

NAS1753

been a member of the American Society for Cell Biology, American Society of Biochemistry & Molecular Biology, American Association for Cancer Research, and American Association for the Advancement of Science.

Dr. Pickett previously served on the Boards of the following IACs: MNP Consulting Limited (Delaware); Mundipharma Verwaltungsgesellschaft mbH (Germany); and Napp Pharmaceutical Holdings Ltd. (United Kingdom).  He resigned from each of these positions on or prior to August 9, 2018.

### (vii)    F. Peter Boer, Ph.D. (Class B Director, appointed in April 2008)

Dr. Boer is President and CEO of Tiger Scientific Inc., a firm providing consulting and investment services in the technology arena.  He has served as President of the Industrial Research Institute and chaired the Selection Committee of the National Medals of Technology, administered by the U.S. Department of Commerce.  In addition, Dr. Boer was the John J. Lee Adjunct Professor at Yale University, where he taught environmental engineering in the School of Engineering and Valuation of Technology in the School of Management.

He has served on advisory committees of Princeton University, Harvard University, the University of Chicago, the Los Alamos National Laboratory, and the Environmental Protection Agency.

Before founding Tiger Scientific, he served as Executive Vice President and Chief Technical Officer of W.R. Grace & Co., with responsibilities for R&D, engineering, business development, environment, health, and safety.  Prior to that he was with Dow Chemical Company in a variety of R&D and business management positions and with American Can Company as its Vice President and General Manager for Research and Development.  Dr. Boer holds an A.B. degree in physics from Princeton University and a Ph.D. in chemical physics from Harvard University, where he did research in borane chemistry that contributed to Professor W. N. Lipscomb's 1976 Nobel Prize in Chemistry.  He is also the author of nine books and approximately 80 scientific papers and patents.

Dr. Boer previously served on the Boards of the following IACs and then-separate Rhodes entities: MNP Consulting Limited (Delaware); Mundipharma Verwaltungsgesellschaft mbH (Germany); Napp Pharmaceutical Holdings Ltd. (United Kingdom); Rhodes Pharmaceuticals Inc. (New York); Rhodes Technologies Inc. (Delaware); and SVC Pharma Inc. (Delaware).  He resigned from each of these positions on or prior to August 26, 2018.

### 2.    Formation of the Special Committee

Purdue Pharma's governance documents irrevocably granted an independent Special Committee of the Board of Directors exclusive authority over the prosecution, defense, and settlement of any causes of action Purdue Pharma may assert against its shareholders as well as members of the Sackler Families and their affiliates.

On May 14, 2019, PPI's shareholders adopted an Amended and Restated Shareholders' Agreement (the "**Shareholders' Agreement**") which, among things, established a "Transaction Committee," and on the same date, PPI filed a corresponding Restated Certificate of

63

NAS1754

Incorporation ("**Restated Certificate of Incorporation**"). The Restated Certificate of Incorporation provided that the Transaction Committee would be composed of the independent Chairman of the Board, who would chair the committee, and such other Directors appointed by a majority of the Board, none of whom could be a member of the Sackler Families. The Restated Certificate of Incorporation gave the Transaction Committee exclusive authority over "all dividends by the Corporation to its Shareholders and all distributions by PPLP to its general and/or limited partners." The Restated Certificate of Incorporation also gave the Transaction Committee authority over any "Affiliate Transaction," defined as including transactions between PPI, PPLP, or PPLP's subsidiaries, on the one hand, and any Class A Shareholder, any Class B Shareholder, any person specified by the Class A or B Shareholders, and any affiliate (other than PPI, PPLP or PPLP's subsidiaries), on the other hand.

On September 3, 2019, PPI's shareholders agreed to an amendment of the Shareholders' Agreement that, among other things, renamed the Transaction Committee the "Special Committee," and on the same date, PPI filed a Certificate of Amendment to its Restated Certificate of Incorporation ("**A&R Certificate of Incorporation**"). The A&R Certificate of Incorporation gave the Special Committee the same authorities as had been granted to the Transaction Committee and, in addition, authority over "Affiliate Litigation," defined as "the prosecution, defense or settlement of any claim or litigation" between the Debtors and the Sackler Families, trusts established by or for the benefit of members of the Sackler Families, and other Sackler-related entities, including the IACs (collectively, the "**Sackler Entities**"). The A&R Certificate of Incorporation made clear that "no dividend, distribution, Affiliate Transaction or Affiliate Litigation shall take place without the approval of the Special Committee." The A&R Certificate of Incorporation did not modify the composition of the Special Committee, except to allow any At-Large Director to serve as chair of the Special Committee, and still prohibited any member of the Sackler Families from serving on it.[60]

Chairman Miller and At-Large Directors Buckfire, Cola and Dubel are the members of the Special Committee. Mr. Dubel serves as Chairman of the Committee. Each member of the Special Committee has decades of restructuring and/or corporate governance expertise, including, in the case of Mr. Cola, in the pharmaceutical and life sciences industries. Their resumes can be found above, *see supra* Article II.E..1. None of the Directors serving on the Special Committee has any prior relationship with either of the Sackler Families.

To further safeguard their independence, the members of the Special Committee are protected against removal by the shareholders. A letter agreement executed by PPI's shareholders, dated November 6, 2019 ("**2019 Letter Agreement**"), irrevocably delegated to the General Counsel of PPI, as proxy for PPI's shareholders, several of the shareholders' rights, including the ability to appoint and remove the Chairman of the Board and the At-Large Directors, all of whom serve on the Special Committee. The 2019 Letter Agreement directs the General Counsel of PPI to act in accordance with the vote of two-thirds of the Directors in Office of PPI and, in the case of any decision to remove any Director from the Board, to disregard the vote of any affected Director.

---

[60] As defined in the A&R Certificate of Incorporation, At-Large Directors are those elected jointly by the Class A Shareholders and the Class B Shareholders. Class A Directors are those elected by the Class A Shareholders and Class B Directors are those elected by the Class B Shareholders.

NAS1755

### 3. Other Governance Improvements

In addition to adding the independent Directors to the Board and forming the Special Committee (as described above), the Debtors made other significant changes with the goal of allowing the Debtors to operate independently before commencement of these Chapter 11 Cases. All general partnership relationships between Debtor and non-Debtor entities were terminated prior to the Petition Date. In particular, PPI was removed from its role as the general partner of certain non-Debtor entities and replaced certain non-Debtor entities as the general partner of Debtor entities Purdue Pharmaceutical Products L.P., Avrio Health L.P. and Purdue Neuroscience Company. As a result, all of PPLP's subsidiaries were directly or indirectly effectively managed by PPI as of the Petition Date and during the pendency of these Chapter 11 Cases. Officers or employees of PPLP that were simultaneously directors, officers or employees of IACs resigned from such roles at either such IACs or PPLP. As a result, no current officer or employee of PPLP was director, officer or employee of any IAC on the Petition Date or during the pendency of these Chapter 11 Cases. In addition, under the supervision of the Special Committee, the Debtors reviewed agreements between the Debtors and the IACs and terminated, amended or documented such agreements as appropriate.

### 4. Cessation of Cash Distributions

All cash distributions to the Sackler Families ceased in 2017. In 2017, Purdue Pharma lent $313 million to its parent, Pharmaceutical Research Associates L.P. ("**PRA**"), which was repaid prior to the Petition Date. A loan of $1.7 million by Purdue Pharma to an IAC was also repaid in 2018. There are no remaining outstanding loans from Purdue Pharma to any of the IACs. Reimbursement of the officer/director legal fees owed to members of the Sackler Families ceased as of March 1, 2019, and certain expenses of members of the Sackler Families over the last 10 years have been repaid.

At the direction of the Special Committee and Davis Polk, AlixPartners LLP ("**AlixPartners**") (with the support of Davis Polk and Bates White LLC ("**Bates White**")) prepared (i) a 355-page report (the "**Cash Transfers of Value Report**") setting forth the results of a comprehensive cash transfers of value analysis, based on the identification and quantification of transfers of value on or after January 1, 2008 made as cash distributions, compensation, legal expenses and benefits provided to or for the benefit of the Sackler Families; and (ii) a 400-page report (the "**Intercompany and Non-Cash Transfers Analysis**") setting forth the results of a comprehensive intercompany and non-cash transfer analysis based on the identification and quantification of significant transfers of value on or after January 1, 2008 made as non-cash transfers and cash payments for goods, services, and other consideration among Purdue, PRA, the IACs, and Rhodes. The Cash Transfers of Value Report exhaustively details the $10.4 billion of cash distributions made to or for the benefit for the shareholders from January 1, 2008 to September 30, 2019 (in particular, $4.1 billion in U.S. partner cash distributions, $1.5 billion in distributions for the benefit of ex-US IACs, and $4.7 billion in tax distributions). The Intercompany and Non-Cash Transfers Analysis identifies and describes 27 categories of dealings between Debtor entities and the IACs, including terms of licenses for various drugs sold by the Debtor entities and IACs, shared R&D, manufacturing and administrative services, and purchases of finished products and active pharmaceutical ingredients, and details 10 non-cash distributions of assets from Purdue Pharma to PRA, which include

NAS1756

distributions of equity interests in other IACs and third-party pharmaceutical companies and of certain intellectual property rights.

Together, these two massively detailed reports provide a complete and total catalog of the financial and contractual connections between the Debtors and the Sackler Families dating back more than a decade. These two reports exemplify the Debtors' extraordinary transparency and commitment to providing creditors and other parties-in-interest with the information necessary to evaluate potential claims and progress towards a settlement.

On December 16, 2019, the Debtors filed the Cash Transfers of Value Report with the Bankruptcy Court [D.I. 654]. On May 29, 2020, the Debtors filed the Intercompany and Non-Cash Transfers Analysis with the Bankruptcy Court [D.I. 1194].

## ARTICLE III

## THE CHAPTER 11 CASES

On the Petition Date, each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered under the caption *In re Purdue Pharma L.P.*, Case No. 19-23649. The Debtors have continued in possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

### A.    First-Day Motions

On the Petition Date, the Debtors filed a number of "first-day" motions and applications seeking various relief from the Bankruptcy Court and authorizing the Debtors to maintain their operations in the ordinary course (collectively, the "**First-Day Motions**"). This relief was designed to ensure a seamless transition between the Debtors' prepetition and postpetition business operations, facilitate a smooth transition into chapter 11, maximize the value of the Debtors' assets, and minimize the effects of the commencement of the Chapter 11 Cases. A description of the First-Day Motions is set forth in the *Declaration of Jon Lowne in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* [D.I. 3].

### B.    Appointment of Statutory Committee

On September 27, 2019, the United States Trustee for the Southern District of New York (the "**United States Trustee**") appointed the official committee of unsecured creditors (the "**Creditors' Committee**"). The Creditors' Committee, as originally constituted, comprised the following entities and persons: (i) Blue Cross and Blue Shield Association; (ii) CVS Caremark Part D Services, L.L.C. and CaremarkPCS Health, L.L.C.; (iii) Ryan Hampton; (iv) Cheryl Juaire; (v) LTS Lohmann Therapy Systems, Corp.; (vi) Pension Benefit Guaranty Corporation; (vii) Walter Lee Salmons; (viii) Kara Trainor; and (ix) West Boca Medical Center. *See Notice of Appointment of Official Committee of Unsecured Creditors* [D.I. 131].

NAS1757

On October 21, 2019, the Creditors' Committee granted a request by the MSGE[61] to join the Creditors' Committee in an *ex officio* capacity, and the MSGE designated Cameron County, Texas to act as an *ex officio* member.

On October 9, 2019, the Native American Tribes filed a motion requesting entry of an order directing the U.S. Trustee to appoint an official committee of Native American affiliated creditors comprising Native American tribes, tribal members and/or support organizations, health organizations or clinics that serve Native American communities. *See Motion Seeking Appointment of an Official Committee of Native American and Native American Affiliated Creditors* [D.I. 276]. On November 4, 2019, the Creditors' Committee invited the Native American Tribes to serve as an *ex officio* member of the Creditors' Committee. On November 6, 2019, the Native American tribes appointed the Cheyenne and Arapaho Tribes to serve as an *ex officio* member of the Creditors' Committee and agreed to withdraw their motion.

On June 18, 2020, the Creditors' Committee invited certain public school districts (the "**Public School Districts**") to serve as an *ex officio* member of the Creditors' Committee. The Public School Districts accepted this invitation on June 19, 2020 and appointed Thornton Township High School District 205 to serve as an *ex officio* member of the Creditors' Committee.

## C.     Filing of Schedules of Assets and Liabilities and Statements of Financial Affairs

On September 23, 2019, the Debtors filed the *Debtors' Motion for an Order Extending the Time to File Schedules of Assets and Liabilities, Schedules of Current Income and Expenditures, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs* [D.I. 3] (the "**Extension Motion**"). On September 18, 2019, the Bankruptcy Court entered an order approving the Extension Motion [D.I. 7]. On October 29, 2019, the Debtors filed their Schedules of Assets and Liabilities and Statements of Financial Affairs [D.I. 357–405].

## D.     Professional Advisors

The Debtors' primary professional advisors include the following:

- On September 16, 2019, the Debtors filed the *Application for an Order Appointing Prime Clerk LLC as Claims and Noticing Agent for the Debtors* [D.I. 4] (the "**Prime Clerk 156(c) Retention Application**"). On September 18, 2019, the Bankruptcy Court entered an order approving the Prime Clerk 156(c) Retention Application [D.I. 60]. On November 6, 2019, the Debtors filed the *Application for an Order Authorizing Employment and Retention of Prime Clerk LLC as Administrative Advisor Nunc Pro Tunc to the Petition Date* [D.I. 439] (the "**Prime Clerk Retention Application**"). On November 21, 2019, the Bankruptcy Court entered an order approving the Prime Clerk Retention Application [D.I. 531].

- On November 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Davis Polk & Wardwell LLP as Attorneys for the Debtors*

---

[61] The Rule 2019 Statement describing the composition of the MSGE is filed at [D.I. 1794].

NAS1758

*Nunc Pro Tunc to The Petition Date* [D.I. 419] (the "**Davis Polk Retention Application**"). On November 25, 2019, the Bankruptcy Court entered an order approving the Davis Polk Retention Application [D.I. 542].

- On November 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Dechert LLP as Special Counsel for the Debtors Nunc Pro Tunc to The Petition Date* [D.I. 424] (the "**Dechert Retention Application**"). On November 21, 2019, the Bankruptcy Court entered an order approving the Dechert Retention Application [D.I. 525].

- On November 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ King & Spalding LLP as Special Counsel for the Debtors Nunc Pro Tunc to The Petition Date* [D.I. 427] (the "**King & Spalding Retention Application**"). On November 25, 2019, the Bankruptcy Court entered an order approving the King & Spalding Retention Application [D.I. 543].

- On November 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Wilmer Cutler Pickering Hale and Dorr LLP as Special Counsel for the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 428] (the "**Wilmer Hale Retention Application**"). On November 25, 2019, the Bankruptcy Court entered an order approving the Wilmer Hale Retention Application [D.I. 544].

- On November 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ AlixPartners, LLP as Financial Advisor Nunc Pro Tunc to the Petition Date* [D.I. 429] (the "**AlixPartners Retention Application**"). On November 21, 2019, the Bankruptcy Court entered an order approving the AlixPartners Retention Application [D.I. 527].

- On November 5, 2019, the Debtors filed the *Debtors' Application to Employ PJT Partners LP as Investment Banker Nunc Pro Tunc to the Petition Date* [D.I. 430] (the "**PJT Retention Application**"). On December 5, 2019, the Debtors filed the *Supplemental Declaration of Timothy Coleman in Support of the Debtors' Application to Employ PJT Partners LP as Investment Banker Nunc Pro Tunc to the Petition Date* [D.I. 590]. On December 20, 2019, the Bankruptcy Court entered an order approving the PJT Retention Application [D.I. 728].

- On November 5, 2019, the Debtors filed the *Debtors' Application to Employ Ernst & Young LLP as Its Auditor Nunc Pro Tunc to the Petition Date* [D.I. 432] (the "**E&Y Retention Application**"). On December 23, 2019, the Bankruptcy Court entered an order approving the E&Y Retention Application [D.I. 698]. On August 21, 2020, the Debtors filed the *Notice of Expansion of Scope of Services to Be Provided Pursuant to the Ernst & Young Retention Order* [D.I. 1598]. On September 22, 2020, the Debtors filed the *Second Notice of Expansion of Scope of Services to Be Provided Pursuant to the Ernst & Young Retention Order* [D.I. 1713]. On August 21, 2020, the Debtors filed the *Third Notice of Expansion of*

NAS1759

*Scope of Services to Be Provided Pursuant to the Ernst & Young Retention Order* [D.I. 2035].

- On November 6, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Skadden, Arps, Slate, Meagher & Flom LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 438] (the "**Skadden Retention Application**"). On November 25, 2019, the Bankruptcy Court entered an order approving the Skadden Retention Application [D.I. 545].

- On December 5, 2019, the Debtors filed the *Application of Debtors for an Order Authorizing Them to Retain and Employ Jones Day as Special Counsel, Nunc Pro Tunc to the Petition Date* [D.I. 592] (the "**Jones Day Retention Application**"). On December 20, 2019, the Bankruptcy Court entered an order approving the Jones Day Retention Application [D.I. 690].

- On December 5, 2019, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Arnold & Porter Kaye Scholer LLP as Special Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [D.I. 593] (the "**Arnold & Porter Retention Application**"). On December 20, 2019, the Bankruptcy Court entered an order approving the Arnold & Porter Retention Application [D.I. 691].

- On February 7, 2020, the Debtors filed the *Application for Order Authorizing Employment and Retention of KPMG LLP as Tax Consultants to the Debtors and the Official Committee of Unsecured Creditors Nunc Pro Tunc to December 23, 2019* [D.I. 815] (the "**KPMG Retention Application**"). On February 24, 2020, the Bankruptcy Court entered an order approving the KPMG Retention Application [D.I. 867].

- On May 13, 2020, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Cornerstone Research as Consultants to the Debtors Nunc Pro Tunc to January 14, 2020* [D.I. 1150] (the "**Cornerstone Retention Application**"). On June 11, 2020, the Bankruptcy Court entered an order approving the Cornerstone Retention Application [D.I. 1255].

- On April 13, 2021, the Debtors filed the *Application of Debtors for Authority to Retain and Employ Grant Thornton LLP as Tax Structuring Consultants to the Debtors Nunc Pro Tunc to January 20, 2021* [D.I. 1150] (the "**Grant Thornton Retention Application**"). On April 28, 2021, the Bankruptcy Court entered an order approving the Grant Thornton Retention Application [D.I. 2760].

- The Bankruptcy Court approved procedures for the Debtors to retain and employ certain professionals utilized by the Debtors in the ordinary course of business pursuant to an order entered on November 26, 2019 [D.I. 548].

On April 29, 2021, the United States Trustee filed the *Motion of United States Trustee Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Entry of an Order Approving (1) Settlement*

NAS1760

*Agreement with Skadden, Arps, Slate, Meagher & Flom, LLP, Wilmer Cutler Pickering Hale and Dorr LLP, and Dechert LLP and (2) Certain Releases by the Debtors* [D.I. 2763] (the "**Settlement Motion**"). As set forth in the Settlement Motion, Skadden, Arps, Slate, Meagher & Flom, LLP; Wilmer Cutler Pickering Hale and Dorr LLP; and Dechert LLP (collectively, the "**Firms**") did not disclose a written joint defense and common interest agreement that they each entered into prepetition on behalf of the Debtors with various other parties, including members of the Sackler families, as a "connection" at the time of filing of their respective retention applications. The United States Trustee and the Firms disagree about whether the common interest agreement is a "connection" that is required to be disclosed. The Motion seeks approval of a settlement agreement between the United States Trustee and the Firms under which the Firms agree to supplement their retention applications to reflect any common interest or joint defense agreement that the Firms entered into on behalf of Debtors with any party in interest identified in the most recent list provided by Debtors' bankruptcy counsel and the Firms will collectively reduce their pending or future fee applications or monthly fee statements, as applicable, by $1.0 million in the aggregate. The United States Trustee and the Debtors and their estates will release the Firms from all claims relating to alleged disclosure failures concerning common interest agreements.

### E. CCAA Proceedings

On September 19, 2019, the Ontario Superior Court of Justice (Commercial List) in Toronto, Ontario, Canada (the "**Canadian Court**") entered the *Initial Recognition Order (Foreign Main Proceeding)* pursuant to Part IV of the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended, that, among other things, recognized the Chapter 11 Cases as foreign main proceedings (Court File No. CV-19-627656-00CL) (the "**CCAA Proceedings**").

The orders issued by the Canadian Court, among other things, (i) recognized the Chapter 11 Cases as "foreign main proceedings" under the CCAA; (ii) stayed (a) all proceedings in Canada currently under way against or in respect of any of the Debtors or affecting their business or property and (b) all proceedings against certain Canadian affiliates of the Debtors, including Purdue Pharma Inc., Purdue Frederick Inc., and Purdue Pharma;[62] (iii) appointed Ernst & Young Inc. as information officer to report to the Canadian Court, creditors and other stakeholders in Canada on the status of the Chapter 11 Proceedings; and (iv) recognized certain orders entered in the Chapter 11 Cases to permit the Chapter 11 Debtors to continue operating their respective businesses during the course of the Chapter 11 Proceedings.

### F. Settlement Framework

Shortly before the Petition Date, the Debtors, the Sackler Families, and the Ad Hoc Committee reached an agreement in principle regarding the Settlement Framework (as defined above). The Settlement Framework had three basic components: (i) Purdue Pharma's existing shareholders would relinquish all of their equity interests in the Debtors and consent to the transfer of all of the Debtors' assets to a trust or similar post-emergence structure for the benefit of claimants and the U.S. public, "free and clear" of liabilities to the fullest extent permitted by

---

[62] As used in this sentence, "Purdue Pharma Inc." and "Purdue Pharma" refer to Canadian entities that are IACs and not the Debtor entities PPI or PPLP.

**NAS1761**

law; (ii) Purdue Pharma's existing shareholders would engage in a sale process for their ex-U.S. pharmaceutical companies; and (iii) Purdue Pharma's existing shareholders would contribute an additional $3 billion over seven years (in addition to 100% of the value of all 24 Debtors), with the hope of substantial further contemplated contributions from the sales of their ex-U.S. pharmaceutical businesses. This Settlement Framework served as the starting point for negotiating a settlement that could be finalized and effectuated only through chapter 11.

As the Debtors explained early in these Chapter 11 Cases, the Debtors have long viewed the process of confirming a Plan as requiring passing through four "gates." Gate one was reaching agreement with a critical mass of important plaintiff constituencies and the Sackler Families on the Settlement Framework shortly before the Petition Date. Gate two was memorializing the Settlement Framework in the term sheet agreed by and among the Debtors, the Ad Hoc Committee, and the Sackler Families filed with the Court on October 8, 2019. *See Notice of Filing of Term Sheet with Ad Hoc Committee* [D.I. 257]. Gate three was proposing a comprehensive restructuring transaction based on the Settlement Framework, which the Debtors had always recognized would require massive amounts of diligence, structuring and negotiation. *See* Nov. 19, 2019 Hr'g Tr. 70:8-71:14. The Debtors and their key stakeholders engaged in an extensive process leading up to filing the Plan, including through the Court-ordered Mediation (defined below), to develop, build upon and refine the Settlement Framework. That process involved negotiating the proposed terms of the settlement of claims against the Debtors' shareholders, reaching agreement on the allocation of estate value among various classes of creditors and addressing a host of other issues expressly left open in the term sheet memorializing the Settlement Framework. The Plan represents the culmination of this intensive further negotiation and diligence process. Gate four is the Confirmation Hearing where the Debtors will seek approval of the substantially improved settlement embodied in the Plan.

## G.    Preliminary Injunction and Voluntary Injunction

On September 18, 2019, the Debtors filed the *Motion for a Preliminary Injunction* [Adv. Proc. No. 19-08289, D.I. 2, 3] (the "**Preliminary Injunction Motion**") for a preliminary injunction (the "**Preliminary Injunction**") to stay active litigation against the Debtors, as well as against their current and former owners (including any trusts and their respective trustees and beneficiaries), officers, directors, employees, and associated entities, arising out of the Debtors' manufacture, distribution, and sale of prescription opioid medications.

The Preliminary Injunction Motion also sought entry of a voluntary injunction against the Debtors, enjoining the Debtors from, among other things, promoting opioid products and providing financial support to third parties for the purpose of promoting opioids or opioid products, subject to enforcement by the Bankruptcy Court (the "**Voluntary Injunction**"). The Debtors requested that the unprecedented Voluntary Injunction be entered to subject themselves to the coercive power of the Court with respect to the commitments set forth therein, to make clear that they are not in any way using chapter 11 as an improper shield for conduct challenged in the Pending Actions, and to demonstrate that they are committed to safely and responsibly maintaining the continuity of supply of the Debtors' FDA-approved medications and fully complying with all federal and state laws and regulations governing pharmaceutical companies.

NAS1762

On October 11, 2019, the Bankruptcy Court held an evidentiary hearing on the Debtors' Preliminary Injunction Motion. The Preliminary Injunction Motion was supported by certain estate stakeholders, including the Creditors' Committee and Ad Hoc Committee, and was opposed by the NCSG and other objectors. On October 11, 2019, the Bankruptcy Court issued an oral ruling entering the Preliminary Injunction, including the Voluntary Injunction, on an interim basis through and including November 6, 2019. *See* Order Pursuant to 11 U.S.C. § 105(a) Granting, in part, Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Oct. 11, 2019) [D.I. 82]. On November 6, 2019, the Bankruptcy Court granted the Preliminary Injunction, including the Voluntary Injunction, through April 8, 2020, again over the objection of the NCSG and other objectors, including certain Tennessee plaintiffs (the "**Tennessee Plaintiffs**"). *See* Second Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. Nov. 6, 2019) [D.I. 105]. On March 30, 2020, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, for an additional 180 days, until October 5, 2020, over the limited objection of the NCSG and the Tennessee Plaintiffs. *See* Eighth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. March 30, 2020) [D.I. 168].[63] On October 1, 2020, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, until March 1, 2021, over the limited objection of the NCSG, the Tennessee Plaintiffs, and certain other objectors. *See* Thirteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. October 1, 2020) [D.I. 194]. On March 1, 2021, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, until March 24, 2021, over the limited objection of the Tennessee Plaintiffs. *See* Fifteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. March 1, 2021) [D.I. 224]. On March 26, 2021, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, until April 21, 2021, over the objections of the Non-Consenting States, the Ad Hoc Committee on Accountability, and Tennessee Plaintiffs. *See* Sixteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. March 26, 2021) [D.I. 241]. On April 22, 2021, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, until May 20, 2021, over the objections of the Non-Consenting States and the Ad Hoc Committee on Accountability. *See* Seventeenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. April 22, 2021) [D.I. 254]. On May 20, 2021, the Bankruptcy Court entered an order granting the Debtors' motion to extend the Preliminary Injunction, including the Voluntary Injunction, until July 16, 2021, over the objections of the

---

[63] On August 11, 2020, in an appeal filed by the Tennessee Plaintiffs, the United States District Court for the Southern District of New York affirmed the Preliminary Injunction, as extended by the Bankruptcy Court on March 30, 2020. *See In re Purdue Pharmaceuticals, L.P.*, No. 19-cv-10941 (CM), 2020 WL 4596869 (S.D.N.Y. Aug. 11, 2020).

NAS1763

Non-Consenting States and the Ad Hoc Committee on Accountability. *See* Eighteenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction, *Purdue Pharma L.P. v. Commonw. of Mass.*, Adv. Pro. No. 19-08289 (Bankr. S.D.N.Y. May 24, 2021) [D.I. 264] (the "**Injunction Order**").[64]

The Voluntary Injunction, the terms of which reflect extensive discussions with and input from parties-in-interest including the NCSG, enjoins the Debtors from, among other things: (i) engaging in the promotion of opioids or opioid products to prescribers and patients, including through (a) employing sales representatives to promote opioids or opioid products, or (b) supporting (financially, in kind or by distributing) any advertising that promotes opioid or opioid products, whether print or online; (ii) compensating (x) sales or marketing employees through agreements or packages tied to sales volume, sales goals, or sales quotas for opioid products, or (y) any person for the prescribing, sale, use, or distribution of opioid products (except through rebates, chargebacks, and/or savings cards); and (iii) sponsoring or supporting (financially or in kind) any medical society or patient advocacy group for the purpose of promoting opioid products. There are exceptions in the Voluntary Injunction to permit Debtors, among other things, to maintain a corporate website and to continue to provide information required by law, scientific and medical information, and information on the FDA-approved labeling.

## H.    Appointment of Monitor

At the Bankruptcy Court's suggestion, the Debtors agreed to retain a monitor, selected in consultation with the Creditors' Committee, the NCSG, and the Ad Hoc Committee, to report on the Debtors' compliance with the terms of the Voluntary Injunction every 90 days. On February 21, 2020, the Debtors retained Secretary Thomas J. Vilsack, former United States Secretary of Agriculture and former Governor of Iowa, to serve as the monitor ("**Monitor**").

On May 20, 2020, the Monitor filed the Initial Monitor Report [D.I. 1175] (the "**Initial Monitor Report**") with the Bankruptcy Court, describing actions taken by the Monitor to date to determine compliance with the terms and conditions of the Voluntary Injunction and providing a set of recommendations. On August 18, 2020, the Monitor filed the Second Monitor Report [D.I. 1584] (the "**Second Monitor Report**") with the Bankruptcy Court, describing the steps taken since the Initial Monitor Report to determine compliance with the terms and conditions of the Voluntary Injunction, including retention of expert services, and providing a set of further recommendations. On November 16, 2020, the Monitor filed the Third Monitor Report [D.I. 1956] (the "**Third Monitor Report**") with the Bankruptcy Court, describing the steps taken since the Second Monitor Report to determine compliance with the terms and conditions of the

---

[64]    Arizona, California, Colorado, Connecticut, Delaware, the District of Columbia, Hawaii, Idaho, Illinois, Iowa, Maine, Maryland, Massachusetts, Minnesota, New Hampshire, New Jersey, New York, Nevada, North Carolina, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, Washington, Wisconsin, the NCSG (as listed on the October 11, 2019 Verified Statement pursuant to Bankruptcy Rule 2019 filed under Docket No. 296 of Case No. 19-23649), the AHC and each of its members (as listed on the October 10, 2019 Verified Statement pursuant to Bankruptcy Rule 2019 filed under Docket No. 279 of Case No. 19-23649), and the MSGE and each of its members (as listed on the October 30, 2019 Verified Statement pursuant to Bankruptcy Rule 2019 filed under Docket No. 409 of Case No. 19-23649) (collectively, the "**Voluntarily Bound Parties**") have each consented and agreed to continue to abide by the terms of the *Seventeenth Amended Order Pursuant to 11 U.S.C. § 105(a) Granting Motion for a Preliminary Injunction*, without the need to have any order entered against them.

NAS1764

Voluntary Injunction and providing a set of further recommendations. On February 3, 2021, the Monitor filed the Fourth and Final Monitor's Report [D.I. 2350] (the "**Fourth Monitor's Report**") describing the steps taken since the Third Monitor Report to determine compliance with the terms and conditions of the Voluntary Injunction and providing a set of further recommendations. In each of these four reports, the Monitor stated that the Debtors had been "responsive and cooperative" with the Monitor and that they had made "good faith efforts to comply with the terms and conditions of the Voluntary Injunction."

On February 3, 2021, pursuant to the Fourth and Final Monitor's Report, Secretary Vilsack formally requested in the Fourth Monitor's Report to be discharged of his duties as Monitor. On February 18, 2021, the Debtors retained Stephen Bullock, former Montana Governor and former Montana Attorney General, to replace Secretary Vilsack as Monitor.

On May 20, 2021, the Monitor (now Stephen Bullock) filed the Fifth Monitor's Report [D.I. 2891] (the "**Fifth Monitor's Report**"), which stated that the Debtors had been "responsive and cooperative" with the Monitor and "appear to be making a good-faith effort to comply with the terms and conditions of the Injunction."

## I. Appointment of Fee Examiner

On April 8, 2020, the Bankruptcy Court entered the *Order Authorizing the Appointment of Independent Fee Examiner Pursuant to 11 U.S.C. § 105(a) and Modifying Interim Compensation Procedures for Certain Professionals Employed Pursuant to 11 U.S.C. § 327* [D.I. 1023], appointing David M. Klauder as the fee examiner in these Chapter 11 Cases.

## J. Emergency Relief Fund Negotiations

Soon after the Petition Date, negotiations began between the Debtors, the UCC, the AHC, the NCSG, the MSGE and various other stakeholders regarding a proposal to dedicate approximately $200 million of the Debtors' cash on hand to establish an emergency relief fund (the "**ERF**" or the "**Emergency Relief Fund**") during the pendency of the Chapter 11 Cases to provide emergency relief and assistance to respond to the opioid crisis. The Debtors supported the proposal to establish the ERF and believed that the ERF should be distributed as quickly and efficiently as practicable, with the goal of putting the Debtors' assets to work funding worthy causes on the front lines of the opioid crisis rather than sitting on the Debtors' balance sheet.

After high-level negotiations among the parties regarding the nature of the ERF during the initial months of the Chapter 11 Cases, both the Creditors' Committee and AHC began developing detailed proposals for the structure of the ERF. While the AHC worked extensively with governmental constituencies to develop their proposal, the Debtors in parallel worked with the Creditors' Committee to refine the Creditors' Committee's initial proposal. During this time, the parties also continued to engage with each other regarding their high-level goals and priorities in structuring the ERF. On January 22, 2020, the Debtors and the Creditors' Committee provided a working draft proposed structure of the ERF to the AHC, and the AHC provided a draft proposal for the structure of the ERF that had the support of their group and reflected extensive input from the NCSG (although not their formal endorsement). The Debtors then worked extensively with the Creditors' Committee and AHC to understand the goals

NAS1765

underlying their respective proposals as well as engaged with the NCSG and the MSGE to understand their specific viewpoints. On February 27, 2020, the Debtors hosted dozens of representatives of major creditor constituencies and interested governmental organizations at a summit in an attempt to negotiate the terms of a unified proposal for an ERF. The Debtors also attempted to craft a proposal that incorporated concepts from the proposals of both the Creditors' Committee and AHC in order to reach a compromise.

These extensive and good-faith negotiations, however, failed to yield full consensus among the parties regarding the proposed structure and governance of the ERF. While the parties were able to reach agreement on the total size of the ERF, the geographic distribution of the funds, and the process of developing initial state/territory-level grant funding proposals, the parties were unable to reach agreement on, among other things, (i) the composition of an ERF review board that would oversee grant allocation decisions and the level of oversight to be provided by such board and (ii) the types of programs that should be eligible for grants, including the degree to which grants should be allocated to newly developed programs relative to existing programs.

Nevertheless, while the parties were not able to reach agreement on an ERF structure that was fully supported by all major case constituencies, the Plan accomplishes the essential goals of the ERF, albeit at a later date, because it contemplates that the distributions to Non-Federal Public Claimants and each of the Private Claimant groups other than the Personal Injury Claimants (as defined below) will dedicate all value received by them through the Plan exclusively to programs designed to abate the opioid crisis.

## K.    Bar Date

On January 3, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order (I) Establishing Deadlines for Filing Proofs of Claim and Procedures Relating Thereto, (II) Approving the Proof of Claim Forms, and (III) Approving the Form and Manner of Notice Thereof* [D.I. 717] (the "**Bar Date Motion**"). On February 3, 2020, the Bankruptcy Court entered an order approving the Bar Date Motion [D.I. 800] (the "**Bar Date Order**"), establishing 5:00 p.m. (Prevailing Eastern Time) on June 30, 2020 (the "**Initial General Bar Date**") as the deadline for all persons and entities (including, without limitation, individuals, partnerships, corporations, joint ventures, trusts, governmental units and Native American Tribes), holding a prepetition claim, as defined in section 101(5) of the Bankruptcy Code (a "**Claim**"), against the Debtors which arose on or prior to the Petition Date, to file a proof of claim. On May 20, 2020, the Debtors filed the *Debtors' Motion Pursuant to 11 U.S.C. §§ 105(a) and 501 and Federal Rules of Bankruptcy Procedure 2002 and 3003(c)(3) for Entry of an Order (I) Extending the General Bar Date for a Limited Period and (II) Approving the Form and Manner of Notice Thereof* [D.I. 1178] (the "**Bar Date Extension Motion**"). On June 3, 2020, the Bankruptcy Court entered an order approving the Bar Date Extension Motion [D.I. 1221] (the "**Bar Date Extension Order**"), extending the Initial General Bar Date to July 30, 2020 at 5:00 p.m. (Prevailing Eastern Time) (the "**General Bar Date**").

Specifically, the Bar Date Extension Order established the following deadlines for filing proofs of claim:

NAS1766

- **General Bar Date**: 5:00 p.m. (prevailing Eastern Time) on July 30, 2020, as the deadline for each person (as defined in section 101(41) of the Bankruptcy Code), governmental unit (as defined in section 101(27) of the Bankruptcy Code), and Native American Tribe to file a proof of claim (as defined in section 101(5) of the Bankruptcy Code) against the Debtors which arose on or prior to September 15, 2019.

- **Rejection Damages Bar Date**: the later of: (i) the General Bar Date; and (ii) thirty (30) days after entry of any order authorizing the rejection of such executory contract or unexpired lease of the Debtors as the deadline by which claimants asserting claims resulting from the Debtors' rejection of an executory contract or unexpired lease must file proofs of claim for damages arising from such rejection.

- **Amended Schedules Bar Date**: the later of: (i) the General Bar Date; and (ii) thirty (30) days after such holders of affected claims are served with notice that the Debtors amended their Schedules of Assets and Liabilities and/or Statements of Financial Affairs (collectively, the "**Schedules**") to identify, reduce, delete, or change the amount, priority, classification, or other status of such a claim as the deadline by which claimants holding claims affected by such amendment or supplement must file proofs of claim with respect to such claim.

The Debtors' notice program provided actual notice of the Bar Dates to known claimants, and included a supplemental notice plan (the "**Supplemental Notice Plan**") to provide an extraordinarily broad array of forms of publication notice to unknown claimants.

The Bar Date form of notice (the "**Bar Date Notice**") (i) notifies claimants of the Bar Dates: (a) who must file a proof of claim, (b) the procedures for filing a proof of claim, and (c) the consequences of failing to timely file a proof of claim; and (ii) states that for a claim to be validly and properly filed, a signed original of the proof of claim form, together with any accompanying documentation, must be filed with Prime Clerk, LLC or the Bankruptcy Court on or before the appropriate Bar Date. The Debtors provided actual notice of the Bar Dates to all known claimants by serving them with the following: (x) the Bar Date Notice and (y) the appropriate proof of claim form(s) and instructions.

The Supplemental Notice Plan employed six additional primary methods of providing notice: (i) paid media (e.g., television, radio, magazine, and newspaper); (ii) online displays across multiple devices and videos (e.g., YouTube); (iii) social media campaigns (e.g., Facebook, Twitter); (iv) out-of-home advertising (e.g., billboards); (v) earned media (e.g., press releases, blogs); and (vi) community outreach.

The Supplemental Notice Plan provided publication notice to areas where claims have arisen or where potential claimants may now be located, including the United States and the U.S. Territories of Guam, U.S. Virgin Islands, Marianas, American Samoa, and Puerto Rico, using the following: (i) broadcast and cable television, radio (terrestrial and streaming), and traditional print media such as magazines and newspapers; (ii) various online displays and videos on websites such as YouTube and Google; (iii) social media, networking and engaging influencers

NAS1767

on websites such as Facebook, Instagram, Twitter, and LinkedIn; (iv) static and digital billboards located in high-traffic areas; (v) press releases; and (vi) community outreach via a one-page notice to (a) all prescribers of Purdue brand name medications, (b) U.S. pharmacies and institutions that received certain brand name and generic opioid medications, and (c) third-party organizations such as tribal leaders, veterans communities, treatment and addiction centers, mobile health teams, mining communities, religious leaders, homeless and women's shelters, and government agencies. The Supplemental Notice Plan provided publication notice in both French and English in Canada using the following: (1) traditional print media such as magazines and newspapers; (2) online and social media, including Google, Facebook, Instagram, and YouTube; and (3) press releases.

Additionally, the Debtors published the notice of the Bar Dates across several print publications in the United States and Canada. In the United States, the Debtors published the full Bar Date Notice in three (3) nationally circulated newspapers and published a summary notice of the Bar Dates in eight (8) consumer magazines, fourteen (14) industry-specific trade magazines, and seventy-nine (79) local newspapers in eleven (11) states. In Canada, the Debtors published a summary notice of the Bar Dates in nine (9) nationally distributed magazines and three (3) nationally circulated newspapers.

The Supplemental Notice Plan cost over $20 million and included a total of over 1.5 billion impressions across social media, display and search platforms. The nearly unprecedented reach and cost of the Supplemental Noticing Plan, which the Debtors developed while engaging extensively with key creditor constituencies, was carefully tailored to the circumstances of potential claims and provided publication notice far beyond what is customary in typical chapter 11 cases. The Bankruptcy Court included in the Bar Date Order its finding that the noticing procedures outlined therein constituted good, sufficient and due notice of the Bar Dates and the procedures for filing proofs of claim in these Chapter 11 Cases.

## L.    Entry into Stipulation in Respect of Certain Canadian Patient Litigation

Prior to the Petition Date, the lead plaintiffs (collectively, the "**Patient Plaintiffs**") in ten class actions (the "**Canadian Patient Class Actions**") that were commenced in each province of Canada (except Manitoba) between May 11, 2007 and June 22, 2012, on one hand, and the defendants in the Canadian Patient Class Actions, on the other hand, entered into a conditional national class action settlement agreement (the "**Patient Settlement Agreement**"). Pursuant to its own terms and Canadian class action legislation, the Patient Settlement Agreement must be approved by the Ontario Superior Court of Justice, the Superior Court of Quebec, the Supreme Court of Nova Scotia and the Saskatchewan Court of Queen's Bench in order to become effective. The Patient Settlement Agreement has yet to receive the approval of the Saskatchewan Court of Queen's Bench (the "**Saskatchewan Court**"). Proceedings in respect of the Canadian Patient Class Actions are currently stayed and suspended pursuant to the *Order Re: Related Party Stay* entered in the CCAA Proceedings on December 30, 2019.

The Debtors and the Patient Plaintiffs are party to the *Amended and Restated Stipulation and Order Permitting the Filing of a Class Proof of Claim Solely for Administrative Convenience in Order to Effectuate a Potential Settlement in Respect of Certain Canadian Patient Litigation* (the "**Patient Claim Settlement Stipulation**"). The Bankruptcy Court entered

NAS1768

an order approving the Patient Claim Settlement Stipulation on July 24, 2020 [D.I. 1515]. The purpose of the Patient Claim Settlement Stipulation is to permit the Patient Plaintiffs to file a Proof of Claim on their own behalf, and on behalf of the Patient Class (as defined in the Patient Claim Settlement Stipulation) in the Canadian Patient Class Actions solely for protecting their claims pursuant to the terms of the Patient Settlement Agreement and not for any other purpose.

On July 30, 2020, Class Counsel (as defined in the Patient Claim Settlement Stipulation) filed a Proof of Claim [Claim No. 146518] (the "**Patient Class Proof of Claim**") in accordance with the Patient Claim Settlement Stipulation.

Prior to the Petition Date, non-Debtor Purdue Pharma (Canada), an independent associated company beneficially owned by the Debtors' shareholders, settled a trust for CAD $20 million (the "**Settlement Trust**"), which is the full amount of the Settlement Payment (as defined in the Patient Settlement Agreement). The funds in the Settlement Trust are held in trust and are sufficient to make payment of the Settled Patient Claims (as defined in the Patient Claim Settlement Stipulation). The funds will only be distributed in accordance with the Patient Settlement Agreement after the occurrence of the Effective Date (as defined in the Patient Settlement Agreement). The Effective Date is the date on which the requisite orders contemplated by the Settlement Agreement have become final orders from which no appeal lies or in respect of which any right of appeal has expired without the initiation of proceedings in respect of that appeal, or proposed appeal such as the delivery of a notice of appeal or application for leave to appeal.

As set forth in the Patient Claim Settlement Stipulation and Section 4.10 of the Plan, if the Canadian Patient Settlement Agreement is approved by the Saskatchewan Court and the funds held in the Settlement Trust are released for benefit of Holders of Settled Patient Claims, (i) the Patient Settlement Agreement and Patient Class Proof of Claim will be the exclusive remedy for all Settled Patient Claims in the Chapter 11 Cases; (ii) the Patient Settlement Agreement and Patient Class Proof of Claim will supersede and replace any other Proof of Claim or portion thereof filed by any of the Patient Plaintiffs, Settlement Patient Claimants (as defined in the Patient Claim Settlement Stipulation), or counsel to any of the foregoing, in the Chapter 11 Cases in respect of Settled Patient Claims; and (iii) upon the Effective Date (as defined in the Patient Settlement Agreement), the Debtors will be deemed to have been completely and unconditionally released, forever discharged, and acquitted from any and all Settled Patient Claims against the Debtors and from any other Proof of Claim or portion thereof in respect of any Settled Patient Claim filed against any Debtor. If the Patient Settlement Agreement is approved by the Saskatchewan Court and the funds in the Settlement Trust are released for the benefit of Holders of Settled Patient Claims: (i) no Settlement Patient Claimant that filed a Proof of Claim in the Chapter 11 Cases shall receive a recovery in respect of a Settled Patient Claim from any source other than the Settlement Payment made from the Settlement Trust; and (ii) any Settlement Patient Claimant that filed a Proof of Claim in the Chapter 11 Cases shall have the burden of proving that such Proof of Claim is not in respect of a Settled Patient Claim that was released and discharged pursuant to the Patient Claim Settlement Stipulation.

No Distributions will be made on account of any Claims that may constitute Settled Patient Claims unless and until (x) the Saskatchewan Court approves the Canadian Patient Settlement Agreement and all funds in the Settlement Trust have been distributed to Holders of

NAS1769

Settled Patient Claims in accordance with the Patient Settlement Agreement or (y) the Saskatchewan Court denies the Patient Settlement Agreement. In the event the Saskatchewan Court does not approve the Patient Settlement Agreement, the Patient Claim Settlement Stipulation will be deemed withdrawn and the Patient Class Proof of Claim will be rescinded and deemed null and void.

The Patient Class Proof of Claim does not otherwise prejudice any proof of claim filed in respect of (a) claims against the Debtors arising on or before the Petition Date other than Settled Patient Claims or any other claims of the Settlement Patient Claimants; (b) Settled Patient Claims or any other claims of the Settlement Patient Claimants in the event the Patient Settlement Agreement is not approved by the Saskatchewan Court or the Effective Date does not otherwise occur under the Patient Settlement Agreement; or (c) any claims of Canadian provincial health insurers, whether direct or subrogated to claims of the Patient Plaintiffs and other members of the Patient Class (as defined in the Patient Claim Settlement Stipulation) (the "**Contingent Claims**"). For the avoidance of doubt, the Contingent Claims are subject to the General Bar Date and any Contingent Claim filed after the General Bar Date will be considered untimely.

## M. Sale of Rhodes Technologies Manufacturing Facility and Entry into Supply Agreement

In April 2020, the Debtors made the decision to explore strategic alternatives with respect to Rhodes Tech's active pharmaceutical ingredient ("**API**") manufacturing business. The Debtors determined that a transition away from the API manufacturing facility located in Coventry, Rhode Island (the "**Coventry Facility**") would have the effect of unburdening the Debtors from the facility's extensive annual fixed operating costs, creating a variable cost structure as volumes decrease. The Debtors could not, however, transition away from the Coventry Facility without securing an alternative source of APIs from a credible, high-quality supplier with experience in the API manufacturing industry, and doing so at a lower cost than was then incurred by manufacturing APIs "in house." Following an extensive marketing and negotiation process, on September 14, 2020, Debtor Rhodes Technologies, Noramco Coventry LLC (the "**Purchaser**"), and Noramco LLC ("**Normaco**"), as guarantor of Purchaser's obligations, executed an asset purchase agreement (the "**APA**") in contemplation of a sale of the Coventry Facility and related assets to the Purchaser and agreed to enter into a long-term supply agreement (the "**Supply Agreement**") under which Noramco would supply the Debtors with all products then manufactured at the Coventry Facility for a minimum term of seven years, with two two-year renewals available at the Debtors' option (collectively, the "**Coventry Transactions**"). The APA also contemplated additional ancillary documents, including a transition services agreement to effectuate the transfer of the Coventry Facility operations from the Debtors to the Purchaser. On October 1, 2020, the Bankruptcy Court entered the *Order (I) Approving Sale of Debtors' Coventry Facility and Related Assets Free and Clear of Liens, Claims, Interests and Encumbrances, (II) Approving Debtors' Entry into a Long-Term API Supply Agreement, (III) Authorizing Assumption and Assignment, or Assignment, as Applicable, of Executory Contracts and Unexpired Leases and (IV) Granting Related Relief* [D.I. 1765]. The sale of the Coventry Facility closed and the parties entered into the Supply Agreement on December 31, 2020. The Coventry Transactions are expected to materially increase the value of the Debtors' Estates.

NAS1770

## N.    Consideration of Unsolicited Offer for Certain Assets

In August, 2020, the Debtors were contacted on an unsolicited basis by a party (the "**Interested Party**") interested in discussing a proposed risk evaluation and mitigation strategy ("**REMS**") initiative and a potential acquisition of certain of the Debtors' assets.  At the time of this initial contact, the Interested Party did not have the financial resources to acquire any material portion of the Debtors' assets.  Following several discussions between the Debtors' advisors and the Interested Party, including a call with the Debtors' full management team regarding the proposed REMS initiative in October 2020, the Interested Party provided in November 2020 an asset purchase indication of interest. Although the Interested Party had still not demonstrated any ability to provide financing for any potential acquisition proposal, the Debtors determined that it was nevertheless in the best interests of its stakeholders to afford the Interested Party an opportunity to develop a potential offer.  As a result, the Debtors and the Interested Party entered into a customary confidentiality agreement on November 16, 2020. Between late November 2020 and early January 2021, the Debtors executed additional confidentiality agreements with 10 potential financing sources to the Interested Party at the Interested Party's request.

On December 3, 2020, the Interested Party submitted a non-binding proposal to acquire substantially all of the operating assets of the Debtors.  Of the aggregate consideration potentially payable to the Debtors under the proposal, approximately 70% was proposed to be paid in cash at closing of a transaction and the remainder was proposed to be payable in cash in the future, subject to material contingencies.  The proposal lacked reasonable evidence of the Interested Party's ability to obtain the funds required to pay the proposed acquisition consideration.  Notwithstanding that the Interested Party had not provided assurance that it had the ability to obtain the financing necessary to pay for its proposal, in the interest of providing the Interested Party the opportunity to obtain such financing, the Debtors agreed to commence a process to provide substantial due diligence information regarding the Debtors and their businesses to the Interested Party, the potential financing sources identified by the Interested Party, and their respective representatives and advisors.

Beginning in early December 2020 and continuing until late February 2021, the Debtors and their advisors dedicated hundreds of hours of time to obtain, organize, review and process over 22,000 pages of requested due diligence information, at a significant cost to the Debtors in fees and expenses and time commitment of its management and employees.  In addition, the Debtors and their advisors conducted numerous due diligence discussions with the Interested Party and their respective representatives and advisors to allow the Interested Party to propose an actionable transaction.

After a number of discussions, given the overall status and timeline of the Debtors' bankruptcy process, the Debtors requested that the Interested Party submit a best and final binding bid with committed financing by January 8, 2021.  At the request of the Interested Party, the Debtors agreed to extend the bid date to January 11, 2021.  On January 11, 2021, the Interested Party submitted a revised proposal. Notwithstanding the bid requirements specified by the Debtors, the revised proposal was non-binding and subject to due diligence and was not supported by any financing commitments, which would have been required to pay the proposed acquisition consideration. Of the aggregate consideration potentially payable to the Debtors

**NAS1771**

under the revised proposal, which was substantially the same as that in the December 3 proposal, only half would now be payable at closing of a transaction, with the remainder payable over a number of years and subject to significant contingencies. In addition, the non-binding proposal lacked material information necessary for the Debtors to evaluate the value of the proposed consideration. On January 14, 2021, the Interested Party provided certain additional information; however, such information continued to lack significant information necessary for the Debtors to evaluate the proposal. On a number of occasions, the Debtors, together with the Creditors' Committee and the Ad Hoc Committee, sent follow-up questions to the Interested Party and requested discussions with the Interested Party. None of these discussions clarified all of the required information necessary to evaluate the proposal.

On January 18, 2021 and January 19, 2021, the Interested Party submitted letters from several potential financing sources. Notwithstanding the bid requirements specified by the Debtors, the financing letters were non-binding, were subject to due diligence and were subject to further internal approvals of the applicable financing parties. The financing letters also stated that they would not become binding unless and until definitive transaction documents were executed, which the Interested Party estimated would require an additional 60-day period, and also indicated that the financing sources could seek further syndication of their proposed financing commitments, which would also result in additional delay. Furthermore, certain financing letters described a transaction that would effectively result in parties other than the Interested Party acquiring significant portions of the Debtors' assets. In addition, the financing letter relating to the proposed acquisition of assets by such other party required the Debtors to deliver certain material assets not owned by the Debtors.

In late January 2021, through ongoing discussions with the Interested Party, the Debtors learned that the Interested Party was in fact only intending to assume a fraction of the Debtors' ordinary course postpetition liabilities, leaving approximately $300 million dollars, and possibly more, of postpetition liabilities to be borne by the bankruptcy estate as administrative claims, effectively resulting in a significant reduction in any upfront consideration offered by the Interested Party. Moreover, the Purdue Pharma L.P. Pension Plan, a single-employer defined benefit pension plan covered by Title IV of ERISA (the "**Purdue Pension Plan**"),[65] would not be transferred with the assets proposed to be acquired, and the Debtors estimate that, if they became subject to unfunded benefit liabilities on account of the Purdue Pension Plan, such claims would likely total approximately $180 million. Moreover, the Interested Party would not continue the Debtors' Public Health Initiatives or undertake any other initiatives that would have allowed the Debtors to emerge as a public benefit company or similar entity and therefore satisfy the conditions necessary to benefit from the Forfeiture Judgment Credit in the DOJ Resolution.

On February 7, 2021, the Interested Party submitted a proposal that consisted of a completely revised and further degraded proposed transaction structure. The revised structure contemplated an essentially "seller-financed" transaction whereby the Debtors would effectively transfer substantially all of its assets to the Interested Party in exchange for no consideration at

---

[65] The Purdue Pension Plan has approximately 3,200 participants. PPLP is the contributing sponsor of the Purdue Pension Plan. The Debtors that are members of the contributing sponsor's controlled group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) are jointly and severally liable with respect to the Purdue Pension Plan. Further, any non-Debtor members of the contributing sponsor's controlled group are also jointly and severally liable with respect to the Purdue Pension Plan.

NAS1772

consummation of such transaction, with the potential for the Debtors' Estates to receive payments over many years as repayment of the seller financing to the extent the Interested Party was able to generate sufficient revenues and profits in the future. The revised proposed transaction structure continued to include the requirement that significant postpetition liabilities be borne by the bankruptcy estate as administrative claims and the Purdue Pension Plan remain with the bankruptcy estate as described above.

Notwithstanding that the Interested Party's revised proposals had in each iteration significantly reduced the proceeds reasonably/potentially deliverable to the Debtors, including the reduction in proceeds payable at consummation of a transaction to zero, over the ensuing weeks, the Debtors continued to permit the Interested Party to conduct further due diligence.

Based on a careful review of all of the materials submitted by, and the discussions that occurred with, the Interested Party, its potential financing sources and their respective representatives and advisors over many months, the Debtors determined that the proposals submitted by the Interested Party were not value maximizing for the Debtors and its stakeholders, provided significantly less cash to the estate than the Debtors' Plan, resulted in stakeholders continuing to be tied to the performance of the Debtors' opioids business for a significantly longer period of time than would the Plan, introduced risk of potentially significant negative tax consequences on stakeholders, and were likely not capable of being executed upon by the Interested Party, and that further diversion of the Debtors' resources towards discussions with the Interested Party would only result in significant costs to the Debtors with a high risk of no transaction being executed.

## O. Continuation of Certain Prepetition Employee Compensation Programs

In order to maintain business operations during the Chapter 11 Cases, the Debtors sought to continue certain preexisting employee compensation programs, which were critical to sustain employee morale and protect the value of the Debtors' business. On September 16, 2019, the Debtors filed the *Motion of Debtors for Entry of an Order Authorizing (I) Debtors to (A) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 6] (the "**Wages Motion**"). As part of the relief requested in the Wages Motion, the Debtors sought to continue two long-standing compensation programs: their annual incentive program (the "**AIP**") and their long-term results plan (the "**LTRP**," and together with the AIP, the "**PrePetition Incentive Plans**"). The AIP designates payments on an annual basis to eligible employees based on a combination of employee performance and the performance of the Debtors. The LTRP is a long-term cash incentive program that provides an annual grant to employees based on a three-year performance period. The Debtors also sought, *inter alia*, to continue a non-executive retention plan.

Objections to the Wages Motion were filed by the U.S. Trustee, Nevada Counties and Municipalities, the Commonwealth of Pennsylvania, the NCSG and the State of Arizona [D.I. 134, 190, 196, 197, 201]. The New York State Department of Financial Services also submitted an informal objection [D.I. 99]. The NCSG filed a statement maintaining its and

NAS1773

certain of its members' objections insofar as such objections related to the Debtors' CEO [D.I. 557].

The Debtors agreed to multiple partial adjournments of the Wages Motion such that various elements of the relief sought in the Wages Motion were considered at different hearings. Following extensive negotiations with certain creditor groups, the Debtors agreed to certain modifications to the relief sought in the Wages Motion. The Debtors reached agreement on, or agreement not to object to, modified relief with all relevant creditor groups except with respect to the Debtors' CEO's incentive compensation, which was opposed only by the NCSG. The modified relief sought in the Wages Motion was granted in the *Final Order Authorizing (I) Debtors to (A) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 309]; the *Supplemental Final Order Authorizing (I) Debtors to (A) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 629] and the *Second Supplemental Final Order Authorizing (I) Debtors to (A) Pay Pre-Petition Wages, Salaries, Employee Benefits and Other Compensation and (B) Maintain Employee Benefits Programs and Pay Related Administrative Obligations, (II) Employees and Retirees to Proceed with Outstanding Workers' Compensation Claims and (III) Financial Institutions to Honor and Process Related Checks and Transfers* [D.I. 629].

## P.  Key Employee Incentive Program and Key Employee Retention Program

The Debtors developed a Key Employee Incentive Program (the "**KEIP**") and the Key Employee Retention Program (the "**KERP**," and together with the KEIP, the "**Compensation Plans**"), in order to ensure the continued motivation, engagement and retention of the Debtors' workforce and the maximization of the value of the Debtors' Estates. On September 9, 2020, the Debtors filed the *Motion of Debtors for Entry of an Order Authorizing Implementation of a Key Employee Incentive Plan and a Key Employee Retention Plan* [D.I. 1674] (the "**Compensation Motion**").

The KEIP, as initially designed, would have applied to the Debtors' eight then-current insider employees, consisting of the: (i) CEO; (ii) CFO; (iii) General Counsel; (iv) Senior Vice President, Intellectual Property Law & Public Health Initiatives; (v) Chief Technical Operations Officer; (vi) President, Imbrium Therapeutics; (vii) President, Rhodes Pharmaceuticals; and (viii) President, Rhodes Technologies. After filing the Compensation Motion, the President of Imbrium Therapeutics and the Debtors' Senior Vice President, Intellectual Property Law & Public Health Initiatives resigned and therefore became ineligible for the proposed KEIP. The KERP applies to virtually all incentive-eligible employees other than the employees covered under the KEIP.

On September 22, 2020, the U.S. Trustee and the Ad Hoc Committee on Accountability filed objections to the Compensation Motion [D.I. 1708, 1710].

83

**NAS1774**

After extensive discussions with creditor groups, the Debtors agreed to certain modifications to the proposed KEIP and KERP. The Debtors also agreed to multiple partial adjournments of the Compensation Motion such that various elements of the relief sought in the Compensation Motion were considered at different hearings. On October 1, 2020, the Bankruptcy Court entered the *Order Authorizing the Debtors to Implement a Key Employee Retention Plan* [D.I. 1762]. On October 28, 2020, the Bankruptcy Court entered the *Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [D.I. 1861], which granted the Debtors authority to implement the KEIP as modified with respect to (i) General Counsel; (ii) Chief Technical Operations Officer; (iii) President, Rhodes Pharmaceuticals; and (iv) President, Rhodes Technologies. On November 17, 2020, the Bankruptcy Court entered the *Supplemental Order Authorizing the Debtors to Implement a Key Employee Incentive Plan* [D.I. 2002], which granted the Debtors authority to implement the KEIP as modified with respect to the CEO and CFO.

## Q.    Extension of Exclusive Periods

Section 1121(b) of the Bankruptcy Code provides for a period of one hundred twenty (120) days after the commencement of a chapter 11 case during which time a debtor has the exclusive right to file a plan of reorganization (the "**Exclusive Filing Period**"). In addition, section 1121(c)(3) of the Bankruptcy Code provides that if the debtor files a plan within the Exclusive Filing Period, it shall have a period of one hundred eighty (180) days after commencement of the chapter 11 case to obtain acceptances of such plan (the "**Exclusive Solicitation Period**," and together with the Exclusive Filing Period, the "**Exclusivity Periods**"). Pursuant to section 1121(d) of the Bankruptcy Code, the Bankruptcy Court may, upon a showing of cause, extend the Exclusivity Periods.

The Debtors' Exclusive Filing Period and Exclusive Solicitation Period were initially set to expire on January 13, 2020 and March 13, 2020, respectively. On January 28, 2020, the Court entered the *Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 782] (the "**First Extension Order**") extending the Exclusive Filing Period and the Exclusive Solicitation Period through and including Monday, July 13, 2020 and Wednesday, September 9, 2020, respectively. On July 24, 2020, the Court entered the *Second Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 1517] (the "**Second Extension Order**") extending the Exclusive Filing Period and the Exclusive Solicitation Period through and including Thursday, December 10, 2020 and Monday, February 8, 2021, respectively. On December 16, 2020, the Court entered the *Third Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan and Solicit Acceptances Thereof* [D.I. 2143] (the "**Third Extension Order**") extending the Exclusive Filing Period and Exclusive Solicitation Period through and including Monday, February 15, 2021 and Monday, May 17, 2021, respectively. On March 1, 2021, the Court entered the *Fourth Order Extending the Exclusive Periods Within Which to File a Chapter 11 Plan* [D.I. 2433] (the "**Fourth Extension Order**") extending the Exclusive Filing Period through and including Monday, March 15, 2021.

NAS1775

## R.     Information Sharing/Diligence

From the outset of their chapter 11 cases, the Debtors have been committed to transparency and robust information sharing, both of which the Debtors believe are critical in cases of this magnitude and public import.  To that end, the Debtors have provided an extensive amount of diligence and discovery material—totaling over 90 million pages—on a wide range of topics, including in response to requests from the Debtors' major creditor groups, such as the Creditors' Committee, the Ad Hoc Committee, the NCSG, the MSGE, the NAS Committee, the Ad Hoc Group of Hospitals, the Personal Injury Claimants, and the DOJ.  A select summary of key aspects of the Debtors' information sharing follows:

In addition to the public reports prepared at the direction of the Debtors' Special Committee described in Article II.E above, the Debtors have provided extensive amounts of document discovery to key stakeholders.  These materials include, for example, more than 10 million documents, totaling more than 70 million pages, which had been previously produced by the Debtors in the federal multidistrict litigation pending in the Ohio MDL and in similar non-MDL civil litigations, and more than 2.5 million documents, totaling 13.5 million pages, that had been previously produced to the DOJ in connection with its investigation of the Debtors.

These enormous productions, however, only represent a small fraction of the Debtors' information sharing efforts.  Recognizing the Creditors' Committee's important role in these chapter 11 cases, the Debtors also agreed to undertake review of substantial email and document collections from over 50 custodians, including from additional Sackler Families custodians and Directors, in most cases for time periods going back 25 years, and make corresponding productions.  These productions have resulted in the provision of more than 680,000 documents, totaling more than 4.2 million pages, to the Creditors' Committee and NCSG.

The Debtors also reached an extraordinary agreement in connection with a negotiated resolution of two motions filed by the Creditors' Committee to share over 16,000 of the Debtors' privileged documents, which are ordinarily not subject to discovery, with the Creditors' Committee on a common interest basis.  These productions included privileged documents related to distributions or transfers of assets from the Company to the Sackler Families or entities owned by or operated for the benefit of Sackler Families members; privileged documents that were contemporaneously sent to or by Sackler Families members or Purdue Board members during their time serving on the Debtors' Board; and privileged documents identified by the Debtors' Special Committee's counsel as important to its investigation—all of which go to the heart of the investigation of possible estate claims against the Sacklers.  And the Debtors have agreed to continue to produce privileged documents meeting these criteria to the extent discovered during other ongoing document reviews by the Special Committee.

Parallel to the foregoing efforts, the Debtors have separately provided almost a million pages of diligence materials (comprising both original analyses and historical documents) to the Creditors' Committee and other key stakeholders in response to dozens of requests.  These include materials comprising original analyses and reams of historical documents on a wide variety of topics, including, for example, compilations of all settlements, lists of all personal injury claims ever filed against Purdue, compilations of licensing and royalty agreements, granular opioid sales data at the prescription level over a 22-year period, and much more.

NAS1776

Finally, the Debtors have worked closely with other parties to support and facilitate extensive discovery and information sharing from members of the Sackler Families and entities associated with them. As a result of the parties' efforts, the Sackler Families, certain financial institutions with which they have had relationships, and other non-Sackler Board members among others, have produced over 600,000 documents (totaling over 3.2 million pages) in these Chapter 11 Cases. The Sackler Families' IACs have also made productions totaling over 830,000 documents and over 8.3 million pages. Finally, another 180,000 documents, totaling over a 1.3 million pages, have been produced from the files of Norton Rose Fulbright LLP, a longtime advisor to the Debtors, the Sackler Families and Sackler-related entities. In addition to these document productions, the Creditors' Committee and NCSG took 16 depositions of members of the Sackler Families, current and former Board members, current employees of the Debtors, and other parties, which counsel for the Debtors' Special Committee attended.

## S. Mediation

On February 20, 2020, the Debtors filed the *Debtors' Motion for Entry of an Order Appointing Mediators* [D.I. 855] (the "**Mediation Motion**"), seeking to appoint the Honorable Layn Phillips and Mr. Kenneth Feinberg as co-mediators (together, the "**Mediators**") to conduct mediation in the Chapter 11 Cases and mandating that the Debtors, the Creditors' Committee, and various ad hoc committees and groups in the Chapter 11 Cases participate in mediation (the "**Mediation**"). After a telephonic hearing on March 2, 2020, the Bankruptcy Court entered an order approving the Mediation Motion. *See Order Appointing Mediators* [D.I. 895] (the "**Mediation Order**"). The following parties (collectively, the "**Mediation Parties**") participated in the mediation: (i) the Debtors; (ii) the Creditors' Committee (including *ex officio* members); (iii) the Ad Hoc Committee;[66] (iv) the NCSG;[67] (v) the MSGE;[68] (vi) the Ad Hoc Group of Individual Victims[69] (the "**Personal Injury Claimants**"); (vii) the Ad Hoc Group of NAS Children[70] (the "**NAS Committee**"); (viii) representatives of a group of hospitals in the United States[71] (the "**Ad Hoc Group of Hospitals**"); (ix) counsel for the Blue Cross Blue Shield Association, various private third-party payors and health insurance carrier plaintiffs (the "**Private Third-Party Payors**"); and (x) counsel for a putative class of individual health insurance purchasers[72] (the "**Ratepayers**"). The following parties participated in the Mediation process although they were not "Mediation Parties" as defined in the Mediation Order: (a) the United States of America; (b) the Muscogee (Creek) Nation, a member of the Ad Hoc Committee, the Cheyenne and Arapaho Tribes, an *ex officio* member of the Creditors' Committee, and other federally recognized tribes represented by various counsel from the Tribal Leadership Committee and the Plaintiffs Executive Committee in MDL No. 2804 (the "**Native American Tribes**"); (c) proposed representatives of a putative class of independent public school districts (the "**IPSDs**"); (d) proposed representatives of a putative class of children born with NAS in the State of West Virginia (the "**WV NAS**"); (e) the National Association for the

---

[66] The Rule 2019 Statement for the Ad Hoc Committee is filed at D.I. 279.

[67] The Rule 2019 Statement for the NCSG is filed at D.I. 296.

[68] The Rule 2019 Statement for the MSGE is filed at D.I. 1794.

[69] The Rule 2019 Statement for the Personal Injury Claimants is filed at D.I. 1480.

[70] The Rule 2019 Statement for the NAS Committee is filed at D.I. 1582.

[71] The Rule 2019 Statement for the Ad Hoc Group of Hospitals is filed at D.I. 1536.

[72] The Rule 2019 Statement for the Ratepayers is filed at D.I. 333.

NAS1777

Advancement of Colored People (the "**NAACP**"); and (f) a group of individual victim advocates which refer to themselves as the "Ad Hoc Committee on Accountability."

The Mediators' initial and exclusive objective pursuant to the Mediation Order was to mediate the dispute(s) between the Non-Federal Public Claimants (as defined in the Mediation Motion), on the one hand, and the Private Claimants (as defined in the Mediation Motion), on the other, as to the allocation of value/proceeds available from the Debtors' Estates, including, without limitation, from any settlements, to such claimants, in each case on an aggregate basis as between them. Mediation provided the least expensive means to achieve a consensual resolution of the Chapter 11 Cases and avoid the protracted, burdensome and costly process associated with testing the validity of each of the claims filed in the Chapter 11 Cases through a claims objection process. The Mediators engaged in numerous informal discussions with the Mediation Parties commencing February 28, 2020, and conducted a series of rigorous formal mediation sessions during the period from March 6, 2020 to September 11, 2020.

The Mediation facilitated the resolution of critical issues in the Chapter 11 Cases. First, the Non-Federal Public Claimants agreed that all value received by them through the Chapter 11 Cases would be exclusively dedicated to programs designed to abate the opioid crisis, and that such value could not be used for any other purpose (other than an amount to fund administration of the programs themselves and to pay legal fees and costs). Second, the Non-Federal Public Claimants addressed and resolved other significant issues, including value allocation for all Native American Tribes (and the inclusion of culturally appropriate abatement programs for these communities) and a default mechanism that, in the absence of a stand-alone agreement between a State or territory and its political subdivisions, provides a structure and process for applying funds to abate the opioid crisis and ensures consultation through local participation mechanisms in determining which programs will be funded from value received. Third, agreement was reached on written term sheets with certain individual Private Claimant groups that addressed allocation of estate value to each Private Claimant group. These agreements provided, among other things, that each class of Private Claimants will receive fixed cash distributions over time, the values and time periods varying for each class. Moreover, the Ad Hoc Group of Hospitals, the Third-Party Payors, and the NAS Committee (with regard to medical monitoring) each agreed to dedicate substantially all the distributions from their respective Private Creditor Trusts to abate the opioid crisis. Additional information regarding the results of the Mediation can be found in the *Mediators' Report* [D.I. 1716]. These agreements are embodied in the Plan.

On September 30, 2020, the Bankruptcy Court entered the *Order Expanding Scope of Mediation* [D.I. 1756] (the "**Supplemental Mediation Order**"), which authorized the Mediators to continue the Mediation to resolve certain open issues referenced in the Mediators' Report, as well as to mediate the estate causes of action and any potential claims or causes of action held by any of the Non-Federal Public Claimants against, or that otherwise may become the subject of releases for, members of the Sackler Families in Phase 2 of Mediation. This phase of Mediation is discussed in Article III.Y below, which describes the settlement of claims against the Sackler Families.

NAS1778

The relevant Classes and the treatment that such Classes will receive based on the agreements reached in the first phase of the Mediation are described in more detail below.

## 1.    *Hospital Claims (Class 6)*

Some providers of healthcare treatment services or social services (excluding Domestic Governmental Entities) filed Proofs of Claim against the Debtors for, among other things, alleged increased or otherwise un- or under-reimbursed costs relating to the provision of services to or on account of persons who have, at some point, ingested opioids.  Some of these Holders of Hospital Claims filed prepetition lawsuits, including some putative class actions, against the Debtors.[73]  The Holders of Hospital Claims have asserted the following causes of action, without limitation, against the Debtors: (i) violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("**RICO**") and state law equivalents, (ii) nuisance, (iii) negligence, (iv) common law fraud, and (v) violations of state consumer protection statutes. Pursuant to the Plan, Hospital Claims consist of all Claims against any Debtor held by a provider of healthcare treatment services or any social services, in its capacity as such, and that is not held by a Domestic Governmental Entity, including, based on the Debtors' initial review, the Claims set forth in the 1,030 Proofs of Claims filed by hospitals and the 150 Proofs of Claims filed by other treatment providers.  All Hospital Claims and all Claims against Released Parties or Shareholder Released Parties held by providers of healthcare treatment services or any social services, in their capacity as such, will be channeled to the Hospital Trust.  The Hospital Trust will be funded in an initial amount of $25 million from the Debtors on the Effective Date. In addition, the Hospital Trust will be entitled to funding from the Master Disbursement Trust in the aggregate amount of $225 million, consisting of (a) $35 million on the First Scheduled MDT Distribution Date; (b) $45 million on July 31, 2023; (c) $45 million on July 31, 2024; (d) $50 million on July 31, 2025; and (e) $50 million on July 31, 2026 on the terms specified in the Plan.

The Hospital Trust will make distributions (net of attorneys' fees and costs, including funding of the Common Benefit Escrow and Common Benefit Fund) to those Holders of Hospital Claims that either (i) filed timely Proofs of Claim prior to the General Bar Date of July 30, 2020, or (ii) are listed on the national registry of hospitals maintained by the American Hospital Directory®, as in effect on the Effective Date *and* are (x) non-federal acute care hospitals as defined by CMS or (y) non-federal hospitals or hospital districts that are required by law to provide inpatient acute care and/or fund the provision of inpatient acute care, subject to certain other eligibility criteria set forth in the Hospital Trust Distribution Procedures set forth in the Hospital Trust Documents in the Plan Supplement (those Holders of Hospital Claims that satisfy such criteria, the "**Hospital Authorized Recipients**").  In order to receive an abatement distribution from the Hospital Trust, Holders of Hospital Claims will be required to submit a Hospital Abatement Distribution Form (as defined with the Hospital Trust Documents) to the Hospital Trust accompanied by certain additional data.  In particular, the Hospital Abatement Distribution Form includes, among other things, a requirement to (i) certify that such Holder adheres to the standard of care for the emergency department, hospital wards and outpatient clinics at the time of any prospective evaluation, diagnosis, and treatment of OUD, including

---

[73] Capitalized terms used in Article III.S.1 of the Plan shall have the meaning attributed to such terms in the Hospital Trust Documents and the Plan, as applicable.

NAS1779

with respect to the applicable standard of care for the treatment of addiction, acute withdrawal and treatment for OUD with medication assisted treatment, and provides discharge planning and post-discharge care coordination for patients with OUD, including information for appropriate OUD treatment services and (ii) submit, to the extent not already submitted in connection with its Proof of Claim, Requisite Claims Data including, among other things, copies of all claims, complaints, proofs of claim, notices, settlement documents, releases, recoveries, compensation received, or similar documents that a Holder of a Hospital Claim submits or entered into in respect of claims asserted against or to be asserted against any other entity or person arising from or related to such Holder of a Hospital Claim's OUD program or related to any of the injuries that underlie such claim. The amount of the abatement distribution(s) made to each Hospital Authorized Recipient shall be subject to a calculation methodology set forth in the Hospital Trust Documents that is based on (1) the diagnostic codes associated with operational charges incurred by the Hospital Authorized Recipient in connection with the treatment of Opioid Use Disorder ("**OUD**"), (2) the portion of such charges that were not reimbursed, and (3) certain other weighted determination factors, as set forth in further detail therein.

Hospital Authorized Recipients will be required to spend all distributions from the Hospital Trust for Hospital Authorized Abatement Purposes, as defined in the Plan, including (i) the Authorized Abatement Purposes set forth in the Hospital Trust Documents or (ii) the payment of attorneys' fees and costs of the Holders of Hospital Channeled Claims (including counsel to the Ad Hoc Group of Hospitals) and funding of the Common Benefit Escrow and Common Benefit Fund. Spending for a Hospital Authorized Abatement Purpose is designed to, among other things, provide transportation to treatment facilities for patients with OUD, provide continuing professional education in addiction medicine, including programs addressing stigma, allow participation in community efforts to provide OUD treatment to others in the community, such as those in jails, prisons, or other detention facilities, provide community education events on opioids and OUD, provide Naloxone kits and instruction to patients upon discharge, implement needle exchanges in hospitals or adjacent clinics and provide on-site Medication-Assisted Treatment ("**MAT**") services if possible, build or lease space to add half-way house beds, participate in research regarding development of innovating OUD treatment practices, direct moneys to any other public or private Authorized Recipient of funds concerning the treatment of persons with OUD or other opioid-related diagnoses; *provided* that such recipient's use of such funds would otherwise constitute an Authorized Abatement Purpose, and support MAT Programs. Each Hospital Authorized Recipient will have to submit to the Trustee on its Hospital Abatement Distribution Form a written statement that all funds will be spent only in the Hospital Authorized Recipient's Service Area.

The Hospital Trust's administrative expenses will be governed by the Hospital Trust Agreement. The Hospital Trust Agreement will provide that the Trustee shall use commercially reasonable efforts to ensure that the costs of administering the Hospital Trust are reasonable in all respects, but that the Trustee shall not be bound by any annual or cumulative "caps" on such expenditures.

Subject to the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied), the Ad Hoc Group of Hospitals will choose a Trustee. The Hospital Trust Agreement will provide that the Honorable Thomas L. Hogan (ret.) will serve as Trustee. In the event of a vacancy in the Trustee position, whether by term expiration, death, retirement,

NAS1780

resignation, or removal, the vacancy shall be filled by the unanimous vote of the Trust Advisory Committee ("**TAC**"). In the event that the TAC cannot appoint a successor Trustee, for any reason, the Bankruptcy Court shall select the successor Trustee. Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers, and authority of the predecessor Trustee shall be vested in, and undertaken by, the successor Trustee without any further act. Each successor Trustee shall serve until the earliest of (i) the expiration of his or her term, (ii) his or her death, (iii) his or her resignation, (iv) his or her removal, or (v) the termination of the Hospital Trust.

The Hospital Trust Agreement will provide that the initial TAC shall consist of one member. The sole member of the TAC shall be Jeffrey James, CPA. The TAC shall consist of not less than one member, and shall never consist of more than three individuals.

The Hospital Trust Agreement shall provide that the Trustee shall have the power to appoint such officers, hire such employees, engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the Hospital Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in its discretion, deem advisable or necessary in order to carry out the terms of the Hospital Trust, including without limitation the Delaware Trustee, and any third-party claims or noticing agent deemed necessary or convenient by the Trustee, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents employed by the Trustee after the Effective Date (including those engaged by the Hospital Trust in connection with its alternative dispute resolution activities).

The Hospital Trust Agreement will further provide that the Trustee shall receive a retainer from the Hospital Trust for his or her service as a Trustee in the amount of $25,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the Hospital Trust. For all time expended as a Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $525 per hour. For all non-working travel time in connection with Hospital Trust business, the Trustee shall receive the sum of $275 per hour. All time shall be computed on a decimal (1/10th) hour basis. The Hospital Trust Agreement shall also provide that the member(s) of the Trust Advisory Committee shall receive compensation from the Hospital Trust for services on the TAC at the same hourly rate as the Trustee (but with no annual retainer). Additionally, the Hospital Trust will promptly reimburse the member(s) of the TAC for all reasonable out-of-pocket costs and expenses incurred in connection with the performance of their duties as set forth in the Hospital Trust Documents.

The Hospital Trust Agreement will provide that neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**2.      Third-Party Payor Claims (Class 7)**

Numerous Private Third-Party Payors filed Proofs of Claim against the Debtors seeking damages for allegedly improper and fraudulent prescriptions of opioids and for the alleged

NAS1781

increased healthcare costs caused by their members' opioid use and dependency.[74]  Some of the Private Third-Party Payors filed prepetition lawsuits against the Debtors asserting, without limitation, (i) violations of RICO and state law equivalents, (ii) nuisance, (iii) negligence, (iv) common law fraud, and (v) violations of state consumer protection statutes.  The Private Third-Party Payors were represented in the Mediation by counsel for the Blue Cross Blue Shield Association and various Private Third-Party Payors and health insurance carrier plaintiffs.  Pursuant to the Plan, Third-Party Payor Claims consist of all Claims against any Debtor held by a health insurer, an employer-sponsored health plan, a union health and welfare fund or any other provider of healthcare benefits, and including any third-party administrator or agent on behalf thereof, in each case in its capacity as such (including any Claim based on the subrogation rights of the Holder thereof that is not an Other Subordinated Claim) that is not a Domestic Governmental Entity; *provided* that Claims in respect of self-funded government plans that were and are asserted through a private third-party payor are included in the defined term "Private Third-Party Payor Claims."  For the avoidance of doubt, (i) Federal Government Unsecured Claims are not Third-Party Payor Claims, and (ii) claims of Third-Party Payors against Holders of PI Claims or Distributions payable to Holders of PI Claims are not claims against any Debtor and therefore are not included in this definition of "Third-Party Payor Claims."  All Third-Party Payor Claims and all Claims against Released Parties or Shareholder Released Parties held by Third-Party Payors that are not Domestic Governmental Entities will be channeled to the TPP Trust.  The TPP Trust will be funded in an initial amount of $1 million from the Debtors on the Effective Date.  In addition, the TPP Trust will be entitled to further funding from the Master Disbursement Trust in the aggregate amount of $364 million, consisting of (a) $121 million on the First Scheduled MDT Distribution Date; (b) $121 million on July 31, 2023; and (c) $122 million on July 31, 2024 on the terms specified in the Plan.

The TPP Trust will make distributions to eligible Private Third-Party Payors based on their Maximum Eligible Amount as calculated pursuant to the TPP Trust Distribution Procedures set forth in the TPP Trust Documents in the Plan Supplement, including the Trust Distribution Procedures included therein.  The Maximum Eligible Amount is calculated taking into consideration, (i) the number of subscribers or dependents covered under the TPP Claimant's plan during some or all of the period from January 1, 2008 through December 31, 2019 (each, a "**Unique Member**") who were prescribed one or more of the drugs identified on the NDC List;[75] (ii) the number of unique prescriptions paid, all or in part, by your plan for the drugs identified on the NDC List; (iii) the total final dollars paid by your plan for the prescriptions for the drugs identified in (ii); (iv) the number of Unique Members identified in (i) above who were diagnosed with an Opioid Use Disorder, using one or more of the codes on the OUD ICD 10 List; and (v) for the Unique Members identified in (iv) above, the total dollar amount of medical claims with the ICD, CPT, or HCPS codes on the OUD Medical Claims Codes List, paid for those Unique Members.

TPP Authorized Recipients will be required to spend all distributions from the TPP Trust for Authorized Abatement Purposes, as defined in the Plan, which means (i) an authorized opioid

---

[74] Capitalized terms used in Article III.S.2 of the Plan shall have the meaning attributed to such terms in the TPP Trust Documents and the Plan, as applicable.

[75] The NDC List, OUD ICD 10 List, and OUD Medical Claims Codes List, as referenced herein, will be included with the Third-Party Payor Abatement Claim Form.

NAS1782

abatement purpose, as set forth in the TPP Trust Documents or (ii) the payment of attorneys' fees and costs of TPP Authorized Recipients (including counsel to the Third-Party Payor Group) and funding of the Common Benefit Escrow and Common Benefit Fund. Spending for an authorized opioid abatement purpose is designed to, among other things, expand access to Medication Assisted Treatment ("**MAT**") therapies, reduce the costs to patients of MAT therapies, improve the delivery of services to treat Opioid Use Disorder ("**OUD**") and Substance Use Disorder or Mental Health Conditions ("**SUD/MH**"), increase the availability or quality of services to treat OUD and SUD, or subsidize MAT-related expenses, subsidize the cost of treatment for OUD and SUD, and support organizations whose mission is to provide treatment of OUD and SUD.

The amount of the TPP Trust Assets available to make payments to holders of Third-Party Claims will be subject to certain deductions, including for the fees and expenses of administering the TPP Trust and the assessments to the Common Benefit Escrow (and, later, the Common Benefit Fund) of 5% of each Distribution made by the TPP Trust, paid pursuant to Section 5.8 of the Plan.

In order to have their Third-Party Claims considered by the TPP Trust, the Holders of such Claims (the Private Third-Party Payors who satisfy such criteria, "**TPP Authorized Recipients**") must:

(i)     Have timely filed a Proof of Claim in the Debtors' Chapter 11 case in accordance with the General Bar Date of July 30, 2020;

(ii)    Timely submit an additional, completed TPP Abatement Claim Form to the TPP Trust by the TPP Abatement Claim Deadline, which shall be no later than the first Business Day that is sixty (60) days after the Effective Date of the Plan (the "**TPP Abatement Claim Deadline**"), in accordance with the instructions provided with the TPP Abatement Claim Form; and

(iii)   Have provided in connection with such TPP Abatement Claim Form, by or before the TPP Abatement Claim Deadline, a calculation of its Purdue-Related Opioid Spend (as defined in Appendix B to the Trust Distribution Procedures), utilizing the Maximum Eligible Amount Calculation Methodology.[76]

After the TPP Abatement Claim Deadline has passed, the TPP Trust Trustee and the Trustee's professionals shall review the applicable Proofs of Claim and TPP Abatement Claim Form and make initial determinations of the Maximum Eligible Amount of each TPP Authorized Recipient and the allocations of Abatement Distributions to such TPP Authorized Recipients. Such TPP Authorized Recipients will then have an opportunity to challenge such determinations, as set forth in the TPP Trust Distribution Procedures.

Any TPP Claimant that failed to timely file a Proof of Claim on or before July 30, 2020, is barred from asserting or seeking to enforce its Third-Party Payor Claim, pursuant to the Bar Date Order, and shall not be a TPP Authorized Recipient or eligible to receive a TPP Abatement Distribution from the TPP Trust. Any TPP Claimant that does not submit a TPP Abatement

---

[76] The Maximum Eligible Amount Calculation Methodology is provided in the TPP Trust Distribution Procedures.

NAS1783

Claim Form shall not qualify as a TPP Authorized Recipient, and any TPP Claimant that submits a TPP Abatement Claim Form after the TPP Abatement Claim Deadline shall not qualify as a TPP Authorized Recipient, and shall have no right to any distribution from the TPP Trust. No TPP Abatement Claim Form shall be accepted after the TPP Abatement Claim Deadline.

Private Third-Party Payors may also elect to participate in the LRP Agreement, described in Article III.S.2 hereof. The LRP Agreement is the result of negotiations between representatives of the Private Third-Party Payors and representatives of the Holders of PI Claims, and provides a lien resolution program that addresses the reimbursement and lien claims that Private Third-Party Payors may hold against Holders of PI Claims and Distributions to Holders of PI Claims. The LRP Agreement is an exhibit to the PI Trust Agreement and is a Plan Document.

**ALL HOLDERS OF THIRD-PARTY PAYOR CLAIMS ARE ENCOURAGED TO CAREFULLY READ THE PLAN, AS WELL AS THE TPP TRUST DISTRIBUTION PROCEDURES (INCLUDING THE INSTRUCTIONS FOR THE CALCULATION AND FILING OF THE TPP ABATEMENT CLAIM FORM), THE ABATEMENT AGREEMENT, THE TPP TRUST AGREEMENT AND THE LRP AGREEMENT. A COPY OF THE PLAN IS ATTACHED HERETO. ALL OF THE OTHER DOCUMENTS IDENTIFIED IN THIS SECTION HAVE EITHER BEEN FILED OR WILL BE FILED WITH THE BANKRUPTCY COURT IN THE PLAN, THIS DISCLOSURE STATEMENT, OR THE PLAN SUPPLEMENT.**

This Disclosure Statement, including the Plan and the other exhibits thereto, and, once filed, the Plan Supplement, may be obtained at no charge from the Solicitation Agent by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

The administration of the TPP Trust will be governed by the TPP Trust Documents. With the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied), the Third-Party Payor Group will select a Trustee. The Trustee shall have the power and authority to perform all functions on behalf of the TPP Trust, and shall undertake all administrative responsibilities of the TPP Trust (whether directly or through professionals and agents engaged by the TPP Trust, including a claims administrator) as are provided in the Plan and the TPP Trust Documents. The Trustee shall be responsible for all decisions and duties with respect to the TPP Trust, as more fully set forth in the TPP Trust Agreement.

The TPP Trust Agreement will provide that the Trustee shall have the authority to, in his/her discretion, consult with and retain attorneys, financial advisors, accountants, or other professionals and employees, including any third-party claims administrators or claims and noticing agent, as the Trustee deems appropriate in the reasonable exercise of his/her discretion, and who the Trustee reasonably determines to have qualifications necessary to assist the Trustee in the proper administration of the TPP Trust. The Trustee may pay the reasonable fees, costs

93

NAS1784

and expenses of such persons (including to him/herself and his/her firm) out of the assets of the TPP Trust in the ordinary course of business, pursuant to the terms of the TPP Trust Agreement.

The TPP Trust Agreement will provide for the compensation of the Trustee and shall provide that the Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### 3. Ratepayer Claims (Class 8)

Several Ratepayers filed Proofs of Claim against the Debtors under the theory that the opioid crisis caused increased healthcare costs that were, in turn, passed along to them by their insurance providers in the form of increased health insurance premiums, deductibles, and co-payments. Putative Ratepayer class action lawsuits were filed against the Debtors before the petition date, alleging, without limitation, (i) violations of RICO and state law equivalents, (ii) nuisance, (iii) negligence, (iv) common law fraud, and (v) violations of state consumer protection statutes. Pursuant to the Plan, in satisfaction of Ratepayer Claims, which consist of all Claims against any Debtor that arise out of or relate to the payment for health insurance by the Holder of such Claim, the Debtors will make a contribution to the Truth Initiative Foundation to be used for national opioid prevention and education efforts, which shall be made by the Debtors from Effective Date Cash in the amount of $6.5 million less attorneys' fees awarded in respect of Ratepayer Claims.

### 4. NAS Monitoring Claims (Class 9)

The legal guardians of certain NAS Children filed prepetition lawsuits against the Debtors asserting, without limitation, (i) violations of RICO and state law equivalents, (ii) nuisance, (iii) negligence, (iv) common law fraud, and (v) violations of state consumer protection statutes, some of which sought compensation for medical monitoring and opioid related abatement costs.[77] Pursuant to the Plan, NAS Monitoring Claims consist of all Claims against any Debtor held on account of an NAS Child and relate to medical monitoring support, educational support, vocational support, familial support or similar related relief, and not for an alleged personal injury suffered by an NAS Child. All NAS Monitoring Claims and all Claims against Released Parties or Shareholder Released Parties that are held on account of an NAS Child and that relate to medical monitoring support, educational support, vocational support, familial support or similar related relief, and are not for alleged personal injuries suffered by an NAS Child will be channeled to the NAS Monitoring Trust. All PI Claims held by NAS Children or their estates or guardians and all related Claims against Released Parties or Shareholder Released Parties will be channeled to the PI Trust, as discussed below. The NAS Monitoring Trust will be funded in an initial amount of $1 million from the Debtors on the Effective Date. In addition, the NAS Monitoring Trust will be entitled to funding from the Master Disbursement Trust in the aggregate amount of $59 million, consisting of (a) $24 million on the First Scheduled MDT Distribution Date and (b) $35 million on July 31, 2023 on the terms specified in the Plan.

---

[77] Capitalized terms used in Article III.S.4 of the Plan shall have the meaning attributed to such terms in the NAS Monitoring Trust Documents and the Plan, as applicable.

NAS1785

All Distributions in respect of NAS Monitoring Claims shall be exclusively in the form of NAS Monitoring Grants and may be used exclusively for (i) the Authorized Abatement Purposes set forth in the NAS Monitoring Trust Distribution Procedures or (ii) the payment of attorneys' fees and costs of Holders of NAS Monitoring Channeled Claims (including counsel to the NAS Committee) (such Authorized Abatement Purposes, collectively, "**NAS Monitoring Authorized Abatement Purposes**") and funding of the Common Benefit Escrow and Common Benefit Fund. The NAS Monitoring Grants will be made to potential Grant Recipients or Grantees who satisfy the eligibility criteria set forth in the NAS Monitoring Trust Distribution Procedures set forth in the NAS Monitoring Trust Documents in the Plan Supplement. Those potential Grant Recipients or Grantees that satisfy such criteria are considered NAS Authorized Recipients. No Holders of NAS Monitoring Channeled Claims shall receive direct recoveries on account of their NAS Monitoring Channeled Claims; the NAS Monitoring Trust shall make NAS Monitoring Grants to NAS Authorized Recipients in accordance with the NAS Monitoring Trust Distribution Procedures.

In order to qualify as an NAS Authorized Recipient and be eligible to receive an NAS Monitoring Grant, a potential Grant Recipient or Grantee must:

(i) Submit a Grant Proposal Form that complies with the requirements set forth in the NAS Monitoring Trust Distribution Procedures;

(ii) Execute a Grant Agreement that complies with the requirements set forth in the NAS Monitoring Trust Distribution Procedures; and

(iii) Agree to comply with and be bound by the reporting obligations set forth in the NAS Monitoring Trust Distribution Procedures.

The Grant Proposal Form shall provide information on the proposed NAS Abatement Program, as set forth in the NAS Monitoring Trust Distribution Procedures, including a historical chronology of the establishment, function, and region of operation of the proposed NAS Abatement Program, a description of the mission, purpose, and methods of the proposed NAS Abatement Program, where in the United States the program is located and operates, evidence of the efficacy of the program in addressing its mission or purpose, the time period over which any distributions would be spent, and the projected budget for the proposed NAS Abatement Program, among others.

Upon receipt of a Grant Proposal in proper form, a member of the TAC shall review and investigate the Grant Proposal and shall prepare a written report, to be distributed to the Trustee and all other members of the TAC, which summarizes the Grant Proposal and the results of the review and investigation of the Grant Proposal. After distribution of such written report, and at the next regularly occurring meeting or special meeting of the Trustee and the TAC, the Grant Proposal shall be presented for discussion and deliberation and may be voted upon at any subsequent meeting of the Trustee and the TAC. In the event of a vote of a majority of the members of the TAC to award any NAS Monitoring Grant for the funding of an NAS Abatement Program sponsored by any Grant Recipient or Grantee, the Trustee shall inform the Grant Recipient or Grantee of the award and of the amount of the Abatement Distribution to be made by the NAS Monitoring Trust to the Grant Recipient or Grantee, *provided* that no binding

NAS1786

agreement for the award of the NAS Monitoring Grant or the Abatement Distribution shall exist until execution and return of the Grant Agreement by the Grant Recipient or Grantee and the receipt of the Abatement Distribution by the Grant Recipient or Grantee.

All NAS Monitoring Grants awarded by the NAS Monitoring Trust will relate to NAS and shall advance all or any of the following goals: (i) preparing children with a history of NAS to be ready to enter or to succeed in school; (ii) informing through evidence the Standard of Care for all NAS Children ages zero (0) to six (6), with priority given to NAS Children ranging in age from three (3) to six (6); and/or (iii) enhancing the mother-child dyad.

Pursuant to the terms of the NAS Monitoring Trust Documents, the NAS Monitoring Trust will make Grants in the aggregate amount of (1) no less than 89% of such distributions (net of attorneys' fees, including funding of the Common Benefit Escrow and Common Benefit Fund) for the purpose of (x) preparing children with a history of NAS to be ready to enter school, (y) informing through evidence the Standard of Care for children ages birth through six years old affected by NAS, with priority given to those ages three through six or (z) enhancing the mother-child dyad of children affected by NAS and (2) up to 5% of such distributions (net of attorneys' fees, including funding of the Common Benefit Escrow and Common Benefit Fund) to research institutions to conduct and publish the results of research into approaches for helping children and families in instances of fetal opioid exposure, in each case as set forth in more detail in the NAS Monitoring Abatement Trust Documents. The schedule for review of grant proposals is set forth in the trust distribution procedures for the NAS Monitoring Trust in the Plan Supplement.

The NAS Monitoring Trust Agreement will govern the administrative expenses of the NAS Monitoring Trust. The NAS Monitoring Trust Agreement shall provide that payment of all costs, fees, expenses and liabilities for operation and/or administration of the Trust, including without limitation fee and expense items referenced in this Agreement, shall be paid from the Corpus of the Trust and that the Trustee shall have the power to pay the reasonable and necessary costs, fees, expenses and liabilities for operation and/or administration of the Trust or its Funds, including without limitation the costs, fees expenses and liabilities authorized by this Agreement and the attorneys' fees and expenses of the NAS Committee and funding of the Common Benefit Escrow and Common Benefit Fund; *provided* that an operating and administration fund, established for purposes of operation and administration of the Trust, to be funded with an amount no greater than one and one-half percent (1.5%) of the net assets not yet Awarded to a Grant Recipient or Grantee at any given time, and to be utilized for the payment of all expenses of operation and administration of the Trust, including without limitation the payment of any compensation to the Trustee and members of the TAC. The Trustee may pay from the Corpus reasonable compensation to the Trustee and any employees, contractors or professionals retained by the Trust. The amounts of such compensation shall be determined by a vote of the majority members of the TAC. Each member of the TAC shall receive compensation from the operating and administration fund of the Trust for attendance at meetings or the performance of other Trust business at a reasonable hourly rate set and determined by a majority vote of the members of the TAC.

The initial Trustee will be proposed by members of the NAS Committee, subject to the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied).

NAS1787

The Bankruptcy Court shall approve the appointment of the initial Trustee. Appointment of successor Trustees shall be approved by a majority of the members of the TAC.

The NAS Monitoring Trust Agreement will provide that the Trustee shall have the power to appoint, employ, or retain at reasonable cost such individuals as are necessary for operation and administration of the Trust, including without limitation employees, contractors, or professionals, and to delegate to such individuals discrete functions to be performed under the oversight, supervision and/or monitoring of the Trustee, and remit payment, in reasonable amounts, to employees, contractors, and/or legal, accounting, financial, investment or other professionals necessary for operation or administration of the Trust.

The NAS Monitoring Trust Agreement will provide that, notwithstanding any state law to the contrary, the Trustee (including any successor trustee) shall be exempt from giving any bond or other surety in any jurisdiction.

**5.        Non-Federal Domestic Governmental Claims (Class 4)**

Forty-nine states, the District of Columbia, and five U.S. territories filed Proofs of Claim against the Debtors seeking damages for, without limitation, alleged violations of consumer protection laws, public nuisance, fraud, negligence, negligence *per se*, elder abuse, violations of racketeering and other statutes, lost revenue, past and future costs and expenses, unliquidated claims based on non-Medicaid population, abatement, fraudulent conveyances or transfers, taxes, fines, penalties, forfeitures, and other penal claims, statutory civil penalties, disgorgement, restitution, mandatory and prohibitory injunctive relief under their respective consumer protection laws, and violations or enforcement of police powers.[78] Various cities, counties, municipalities, and other local governmental entities also filed Proofs of Claim against the Debtors seeking damages under similar theories. Pursuant to the Plan, Non-Federal Domestic Governmental Claims consist of all Claims against any Debtor held by a Domestic Governmental Entity other than the United States (including any Claim based on the subrogation rights of the Holder thereof that is not an Other Subordinated Claim), and not a Priority Tax Claim, a DOJ Forfeiture Judgment Claim, a Federal Government Unsecured Claim or a Tribe Claim. All Non-Federal Domestic Governmental Claims and all Claims against Released Parties or Shareholder Released Parties held by Domestic Governmental Entities other than the United States or a Tribe will be channeled to NOAT. NOAT and the Tribe Trust will be funded pursuant to the Public Entity Settlements such that the NOAT and the Tribe Trust effectively receive the residual value of the Debtors' Estates. In particular, on the Effective Date, NOAT will receive a distribution of all Effective Date Cash remaining after the satisfaction of all amounts described in <u>Section 5.13(a)</u> of the Plan. NOAT and the Tribe Trust will also effectively receive the value of NewCo (subject to certain guarantees in favor of the Master Disbursement Trust), and the residual value available from the Master Disbursement Trust that is not used to satisfy the Private Entity Settlements.

**(i)        Interstate Allocation of NOAT Abatement Funds**

---

[78] Capitalized terms used in <u>Article III.S.5</u> of the Plan shall have the meaning attributed to such terms in the NOAT Documents and the Plan, as applicable.

NAS1788

NOAT will allocate funding among states based on a formula developed through extensive negotiations among the Attorneys General of various states. The allocation formula consists of the following metrics, each of which are described in more detail below, weighted as indicated, and subject to reallocation as described below: (a) 85% sub-allocated among (i) 25% amount of prescription opioid sales as measured by morphine milligram equivalents ("**MME**"), (ii) 22% number of persons suffering from pain reliever use disorder, (iii) 22% number of overdose deaths, (iv) 31% population and (b) 15% based on the Opioid MDL Plaintiffs' proposed "negotiation class" metrics. Each metric is described in greater detail below.

All states except California agreed to place 1% of their allocation into an "Intensity Fund," which is redistributed to the following small, hard-hit States: Connecticut, Delaware, Kentucky, Maine, Nevada, New Hampshire, Oklahoma, Rhode Island, Utah, Vermont, and West Virginia. Finally, shares of states that have previously settled with any defendant are reallocated to the 34 smallest states. Here, the amount of Kentucky's settlement with Purdue in 2015 and the state portion of Oklahoma's settlement with Purdue in 2019 are reallocated via the "Small State Fund" to the other 32 smallest States (because Kentucky and Oklahoma are excluded from such distributions as the settling states).

The resulting percentage allocation for each State is set forth in the table below:

| State | Final Percentage Division of Funds |
|-------|-----------------------------------|
| Alabama | 1.6579015983% |
| Alaska | 0.2681241169% |
| American Samoa* | 0.0175102976% |
| Arizona | 2.3755949882% |
| Arkansas | 0.9779907816% |
| California | 9.9213830698% |
| Colorado | 1.6616291219% |
| Connecticut | 1.3490069542% |
| Delaware | 0.5061239962% |
| District of Columbia | 0.2129072934% |
| Florida | 7.0259134409% |
| Georgia | 2.7882080114% |
| Guam* | 0.0518835714% |
| Hawaii | 0.3476670198% |
| Idaho | 0.5364838684% |
| Illinois | 3.3263363702% |
| Indiana | 2.2168933059% |
| Iowa | 0.7639415424% |
| Kansas | 0.8114241462% |
| Kentucky | 1.5963344879% |
| Louisiana | 1.5326855153% |
| Maine | 0.5725492304% |
| Maryland | 2.1106090494% |
| Massachusetts | 2.3035761083% |

NAS1789

| | |
|---|---|
| Michigan | 3.4020234989% |
| Minnesota | 1.2972597706% |
| Mississippi | 0.8994318052% |
| Missouri | 2.0056475170% |
| Montana | 0.3517745904% |
| N. Mariana Islands* | 0.0191942445% |
| Nebraska | 0.4335719578% |
| Nevada | 1.2651495115% |
| New Hampshire | 0.6419355371% |
| New Jersey | 2.7551354545% |
| New Mexico | 0.8749406830% |
| New York | 5.3903813405% |
| North Carolina | 3.2502525994% |
| North Dakota | 0.1910712849% |
| Ohio | 4.3567051408% |
| Oklahoma | 0.6073894708% |
| Oregon | 1.4405383452% |
| Pennsylvania | 4.5882419559% |
| Puerto Rico** | 0.7324076274% |
| Rhode Island | 0.5040770915% |
| South Carolina | 1.5989037696% |
| South Dakota | 0.2231552882% |
| Tennessee | 2.6881474977% |
| Texas | 6.2932157196% |
| Utah | 1.2039654451% |
| Vermont | 0.2945952769% |
| Virgin Islands* | 0.0348486384% |
| Virginia | 2.2801150757% |
| Washington | 2.3189040182% |
| West Virginia | 1.1614558107% |
| Wisconsin | 1.7582560561% |
| Wyoming | 0.2046300910% |

\* Allocations for American Samoa, Guam, N. Mariana Islands, and Virgin Islands are 100% based on population because of lack of available information for the other metrics.

\*\* Allocations for Puerto Rico are 25% based on MMEs and 75% based on population because of lack of available information for the other metrics.

The metrics noted above are calculated as follows:

        a.        Amount of Prescription Opioids Sold as Measured by MME

The MME metric reflects the intensity of prescription opioid sales by state over a nine-year period from 2006 to 2014. This measure accounts for the flow of prescription opioids from manufacturers to distributors to pharmacies. The MME metric uses sales data for 12 categories of prescription opioids and was collected in a standardized manner by the Drug Enforcement Administration (DEA) in its Automation of Reports and Consolidated Orders System (ARCOS)

NAS1790

database. As part of the National Prescription Opiate Litigation Multi-District Litigation, Case No. 1:17-MD-2804 (N.D. Ohio) (Opioid MDL), the DEA agreed to produce the nine years of data from 2006-2014, which encompassed the peak years of opioid sales in most states. The ARCOS data is standardized by converting data from varying products and prescription strengths into uniform MME totals to accurately reflect higher doses and stronger drugs in the data.

### b. Pain Reliever Use Disorder

This metric consists of the number of people in each state with pain reliever use disorder, as identified by the annual National Survey on Drug Use and Health conducted by the federal Substance Abuse and Mental Health Services Administration (SAMHSA). The SAMHSA survey is widely used by federal and other agencies. This metric included all three prior years in which pain reliever use disorder was broken down by state, 2015-2017, and included both people receiving treatment and those who are not.

### c. Overdose Deaths

The overdose death metric includes two measures: (1) overdose deaths caused by opioids and (2) overdose deaths caused by all drugs. The overdose death figures used for the metric are from the years 2007-2017, with data drawn from a database compiled by the Centers for Disease Control and Prevention ("**CDC**"). The CDC database does not adjust for local reporting problems that differ from state to state and over time. To mitigate this data collection issue, figures for all drug overdose deaths, which captures some unidentified opioid overdoses as well as overdoses unrelated to opioids, were considered.

### d. Population

Population is measured by the 2018 U.S. Census estimate.

### e. Negotiation Class Metrics

The Opioid MDL Plaintiffs' proposed "negotiation class" metrics weighting factor consists of the Allocation Model (defined below) applied at the state level.

### (ii) Intrastate Allocation of NOAT Abatement Funds

Each State and its Local Governments will have until (14) fourteen days after the Effective Date of the Plan (the "**Agreement Date**") to file with the Bankruptcy Court an agreed-upon allocation or method for allocating the Public Funds for that State dedicated only to Approved Uses (each a "**Statewide Abatement Agreement**" or "**SAA**"). Any State and its Local Governments that have reached agreement before the Effective Date of the Plan that satisfies the metric for approval as described in the immediately following paragraph shall file a notice with the Bankruptcy Court that it has adopted a binding SAA and either include the SAA with its filing or indicate where the SAA is publicly available for the SAA to be effective for the Purdue Bankruptcy. Any dispute regarding allocation within a State will be resolved as provided by the Statewide Abatement Agreement; *provided* that no Statewide Abatement

100

NAS1791

Agreement may remove or otherwise limit the reporting requirements set forth in any of the NOAT Trust Documents, including without limitation in the NOAT Trust Agreement.

A Statewide Abatement Agreement shall be agreed when it has been approved by the State and either (a) representatives of its Local Governments whose aggregate Population Percentages, determined as set forth below, total more than Sixty Percent (60%), or (b) representatives of its Local Governments whose aggregate Population Percentages total more than fifty percent (50%) *provided* that these Local Governments also represent 15% or more of the State's counties or parishes (or, in the case of States whose counties and parishes that do not function as Local Governments, 15% or more of the State's incorporated cities or towns), by number.

Population Percentages shall be determined as follows: for counties, parishes, or Alaskan boroughs (i.e., county equivalents) that function as Local Governments and contain incorporated municipalities, the Population Percentage of each county equivalent shall be deemed to be equal to (a) (1) 200% of the population of such county equivalent, minus (2) the aggregate population of all Primary Incorporated Municipalities located in such county and parish, divided by (b) 200% of the State's population. A "**Primary Incorporated Municipality**" means a city, town, village or other municipality incorporated under applicable state law with a population of at least 25,000 that is not located within another incorporated municipality. The Population Percentage of each primary incorporated municipality shall be equal to its population (including the population of any incorporated or unincorporated municipality located therein) divided by 200% of the State's population; *provided* that the Population Percentage of a primary incorporated municipality that is not located within a county equivalent that functions as a Local Government shall be equal to its population (including the population of any incorporated or unincorporated municipality located therein) divided by the State's population.

The Statewide Abatement Agreement will become effective within fourteen (14) days of filing, unless otherwise ordered by the Bankruptcy Court.

A State and its Local Governments may revise, supplement, or refine a Statewide Abatement Agreement by filing an amended Statewide Abatement Agreement that has been approved by the State and sufficient Local Governments to satisfy the approval standards set forth above with the Bankruptcy Court, which shall become effective within fourteen (14) days of filing, unless otherwise ordered by the Bankruptcy Court.

Under the Plan, Public Funds allocated to each Non-SAA State are allocated between a "**Regional Apportionment**" and a "**Non-Regional Apportionment.**" The Proportionate Share of the Regional Apportionment for each Region in a Non-SAA State is determined by reference to the aggregate shares of counties (as used herein, the term county includes parishes), and cities or towns in the cases of Non-SAA States in which counties do not function as Local Governments, in the Region under an allocation mode (the "**Allocation Model**") available at www.opioidnegotiationclass.info that was developed as part of the establishment of a

101

NAS1792

negotiation class procedure implemented in *In re: National Prescription Opiates Litigation*, MDL No. 2804 (N.D. Ohio). However, notwithstanding the foregoing, a State and its Local Governments may instead agree to utilize the model developed by Christopher J. Ruhm, Professor of Public Policy and Economics at the University of Virginia. Both allocation formulas are set forth in greater detail in the National Opioid Abatement Trust Distribution Procedures.

The Allocation Model employs a three-factor analysis to allocate potential opioids settlement proceeds among counties. The three factors are:

a. Opioid Use Disorder ("**OUD**"). Under this factor, each county is assigned a percentage derived by dividing the number of people in the county with OUD by the total number of people nationwide with OUD. The Model uses data reported in the National Survey on Drug Use and Health ("**NSDUH**") for 2006-2016.

b. Overdose Deaths. This factor assigns to each county a percentage of the nation's opioid overdose deaths. The percentage is based on Multiple Causes of Death ("**MCOD**") data reported by the National Center for Health Statistics ("**NCHS**"), the Centers for Disease Control ("**CDC**") and the Department of Health and Human Services ("**DHHS**"). The data so reported is adjusted using a standard, accepted method (the "**Ruhm Adjustment**") designed to address the well-established under-reporting of deaths by opioid overdose.

c. Amount of Opioids. This factor assigns to each county a percentage of the national opioids shipments during 2006-2014 (expressed as morphine milligram equivalents, or MMEs) that produced a negative outcome. This percentage is based on data reported by the U.S. Drug Enforcement Agency ("**DEA**") in its ARCOS (Automation of Reports and Consolidated Orders System) database. Each county's share of national shipments is multiplied by the higher of two ratios: (1) the ratio of the percentage of people in the county with OUD to the percentage of people nationwide with OUD; or (2) the ratio of the percentage of people in the county who died of an opioid overdose between 2006-2016 to the national percentages of opioid overdose deaths during that time.

The Allocation Model gives equal weight to each of these factors. Thus, a hypothetical county with an OUD percentage of 0.3%, and opioid overdose deaths percentage of 0.2% and an opioid shipments percentage of 0.16% would receive an overall allocation of 0.22%.

Where governments within a county (e.g., the county government, if any, and the governments of its cities and towns) are unable to reach agreement regarding the sharing of the

NAS1793

county's overall allocation, the Allocation Model provides for such sharing based on how the governments within the county have historically split funding for categories of government spending relevant to opioids abatement efforts. This historical analysis employs data reported by the U.S. Census Bureau on local government spending by certain functions. The Allocation Model assigns to each a portion of the county's overall allocation based on this historical data.

Under the Plan, the Allocation Model shares of each county in a Region are aggregated. Those aggregate Allocation Model shares are then divided by the total Allocation Model shares for all Regions in the State to determine the subject Region's Proportionate Share. For Non-SAA States in which counties do not function as Local Governments, the Allocation Model shares for each city and town in a Region are aggregated, and the aggregate is divided by the total Allocation Model shares for all cities and towns in the State to determine the Region's Proportionate Share.

One hundred percent (100%) of the funds distributed to NOAT under the Chapter 11 Plan (and not otherwise dedicated to attorneys' fees) shall be used to abate the opioid crisis in accordance with the terms set forth in the National Opioid Abatement Trust Distribution Procedures. Specifically, (i) no less than ninety-five percent (95%) of the Public Funds distributed under the Chapter 11 Plan shall be used for abatement of the opioid crisis by funding opioid or substance use disorder-related projects or programs that fall within the list of uses in Schedule B of the National Opioid Abatement Trust Distribution Procedures (the "**Approved Opioid Abatement Uses**"); (ii) priority should be given to the core abatement strategies ("**Core Strategies**") as identified on Schedule A of the National Opioid Abatement Trust Distribution Procedures; and (iii) no more than five percent (5%) of the Public Funds may be used to fund expenses incurred in administering the distributions for the Approved Opioid Abatement Uses, including the process of selecting programs to receive distributions of Public Funds for implementing those programs and in connection with the Government Participation Mechanism ("**Approved Administrative Expenses**") and together with the other Authorized Abatement Purposes set forth in (i) and (ii), "**Approved Uses**".

In Non-SAA States, Local Governments and States may object to any apportionment, allocation, use or expenditure of Public Funds (an "**Allocation**") solely on the basis that: the Allocation at issue (i) is inconsistent with the provisions of Section 6(1) of the National Opioid Abatement Trust Distribution Procedures with respect to the levels of Regional Apportionments and Non-Regional Apportionments, (ii) is inconsistent with the provisions of Section 6(1) of the National Opioid Abatement Trust Distribution Procedures with respect to the amounts of Local Government Block Grants or Regional Apportionment expenditures, (iii) is not for an Approved Use or (iv) violates the limitations set forth herein with respect to Approved Administrative Fees. The objector shall have the right to bring that objection to either (a) a state court with jurisdiction within the applicable State ("**State Court**") or (b) the Bankruptcy Court if the Purdue chapter 11 case has not been closed (each an "**Objection**"). If an Objection is filed within fourteen (14) days of approval of an Allocation, then no funds shall be distributed on account of the aspect of the Allocation that is the subject of the Objection until

NAS1794

the Objection is resolved or decided by the Bankruptcy Court or State Court, as applicable. There shall be no other basis for bringing an Objection to the approval of an Allocation.

The administrative expenses for NOAT shall be governed by the NOAT Agreement and the National Opioid Abatement Trust Distribution Procedures. The NOAT Agreement shall provide that all NOAT operating expenses shall be payable out of the Trust Assets.

Pursuant to the Plan and the NOAT Agreement, there shall be three (3) Trustees, selected by the Governmental Consent Parties, in consultation with the Debtors and pursuant to a selection process reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process. The Trustees shall be compensated in an amount to be determined but which shall be disclosed in the annual report. The procedure for appointing successor Trustees is to be determined.

The NOAT Agreement will provide that the Trustees shall have the power to appoint such officers and retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, accounting, investment, auditing, and alternative dispute resolution services and activities as NOAT requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of this Trust Agreement; and the Trustees shall have the power to pay reasonable compensation and expenses to any such employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, accounting, investment, auditing, and alternative dispute resolution services and activities.

The NOAT Agreement will provide that the Trustees and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### 6. *Tribe Claims (Class 5)*

Various federally recognized Indian Tribes filed Proofs of Claim against the Debtors seeking damages of their individual members for a range of alleged harms arising from opioids, including, without limitation, costs related to addiction treatment, therapy, hospitalization, as well as other costs relating to members of the Tribes impacted by opioid use and dependency.[79] All Tribe Claims, which consist of all Claims against the Debtors held by Tribes (including any Claim based on the subrogation rights of a Tribe that is not an Other Subordinated Claim) that are not Priority Tax Claims, and all Released Claims or Shareholder Released Claims held by Tribes will be channeled to the Tribe Trust. NOAT and the Tribe Trust will be funded pursuant to the Public Entity Settlements such that the NOAT and the Tribe Trust effectively receive the residual value of the Debtors' Estates. In particular, on the Effective Date, the Tribe Trust will receive a distribution of $50 million. NOAT and the Tribe Trust will also effectively receive the value of NewCo (subject to certain guarantees in favor of the Master Disbursement Trust), and the residual value available from the Master Disbursement Trust that is not used to satisfy the Private Entity Settlements.

---

[79] Capitalized terms used in Article III.S.6 of the Plan shall have the meaning attributed to such terms in the Tribe Trust Documents and the Plan, as applicable.

NAS1795

The Tribe Trust's allocation matrix takes into account six data points: (i) MMEs (morphine milligram equivalents) imputed to each Tribe; (ii) drug and prescription opioid overdose rates imputed to each Tribe; (iii) Indian Health Service ("**IHS**") user population for each Tribe; (iv) citizenship population for each Tribe; (v) relative poverty rates imputed to each Tribe; and (vi) relative cost of living imputed to each Tribe. Data are "imputed" to a Tribe by estimation based on population when the data is only available on a county or statewide basis. In the case of MMEs and drug overdose rates, the imputation of the data to a tribal population is multiplied by a "disproportionate impact" adjustment reflecting the higher incidence of opioid use disorder and prescription opioid overdose deaths in tribal communities.

Pursuant to the Tribal Allocation Matrix (Schedule E of the Tribe Trust Distribution Procedures), two computations are undertaken for all Tribes, and then combined together. Eighty-five percent of a Tribe's matrix share is calculated by considering its imputed MME rate (50%), overdose rates (40%), and poverty rate (10%) as applied to its IHS user population. Fifteen percent of a Tribe's matrix share is calculated by considering the same three elements, similarly weighted, as applied to the Tribe's citizenship data. Once these two matrix results are combined, the resulting share is further adjusted by each Tribe's relative cost of living. COLA adjustments are done on a regional basis and are weighted at 10%, resulting in modest adjustments ranging from 1.3% down to 2.4% up. However, the matrix allocates a single amount to all Alaska Tribes and inter-tribal organizations.

The Tribes will use the tribal allocation of Abatement Funds for programs on the approved list of abatement strategies (see Schedule B of the Tribe Trust Distribution Procedures) and also for culturally appropriate activities, practices, teachings or ceremonies that are, in the judgment of a tribe or tribal health organization, aimed at or supportive of remediation and abatement of the opioid crisis within a tribal community. A list of representative examples of such culturally appropriate abatement strategies, practices, and programs set forth in Schedule D of the Tribe Trust Distribution Procedures (the "**Tribal Abatement Strategies**"). The separate allocation of abatement funding and illustrative list of Tribal Abatement Strategies recognizes that American Indian and Alaska Native Tribes and the communities they serve possess unique cultural histories, practices, wisdom, and needs that are highly relevant to the health and well-being of American Indian and Alaska Native people and that may play an important role in both individual and public health efforts and responses in Native communities. For the avoidance of doubt, Schedule D is a non-exhaustive, illustrative list of culturally appropriate activities, practices, teachings or ceremonies that may, in the judgment of a Tribe, be aimed at or supportive of remediation and abatement of the opioid crisis within a tribal community.

The Tribes agree that 100% of the Abatement Funds distributed under the Chapter 11 Plan (and not otherwise dedicated to the attorneys' fee fund(s) or to reasonable administrative costs) shall be used to abate the opioid crisis in accordance with the terms of the Tribe Trust Documents.

The administrative expenses for the Tribe Trust shall be governed by the Tribe Trust Agreement and the Tribe Trust Distribution Procedures. The Tribe Trust Agreement shall provide that all Tribe Trust operating expenses shall be payable out of the Trust Assets.

NAS1796

Pursuant to the Plan and the Tribe Trust Agreement, there shall be three (3) Trustees, selected by the Native American Tribe Group with the consent of the Debtors. The Trustees shall receive compensation in an amount to be determined but which shall be disclosed in the annual report. The procedure for appointing successor Trustees is to be determined.

The Tribe Trust Agreement will provide that the Trustees shall have the power to appoint such officers and retain such employees, consultants, advisors, independent contractors, experts, and agents and engage in such legal, financial, accounting, investment, auditing, and alternative dispute resolution services and activities as the Tribal Abatement Fund Trust ("**TAFT**") requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of this Trust Agreement; and the Trustees shall have the power to pay reasonable compensation and expenses to any such employees, consultants, advisors, independent contractors, experts, and agents for legal, financial, accounting, investment, auditing, and alternative dispute resolution services and activities.

The Tribe Trust Agreement will provide that the Trustees and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

### 7. *PI Claims (Classes 10(a) and 10(b))*

Many individuals or their estates or guardians assert claims against the Debtors for alleged personal injury or similar claims resulting from opioid use.[80] Pursuant to the Plan, PI Claims consist of all Claims against any Debtor for alleged opioid-related personal injury or other similar opioid-related claim or Cause of Action against any Debtor, in each case arising before Petition Date, including any opioid-related personal injury Claim or similar opioid-related Claim asserted by an NAS Child, and that is not a Third-Party Payor Claim, an NAS Monitoring Claim, a Hospital Claim or a Claim held by a Domestic Governmental Entity.[81]

All PI Claims and all Released Claims or Shareholder Released Claims that are for alleged opioid-related personal injuries or that are similar opioid-related claims or Causes of Action, including any opioid-related personal injury Claims or similar opioid-related Claims asserted by an NAS Child, and that arose before Petition Date, and that is not a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim or a Hospital Channeled Claim or held by a Domestic Governmental Entity will be channeled to the PI Trust. On the Effective Date, and subject to Section 5.2(h) of the Plan, the PI Trust will be funded with an initial amount of $300 million in value plus all MDT Bermuda-Form Insurance Proceeds, if any and capped at

---

[80] This section provides a summary of certain provisions of the PI Trust Documents, which will be filed with the Plan Supplement. This section is qualified in its entirety and is subject to the PI Trust Documents, including the exhibits thereto. The statements contained in this section do not purport to be precise or complete statements of all terms and provisions of the PI Trust Documents referred to therein. Reference is made to the PI Trust Documents for the full and complete statements of such terms and provisions thereof. In the event of any conflict between this summary, on the one hand, and the PI Trust Documents, on the other hand, the terms and provisions of the PI Trust Documents shall control.

[81] Capitalized terms used in Article III.S.7 of the Plan shall have the meaning attributed to such terms in the PI Trust Documents and the Plan, as applicable.

NAS1797

$450 million in value, received by the Debtors on or prior to the Effective Date. In addition, the PI Trust will be entitled to funding from the Master Disbursement Trust in the following amounts, subject to Section 5.2(h) of the Plan: (1) $200 million in value on July 31, 2024, (2) $100 million in value on July 31, 2025 and (3) $100 million in value on July 31, 2026. In addition, in the event the aggregate MDT Bermuda-Form Insurance Proceeds (whether received before, on or after July 31, 2026) exceed $400 million, the PI Trust shall be entitled to an incremental payment in the amount of the lesser of (x) the aggregate amount of the MDT Bermuda-Form Insurance Proceeds in excess of $400 million and (y) $50 million (which shall be in addition to, and not in reduction or substitution of, any of the installment payments set forth in the previous sentence), payable within thirty (30) days of receipt of any such MDT Bermuda-Form Insurance Proceeds, in accordance with the terms specified in the Plan. The PI Trust will make distributions (net of attorneys' fees and costs, including funding of the Common Benefit Escrow and Common Benefit Fund) to holders of PI Claims pursuant to the PI TDP set forth in the PI Trust Documents in the Plan Supplement.

Each time it receives funds received by under the Plan, the PI Trust shall deposit 6.43% of the remainder, up to an aggregate of $45 million in value over time, into a fund dedicated for payments to NAS PI Claimants (the "**NAS PI Fund**"), and (iii) deposit the rest into a fund dedicated for payments to Non-NAS PI Claimants (the "**Non-NAS PI Fund**"), in each case gross of the PI Trust Deductions and Holdbacks. These amounts may be held in the same account in order to maximize interest returns, but will be accounted for separately.

The PI Trust will make distributions (net of attorneys' fees, costs, and other deductions as set forth in the PI TDP, including funding of the Common Benefit Escrow and Common Benefit Fund) to holders of PI Claims pursuant to the PI TDP set forth in the PI Trust Documents in the Plan Supplement. Distributions on account of NAS PI Claims will be paid exclusively from the NAS PI Fund pursuant to the NAS PI TDP. Distributions on account of Non-NAS PI Claims will be paid exclusively from the Non-NAS PI Fund pursuant to the Non-NAS PI TDP.

Approximately 130,000 opioid-related personal injury victims filed claims in the Chapter 11 Cases, including approximately 6,300 NAS Child claims. The PI TDP provide a process for evaluating those claims and compensating their holders.

The Ad Hoc Group of Individual Victims believe that the Non-NAS PI TDP is fair and expeditious and resolves Non-NAS opioid-related personal injury claims in a way that is equitable, consistent, transparent and reasonable given the finite amount of funds available to satisfy such claims. The NAS Committee believe that the NAS PI TDP is fair and expeditious and resolves NAS opioid-related personal injury claims in a way that is equitable, consistent transparent and reasonable given the finite amount of funds available to satisfy such claims.

The PI TDP also permits a PI Claimant to irrevocably opt out of the liquidation provisions of the PI TDP in order to instead liquidate his or her PI Claim by prosecuting a lawsuit in the tort system. A PI Claimant who timely "opts out" will have the right to file against the PI Trust his/her PI Claim, and his/her PI Claim only, in the tort system, and will not be permitted to file any associated PI Channeled Claims (e.g., claims against a member of the Sackler Families) in the tort system. Any PI Claimant that so elects cannot later seek to liquidate its PI Claim pursuant to the streamlined procedures under the PI TDP. Only after such a PI

NAS1798

Claimant obtains a final judgment in the tort system may such PI Claimant be eligible to receive payment from the PI Trust on its PI Claim.

***Liquidation Procedures under the Non-NAS TDP***:

The following summarizes the Non-NAS PI TDP applicable to the Non-NAS PI Claims that are liquidated under the Non-NAS PI TDP:

**Allowance**. For a Non-NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in sections 6 through 9 (inclusive) of the Non-NAS PI TDP to be Allowed, the applicable Non-NAS PI Claimant <u>must, with respect to that Non-NAS PI Channeled Claim</u>:

(i) Hold such Non-NAS PI Channeled Claim against one or more Debtors;

(ii) Demonstrate usage of a qualifying prescribed opioid listed on Exhibit E of the Non-NAS PI TDP;[82]

(iii) Have already timely[83] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her Non-NAS PI Claim against one or more Debtors;

(iv) Complete, sign and submit the Non-NAS PI Claim Form attached to the Non-NAS PI TDP as Exhibit A, checking at least one injury box,[84] by the date that is 90 days[85] after the Non-NAS PI Claim Form is disseminated to Non-NAS PI Claimants; [86]

(v) Execute the HIPAA forms attached as Exhibit D of the Non-NAS PI TDP; and

(vi) If the Non-NAS PI Channeled Claim concerns the injuries of a Decedent, then also execute and submit the applicable Heirship Declaration attached as Exhibit F of the Non-NAS PI TDP.

---

[82] PI Claimants who used only (or, as applicable, where the Decedent used only) a non-prescribed (diverted) version of a qualifying opioid in Exhibit E to the PI TDP (OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt) are not eligible for payments unless that PI Claimant or Decedent was a minor when s/he initiated usage of a non-prescribed, branded version of a qualifying opioid in Exhibit E

[83] Subject to exceptions set forth in the Non-NAS PI TDP.

[84] For the avoidance of doubt, in the event a Non-NAS PI Claimant does not check any injury box from use of opioids on his/her Non-NAS PI Claim Form, his/her Non-NAS PI Channeled Claims shall be Disallowed. The Non-NAS PI Claim Form shall include clear language notifying a Non-NAS PI Claimant that if he or she fails to check any injury box from use of opioids, s/he will receive no recovery on his/her Non-NAS PI Channeled Claims.

[85] Subject to extension by the PI Claims Administrator in his/her discretion.

[86] Within 60 days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if a Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, the Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

NAS1799

Any Non-NAS PI Claimant who is liquidating his or her claims under the liquidating provisions of the Non-NAS PI TDP and satisfies the requirements with respect to his/her Non-NAS PI Channeled Claim shall have that Non-NAS PI Channeled Claim Allowed.

**If a Non-NAS PI Claimant does not satisfy these requirements with respect to a Non-NAS PI Channeled Claim that is being liquidated under §§ 6-9 of the Non-NAS PI TDP, including the requirement to timely submit his/her Non-NAS PI Claim Form and any necessary accompanying evidence, then such Non-NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under the Non-NAS PI TDP, you must submit the Non-NAS PI Claim Form as instructed by the deadline, which is 90 days[87] after the Non-NAS PI Claim Form is disseminated. If you fail to timely submit the Non-NAS PI Claim Form (and any required supporting evidence for those who do not opt out), you will be deemed not to have "opted out," and will therefore be subject to the non-"opt out" provisions of the Non-NAS PI TDP, which provide that if you fail to complete and return the Non-NAS PI Claim Form by the deadline,[88] your personal injury claims will be Disallowed, you will not recover any money on them from the PI Trust, and you will be forever barred from pursuing your claims in any forum. If you choose to opt-out, <u>you do not need to fill out the sections of the claim form regarding supporting evidence of your claim</u>, but you will need to provide evidence to the court if you pursue your claim in the tort system. In other words, <u>if you do nothing, you will not receive any compensation from the PI Trust</u>.**

**Qualifying Opioid**. One of the following is required to demonstrate a qualifying opioid in Exhibit E of the Non-NAS PI TDP:

(i) A Non-NAS PI Claimant who provides evidence of a prescription for brand name OxyContin, MS Contin, Dilaudid, Hysingla ER, Butrans, DHC Plus, MSIR, OxyFast, OxyIR, Palladone, or Ryzolt may rely on the name alone without the necessity of a corresponding NDC number.

(ii) In order for a Non-NAS PI Claimant to qualify based on the use of one of the generic products listed in Exhibit E of the Non-NAS PI TDP (e.g., oxycodone ER/CR, morphine sulfate ER, hydromorphone), s/he must present either:

(a) The corresponding NDC number, which is set forth in Exhibit E of the Non-NAS PI TDP;[89] or

(b) A notation in the record that the product is manufactured or sold by Rhodes or Purdue.

---

[87] Subject to extensions which the PI Trust claims administrator may give in his discretion.
[88] Subject to extensions which the PI Trust claims administrator may give in his discretion.
[89] Subject to addition of further NDC numbers.

NAS1800

     (iii) A Non-NAS PI Claimant who used (or, as applicable, where the Decedent used) a generic oxycodone prescription that does not contain evidence of (i) or (ii) herein may only qualify if the prescription utilizes one of the following:

        (a) Oxycodone CR (or controlled release); or

        (b) Oxycodone ER (extended release).

Non-NAS PI Claimants whose claims are based on the use only of opioids manufactured by companies other than the Debtors will not be eligible or qualified to receive a settlement payment from the PI Trust on Non-NAS PI Channeled Claims that are liquated under the liquidation provisions of the Non-NAS PI TDP. The Non-NAS PI TDP outlines several ways that individuals can show their eligibility, including through prescription or pharmacy records or, in the absence of this evidence, through affidavits signed under penalty of perjury. For a complete description of qualifying Purdue products and evidentiary requirements, you should carefully review the Non-NAS PI TDP, which is included in the Plan Supplement filed with the Bankruptcy Court and served on applicable parties.

The PI Claims Administrator will value eligible opioid-related personal injury claims based on a scoring grid that uses objective metrics to assign a certain number of points to different compensable injuries. The points will ultimately be translated into dollar amounts to determine the settlement amount payable for specific compensable injuries.

**Payment**. A Non-NAS PI Claimant meeting the requirements of Allowance may elect on the Non-NAS PI Claim Form to receive a set payment (an "**Easy Payment**") in lieu of other compensation. By electing to do so, such claimant gives up the right to receive a larger payment from the PI Trust. Based on current estimates by the Ad Hoc Group of Individual Victims, claimants that choose an Easy Payment will likely be entitled to receive a gross award of $3,500. **NOTE: if you select an Easy Payment, you are NOT eligible to receive any additional funds for your Non-NAS PI Claim**. That means you cannot receive any of the Base Payment or Level Awards below. If you select an Easy Payment and your Non-NAS PI Channeled Claim is determined to be an Allowed Non-NAS PI Channeled Claim, you will be entitled to a gross award of $3,500, before deduction of applicable PI Trust Deductions and Holdbacks, within a reasonably short amount of time after receipt of your claims package by the PI Claims Administrator, or as soon as all applicable liens have been cleared. The Easy Payment is also expected to be free of many (but not all) types of healthcare liens, including liens of Third-Party Payors.

The scoring grid, as detailed in the Non-NAS PI TDP, was developed using statistical sampling and modeling performed by financial analysts and experts, based on scoring grids developed in comparable cases, and with unique customization based on the injuries suffered by victims of Purdue's opioid products and activities related thereto. The chart below summarizes the scoring grid:

**NAS1801**

|  | Tier 1A | Tier 1B | Tier 2 | Tier 3 |
|---|---|---|---|---|
|  | *Addiction from Purdue Opioids* | *Death on OxyContin* | *Purdue Opioids Use ≥6 months* | *No Addiction/ Death from Purdue Opioids, and Purdue Opioids Use <6 months* |
| **BASE PAYMENTS** | 20,000 pts[90] | 40,000 pts | 6,000 pts | $3,500 |
| **LEVELS (one of the below)[91]** |  |  |  |  |
| **A** | 10,000 pts OUD Diagnosis, OR MAT for >6 months | N/A | 3,000 pts OUD Diagnosis, OR MAT for >6 months | N/A |
| **B** | 20,000 pts Death from an Opioid | N/A | 20,000 pts Death from an Opioid | N/A |

It is impossible to determine with certainty at this time how these points will translate into dollars and how much money any specific holder of an Allowed Non-NAS PI Channeled Claim will receive from the PI Trust. That is because the PI Claims Administrator must review the evidence submitted by holders of eligible opioid-related personal injury claims to determine how many qualifying claims fall in each "Tier" of the scoring grid. Based on preliminary analysis performed to date by the Ad Hoc Group of Individual Victims, it is estimated that holders of Tier 1 claims will likely receive between $16,000 and $48,000, holders of Tier 2 claims will likely receive between $4,800 and $31,200, and holders of Tier 3 claims will likely receive $3,500.[92]

If a Non-NAS PI Claimant is dissatisfied with the determination under the Non-NAS PI TDP of the settlement payment he or she is to receive on a Non-NAS PI Channeled Claim that was liquidated under the liquidation provisions of the Non-NAS PI TDP, then he or she can appeal to the PI Claims Administrator. If he or she disagrees with the decision of the PI Claims Administrator on the appeal, he or she may further appeal to an appeals master appointed by the PI Trustee. The decision of the appeals master will be final and binding.

---

[90] Non-NAS Claimants who do not claim addiction, dependence or abuse of opioids are not entitled to receive Tier 1A Awards.

[91] If a Non-NAS PI Claimant does not qualify for additional Level Awards, they do not get additional money above the Base Payment. A Non-NAS PI Claimant can only qualify for one, but not multiple, Level Awards.

[92] As discussed above, the PI Trust will receive money in installments spread out over a maximum of five years. Accordingly, settlement payments greater than $3,500 may be paid out in installments, may be paid out in further installments pursuant to a court order.

NAS1802

**Additional Claim Factors and Valuation**

(a)  To the extent practicable, only objective factors are to be scored, based upon the axiom that in mass torts consistency is fairness.

(b)  This grid is based in part on other scoring grids developed in comparable cases and development of a scoring grid with unique customization according to the claims and injuries encountered and reviewed in sampling individual PI Claims.

(c)  Because of limited funds, economic damages are not compensable. The Non-NAS PI TDP only compensates general pain and suffering. Nonetheless, all personal injury damages from use of Qualifying Opioids are being channeled to the PI Trust and released, including both economic and non-economic or general damages.

(d)  Only reported injuries are to be scored.

(e)  In no circumstance shall the Claims Administrator assign any claim value for any punitive damages, exemplary damages, statutory enhanced damages, or attorneys' fees or costs (including statutory attorneys' fees and costs).

(f)  Only Non-NAS PI Claims based on injuries or facts occurring prior to the filing of your Non-NAS PI Claim Form are eligible for recovery.

Your distribution amount under the Non-NAS PI TDP is a gross award subject to the PI Trust Deductions and Holdbacks, which are as follows: (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts held back under the LRP Agreement to settle claims and liens held by private insurance companies against you or your award, if any, (C) your equitable portion of amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare, or VA against you or your award, if any, (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[93]  In addition to these deductions and holdbacks, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

Because monies are being received by the PI Trust in installments, payments of Awards other than Easy Payments may be in installments. Additionally, payments of awards may be further delayed into installment payments if a competent court so orders. Finally, distributions to minors are to be held in trust until the minor becomes a legal adult (unless a competent court orders otherwise). For all of these reasons, it may take years before you receive all of your Award.

***The PI Trust will hold any amounts owed to a minor PI Claimant in trust until the minor PI Claimant becomes a legal adult under applicable state law**, unless otherwise directed by a court of competent jurisdiction.*

*          *          *

---

[93] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

NAS1803

***Opt-Out from the Non-NAS PI TDP:***

If a Non-NAS PI Claimant elects to "opt out" of the liquidation provisions of the Non-NAS PI TDP, the following procedures shall govern.

**Liquidation of a Non-NAS PI Claim in the Tort System**. If a Non-NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his/her Non-NAS PI Claim, then he/she may elect to liquidate such Non-NAS PI Claim in the tort system rather than under the Non-NAS PI TDP by checking the box so indicating on his or her Non-NAS PI Claim Form,[94] which Non-NAS PI Claim Form must be filed by the date that is 90 days[95] after the applicable Non-NAS PI Claim Form is disseminated to him/her.[96] If a Non-NAS PI Claimant does not complete and return the Non-NAS PI Claim Form by the deadline, the Non-NAS PI Claimant will be deemed not to have "opted out" to commence the Non-NAS PI Claimant's own lawsuit against the PI Trust in the tort system, and will therefore be subject to the non-"opt out" provisions of the Non-NAS PI TDP, which provide that if the Non-NAS PI Claimant fails to complete and return the Non-NAS PI Claim Form by the deadline,[97] the Non-NAS PI Claimant's personal injury claims will be Disallowed, the Non-NAS PI Claimant will not recover any money on them from the PI Trust, and the Non-NAS PI Claimant will be forever barred from pursuing your claims in any forum. If the Non-NAS PI Claimant chooses to opt-out, **the Non-NAS PI Claimant does not need to fill out the sections of the claim form regarding supporting evidence of the Non-NAS PI Claimant's claim**, but the Non-NAS PI Claimant will need to provide evidence to the court when the Non-NAS PI Claimant pursues such claim in the tort system. If the Non-NAS PI Claimant timely makes the opt-out election, then the Non-NAS PI Claimant may file a lawsuit regarding only its Non-NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the United States District Court for the Southern District of New York (the "SDNY District Court"),[98] unless such court orders pursuant to 28 USC § 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which the Non-NAS PI Claim arose. The adjudication of a Non-NAS PI Claim in the tort system shall be deemed to be an adjudication of that Non-NAS PI Claim and any associated Non-NAS PI Channeled Claims of the Non-NAS PI Claimant regarding the same injuries that are the subject of its Non-NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such Non-NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such Non-NAS PI Claim and such associated Non-NAS PI Channeled Claims.

---

[94] Within 60 days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if the Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, each Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[95] Subject to extension by the Claims Administrator in his discretion.

[96] The filing of a Non-NAS PI Claim Form indicating that a Non-NAS PI Claimant has elected to liquidate his or her Non-NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the claims asserted by such Non-NAS PI Claimant's action.

[97] Subject to extensions which the PI Trust claims administrator may give in his discretion.

[98] The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

NAS1804

Any such lawsuit must be filed by the Non-NAS PI Claimant in an individual capacity and not as a member or representative of a class, and no such lawsuit may be consolidated with the lawsuit of any other plaintiff by, or on motion of, any plaintiff.[99] All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[100] Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any Non-NAS PI Claim litigated against the PI Trust in the tort system.

Subject to the PI Trust's receipt of a Claim Form so indicating that a Non-NAS PI Claimant has elected to file a lawsuit as set forth above in the tort system, NewCo and the Plan Administration Trust will establish and maintain, as necessary, a document reserve (the "***PI Document Reserve***") containing such materials as are necessary to such lawsuit as discovery material. Any such Non-NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve by the PI Trust include any documents produced by the Shareholder Released Parties that are not included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement (the "**Shareholder Released Party Documents**"), the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such Non-NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional document or testimonial discovery must in such request (i) represent that such Non-NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the Non-NAS PI Claimant's good-faith belief that the additional discovery it seeks is relevant to such lawsuit. The PI Trust shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[101]

**Allowance**.  If a Non-NAS PI Claimant obtains a judgment on his/her Non-NAS PI Claim in the tort system and such judgment becomes a final order (each, a "**Final Judgment**"), such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject to certain limitation on damages and attorneys' fees, as well as

---

[99] The Trustee shall be empowered (i) to bring one or more consolidated actions against multiple PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[100] Among other things, the PI Trust reserves all rights to assert that the claim that is the subject of a PI Claimant's lawsuit is not a "PI Claim" within the meaning of the Plan.

[101] In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by PI Claimants or the PI Trust in multiple lawsuits commenced by individual PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

NAS1805

the Non-NAS Payment Percentage and the Non-NAS Maximum Value (each as defined below), as described below.

**Limitations on Amount**.  Payment on a Final Judgment for a Non-NAS PI Claim shall not exceed the dollar-equivalent of 120,000 points (the "**Non-NAS Maximum Value**"), which is three times the maximum point value attributed under the liquidation provisions of the Non-NAS PI TDP to eligible claims for the most severe injuries.

Points will be converted to dollars consistent with the conversion set forth in section 8 of the Non-NAS PI TDP.  As set forth in more detail in the Non-NAS PI TDP, the dollar amount ultimately awarded per point will be determined with reference to the funds remaining in the PI Trust and to the pool of claims remaining against the PI Trust.  It will vary depending on how many people choose to opt out their claims and how expensive it is for the PI Trust to defend those claims in the tort system. It is likely that the more people who opt out, the less money will be available to pay all victims, in part because of the high cost of defending claims in the tort system. It will also depend on the payment elections made by those who are liquidating their claims under sections 6 through 9 (inclusive) of the Non-NAS PI TDP.

At this time, the Ad Hoc Group of Individual Victims estimates that the dollar award amount per point will be between $0.80 and $1.20.

A Final Judgment on a Non-NAS PI Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that Non-NAS PI Claims liquidated under the Non-NAS PI TDP are reduced prior to payment. In other words, a non-NAS PI Claimant who elects to liquidate his or her Non-NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all Non-NAS PI Channeled Claims entitled to a recovery pursuant to the Non-NAS PI TDP. Based upon the work of the Ad Hoc Group of Individual Victims, statistical sampling and modeling performed by financial analysts and subject-matter experts for the Ad Hoc Group of Individual Victims and other holders of PI Claims, review of judgments obtained in lawsuits, settlement history, and collaborative discussions with stakeholders, the Base Payments and Level Awards described in the Non-NAS PI TDP represent an estimated pro-rata percentage recovery by PI Claimants holding Allowed PI Channeled Claims of approximately 2.0% (such pro-rata percentage recovery as may be altered over time, the "**Non-NAS Payment Percentage**"). Accordingly, the initial Non-NAS Payment Percentage is 2.0%.

No holder of a Non-NAS PI Claim who elects to liquidate his or her Non-NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her Non-NAS PI Claim multiplied by the Non-NAS Payment Percentage in effect at the time of payment (such value so reduced, the "**Non-NAS Percentage-Reduced Claim**"); *provided*, *however*, that if there is a reduction in the Non-NAS Payment Percentage,[102] the PI Trustee, in his or her sole

---

[102]  The Non-NAS Payment Percentage is subject to change if the PI Trustee, with the consent of the PI Trust's oversight committee, determines that an adjustment is required based on current estimates of the number, types, and values of Non-NAS PI Channeled Claims, the value of the assets of the PI Trust Non-NAS Fund available for the payment of Allowed Non-NAS PI Channeled Claims pursuant to the Non-NAS PI TDP and amounts due and

NAS1806

discretion, may cause the Non-NAS PI Trust to pay a Non-NAS PI Claim based on the Non-NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such Non-NAS PI Claim became a Final Judgment prior to the date the Trustee proposes the new Non-NAS Payment Percentage to the Oversight Committee and the processing of such Non-NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the Non-NAS PI Claimant or the Claimant's Counsel (as applicable).

**Payment**.

A Non-NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Non-NAS Fund, in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the lesser of (i) the Non-NAS Percentage-Reduced Claim and (ii) the Non-NAS Maximum Value, in each case as in effect on the date of the pending payment, as described next (the "**Non-NAS Gross Amount**"). Your Non-NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts necessary to settle liens held by private insurance companies against you or your award, if any, (C) amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare, or VA against you or your award, if any (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[103] The resulting net amount shall be paid from the PI Trust Non-NAS Fund to the Non-NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; subject, however, to the prior satisfaction of healthcare liens as set forth below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the Non-NAS Percentage-Reduced Claim, the Non-NAS Maximum Value, the Non-NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

**Healthcare Liens, Minors and Heirship**. The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental healthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

---

estimated to become due pursuant to the Non-NAS PI TDP in respect of Final Judgments obtained by Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of (i) full value to all holders of Allowed Non-NAS PI Channeled Claims and (ii) the Non-NAS Maximum Value to Non-NAS PI Claimants who elect to liquidate their Non-NAS PI Claims in the tort system. When making these determinations, the Trustee shall exercise common sense and flexibly evaluate all relevant factors.

[103] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

NAS1807

The special procedures set forth in Exhibit G to the Non-NAS PI TDP shall apply to all Non-NAS PI Claimants who are minors under applicable law. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the applicable Heirship Declaration attached to the Non-NAS PI TDP as Exhibit F.[104]

*          *          *

***Liquidation Procedures under the NAS PI TDP***:

Approximately 6,300 opioid-related NAS personal injury victims filed claims in the Chapter 11 Cases. The NAS PI TDP provide a process for evaluating those claims and compensating holders of qualifying opioid-related NAS personal injury claims. The NAS Committee believes that the NAS PI TDP is a fair and expeditious and resolve opioid-related NAS personal injury claims in a way that is equitable, consistent, transparent and reasonable given the finite amount of funds available to satisfy such claims. The following summarizes the liquidation provisions of the NAS PI TDP:

**Allowance**. For an NAS PI Channeled Claim that is being liquidated pursuant to the streamlined procedures set forth in the liquidation provisions of the NAS PI TDP to be Allowed, the applicable NAS PI Claimant <u>must, with respect to that NAS PI Channeled Claim:</u>

(i)      Hold such <u>NAS PI</u> Channeled Claim against one or more Debtors;

(ii)     Have already timely[105] filed an individual personal injury Proof of Claim against one or more Debtors in the Chapter 11 Cases asserting his/her NAS PI Claim against one or more Debtors;

(iii)    Demonstrate by Competent Evidence (as defined below) a diagnosis by a licensed medical provider of a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as neonatal abstinence syndrome ("**NAS**"). The diagnosis can be made by any medical professional, specifically including physicians, nurses, physician assistants, mental health counselor or therapist, or professional at a rehabilitation center. Only NAS PI Claims based on injuries or facts occurring prior to the filing of a Proof of Claim in the Chapter 11 Cases are eligible for recovery;

(iv)     Complete, sign and submit the NAS PI Claim Form attached to the NAS PI TDP as Exhibit A by the date that is 150 days[106] after the NAS PI Claim Form is disseminated[107] to NAS PI Claimants;[108]

---

[104] Exhibit F contains two declaration forms. One applies if the Decedent named the Non-NAS PI Claimant as executor in his/her will; the other applies if the Decedent had no will.
[105] Subject to exceptions set forth in the NAS PI TDP.
[106] Subject to extensions in the discretion of the PI Claims Administrator.

NAS1808

    (v)      Complete, sign and submit the two HIPAA forms attached as Exhibit C of the NAS PI TDP; and

    (vi)     If the NAS PI Channeled Claim concerns the injuries of a Decedent, then also execute and submit the applicable Heirship Declaration attached as Exhibit D of the NAS PI TDP.

Any NAS PI Claimant who is liquidating his or her claims under the liquidating provisions of the NAS PI TDP and satisfies the above requirements with respect to an NAS PI Channeled Claim shall have that NAS PI Channeled Claim Allowed.

**If an NAS PI Claimant does not satisfy these requirements with respect to an NAS PI Channeled Claim that is being liquidated under the liquidation provisions of the NAS PI TDP, including the requirement to timely submit his/her NAS PI Claim Form and any necessary accompanying evidence, then such NAS PI Channeled Claim shall be Disallowed.**

**Regardless of whether you elect to "opt out" or to have your claim liquidated under the NAS PI TDP, you must complete the NAS PI Claim Form as instructed by the deadline, which is 150 days[109] after the claim form is disseminated. If you fail to timely submit the NAS PI Claim Form (and any required supporting evidence for those who do not opt out), you will be deemed not to have "opted out," and will therefore be subject to the non-"opt out" provisions of the NAS PI TDP, which provide that if you fail to complete and return the NAS PI Claim Form by the deadline,[110] your personal injury claims will be Disallowed, you will not recover any money on them from the PI Trust, and you will be forever barred from pursuing your claims in any forum.  If you choose to opt-out, <u>you do not need to fill out the sections of the claim form regarding supporting evidence of your claim,</u> but you will need to provide evidence to the court if you pursue your claim in the tort system. In other words, <u>if you do nothing, you will not receive any compensation from the PI Trust.</u>**

**Competent Evidence**. To receive recovery on his/her NAS PI Claim, an NAS PI Claimant must submit one of the following forms of "**Competent Evidence**":

    (i)      A document from a licensed medical provider diagnosing the NAS Child with a medical, physical, cognitive or emotional condition resulting from the NAS Child's intrauterine exposure to opioids or opioid replacement or treatment medication, including but not limited to the condition known as NAS;

---

[107] Within 60 days after Effective Date, the NAS PI Claim Form will be made available to NAS PI Claimants electronically and, if an NAS PI Claimant is a pro se claimant, also mailed to such NAS PI Claimant in physical copy. When disseminated, the NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the NAS PI Claim Form must be returned.

[108] If the NAS PI Claimant checks the box on the NAS PI Claim Form indicating its election to liquidate its NAS PI Claim in the tort system rather than under the liquidation provisions of the NAS PI TDP, then such NAS PI Claim will not be liquidated thereunder.

[109] Subject to extensions which the PI Trust claims administrator may give in his or her discretion.

[110] Subject to extensions which the PI Trust claims administrator may give in his or her discretion.

NAS1809

(ii) A document from a licensed medical provider affirming that the NAS Child had Neonatal Opioid Withdrawal Syndrome ("NOWS"); or

(iii) Other medical records evidencing that the NAS Child had an NAS diagnosis, including post-natal treatment for symptoms caused by opioid exposure, symptoms of post-natal withdrawal from opioids, medical scoring for NAS or NOWS which is positive or indicates fetal opioid exposure, a positive toxicology screen of the birth mother or infant for opioids or opioid-weaning drugs, or a maternal diagnosis of opioid use disorder by the birth mother.

The PI Claims Administrator shall have discretion to determine whether these evidentiary requirements have been met, including whether the forms of evidence submitted constitute Competent Evidence.[111] Any NAS PI Claimant who fails to meet these requirements is not entitled to any payment.

**Payment**. The money available in the PI Trust NAS Fund for distribution to NAS PI Claimants will be divided equally among the Allowed NAS PI Channeled Claims and distributed to the Holders of such Allowed NAS PI Channeled Claims. The PI Trust may issue Distributions on account of Allowed NAS PI Channeled Claims in installments as funds are received by the PI Trust, or on account of installments pursuant to a court order. Because the special procedures applicable to minors require the PI Trust to hold an award for a minor in trust until the minor becomes a legal adult, unless ordered otherwise by a court of competent jurisdiction, it may take years before you have received all of your Award.

Although the Plan channels claims for all types of personal injury damages to the PI Trust, including both economic and non-economic or general damages, Awards issued pursuant to the NAS PI TDP compensate only general pain and suffering on account of the NAS Child's injuries. Because of limited funds, economic damages and punitive damages are not compensable. Only injuries occurring before the filing of your NAS PI Claim Form are compensable.

At this time, the NAS Committee estimates that the gross award that will be distributable for an Allowed NAS PI Claim that satisfies the evidentiary requirements set forth above will be approximately $7,000, subject to the PI Trust Deductions and Holdbacks, which are as follows: (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts held back under the LRP Agreement to settle claims and liens held by private insurance companies against you or your award, if any, (C) your equitable portion of amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare, or VA against you or your award, if

---

[111] Competent Evidence necessary for Allowance of an NAS PI Claim is evidence, in the opinion of the Trustee, that establishes that the occurrence of a diagnosis of NAS with respect to an NAS PI Claimant is more likely true than not true, i.e. a probability standard. Competent Evidence requires more than a mere possibility or scintilla of truth, but such standard does not require proof that rises to the level of clear and convincing evidence. However, notwithstanding anything to the contrary in this NAS PI TDP, proof of a prescription of an opioid product shall not be required.

119

NAS1810

any, (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[112]

In addition to the deductions and holdbacks described above, your award may be subject to claims by certain state or tribal healthcare programs that are not part of the LRP Agreement.

***The PI Trust will hold any amounts owed to a minor PI Claimant in trust until the minor PI Claimant becomes a legal adult under applicable state law, unless otherwise directed by a court of competent jurisdiction.***

***Opt-Out from the NAS PI TDP***:

If an NAS PI Claimant elects to "opt out" of the liquidation provisions of the NAS PI TDP, the following procedures shall govern.

**Liquidation of NAS PI Claim in the Tort System**.  If an NAS PI Claimant timely filed a proof of claim in the Chapter 11 Cases asserting his/her NAS PI Claim, then it may elect to liquidate such NAS PI Claim in the tort system rather than under the NAS PI TDP by checking the box so indicating on his or her NAS PI Claim Form, which NAS PI Claim Form must be filed by the date that is 150 days[113] after the applicable NAS PI Claim Form[114] is disseminated to him/her.[115] If an NAS PI Claimant does not complete and return the NAS PI Claim Form by the deadline, the NAS PI Claimant will be deemed not to have "opted out" to commence the NAS PI Claimant's own lawsuit against the PI Trust in the tort system, and will therefore be subject to the non-"opt out" provisions of the NAS PI TDP described above, which provide that if the NAS PI Claimant fails to complete and return the NAS PI Claim Form by the deadline,[116] the NAS PI Claimant's personal injury claims will be Disallowed, the NAS PI Claimant will not recover any money on them from the PI Trust, and the NAS PI Claimant will be forever barred from pursuing the NAS PI Claimant's claims in any forum.  If the NAS PI Claimant chooses to opt-out, **the NAS PI Claimant does not need to fill out the sections of the claim form regarding supporting evidence of the NAS PI Claimant's claim**, but the NAS PI Claimant will need to provide evidence to the court when the NAS PI Claimant pursues the NAS PI Claimant's claim in the tort system.  If the NAS PI Claimant does timely make the opt-out election, then the NAS PI Claimant may file a lawsuit regarding only its NAS PI Claim (and no other claims) against only the PI Trust (and including no other parties as defendants) solely in the SDNY District

---

[112] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[113] Subject to extension in the discretion of the PI Claims Administrator.

[114] Within sixty (60) days after Effective Date, the Non-NAS PI Claim Form will be made available to Non-NAS PI Claimants electronically and, if the Non-NAS PI Claimant is a pro se claimant, also mailed to such Non-NAS PI Claimant in physical copy. When disseminated, each Non-NAS PI Claim Form will clearly state the absolute deadline (e.g., "January 30, 2022") by which the Non-NAS PI Claim Form must be returned.

[115] The filing of an NAS PI Claim Form indicating that an NAS PI Claimant has elected to liquidate his or her NAS PI Claim in the tort system shall have no effect on any federal or state statute of limitation or repose applicable to the claims asserted by such NAS PI Claimant's action.

[116] Subject to extensions which the PI Trust claims administrator may give in his discretion.

NAS1811

Court,[117] unless such court orders pursuant to 28 USC § 157(b)(5) that such suit may be filed and tried in the United States District Court for the district in which the NAS PI Claim arose. The adjudication of an NAS PI Claim in the tort system shall be deemed to be an adjudication of that NAS PI Claim and any associated NAS PI Channeled Claims of the NAS PI Claimant regarding the same injuries that are the subject of its NAS PI Claim. Any Distribution from the PI Trust on a Final Judgment (as defined below) in respect of such NAS PI Claim, if any, shall be deemed to be a Distribution in satisfaction and conclusive resolution of such NAS PI Claim and such associated NAS PI Channeled Claims.

Any lawsuit against the PI Trust filed by the NAS PI Claimant must be filed in an individual capacity and not as a member or representative of a class, and no such lawsuit may be consolidated with the lawsuit of any other plaintiff by, or on motion of, any plaintiff.[118]  All defenses (including, with respect to the PI Trust, all defenses which could have been asserted by the Debtors, except as otherwise provided in the Plan) shall be available to both sides at trial.[119] Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any NAS PI Claim litigated against the PI Trust in the tort system.

Subject to the PI Trust's receipt of a Claim Form so indicating that an NAS PI Claimant has elected to file a lawsuit as set forth above in the tort system, NewCo and the Plan Administration Trust will establish and maintain, as necessary, the PI Document Reserve containing such materials as are necessary to such lawsuit as discovery material. Any such NAS PI Claimant will be provided access to the PI Document Reserve subject to agreeing to (i) a protective order acceptable to the PI Trustee, the Plan Administration Trustee, and NewCo, and (ii) to the extent that the materials deposited into the PI Document Reserve by the PI Trust include any Shareholder Released Party Documents, the Protective Order, which shall exclusively govern the terms of disclosure of the Shareholder Released Party Documents. Any such NAS PI Claimant who propounds on the PI Trust, NewCo, the Plan Administration Trustee, any other Creditor Trust, or any Debtor a request for additional document or testimonial discovery must in such request (i) represent that such NAS PI Claimant has conducted a reasonable search of the PI Document Reserve and, if it has been established, the Public Document Repository, and believes, based on such reasonable search, that the documents, information, or testimony it seeks is not available in either the PI Document Reserve or the Public Document Repository, and (ii) state and explain the basis for the NAS PI Claimant's good-faith belief that the additional discovery it seeks is relevant to such lawsuit. The PI Trust

---

[117] The Debtors shall seek an order from the SDNY District Court requiring that lawsuits filed by PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system be filed and tried solely in the SDNY District Court pursuant to 28 U.S.C. § 157(b)(5).

[118] The Trustee shall be empowered (i) to bring one or more consolidated actions against multiple PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system and (ii) to seek to consolidate multiple lawsuits commenced by individual PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

[119]  Among other things, the PI Trust reserves all rights to assert that the claim that is the subject of a PI Claimant's lawsuit is not a "PI Claim" within the meaning of the Plan.

NAS1812

shall not be liable for any costs incurred by parties other than the PI Trust in connection with third-party discovery propounded by any party other than the PI Trust.[120]

**Allowance**.  If an NAS PI Claimant obtains a Final Judgment, such Final Judgment shall be deemed "Allowed" for purposes under the Plan and shall be payable by the PI Trust, subject to certain limitation on damages and attorneys' fees, as well as the NAS Payment Percentage and the NAS Maximum Value (each as defined below), as described below.

**Limitations on Amount**.  Notwithstanding their availability in the tort system, no multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), and no interest, attorneys' fees or costs (including statutory attorneys' fees and costs) shall be payable, with respect to any NAS PI Claim litigated against the PI Trust in the tort system.

Payment on a Final Judgment for an NAS Child shall not exceed $21,000 (the "**NAS Maximum Value**") which is estimated to be three times the maximum value that will be distributed under the NAS PI TDP for a given NAS PI Claim.

A Final Judgment on an NAS PI Claim, minus any multiple, exemplary, statutory enhanced and/or punitive damages (i.e., damages other than compensatory damages), interest, attorneys' fees or costs (including statutory attorneys' fees and costs) that may have been awarded as part of such Final Judgment, shall be subject to reduction by the same percentage that NAS PI Claims liquidated under the NAS PI TDP are reduced prior to payment. In other words, an NAS PI Claimant who elects to liquidate his or her NAS PI Claim in the tort system shall not be entitled to receive more than his or her pro-rata share of the value available for distribution to all NAS PI Channeled Claims entitled to a recovery pursuant to the NAS PI TDP.  In the view of the NAS Committee, the estimated awards for NAS PI Claims liquidated under the NAS PI TDP represent a fractional recovery by NAS PI Claimants holding Allowed NAS PI Channeled Claims (such pro-rata percentage recovery as may be altered over time, the "NAS Payment Percentage"). The initial NAS Payment Percentage will be set forth in the NAS PI TDP.

No holder of an NAS PI Claim who elects to liquidate his or her NAS PI Claim in the tort system shall receive a payment that exceeds the liquidated value of his or her NAS PI Claim multiplied by the NAS Payment Percentage in effect at the time of payment (such value so reduced, the "**NAS Percentage-Reduced Claim**"); *provided, however*, that if there is a reduction in the NAS Payment Percentage, the PI Trustee, in his or her sole discretion, may cause the NAS PI Trust to pay an NAS PI Claim based on the NAS Payment Percentage that was in effect prior to the reduction if the judgment in respect of such NAS PI Claim became a Final Judgment prior to the date the PI Trustee proposes the new NAS Payment Percentage to the Oversight Committee and the processing of such NAS PI Claim was unreasonably delayed due to circumstances beyond the control of the NAS PI Claimant or the Claimant's Counsel (as applicable).

---

[120] In order to minimize costs incurred by the PI Trust in connection with third-party discovery, the PI Trustee shall be empowered to seek to consolidate discovery propounded by PI Claimants or the PI Trust in multiple lawsuits commenced by individual PI Claimants who elect, subject to the terms hereof, to liquidate their PI Claims by commencing separate lawsuits in the tort system.

NAS1813

**Payment**.  An NAS PI Claimant who obtains a Final Judgment shall be entitled to receive from the PI Trust NAS Fund in full and final satisfaction of that Final Judgment, a gross amount (subject to deductions set forth next) equal to the *lesser* of (i) the NAS Percentage-Reduced Claim and (ii) the NAS Maximum Value, in each case as in effect on the date of the pending payment, as described next (the "**NAS Gross Amount**"). Your NAS Gross Amount shall be subject to the following deductions and holdbacks: (A) your pro rata share of the operating expenses of the PI Trust, (B) amounts necessary to settle liens held by private insurance companies against you or your award, if any, (C) your equitable portion of amounts prepaid to the United States under the United States-PI Claimant Medical Expense Claim Settlement to settle claims and liens of certain federal healthcare programs like Medicare, Tricare or VA against you or your award, if any, (D) your pro rata share of the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, subject to Section 5.8(g) of the Plan, and (E) the fees and costs of your individual attorney(s) in the Chapter 11 Cases, if any.[121] The resulting net amount shall be payable from the PI Trust NAS Fund, and shall be paid, subject to the Minors Procedures set forth in Exhibit E to the NAS PI TDP, to the NAS PI Claimant in the form of an initial payment not to exceed $3,500.00 and five (5) additional equal installments in years six (6) through ten (10) following the year of the initial payment; *subject, however*, to the prior satisfaction of healthcare liens as set forth below. In no event shall interest be paid in respect of any judgment obtained in the tort system.

None of the NAS Percentage-Reduced Claim, the NAS Maximum Value, the NAS Gross Amount, the deductions therefrom, or the payment schedule is subject to any appeal or reconsideration.

**Healthcare Liens, Minors and Heirship**. The PI Trust shall not issue any payment in respect of a Final Judgment until the Claims Administrator has received proof to his or her reasonable satisfaction that any private or governmental healthcare liens or similar claims against such Final Judgment have been satisfied or will be satisfied out of the recovery.

The special procedures set forth in Exhibit E to the NAS PI TDP shall apply to all NAS PI Claimants who are minors under applicable law. Anyone seeking a Distribution from the PI Trust in their capacity as an heir must execute and submit the applicable Heirship Declaration attached to the NAS PI TDP as Exhibit D.[122]

\*　　　　　\*　　　　　\*

### *The PI Trust and the PI Trust Agreement*

The expenses of the PI Trust shall be governed by the PI Trust Agreement. The PI Trust Agreement provides that the Trustee shall have the power to pay liabilities and expenses of the PI Trust (including indemnification obligations), establish the Creditor Trust Operating Reserve

---

[121] Your individual attorney, rather than the PI Trust, will be responsible for deducting his/her fees and expenses from the award.

[122] Exhibit D contains two declaration forms. One applies if the Decedent named the PI Claimant as executor in his/her will; the other applies if the Decedent had no will.

NAS1814

for the PI Trust and such other funds, reserves, and accounts within the PI Trust estate as deemed by the Trustee to facilitate carrying out the purposes of the PI Trust. The PI Trust Agreement provides that the amount of the PI Trust Assets available to make settlement payments to Holders of Allowed PI Channeled Claims shall be subject to the PI Trust Deductions and Holdbacks, which include the fees and expenses of PI Trust professionals and employees, including those professionals needed to administer the PI TDP and LRP Agreement, and outside legal, financial, accounting, investment, auditing, forecasting, expert, and other consultants, advisors, and agents. These deductions will also include amounts for the compensation, costs and fees of professionals that have represented and/or are representing (A) the Ad Hoc Group of Individual Victims in connection with the Chapter 11 Cases, and (B) the NAS Committee in connection with the Chapter 11 cases, subject to certain limitations. To the extent such compensation, costs, fees and expenses were incurred prior to the Effective Date and were not paid by the PI Trust, the Trustee is authorized to pay or reimburse such fees and expenses from the PI Trust Assets as Trust Expenses. Fees and expenses of the Appeals Master shall be borne respectively by any PI Claimant who appeals the ruling of the Claims Administrator regarding his or her respective PI Channeled Claims, and such fees and expenses shall be deducted from such PI Claimants' respective payments from the PI Trust. Additionally, PI Claimants that incurred individual legal fees and expenses (including fees and expenses pursuant to retainer agreements) shall have such individual legal fees and expenses deducted from their respective payments from the PI Trust.

Edgar C. Gentle III shall serve as Trustee.[123] In the event of a vacancy in the trustee position, whether by term expiration, death, retirement, resignation, or removal, or because the Trustee is otherwise unable to perform its functions as trustee, the PI Trust Oversight Committee shall choose a successor Trustee. In the event that the PI Trust Oversight Committee cannot agree on a successor trustee, the PI Trust Oversight Committee shall ask the Bankruptcy Court to select the successor trustee.

The PI Trust Agreement provides that the PI Trust Oversight Committee shall consist of three (3) members. Two members of the PI Trust Oversight Committee shall be named by the Ad Hoc Group of Individual Victims. These two members will select the third member of the PI Trust Oversight Committee. The members of the PI Trust Oversight Committee shall be compensated as provided in the Budget. A description of the amounts paid to the PI Trust Oversight Committee members shall be included in the annual report to be filed with the Bankruptcy Court.

The PI Trust Agreement will provide that the Trustee shall receive a retainer from the PI Trust for his service as a trustee in the amount of $150,000 per annum, paid annually. Hourly time shall first be billed and applied to the annual retainer. Hourly time in excess of the annual retainer shall be paid by the PI Trust. For all time expended as Trustee, including attending meetings, preparing for such meetings, and working on authorized special projects, the Trustee shall receive the sum of $400 per hour. For all non-working travel time in connection with PI Trust business, the Trustee shall receive the sum of $200 per hour.

---

[123] In the event Mr. Gentle becomes unavailable to serve as the Trustee, the Ad Hoc Group of Individual Victims shall, subject to the Debtors' consent (which consent shall not be unreasonably withheld) select a different person to serve as the Trustee in accordance with the Plan.

NAS1815

The PI Trust Agreement will provide that the Trustee shall have the power to appoint such officers and hire such employees and engage such legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents as the business of the PI Trust requires, and delegate to such persons such powers and authorities as the fiduciary duties of the Trustee permit and as the Trustee, in his discretion, deems advisable or necessary in order to carry out the terms of this PI Trust Agreement, the PI TDP, and the LRP, and pay reasonable compensation to those employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents.

The PI Trust Agreement will provide that the Trustee shall retain a claims administrator ("**Claims Administrator**"), which may be the same individual as the Trustee. The PI Trust has chosen Edgar C. Gentle III to be the Claims Administrator.

The PI Trust Agreement will provide that neither the Trustee nor the Delaware Trustee shall be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

## T.     Protocols for the Resolution of Healthcare Liens

This section describes how certain healthcare liens that may affect some payments will be resolved.  The lien resolution program summarized in this section and set forth in the PI Trust Documents applies only to PI Channeled Claims that are liquidated pursuant to the liquidation provisions of the PI TDP, and not to the PI Channeled Claims of PI Claimants who elect to opt out of such liquidation provisions.

Settlement payments made to PI Claimants who have received certain types of health insurance coverage for opioid-related injuries may be subject to healthcare claims or liens. Under federal law, certain health insurers like Medicare have a statutory right to be reimbursed for the costs of opioid-related medical treatment they paid on behalf of a holder of an opioid-related personal injury claim.  Additionally, if a claimant had private health insurance, many private health insurance contracts provide a similar right to be reimbursed.  Complying with these statutory and contractual reimbursement and (lien) obligations can be a complicated process.  To address that complexity, the PI Trust will engage a specialist to determine the proper amount and validity of those liens and, thereby, maximize the amount available for payment to a holder of an opioid-related personal injury claim from the PI Trust.

In the case of United States-PI Claimant Medical Expense Claims, such claims will be resolved pursuant to the United States-PI Claimant Medical Expense Claim Settlement.

In the case of liens held by Participating TPPs, such liens will be resolved pursuant to the LRP Agreement. The LRP Agreement provides PI Claimants who receive a recovery on their PI Channeled Claims under the liquidation provisions of the PI TDP with a fair, swift, and cost-effective procedure through which such claimants can resolve any healthcare liens held by private TPPs that choose to participate in that lien resolution procedure.  That lien resolution program emerged from intensive negotiations between counsel for the Ad Hoc Group of Individual Victims and a group of private TPPs.  Pursuant to the LRP Agreement, participating private TPPs have agreed to release their claims against and liens on distributions of $3,500 or

125

NAS1816

less made from the PI Trust to PI Claimants on PI Channeled Claims that were liquidated under the liquidation provisions of the PI TDP. For all holders of qualifying opioid-related personal injury claims whose distributions from PI Trust exceed $3,500, the participating private TPPs have agreed to cap the amount payable from such distributions to such participating private TPPs on account of their healthcare liens, and/or "offset" their liens, pursuant to the following:

      (i) For any statutory lien (i.e., MA, MCOs, FEHBA, etc.): 25%.

      (ii) For all preemptive liens (i.e., ERISA self-funded, etc.): 25%.

      (iii)For all non-preemptive liens in an Anti-Subrogation State: Liens are waived.

      (iv)For all non-preemptive liens in a Non-Equity State without contractual recovery rights: Liens are waived.

      (v) For all non-preemptive liens not waived pursuant to (iii) or (iv) or otherwise:

          a) Gross Recovery above $50,000: 19.5%.
          b) Gross Recovery between $25,000 and $50,000: 18%.
          c) Gross Recovery below $25,000: 15%.

The "Lien Offset" shall be 30%.

      The LRP Agreement is a PI Trust Document that is included in the Plan Supplement.[124]

      In the case of other healthcare liens such liens will remain to be resolved directly with the parties holding such liens.

## U.    Negotiated Post-Effective Date Structure and Governance of NewCo

      NewCo's post-Effective Date ownership and governance structure fulfills the vision embodied in the initial Settlement Framework and the DOJ Resolution for the Debtors' businesses to be transferred to a new entity for the benefit of claimants and the U.S. public. The precise terms are the product of extensive negotiations among the Debtors, the AHC, the UCC, the DOJ and other stakeholders, including within the context of the second phase of the Mediation. The diagram and descriptions below summarize key elements of the structure and the related mechanisms by which payments to NOAT, the Tribe Trust and the Private Creditor Trusts will be funded and guaranteed.[125]

---

[124] A copy of the current draft of the LRP Agreement is attached to the *Notice of Filing of Plan Supplement Pursuant to the First Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [D.I. 2732] filed on April 23, 2021.

[125] The Tribe Trust shown in the diagram refers to one or more trusts, limited liability companies or other Persons to be established in accordance with Section 5.7 of the Plan.

NAS1817



### 1. NewCo

NewCo will be a newly formed Delaware limited liability company that will be directly owned by TopCo (which will own 100% of the voting and economic interests in NewCo) and indirectly owned by NOAT and the Tribe Trust. NewCo's Purpose will be to responsibly, sustainably, and transparently balance (i) the interests of its stakeholders to provide abatement of the opioid crisis, (ii) the effective deployment of its assets to address the opioid crisis, and (iii) the interests of those materially affected by its conduct. To this end, on or prior to the Effective Date, NewCo will directly or indirectly receive NewCo Transferred Assets, which consist of approximately $200 million of the Debtors' cash and all of the Debtors' non-cash assets (including the equity of the Transferred Debtors) other than rights to certain insurance proceeds and certain causes of action.

NewCo will be governed by a board of seven (7) disinterested and independent NewCo Managers who will each have experience in one or more of the following areas: pharmaceuticals, public policy (including public health policy), law enforcement, ethics and compliance, finance, audit, general business and/or corporate governance issues. The Ad Hoc Committee and the MSGE Group (collectively, the "**Governmental Consent Parties**"), in consultation with the Debtors and the Creditors' Committee, will select the initial NewCo Managers, pursuant to a selection process that is reasonably acceptable to the Debtors and is subject to observation by the DOJ.

The Confirmation Order will contain the NewCo Governance Covenants, which will require NewCo to: (i) provide all of its products, including all opioid products, in a safe manner that limits the risk of diversion; (ii) comply with its obligations under the Public Entity Settlements and the Private Entity Settlements; (iii) pursue and implement Public Health Initiatives; and (iv) otherwise take into account long-term public health interests relating to the opioid crisis and best environmental, social and governance practices in management of a pharmaceutical business. The Confirmation Order will also contain the NewCo Operating

NAS1818

Injunction, which will bind NewCo and any successors to NewCo, to injunctive relief substantially similar to the voluntary injunction currently in place for the Debtors.

The NewCo Monitor will be appointed to ensure compliance with both the NewCo Governance Covenants and the NewCo Operating Injunction. The NewCo Monitor will be the existing Purdue Monitor as of the Effective Date or otherwise will be selected by the Governmental Consent Parties with the consent of the Debtors, and in consultation with the Creditors' Committee.

As described in greater detail in the Amended NewCo/TopCo Governance Term Sheet attached as **Appendix F** hereto, the NewCo Managers and TopCo Managers will pursue a transaction or series of transactions to sell the assets of NewCo and/or sell, transfer, or contribute TopCo's equity interests in NewCo. The NewCo Disposition Event may consist of one or more sales of assets or sales of equity through public or private markets, and may involve commercial buyers or nonprofit buyers. In pursuing such a NewCo Disposition Event, the NewCo Managers and TopCo Managers will consider which transactions best achieve NewCo's Purpose, taking into account fulfilling the Minimum TopCo Distribution, application of proceeds, and whether the buyers will continue to deploy the purchased assets/securities in furtherance of NewCo's Purpose and the NewCo Governance Covenants. The NewCo Managers and TopCo Managers will use reasonable best efforts to complete the NewCo Disposition Event by December 31, 2024. This date may be extended only by no less than a two-thirds majority determination of the TopCo Managers, taking into account NewCo's Purpose, after providing 30 days' written notice to the Attorneys General and other designated governmental and tribal representatives, explaining why such an extension is considered appropriate and advances the public interest.

Additional information about the governance structure of NewCo is set forth in Article IVD.4 and the Amended NewCo/TopCo Governance Term Sheet attached as **Appendix F** hereto.

NewCo or its wholly owned subsidiary will also assume the Purdue Pension Plan. Specifically, upon the Effective Date, NewCo or its wholly owned subsidiary shall be deemed to have assumed the Purdue Pension Plan and all liabilities and assets thereunder and shall comply with all applicable statutory provisions of ERISA and the IRC, including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083; paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307; and administering the Purdue Pension Plan in accordance with its terms and the provisions of ERISA and the IRC (and NewCo reserves all rights thereunder).[126]

---

[126] Notwithstanding any provision in the Plan to the contrary, no provision contained in the Plan, the Confirmation Order, the Bankruptcy Code (including section 1141 thereof), or any other document filed in the Debtors' bankruptcy cases shall be construed as discharging, releasing, exculpating or relieving NewCo or its successors from any liability or responsibility with respect to the Purdue Pension Plan under any law, governmental policy, or regulatory provision. PBGC and the Purdue Pension Plan shall not be enjoined or precluded from enforcing such liability or responsibility as a result of any of the provisions of the Plan, the Confirmation Order, the Bankruptcy Code or any other document filed in the Debtors' bankruptcy cases. The PBGC and the Debtors agree that all Proofs of Claim filed by the PBGC shall be deemed to be withdrawn, with prejudice, as of the Effective Date.

NAS1819

### 2. *TopCo*

TopCo will be a newly formed Delaware limited liability company in which NOAT will hold one hundred percent (100%) of the voting interest. NOAT and the Tribe Trust will hold, respectively, majority and minority economic interests in TopCo in percentages corresponding to the Public Entity Allocations agreed to pursuant to the Public Entity Settlements.

TopCo will hold one hundred percent (100%) of the equity interests and voting rights in NewCo and will be entitled to collect distributions therefrom. TopCo will be party to the NewCo Credit Support Agreement. TopCo will make distributions of excess cash to NOAT and the Tribe Trust, subject to the terms of its organizational documents and the NewCo Credit Support Agreement.

TopCo will be governed by a board of three (3) disinterested and independent TopCo Managers; *provided* that one (but no more than one) Creditor Trustee of NOAT may serve as a TopCo Manager; *provided, further,* that any action taken by such individual in his or her capacity as TopCo Manager shall not be subject to the fiduciary duties of such individual in his or her capacity as a Creditor Trustee of NOAT. The initial TopCo Managers will be selected by the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and pursuant to a selection process that is reasonably acceptable to the Debtors. The DOJ will have the right, in its discretion, to observe the selection process.

Additional information about the governance structure of TopCo is set forth in Article IVD.5 and the Amended NewCo/TopCo Governance Term Sheet attached as **Appendix F** hereto.

### 3. *NOAT*

The NOAT will be a newly formed Delaware statutory trust that will hold one hundred percent (100%) of the voting interests and a majority of the economic interests of TopCo (with the Tribe Trust holding the remainder) and a residual interest in the Master Disbursement Trust (together with the Tribe Trust). NOAT will (i) collect (a) all of the Debtors' surplus cash remaining after all required payments are made on the Effective Date and (b) distributions of excess cash from the MDT and TopCo, (ii) assume all liability for and administering the Non-Federal Domestic Governmental Claims, and (iii) make distributions on account of Non-Federal Domestic Governmental Claims to be used for abatement purposes.

No federal, state, or local governmental entity will own any interest in NewCo.

NOAT will be governed by Creditor Trustees of NOAT. The Governmental Consent Parties, in consultation with the Debtors and pursuant to a selection process reasonably acceptable to the Debtors will select such trustees; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process.

### 4. *The Tribe Trust*

The Tribe Trust will (i) hold the remainder of the economic interests of TopCo not held by NOAT and a residual beneficiary interest in the Master Disbursement Trust (together with NOAT), (ii) collect an initial distribution of $50 million from the Debtors and the required

129

NAS1820

distributions from the Master Disbursement Trust and NewCo/TopCo, (iii) assume all liability for and administer the Tribe Claims, and (iv) make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes.

The Tribe Trust will be governed by trustees that will be selected by the Native American Tribe Group, subject to the consent of the Debtors.

### 5. The Master Disbursement Trust

The Master Disbursement Trust will be a newly formed trust that will (i) hold and administer the MDT Transferred Assets, which will consist of (a) a reserve established to pay MDT operating expenses, (b) any Claims and causes of action against Excluded Parties, (c) certain insurance rights of the Debtors, (d) the right to receive the Required Settlement Payments under the Shareholder Settlement Agreement (and rights to enforce such agreement and pursue claims against applicable Sackler Parties pursuant to the terms of the Shareholder Settlement Agreement if necessary), and (e) any surplus cash of the Plan Administration Trust upon its dissolution; (ii) make payments in satisfaction of the MDT Claims; and (iii) make Public Creditor Trust Distributions in respect of the MDT Interests from MDT Excess Cash in accordance with the Plan and the Public Entity Settlements.

The Master Disbursement Trust will be governed by a board of three MDT Trustees. The Governmental Consent Parties will select two initial MDT Trustees and the Creditors' Committee will select one initial MDT Trustee, in each case, in consultation with the Debtors, pursuant to a selection process reasonably acceptable to the Debtors. The DOJ will have the right to observe the selection process. The MDT Trustees will select an MDT Executive Director who will: (i) carry out the day-to-day operations of the Master Disbursement Trust; (ii) make enforcement, litigation and liquidation recommendations as are reasonably necessary to the MDT Trustees and such other administrative professionals or entities; and (iii) have such other duties and responsibilities as set forth in the MDT Agreement and as may be delegated to it by the MDT Trustees in accordance with the MDT Agreement.

### 6. The Private Creditor Trusts

The Private Creditor Trusts consist of the PI Trust, the Hospital Trust, the TPP Trust, and the NAS Monitoring Trust. The Private Creditor Trusts will hold beneficial interests in and collect payments from the MDT of a specified amount in accordance with the Private Entity Settlements. Each of the Private Creditor Trusts will assume all liability for and administer Claims in the applicable Class and make distributions or award grants for authorized abatement purposes pursuant to their respective governing documents.

### 7. The Plan Administration Trust

The Plan Administration Trust will be established to (i) hold, manage, sell and invest the PAT Assets[127] for the benefit of holders of Claims (other than Channeled Claims), (ii) hold and

---

[127] The PAT Assets consist of (a) the PAT Reserves; (b) the PAT Distribution Account; (c) any assets not transferred to NewCo or the MDT; and (d) Retained Causes of Action necessary for the administration of Claims against the Debtors (other than Channeled Claims).

NAS1821

maintain the PAT Reserves [128] and the PAT Distribution Account [129] and maintain the Professional Fee Escrow Account, (iii) administer, process, resolve and liquidate Claims (other than Channeled Claims), and (iv) make distributions to holders of Allowed Claims (other than Channeled Claims).

The Plan Administration Trust will be administered by the Plan Administration Trustee, who will be responsible for all decisions and duties with respect to the Plan Administration Trust and PAT Assets. The Plan Administration Trustee will be selected by the Debtors.

The Plan Administration Trust shall be dissolved after (a) all Disputed Claims against the Debtors have been resolved, (b) all PAT Assets have been liquidated, (c) the Trust has made all required distributions and (d) PPLP has been dissolved.

### 8. Effective Date Payments

On the Effective Date, all cash and cash equivalents of the Debtors will be used to: (i) fund reserves to be held by the Plan Administration Trust;[130] (ii) fund the MDT Operating Reserve for the operating expenses of the MDT; (iii) fund the Initial NewCo Cash for post-Effective Date operations; (iv) make distributions under the Plan in respect of the Federal Government Unsecured Claims, Avrio General Unsecured Claims, Adlon General Unsecured Claims, Other General Unsecured Claims and Ratepayer Claims; (v) provide funding for the establishment of the public document repository; and (vi) make Initial Creditor Trust Distributions under the Private Entity Settlements and the Public Entity Settlements.

### 9. Dissolution of PPLP and PPI

Under the terms of the Plan, all Interests in PPLP and PPI will be terminated with no distribution. After the Effective Date, PPLP (and any other Debtor not transferred to NewCo) will continue to exist as Liquidating Debtors solely for the purposes of winding up their respective estates and liquidating such entities. To administer the wind-up and liquidation process, the PPLP Liquidator (which will be the Plan Administration Trustee) will assume governance and control of the Liquidating Debtors. The Plan Administration Trustee may dissolve all of the Liquidating Debtors after the Plan Administration Trust is established.

---

[128] The PAT Reserves consist of the Wind-Up Reserve, the Disputed Claims Reserves, the Disputed Cure Claims Reserve and the Priority Claims Reserve. The Wind-Up Reserve will be established to pay all costs incurred from the administration of the Debtors' Estates after the Effective Date. The Disputed Claims Reserves will be established to make distributions to Disputed Claims that become Allowed Claims. The Disputed Cure Claims Reserves will be established to pay cure costs associated with contracts and leases assumed by NewCo and the Transferred Debtors. The Priority Claims Reserve will pay Allowed Administrative Claims, Allowed Secured Claims and Allowed Priority Claims.

[129] The Pat Distribution Accounts are one or more accounts to be established to make distributions on account of Allowed Claims (other than Channeled Claims).

[130] Such reserves include: the Priority Claims Reserve to satisfy Administrative Claims, Secured Claims and Priority Claims, the Disputed Claims Reserve to pay Disputed Other General Unsecured Claims that are ultimately allowed, the Disputed Cure Claims Reserve to pay Disputed Cure Claims that are ultimately allowed, the Professional Escrow Account to pay Professional Fee Claims, and the Wind-Up Reserve to pay for expenses of the Plan Administration Trust.

NAS1822

## V.     DOJ Resolution

On October 21, 2020, the Debtors filed a motion (the "**DOJ 9019 Motion**") seeking approval to enter into the DOJ Resolution (as described above in Article I.B).  If the Plea Agreement is accepted by the New Jersey District Court, the DOJ Resolution will fully resolve the United States' civil and criminal investigations into the Debtors' past practices related to the production, sale, marketing and distribution of opioid products and enable a value-maximizing restructuring.  Pursuant to the DOJ Resolution (including the Plea Agreement, which remains subject to acceptance by the New Jersey District Court), the United States and the Debtors agreed as follows:

- Purdue Pharma agreed to the entry of a criminal forfeiture judgment in the amount of $2 billion (the "**Forfeiture Judgment**"), which Forfeiture Judgment shall, (i) as of the later of (a) entry of the judgment of conviction in accordance with the Plea Agreement and (b) confirmation of the Debtors' Plan, have the status of an allowed superpriority administrative expense claim against Purdue Pharma, and (ii) be satisfied by (A) an upfront payment of $225 million (the "**Forfeiture Payment**") by Purdue Pharma within three Business Days following the entry of a judgment of conviction following a sentencing hearing held pursuant to the Plea Agreement and (B) application of a credit (the "**Forfeiture Judgment Credit**") by the United States of up to $1.775 billion for value distributed or otherwise conferred by Purdue Pharma under the Plan in respect of claims asserted by state, tribal, or local government entities;

- The sentence imposed at the sentencing hearing (which shall occur no earlier than 75 days following confirmation of the Debtors' Plan) shall order a criminal fine in the amount of $3.544 billion.  The United States shall, as of the later of (i) entry of the judgment of conviction in accordance with the Plea Agreement and (ii) confirmation of the Debtors' Plan, have an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured claim against Purdue Pharma in such amount (the "**Criminal Fine Claim**");

- The United States shall have an allowed, unsubordinated, undisputed, non-contingent, liquidated unsecured claim against Purdue Pharma in the amount of $2.8 billion arising from the Department of Justice's civil investigation (the "**Civil Claim**");

- The United States and Purdue Pharma stipulated and agreed to the statements set forth in Schedule A to the Plea Agreement (the "**Agreed Statement of Facts**"), and the United States agreed to a resolution in exchange for guilty pleas from Purdue Pharma to a three-count information;

- After the order confirming the Plan has become final and non-appealable, and the Plan has become effective, the Debtors will create and host a public document repository containing non-privileged documents in their possession, custody, or control that they have produced to the United States and that the United States identifies as relating to the charges asserted in the information and the alleged

132

NAS1823

civil violations, which will be publicly available at an easily identifiable and accessible website;

- The New Jersey District Court will determine whether to accept the Plea Agreement at the sentencing hearing. Before the Plea Agreement is accepted by the New Jersey District Court at the sentencing hearing, Purdue Pharma may withdraw its pleas of guilty (i) if the Bankruptcy Court rejects, or otherwise declines to confirm, a Plan that provides for the emergence of a public benefit company (or other entity with a similar mission) or (ii) if the Office of Inspector General of the United States Department of Health and Human Services exercises, or states an intent to exercise, any available authority to exclude Purdue Pharma's successor public benefit company (or other entity with a similar mission) from participation in federal healthcare programs.

On November 17, 2020, the Bankruptcy Court held a hearing to consider approval of the DOJ 9019 Motion. On November 18, 2020, the Bankruptcy Court entered an order approving the DOJ 9019 Motion. *See Order Pursuant to 11 U.S.C. § 105 and Fed. R. Bankr. P. 9019 Authorizing and Approving Settlements Between the Debtors and the United States* [D.I. 2004].

On November 24, 2020, in accordance with the terms of the DOJ Resolution, PPLP pleaded guilty in the New Jersey District Court to an information charging it with three felony offenses: one count charging a dual-object conspiracy to defraud the United States and to violate the Food, Drug, and Cosmetic Act, and two counts charging conspiracy to violate the Federal Anti-Kickback Statute.

The DOJ Resolution preserves billions of dollars of value for creditors other than the federal government and maximizes the value available to address the opioid crisis. It favorably settles the risk of forfeiture or loss of all, or substantially all, of the Debtors' value flowing from the potential for criminal and civil forfeitures, fines, and penalties totaling billions of dollars, many of which are also alleged to be non-dischargeable. It also eliminates the prospect of extraordinarily expensive and value-destructive criminal prosecution and litigation by the federal government against the Debtors. While PPLP will be excluded from participation in federal healthcare programs if the Plea Agreement is accepted and PPLP is convicted, the DOJ Resolution anticipates the emergence of a public benefit company or entity with a similar mission that can continue to commercialize the Debtors' medications following PPLP's exclusion. Moreover, if the confirmed Plan provides for emergence of a public benefit company or entity with a similar mission, value distributed or otherwise conferred in respect of claims asserted by state, tribal, or local government entities will receive the benefit of the Forfeiture Judgment Credit up to the $1.775 billion cap. Accordingly, the DOJ Resolution enables distributions to various claimants under this Chapter 11 Plan that are substantially larger than would likely be possible without such an agreement with the United States.

## W.    The Debtors' Acceptance of Responsibility and Apologies for Past Misconduct

The Debtors have publicly and unequivocally acknowledged and apologized for their past misconduct.

NAS1824

On October 21, 2020, the Debtors issued a press release announcing the DOJ Resolution, under which PPLP pled guilty to three felony offenses—one count charging a dual-object conspiracy to defraud the United States and to violate the Food, Drug, and Cosmetic Act and two counts charging conspiracy to violate the Federal Anti-Kickback Statute—and stipulated to an Agreed Statement of Facts describing the underlying conduct. In this release, Steve Miller, who joined Purdue's Board as Chairman in July 2018, stated that "Purdue deeply regrets and accepts responsibility for the misconduct detailed by the Department of Justice in the agreed statement of facts." Press Release, Purdue Pharma, Purdue Pharma Reaches Agreement With U.S. Department of Justice (Oct 21, 2020), https://www.purduepharma.com/news/2020/10/21/purdue-pharma-reaches-agreement-with-u-s-department-of-justice/. In the DOJ Motion, the Debtors also highlighted for the Court that the DOJ Resolution is "the Debtors' public admission of responsibility for their past misconduct." DOJ Motion ¶ 9.

At the hearing in the United States District Court for the District of New Jersey at which PPLP (acting through its Chairman) pled guilty, PPLP again publicly acknowledged and took responsibility for its past misconduct, including acknowledging that "Purdue knowingly and intentionally conspire[d] with others to defraud the DEA by impeding, impairing, obstructing, and defeating the ability of the DEA to prevent the diversion of controlled substances," *US v. Purdue Pharma L.P.*, Tr. 38:21-25 (Nov. 24, 2020), "fail[ed] to cease promoting its opioid products to healthcare providers after receiving information suggesting that those healthcare providers were prescribing opioid products without a legitimate medical purpose and outside the usual course of professional practice, in situations in which Purdue possessed sufficient information that a decision should have been made to cease detailing," *Id.* 39:10-17, and "knowingly and willfully offer[ed] payments to two healthcare providers through the speaker program, where at least one purpose of the payment was to induce those healthcare providers to write more prescriptions for Purdue opioid products." *Id.* 42:6-11.

Purdue's CEO also addressed the Company's past misconduct at a public hearing before the House Committee on Oversight and Reform that was broadcast in video, stating: "To everyone listening who's been impacted by the opioid crisis, I want to be clear and I want to speak directly to you. On behalf of Purdue as its current leader, I'm profoundly sorry. . . . The company accepts full responsibility for its wrongdoing." The Role of Purdue Pharma and the Sackler Family in the Opioid Epidemic: Hearing before the Committee on Oversight and Reform, 116 Cong. 2 (2020) (Statement of Craig Landau).

## X.    Public Document Repository

The Debtors introduced the idea of creating a public document repository at the October 11, 2019 Preliminary Injunction Hearing and reaffirmed their commitment to creating a public document repository at five subsequent hearings. *See* Oct. 11, 2019 Prelim. Inj. Hr'g Tr. 66:17-18, 67:5-20; Nov. 6, 2019 Prelim. Inj. Hr'g Tr. 30:19-31:19; June 3, 2020 Bar Date Ext. Hr'g Tr. 20:18-21:8; July 23, 2020 Omnibus Hr'g Tr. 48:12-18; Oct. 28, 2020 Omnibus Hr'g Tr. 30:20-22; Nov. 17, 2020 Omnibus Hr'g Tr. 96:6-24. Creating a public document repository is supported by the Debtors' core creditor constituencies as well.

Creation of such a public document repository became a binding obligation of the Debtors in the DOJ Resolution. As described above, pursuant to the DOJ Resolution, the

NAS1825

Debtors have agreed that after the order confirming the Plan has become final and non-appealable, and the Plan has become effective, the Debtors will create and host a public document repository containing non-privileged documents in their possession, custody, or control that they have produced to the United States and that the United States identifies as relating to the charges asserted in the information and the alleged civil violations, which will be publicly available at an easily identifiable and accessible website.

Pursuant to Section 5.12 of the Plan, on the Effective Date, or as soon as reasonably practicable thereafter, a Public Document Repository shall be established by the Debtors and hosted at an academic institution or library, which academic institution or library shall have agreed to, and shall, maintain the Public Document Repository for not less than five (5) years from the date it is established. The Public Document Repository shall be publicly available at an easily identifiable and accessible website. The parameters of the Public Document Repository shall be acceptable to the Debtors, the Creditors' Committee, Governmental Consent Parties and the DOJ, and shall contain at least the documents that will be part of the public document repository that the Debtors have agreed to create and host in connection with the DOJ Resolution. Debtors shall pay for reasonable costs and expenses to gather and transfer documents to the Public Document Repository. For the avoidance of doubt, the Public Document Repository shall not be held or administered by the Master Disbursement Trust or any Creditor Trust.

The Public Document Repository shall contain a copy of the more than 13,000,000 documents (of more than 100,000,000 pages) produced by Debtors during the course of the Purdue Legal Matters and shall include the following documents as produced by Debtors: (a) documents from the Debtors' email system from present and former officers and senior current and former employees in marketing, sales, R&D, legal, compliance, and regulatory; (b) documents that Sackler Family Members sent or received on the Debtors' email system; (c) documents that reflect clinical and pre-clinical research regarding opioids, including research related to safety and effectiveness of opioids; (d) minutes and documents presented to the Purdue Board of Directors; (e) marketing and sales plans for opioid medications; (f) sales call notes; (g) standard operating procedures; (h) suspicious order monitoring data and documents; and (i) reports of concern and ADD files pertaining to prescribers.

The Public Document Repository shall also contain (a) all deposition transcripts taken in the Purdue Legal Matters of the Debtors' current or former employees and board members, together with the exhibits to such depositions; *provided* that, with respect to any depositions taken in the Chapter 11 Cases of the Debtors' former employees and board members who are also Shareholder Released Parties, the inclusion in the Public Document Repository of the transcripts thereof and exhibits thereto (to the extent such exhibits were documents produced by a Shareholder Released Party) shall be subject to the terms set forth in the Shareholder Settlement Agreement; and (b) documents provided to the Special Committee for review.

Communications between the Debtors and the DOJ regarding settlement between 2015 and 2020 shall not be in the Public Document Repository, nor shall any internal documents of the Debtors reflecting such discussions or the strategy for such discussions.

Notwithstanding anything in the Plan, the Public Document Repository shall not contain or disclose any documents or content of documents that are Privileged, including Privileged

135

NAS1826

documents produced to the DOJ under non-waiver agreements and Privileged documents subject to a clawback by Debtors in the Purdue Legal Matters, or documents that are subject to protections against public disclosure by the Health Insurance Portability and Accountability Act or similar state or federal statute, or reveal the names or email addresses of individual employees or former employees of Debtors. Inadvertent production of Privileged documents to the Public Document Repository does not operate as a waiver of the Privilege and, upon discovery, any Privileged documents must be promptly removed from the Public Document Repository. Notwithstanding anything in the Plan, any participation in the Public Document Repository by any Shareholder Released Parties shall be on terms and conditions solely set forth in the Shareholder Settlement Agreement.

Immediately after the Effective Date or as soon as reasonably practicable thereafter, the Special Master shall be appointed by the Bankruptcy Court. The Special Master's qualifications shall include former service as a judicial officer, whether as a state or federal judge. No current or former director, officer, employee, or attorney of the Debtors or any Person (including counsel and other professionals) who is (or has been engaged by, represents or has represented) any Holder of a Claim against or Interest in the Debtors or any Person that alleges or may allege a Claim, directly or indirectly, relating to or arising out of the Debtors' Products or operations shall be eligible to be appointed as the Special Master or as counsel or staff working under the Special Master, or otherwise oversee or work in any capacity with the Public Document Repository; *provided* that prior work for a member of the Ad Hoc Committee or the MSGE Group that was completed prior to 2015 shall not preclude the appointment of a Special Master. The Special Master's reasonable fees and expenses shall be paid by NewCo. The Special Master shall oversee a program of public disclosure that includes the following: (a) accomplishing prompt, broad, permanent, public disclosure of millions of the Debtors' documents; (b) engaging with survivors, advocates, journalists, scholars and policymakers to ensure that the disclosure program serves the public; (c) coordinating with the host of the Public Document Repository; (d) ensuring protection for information for which protection is required, such as Privileged information, personal health information, personal identifying information, names and email addresses of individual current and former employees of Debtors, and information subject to confidentiality rights of third parties; (e) selecting and overseeing counsel and/or staff, if necessary, to support the duties and functions of the Special Master; (f) coordinating, as appropriate, with the disclosure of documents from other defendants in opioid cases; and (g) ensuring the long-term sustainability and success of the disclosure program.

To the extent that the Special Master determines that any otherwise non-Privileged information should be redacted to protect trade secrets, trade secrets shall not include information reflecting opioid sales or promotional strategies, tactics, targeting, or data, or internal communications related to sales or promotion of opioids. On each of the first five anniversaries of the Effective Date, the Special Master shall publish a public report describing the activities of the disclosure program and the use of any funds expended.

## Y.  The Special Committee's Investigation and Approval of Settlement of Claims Against the Sackler Families

Shortly after it was formed, the Special Committee, in consultation with Davis Polk, discussed certain areas of investigation, including a review of all transfers from Purdue Pharma

136

NAS1827

to or for the benefit of the Sackler Families and Sackler Entities. This led the Special Committee, again in consultation with Davis Polk, to discuss the nature and scope of an investigation into potential estate claims against the Sackler Families and Sackler Entities. The purpose of this investigation was to form the basis to determine whether to bring litigation against the Sackler Families and Sackler Entities to recover on these potential estate claims or to determine if, in the business judgment of the Special Committee, it was more prudent to seek a settlement with the Sackler Families and Sackler Entities and whether any proposed Settlement Framework was fair and equitable and thus in the best interests of the estate.[131]

The Special Committee has met on a regular basis and in special sessions as warranted by circumstances. In total, the Special Committee has held no fewer than 56 meetings between May 21, 2019 and March 14, 2021. During its meetings, the Special Committee received many reports, briefings, and updates from Davis Polk, including reports, briefings and updates, prepared at the request of Davis Polk, from expert accounting and financial advisors at AlixPartners and Bates White regarding the investigation and analysis of potential estate claims against the Sackler Families and Sackler Entities. There have also been hundreds of calls and emails among the members of the Special Committee and with its professionals.

Together with evaluating potential claims by the Debtors against the Sackler Families and Sackler Entities, the Special Committee also considered, among other matters and pursuant to its mandate, (i) a review of all related party transactions that the Debtors maintained with the Sackler Families and Sackler Entities, (ii) the contribution of Rhodes Associates, including Rhodes Pharmaceuticals and Rhodes Technologies, to Purdue Pharma; (iii) the amendment, renegotiation, or termination of certain supply, licensing, and intercompany services agreements between Purdue and the IACs; (iv) a reevaluation of the lease for Purdue Pharma's headquarters with One Stamford Realty L.P. ("**OSR**"); and (v) all requests for advancement of legal fees for current and former officers, directors, and employees in connection with litigation or governmental investigations pending against the Debtors.

### 1. *Investigation of Potential Estate Causes of Action*

Over the course of more than 22 months, the Special Committee conducted a comprehensive investigation into potential claims that the Debtors may have against the Sackler Families and Sackler Entities. The investigation included an exhaustive review by legal counsel and forensic and financial experts to identify and assess transfers from the Debtors to or for the benefit of the Sackler Families and Sackler Entities and an in-depth legal and factual analysis of the strengths and weaknesses of various potential claims by the Debtors against the Sackler Families and Sackler Entities.

The legal and factual investigation undertaken by Davis Polk on behalf of the Special Committee was conducted by a team of Davis Polk lawyers. The Davis Polk investigation team was led by partner Charles S. Duggan and counsel Margarita Clarens. Mr. Duggan has deep experience representing corporate boards of directors, audit committees and special board committees in conducting internal investigations. Ms. Clarens similarly has extensive

---

[131] *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

NAS1828

experience in conducting internal investigations on behalf of corporations in a broad range of industries.

Beginning in April 2019, in anticipation of the formation of a Special Committee, and continuing through March 2021, the Davis Polk lawyers assisting with the Special Committee's investigation devoted more than 22,500 hours to the investigation and analysis of potential estate claims. Where necessary, the Davis Polk team was supplemented by a separate team of attorneys that performed initial screenings of electronic documents and escalated relevant documents for review by Davis Polk and other professionals, including AlixPartners and Bates White, as appropriate.

### (i)  Identification of Potential Claims

At the outset of its investigation, Davis Polk undertook a searching assessment to identify all facts and legal theories that might provide a basis for claims by the Debtors against the Sackler Families and Sackler Entities. To this end, one of the first projects was to review the complaints filed against Purdue Pharma and members of the Sackler Families that asserted claims that in bankruptcy were capable of assertion by the Debtors, such as claims for fraudulent transfer, breach of fiduciary duty, unjust enrichment, veil piercing, and alter ego. In addition, to further ensure that the investigation on behalf of the Special Committee inquired into all facts and circumstances potentially relevant to such claims, Davis Polk also surveyed relevant news articles and media publications relating to Purdue Pharma and the Sackler Families and Sackler Entities for potentially relevant information. Based on this review of public-record materials, Davis Polk identified and evaluated potential subjects for further investigation.

For example, Davis Polk considered allegations made by the Connecticut, Massachusetts, New York, and Oregon Attorneys General, among others, that in the face of mounting litigation risk arising from its sale and marketing of OxyContin, Purdue Pharma, at the direction of the Sackler Families, made hundreds of millions of dollars in shareholder distributions each year for no consideration and in bad faith, leaving behind insufficient assets to satisfy the claims of Purdue Pharma's creditors. Based on these and other similar allegations, as well as information available regarding Purdue Pharma's distributions, Davis Polk continued to investigate fraudulent transfers.

Based on allegations reported by the *Financial Times* that Rhodes Pharma was created in 2008 as part of a scheme to "siphon billions of dollars" out of Purdue Pharma following its guilty plea in 2007 to violations of federal drug marketing laws and $634.5 million settlement, the circumstances surrounding the formation of Rhodes Pharma was similarly identified as a topic for investigation.

In view of these allegations and reports, and supplemented primarily by their ongoing review, the Special Committee and Davis Polk focused the factual investigation and legal analysis on the following potential theories of claims and recoveries against the Sackler Families and Sackler Entities:

- ***Intentional Fraudulent Transfer*** based on theories that members of the Sackler Families, acting based on fears that Purdue Pharma was subject to potentially

NAS1829

overwhelming liabilities for harms caused by opioids or for violations of law relating to marketing or other sales practices, caused Purdue Pharma to transfer cash and other assets to the Sackler Families or Sackler Entities with the intent of keeping those assets out of the hands of possible Purdue Pharma creditors.

- **Constructive Fraudulent Transfer** based on theories that, while it was legally insolvent as a result of accrued but unliquidated liabilities, Purdue Pharma transferred cash and other assets to the Sackler Families and Sackler Entities without receiving reasonably equivalent value in exchange.

- **Breach of Fiduciary Duty** based on theories that members of the Board—including members of the Sackler Families—breached their fiduciary duties to Purdue Pharma by (i) entering into self-dealing transactions that injured Purdue Pharma, (ii) directly causing Purdue Pharma to engage in the misconduct underlying the DOJ settlements and other lawsuits, or (iii) consciously failing to monitor Purdue Pharma's compliance programs.

- **Unjust Enrichment** based on theories that members of the Sackler Families and the Sackler Entities had acted in bad faith and, therefore, were unjustly enriched by the transfers of cash and other assets from Purdue Pharma, as well as any additional profits realized as a result of such transfers, at the expense of Purdue Pharma and its creditors.

- **Veil-Piercing**, as a means of recovery for potential claims, based on theories that members of the Sackler Families controlled and dominated the Debtors and the IACs, that members of the Sackler Families operated the Debtors and IACs as a single enterprise, and that members of the Sackler Families used their control and domination to cause injury generalized to the estate as a whole by transferring value from the Debtors to trusts held for their benefit.

(ii)     **Analysis of Key Legal Issues**

Throughout the investigation, the Special Committee received briefings on and considered various legal matters bearing on the potential estate claims. Specifically, Davis Polk advised the Special Committee on choice of law analyses focused on determining which jurisdiction's laws would govern each of the claims. After canvassing the relevant statutes, case law, and secondary sources, Davis Polk also advised the Special Committee on the substantive elements of each claim including, among others, the "badges of fraud" considered in intentional fraudulent transfer claims, the treatment of unliquidated legal claims in assessing insolvency in constructive fraudulent transfer claims, the fiduciary duties, including the duty of loyalty, owed by a board to a company and, potentially, the company's creditors, and conduct that could constitute a breach of such duties, how a party can recover for unjust enrichment, and when plaintiffs can pierce the corporate veil.

Other legal questions relevant to the potential estate claims were considered as well, including, but not limited to:

NAS1830

a.      Statutes of Limitation / Lookback Periods

Davis Polk evaluated applicable statutes of limitations for each claim under review. Notably, Davis Polk evaluated whether the Company could extend the statute of limitations for a fraudulent transfer recovery action beyond the two-year lookback period provided by section 548 of the Bankruptcy Code. In particular, Davis Polk evaluated the applicability of state or federal law under section 544, as well as other legal principles and doctrines, that could form the basis of extending the limitations period.

b.      Prejudgment Interest

Davis Polk considered whether a court would award prejudgment interest in the context of potential estate claims, including an intentional fraudulent transfer recovery action, and, if so, the rate at which prejudgment interest would be set and the date from which prejudgment interest would accrue. In connection with this analysis, Bates White, at Davis Polk's direction, prepared an analysis of a range of prejudgment interest awards based on various rates and accrual dates.

c.      Tax Distributions

Davis Polk evaluated whether distributions made for the purpose of satisfying the tax obligations of Purdue Pharma's shareholders (the "**Tax Distributions**") are properly the subject of a constructive or intentional fraudulent transfer recovery action, including whether the Tax Distributions could be considered reasonable equivalent consideration for Purdue Pharma's status as a pass-through entity.

d.      Collectability of Potential Judgments

Davis Polk also evaluated issues relating to the ability to collect judgments from the Sackler Families' trusts, both in the United States and abroad. Many of the trusts held for the benefit of the descendants of Mortimer D. Sackler ("**Side A**" of the Sackler Families) are organized in the Bailiwick of Jersey, Channel Isles, and are governed by Jersey law. For this reason, the Debtors, in conjunction with the Creditors' Committee, negotiated a standstill agreement and retained local counsel in Jersey to provide advice on matters pertaining to Jersey law.

(iii)    **Collection, Search and Review of Documents**

With respect to the factual investigation conducted on behalf of the Special Committee, a key initial phase focused on identifying, collecting, and processing records—including electronic documents and emails—from Purdue Pharma and other entities that might be relevant to an assessment of potential claims by the Debtors against the Sackler Families and Sackler Entities. In conducting this key initial phase of its review, Davis Polk collected over 21 million documents covering a period of almost 25 years from Purdue Pharma custodial files of 110 current and former Directors, officers, and employees of Purdue Pharma and affiliated entities. The individuals whose records Davis Polk collected for search and review included:

NAS1831

- All members of the Sackler Families who held any position with Purdue Pharma between 1995 and the Petition Date, including as a Director, officer, employee, consultant, or intern;

- Every member of the Board between 1995 and the Petition Date, excepting only the new independent Directors who serve on the Special Committee;

- Each individual who served as a CEO, CFO, or General Counsel of Purdue Pharma between 2006 and 2018;

- Notable advisors to Purdue Pharma or the Sackler Families who held positions at Purdue Pharma or affiliates and were assigned a Purdue Pharma email address, such as Stuart Baker, the longtime corporate secretary for and advisor to the Board, and Stephen Ives, an outside advisor and accountant to certain members of the Sackler Families; and

- Specified custodians, who based on their tenure and positions in Purdue Pharma's legal, government affairs, compliance, corporate security, R&D, sales and marketing, and corporate communications functions, were identified as likely to have information relevant to potential estate claims.

The Purdue Pharma documents collected by Davis Polk included, among other things, custodial records, such as emails and other correspondence, as well as shareholder and Board materials and minutes, organization charts, memoranda, presentations, transaction documents, corporate governance documents, financial statements and projections, legal advice, spreadsheets, and litigation-related documents.

The collection included documents produced by Purdue Pharma in certain prior litigations, such as the opioid-related multidistrict litigation pending in the Northern District of Ohio, and certain government investigations, including the then-pending investigation by the DOJ, as well as the electronic files and records collected for purposes of those productions.

Davis Polk searched this enormous database of electronic records innumerable times in the course of conducting its investigation on behalf of the Special Committee and, as part of its review, developed complex search strings containing hundreds of potentially relevant terms designed to identify documents relevant to potential estate claims. These searches initially identified more than 428,000 internal Purdue Pharma documents for higher-priority review. Utilizing a technology-assisted review algorithm to identify and prioritize documents most likely to be relevant to the investigation, Davis Polk and other attorneys reviewed 175,500 of these documents.

Davis Polk also conducted numerous individual targeted searches, as well as smaller and discrete targeted reviews, to probe key events, individuals, and relevant issues as they were identified over the course of the investigation. For example, in connection with the investigation into the circumstances surrounding the formation of Rhodes Pharma, Davis Polk reviewed and analyzed an additional 30,000 internal Purdue Pharma and Rhodes documents.

NAS1832

The topics and issues investigated by Davis Polk included, among other things:

- Purdue Pharma's exposure to civil or criminal liabilities relating to its sale and marketing of OxyContin, and the awareness by members of the Sackler Families of the same;

- Purdue Pharma's history of OxyContin-related litigation and government investigations, including its prior settlements with private plaintiffs and with various federal, state, and local government agencies;

- Purdue Pharma's history of litigation relating to its patents for OxyContin and related efforts to preserve patent exclusivity;

- Purdue Pharma's compliance with regulatory and other obligations concerning efforts to monitor potential abuse and diversion of OxyContin;

- Histories of and motivations behind various cash and non-cash transfers of value from Purdue Pharma to or for the benefit of the Sackler Families and Sackler Entities;

- Purdue Pharma's risk of potential insolvency and the consideration of restructuring;

- Purdue Pharma's stated business strategies and objectives, including its efforts relating to research and development, mergers and acquisitions, and other business development initiatives;

- Purdue Pharma's efforts to obtain third-party debt or other sources of capital;

- Purdue Pharma's motivations for pursuing an abuse-deterrent formulation of OxyContin;

- Reactions by senior Purdue Pharma executives and members of the Board to press articles reporting on the national opioid crisis; and

- The extent to which members of the Sackler Families controlled or dominated Purdue Pharma.

Davis Polk also reviewed approximately 760,500 additional internal Purdue Pharma documents in connection with responding to requests for discovery from the Creditors' Committee. Also considered and analyzed were documents identified by the Creditors' Committee and shared with Davis Polk on a common interest basis as relevant to the potential claims.

In addition to its collection and review of internal Purdue Pharma documents, Davis Polk also participated in efforts led primarily by the Creditors' Committee and NCSG to obtain discovery from parties and non-parties in these proceedings, including the Sackler Families, the

NAS1833

law firm Norton Rose Fulbright LLP, the IACs, certain financial institutions, and others.[132] Specifically, on behalf of the Special Committee, Davis Polk participated in over 20 teleconferences between the creditors and Sackler Families and Sackler Entities regarding the scope of discovery, among other issues. Davis Polk also participated in over a dozen additional calls and other communications relating to discovery from Norton Rose Fulbright LLP.

Based on the results of these efforts, Davis Polk, on behalf of the Special Committee, conducted numerous individual targeted searches over custodial documents, electronic records, and financial records produced by the parties and non-parties to probe key events, individuals, and relevant issues, as listed above.

Finally, Davis Polk reviewed and analyzed documents relating to Purdue Pharma's long and complex history of opioid-related litigation and legal liability principally arising from its sale and promotion of OxyContin, as well as relevant documents bearing on its long history of patent litigation. Davis Polk considered and analyzed public and internal documents related to Purdue Pharma's history of litigation and government investigations, including complaints and other court filings, subpoenas, civil investigative demands, plea agreements, settlement documents, and court decisions spanning from early 2001 through the Petition Date.

In all, Davis Polk, and other attorneys working at its direction, reviewed over 960,670 documents, comprising over seven million pages, in connection with its investigation into potential estate claims.

### (iv) Forensic Analysis of Transfers to or for the Benefit of Sackler Entities

The Special Committee commissioned a sweeping review of transfers of value to or for the benefit of the Sackler Families and Sackler Entities, including to assess potential recoveries by the Debtors from the Sackler Families and Sackler Entities on a variety of legal theories. In furtherance of the Special Committee's investigation, Davis Polk engaged experts experienced in both forensic accounting and the valuation of pharmaceutical assets to assist Davis Polk by compiling and analyzing data at Purdue Pharma and obtained in discovery from third parties to identify transfers by Purdue Pharma to the Sackler Families and Sackler Entities or commercial dealings with Sackler Entities that might support claims of recoupment by the Debtors, on a variety of legal theories.

In April 2019, Davis Polk engaged AlixPartners to perform a comprehensive forensic review to identify (i) all material cash transfers of value to or for the benefit of the Sackler Families and Sackler Entities and (ii) all material dealings between Purdue Pharma and the Sackler Families and Sackler Entities, in both cases from 2008 through September 2019.

AlixPartners is a preeminent consulting firm that provides forensic accountings, financial analyses, and other professional services. The AlixPartners team was led by Richard Collura, a Managing Director who specializes in large-scale financial investigations and complex forensic accounting. Mr. Collura has worked with counsel in representing companies, boards of directors, audit committees, special committees, and creditors' committees in connection with bankruptcy cases and other distressed company situations. He is a Certified Public Accountant, Certified

---

[132] See supra, Article III.R.

NAS1834

Fraud Examiner, Certified Insolvency and Restructuring Advisor, and is certified in financial forensics by the American Institute of Certified Public Accountants. Mr. Collura was assisted in his work by an experienced team of professionals including Certified Public Accountants (CPAs), Certified Fraud Examiners (CFEs), CFA charterholders and Masters of Business Administration (MBAs), many of whom have been Certified in Financial Forensics by the American Institute of Certified Public Accountants.

AlixPartners has extensive experience conducting large-scale, high-profile independent forensic accounting investigations. Its professionals assisting Davis Polk with the investigation on behalf of the Special Committee have a comprehensive understanding of how transactions are recorded in accounting systems and the technical capabilities to extract, manage, and analyze large sets of transactional data. They have performed complex cash tracing analyses and traced assets transferred around the world, and conducted investigations involving intercompany transactions as well as transactions with insiders and related/affiliated entities.

AlixPartners had full access to Purdue Pharma's internal accounting systems, documents and personnel, including individuals in Purdue Pharma's finance and legal functions, as well as access to personnel at OSR, an IAC that provides facilities and administrative services to Purdue Pharma and PPI, and TXP Services Inc. ("**TXP**"), an IAC that provides accounting and other administrative services to Purdue and PPI.[133]

a.    Cash Transfers

At the request and working under the supervision of Davis Polk, AlixPartners generated a comprehensive 355-page report on behalf of the Special Committee of all cash transfers to the Sackler Families and Sackler Entities from January 1, 2008 through September 30, 2019 (the "**1A Report**"). The 1A Report details approximately $10.347 billion in total net cash distributions paid by Purdue Pharma and Rhodes to or for the benefit of the Sackler Families and Sackler Entities during this time period. These amounts include $4.120 billion in cash distributions to partners of Purdue Pharma, approximately $4.680 billion in Tax Distributions for the benefit of partners, and approximately $1.547 billion in distributions earmarked for other Sackler Entities.[134]

In preparing its report, AlixPartners reviewed, among other things, organizational charts of entities owned by the Sackler Families, Purdue Pharma's SAP accounting system, audited financial statements, internal financial and accounting statements and records, payroll records, pension benefit records, and travel and expense reimbursement reports and records. AlixPartners interviewed 19 employees of Purdue Pharma, OSR, and TXP in connection with the 1A Report. AlixPartners' investigation and the report required approximately 6,500 hours to complete over the course of seven months.

---

[133] The various services agreements between Purdue Pharma and PPI, on the one hand, and TXP and OSR, on the other hand, have been renegotiated at the direction of the Special Committee, such that TXP and OSR no longer provide the accounting, facilities and administrative services to Purdue Pharma and PPI that were historically provided in years prior.

[134] The figures identified in the 1A Report were essentially identical to those identified in the Company's earlier calculation.

144

NAS1835

At Davis Polk's direction, AlixPartners presented its findings as reflected in the draft 1A Report to the Special Committee and furthered certain points of its analysis in response to the Special Committee's review. The Special Committee authorized the Debtors to make the contents of the report public, and on December 16, 2019, the Debtors filed the 1A Report with the Bankruptcy Court [D.I. 654].[135]

        b.      Non-Cash Transfers and Intercompany Dealings.

Also at the request and working under the direction of Davis Polk, AlixPartners produced a second comprehensive 400-page report on behalf of the Special Committee that detailed Purdue Pharma's non-cash distributions and transfers and other dealings with Sackler Entities between January 1, 2008 and September 15, 2019 (the "**1B Report**"). The forensic investigation and analysis required for the 1B Report similarly required an exhaustive review of, among other things, organizational charts of entities owned by the Sackler Families, Purdue Pharma's SAP accounting system, audited financial statements, internal accounting records and other documentation regarding intercompany transactions (e.g., invoices and wire instructions) maintained by Purdue Pharma. AlixPartners also interviewed numerous employees of Purdue Pharma and TXP in connection with the 1B Report. AlixPartners' work on the 1B Report required approximately 4,500 hours over a period of 12 months.

The 1B Report identified intercompany dealings between Purdue Pharma and the Sackler Entities, including royalty arrangements to sell OxyContin outside the United States, service agreements, and asset transfers; intercompany dealings between the Rhodes Debtors and Sackler Entities, including for active pharmaceutical ingredients; intercompany dealings between Purdue Pharma and the Rhodes Debtors, including for contract manufacturing services; and non-cash distributions from Purdue Pharma to its shareholders, including distributions of equity in related- and third-party entities and distributions of the rights to non-ADF OxyContin and other products.

At Davis Polk's direction, AlixPartners presented its findings as reflected in the draft 1B Report to the Special Committee and furthered certain points of its analysis in response to the Special Committee's review. The Special Committee authorized the Debtors to make the contents of the report public, and on May 29, 2020, the Debtors filed the 1B Report with the Bankruptcy Court [D.I. 1194].[136]

        c.      Valuation of Non-Cash Transfers and Intercompany Dealings

As a complement to AlixPartners' work in detailing the transactions contained in the 1B Report, Davis Polk retained the financial advisory firm Bates White, a leading financial consulting firm with expertise in valuation, transfer pricing, econometrics and data analysis and significant experience in the pharmaceutical and life sciences industries, to perform an analysis to determine whether, for each of the material transfers or transactions identified by AlixPartners in the 1B Report, (i) Purdue Pharma received fair value and (ii) if Purdue Pharma did not receive fair value, an estimation of the excess value provided by Purdue Pharma over the value (if any) that it received in exchange. Among numerous other items, Bates White assessed whether, for example, Purdue Pharma granted licenses to various IACs to market and sell OxyContin at

---

[135] The 1A Report was redacted consistent with the operative protective order in the Chapter 11 Cases.
[136] The 1B Report was redacted consistent with the operative protective order in the Chapter 11 Cases.

NAS1836

royalty rates that were lower than a true arm's-length royalty, or whether Purdue Pharma paid various IACs amounts for services or for supply of API at rates higher than true arm's-length service and supply rates.  In addition to this valuation and transfer pricing analysis, Davis Polk also asked Bates White to analyze the Tax Distributions identified by AlixPartners in the 1A Report to assess amounts actually paid to taxing authorities, as well as the portions of such amounts attributable to profits earned by Purdue Pharma as opposed to other Sackler Entities.

The valuation and transfer pricing analysis performed by Bates White was led by Dr. David DeRamus, a partner and founding member of Bates White and an expert in transfer pricing and tax, antitrust and competition, and public policy and regulatory economics.  He has provided expert analysis on a number of topics, including pricing analysis, damages analysis, quantitative modeling, and valuation.  Dr. DeRamus received a doctorate and a master's degree in economics from the University of Massachusetts and a Bachelor's degree from Duke University.

To prepare its transfer pricing analysis, Bates White reviewed, among other things, numerous documents provided by Purdue Pharma and produced by various IACs, including, for example, audited financial statements, Board materials and presentations, intercompany licensing, servicing and manufacturing supply agreements, and other internal records.  In addition, Bates White reviewed over 4,000 documents, as well as other data from third-party sources, including, for example, information from commercial databases regarding third-party licensing agreements, public regulatory filings from third parties in the pharmaceutical industry, and other documents in the public domain.  Bates White's analysis required approximately 15,130 hours over a period of more than 18 months.

Based on this analysis, Bates White determined in its professional judgment that Purdue Pharma transferred significant value to the Sackler Families and Sackler Entities between January 1, 2008 and September 15, 2019.  These value transfers included, among other things, the distribution by Purdue Pharma of non-cash assets on certain occasions between 2008 and 2019—such as, for example, equity interests in businesses distributed out of Purdue Pharma in 2013 and 2014 and the assignment by Purdue Pharma of the right to future royalties payable on non-ADF formulations of OxyContin in 2017.  Bates White also determined that certain dealings between Purdue Pharma and the Sackler Families and various Sackler Entities were not conducted on arm's-length terms, including in particular that Purdue Pharma received below-market royalties from the Sackler Families and Sackler Entities on sales of OxyContin.

Davis Polk and Bates White presented Bates White's preliminary findings as to these matters to the Special Committee, including the different amounts of value that Bates White estimated in its professional judgment had been transferred from Purdue Pharma to the Sackler Families and Sackler Entities as a result of the activities identified in the 1B Report.

At Davis Polk's direction, Dr. DeRamus and his colleagues at Bates White also presented their preliminary assessments and analyses with respect to these issues on a common interest basis to the legal counsel and the financial advisors for the Creditors' Committee on May 21, 2020 and September 21, 2020, and members of the investigation teams at Davis Polk and Bates White had numerous follow-on video or telephonic conferences on a common interest basis with

NAS1837

the Creditors' Committee and its advisors on Bates White's methodology, views, and the evidence relied upon in making its assessments.

### (v) Insolvency Analysis

With respect to its evaluation of potential constructive fraudulent conveyance claims, Davis Polk, on behalf of the Special Committee, directed Bates White to also complete two complementary analyses: (a) a "foreseeability" analysis evaluating the impact that certain events may have had on the foreseeability of Purdue Pharma's default risk and (b) an "accrual analysis" of Purdue Pharma's liabilities to determine its potential insolvency over time.

In conducting these analyses, Bates White reviewed numerous documents including relevant financial statements and business plans, as well as documents reflecting behavior of Purdue Pharma's economic counterparties (e.g., joint ventures, insurers and lenders), market indicators (e.g., Purdue Pharma's indicative credit ratings, industry exclusions, event studies, case studies and competitor disclosures), documents related to the overall legal environment for opioid manufacturers and public awareness of the opioid epidemic, and the DOJ settlement documentation, including any factual admissions and allegations of misconduct.

The foreseeability analysis was led by Dr. Charles Mullin. Dr. Mullin is the Managing Partner of Bates White and is a recognized expert in statistical and data analysis, econometrics, economic and microsimulation modeling, insurance allocation, and asbestos-related matters. He has provided expert opinions and testimony in a wide range of matters, including the valuation of mass tort claims in the class action and bankruptcy contexts. Dr. Mullin has published numerous papers on applied and theoretical econometrics and labor economics in peer-reviewed journals. He received a doctorate in economics from the University of Chicago and a Bachelor's degree in mathematics and economics from the University of California, Berkeley.

Bates White presented the findings of the foreseeability analysis and the accrual analysis to the Special Committee.

### (vi) Depositions and Interviews

Davis Polk attended all 16 discovery depositions conducted in these Chapter 11 Cases. The deponents included every living member of the Sackler Families who served on the Board, each of Purdue Pharma's current and former CEOs, and several advisors to Purdue Pharma and the Sackler Families. The examinations were conducted primarily by counsel for the Creditors' Committee and the NCSG, and in furtherance of cooperation with counsel for both groups, Davis Polk on repeated occasions provided select documents to the Creditors' Committee in advance for potential use during the depositions. In addition, prior to certain depositions, Davis Polk conferred with counsel for one or both groups regarding potential lines of examination.

In addition to participating in depositions, Davis Polk interviewed a number of key individuals in connection with various aspects of the investigation into potential estate claims. For example, in connection with its investigation into the circumstances surrounding the formation of Rhodes Pharma, Davis Polk interviewed six current and former Purdue Pharma and Rhodes Pharma officers and Directors. As noted, Bates White and Davis Polk also jointly interviewed 15 Purdue Pharma employees and advisors in connection with the investigation into

147

NAS1838

various cash and non-cash transfers from Purdue Pharma. In addition, throughout the investigation, Davis Polk held numerous discussions with senior and longtime members of Purdue Pharma's in-house legal department with respect to Purdue Pharma's history of OxyContin-related litigation and government investigations, corporate governance issues, the Board's decision-making processes, including how decisions were made concerning the IACs, the purpose and functions of certain Sackler Entities, and various royalty and licensing arrangements, among other things.[137]

### (vii) Information Presented on Behalf of the Sackler Families

To complement its review of large numbers of internal Purdue Pharma and third-party documents, Davis Polk and its advisors also received and evaluated a series of detailed presentations and supporting documentation provided by representatives of the Sackler Families on several key topics, including the Sackler Families' trust structures, the amount and location of assets held by the Sackler Families, and the Sackler Families' defenses to primary liability and estate claims. The Sackler Families had agreed to make these presentations, and to supply the required information, under the terms of a case management stipulation signed on November 5, 2019, and so-ordered by the Bankruptcy Court on November 20, 2019. *See Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* (the "**Case Management Stipulation**") [D.I. 431-1].

- On November 22, 2019, the Davis Polk investigation team attended an approximately four-hour oral presentation by Debevoise & Plimpton LLP ("**Debevoise**") on behalf of Side A and Milbank LLP ("**Milbank**") and Joseph Hage Aaronson LLC ("**Joseph Hage**") on behalf of the descendants of Raymond R. Sackler ("**Side B**" of the Sackler Families) regarding the general classes of assets held by the Initial Covered Sackler Persons ("**ICSPs**"), as defined in the Case Management Stipulation. The Davis Polk investigation team also received and reviewed an accompanying 130-page presentation from Side A regarding the general classes of assets for Side A ICSPs and a 108-page presentation and 21-page supplemental presentation regarding the general classes of assets for Side B ICSPs;

- On December 9, 2019, the Davis Polk investigation team attended an approximately seven-hour oral presentation by Debevoise on behalf of Side A and Milbank and Joseph Hage on behalf of Side B regarding the Sackler Families' defenses to primary liability and estate claims and arguments in favor of settlement. The Davis Polk investigation team also received and reviewed an accompanying 128-page presentation from Side A and a 580-page presentation from Side B;

- On January 29, 2020, the Special Committee received an approximately three-hour oral presentation from Debevoise on behalf of Side A and Milbank and

---

[137] In connection with the transfer pricing analysis, Davis Polk and Bates White jointly interviewed 13 Purdue Pharma employees, including select members of Purdue Pharma's legal, finance, operations, sales and marketing, R&D, and regulatory affairs functions, as well as two outside advisors associated with Norton Rose Fulbright LLP.

NAS1839

Joseph Hage on behalf of Side B regarding their defenses to primary liability and estate claims and arguments in favor of settlement;

- On January 15, 2020, the Davis Polk investigation team attended an approximately four-and-one-half-hour oral presentation by Debevoise on behalf of Side A and Milbank and Joseph Hage on behalf of Side B covering the aggregate value of the assets and approximate liabilities of the Side B ICSPs. Davis Polk also received and reviewed an accompanying 168-page presentation from Side A and an accompanying 101-page presentation from Side B;

- On August 13, 2020, the Davis Polk investigation team attended an approximately one-hour oral presentation by Milbank, Joseph Hage, and Huron Consulting Group, financial advisors to Side B. Davis Polk also received and reviewed an accompanying 102-page presentation covering the flow of funds from Purdue Pharma to the so-called Top-Level Entities, transfers among the Top-Level Entities, and subsequent transfers to other parties;[138] and

- On September 17, 2020, the Davis Polk investigation team attended an approximately one-half-hour oral presentation by Debevoise and received and reviewed 16 accompanying spreadsheets detailing the flow of funds from Purdue Pharma to Beacon Company and related entities, including trusts held for the benefit of members of Side A.

(viii)   **Cooperation with the Creditors' Committee**

In conjunction with and as part of the Special Committee's investigation, Davis Polk and the Special Committee's financial advisors have cooperated on an ongoing basis since early November 2019 with the legal counsel and financial advisors to the Creditors' Committee as co-fiduciaries of the Debtors' Estates, in evaluating potential claims by the Debtors against the Sackler Families and Sackler Entities.

In furtherance of that cooperation, and pursuant to a common interest understanding between counsel for the Debtors and the Creditors' Committee with respect to the assessment and prosecution of the claims of the Debtors' Estates as to the Sackler Families and Sackler Entities, Davis Polk and the Special Committee's financial advisors participated in more than 25 substantive in-person meetings and teleconferences with the legal and financial advisors to the Creditors' Committee, as well as innumerable emails.

In these exchanges, the Creditors' Committee had direct access to the Special Committee's legal and financial advisors on matters concerning potential estate claims. Bates White, for example, participated in numerous hours-long meetings with the Creditors'

---

[138] For purposes of the presentation, the term "Top-Level Entities" was defined to include the Rosebay Medical Company L.P., Trust U/A 11/5/74 fbo Beverly Sackler (a/k/a the "**74A Trust**"), Rosebay Medical Company, Inc., 1974 Irrevocable Trust A fbo BS and RSS, 1974 Irrevocable Trust A fbo BS and JDS, Trust B U/A dtd 11/5/74 fbo Beverly Sackler, 1974 Irrevocable Investment Trust, Raymond R. Sackler Trust 1 dtd 12/23/89, Raymond R. Sackler Trust 2 dtd 12/23/89, Raymond R. Sackler Trust 1B dtd 12/23/89, Raymond R. Sackler Trust 2B dtd 12/23/89, AR Irrevocable Trust and AJ Irrevocable Trust.

NAS1840

Committee's counsel and financial advisors for common interest discussions of matters including but not limited to (a) methodological approaches to evaluating the value of non-cash transfers and intercompany transactions between Purdue Pharma and various Sackler Entities; and (b) interim conclusions by Bates White with respect to the values of various equity transfers, licenses granted with respect to OxyContin, and the 2017 assignment by PPLP of its royalty rights to non-ADF OxyContin. In the course of these discussions, Bates White explained its methodology and assessment of relevant factors with the Creditors' Committee's financial advisors, Province and Ocean Tomo. It also discussed its findings with the Ad Hoc Committee's professionals at FTI.

Throughout its investigation, Davis Polk shared with counsel to the Creditors' Committee, on a common interest basis, certain work product concerning potential estate claims, including among other things, preliminary legal analysis, document compilations relevant to specific deponents, and draft reports prepared by AlixPartners and Bates White.

Davis Polk also engaged in extensive discussions with counsel to the Creditors' Committee throughout the discovery period in the Debtors' Chapter 11 Cases, in order to, among other things: (a) identify an appropriately scoped set of documents for the Debtors to produce to the Creditors' Committee and (b) assist with the Creditors' Committee and NCSG's depositions of the Sackler Families, current and former Board members, current employees of the Debtors, and other parties. With respect to the scope, Davis Polk engaged with the Creditors' Committee to best identify the materials relevant to potential estate claims and to produce an appropriate and extensive volume of documents and information.[139]

Davis Polk also ensured that non-privileged documents identified by the Special Committee team as relevant to potential estate claims were produced to the Creditors' Committee. And, pursuant to a stipulation between the Debtors and the Creditors' Committee in connection with a negotiated resolution of two motions filed by the Creditors' Committee, Davis Polk also provided privileged Purdue Pharma documents that were deemed material to its analysis of potential estate claims to the Creditors' Committee on a common interest basis, representing an extraordinary level of cooperation with the Creditors' Committee on the part of the Debtors. Indeed, soon after the stipulation was reached, the Creditors' Committee itself informed the Bankruptcy Court that it was "aware of no other debtor agreeing to supply privileged documents to its creditors, certainly not on this scale." *See Creditors' Committee Reply in Support of Its Motion to Compel Production of Purportedly Privileged Documents* [D.I. 2014].

(ix)     **Evaluation of Potential Claims by Special Committee**

As the work of the Special Committee's advisors was ongoing, the Special Committee received regular briefings and a series of in-depth presentations from Davis Polk, AlixPartners, and Bates White on relevant factual findings and legal analysis concerning potential estate claims, including on, among other topics, the value of the distributions to or for the benefit of the

---

[139]  Davis Polk also devised technical solutions with the Debtors' discovery vendor to help remove duplicative documents to ensure efficiency; proposed numerous refinements to improve the Creditors' Committee's search terms; and participated in multiple teleconferences with the Creditors' Committee related to potential custodians of electronic documents for collection and review.

NAS1841

Sackler Families and Sackler Entities; the factual investigation into the cash and non-cash transfers made from Purdue Pharma; the transfer pricing analysis to determine whether Purdue Pharma received fair value for each of the material transfers or transactions made from Purdue Pharma; the legal framework for evaluating potential estate claims; the availability and range of prejudgment interest on potential estate claims; and the standards used by courts to decide whether to approve settlements in the bankruptcy context.

Davis Polk also periodically provided the Special Committee with a chronology of select documents identified as relevant to potential estate claims, as well as portfolios of the underlying documents. Over time, the chronology was expanded to include pertinent documents from productions by parties and non-parties in the Chapter 11 Cases, such as the Sackler Families and Norton Rose Fulbright LLP, and documents highlighted by the Creditors' Committee as relevant to estate claims.

Based on the investigation and analysis of its advisors, the Special Committee assessed the strength of the estate claims and any issues of fact and law that might be disputed in a potential litigation. The Special Committee considered the strength of the evidence, as well as the legal and expert analyses presented by its advisors. The Special Committee considered a number of issues of fact and law that could affect the value of the claims including, but not limited to:

- The substance and strength of the evidence supporting the estate causes of action, including the substance and strength of any evidence of intent to transfer assets in order to frustrate creditors;

- The legal and factual basis for concluding that Purdue Pharma was insolvent prior to the Petition Date based on unliquidated and, often, unasserted claims;

- The applicable statute of limitations relevant to the fraudulent transfer claims;

- Whether all transfers of value may be avoidable based on fraudulent transfer claims, with a particular focus on Tax Distributions and the below-market royalty arrangements;

- The ability to recover and potential value of prejudgment interest; and

- The collectability of any judgments against individuals, trusts, and other affiliated entities, including in connection with assets located outside the United States.

**2.      *Negotiation and Approval of the Proposed Settlement and Release***

On September 30, 2020, the Bankruptcy Court entered the Supplemental Mediation Order, which authorized the Mediators to continue the Mediation to resolve certain open issues referenced in the Phase 1 Mediators' Report, as well as to mediate the estate causes of action.

On November 13, 2020, in the context of the parties' then-ongoing Mediation, Davis Polk attended an oral presentation by the Creditors' Committee on its provisional views and findings with respect to its investigation of potential estate causes of action. With the consent of

NAS1842

the Creditors' Committee, on November 24, 2020, Davis Polk reviewed aspects of the Creditors' Committee's presentation with the Special Committee, and provided the Special Committee with a redacted version of the presentation consistent with the operative protective order in the Chapter 11 Cases.

In December 2020 and January 2021, as the Mediation advanced, the Special Committee formally met on no fewer than eight occasions. Moreover, counsel had numerous additional calls with the Chair of the Special Committee and other members of the Special Committee. The Special Committee was provided regular updates on the Mediation, including offers and counteroffers that had been communicated through the Mediators by the NCSG, on the one hand, and the Sackler Families, on the other hand. The Special Committee also discussed with its advisors the Debtors' strategic objectives in the Mediation and potential alternative plans of reorganization, including such alternatives that both included and excluded contributions from a potential settlement with the Sackler Families. Among other things, financial advisors provided critical information on the feasibility of the Company to operate post-emergence in light of potential mediation outcomes. Counsel also continued to update the Committee on the ongoing investigation.

On January 19, 2021, Davis Polk received additional information from the Creditors' Committee regarding documents considered by its advisors to be relevant to the estate causes of action, which were subsequently provided to the Special Committee. At the same time, on January 19, 2021, the Special Committee authorized the Special Committee's advisors to continue negotiations at the direction of the Committee Chair in between meetings of the Special Committee. In addition to this authorization, the Special Committee resolved to continue to meet regularly to ensure that, among other things, all members of the Special Committee were apprised of developments in the Mediation and ongoing negotiations.

On January 22, 2021, the Special Committee was advised that the Mediators had made a joint Mediators' proposal. During a nearly two-hour meeting of the Special Committee on January 22, advisors provided the Special Committee with a comprehensive update on the investigation, including analysis of the estate causes of action and potential recoveries. The presentation also discussed the possible methodologies developed by economic advisors at Bates White for calculating the present value of the settlement proposal based on assumptions regarding the payment schedule. Following the presentation, the Special Committee authorized the Debtors to convey to the other parties to the Mediation that the Special Committee supported ongoing negotiations subject to the satisfactory resolution of all economic terms.

With the Special Committee's authorization, the Debtors began to take an active role in the negotiations and at all times kept the Special Committee informed through contemporaneous email, calls and meetings of the status. During a Special Committee meeting on January 28, 2021, the Special Committee was advised that the Debtors, together with the Creditors' Committee, the Ad Hoc Committee, and the MSGE had written to the representatives of the Sackler Families and the Mediators to convey their willingness to continue negotiations with the Sackler Families based on the terms of the Mediators' proposal of January 21, 2021.

On January 29, 2021, the Sackler Families expressed their willingness to engage in such negotiations, accepting a payment amount and proposing a payment schedule. On January 31,

NAS1843

2021, the Mediation formally concluded pursuant to court order, but settlement negotiations continued among the Sackler Families, the Debtors, the NCSG, the Creditors' Committee, the Ad Hoc Committee, and the MSGE. From January 29, 2021 to February 18, 2021, the Sackler Families and the Debtors, together with the Creditors' Committee, the Ad Hoc Committee, and the MSGE, exchanged eight offers and counteroffers. Each of the Creditors' Committee, the Ad Hoc Committee, and the MSGE supported each of the counteroffers. In addition to the Special Committee's discussion of the negotiations during meetings on February 2 and 16, 2021, the Special Committee Chair, as authorized by the Special Committee, subsequently approved all counteroffers proposed jointly by the Debtors, the Creditors' Committee, the Ad Hoc Committee, and the MSGE to the Sackler Families. Economic advisors from Bates White provided constant financial analysis of the present value of the settlement proposals.

On February 21, 2021, all members of the Special Committee approved a best and final offer to the Sackler Families regarding the payment schedule. The offer, also supported by the Creditors' Committee, the Ad Hoc Committee, and the MSGE, as every counteroffer, was accepted by the Sackler Families on February 22. During a meeting on February 24, the Special Committee was provided an update on negotiations regarding all other terms, including payment guarantees, that the Debtors, the Creditors' Committee, the Ad Hoc Committee, the MSGE, and the Sackler Families were continuing to negotiate. The Special Committee was also provided an update on any additional investigatory work performed on its behalf.

On March 2, March 8 and March 11, the Special Committee was again provided updates on the ongoing negotiation of the additional settlement terms, including terms relating to credit support, remedies, terms of releases and other terms. At a meeting of the Special Committee held on Sunday, March 14, in advance of a full board meeting, the Special Committee authorized the filing of the Plan, including the Shareholder Settlement Term Sheet described below.

### Z. The Terms of Settlement of Claims Against the Sackler Families

The terms of the settlement with certain Sackler Entities (excluding the IACs but including certain direct and indirect owners of the IACs) (the "**Sackler Parties**") are set forth in the term sheets (the "**Shareholder Settlement Term Sheets**") attached hereto as **Appendix G**, which document the principal terms of a settlement agreement (the "**Shareholder Settlement Agreement**") that will be included in the Plan Supplement. The rights and obligations of all parties under the Shareholder Settlement Agreement remain subject to the finalization of the settlement documents to be included in the Plan Supplement.

The settlement with the Sackler Parties requires payments from the Sackler Parties totaling $4.275 billion over nine years (or ten years if certain amounts are paid ahead of schedule in the first five years), up from $3 billion over seven years under the initial Settlement Framework. The expected schedule of payments, which may be adjusted based on the actual Effective Date, (the "**Required Settlement Payments**") is set forth below.

| Date | Required Settlement Payments |
|---|---|
| Effective Date | $300 million |
| June 30, 2022 | $350 million |

NAS1844

| Date | Required Settlement Payments |
|---|---|
| June 30, 2023 | $350 million |
| June 30, 2024 | $350 million |
| June 30, 2025 | $350 million |
| June 30, 2026 | $300 million |
| June 30, 2027 | $1 billion |
| June 30, 2028 | $475 million |
| June 30, 2029 | $425 million, subject to deferral of up to $25 million |
| June 30, 2030 | $375 million, subject to deferral of up to $175 million |
| June 30, 2031 | Up to $200 million, consisting of any deferred amounts |

The potential deferral of certain Required Settlement Payments will be applicable as follows: each dollar in excess of $2.5 billion up to and including $2.675 billion in the aggregate that the Master Disbursement Trust actually receives pursuant to the Settlement Agreement on or prior to June 30, 2026 shall defer one dollar, up to a maximum aggregate amount of $175 million, of Required Settlement Payments otherwise payable on June 30, 2030 to instead become payable on June 30, 2031. Furthermore, each dollar in excess of $2.675 billion that the Master Disbursement Trust actually receives pursuant to the Settlement Agreement on or prior to June 30, 2026 shall defer one dollar, up to a maximum aggregate amount of $25 million, of Required Settlement Payments otherwise payable on June 30, 2029 to instead become payable on June 30, 2031. Deferrals shall only be made if the aggregate amount available for deferral exceeds $25 million.

As described in more detail in the Shareholder Settlement Term Sheets, Required Settlement Payments payable on June 30, 2023 or later, as well as certain other payments to be made by the Sackler Parties to the Master Distribution Trust pursuant to the Shareholder Settlement Agreement, may be made into escrow, paused or terminated (and amounts held in escrow may be returned to the Sackler Parties), depending on whether the Confirmation Order has been appealed and the status or outcome of such appeal.

The Sackler Parties and certain other persons and/or individuals to be agreed in connection with the settlement will receive the benefit of releases and injunctions, as described in Article IF, as consideration for such payments under the Shareholder Settlement Agreement.

As described in more detail in the Shareholder Settlement Term Sheets, the Sackler Parties will be required to use their best efforts to sell the IACs within seven years. All cash proceeds received by the Sackler Parties from the IACs, in connection with a sale or otherwise, will be deposited and maintained in pledged and perfected deposit accounts or escrow accounts for the benefit of the Master Distribution Trust, with certain withdrawals permitted from such accounts as described in the Shareholder Settlement Term Sheet. Certain of such proceeds will be used to satisfy the next due Required Settlement Payment(s), after accounting for a deduction consistent with the initial Settlement Framework based on the amount of previously funded Required Settlement Payments, as well as other deductions to be agreed in connection with the Shareholder Settlement Agreement.

NAS1845

As collateral for the Required Settlement Payments and other obligations of the Sackler Parties under the Shareholder Settlement Agreement, all equity interests in certain holding companies of the IACs owned by the Sackler Parties (subject to exclusions as may be agreed in connection with the Shareholder Settlement Agreement) will be pledged for the benefit of the Master Distribution Trust. Moreover, certain Sackler Parties will provide additional collateral, as more fully described in the Shareholder Settlement Term Sheets, including in the case of the Mortimer Sackler family collateral in the form of deposit accounts funded with cash and cash equivalents, equity interests in holding companies that directly or indirectly own investment assets, real estate and/or other assets, and security interests over substantially all of the assets of certain of the Sackler Parties that are trusts and in the case of the Raymond Sackler family collateral in the form of equity interests in investment holding companies that directly or indirectly own investment assets.

As discussed in Article III.Y.1, *supra*, the Debtors and other parties were provided substantial information regarding the quantum of the Sackler Families' wealth, its location, the holdings and risk profile of various individual members of the Sackler Families and their trusts, and other factors relevant to collectability in connection with the extensive discovery conducted during these cases.  Further detailed information regarding the net asset values of the proposed obligors under the Shareholder Settlement Agreement was provided to the Debtors and other parties in response to diligence requests in connection with the settlement negotiations.  The terms of the Shareholder Settlement Agreement, including the minimum net asset values supporting the obligations under the Shareholder Settlement Agreement, remain subject to further negotiation in connection with the finalization of the Shareholder Settlement Agreement.

Under the terms of the Shareholder Settlement Agreement, the obligation of the Sackler Parties to pay the $4.275 billion settlement amount will be allocated between Side A and Side B of the Sackler Families on 50/50 basis between the Side A and Side B Sackler Families, and then further allocated on a 50/50 basis within the Side B Sackler Families and on a 1/8 basis within the Side A Sackler Families, subject in each case to a financial adjustment mechanism based on the gross proceeds from the sale of the IACs (which will shift settlement obligations from Side A to Side B in the event IAC proceeds are in the lower end of the expected range and from Side B to Side A if IAC proceeds exceed certain thresholds) and in the case of the A-Side Payment Group 8, subject to further adjustments, as set forth in more detail in the Shareholder Settlement Term Sheets.  Within the Side A and Side B families, there are also significant disparities between the financial positions and holdings of the various individuals and family groups.  These differences between the separate family groups were taken into account within each of the 10 family groups in order to tailor an overall credit support package that would maximize the likelihood of recovery of the overall obligations under the Shareholder Settlement Agreement, as set out in greater detail in the Shareholder Settlement Agreement Term Sheets.

The settlement obligations of Side A of the Sackler Families are further allocated, largely on a pro rata basis, among eight different groups consisting of certain trusts, individuals and/or other entities that will be obligors under the Shareholder Settlement Agreement. The information received from Side A of the Sackler Family as of September 30, 2020 for trusts and for individuals (which, depending on the individual, may be as of September 30, 2020 or September/October 2019) which information is based on a methodology developed by the

155

NAS1846

Sackler Families and is subject to change since such respective dates, indicated that for each Side A group, the combined net asset value of the obligors in such Side A group represents an approximate multiple of more than 1.4x of the potential settlement obligations of the Side A group, on average across all of the Side A groups (including working assumptions for the IACs, per discussions between financial advisors to the Debtors and other parties). In addition, and as part of such net asset value, as detailed in the Shareholder Settlement Term Sheets, certain obligors within each of the Side A groups will provide additional collateral to support the settlement obligations, consisting of deposit accounts funded with cash and cash equivalents, equity interests in holding companies that directly or indirectly own investment assets, real estate and/or other assets and security interests over substantially all of the assets of certain trusts.

Side B of the Sackler Families is divided into only two separate groups consisting of trusts, individuals and/or other entities that will be obligors under the Shareholder Settlement Agreement, with settlement obligations allocated on a pro rata basis between the two Side B groups. The information received from Side B of the Sackler Family as of September 30, 2020 and October 2019 for individuals, trusts, and entities, which information is based on a methodology developed by the Sackler Families and is subject to change since such respective dates, indicated that for each Side B group, the combined net asset value of the obligors in such Side B groups represents an approximate multiple, on average across both of the Side B Groups, of more than 2.0x of the potential settlement obligations of the Side B group (including working assumptions for the IACs, per discussions between financial advisors to the Debtors and other parties). As collateral to support the settlement obligations, the Side B groups will also pledge equity interests in certain holding companies that indirectly own investment assets, which, across both Side B groups, are valued at over $1 billion.

The net asset values described above refer to the proposed obligors under the Shareholder Settlement Agreement and do not represent the total net asset value of all individuals, entities and trusts associated with the Sackler Families. For more information regarding the total net asset value of the Sackler Families and potential challenges to enforcing judgments from litigation, please see Article III.Y.1, *supra*.

In addition, certain Sackler Entities to be agreed in connection with the Shareholder Settlement Agreement will be prohibited from engaging in the manufacturing or sale of opioids, subject to exceptions to be agreed. Certain of the Sackler Parties will agree to additional affirmative and restrictive covenants, including with respect to the collateral provided, as more fully described in the Shareholder Settlement Term Sheets.

Remedies for breach of the Settlement Agreement may include, without limitation, acceleration of the unpaid and unfunded obligations of the defaulting Sackler Parties, voiding the releases applicable to the Sackler Parties that are in breach and certain other members of the Sackler Entities related to the breaching Sackler Parties, foreclosure by the Master Disbursement Trust on the collateral provided, enforcement of confessions of judgment by the applicable Sackler Parties admitting the obligations that have come due and certain other remedies to be mutually agreed. For additional detail regarding such terms, see the Shareholder Settlement Term Sheets attached hereto as **Appendix G**.

NAS1847

The Settlement Agreement will also resolve certain other matters between certain Sackler Entities and the Debtors, including that it shall be a condition precedent to the effectiveness of the Settlement Agreement that the matters related to the ongoing contractual and intellectual property relationships among the Debtors, the Specified Parties (as defined in the Shareholder Settlement Term Sheets) and the IACs have been mutually agreed, and that certain agreements related to such matters have been executed, including, but not limited to, an agreement between Avrio and PRA, pursuant to which (i) certain existing licenses from PRA to Avrio for the exploitation of Senokot-branded and Betadine-branded over-the-counter products will be terminated and (ii) all of the intellectual property licensed from PRA to Avrio under such existing licenses will be assigned to Avrio.

## AA.  Evaluation of the Settlement with the Sackler Families

A key element of the Plan is the settlement with the Sackler Families, pursuant to which members of the Sackler Families and Sackler Entities will pay $4.275 billion in cash to the Debtors over nine years (or ten years if certain amounts are paid ahead of schedule in the first six years, as described in detail in Article III.Z) in exchange for a release of potential claims of the Debtors' Estates and of third parties against the Sackler Families, the Sackler Entities and certain other persons.  As described above, *see* <u>Article III.W</u>, *supra*, after careful consideration by the Special Committee of the Debtors' and third parties' potential claims against the Sackler Families and Sackler Entities and months of engagement with and the involvement of key creditor constituencies including the Creditors' Committee, the Ad Hoc Committee, and the MSGE, the Debtors[140] have determined that the settlement is fair, equitable and in the best interest of the Debtors' Estates.  Accordingly, the Debtors' support the settlement as an element of the Plan, subject to satisfactory resolution of certain terms that continue to be negotiated.

### 1.  Factors Relevant to Evaluating the Settlement

Under Federal Rule of Bankruptcy Procedure 9019, any settlement of claims of or against the Debtor is subject to approval by the Bankruptcy Court.  Further, because the settlement is an essential element of the Plan, approval of the settlement by the Bankruptcy Court is a necessary precondition to confirmation and consummation of the Plan.

In *TMT Trailer Ferry*, the U.S. Supreme Court outlined the standards for courts to use in evaluating proposed settlements by debtors in bankruptcy.  The key function of courts in that circumstance, the Court explained, is "to compare the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968).  Following the Supreme Court's decision in *TMT Trailer Ferry*, courts in the Second Circuit have outlined certain factors to be considered by courts evaluating whether to approve settlements proposed by a debtor in bankruptcy proceedings:

---

[140] As discussed in Art. II.E.2, *supra*, Purdue Pharma's governance documents irrevocably granted an independent Special Committee of the Board of Directors exclusive authority over the prosecution, defense, and settlement of any causes of action Purdue Pharma may assert against its shareholders as well as members of the Sackler Families and their affiliates.  As such, all references in this Section to considerations and determinations of the Debtors, as they relate to its evaluation of claims against the Sackler Families and Sackler Entities, reflect considerations and determinations of the Special Committee pursuant to this exclusive delegated authority.

NAS1848

- The balance between the litigation's possibility of success and the settlement's future benefits;

- The likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment;

- "[T]he paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement";

- Whether other parties in interest support the settlement;

- The "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement;

- "[T]he nature and breadth of releases to be obtained by officers and directors"; and

- "[T]he extent to which the settlement is the product of arm's length bargaining."

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007).

In the following pages, the Debtors summarize their evaluation of the settlement under the foregoing factors to be considered by the Bankruptcy Court in evaluating the settlement and the reasons for the Debtors' belief that, under those factors, the settlement should be approved by the Bankruptcy Court as fair, reasonable and in the best interest of the Debtors' Estates. The Debtors understand that the Bankruptcy Court will have to rule on whether the *TMT Trailer* factors are satisfied. For purposes of this Disclosure Statement, the Debtors are providing this analysis for the more limited purpose of assisting creditors in understanding the Debtors' rationale for putting forward the Plan. The Debtors are aware that the claims against the Sackler Families and Sackler Entities discussed herein may be litigated in the future, either because the settlement is not finally approved or because of a future default event. The analysis balances the need for disclosure regarding the Debtors' support for the Plan with the need to avoid any potential prejudice in future litigation.

## 2. *Balancing Possible Litigation Recoveries Against the Benefits of the Settlement*

In the Debtors' estimation, the first factor—the balance between the litigation's likelihood of success and the settlement's future benefits—weighs in favor of approval of the settlement. As explained in more detail below, the likelihood of success in litigating the Debtors' potential claims against the Sackler Families and Sackler Entities is uncertain, whereas the settlement promises very significant future benefits for the Debtors' Estates.

NAS1849

The settlement reflects a reasoned judgment as to the trade-off between a possible but uncertain recovery of a larger amount through continued litigation versus an agreed recovery of settlement payments that are certain, but may be less than what the Debtors potentially could obtain in litigation.

The following section discusses the expected benefits of the settlement and then weighs them against the likelihood of success in litigation.

(i)    <strong>The Benefits of the Settlement</strong>

There are numerous benefits of the settlement to weigh against the uncertain results of litigation. These include, among other things, the very material $4.275 billion in payments to be made by the Sackler Families, which are a critical element of the Plan. Among other things, these payments make possible the agreed distribution of funds in satisfaction of the Private-Side Resolutions, secure the benefits of the DOJ Resolution for Purdue Pharma and its creditors, and still provide for billions of dollars in cash that will fund the state, local and tribal abatement trusts. The settlement's benefits also include the avoidance of the potentially ruinous disintegration of Purdue Pharma's valuable assets that would result if it were left to participate in years of further litigation.

<em>a.    The Settlement Payments</em>

The proposed settlement provides enormous financial value to the Debtors' Estates for the benefit of Purdue Pharma's creditors and improves upon the Settlement Framework announced in September 2019. As described in detail in Article III.Z, the settlement with the Sackler Parties requires payments from the Sackler Parties totaling $4.275 billion over nine years (or ten years if certain amounts are paid ahead of schedule in the first six years). These funds will be deposited in trusts established for the benefit of states and localities, as well as other creditor groups such as Native American Tribes, hospitals, and children with a history of Neonatal Abstinence Syndrome and their guardians. Each of these trusts will require that the funds be dedicated exclusively to opioid abatement efforts, and there will be transparency to ensure that these requirements are observed.

These guaranteed payments by the Sackler Parties under the proposed settlement materially exceed the benefits contemplated by the Settlement Framework that was under consideration at the time these Chapter 11 Cases commenced in September 2019. Under the proposed settlement, the Sackler Parties will pay $1.275 billion over and above the guaranteed $3 billion they had offered as of September 2019 (and in addition to the $225 million they have already paid to the DOJ), a material guaranteed additional recovery of funds that will be directed towards abatement under the Plan. While the initial Settlement Framework obligated the Sackler Families to contribute 90% of any net proceeds from the sale of the IACs in excess of $3 billion up to an additional $1.5 billion (for a theoretical total of $4.5 billion),[141] there was no assurance that (or when) the sale of the IACs would generate more than $3 billion of net proceeds. Certain due diligence conducted by the Debtors' financial advisors, in close coordination with the financial advisors to the Creditors' Committee and AHC, coupled with expert tax analysis, which

---

[141] The initial Settlement Framework further obligated the Sackler Families to contribute 50% of any surplus net proceeds above that point. *See Notice of Filing of Term Sheet with Ad Hoc Committee* [D.I. 257].

159

NAS1850

noted potential material tax leakage from the sale of the IACs, and the complexity of the relevant corporate and legal structures, led the Debtors to believe that the sale of the IACs was far from certain to generate more than the value of the proposed settlement. As a result, in the considered judgment of the Debtors, the guaranteed payment of $4.275 billion under the proposed settlement—which will be required regardless of whatever amounts the Sackler Families will be able to recoup from a sale of the IACs—represents a materially improved guaranteed recovery over the previously contemplated Settlement Framework.

The principal consideration to be granted to the Sackler Families in exchange for such payments is the release and injunction provisions with respect to specified parties associated with the Sackler Families provided for under the Plan. *See* Article III.X, *supra*, and the Shareholder Term Sheet attached hereto as **Appendix G** for a more detailed description of the terms of the settlement.

The settlement calls for the Sackler Parties to make payments totaling $4.275 billion over a period of nine years (or ten years if certain amounts are paid ahead of schedule in the first six years). This time period was negotiated over a several week period by the Special Committee, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants, the Multi-State Governmental Entity Group and the Sackler Families, and takes into account the sale of the IACs, providing necessary assurance that certain members of the Sackler Families would be able to satisfy the payment requirements and other considerations. The Debtors and other parties evaluated both the face value of the payments as well as their present value. The present value of future payments is a function of the applied discount rate.

The Debtors considered a number of approaches to determine the appropriate discount rate, which, from an economic perspective, may reflect the creditworthiness of the payor and risk of nonpayment, or the cost to the payee of the delay in obtaining the funds. The Debtors considered various approaches, including: (i) the time value of money over the payment horizon; (ii) historical AA municipal bond rates between 2008 and 2020 as a reasonable proxy for state and municipal borrowing costs over the future payment horizon; (iii) lower medium grade or even Ba1/BB+ corporate bond yields as a potential proxy for the Sackler Parties' credit risk under the terms contemplated for the settlement; and (iv) other higher rates driven by the Debtors' own cost of capital and other potential factors. These considerations yield discount rates ranging from 2.5%, at the low-end, to 8-10%, at the high-end.

### b. Other Benefits of the Settlement

The settlement also provides the critical benefit of enabling the Debtors to avoid potential negative consequences that would obtain absent the additional value recovered through the settlement from the Sackler Families. These include the potentially devastating consequences of being unable to secure the full benefits of the DOJ Resolution and to satisfy the Private-Side Resolutions. Absent the settlement, the Debtors would also continue to incur the very significant expenses of remaining in bankruptcy for an additional period of unknown length and would need to expend material further resources to litigate the estate claims against the Sackler Families. Absent a resolution in these Chapter 11 Cases, the Preliminary Injunction could expire and tens of thousands of creditors would be competing with each other to obtain judgments. Moreover, in

NAS1851

these circumstances, the Debtors would, themselves, be competing with creditors for whom the Debtors are a fiduciary, diminishing the value of the Debtors' Estates. The ensuing litigation of claims against the Sackler Families, which could very well continue for years post-emergence, would diminish the value of the assets available to satisfy claimants and, if successful, would certainly result in delayed and inequitable recoveries among potential claimants.

These negative circumstances that the settlement enables the Debtor to avoid are discussed in turn below.

### (1)     DOJ Resolution

Absent the settlement and approval of the Plan, the Debtors would face the possible unwinding of the DOJ Resolution, which could put at risk the entire value of the Debtors' Estates. Under the terms of the DOJ Resolution, Purdue Pharma pled guilty to certain criminal acts, and the Debtors agreed to a $2 billion Forfeiture Judgment.[142]  The Forfeiture Judgment will have the status of an allowed superpriority administrative expense claim against Purdue Pharma.

Under the terms of the DOJ Resolution, the United States agreed to provide a Forfeiture Judgment Credit of up to $1.775 billion for value distributed or otherwise conferred by Purdue Pharma under the Plan in respect of claims asserted by state, tribal, or local government entities, *provided* that the Plan provides for the emergence of a public benefit company (or entity with a similar mission) and certain other terms and conditions as described in more detail in the Plea Agreement.

As discussed in Article I.D, if the settlement with the Sackler Parties is not approved, there is considerable risk that the Debtors will not have sufficient value to satisfy both the Private-Side Resolutions, discussed below, and the distributions to the state, tribal and local government entities required to receive the Forfeiture Judgment Credit.  In such a case, the United States will not provide the Forfeiture Judgment Credit, and Purdue Pharma will be forced to pay the full Forfeiture Judgment, $2 billion.  Such funds, if paid to the United States, will be unavailable for distribution to other creditors, and it is the Debtors' understanding that any payments into the Department of Justice Asset Forfeiture Fund cannot be specifically designated for opioid abatement efforts.

Absent the DOJ Resolution, the United States could resume its criminal prosecution of the Defendant Debtors, potentially subjecting the Defendant Debtors to a $6.2 billion fine and a $3.5 billion forfeiture judgment.  These exposures, together with the DOJ's $2.8 billion asserted claim for civil liability (which could be trebled to $8.4 billion), would exceed and could potentially consume the entire value of the Debtors' Estates.

### (2)     Private-Side Resolutions

Without the financial contribution from the settlement, the Debtors may be unable to satisfy their obligations under the Private-Side Resolutions and the agreements that major stakeholders, including the Non-Federal Public Claimants and the Private Claimants, reached following months of mediation could fail, with very negative potential consequences

---

[142]  The terms of the DOJ Resolution are described in greater detail in Article I.B and I.D, *supra*.

NAS1852

Absent the Private-Side Resolutions, the various Private Claimant groups would dispute the claims of the Non-Federal Public Claimants, the United States and other Private Claimant groups, and each of those groups would be compelled to respond in kind against each of the other groups. Litigation over the claims of the Non-Federal Public Claimants and each of the Private Claimant groups would be protracted and extremely costly. There would be no assurance that the claims of any particular claimant would ultimately be allowed in any particular amount, or possibly even at all. And as noted above, if the ultimate resolution failed to provide at least $1.775 billion in respect of claims asserted by state, tribal, or local government entities and emergence of a public benefit company or entity with a similar mission, the DOJ could reduce or retract the Forfeiture Judgment Credit and the Debtors would need to satisfy the $2 billion Forfeiture Judgment in cash (and would be at risk of further criminal prosecution). In such circumstances, other creditors could receive little to no recovery.

### (3)  Sackler Families' Estates

When these Chapter 11 Cases began, certain members of the Sackler Families and Sackler Entities were faced, in aggregate, with approximately 400 civil suits throughout the United States. At that time, additional new suits against them were being filed every week. As a point of reference, at the same time, Purdue Pharma had been named as a defendant in more than 2,900 civil actions pending in various state and federal courts and other fora across the United States and its territories, and was also subject to several governmental investigations. Purdue Pharma's defense of these numerous matters was causing it to incur professionals' fees at an average rate of over $2 million per week, and these amounts were being incurred solely to pretrial defense costs, because none of these civil actions had yet proceeded to trial. In the event that thousands of cases are restarted or filed upon the expiration of the stay of litigation against the Sackler Families and Sackler Entities and move toward trial, expenses could be several multiples of those historical figures. These costs provide a potential basis for gauging the magnitude of the expenses that the Sackler Families and Sackler Entities would incur in continuing to defend the pending and future lawsuits against them in the event the claims against them were not resolved as provided in the proposed settlement. Absent the proposed settlement, the Sackler Families and Sackler Entities would likely need to incur such expenses, depleting the funds which they would potentially regard as available for compromising the claims against them and Purdue Pharma.

Moreover, in the event that any of the claims asserted in litigation against specific members of the Sackler Families or Sackler Entities by parties other than the Debtors were to succeed, the relevant estates would be depleted by the amounts of the judgments paid to the individual litigants by the particular Sackler Family or Sackler Entity defendants in such actions. For this reason, upon the expiration of the stay of litigation against the Sackler Families and Sackler Entities, there would be a race to the courthouse among their thousands of potential creditors, including both the Debtors and third parties. The recoveries in these individually prosecuted cases, were they to succeed, would not be equitably distributed among the claimants in the bankruptcy or the persons asserting claims in the litigation against the Sackler Families and Sackler Entities. Rather, the assets would be recovered by perhaps just the handful of the successful plaintiffs that were the first to obtain enforceable court judgments, until the weight of liabilities or expected liabilities of the individual Sackler Families defendants and Sackler Entities were to exceed the value of their estates. The litigation against the Sackler Families and

162

NAS1853

Sackler Estates would, if successful, likely force certain members of the Sackler Families or the Sackler Entities into multiple separate bankruptcies. In other words, the process that, prior to and in this bankruptcy proceeding, after years of costly discovery and negotiations, eventually resulted in the proposed settlement with the Sackler Families would likely have to be recommenced, in effect, in fragmented separate bankruptcy proceedings initiated by each potential judgment creditor or the individual judgment debtor Sackler Families members or Sackler Entities. Any possible recoveries that might be obtained by claimants or third parties as a result of those proceedings would very likely be delayed and, potentially, lower as compared to the expected recoveries for the same class of claimants under the Plan.

Even if the Debtors were able to secure judgments against members of the Sackler Families or Sackler Entities in the U.S. courts, they would face several obstacles in collecting on those judgments. The Sackler Families comprise many distinct individuals and family units and the Sackler Entities comprise various businesses around the world. Many members of the Sackler Families live abroad, and many are not U.S. citizens. Not all of their very considerable assets may be readily accessible by Purdue Pharma or other claimants seeking to hold the Sackler Families personally liable for the costs of the opioid epidemic. Accordingly, while the U.S. House Committee on Oversight and Reform publicly reported on April 20, 2021 that the "Sackler family's total net assets equal approximately $11 billion" based on information from early 2020, that figure does not necessarily identify the total assets capable of being recovered by claimants at any specific point in time.

Documents released by the Committee on Oversight and Reform indicate that the Sackler Families' wealth is divided between the A and B sides of the Sackler Families (the descendants of Mortimer and Raymond Sackler, respectively), with the A-Side individuals, companies and trusts holding collectively approximately $4.8 billion in assets and the B-Side individuals, companies and trusts holding collectively approximately $6.2 billion in assets. The information that the Debtors and certain other parties were provided with, while substantially more detailed in some respects and in certain instances including information as of different dates than those reported in the materials released by the Committee on Oversight and Reform, did not indicate that the aggregate value of the Sackler Families' wealth is materially different from the amounts indicated by the documents released by the Committee on Oversight and Reform; provided that the information released by the Committee on Oversight and Reform reference a hypothetical IAC value of $4.5 billion and the Debtors have utilized a more conservative assumption for purposes of evaluating the settlement. Further, most of the wealth is concentrated in dozens of U.S. and foreign-based spendthrift trusts. The ability of the Debtors or other creditor groups to enforce judgments by collecting amounts held by these trusts, or by the Sackler Entities and members of the Sackler Families, in multiple jurisdictions around the world, is uncertain and would be zealously litigated, likely over a multi-year period and in multiple jurisdictions. In addition, documents released by the Side B members of the Sackler Families indicate that the collective net worth of the Side-B individuals, companies and trusts has not changed significantly in the intervening months.[143]

---

[143] *See* https://www.judgeforyourselves.info/wp-content/uploads/2021/04/2021.04.08-Response-from-Side-B-Former-Directors-to-March-11-Letter.pdf, at 240 of 419 (updating the January 2020 Raymond-Side Net Assets Report).

NAS1854

As discussed in Article III.Y.1, *supra*, the quantum of the Sackler Families' wealth, its location, the holdings and risk profile of various individual members of the Sackler Families and their trusts, and other factors relevant to collectability were the subject of extensive discovery and taken into consideration by the Special Committee in determining the reasonableness of the settlement. In particular, the Special Committee considered the wealth of both the A and B sides of the Sackler Families. Then, within the A and B sides, there are also significant disparities between the financial positions and holdings of the various individuals and family groups. The Special Committee also took into account differences among "pods" within each of the two sides in order to maximize the likelihood of recovery of the overall promised settlement amounts. The Special Committee also considered the value of the IACs, which are owned equally by the A- and B-Side families, and how the value of those assets would affect the overall recoverable assets.

With respect to the B-Side of the Sackler Families, the Special Committee considered the value and location of the B-Side wealth, which is concentrated in a number of trusts, companies and individuals located in the United States, the beneficiaries of the trusts, and the personal wealth of certain B-Side members of the Sackler Families who sat on the Board or may face personal liability in connection with the estate and third-party claims. Side-B members of the Sackler Families include historical Board members Richard, Jonathan and David Sackler, amongst others.

With respect to the A-Side, the Special Committee considered the location of the family's wealth, which is overwhelmingly in foreign jurisdictions, and the dispersion of funds across a number of family units and companies, as well as dozens of trusts. While members of the Side-A family also participated in the governance of Purdue Pharma, including Kathe, Mortimer D.A., and Ilene Sackler, others members of the Sackler Families (including on Side B) had no direct role in the management of the Debtors.

These considerations—including the uncertain prospects for enforcing potential U.S. court judgments against members of the Sackler Families and Sackler Entities, the differences between members of the Sackler Families, and the costs and delay that would be inherent in a multinational enforcement effort—make it difficult to conclude that continuing litigation outweighs the certain merits of the proposed settlement.

(ii)     **Likelihood of Successful Litigation**

The benefits of the settlement are to be weighed against an assessment of whether the litigation would be successful—i.e., the amounts that the Debtors might expect to recover in litigated judgments against the Sackler Families and Sackler Entities.

The litigation involves various potential claims, with varying prospects of success and different potential recoveries.

a.     *The Debtors' Fraudulent Transfer Claims*

As explained in more detail above, *see* <u>Article II.E</u>, *supra*, the Debtors' advisors have determined that from 2008 through 2019, the Debtors distributed approximately $10.4 billion in

NAS1855

cash to Sackler Entities for the benefit of the Sackler Families. The amounts of these distributions, which include distributions classified for tax purposes, are as follows:



In addition to these cash distributions, the Debtors' advisors have also catalogued non-cash distributions made for the benefit of the Sackler Families from 2008 through 2019, as well as various commercial transactions between the Debtors and Sackler Entities, such as supply agreements, service agreements and license-and-royalty arrangements, during the same period. In the opinion of the Debtors' advisors, some of these commercial transactions between the Debtors and Sackler Entities did not reflect reasonable terms of exchange. To the extent that the Sackler Families or Sackler Entities benefitted from above-market or below-market terms of exchange that were not reasonable, the excess benefits they obtained constitute additional transfers of value for the benefit of the Sackler Families. Non-cash transfers and excess benefits based on non-market terms may total in excess of an additional $1.4 billion in value to or for the benefit of the Sackler Families or Sackler Entities from 2008 through 2019.

Absent the settlement, the Debtors would litigate to recover all or some of these potential transfers of value made for the benefit of the Sackler Families. The Debtors could pursue recovery of these transfers on a variety of legal theories, but the chief claims would be claims to recover fraudulent transfers, as provided under the Bankruptcy Code and applicable state law. The Bankruptcy Code authorizes debtors to assert two types of fraudulent transfer claims: constructive fraudulent transfers and intentional fraudulent transfers.

A constructive fraudulent transfer is one where the transferor (i.e., Purdue Pharma) received less than reasonably equivalent value for the transfer and was insolvent as of the date of the transfer or became insolvent as a result of the transfer. An intentional fraudulent transfer is one where the transfer was made with an actual intent to hinder, delay, or defraud creditors. A debtor's ability to recover assets that were fraudulently transferred may be limited by the applicable statute of limitations. The amount of recovery if a claim is proven may be increased by prejudgment interest.

NAS1856

In assessing the likelihood of success in litigating the Debtors' fraudulent transfer claims against the Sackler Families and the Sackler Entities, the key factors considered include

    (a) whether Purdue Pharma was insolvent as of the time of a particular transfer made for the benefit of the Sackler Families, such that the transfer was constructively fraudulent;

    (b) the strength of the evidence that a particular transfer was made with the intent to hinder, delay or defraud creditors, such that the transfer was intentionally fraudulent;

    (c) whether distributions made for purposes of funding tax payments owed by the Sackler Families or Sackler Entities can be recovered on a theory of fraudulent transfer;

    (d) whether, under the applicable statute of limitations, certain transfers occurred too long ago for the Debtors to seek to recover them;

    (e) the time period and rate to be used in calculating prejudgment interest on a successful claim; and

    (f) the Debtors' ability to collect a judgment on a successful claim.

Each of these key factors relating to the likelihood of the Debtors' success in recovering transfers for the benefit of the Sackler Families is discussed below.

### (1) Evidence of Insolvency

To prevail on a claim of constructive fraudulent transfer, a debtor must show that the debtor received less than reasonably equivalent value for the transfer and that the debtor was insolvent at the time of the transfer or was rendered insolvent as a result of the transfer.

At all times prior to the Petition Date—and thus for each of the transfers identified between 2008 and 2019—Purdue Pharma's balance sheet as presented in its audited financial statements indicated that the value of Purdue Pharma's assets exceeded that of its liabilities. The balance sheet is not determinative, however. Although as a general matter unliquidated litigation claims are not counted as liabilities for accounting purposes, courts may consider them when evaluating a debtor's liabilities for purposes of a claim of constructive fraudulent transfer. Even claims that were not asserted as of the date of a particular transfer may be considered liabilities in this context, if the court determines that the claim had "accrued" by that date and could be timely asserted under the relevant statute of limitations. Whether a claim had accrued and could be timely filed can vary depending on the type of claim, the governing law, the facts regarding the parties' conduct, the nature of the relief sought and the nature of the harm. In determining a debtor's liability for accrued but unasserted claims, courts take varying approaches that, among others, have included considering the likelihood that the plaintiff would succeed, the foreseeability of future litigation of the claims or evidence as to the value of such claims through adjudications or settlements. A court evaluating whether Purdue Pharma was insolvent as of the date of a particular transfer would accordingly assess whether, as of that time, Purdue Pharma's liabilities for accrued claims (even if unasserted) exceeded the value of its assets.

On this basis, the Debtors would seek to establish that Purdue Pharma was insolvent as of a date prior to the Petition Date. The likelihood of being able to demonstrate that Purdue Pharma

NAS1857

was insolvent would likely vary over time, in keeping with the changing circumstances. For example, the facts relevant to evaluating whether Purdue Pharma was insolvent in 2008 differ from the facts relevant to evaluating whether Purdue Pharma was insolvent in 2015 or 2019. Many different considerations are relevant to the insolvency analysis. One factor deemed relevant by some courts is the number of asserted claims as of a particular date (e.g., the date of a transfer). As of the Petition Date, approximately 2,900 lawsuits against Purdue were pending in various federal and state courts. Following the Petition Date, many thousands of proofs of claims were filed with the Court. These claims include those seeking recovery on behalf of cities, counties and states, which given their breadth could result in very significant amounts. However, the Sackler Families would point to the fact that between 2008 and 2015, there were relatively few tort claims asserted against Purdue Pharma, and very few governmental claims. Given this history, a court would have to make a judgment as to when it was foreseeable that additional claims by governmental entities and others would be filed against Purdue Pharma, that Purdue Pharma would be deemed to have liability on those claims by governmental entities and others, and that the aggregate liabilities of such claims exceeded Purdue Pharma's very significant enterprise value, so as to render it insolvent.

Even as of the Petition Date, after many such claims had been filed, none had proceeded to trial or resulted in a judgment against Purdue Pharma. Moreover, many of these claims rest on novel theories of liability. Unlike many other mass tort claims, such as asbestos claims, that have a predictable value after many years of litigation, the claims against Purdue Pharma and other opioid manufacturers do not have a history of adjudicated values. The record of litigation against Purdue Pharma has been highly variable: Some cases have been dismissed as legally defective on the pleadings. In many others, courts have held that the complaints stated a valid claim for relief, and many of these were being litigated as of the time of the bankruptcy filing and stay of proceedings. Other cases asserting tort claims have been settled. In 2007, Purdue Pharma and three senior executives reached a settlement with the DOJ and the U.S. Attorney's Office for the Western District of Virginia that resolved federal criminal claims and certain civil claims for $634.5 million, on top of a $19.5 million settlement Purdue Pharma reached that same month with the attorneys general of 26 states and the District of Columbia to resolve certain civil claims. Despite the size of that resolution, Purdue Pharma's enterprise value exceeded amounts that it paid in settlements prior to filing for bankruptcy. In the aggregate, Purdue Pharma paid approximately $342 million in settlements from 2008 through 2019, excluding matters involving patents and similar intellectual property disputes.

Liabilities based on the total claims asserted by the federal government and resolved through the DOJ Resolution, including those that were not admitted to by the Debtors, would exceed Purdue Pharma's enterprise value today. Courts would likely consider the DOJ Resolution in determining Purdue Pharma's insolvency over time. While there are arguments against the appropriateness of such consideration, the DOJ Resolution, if taken at face value, would support a claim of insolvency prior to the Petition Date. Courts would then have to determine how the liabilities accrued over time. In doing so, a court could consider the various public documents filed by the government. For example, based upon the Agreed Statement of Facts associated with the Plea Agreement, a court might consider the nature and length of the conspiracies alleged. The documents do not explain how liability accrued over time. Further, if a court concluded that significant liabilities accrued in earlier years, as noted above, the court

NAS1858

would have to balance such accrued liabilities against Purdue Pharma's significant enterprise value in those years.

There is, accordingly, uncertainty as to whether and to what extent the Debtors would prevail in recovering all relevant distributions based on a constructive fraudulent transfer claim.

### (2)  Evidence of Intent to Hinder, Delay or Defraud Creditors

To prevail on a claim of intentional fraudulent transfer, a debtor must show that the transferor acted with the intent to hinder, delay or defraud creditors. Such a showing would likely need to be proven by a standard of clear and convincing evidence, not merely a preponderance of the evidence, and it would need to be proven with respect to each individual transfer challenged as having been made with fraudulent intent, including where individuals acted based on multiple interests and motivations.

It is not certain whether the Debtors would prevail in establishing that Purdue Pharma made transfers for the benefit of the Sackler Families with the intention to defraud creditors. There is an extensive discovery record in this case. As is described more fully in Article III.Q above, Purdue Pharma has produced more than 12.5 million documents it had previously produced in prior litigations and to the DOJ, as well as an additional 680,000 documents it produced in response to requests from the Creditors' Committee. For their part, the Sackler Families and Sackler Entities have collectively produced over 1.5 million documents.

Within these materials are documents that could be used to argue that, as early as 2007, individual members of the Sackler Families and members of the Board believed that Purdue Pharma faced substantial legal risks related to its sale and marketing of OxyContin and other opioid products, such as Hysingla ER and Butrans (collectively, the "Opioid Products"). In addition, some documents reflect concerns, at various times, about the concentration of the Sackler Families' wealth in Purdue Pharma, including in respect of legal risks to the business, and discussions of ways to diversify the Sackler Families' wealth beyond their investment in Purdue Pharma, including through strategies to distribute Purdue Pharma's assets. The Sackler Families likely would argue in response that there are also contemporaneous indications throughout the period from 2007 through 2017 that certain individual members of the Sackler Families and members of the Board did not consider those legal risks to present a threat of insolvency, but instead considered them to be manageable, just as Purdue Pharma had managed its liability exposures to the federal government, 26 states, and the District of Columbia in settling claims with those entities in May 2007 for approximately $650 million. It is uncertain how a court or jury might evaluate the full body of evidence in an *ex post facto* reconstruction of the intent of the PPI Board and members of the Sackler Families as of the time of past transfers.

The record of Purdue Pharma's transfers for the benefit of the Sackler Families reflect a large increase in the amount of cash distributions beginning in 2008, shortly after Purdue Pharma's large federal and state government settlements. At the same time, the Sackler Families would likely argue that the increase in distributions coincided with a significant increase in Purdue Pharma's revenues, profits and cash position; and that documents show instances in which members of the Sackler Families chose to reinvest in the business rather than take

NAS1859

additional cash distributions. The Sackler Families may also point to documents indicating that certain transfers of assets and certain off-market intercompany dealings were made based on rational business planning or the continuation of practices, such as distributions for tax purposes, that were consistently followed throughout Purdue Pharma's history going back well before 2008.

While the foregoing does not reflect the full record and considerations available in pursuing a claim of intentional fraudulent transfer, it demonstrates the uncertainty that would face the Debtors if they needed to establish that Purdue Pharma made transfers for the benefit of the Sackler Families with the intention to defraud Purdue Pharma's creditors; or, significantly, that Debtors could succeed in establishing a right to recover amounts on such a claim in excess of the present value of the settlement.

(3)     **Tax Distributions**

Since its formation on June 12, 1991 as a Delaware limited partnership, Purdue Pharma has been treated as a "pass-through" entity for U.S. federal income tax purposes, which means that it was not itself subject to U.S. federal income tax. Purdue Pharma's taxable income instead "passed through" to, and was reportable by, its shareholders.

As set out in agreements entered into by certain of the Debtors' shareholders, the Debtors distributed amounts equal to the income tax liability at the highest tax rate of any shareholder. Approximately $4.7 billion of the $10.4 billion of cash distributions identified in the 1A Report were identified as tax distributions.

The Debtors would argue that, for any period in which Purdue Pharma was insolvent, tax distributions can be recovered as transfers for less than reasonably equivalent value, because they were paid for the benefit of the Sackler Families without any corresponding benefit to Purdue Pharma. The Sackler Families would argue in response that the tax distributions were made so Purdue Pharma itself could receive the benefit of being structured as a limited partnership, and thus, not have any entity-level tax obligations. If it had not been designated as a pass-through entity for tax purposes, Purdue Pharma would have been subject to the federal statutory corporate tax rate of 35% during most of the relevant period. Many comparable pharma companies had lower overall effective tax rates, and, accordingly, the amount of taxes that Purdue Pharma would have owed, had it been a taxpayer, is uncertain. It is difficult to predict how courts would resolve these tax issues. Courts have reached different conclusions, and the case law is sparse on whether tax distributions should be regarded as transfers "for reasonably equivalent value" in circumstances where the transferor is (like Purdue Pharma) organized as a pass-through entity for purposes of income tax liability and the income associated with its operations is instead assigned to its partners.

Given the lack of uniformity in case law and the lack of controlling authority in the Second Circuit, it is uncertain whether a court would determine that the $4.7 billion in tax distributions made by Purdue Pharma from 2008 through 2017—a significant portion of the total distributions during this period—were transfers for less than "reasonably equivalent value" that could be voided as fraudulent transfers if Purdue Pharma had been insolvent at the time that each tax distribution was made.

(4)     **Statutes of Limitations**

169

NAS1860

A statute of limitations defines the period in which a debtor may recover transfers. Here, the first fraudulent transfer claims were brought by the New York Attorney General on March 28, 2019, which had the effect of stopping or "tolling" the limitations period.

Under Section 548 of the Bankruptcy Code, the Debtors can recover any fraudulent transfers made up to two years before the first claim was asserted. As such, a claim pursuant to section 548 would only allow the Debtors to recover transfers made beginning in March 2017, after which there have been limited transfers from Purdue Pharma to or for the benefit of the Sackler Families.

The Debtors could also proceed under Section 544, which allows the Debtors to bring fraudulent transfer claims under applicable state or federal laws. The Debtors could proceed pursuant to Connecticut's Uniform Fraudulent Transfer Act, which provides for a four-year statute of limitations, or alternatively under the Federal Debt Collection Procedures Act, which provides a six-year statute of limitations. Because of the involvement of state creditors here, there are also colorable legal arguments that a ten-year statute of limitations could also be appropriate, or that statutes of limitations are inapplicable given the claims asserted by certain state creditors may not be subject to a limitation period under applicable state law. Such arguments are based on state statutes and case law specific to cases, as here, involving state claimants but have not been significantly developed in the context of bankruptcy proceedings. If the Debtors are not able to prevail on their ability to extend the statute of limitations to go back further in time, or to use an equitable argument to potentially stop the limitations clock from running for some period, the Debtors would be able to seek to recover transfers made from 2015 or 2013, depending on whether the limitations period is determined to be four or six years, respectively. As discussed above, distributions from Purdue Pharma had largely ceased by 2017, thereby limiting the amount Debtors would likely be able to recover.

### (5) Prejudgment Interest

The amount of a debtor's potential recovery in connection with transfers made at a time of insolvency or with an intent to defraud creditors can depend significantly on whether or not the recovery is augmented by an award of "prejudgment" interest. Awards of prejudgment interest are not mandated under the Bankruptcy Code. Whether and in what amount to award prejudgment interest are questions for the court's discretion.

A number of factors would affect a prejudgment interest award. *First*, while the decision whether to award any prejudgment interest is entirely up to the court's discretion, courts typically do award prejudgment interest in fraudulent transfer cases. *Second*, the rate at which prejudgment interest is awarded is also discretionary. Assuming Connecticut law applies, the maximum rate is 10% per annum, but courts can award prejudgment interest at a lower rate more in line with prevailing market rates. *Third*, courts have the discretion to award prejudgment interest from the date the transfer was made *or* from the date the fraudulent transfer lawsuit was filed. How a court might ultimately rule on these discretionary matters would materially affect the potential recovery here, where certain transfers were made in 2008, but the first fraudulent transfer complaint was not filed until eleven years later in 2019.

NAS1861

### (6) Collectability of Potential Judgments

Fraudulent transfer claimants can recover from both the transferees, including trusts, and the parties for whose benefit a transfer is made. Importantly, this means that through a fraudulent transfer claim, a claimant may recover from a spendthrift trust, which could otherwise be considered "judgment proof" in connection with other types of claims. Here, depending on the resolution of the legal and factual issues discussed above, the Debtors and other claimants could potentially recover up to the total net worth of the members of the Sackler Families and Sackler Entities.

However, there are numerous and substantial obstacles to litigating, enforcing, and collecting against the Sackler Families that create considerable uncertainty with respect to the sums that may ultimately be recoverable. For one, while the Sackler Families are frequently described as a monolithic entity, there are, in fact, dozens of members of the Sackler Families spread out around the globe over a number of independent family units and ranging in ages from very small children to senior citizens. Many never served on the Board or otherwise held employment by the Debtors, and because many members of the Sackler Families are not U.S. citizens, they are potentially beyond the reach of U.S. jurisdiction. Therefore, in order to obtain any significant recovery, the Debtors and other claimants would not be able to simply file a lawsuit against "the Sackler Families," but would instead have to separately sue, prevail, and collect against each of these individuals, and expend considerable resources in the process without any guarantee of success.

Additionally, as has been documented, most of the Sackler Families' wealth is concentrated in dozens of trusts—several of which were established before the invention of OxyContin—located both within and outside the United States. As disclosed in the 1A Report, while distributions from Purdue Pharma were initially made to two primary trusts, funds have subsequently been dispersed not only to individual members of the Sackler Families around the world, but also to dozens of trusts created for their benefit, including many that are located in the Bailiwick of Jersey in the Channel Isles or other locations, which may not subject to the Bankruptcy Court's jurisdiction. Notably, in order to recover assets held in Jersey, the Debtors would likely have to commence a *de novo* fraudulent transfer action in Jersey and relitigate all of the claims against each of these individual trusts.

Given these obstacles to recovery, the Debtors and other claimants may not be able to recover the full amount of a fraudulent transfer judgment, and would likely spend years and significant legal fees attempting to do so. By contrast, the Sackler Families and Sackler Entities have consented to the jurisdiction of the Bankruptcy Court for settlement enforcement purposes, and, in considering the proposed settlement, the Debtors have taken into account these factors in contemplating the collectability of any judgments obtained in U.S. courts.

### b. Other Potential Claims of the Debtors' Estates

In addition to fraudulent transfer claims, the Debtors' Estates could also pursue unjust enrichment and breach of fiduciary duty claims. Factors that affect the likelihood of a successful litigation of each of those claims are discussed in turn below.

NAS1862

### (1)    Unjust Enrichment

The Debtors could bring an unjust enrichment claim against the recipients of any of the assets wrongfully extracted from Purdue Pharma.  The Debtors could argue that the various cash and undervalued non-cash transfers unjustly enriched the recipients thereof at the expense of the Debtors' Estates and, in turn, the creditors.  Any unjust enrichment claim would likely be based on the same set of facts as the fraudulent claims; however, the Debtors would not have to prove actual or constructive fraud.  They would instead have to prove that any funds transferred out of Purdue Pharma could have been used to satisfy its creditors and that equity and good conscience require the return of the funds to the Debtors for the benefit of all creditors.  Even if the Debtors were to prevail in establishing a right to recover under a theory of unjust enrichment, they would likely not be able to seek double recovery under both unjust enrichment and fraudulent transfer theories.

Any unjust enrichment claim is limited to a six-year lookback period, which would only allow the Debtors to seek recovery of transfers dating back to 2013.  If they were to succeed on an unjust enrichment claim, the Debtors' ability to collect any such claim would be subject to the same considerations that apply in the fraudulent transfer context.

### (2)    Breach of Fiduciary Duty

The Debtors could potentially assert claims for breach of fiduciary duty against the members of the Board.  As a general matter, the general partner of a limited partnership (and, by extension, its board of directors) owes the fiduciary duty of loyalty to the limited partnership.[144] Directors may be liable for a breach of fiduciary duty where they engaged in self-dealing transactions, where they directly caused the partnership to violate the law, or where they failed to implement or adequately monitor internal compliance programs.

In the case of Purdue Pharma, claims of breach of fiduciary duty based on a theory of self-dealing transactions would largely overlap in terms of evidence and substance with the potential claims of fraudulent transfer discussed above.  Such claims accordingly would be unlikely to add any significant recovery beyond what would already be available to the Debtors under a fraudulent transfer theory.  Indeed, the prospects for recovery may be more limited on claims for breach of fiduciary duty, because recovery would have to be pursued against individual entities for breach of duty, rather than against a transferee of funds based on receipt of a transfer that was either constructively or intentionally fraudulent.

Generally, claims for breach of fiduciary duty by board members based on a failure of oversight face significant challenges of proof.  The limitation period for asserting a claim of breach of fiduciary duty is three years, counted from the date of the Debtors' bankruptcy filing in September 2019, and thus any actions from September 2016 forward that would give rise to liability could potentially support a claim.  There may be grounds for asserting that Purdue Pharma itself engaged in misconduct after September 2016—particularly in light of facts

---

[144] Partners may choose to disclaim the fiduciary duty of loyalty; however, Purdue Pharma's limited partnership agreement made no mention of the duty until March 7, 2018, when it was amended to disclaim the duty. Accordingly, Purdue Pharma would argue that PPI's directors owed Purdue Pharma a duty of loyalty up until March 7, 2018.

NAS1863

accepted in connection with the recent guilty plea on federal criminal charges—yet there would also have to be evidence tying such conduct to individual members of the Board.

Members of the Sackler Families will argue, as they have publicly stated, that the record shows that Purdue Pharma had a compliance program in place and that the Board received regular briefings with respect to it. In order for the Debtors to prevail, a court or a jury would need to conclude that members of the Board had reason to doubt such reassurances and failed in their capacities as members of the Board to adequately monitor the compliance program. It is therefore uncertain whether the Debtors will be able to recover on a breach of fiduciary duty claim premised on the theory that any particular director, or all directors, caused Purdue Pharma to engage in illegal conduct in the period after September 2016.[145]

### c.    Third-Party Claims

In the opinion of the Debtors, the $4.275 billion settlement with the Sackler Families justifies a release of potential third-party claims against the Sackler Families and Sackler Entities. These third-party claimants are all creditors of the Debtors as well. As such, they will share in the planned distributions to creditors under the Plan. And as discussed above, these distributions to creditors under the Plan are to be funded, in significant part, by payments under the settlement with the Sackler Families. Accordingly, third-party creditors will benefit under the settlement as provided under the Plan. They will also benefit from the settlement insofar as a failure to approve the settlement as a part of the Plan would present significant risks to the Debtors' Estates and to third parties, as described above.

Third-party creditors of the Sackler Families have brought a variety of claims arising from Purdue Pharma's and the Sackler Families' roles in manufacturing and marketing the various Opioid Products, including OxyContin. These claims include, but are not limited to, product liability, wrongful death, negligence, including negligent misrepresentation, negligence *per se* and gross negligence, fraud, fraudulent concealment, deceit and other willful misconduct, unjust enrichment, public nuisance, and claims under state consumer protection and controlled substances laws.

While the Debtors recognize the tragic circumstances underlying these suits, third-party creditors nonetheless face significant legal hurdles in proving the elements of their claims and collecting on any judgments. Notably, third-party creditors would need to specifically prove that individual members of the Sackler Families and Sackler Entities engaged in conduct that would give rise to personal liability and that such conduct caused the harms allegedly sustained by such third parties. The Sackler Families and Sackler Entities would surely expend significant resources in defending against any direct claims. Among other things, they would likely argue that while Purdue Pharma manufactured, distributed and marketed its Opioid Products, other parties contributed to the chain of events relating to prescriptions for, consumption of, and harm resulting from, the Opioid Products. Generally, these medications were prescribed for patients by licensed medical doctors, and the prescribing judgments by these "learned intermediaries" have been recognized in court decisions to provide a legal defense to manufacturers of drugs for harms they cause, including harms for opioid addiction allegedly caused by the Opioid Products.

---

[145] The statute of limitations on a breach of fiduciary duty claim is three years.

NAS1864

Other potential defenses by members of the Sackler Families would include possible misuse of prescription opioids or wrongful conduct by victims, which could potentially preclude or limit liability on the part of the Sackler Families or Sackler Entities or other released parties. State and local nuisance claims face similar hurdles. As noted above, those claims are novel, and the law remains unsettled. In some cases, lawsuits against Purdue Pharma and members of the Sackler Families have been dismissed on various legal grounds, including causation and standing. Many others have survived motions to dismiss, including those alleging claims against certain members of the Sackler Families brought by Massachusetts and Rhode Island.[146] However, none had been tried to final judgment at the time of the bankruptcy filing and stay of litigation.

Notably, liability would need to be proven separately against individual members of the Sackler Families based on their own conduct, not simply on the conduct of Purdue Pharma. As a general matter, corporations are treated as distinct and separate entities from their owners for legal purposes, and the owners of businesses are not personally liable for harms caused by the businesses themselves, absent personal conduct that would itself constitute a basis for liability. In special circumstances, a claimant may succeed in "piercing" through a corporation's form and recover directly from the corporation's owners or affiliates. These circumstances are considered exceptional, and the so-called "veil-piercing" doctrine is narrowly construed.

In New York,[147] a court may pierce a corporation's veil if (1) its owners exercised complete domination over the corporation with respect to the transaction at issue; and (2) that domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil. The inquiry into whether an owner dominated and controlled a corporation is highly fact specific and consists of an assessment of ten factors. The presence or absence of any single factor is not dispositive, and the factors cannot be applied in a vacuum; rather, the court must conduct a broad-based inquiry into the facts to determine if the party seeking to pierce the corporate veil has established an improper domination of the corporation. Plaintiffs must then also show that the owners used their control to perpetrate a fraud, injustice, or some other wrong on the plaintiff.

In a situation where, as here, the corporate family involves a series of holding companies, creditors would either need to establish the veil piercing factors for each separate entity, or they will have to satisfy a different set of factors corresponding to what is termed the "single enterprise theory" to group together an entire corporate family where the individual entities are so "inextricably intertwined" as to be a "single enterprise." Given the fact-intensive nature of the veil piercing inquiry and the general notion that courts do not often pierce the corporate veil, it is uncertain how a court would weigh the various veil-piercing factors. In addition, to the extent individual creditors lack standing to pursue claims held exclusively by the estate, they cannot seek to pierce the corporate veil with respect to those claims. Indeed, courts in New York have held that an estate has standing to pursue recoveries from its shareholders by piercing its own corporate veil with respect to general claims held by its creditors.

As noted, if creditors are unable to successfully pierce the corporate veil, they would need to prove liability based on specific conduct of individual members of the Sackler Families.

---

[146] *See Commonwealth v. Purdue Pharma L.P.*, C.A. No. 1884CV01808, 2019 WL 6497887 (Mass. Super. Ct. Nov. 4, 2019); *State v. Purdue Pharma L.P.*, C.A. No. PC-2018-4555, 2019 WL 3991963 (R.I. Super. Ct. Aug. 16, 2019).

[147] New York law likely governs the veil piercing analysis because PPI is incorporated in New York.

NAS1865

While approximately a dozen members of the Sackler Families served on the Board or were otherwise involved in Purdue Pharma's business to varying degrees, the record indicates that many members of the Sackler Families were not involved in Purdue Pharma at all, other than as passive recipients—through a series of intermediate entities and trusts—of distributions. Consequently, it will be much more difficult, if not impossible, for the creditors to prove liability by these other members of the Sackler Families. Moreover, the creditors would be limited to recovering from members of the Sackler Families who are liable for misconduct, and not from the full quantum of the Sackler Families' wealth. Further, as noted above, the Sackler Families' wealth is held in dozens of spendthrift trusts, including multiple trusts located outside the United States. These trusts would likely pose a significant obstacle to collecting on judgments against individuals, even if such individuals were the beneficiaries of the trusts.

As a result, the valuation of third-party claims is uncertain and highly speculative. Even if a particular creditor were able to prevail in holding some individual members of the Sackler Families liable and recover from those individuals, for the reasons discussed above, the vast majority of creditors who do not win the race to the courthouse would likely receive nothing. Thus, it is difficult to conclude that expected recoveries on account of direct claims against individual members of the Sackler Families would be greater than the expected future benefits of the substantial amounts to be paid to the Debtors under the settlement for distribution to claimants under the Plan.

The Sackler Families have also submitted filings laying out their own views of the claims against them and their defenses: the *Reply by the Side A Initial Covered Sackler Persons in Support of Disclosure Statement for Second Amended Plan* [D.I. 2833] and the *Submission by The Raymond Sackler Family of a Proposed Position Statement for Inclusion or Reference in the Debtors' Disclosure Statement* [D.I. 2853].[148]

### 3. Complexity, Expense and Delay of Litigation & Difficulties of Collecting Judgments

The second *Iridium* factor—the complexity of the litigation and the likelihood of attendant cost, inconvenience and delay, and likely difficulties in collecting judgments—weighs in favor of the settlement. As explained in detail above, the claims of the Debtors and other parties would require adjudications of many complex matters, including detailed evidence of conduct and events that occurred over many years. These complex matters would include, among others, litigation over evidence regarding the intent behind numerous distinct distributions of assets from Purdue Pharma at different times over a period of years, Purdue Pharma's own accrued liabilities to third parties, if any, at different times—and its solvency or insolvency at particular times in view of any such liabilities. There would also be complex questions of causation and statutes of limitations, as noted above. Many of these issues would

---

[148] Copies thereof may be obtained at no charge from the Solicitation Agent by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

NAS1866

likely be litigated, at least in part, through complex expert opinions.  The expense of litigating these claims to conclusion would be prodigious and would diminish the Debtors' Estates and the potential assets of the defendants that would be available to satisfy any judgments that the claimants might be capable of obtaining after years of litigation.

There is also a significant risk of difficulties in collecting judgments against the Sackler Families or Sackler Entities.  The damages that could potentially be recovered in litigation are necessarily limited by the assets that could be reached to satisfy a judgment.  According to information reviewed by the Debtors' representatives, the assets of the Sackler Families exceed the settlement payments by a meaningful amount, but there are potential legal impediments to enforcing possible future court judgments against all of those assets.  Some assets, for example, are held in trusts or held personally by individuals in foreign jurisdictions.  The ability of the Debtors or third parties to enforce possible future judgments, if obtained, against such assets is uncertain.  Accordingly, there is significant risk that the litigation of claims against the Sackler Families and affiliated entities could result in recoveries of amounts less than the payments to be made by the Sackler Families under the settlement.

With respect to third-party claims against the Sackler Families, even if a claimant were to succeed in establishing its claim and piercing the corporate veil, the claimant would still face the challenge of collecting on a judgment against the liable party.  As noted above, a significant portion of the wealth of the Sackler Families is held in trusts, both inside and outside the United States.  These family trusts are irrevocable, non-donor, spendthrift trusts, and as a result, a plaintiff would face significant challenges in collecting the trusts' assets to satisfy a judgment against an individual member of the Sackler Families.  Under Connecticut and Wyoming law, which govern most of the relevant trusts, a plaintiff seeking to enforce a judgment cannot recover a defendant's assets held in spendthrift trusts.  A creditor can only garnish or attach trust assets after the assets are distributed to the beneficiaries.

### 4. Interest and Support of Creditors & Expertise of Representatives

The third, fourth, and fifth factors from the *Iridium* case—the interest and support of the creditors, and the expertise of their representatives—similarly weigh in favor of the settlement. The vast majority of creditors, including the Creditors' Committee, AHC, MSGE, the Native American Tribes Group, the Ad Hoc Group of Individual Victims, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the ratepayer mediation participants, and the NAS Committee support or have no objection to the settlement, subject to satisfactory resolution of certain terms that continue to be negotiated.  The Debtors and these committees and other creditors have been represented by experienced and reputable counsel and financial and economic advisors.

### 5. Releases of Sackler Families, Sackler Entities and Other Specified Persons

The sixth factor—the nature and breadth of releases of officers and directors or other third parties—is relevant here because the Plan contains releases of third-party claims against the Sackler Families, Sackler Entities and certain others.  In the Second Circuit, third-party releases are appropriate where "unusual circumstances" render the release "truly necessary" to the plan's success.  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005).  That is

176

**NAS1867**

plainly the case here. Under the settlement, the Sackler Families will pay $4.275 billion to the Debtors' Estates—a very material sum that will enable the Debtors to satisfy the Plan, including the Private-Side Resolutions, and help to secure the DOJ Resolution. The agreement by the Sackler Families to pay these very material amounts is conditioned upon, among other things, third-party releases under the Plan for the benefit of the Sackler Families and related persons. Obtaining these material payments would not be possible without the third-party releases under the Plan.

### 6. Arm's-Length Negotiation of Settlement Terms

The final *Iridium* factor—whether the settlement was achieved through arm's-length bargaining—is plainly present here. The settlement was reached after months of vigorous arm's-length bargaining by the Special Committee, the Creditors' Committee, AHC and MSGE, and was facilitated by highly regarded professional mediators. Details of the Shareholder Term Sheet are set forth in Article III.W, *supra.*

## BB. Creditor Investigations Related to the Settlement with the Sackler Families

Over the course of over 18 months, the Creditors' Committee conducted an independent investigation of various claims against the members of the Sackler Families and Sackler Entities. This investigation by the Creditors' Committee, which was conducted in parallel with the Special Committee's investigation, was exhaustive and was focused in large but not exclusive part on the various potential claims held by the estate, including fraudulent transfer and breach of fiduciary duty. Given that the Creditors' Committee serves as a co-fiduciary in these Chapter 11 Cases, the Debtors provided extensive assistance to the Creditors' Committee's investigation.

The Creditors' Committee's advisors vigorously pursued their investigation and obtained significant information regarding the conduct of members of the Sackler Families, the IACs, other Sackler Entities, and the Debtors. As discussed in detail in Article IIIR, *supra*, the Creditors' Committee obtained access to an immense volume of information including documents from the Debtors, Sackler Families, IACs and other parties. In total, these productions amounted to almost 100 million pages.

The Creditors' Committee also received information provided voluntarily by the Debtors, which engaged with the Creditors' Committee on the appropriate scope of discovery to ensure maximum effectiveness and efficiency. To this end, the Debtors voluntarily provided the Creditors' Committee and the NCSG with all non-privileged documents identified by the Special Committee's investigation, including documents not included within the information requests made by the Creditors' Committee. Moreover, the Debtors also agreed, in an extraordinary exercise of cooperation, to produce over 16,000 privileged documents to the Creditors' Committee, on a common interest basis, including documents deemed material to the Special Committee's analysis of potential claims against the Sackler Families and Sackler Entities.

Also with the cooperation of the Debtors, the Creditors' Committee obtained discovery from the Sackler Families, Sackler Entities, including the IACs, non-Sackler members of the Board, certain financial institutions and insurance brokers, and Norton Rose Fulbright LLP, which acted as long-time counsel to both the Debtors and Sackler Families. This extensive

177

NAS1868

discovery provided further information potentially relevant to evaluating the various estate and third-party claims. These materials were produced to the Debtors as well, and evaluated in connection with the investigation by the Special Committee. Both the Creditors' Committee and the Special Committee used these documents to, among other things, diligence the various presentations provided by the Sackler Families regarding the wealth of the Sackler Families, the location of their assets, and their potential defenses.

The Creditors' Committee also noticed 16 depositions of members of the Sackler Families and their advisors, members of the Board, Purdue's CEO, and various former employees, some of which were conducted jointly with the NCSG and the Debtors. To afford the Creditors' Committee and the NCSG maximum scope to examine the witnesses, the Special Committee did not claim time to examine the deponents. Instead, the Special Committee provided selected documents to the Creditors' Committee in advance of each deposition of the members of the Sackler Families to ensure that the Creditors' Committee had the benefit in conducting its examinations of the documents that had been identified as relevant by the Special Committee. On numerous occasions, the Creditors' Committee used the documents provided by the Special Committee in the course of examining members of the Sackler Families. The advisors to the Special Committee also shared with the Creditors' Committee and, on occasion, the NCSG, their views on lines of questioning and examination of members of the Sackler Families.

The Debtors also provided the Creditors' Committee with valuable work product compiled by the advisors to the Special Committee for the purpose of assisting the Creditors' Committee's investigation. For example, the Debtors supplied the Creditors' Committee with drafts of the 1A and 1B Reports, prior to filing those reports on the public docket, and also provided the Creditors' Committee with extensive supporting diligence. In addition, on numerous occasions, the Debtors provided the Creditors' Committee and its financial advisors with the ongoing analysis performed by Bates White regarding the valuation of assets transferred to or for the benefit of the Sackler Families and Sackler Entities, as well as the transfer pricing analyses conducted by Bates White in respect of various royalty, services, R&D, product, real estate and other intercompany dealings. At the direction of the Special Committee's advisors, and on a common interest basis, Bates White on numerous occasions discussed with the Creditors' Committee and its advisors the results of Bates White's factual investigation, which included extensive review of corporate and transactional documents, interviews and analysis of relevant comparable transactions and arrangements.

The AHC also engaged with both AlixPartners and Bates White to diligence the Debtors' extensive disclosures regarding transfers to and for the benefit of the Sackler Families. The AHC's financial advisors met on numerous occasions with Bates White to discuss, on a common interest basis, the results of Bates White investigation and valuation analysis. In addition, the Debtors provided diligence in response to particular requests from no less than eight creditor groups, including the Creditors' Committee, AHC, NCSG, MSGE, Private Insurance Claimants, Ad Hoc Group of Individual Victims, NAS Committee and the Ad Hoc Group of Hospitals, and the U.S. Attorney's Office for the Southern District of New York's Civil Division, Tax and Bankruptcy Unit.

NAS1869

**CC.  Prosecution of Claims and Causes of Action Related to the Debtors' Insurance Coverage**

On January 20, 2021, the January 29, 2021, the Bankruptcy Court approved the *Stipulation and Agreed Order Granting Joint Standing to Prosecute Claims and Causes of Action Related to the Debtors' Insurance Coverage to (1) the Official Committee of Unsecured Creditors and (2) the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants* [D.I. 2305] (the "**Insurance Stipulation**").  On January 29, 2021, the Debtors, the Creditors' Committee and the Ad Hoc Committee commenced an adversary proceeding under the authority of the Insurance Stipulation by filing the *Complaint for Declaratory Relief*, Adv. Pro. No. 21-07005 (RDD) [D.I. 1] (the "**Insurance Complaint**").  The Insurance Complaint seeks an order declaring the present and future rights, duties, and liabilities of the Debtors and the MDT Insurers under the MDT Insurance Policies and directing the MDT Insurers to indemnify the Debtors for, or pay on their behalf, damages suffered by the Debtors arising out of the Pending Actions.  *E.g.*, Insurance Complaint ¶ 9.

As described in the Complaint, "coverage under the MDT Insurance Policies is subject to limits of liability, where applicable, of approximately $3.3 billion."  Insurance Complaint ¶ 6. The amount and timing of any recoveries under the MDT Insurance Policies is uncertain and is the subject of ongoing litigation.

Section 5.6(h) of the Plan provides that, on or before the Effective Date, the Debtors will transfer the MDT Insurance Rights, along with any and all Retained Causes of Action relating to and necessary to enforce the MDT Insurance Rights, to the Master Disbursement Trust.  Pursuant to section 5.6(j) of the Plan, the Master Disbursement Trust will be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Master Disbursement Trust, including in respect of the MDT Insurance Rights.  Section 5.6(b) of the Plan provides that any amounts paid by Insurance Companies under the MDT Insurance Policies will be paid to the Master Disbursement Trust to be applied in accordance with the MDT Priority Waterfall and the MDT Agreement.

**DD.  Omnibus Claims Objection Procedures**

On March 16, 2021, the Debtors filed the *Motion of Debtors for Entry of Order Approving (I) Omnibus Claims Objection Procedures, (II) Omnibus Claims Settlement Procedures and (III) Omnibus Claims Hearing Procedures* [D.I. 2490] (the "**Omnibus Claims Procedures Motion**").  Pursuant to the Omnibus Claims Procedures Motion, the Debtors sought entry of an order approving certain procedures to (a) object to claims (the "**Omnibus Claims Objection Procedures**"), (b) settle disputed claims without further Bankruptcy Court approval (the "**Omnibus Claims Settlement Procedures**"), and (c) streamline hearings on contested claims (the "**Omnibus Claims Hearing Procedures**").  The Bankruptcy Court granted the relief requested in the Omnibus Claims Procedures Motion on April 22, 2021 [D.I. 2696].

**EE.  Disclosure Statement Hearing and Confirmation Hearing**

The hearing to consider approval of the Disclosure Statement was held on May 26, 2021 at 9:00 a.m., June 1, 2021 at 3:00 p.m. and June 2, 2021 at 3:00 p.m. (prevailing Eastern Time).

NAS1870

The deadline to object to the approval of the Disclosure Statement was April 23, 2021 at 4:00 p.m. (prevailing Eastern Time). The deadline for (i) any party that timely filed an objection to file a supplemental objection to the Disclosure Statement and (ii) any party with respect to whom the objection deadline remained pending as of April 29, 2021 on account of an extension granted by the Debtors to file an objection was May 3, 2021, at 4:00 p.m. (prevailing Eastern Time). Further, the Debtors will seek entry of an order by the Bankruptcy Court scheduling the Confirmation Hearing to consider confirmation of the Plan. The Confirmation Hearing will be held on August 9, 2021 at 10:00 a.m. (prevailing Eastern Time).

## ARTICLE IV

## SUMMARY OF THE PLAN

The Debtors believe that the Plan provides the best and most prompt possible recovery to holders of Claims. The Debtors believe that (a) through the Plan, holders of Allowed Claims will obtain a recovery from the Debtors' estates equal to or greater than the recovery that they would receive if the Debtors' assets were liquidated under chapter 7 of the Bankruptcy Code and (b) consummation of the Plan will maximize the recovery of the holders of Allowed Claims.

The consummation of a plan is the principal objective of a chapter 11 case. A plan sets forth the means for satisfying Claims against, and interests in, a debtor. Confirmation of a plan makes the plan binding upon the debtor and any creditor of, or equity holder in, the debtor, whether or not such creditor or equity holder (a) is impaired under or has accepted the plan or (b) receives or retains any property under the plan. Subject to certain limited exceptions and other than as provided in the plan itself or the confirmation order, a confirmation order discharges the debtor from any debt that arose prior to the effective date of the plan and substitutes therefor the obligations specified under the confirmed plan.

A chapter 11 plan may specify that the legal, contractual, and equitable rights of the holders of Claims or Interests in certain classes are to remain unaltered by the reorganization effectuated by the plan. Such classes are referred to as "unimpaired" and, because of such favorable treatment, are deemed to accept the plan. Accordingly, a debtor need not solicit votes from the holders of Claims or Interests in such classes. A chapter 11 plan may also specify that certain classes will not receive any distribution of property or retain any Claim against a debtor. Such classes are deemed not to accept the plan and, therefore, need not be solicited to vote to accept or reject the plan. Any classes that are receiving a distribution of property under the plan but are not unimpaired will be solicited to vote to accept or reject the plan.

Prior to soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding the plan. To satisfy the requirements of section 1125 of the Bankruptcy Code, the Debtors are submitting this Disclosure Statement to holders of Claims against the Debtors who are entitled to vote to accept or reject the Plan.

THE REMAINDER OF THIS SECTION PROVIDES A SUMMARY OF THE STRUCTURE AND MEANS FOR IMPLEMENTATION OF THE PLAN AND THE

NAS1871

CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN. THIS SECTION IS QUALIFIED IN ITS ENTIRETY BY AND IS SUBJECT TO THE PLAN AS WELL AS THE EXHIBITS THERETO AND DEFINITIONS THEREIN.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT INCLUDE SUMMARIES OF THE PROVISIONS CONTAINED IN THE PLAN AND IN DOCUMENTS REFERRED TO THEREIN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT DO NOT PURPORT TO BE PRECISE OR COMPLETE STATEMENTS OF ALL THE TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN. REFERENCE IS MADE TO THE PLAN AND TO SUCH DOCUMENTS FOR THE FULL AND COMPLETE STATEMENTS OF SUCH TERMS AND PROVISIONS OF THE PLAN OR DOCUMENTS REFERRED TO THEREIN.

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS UNDER THE PLAN. UPON OCCURRENCE OF THE EFFECTIVE DATE, THE PLAN AND ALL SUCH DOCUMENTS WILL BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND INTERESTS IN THE DEBTORS AND THEIR ESTATES AND ALL OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT, ON THE ONE HAND, AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, ON THE OTHER HAND, THE TERMS OF THE PLAN AND SUCH OTHER OPERATIVE DOCUMENT SHALL CONTROL.

STATEMENTS AS TO THE RATIONALE UNDERLYING THE TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN ARE NOT INTENDED TO, AND SHALL NOT, WAIVE, COMPROMISE, OR LIMIT ANY RIGHTS, CLAIMS, OR CAUSES OF ACTION IN THE EVENT THE PLAN IS NOT CONFIRMED.

As contemplated by the Plan, the Debtors will file with the Court at least seven days before the Voting Deadline (as defined in the Solicitation Procedures Order) the supplement or supplements to the Plan (the "**Plan Supplement**") containing certain documents relevant to the implementation of the Plan, which shall include the MDT Agreement, the NewCo Transfer Agreement, the NewCo Operating Agreement, the TopCo Operating Agreement, the PAT Agreement, the PI Trust Documents (including the LRP Agreement), the PI Futures Trust Documents, the NAS Monitoring Trust Documents, the Hospital Trust Documents, the TPP Trust Documents, the NOAT Documents, the Tribe Trust Documents, the NewCo Credit Support Agreement, the identity of the MDT Trustees, the identity of the MDT Executive Director, the identity of the NewCo Managers, the identity of the TopCo Managers, the identity of the Plan Administration Trustee and PPLP Liquidator, the identity of the Creditor Trustees, the Schedule of Rejected Contracts, the Schedule of Retained Causes of Action, the Schedule of Excluded Parties, the Shareholder Settlement Agreement and the Restructuring Steps Memorandum. Notice of filing of the Plan Supplement will be served in accordance with the Solicitation Procedures Order. Once filed, the Plan Supplement (and, at any time, the Disclosure Statement, including the Plan and the other exhibits thereto, Disclosure Statement Order, and all other materials in the Solicitation Package, except Ballots) may be obtained at no charge from the Solicitation Agent by (a) calling the Debtors' restructuring hotline at (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b) visiting the Debtors' restructuring website at

NAS1872

https://restructuring.primeclerk.com/purduepharma; (c) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and or (d) emailing purduepharmainfo@primeclerk.com. You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at http://www.nysb.uscourts.gov.

**A.** **Administrative Expense Claims, Professional Fee Claims, Priority Tax Claims and DOJ Forfeiture Judgment Claim**

    *1.* ***Administrative Claims***

        (i) **Generally.** Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, Holders of Administrative Claims (other than Professional Fee Claims and the DOJ Forfeiture Judgment Claim) must file and serve on the Debtors requests for the payment of such Administrative Claims not already Allowed by a Final Order. Any Holder of an Administrative Claim that is required to, but does not, file and serve a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order shall be forever barred, estopped and enjoined from asserting such Claims against the Debtors, the Liquidating Debtors, the Transferred Debtors, the Plan Administration Trust or their respective Assets or properties, and such Claims shall be deemed discharged as of the Effective Date. An Administrative Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1(a) of the Plan, shall become an Allowed Administrative Claim if no objection to such request is filed by the Debtors or the Plan Administration Trustee with the Bankruptcy Court on or before the date that is one hundred twenty (120) days after the Effective Date, or such later date as may be fixed by the Bankruptcy Court. If an objection is timely filed, such Administrative Claim shall become an Allowed Administrative Claim only to the extent Allowed by Final Order or such Claim is settled, compromised or otherwise resolved pursuant to Section 7.7 of the Plan. Except to the extent a Holder of an Allowed Administrative Claim and the Debtor against which such Claim is asserted agree to different treatment, each Holder of an Allowed Administrative Claim (other than a Professional Fee Claim or the DOJ Forfeiture Judgment Claim) shall receive, on account of such Allowed Claim, Cash in an amount equal to the Allowed amount of such Claim from the Priority Claims Reserve within thirty (30) days following the later to occur of a. the Effective Date and b. the date on which such Administrative Claim shall become an Allowed Claim; *provided* that any Administrative Claim that is assumed by NewCo shall be paid by NewCo in the ordinary course of business.

        (ii) **Professional Fee Claims.** All Professional Persons seeking awards by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred through and including the Effective

NAS1873

Date under (x) section 327, 328, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5) or 1103 of the Bankruptcy Code, (y) with respect to the Ad Hoc Committee, the AHC Reimbursement Agreement Assumption Order or (z) with respect to the MSGE Group, the MSGE Group Reimbursement Order, shall a. file, on or before the date that is forty-five (45) days after the Effective Date, or as soon as reasonably practicable thereafter, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred and b. be paid in full in Cash, (1) *first*, from any existing amounts held by a Professional Person as a fee advance, retainer, or security that such Professional Person is authorized to use to satisfy Allowed Professional Fee Claims pursuant to the Interim Compensation Order or the order of the Bankruptcy Court authorizing the retention of such Professional Person (other than a reasonable retainer to cover post-Effective Date work), and (2) *second*, from the Professional Fee Escrow Account, in such aggregate amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim. On or prior to the Effective Date, the Debtors shall establish the Professional Fee Escrow Account and, on the Effective Date, fund the Professional Fee Escrow Account with Cash such that the total amount held in the Professional Fee Escrow Account is equal to the sum of each Professional Person's good-faith estimates of its Professional Fee Claims. The procedures for filing objections to Professional Persons' applications for final allowance of compensation for services rendered and expenses incurred shall be set forth in the Confirmation Order.

2.    ***Priority Tax Claims***

Except to the extent a Holder of an Allowed Priority Tax Claim and the Debtor against which such Claim is asserted agree to different treatment, on the Effective Date or as soon as reasonably practicable thereafter, each Holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, either Cash in an amount equal to the Allowed amount of such Claim from the Priority Claims Reserve or such other treatment as may satisfy section 1129(a)(9) of the Bankruptcy Code.

3.    ***DOJ Forfeiture Judgment Claim***

(i)    **Allowance.**  Pursuant to the Plea Agreement and the DOJ 9019 Order, the DOJ Forfeiture Judgment Claim shall be Allowed in the amount of $2.0 billion on the later of a. the DOJ Conviction Judgment Date and b. the entry by the Bankruptcy Court of the Confirmation Order.

(ii)    **Treatment.**  In full and final satisfaction, settlement, release and discharge of the DOJ Forfeiture Judgment Claim, the Debtors shall make the DOJ Forfeiture Payment within three (3) Business Days following the DOJ Conviction Judgment Date, which DOJ Forfeiture Payment, in

NAS1874

combination with the DOJ Forfeiture Judgment Credit, shall satisfy and discharge the DOJ Forfeiture Judgment Claim in full.

**B.     Classification of Claims and Interests**

Section 1123 of the Bankruptcy Code provides that a plan must classify the claims and interests of a debtor's creditors and equity interest holders.  In accordance with section 1123 of the Bankruptcy Code, the Plan divides Claims and Interests into Classes and sets forth the treatment for each Class (other than Administrative Expense Claims and Priority Tax Claims, which pursuant to section 1123(a)(1) of the Bankruptcy Code need not be and have not been classified).  The Debtors also are required, under section 1122 of the Bankruptcy Code, to classify Claims against and Interests in the Debtors (except for certain claims classified for administrative convenience) into Classes that contain Claims and Interests that are substantially similar to the other Claims and Interests in such Class.

The Bankruptcy Code also requires that a plan provide the same treatment for each claim or interest of a particular class unless the claim holder or interest holder agrees to a less favorable treatment of its claim or interest.  The Debtors believe that they have complied with such standard.  If the Bankruptcy Court finds otherwise, however, it could deny confirmation of the Plan if the holders of Claims and Interests affected do not consent to the treatment afforded them under the Plan.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and Distributions under the Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest is classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes; *provided* that, to the extent any Claim satisfies the definition of a Shareholder Claim, a Co-Defendant Claim or an Other Subordinated Claim, such Claim shall be classified as such, notwithstanding that such Claim may satisfy the definition of another type of Claim. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released or otherwise settled prior to the Effective Date. In no event shall any Holder of an Allowed Claim be entitled to receive payments under the Plan that, in the aggregate, exceed the Allowed amount of such Holder's Claim.

The Debtors believe that the Plan has classified all Claims and Interests in compliance with the provisions of section 1122 of the Bankruptcy Code and applicable case law.  It is possible that a holder of a Claim or Interest may challenge the Debtors' classification of Claims and Interests and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed.  If such a situation develops, the Debtors intend, in accordance with the terms of the Plan, to make such permissible modifications to the Plan as may be necessary to permit its confirmation.  Any such reclassification could adversely affect holders of Claims by changing the composition of one or more Classes and the vote required of such Class or Classes for approval of the Plan.  EXCEPT AS SET FORTH IN THE PLAN, UNLESS SUCH MODIFICATION OF CLASSIFICATION MATERIALLY ADVERSELY AFFECTS THE

NAS1875

TREATMENT OF A HOLDER OF A CLAIM AND REQUIRES RESOLICITATION, ACCEPTANCE OF THE PLAN BY ANY HOLDER OF A CLAIM OR INTEREST PURSUANT TO THIS SOLICITATION WILL BE DEEMED TO BE A CONSENT TO THE PLAN'S TREATMENT OF SUCH HOLDER OF A CLAIM REGARDLESS OF THE CLASS AS TO WHICH SUCH HOLDER ULTIMATELY IS DEEMED TO BE A MEMBER.

The amount of any impaired Claim that ultimately is Allowed by the Bankruptcy Court may vary from any estimated Allowed amount of such Claim and, accordingly, the total Claims that are ultimately Allowed by the Bankruptcy Court with respect to each impaired Class of Claims may also vary from any estimates contained herein with respect to the aggregate Claims in any impaired Class. Thus, the actual recovery ultimately received by a particular holder of an Allowed Claim may be adversely or favorably affected by the aggregate amount of Claims Allowed in the applicable Class. Additionally, any changes to any of the assumptions underlying the estimated Allowed amounts could result in material adjustments to recovery estimates provided herein and/or the actual distribution received by Creditors. The projected recoveries are based on information available to the Debtors as of the date hereof and reflect the Debtors' views as of the date hereof only.

The classification of Claims and Interests and the nature of distributions to members of each Class are summarized below. The Debtors believe that the consideration, if any, provided under the Plan to holders of Claims and Interests reflects an appropriate resolution of their Claims and Interests, taking into account the differing nature and priority (including applicable contractual subordination) of such Claims and Interests. The Bankruptcy Court must find, however, that a number of statutory tests are met before it may confirm the Plan. Many of these tests are designed to protect the interests of holders of Claims or Interests who are not entitled to vote on the Plan, or do not vote to accept the Plan, but who will be bound by the provisions of the Plan if it is confirmed by the Bankruptcy Court.

## C.    Treatment of Claims and Interests

### 1.    *Secured Claims (Class 1)*

(i)    **Treatment**: Except to the extent a Holder of an Allowed Secured Claim and the Debtor against which such Claim is asserted agree to different treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Secured Claim shall receive, on account of such Allowed Claim, a. payment in full in Cash from the Priority Claims Reserve in accordance with section 506(a) of the Bankruptcy Code, b. Reinstatement of such Allowed Claim pursuant to section 1124 of the Bankruptcy Code or c. such other treatment as may be necessary to render such Claim Unimpaired.

(ii)    **Impairment and Voting**: Secured Claims are Unimpaired. Holders of Secured Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Secured Claims.

185

NAS1876

2. *Other Priority Claims (Class 2)*

    (i)    **Treatment**: Except to the extent a Holder of an Allowed Other Priority Claim and the Debtor against which such Claim is asserted agree to different treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Other Priority Claim shall receive, on account of such Allowed Claim, a. payment in full in Cash from the Priority Claims Reserve or b. such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

    (ii)    **Impairment and Voting**: Other Priority Claims are Unimpaired. Holders of Other Priority Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Priority Claims.

3. *Federal Government Unsecured Claims (Class 3)*

    (i)    **Allowance of the DOJ Civil Claim and DOJ Criminal Fine Claim**: Pursuant to the DOJ 9019 Order, the DOJ Civil Claim is Allowed in the amount of $2.8 billion. The DOJ Criminal Fine Claim shall be Allowed in the amount of $3.544 billion on the later of a. the DOJ Conviction Judgment Date and b. the entry by the Bankruptcy Court of the Confirmation Order.

    (ii)    **Treatment**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Allowed Federal Government Unsecured Claims, the United States shall receive a. the Initial Federal Government Distribution and b. the MDT Federal Government Claim. The MDT Federal Government Claim shall be payable by the Master Disbursement Trust in the following installments (which installments shall, to the extent applicable, be reduced as a result of prepayments in accordance with Section 5.2(d)(iv) of the Plan): (x) $10 million on the First Scheduled MDT Distribution Date, (y) $10 million on July 31, 2023 and (z) $5 million on July 31, 2024. The Initial Federal Government Distribution and the amounts paid to the United States on account of the MDT Federal Government Claim shall be deemed applied 60% to the DOJ Unsecured Claims and 40% to the Other Federal Agency Claims.

    (iii)    **Impairment and Voting**: The Federal Government Unsecured Claims are Impaired. Holders of Federal Government Unsecured Claims are entitled to vote to accept or reject the Plan.

4. *Non-Federal Domestic Governmental Claims (Class 4)*

NAS1877

(i)  **Treatment**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of Non-Federal Domestic Governmental Claims, NOAT shall receive a. the Initial NOAT Distribution, b. the TopCo NOAT Interest and c. the MDT NOAT Interest. Distributions in respect of Non-Federal Domestic Governmental Channeled Claims shall be exclusively in the form of Abatement Distributions made by NOAT to Authorized Recipients for Authorized Abatement Purposes, in accordance with the NOAT TDP.

(ii)  **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Non-Federal Domestic Governmental Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by NOAT. Each Non-Federal Domestic Governmental Channeled Claim shall be asserted exclusively against NOAT and resolved solely in accordance with the terms, provisions and procedures of the NOAT TDP. The sole recourse of any Person on account of any Non-Federal Domestic Governmental Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to NOAT as and to the extent provided in the NOAT TDP. Holders of Non-Federal Domestic Governmental Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Non-Federal Domestic Governmental Channeled Claims exclusively against NOAT, solely as and to the extent provided in the NOAT TDP.

(iii)  **Impairment and Voting**: Non-Federal Domestic Governmental Claims are Impaired. Holders of Non-Federal Domestic Governmental Claims are entitled to vote to accept or reject the Plan.

5.  *Tribe Claims (Class 5)*

(i)  **Treatment**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of Tribe Claims, the Tribe Trust shall receive a. the Initial Tribe Trust Distribution, b. the TopCo Tribe Interest and c. the MDT Tribe Interest. Distributions in respect of Tribe Claims shall be exclusively in the form of Abatement Distributions made by the Tribe Trust to Authorized Recipients for Authorized Abatement Purposes, in accordance with the Tribe TDP.

(ii)  **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Tribe Channeled Claims shall automatically, and

187

NAS1878

without further act, deed or court order, be channeled exclusively to and assumed by the Tribe Trust. Each Tribe Channeled Claim shall be asserted exclusively against the Tribe Trust and resolved solely in accordance with the terms, provisions and procedures of the Tribe TDP. The sole recourse of any Person on account of any Tribe Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the Tribe Trust as and to the extent provided in the Tribe TDP. Holders of Tribe Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Tribe Channeled Claims exclusively against the Tribe Trust, solely as and to the extent provided in the Tribe TDP.

(iii) **Impairment and Voting**: Tribe Claims are Impaired. Holders of Tribe Claims are entitled to vote to accept or reject the Plan.

**6.** *Hospital Claims (Class 6)*

(i) **Treatment**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of Hospital Claims, the Hospital Trust shall receive a. the Initial Hospital Trust Distribution and b. the MDT Hospital Claim. Distributions in respect of Hospital Channeled Claims shall be exclusively in the form of Abatement Distributions made by the Hospital Trust to Authorized Recipients for Authorized Abatement Purposes, in accordance with the Hospital TDP.

(ii) **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Hospital Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the Hospital Trust. Each Hospital Channeled Claim shall be asserted exclusively against the Hospital Trust and resolved solely in accordance with the terms, provisions and procedures of the Hospital TDP. The sole recourse of any Person on account of any Hospital Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the Hospital Trust as and to the extent provided in the Hospital TDP. Holders of Hospital Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Hospital

188

NAS1879

Channeled Claims exclusively against the Hospital Trust, solely as and to the extent provided in the Hospital TDP.

(iii) **Impairment and Voting**: Hospital Claims are Impaired. Holders of Hospital Claims are entitled to vote to accept or reject the Plan.

### 7. *Third-Party Payor Claims (Class 7)*

(i) **Treatment**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of Third-Party Payor Claims, the TPP Trust shall receive a. the Initial TPP Trust Distribution and b. the MDT TPP Claim. Distributions in respect of Third-Party Payor Channeled Claims shall be exclusively in the form of Abatement Distributions made by the TPP Trust to Authorized Recipients for Authorized Abatement Purposes, in accordance with the TPP TDP. For the avoidance of doubt, any payments from the TPP LRP Escrow Account to which LRP Participating TPPs may be entitled under the LRP Agreement shall not be subject to Section 4.7 of the Plan.

(ii) **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Third-Party Payor Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the TPP Trust. Each Third-Party Payor Channeled Claim shall be asserted exclusively against the TPP Trust and resolved solely in accordance with the terms, provisions and procedures of the TPP TDP. The sole recourse of any Person on account of any Third-Party Payor Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the TPP Trust as and to the extent provided in the TPP TDP. Holders of Third-Party Payor Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Third-Party Payor Channeled Claims exclusively against the TPP Trust, solely as and to the extent provided in the TPP TDP.

(iii) **Impairment and Voting**: Third-Party Payor Claims are Impaired. Holders of Third-Party Payor Claims are entitled to vote to accept or reject the Plan.

### 8. *Ratepayer Claims (Class 8)*

(i) **Treatment**: In full and final satisfaction, settlement, release and discharge of all Ratepayer Claims, on the Effective Date or as soon thereafter as

NAS1880

reasonably practicable, Effective Date Cash shall be used to make the Truth Initiative Contribution in an amount equal to $6.5, subject to the deductions therefrom for the required payments to the Common Benefit Escrow Fund and in respect of attorneys' fees of the Ratepayer Mediation Participants in accordance with <u>Sections 5.8(c)</u> and <u>(f)</u> of the Plan.

(ii)     **<u>Impairment and Voting</u>**: Ratepayer Claims are Impaired. Holders of Ratepayer Claims are entitled to vote to accept or reject the Plan.

(iii)     **<u>Tax Treatment</u>**: The Truth Initiative Contribution shall be treated, for U.S. federal income tax purposes, as a. the cancellation of all Ratepayer Claims for no consideration and b. a transfer of Cash to the Truth Initiative Foundation by the Debtors.

### 9. *NAS Monitoring Claims (Class 9)*

(i)     **<u>Treatment</u>**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of NAS Monitoring Claims, the NAS Monitoring Trust shall receive a. the Initial NAS Monitoring Trust Distribution and b. the MDT NAS Monitoring Claim. Distributions in respect of NAS Monitoring Channeled Claims shall be exclusively in the form of Abatement Distributions made by the NAS Monitoring Trust to Authorized Recipients for Authorized Abatement Purposes, in accordance with the NAS Monitoring TDP.

(ii)     **<u>Channeling</u>**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all NAS Monitoring Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the NAS Monitoring Trust. Each NAS Monitoring Channeled Claim shall be asserted exclusively against the NAS Monitoring Trust and resolved solely in accordance with the terms, provisions and procedures of the NAS Monitoring TDP. The sole recourse of any Person on account of any NAS Monitoring Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the NAS Monitoring Trust as and to the extent provided in the NAS Monitoring TDP. Holders of NAS Monitoring Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue NAS Monitoring Channeled Claims exclusively against the NAS Monitoring Trust, solely as and to the extent provided in the NAS Monitoring TDP.

NAS1881

    (iii)    **Impairment and Voting**: NAS Monitoring Claims are Impaired. Holders of NAS Monitoring Claims are entitled to vote to accept or reject the Plan.

**10.**     *PI Claims (Classes 10(a) and 10(b))*

    (i)    **PI Trust**: On the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of PI Claims, the PI Trust shall receive, subject to <u>Section 5.2(h)</u> of the Plan, a. the Initial PI Trust Distribution and b. the MDT PI Claim.

    (ii)    **NAS PI Claims (Class 10(a))**

        a.    **Treatment**: The PI Trust shall deposit the NAS PI Portion into the PI Trust NAS Fund in periodic installments as funds are received by the PI Trust. Distributions in respect of NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust NAS Fund to Holders of Allowed NAS PI Channeled Claims, in accordance with the NAS PI TDP, and shall be subject to the PI Trust Deductions and Holdbacks.

        b.    **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all NAS PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Trust. Each NAS PI Channeled Claim shall be asserted exclusively against the PI Trust and resolved solely in accordance with the terms, provisions and procedures of the NAS PI TDP. The sole recourse of any Person on account of any NAS PI Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the PI Trust NAS Fund as and to the extent provided in the NAS PI TDP. Holders of NAS PI Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue NAS PI Channeled Claims exclusively against the PI Trust, solely as and to the extent provided in the NAS PI TDP.

        c.    **Impairment and Voting**: NAS PI Claims are Impaired. Holders of NAS PI Claims are entitled to vote to accept or reject the Plan.

    (iii)    <u>**Non-NAS PI Claims (Class 10(b))**</u>

NAS1882

a. **Treatment**: The PI Trust shall deposit the Non-NAS PI Portion into the PI Trust Non-NAS Fund in periodic installments as funds are received by the PI Trust. Distributions in respect of Non-NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust Non-NAS Fund to Holders of Allowed Non-NAS PI Channeled Claims, in accordance with the Non-NAS PI TDP, and shall be subject to the PI Trust Deductions and Holdbacks.

b. **Channeling**: As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Non-NAS PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Trust. Each Non-NAS PI Channeled Claim shall be asserted exclusively against the PI Trust and resolved solely in accordance with the terms, provisions and procedures of the Non-NAS PI TDP. The sole recourse of any Person on account of any Non-NAS PI Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the PI Trust Non-NAS Fund as and to the extent provided in the Non-NAS PI TDP. Holders of Non-NAS PI Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Non-NAS PI Channeled Claims exclusively against the PI Trust, solely as and to the extent provided in the Non-NAS PI TDP.

c. **Impairment and Voting**: Non-NAS PI Claims are Impaired. Holders of Non-NAS PI Claims are entitled to vote to accept or reject the Plan.

(iv) **Canadian Patient Settlement**: Pursuant to the Canadian Patient Claim Settlement Stipulation, if the Canadian Patient Settlement Agreement is approved by the Saskatchewan Court of Queen's Bench and the funds in the Canadian Patient Settlement Trust are released for the benefit of Holders of Settled Canadian Patient Claims a. no Holder of a Settled Canadian Patient Claim that filed a Proof of Claim shall receive a recovery in respect of such Settled Canadian Patient Claim from any source other than the Patient Settlement Payment (as defined in the Canadian Patient Claim Settlement Stipulation) made from the Canadian Patient Settlement Trust and b. in order to receive a recovery in respect of any other Claim for which a Proof of Claim was filed by a Holder of a Settled Canadian

NAS1883

Patient Claim, such Holder shall have the burden of proving that such Proof of Claim is not in respect of a Settled Canadian Patient Claim that was released and discharged pursuant to the Canadian Patient Claim Settlement Stipulation and such Holder has not received any recovery from the Canadian Patient Settlement Trust on account of such Claim. No Distributions shall be made on account of any Claims that may constitute Settled Canadian Patient Claims unless and until (x) the Saskatchewan Court of Queen's Bench approves the Canadian Patient Settlement Agreement and all funds in the Canadian Patient Settlement Trust have been distributed to Holders of Settled Canadian Patient Claims in accordance with the Canadian Patient Settlement Agreement or (y) the Saskatchewan Court of Queen's Bench denies the Canadian Patient Settlement Agreement.

(v) **Future PI Claims Channeling:** As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Future PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Futures Trust. Each Future PI Channeled Claim shall be asserted exclusively against the PI Futures Trust and resolved solely in accordance with the terms, provisions and procedures of the PI Futures TDP. The sole recourse of any Person on account of any Future PI Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the PI Futures Trust as and to the extent provided in the PI Futures TDP. Holders of Future PI Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Future PI Channeled Claims exclusively against the PI Futures Trust, solely as and to the extent provided in the PI Futures TDP.

## 11. *Avrio General Unsecured Claims (Class 11(a))*

(i) **Treatment**: Except to the extent a Holder of an Allowed Avrio General Unsecured Claim and Avrio Health L.P. agree to different treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Avrio General Unsecured Claim shall receive, on account of such Allowed Claim, payment in full in Cash.

(ii) **Impairment and Voting**: Avrio General Unsecured Claims are Unimpaired. Holders of Avrio General Unsecured Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Avrio General Unsecured Claims are not

NAS1884

entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.

**12.** ***Adlon General Unsecured Claims (Class 11(b))***

(i) **Treatment**: Except to the extent a Holder of an Allowed Adlon General Unsecured Claim and Adlon Therapeutics L.P. agree to different treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Adlon General Unsecured Claim shall receive, on account of such Allowed Claim, payment in full in Cash.

(ii) **Impairment and Voting**: Adlon General Unsecured Claims are Unimpaired. Holders of Adlon General Unsecured Claims are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Adlon General Unsecured Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited.

**13.** ***Other General Unsecured Claims (Class 11(c))***

(i) **Treatment**: All Other General Unsecured Claims are Disputed. Except to the extent a Holder of an Allowed Other General Unsecured Claim and the Debtor against which such Claim is asserted agree to different treatment, after the Effective Date upon the Allowance of such Claim in accordance with Article VII of the Plan, each Holder of an Allowed Other General Unsecured Claim shall receive, on account of such Allowed Claim, such Holder's Pro Rata Share of the Other General Unsecured Claim Cash, up to payment in full of such Allowed Claim.

(ii) **Impairment and Voting**: Other General Unsecured Claims are Impaired. Holders of Other General Unsecured Claims are entitled to vote to accept or reject the Plan.

**14.** ***Intercompany Claims (Class 12)***

(i) **Treatment**: Except as otherwise provided in the NewCo Transfer Agreement or the Restructuring Steps Memorandum, on or after the Effective Date, Intercompany Claims shall be, (x) in the case of Intercompany Claims held by a Liquidating Debtor against another Liquidating Debtor, at the discretion of the Debtors (or the Plan Administration Trustee, as applicable), (y) in the case of Intercompany Claims held by a Transferred Debtor against another Transferred Debtor, at the discretion of NewCo and (z) otherwise, at the discretion of the Debtors (or the Plan Administration Trustee, as applicable) with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties:

a. Reinstated; or

194

NAS1885

b. Compromised and settled or canceled and extinguished with no distribution on account thereof.

(ii) **Impairment and Voting**: Intercompany Claims are either Unimpaired or Impaired with no distribution on account thereof. Holders of Intercompany Claims are either conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Claims.

### 15. Shareholder Claims (Class 13)

(i) **Treatment**: Holders of Shareholder Claims shall not receive or retain any property on account of such Claims. As of the Effective Date, in accordance with the terms of and except as otherwise expressly provided in the Shareholder Settlement, all Shareholder Claims shall automatically, and without further act, deed or court order, be deemed to have been released without any distribution on account thereof, and such Claims shall be of no further force or effect.

(ii) **Impairment and Voting**: Shareholder Claims are Impaired. Holders of Shareholder Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Shareholder Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Shareholder Claims.[149]

### 16. Co-Defendant Claims (Class 14)

(i) **Treatment**: All Co-Defendant Claims are Disputed and the Debtors shall seek Disallowance of such Claims pursuant to a separate motion to be filed by the Debtors with the Bankruptcy Court. If any Co-Defendant Claim is ultimately Allowed, such Claim shall be subordinated pursuant to the Plan and section 509(c) and/or section 510 of the Bankruptcy Code.[150] As a result of such subordination or Disallowance, Holders of Co-Defendant Claims shall not receive or retain any property on account of such Claims. As of the Effective Date, all Co-Defendant Claims shall be released in accordance with Section 8.4 of the Plan or otherwise deemed expunged, released and extinguished without further action by or order of

---

[149] Although Holders of Shareholder Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code, the Shareholder Payment Parties, in all capacities (including as Holders of Claims), have agreed to support the Plan pursuant to the Shareholder Settlement Agreement.

[150] Any effort or request to reduce, disallow, estimate or subordinate any Co-Defendant Claim must be initiated by filing a separate objection or motion and comply with Paragraph 5 of the *Amended Order Granting Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [D.I. 2894].

NAS1886

the Bankruptcy Court with no distribution on account thereof, and shall be of no further force or effect. To the extent necessary, the Confirmation Order shall contain findings supporting the conclusions providing for such subordination of such Claims for the purposes of Distribution on the terms set forth in <u>Section 4.16</u> of the Plan. Subject to the Solicitations Procedure Order, each Holder of a Co-Defendant Claim shall be provided a notice informing each such Holder of the proposed treatment of such Claim under the Plan, and affording such Holder the opportunity to object to such treatment or to the subordination of such Claim.

(ii)   **Impairment and Voting**: Co-Defendant Claims are Impaired. Holders of Co-Defendant Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Co-Defendant Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Co-Defendant Claims.

17.   *Other Subordinated Claims (Class 15)*

(i)   **Treatment**: Other Subordinated Claims are subordinated pursuant to the Plan and section 509(c) and/or 510 of the Bankruptcy Code and/or other applicable law. Holders of Other Subordinated Claims shall not receive or retain any property under the Plan on account of such Claims. As of the Effective Date, Other Subordinated Claims shall be deemed expunged, released and extinguished without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(ii)   **Impairment and Voting**: Other Subordinated Claims are Impaired. Holders of Other Subordinated Claims are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Other Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Other Subordinated Claims.

18.   *PPLP Interests (Class 16)*

(i)   **Treatment**: In accordance with the terms of the Shareholder Settlement Agreement, Holders of PPLP Interests shall relinquish such Interests and shall not receive or retain any property under the Plan on account of such Interests. As of the PPLP Dissolution Date, all PPLP Interests shall be deemed surrendered, canceled and/or redeemed without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(ii)   **Impairment and Voting**: PPLP Interests are Impaired. Holders of PPLP Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of PPLP Interests are not entitled to

NAS1887

vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such PPLP Interests.

**19.** **PPI Interests (Class 17)**

(i) **Treatment**: In accordance with the terms of the Shareholder Settlement Agreement, Holders of PPI Interests shall relinquish such Interests and shall not receive or retain any property under the Plan on account of such Interests. As of the Effective Date, PPI Interests shall be deemed surrendered, canceled and/or redeemed without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(ii) **Impairment and Voting**: PPI Interests are Impaired. Holders of PPI Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of PPI Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such PPI Interests.

**20.** **Intercompany Interests (Class 18)**

(i) **Treatment**: Except as otherwise provided in the NewCo Transfer Agreement or the Restructuring Steps Memorandum, on the Effective Date, Intercompany Interests shall be:

a. with respect to Intercompany Interests in any Transferred Debtor held by PPLP, Reinstated and transferred to NewCo (or one of its Subsidiaries) in accordance with the NewCo Transfer Agreement;

b. with respect to Intercompany Interests in any Transferred Debtor held by another Transferred Debtor, Reinstated or otherwise treated in accordance with the NewCo Transfer Agreement; and

c. with respect to Intercompany Interests in any Debtor that is not a Transferred Debtor, Reinstated solely for administrative convenience until canceled when such Debtor is dissolved or merged out of existence by the Plan Administration Trustee.

(ii) **Impairment and Voting**: Intercompany Interests are either Unimpaired or Impaired with no distribution on account thereof. Holders of Intercompany Interests are either conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such Holders will not be solicited with respect to such Intercompany Interests.

**21.** **Debtors' Rights with Respect to Unimpaired Claims**

NAS1888

Except as otherwise provided in the Plan, nothing under the Plan shall affect the rights of the Debtors with respect to an Unimpaired Claim, including all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

## D.    Means for Implementation

### 1.    *Restructuring Transactions*

On or before the Effective Date or as soon as reasonably practicable thereafter, the Debtors may take all actions consistent with the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by or necessary to effectuate the Restructuring Transactions under and in connection with the Plan, including (i) the execution and delivery of all appropriate agreements or other documents of merger, consolidation, sale, restructuring, conversion, disposition, transfer, dissolution or liquidation containing terms that are consistent with the Plan; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any Asset, property, interest, right, liability, debt or obligation on terms consistent with the Plan; (iii) the filing of appropriate certificates or articles of organization, limited partnership, incorporation, reincorporation, merger, consolidation, conversion or dissolution pursuant to applicable law; (iv) the execution, delivery, filing, recordation and issuance of any other documents, instruments or agreements in connection with the Restructuring Transactions and (v) any transactions described in the Restructuring Steps Memorandum.

### 2.    *Plan Settlements*

(i)    As further described in the Disclosure Statement, the provisions of this Plan (including the provisions contained in Section 5.8 of the Plan and the release and injunctive provisions contained in Article X of the Plan) and the other Plan Documents constitute a good faith compromise and settlement of Claims and controversies among the Debtors, the Supporting Claimants, the Shareholder Payment Parties, certain other participants in the Mediation and other parties in interest reached in connection with the Mediation and otherwise, which such compromise and settlement is necessary and integral to the Plan and the Plan Documents and the success of these Chapter 11 Cases. The Debtors, the Supporting Claimants and the Shareholder Payment Parties believe the treatment provided in respect of Claims against and Interests in the Debtors and the treatment of competing Classes of Claims is fair and appropriate only when combined with the distribution scheme, including without limitation all Distributions to be made under the Plan, and the release, injunction and all other provisions contained in the Plan, all of which are material aspects of the Plan. More than 614,000 Proofs of Claim alleging liability arising out of or in connection with Opioid-Related Activities were filed against the Debtors by the General Bar Date. Approximately 10% of the submitted Proofs of Claim allege a specific amount of liability. The aggregate alleged liability associated with these Proofs of Claim is more than $40 trillion (exclusive of one personal injury claim that asserted $100 trillion in alleged liability).

NAS1889

Approximately 90% of Claims alleging liability arising out of or in connection with Opioid-Related Activities do not allege a specific amount of liability. The Debtors believe that any reasonable estimate, projection or valuation of their total liability and obligation to pay for Claims in Classes 3, 4, 5, 6, 7, 8, 9, 10(a) and 10(b), if they had the ability to pay those Claims outside of these Chapter 11 Cases, exceeds by many multiples the total value of all assets of their Estates, including but not limited to contributions from third parties and the full face value of all of Purdue's insurance. The Debtors have structured the Plan on the basis of this understanding, and the Confirmation Order shall include a finding consistent with this understanding.

(ii)    The Plan, including the explanation set forth in the Disclosure Statement, and the Plan Documents shall be deemed a motion to approve the Plan Settlements and the good-faith full and final comprehensive compromise and settlement of all of the Claims, Interests and controversies described in the foregoing Section 5.2(a) pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the Plan Settlements under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that the Plan Settlements are fair, equitable, reasonable and in the best interests of the Debtors and their Estates.

(iii)    The Plan, the Plan Settlement, the Plan Documents and the Confirmation Order constitute a good-faith full and final comprehensive compromise and settlement of all Claims, Interests and controversies described in the Plan based upon the unique circumstances of these Chapter 11 Cases (such as the total distributable value available, the unique facts and circumstances relating to these Debtors and the need for an accelerated resolution without additional avoidable litigation) such that a. none of the foregoing documents (including the provisions contained in Section 5.8 of the Plan), nor any materials used in furtherance of Plan confirmation (including, but not limited to, the Disclosure Statement, and any notes related to, and drafts of, such documents and materials), may be offered into evidence, deemed an admission, used as precedent or used by any party or Person in any context whatsoever beyond the purposes of the Plan, in any other litigation or proceeding, except as necessary, and as admissible in such context, to enforce their terms and to evidence the terms of the Plan and the Plan Documents before the Bankruptcy Court or any other court of competent jurisdiction and b. any obligation by any party, in furtherance of such compromise and settlement, to not exercise rights that might be otherwise available to such party shall be understood to be an obligation solely in connection with this specific compromise and settlement and to be inapplicable in the absence of such compromise and settlement. The Plan, the Plan Settlement, the Plan Documents and the Confirmation Order will be binding as to the matters and issues described therein, but will not be binding with respect to similar matters or issues

NAS1890

that might arise in any other litigation or proceeding in which none of the Debtors or any other Protected Party is a party; *provided* that such litigation or proceeding is not to enforce or evidence the terms of the Plan, the Plan Settlement, the Plan Documents or the Confirmation Order. Any Person's support of, or position or action taken in connection with, the Plan, the Plan Settlement, the Plan Documents and the Confirmation Order may differ from such Person's position or testimony in any other litigation or proceeding not in connection with these Chapter 11 Cases. Further, and, as all parties to the Mediation agreed, the Plan Settlement is not intended to serve as an example for, or represent the parties' respective positions or views concerning, any other chapter 11 cases relating to opioids, nor shall it be used as precedent by any Person or party in any other such chapter 11 cases or in any other proceeding, situation or litigation.

(iv) **Private Entity Settlements.** On the Effective Date, the Private Creditor Trusts shall receive their respective Initial Private Creditor Trust Distributions and their respective MDT Private Claims. The MDT Private Claims shall entitle the Private Creditor Trusts to the payments and other benefits set forth below.

a. The Master Disbursement Trust shall make payments of the MDT Private Claims on each MDT Distribution Date in the amount then due and owing to each Private Creditor Trust. The MDT Private Claims shall be payable by the Master Disbursement Trust in installments in the amounts and on the MDT Distribution Dates set forth below, which installments shall, to the extent applicable, be reduced as a result of prepayments in accordance with Section 5.2(d)(iv) of the Plan:

(1) The MDT Hospital Claim shall be payable in the following installments: (A) $35 million on the first Scheduled MDT Distribution Date, (B) $45 million on July 31, 2023, (C) $45 million on July 31, 2024, (D) $50 million on July 31, 2025 and (E) $50 million on July 31, 2026.

(2) The MDT TPP Claim shall be payable in the following installments: (A) $121 million on the first Scheduled MDT Distribution Date, (B) $121 million on July 31, 2023 and (C) $122 million on July 31, 2024.

(3) The MDT NAS Monitoring Claims shall be payable in the following installments: (A) $24 million on the first Scheduled MDT Distribution Date and (B) $35 million on July 31, 2023.

(4) The MDT PI Claim shall be payable in the following installments: (A) $200 million on July 31, 2024,

200

**NAS1891**

(B) $100 million on July 31, 2025 and (C) $100 million on July 31, 2026. In addition, in the event the aggregate MDT Bermuda-Form Insurance Proceeds (whether received before, on or after July 31, 2026) exceed $400 million, the PI Trust shall be entitled to an incremental payment in the amount of the lesser of (x) the aggregate amount of the MDT Bermuda-Form Insurance Proceeds in excess of $400 million and (y) $50 million (which shall be in addition to, and not in reduction or substitution of, any of the installment payments set forth in the previous sentence), payable within thirty (30) days of receipt of any such MDT Bermuda-Form Insurance Proceeds, in accordance with Section 5.2(d)(iv)(A) of the Plan.

b.   Upon the commencement of an MDT Reserve Period, the MDT Trustees shall provide notice thereof to NewCo, TopCo and each Creditor Trust and shall establish and fund the MDT Claims Reserve in an amount equal to the MDT Claims Reserve Funding Amount. For so long as such MDT Reserve Period is continuing, the MDT Claims Reserve shall remain in place and no TopCo Distributions or Public Creditor Trust Distributions, nor any repayments by the Master Disbursement Trust to NewCo or TopCo, shall be made until the MDT Operating Reserve and the MDT Claims Reserve are fully funded in the amounts required at such time. For the avoidance of doubt, notwithstanding the occurrence and continuation of an MDT Reserve Period, so long as the MDT Operating Reserve and the MDT Claims Reserve are fully funded, the Master Disbursement Trust and TopCo shall continue to make Public Creditor Trust Distributions from MDT Excess Cash and TopCo Excess Cash, respectively, and NewCo shall continue to make TopCo Distributions from NewCo Excess Cash, in each case, solely in accordance with Section 5.2(e) of the Plan.

c.   NewCo shall guarantee the obligations of the Master Disbursement Trust to make payments on account of the MDT Claims in accordance with the Plan, and NewCo and TopCo shall make payments to the Master Disbursement Trust as set forth below in accordance with the NewCo Credit Support Agreement.

(1)   Within five (5) Business Days following the receipt by NewCo from the MDT Trustees of notice of the commencement of an MDT Reserve Period and on each NewCo Distribution Date thereafter, for so long as such MDT Reserve Period is continuing, NewCo shall pay to the Master Disbursement Trust all NewCo Available Cash up to an aggregate amount necessary to ensure that the MDT Operating Reserve and the MDT Claims Reserve are fully

201

NAS1892

funded at the amounts required as of that date. The amounts required to be paid by NewCo to the Master Disbursement Trust under Section 5.2(d)(iii)(A) of the Plan shall be limited to the extent of NewCo Available Cash; *provided* that, in the event there is a deficiency of funding in the MDT Claims Reserve for a period of eighteen (18) months during the continuation of an MDT Reserve Period, the Master Disbursement Trust shall be entitled to accelerate its claims under the NewCo Credit Support Agreement and exercise remedies.

(2)     Irrespective of whether there is an MDT Reserve Period in effect, until the payment in full in Cash of the MDT Claims, TopCo and NewCo shall pay to the Master Disbursement Trust an amount equal to 100% of the MDT Distributable Sale Proceeds within five (5) Business Days after the receipt thereof; *provided* that (A) MDT Distributable Sale Proceeds of less than $10 million (in the aggregate for TopCo and NewCo) shall be carried forward and accumulated and no distributions to the Master Disbursement Trust on account thereof shall be required until the aggregate amount of the accumulated MDT Distributable Sale Proceeds so received following the Effective Date equals or exceeds such amount and (B) the amounts payable to the Master Disbursement Trust under Section 5.2(d)(iii)(B) of the Plan shall not exceed the aggregate outstanding amount owed on account of the MDT Claims (regardless of whether some amounts have yet fallen due). Any non-Cash proceeds in respect of the sale of any Asset of TopCo or any of its Subsidiaries shall be held and not distributed by TopCo or such Subsidiary, as applicable, until the payment in full of the MDT Claims or the disposition of such non-Cash proceeds for Cash; *provided* that the MDT Distributable Sale Proceeds of such non-Cash proceeds shall be subject to Section 5.2(d)(iii)(B) of the Plan. The Master Disbursement Trust shall apply all amounts received under Section 5.2(d)(iii)(B) of the Plan in accordance with Section 5.2(d)(iv)(B) of the Plan.

d.     The Master Disbursement Trust shall make prepayments of the MDT Claims from the amounts and in the manner set forth below.

(1)     MDT Bermuda-Form Insurance Proceeds shall be applied toward the prepayment of remaining installments on the MDT PI Claim (as set forth in Section 5.2(d)(i)(D)(I)–(III) of the Plan) in chronological order by installment payment maturity date until the MDT PI Claim is paid in full and, if

202

any amounts remain, to pay the incremental amounts due to the PI Trust under clauses (x) and (y) of Section 5.2(d)(i)(D) of the Plan, in each case, in the following manner: (A) for the MDT Bermuda-Form Insurance Proceeds received by the Debtors or the Master Disbursement Trust on or prior to the Effective Date, the Debtors or the Master Disbursement Trust shall pay on the Effective Date 100% of such MDT Bermuda-Form Insurance Proceeds to the PI Trust as part of the Initial PI Trust Distribution, subject to Section 5.2(h) of the Plan and (B) for any MDT Bermuda-Form Insurance Proceeds received by the Master Disbursement Trust after the Effective Date, the Master Disbursement Trust shall pay to the PI Trust, subject to Section 5.2(h) of the Plan, 100% of such MDT Bermuda-Form Insurance Proceeds not later than thirty (30) days after the date of receipt thereof by the Master Disbursement Trust (or, if an Escrow Period is then in effect, the next Business Day following the termination thereof).

(2)     If on any date the Master Disbursement Trust receives MDT Distributable Sale Proceeds, then such MDT Distributable Sale Proceeds shall be applied not later than ten (10) Business Days after such date (or, if an Escrow Period is then in effect, the next Business Day following the termination thereof) to prepay any remaining installments of the MDT Claims until paid in full. Such prepayments shall be (A) allocated according to the MDT Distribution Date on which remaining installments of the MDT Claims are due in chronological order of maturity (such that all remaining installments of the MDT Claims due on a particular Scheduled MDT Distribution Date shall be paid in full before any amounts are allocated to installments of the MDT Claims due on any subsequent Scheduled MDT Distribution Date) and (B) applied to the remaining installments of the MDT Claims due on a particular MDT Distribution Date on a pro rata basis according to the proportion that the outstanding amount due on each MDT Claim on such MDT Distribution Date bears to the aggregate outstanding amount due on all MDT Claims on such MDT Distribution Date.

(3)     If on any date the Master Disbursement Trust receives a Shareholder Prepayment, then each Net Prepaid Settlement Amount shall be applied not later than ten (10) Business Days after such date to prepay the remaining installments of the MDT Claims due on the Scheduled MDT Distribution Date that immediately follows the scheduled

203

**NAS1894**

SSA Payment Date of such Net Prepaid Settlement Amount according to each MDT Claim's Proportionate Settlement Prepayment Share of such Net Prepaid Settlement Amount.

(v)    **Non-Federal Public Entity Settlements.** On the Effective Date, NOAT and the Tribe Trust shall receive their respective Initial Public Creditor Trust Distributions, MDT Interests and TopCo Interests. The MDT Interests and the TopCo Interests shall entitle NOAT and the Tribe Trust to the payments and other benefits set forth below.

a.    Subject to <u>Section 5.2(e)(iv)</u> of the Plan, on each MDT Distribution Date, the Master Disbursement Trust shall make Public Creditor Trust Distributions from all MDT Excess Cash in accordance with <u>Section 5.2(e)(iii)</u> of the Plan; *provided* that solely on the MDT Distribution Date occurring on July 31, 2023, if no MDT Reserve Period is then in effect, the MDT Trustees shall have discretion to hold back up to $25 million of MDT Excess Cash only if, and only to the extent, they reasonably believe in good faith, after analyzing expected assets of the Master Disbursement Trust (including on account of the NewCo Credit Support Agreement), that such holdback is necessary to address any expected funding deficiency on the MDT Distribution Date occurring on July 31, 2024.

b.    Subject to <u>Section 5.2(e)(iv)</u> of the Plan, (1) on each NewCo Distribution Date, (A) NewCo shall make a TopCo Distribution from all NewCo Excess Cash and (B) TopCo shall make Public Creditor Trust Distributions from all TopCo Excess Cash in accordance with <u>Section 5.2(e)(iii)</u> of the Plan and (2) upon the receipt by NewCo or TopCo of any repayments from the Master Disbursement Trust pursuant to <u>Section 5.2(f)(i)(D)</u> of the Plan, (A) NewCo shall promptly make a TopCo Distribution from all such repayments and (B) TopCo shall promptly make a Public Creditor Trust Distribution from all such repayments and such TopCo Distributions in accordance with <u>Section 5.2(e)(iii)</u> of the Plan.

c.    All Public Creditor Trust Distributions shall be allocated between NOAT and the Tribe Trust as follows: (1) *first*, until the aggregate amount of Public Creditor Trust Distributions equals $50 million, 100% to the Tribe Trust; (2) *second*, until the aggregate cumulative amount of Public Creditor Trust Distributions equals $1 billion, 100% to NOAT; (3) *third*, until the aggregate cumulative amount of Public Creditor Trust Distributions equals $3 billion, 2.935% to the Tribe Trust and 97.065% to NOAT; (4) *fourth*, until the aggregate cumulative Public Creditor Trust Distributions equals $5 billion, 2.8125% to the Tribe Trust and 97.1875% to NOAT; and

NAS1895

(5) *thereafter*, with respect to all additional Public Creditor Trust Distributions, 3% to the Tribe Trust and 97% to NOAT.

d.  Until the payment in full in Cash of the MDT Claims, all Public Creditor Trust Distributions, other than the Initial Public Creditor Trust Distributions, and all TopCo Distributions shall be made (1) only on the dates set forth in Section 5.2(e)(i) and (ii) of the Plan; (2) only from amounts constituting MDT Excess Cash, NewCo Excess Cash or TopCo Excess Cash, as applicable, and (3) except as set forth in Section 5.2(e)(ii)(B) of the Plan, on no less than ten (10) Business Days' notice to the Private Creditor Trusts and, except for Public Creditor Trust Distributions made by the Master Disbursement Trust, the Master Disbursement Trust; *provided* that, irrespective of such notice, no Public Creditor Trust Distributions or TopCo Distributions shall be made (x) upon the commencement and during the continuation of an MDT Reserve Period unless the MDT Operating Reserve and the MDT Claims Reserve have been fully funded or (y) upon the commencement and during the continuation of an Escrow Period.

(vi) **Priority Waterfalls.**

a.  MDT Priority Waterfall. On each MDT Distribution Date, all Cash and cash equivalents of the Master Disbursement Trust (other than any amounts subject to distribution in accordance with Section 5.2(d)(iv)(A) and (B) of the Plan) shall be applied as follows: (1) *first*, to fund the MDT Operating Reserve in an amount determined by the MDT Trustees; (2) *second*, to pay all outstanding amounts then due or falling due within the next thirty-one (31) days on account of the MDT Claims, including any amounts payable in accordance with Section 5.2(d)(iv)(C) of the Plan; (3) *third*, solely during an MDT Reserve Period, to fund the MDT Claims Reserve in an amount equal to the MDT Claims Reserve Funding Amount as of such date; (4) *fourth*, to NewCo or TopCo, as applicable, for the repayment of the amounts received by the Master Disbursement Trust from NewCo or TopCo pursuant to their respective obligations under the NewCo Credit Support Agreement in accordance with Section 5.2(d)(iii) of the Plan; *provided* that NewCo shall promptly make a TopCo Distribution from all such repayments and TopCo shall promptly make Public Creditor Trust Distributions from all such repayments and such TopCo Distributions; and (5) *fifth*, as Public Creditor Trust Distributions in respect of the MDT Interests.

b.  NewCo Priority Waterfall. On each NewCo Distribution Date, all Cash and cash equivalents of NewCo and its Subsidiaries (other than MDT Distributable Sale Proceeds) shall be applied as follows:

205

NAS1896

(1) *first*, to fund the current payment of or reserve for, all NewCo Operating Expenses that are current, reasonably forecasted or budgeted or included in a reasonable reserve for contingent liabilities, including any amounts required to satisfy any deficiency of funding in the Wind-Up Reserve; (2) *second*, to the Master Disbursement Trust in an amount required to be paid at that time on account of NewCo's obligations under the NewCo Credit Support Agreement in accordance with Section 5.2(d)(iii)(A) of the Plan, if any, including any amounts required to satisfy any shortfall in funding of the MDT Operating Reserve and the MDT Claims Reserve, if applicable; and (3) *third*, as a TopCo Distribution in respect of the NewCo Interest.

c. TopCo Priority Waterfall. On each NewCo Distribution Date, after the receipt by TopCo of any amounts described in Section 5.2(f)(ii)(C) of the Plan (if applicable), all Cash and cash equivalents of TopCo (other than MDT Distributable Sale Proceeds) shall be applied as follows: (1) *first*, to fund the current payment of or reserve for, all TopCo Operating Expenses that are current, reasonably forecasted or budgeted or included in a reasonable reserve for contingent liabilities; and (2) *second*, as Public Creditor Trust Distributions in respect of the TopCo Interests.

(vii) **Shareholder Settlement.** On or before the Effective Date, the Debtors and the Shareholder Payment Parties shall enter into the Shareholder Settlement Agreement. Pursuant to the Shareholder Settlement Agreement and the Plan, in exchange for the release and channeling of the Shareholder Released Claims pursuant to the Shareholder Releases and the Channeling Injunction issued for the benefit of the Shareholder Released Parties as set forth in Sections 10.7 and 10.8 of the Plan and the other agreements set forth in the Shareholder Settlement Agreement, a. the Shareholder Payment Parties shall pay the Shareholder Settlement Amount in the amount, on the dates and pursuant to the terms set forth in the Shareholder Settlement Agreement, b. the Shareholder Claims shall be deemed released on the Effective Date pursuant to Section 4.15 of the Plan, c. the MDT Shareholder Insurance Rights shall be transferred to the Master Disbursement Trust in accordance with Section 5.6(j) of the Plan; d. the Shareholder Payment Parties have agreed to support the Plan and e. the Shareholder Payment Parties have provided the other agreements and consideration set forth in the Shareholder Settlement Agreement, in each case as more fully set forth in, and subject to the terms and conditions of, the Shareholder Settlement Agreement. The Master Disbursement Trust shall distribute all proceeds of the MDT Shareholder Rights, including the Shareholder Settlement Amount, in accordance with the Plan, including Section 5.2(d)–(f) thereof.

NAS1897

(viii) **United States-PI Claimant Medical Expense Claim Settlement**. The United States-PI Claimant Medical Expense Claim Settlement is as follows:

a. On the Effective Date of the Plan, the PI Trust shall be deemed, without further action of the Bankruptcy Court or the PI Trust, to have irrevocably assigned to the United States the PI Trust's right to receive $26 million from the Master Disbursement Trust, which amount shall be paid by the Debtors or the Master Disbursement Trust, as applicable, to the United States in installments equal to 3.7143% of the amounts otherwise distributable to the PI Trust under the Plan in the form of the Initial PI Trust Distribution and payments made on account of the MDT PI Claim, and on the same distribution schedule as such distributions to the PI Trust, until the United States has received payments aggregating to $26 million. For the avoidance of doubt, in no event shall (A) the stated amount of the Initial PI Trust Distribution or the stated amount of the MDT PI Claim be altered in a manner that would reduce the aggregate amount to be paid to the United States pursuant to Section 5.2(h)(i) of the Plan, (B) the aggregate amount paid to the United States pursuant to Section 5.2(h)(i) of the Plan exceed $26 million, or (C) the United States' claim against the Master Disbursement Trust arising from the assignment described in Section 5.2(h)(i) of the Plan be released until the United States has received payments thereof aggregating to $26 million. Should the PI Trust obtain recoveries under the Plan from a source other than the Master Disbursement Trust as a result of litigation following and resulting from either a modification of the MDT Insurer Injunction pursuant to Section 10.10 of the Plan or election by the Master Disbursement Trust of a Shareholder Release Remedy, the PI Trust shall pay over 3.7143% of any such recoveries to the United States until the United States shall have received payments aggregating to $26 million pursuant to the United States-PI Claimant Medical Expense Claim Settlement. The United States shall have the right to enforce the obligations set forth in Section 5.2(h)(i) of the Plan notwithstanding the United States-PI Claimant Medical Expense Claim Releases.

b. Notwithstanding Section 10.19 of the Plan, as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, the PI Trust, each Holder of a PI Claim and, in respect of each of the PI Trust and each Holder of a PI Claim, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such, shall, without any further action by the Bankruptcy Court, be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by each Holder of a United States-PI

207

NAS1898

Claimant Medical Expense Claim of all United States-PI Claimant Medical Expense Claims and all claims and Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the United States-PI Claimant Medical Expense Claim Settlement (other than a claim or Cause of Action to enforce the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, the release set forth in <u>Section 5.2(h)(iii)</u> of the Plan) that each Holder of a United States-PI Claimant Medical Expense Claim has asserted or could assert on its own behalf or on behalf of another Person or party, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), against the PI Trust, a Holder of a PI Claim, Distributions to Holders of PI Claims pursuant to the PI TDP or under the Plan and, in respect of each of the PI Trust and each Holder of a PI Claim, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such; *provided*, *however*, that, if a Holder of a PI Claim commences a legal action against a Holder of a United States-PI Claimant Medical Expense Claim challenging all or any portion of the United States-PI Claimant Medical Expense Claim Settlement, then, from and after the commencement of such legal action, the United States-PI Claimant Medical Expense Claim Release shall be *void ab initio* solely with respect to such Holder of a PI Claim, and the heirs, successors and assigns of such Holder of a PI Claim, in their capacities as such, and not with respect to any other Person or party, including, but not limited to, the PI Trust, counsel to such Holder of a PI Claim and, in respect of each of the PI Trust and such counsel, its respective agents, representatives, heirs, successors and assigns, in their respective capacities as such; provided further that no such legal action against a Holder of a United States-PI Claimant Medical Expense Claim shall impair or reduce the amount that the United States shall receive pursuant to <u>Section 5.2(h)(i)</u> of the Plan. Nothing in <u>Section 5.2(h)(ii)</u> of the Plan creates any rights of a Holder of a PI Claim to sue the United States or any of its agencies, including a Holder of a United States-PI Claimant Medical Expense Claim, and the United States and its agencies reserve all rights and defenses in that regard; and nothing in this paragraph is or shall be deemed a waiver of any applicable sovereign immunity with respect to any legal action against the United States or any of its agencies challenging all or any portion of the United States-PI Claimant Medical Expense Claim Settlement brought by a Holder of a PI Claim or the heirs, successors or assigns of such Holder of a PI Claim, in their capacities as such.

NAS1899

c.      As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Holder of a United States-PI Claimant Medical Expense Claim shall, without any further action by the Bankruptcy Court, be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the PI Trust and its agents, representatives, successors and assigns, in their respective capacities as such, of all claims and Causes of Action based on or relating to, or in any manner arising from, in whole or in part, the United States-PI Claimant Medical Expense  Claim Settlement (other than a claim or Cause of Action to enforce the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, any United States-PI Claimant Medical Expense Claim Release) that the PI Trust has asserted or could assert on its own behalf or on behalf of another Person or party, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), against a Holder of a United States-PI Claimant Medical Expense Claim and, in respect of each Holder of a United States-PI Claimant Medical Expense Claim, its respective agents, representatives, successors and assigns, in their respective capacities as such.

d.      The payments made to the United States pursuant to Section 5.2(h)(i) of the Plan are a prepayment by the PI Trust of amounts that would otherwise be payable by certain Holders of PI Claims to Holders of United States-PI Claimant Medical Expense Claims upon receipt by such Holders of PI Claims of Distributions pursuant to the PI TDP and under the Plan. Such prepayment shall be borne equitably by such Holders of PI Claims in the form of a reduction in the Distributions otherwise payable to such Holders of PI Claims pursuant to the PI TDP.

e.      The United States Department of Defense, Defense Health Agency (in respect of the TRICARE Program) submits to the jurisdiction of the Bankruptcy Court for purposes of the United States-PI Claimant Medical Expense Claim Settlement, including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases.

f.      The United States Department of Health and Human Services, on its own behalf and on behalf of its component agencies, which are the Centers for Medicare & Medicaid Services, the Indian Health Service on behalf of its federally-operated programs; the United States Department of Defense, Defense Health Agency (in respect of the TRICARE Program); and the United States Department of Veterans Affairs submit to the exclusive jurisdiction of the

209

NAS1900

Bankruptcy Court for purposes of any proceeding in respect of the interpretation or enforcement of the United States-PI Claimant Medical Expense Claim Settlement including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases.

3.      *The Plan Administration Trust*

(i)      **Establishment and Purpose of Plan Administration Trust**. On or before the Effective Date, the Debtors shall take all necessary steps to form the Plan Administration Trust in accordance with the Plan and the PAT Agreement. The Plan Administration Trust shall be established for the purposes described in the Plan and any others more fully described in the PAT Agreement, shall have no objective to continue or engage in the conduct of trade or business and shall be subject to the jurisdiction of the Bankruptcy Court. The Plan Administration Trust shall, in each case in accordance with the Plan and the PAT Agreement:

a.      hold, manage, sell and invest the PAT Assets for the benefit of Holders of Allowed Claims (other than Channeled Claims);

b.      administer, process, resolve and liquidate Claims (other than Channeled Claims), including through the prosecution and resolution of objections to Disputed Claims (other than Channeled Claims);

c.      hold and maintain the PAT Reserves and the PAT Distribution Account and maintain the Professional Fee Escrow Account; and

d.      make Distributions to Holders of Allowed Claims (other than Channeled Claims).

(ii)     **Vesting of the PAT Assets in the Plan Administration Trust**. The Plan Administration Trust shall consist of the PAT Assets. On the Effective Date, the PAT Assets shall vest in the Plan Administration Trust, free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind.

(iii)    **Appointment and Role of the Plan Administration Trustee**. The Plan Administration Trustee shall be an existing employee of the Debtors selected by the Debtors in their sole discretion or another individual selected by the Debtors with the consent of the Creditors' Committee and the Governmental Consent Parties (which consent shall not be unreasonably withheld, conditioned or delayed). The identity and compensation of the Plan Administration Trustee shall be disclosed in the Plan Supplement. The appointment of the Plan Administration Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. In accordance with the PAT Agreement, the Plan Administration Trustee shall serve in such capacity

210

NAS1901

through the earlier of (x) the date that the Plan Administration Trust is dissolved in accordance with the PAT Agreement and (y) the date the Plan Administration Trustee resigns, is terminated or is otherwise unable to serve for any reason. In furtherance of and consistent with the purpose of the Plan Administration Trust and the Plan, the Plan Administration Trustee shall:

a.   have the power and authority to perform all functions on behalf of the Plan Administration Trust;

b.   undertake all administrative responsibilities as are provided in the Plan and the PAT Agreement, including filing the final monthly operating report (for the month in which the Effective Date occurs) and all subsequent quarterly operating reports and administering the closure of the Chapter 11 Cases, which reports shall be delivered to the Master Disbursement Trust;

c.   be responsible for all decisions and duties with respect to the Plan Administration Trust and the PAT Assets; and

d.   take such other actions as the Plan Administration Trust determines to be necessary or desirable to carry out the purposes of the Plan.

(iv)   **Funding of the Wind-Up Reserve; Costs and Expenses of the Plan Administration Trust**. On the Effective Date, the Debtors shall establish and fund the Wind-Up Reserve, which shall vest in the Plan Administration Trust and be held and maintained by the Plan Administration Trustee. In the event of any shortfall of funding in the Wind-Up Reserve, NewCo shall be obligated to satisfy any such deficiency (which obligation shall be assumed by NewCo and any successor to NewCo's business). The costs and expenses of the Plan Administration Trust, including the compensation, fees and expenses of the Plan Administration Trustee and its retained professionals, shall be paid out of the Wind-Up Reserve. The Plan Administration Trustee shall be entitled to reasonable compensation, in an amount to be determined by the Debtors, subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditors' Committee and the Governmental Consent Parties, and to retain and reasonably compensate counsel and other professionals, including any professional who represented parties in interest, including the Debtors, in the Chapter 11 Cases, to assist in its duties as Plan Administration Trustee on such terms as the Plan Administration Trustee deems appropriate without Bankruptcy Court approval, subject to the provisions of the PAT Agreement.

(v)   **Attorneys' Fees and Expenses of Directors, Officers, Employees and Agents**. The Plan Administration Trust will promptly reimburse as and

211

**NAS1902**

when incurred the reasonable actual attorneys' fees and related expenses incurred by any current or former director, officer, employee or authorized agent of the Debtors (other than any Sackler Family Member) after the Effective Date and before the sixth (6th) anniversary of the Effective Date in connection with such individual's cooperation with, or in connection with the defense of such individual with respect to, any investigation, prosecution and/or litigation involving conduct relating to the Debtors or the Debtors' business or property or any defense of the Releases or the Channeling Injunction. On or before the Effective Date, the Debtors will establish and fund a segregated account in the amount of $10 million, which shall be held and maintained by the Plan Administration Trustee to fund the foregoing reimbursement obligations. If, at any time, the balance in such segregated account is less than $5 million, NewCo (or, at any time after a sale of all or substantially all Assets of or Interests in NewCo, the Master Disbursement Trust) shall replenish such account so that amounts in the account are not less than $10 million, *provided* that (x) the aggregate amount deposited into the segregated account may not exceed $30 million, and (y) on the sixth (6th) anniversary of the Effective Date, any funds remaining in the segregated account will be released to the Master Disbursement Trust and NewCo's and the Master Disbursement Trust's funding obligations with respect to such account will cease. Notwithstanding the foregoing, the Plan Administration Trust will not reimburse any such amounts incurred by any individual who a. does not provide an appropriate undertaking consistent with the undertakings required for indemnification during the pendency of the Chapter 11 Cases, b. has at any time prior to the Effective Date refused or does at any time after the Effective Date refuse to testify based on a claim of privilege against self-incrimination in any proceeding relating to the Debtors or the Debtors' business or property, or c. is at any time indicted for a felony relating to the Debtors or the Debtors' business or property (*provided*, *however*, that if such individual is found to be not guilty of such felony, then expenses shall be promptly reimbursed).

(vi) **Institution and Maintenance of Legal and Other Proceedings**. As of the date upon which the Plan Administration Trust is established, the Plan Administration Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Plan Administration Trust. Such legal actions and other proceedings shall be limited solely to those required for the purposes of reconciling, administering and defending against Claims (other than Channeled Claims) and the other responsibilities of the Plan Administration Trust. The Plan Administration Trust shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the applicable Plan Administration Trustee. The Plan Administration Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges

NAS1903

incurred subsequent to the date upon which the Plan Administration Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing. For the avoidance of doubt, the Plan Administration Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state corporate law, is appointed as the successor-in-interest to, and representative of, the Debtors and their Estates for the retention, enforcement, settlement or adjustment of Claims against the Debtors (other than the Channeled Claims). For the avoidance of doubt, neither the Plan Administration Trust nor the Plan Administration Trustee shall be vested with the rights to pursue any MDT Insurance Rights or MDT Insurance Collateral.

(vii) **U.S. Federal Income Tax Matters Relating to Plan Administration Trust**. The Plan Administration Trust is intended to be treated as a trust described in IRC sections 661 through 664 and the regulations promulgated thereunder (a "complex trust"). The Plan Administration Trustee shall file (or cause to be filed) such statements, returns, or disclosures relating to the Plan Administration Trust as are required by any Governmental Unit, including IRS Form 1041, IRS Form 1041-ES, and IRS Schedule K-1. The Plan Administration Trustee shall be responsible for payment, out of the PAT Assets, of any taxes imposed on the Plan Administration Trust or the PAT Assets, including estimated and annual U.S. federal income taxes. The Plan Administration Trustee may request an expedited determination of taxes of the Plan Administration Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Plan Administration Trust for all taxable periods through the dissolution of the Plan Administration Trust. Nothing in Section 5.3(g) of the Plan shall be deemed to determine, expand or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

(viii) **Dissolution, Release of Reserves and Residual Value**. The Plan Administration Trust shall be dissolved and the Plan Administration Trustee shall be discharged from its duties with respect to the Plan Administration Trust upon completion of its duties as set forth in the Plan and satisfaction of the purposes of the Plan Administration Trust as set forth in the Plan and the PAT Agreement, which, for the avoidance of doubt, shall be no earlier than the later of a. the PPLP Dissolution Date and b. the date on which (1) all Disputed Claims (other than Channeled Claims) have been resolved, (2) all PAT Assets have been liquidated and (3) all Distributions required to be made by the Plan Administration Trustee under the Plan and the PAT Agreement have been made, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Any Cash or cash equivalents in the Plan Administration Trust remaining upon dissolution of the Plan Administration Trust, including any Surplus Reserve Cash remaining in

NAS1904

the PAT Reserves, shall be distributed in accordance with Section 5.13(c) of the Plan.

(ix) **Exculpation and Indemnification of the Plan Administration Trustee**. To the maximum extent permitted by applicable law, the Plan Administration Trustee shall not have or incur any liability for actions taken or omitted in its capacity as the Plan Administration Trustee, or on behalf of the Plan Administration Trust, except those acts found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence, or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of its actions or inactions in its capacity as the Plan Administration Trustee, or on behalf of the Plan Administration Trust, except for any actions or inactions found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the Plan Administration Trustee shall be satisfied from the Wind-Up Reserve.

4.    *NewCo*

(i) **Establishment and Ownership of NewCo**. On or before the Effective Date, NewCo and any Subsidiaries of NewCo shall be formed in accordance with the Plan and the NewCo Operating Agreement. In accordance with the Public Entity Settlements, upon completion of the Restructuring Transactions, TopCo shall hold the NewCo Interest, representing 100% of the voting and economic Interests in NewCo.

(ii) **Purpose of NewCo**. From and after the Effective Date, NewCo shall operate the NewCo Transferred Assets in accordance with the terms of the NewCo Operating Agreement, and subject to the NewCo Operating Injunction and the NewCo Governance Covenants set forth in the Confirmation Order. NewCo shall be operated in a responsible and sustainable manner, balancing a. the interests of its stakeholders to fund and provide abatement of the opioid crisis, b. effective deployment of its assets to address the opioid crisis and c. the interests of those materially affected by its conduct.

(iii) **Vesting of the NewCo Transferred Assets in NewCo**. On or prior to the Effective Date, pursuant to the Plan and in accordance with the NewCo Transfer Agreement, the NewCo Transferred Assets, including the Initial NewCo Cash, shall be transferred to and vest in NewCo or one or more Subsidiaries of NewCo (other than any NewCo Transferred Assets held by a Transferred Debtor, which shall revest in such Transferred Debtor), in each case free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind, except for NewCo's obligations under the NewCo Credit Support Agreement, NewCo's obligation to satisfy any deficiency of funding in the Wind-Up Reserve (which

214

NAS1905

obligation shall be assumed by NewCo and any successor to NewCo's business) and as otherwise expressly set forth in the NewCo Transfer Agreement. Except as described in the foregoing sentence, NewCo shall have no liability for, and the NewCo Transferred Assets shall vest in NewCo free and clear of, any prepetition and postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date.

(iv) **Appointment of the NewCo Managers**. The board of managers of NewCo will consist of seven (7) NewCo Managers, each with experience in one or more of the following areas: pharmaceuticals, public policy (including public health policy), law enforcement, ethics and compliance, finance, audit, general business and/or corporate governance issues. The initial NewCo Managers shall be disinterested and independent, and shall be selected by the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and pursuant to a selection process that is reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process.[151] The identity of the initial NewCo Managers shall be included in the Plan Supplement. The appointment of the initial NewCo Managers shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.

(v) **NewCo Operating Expenses**. All NewCo Operating Expenses shall be paid by NewCo or its Subsidiaries. On the Effective Date, NewCo shall be funded with the Initial NewCo Cash, which shall vest in NewCo in accordance with Section 5.4(c) of the Plan. For the avoidance of doubt, the NewCo Priority Waterfall shall not limit or restrict the ability of NewCo or its Subsidiaries to pay NewCo Operating Expenses between NewCo Distribution Dates from funds reserved under Section 5.2(f)(ii)(A) of the Plan, generated by the business or otherwise available to NewCo and its Subsidiaries.

(vi) **Identifying Opioid Proceeds**. NewCo shall identify, and report on a publicly available website, the portion of TopCo Distributions that are derived from Opioid Proceeds.

(vii) **NewCo Insurance**. On or prior to the Effective Date, the Debtors shall fund an upfront premium payment from Effective Date Cash to purchase insurance required and appropriate for the business needs of NewCo, including liability and other insurance for NewCo, including without

---

[151] If determined to be necessary by the Governmental Consent Parties, NewCo may retain one or more of the four independent directors on PPLP's Special Committee for a period of time to serve as interim directors of NewCo to allow for a period of transition and onboarding of NewCo Managers.

NAS1906

limitation, product liability insurance and directors' and officers' liability insurance for the NewCo Managers, officers and other authorized agents, in an amount and on terms acceptable to the Debtors and the Governmental Consent Parties.

(viii) **NewCo Operating Injunction and NewCo Governance Covenants**. The Confirmation Order will provide for the issuance of the NewCo Operating Injunction and the NewCo Governance Covenants. At all times from and after the Effective Date, NewCo, and any purchaser of NewCo's opioid business, shall remain subject to the NewCo Operating Injunction and the NewCo Governance Covenants.

(ix) **NewCo Monitor**. The Confirmation Order will provide for the appointment of the NewCo Monitor. The initial NewCo Monitor shall be the Purdue Monitor in place as of the Effective Date or otherwise selected by the Governmental Consent Parties with the consent of the Debtors, and in consultation with the Creditors' Committee. The identity of the NewCo Monitor shall be disclosed in the Plan Supplement. The NewCo Monitor shall be responsible for ensuring that NewCo is in compliance with the NewCo Operating Injunction and the NewCo Governance Covenants. NewCo and its professionals and representatives, including the NewCo Managers, shall cooperate and reasonably respond to requests by the NewCo Monitor in the performance of its responsibilities, including reasonable requests for access to relevant books and records of NewCo. In furtherance of the responsibilities of the NewCo Monitor, the NewCo Monitor shall be authorized to seek relief from the Bankruptcy Court to the extent necessary to carry out its obligations hereunder. The NewCo Monitor shall prepare and publish quarterly reports regarding the matters for which the NewCo Monitor is responsible, including NewCo's compliance with the NewCo Operating Injunction and the NewCo Governance Covenants. All compensation, costs and fees of the NewCo Monitor and any professionals retained by the NewCo Monitor shall constitute NewCo Operating Expenses, and shall be paid by NewCo.

(x) **U.S. Federal Income Tax Matters Relating to NewCo**. The NewCo Managers shall cause NewCo to make a timely election to be treated as a corporation for U.S. federal income tax purposes effective as of the date of its formation by the deadline for making such election (or such later date as to which the IRS has granted an extension for such election) unless the IRS has provided guidance which may be relied upon to the effect that not making such election would not have a material adverse tax effect on NOAT, including by reason of the application of IRC section 115.

(xi) **Exculpation and Indemnification of the NewCo Managers**. To the maximum extent permitted by applicable law, no NewCo Manager shall have or incur any liability for actions taken or omitted in his or her capacity as a NewCo Manager, or on behalf of NewCo, except those acts

216

NAS1907

found by Final Order to be arising out of his or her willful misconduct, bad faith or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all actions or inactions in his or her capacity as a NewCo Manager, or on behalf of NewCo, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith or fraud. Any valid indemnification claim of any NewCo Manager shall be satisfied by NewCo.

5. **TopCo**

(i) **Establishment and Ownership of TopCo**. On or before the Effective Date, TopCo shall be formed in accordance with the terms of the Plan and the TopCo Operating Agreement. In accordance with the Public Entity Settlements, upon completion of the Restructuring Transactions, NOAT shall hold the TopCo NOAT Interest and the Tribe Trust shall hold the TopCo Tribe Interest, collectively representing 100% of the voting and economic Interests in TopCo.

(ii) **Appointment of the TopCo Managers**. The board of managers of TopCo will consist of three (3) TopCo Managers, each of whom shall be disinterested and independent; *provided* that one (but no more than one) Creditor Trustee of NOAT may serve as a TopCo Manager; *provided further* that any action taken by such individual in his or her capacity as TopCo Manager shall not be subject to the fiduciary duties of such individual in his or her capacity as a Creditor Trustee of NOAT. The initial TopCo Managers shall be selected by the Governmental Consent Parties, in consultation with the Debtors and the Creditors' Committee, and pursuant to a selection process that is reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process. The identity of the initial TopCo Managers shall be included in the Plan Supplement. The appointment of the initial TopCo Managers shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date.

(iii) **TopCo Operating Expenses**. TopCo Operating Expenses shall be paid by TopCo.

(iv) **TopCo D&O Insurance and Indemnification**. On or prior to the Effective Date, the Debtors shall fund an upfront premium payment from Effective Date Cash to purchase directors' and officers' liability insurance for the TopCo Managers in an amount and on terms acceptable to the Debtors and the Governmental Consent Parties.

(v) **Distributions from TopCo Free and Clear**. All Public Creditor Trust Distributions made by TopCo shall be made in accordance with the TopCo Priority Waterfall and on no less than ten (10) Business Days' notice to

217

NAS1908

the Master Disbursement Trust and the Private Creditor Trusts, and thereafter shall be free and clear of all claims, Liens or other recourse or encumbrances, and shall not be subject to disgorgement or recoupment by any Person.

(vi) **U.S. Federal Income Tax Matters Relating to TopCo**. TopCo is intended to be treated as a partnership for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes, to the extent applicable. Neither TopCo nor any TopCo Manager shall make an election for TopCo to be classified as other than a partnership pursuant to Treasury Regulations section 301.7701-3.

(vii) **Exculpation and Indemnification of the TopCo Managers**. To the maximum extent permitted by applicable law, no TopCo Manager shall have or incur any liability for actions taken or omitted in his or her capacity as a TopCo Manager, or on behalf of NewCo, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all actions or inactions in his or her capacity as a TopCo Manager, or on behalf of NewCo, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith or fraud. Any valid indemnification claim of any TopCo Manager shall be satisfied by TopCo.

6. *Master Disbursement Trust*

(i) **Establishment and Purpose of the Master Disbursement Trust**. On or before the Effective Date, the Debtors shall take all necessary steps to establish the Master Disbursement Trust in accordance with the Plan and the MDT Agreement. The Master Disbursement Trust shall be established for the purposes described in the Plan and any other purposes more fully described in the MDT Agreement, and shall be subject to the jurisdiction of the Bankruptcy Court. The Master Disbursement Trust shall, in each case in accordance with the Plan and the MDT Agreement:

a. hold, manage, sell, invest and distribute the MDT Transferred Assets for the benefit of the Creditor Trusts in accordance with the Private Entity Settlements and the Public Entity Settlements;

b. enforce, pursue, prosecute, compromise and/or settle the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights, including monitoring and enforcing the Shareholder Settlement Agreement;

c. make payments in satisfaction of the MDT Claims;

NAS1909

    d.    make Public Creditor Trust Distributions from MDT Excess Cash; and

    e.    publish on a publicly available website reports received from the Abatement Trusts regarding the disbursement and use of Abatement Distributions and compliance with Authorized Abatement Purposes.

(ii)    **Vesting of the MDT Transferred Assets in the Master Disbursement Trust**. The corpus of the Master Disbursement Trust shall consist of the MDT Transferred Assets. On the Effective Date, pursuant to the Plan and in accordance with the MDT Agreement, the MDT Transferred Assets shall be transferred to and vest in the Master Disbursement Trust free and clear of all Claims, Interests, Liens, other encumbrances and liabilities of any kind (other than the MDT Claims and MDT Interests); *provided* that, to the extent certain Assets comprising the MDT Transferred Assets are not known or identified as of the Effective Date, such Assets shall automatically, and without further act or deed, be transferred to and vest in the Master Disbursement Trust upon the discovery or identification thereof, including, with respect to the Surplus Reserve Cash, in accordance with Section 5.13(c) of the Plan. The Master Disbursement Trust shall have no liability for, and the MDT Transferred Assets shall vest in the Master Disbursement Trust free and clear of, any prepetition and postpetition Claims, Causes of Action or liabilities of any kind, in each case that have been or could have been asserted against the Debtors, their Estates or their property (including, but not limited to, Claims based on successor liability) based on any acts or omissions prior to the Effective Date, except for the MDT Claims. From and after the Effective Date, all proceeds of the MDT Transferred Assets, including without limitation, amounts paid by Insurance Companies under the MDT Insurance Policies and amounts paid under the Shareholder Settlement Agreement, shall be paid to the Master Disbursement Trust to be applied in accordance with the MDT Priority Waterfall and the MDT Agreement.

(iii)    **Funding of the Master Disbursement Trust**. The Master Disbursement Trust shall be funded with the proceeds of the MDT Transferred Assets and amounts, if applicable, received pursuant to the NewCo Credit Support Agreement.

(iv)    **Appointment and Role of the MDT Trustees**. The board of trustees of the Master Disbursement Trust will consist of three (3) MDT Trustees with relevant experience, including in financial reorganizations. The MDT Trustees shall be disinterested and independent. One (1) initial MDT Trustee shall be selected by the Creditors' Committee and two (2) initial MDT Trustees shall be selected by the Governmental Consent Parties, in each case, in consultation with the Debtors and pursuant to a selection process reasonably acceptable to the Debtors; *provided* that, in each case,

NAS1910

the DOJ shall have the right, in its discretion, to observe such selection process. The identity of the initial MDT Trustees shall be disclosed in the Plan Supplement. The appointment of the initial MDT Trustees shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date. Upon the payment in full in Cash of all MDT Claims, the MDT Trustees may be removed and replaced by NOAT (including with any of the Creditor Trustees of NOAT) in its sole discretion. In furtherance of and consistent with the purpose of the Master Disbursement Trust and the Plan, the MDT Trustees shall:

a.      have the power and authority to perform all functions on behalf of the Master Disbursement Trust;

b.      be responsible for all decisions and duties with respect to the Master Disbursement Trust and the MDT Transferred Assets; and

c.      in all circumstances and at all times, act in a fiduciary capacity for the benefit and in the best interests of the Creditor Trusts, as the beneficiaries of the Master Disbursement Trust, in furtherance of the purpose of the Master Disbursement Trust, and in accordance with the Plan, including Section 5.6(f) of the Plan, and the MDT Agreement.

(v)    **Appointment of the MDT Executive Director**. The MDT Executive Director will be an individual with experience in financial reorganizations. The initial MDT Executive Director shall be selected by the MDT Trustees; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process. The identity of the initial MDT Executive Director shall be disclosed in the Plan Supplement. Removal and replacement of the MDT Executive Director shall be determined by the MDT Trustees as set forth in the MDT Agreement. The MDT Executive Director shall:

a.      carry out the day-to-day operations of the Master Disbursement Trust;

b.      make enforcement, litigation and liquidation recommendations as are reasonably necessary to the MDT Trustees and such other administrative professionals or entities; and

c.      have such other duties and responsibilities as set forth in the MDT Agreement and as may be delegated to him or her by the MDT Trustees in accordance with the MDT Agreement.

(vi)   **Obligations of the MDT Fiduciaries**. The MDT Fiduciaries shall take into account the interests of, and owe fiduciary duties to, each of the Creditor Trusts (including the Private Creditor Trusts and the Public

NAS1911

Creditor Trusts) in making all decisions on behalf of the Master Disbursement Trust. In furtherance thereof:

a.    in the event of a Specified Default (as defined in the Shareholder Settlement Agreement), the MDT Fiduciaries will take into account the remaining rights of the Private Creditor Trusts and the MDT Claims as well as the interests of the Public Creditor Trusts in formulating and exercising appropriate remedies as they relate to the Shareholder Payment Parties and the Shareholder Release Snapback Parties, but shall in all events, to the extent there are obligations remaining to the Private Creditor Trusts upon such default, seek to utilize all other available sources of assets (including by (A) enforcement of the NewCo Credit Support Agreement in accordance with the terms thereof and (B) first utilizing commercially reasonable efforts to pursue a Payment Remedy (as defined in the Shareholder Settlement Agreement) before electing to pursue a Shareholder Release Remedy) to pay all outstanding amounts owed to the Private Creditor Trusts then-due or to be paid in the future from amounts due from such Breaching Shareholder Family Group until such outstanding amounts have been paid in full;

b.    the Master Disbursement Trust shall provide no less than ten (10) Business Days' advance written notice (unless urgent circumstances require less notice) to each Creditor Trust of any material action proposed to be taken in respect of the MDT Shareholder Rights, including any exercise of remedies under the Shareholder Settlement Agreement or the commencement or settlement of any litigation against any Shareholder Payment Party or Shareholder Release Snapback Party;

c.    to the extent there are any disputes raised by any Creditor Trust regarding the operation of the Master Disbursement Trust or the actions of the MDT Fiduciaries (including, without limitation, any failure to give notice of an MDT Reserve Period and any action related to the MDT Shareholder Rights), (1) any Creditor Trustee shall have the right to seek resolution by the Bankruptcy Court of such a dispute, including seeking to enjoin any disputed action by the Master Disbursement Trust, and all MDT Fiduciaries and Creditor Trustees shall have the right to be heard with regard to any such dispute, including by filing objections, declarations, statements in support or other pleadings (including with supporting evidence) or providing witness testimony at any hearing and (2) the Bankruptcy Court shall have exclusive jurisdiction to hear and resolve any such disputes, and shall be authorized to order appropriate relief (subject to the provisions of Section 5.6(f) of the Plan) and make a determination in an expedited manner, and in all

221

NAS1912

events, shall make such a decision within thirty (30) days from the request for relief;

d.    upon the payment in full in Cash of a Private Creditor Trust's MDT Claim, the Master Disbursement Trust shall have no further fiduciary duties to such Private Creditor Trust, and the Creditor Trustees of such Private Creditor Trust shall have no further rights to commence or participate in any action relating to the operations of the Master Disbursement Trust or the actions of the MDT Fiduciaries;

e.    the MDT Fiduciaries shall (1) provide reasonable reporting to each of the Creditor Trusts regarding the MDT Fiduciaries' activities at least every four (4) months (both cumulatively and in the period just ended), including with regard to the MDT Shareholder Rights (or any reporting received), any insurance proceeds, assets (including the value thereof), expenditures, distributions and forward-looking projections (subject to appropriate limitations to be agreed by the Debtors, the Governmental Consent Parties and the Creditors' Committee) and (2) make themselves reasonably available (in addition to holding at least one (1) call every four (4) months for the Creditor Trustees) to answer questions of Creditor Trustees relating to the Master Disbursement Trust's activities;

f.    the MDT Fiduciaries shall be obligated to comply with the terms of the Plan, including Section 5.6(f) of the Plan, and the MDT Agreement; and

g.    in the event of any inconsistency between the terms of Section 5.6(f) of the Plan and any other provision of the Plan or the MDT Agreement, the terms of Section 5.6(f) of the Plan shall govern unless the MDT Trustees and the Creditor Trustees for each of the Creditor Trusts mutually agree.

(vii)    **Assumption of Channeled Claims and Master TDP**. As of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Channeled Claims shall automatically, and without further act, deed or court order, be channeled to and assumed by the Master Disbursement Trust solely for the purpose of effectuating the Master TDP, pursuant to which each Channeled Claim shall either be automatically channeled to and assumed exclusively by a Creditor Trust or otherwise Disallowed and released in full. All Channeled Claims channeled to a Creditor Trust in accordance with the Master TDP shall be administered, liquidated and discharged solely pursuant to, and solely to the extent provided in, the applicable Creditor Trust TDP for such Creditor Trust. Distributions, in accordance with the applicable Creditor Trust TDP, from the Creditor Trust to which a Channeled Claim is channeled, in

NAS1913

accordance with the Master TDP, shall be the sole source of recovery, if any, in respect of such Channeled Claim, and the Holder of such Channeled Claim shall have no other or further recourse to the Protected Parties, including the Master Disbursement Trust. All Channeled Claims that are Disallowed and released and not channeled to a Creditor Trust in accordance with the Master TDP shall have no recourse to any Protected Party, including the Master Disbursement Trust. For the avoidance of doubt, in no event shall any Channeled Claim have any recourse to the Assets of the Master Disbursement Trust. In furtherance of the foregoing, the Master Disbursement Trust, subject to and only to the extent provided in the MDT Documents, shall have all defenses, cross-claims, offsets and recoupments regarding the Channeled Claims that the Debtors, the Released Parties and the Shareholder Released Parties, as applicable, have, or would have had, under applicable law, but solely to the extent consistent with the MDT Documents and the Plan; *provided* that no such Claims, defenses or rights may be asserted against any Protected Party; and *provided further* that all such defenses, cross-claims, offsets and recoupments regarding any Channeled Claim that is channeled to a Creditor Trust in accordance with the Master TDP shall be transferred to such Creditor Trust with such Channeled Claim, at which point, the Master Disbursement Trust shall no longer have such defenses, cross-claims, offsets and recoupments regarding such Channeled Claim. For the avoidance of doubt, nothing in Section 5.6(g) of the Plan shall limit or affect the transfer of the MDT Insurance Rights.

(viii)  **MDT Operating Expenses**. On the Effective Date, the Debtors shall establish and fund the MDT Operating Reserve, which shall vest in the Master Disbursement Trust in accordance with Section 5.6(b) of the Plan and be held and maintained by the MDT Trustees. Periodically, until the dissolution of the Master Disbursement Trust, the MDT Trustees will replenish the MDT Operating Reserve from Cash held or received by the Master Disbursement Trust to the extent deemed necessary by the MDT Trustees to satisfy and pay estimated future MDT Operating Expenses. The MDT Trustees shall create and maintain an annual budget of MDT Operating Expenses, which shall be reviewed by the Creditor Trustees and reasonably acceptable to the Creditor Trustees. All MDT Operating Expenses shall be satisfied and paid from the MDT Operating Reserve. The MDT Trustees and the MDT Executive Director shall be entitled to reasonable compensation and to retain and reasonably compensate counsel and other professionals to assist in the duties of the Master Disbursement Trust on such terms as the MDT Trustees and the MDT Executive Director deem appropriate without Bankruptcy Court approval, subject to the provisions of the MDT Agreement. The initial compensation of the MDT Trustees and the MDT Executive Director shall be reasonably acceptable to the Debtors, the Creditors' Committee and the Governmental Consent Parties, and thereafter shall be subject to the annual budgets prepared by the MDT Trustees.

NAS1914

(ix)    **Transfer of the MDT Insurance Rights**. In furtherance of the transfer of the MDT Transferred Assets to the Master Disbursement Trust and in accordance with the MDT Agreement, on the Effective Date, the Debtors shall irrevocably transfer, grant and assign to the Master Disbursement Trust, and the Master Disbursement Trust shall receive and accept, any and all of the MDT Causes of Action and MDT Insurance Rights. To the extent any Insurance Company would be obligated in respect of any MDT Insurance Policy to pay any Channeled Claim on behalf of one or more of the Debtors, the Debtors shall transfer and assign to the Master Disbursement Trust the right to enforce such Insurance Company's obligation. The foregoing transfer shall be a. free and clear of all Claims, Liens, encumbrances and Causes of Action of any nature whatsoever, b. made to the maximum extent possible under applicable law, c. absolute and without requirement of any further action by the Debtors, the Liquidating Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Bankruptcy Court or any other Person, and d. governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the applicable MDT Insurance Policies. The Master Disbursement Trust shall become liable for and shall satisfy, to the extent required under applicable law, any prospective premiums, deductibles, self-insured retentions and any other amounts arising in any way out of the receipt of payment from an Insurance Company in respect of the MDT Insurance Rights; *provided* that, for the avoidance of doubt, the Master Disbursement Trust will not be required to pay premiums or any other amounts for Purdue Insurance Policies that are not MDT Insurance Policies. The transfer of the MDT Insurance Rights contemplated in <u>Section 5.6(h)</u> of the Plan is not an assignment of any insurance policy itself. The Confirmation Order shall contain findings reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties related to or necessary to preserve all MDT Insurance Rights.

(x)    **Transfer of MDT Shareholder Insurance Rights**. In accordance with the Shareholder Settlement, on the Effective Date, the MDT Shareholder Insurance Rights shall be transferred to the Master Disbursement Trust on terms to be agreed by the Debtors and the Shareholder Payment Parties, the terms of which shall be acceptable to the Creditors' Committee and the Governmental Consent Parties.

(xi)    **Institution and Maintenance of Legal and Other Proceedings**. As of the date upon which the Master Disbursement Trust is established, the Master Disbursement Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of the Master Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. Such legal actions and other proceedings shall be limited solely to those required for the purposes of

NAS1915

satisfying the responsibilities of the Master Disbursement Trust, including in respect of the MDT Causes of Action, the MDT Insurance Rights and the MDT Shareholder Rights. The Master Disbursement Trust shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary or appropriate by the MDT Trustees. The Master Disbursement Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which the Master Disbursement Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing.

(xii) **U.S. Federal Income Tax Matters Relating to the Master Disbursement Trust.** The Master Disbursement Trust is intended to be treated, and shall be reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes, to the extent applicable. All parties (including, without limitation, Holders of Claims against or Interests in the Debtors, the Related Parties of such Holders, the Debtors, the Master Disbursement Trust, the MDT Trustees and the Creditor Trusts) shall report consistently with the foregoing. An MDT Trustee shall be the "administrator," within the meaning of Treasury Regulations section 1.468B-2(k)(3), of the Master Disbursement Trust. The administrator of the Master Disbursement Trust shall be responsible for filing all tax returns of the Master Disbursement Trust and the payment, out of the Assets of the Master Disbursement Trust, of any taxes due by or imposed on the Master Disbursement Trust. The MDT Trustees may request an expedited determination under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Master Disbursement Trust for all taxable periods through the dissolution of the Master Disbursement Trust. Nothing in Section 5.6(k) of the Plan shall be deemed to determine, expand or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code.

(xiii) **Distributions from the Master Disbursement Trust Free and Clear**. All distributions made by the Master Disbursement Trust to the Creditor Trusts shall be made on no less than ten (10) Business Days' notice to all Creditor Trusts, and thereafter shall be free and clear of all Claims, Liens or other recourse or encumbrances, and shall not be subject to attachment, disgorgement or recoupment by any Person. Such distributions to each Creditor Trust shall become the property of such Creditor Trust, and shall be used for the administration (including the payment of Creditor Trust Operating Expenses) of such Creditor Trust, to make Distributions on account of Channeled Claims channeled to such Creditor Trust in accordance with the applicable Creditor Trust TDP and for such other purposes as may be specifically set forth in the applicable Creditor Trust Documents.

225

NAS1916

(xiv) **Dissolution, Release of Reserves and Residual Value**. The Master Disbursement Trust shall be dissolved and the MDT Trustees and the MDT Executive Director shall be discharged from their respective duties with respect to the Master Disbursement Trust upon completion of their duties as set forth in the Plan and the MDT Agreement, which, for the avoidance of doubt, shall be no earlier than the date on which a. all Assets held by the Master Disbursement Trust, including the MDT Transferred Assets, have been liquidated and b. all payments and other distributions required to be made from the Master Disbursement Trust under the Plan and the MDT Agreement have been made, including payment in full in Cash of all MDT Claims, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court. Upon dissolution of the Master Disbursement Trust, any Cash remaining in the MDT Operating Reserve or otherwise held by the Master Disbursement Trust shall be distributed in accordance with the MDT Priority Waterfall and the MDT Agreement.

(xv) **Exculpation and Indemnification of the MDT Trustees and MDT Executive Director**. To the maximum extent permitted by applicable law, each of the MDT Trustees and the MDT Executive Director shall not have or incur any liability for actions taken or omitted in his or her capacity as an MDT Trustee or the MDT Executive Director, or on behalf of the Master Disbursement Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence, or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as an MDT Trustee or the MDT Executive Director, or on behalf of the Master Disbursement Trust, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the MDT Trustees or the MDT Executive Director shall be satisfied from the MDT Operating Reserve.

7. *Creditor Trusts*

(i) **Establishment and Purpose of the Creditor Trusts**. The Confirmation Order shall endorse and direct the establishment of the Creditor Trusts on or prior to the Effective Date in accordance with the terms of the respective Creditor Trust Documents. The Creditor Trusts shall be independent from the Holders of Claims against the Debtors, and shall be subject to the exclusive jurisdiction of the Bankruptcy Court (other than as specifically set forth in the Creditor Trust Documents). The Creditor Trusts shall be established for the purposes described in the Plan and any other purposes more fully described in the Creditor Trust Documents. Each Creditor Trust shall, in each case, in accordance with the Plan, the Confirmation Order and the applicable Creditor Trust Documents:

NAS1917

a. hold, manage and invest all funds and other Assets received by such Creditor Trust from the Debtors, the Master Disbursement Trust and TopCo, as applicable (including, with respect to the Tribe Trust and NOAT, the TopCo Interests and the MDT Interests), in each case, for the benefit of the beneficiaries of such Creditor Trust;

b. hold and maintain the Creditor Trust Operating Reserve of such Creditor Trust; and

c. administer, process, resolve and liquidate Channeled Claims channeled to such Creditor Trust, in each case as provided in the applicable Creditor Trust Documents;

(ii) **Appointment and Role of the Creditor Trustees**. In furtherance of and consistent with the purposes of the Creditor Trusts and the Plan, the Creditor Trustees shall have the power and authority to perform all functions on behalf of the respective Creditor Trusts. The Creditor Trustees shall undertake all administrative responsibilities as are provided in the Plan and the applicable Creditor Trust Documents. The Creditor Trustees shall be responsible for all decisions and duties with respect to the respective Creditor Trusts. In all circumstances, each Creditor Trustee shall be independent and disinterested and shall act in the best interests of the beneficiaries of such Creditor Trust, in furtherance of the purpose of such Creditor Trust and in accordance with the Plan and the applicable Creditor Trust Documents. In accordance with the Creditor Trust Documents, each Creditor Trustee shall serve in such capacity through the earlier of (x) the date that the applicable Creditor Trust is dissolved in accordance with the applicable Creditor Trust Documents and (y) the date such Creditor Trustee resigns, is terminated or is otherwise unable to serve for any reason. The identity of the initial Creditor Trustees shall be disclosed in the Plan Supplement. The initial Creditor Trustees shall be:

a. with respect to NOAT, selected by the Governmental Consent Parties, in consultation with the Debtors and pursuant to a selection process reasonably acceptable to the Debtors; *provided* that the DOJ shall have the right, in its discretion, to observe such selection process;

b. with respect to the Tribe Trust, selected by the Native American Tribe Group with the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied);

c. with respect to each of the following Private Creditor Trusts, selected as follows: (1) with respect to the TPP Trust, the Third-Party Payor Group, and (2) with respect to the NAS Monitoring Trust, the NAS Committee, in each case, with the consent of the

227

NAS1918

Debtors (which consent shall not be unreasonably withheld, delayed or denied);

d.    with respect to the Hospital Trust, the Hon. Thomas L. Hogan (Ret.) or, in the event Judge Hogan becomes unavailable to serve as the Creditor Trustee of the Hospital Trust, selected by the Ad Hoc Group of Hospitals with the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied);

e.    with respect to the PI Trust and the PI Futures Trust, Edgar C. Gentle III or, in the event Edgar C. Gentle III becomes unavailable to serve as the Creditor Trustee of the PI Trust and the PI Futures Trust, selected by the Ad Hoc Group of Individual Victims with the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied); and

f.    with respect to the PI Futures Trust, Edgar C. Gentle III or, in the event Edgar C. Gentle III becomes unavailable to serve as the Creditor Trustee of the PI Futures Trust, selected by the Creditors' Committee with the consent of the Debtors (which consent shall not be unreasonably withheld, delayed or denied).

(iii)    **Abatement Distributions.** Each Abatement Trust shall, in accordance with the Plan, the Confirmation Order and the applicable Creditor Trust TDP for such Abatement Trust, make Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes. The Creditor Trust TDP for each Abatement Trust shall provide that decisions concerning Abatement Distributions made by Abatement Trusts will consider the need to ensure that underserved urban and rural areas, as well as minority communities, receive equitable access to the funds. Any Domestic Governmental Entity entitled to an Abatement Distribution from NOAT that has reached a Statewide Abatement Agreement (as defined in the NOAT TDP) may elect to have such Abatement Distribution, or any portion thereof, paid to the Public Document Repository to the extent (x) set forth in the NOAT TDP and (y) consistent with such Statewide Abatement Agreement.

(iv)    **PI Trust Distributions.** The PI Trust shall, in accordance with the Plan, the Confirmation Order and the PI Trust Documents, make Distributions on account of Allowed PI Channeled Claims to Holders of such Allowed PI Channeled Claims, subject to the PI Trust Deductions and Holdbacks. The PI Trust shall establish the PI Trust NAS Fund and the PI Trust Non-NAS Fund, and shall deposit the NAS PI Portion into the PI Trust NAS Fund and the Non-NAS PI Portion into the PI Trust Non-NAS Fund, in each case, periodically as funds are received by the PI Trust. The PI Trust shall make Distributions on account of Allowed NAS PI Channeled Claims solely from the PI Trust NAS Fund in accordance with the NAS PI

NAS1919

TDP, and shall make Distributions on account of Allowed Non-NAS PI Channeled Claims solely from the PI Trust Non-NAS Fund in accordance with the Non-NAS PI TDP, in each case, subject to the PI Trust Deductions and Holdbacks. The PI Futures Trust shall, in accordance with the Plan, the Confirmation Order and the PI Futures Trust Documents, make Distributions on account of Allowed Future PI Channeled Claims to Holders of such Allowed Future PI Channeled Claims. All amounts remaining in the PI Futures Trust upon the resolution of all Future PI Channeled Claims asserted by Future PI Claimants on or before the sixth (6th) anniversary of the Effective Date shall be deposited in the PI Trust in accordance with the PI Futures Trust Documents. For the avoidance of doubt, no Future PI Channeled Claim shall attach to, be payable from or have any recourse to the PI Trust, and the Creditor Trust Operating Expenses for the PI Futures Trust shall be paid solely from the PI Futures Trust. The Confirmation Order shall provide for the foregoing.

(v) **PI Futures Trust Distributions.** For so long as the PI Futures Trust has assets available to make Distributions to Holders of Allowed Future PI Channeled Claims, the PI Futures Trust shall, in accordance with the Plan, the Confirmation Order and the PI Futures Trust Documents, make Distributions on account of Allowed Future PI Channeled Claims to Holders of such Allowed Future PI Channeled Claims. Any amounts remaining in the PI Futures Trust upon the resolution of all Future PI Channeled Claims asserted against the PI Futures Trust on or before the sixth (6th) anniversary of the Effective Date and the payment of all Creditor Trust Operating Expenses of the PI Futures Trust shall be distributed pursuant to the Confirmation Order and in accordance with the PI Futures Trust Documents. **For the avoidance of doubt, no Future PI Channeled Claim shall be channeled to, attach to, be payable or otherwise compensable from, be eligible to receive a Distribution from, or have any recourse to, the PI Trust or the Assets of the PI Trust, including, but not limited to, the Initial PI Trust Distribution, the MDT PI Claim, any MDT Bermuda-Form Insurance Proceeds, the Creditor Trust Operating Reserve of the PI Trust or any entitlement to, or products, proceeds or profits of, any of the foregoing, prior to the establishment of, during the existence of or following the dissolution of, the PI Futures Trust or at any other time.** The Creditor Trust Operating Expenses of the PI Futures Trust shall be paid solely from the PI Futures Trust. Creditor Trust Operating Expenses of the PI Futures Trust, including any amounts due to the Creditor Trustee of the PI Futures Trust in respect of indemnification and reimbursement as described in Section 5.7(m) of the Plan, shall be paid on an ongoing basis with first priority before any Distributions are made from the PI Futures Trust to Holders of Allowed Future PI Channeled Claims. The Confirmation Order shall provide for the foregoing.

229

NAS1920

(vi) **Rights of the Creditor Trustee for the TPP Trust under the LRP Agreement**. Pursuant to and in accordance with the LRP Agreement, the Creditor Trustee for the TPP Trust shall have the right a. to inquire periodically with the Creditor Trustee for the PI Trust, the claims administrator appointed in respect of the PI Trust and the escrow agent for the TPP LRP Escrow Account as to whether the TPP LRP Escrow Account has been properly funded and payments therefrom are being made to the LRP Participating TPPs as required under the LRP Agreement, and to request evidence of the same and b. to seek entry of an order by the Bankruptcy Court enforcing the LRP Agreement, including the obligations to provide such information and evidence, in the event the Creditor Trustee for the TPP Trust reasonably believes that the TPP LRP Escrow Account has not been properly funded as required by the LRP Agreement, payments have not been made to LRP Participating TPPs as required by the LRP Agreement, and/or any of the Creditor Trustee for the PI Trust, the claims administrator appointed in respect of the PI Trust and the escrow agent for the TPP LRP Escrow Account is not responding to reasonable requests by the Creditor Trustee for the TPP Trust for such information and evidence.

(vii) **Abatement Trust Monitoring and Reporting Obligations.** Each Abatement Trust shall a. monitor the use of funds received by Abatement Distribution recipients in accordance with Authorized Abatement Purposes and b. prepare and deliver to the Master Disbursement Trust for publication annual reports on the disbursement and use of Abatement Distributions from such Abatement Trust and the compliance by Abatement Distribution recipients with the Authorized Abatement Purposes set forth in the applicable Abatement Trust Documents. In addition, NOAT shall (x) ensure that the Master Disbursement Trust and TopCo comply with their respective obligations to NOAT, including the enforcement of rights and agreements for the benefit of NOAT, (y) monitor the financial and other reports received from TopCo, NewCo, the Master Disbursement Trust and the States, and publish such reports on a publicly available website, as appropriate in the reasonable discretion of the Creditor Trustees of NOAT, and (z) prepare or direct the preparation of annual audited financial reports of NOAT to be filed with the Bankruptcy Court, delivered to the States and published on a publicly available website. For the avoidance of doubt, NOAT shall not be required to duplicate any reporting performed by the Master Disbursement Trust.

(viii) **Assumption of Obligations and Liabilities**. In furtherance of the purposes of the Plan and the Creditor Trusts, pursuant to the Master TDP and subject to the applicable Creditor Trust Documents, each Creditor Trust shall a. expressly assume sole and exclusive responsibility and liability for (1) the Channeled Claims channeled to such Creditor Trust in accordance with the Master TDP and (2) all Creditor Trust Operating Expenses of such Creditor Trust and b. have (A) the rights provided to

230

NAS1921

such Creditor Trust in accordance with the Private Entity Settlements and Public Entity Settlements and (B) all defenses, cross-claims, offsets and recoupments regarding such Channeled Claims that the Debtors, the Released Parties and the Shareholder Released Parties, as applicable, have or would have had under applicable law, but solely to the extent consistent with the applicable Creditor Trust Documents and the Plan; *provided* that no such Claims, defenses or rights may be asserted against any Protected Party.

(ix)  **Administration of Channeled Claims and Creditor Trust TDPs.** Pursuant to the Master TDP, a. all Non-Federal Domestic Governmental Channeled Claims will be administered by NOAT and liquidated and discharged in accordance with, and to the extent provided in, the NOAT TDP, b. all Tribe Channeled Claims will be administered by the Tribe Trust and liquidated and discharged in accordance with, and to the extent provided in, the Tribe TDP, c. all Third-Party Payor Channeled Claims will be administered by the TPP Trust and liquidated and discharged in accordance with, and to the extent provided in, the TPP TDP, d. all Hospital Channeled Claims will be administered by the Hospital Trust and liquidated and discharged in accordance with, and to the extent provided in, the Hospital TDP, e. all NAS Monitoring Channeled Claims will be administered by the NAS Monitoring Trust and liquidated and discharged in accordance with, and to the extent provided in, the NAS Monitoring TDP, f. all PI Channeled Claims will be administered by the PI Trust and liquidated and discharged in accordance with, and to the extent provided in, the PI TDP and g. all Future PI Channeled Claims will be administered by the PI Futures Trust and liquidated and discharged in accordance with, and to the extent provided in, the PI Futures TDP. Each of the Creditor Trusts shall be funded in accordance with the Public Entity Settlements and the Private Entity Settlements, as applicable. The Creditor Trustees shall, in accordance with, and to the extent provided in, the applicable Creditor Trust TDPs, (y) determine the eligibility, amount and Allowance (if applicable) of such Channeled Claims; *provided* that, pursuant to the PI TDP and PI Futures TDP, personal injury or wrongful death claims against the Debtors held by claimants who "opt out" of the liquidation procedures of the PI TDP or the PI Futures TDP, as applicable, shall, in accordance with and subject to the terms of the PI TDP or the PI Futures TDP, as applicable, be liquidated in the tort system; and (z) make all determinations with respect to Distributions to be made by the respective Creditor Trustees. The foregoing determinations by the Creditor Trustees shall be final and binding, and shall not be subject to any challenge or review of any kind, by any court or other Person, except as set forth in the Creditor Trust TDPs. Distributions by the Creditor Trusts shall be the sole source of recovery, if any, in respect of Channeled Claims, and Holders of Channeled Claims shall have no other or further recourse to the Protected Parties; *provided* that the foregoing shall not diminish, or otherwise alter, the rights of LRP Participating TPPs under the LRP Agreement.

231

NAS1922

Distributions made by each Abatement Trust shall be exclusively in the form of Abatement Distributions to Authorized Recipients for Authorized Abatement Purposes solely as permitted pursuant to the Creditor Trust TDP for such Abatement Trust.

(x) **Institution and Maintenance of Legal and Other Proceedings.** As of the date upon which each Creditor Trust is established, such Creditor Trust shall be empowered to initiate, prosecute, defend and resolve all legal actions and other proceedings related to any Asset, liability or responsibility of such Creditor Trust. Such legal actions and other proceedings shall be limited solely to those required for purposes of reconciling, administering or defending against the Channeled Claims channeled to such Creditor Trust and for enforcing the rights of such Creditor Trust under the Plan and the Plan Documents (including the rights of the Creditor Trustee for the TPP Trust specifically enumerated in the LRP Agreement). Each Creditor Trust shall be empowered to initiate, prosecute, defend and resolve all such actions in the name of the Debtors or their Estates, in each case if deemed necessary by the applicable Creditor Trustee to fulfill the purposes for which such Creditor Trust was created. Each Creditor Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees and other charges incurred subsequent to the date upon which such Creditor Trust is established arising from, or associated with, any legal action or other proceeding brought pursuant to the foregoing. For the avoidance of doubt, each Creditor Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state corporate law, is appointed as the successor-in-interest to, and representative of, the Debtors and their Estates for the retention, enforcement, settlement or adjustment of the applicable Channeled Claims channeled to such Creditor Trust.

(xi) **Creditor Trust Operating Expenses.** The Creditor Trustees shall be entitled to reasonable compensation and to retain and reasonably compensate counsel and other professionals to assist in their duties without Bankruptcy Court approval, subject to the provisions of the applicable Creditor Trust Documents. Creditor Trust Operating Expenses of each Creditor Trust shall be satisfied and paid from such Creditor Trust's Creditor Trust Operating Reserve in accordance with the applicable Creditor Trust Documents. Periodically, until the dissolution of a Creditor Trust, the applicable Creditor Trustee will replenish the Creditor Trust Operating Reserve from Cash held or received by such Creditor Trust to the extent deemed necessary by such Creditor Trustee to satisfy and pay estimated future Creditor Trust Operating Expenses in accordance with the Creditor Trust Documents.

(xii) **U.S. Federal Income Tax Matters Relating to the Creditor Trusts.** Each Creditor Trust (other than any Tribe Trust entity that is formed as a legal entity other than a trust) is intended to be treated, and shall be

232

NAS1923

reported, as a "qualified settlement fund" for U.S. federal income tax purposes and shall be treated consistently for state and local tax purposes to the extent applicable. All parties (including, without limitation, Holders of Claims against or Interests in the Debtors, the Related Parties of such Holders, the Debtors, the Creditor Trustees, TopCo and the Master Disbursement Trust) will be required to report consistently with the foregoing for all applicable tax reporting purposes. A Creditor Trustee from each relevant Creditor Trust shall be the "administrator" within the meaning of Treasury Regulations section 1.468B-2(k)(3) of the applicable Creditor Trust. The administrator of each such Creditor Trust shall be responsible for filing all tax returns of the applicable Creditor Trust and the payment, out of the assets of such Creditor Trust, of any taxes due by or imposed on such Creditor Trust. Each Creditor Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the applicable Creditor Trust for all taxable periods through the dissolution of such Creditor Trust. Nothing in <u>Section 5.7(l)</u> of the Plan shall be deemed to determine, expand or contract the jurisdiction of the Bankruptcy Court under section 505 of the Bankruptcy Code. Subject to guidance from the IRS, it is intended that NOAT's income shall be treated as exempt from U.S. federal income tax pursuant to IRC section 115, and shall be treated consistently for state and local tax purposes to the extent applicable.

(xiii)   **Exculpation and Indemnification of the Creditor Trustees**. To the maximum extent permitted by applicable law, each of the Creditor Trustees shall not have or incur any liability for actions taken or omitted in his or her capacity as a Creditor Trustee, or on behalf of the applicable Creditor Trust, except those acts found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of his or her actions or inactions in his or her capacity as a Creditor Trustee, or on behalf of the applicable Creditor Trusts, except for any actions or inactions found by Final Order to be arising out of his or her willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of any of the Creditor Trustees shall be satisfied from the respective Creditor Trusts.

(xiv)   **Dissolution of the Creditor Trusts.** Each Creditor Trust shall be dissolved and the applicable Creditor Trustee shall be discharged from its duties with respect to such Creditor Trust upon completion of its duties and the satisfaction of the purposes of the Creditor Trust as set forth in this Plan and the applicable Creditor Trust Documents; *provided*, *however*, that the PI Futures Trust shall be dissolved and the Creditor Trustee of the PI Futures Trust shall be discharged of his or her duties with respect to the PI Futures Trust reasonably promptly following the earlier of a. the distribution of all monies from the PI Futures Trust and b. the resolution of all Future PI Channeled Claims asserted against the PI Futures Trust on or

233

NAS1924

before the sixth (6th) anniversary of the Effective Date and the payment of all Creditor Trust Operating Expenses of the PI Futures Trust.

(xv) **Attorneys' Fees and Costs**

(xvi) **Local Government and Tribe Costs and Expenses**. On the Effective Date, the Local Government and Tribe Costs and Expenses Fund shall be established for the payment of costs and expenses (including attorneys' fees) of Holders of Non-Federal Domestic Governmental Channeled Claims (other than States) and Holders of Tribe Channeled Claims (including any ad hoc group consisting of any of the foregoing), other than amounts paid pursuant to the AHC Reimbursement Agreement Assumption Order and MSGE Group Reimbursement Order. The Local Government and Tribe Costs and Expenses Fund shall be funded in an aggregate amount not to exceed $275 million from periodic distributions of 5.5% of each Public Creditor Trust Distribution. Payments from the Local Government and Tribe Costs and Expenses Fund shall be the exclusive means of payment from the Creditor Trusts for costs and expenses (including attorneys' fees) of any Holder of a Non-Federal Domestic Governmental Channeled Claim (other than a State) or a Holder of a Tribe Channeled Claim (or any ad hoc group consisting of any of the foregoing) or any attorney therefor, other than amounts paid in accordance with the order of the MDL Court establishing the Common Benefit Fund. Except as otherwise agreed in writing by the MSGE Group and the MDL Plaintiffs' Executive Committee, the MSGE Fee Allocation Agreement shall be and remain fully enforceable and shall apply to the Local Government and Tribe Costs and Expenses Fund; *provided* that the costs associated with the arbitration process contemplated under the MSGE Fee Allocation Agreement shall not be paid by the Debtors, their Estates or any Creditor Trust. All modifications of the Local Government and Tribe Costs and Expenses Fund that directly impacts reimbursement of costs and expenses of Holders of Tribe Channeled Claims shall be reasonably acceptable to the Native American Tribe Group.

(xvii) **State Costs and Expenses.** On the Effective Date, the State Costs and Expenses Fund shall be established for the payment of costs and expenses (including attorneys' fees) of the States (including any ad hoc group thereof), other than amounts paid pursuant to the AHC Reimbursement Agreement Assumption Order. The State Costs and Expenses Fund shall be funded in an aggregate amount not to exceed $225 million from periodic distributions of 4.5% of each Public Creditor Trust Distribution. Payments from the State Costs and Expenses Fund shall be the exclusive means of payment from the Creditor Trusts for costs and expenses (including attorneys' fees) of any State (or any ad hoc group thereof) or any attorney therefor, other than amounts paid in accordance with the order of the MDL Court establishing the Common Benefit Fund.

234

NAS1925

(xviii) **Common Benefit Fund Assessments**. On the Effective Date, a Common Benefit Escrow shall be established and funded by assessments of 5% of each Distribution made by the Private Creditor Trusts and 5% of the Truth Initiative Contribution. Such assessments will be paid by each Private Creditor Trust in respect of Distributions made by such Private Creditor Trust and by the Debtors in respect of the Truth Initiative Contribution, in each case, to the Common Benefit Escrow and then, upon its establishment, directly to the Common Benefit Fund established by the MDL Court, on periodic schedules for each Private Creditor Trust acceptable to the Governmental Consent Parties, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the NAS Committee and the Ad Hoc Group of Individual Victims, as applicable. The amounts in the Common Benefit Escrow shall be held in escrow until an order is entered by the MDL Court establishing a Common Benefit Fund, at which time the amounts held by the Common Benefit Escrow and all subsequent assessments of 5% of each Distribution made by the Private Creditor Trusts shall be transferred to and distributed in accordance with the order of the MDL Court establishing the Common Benefit Fund. To the extent a Holder of a Hospital Channeled Claim, a Third-Party Payor Channeled Claim, an NAS Monitoring Channeled Claim, an NAS PI Channeled Claim or a Non-NAS PI Channeled Claim (or any ad hoc group consisting of Holders of any of the foregoing) has retained counsel through a contingency fee arrangement, any contingency fees owed to such contingency counsel payable from Distributions under the Plan shall be reduced by the full amount payable under Section 5.8(c) of the Plan.[152] However, the applicable Holder and its counsel, in their sole discretion, may agree that an amount up to but not exceeding 40% of the amount payable under Section 5.8(c) of the Plan may be applied to the reimbursement of actual costs and expenses incurred by such Holder's counsel, in which case such agreed cost-reimbursement amount shall not reduce the contingency fee amounts payable to such counsel. For the avoidance of doubt, if the Debtors, the Ad Hoc Committee or the MSGE Group agrees to any reduced or less restrictive terms concerning the 5% Common Benefit Fund assessment (or its implementation) provided under any portion of Section 5.8(c) of the Plan (or any portion of Section 5.8 of the Plan) for any of the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the NAS Committee or the Ad Hoc Group of Individual Victims, then such modification shall apply to each of such groups, *mutatis mutandis*.

(xix) **Hospitals Costs and Expenses.** On the Effective Date, the Hospital Attorney Fee Fund shall be established for the payment of attorneys' fees

---

[152] For the avoidance of doubt, any amount payable to counsel to the Ad Hoc Group of Individual Victims on an hourly basis (including incremental amounts in consideration of deferring payment of hourly fees) shall not constitute a "contingency fee," and the agreement in respect thereof shall not constitute a "contingency fee arrangement," in each case for purposes of Section 5.8 of the Plan.

NAS1926

and costs of the Ad Hoc Group of Hospitals with respect to Hospital Channeled Claims. The Hospital Attorney Fee Fund shall be funded with a. 20% of each Abatement Distribution made by the Hospital Trust to Holders of Hospital Channeled Claims that have not retained (or are not part of an ad hoc group that has retained), on or before the General Bar Date as reflected in a timely filed Proof of Claim or representation to the Hospital Trust in accordance with the Hospital TDP, separate counsel through an individual contingency fee arrangement *less* b. the amount of such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund under Section 5.8(c) of the Plan. The Hospital Attorney Fee Fund shall be administered by the Hospital Trust on terms acceptable to the Ad Hoc Group of Hospitals.

(xx) **NAS Monitoring Claimant Costs and Expenses**. On the Effective Date, the NAS Monitoring Attorney Fee Fund shall be established for the payment of attorneys' fees and costs of the NAS Committee with respect to NAS Monitoring Channeled Claims. The NAS Monitoring Attorney Fee Fund shall be funded with a. 20% of each Abatement Distribution made by the NAS Monitoring Trust *less* b. the amount of such Distributions payable to the Common Benefit Escrow and the Common Benefit Fund under Section 5.8(c) of the Plan. Reasonable expert costs incurred by the NAS Committee in the formation of the abatement plan for the NAS Monitoring Trust shall also be paid by the NAS Monitoring Trust, and, for the avoidance of doubt, (x) there shall be no amounts payable to the Common Benefit Escrow or the Common Benefit Fund on account of such cost reimbursements and (y) the 20% limitation on attorneys' fees shall not apply to the foregoing reasonable expert costs. The NAS Monitoring Attorney Fee Fund shall be administered by the NAS Monitoring Trust on terms acceptable to the NAS Committee.

(xxi) **Ratepayer Costs and Expenses**. On the Effective Date, the attorneys' fees of the Ratepayer Mediation Participants shall be paid from a. 20% of the Truth Initiative Contribution *less* b. the amount of the Truth Initiative Contribution payable to the Common Benefit Escrow under Section 5.8(c) of the Plan.

(xxii) **PI Claimant Costs and Expenses**. The Creditor Trustee of the PI Trust shall pay or reimburse, as applicable, the compensation, costs and fees of professionals that represented or advised the Ad Hoc Group of Individual Victims and the NAS Committee in connection with the Chapter 11 Cases, as and to the extent provided in the PI Trust Agreement. Such compensation, costs and fees paid or reimbursed, as applicable, by the PI Trust shall be deducted from Distributions from a. the PI Trust NAS Fund to Holders of Allowed NAS PI Channeled Claims and b. the PI Trust Non-NAS Fund to Holders of Allowed Non-NAS PI Channeled Claims, in each case pursuant to the PI Trust Documents. Nothing in Section 5.8 of the Plan shall impair or otherwise affect any fee contract that is not a

236

**NAS1927**

contingency fee contract between the Ad Hoc Group of Individual Victims and its professionals, or between the NAS Committee and its professionals.

(xxiii) **No Impairment of Contingency Fee Contracts; No Further Assessment**. Except as expressly set forth in Section 5.8 of the Plan, nothing in the Plan shall impair or otherwise affect any contingency fee contract between any Holder of a Claim (or any ad hoc group of Holders of Claims) and such Holder's (or ad hoc group's) counsel. In this regard, the payment of the assessments described in Section 5.8 of the Plan shall be the only payment that such Holders (or their counsel) shall ever have to make to the Common Benefit Fund with respect to amounts distributed under this Plan, and shall not be subject to any further or other common benefit or similar assessments with respect to amounts distributed pursuant to the Plan or payments to attorneys in respect thereof.

## 8.    *Non-Transferability of Distribution Rights*

Any right to receive a Distribution or other payment from the Plan Administration Trust (including any PAT Distribution Account or PAT Reserve), a Creditor Trust or the Master Disbursement Trust (including the MDT Claims Reserve) shall not be evidenced by any certificate, security, receipt or in any other form or manner whatsoever, except on the books and records of the Plan Administration Trust (as maintained by the Plan Administration Trustee), the applicable Creditor Trust (as maintained by the applicable Creditor Trustees) or the Master Disbursement Trust (as maintained by the MDT Trustees), as applicable. Further, any right to receive a Distribution or other payment from the Plan Administration Trust (including any PAT Distribution Account or PAT Reserve), a Creditor Trust or the Master Disbursement Trust (including the MDT Claims Reserve) shall be nontransferable and nonassignable except by will, intestate, succession or operation of law. Any rights to receive a Distribution or other payment from the Plan Administration Trust (including any PAT Distribution Account or PAT Reserve), a Creditor Trust or the Master Disbursement Trust (including the MDT Claims Reserve) shall not constitute "securities" and shall not be registered pursuant to the Securities Act. If it is determined that such rights constitute "securities," the exemption provisions of section 1145(a)(1) of the Bankruptcy Code would be satisfied and such securities would be exempt from registration.

## 9.    *Insurance Neutrality*

Nothing in the Plan, the Plan Documents or the Confirmation Order, including any provision that purports to be preemptory or supervening, shall in any way relate to, or have the effect of, impairing, altering, supplementing, changing expanding, decreasing or modifying (i) the rights or obligations of any of the Insurance Companies or (ii) any rights or obligations of the Debtors arising out of or under any Purdue Insurance Policy.

## 10.    *Transfer of Books and Records; Cooperation; Privilege*

(i)    **Transfer of Books and Records to NewCo and the Plan Administration Trust**. Except with respect to Excluded Assets, all

237

NAS1928

documents, books and records of the Debtors shall be transferred and assigned to NewCo on or prior to the Effective Date pursuant to the NewCo Transfer Agreement; *provided* that, from and after the date of such transfer, the Plan Administration Trustee shall have the right to retain copies of all transferred documents, books and records and NewCo shall permit the Plan Administration Trustee and its counsel and representatives to have full access to such transferred documents, books and records. All documents, books and records of the Debtors that are Excluded Assets shall be transferred and assigned to the Plan Administration Trust; *provided* that, except for the Excluded Privileged Materials, NewCo shall receive copies of all documents, books and records of the Debtors that are Excluded Assets. Any documents transferred under Section 5.11(a) of the Plan that are documents that were produced to the Debtors by Shareholder Released Parties in connection with Purdue Legal Matters shall continue to remain subject to the terms of the Protective Order and any order of the Bankruptcy Court or provision of the Plan affording confidentiality protections to such documents, unless such documents are included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement.

(ii) **Cooperation with the Master Disbursement Trust and the Creditor Trusts**. On the Effective Date or as soon as reasonably practicable thereafter, the Debtors shall transfer and assign, or cause to be transferred and assigned, a. to the MDT Trustees, (1) copies of all MDT Insurance Policies, (2) information and copies of documents, including books and records of the Debtors that reasonably relate to (A) any Claims previously noticed, tendered or submitted or paid by any Insurance Company under the MDT Insurance Policies and (B) any MDT Causes of Action, and (3) other information and copies of all other documents, including books and records of the Debtors that are reasonably necessary to preserve, secure or obtain the benefit of the MDT Insurance Rights, pursue the MDT Causes of Action or liquidate any other MDT Transferred Assets and b. to each Creditor Trust, a copy of the Proofs of Claims for Channeled Claims channeled to such Creditor Trust. Subject to Section 5.11(c) of the Plan, the materials to be provided pursuant to Section 5.11(b) of the Plan include those in the possession of the Debtors' current and former insurance coverage counsel. On and after the Effective Date, the Plan Administration Trustee and NewCo may maintain their respective documents, books and records in accordance with their respective document retention policies set forth in the PAT Agreement and the NewCo Operating Agreement, respectively. Prior to the Effective Date, the Debtors shall use reasonable best efforts to provide the Creditors' Committee and the Governmental Consent Parties reasonable access to current employees and professionals of the Debtors (including insurance brokers) with knowledge concerning the information and documents to be provided to the Master Disbursement Trust under Section 5.11(b) of the Plan, and, after the Effective Date, NewCo shall use best efforts to provide

238

NAS1929

the Master Disbursement Trust reasonable access to employees and professionals of NewCo with knowledge concerning such information and documents and to facilitate access to former employees and professionals of the Debtors (including insurance brokers). The Plan Administration Trustee and NewCo shall respond to reasonable requests of (x) the MDT Trustees for information and documents related to the MDT Insurance Rights, the MDT Causes of Action or otherwise, in each case to the extent reasonably necessary for the administration of the Master Disbursement Trust, and (y) each Creditor Trustee for information and documents relating to the applicable Channeled Claims or otherwise, in each case to the extent reasonably necessary for the administration of the applicable Creditor Trust. In the event of any dispute between the MDT Trustees and NewCo regarding the delivery of information or documents requested pursuant to clause (x) of the foregoing sentence, the MDT Trustees shall have the right to request intervention by the TopCo Managers to resolve any such dispute.

(iii) **Privilege**. The transfer or assignment of information and copies of documents, including books and records, in accordance with Section 5.11 of the Plan, shall not result in the destruction or waiver of any applicable Privileges. On the Effective Date, all Privileges in connection with the information or documents transferred in accordance with Section 5.11 of the Plan shall be transferred to, and vest exclusively in, NewCo, the MDT Trustees, the Plan Administration Trustee and the Creditor Trustees in accordance herewith. Further, with respect to the transfer of Privileges to the MDT Trustees and the Creditor Trustees, such Privileges shall a. be transferred to such MDT Trustees and Creditor Trustees for the purpose of enabling such Persons to perform their respective duties as set forth in the Plan or in the MDT Agreement or the applicable Creditor Trust Documents and for no other reason, b. vest solely in the MDT Trustees and the Creditor Trustees and not in the Master Disbursement Trust or the Creditor Trusts, or any other committee or subcomponent of the Master Disbursement Trust or the Creditor Trusts, or any other Person (including counsel and other professionals) who is (or has been engaged by, represents or has represented) any Holder of a Claim against or Interest in the Debtors or any Person that alleges or may allege a Claim, directly or indirectly, relating to or arising out of the Debtors' Products or operations and c. be preserved and not waived as a result of such transfer. For the avoidance of doubt, any such transfer shall have no effect on any right, Claim or Privilege of any Person other than the Debtors. No information subject to a Privilege shall be disclosed or communicated by the MDT Trustees or the Creditor Trustees (x) to any Person not entitled to receive such information, including for the avoidance of doubt any Person (including counsel and other professionals) who is (or has been engaged by, represents or has represented) any Holder of a Claim against or Interest in the Debtors or any Person that alleges or may allege a Claim, directly or indirectly, relating to or arising out of the Debtors' Products or

NAS1930

operations or (y) for any reason or in any manner other than as necessary for such Persons to perform their respective duties as set forth in the Plan or in the MDT Documents or the applicable Creditor Trust Documents. Notwithstanding the foregoing, nothing herein shall preclude the MDT Trustees from providing information or documents received pursuant to Section 5.11 of the Plan to any Insurance Company as necessary to preserve, secure or obtain the benefit of the MDT Insurance Rights.

### 11. *Public Document Repository*[153]

(i)    **Documents.** On the Effective Date, or as soon as reasonably practicable thereafter, a Public Document Repository shall be established by the Debtors and hosted at an academic institution or library which academic institution or library shall have agreed to, and shall, maintain the Public Document Repository for not less than five (5) years from the date it is established. The Public Document Repository shall be publicly available at an easily identifiable and accessible website. The parameters of the Public Document Repository shall be acceptable to the Debtors, the Creditors' Committee, Governmental Consent Parties and the DOJ, and shall contain at least the documents that will be part of the public document repository that the Debtors have agreed to create and host in connection with the DOJ Resolution. Debtors shall pay for reasonable costs and expenses to gather and transfer documents to the Public Document Repository. For the avoidance of doubt, the Public Document Repository shall not be held or administered by the Master Disbursement Trust or any Creditor Trust.

a.    The Public Document Repository shall contain a copy of the more than 13,000,000 documents (of more than 100,000,000 pages) produced by Debtors during the course of the Purdue Legal Matters and shall include the following documents as produced by Debtors: (1) documents from the Debtors' email system from present and former officers and senior current and former employees in marketing, sales, R&D, legal, compliance, and regulatory; (2) documents that Sackler Family Members sent or received on the Debtors' email system; (3) documents that reflect clinical and pre-clinical research regarding opioids, including research related to safety and effectiveness of opioids; (4) minutes and documents presented to the Purdue Board of Directors; (5) marketing and sales plans for opioid medications; (6) sales call notes; (7) standard operating procedures; (8) suspicious order monitoring data and documents; and (9) reports of concern and ADD files pertaining to prescribers.

---

[153] The terms of the Public Document Repository and the provisions of Section 5.12 of the Plan remain subject to ongoing discussions between the Debtors, the Creditors' Committee, the Governmental Consent Parties and other parties in interest.

NAS1931

b.     The Public Document Repository shall also contain (1) all deposition transcripts taken in the Purdue Legal Matters of the Debtors' current or former employees and board members, together with the exhibits to such depositions; *provided* that, with respect to any depositions taken in the Chapter 11 Cases of the Debtors' former employees and board members who are also Shareholder Released Parties, the inclusion in the Public Document Repository of the transcripts thereof and exhibits thereto (to the extent such exhibits were documents produced by a Shareholder Released Party) shall be subject to the terms set forth in the Shareholder Settlement Agreement; and (2) documents provided to the Special Committee for review.

c.     Communications between the Debtors and the DOJ regarding settlement between 2015 and 2020 shall not be in the Public Document Repository, nor shall any internal documents of the Debtors reflecting such discussions or the strategy for such discussions.

d.     Notwithstanding anything else in the Plan, the Public Document Repository shall not contain or disclose any documents or content of documents that are Privileged, including Privileged documents produced to the DOJ under non-waiver agreements and Privileged documents subject to a clawback by Debtors in the Purdue Legal Matters, or documents that are subject to protections against public disclosure by the Health Insurance Portability and Accountability Act or similar state or federal statute, or reveal the names or email addresses of individual employees or former employees of Debtors. Inadvertent production of Privileged documents to the Public Document Repository does not operate as a waiver of the Privilege and, upon discovery, any Privileged documents must be promptly removed from the Public Document Repository. Notwithstanding anything else in the Plan, any participation in the Public Document Repository by any Shareholder Released Parties shall be on terms and conditions solely set forth in the Shareholder Settlement Agreement.

(ii)   **Disclosure Oversight Special Master.** Immediately after the Effective Date or as soon as reasonably practicable thereafter, the Special Master shall be appointed by the Bankruptcy Court. The Special Master's qualifications shall include former service as a judicial officer, whether as a state or federal judge. No current or former director, officer, employee, or attorney of the Debtors or any Person (including counsel and other professionals) who is (or has been engaged by, represents or has represented) any Holder of a Claim against or Interest in the Debtors or any Person that alleges or may allege a Claim, directly or indirectly, relating to or arising out of the Debtors' Products or operations shall be

241

**NAS1932**

eligible to be appointed as the Special Master or as counsel or staff working under the Special Master, or otherwise oversee or work in any capacity with the Public Document Repository; *provided* that prior work for a member of the Ad Hoc Committee or the MSGE Group that was completed prior to 2015 shall not preclude the appointment of a Special Master. The Special Master's reasonable fees and expenses shall be paid by NewCo. The Special Master shall oversee a program of public disclosure that includes the following:

a. accomplishing prompt, broad, permanent, public disclosure of millions of the Debtors' documents;

b. engaging with survivors, advocates, journalists, scholars and policymakers to ensure that the disclosure program serves the public;

c. coordinating with the host of the Public Document Repository;

d. ensuring protection for information for which protection is required, such as Privileged information, personal health information, personal identifying information, names and email addresses of individual current and former employees of Debtors, and information subject to confidentiality rights of third parties;

e. selecting and overseeing counsel and/or staff, if necessary, to support the duties and functions of the Special Master;

f. coordinating, as appropriate, with the disclosure of documents from other defendants in opioid cases; and

g. ensuring the long-term sustainability and success of the disclosure program.

(iii) **Redaction.** To the extent that the Special Master determines that any otherwise non-Privileged information should be redacted to protect trade secrets, trade secrets shall not include information reflecting opioid sales or promotional strategies, tactics, targeting, or data, or internal communications related to sales or promotion of opioids.

(iv) **Public Reporting.** On each of the first five anniversaries of the Effective Date, the Special Master shall publish a public report describing the activities of the disclosure program and the use of any funds expended.

## 12. *Effective Date Cash; Surplus Reserved Cash*

(i) **Effective Date Fixed Payments.** On the Effective Date, Effective Date Cash shall be used to fund a. the Professional Fee Escrow Account in an amount necessary to satisfy Professional Fee Claims in accordance with

242

NAS1933

Section 2.1(b) of the Plan, b. the Priority Claims Reserve in an amount necessary to satisfy estimated Allowed Administrative Claims (other than Professional Fee Claims and the DOJ Forfeiture Judgment Claim), Allowed Secured Claims and Allowed Priority Claims, c. the Disputed Claims Reserves in accordance with Section 7.1 of the Plan, d. the Disputed Cure Claims Reserve in accordance with Section 8.2(d) of the Plan, e. the Wind-Up Reserve in accordance with Section 5.3(d) of the Plan, f. the MDT Operating Reserve in accordance with Section 5.6(f) of the Plan, g. the Initial NewCo Cash in accordance with Section 5.4(c) of the Plan, h. the applicable PAT Distribution Account in the amounts necessary to make Distributions required in accordance with Article IV of the Plan in respect of Allowed Federal Government Unsecured Claims, Allowed Adlon General Unsecured Claims and Allowed Avrio General Unsecured Claims, each to the extent Allowed as of the Effective Date, i. the Truth Initiative Contribution and the attorneys' fees of the Ratepayer Mediation Participants in satisfaction of Ratepayer Claims in accordance with Section 4.8 of the Plan, j. the Initial Private Creditor Trust Distributions, k. the Initial Tribe Trust Distribution, l. the Initial Federal Government Distribution, m. amounts required to establish the Public Document Repository in accordance with Section 5.12 of the Plan, n. the upfront insurance premium payments and other amounts in accordance with Sections 5.3(e), 5.4(g) and 5.5(d) of the Plan and o. any other amounts required to be paid on the Effective Date pursuant to the Plan. No later than five (5) Business Days prior to the Effective Date, the Debtors shall provide notice to the Creditors' Committee and the Governmental Consent Parties of the then-current estimated amount of Effective Date Cash and all amounts described in Section 5.13(a) of the Plan, and shall promptly notify the Creditors' Committee and the Governmental Consent Parties of any changes to such estimations prior to the Effective Date. Any objection by the Creditors' Committee or the Governmental Consent Parties with respect to the Debtors' proposed amount of funding of any PAT Reserve shall be resolved by the Bankruptcy Court.

(ii) **Initial NOAT Distribution**. On the Effective Date, all Effective Date Cash remaining after the satisfaction of all amounts described in the foregoing paragraph (i) shall be used to make the Initial NOAT Distribution, which is currently estimated to be $225 million. [154] An updated estimate of the Initial NOAT Distribution shall be provided in the Plan Supplement.

(iii) **Surplus Reserved Cash**. Prior to the dissolution of the Plan Administration Trust, the Plan Administration Trustee shall determine, on

---

[154] The final amount of the Initial NOAT Distribution on the Effective Date is subject to adjustment for items outside of the Debtors' control, including but not limited to, potential variability in investment monetization proceeds, higher than forecasted restructuring-related professional fees and cash collateral necessary to secure insurance coverage for NewCo and TopCo.

NAS1934

each six (6)-month anniversary of the Effective Date, whether the amounts available in any PAT Reserve exceed the amounts necessary to satisfy the purpose for which such reserves were established. If the Plan Administration Trustee determines that a surplus exists in any PAT Reserve as of the date of such determination, such Surplus Reserve Cash shall be a. *first*, used to satisfy any funding deficiency in any other PAT Reserve and b. *second*, with respect to any amounts not used to satisfy any such funding deficiency in another PAT Reserve, transferred to the Master Disbursement Trust in accordance with the MDT Agreement. All Cash and cash equivalents of the Plan Administration Trust remaining upon the dissolution of Plan Administration Trust, including any remaining Surplus Reserve Cash in the PAT Reserves, shall be transferred to the Master Disbursement Trust in accordance with the MDT Agreement.

13. ***Corporate Action***

(i) **Dissolution of Boards of the Debtors**. As of the Effective Date, the respective boards of directors and managers, as applicable, of each of the Debtors shall be terminated and dissolved and the members of each of the boards of directors and managers, as applicable, of the Debtors shall be deemed to have resigned.

(ii) **Continued Existence of the Liquidating Debtors**. Each of the Debtors, other than the Transferred Debtors, shall continue to exist as a Liquidating Debtor after the Effective Date in accordance with the laws of the state under which such Debtor was formed and pursuant to its certificate of incorporation, bylaws, articles of formation, operating agreement, and other organizational documents, as applicable, in effect prior to the Effective Date, except to the extent such organizational documents are amended under the Plan, for the limited purposes of liquidating all of the Assets of such Debtor's Estate and making distributions in accordance with the Plan. From and after the Effective Date, except as set forth herein, the Liquidating Debtors a. for all purposes shall be deemed to have withdrawn their business operations from any state in which the Liquidating Debtors were previously conducting, or are registered or licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, b. shall be deemed to have canceled pursuant to the Plan all PPI Interests and, as of the PPLP Dissolution Date, all PPLP Interests, and c. shall not be liable in any manner to any taxing authority for franchise, business, license or similar taxes accruing on or after the Effective Date.

(iii) **Appointment of the PPLP Liquidator as the Sole Representative for the Liquidating Debtors.** On the Effective Date, the PPLP Liquidator shall be appointed as the sole director and sole officer of the Liquidating Debtors, and shall succeed to the powers of the Liquidating Debtors'

244

NAS1935

general partners, directors and officers. From and after the Effective Date, the PPLP Liquidator shall be the sole representative of, and shall act for, the Liquidating Debtors and administer the winding up and dissolution of the Liquidating Debtors. The PPLP Liquidator shall act for the Liquidating Debtors in the same fiduciary capacity as applicable to a board of directors and officers, subject to the provisions hereof (and all certificates of formation, partnership agreements, operating agreements, membership agreements and related documents are deemed amended by the Plan to permit and authorize the same). Any fees and expenses incurred by the PPLP Liquidator shall be paid by the Plan Administration Trustee from the Wind-Up Reserve.

(iv)     **Merger; Dissolution; Consolidation of the Liquidating Debtors**. On or after the date(s) upon which the Plan Administration Trust is established, the Liquidating Debtors or the PPLP Liquidator may, subject to the terms of the Plan, cause any or all of the Liquidating Debtors to be merged into one or more of the Liquidating Debtors, dissolved or otherwise consolidated and engage in any other transaction in furtherance of the Plan. Notwithstanding the foregoing, upon the dissolution of each Liquidating Debtor by the PPLP Liquidator after the completion of the acts required of such Liquidating Debtor pursuant to the Plan, such Liquidating Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of such Liquidating Debtor; *provided*, *however*, that each Liquidating Debtor or the PPLP Liquidator, as applicable, shall file with the office of the Secretary of State, or other appropriate office for the state of its organization, a certificate of cancellation or dissolution.

(v)      **Charter and Bylaws**. To the extent necessary or appropriate, the charters, bylaws and other organizational documents of the Debtors shall be amended, or amended and restated as necessary, in a manner consistent with section 1123(a)(6) of the Bankruptcy Code, if applicable, and the terms of the Plan.

(vi)     **No Further Action**. Each of the matters provided for under the Plan involving the corporate structure of the Debtors or the Plan Administration Trust, or corporate action to be taken by or required of the Debtors, shall, as of the Effective Date, be deemed to have occurred (unless contemplated hereunder to occur after the Effective Date) and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by any Person, including, but not limited to, the Plan Administration Trustee, the PPLP Liquidator, Holders of Claims against or Interests in the Debtors or directors or officers of the Debtors.

(vii)    **Effectuating Documents**. Prior to or after the Effective Date, any appropriate officer of the Debtors or the PPLP Liquidator, as applicable, shall be authorized to execute, deliver, file or record such contracts,

NAS1936

instruments, releases, indentures and other agreements or documents, and to take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

(viii) **Exculpation and Indemnification of the PPLP Liquidator.** To the maximum extent permitted by applicable law, the PPLP Liquidator shall not have or incur any liability for actions taken or omitted in its capacity as the PPLP Liquidator, except those acts found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence, or fraud, and shall be entitled to indemnification and reimbursement for reasonable fees and expenses in defending any and all of its actions or inactions in its capacity as the PPLP Liquidator, except for any actions or inactions found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence or fraud. Any valid indemnification claim of the PPLP Liquidator shall be satisfied from the Wind-Up Reserve.

### 14. *Cancellation of Notes, Interests, Instruments, Certificates and Other Documents*

Except as otherwise provided herein, on and after the Effective Date, all PPLP Interests and PPI Interests and all notes, instruments, certificates, agreements, indentures, mortgages, security documents and other documents evidencing Claims against or Interests in the Debtors or obligations of the Debtors or the Liquidating Debtors, as applicable, thereunder or in any way related to the foregoing shall be deemed canceled, satisfied in full and of no further force or effect without any need for further action or approval of the Bankruptcy Court.

### 15. *Closing of Chapter 11 Cases*

After a Debtor's Estate has been fully administered, the Plan Administration Trustee shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

### E. **Distributions**

#### 1. *Distributions Generally*

Except as otherwise provided in the Plan or the PAT Agreement, all Distributions in respect of Allowed Claims, other than Channeled Claims, shall be made by the Disbursing Agent, or such other Persons designated by the Plan, in accordance with the terms of the Plan, including the Article VI of the Plan. Except with respect to Sections 6.17, 6.20 and 6.21 of the Plan, the Article VI of the Plan shall not apply to Channeled Claims.

#### 2. *Distributions on the Effective Date*

On the Effective Date or as soon as reasonably practicable thereafter, the Disbursing Agent shall make Distributions (i) from the Priority Claims Reserve in respect of Allowed Administrative Claims, Allowed Secured Claims and Allowed Priority Claims, each in an amount and to the extent Allowed as of the Effective Date, and (ii) from the PAT Distribution

246

NAS1937

Account in respect of Allowed Federal Government Unsecured Claims, Allowed Avrio General Unsecured Claims and Allowed Adlon General Unsecured Claims, each in an amount required in accordance with the Article VI of the Plan and solely to the extent Allowed as of the Effective Date.

### 3. Date of Distributions

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 4. Disbursing Agent

The Disbursing Agent shall be deemed to hold all property to be distributed under the Plan in trust for the Persons entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in the property to be distributed under the Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

### 5. Rights and Powers of Disbursing Agent

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments and other documents necessary to perform its duties under the Plan, (ii) make all Distributions contemplated by the Plan, (iii) employ professionals to represent it with respect to its responsibilities and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and the PAT Agreement, and shall have no (x) liability for actions taken in accordance with the Plan and the PAT Agreement or in reliance upon information provided to it in accordance with the Plan or (y) obligation or liability in respect of any Channeled Claims or for Distributions under the Plan to any party who does not hold an Allowed Claim administered by the Plan Administration Trust at the time of Distribution or who does not otherwise comply with the terms of the Plan; *provided*, *however*, that the foregoing shall not affect the liability that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud or criminal conduct of any such Person.

### 6. Expenses of Disbursement Agent

Any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date shall be paid in Cash by the Plan Administration Trustee from the Wind-Up Reserve.

### 7. Delivery of Distributions

NAS1938

Subject to Bankruptcy Rule 9010, the Disbursing Agent shall make all Distributions to any Holder of an Allowed Claim at the address of such Holder (i) as set forth on the Schedules filed with the Bankruptcy Court or (ii) on the books and records of the Debtors or their agents, unless the Disbursing Agent has been notified in writing of a change of address, including, without limitation, by filing of a Proof of Claim by such Holder that contains an address for such Holder that is different than the address of such Holder as set forth in the Schedules or on such books and records of the Debtors.

### 8.     *Undeliverable and Unclaimed Distributions*

In the event that any Distribution to any Holder of an Allowed Claim is returned as undeliverable, no Distribution to such Holder shall be made unless and until the Disbursing Agent has been notified of the then-current address of such Holder, at which time or as soon as reasonably practicable thereafter such Distribution shall be made to such Holder without interest; *provided*, *however*, that all Distributions made by the Disbursing Agent that are unclaimed for a period of six (6) months after the Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall revest in the Plan Administration Trust, and any entitlement of any Holder of any Claims to such Distributions shall be extinguished and forever barred.

### 9.     *Distribution Record Date*

As of the close of business on the Distribution Record Date, the Claims register shall be closed. The Disbursing Agent shall have no obligation to recognize any transfer of any such Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal, for all purposes under the Plan, with only those Holders of record as of the close of business on the Distribution Record Date.

### 10.     *Manner of Payment under Plan*

At the option of the Disbursing Agent, any Cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required or provided in the PAT Agreement.

### 11.     *Minimum Cash Distributions*

The Disbursing Agent shall not be required to make any Distributions of Cash in an amount less than $100, or such lower amount as determined by the Disbursing Agent in accordance with the PAT Agreement, to any Holder of an Allowed Claim; *provided*, *however*, that if any Distribution is not made pursuant to Section 6.11 of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of such Holder's Allowed Claims. The Disbursing Agent shall not be required to make any final Distribution of Cash in an amount less than $25 to any Holder of an Allowed Claim. If the amount of any final Distribution to any Holder of Allowed Claims would be $25 or less, then such Distribution shall be made available for Distribution to all Holders of Allowed Claims in the same Class receiving final Distributions of at least $25.

### 12.     *Setoffs and Recoupment*

248

NAS1939

Subject to <u>Section 2.1</u> and <u>Sections 10.5</u> through <u>10.13</u> of the Plan, the Disbursing Agent may, but shall not be required to, set off against or recoup from any Claim against the Debtors, and from any payments to be made pursuant to the Plan with respect to such Claim, any Claims of any nature whatsoever (to the extent permitted by applicable law) that the Debtors or the Plan Administration Trust, as applicable, may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Plan Administration Trust of any such Claim it may have against such Holder.

### 13.   *Claims Paid or Payable by Third Parties*

The Plan Administration Trustee shall reduce in full a Claim against the Debtors, and such Claim shall be Disallowed without a Claims objection having to be filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from any Person that is not a Debtor. Subject to the last sentence of this paragraph, to the extent a Holder of a Claim against the Debtors receives a Distribution on account of such Claim and receives payment from a Person that is not a Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the Distribution to the Plan Administration Trust to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the Debtors annualized interest at the federal judgment rate on such amount owed for each Business Day after the fourteen (14)-day grace period specified above until the amount is repaid.

### 14.   *Distributions After Effective Date*

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 15.   *No Postpetition Interest and Penalties on Claims*

Unless otherwise provided for in the Plan or the Confirmation Order or required by the Bankruptcy Code, no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date or to penalties on any Claim. Any such interest or penalty component of any such Claims, if Allowed, shall be paid only in accordance with section 726(b) of the Bankruptcy Code.

### 16.   *Allocation of Distributions Between Principal and Interest*

To the extent that any Allowed Claim is based upon any obligation or instrument that is treated for U.S. federal income tax purposes as indebtedness of any Debtor or any other Person and is entitled to accrued but unpaid interest thereon, it is intended, subject to applicable law, that such Distribution shall be allocated first to the principal amount of the Allowed Claim (as determined for U.S. federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Allowed Claim, to accrued but unpaid interest.

### 17.   *No Constructive Receipt*

NAS1940

No Holder of Claims shall be treated as receiving a Distribution for U.S. federal income tax purposes except to the extent such Holder is entitled to receive such Distribution directly under the Plan (or such Distribution is made in satisfaction of an obligation of such Holder). All parties (including, without limitation, Holders of Claims against or Interests in the Debtors, the Related Parties of such Holders, the Debtors, the Master Disbursement Trust, the MDT Trustees and the Creditor Trusts) shall report consistently with the foregoing for U.S. federal income tax purposes.

### 18. *No Distribution in Excess of Amount of Allowed Claim*

Notwithstanding anything to the contrary in the Plan, no Holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim when combined with amounts received by such Holder from other sources.

### 19. *Satisfaction of Claims*

Unless otherwise provided herein, the Distributions and deliveries to be made on account of Allowed Claims under the Plan shall, in the aggregate, be in complete and final satisfaction, settlement and discharge of, and exchange for, such Allowed Claims. The Distributions and deliveries to be made on account of Claims under the Plan shall additionally be in consideration of the release and discharge of any and all Released Claims and Shareholder Released Claims related to or arising from such Claims.

### 20. *Withholding and Reporting Requirements*

(i) **Withholding Rights**. In connection with the Plan, and all instruments or Interests issued in connection therewith and in consideration thereof, any party issuing any instrument or Interest or making any Distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any U.S. federal, state or local or foreign taxing authority, and all Distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements. In the case of a non-Cash Distribution that is subject to withholding, the distributing party may withhold a portion of such distributed property equal in value to the tax required to be withheld, and either a. sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax), or b. pay the withholding tax using its own funds and retain such withheld property. Any amounts withheld pursuant to Section 6.20(a) and properly remitted to the applicable Governmental Unit shall be deemed to have been distributed to, and received by, the applicable recipient for all purposes of the Plan. In the event that any Person issues any instrument or Interest or makes any non-Cash Distribution pursuant to the Plan that is subject to withholding tax and such issuing or distributing party has not sold such withheld property to generate Cash to pay the withholding tax, or paid the withholding tax using its own funds and retained such withheld property

NAS1941

as described above, such issuing or distributing party has the right, but not the obligation, to not make a Distribution until such Holder has made arrangements reasonably satisfactory to such issuing or disbursing party for payment of any such tax obligations, after which such issuing or disbursing party shall return to such Holder the portion of the property previously withheld.

(ii) **Forms.** Any party entitled to receive any Cash or other property under the Plan shall, upon request, deliver to the Disbursing Agent, the Master Disbursement Trust, the applicable Creditor Trust, NewCo, TopCo or such other Person designated by the Plan Administration Trustee (which Person shall subsequently deliver to the Disbursing Agent any applicable IRS Form W-8 or Form W-9 received), as applicable, a properly executed IRS Form W-9 or Form W-8, as applicable, and any other forms or documents reasonably requested by such party, to reduce or eliminate any withholding required by any federal, state, local or foreign taxing authority. If any such request is made by such party in accordance with the foregoing, and the Holder fails to comply before the date that is three hundred sixty-five (365) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Plan Administration Trust, the Master Disbursement Trust, the applicable Creditor Trust, NewCo or TopCo, as applicable, and any Claim with respect to such Distribution shall be discharged and forever barred from assertion against such party or its property.

(iii) **Tax Liability.** Notwithstanding Section 6.20(a) of the Plan, each Holder of a Claim or other Person that receives or is to receive a Distribution pursuant to the Plan shall have the sole and exclusive responsibility for the satisfaction and payment (to the extent not withheld from such Distribution pursuant to Section 6.20(a) of the Plan) of any tax obligations imposed on such Holder by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.

## 21. *Post-Confirmation Claims*

Except as otherwise provided in the applicable Creditor Trust TDP, in the event a Person seeks payment at any time on account of a Channeled Claim as to which no Proof of Claim was filed before the General Bar Date and/or for which no motion seeking leave or order granting leave to file a late Proof of Claim was filed or entered before the Confirmation Date, or as to which no Proof of Claim was required to be filed, such Person shall not be entitled to any payment or distribution on account of such Channeled Claim unless the Bankruptcy Court, by Final Order, first determines that such Person has a Channeled Claim that is or was channeled to a Creditor Trust under the Master TDP and grants such Person leave to assert such Channeled Claim against such Creditor Trust. If such leave is granted, such Person shall be entitled to seek to recover on such Channeled Claim solely from the Creditor Trust to which such Channeled Claim is or was channeled pursuant to the Master TDP, as determined by the Bankruptcy Court, and any such recovery shall be solely in accordance with and to the extent provided in the

NAS1942

Creditor Trust TDP for such Creditor Trust. After the Effective Date, in addition to the Person seeking to assert such Channeled Claim and any Person against which such Channeled Claim is purportedly asserted, only the MDT Trustees, the Creditor Trustees and NewCo shall have standing to participate in any action before the Bankruptcy Court in respect of the foregoing. For the avoidance of doubt, nothing in this paragraph is intended or shall be construed to enlarge, amend or modify the provisions of the Bar Date Order, nor is anything in this paragraph intended to derogate from, modify or amend the terms and conditions of any Creditor Trust TDP or the Master TDP or the rights of any MDT Trustee, Creditor Trustee or claims administrator for any Creditor Trust.

**F.     Procedures for Disputed Claims**

   *1.     Procedures for Disputed Claims Generally*

Except as otherwise provided in the Plan or the PAT Agreement, all Claims against the Debtors that are Disputed as of the Effective Date (other than Channeled Claims) shall be subject to the claims resolution procedures set forth in the Plan, including the <u>Article VII</u> of the Plan. The <u>Article VII</u> of the Plan shall not apply to Channeled Claims.

   *2.     Disputed Claims Reserve*

From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by a Final Order of the Bankruptcy Court, the Plan Administration Trustee shall, consistent with and subject to section 1123(a)(4) of the Bankruptcy Code, with respect to each applicable Class of Claims against the Debtors, retain in the applicable Disputed Claims Reserve for such Class an aggregate amount equal to the Distributions that would have been made to Holders of Disputed Claims of such Class as if such Disputed Claims were Allowed Claims against the Debtors, in each case in an amount equal to the least of (i) the filed amount of such Disputed Claims, (ii) the amount determined, to the extent permitted by the Bankruptcy Code and Bankruptcy Rules, by the Bankruptcy Court for purposes of fixing the amount to be retained for such Disputed Claims and (iii) such other amounts as may be agreed upon by the Holders of such Disputed Claims and the Plan Administration Trustee.

   *3.     Claim Objections*

On or after the Effective Date, except as otherwise provided in the Plan or the PAT Agreement, objections to Claims against the Debtors may be interposed and prosecuted only by the Plan Administration Trustee. Except as otherwise provided in <u>Section 2.1</u> of the Plan with respect to Administrative Claims, any objections to Claims against the Debtors shall be served on the respective Holders of such Claims and filed with the Bankruptcy Court (i) on or before one hundred eighty (180) days following the later of a. the Effective Date and b. the date that a Proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a Holder of such Claim or (ii) on such later date as may be fixed by the Bankruptcy Court.

   *4.     No Distribution Pending Allowance*

NAS1943

Except as otherwise expressly provided in the Plan or the PAT Agreement, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 5.     Estimation of Claims

The Debtors (before the Effective Date) or the Plan Administration Trustee (on or after the Effective Date) may, at any time, request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Disputed Claim that the Bankruptcy Court has jurisdiction to estimate in accordance with the Bankruptcy Code or other applicable law, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates a Disputed Claim, such estimated amount shall constitute either the Allowed amount of such Claim, the amount used to determine the Disputed Claims Reserves or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If such estimated amount constitutes a maximum limitation on such Claim, the Plan Administration Trustee may elect to pursue any supplemental proceeding to object to any ultimate Distribution on account of such Claim.

### 6.     Distribution After Allowance

On the first PAT Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim against a Debtor, the Disbursing Agent shall remit to the respective PAT Distribution Account, for Distribution to the Holder of such Allowed Claim, the Cash or cash equivalents retained in the applicable Disputed Claims Reserve in an amount equal to the amount that would have been distributed to the Holder of such Claim from the Effective Date through and including the PAT Distribution Date if such Claim had been Allowed as of the Effective Date (net of any costs and expenses, including taxes, of the applicable Disputed Claims Reserve).

### 7.     Resolution of Claims

Except as expressly provided in the Plan, the PAT Agreement or any order entered by the Bankruptcy Court before the Effective Date, including the Confirmation Order, the Plan Administration Trustee shall have and retain any and all rights and defenses held by the Debtors with respect to any Claim against the Debtors as of the Petition Date, and shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to such Claims and to compromise, settle or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court. If the Plan Administration Trustee and a Holder of a Disputed Claim are unable to reach a settlement on the Disputed Claim, such Disputed Claim shall be submitted to the Bankruptcy Court for resolution.

### 8.     Property Held in Disputed Claims Reserves

Each Holder of a Disputed Claim that ultimately becomes an Allowed Claim shall have recourse only to the undistributed Cash held in the applicable Disputed Claims Reserve for

NAS1944

satisfaction of the Distributions to which such Holder is entitled under the Plan and the PAT Agreement (net of any costs and expenses, including taxes, of the applicable Disputed Claims Reserve), and not against any Protected Party or any Assets previously distributed on account of any Allowed Claim.

### 9. *Claims Resolution Procedures Cumulative*

All of the objection, estimation, settlement and resolution procedures set forth in the Plan with respect to Claims against the Debtors are intended to be cumulative and not exclusive of one another. Claims against the Debtors may be established and subsequently settled, compromised, withdrawn or resolved in accordance with the Plan by any mechanism approved by the Bankruptcy Court.

### 10. *No Postpetition Interest or Penalties on Disputed Claims*

Unless otherwise specifically provided for in the Plan or the Confirmation Order or required by applicable bankruptcy law, no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date or to any penalties on any Claim. Interest and penalties shall not accrue or be paid upon any Disputed Claim with respect to the period from the Effective Date to the date a Distribution is made thereon, or on and after such Disputed Claim becomes an Allowed Claim.

## G. Executory Contracts and Unexpired Leases

### 1. *Assumption and Rejection of Executory Contracts and Unexpired Leases*

(i)  As of and subject to the occurrence of the Effective Date, all executory contracts and unexpired leases to which any Debtor is a party, as amended pursuant to <u>Section 8.4</u>, shall be deemed assumed by the applicable Debtor and, except with respect to any contract or lease held by a Transferred Debtor, assigned to NewCo or its designee, except for any executory contract or unexpired lease that a. has previously been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, b. is specifically identified on the Schedule of Rejected Contracts, c. is the subject of a separate assumption or rejection motion filed by the Debtors under section 365 of the Bankruptcy Code pending on the Confirmation Date, d. is the subject of a pending Contract Dispute or e. is being otherwise treated pursuant to the Plan. The Debtors reserve the right to modify the treatment of any particular executory contract or unexpired lease pursuant to the Plan. Furthermore, notwithstanding anything to the contrary in the Plan, the Debtors may alter, amend, modify or supplement the Schedule of Rejected Contracts and assume, assume and assign or reject executory contracts and unexpired leases at any time prior to the Effective Date or, with respect to any executory contract or unexpired lease subject to a Contract Dispute that is resolved after the Effective Date, within thirty (30) days following entry of a Final Order of the Bankruptcy Court resolving such Contract Dispute.

NAS1945

(ii)    Subject to the occurrence of the Effective Date, the payment of any applicable Cure Amount and the resolution of any Contract Dispute, the entry of the Confirmation Order shall constitute approval of the rejections, assumptions and assumptions and assignments provided for in the Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code. Unless otherwise indicated herein or provided in a separate order of the Bankruptcy Court, rejections, assumptions and assumptions and assignments of executory contracts and unexpired leases pursuant to the Solicitation Procedures Order and the Plan are effective as of the Effective Date. Each executory contract and unexpired lease assumed pursuant to the Plan or by order of the Bankruptcy Court shall vest in and be fully enforceable by the applicable Debtor or NewCo, in each case in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(iii)    Unless otherwise provided herein (including Section 8.4 of the Plan) or by separate order of the Bankruptcy Court, each executory contract or unexpired lease that is assumed or assumed and assigned shall include any and all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed in an Assumption Notice.

(iv)    Except as otherwise expressly set forth on an Assumption Notice, any contracts, engagement letters, retention agreements, and similar arrangements, in each case between the Debtors and any attorneys, accountants, financial advisors, investment bankers or similar professionals, representatives or advisors, shall not be treated under the Plan as executory contracts subject to assumption, assumption and assignment, or rejection. Counterparties to any such contracts, engagement letters, retention agreements and similar arrangements were required to file Proofs of Claim by the General Bar Date, and any Allowed Claims relating thereto shall be treated as Other General Unsecured Claims or Co-Defendant Claims, as applicable.

2.    *Determination of Contract Disputes and Deemed Consent*

(i)    The Debtors shall serve Assumption Notices in accordance with the Solicitation Procedures Order. If a counterparty to an executory contract or unexpired lease receives an Assumption Notice, but such executory contract or unexpired lease is not listed therein, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

NAS1946

(ii)    Any counterparty to an executory contract or unexpired lease shall have the time prescribed in the Solicitation Procedures Order to object to a. the Cure Amount identified on the Assumption Notice, b. adequate assurance of future performance by the applicable Debtor, NewCo or its assignee (within the meaning of section 365 of the Bankruptcy Code) and c. any other matter pertaining to assumption or assumption and assignment of such executory contract or unexpired lease on the terms set forth in the Plan and such Assumption Notice.

(iii)   To the extent a Contract Dispute is asserted in an objection filed in accordance with the procedures set forth in the Assumption Notice, such Contract Dispute shall be heard by the Bankruptcy Court at the Confirmation Hearing. Following resolution of a Contract Dispute by Final Order of the Bankruptcy Court, the applicable executory contract or unexpired lease shall be deemed assumed or assumed and assigned effective as of the Effective Date, subject to the Debtors' right to reject such executory contract or unexpired lease at any time prior to the Effective Date or, if any Contract Dispute is resolved after the Effective Date, within thirty (30) days following entry of such Final Order of the Bankruptcy Court resolving the applicable Contract Dispute.

(iv)    To the extent a Contract Dispute has not been resolved prior to the Effective Date, the Debtors shall establish the Disputed Cure Claims Reserve. Any amounts in the Disputed Cure Claims Reserve remaining after the resolution of all Disputed Cure Claims and the payment of all Cure Amounts with respect to Allowed Cure Claims for contracts and leases to be assumed or assumed and assigned shall be applied in accordance with Section 5.13(c) of the Plan.

(v)     To the extent an objection is not timely filed and properly served on the Debtors with respect to a Contract Dispute, then the counterparty to the applicable contract or lease shall be deemed to have assented to a. the Cure Amount proposed by the Debtors and b. the assumption or assumption and assignment of such contract or lease on the terms set forth in the Plan and the Assumption Notice, notwithstanding any provision of the applicable contract or lease that (1) prohibits, restricts or conditions the transfer or assignment of such contract or lease or (2) terminates or permits the termination of such contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change in the ownership or control as contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan.

(vi)    With respect to payment of any Cure Amounts or resolution of Contract Disputes, none of the Debtors, the Plan Administration Trustee, NewCo or any Transferred Debtor shall have any obligation to recognize or deal with

NAS1947

any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Cure Claim.

### 3. *Payments Related to Assumption of Contracts and Leases*

(i)     Subject to resolution of any Contract Dispute, any Cure Claim shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Plan Administration Trust from the Priority Claims Reserve or the Disputed Cure Claims Reserve, as applicable, or NewCo in the ordinary course of business upon assumption thereof.

(ii)    Assumption or assumption and assignment of any executory contract or unexpired lease pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption or assumption and assignment. Any Proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person.

### 4. *Co-Defendant Indemnification Provisions*

(i)     In the Assumption Notices, the Debtors shall provide notice to all known counterparties that, except as otherwise provided in the Plan or agreed by any counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee), the Plan shall constitute a. an amendment to each assumed or assumed and assigned contract or lease as necessary to render null and void any and all terms or provisions thereof solely to the extent such terms or provisions create an obligation of any Debtor (or any assignee thereof), or give rise to a right in favor of any non-Debtor under any MDT Insurance Policy, for the indemnification or reimbursement of any Person for costs, losses, damages, fees, expenses or any other amounts whatsoever relating to or arising from any actual or potential opioid-related litigation or dispute, whether accrued or unaccrued, asserted or unasserted, existing or hereinafter arising, based on or relating to, or in any manner arising from, in whole or in part, Opioid-Related Activities or other conduct occurring prior to the Effective Date; and b. an agreement by each counterparty to release the Debtors (and any assignee thereof or successor thereto) and all Insurance Companies from any and all obligations, liabilities, Claims, Causes of Action and other rights of recovery arising under or relating to

NAS1948

such indemnification and reimbursement rights to the extent relating to any conduct occurring prior to the Effective Date, and an agreement by such party to release any and all Co-Defendant Claims held by such party and to channel, in accordance with the Channeling Injunction, all Channeled Claims arising under or relating to such contract, including any such Claims that might otherwise be elevated to administrative status through assumption of such contract or lease. On the Effective Date, (x) all Co-Defendant Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be released and discharged with no consideration on account thereof, and all Proofs of Claim in respect thereof shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person and (y) all Channeled Claims arising under or related to any such assumed or assumed and assigned contract or lease shall be channeled in accordance with the Channeling Injunction. For the avoidance of doubt, unless otherwise agreed by the counterparty to any assumed or assumed and assigned contract or lease, the foregoing shall not release or otherwise modify any term or provision of such contract or lease to the extent of any indemnification or reimbursement rights accruing after the Effective Date for conduct occurring after the Effective Date.

(ii) To the extent an objection to the amendments and releases described in Section 8.4(a) of the Plan is not timely filed and properly served on the Debtors with respect to a contract or lease in accordance with the procedures set forth in the Assumption Notice, a. the counterparty to such contract or lease and all other applicable Persons shall be bound by and deemed to have assented to the terms set forth in Section 8.4(a) of the Plan, including the amendment of such contract or lease as described in Section 8.4(a)(i) of the Plan and the assumption or assumption and assignment of such contract or lease, as so amended, b. except to the extent such contract or lease is included in the Schedule of Rejected Contracts, as of the Effective Date, subject to the consensual resolution of any applicable Contract Dispute by such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee), such contract or lease, solely as amended pursuant to Section 8.4 of the Plan, shall be assumed by the applicable Debtor and, except with respect to any such contract of the Transferred Debtors, assigned to NewCo (or one of its Subsidiaries), and c. as of the Effective Date, such counterparty and all other applicable Persons shall be deemed to have released any and all rights, obligations, liabilities, Claims, Causes of Action and other rights of recovery described in Section 8.4(a)(ii) of the Plan.

(iii) To the extent an objection to the amendment and release described in Section 8.4(a) of the Plan is timely filed and properly served on the Debtors by any counterparty with respect to such counterparty's contract

NAS1949

or lease, and such objection has not been consensually resolved between such counterparty and the Debtors (with the consent (not to be unreasonably withheld, conditioned or delayed) of the Governmental Consent Parties, and after consultation with the Creditors' Committee) prior to the Confirmation Hearing, a. such contract or lease shall be deemed to be rejected, b. any Claims against the Debtors resulting from such rejection shall be classified and treated in accordance with <u>Section 8.5</u> of the Plan and c. all Estate Causes of Action against such counterparty shall be preserved and not released and shall constitute Retained Causes of Action.

(iv) Except to the extent that the Holder of a Co-Defendant Claim otherwise agrees or fails to object to such treatment, the assumption or rejection of a contract or lease with the Holder of a Co-Defendant Claim shall not operate as a release, waiver or discharge of any Co-Defendant Defensive Rights of Co-Defendant Claims.

### 5. *Rejection Claims*

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors herein results in damages to the other party or parties to such contract or lease, any Claim for such damages shall be forever barred and shall not be enforceable against the Debtors or their Estates, properties or interests in property, unless a Proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) days after the entry of the order of the Bankruptcy Court (including the Confirmation Order) authorizing the rejection of such executory contract or unexpired lease. Any such Claim shall be classified in accordance with the classification of Claims set forth in <u>Article III</u> of the Plan, including that any such Claims that constitute Co-Defendant Claims shall be classified as such. The Confirmation Order shall constitute the Bankruptcy Court's authorization of the rejection of all the leases and contracts identified in the Schedule of Rejected Contracts.

### 6. *Compensation and Benefit Plans*

Except with respect to any Benefit Plans for which the Debtors have received approval of the Bankruptcy Court to reject or terminate on or before the Effective Date or that are subject to a pending motion to reject or terminate as of the Confirmation Hearing, all Benefit Plans shall be deemed to be, and shall be treated as, executory contracts under the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code and shall be assumed by applicable Debtors and, unless held by a Transferred Debtor, assigned to NewCo (or one of its Subsidiaries).

### 7. *Purdue Pension Plan*

The Purdue Pension Plan has approximately 3,200 participants. PPLP is the contributing sponsor of the Purdue Pension Plan. The Debtors that are members of the contributing sponsor's controlled-group within the meaning of 29 U.S.C. §§ 1301(a)(13), (14) are jointly and severally liable with respect to the Purdue Pension Plan. Further, any non-debtor members of the

NAS1950

contributing sponsor's controlled-group are also jointly and severally liable with respect to the Purdue Pension Plan.

Upon the Effective Date, NewCo (or one of its Subsidiaries) shall be deemed to have assumed the Purdue Pension Plan and all liabilities and Assets thereunder and shall comply with all applicable statutory provisions of ERISA and the IRC, including, but not limited to, satisfying the minimum funding standards pursuant to 26 U.S.C. §§ 412, 430, and 29 U.S.C. §§ 1082, 1083, paying the PBGC premiums in accordance with 29 U.S.C. §§ 1306 and 1307 and administering the Purdue Pension Plan in accordance with its terms and the provisions of ERISA and the IRC (and NewCo reserves all rights thereunder).

Notwithstanding any provision in the Plan to the contrary, no provision contained in the Plan, the Confirmation Order, the Bankruptcy Code (including section 1141 thereof), or any other document filed in the Debtors' bankruptcy cases shall be construed as discharging, releasing, exculpating or relieving any Person (other than the Liquidating Debtors) from any fiduciary duties or liabilities under Title I of ERISA with respect to the Purdue Pension Plan. PBGC and the Purdue Pension Plan shall not be enjoined or precluded from enforcing such fiduciary duties or liabilities under Title I of ERISA as a result of any of the provisions of the Plan, the Confirmation Order, the Bankruptcy Code or any other document filed in the Debtors' bankruptcy cases. The PBGC and the Debtors agree that all Proofs of Claim filed by the PBGC shall be deemed to be withdrawn, with prejudice, as of the Effective Date.

8.    **Insurance Policies**

(i)    Nothing in the Plan shall terminate or otherwise reduce the coverage under any D&O Insurance Policy with respect to conduct occurring on or prior to the Effective Date, and, after the Effective Date, all directors, officers, managers, authorized agents and employees of the Debtors who served in such capacity at any time prior to the Effective Date shall be entitled to the full benefits of any D&O Insurance Policy for the full term of such policy, including but not limited to the extension of coverage for a period of six (6) years after the end of such policy period, in accordance with the terms thereof, subject to a. any release or assignment of rights by certain Shareholder Released Parties pursuant to the Shareholder Settlement and b. with respect to D&O Insurance Policies that are MDT Insurance Policies, the provisions of paragraph (b) of Section 8.8 of the Plan.

(ii)    After the Effective Date, in consideration of the Releases and Shareholder Releases in favor of each Released Party and Shareholder Released Party that is an individual insured under any MDT Insurance Policy:

a.    each such Released Party or Shareholder Released Party (a) will fully cooperate with the Master Disbursement Trust in connection with the settlement of claims or rights under such MDT Insurance Policy, including but not limited to as set forth in Section 8.8(b)(i) of the Plan, and (b) shall be deemed to consent to the release of any claims or rights held by such Released Party or Shareholder

260

**NAS1951**

Released Party against and under such MDT Insurance Policy in the event that the Master Disbursement Trust has otherwise obtained settlement terms that it deems acceptable in its sole discretion with the same effect as if such Released Party or Shareholder Released Party had executed such settlement agreement, and without further consideration to such Released Party or Shareholder Released Party from the insurance settlement proceeds or otherwise in respect of such settlement;

b.  no such Released Party or Shareholder Released Party (other than a Sackler Family Member) that was a director, officer, manager, authorized agent or employee of the Debtors who served in such capacity at any time prior to the Petition Date shall be entitled to submit a claim under any MDT Insurance Policy for anything other than reimbursement of attorneys' fees and related expenses incurred in connection with such individual's cooperation with, or in connection with the defense of such individual with respect to, any investigation, prosecution and/or litigation involving conduct relating to the Debtors or the Debtors' business or property or any defense of the Releases or the Channeling Injunction; and

c.  no such Shareholder Released Party (other than a current or former director, officer, manager, authorized agent or employee that is not a Sackler Family Member each of whom is subject to paragraph (ii) of <u>Section 8.8(b)</u>) of the Plan  shall be entitled to submit a claim under any MDT Insurance Policy other than in accordance with the Shareholder Settlement.

(iii)  On and after the Effective Date, all Purdue Insurance Policies (other than the MDT Insurance Policies) shall be deemed to be, and shall be treated as, executory contracts under the Plan, and shall be assumed by the applicable Debtor, and shall vest in NewCo, the applicable Transferred Debtor or the Plan Administration Trust, as applicable, in accordance with the NewCo Transfer Agreement and the PAT Agreement and continue in full force and effect in accordance with their respective terms.

## 9.  *Reservation of Rights*

(i)  Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule or other annex to the Plan or in the Plan Supplement, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

(ii)  Except as explicitly provided in the Plan, nothing herein shall waive, excuse, limit, diminish or otherwise alter any of the defenses, Claims,

NAS1952

Causes of Action or other rights of the Debtors under any executory or non-executory contract or unexpired lease.

(iii)  Nothing in the Plan shall increase, augment or add to any of the duties, obligations, responsibilities or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease, including the Purdue Insurance Policies.

(iv)  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under the Plan, the Debtors shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## H.  Conditions Precedent to the Occurrence of the Effective Date

### 1.  *Conditions Precedent to Effective Date*

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied:

(i)  the Confirmation Order shall have been entered by the Bankruptcy Court, and shall not be subject to any stay and shall not have been modified or vacated on appeal;

(ii)  the Plan Documents shall have been approved of or accepted by all applicable Persons in accordance with the respective consent rights under the Plan, and shall have been filed, executed and delivered, as applicable, and the conditions precedent contained therein shall have been satisfied or waived in accordance with the terms thereof, except with respect to such conditions that by their terms shall be satisfied substantially simultaneously with or after consummation of the Plan;

(iii)  the DOJ Resolution (including, for the avoidance of doubt, the entry of a judgment of conviction in strict accordance with the Plea Agreement and the payment in full of the DOJ Forfeiture Payment) shall have been consummated or will be consummated substantially simultaneously with consummation of the Plan;

(iv)  the NewCo Operating Agreement shall have been executed and shall be in compliance with the DOJ Resolution, the NewCo Transferred Assets shall have vested in NewCo (or one or more of its Subsidiaries) in accordance with the NewCo Transfer Agreement and the NewCo Managers shall have been appointed;

(v)  the MDT Agreement shall have been executed, the MDT Transferred Assets shall have vested in the Master Disbursement Trust in accordance therewith and the MDT Trustees and the MDT Executive Director shall have been appointed;

262

NAS1953

(vi)     the Creditor Trust Documents shall have been executed and the Creditor Trustees shall have been appointed;

(vii)    the Public Entity Settlements shall have been consummated or will be consummated substantially simultaneously with consummation of the Plan, including a. the payment in full of the Initial Public Creditor Trust Distributions, b. the execution of the TopCo Operating Agreement, the appointment of the TopCo Managers and the issuance of the NewCo Interest to TopCo and the TopCo Interests to NOAT and the Tribe Trust and c. the issuance of the MDT Interests to NOAT and the Tribe Trust;

(viii)   the Private Entity Settlements shall have been consummated or will be consummated substantially simultaneously with consummation of the Plan, including a. the payment in full of the Initial Private Creditor Trust Distributions, b. the issuance of the MDT Claims and c. the execution of any Plan Documents required to be executed in connection with the foregoing;

(ix)     the Shareholder Settlement Agreement shall have been executed and all amounts required to be paid thereunder on the Effective Date shall have been received, and all of the conditions precedent to the Settlement Effective Date (as defined in the Shareholder Settlement Agreement) shall have been satisfied or waived in accordance with the terms of the Shareholder Settlement Agreement;

(x)      the PAT Agreement shall have been executed, the PAT Assets shall have vested in the Plan Administration Trust in accordance therewith and the Plan Administration Trustee shall have been appointed;

(xi)     each of the PAT Reserves, the Professional Fee Escrow Account and the PAT Distribution Accounts shall have been fully funded, and each of the other payments and Distributions of Effective Date Cash described in Section 5.13(a) and (b) of the Plan shall have been made or will be made substantially simultaneously with consummation of the Plan;

(xii)    the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings and documents that are necessary to implement and effectuate the Plan;

(xiii)   all Professional Fee Claims shall have been paid in full or amounts sufficient to pay such Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account, or shall be otherwise contained in a professional fee retainer, pending approval by the Bankruptcy Court;

(xiv)    the Debtors shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan;

NAS1954

(xv)    the Bankruptcy Court shall have confirmed that the Bankruptcy Code authorizes the transfer and vesting of the MDT Transferred Assets, notwithstanding any terms of the Purdue Insurance Policies or provisions of non-bankruptcy law that any Insurance Company may otherwise argue prohibits such transfer and vesting; and

(xvi)    all other actions, documents and agreements necessary to implement and effectuate the Plan shall have been effected or executed.

### 2.    *Waiver of Conditions Precedent*

(i)    Each of the conditions precedent to the occurrence of the Effective Date (other than the condition precedent set forth in <u>Section 9.1(i)</u> of the Plan) may be waived by the Debtors; *provided* that a. with respect to any condition precedent, the waiver of which would materially and adversely affect the entitlements of any Class of Claims (or any Creditor Trust to which such Claims shall be channeled) represented by any of the Supporting Claimants, the waiver of such condition precedent shall require the consent (not to be unreasonably withheld, conditioned or delayed) of the applicable Supporting Claimants representing such materially and adversely affected Class of Claims, b. the waiver of the conditions precedent set forth in <u>Section 9.1(a)</u>, <u>(b)</u> (solely with respect to any Plan Document over which the Creditors' Committee has a consent right set forth in the Plan), <u>(e)</u>, <u>(f)</u>, <u>(h)</u>, <u>(j)</u>, <u>(k)</u>, <u>(m)</u> (solely with respect to Professional Fee Claims by Professional Persons retained by the Creditors' Committee), <u>(n)</u> and <u>(o)</u> of the Plan shall require the consent of the Creditors' Committee (which consent shall not be unreasonably withheld, delayed or conditioned) and c. the waiver of the conditions precedent set forth in <u>Section 9.1(a)</u>, <u>(b)</u> (solely with respect to any Plan Document over which the Governmental Consent Parties have a consent right set forth in the Plan), <u>(d)</u>, <u>(e)</u>, <u>(f)</u>, <u>(g)</u>, <u>(n)</u> and <u>(o)</u> of the Plan shall require the consent of the Governmental Consent Parties (which consent shall not be unreasonably withheld, delayed or conditioned). The condition precedent set forth in <u>Section 9.1(i)</u> of the Plan may not be waived by any party.

(ii)    The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

## I.    Effect of Confirmation

### 1.    *Binding Effect*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of the Plan and the Plan Documents shall bind every Holder of a Claim against or Interest in any Debtor and every Holder of a Channeled Claim and inure to the benefit of, and be

NAS1955

binding on, any such Holder's respective successors and assigns, regardless of whether any Claim or Interest of such Holder is Impaired under the Plan or whether such Holder has accepted the Plan.

## 2. *Discharge of Claims against and Interests in the Debtors*

Upon the Effective Date and in consideration of the Distributions to be made under the Plan, except as otherwise provided in the Plan or in the Confirmation Order, each Holder (as well as any trustee or agent on behalf of such Holder) of a Claim or Interest and any successor, assign and affiliate of such Holder shall be deemed to have forever waived, released and discharged the Debtors (other than the Liquidating Debtors), to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date. Except as otherwise provided in the Plan, upon the Effective Date, all such Holders of Claims against or Interests in the Debtors, and their successors, assigns and affiliates, shall be forever precluded and enjoined, pursuant to sections 105, 524 and 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against, or terminated Interest in, any Debtor. Pursuant to section 1141(d)(3) of the Bankruptcy Code, confirmation of the Plan will not discharge the Liquidating Debtors; *provided* that, upon confirmation of the Plan and the occurrence of the Effective Date, Holders of Claims against and Interests in the Debtors may not seek or receive any payment or other Distribution from, or seek recourse against, the Debtors or their Estates or any other Protected Party, except as expressly provided in the Plan. The Co-Defendant Defensive Rights shall not be waived, released or discharged and all Co-Defendant Defensive Rights are preserved, as provided in <u>Section 10.18</u> of the Plan.

## 3. *Pre-Confirmation Injunctions, Stays, Stipulations and Discovery Orders*

(i) Unless otherwise provided in the Plan, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under section 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

(ii) Notwithstanding paragraph (a) of <u>Section 10.3</u> of the Plan, on the Effective Date, without further action by or order of the Bankruptcy Court:

a. any and all obligations of the Shareholder Released Parties arising under the Case Stipulation shall terminate and the Case Stipulation shall be withdrawn, vacated and superseded by the Confirmation Order solely with respect to paragraphs 15, 17, 19, 22 and 25 of the Case Stipulation, and solely as such paragraphs apply to any Shareholder Released Party; *provided* that, for the avoidance of doubt, the terms of such paragraphs shall continue in full force and effect with respect to all other parties (if applicable), and all other provisions of the Case Stipulation shall remain in full force and effect, in each case, unless otherwise provided by the Plan;

265

NAS1956

b.  any and all obligations of any Shareholder Released Party arising under paragraph I of the voluntary injunction set forth in Appendix I to the Preliminary Injunction (and any predecessors or successors of the Preliminary Injunction) shall terminate, and the Preliminary Injunction shall be withdrawn, vacated and superseded by the Confirmation Order solely with respect to paragraph I of the voluntary injunction set forth in Appendix I; *provided* that, for the avoidance of doubt, all other provisions of the Preliminary Injunction shall remain in full force and effect, unless otherwise provided by the Plan; and

c.  any and all obligations of any Person arising under any subpoenas issued pursuant to any of *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties* [D.I. 992] (as amended by the *Amended Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Third Parties* [D.I. 1008]), the *Order Pursuant to Rules 2004 and 9016 of the Federal Rules of Bankruptcy Procedure Authorizing Examinations of Certain Financial Institutions* [D.I. 1143], the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examinations of and Document Production by Third Parties* [D.I. 1340] and the *Order Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9016 Authorizing Examination of Certain Former Debtor Executives, Separately Represented Debtor Personnel, and Norton Rose Fulbright Pursuant to Federal Rules of Bankruptcy Procedure 2004 and 9006* [D.I. 1788] shall terminate.

(iii)  Any and all information shared or produced by any Shareholder Released Party pursuant to the agreements or orders referenced in the foregoing paragraph (b) of Section 10.3 of the Plan, including any such information also shared with Persons not party to the Case Stipulation shall remain subject to the confidentiality terms under which it was shared, including any information that was designated under the Protective Order (or confidentiality agreement that was superseded by the Protective Order), which such information shall remain confidential under the terms of the Protective Order unless such information, materials or documents are included in the Public Document Repository in accordance with the Plan and the Shareholder Settlement Agreement. Names or other identifying information of investments or specific third-party counterparties or advisors with whom or with which a Shareholder Released Party has or had a third-party investment, advisory or business relationship that was disclosed in documents or information produced by a Shareholder Released Party and designated Outside Professional Eyes Only Information under the Protective Order shall retain such designation and be protected accordingly.

266

NAS1957

**4.**     ***Injunction against Interference with Plan***

      Subject to <u>Section 12.4</u> of the Plan, upon entry of the Confirmation Order, all Holders of Claims against or Interests in the Debtors, Holders of Channeled Claims, Releasing Parties, Released Parties, Shareholder Released Parties and other parties in interests shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan and the Plan Documents. <u>Section 10.4</u> of the Plan shall be included in the Confirmation Order.

**5.**     ***Plan Injunction***

    (i)    Except as otherwise provided in the Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors are, with respect to any such Claim or Interest, permanently enjoined after the entry of the Confirmation Order from: a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting, directly or indirectly, a Debtor or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this clause a or any property of any such transferee or successor; b. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order against a Debtor or an Estate or its property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this clause b or any property of any such transferee or successor; c. creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against a Debtor or an Estate or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this clause c or any property of any such transferee or successor; d. acting or proceeding in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and e. commencing or continuing, in any manner or in any place, any action that does not comply, or is inconsistent, with the provisions of the Plan; *provided*, *however*, that nothing contained herein shall preclude such Persons who have held, hold or may hold Claims against or Interests in a Debtor or an Estate from exercising their rights, or obtaining benefits, pursuant to, and consistent with, the terms of the Plan and the Plan Documents.

    (ii)    All Persons, including all governmental, tax and regulatory authorities, lenders, trade creditors, dealers, customers, employees, litigation claimants and other creditors holding Claims, Liens, Interests, charges, encumbrances and other interests of any kind or nature whatsoever,

NAS1958

including rights or Claims based on any successor or transferee liability, against or in a Debtor, the NewCo Transferred Assets, the MDT Transferred Assets or the PAT Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors, the NewCo Transferred Assets, the MDT Transferred Assets, the PAT Assets, the operation of the NewCo Transferred Assets prior to the Effective Date or the Restructuring Transactions are forever barred, estopped and permanently enjoined from asserting against the Released Parties, their respective successors and assigns, their property, the NewCo Transferred Assets, the MDT Transferred Assets or the PAT Assets, such Person's Claims, Interests, Liens, charges, encumbrances and other interests (including rights or Claims based on any successor or transferee liability), including, without limitation, by: a. commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting, directly or indirectly, a Released Party, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons mentioned in this clause a or any property of any such transferee or successor; b. enforcing, levying, attaching (including any prejudgment attachment), collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order against a Released Party, or any direct or indirect transferee of any property of, or direct or indirect successor-in-interest to, any of the foregoing Persons mentioned in this clause b or any property of any such transferee or successor; c. creating, perfecting or otherwise enforcing any encumbrance of any kind or asserting any Released Claims in any manner, directly or indirectly, against a Released Party or any of its property, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this clause c or any property of any such transferee or successor; d. acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and e. commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan.

**6.** *Releases*

    (i)    **Releases by Debtors.**

**As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be**

NAS1959

conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, a. the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, b. the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), c. any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d. any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e. the Restructuring Transactions, f. the Pending Opioid Actions, g. Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h. any past use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, i. the restructuring of any Claim or Interest

NAS1960

before or during the Chapter 11 Cases, j. the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k. the solicitation of votes with respect to the Plan, or l. any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in <u>Section 10.6(a)</u> of the Plan.

Notwithstanding anything herein to the contrary, a. nothing in the Plan shall release any Excluded Claim and b. nothing in <u>Section 10.6(a)</u> of the Plan shall (A) release any Cause of Action against any Shareholder Release Snapback Party, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan or (C) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

(ii)     Releases by Releasing Parties.

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties before and during the Chapter 11 Cases to facilitate the reorganization of the Debtors and the implementation of the Restructuring Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution,

NAS1961

contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, a. the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, b. the business or contractual arrangements or interactions between any Debtor and any Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), c. any employment or retention of any Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d. any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e. the Restructuring Transactions, f. the Pending Opioid Actions, g. Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h. any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, i. the restructuring of any Claim or Interest before or during the Chapter 11 Cases, j. the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k. the solicitation of votes with respect to the Plan, or l. any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, a. nothing in the Plan shall release any Excluded Claim and b. nothing in <u>Section 10.6(b)</u> of the Plan shall (A) release any Cause of Action against (I) any Shareholder Release Snapback Party or (II) any Holder of Co-Defendant Claims, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan or (C) be

NAS1962

construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

Notwithstanding anything herein to the contrary, the Debtors shall not be released from liability for any Claim that is or may be covered by any Purdue Insurance Policy; *provided* that recovery for any such Claim, including by way of settlement or judgment, shall be limited to the available proceeds of such Purdue Insurance Policy (and any extra-contractual liability of the Insurance Companies with respect to the Purdue Insurance Policies), and no Person or party shall execute, garnish or otherwise attempt to collect any such recovery from any assets other than the available proceeds of the Purdue Insurance Policies. The Debtors shall be released automatically from a Claim described in this paragraph upon the earlier of (x) the abandonment of such Claim and (y) such a release being given as part of a settlement or resolution of such Claim, and shall be released automatically from all Claims described in this paragraph upon the exhaustion of the available proceeds of the Purdue Insurance Policies (notwithstanding the nonoccurrence of either event described in the foregoing clauses (x) and (y)).

(iii)     **Releases by Debtors of Holders of Claims.**

As of the Effective Date, all Holders of Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, (i) the administration of the Chapter 11 Cases; the negotiation and pursuit of the Restructuring Transactions, the Plan, the Master Disbursement Trust, the Creditor Trusts (including the trust distribution procedures and the other Creditor Trust Documents) and the solicitation of votes with respect to, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the wind-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing or (ii) such Holder's participation in the Pending Opioid Actions. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Releases set forth in <u>Section 10.6(c)</u> of the Plan.

As of the Effective Date, all Holders of PI Channeled Claims and Holders of NAS Monitoring Channeled Claims (excluding, in all respects, any Excluded Party, Shareholder Release Snapback Party, Co-Defendant or MDT Insurer) are hereby released by the Debtors and their Estates from any and all Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, remedies, losses and liabilities for any Claim in connection with, or arising out of, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, (i) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, (ii) the Restructuring Transactions, (iii) the Pending Opioid Actions, (iv) Opioid-Related Activities or the Debtors' development, production, manufacture, licensing,

272

NAS1963

labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, (v) any past, present use or misuse of any opioid, whether sold by the Debtors or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, (vi) the restructuring of any Claim or Interest before or during the Chapter 11 Cases, (vii) the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, or (viii) any other act, conduct, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim and (y) nothing in <u>Section 10.6(c)</u> of the Plan shall (A) release any contractual Estate Cause of Action or any Estate Cause of Action that is commercial in nature and unrelated to the subject matter of the Pending Opioid Actions, (B) release any Estate Cause of Action against a Holder of a Claim against a Debtor, to the extent such Estate Cause of Action is necessary for the administration and resolution of such Claim solely in accordance with the Plan, (C) release any claim or right arising in the ordinary course of the Debtors' or NewCo's business, including, without limitation, any such claim with respect to taxes or (D) be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement.

7. *Shareholder Releases*

(i) **Releases by Debtors.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of <u>Section 10.7(a)</u> of the Plan, by the Debtors and their Estates from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of any Debtor or any of their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Debtor or any of their Estates, or that any other Person or party claiming under or through any Debtor or any of their Estates, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Debtor or any of their Estates or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be

273

NAS1964

deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, a. the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, b. the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), c. any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d. any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e. the Restructuring Transactions, f. the Pending Opioid Actions, g. Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h. any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, i. the restructuring of any Claim or Interest before or during the Chapter 11 Cases, j. the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k. the solicitation of votes with respect to the Plan, or l. any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing. The Debtors, the Plan Administration Trust, the Master Disbursement Trust, the Creditor Trusts, NewCo, TopCo and any other newly formed Persons that shall be continuing the Debtors' businesses after the Effective Date shall be bound, to the same extent the Debtors are bound, by the Shareholder Releases set forth in <u>Section 10.7(a)</u> of the Plan.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in <u>Section 10.7(a)</u> of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and

NAS1965

obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the Shareholder Releases set forth in <u>Section 10.7(a)</u> of the Plan shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, (B) the *status quo ante* shall be restored in all respects for the Debtors and the Master Disbursement Trust with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties (C) the Master Disbursement Trust shall be deemed to have received and accepted all of the rights with respect to any member of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties, in each case, that the Debtors and their Estates had prior to the Effective Date and that the Master Disbursement Trust would have pursuant to the transfer of the MDT Shareholder Rights to the Master Disbursement Trust if the Shareholder Releases of <u>Section 10.7(a)</u> of the Plan had never been granted, which rights the Debtors and their Estates shall be deemed to have irrevocably transferred, granted and assigned to the Master Disbursement Trust; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the Shareholder Releases shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Shareholder Released Parties other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

   (ii)  **Releases by Non-Debtors.**

   As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the Shareholder Released Parties shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of <u>Section 10.7(b)</u> of the Plan, by the Releasing Parties from any and all Claims, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the Debtors or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code) and including any claims that any Releasing Party, or that any other Person or party claiming under or through any Releasing Party or any other Person, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any Releasing Party or any other Person, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust

275

NAS1966

enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the Debtors (as such Entities existed prior to or after the Petition Date), their Estates or the Chapter 11 Cases, including, without limitation, a. the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, b. the business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), c. any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d. any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e. the Restructuring Transactions, f. the Pending Opioid Actions, g. Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h. any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, i. the restructuring of any Claim or Interest before or during the Chapter 11 Cases, j. the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k. the solicitation of votes with respect to the Plan, or l. any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

For the avoidance of doubt and without limitation of the foregoing, each Person that is a Governmental Unit or a Tribe shall be deemed to have released all Shareholder Released Claims that have been, are or could have been brought by (1) such Governmental Unit or Tribe in its own right, in its *parens patriae* or sovereign enforcement capacity, or on behalf of or in the name of another Person or (2) any other governmental official, employee, agent or representative acting or purporting to act in a *parens patriae*, sovereign enforcement or quasi-sovereign enforcement capacity, or any other capacity on behalf of such Governmental Unit or Tribe.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in <u>Section 10.7(b)</u> of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation

NAS1967

Agreements; and (z) upon the filing of a Notice of Shareholder Release Snapback, (A) the **Shareholder Releases** set forth in <u>Section 10.7(b)</u> of the Plan shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to all members of the **Breaching Shareholder Family Group** and the **Designated Shareholder Released Parties** and (B) the *status quo ante* shall be restored in all respects for the **Releasing Parties** with respect to the members of the **Breaching Shareholder Family Group** and the **Designated Shareholder Released Parties**; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the **Shareholder Releases** shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other **Shareholder Released Parties** other than the **Breaching Shareholder Family Group** and the **Designated Shareholder Released Parties**.

(iii)    **Releases by Shareholder Released Parties.**

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, the **Reciprocal Releasees** shall be conclusively, absolutely, unconditionally, irrevocably, fully, finally, forever and permanently released, subject to clause (z) of the last paragraph of <u>Section 10.7(c)</u> of the Plan, by the **Shareholder Released Parties** from any and all **Claims**, claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, **Causes of Action**, **Liens**, remedies, losses, contributions, indemnities, rights of subrogation, costs, liabilities, attorneys' fees and expenses, in each case, of any kind, character or nature whatsoever, including any derivative claims asserted or assertible by or on behalf of the **Debtors** or their **Estates** (including any **Causes of Action** arising under chapter 5 of the Bankruptcy Code) and including any claims that any **Shareholder Released Party**, or that any other **Person** or party claiming under or through any **Shareholder Released Party** or any other **Person**, would have presently or in the future been legally entitled to assert in its own right (whether individually or collectively) or on behalf of any **Shareholder Released Party** or any other **Person**, notwithstanding section 1542 of the California Civil Code or any law of any jurisdiction that is similar, comparable or equivalent thereto (which shall conclusively be deemed waived), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, choate or inchoate, whether in law or equity, whether sounding in tort or contract or based on any other legal or equitable theory or principle (including fraud, negligence, gross negligence, recklessness, reckless disregard, deliberate ignorance, public or private nuisance, breach of fiduciary duty, avoidance, willful misconduct, veil piercing, alter-ego theories of liability, unjust enrichment, disgorgement, restitution, contribution, indemnification, right of subrogation and joint liability), whether *in rem*, *quasi in rem*, *in personam* or otherwise, or whether arising under federal or state statutory or common law, or any other applicable international, foreign or domestic law, rule, statute, regulation, treaty, right, duty, requirement or otherwise, regardless of where in the world accrued or arising, from the beginning of time, in each case, based on or relating to, or in any manner arising from, in whole or in part, the **Debtors** (as such **Entities** existed prior to or after the Petition Date), their **Estates** or the Chapter 11 Cases, including, without limitation, a. the subject matter of, or the transactions or events giving rise to, any **Claim** or **Interest** that is treated in the Plan, b. the

NAS1968

business or contractual arrangements or interactions between any Debtor and any Shareholder Released Party (including historical business or contractual arrangements or interactions, any direct or indirect distributions or transfers by any Debtor, and any exercise of any common law or contractual rights of setoff or recoupment by any Shareholder Released Party at any time on or prior to the Effective Date), c. any employment or retention of any Shareholder Released Party by the Debtors (including any service as a director, officer, executive, consultant or advisor to the Debtors or service in any similar capacity), d. any direct or indirect beneficial ownership of any equity interest in or debt obligation of the Debtors, e. the Restructuring Transactions, f. the Pending Opioid Actions, g. Opioid-Related Activities or the Debtors' development, production, manufacture, licensing, labeling, marketing, advertising, promotion, distribution or sale of non-opioid products or the use or receipt of any proceeds therefrom, in each case, including the Debtors' interactions with regulators and regardless of where in the world any such activities or any result, loss, injury or damage resulting therefrom occurred, h. any past, present or future use or misuse of any opioid, whether sold by the Debtors or by NewCo or any of its Subsidiaries or otherwise, to the extent arising from an act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing, i. the restructuring of any Claim or Interest before or during the Chapter 11 Cases, j. the Disclosure Statement and the Plan and related agreements, instruments and other documents (including the Plan Documents) and the negotiation, formulation, preparation or implementation thereof, k. the solicitation of votes with respect to the Plan, or l. any other act, conduct, omission, event, transaction, occurrence or continuing condition in any way relating to any of the foregoing.

Notwithstanding anything herein to the contrary, (x) nothing in the Plan shall release any Excluded Claim; (y) nothing in Section 10.7(c) of the Plan shall be construed to impair in any way the Effective Date or post-Effective Date rights and obligations of any Person under the Plan, the Plan Documents, the Confirmation Order or the Restructuring Transactions, including the Shareholder Settlement Agreement and the Separation Agreements, and including the rights of any Shareholder Released Party that is a current or former director, officer or employee of the Debtors but is not a Sackler Family Member relating to plan treatment of any Claims held by such party; and (z) upon the filing of a Notice of Shareholder Release Snapback and the commencement or continuation of any action or proceeding against a member of a Breaching Shareholder Family Group or a Designated Shareholder Released Party by any Reciprocal Releasee, (A) the releases set forth in Section 10.7(c) of the Plan of any Reciprocal Releasee that has commenced or continued any such action shall be entirely null and void, revoked and invalidated, as of the Effective Date, with respect to the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties and (B) the *status quo ante* shall be restored in all respects for the members of the Breaching Shareholder Family Group and the Designated Shareholder Released Parties with respect to any Reciprocal Releasee that has commenced or continued any such litigation; *provided* that, for the avoidance of doubt, notwithstanding the nullification, voiding, revocation and invalidation pursuant to the foregoing clause (A), the releases set forth in Section 10.7(c) of the Plan shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Reciprocal Releasees, and shall be binding on, and enforceable against, all other Shareholder Released

NAS1969

Parties, including any members of the Breaching Shareholder Family Group with respect to any Reciprocal Releasee that has not commenced any such litigation.

### 8.     *Channeling Injunction*

In order to supplement the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases set forth in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, the Confirmation Order shall provide for the following permanent injunction to take effect as of the Effective Date:

(i)     **Terms. In order to preserve and promote the settlements contemplated by and provided for in the Plan and to supplement, where necessary, the injunctive effect of the Plan Injunction, the Releases and the Shareholder Releases described in <u>Sections 10.5</u>, <u>10.6</u> and <u>10.7</u> of the Plan, and pursuant to the exercise of the equitable jurisdiction and power of the Bankruptcy Court under section 105(a) of the Bankruptcy Code, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Channeled Claim shall be permanently and forever stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payments, satisfaction, recovery or judgment of any form from or against any Protected Party with respect to any Channeled Claim, including:**

a.     **commencing, conducting or continuing, in any manner, whether directly or indirectly, any suit, action or other proceeding, in each case, of any kind, character or nature, in any forum in any jurisdiction with respect to any Channeled Claims, against or affecting any Protected Party, or any property or interests in property of any Protected Party with respect to any Channeled Claims;**

b.     **enforcing, levying, attaching, collecting or otherwise recovering, by any means or in any manner, either directly or indirectly, any judgment, award, decree or other order against any Protected Party or against the property of any Protected Party with respect to any Channeled Claims;**

c.     **creating, perfecting or enforcing, by any means or in any manner, whether directly or indirectly, any Lien of any kind against any Protected Party or the property of any Protected Party with respect to any Channeled Claims;**

d.     **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, in respect of any obligation due to any Protected Party or against the property of any Protected Party with respect to any Channeled Claims; and**

279

**NAS1970**

e. **taking any act, by any means or in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan Documents, with respect to any Channeled Claims.**

(ii) **Reservations.** Notwithstanding anything to the contrary in **Section 10.8** of the Plan or the Confirmation Order, this Channeling Injunction shall not stay, restrain, bar, or enjoin:

a. the rights of Holders of Channeled Claims to the treatment afforded them under the Plan and the Plan Documents, including the rights of Holders of Channeled Claims to assert such Channeled Claims solely in accordance with **Section 6.21** of the Plan the Master TDP and the Creditor Trust TDPs, in each case whether or not there are funds to make Distributions in respect of such Channeled Claims and whether or not such rights entitle such Holders to Abatement Distributions or any other form of Distributions;

b. the rights of Persons to assert any claim, debt, litigation or liability for payment of Creditor Trust Operating Expenses solely against the applicable Creditor Trust;

c. the rights of Persons to assert any claim, debt or litigation against any Excluded Party;

d. the rights of the Master Disbursement Trust to pursue and enforce the MDT Shareholder Rights, the MDT Insurance Rights and the MDT Causes of Action;

e. the rights of the parties to the LRP Agreement to enforce the terms thereof in accordance with the Plan;

f. the Creditor Trusts from enforcing their respective rights against the Master Disbursement Trust under the Plan and the MDT Documents;

g. the Master Disbursement Trust from enforcing its rights, on behalf of itself and the Private Creditor Trusts, against NewCo and TopCo under the Plan and the NewCo Credit Support Agreement; or

h. NOAT or the Tribe Trust from enforcing their respective rights against TopCo under the TopCo Operating Agreement.

(iii) **Notice of Shareholder Release Snapback**. Upon the filing of a Notice of Shareholder Release Snapback, the Channeling Injunction shall terminate, be rescinded and have no application, without further order of the

280

NAS1971

Bankruptcy Court, to any suit, action or other proceeding, in each case, of any kind, character or nature, brought against any member of the Breaching Shareholder Family Group or any Designated Shareholder Released Party; *provided*, *however*, that the extension of time provided by Section 10.9(a) of the Plan shall continue in effect in accordance with its terms; and *provided further* that, for the avoidance of doubt, notwithstanding the termination and rescission pursuant to Section 10.8(c) of the Plan, the Channeling Injunction shall continue in effect for, and shall be fully enforceable by and for the benefit of, all other Protected Parties, including all other Shareholder Released Parties, other than the Breaching Shareholder Family Group and the Designated Shareholder Released Parties.

(iv) **Modifications**. Except as expressly set forth in paragraph (c) of Section 10.8 of the Plan, there can be no modification, dissolution or termination of the Channeling Injunction, which shall be a permanent injunction.

(v) **Non-Limitation of Channeling Injunction**. Except as expressly set forth in paragraphs (b) and (c) of Section 10.8 of the Plan, nothing in the Plan or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Channeling Injunction issued in connection with the Plan.

(vi) **Bankruptcy Rule 3016 Compliance**. The Debtors' compliance with the requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code.

9. ***Tolling of Shareholder Released Claims; Violations of Shareholder Releases and Channeling Injunction.***

(i) **Tolling of Shareholder Released Claims**. If applicable law, an order in any proceeding or an agreement fixes a period for commencing or continuing an action or proceeding based on a Shareholder Released Claim and such Shareholder Released Claim is released pursuant to the Shareholder Releases or such action or proceeding is enjoined by the Channeling Injunction, then such period does not expire with respect to such Shareholder Released Claim with respect to the Master Disbursement Trust (or the MDT Trustees) or the Releasing Parties until the latest of a. the end of such period; b. with respect to the applicable Shareholder Family Group, two hundred twenty-five (225) days after the filing of a Notice of Shareholder Release Snapback with respect to such Shareholder Family Group; and c. with respect to the applicable Shareholder Family Group, when such Shareholder Family Group fulfills its payment obligations under the Shareholder Settlement Agreement.

NAS1972

(ii) **Violations of Shareholder Releases and Channeling Injunction**. In the event that any Person takes any action that a Shareholder Released Party believes violates the Shareholder Releases or Channeling Injunction as it applies to any Shareholder Released Party, such Shareholder Released Party shall be entitled to make an emergency application to the Bankruptcy Court for relief, and may proceed by contested matter rather than by adversary proceeding. The Bankruptcy Court shall have jurisdiction and authority to enter final orders in connection with any dispute over whether an action violates the Shareholder Releases or Channeling Injunction. Upon determining that a violation of the Shareholder Releases or Channeling Injunction has occurred, the Bankruptcy Court, in its discretion, may award any appropriate relief against such violating Person, including, but not limited to, a. disgorgement from the violating Person of any funds, assets or other value received, directly or indirectly, pursuant to the Plan or Plan Documents (including fees and expenses paid pursuant to the Plan or Plan Documents on account of legal or other advisory services rendered to or for the benefit of the violating Person); b. the termination of any rights of the violating Person to receive any funds, assets or other value pursuant to the Plan or Plan Documents; c. the reduction of any payments owed by any Shareholder Released Parties under the Shareholder Settlement Agreement to the violating Person in an amount equal to the amount of disgorgement ordered from, or the reduction of future payments ordered to be made to, or on account of, the violating Person (subject to the right of the violating Person to request that any amounts actually disgorged from such violating Person offset any reduction of future payments ordered to be made to, or on account of, such violating Person); d. an admonition, reprimand or censure of, or citation of contempt by, the violating Person and its counsel; e. a fine or penalty paid into the Bankruptcy Court; f. a bond or other security in an amount equal to any financial obligation ordered by the Bankruptcy Court in respect of the violation; g. an appropriate sanction on any attorney or law firm responsible for the violation; h. injunctive relief to prevent future violations by the Person or its counsel; and i. attorney and other professional fees incurred by any Shareholder Released Party arising from the violation. The provision of any one form of relief shall not preclude the provision of any other form of relief.

10. *MDT Insurer Injunction*.

(i) **Terms.** In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on,

NAS1973

arising under or attributable to an MDT Insurance Policy from or against any MDT Insurer, including:

    a.    commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

    b.    enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

    c.    creating, perfecting or enforcing in any manner any Lien of any kind against any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy;

    d.    asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any MDT Insurer, or against the property of any MDT Insurer, on account of any Claim based on, arising under or attributable to an MDT Insurance Policy; and

    e.    taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to any Claim based on, arising under or attributable to an MDT Insurance Policy.

  (ii)  **Reservations**. The provisions of this MDT Insurer Injunction shall not preclude the Master Disbursement Trust from pursuing any Claim based on, arising under or attributable to an MDT Insurance Policy, any other claim that may exist under any MDT Insurance Policy against any MDT Insurer, or enjoin the rights of the Master Disbursement Trust to prosecute any action based on or arising from the MDT Insurance Policies or the rights of the Master Disbursement Trust to assert any claim, debt, obligation, cause of action, or liability for payment against a MDT Insurer based on or arising from the MDT Insurance Policies. The provisions of this MDT Insurer Injunction are not issued for the benefit of any MDT Insurer, and no such insurer is a third-party beneficiary of this MDT Insurer Injunction. This MDT Insurer Injunction shall not enjoin, impair or affect a. any claims between or among MDT Insurers that are not Settling MDT Insurers; b. the rights of current and former directors, officers, employees and agents of the Debtors that are not Sackler Family Members

NAS1974

that are preserved under the Plan or c. the terms of the Shareholder Settlement Agreement with respect to the MDT Shareholder Insurance Rights.

(iii) **Modifications**. To the extent the MDT Trustees make a good-faith determination that some or all of the MDT Insurance Proceeds are substantially unrecoverable by the Master Disbursement Trust, the Master Disbursement Trust shall have the sole and exclusive authority at any time, upon written notice to any affected MDT Insurer, to terminate, reduce or limit the scope of this MDT Insurer Injunction with respect to any MDT Insurer, *provided* that a. any termination, reduction, or limitation of the MDT Insurer Injunction (A) shall apply equally to all Classes of Claims, and (B) shall comply with any procedures set forth in the MDT Agreement and b. the termination, reduction or limitation of the MDT Insurer Injunction as it relates to the MDT Bermuda-Form Insurance Policies shall be subject to the consent (not to be unreasonably withheld, conditioned or delayed) of the Creditor Trustee for the PI Trust.

(iv) **Non-Limitation of MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of Section 10.10 of the Plan, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the MDT Insurer Injunction issued in connection with the Plan.

11. *Settling MDT Insurer Injunction*.

(i) **Terms. In accordance with section 105(a) of the Bankruptcy Code, upon the occurrence of the Effective Date, all Persons that have held or asserted, that hold or assert or that may in the future hold or assert any Claim based on, arising under or attributable to an MDT Insurance Policy shall be, and hereby are, permanently stayed, restrained and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering or receiving payment or recovery on account of any such Claim based on, arising under or attributable to an MDT Insurance Policy from or against any Settling MDT Insurer, solely to the extent that such Settling MDT Insurer has been released from such Claim under such MDT Insurance Policy pursuant to an MDT Insurance Settlement, including:**

a. **commencing, conducting or continuing, in any manner any action or other proceeding of any kind (including an arbitration or other form of alternate dispute resolution) against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

284

NAS1975

        b.      **enforcing, attaching, levying, collecting or otherwise recovering, by any manner or means, any judgment, award, decree or other order against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

        c.      **creating, perfecting or enforcing in any manner any Lien of any kind against any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy;**

        d.      **asserting or accomplishing any setoff, right of subrogation, indemnity, contribution or recoupment of any kind, whether directly or indirectly, against any obligation due to any such Settling MDT Insurer, or against the property of such Settling MDT Insurer, on account of such Claim based on, arising under or attributable to such MDT Insurance Policy; and**

        e.      **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan applicable to such Claim based on, arising under or attributable to such MDT Insurance Policy.**

(ii)    **Reduction of Insurance Judgments**. Any right, Claim or cause of action that an Insurance Company may have been entitled to assert against any Settling MDT Insurer but for the Settling MDT Insurer Injunction, if any such right, Claim or cause of action exists under applicable non-bankruptcy law, shall become a right, Claim or cause of action solely as a setoff claim against the Master Disbursement Trust and not against or in the name of the Settling MDT Insurer in question. Any such right, Claim or cause of action to which an Insurance Company may be entitled shall be solely in the form of a setoff against any recovery of the Master Disbursement Trust from that Insurance Company, and under no circumstances shall that Insurance Company receive an affirmative recovery of funds from the Master Disbursement Trust or any Settling MDT Insurer for such right, Claim or cause of action. In determining the amount of any setoff, the Master Disbursement Trust may assert any legal or equitable rights the Settling MDT Insurer would have had with respect to any right, Claim or cause of action.

(iii)    **Modifications**. There can be no modification, dissolution or termination of the Settling MDT Insurer Injunction, which shall be a permanent injunction.

NAS1976

(iv)   **Non-Limitation of Settling MDT Insurer Injunction**. Except as set forth in paragraphs (b) and (c) of Section 10.11 of the Plan, nothing in the Plan, the MDT Documents or the Creditor Trust Documents shall be construed in any way to limit the scope, enforceability or effectiveness of the Settling MDT Insurer Injunction issued in connection with the Plan.

## 12.   *Exculpation*

To the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, or arising out of, the administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Restructuring Transactions, the Plan, the Master Disbursement Trust (including the Master TDP and the MDT Agreement), the Creditor Trusts (including the Creditor Trust TDPs and the other Creditor Trust Documents) and the solicitation of votes for, and confirmation of, the Plan; the funding of the Plan; the occurrence of the Effective Date; the administration of the Plan and the property to be distributed under the Plan; and the winding-up and dissolution of the Liquidating Debtors and the transactions in furtherance of any of the foregoing, in each case other than Claims or Causes of Action arising out of, or related to, any act or omission of an Exculpated Party that is a criminal act or constitutes fraud, gross negligence or willful misconduct. This exculpation shall be in addition to, and not in limitation of, all other Releases, indemnities, exculpations and any other applicable law or rules protecting such Exculpated Parties from liability. For the avoidance of doubt, Section 10.12 of the Plan shall not exculpate or release any Exculpated Party with respect to any act or omission of such Exculpated Party prior to the Effective Date that is later found to be a criminal act or to constitute fraud, gross negligence or willful misconduct, including findings after the Effective Date. Notwithstanding anything herein to the contrary, nothing in the Plan shall release any Claims or Causes of Action that may be asserted against any Excluded Party.

## 13.   *Injunction Related to Releases and Exculpation*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, losses or liabilities released pursuant to the Plan, including, without limitation, the Claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released or exculpated in the Plan and the Claims, Interests, Liens, other encumbrances, or liabilities described in Section 5.3(b), 5.4(c) or 5.6(b) of the Plan.

## 14.   *Subordinated Claims*

The allowance, classification and treatment of all Claims and Interests and the respective Distributions and treatments in respect thereof under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with contractual, legal and equitable subordination rights relating thereto, whether arising under

NAS1977

general principles of equitable subordination, section 509(c), 510(a), 510(b) or 510(c) of the Bankruptcy Code or otherwise. Pursuant to sections 509(c) and 510 of the Bankruptcy Code or otherwise, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal or equitable subordination relating thereto.

### 15.     Preservation of Causes of Action and Reservation of Rights

As of the Effective Date, (i) the Master Disbursement Trust shall have the right to prosecute any and all MDT Causes of Action; (ii) the Plan Administration Trust shall have the right to prosecute any and all Retained Causes of Action relating to and necessary for the administration of Claims against the Debtors (other than Channeled Claims) or the other responsibilities of the Plan Administration Trustee in accordance with the PAT Agreement; (iii) each Creditor Trust shall have the right to prosecute any and all Retained Causes of Action relating to and necessary for the administration of the applicable Channeled Claims in accordance with the applicable Creditor Trust TDP; and (iv) NewCo shall have the right to prosecute any and all Retained Causes of Action constituting NewCo Transferred Assets; *provided* that a. any settlement or release by NewCo of such Retained Causes of Action shall be subject to the consent of TopCo and b. in the event NewCo fails to prosecute any such Retained Causes of Action, TopCo may direct such prosecution by NewCo, in accordance with the NewCo Operating Agreement. Pursuant to section 1123(b) of the Bankruptcy Code, except as expressly provided in Sections 10.5 through 10.13 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims or Causes of Action that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including but not limited to any actions specifically enumerated in the Schedule of Retained Causes of Action. Subject to Sections 10.5 through 10.13 of the Plan, all such rights, Claims and Causes of Action shall be transferred to the Master Disbursement Trust, the Plan Administration Trust, the applicable Creditor Trust or NewCo, as applicable, which shall have, retain, reserve and be entitled to assert all such rights, Claims and Causes of Action in accordance with the Plan as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 16.     Ipso Facto and Similar Provisions Ineffective

Any term of any policy, contract or other obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent such policy, contract, or other obligation is conditioned on, creates an obligation of any Debtor as a result of, or gives rise to a right of any Person based on any of the following: (i) the insolvency or financial condition of a Debtor; (ii) the commencement of the Chapter 11 Cases; (iii) the confirmation or consummation of the Plan, including any change of control that shall occur as a result of such consummation; or (iv) the Restructuring Transactions.

### 17.     No Successor Liability

NAS1978

Except as otherwise expressly provided in the Plan and the Confirmation Order, each of NewCo, TopCo, the Master Disbursement Trust, the Plan Administration Trust and the Creditor Trusts (i) is not, and shall not be deemed to assume, agree to perform, pay or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the Assets of the Debtors on or prior to the Effective Date, (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date and (iii) shall not have any successor or transferee liability of any kind or character.

## 18. *Co-Defendant Defensive Rights.*

Except as provided in clause (ii) of the penultimate sentence of Section 10.18 of the Plan, notwithstanding anything to the contrary in Article X of the Plan or in the Plan as it currently exists or as it might be further amended, the Confirmation Order or any order entered in connection with the Plan (or the Plan as amended) (or any such order, as amended, modified or supplemented), or any supplement to the Plan (or the Plan as amended), nothing contained in the Plan or any of the foregoing documents or orders (including, without limitation, the classification, treatment, allowance, disallowance, release, bar, injunction, Channeling Injunction or any other provision of the Plan or the Plan as amended with respect to, impacting, affecting, modifying, limiting, subordinating, impairing, in any respect, a Co-Defendant Claim), will release, bar, enjoin, impair, alter, modify, amend, limit, prohibit, restrict, reduce, improve or enhance any Co-Defendant Defensive Rights of any Holder of a Co-Defendant Claim as such rights exist or might in the future exist under applicable non-bankruptcy law. Nothing in the Plan, any of the Plan Documents or in the Confirmation Order shall preclude, operate to or have the effect of, impairing any Holder of a Co-Defendant Claim from asserting in any proceeding any and all Co-Defendant Defensive Rights that it has or may have under applicable law. Nothing in the Plan, any of the Plan Documents or the Confirmation Order shall be deemed to waive any Co-Defendant Defensive Rights, and nothing in the Chapter 11 Cases, the Plan, any of the Plan Documents or the Confirmation Order may be used as evidence of any determination regarding any Co-Defendant Defensive Rights, and under no circumstances shall any Person be permitted to assert issue preclusion or claim preclusion, waiver, estoppel or consent in response to the assertion of Co-Defendant Defensive Rights. Section 10.18 of the Plan shall be included in the Confirmation Order. Co-Defendant Defensive Rights (i) may be used to offset, set-off, recoup, allocate or apportion fault, liability, or damages, or seek judgment reduction or otherwise defend against any Cause of Action or Claim brought by any Person against the Holder of any Co-Defendant Claim based in whole or in part on Opioid-Related Activities and (ii) shall in no case be used to seek any affirmative monetary recovery from any Protected Party on account of any Released Claim or Shareholder Released Claim. The forgoing does not constitute a release of any Co-Defendant's Class 14 Claim.

## 19. *Channeling of Future PI Channeled Claims and Injunction in Support of PI Futures Trust*

As of the Effective Date, in accordance with the Plan and the Master TDP, any and all liability of the Debtors and the other Protected Parties for any and all Future PI Channeled Claims shall automatically, and without further act, deed or court order, be channeled exclusively to and assumed by the PI Futures Trust. Each Future PI Channeled Claim shall be asserted

NAS1979

exclusively against the PI Futures Trust and resolved solely in accordance with the terms, provisions and procedures of the PI Futures TDP. The sole recourse of any Person on account of any Future PI Channeled Claim, whether or not the Holder thereof participated in the Chapter 11 Cases and whether or not such Holder filed a Proof of Claim in the Chapter 11 Cases, shall be to the PI Futures Trust as and to the extent provided in the PI Futures TDP. Holders of Future PI Channeled Claims are enjoined from asserting against any Debtor or other Protected Party any Channeled Claim, and may not proceed in any manner against any Debtor or other Protected Party on account of any Channeled Claim in any forum whatsoever, including any state, federal or non-U.S. court or administrative or arbitral forum, and are required to pursue Future PI Channeled Claims exclusively against the PI Futures Trust, solely as and to the extent provided in the PI Futures TDP.

20. ***Special Provisions for United States***

(i) As to the United States, notwithstanding anything contained in the Plan or Confirmation Order to the contrary (except Section 5.2(h) of the Plan and in respect of the United States-PI Claimant Medical Expense Claim Settlement), including but not limited to the Article X of the Plan, nothing in the Plan or Confirmation Order (except Section 5.2(h) of the Plan and in respect of the United States-PI Claimant Medical Expense Claim Settlement) shall:

a. limit or expand the scope of discharge, release or injunction permitted to debtors under the Bankruptcy Code. The discharge, release, and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Confirmation Order, pursuing any police or regulatory action, or any criminal action;

b. discharge, release, exculpate, impair or otherwise preclude: (1) any liability to the United States that is not a "claim" within the meaning of section 101(5) of the Bankruptcy Code; (2) any Claim of the United States arising on or after the Effective Date; (3) any liability of the Debtors under police or regulatory statutes or regulations to the United States as the owner, lessor, lessee or operator of property that such Entity owns, operates or leases after the Effective Date; or (4) any liability to the United States, including but not limited to any liabilities arising under the IRC, the environmental laws, the criminal laws, the civil laws or common law, of any Person, including any Released Parties, Shareholder Released Parties or any Exculpated Parties, in each case, other than the Debtors; *provided, however*, that the foregoing shall not (x) limit the scope of discharge granted to the Debtors under sections 524 and 1141 of the Bankruptcy Code, (y) diminish the scope of any exculpation to which any Person is entitled under section 1125(e) of the Bankruptcy Code, or (z) change the treatment of the DOJ Forfeiture Judgment Claim pursuant to

289

NAS1980

Section 2.3 of the Plan or the treatment of the Federal Government Unsecured Claims pursuant to Section 4.3 of the Plan;

c.    enjoin or otherwise bar the United States from asserting or enforcing, outside the Bankruptcy Court, any liability described in the preceding clause b; *provided*, *however*, that the non-bankruptcy rights and defenses of all Persons with respect to b(1)–b(4) in clause b are likewise fully preserved;

d.    affect any valid right of setoff or recoupment of the United States against any of the Debtors; *provided*, *however*, that the rights and defenses of the Debtors with respect thereto are fully preserved (other than any rights or defenses based on language in the Plan or the Confirmation Order that may extinguish setoff or recoupment rights);

e.    divest any court, commission or tribunal of jurisdiction to determine whether any liabilities asserted by the United States are discharged or otherwise barred by the Confirmation Order, the Plan or the Bankruptcy Code; *provided, however*, that the Bankruptcy Court shall retain jurisdiction as set forth in and pursuant to the terms of the Plan to the extent permitted by law; or

f.    be deemed to (1) determine the tax liability of any Person, including but not limited to the Debtors, (2) have determined the federal tax treatment of any item, distribution or Entity, including the federal tax consequences of the Plan or Confirmation Order, or (3) expressly expand or diminish the jurisdiction of the Bankruptcy Court to make determinations as to federal tax liability and federal tax treatment under the Bankruptcy Code and 28 U.S.C. §§ 157, 1334.

For the avoidance of doubt, the Channeling Injunction set forth in Section 10.8 of the Plan does not apply to the rights and causes of action protected by Section 10.20 of the Plan.

(ii)    Notwithstanding anything to the contrary herein, nothing in the Plan, the Confirmation Order, the Shareholder Settlement Agreement, or any other document filed in connection with the Plan shall release claims held by the United States of America against the Shareholder Released Parties; *provided* that, for the avoidance of doubt, nothing in the Plan, Confirmation Order, the Shareholder Settlement Agreement or any other document filed in connection with the Plan shall limit the releases contained in the Settlement Agreement between the United States of America and Purdue Pharma L.P., executed on October 21, 2020, or the Settlement Agreement between the United States of America and Dr. Richard Sackler, David Sackler, Mortimer D.A. Sackler, Kathe Sackler, and the Estate of Jonathan Sackler, executed on October 21, 2020.

NAS1981

(iii)    Several of the Debtors are parties to the various following agreements with the Secretary of the Department of Health and Human Services under which the Debtors owe rebates to third parties:

a.    The Medicare Coverage Gap Discount Program Agreement is established under 42 U.S.C. §§ 1395w-114A, 1395w-153 and is required should manufacturers wish to have coverage for their products under Medicare Part D. Under the Medicare Coverage Gap Discount Program Agreement, manufacturers agree to reimburse Medicare Part D plan sponsors for certain Coverage Gap discounts the plans provide to Medicare beneficiaries in the Part D coverage gap. The Centers for Medicare & Medicaid Services requires that a new entity that seeks to assume a Medicare Coverage Gap Discount Program Agreement enter into a novation agreement with the Centers for Medicare & Medicaid Services with respect to the transfer of such agreement. The Debtors that have entered into Medicare Coverage Gap Discount Program Agreements with the Secretary are: Purdue Pharma L.P. (P1180) and Rhodes Pharmaceuticals L.P. (P1281);

b.    The Medicaid Drug Rebate Program, established under section 1927 of the Social Security Act, requires manufacturers to enter into National Drug Rebate Agreements with the Secretary for the coverage and payment of a manufacturer's covered outpatient drugs. Under the Medicaid Drug Rebate Program, if a manufacturer has entered into and has in effect a National Drug Rebate Agreement, Medicaid covers and pays for all of the drugs of that manufacturer dispensed and paid for under the state plan, and in return manufacturers pay applicable rebates to the states. The Debtors that have National Drug Rebate Agreements and the labeler codes associated with the National Drug Rebate Agreements are as follows: Rhodes Pharmaceuticals L.P. (42858), Purdue Pharma L.P. (59011), Avrio Health L.P. (67618) and Adlon Therapeutics L.P. (72912);

c.    Manufacturers with National Drug Rebate Agreements must also comply with the Drug Pricing Program under section 340B of the Public Health Service Act, 42 U.S.C. § 256b, and have Pharmaceutical Pricing Agreements with the Secretary of the Department of Health and Human Services. Under the Pharmaceutical Pricing Agreements, manufacturers agree to charge a price for covered outpatient drugs that will not exceed the average manufacturer price decreased by a rebate percentage. The Debtors that have Pharmaceutical Pricing Agreements and the labeler codes associated with such agreements are as follows: Rhodes Pharmaceuticals L.P. (42858), Purdue Pharma L.P.

NAS1982

(59011), Avrio Health L.P. (67618) and Adlon Therapeutics L.P. (72912); and

    d.    The Medicare Coverage Gap Discount Program Agreements, the Medicaid National Drug Rebate Agreements and the Pharmaceutical Pricing Agreements identified above provide that, in the event of a transfer of ownership, such agreements are automatically assigned to the new owner and all terms and conditions of such agreements remain in effect as to the new owner. Accordingly, notwithstanding anything contained in the Plan or the Confirmation Order which may be to the contrary, the Debtors shall assume such agreements pursuant to section 365 of the Bankruptcy Code, and upon the Effective Date, the Medicare Coverage Gap Discount Program Agreements, the Medicaid National Drug Rebate Agreements and the Pharmaceutical Pricing Agreements identified above shall be assigned to NewCo. NewCo, as the new owner, will assume the obligations of the Debtors who are parties under such agreements from and after the Effective Date, and to fully perform all the duties and responsibilities that exist under such agreements in accordance with their terms, including the payment of discounts owed to Part D Plan sponsors or payment of rebates owed to states and wholesalers for quarters prior to the Effective Date. For the avoidance of doubt, NewCo shall be liable for any outstanding rebates or discounts owed to third parties (and any applicable interest thereon) arising prior to the Effective Date, as well as any penalties associated with noncompliance by the Debtors with the Medicare Coverage Gap Discount Program Agreements, the Medicaid National Drug Rebate Agreements and the Pharmaceutical Pricing Agreements identified above prior to the Effective Date.

    (iv)    Notwithstanding anything to the contrary herein, nothing in the Plan, the Confirmation Order, the Shareholder Settlement Agreement or any other document filed in connection with the Plan shall bind the United States in any application of statutory, or associated regulatory, authority grounded in Title 19 of the Social Security Act, 42 U.S.C. § 1396-1 *et seq.* (the "**Medicaid Program**") or in section 1115 of Title 11 of the Social Security Act. The United States is neither enjoined nor in any way prejudiced in seeking recovery of any funds owed to the United States under the Medicaid Program.

## J.    Retention of Jurisdiction

### *1.    Retention of Jurisdiction*

    (i)    The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of or related to the Chapter 11 Cases and the

NAS1983

Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

a.      to hear and determine applications for the assumption or rejection of executory contracts and unexpired leases and any Disputed Cure Claims or Disputed Claims in respect of rejection damages resulting therefrom;

b.      to hear and determine any motions, adversary proceedings, applications, contested matters and other litigated matters pending on, or commenced after, entry of the Confirmation Order;

c.      to hear and resolve any disputes arising from or related to (1) any orders of the Bankruptcy Court still in effect granting relief under Bankruptcy Rule 2004 or (2) any protective orders entered by the Bankruptcy Court in connection with the foregoing (including the Protective Order);

d.      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided in the Plan and the Confirmation Order;

e.      to consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim, including any Administrative Claim or, solely to the extent provided in the Master TDP and/or the applicable Creditor Trust TDP, any Channeled Claim;

f.      to enter, implement or enforce such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked, modified or vacated;

g.      to issue and enforce injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

h.      to hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

i.      to hear and determine all Professional Fee Claims;

j.      to resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

NAS1984

k. to hear and resolve disputes related to the MDT Insurance Rights;

l. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order, any transactions or payments in furtherance of the Plan or the Confirmation Order or any agreement, instrument or other document governing, or related to, any of the foregoing, including the Plan Documents;

m. to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute and consummate the Plan, including any release (including, but not limited to, the United States-PI Claimant Medical Expense Claim Releases), exculpation or injunction provisions set forth in the Plan, or to maintain the integrity of the Plan following the occurrence of the Effective Date;

n. to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

o. to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any Bar Date established in the Chapter 11 Cases or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is discharged hereunder or for any other purpose;

p. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Shareholder Settlement Agreement;

q. to hear and determine disputes arising in connection with (1) the MDT Claims and the interpretation, implementation or enforcement of the NewCo Credit Support Agreement or (2) operations of the Master Disbursement Trust or the actions of the MDT Fiduciaries;

r. to hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Abatement Trust Documents, and to hear and determine disputes concerning violations of the Confirmation Order or the use of funds from the Abatement Trusts in a manner inconsistent with the applicable Abatement Trust Documents;

NAS1985

s.      to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

t.      to hear and determine all matters relating to the Plan Settlements, to the extent permitted under applicable law; and

u.      to enter a final decree closing each of the Chapter 11 Cases.

(ii)      The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of or related to the Chapter 11 Cases and the Plan to, among other things, hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code).

(iii)      Notwithstanding anything in the <u>Article XI</u> of the Plan to the contrary, the resolution of Channeled Claims against the Debtors and the forum in which such resolution shall be determined shall be governed by, and in accordance with, the Master TDP and the Creditor Trust TDPs, if applicable.

(iv)      By consenting to the treatment provided by the Plan or otherwise supporting the Plan, no State or Tribe shall be construed to have waived any claim of Sovereign Immunity that it may have in any other action or proceeding, including any action or proceeding occurring after the Effective Date.

## K.      Miscellaneous Provisions

### 1.      *Exemption from Certain Transfer Taxes*

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan pursuant to (i) the issuance, distribution, transfer or exchange of any debt, equity security or other interest in the Debtors; (ii) the Restructuring Transactions; (iii) the creation, modification, consolidation, termination, refinancing and/or recording of any mortgage, deed of trust or other security interest, or the securing of additional indebtedness by such or other means; or (iv) the making, assignment, recording or surrender of any lease or sublease, or the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any deeds, bills of sale or other assignments or instruments of transfer, or assignments executed in connection with any disposition of Assets contemplated by the Plan (including transfers of Assets to and by the Debtors, the Plan Administration Trust, NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles tax, transfer tax (including real estate transfer tax), mortgage tax or mortgage recording tax, sales or use tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee or other similar tax or governmental assessment, and the appropriate federal, state, provincial or local government officials or agents shall forego collection of any

NAS1986

such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**2.      Dates of Actions to Implement Plan**

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**3.      Amendments**

(i)      **Plan Modifications**. The Plan may be amended, modified or supplemented by the Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court; *provided* that a. any such amendment, modification or supplement shall be reasonably acceptable to the Governmental Consent Parties; *provided further* that any such amendment, modification or supplement that expands the scope of the Releases or modifies any provision relating to the MDT Insurance Policies (including the scope thereof) or the transfer of the MDT Insurance Rights shall be acceptable to the Governmental Consent Parties, and b. any such amendment, modification or supplement shall be reasonably acceptable to the Creditors' Committee to the extent that it (A) relates to the MDT Insurance Rights, (B) modifies Section 5.8 of the Plan, as it relates to payment of the attorneys' fees and costs of Holders of Hospital Claims, Third-Party Payor Claims, PI Claims or NAS Monitoring Claims, the Ad Hoc Group of Individual Victims or the NAS Committee, (C) modifies the Creditors' Committee's consent rights under the Plan, (D) expands the scope of the Releases or (E) materially and adversely affects the treatment of Holders of Hospital Claims, Third-Party Payor Claims, PI Claims, NAS Monitoring Claims or Other General Unsecured Claims (it being understood that (x) any reduction in the amount of any Initial Private Creditor Trust Distribution or any Private Creditor Trust's MDT Claim, (y) any elimination of any consent rights in favor of such Holders, or (z) any modification to Sections 5.2, 5.6 or 5.7 of the Plan to the extent such modification relates to the Master Disbursement Trust or a Private Creditor Trust, shall constitute such a material and adverse effect). In addition, after the Confirmation Date, as long as such action does not materially and adversely affect the treatment of Holders of Allowed Claims pursuant to the Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in the Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of the Plan, and any Holder of a Claim or Interest that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified or supplemented.

NAS1987

      (ii)    **Certain Technical Amendments**. Prior to the Effective Date, the Debtors, may make appropriate technical adjustments and modifications to the Plan without further order or approval of the Bankruptcy Court; *provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of Holders of Claims and Interests under the Plan.

## 4.    *Revocation or Withdrawal of Plan*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date as to any or all of the Debtors; *provided* that each Debtor shall be entitled to revoke the Plan only in full and not in part. If, with respect to a Debtor, the Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (i) the Plan and the Plan Documents shall be null and void in all respects; (ii) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts and unexpired leases effected by the Plan and any document or agreement executed pursuant to the Plan (including the Plan Documents) shall be deemed null and void; and (iii) nothing contained in the Plan shall a. constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, b. prejudice in any manner the rights of such Debtor or any other Person, or c. constitute an admission of any sort by any Debtor or any other Person; *provided* that any provisions under the Shareholder Settlement Agreement that are expressly contemplated to survive revocation or reversal of the Plan shall survive.

## 5.    *Payment of Statutory Fees*

All fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on or before the Effective Date by the Debtors. After the Effective Date, the Plan Administration Trust shall assume liability for and shall pay, or cause to be paid, any and all quarterly fees owed to the U.S. Trustee when due in accordance with applicable law, and shall continue to file, or cause to be filed, with the Bankruptcy Court quarterly reports to show the calculation of such fees for the Debtors' Estates. Each of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until such Debtor's Chapter 11 Case is closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code.

## 6.    *Severability*

      (i)    Notwithstanding anything else contained in the Plan, a. each of the provisions of the Shareholder Settlement, including, without limitation, the Shareholder Releases and the Channeling Injunction, is integrated with and integral to all other provisions of the Shareholder Settlement and the remainder of the Plan and the Plan Documents, and shall not be severable from the remainder of the Shareholder Settlement, the Plan or the Plan Documents, b. the Confirmation Order shall constitute a judicial determination that each term and provision of the Shareholder Settlement is (1) valid and enforceable pursuant to its terms, (2) integral to both the

NAS1988

entirety of the Shareholder Settlement and the Plan and may not be excised or modified other than in accordance with the Shareholder Settlement Agreement, and (3) nonseverable from and mutually dependent on each other term in the Shareholder Settlement and the Plan and c. in the event that any one or more provisions of the Shareholder Settlement are deemed null, void, illegal or unenforceable, the Shareholder Settlement, the Plan, the Confirmation Order and the Plan Documents shall be null and void.

(ii)     If, prior to entry of the Confirmation Order, any term or provision of the Plan that is not related to the Shareholder Settlement is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with Section 12.6 of the Plan, is valid and enforceable pursuant to its terms.

### 7.     Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that a Plan Document provides otherwise, the rights, duties and obligations arising under the Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of New York, without giving effect to the principles of conflicts of laws thereof (other than section 5-1401 and section 5-1402 of the New York General Obligations Law).

### 8.     Immediate Binding Effect

Notwithstanding Bankruptcy Rule 3020(e), 6004(h) or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the other Protected Parties, all Holders of Claims against or Interests in the Debtors, all Holders of Channeled Claims, all Releasing Parties and each of their respective successors and assigns.

### 9.     Successors and Assigns

NAS1989

The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or permitted assign, if any, of each such Person.

**10.      Entire Agreement**

On the Effective Date, the Plan, the Plan Supplement and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings and representations concerning such documents, all of which have become merged and integrated into the Plan.

**11.      Computing Time**

In computing any period of time prescribed or permitted by the Plan, unless otherwise set forth in the Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.      Exhibits to Plan**

All exhibits, schedules, supplements and appendices to the Plan (including the Plan Supplement) are incorporated into and are part of the Plan as if set forth in full herein.

**13.      Notices**

All notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Attn: Marshall S. Huebner, Benjamin S. Kaminetzky, Eli J. Vonnegut, James I. McClammy and Christopher S. Robertson

*Counsel to the Debtors*
*and Debtors in Possession*

After the occurrence of the Effective Date, the Plan Administration Trustee shall have authority to send a notice to Entities providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary. After the occurrence of the Effective Date, the Debtors and the Plan Administration Trustee are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those Entities that have filed such renewed requests.

**14.      Dissolution of the Creditors' Committee**

NAS1990

On the Effective Date, the Creditors' Committee will dissolve; *provided*, *however*, that following the Effective Date, the Creditors' Committee shall continue in existence and have standing and a right to be heard for the following limited purposes: (i) applications, and any relief related thereto, for compensation by Professional Persons and requests for allowance of fees and/or expenses under section 503(b) of the Bankruptcy Code, and (ii) any appeals of, or related to, the Confirmation Order or other appeal to which the Creditors' Committee is a party. Upon the dissolution of the Creditors' Committee, the Creditors' Committee, each of its members (including each officer, director, employee or agent thereof) and its respective Professional Persons will cease to have any duty, obligation or responsibility arising from, or related to, the Chapter 11 Cases and shall be released and discharged from all rights and duties from, or related to, the Chapter 11 Cases.

### 15. *Reservation of Rights*

Except as otherwise provided herein, the Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order. None of the filing of the Plan, any statement or provisions of the Plan or the taking of any action by the Debtors with respect to the Plan shall be, or deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claim or Interest prior to the Effective Date.

## ARTICLE V

## VOTING REQUIREMENTS; ACCEPTANCE AND CONFIRMATION OF THE PLAN

### A. General

The following is a brief summary of the Plan confirmation process. Holders of Claims and Interests are encouraged to review the relevant provisions of the Bankruptcy Code and/or consult their own attorneys.

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a confirmation hearing. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

Section 1129 of the Bankruptcy Code requires that, in order to confirm the Plan, the Bankruptcy Court must make a series of findings concerning the Plan and the Debtors, including that (i) the Plan has classified Claims in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Plan has been proposed in good faith and not by any means forbidden by law; (iv) the disclosure required by section 1125 of the Bankruptcy Code has been made; (v) the Plan has been accepted by the requisite votes of holders of Claims (except to the extent that cramdown is available under section 1129(b) of the Bankruptcy Code); (vi) the Plan is feasible and confirmation is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors unless such liquidation or reorganization is proposed in the Plan; (vii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holders would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the

NAS1991

Plan; and (viii) all fees payable under section 1930 of chapter 123 of title 28 of the United States Code shall be paid on or before the Effective Date by the Debtors. After the Effective Date, the Plan Administration Trust shall assume liability for and shall pay, or cause to be paid, any and all quarterly fees owed to the U.S. Trustee when due in accordance with applicable law, and shall continue to file, or cause to be filed, with the Bankruptcy Court quarterly reports to show the calculation of such fees for the Debtors' Estates. Each of the Debtors shall remain obligated to pay quarterly fees to the U.S. Trustee until such Debtor's Chapter 11 Case is closed, dismissed or converted to a case under chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan satisfies section 1129 of the Bankruptcy Code.

**B.      Parties in Interest Entitled to Vote**

Pursuant to the Bankruptcy Code, only Classes of Claims that are "impaired" (as defined in section 1124 of the Bankruptcy Code) under the Plan are entitled to vote to accept or reject the Plan. A Class is impaired if the legal, equitable, or contractual rights to which the Claims of that Class entitled the holders of such Claims are modified, other than by curing defaults and reinstating the Claims. Classes that are not impaired are not entitled to vote on the Plan and are conclusively presumed to have accepted the Plan. In addition, Classes that receive no distributions under the Plan are not entitled to vote on the Plan and are deemed to have rejected the Plan.

**C.      Classes Impaired and Entitled to Vote Under the Plan**

The following table designates the Classes of Claims against and Interests in the Debtors and specifies which Classes are (i) Impaired and Unimpaired under the Plan, (ii) entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject the Plan:

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 | Federal Government Unsecured Claims | Impaired | Yes |
| Class 4 | Non-Federal Domestic Governmental Claims | Impaired | Yes |
| Class 5 | Tribe Claims | Impaired | Yes |
| Class 6 | Hospital Claims | Impaired | Yes |
| Class 7 | Third-Party Payor Claims | Impaired | Yes |
| Class 8 | Ratepayer Claims | Impaired | Yes |
| Class 9 | NAS Monitoring Claims | Impaired | Yes |
| Class 10(a) | NAS PI Claims | Impaired | Yes |
| Class 10(b) | Non-NAS PI Claims | Impaired | Yes |
| Class 11(a) | Avrio General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| Class 11(b) | Adlon General Unsecured Claims | Unimpaired | No (Presumed to Accept) |

NAS1992

| Class 11(c) | Other General Unsecured Claims | Impaired | Yes |
|---|---|---|---|
| Class 12 | Intercompany Claims | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |
| Class 13 | Shareholder Claims | Impaired | No (Deemed to Reject) |
| Class 14 | Co-Defendant Claims | Impaired | No (Deemed to Reject) |
| Class 15 | Other Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 16 | PPLP Interests | Impaired | No (Deemed to Reject) |
| Class 17 | PPI Interests | Impaired | No (Deemed to Reject) |
| Class 18 | Intercompany Interests | Unimpaired or Impaired | No (Presumed to Accept or Deemed to Reject) |

In general, if a Claim or Interest is unimpaired under a plan, section 1126(f) of the Bankruptcy Code deems the holder of such Claim or Interest to have accepted the plan, and thus, the holders of Claims in such unimpaired Classes are not entitled to vote on the plan. Because Classes 1, 2, 11(a) and 11(b) are unimpaired under the Plan, the holders of Claims and Interests in these Classes are not entitled to vote.

In general, if the holder of an impaired Claim or impaired Interest will not receive any distribution under a plan in respect of such Claim or Interest, section 1126(g) of the Bankruptcy Code deems the holder of such Claim or Interest to have rejected the plan, and thus the holders of Claims in such Classes are not entitled to vote on the plan. The holders of Claims and Interests in Classes 13, 14, 15, 16, and 17 are conclusively presumed to have rejected the Plan and are therefore not entitled to vote.

Holders of Interests in Classes 12 and 18 are either conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, such Holders are not entitled to vote to accept or reject the Plan.

**D.     Voting Procedures and Requirements**

The Bankruptcy Court can confirm the Plan only if it determines that the Plan complies with the technical requirements of chapter 11 of the Bankruptcy Code. One of these technical requirements is that the Bankruptcy Court find, among other things, that the Plan has been accepted by the requisite votes of all Classes of impaired Claims and Interests unless approval will be sought under section 1129(b) of the Bankruptcy Code in spite of the nonacceptance by one or more such Classes.

If you have any questions about (i) the procedures for voting your Claim or with respect to the packet of materials that you have received or (ii) the amount of your Claim, please contact the Debtors' Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the United States or Canada). If you wish to obtain (at no charge) an additional copy of the Plan, this Disclosure Statement, or other solicitation documents, you can obtain them from Debtors' Solicitation Agent by: (a.) calling (844) 217-0912 (toll-free) or (347) 859-8093 (international); (b.) visiting the Debtors' restructuring website at:

NAS1993

restructuring.primeclerk.com/purduepharma; (c.) writing to Purdue Pharma Ballot Processing, c/o Prime Clerk LLC, One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, NY 10165; and/or (d.) emailing purduepharmaballots@primeclerk.com with a reference to "Purdue Pharma" in the subject line and request paper copies of the corresponding materials.

### 1.    Ballots

Pursuant to Bankruptcy Rule 3017(c), March 10, 2021 shall be the record date for purposes of determining which holders of Claims are entitled to receive solicitation packages and, where applicable, vote on the Plan (the "**Voting Record Date**"). Accordingly, only holders of record as of the Voting Record Date that are otherwise entitled to vote under the Plan will receive a Ballot and may vote on the Plan.

In voting for or against the Plan, please use (i) only the Ballot sent to you with this Disclosure Statement or (ii) the online electronic ballot portal. If you are a holder of a Claim in Classes 3, 4, 5, 6, 7, 8, 9, 10(a), 10(b), and 11(c) and did not receive a Ballot, if your Ballot is damaged or lost or if you have any questions concerning voting procedures, please contact the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the United States or Canada) or by email at purduepharmaballots@primeclerk.com.

In addition, the Debtors intend to seek approval for an attorney representing four or more holders of Claims in certain Classes to submit the votes of such clients through a single master ballot (a "**Master Ballot**") so long as such attorney follows specified procedures associated therewith. An attorney electing to utilize such procedure will be required to collect and record the votes of such clients through customary and accepted practices, or obtain authority to procedurally cast such clients' votes. If your attorney has indicated that your vote will be submitted by Master Ballot, but you prefer to vote by means of an individual Ballot, you may contact the Solicitation Agent at (844) 217-0912 (domestic toll-free) or (347) 859-8093 (if calling from outside the United States or Canada) or by email at purduepharmaballots@primeclerk.com.

### 2.    Submitting Ballots

If you are entitled to vote to accept or reject the Plan, you should read carefully, complete and submit your Ballot in accordance with the instructions below.

For your vote to be counted, your Ballot must be properly completed, signed, and returned so that it is actually received by the Solicitation Agent, Prime Clerk LLC, by no later than the Voting Deadline, unless such time is extended in writing by the Debtors. If your Ballot is not received by the Solicitation Agent on or before the Voting Deadline, and such Voting Deadline is not extended by the Debtors as noted above, your vote will not be counted. Ballots must be delivered to the Solicitation Agent at the appropriate address listed below:

| If by E-Ballot: | If by standard or overnight | If by hand delivery: |
|---|---|---|
| Visit https://restructuring.primeclerk.com/purduepharma and click on the | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place | Purdue Pharma Ballot Processing c/o Prime Clerk, LLC One Grand Central Place |

NAS1994