**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br>BANKRUPTCY APPEALS | 21 cv 7532 (CM)<br>21 cv 7585 (CM)<br>21 cv 7961 (CM)<br>21 cv 7962 (CM)<br>21 cv 7966 (CM)<br>21 cv 7969 (CM)<br>21 cv 8034 (CM)<br>21 cv 8042 (CM)<br>21 cv 8049 (CM)<br>21 cv 8055 (CM) |
| This Filing Relates to | 21 cv 8139 (CM)<br>21 cv 8258 (CM)<br>21 cv 8271 (CM)<br>21 cv 8548 (CM)<br>21 cv 8566 (CM) |
| ALL MATTERS | On Appeal from the United<br>States Bankruptcy Court for the<br>Southern District of New York |

**AD HOC COMMITTEE OF NAS CHILDREN'S APPENDIX**

| | |
|---|---|
| **LEVENFELD PEARLSTEIN, LLC**<br>Harold D. Israel<br>2 North LaSalle St., Suite 1300<br>Chicago, Illinois 60602<br>Telephone: 312-346-8380<br>Facsimile: 312-346-8434<br>hisrael@lplegal.com | **MARTZELL, BICKFORD & CENTOLA**<br>Scott R. Bickford (LA 1165)<br>338 Lafayette Street<br>New Orleans, LA 70130<br>Telephone: 504-581-9065<br>Facsimile: 504-581-7635<br>sbickford@mbfirm.com |

# TABLE OF CONTENTS

**Bankruptcy Court Filings**

Schedules of Assets and Liabilities for Purdue Pharma L.P. ..............................................NAS0001

NAS Ad Hoc Committee's Limited Objection to Disclosure Statement and Solicitation
    Procedures Motion ......................................................................................................NAS1583

Disclosure Statement for Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue
    Pharma L.P. and its Affiliated Debtors ......................................................................NAS1683

Mediator's Report ........................................................................................................NAS2182

Final Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and
    Tabulation of Ballots Cast on the Fifth Amended Joint Chapter 11 Plan of Reorganization of
    Purdue Pharma L.P. and its Affiliated Debtors ...........................................................NAS2188

Declaration of Jesse DelConte ......................................................................................NAS2253

Declaration of Timothy J. Martin ..................................................................................NAS2323

Statement of the Raymond Sackler Family in Support of Confirmation of Debtors' Sixth
    Amended Plan of Reorganization and in Reply to Plan Objections ...........................NAS3048

Declaration of Jonathan Greville White. ........................................................................NAS3186

Modified Bench Ruling on Request for Confirmation of Eleventh Amended Joint Chapter
    11 Plan ......................................................................................................................NAS3230

Declaration of Cheryl Juaire in Support of the Opposition of the Official Committee of
    Unsecured Creditors To Motions for Stay Pending Appeal .......................................NAS3389

Declaration of Kara Trainor in Support of the Opposition of the Official Committee .....NAS3399

**Appeal Filings**

Memorandum in Support of Ad Hoc Committee of NAS Children's Motion for Leave to
    Intervene as Appellee Pursuant to Rule 8013(g) of the Federal Rules of Bankruptcy
    Procedure ...................................................................................................................NAS3408

Order on the Pending Motions to Intervene by the Ad Hoc Committee of NAS Children,
    the Multi-State Government Entities Group, and the Ad Hoc Group of Individual
    Victims of Purdue Pharma L.P., et al ........................................................................NAS3437

Brief of Appellant, William K. Harrington, United States Trustee ..................................NAS3439

**<u>Bankruptcy Court Transcripts</u>**

August 23, 2021 Transcript of Proceedings........................................................................NAS3510

November 9, 2021 Transcript of Proceedings ...................................................................NAS3898

| "Submit E-Ballot" link. | 60 East 42nd Street, Suite 1440 New York, NY 10165 | 60 East 42nd Street, Suite 1440 New York, NY 10165 |
|---|---|---|
| For your E-Ballot log-in credentials and further detail, please see your Ballot. | | If you plan to hand deliver your Ballot to Prime Clerk's office, please email purduepharmaballots@primeclerk.com at least twenty-four (24) hours in advance to arrange delivery. |

Ballots will not be accepted by telecopy, facsimile, email, or other electronic means of transmission (other than by E-Ballot); *provided* that Master Ballots may be delivered by email and must be delivered pursuant to the instructions set forth on each Master Ballots.

The method of delivery of Ballots to the Solicitation Agent is at the risk of each holder of a Claim, and such delivery will be deemed made only when the original Ballot is actually received by the Solicitation Agent. In all cases, sufficient time should be allowed to assure timely delivery. Any unsigned Ballot or Ballot lacking an original signature will not be counted in determining the acceptance or rejection of the Plan; *provided* that a Ballot cast via the Solicitation Agent's online "E-Balloting" portal or an executed Master Ballot returned electronically pursuant to the Master Ballot Solicitation Procedures will be deemed to contain an original signature. No Ballot should be sent to the Debtors, the Debtors' agents (other than the Solicitation Agent), or the Debtors' financial or legal advisors, and if so sent, and not otherwise properly and timely delivered to the Solicitation Agent, will not be counted. If no holders of Claims in a particular Class that is entitled to vote on the Plan vote to accept or reject the Plan, then such Class shall be deemed to accept the Plan.

If you are a holder of a Claim in Classes 6, 7, 8, 9, or 10 and are represented by an attorney who represents four or more clients that may hold Claims in Classes 6, 7, 8, 9, or 10, you may be eligible to have your attorney vote to accept or reject the Plan on your behalf via Master Ballot. In such case, your attorney will be required to collect and record your vote through customary and accepted practices, or obtain authority to procedurally cast your vote. In the event that your attorney votes to accept or reject the Plan on your behalf via Master Ballot and you also submit an individual ballot to accept or reject the Plan, your individual ballot will control over any duplicate vote on the Master Ballot.

### 3.      *Voting of Disputed Claims*

If any party in interest with appropriate standing has filed an objection to a Claim on or before July 7, 2021 at 4:00 p.m. (prevailing Eastern Time) (such claim, a "**Disputed Claim**"), such Disputed Claim is temporarily disallowed, except as otherwise provided in a stipulation, settlement, or other agreement filed by the Debtors or as ordered by the Court prior to or concurrent with entry of an order confirming the Plan, including pursuant to an order on any motion with the Court for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such claim for voting purposes filed regarding such Claim that is timely filed pursuant to procedures established by the Bankruptcy Court; *provided* that if the objection seeks to reclassify or reduce the allowed amount of such Claim, then such Claim is temporarily allowed for voting purposes in the reduced amount and/or as reclassified, except as otherwise provided in a

NAS1995

stipulation, settlement, or other agreement filed by the Debtors or as may be otherwise ordered by the Court prior to or concurrent with entry of an order confirming the Plan.

## E.     Acceptance of the Plan

As a condition to confirmation of the Plan, the Bankruptcy Code requires that each class of impaired claims vote to accept a plan, except under certain circumstances. *See* "*Confirmation Without Necessary Acceptances; Cramdown*" below. A class of claims or interests that is unimpaired under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is impaired unless the plan (i) leaves unaltered the legal, equitable, and contractual rights to which the claim or interest entitles the holder of such claim or interest or (ii) cures any default, reinstates the original terms of the obligation, and does not otherwise alter the legal, equitable, or contractual rights to which the claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by an impaired class as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class. Only those holders that are eligible to vote and that actually vote to accept or reject the plan are counted for purposes of determining whether these dollar and number thresholds are met. Thus, a class of claims will have voted to accept a plan only if two-thirds in amount and a majority in number that actually vote cast their ballots in favor of acceptance. Under section 1126(d) of the Bankruptcy Code, a class of interests has accepted a plan if holders of such interests holding at least two-thirds in amount that actually vote have voted to accept the plan. Holders of claims or interests who fail to vote are not counted as either accepting or rejecting a plan.

In addition to this voting requirement, section 1129 of the Bankruptcy Code requires that a plan be accepted by each holder of a claim or interest in an impaired class or that the plan otherwise be found by a court to be in the best interests of each holder of a claim or interest in such class. *See* "Best Interests Test" below. Moreover, each impaired class must accept the plan for the plan to be confirmed without application of the "fair and equitable" and "unfair discrimination" tests set forth in section 1129(b) of the Bankruptcy Code discussed below. *See* "*Confirmation Without Necessary Acceptances; Cramdown*" below.

## F.     Confirmation Without Necessary Acceptances; Cramdown

In the event that any impaired class of claims or interests does not accept a plan, a debtor nevertheless may move for confirmation of the plan. A plan may be confirmed, even if it is not accepted by all impaired classes, if the plan has been accepted by at least one impaired class of claims and the plan meets the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code requires that a court find that a plan (i) "does not discriminate unfairly" and (ii) is "fair and equitable," with respect to each non-accepting impaired class of claims or interests. Here, because holders of Claims and Interests in Classes 13, 14, 15, 16, and 17 are deemed to reject the Plan, the Debtors will seek confirmation of the Plan from the Bankruptcy Court by satisfying the "cramdown" requirements set forth in section 1129(b) of the Bankruptcy Code. The Debtors believe that such requirements are

NAS1996

satisfied, as no holder of a Claim or Interest junior to those in Classes 13, 14, 15, 16, and 17 will receive any property under the Plan.

A plan "does not discriminate unfairly" if (i) the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are similar to those of the non-accepting class and (ii) no class receives payments in excess of that which it is legally entitled to receive for its claims or interests. The Debtors believe that, under the Plan, all impaired Classes of Claims and Interests are treated in a manner that is consistent with the treatment of other Classes of Claims and Interests that are similarly situated, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the Allowed Claims or Allowed Interests in such Class. Accordingly, the Debtors believe that the Plan does not discriminate unfairly as to any impaired Class of Claims or Interests.

The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." In order to determine whether a plan is "fair and equitable," the Bankruptcy Code establishes "cramdown" tests for secured creditors, unsecured creditors, and equity holders, as follows:

1. ***Secured Creditors***. Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred Cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim, or (iii) subject to section 363(k) of the Bankruptcy Code, the property securing the claim is sold free and clear of liens, with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds to be as provided in clause (i) or (ii) above.

2. ***Unsecured Creditors***. Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

3. ***Equity Interests***. Either (i) each holder of an equity interest will receive or retain under the plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled or the value of the interest or (ii) the holder of an interest that is junior to the non-accepting class will not receive or retain any property under the plan.

As discussed above, the Debtors believe that the distributions provided under the Plan satisfy the "fair and equitable" standard, where required.

## G.  Classification

The Bankruptcy Code requires that, for purposes of treatment and voting, a chapter 11 plan divide the different claims (excluding administrative claims) against, and equity interests in, a debtor into separate classes based upon their legal nature. Pursuant to section 1122 of the

NAS1997

Bankruptcy Code, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class. The Debtors believe that the Plan classifies all Claims and Interests in compliance with the provisions of the Bankruptcy Code because valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan. Accordingly, the classification of Claims and Interests in the Plan complies with section 1122 of the Bankruptcy Code.

## ARTICLE VI

## FEASIBILITY AND BEST INTERESTS OF CREDITORS

### A. Best Interests Test

As noted above, even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a court to determine that such plan is in the best interests of all holders of claims or interests that are impaired by that plan and that have not accepted the plan. The "best interests" test, as set forth in section 1129(a)(7) of the Bankruptcy Code, requires a court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would recover if the debtor were liquidated under chapter 7 of the Bankruptcy Code (the "**Best Interests Test**").

To calculate the probable distribution to holders of each impaired class of claims and interests if the debtor were liquidated under chapter 7, a court must first determine the aggregate dollar amount that would be generated from a debtor's assets if its chapter 11 cases were converted to chapter 7 cases under the Bankruptcy Code. To determine if a plan is in the best interests of each impaired class, the present value of the distributions from the proceeds of a liquidation of the debtor's unencumbered assets and properties, after subtracting the amounts attributable to the costs, expenses and administrative claims associated with a chapter 7 liquidation, must be compared with the value offered to such impaired classes under the plan. If the hypothetical liquidation distribution to holders of claims or interests in any impaired class is greater than the distributions to be received by such parties under the plan, then such plan is not in the best interests of the holders of claims or interests in such impaired class.[155]

### B. Liquidation Analysis

Amounts that a holder of Claims and Interests in Impaired Classes would receive in a hypothetical chapter 7 liquidation are discussed in the liquidation analysis of the Debtors prepared by the Debtors' management with the assistance of its advisors (the "**Liquidation Analysis**"), which is attached hereto as **Appendix B**.

---

[155] To the extent relevant for purposes of the Best Interest Test, the Liquidation Analysis assumes that, in a chapter 7 scenario, Holders of Claims and Interests and other non-Debtor Persons would retain their direct claims, if any, against the Shareholder Released Parties. Section III.AA(2)(ii)(c) above contains a discussion of the value of such claims in a chapter 7 scenario.

NAS1998

As described in the Liquidation Analysis, underlying the analysis are a number of estimates and assumptions that, although developed and considered reasonable by the Debtors' management and advisors, are inherently subject to significant uncertainties and contingencies beyond the control of the Debtors and their management. The Liquidation Analysis is based on assumptions with regard to liquidation decisions and circumstances that are subject to change. Accordingly, the values reflected in the Liquidation Analysis might not be realized if the Debtors were, in fact, to undergo a liquidation.

This Liquidation Analysis is solely for the purposes of (i) providing "adequate information" under section 1125 of the Bankruptcy Code to enable the holders of Claims and Interests entitled to vote under the Plan to make an informed judgment about the Plan and (ii) providing the Bankruptcy Court with appropriate support for the satisfaction of the "Best Interests Test" pursuant to section 1129(a)(7) of the Bankruptcy Code, and should not be used or relied upon for any other purpose, including the purchase or sale of securities of, or Claims or Interests in, the Debtors or any of their Affiliates.

The Debtors do not intend to and do not undertake any obligation to update or otherwise revise the Liquidation Analysis to reflect events or circumstances existing or arising after the date the Liquidation Analysis is initially filed or to reflect the occurrence of unanticipated events. Therefore, the Liquidation Analysis may not be relied upon as a guarantee or other assurance of the actual results that will occur.

In deciding whether to vote to accept or reject the Plan, holders of Claims must make their own determinations as to the reasonableness of any assumptions underlying the Liquidation Analysis and the reliability of the Liquidation Analysis.

## C.     Application of the Best Interests Test

The Debtors believe that, based on the Liquidation Analysis, the Plan satisfies the Best Interests Test. As the Plan and the Liquidation Analysis attached hereto as **Appendix B** indicate, Confirmation of the Plan will provide each holder of an Allowed Claim in an Impaired Class with an equal or greater recovery than the value of any distributions if the Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code.

## D.     Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires, as a condition to Confirmation, that the Bankruptcy Court find that Confirmation is not likely to be followed by the liquidation of the Debtors or the need for further financial reorganization, unless such liquidation is contemplated by the Plan. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtors' management has prepared the financial projections, as set forth in **Appendix C** (the "**Financial Projections**").

The Debtors have prepared the Financial Projections solely for the purpose of providing "adequate information" under section 1125 of the Bankruptcy Code to enable the holders of Claims entitled to vote under the Plan to make an informed judgment about the Plan and should not be used or relied upon for any other purpose, including the purchase or sale of securities of, or Claims or Interests in, the Debtors.

308

NAS1999

In addition to the cautionary notes contained elsewhere in this Disclosure Statement and in the Financial Projections, it is underscored that the Debtors make no representation as to the accuracy of the Financial Projections or their or NewCo's ability to achieve the projected results. Many of the assumptions on which the Financial Projections are based are subject to significant uncertainties. Inevitably, some assumptions will not materialize, and unanticipated events and circumstances may affect the financial results. Therefore, the actual results achieved throughout the Projection Period (as defined in the Financial Projections) may vary from the Financial Projections, and the variations may be material. All holders of Claims in the impaired Classes are urged to examine carefully all of the assumptions on which the Financial Projections are based in connection with their evaluation of, and voting on, the Plan.

Based upon the Financial Projections, the Debtors believe that they will be able to make all distributions and payments under the Plan and that confirmation of the Plan is not likely to be followed by liquidation of NewCo or the need for further restructuring.

## E.    Valuation of the Debtors

In conjunction with formulating the Plan and satisfying its obligations under section 1129 of the Bankruptcy Code, the Debtors, utilizing management's forecasts and with the assistance of PJT, produced the valuation analysis (the "**Valuation Analysis**") estimating the going concern value of the Debtors that is described in **Appendix D** attached hereto and incorporated herein by reference.

## ARTICLE VII

## SECURITIES LAW MATTERS

This Disclosure Statement was not approved by the SEC or any state regulatory authority. Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or statements contained herein, and any representation to the contrary is unlawful.

The Plan provides for the offer, issuance, and distribution of interests in the Abatement Trusts, NOAT and the Tribe Trust (collectively, the "**Trust Interests**"). The Debtors believe any and all Trust Interests and the right to receive distributions on account of the Trust Interests will not constitute "securities" as defined in section 2(a)(1) of the Securities Act, section 101(49) of the Bankruptcy Code, and applicable state and local securities laws, and will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and any applicable state or local securities laws and regulations. The Trust Interests will not be evidenced by any certificate, security, receipt, or in any other form or manner whatsoever, except as maintained on the books and records of the applicable trust. Further, the Trust Interests shall not be listed for trading on any national securities exchange.

If it is determined that the Trust Interests, the right to receive distributions on account of Trust Interests constitute "securities," the Debtors believe that the issuance and distribution of the Trust Interests satisfies the requirements of section 1145(a)(1) of the Bankruptcy Code and

NAS2000

are, therefore, exempt from registration under the Securities Act and state and local securities laws.

To the extent the Trust Interests, the right to receive distributions on account of Trust Interests are determined to be "securities" that do not satisfy the requirements of section 1145(a)(1) of the Bankruptcy Code, the Debtors believe that such interests are issuable without registration under the Securities Act under section 4(a)(2) of the Securities Act. Section 4(a)(2) of the Securities Act provides that the issuance of securities by an issuer in transactions not involving any public offering are exempt from registration under the Securities Act.

## ARTICLE VIII

## CERTAIN RISK FACTORS TO BE CONSIDERED PRIOR TO VOTING

THE PLAN AND ITS IMPLEMENTATION ARE SUBJECT TO CERTAIN RISKS, INCLUDING, BUT NOT LIMITED TO, THE RISK FACTORS SET FORTH BELOW. HOLDERS OF CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS, AS WELL AS THE OTHER INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND THE DOCUMENTS DELIVERED TOGETHER HEREWITH REFERRED TO OR INCORPORATED BY REFERENCE HEREIN, BEFORE DECIDING WHETHER TO VOTE TO ACCEPT OR REJECT THE PLAN. THESE FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION.

A.     **Risks Associated with the Bankruptcy Process**

1.     *Plan Confirmation*

The Debtors can make no assurances that the conditions to confirmation of the Plan will be satisfied or waived or that they will receive the requisite acceptances to confirm the Plan. Further, if the requisite acceptances are not received, the Debtors may seek to accomplish an alternative chapter 11 plan and obtain acceptances to an alternative plan for the Debtors, or otherwise, that may not have the support of the holders of Claims and/or may be required to liquidate these Estates under chapter 7 or 11 of the Bankruptcy Code. There can be no assurance that the terms of any such alternative restructuring arrangement or plan would be similar to or as favorable to Creditors as those proposed in the Plan.

Even if the Debtors receive the requisite acceptances, there is no assurance that the Bankruptcy Court will confirm the Plan. Even if the Bankruptcy Court determined that the Disclosure Statement and the balloting procedures and results were appropriate, the Bankruptcy Court could still decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met. Moreover, there can be no assurance that modifications to the Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes. If the Plan is not confirmed, it is unclear what distributions holders of Claims ultimately would receive with respect to their Claims in a subsequent plan.

NAS2001

### 2. Potential Appeals of Confirmation Order

If the Confirmation Order is entered, certain parties may appeal such Order. Any appealing party may seek a stay of judgment with respect to the Confirmation Order, which, if granted by the Bankruptcy Court or the district court with appellate jurisdiction with respect to the Confirmation Order, would maintain the status quo that has existed during the Chapter 11 Cases while an appeal remains pending. Absent the grant of a stay pending appeal (or if applicable conditions to the grant of such a stay, which could include a requirement to post a supersedeas bond, are not satisfied), the Debtors and other parties will have the authority to execute upon and enforce the Confirmation Order so long as the Confirmation Order has not been reversed on appeal. Accordingly, absent a stay pending appeal, the Effective Date may occur, subject to the terms and conditions precedent in the Plan, and the Plan may be substantially consummated during the pendency of the appeal. Upon substantial consummation of the Plan, any appeal of the Confirmation Order may become equitably moot. *See, e.g.*, *In re Chateaugay Corp.*, 10 F.3d 944 (2d Cir. 1993). If any appeal is found not to be equitably moot in its entirety and confirmation of the Plan is reversed on appeal, the form of available relief and the impact of such relief on the post-Effective Date structure contemplated by the Plan is difficult to predict, but such relief could potentially have a materially adversely impact on the timing or amount of distributions contemplated under the Plan.

### 3. Objections to Classification of Claims

Section 1122 of the Bankruptcy Code requires that the Plan classify Claims against, and Interests in, the Debtors. The Bankruptcy Code also provides that the Plan may place a Claim or Interest in a particular Class only if such Claim or Interest is substantially similar to the other Claims or Interests of such Class. The Debtors believe that all Claims and Interests have been appropriately classified in the Plan.

To the extent that the Bankruptcy Court finds that a different classification is required for the Plan to be confirmed, the Debtors would seek (i) to modify the Plan to provide for whatever classification might be required for confirmation and (ii) to use the acceptances received from any holder of Claims pursuant to this solicitation for the purpose of obtaining the approval of the Class or Classes of which such holder ultimately is deemed to be a member. Any such reclassification of Claims, although subject to the notice and hearing requirements of the Bankruptcy Code, could adversely affect the Class in which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required for approval of the Plan. There can be no assurance that the Bankruptcy Court, after finding that a classification was inappropriate and requiring a reclassification, would approve the Plan based upon such reclassification. Except to the extent that modification of classification in the Plan requires resolicitation, the Debtors will, in accordance with the Bankruptcy Code and the Bankruptcy Rules, seek a determination by the Bankruptcy Court that acceptance of the Plan by any holder of Claims pursuant to this solicitation will constitute a consent to the Plan's treatment of such holder, regardless of the Class as to which such holder is ultimately deemed to be a member.

### 4. Failure to Consummate the Plan

311

NAS2002

As of the date of this Disclosure Statement, there can be no assurance that the conditions to consummation of the Plan will be satisfied or waived. Accordingly, even if the Plan is confirmed by the Bankruptcy Court, there can be no assurance that the Plan will be consummated and the restructuring completed.

5.      **The Chapter 11 Cases May Be Converted to Cases under Chapter 7 of the Bankruptcy Code**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in a chapter 11 plan because of (i) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than reorganizing or selling the business as a going concern at a later time in a controlled manner, (ii) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (iii) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, including Claims resulting from the rejection of unexpired leases and other executory contracts in connection with cessation of operations.

6.      **Risk of Delayed Confirmation or Effective Date**

Although the Debtors expect that the Plan will be confirmed on or shortly after the Confirmation Hearing scheduled for August 9, 2021, there is a risk that confirmation of the Plan will be delayed. The occurrence of the Effective Date is subject to the receipt of all authorizations, consents, regulatory approvals, rulings and documents that are necessary to implement and effectuate the Plan. The governmental approval process could take substantial time after confirmation of the Plan. Any delay in the governmental approval processes, or the failure to obtain such approvals, could prolong the Chapter 11 Cases (or result in a liquidation of the Debtors), and reduce recoveries available to creditors.

7.      **Plan Releases, Injunctions and Exculpations May Not Be Approved**

There can be no assurance that the Plan releases, injunctions and exculpations as provided in Article X of the Plan, will be granted. Failure of the Bankruptcy Court to grant such relief may result in a plan of reorganization that differs from the Plan or the Plan not being confirmed.

8.      **Channeling Injunction**

The Channeling Injunction, which, among other things, bars all persons that have held or asserted, or that hold or assert Channeled Claims or any Released Claims arising out of or related thereto against the Released Parties, is a necessary element of the Plan. There is no guarantee that the validity and enforceability of the Channeling Injunction or the application of the Channeling Injunction to the Channeled Claims and Released Claims arising out of or related thereto will not be challenged, either before or after Confirmation of the Plan.

NAS2003

### 9. Insurance Neutrality Provisions

Certain of Debtors' insurers assert that the language in Section 5.10 of the Plan, titled "Insurance Neutrality," does not adequately protect their rights. They have proposed alternative insurance neutrality language to the Debtors, which is filed at Docket No. 2710, Exhibit A, in Case No. 19-23649. Those insurers contend that the language they have proposed is consistent with language in other plans of reorganization that have been confirmed, and confirmation orders that have been entered, in this district, and they further contend that this Court, or a court on appeal, may require that such language be included within the Plan as a condition to confirmation.

### 10. Credit Risk Attendant to Settlement of Claims Against the Sackler Families

As described in the Shareholder Settlement Term Sheets attached hereto as **Appendix G**, the Shareholder Settlement Agreement will provide for the Sackler Parties to remit $4.275 billion over nine years (or ten years if certain amounts are paid ahead of schedule in the first five years) to the Master Disbursement Trust. The Shareholder Settlement Agreement will provide that the accounts holding all cash proceeds received by the Sackler Parties from the IACs (subject to certain permitted withdrawals as described in the Shareholder Settlement Term Sheets), all equity interests in certain holding companies of the IACs owned by the Sackler Parties (subject to exclusions as may be agreed in connection with the Shareholder Settlement Agreement), as well as additional collateral as set forth in the Shareholder Settlement Term Sheets, will serve as collateral with respect to the Required Settlement Payments and other obligations under the Shareholder Settlement Agreement. Remedies for breach of the Shareholder Settlement Agreement may include, without limitation, acceleration of the unpaid and unfunded obligations of the defaulting Sackler Parties, voiding the releases provided pursuant to the Plan applicable to the Sackler Parties that are in breach and certain other members of the Sackler Entities related to the breaching Sackler Parties, foreclosure by the Master Disbursement Trust on the collateral provided under the Shareholder Settlement Agreement, enforcement of confessions of judgment by the applicable Sackler Parties admitting the obligations that have come due and certain other remedies to be mutually agreed. However, some or all of the Sackler Parties may fail to make such payments in whole or in part (or fail to make timely payments) notwithstanding the satisfaction of all conditions to payment in the Shareholder Settlement Agreement and the covenants contained therein. Such an event presents a credit risk to the Master Disbursement Trust and, to the extent the Master Disbursement Trust is not able to collect such unpaid amounts through the enforcement of remedies under the Shareholder Settlement Agreement, could prevent the Master Disbursement Trust from making required or anticipated payments to the Creditor Trusts. Moreover, as described in more detail in the Shareholder Settlement Term Sheets, Required Settlement Payments payable on June 30, 2023 or later, as well as certain other payments to be made by the Sackler Parties to the Master Distribution Trust pursuant to the Shareholder Settlement Agreement, may be made into escrow or paused, depending on whether the Confirmation Order has been appealed and the status of such appeal. As such, to the extent the Confirmation Order is appealed, payments to the Master Disbursement Trust under the Shareholder Settlement Agreement may be deferred and, to the extent the Confirmation Order is not affirmed, the Master Disbursement Trust may not receive payments and previously received amounts may be credited (or amounts held in escrow may be returned) to the Sackler Parties under the Shareholder Settlement Agreement.

NAS2004

### 11. The New Jersey District Court May not Approve the Plea Agreement

There can be no assurance that the Plea Agreement will be accepted by the New Jersey District Court at the sentencing hearing, which is a condition precedent to the occurrence of the Effective Date.

### 12. Recovery on Account of Other General Unsecured Claims Depends on the Aggregate Amount of Allowed Other General Unsecured Claims

The Debtors estimate that, following completion of Claims litigation and related matters, the Other General Unsecured Claim Cash will exceed the aggregate amount of Allowed Other General Unsecured Claims. This estimate is based on certain assumptions based on a variety of factors. Should these underlying assumptions prove incorrect, the actual Allowed Other General Unsecured Claims may differ from the Debtors' estimates, and such differences could be material. Because distributions to Holders of Other General Unsecured Claims are linked to the value of Allowed Other General Unsecured Claims, any material increase in the amount of Allowed Other General Unsecured Claims in excess of the Other General Unsecured Claim Cash would materially reduce the recovery to Holders of Other General Unsecured Claims under the Plan.

### 13. Recoveries on Account of Federal Government Unsecured Claims May Impact the Amount of Distributions Made to NOAT and the Tribe Trust

Under the terms of the Plan, residual value after satisfying other obligations under the Plan will effectively ultimately be distributed to NOAT and the Tribe Trust, in the proportions determined pursuant to the Plan. As a result, the amount of distributions to NOAT and the Tribe Trust are linked to, *inter alia*, the amount of distributions on account of the Allowed Federal Government Unsecured Claims. The amount of distributions on account of the Allowed Federal Government Unsecured Claims remains to be agreed with the Holders of such Claims or to be determined pursuant to the Plan. The amount of such distribution that is ultimately made will reduce the amount of distributions to NOAT and the Tribe Trust.

### 14. Co-Defendant Claims May Reduce or Delay Distributions to NOAT and the Tribe Trust

Under the terms of the Plan, residual value after satisfying other obligations under the Plan will ultimately be distributed to NOAT and the Tribe Trust, in the proportions determined pursuant to the Plan. As a result, the amount and timing of distributions to NOAT and the Tribe Trust would be impacted by any distributions made to or funds set aside in a disputed claims reserve on account of, Co-Defendant Claims. To the extent that Debtors are unsuccessful in Disallowing or subordinating the Co-Defendant Claims in whole or in part, prior to the Effective Date a reserve may need to be established on account of any unresolved Co-Defendant Claims, which would delay distributions to NOAT and the Tribe Trust, and any ultimate recoveries by the holders of such Co-Defendant Claims would reduce the amount of distributions to NOAT and the Tribe Trust.

NAS2005

B. **Risks Associated with the Debtors' and NewCo's Business Operations and Financial Condition**

1. *NewCo May Not Be Able to Achieve Its Projected Financial Results*

Actual financial results may differ materially from the Financial Projections. If the Debtors and/or NewCo do not achieve projected revenue or cash flow levels, NewCo may lack sufficient liquidity to continue operating its business consistent with the Financial Projections after the Effective Date. The Financial Projections represent management's view based on currently known facts and hypothetical assumptions about their future operations; they do not guarantee NewCo's future financial performance.

2. *NewCo's Effective Tax Rate May Vary From Projections*

The Financial Projections include assumptions as to NewCo's effective tax rate in future years. This assumed tax rate may be higher or lower than NewCo's actual tax rate, which will vary depending upon available tax deductions and changes in statutory tax rates.

3. *The Financial Projections Are Subject to Inherent Uncertainty Due to the Numerous Assumptions upon Which They Are Based*

The Financial Projections are based on numerous assumptions including, without limitation, the timing, confirmation and consummation of the Plan in accordance with its terms, the anticipated future performance of the Debtors and NewCo, general business and economic conditions, and other matters, many of which are beyond the control of the Debtors and some or all of which may not materialize. Particular uncertainties with respect to the Debtors' operations and financial results arise from the risks and uncertainties relating to, among other things, the following: changes in the demand for the Debtors' pharmaceutical products; legislation and regulations relating to the pharmaceutical industry; operational, permit, and labor factors; fluctuations in the amount of cash the Debtors generate from operations; and numerous other matters of national, regional and global scale, including those of a political, economic, business, competitive, or regulatory nature. Because the actual results achieved throughout the periods covered by the Financial Projections may vary from the projected results, the Financial Projections should not be relied upon as an assurance of the actual results that will occur.

Except with respect to the Financial Projections and except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that might occur subsequent to the date hereof. Such events could have a material impact on the information contained in this Disclosure Statement. Neither the Debtors nor NewCo intend to update the Financial Projections. The Financial Projections, therefore, may not reflect the impact of any subsequent events not already accounted for in the assumptions underlying the Financial Projections.

4. *The Debtors Will Be Subject to the Risks and Uncertainties Associated with the Chapter 11 Cases*

For the duration of the Chapter 11 Cases, the Debtors' ability to operate, develop and execute a business plan, and continue as a going concern, will be subject to the risks and

NAS2006

uncertainties associated with bankruptcy. These risks include the following: (i) the ability to develop, confirm and consummate the Plan and transactions contemplated thereunder; (ii) the ability to obtain Bankruptcy Court approval with respect to motions filed in the Chapter 11 Cases from time to time; (iii) the ability to maintain relationships with suppliers, vendors, service providers, customers, employees and other third parties; (iv) the ability to maintain contracts that are critical to the Debtors' operations; (v) the ability of third parties to seek and obtain Bankruptcy Court approval to terminate contracts and other agreements with the Debtors; (vi) the ability of third parties to seek and obtain Bankruptcy Court approval to terminate or shorten the exclusivity period for the Debtors to propose and confirm a chapter 11 plan, to appoint a chapter 11 trustee, or to convert the Chapter 11 Cases to chapter 7 proceedings; and (vii) the actions and decisions of the Debtors' creditors and other third parties who have interests in the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

These risks and uncertainties could affect the Debtors' businesses and operations in various ways. For example, negative events associated with the Chapter 11 Cases could adversely affect the Debtors' relationships with suppliers, service providers, customers, employees and other third parties, which in turn could adversely affect the Debtors' operations and financial condition. Also, the Debtors will need the prior approval of the Bankruptcy Court for transactions outside the ordinary course of businesses, which may limit the Debtors' ability to respond timely to certain events or take advantage of certain opportunities. Because of the risks and uncertainties associated with the Chapter 11 Cases, the Debtors cannot accurately predict or quantify the ultimate impact of events that occur during the Chapter 11 Cases that may be inconsistent with the Debtors' plans.

### 5. *Certain Claims May Not Be Discharged and May Have a Material Adverse Effect on the Debtors' Financial Condition and Results of Operations*

The Bankruptcy Code provides that the confirmation of a plan of reorganization discharges a debtor from substantially all debts arising prior to confirmation. With few exceptions, all Claims that arise prior to the Debtors' filing of their petitions or before confirmation of the plan of reorganization (i) would be subject to compromise and/or treatment under the plan of reorganization, and/or (ii) would be discharged and/or released in accordance with the terms of the plan of reorganization. Any Claims not ultimately discharged or released through a plan of reorganization could be asserted against NewCo and may have an adverse effect on NewCo's financial condition and results of operations.

### 6. *Regulatory Risk*

As a manufacturer of controlled substances and prescription and over-the-counter pharmaceutical products, the Debtors are subject to regulatory oversight by numerous governmental entities. For example, the Debtors must comply with laws, regulations, guidance documents and standards promulgated by the FDA, the DEA, the Department of Health and Human Services (including its Office of Inspector General), the Center for Medicare and Medicaid Services ("**CMS**"), the Environmental Protection Agency, state boards of pharmacy, and state controlled substance authorities. In particular, the Debtors interact with the FDA on a regular basis in connection with, among other things, new drug applications, abbreviated new drug applications and monitoring of production facilities. The Debtors regularly interact with the

NAS2007

DEA in connection with controlled substance facility registrations and obtaining quota to manufacture controlled substances. The Debtors also interact with state agencies regarding their manufacturing and selling of controlled substances and pharmaceutical products and the licenses required to engage in these activities. The Debtors are also subject to healthcare fraud and abuse laws, such as the Federal Anti-Kickback Statute, the Federal False Claims Act, and state equivalents thereof.

If the Debtors fail to comply with applicable federal and state laws and regulations, the Debtors could face substantial enforcement actions, including civil, criminal and administrative penalties including product seizures or injunctions, damages, fines and exclusion from federal or state healthcare programs, and their financial condition and operations could be adversely affected. Although compliance programs can mitigate the risk of investigation and prosecution for violations of these laws, the risks cannot be entirely eliminated. In addition, in order to operate their businesses, the Debtors are required to maintain licenses under the laws of various states, which may be impacted by the DOJ Resolution.

Moreover, continued compliance with prevailing laws and regulations imposes significant financial and operational costs on the Debtors, including because these laws and regulations are subject to ongoing government review and interpretation, which can result in shifts in review protocol, government interpretation, and government implementation. Additionally, governments and regulators may modify existing laws or regulations or impose new ones, which may increase the Debtors' costs of compliance significantly. All of these factors can have material impacts on the Debtors' businesses.

### 7. *The Debtors' Revenues Are Highly Dependent on Medicare, Medicaid, and Commercial Payor Payment Rates*

The Debtors ability to generate revenue relies on the prescribing of their medicines which are reimbursed by commercial managed care and government managed Medicare and Medicaid programs. The debtors provide discounts and rebates to participating managed care organizations and federal and/or state governments to maintain patient access to their medications. The future revenue of the debtors is highly dependent on the continued formulary coverage from these entities.

Payment rates for Medicaid reimbursable products are set by law and regulation and are therefore beyond the Debtors' ability to control. Prevailing reimbursement for the Debtors' products could be significantly reduced in the future, materially impairing the Debtors' revenue. For example, pursuant to the Debtors' national rebate agreement with the Department of Health and Human Services, Medicaid covers a number of the Debtors' products under a designated rebate program. In accordance with this program, the Debtors are also required to comply with the United States Department of Health and Human Services' 340B Drug Pricing Program (the "**340B Program**"). Moreover, certain products sold by the Debtors could cease to be reimbursed by Medicaid at all. More generally, ongoing healthcare reform efforts, including efforts to curb the costs of prescription medications, also may impact the Debtors' revenues in the future.

The Debtors business also critically relies on contractual agreements with private third party payors, such as insurance companies or pharmacy benefit managers. The Debtors have

317

NAS2008

entered into several contracts with private insurers with commercial and/or Medicare Part D business lines and with the CMS to cover certain of their products, pursuant to which the Debtors agreed to pay the private insurers or their representatives which administer the program or CMS certain rebates related to these programs. Rebate rates required by these payors could change materially depending on a variety of factors, including regulatory changes and cost pressures affecting the commercial payors' own businesses. In particular, commercial payors are highly cost sensitive as a result of the rising cost of healthcare and other macroeconomic factors and may pressure the Debtors to accept higher rebate rates as a result. The future revenues of the debtors is highly dependent on the private commercial payers maintaining the Debtors products on their list of drugs that are given formulary coverage. If formulary coverage is lost it is unlikely to be regained in the future by the debtors. All of the foregoing may materially impact the Debtors' performance in ways that may be difficult to predict or mitigate.

### 8. The Debtors' Revenues Are Highly Dependent on Wholesale Distribution Channels

The Debtors' primary channel for sale of prescription products is through wholesalers (collectively, the "**Distributors**") who distribute these products to retail drugstores, pharmacies, hospitals, long-term care and other mail, retail and non-retail institutions in the United States. These buyers, in turn, dispense these products to patients. If the Distributors refuse to do business with NewCo due to the rejection of their contracts or otherwise, NewCo would lose access to its primary channel for sale of prescription products, which would likely have a material adverse impact on its operations and revenues and make sale of NewCo at a future date more difficult. Distributors McKesson Corporation, AmerisourceBergen Drug Corporation and Cardinal Health Inc. accounted for approximately 88% of the Debtors' gross sales as of December 31, 2020.

### 9. The Debtors' Intellectual Property May Be Misappropriated or the Debtors May Be Subject to Infringement Claims

The Debtors rely on intellectual property rights, including licensing arrangements and third-party nondisclosure and assignment agreements, to conduct their businesses. The Debtors' failure to adequately maintain and protect its intellectual property could materially affect the Debtors' intellectual property rights. The Debtors' intellectual property rights could be challenged, invalidated or circumvented by others and may be insufficient in scope and strength to meaningfully protect the Debtors. While the Debtors attempt to protect their intellectual property rights, the Debtors cannot guarantee that they will be successful in defending such rights against third parties who may infringe upon them. Similarly, it is possible that third parties will make claims of infringement against the Debtors, and there is no guarantee that the Debtors will successfully defend or otherwise resolve such claims. Any such claims, even if meritless, could disrupt or impose significant costs on the Debtors' businesses.

## C. Miscellaneous Risk Factors and Disclaimers

### 1. The Financial Information Is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit Was Performed

NAS2009

In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to assure the accuracy of the financial information provided in this Disclosure Statement, and while the Debtors believe that such financial information fairly reflects their financial condition, the Debtors are unable to warrant or represent that the financial information contained in this Disclosure Statement (or any information in any of the exhibits to the Disclosure Statement) is without inaccuracies.

### 2. *Certain Tax Considerations*

There are a number of material income tax considerations, risks and uncertainties associated with the consummation of the Plan. Holders of Claims and other interested parties should read carefully the discussion in "*Certain U.S. Federal Income Tax Consequences of the Plan*" below.

### 3. *No Legal or Tax Advice Is Provided by This Disclosure Statement*

This Disclosure Statement is not legal advice to any person or Entity. The contents of this Disclosure Statement should not be construed as legal, business or tax advice. Each reader should consult its own legal counsel and accountant with regard to any legal, tax and other matters concerning its Claim. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote to accept or reject the Plan or whether to object to Confirmation.

### 4. *No Admissions Made*

The information and statements contained in this Disclosure Statement will neither (i) constitute an admission of any fact or liability by any Entity (including the Debtors) nor (ii) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, NewCo, Holders of Allowed Claims or Interests, or any other parties in interest.

### 5. *Failure to Identify Litigation Claims or Projected Objections*

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim is, or is not, identified in this Disclosure Statement. The Debtors may seek to investigate, file, and prosecute Claims and may object to Claims after Confirmation and Consummation of the Plan, irrespective of whether this Disclosure Statement identifies such Claims or objections to Claims.

### 6. *Information Was Provided by the Debtors and Was Relied Upon by the Debtors' Advisors*

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement and the exhibits to the Disclosure Statement, they have not independently verified the information contained in this Disclosure Statement or the information in the exhibits to the Disclosure Statement.

NAS2010

### 7. The Debtors Have No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors have used their reasonable business judgment so that the information provided in this Disclosure Statement and in the Plan is as accurate as possible, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

### 8. No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or relating to the Debtors, the Chapter 11 Cases, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure voting Holders' acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement, should not be relied upon by voting Holders in arriving at their decision. Voting Holders should promptly report unauthorized representations or inducements to counsel to the Debtors and the Office of the United States Trustee for the Southern District of New York.

## ARTICLE IX

## CERTAIN U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

### A. General

The following discussion summarizes certain material U.S. federal income tax consequences of the implementation of the Plan to the Debtors and to certain U.S. Holders (as defined below) of Claims. This summary does not address the federal income tax consequences to: (i) holders of Claims who are deemed to have rejected the Plan in accordance with the provisions of section 1126(g) of the Bankruptcy Code; (ii) holders whose Claims are Unimpaired; (iii) holders of Federal Government Unsecured Claims; or (iv) purchasers of Claims following the Effective Date.

This summary is based on the IRC, existing and proposed Treasury Regulations, judicial decisions, and published administrative rules and pronouncements of the IRS as in effect on the date of this Disclosure Statement, all of which are subject to change, possibly on a retroactive basis. Any such change could significantly affect the U.S. federal income tax consequences described below. Many of the tax consequences described herein are uncertain. The Debtors have not requested an opinion of counsel or a ruling from the IRS with respect to any of the tax aspects of the Plan. Although a request for a private letter ruling from the IRS may be filed on behalf of NOAT as to certain matters (as described below), the Plan is not conditioned upon the request for or receipt of a private letter ruling from the IRS. There is no assurance that the IRS would not take a contrary position as to the federal income tax consequences described herein and that a court would not uphold such a position.

320

NAS2011

This discussion does not address non-U.S., state, local, or territory tax consequences of the Plan, nor does it purport to address the U.S. federal income tax consequences of the Plan that may be relevant to special classes of taxpayers (e.g., small business investment companies, regulated investment companies, real estate investment trusts, banks and certain other financial institutions, insurance companies, retirement plans, individual retirement accounts, and other tax-deferred accounts, holders that are, or hold Claims through, S corporations, partnerships or other pass-through entities for U.S. federal income tax purposes, persons whose functional currency is not the U.S. dollar, holders who are residents of or otherwise subject to taxation by a U.S. territory or persons who use the accrual method of accounting and report income on an "applicable financial statement" within the meaning of IRC section 451). In addition, this discussion does not address the alternative minimum tax, the "Medicare" tax on unearned income, the Foreign Account Tax Compliance Act, or U.S. federal taxes other than income taxes. This discussion does not address the U.S. federal income tax consequences of the Plan to non-U.S. Holders (as defined below). Non-U.S. Holders should consult their own tax advisors with respect to the tax consequences of the Plan applicable to them.

As used herein, the term "**U.S. Holder**" means a beneficial owner of a Claim that is for U.S. federal income tax purposes: (i) an individual who is a citizen or resident of the United States; (ii) a corporation, or other entity taxable as a corporation for U.S. federal income tax purposes, created or organized in or under the laws of the United States, any state thereof or the District of Columbia; (iii) an estate the income of which is subject to U.S. federal income taxation regardless of its source; (iv) a trust, if a court within the United States is able to exercise primary jurisdiction over its administration and one or more U.S. persons have authority to control all of its substantial decisions, or if the trust has a valid election in effect under applicable Treasury Regulations to be treated as a U.S. person; (v) the government of the United States, any state, political subdivision or territory thereof or the District of Columbia; or (vi) any Tribe. As used herein, the term "**non-U.S. Holder**" means a beneficial owner of a Claim that is not a U.S. Holder or a partnership (or other entity or arrangement treated as a partnership or other pass-through entity for U.S. federal income tax purposes).

If a partnership or other entity or arrangement treated as a partnership for U.S. federal income tax purposes holds Claims, the tax treatment of a partner in such partnership generally will depend upon the status of the partner and the activities of the partnership. *If you are a partner in such a partnership holding any Claims, you should consult your own tax advisor.*

**THE FOLLOWING SUMMARY IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT A SUBSTITUTE FOR TAX PLANNING OR FOR ADVICE BASED UPON THE PARTICULAR CIRCUMSTANCES PERTAINING TO A HOLDER OF A CLAIM. EACH HOLDER OF A CLAIM IS URGED TO CONSULT ITS OWN TAX ADVISORS FOR THE U.S. FEDERAL, STATE, LOCAL AND NON-U.S. INCOME AND OTHER TAX CONSEQUENCES APPLICABLE TO IT UNDER THE PLAN.**

**B.      Consequences to the Debtors**

PPLP and most of its subsidiaries are entities that are disregarded as separate from their owners for U.S. federal income tax purposes. Accordingly, the U.S. federal income tax consequences arising under the Plan in respect of PPLP and most of its subsidiaries generally

NAS2012

will not be recognized by a Debtor, but will instead be recognized by PPLP's parent, PRA, which is not a Debtor. Because PRA is treated as a partnership for U.S. federal income tax purposes, the tax consequences arising under the Plan in respect of PPLP and most of its subsidiaries generally are expected to be borne by the beneficial owners of PRA. In addition, several Debtors are direct or indirect subsidiaries of PPLP and are treated as partnerships for U.S. federal income tax purposes. The U.S. federal income tax consequences of consummating the Plan with respect to such Debtors generally are expected to be recognized by PRA and generally borne by the beneficial owners of PRA. Finally, several Debtors (including PPI) are subject to tax as corporations for U.S. federal income tax purposes and may recognize tax consequences resulting from the consummation of the Plan, as discussed below.

The Plan provides that, on the Effective Date, the Debtors will enter into the Restructuring Transactions. Additional information regarding these transactions will be provided in the Restructuring Steps Memorandum, and the Debtors expect that they will be treated as taxable transfers of the NewCo Transferred Assets and MDT Transferred Assets for U.S. federal income tax purposes. Any gain or loss upon transfers of NewCo Transferred Assets and MDT Transferred Assets by PPLP and its subsidiaries that are disregarded from PRA is expected to be recognized by PRA and generally borne by the beneficial owners of PRA. The tax consequences of the Restructuring Transactions to a Debtor that is treated as a corporation for U.S. federal income tax purposes will depend on whether the Debtor is a Transferred Debtor. If a corporate Debtor is a Transferred Debtor, it is not expected to be treated as transferring any of its assets that are NewCo Transferred Assets in the Restructuring Transactions and therefore is not expected to recognize any gain or loss with respect to those assets. If a corporate Debtor is not a Transferred Debtor, it is expected to be treated as transferring any of its assets that are NewCo Transferred Assets or MDT Transferred Assets to NewCo (or one or more of NewCo's Subsidiaries) or the Master Disbursement Trust, respectively, in a taxable transaction. Such corporate Debtor is expected to recognize gain or loss upon the transfer of each of those assets in an amount equal to the difference between the fair market value of such asset and the Debtor's tax basis in such asset. Tax on the resulting gain, if any, may be reduced by the Debtor's available tax attributes or deductions, if any.

For a discussion of the consequences of the Restructuring Transactions to NewCo and the Master Disbursement Trust, see "—D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—1. NewCo" and "—D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—3. Master Disbursement Trust."

## C. Consequences to Holders of Certain Claims

### 1. Holders of Non-Federal Domestic Governmental Channeled Claims and Tribe Channeled Claims (Classes 4 and 5)

The Plan provides that: (i) on the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of the Non-Federal Domestic Governmental Claims and Tribe Claims, (a) with respect to the Non-Federal Domestic Governmental Claims, NOAT shall receive the Initial NOAT Distribution, the TopCo NOAT Interest and the MDT NOAT Interest, and (b) with respect to the Tribe Claims, the Tribe Trust shall receive the Initial Tribe Trust Distribution, the TopCo Tribe Interest and the MDT Tribe

NAS2013

Interest; (ii) as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Non-Federal Domestic Governmental Channeled Claims and Tribe Channeled Claims shall be channeled exclusively to and assumed by NOAT and the Tribe Trust, respectively, without further act, deed or court order; and (iii) distributions in respect of Non-Federal Domestic Governmental Channeled Claims and Tribe Channeled Claims shall be exclusively in the form of Abatement Distributions by NOAT and the Tribe Trust, respectively. For discussion of the tax treatment of NOAT and the Tribe Trust, see *"—D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—4. NOAT"* and *"—D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—5. Tribe Trust."*

The Debtors understand that each U.S. Holder of a Non-Federal Domestic Governmental Channeled Claim or a Tribe Channeled Claim is either (i) the government of a U.S. state, territory, the District of Columbia or political subdivision of any of the foregoing, or (ii) a Tribe. The Debtors expect that such holders will not be subject to U.S. federal income tax in respect of the Restructuring Transactions or any subsequent Abatement Distributions from NOAT or the Tribe Trust for Authorized Abatement Purposes.

### 2. Holders of Hospital Channeled Claims (Class 6)

The Plan provides that: (i) on the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of the Hospital Claims, the Hospital Trust shall receive (a.) the Initial Hospital Trust Distribution and (b.) the MDT Hospital Claim; (ii) as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Hospital Channeled Claims shall be channeled exclusively to and assumed by the Hospital Trust without further act, deed or court order; and (iii) distributions in respect of Hospital Channeled Claims shall be exclusively in the form of Abatement Distributions from the Hospital Trust for Authorized Abatement Purposes. The Plan further provides that a portion of each Distribution from the Hospital Trust will be paid to the Common Benefit Escrow or Common Benefit Fund. The Plan further provides that the Hospital Trust is intended to be treated as a "qualified settlement fund" for U.S. federal income tax purposes and that no holder of a Claim shall be treated as receiving a distribution for U.S. federal income tax purposes except to the extent such holder is entitled to receive that distribution directly under the Plan or such distribution is made in satisfaction of an obligation of such holder.

Accordingly, assuming this treatment is respected for U.S. federal income tax purposes, a U.S. Holder of a Hospital Channeled Claim generally is not expected to be treated as receiving a distribution from the Hospital Trust unless and until the holder is entitled to receive that distribution directly (or a distribution is made in satisfaction of an obligation of such holder, including the portion of the distribution to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund), and any amounts received or treated as received by a U.S. Holder of a Hospital Channeled Claim from the Hospital Trust generally are expected to be treated by such holder as if received directly from PRA. The U.S. federal income tax consequences to a U.S. Holder of a Hospital Channeled Claim—including whether such holder may have income or loss on account of distributions it receives in respect of the Claim or payments made in satisfaction of obligations of such holder (including obligations to pay attorney fees and the portion of the distributions to such holder that is paid to the Common

323

NAS2014

Benefit Escrow or Common Benefit Fund) or whether such holder may be entitled to claim a deduction on account of a distribution that satisfied an obligation of such holder—generally will depend upon the nature and origin of the Claim and the particular circumstances applicable to such holder, including whether the holder has previously claimed deductions or losses for U.S. federal income tax purposes with respect to such Claim. Because the tax consequences under the Plan relevant to U.S. Holders of Hospital Channeled Claims will depend on facts particular to each holder, all U.S. Holders of Hospital Channeled Claims are urged to consult their own tax advisors as to their proper tax treatment under the Plan in light of their particular facts and circumstances.

For a discussion of the tax treatment of the Hospital Trust, see "—*D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—6. Hospital Trust*," below.

### 3. Holders of Third-Party Payor Channeled Claims (Class 7)

The Plan provides that: (i) on the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of the Third-Party Payor Claims, the TPP Trust shall receive (a.) the Initial TPP Distribution and (b.) the MDT TPP Claim; (ii) as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all Third-Party Payor Channeled Claims shall be channeled exclusively to and assumed by the TPP Trust without further act, deed or court order; and (iii) distributions in respect of Third-Party Payor Channeled Claims shall be exclusively in the form of Abatement Distributions from the TPP Trust to Authorized Recipients for Authorized Abatement Purposes. The Plan further provides that a portion of each Distribution from the TPP Trust will be paid to the Common Benefit Escrow or Common Benefit Fund. The Plan further provides that the TPP Trust is intended to be treated as a "qualified settlement fund" for U.S. federal income tax purposes and that no holder of a Claim shall be treated as receiving a distribution for U.S. federal income tax purposes except to the extent such holder is entitled to receive that distribution directly under the Plan or such Distribution is made in satisfaction of an obligation of such holder. The Plan further provides that certain holders of Third-Party Payor Channeled Claims will be eligible to receive payments from the LRP Escrow Account pursuant to the LRP Agreement.

Accordingly, assuming this treatment is respected for U.S. federal income tax purposes, with respect to a U.S. Holder of a Third-Party Payor Channeled Claim's distribution from the TPP Trust, such holder generally is not expected to be treated as receiving a distribution from the TPP Trust unless and until the holder is entitled to receive that distribution directly (or a distribution is made in satisfaction of an obligation of such holder, including the portion of the distribution to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund), and any amounts received or treated as received by a U.S. Holder of a Third-Party Payor Channeled Claim from the TPP Trust generally are expected to be treated by such holder as if received directly from PRA. The U.S. federal income tax consequences to a U.S. Holder of a Third-Party Payor Channeled Claim for such holder's distribution from the TPP Trust— including whether such holder may have income or loss on account of distributions it receives in respect of the Claim or payments made in satisfaction of obligations of such holder (including obligations to pay attorney fees and the portion of the distributions to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund) or may be entitled to claim a deduction

324

NAS2015

on account of a distribution that satisfied an obligation of such holder—generally will depend upon the nature and origin of the Claim and the particular circumstances applicable to such holder, including whether the holder has previously claimed deductions or losses for U.S. federal income tax purposes with respect to such Claim. The tax treatment of amounts paid to U.S. Holders of a Third-Party Payor Channeled Claim pursuant to the LRP Agreement will depend in part on circumstances relevant to the nature of such holder's underlying lien. Because the tax consequences under the Plan relevant to U.S. Holders of Third-Party Payor Channeled Claims will depend on facts particular to each holder, all U.S. Holders of Third-Party Payor Channeled Claims are urged to consult their own tax advisors as to their proper tax treatment under the Plan in light of their particular facts and circumstances.

For discussion of the tax treatment of the TPP Trust, see "—*D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—7. TPP Trust*," below.

### 4. Holders of Ratepayer Claims (Class 8)

The Plan provides that on the Effective Date or as soon thereafter as reasonably practicable, the Debtors shall make a contribution of $6.5 million (less certain attorneys' fees) to the Truth Initiative Foundation to be used for national opioid prevention and education efforts in full and final satisfaction of all Ratepayer Claims.

The Plan further provides that for tax purposes these transactions shall be treated as (i) the cancellation of all Ratepayer Claims for no consideration and (ii) a contribution to the Truth Initiative Foundation by the Debtors. A U.S. Holder of a Ratepayer Claim generally is not expected to be treated as receiving taxable consideration in cancellation of its claims.

However, the U.S. federal income tax consequences to a U.S. Holder of a Ratepayer Claim is uncertain, including whether any portion of the payment of attorneys' fees would give rise to taxable income to such holder. Such holders are urged to consult their own tax advisors as to their proper tax treatment under the Plan in light of their particular facts and circumstances.

### 5. Holders of NAS Monitoring Channeled Claims (Class 9)

The Plan provides that: (i) on the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of the NAS Monitoring Claims, the NAS Monitoring Trust shall receive (a.) the Initial NAS Monitoring Trust Distribution and (b.) the MDT NAS Monitoring Claim; (ii) as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all NAS Monitoring Channeled Claims shall be channeled exclusively to and assumed by the NAS Monitoring Trust without further act, deed or court order; and (iii) distributions in respect of NAS Monitoring Channeled Claims shall be exclusively in the form of Abatement Distributions from the NAS Monitoring Trust to Authorized Recipients for Authorized Abatement Purposes. The Plan further provides that a portion of each Distribution from the NAS Monitoring Trust will be paid to the Common Benefit Escrow or Common Benefit Fund. The Plan further provides that NAS Monitoring Trust is intended to be treated as a "qualified settlement fund" for U.S. federal income tax purposes and that no holder of Claims shall be treated as receiving a distribution for U.S. federal income tax

NAS2016

purposes except to the extent such holder is entitled to receive that distribution directly under the Plan or such distribution is made in satisfaction of an obligation of such holder.

Accordingly, assuming this treatment is respected for U.S. federal income tax purposes, a U.S. Holder of an NAS Monitoring Channeled Claim generally is not expected to be treated as receiving a distribution from the NAS Monitoring Trust unless and until the holder is entitled to receive that distribution directly (or a distribution is made in satisfaction of an obligation of such holder, including the portion of the distribution to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund), and any amounts treated as received by a U.S. Holder of an NAS Monitoring Channeled Claim from the NAS Monitoring Trust generally are expected to be treated by such holder as if received directly from PRA. The U.S. federal income tax consequences to a U.S. Holder of an NAS Monitoring Channeled Claim—including whether such holder may have income or loss on account of distributions it receives in respect of the Claim or payments made in satisfaction of obligations of such holder (including obligations to pay attorney fees and the portion of the distributions to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund) or whether such holder may be entitled to claim a deduction on account of a distribution that satisfied an obligation of such holder—generally will depend upon the nature and origin of the Claim and the particular circumstances applicable to such holder, including whether the holder has previously claimed deductions or losses for U.S. federal income tax purposes with respect to such Claim. Amounts treated as received by a U.S. Holder of an NAS Monitoring Channeled Claim generally are not expected to be taxable to such holder for U.S. federal income tax purposes to the extent they represent payment for damages (other than punitive damages) received on account of personal physical injuries or physical sickness, within the meaning of IRC section 104. However, to the extent such payments are attributable to medical expense deductions allowed under IRC section 213 for a prior taxable year, such payments are expected to be taxable as ordinary income to the U.S. Holder. Because the tax consequences under the Plan relevant to U.S. Holders of NAS Monitoring Channeled Claims will depend on facts particular to each holder, all U.S. Holders of NAS Monitoring Channeled Claims are urged to consult their own tax advisors as to their proper tax treatment under the Plan in light of their particular facts and circumstances.

For a discussion of the tax treatment of the NAS Monitoring Trust, see "—*D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—8. NAS Monitoring Trust*," below.

### 6.    *Holders of PI Channeled Claims (Classes 10(a) and 10(b))*

The Plan provides that: (i) on the Effective Date, in full and final satisfaction, settlement, release and discharge of the Debtors' obligations in respect of the PI Claims, the PI Trust shall receive (a.) the Initial PI Trust Distribution and (b.) the MDT PI Claim; (ii) as of the Effective Date, any and all liability of the Debtors and the other Protected Parties for any and all PI Channeled Claims shall be channeled exclusively to and assumed by the PI Trust without further act, deed or court order; and (iii) (a.) distributions in respect of NAS PI Channeled Claims shall be exclusively in the form of distributions from the PI Trust NAS Fund to Holders of Allowed NAS PI Channeled Claims and (b.) distributions in respect of Non-NAS PI Channeled Claims shall be exclusively in the form of Distributions from the PI Trust Non-NAS Fund to Holders of Allowed Non-NAS PI Channeled Claims. The Plan further provides that the PI Trust is intended

326

NAS2017

to be treated as a "qualified settlement fund" for U.S. federal income tax purposes and that no holder of a Claim shall be treated as receiving a distribution for U.S. federal income tax purposes except to the extent such holder is entitled to receive that distribution directly under the Plan or such distribution is made in satisfaction of an obligation of such holder. The Plan further provides that Participating Third-Party Payors will be eligible to receive payments from the LRP Escrow Account pursuant to the LRP Agreement in respect of reimbursement and lien claims they may hold against holders of PI Claims and Distributions to holders of PI Claims. The Plan further provides that pursuant to the United States-PI Claimant Medical Expense Claim Settlement, a portion of each amount otherwise distributable to the PI Trust shall be paid by the Debtors or the Master Disbursement Trust, as applicable, to the United States in the form of a prepayment by the PI Trust of amounts that would otherwise be payable by certain Holders of PI Claims to the Holders of United States-PI Claimant Medical Expense Claims upon receipt by such Holders of PI Claims of Distributions, and shall be borne equitably by such Holders of PI Claims in the form of a reduction in the amounts of the Distributions otherwise payable to such Holders of PI Claims. The Plan further provides that a portion of each Distribution from the PI Trust will be paid to the Common Benefit Escrow or Common Benefit Fund.

Accordingly, assuming this treatment is respected for U.S. federal income tax purposes, a U.S. Holder of a PI Channeled Claim generally is not expected to be treated as receiving a distribution from the PI Trust unless and until the holder is entitled to receive that distribution directly (or a distribution is made in satisfaction of an obligation of such holder, including the portion of the distribution to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund). In the case of a U.S. Holder of a PI Channeled Claim who is a minor under applicable law for whom the PI Trust places funds in an account, whether the holder is treated as receiving a distribution from the PI Trust at the time the funds are placed in such account, and whether the holder (or an eligible parent of the holder that elects to recognize the income in lieu of the holder) will be required to recognize income in respect of any interest or other amounts earned by the account, will depend on the terms of that account. Any amounts received or treated as received by a U.S. Holder of a PI Channeled Claim from the PI Trust generally are expected to be treated by such holder as if received directly from PRA. The U.S. federal income tax consequences to a U.S. Holder of a PI Channeled Claim—including (i) whether such holder may have income or loss on account of distributions it receives in respect of the Claim or payments made in satisfaction of obligations of such holder (including any obligation to pay attorney fees, the portion of the distributions to such holder that is paid to the Common Benefit Escrow or Common Benefit Fund, any obligation relating to payments to Participating Third-Party Payors pursuant to the LRP Agreement and any obligation that gave rise to a reduction in the amount of the distribution as a result of the United States-PI Claimant Medical Expenses Settlement), (ii) for a U.S. Holder of a PI Channeled Claim who is a minor, the consequences to the holder if the PI Trust places funds in an account for the holder, or (iii) whether such holder may be entitled to claim a deduction on account of a distribution that satisfied an obligation of such holder—generally will depend upon the nature and origin of the Claim and the particular circumstances applicable to such holder. Amounts received or treated as received by a U.S. Holder of a PI Channeled Claim generally are not expected not be taxable to such holder for U.S. federal income tax purposes to the extent they represent payment for damages (other than punitive damages) received on account of personal physical injuries or physical sickness, within the meaning of IRC section 104. However, to the extent such payments are attributable to medical expense deductions allowed under IRC section 213 for a prior taxable year, such

NAS2018

payments are expected to be taxable as ordinary income to the U.S. Holder. To the extent a payment from the PI Trust is treated as a payment on account of damages in respect of a Claim other than for personal physical injury or physical sickness, whether the payment will be includable in the gross income of the holder will depend upon the nature and origin of the Claim and the particular circumstances applicable to the holder, including whether the holder has previously claimed deductions or losses for U.S. federal income tax purposes with respect to such Claim. Because the tax consequences under the Plan relevant to U.S. Holders of PI Channeled Claims will depend on facts particular to each holder, all U.S. Holders of PI Channeled Claims are urged to consult their own tax advisors as to their proper tax treatment under their particular facts and circumstances.

For a discussion of the U.S. federal income tax treatment of the PI Trust, see "—*D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts—9. PI Trust*" below.

### 7. *Holders of Allowed Other General Unsecured Claims (Class 11(c))*

All Other General Unsecured Claims are Disputed. The Plan provides that, except to the extent a Holder of an Allowed Other General Unsecured Claim and the Debtor against which such Claim is asserted agree to different treatment, after the Effective Date upon the Allowance of such Claim in accordance with <u>Article VII</u> of the Plan, each Holder of an Allowed Other General Unsecured Claim shall receive, on account of such Allowed Claim, such Holder's Pro Rata Share of the Other General Unsecured Claim Cash, up to payment in full of such Allowed Claim. The receipt of Cash by a U.S. Holder of an Allowed Other General Unsecured Claim is expected to be treated as a taxable exchange of such holder's Claim for Cash. Accordingly, such holder generally will recognize gain or loss equal to the difference between (i) the Cash received in exchange for the Claim and (ii) the holder's adjusted tax basis, if any, in the Claim. The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the holder, whether the Claim constitutes a capital asset in the hands of the holder, whether the Claim was purchased at a discount, whether and to what extent the Claim became worthless in a prior tax year and whether and to what extent the holder has previously claimed a bad debt deduction with respect to its Claim. The deductibility of capital losses is subject to limitations.

If any portion of the Cash received by a U.S. Holder of an Allowed Other General Unsecured Claim is treated as being received in satisfaction of accrued interest, such amount is expected to be taxable to the U.S. Holder as ordinary interest income (if not previously included in the U.S. Holder's gross income under the holder's normal method of accounting). Conversely, a U.S. Holder generally will recognize a deductible loss to the extent any accrued interest was previously included in its gross income and is not paid in full. Such loss may be ordinary, but the tax law is unclear on this point.

The Plan provides that it is intended, subject to applicable law, that distributions with respect to an Allowed Other General Unsecured Claim will be allocated first to the principal portion of such Claim (as determined for U.S. federal income tax purposes) and, thereafter, to the remaining portion of such Claim, if any. However, there is no assurance that such allocation would be respected by the IRS for U.S. federal income tax purposes. U.S. Holders are urged to

NAS2019

consult their own tax advisors regarding the allocation of consideration received under the Plan, as well as the deductibility of any accrued but unpaid interest and the character of any loss claimed with respect to accrued but unpaid interest previously included in gross income for U.S. federal income tax purposes.

**D. Tax Treatment of NewCo, TopCo, the Master Disbursement Trust and the Creditor Trusts**

*1. NewCo*

The U.S. federal income tax treatment of NewCo will depend on whether NewCo elects to be treated as a corporation for U.S. federal income tax purposes. As discussed at *"—4. NOAT"* below, the Plan provides that by a prescribed date, subject to specified conditions, the NewCo Managers will cause NewCo to elect to be treated as a corporation for U.S. federal income tax purposes effective as of the date of NewCo's formation.

If NewCo timely elects to be treated as a corporation for U.S. federal income tax purposes, it will be subject to corporate-level federal income tax (currently at a rate of 21%) on its net income. If NewCo does not make such an election, as long as a single entity owns all of the equity interests in NewCo, it is expected to be treated as an entity that is disregarded as separate from its owner for U.S. federal income tax purposes (a "**disregarded entity**"). If NewCo is treated as a disregarded entity, NewCo would not be subject to U.S. federal income tax and its income and deductions would be recognized by its regarded owner, TopCo, and allocated by TopCo to NOAT and the Tribe Trust in accordance with the TopCo Operating Agreement. See further discussion below at *"—2. TopCo,"* *"—4. NOAT*," and *"—5. Tribe Trust*."

As discussed above at *"—B. Consequences to the Debtors*," whether or not NewCo elects to be treated as a corporation for U.S. federal income tax purposes, the Restructuring Transactions are expected to be treated as taxable asset transfers. If NewCo elects to be treated as a corporation, NewCo would be expected to have an initial tax basis in the assets it acquires from the Debtors equal to their respective fair market values as of the Effective Date and would generally be entitled to deductions for amortization and depreciation with respect to its tax basis in certain of its assets, including patents and other intangible property. If NewCo does not elect to be treated as a corporation and is instead treated as a disregarded entity, NewCo's assets would also be expected to have fair market value tax bases but would be treated for tax purposes as if held directly by TopCo (see further discussion at *"—2. TopCo,"* immediately below.)

*2. TopCo*

The Plan provides that TopCo is intended to be treated as a partnership for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. TopCo generally will not be subject to U.S. federal income tax and an allocable share of its income or deductions generally will be includable in the income of its members, NOAT and the Tribe Trust. See further discussion below at *"—4. NOAT"* and *"—5. Tribe Trust*."

If NewCo elects to be treated as a corporation for U.S. federal income tax purposes, TopCo will recognize income attributable to distributions from NewCo and gain or loss, if any, from the sale of the NewCo Interest. Distributions from NewCo generally will be treated as

329

NAS2020

dividends for U.S. federal income tax purposes to the extent paid out of NewCo's current or accumulated earnings and profits. To the extent a distribution exceeds NewCo's current and accumulated earnings and profits, the distribution generally will be treated as a non-taxable return of capital to the extent of TopCo's adjusted basis in the NewCo Interest and thereafter as gain from the sale of the NewCo Interest. Such income or gain is expected to be allocated by TopCo to NOAT and the Tribe Trust in accordance with the TopCo Operating Agreement. TopCo's initial tax basis in the NewCo Interest is expected to be equal to the fair market value of such interest on the Effective Date.

If NewCo does not elect to be treated as a corporation for U.S. federal income tax purposes, it is expected to be treated as a disregarded entity. As a result of such treatment, TopCo will be treated as directly realizing all income realized by NewCo and directly incurring all expenses incurred by NewCo. Distributions from NewCo to TopCo are not expected to be recognized for U.S. federal income tax purposes and a sale of all of the NewCo Interest is expected to be treated as a sale of NewCo's assets, with any gain or loss on those assets recognized by TopCo and allocated by TopCo to NOAT and the Tribe Trust in accordance with the TopCo Operating Agreement.

As discussed above at "—*B. Consequences to the Debtors,*" the Restructuring Transactions are expected to be treated as the taxable transfer of the NewCo Transferred Assets. If NewCo does not elect to be treated as a corporation for U.S. federal income tax purposes, TopCo is expected to have an initial tax basis in the NewCo Transferred Assets (other than such assets held by Transferred Debtors that are not disregarded entities) equal to their fair market values as of the Effective Date. TopCo is expected to be entitled to claim depreciation or amortization deductions in respect of its tax basis in certain of those assets, including patents and other intangible property, which deductions are expected to be allocated by TopCo to NOAT and the Tribe Trust in accordance with the TopCo Operating Agreement.

### 3. *Master Disbursement Trust*

The Plan provides that the Master Disbursement Trust is intended to be treated as a "qualified settlement fund" for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the MDT Trustees, the MDT Executive Director, the Creditor Trusts, the PI Trust and the holders of Claims) will be required to treat the Master Disbursement Trust as a qualified settlement fund for all applicable tax reporting purposes.

A qualified settlement fund is subject to entity-level tax under generally applicable U.S. federal income tax principles at the maximum federal income tax rate applicable to trusts and estates (currently 37%, increasing to 39.6% beginning in 2026). The determination of taxable income of qualified settlement funds for U.S. federal income tax purposes is subject to certain exceptions, including: (i) any amounts transferred by or on behalf of the transferors to the qualified settlement fund to resolve or satisfy a liability for which the transferor is liable and the qualified settlement fund is established will generally be excluded from the qualified settlement fund's income, other than dividends on stock of a transferor (or a related person of the transferor), interest on debt of a transferor (or a related person of the transferor) or payments in

NAS2021

compensation for late or delayed transfers, (ii) any distribution of property by the qualified settlement fund generally will result in the recognition of gain or loss in an amount equal to the difference between the fair market value of the property on the date of disposition and the qualified settlement fund's adjusted tax basis in such property, and (iii) only limited, specified deductions will be permitted, including deductions for administrative costs and state and local taxes incurred by the qualified settlement fund, and excluding any deductions that would generally be allowable to a corporation or partnership for expenses incurred in the course of a taxpayer's trade or business.  In general, the adjusted tax basis of property received (or treated as received for U.S. federal income tax purposes) by a qualified settlement fund from a transferor will be the fair market value of such property at the time of receipt.

While it is not free from doubt, the Master Disbursement Trust is not expected to recognize income in respect of the Shareholder Settlement Agreement or the NewCo Credit Support Agreement other than in respect of any payments in compensation for late or delayed transfers due thereunder.

The Master Disbursement Trust's administrator will be required to file tax returns on behalf of the Master Disbursement Trust and will be responsible for causing the Master Disbursement Trust to pay any taxes imposed upon the Master Disbursement Trust.

### 4.    NOAT

The Plan provides that NOAT is intended to be treated as a qualified settlement fund, and the following discussion assumes that this treatment is respected.  The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the NOAT Trustees, TopCo, the Master Disbursement Trust and the holders of Allowed Claims) will be required to treat NOAT as a qualified settlement fund for all applicable tax reporting purposes.

NOAT may seek guidance upon which it may rely from the IRS that its income is exempt from U.S. federal income tax.  NOAT's income derived from the exercise of essential governmental functions may qualify for an exemption from tax pursuant to IRC section 115. The Plan is not conditioned on the receipt of such guidance, and it is possible that no such guidance will be sought or obtained.

The Plan further provides that by a prescribed date, subject to certain conditions, the NewCo Managers will cause NewCo to elect to be treated as a corporation for U.S. federal income tax purposes effective as of the date of NewCo's formation.

Regardless of whether NOAT's income qualifies for an exemption from U.S. federal income tax or how NewCo is classified for U.S. federal income tax purposes, NOAT is not expected to be subject to U.S. federal income tax on its receipt of distributions from the Master Disbursement Trust.

If NewCo is treated as a corporation for U.S. federal income tax purposes and NOAT's income qualifies for exemption from tax, NOAT would not be subject to U.S. federal income tax on: (i) income allocated to NOAT by TopCo, including in respect of distributions of NewCo

NAS2022

Excess Cash; (ii) income in respect of gain, if any, from TopCo's sale of the NewCo Interest or from a sale of all or part of the TopCo NOAT Interest; (iii) NOAT's receipt of distributions from TopCo; or (iv) income from investments of cash and cash equivalents by NOAT pending distributions. To the extent that NOAT's income does not qualify for exemption from U.S. federal income tax, NOAT's receipt of items of income described above would be subject to tax in a manner substantially similar to that described above with respect to the Master Disbursement Trust (see "—*3. Master Disbursement Trust*").

If NewCo does not timely elect to be treated as a corporation and NOAT is generally exempt from U.S. federal income tax on its income attributable to assets received in the Restructuring Transactions, NOAT would not be expected to be subject to U.S. federal income tax on (i) income allocated to NOAT by TopCo, including in respect of NewCo's taxable income; (ii) gain, if any, from a sale of NewCo assets, TopCo's sale of the NewCo Interest or a sale of all or part of the TopCo NOAT Interest; (iii) NOAT's receipt of distributions from TopCo; or (iv) income from investments of cash and cash equivalents received by NOAT pending distributions.

However, if NewCo does not timely elect to be treated as a corporation and NOAT is not exempt from U.S. federal income tax on its income attributable to NewCo, NOAT would be subject to tax on its share of TopCo's gross income attributable to NewCo at the tax rates applicable to qualified settlement funds (currently 37%, increasing to 39.6% in 2026). Moreover, unlike a corporation, as a qualified settlement fund, NOAT would not be entitled to claim ordinary course business deductions in respect of that gross income. In this event, its income would be subject to tax in a manner substantially similar to that described above with respect to the Master Disbursement Trust (see "—*3. Master Disbursement Trust*").

NOAT's administrator will be required to file tax returns on behalf of NOAT and will be responsible for causing NOAT to pay any taxes imposed upon NOAT.

### 5. *Tribe Trust*

The Plan provides that any Tribe Trust entity that is formed as a trust is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the Master Disbursement Trust, the Creditor Trustees and the holders of Allowed Claims) will be required to treat such an entity as a qualified settlement fund for all applicable tax reporting purposes. Accordingly, such an entity generally is expected to be subject to U.S. federal income tax in a manner substantially similar to that discussed above in "—*3. Master Disbursement Trust*." Such an entity's administrator will be required to file tax returns on behalf of the trust and will be responsible for causing the trust to pay any taxes imposed upon it. Such an entity should consult its own tax advisors regarding its treatment for U.S. federal income tax purposes.

This discussion does not address the U.S. federal income tax treatment of any Tribe Trust entity that is not formed as a trust. The tax treatment of such an entity will depend upon the terms of the relevant Tribe Trust Documents which shall be consistent with Articles I through XII of the Plan and otherwise acceptable to the Debtors and the Native American Tribe Group

NAS2023

and reasonably acceptable to the Creditors' Committee and the Governmental Consent Parties, and which shall be filed by the Debtors with the Plan Supplement.

### 6. *Hospital Trust*

The Plan provides that the Hospital Trust is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the Master Disbursement Trust, the Creditor Trustees and the holders of Allowed Claims) will be required to treat the Hospital Trust as a qualified settlement fund for all applicable tax reporting purposes.

Whether the Hospital Trust qualifies for tax-exempt status under IRC section 501 will depend on facts particular to the Hospital Trust. If the Hospital Trust does not qualify for such status but its treatment as a qualified settlement fund is respected, distributions it receives from the Master Disbursement Trust are expected to be excluded from its income, and the U.S. federal income tax treatment of the Hospital Trust generally is otherwise expected to be substantially similar to the treatment described above with respect to the Master Disbursement Trust (see "—*3. Master Disbursement Trust*"). If the Hospital Trust qualifies for tax-exempt status under IRC section 501, all income it realizes may be exempt from U.S. federal income tax but the Hospital Trust may be subject to certain excise taxes. The Hospital Trust's administrator will be required to file tax returns on behalf of the Hospital Trust and will be responsible for causing the Hospital Trust to pay all taxes, if any, imposed upon the Hospital Trust. The Hospital Trust should consult its tax advisor regarding whether it may qualify for an exemption from U.S. federal income tax and the tax consequences to it under the Plan.

### 7. *TPP Trust*

The Plan provides that the TPP Trust is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the Master Disbursement Trust, the Creditor Trustees and the holders of Allowed Claims) will be required to treat the TPP Trust as a qualified settlement fund for all applicable tax reporting purposes.

Whether the TPP Trust qualifies for tax-exempt status under IRC section 501 will depend on facts particular to the TPP Trust. If the TPP Trust does not qualify for such status but its treatment as a qualified settlement fund is respected, distributions it receives from the Master Disbursement Trust are expected to be excluded from its income, and the U.S. federal income tax treatment of the TPP Trust generally is otherwise expected to be substantially similar to the treatment described above with respect to the Master Disbursement Trust (see "—*3. Master Disbursement Trust*"). If the TPP Trust qualifies for tax-exempt status under IRC section 501, all income it realizes may be exempt from U.S. federal income tax but the TPP Trust may be subject to certain excise taxes. The TPP Trust's administrator will be required to file tax returns on behalf of the TPP Trust and will be responsible for causing the TPP Trust to pay all taxes, if

NAS2024

any, imposed upon the TPP Trust. The TPP Trust should consult its tax advisor regarding whether it may qualify for an exemption from U.S. federal income tax and the tax consequences to it under the Plan.

### 8. NAS Monitoring Trust

The Plan provides that the NAS Monitoring Trust is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the Master Disbursement Trust, the Creditor Trustees and the holders of Allowed Claims) will be required to treat the NAS Monitoring Trust as a qualified settlement fund for all applicable tax reporting purposes.

Whether the NAS Monitoring Trust qualifies for tax-exempt status under IRC section 501 will depend on facts particular to the NAS Monitoring Trust. If the NAS Monitoring Trust does not qualify for such status but its treatment as a qualified settlement fund is respected, distributions it receives from the Master Disbursement Trust are expected to be excluded from its income, and the U.S. federal income tax treatment of the NAS Monitoring Trust generally is otherwise expected to be substantially similar to the treatment described above with respect to the Master Disbursement Trust (see "—3. Master Disbursement Trust"). If the NAS Monitoring Trust qualifies for tax-exempt status under IRC section 501, all income it realizes may be exempt from U.S. federal income tax, but the NAS Monitoring Trust may be subject to certain excise taxes. The NAS Monitoring Trust's administrator will be required to file tax returns on behalf of the NAS Monitoring Trust and will be responsible for causing the NAS Monitoring Trust to pay all taxes, if any, imposed upon the NAS Monitoring Trust. The NAS Monitoring Trust should consult its tax advisor regarding whether it may qualify for an exemption from U.S. federal income tax and the tax consequences to it under the Plan.

### 9. PI Trust

The Plan provides that the PI Trust is intended to be treated as a qualified settlement fund for U.S. federal income tax purposes, and the following discussion assumes that this treatment is respected. The Plan further provides that all parties (including, without limitation, PRA, the direct and indirect owners of PRA, the Debtors, the Master Disbursement Trustee, the trustee of the PI Trust and the holders of Allowed Claims) will be required to treat the PI Trust as a qualified settlement fund for all applicable tax reporting purposes.

Distributions the PI Trust receives from the Master Disbursement Trust are expected to be excluded from its income, and the U.S. federal income tax treatment of the PI Trust generally is otherwise expected to be substantially similar to the treatment described above with respect to the Master Disbursement Trust (see "—3. Master Disbursement Trust"). The PI Trust is expected to be treated for U.S. federal income tax purposes as the owner of the LRP Escrow Account, and, accordingly, the PI Trust is expected to recognize as taxable income any income earned by the LRP Escrow Account. The PI Trust's administrator will be required to file tax returns on behalf of the PI Trust and will be responsible for causing the PI Trust to pay all taxes, if any, imposed upon the PI Trust.

NAS2025

### 10.    *Plan Administration Trust*

The Plan provides that the Plan Administration Trust will be established for purposes described in the Plan and PAT Agreement, including to: (i) hold, manage, sell, invest and distribute the PAT Assets for the benefit of holders of Allowed Claims (other than Channeled Claims); (ii) administer, process, resolve and liquidate Claims (other than Channeled Claims); (iii) hold and maintain the PAT Reserves and the Recovery Fund and maintain the Professional Fee Escrow Account; and (iv) make Distributions to holders of Allowed Claims (other than Channeled Claims).  The Plan provides that the Plan Administration Trust is intended to be treated as a trust described in IRC sections 661 through 664 and the regulations promulgated thereunder (a "**complex trust**"), and the following discussion assumes that this treatment is respected.  The Plan further provides that all parties (including, without limitation, the Debtors, PRA, the direct and indirect owners of PRA, the Plan Administration Trustee and the holders of Allowed Claims) will be required to treat the Plan Administration Trust as a complex trust for all applicable tax reporting purposes.

A complex trust is treated as a separate entity for U.S. federal income tax purposes that is taxable in accordance with Subchapter J of Chapter 1 of Subtitle A of the IRC, including sections 661 through 664.  Any net income earned by a complex trust is generally subject to tax (currently at a top marginal tax rate of 37%, increasing to 39.6% beginning in 2026).  In computing its net income, a complex trust is generally allowed a deduction equal to the lesser of (i) the trust's distributable net income (as determined for U.S. federal income tax purposes) for the taxable year and (ii) the sum of the amounts of income required to be distributed to beneficiaries for the taxable year and other amounts properly paid or credited (or deemed paid or credited) for the taxable year.  A distribution is includible in the beneficiary's gross income in the year of receipt or deemed distribution by the trust, unless previously included in the beneficiary's income under such beneficiary's applicable method of accounting.  It is expected that the Master Disbursement Trust will be treated as the only beneficiary of the Plan Administration Trust and thus distributions to the Master Disbursement Trust may be subject to these rules.  The Plan Administration Trustee will file all tax returns of the Plan Administration Trust and will be responsible for causing the Plan Administration trust to pay all taxes imposed upon the Plan Administration Trust.

No opinion of counsel or ruling from the IRS has been requested by the Debtors or Plan Administration Trustee concerning the tax status of Plan Administration Trust.  Accordingly, there can be no assurance that the IRS would not take a contrary position.  The Plan Administration Trust should consult its tax advisor regarding the tax consequences to it under the Plan.

### E.    **Withholding on Distributions and Information Reporting**

Information reporting requirements may apply to distributions or payments, including payments of interest, if any, pursuant to the Plan.  All distributions to holders of Claims under the Plan are subject to any applicable tax withholding.  Under U.S. federal income tax law, interest, dividends and other reportable payments to U.S. Holders may, under certain

NAS2026

circumstances, be subject to "backup withholding" at the then-applicable withholding rate (currently twenty-four percent (24%)). Backup withholding generally applies if the holder: (i) fails to furnish its social security number or other taxpayer identification number; (ii) furnishes an incorrect taxpayer identification number; (iii) fails properly to report interest or dividends; or (iv) under certain circumstances, fails to provide a certified statement, signed under penalty of perjury, that the tax identification number provided is its correct number and that it is not subject to backup withholding. Backup withholding is not an additional tax but merely an advance payment, which may be refunded to the extent it results in an overpayment of tax by timely filing an appropriate claim for refund with the IRS (generally, a U.S. federal income tax return). Certain persons are exempt from backup withholding and information reporting, including governments of U.S. states or political subdivisions thereof and non-U.S. governments and, in certain circumstances, corporations and financial institutions. Holders of Claims are urged to consult their own tax advisors regarding the potential for and applicable law governing backup and other tax withholding and information reporting in connection with the transactions contemplated by the Plan.

In addition, Treasury Regulations generally require disclosure by a taxpayer on its U.S. federal income tax return of certain types of transactions in which the taxpayer participated, including, among other types of transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified thresholds. U.S. holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the U.S. holders' tax returns.

## F.     Importance of Obtaining Professional Advice

**THE FOREGOING DISCUSSION OF CERTAIN MATERIAL U.S. FEDERAL INCOME TAX CONSIDERATIONS IS FOR GENERAL INFORMATION ONLY AND IS NOT TAX ADVICE. HOLDERS SHOULD CONSULT THEIR OWN TAX ADVISORS REGARDING THE U.S. FEDERAL INCOME TAX CONSEQUENCES TO THEM OF THE CONSUMMATION OF THE PLAN DESCRIBED HEREIN, AS WELL AS OTHER APPLICABLE TAX CONSEQUENCES, INCLUDING ANY TAX CONSEQUENCES ARISING UNDER STATE, LOCAL OR NON-U.S. TAX LAWS. NEITHER THE DEBTORS NOR THEIR PROFESSIONALS WILL HAVE ANY LIABILITY TO ANY PERSON ARISING FROM OR RELATED TO THE U.S. FEDERAL, STATE, LOCAL, NON-U.S. OR ANY OTHER TAX CONSEQUENCES OF THE PLAN OR THE FOREGOING DISCUSSION.**

## ARTICLE X

## RECOMMENDATION

The Debtors believe that confirmation and consummation of the Plan are in the best interests of the Debtors, their Estates and their creditors. The Plan provides for an equitable distribution to holders of Claims. The Debtors believe that any alternative to confirmation of the Plan, such as liquidation under chapter 7 of the Bankruptcy Code, could result in significant delay, litigation and additional costs, as well as a reduction in the distributions to holders of

336

NAS2027

Claims in certain Classes. **Consequently, the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee, the MSGE Group, the Native American Tribes Group, the Ad Hoc Group of Individual Victims, the Ad Hoc Group of Hospitals, the Third-Party Payor Group, the Ratepayer Mediation Participants and the NAS Committee urge all eligible holders of impaired Claims to vote to ACCEPT the Plan and to complete and submit their Ballots so that they will be RECEIVED by the Solicitation Agent on or before the Voting Deadline.**

NAS2028

Dated: June 3, 2021

By: /s/ Jon Lowne
    Name: Jon Lowne
    Title: Authorized Signatory

**PURDUE PHARMA L.P.**
**PURDUE PHARMA INC.**
**PURDUE TRANSDERMAL**
**TECHNOLOGIES L.P.**
**PURDUE PHARMA MANUFACTURING**
**L.P.**
**PURDUE PHARMACEUTICALS L.P.**
**IMBRIUM THERAPEUTICS L.P.**
**ADLON THERAPEUTICS L.P.**
**GREENFIELD BIOVENTURES L.P.**
**SEVEN SEAS HILL CORP.**
**OPHIR GREEN CORP.**
**PURDUE PHARMA OF PUERTO RICO**
**AVRIO HEALTH L.P.**
**PURDUE PHARMACEUTICAL**
**PRODUCTS L.P.**
**PURDUE NEUROSCIENCE COMPANY**
**NAYATT COVE LIFESCIENCE INC.**
**BUTTON LAND L.P.**
**RHODES ASSOCIATES L.P.**
**PAUL LAND INC.**
**QUIDNICK LAND L.P.**
**RHODES PHARMACEUTICALS L.P.**
**RHODES TECHNOLOGIES**
**UDF LP**
**SVC PHARMA LP**
**SVC PHARMA INC.**

NAS2029

<u>**Appendix A**</u>

**Fifth Amended Plan**

[Filed at D.I. 2982]

NAS2030

**<u>Appendix B</u>**

**Liquidation Analysis**

NAS2031

# I.
# LIQUIDATION ANALYSIS

## A.  Introduction

Under the "best interests" of creditors test set forth in Bankruptcy Code section 1129(a)(7), a bankruptcy court may not confirm a plan of reorganization unless the plan provides, with respect to each impaired class, that each holder of a claim or interest in such class who does not otherwise vote in favor of the plan receive property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor(s) were liquidated under chapter 7 of the Bankruptcy Code as of such date. To demonstrate that the Plan satisfies the "best interests" of creditors test, the Debtors have prepared the hypothetical liquidation analysis attached hereto as **Exhibit 1** (the "**Liquidation Analysis**"), which is based upon certain assumptions discussed below and in the notes accompanying the Liquidation Analysis (the "**Notes**"). Capitalized terms not defined in the Notes shall have the meanings ascribed to them in the Plan and the Disclosure Statement.

The Liquidation Analysis estimates potential Cash distributions to holders of Allowed Claims and Allowed Interests in a hypothetical chapter 7 liquidation of the Debtors' assets (the "**Assets**"). Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement. The Debtors prepared the Liquidation Analysis with the assistance of their advisors.

## B.  Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of, and hypothetical proceeds from, the liquidation of the Assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, political, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. In addition, the Debtors' management cannot judge with any degree of certainty the effect of the forced-liquidation asset sales on the recoverable value of the Assets. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. **NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY**.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules, Claims listed in the Debtors' current books and records and Proofs of Claim filed to date. In addition, the Liquidation Analysis includes estimates for Claims not currently reflected in the books and records or asserted in the Chapter 11 Cases, but which could be asserted and Allowed in a chapter 7 liquidation, including Administrative Claims, wind-down costs, and trustee fees. The Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analysis. The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan. **NOTHING CONTAINED IN THE**

1

NAS2032

LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.

## II.
## GLOBAL NOTES TO THE LIQUIDATION ANALYSIS

### A. Liquidation Date and Appointment of a Chapter 7 Trustee

The Liquidation Analysis assumes the conversion of the Chapter 11 Cases to chapter 7 liquidation cases on or about September 30, 2021 (the "**Liquidation Date**"). On the Liquidation Date, it is assumed that the Bankruptcy Court would appoint a chapter 7 trustee (the "**Trustee**") to oversee the liquidation of the Debtors' Estates. As the Debtors would not generate revenues or cash flows following the Liquidation Date, the Trustee would need to use cash on hand, receivables, and proceeds from the immediate liquidation of Assets to fund the ongoing expenses of the Estates. The Liquidation Analysis assumes that the Trustee would have adequate liquidity to fund the wind-down of the operations and the fees associated with such a liquidation. In the event of an actual liquidation of the Debtors, there is a risk that the Trustee would not have adequate liquidity on hand to settle administrative expenses as incurred, at which point the Trustee might request a dismissal of the chapter 7 cases. If such a scenario were to occur, the recoveries to creditors would be severely impaired as compared with the hypothetical results contained in the Liquidation Analysis.

For the purposes of the Liquidation Analysis, the Debtors are using the most recent available balance sheets as of February 28, 2021 (the "**Balance Sheet Date**") as the basis for book value of the Assets. It is assumed there would be no material change between the Debtors' Assets on the Liquidation Date and the Balance Sheet Date, except as otherwise noted in the assumptions below. The Liquidation Analysis assumes that the Trustee would wind down and monetize the Assets of the Debtors over a twelve-month period, using cash on hand and the proceeds of the Assets to fund the expenses associated with the wind-down of operations. Litigation in respect of Shareholder Claim Rights[1] and claims allowance and allocation could extend beyond twelve months and generate significant costs that could further dilute recoveries in a chapter 7 liquidation. The Liquidation Analysis has been drafted on a legal-entity-by-legal-entity basis for each of the Debtors.

### B. Primary Assets of the Debtors

The Debtors have Assets[2] in the form of (i) cash and cash equivalents, (ii) accounts receivable, (iii) inventory ("**Inventory**"), (iv) restricted cash accounts (v) prepaid expenses & other current assets, (vi) property, plant, and equipment ("**PP&E**"), (vii) intangible assets, (viii) investments in non-Debtor companies, (ix) other non-current assets, (x) Shareholder Claim Rights. The Liquidation Analysis assumes a range (high, medium, and low) of recoveries for these Assets assuming a forced-liquidation asset sale process for certain of the Assets conducted by the Trustee. The Debtors' management believes that values derived from the liquidation assumed in the Liquidation Analysis do not generate a significant recovery for stakeholders as compared with the recovery proposed under the Plan.

The Liquidation Analysis assumes the Debtors would allow, and the Trustee would use, the proceeds of the liquidation of Assets to fund the wind-down expenses. These receivables and other proceeds would be

---

[1] For purposes of the Liquidation Analysis, "**Shareholder Claim Rights**" means any and all rights, titles, privileges, interests, claims, demands and entitlements of the Debtors arising under, or attributable to, any Causes of Action or choses in action against, or proceeds, payments, benefits or indemnities from, any Sackler family members and trusts, including any Shareholder Party, in each case whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent.

[2] The Liquidation Analysis does not include any estimate for recoveries for Purdue Insurance Rights.

NAS2033

used first to fund the liquidation of the Estates and then to satisfy Claims in the order of priority set forth in section 726 of the Bankruptcy Code.

### C. Forced-Liquidation Sale Process

The liquidation sale process would proceed concurrently with the shutdown of the Debtors' manufacturing facility in Wilson, North Carolina. A significant portion of the gross proceeds distributable to creditors would come from the collection of accounts receivable as well as from the liquidation of inventory, real property and equipment and certain brands, patents and other intangible assets, which liquidation is subject to various offsetting costs. The Liquidation Analysis also assumes that certain staff currently employed by the Debtors would remain with the Debtors through the course of the wind-down. Costs associated with these employees have been included in the operational wind-down expense to support the Trustee in collecting and liquidating the Assets.

The Liquidation Analysis assumes that the Debtors will be subject to a withdrawal liability on account of the Purdue Pension Plan (the "**Qualified Pension Plan**") and the PBGC. The Debtors estimate that the Qualified Pension Plan claim amounts would total approximately $163 million based on the Debtors' most recent actuarial estimates of withdrawal liabilities. The Debtors also assumed that the Qualified Pension Plan claims would be asserted at each of the Debtor entities, based on a "controlled group" (as defined in the Employee Retirement Income Security Act) theory of liability. Further, the Debtors have made the assumption that certain other claims which could be asserted in a chapter 7 liquidation—such as potential rejection damages claims for contracts that would be assumed or rejected in a chapter 11 reorganization— are not estimated in the Liquidation Analysis, which claims would otherwise further dilute recovery to creditors.

The Liquidation Analysis assumes that the estimated sale proceeds for the Assets would be less than the tax basis of the Assets and would not generate any additional tax liabilities. Should the tax treatment and effect of the liquidation transactions result in a tax liability that was not reduced by other tax benefits, recoveries in the Liquidation Analysis could change materially.

### III.
### SPECIFIC NOTES TO THE ASSET ASSUMPTIONS CONTAINED IN THE LIQUIDATION ANALYSIS

The Liquidation Analysis refers to certain categories of Assets. The numerical/alphabetical designations below correspond to the line items listed in Exhibit 1, each with a specific Note.

1. Cash and Cash Equivalents

   - In the Liquidation Analysis, "cash and cash equivalents" comprises cash and marketable securities. The cash balance shown is the Debtors' current unrestricted cash forecast as of the Liquidation Date. Full recovery is anticipated on cash and marketable securities.

2. Accounts Receivable

   - Accounts Receivable includes all third-party trade accounts receivable. Allowances for doubtful accounts, accrued returns, cash payment discounts, wholesaler fees and chargebacks are included in receivables. The liquidation analysis assumes that upon conversion to a chapter 7, the Debtors' ability to collect on its receivables will be negatively impacted by an increase in product returns for certain products as the end market demand for its products declines.

3

NAS2034

- Approximately 90% of the Debtors' outstanding trade accounts receivable are due from 3 main pharmaceutical distributors from which the Debtors have historically seen minimal loss rates. However, potential risks exist around the ability to collect on the Debtors' outstanding accounts receivable due to potential setoff claims against the Debtors.

- Accounts receivable due from associated companies are deemed to have the same recovery assumptions as accounts receivable with third-parties.

- Debtor-to-Debtor intercompany receivables are deemed to have no recoverable value in this analysis.

- For purposes of the Liquidation Analysis, the liquidation proceeds of accounts receivable were estimated to range from 50-76% of net book value.

3. Inventory

- Inventory consists of raw materials, work in process and finished goods which were evaluated for recovery at the product level. The book value of inventory represents the lower of cost or market value. The liquidation analysis assumes that manufacturing facilities would initiate shutdown at the start of the liquidation period and that the raw material and work in progress would not have recoverable value. The Debtors would be expected to sell the remaining finished goods at significantly higher than cost and therefore, results in estimated recovery rate ranges over 100%. The liquidation analysis assumes that sufficient proceeds will not be immediately available to pay accrued rebates, that the Debtors would need to significantly decrease the market price of inventory on hand to account for the increased final cost to customers.

- The liquidation analysis assumes a recovery range for finished goods of 199-397% of net book value and a recovery range for total inventory of 100-200%.

4. Prepaid Expenses and Other Current Assets

- Prepaid Expenses and Other Current Assets primarily includes prepaid retainers and prepaid insurance expense for which the Debtors anticipate no recoverable value.

5. Restricted Cash

- Restricted Cash consists primarily of cash collateralized for insurance policies and trust account agreements with pharmacy benefit managers. The funds related to insurance policies have an estimated recovery of 0-50% of net book value.

6. Property and Equipment, net (PP&E)

- Property and Equipment, net ("PP&E") comprises Land and Buildings, Leasehold Improvements, Machinery & Equipment ("Equipment"), Furniture and Fixtures ("Furniture"), Computer Software and Equipment ("Software") and Construction in Progress. Recovery ranges for PP&E were based on management's knowledge of the underlying assets and estimates of their ultimate sale values. The estimated recovery ranges for the various components of PP&E are as follows:

4

NAS2035

- o  Land and Buildings  25-45%
- o  Equipment  5-15%,
- o  Furniture  5-10%,
- o  Software  2-4%.

- Leasehold Improvements and Construction in Progress are estimated to have no recovery value.

- PP&E consists primarily of a manufacturing facility in Wilson, NC owned by Purdue Pharmaceuticals L.P. and Leasehold improvements owned by Rhodes Pharmaceuticals L.P. The blended recovery for PP&E is 14-27%.

7. Investments at Cost

- Investments at Cost include the Debtors' investments in early stage privately held companies. Primarily due to the estimated high illiquidity discounts, the Debtors assume a recovery rate of 38-63%.

8. Intangible Assets

- Intangible assets include brands, patents, trademarks, know-how and ANDAs for branded and generic products.

   - o  Intangible assets are held on the Debtors' balance sheets at cost.
   - o  The liquidation analysis estimates that the liquidation of the brands held by Avrio and the ANDAs, patents and other intangibles for the Debtors' generic and branded pharmaceutical products would be at a significant discount to the going concern value of the Debtors' ongoing business operations.
   - o  Total proceeds are estimated to be $104-$242 million or 110-254% of net book value

9. Other Assets (Non-Current)

- Other long-term assets consist primarily of prepaid rent and are estimated to have no recoverable value.

- Proceeds from Causes of Action arising under chapter 5 of the Bankruptcy Code ("Avoidance Actions") may be available for distribution to Holders of Administrative Claims, Priority Claims, and General Unsecured Claims in accordance with the priorities established by the Bankruptcy Code. The Debtors, however, believe that recoveries from Avoidance Actions (other than, for the avoidance of doubt, recoveries in respect of Shareholder Claim Rights), if any, would be speculative in nature and have not included any such proceeds in the Liquidation Analysis.

10. Shareholder Claim Rights

- The Liquidation Analysis assumes that there is no settlement with the shareholders.[3]
- The amount of any hypothetical judgment is unknowable. However, the Debtors believe that recoveries in respect of Shareholder Claim Rights in the context of a hypothetical chapter 7

---

[3] To the extent relevant for purposes of the "best interests" of creditors test set forth in Bankruptcy Code section 1129(a)(7), the Liquidation Analysis assumes that, in a chapter 7 scenario, Holders of Claims and Interests and other non-Debtor Persons would retain their direct claims, if any, against the Shareholder Released Parties. Section III.AA(2)(ii)(c) of the Disclosure Statement contains a discussion of the value of such claims in a chapter 7 scenario.

NAS2036

liquidation would likely be lower than recoveries under the Shareholder Settlement Agreement for a number of reasons, including:
- o Shareholder Released Parties would pay for Shareholder Releases under the Plan.
- o The Trustee and its counsel would not be familiar with the extremely complicated and extensive factual record, which could affect the Trustee's ability to prosecute the Shareholder Claim Rights.
- o The Shareholder Settlement allows for the consensual resolution of other complex issues, including collectability.
- o In a hypothetical chapter 7 liquidation, the Debtors would be one party of many pursuing claims against the Debtors' shareholders, and the Debtors might not "win the race to the courthouse."
- The Liquidation Analysis assumes that the recoveries in respect of Shareholder Claim Rights are estimated to be $746-$2,238 million and received at PPLP.
- o To estimate midpoint recoveries, the Debtors discounted the total value of contributions under the Shareholder Settlement to 12/31/2021 using a discount rate of 9% and estimated recovery rate of 50% under a hypothetical chapter 7 liquidation scenario, exclusive of litigation-related costs and expenses.

## IV.
## SPECIFIC NOTES TO THE LIQUIDATION COST ASSUMPTIONS CONTAINED IN THE LIQUIDATION ANALYSIS

1. Chapter 7 Trustee Fees

- Represents the costs of payment of statutorily allowed reasonable compensation to the Trustee. Estimated Trustee fees are calculated in accordance with section 326 of the Bankruptcy Code as follows: not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. For the purposes of this analysis, Chapter 7 Trustee Fees are assumed to be 2-3% of total liquidation proceeds, excluding recoveries related to cash and cash equivalents available to the Trustee as of the Liquidation Date.

2. Chapter 7 Professional Fees and Claims Resolution Costs

- Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including fees and expenses incurred in resolving the Debtors' claims register, which currently constitutes over 614,000 claims asserted in a face amount of approximately $41 trillion[4], and expenses relating to the sale of the Debtors' assets.
- The Trustee's fees and expenses will be entitled to payment in full prior to any distribution to chapter 11 Administrative Claims and Other Priority Claims.
- The Liquidation Analysis assumes that the Private-Side Resolutions, which among other things were conditioned on confirmation of a plan of reorganization that includes a settlement of Shareholder Claim Rights, are not satisfied.
- As discussed in Section 1.D of the Disclosure Statement, absent the Private-Side Resolutions,

---

[4] Exclusive of a single personal injury claim filed in the amount of $100 trillion. Claims filed in amounts certain represent approximately 10% of the claims pool.

NAS2037

litigation among various creditor constituencies could continue for many years and at great expense. The Liquidation Analysis assumes that such litigation takes 5-10 years. Trustee professional fees, including fees incurred in connection with allocation-related litigation and litigation in respect of Shareholder Claim Right, is estimated to be $520-$1,560 million.

3. Transaction cost advisory fees

- Fees are estimated to be 2-3% of the sales value of the Debtors' PP&E and intangible assets due to the need to hire brokers and/or other specialists to market and liquidate these assets for the Debtors.

4. Wind down costs

- Wind down costs are based on a percentage of general and administrative (G&A) expenses and are estimated to be 20-25% of annual expenses in year 1 and decreasing percentages in subsequent years.

5. Severance

- Severance is estimated at two weeks of payroll expense.

## IV.
## SPECIFIC NOTES TO THE CLAIMS ASSUMPTIONS
## CONTAINED IN THE LIQUIDATION ANALYSIS

The Liquidation Analysis sets forth an allocation of the liquidation proceeds to holders of Claims and Interests in accordance with the priorities set forth in section 726 of the Bankruptcy Code. In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules, Claims listed in the Debtors' current books and records and Proofs of Claim filed to date. In addition, the Liquidation Analysis includes estimates for certain costs and claims not currently asserted in these Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation. These costs and claims include those incurred to manage the chapter 7 liquidation (such as trustee and professional fees and operational winddown costs), and additional Administrative Claims.

To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims. For purposes of the Liquidation Analysis, the Debtors' estimates of Allowed Claims are used. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

1. Superpriority Administrative Expense Claims

- The Liquidation Analysis assumes that the DOJ Forfeiture Judgment Claim is Allowed against PPLP in the amount of $2 billion and that the DOJ Forfeiture Judgment Credit is unavailable.

2. Administrative Claims

- Administrative Claims arising in a hypothetical chapter 7 liquidation may include, among other things: (1) Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code; (2) postpetition trade payables; (3) accrued postpetition employee obligations; (4) accrued taxes; (5) accrued

7

NAS2038

utility payments; and (6) post-petition intercompany payables.

- This Liquidation Analysis assumes there will be approximately $341 million in Administrative Expense Claims outstanding as of the Liquidation Date, which includes:

    o Post-petition trade payable claims
    o Rejection damage claims resulting from the cancellation of the "Avrio Lease" that was previously assumed post-petition by the Debtors
    o Rejection damage claims resulting from the cancellation of the "PPLP lease" that was entered into post-petition by the Debtors
    o Amounts owed under the debtor's Incentive and Retention plans
    o Post-petition accrued expenses

- This Liquidation Analysis concludes that, on a consolidated basis, Administrative Expense Claims will receive a 16% recovery in the mid scenario, while receiving a 2% in the low scenario and a 96% recovery in the high scenario. The variance in recovery is due to the significant variability in liquidation proceeds between the low and high case.

3. Priority Claims

- The Liquidation Analysis assumes that there are $0.8 million in Priority Employee claims based upon the priority wage cap and the number of total employee claims filed. The priority claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-96%.

- The Liquidation Analysis assumes that there are $0.8 million in Priority Tax claims, which consists of accrued Taxes reflected on the balance sheet that are not yet due and payable, or that are being contested in good faith, in accordance with GAAP. The priority claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-100%.

4. Class 4 – General Unsecured Claims

- Prepetition accounts payable – The Liquidation Analysis assumes that all undisputed prepetition accounts payable claims will be allowed in full in a Chapter 7 scenario.

- Pension Benefit Guaranty Corporation termination claim – The Liquidation Analysis includes a claim estimate of $163 million related to the termination of the Debtors defined benefit pension plan.

- Contract rejection damages – The Liquidation Analysis includes an estimate for rejection damages related to the rejection of the Debtors' prepetition lease at One Stamford Forum.

- Opioid Litigation –The Liquidation Analysis assumes that all opioid-related claims asserted against the Debtors are asserted solely against Debtor PPLP. As discussed herein and in Section 1.D of the Disclosure Statement, a chapter 7 liquidation would likely involve extensive and value-destructive litigation regarding the validity and amount of the these claims, and there can be no assurance that any particular claim would ultimately be allowed in a particular amount or at all at the eventual conclusion of such litigation. For illustrative purposes only, the Liquidation

NAS2039

Analysis shows contingent liability claims in the asserted face amount of approximately $41 trillion[5].

---

[5] Exclusive of a single personal injury claim filed in the amount of $100 trillion.  Claims filed in amounts certain represent approximately 10% of the claims pool.

NAS2040

## EXHIBIT 1

**Hypothetical Liquidation Analysis**

NAS2041

**Purdue Pharma L.P., et al**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ 943.2 | 100.0% | 100.0% | 100.0% | $ 943.2 | $ 943.2 | $ 943.2 |
| Accounts Receivable (Net) | 150.3 | 75.5% | 62.9% | 50.3% | 113.5 | 94.6 | 75.7 |
| Inventories, Net | 83.3 | 200.1% | 150.1% | 100.0% | 166.7 | 125.0 | 83.4 |
| Prepaid Expenses & Other Current Assets | 51.1 | 4.8% | 3.6% | 2.4% | 2.4 | 1.8 | 1.2 |
| Restricted Cash | 29.9 | 1.3% | 0.6% | 0.0% | 0.4 | 0.2 | - |
| Total Current Assets | $ 1,257.8 | | | | $ 1,226.2 | $ 1,164.8 | $ 1,103.4 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 66.5 | 26.7% | 20.1% | 13.6% | $ 17.8 | $ 13.4 | $ 9.0 |
| Investments at Cost | 44.6 | 63.2% | 50.7% | 38.2% | 28.2 | 22.6 | 17.1 |
| Investments in Associated Companies | 9.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | 148.5 | 50.0% | 25.0% | 0.0% | 74.3 | 37.1 | - |
| Intangible Assets, Net | 95.1 | 254.0% | 181.9% | 109.8% | 241.5 | 172.9 | 104.4 |
| Other Assets | 16.5 | 0.0% | 0.0% | 0.0% | - | - | - |
| Total Assets | $ 1,638.7 | 96.9% | 86.1% | 75.3% | $ 1,587.9 | $ 1,410.9 | $ 1,233.9 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 1,587.9 | $ 1,410.9 | $ 1,233.9 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| Total Liquidation Proceeds | | | | | $ 3,826.3 | $ 2,903.2 | $ 1,980.0 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | (57.7) | (49.0) | (31.1) |
| Chapter 7 Professional Fees | | | | | (520.0) | (975.0) | (1,560.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (5.2) | (4.7) | (3.4) |
| Wind Down Costs | | | | | (43.7) | (68.8) | (100.4) |
| Severance | | | | | (4.1) | (4.1) | (4.1) |
| Total Liquidation Costs | | | | | $ (630.6) | $ (1,101.5) | $ (1,699.0) |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 3,195.6 | $ 1,801.6 | $ 281.1 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ (2,000.0) | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 100.0% | 1,651.8 | 82.6% | 266.5 | 13.3% |
| Administrative Expense Claims | $ (341.4) | $ 344.9 | $ 341.4 | $ 337.9 | 330.2 | 95.7% | 54.3 | 15.9% | 8.1 | 2.4% |
| Priority Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | 1.6 | 97.8% | 0.0 | 0.7% | 0.0 | 0.1% |
| LSTC - Prepetition Accounts Payable | (12.9) | 12.9 | 12.9 | 12.9 | 1.6 | 12.8% | 0.7 | 5.5% | 0.0 | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 163.0 | 100.0% | 94.8 | 58.2% | 6.4 | 3.9% |
| Contract Rejection Damages | (41.1) | 41.1 | 41.1 | 41.1 | 0.1 | 0.2% | 0.0 | 0.0% | - | 0.0% |
| Contingent Litigation Liability | (41,000,000.0) | 41,000,000.0 | 41,000,000.0 | 41,000,000.0 | 699.1 | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (41,002,217.0) | $ 41,000,217.0 | $ 41,000,217.0 | $ 41,000,217.0 | 863.9 | 0.0% | 95.5 | 0.0% | 6.4 | 0.0% |
| Total Claims | $ (41,002,560.0) | $ 41,002,563.5 | $ 41,002,563.0 | $ 41,002,556.5 | $ 3,195.6 | 0.0% | $ 1,801.6 | 0.0% | $ 281.1 | 0.0% |

11

NAS2042

**Purdue Pharma L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ 943.2 | 100.0% | 100.0% | 100.0% | $ 943.2 | $ 943.2 | $ 943.2 |
| Accounts Receivable (Net) | 79.6 | 59.7% | 49.8% | 39.8% | 47.6 | 39.6 | 31.7 |
| Inventories, Net | 9.1 | 1386.5% | 1039.9% | 693.2% | 125.5 | 94.1 | 62.7 |
| Prepaid Expenses & Other Current Assets | 28.7 | 3.9% | 2.9% | 1.9% | 1.1 | 0.8 | 0.6 |
| Restricted Cash | 29.9 | 1.3% | 0.6% | 0.0% | 0.4 | 0.2 | - |
| **Total Current Assets** | $ 1,090.4 | | | | $ 1,117.7 | $ 1,077.9 | $ 1,038.2 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 6.9 | 5.5% | 4.1% | 2.6% | $ 0.4 | $ 0.3 | $ 0.2 |
| Investments at Cost | 10.5 | 25.0% | 12.5% | 0.0% | 2.6 | 1.3 | - |
| Investments in Associated Companies | 383.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | 148.4 | 50.0% | 25.0% | 0.0% | 74.2 | 37.1 | - |
| Intangible Assets, Net | 3.8 | 1159.6% | 773.1% | 386.5% | 44.3 | 29.5 | 14.8 |
| Other Assets | 3.5 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 1,647.2 | 75.2% | 69.6% | 63.9% | $ 1,239.2 | $ 1,146.2 | $ 1,053.1 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 1,239.2 | $ 1,146.2 | $ 1,053.1 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| **Total Liquidation Proceeds** | | | | | $ 3,477.6 | $ 2,638.4 | $ 1,799.2 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (50.7) | $ (42.4) | $ (25.7) |
| Chapter 7 Professional Fees | | | | | (472.5) | (886.1) | (1,417.8) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.9) | (0.7) | (0.4) |
| Wind Down Costs | | | | | (32.5) | (51.1) | (74.6) |
| Severance | | | | | (2.0) | (2.0) | (2.0) |
| **Total Liquidation Costs** | | | | | $ (558.6) | $ (982.3) | $ (1,520.5) |
| | | | | | | | |
| **Funding of Liquidation Costs for Other Debtor Entities** | | | | | $ (2.7) | $ (4.3) | $ (12.2) |
| **Excess Proceeds Available from Other Debtor Entities** | | | | | $ 53.0 | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 2,969.4 | $ 1,651.8 | $ 266.5 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ (2,000.0) | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 100.0% | $ 1,651.8 | 82.6% | $ 266.5 | 13.3% |
| Administrative Expense Claims | $ (268.6) | $ 268.6 | $ 268.6 | $ 268.6 | $ 268.6 | 100.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | $ 1.6 | 100.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (7.7) | 7.7 | 7.7 | 7.7 | 0.0 | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | (40.6) | 40.6 | 40.6 | 40.6 | 0.0 | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | (41,000,000.0) | 41,000,000.0 | 41,000,000.0 | 41,000,000.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (41,000,211.3) | $ 41,000,211.3 | $ 41,000,211.3 | $ 41,000,211.3 | 699.1 | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (41,002,481.6) | $ 41,002,481.6 | $ 41,002,481.6 | $ 41,002,481.6 | $ 2,969.3 | 0.0% | $ 1,651.8 | 0.0% | $ 266.5 | 0.0% |

NAS2043

**Nayatt Cove Lifescience**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | 0.0 | 6.0% | 4.5% | 3.0% | 0.0 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 0.0 | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | 34.1 | 75.0% | 62.5% | 50.0% | 25.6 | 21.3 | 17.1 |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 34.1 | 75.0% | 62.5% | 50.0% | $ 25.6 | $ 21.3 | $ 17.1 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 25.6 | $ 21.3 | $ 17.1 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 25.6 | $ 21.3 | $ 17.1 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.5) | $ (0.5) | $ (0.5) |
| Chapter 7 Professional Fees | | | | | (4.5) | (7.2) | (10.4) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (5.0) | $ (7.7) | $ (10.9) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 20.6 | $ 13.6 | $ 6.1 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 20.6 | 12.6% | 13.6 | 8.4% | 6.1 | 3.8% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ 20.6 | 12.6% | $ 13.6 | 8.4% | $ 6.1 | 3.8% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ 20.6 | 12.6% | $ 13.6 | 8.4% | $ 6.1 | 3.8% |

13

NAS2044

**Purdue Pharmaceuticals L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Inventories, Net | 32.9 | 2.4% | 1.8% | 1.2% | 0.8 | | 0.6 | | 0.4 | |
| Prepaid Expenses & Other Current Assets | 7.1 | 6.0% | 4.5% | 3.0% | 0.4 | | 0.3 | | 0.2 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 40.1 | | | | $ 1.2 | | $ 0.9 | | $ 0.6 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ 55.4 | 31.1% | 23.4% | 15.8% | $ 17.2 | | $ 13.0 | | $ 8.8 | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | 0.1 | 50.0% | 25.0% | 0.0% | 0.1 | | 0.0 | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | 12.9 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 108.5 | 17.1% | 12.8% | 8.6% | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.4) | | $ (0.3) | | $ (0.3) | |
| Chapter 7 Professional Fees | | | | | (2.5) | | (4.7) | | (7.5) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.3) | | (0.3) | | (0.3) | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | (0.6) | | (0.6) | | (0.6) | |
| **Total Liquidation Costs** | | | | | $ (3.8) | | $ (6.0) | | $ (8.7) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 14.7 | | $ 7.9 | | $ 9.4 | |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (3.8) | $ 3.8 | $ 3.8 | $ 3.8 | $ 3.8 | 100.0% | $ 3.8 | 100.0% | $ 0.6 | 16.9% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.5) | 0.5 | 0.5 | 0.5 | 0.0 | 6.7% | 0.0 | 2.5% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 10.9 | 6.7% | 4.2 | 2.5% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.5) | $ 163.5 | $ 163.5 | $ 163.5 | 10.9 | 6.7% | $ 4.2 | 2.5% | $ - | 0.0% |
| **Total Claims** | $ (167.2) | $ 167.2 | $ 167.2 | $ 167.2 | $ 14.7 | 8.8% | $ 7.9 | 4.7% | $ 0.6 | 0.4% |

14

NAS2045

**Purdue Neuroscience Company**

($ in millions)

|  | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| **Assets** | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Creditor Class** | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
|    LSTC - Prepetition Accounts Payable | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
|    PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | | 0.0% | | 0.0% | | 0.0% |
|    Contract Rejection Damages | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
|    Contingent Litigation Liability | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

15

NAS2046

**Purdue Pharma of Puerto Rico**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Prepaid Expenses & Other Current Assets | 0.0 | 6.0% | 4.5% | 3.0% | 0.0 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 0.0 | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | | | | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 0.0 | 6.0% | 4.5% | 3.0% | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.0) | | (0.0) | | (0.0) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 | 79.0% | $ 0.0 | 44.6% | $ 0.0 | 7.2% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.0) | 0.0 | 0.0 | 0.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

16

NAS2047

**Purdue Transdermal Technologies L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | (0.8) | -18.4% | -15.3% | -12.3% | 0.1 | 0.1 | 0.1 |
| Inventories, Net | 1.6 | 1552.5% | 1164.4% | 776.2% | 24.5 | 18.4 | 12.3 |
| Prepaid Expenses & Other Current Assets | 1.7 | 6.0% | 4.5% | 3.0% | 0.1 | 0.1 | 0.1 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 2.5 | | | | $ 24.8 | $ 18.6 | $ 12.4 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 2.5 | 984.6% | 738.9% | 493.3% | $ 24.8 | $ 18.6 | $ 12.4 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 24.8 | $ 18.6 | $ 12.4 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 24.8 | $ 18.6 | $ 12.4 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.5) | $ (0.5) | $ (0.4) |
| Chapter 7 Professional Fees | | | | | (3.3) | (6.2) | (10.1) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (3.8) | $ (6.7) | $ (10.5) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 21.0 | $ 11.9 | $ 1.9 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | $ 1.6 | 100.0% | $ 1.6 | 100.0% | $ 1.6 | 100.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.2) | 1.2 | 1.2 | 1.2 | 0.1 | 11.8% | 0.1 | 6.2% | 0.0 | 0.2% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 19.2 | 11.8% | 10.2 | 6.2% | 0.3 | 0.2% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (164.2) | $ 164.2 | $ 164.2 | $ 164.2 | $ 19.4 | 11.8% | $ 10.2 | 6.2% | $ 0.3 | 0.2% |
| **Total Claims** | $ (165.8) | $ 165.8 | $ 165.8 | $ 165.8 | $ 21.0 | 12.7% | $ 11.9 | 7.2% | $ 1.9 | 1.2% |

NAS2048

**Imbrium Therapeutics L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate High | Mid | Low | Estimated Recovery Value High | | Mid | | Low | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ | - | $ | - | |
| Accounts Receivable (Net) | 0.5 | 75.0% | 62.5% | 50.0% | 0.4 | | 0.3 | | 0.2 | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 0.5 | | | | $ 0.4 | $ | 0.3 | $ | 0.2 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ 0.5 | 10.2% | 6.8% | 3.5% | $ 0.1 | $ | 0.0 | $ | 0.0 | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 1.0 | 41.5% | 33.7% | 26.0% | $ 0.4 | $ | 0.3 | $ | 0.3 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.4 | $ | 0.3 | $ | 0.3 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 0.4 | $ | 0.3 | $ | 0.3 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ | (0.0) | $ | (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.1) | | (0.1) | | (0.2) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.0) | | (0.0) | | (0.0) | |
| Wind Down Costs | | | | | (1.3) | | (2.1) | | (3.0) | |
| Severance | | | | | (0.3) | | (0.3) | | (0.3) | |
| **Total Liquidation Costs** | | | | | $ (1.7) | $ | (2.5) | $ | (3.5) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ 1.3 | $ | 2.2 | $ | 3.3 | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ | - | $ | - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ | - | $ | - | |

| Creditor Class | Book Value | Estimated Claim Allowed High | | Mid | | Low | | Estimated Recovery by Class of Claims ($)/(%) High | | Mid | | Low | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DOJ - Criminal Forfeiture | $ - | $ | - | $ | - | $ | - | $ - | 0.0% $ | - | 0.0% $ | - | 0.0% |
| Administrative Expense Claims | $ (4.3) | $ | 4.3 | $ | 4.3 | $ | 4.3 | $ - | 0.0% $ | - | 0.0% $ | - | 0.0% |
| Priority Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% $ | - | 0.0% $ | - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.2) | | 0.2 | | 0.2 | | 0.2 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.2) | $ | 163.2 | $ | 163.2 | $ | 163.2 | $ - | 0.0% $ | - | 0.0% $ | - | 0.0% |
| **Total Claims** | $ (167.5) | $ | 167.5 | $ | 167.5 | $ | 167.5 | $ - | 0.0% $ | - | 0.0% $ | - | 0.0% |

18

NAS2049

**Greenfield Bio Ventures L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | (1.3) | (2.1) | (3.1) |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (1.3) | $ (2.1) | $ (3.1) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ 1.3 | $ 2.1 | $ 3.1 |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2050

**Adlon Therapeutics L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | 2.2 | 75.0% | 62.5% | 50.0% | 1.7 | | 1.4 | | 1.1 | |
| Inventories, Net | 0.7 | 76.6% | 57.4% | 38.3% | 0.6 | | 0.4 | | 0.3 | |
| Prepaid Expenses & Other Current Assets | 5.5 | 6.0% | 4.5% | 3.0% | 0.3 | | 0.2 | | 0.2 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 8.5 | | | | $ 2.6 | | $ 2.1 | | $ 1.6 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | 8.0 | 56.5% | 28.2% | 0.0% | 4.5 | | 2.3 | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 16.5 | 42.9% | 26.2% | 9.5% | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.1) | | $ (0.1) | | $ (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.4) | | (1.4) | | (2.9) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.1) | | (0.1) | | - | |
| Wind Down Costs | | | | | (1.4) | | (2.1) | | (3.1) | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (2.0) | | $ (3.7) | | $ (6.0) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ 4.5 | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 5.1 | | $ 0.6 | | $ - | |

| Creditor Class | | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (3.1) | $ 3.1 | | $ 3.1 | | $ 3.1 | | $ 3.1 | 100.0% | 0.6 | 18.5% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.4) | 0.4 | | 0.4 | | 0.4 | | 0.0 | 1.2% | - | 0.0% | | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | 2.0 | 1.2% | - | 0.0% | | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.4) | $ 163.4 | | $ 163.4 | | $ 163.4 | | $ 2.0 | 1.2% | - | 0.0% | | 0.0% |
| **Total Claims** | $ (166.5) | $ 166.5 | | $ 166.5 | | $ 166.5 | | $ 5.1 | 3.0% | $ 0.6 | 0.3% | $ - | 0.0% |

NAS2051

**Purdue Pharma Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Prepaid Expenses & Other Current Assets | 0.4 | 6.0% | 4.5% | 3.0% | 0.0 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 0.4 | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | 9.7 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 10.1 | 0.2% | 0.2% | 0.1% | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.0) | | (0.0) | | (0.0) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| | | | | | | | | | | |
| Funding Required from Purdue Pharma L.P. | | | | | $ - | | $ - | | $ - | |
| Excess Proceeds Available to Purdue Pharma L.P. | | | | | $ - | | $ - | | $ - | |
| | | | | | | | | | | |
| Net Liquidation Proceeds Available to Creditors | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ (0.0) | $ 0.0 | | $ 0.0 | | $ 0.0 | | $ 0.0 | 69.0% | $ 0.0 | 39.0% | $ 0.0 | 6.3% |
| LSTC - Prepetition Accounts Payable | (0.2) | 0.2 | | 0.2 | | 0.2 | | - | 0.0% | - | 0.0% | - | 0.0% |
| PIIGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.2) | $ 163.2 | | $ 163.2 | | $ 163.2 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.2) | $ 163.2 | | $ 163.2 | | $ 163.2 | | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

NAS2052

**Purdue Pharmaceutical Products L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 0.1 | 75.0% | 62.5% | 50.0% | 0.1 | 0.1 | 0.1 |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 0.1 | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 0.1 | 75.0% | 62.5% | 50.0% | $ 0.1 | $ 0.1 | $ 0.1 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | (0.0) | (0.0) | (0.0) |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (0.0) | $ (0.0) | $ (0.1) |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.1 | $ 0.0 | $ 0.0 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (4.6) | $ 4.6 | $ 4.6 | $ 4.6 | $ 0.1 | 1.5% | $ 0.0 | 0.9% | $ 0.0 | 0.2% |
| Priority Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.0) | 0.0 | 0.0 | 0.0 | - | 0.0% | | 0.0% | | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | | 0.0% | | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (167.6) | $ 167.6 | $ 167.6 | $ 167.6 | $ 0.1 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

NAS2053

**Purdue Pharma Manufacturing L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
| | | High | Mid | Low | High | Mid | Low |
|---|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | 1.0 | 6.0% | 4.5% | 3.0% | 0.1 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 1.0 | | | | $ 0.1 | $ 0.0 | $ 0.0 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 1.0 | 6.0% | 4.5% | 3.0% | $ 0.1 | $ 0.0 | $ 0.0 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.1 | $ 0.0 | $ 0.0 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.1 | $ 0.0 | $ 0.0 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (0.0) | $ (0.0) | $ (0.0) |
| | | | | | | | |
| Funding Required from Purdue Pharma L.P. | | | | | $ - | $ - | $ - |
| Excess Proceeds Available to Purdue Pharma L.P. | | | | | $ - | $ - | $ - |
| | | | | | | | |
| Net Liquidation Proceeds Available to Creditors | | | | | $ 0.1 | $ 0.0 | $ 0.0 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
| | | High | Mid | Low | High | | Mid | | Low | |
|---|---|---|---|---|---|---|---|---|---|---|
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.3) | $ 0.3 | $ 0.3 | $ 0.3 | $ 0.1 | 20.4% | $ 0.0 | 11.5% | $ 0.0 | 1.9% |
| Priority Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | - | 0.0% | $ - | 0.0% | $ - | 0.0% |
|   LSTC - Prepetition Accounts Payable | (0.2) | 0.2 | 0.2 | 0.2 | - | 0.0% | - | 0.0% | - | 0.0% |
|   PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
|   Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
|   Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.2) | $ 163.2 | $ 163.2 | $ 163.2 | - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.4) | $ 163.4 | $ 163.4 | $ 163.4 | $ 0.1 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

23

NAS2054

**Seven Seas Hill Corp.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 0.0% | 0.0% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | | | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| PBGC - Termination | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| Contract Rejection Damages | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

24

NAS2055

**Ophir Green Corp.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 0.0% | 0.0% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | | | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | | | |
| Wind Down Costs | | | | | | | |
| Severance | | | | | | | |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

25

NAS2056

**Avrio Health L.P. (formerly Purdue Products L.P.)**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 7.0 | 75.0% | 62.5% | 50.0% | 5.2 | 4.4 | 3.5 |
| Inventories, Net | 5.8 | 140.4% | 105.3% | 70.2% | 8.2 | 6.1 | 4.1 |
| Prepaid Expenses & Other Current Assets | 2.3 | 6.0% | 4.5% | 3.0% | 0.1 | 0.1 | 0.1 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Total Current Assets | $ 15.1 | | | | $ 13.6 | $ 10.6 | $ 7.6 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 0.2 | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | 64.9 | 234.9% | 176.2% | 117.5% | 152.5 | 114.4 | 76.3 |
| Other Assets | 0.1 | 0.0% | 0.0% | 0.0% | - | - | - |
| Total Assets | $ 80.4 | 206.5% | 155.4% | 104.3% | $ 166.1 | $ 125.0 | $ 83.9 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 166.1 | $ 125.0 | $ 83.9 |
| Sackler Settlement | | | | | - | - | - |
| Total Liquidation Proceeds | | | | | $ 166.1 | $ 125.0 | $ 83.9 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (3.3) | $ (3.1) | $ (2.5) |
| Chapter 7 Professional Fees | | | | | (22.0) | (42.0) | (67.7) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (3.1) | (2.9) | (2.3) |
| Wind Down Costs | | | | | (2.4) | (3.7) | (5.4) |
| Severance | | | | | (0.1) | (0.1) | (0.1) |
| Total Liquidation Costs | | | | | $ (30.9) | $ (51.8) | $ (78.1) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ 53.0 | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 135.2 | $ 73.2 | $ 5.8 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (6.1) | $ 6.1 | $ 6.1 | $ 6.1 | $ 6.1 | 100.0% | $ 6.1 | 100.0% | $ 5.8 | 95.1% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.3) | 1.3 | 1.3 | 1.3 | 1.3 | 100.0% | 0.6 | 49.3% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 74.8 | 45.9% | 66.4 | 40.7% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (164.3) | $ 164.3 | $ 164.3 | $ 164.3 | $ 76.0 | 46.3% | $ 67.0 | 40.8% | $ - | 0.0% |
| Total Claims | $ (170.4) | $ 170.4 | $ 170.4 | $ 170.4 | $ 82.1 | 48.2% | $ 73.2 | 42.9% | $ 5.8 | 3.4% |

NAS2057

**UDF LP**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | 2.6 | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ 2.6 | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2058

Rhodes Associates L.P.

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2059

**Rhodes Pharmaceuticals LP**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 73.6 | 75.0% | 62.5% | 50.0% | 55.2 | 46.0 | 36.8 |
| Inventories, Net | 29.0 | 24.6% | 18.5% | 12.3% | 7.1 | 5.4 | 3.6 |
| Prepaid Expenses & Other Current Assets | 3.3 | 6.0% | 4.5% | 3.0% | 0.2 | 0.1 | 0.1 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 105.9 | | | | $ 62.5 | $ 51.5 | $ 40.5 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 3.5 | 3.8% | 3.1% | 2.5% | $ 0.1 | $ 0.1 | $ 0.1 |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | 21.9 | 183.2% | 122.2% | 61.1% | 40.2 | 26.8 | 13.4 |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 131.4 | 78.3% | 59.7% | 41.1% | 102.8 | 78.4 | 53.9 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 102.8 | $ 78.4 | $ 53.9 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 102.8 | $ 78.4 | $ 53.9 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (2.1) | $ (2.0) | $ (1.6) |
| Chapter 7 Professional Fees | | | | | (14.2) | (26.3) | (41.9) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.8) | (0.7) | (0.4) |
| Wind Down Costs | | | | | (4.3) | (6.8) | (10.0) |
| Severance | | | | | (0.3) | (0.3) | (0.3) |
| **Total Liquidation Costs** | | | | | $ (21.7) | $ (36.1) | $ (54.2) |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ 0.3 |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 81.1 | $ 42.3 | $ - |

| Creditor Class | Estimated Claim Allowed | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | (41.8) | $ 45.3 | $ 41.8 | $ 38.3 | $ 45.3 | 100.0% | $ 41.8 | 100.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.0) | 1.0 | 1.0 | 1.0 | 0.2 | 21.8% | 0.0 | 0.3% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 35.5 | 21.8% | 0.4 | 0.3% | - | 0.0% |
| Contract Rejection Damages | (0.5) | 0.5 | 0.5 | 0.5 | 0.1 | 21.8% | 0.0 | 0.3% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (164.4) | 164.4 | 164.4 | 164.4 | 35.8 | 21.8% | 0.4 | 0.3% | - | 0.0% |
| **Total Claims** | $ (206.2) | $ 209.7 | $ 206.2 | $ 202.8 | $ 81.1 | 38.7% | $ 42.3 | 20.5% | $ - | 0.0% |

NAS2060

**Button Land L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2061

**Quidnick Land L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | | | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2062

**Paul Land Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2063

**Rhodes Technologies**

| ($ in millions) | | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Assets | Book Value | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | 4.3 | 75.0% | 62.5% | 50.0% | 3.3 | | 2.7 | | 2.2 | |
| Inventories, Net | 2.0 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Prepaid Expenses & Other Current Assets | 0.9 | 6.0% | 4.5% | 3.0% | 0.1 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 7.2 | | | | $ 3.3 | | $ 2.8 | | $ 2.2 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | | - | | - | |
| Investments in Associated Companies | 2.4 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 9.6 | 34.6% | 28.7% | 22.9% | $ 3.3 | | $ 2.8 | | $ 2.2 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 3.3 | | $ 2.8 | | $ 2.2 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 3.3 | | $ 2.8 | | $ 2.2 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.1) | | $ (0.1) | | $ (0.1) | |
| Chapter 7 Professional Fees | | | | | (0.6) | | (0.9) | | (1.3) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | (0.5) | | (0.8) | | (1.2) | |
| Severance | | | | | (0.6) | | (0.6) | | (0.6) | |
| **Total Liquidation Costs** | | | | | $ (1.8) | | $ (2.5) | | $ (3.2) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ 1.0 | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 1.5 | | $ 0.3 | | $ - | |

| | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Class | Book Value | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (6.5) | $ 6.5 | $ 6.5 | $ 6.5 | $ 1.5 | 23.2% | $ 0.3 | 4.6% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.3) | 0.3 | 0.3 | 0.3 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.3) | $ 163.3 | $ 163.3 | $ 163.3 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (169.8) | $ 169.8 | $ 169.8 | $ 169.8 | $ 1.5 | 0.9% | $ 0.3 | 0.2% | $ - | 0.0% |

33

NAS2064

**SVC Pharma Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $  - | 0.0% | 0.0% | 0.0% | $  - | $  - | $  - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | 0.1 | 6.0% | 4.5% | 3.0% | 0.0 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $  0.1 | | | | $  0.0 | $  0.0 | $  0.0 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $  - | 0.0% | 0.0% | 0.0% | $  - | $  - | $  - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | 0.0 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $  0.1 | 3.8% | 2.8% | 1.9% | $  0.0 | $  0.0 | $  0.0 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $  0.0 | $  0.0 | $  0.0 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $  0.0 | $  0.0 | $  0.0 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $  (0.0) | $  (0.0) | $  (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $  (0.0) | $  (0.0) | $  (0.0) |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $  - | $  - | $  - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $  - | $  - | $  - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $  0.0 | $  0.0 | $  0.0 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $  - | $  - | | $  - | | $  - | | $  - | 0.0% | $  - | 0.0% | $  - | 0.0% |
| Administrative Expense Claims | $  - | $  - | | $  - | | $  - | | $  - | 0.0% | $  - | 0.0% | $  - | 0.0% |
| Priority Claims | $  - | $  - | | $  - | | $  - | | $  - | 0.0% | $  - | 0.0% | $  - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | 0.0 | 0.0% | 0.0 | 0.0% | 0.0 | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $  (163.0) | $  163.0 | | $  163.0 | | $  163.0 | | $  0.0 | 0.0% | $  0.0 | 0.0% | $  0.0 | 0.0% |
| **Total Claims** | $  (163.0) | $  163.0 | | $  163.0 | | $  163.0 | | $  0.0 | 0.0% | $  0.0 | 0.0% | $  0.0 | 0.0% |

NAS2065

**SVC Pharma L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | 2.2 | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ 2.2 | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ 2.2 | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.7) | $ 0.7 | $ 0.7 | $ 0.7 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | - | 0.0% | - | 0.0% | - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | | - | 0.0% | | 0.0% | | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | | - | 0.0% | | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | - | | | - | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.7) | $ 163.7 | $ 163.7 | $ 163.7 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

35

NAS2066

**<u>Appendix C</u>**

**Financial Projections**

NAS2067

## Financial Projections

In connection with the Disclosure Statement,[1] the Debtors' management team ("Management") prepared financial projections ("Financial Projections") for NewCo for fiscal years 2021 through 2025 (the "Projection Period"). The Financial Projections were prepared by Management and are based on a number of assumptions made by Management with respect to the future performance of NewCo's business. **Although Management has prepared the Financial Projections in good faith and believes the assumptions to be reasonable, there can be no assurance that such assumptions will be realized. As described in detail in the Disclosure Statement, a variety of risk factors could affect NewCo's financial results and must be considered. Accordingly, the Financial Projections should be reviewed in conjunction with a review of the risk factors set forth in the Disclosure Statement and the assumptions described herein, including all relevant qualifications and footnotes.**

The Debtors believe that the Plan meets the feasibility requirements set forth in section 1129(a)(11) of the Bankruptcy Code, as confirmation is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors or any successor under the Plan. In connection with the planning and development of a plan of reorganization and for the purposes of determining whether such plan would satisfy this feasibility standard, the Debtors analyzed their ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources.

**These Financial Projections were not prepared with a view toward compliance with published guidelines of the United States Securities and Exchange Commission or guidelines established by the American Institute of Certified Public Accountants for preparation and presentation of prospective financial information. An independent auditor has not examined, compiled or performed any procedures with respect to the prospective financial information contained in this Exhibit and, accordingly, it does not express an opinion or any other form of assurance on such information or its achievability. Debtors' independent auditor assumes no responsibility for, and denies any association with, the prospective financial information.**

**Principal Assumptions for the Financial Projections**

The Financial Projections are based on, and assume the successful implementation of, the Debtors' current business plan ("Business Plan"). Both the Business Plan and the Financial Projections reflect numerous assumptions, including various assumptions regarding the anticipated future performance of NewCo, industry performance, general business and economic conditions, and other matters, many of which are beyond the control of the Debtors. These projections assume that the Company continues to operate its business in the ordinary course, do not forecast for any potential future operating asset sales or for the future NewCo Disposition Event and do not include all agreed to governance terms.

In addition, the assumptions do not take into account the uncertainty and disruption of business that may accompany an ongoing restructuring in Bankruptcy Court due to a delay in the confirmation of the Plan, which among other things, may lead to a loss of key employees.

Therefore, although the Financial Projections are necessarily presented with numerical specificity, the actual results achieved during the Projection Period will likely vary from the projected results. These variations may be material. Accordingly, no definitive representation can be or is being made with respect to the accuracy of the Financial Projections or the ability of NewCo to achieve the projected results of operations. See "Risk Factors."

In deciding whether to vote to accept or reject the Plan, creditors must make their own determinations as

1

NAS2068

to the reasonableness of such assumptions and the reliability of the Financial Projections. See "Risk Factors."

Moreover, the Financial Projections were prepared solely in connection with the restructuring pursuant to the Plan.

Under Accounting Standards Codification "ASC" 852, "Reorganizations" ("ASC 852"), the Debtors note that the Financial Projections reflect the operational emergence from chapter 11 but not the impact of fresh start accounting that will likely be required upon emergence. Fresh start accounting requires all assets, liabilities, and equity instruments to be valued at "fair value." The Financial Projections account for the reorganization and related transactions pursuant to the Plan. While the Debtors expect that NewCo will be required to implement fresh start accounting upon emergence, they have not yet completed the work required to quantify the impact to the Financial Projections. When NewCo fully implements fresh start accounting, differences are anticipated and such differences could be material.

**Safe Harbor Under The Private Securities Litigation Reform Act of 1995**

The Financial Projections contain statements which constitute "forward-looking statements" within the meaning of the Securities Act of 1933, as amended (the "Securities Act") and the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "Exchange Act"). Forward-looking statements in the Financial Projections include the intent, belief, or current expectations of the Debtors and members of its management team with respect to the Business Plan and NewCo's future liquidity, as well as the assumptions upon which such statements are based.

While the Debtors believe that the expectations are based on reasonable assumptions within the bounds of their knowledge of their business and operations, parties in interest are cautioned that any such forward-looking statements are not guarantees of future performance, and involve risks and uncertainties, and that actual results may differ materially from those contemplated by such forward-looking statements.

**Select Risk Factors Related to the Financial Projections**

The Financial Projections are subject to inherent risks and uncertainties, most of which are difficult to predict and many of which are beyond Management's control. Many factors could cause actual results, performance or achievements to differ materially from any future results, performance or achievements expressed or implied by these forward-looking statements. A description of the risk factors associated with the Plan, the Disclosure Statement, and the Financial Projections is included in Article VIII.B of the Disclosure Statement.

<u>**Financial Projections General Assumptions**</u>

<u>Basis of presentation (non-GAAP)</u>

- The consolidated financial statements include NewCo and its subsidiaries, as successors to the operating businesses of Purdue Pharma L.P. and its Debtor subsidiaries. All significant intercompany transactions and accounts have been eliminated.

- The Debtors' liabilities subject to compromise account balance consists of $4,275 million of opioid litigation contingency accrual (expected to be paid by the Company's shareholders) and approximately $12 million of pre-petition trade liabilities. Upon emergence, the Debtors' forecasts reclassify the liability associated with the cash settlement that is expected to be paid by the Company's pre-petition shareholders (and therefore not part of Debtors cash projections) to equity as a capital contribution

NAS2069

based on the settlement agreement with the pre-petition shareholders. The pre-petition trade liabilities are assumed to be settled in cash. Other balance sheet projections do not include adjustments for fresh start accounting; projections are non-GAAP and not created in accordance with American Institute of Certified Public Accountants Statement of Position 90-7.

- The calculation of the cash Distributions to Claimants from Newco is calculated as cash in excess of $200 million (refer to "Allocation of Estate Distributable Value under the Plan" below).

**Allocation of Estate Distributable Value under the Plan**

- Pursuant to Section 5.13(a) of the Plan, the Debtors' Effective Date Cash will be used to (i) fund the Professional Fee Escrow Account, the PAT Reserves and PAT Distribution Accounts to pay Professional Fee Claims and operating expenses of the Plan Administration Trust and to make distributions to Holders of Allowed Claims that will be administered by the Plan Administration Trust, (ii) fund the MDT Operating Reserve to pay operating expenses of the Master Disbursement Trust, (iii) contribute the Initial NewCo Cash to NewCo in the amount of $200 million, (iv) make the Truth Initiative Contribution, the Initial Tribe Trust Distribution and the Initial Private Creditor Trust Distributions on account of Ratepayer Claims, Tribe Claims, Hospital Claims, Third-Party Payor Claims, NAS Monitoring Claims and PI Claims and (v) pay the other required amounts pursuant to the Plan.

- Pursuant to Section 5.13(b) of the Plan, all Effective Date Cash remaining after the satisfaction of the amounts described above will be used to make the Initial NOAT Distribution, which is currently estimated to be $214 million.

- On or as soon as practicable after the Effective Date, the NewCo Transferred Assets, consisting of the Initial NewCo Cash and all of the operating assets of the Debtors (including all non-cash assets of the Debtors other than the Excluded Assets), will be transferred directly or indirectly to NewCo or one or more of its subsidiaries.

- On Each NewCo Distribution Date, all cash held at NewCo in excess of the minimum cash amount of $200 million will be distributed to TopCo after the payment of any amounts required to be paid to the MDT under the NewCo/TopCo Guarantee Agreement. All cash received by TopCo in excess of amounts TopCo uses to fund operating expenses will be immediately distributed by TopCo to NOAT and the Tribe Trust.

- On the Effective Date, the Master Disbursement Trust will receive the MDT Transferred Assets (consisting of Shareholder Claim Rights, including the rights to receive payments due under the Shareholder Settlement Agreement, the MDT Insurance Rights and the MDT Causes of Action).

- The Master Disbursement Trust will use available cash to fund operating expenditures of the Master Disbursement Trust (including the payment of fees for certain third-party services and the compensation of the MDT Trustees and the MDT Executive Director) and to make distributions to the Private Creditor Trusts on each MDT Distribution Date in accordance with the terms outlined in Section 5.2(d) of the Plan. MDT Excess Cash will ultimately be distributed to NOAT and the Tribe Trust.

- Amounts paid in respect of the Shareholder Settlement Agreement are forecasted based on the terms set forth in the Plan and Disclosure Statement.

NAS2070

- The timing of any recoveries in respect of MDT Insurance Rights is currently uncertain and such recoveries have not been included in the forecast for conservatism.

- Distributions to each Creditor Trust will be used to make Distributions on account of Claims channeled to such Creditor Trust in accordance with the Plan, in addition to paying certain attorneys' fees and costs and funding operating expenditures of such Creditor Trust.

Below is brief description of selected forecasted financial statement items for the NewCo operating assets:

### **Non-GAAP P&L**

- Net Sales

  - NewCo will continue to operate the business under six main segments:

    1. Branded Opioids: Prescription opioids, including OxyContin, Hysingla, and Butrans
    2. Avrio Health: Over-the-counter brands such as Betadine, Senokot, Colace, and SlowMag
    3. Adhansia (collectively with the Branded Opioids and Avrio Health, the "Branded Business"): Prescription ADHD medication, with a differentiated 16-hour label
    4. Rhodes Pharmaceuticals (the "Generic Business"): Primarily generic solid oral-dose opioids, transdermal prescription medications, ADHD prescription medications and other prescription medications
    5. Pipeline Assets: Early stage non-opioid assets that require investment to reach commercialization or potential inflection point (for next decisions around further investment or monetization) but present upside if successfully developed; range of therapeutic areas from oncology to non-opioid pain; and
    6. Public Health Initiative: Five products currently in development (one of which is now approved and four others that are estimated to launch between end of 2021 to end of 2023) that will provide lifesaving medicines to address and abate the ongoing opioid epidemic.

  - In determining net sales for Branded Opioids and Adhansia, the Debtors first forecast gross sales based upon a combination of historical sales, demand trends, industry growth/decline, competitive landscape and market share assumptions. Management then forecasts the appropriate gross to net adjustments, such as expected returns, wholesaler fees and rebates, amongst other adjustments, to determine the appropriate net sales forecast for each product.

  - The Branded Opioids segment forecasts net sales to continue to decline in line with the overall market decline in opioid prescriptions, with some adjustments due to changes in market share from year to year.

  - Rhodes Pharmaceutical's net sales are forecasted to increase each year during the projection period as the Debtors' investment in its generic pipeline leads to new products coming to market each year during the 2021-2025 timeframe.

  - Avrio Health's core strategy of growing its core business and investing in new innovations in digestive health and wound care is forecasted to increase top line revenue steadily each year.

  - Net sales for Adhansia, a recently launched ADHD product, are expected to rise each year as the product gains market share after its initial launch in mid-2019.

4

NAS2071

- Cost of Sales

  - Cost of sales forecasts for each product include the cost of goods sold, royalty expense and shipping and warehousing costs. The forecasts for each of the products are consistent with the Debtors' historical margins. Over time the Debtors' consolidated margins are expected to shift with its underlying product mix.

- General and Administrative

  - General and administrative expenses primarily consist of salaries and benefits and related overhead costs for functions such as the Finance, Legal and Human Resources, amongst others.

- Legal Fees – Ordinary Course

  - Ordinary course legal fees are primarily related to outside legal fees for general corporate, patent defense/prosecution, employment, regulatory and insurance.

- Research and Development

  - Research and development expenses primarily include expenses for salaries and benefits, the development of the Public Health Initiative (Nalmafene and OTC Naloxone) and investment in the for-profit pipeline.

- Milestones

  - Milestone expenses are either (i) pre NDA milestone payments related to research projects or (ii) the amortization of capitalized NDA approval or launch milestone payments.

- Medical Affairs

  - Medical Affairs cost primarily relate to expenses for salaries and benefits, opioid FDA commitments, Adhansia post marketing studies, Adhansia FDA commitments, future pipeline product research, and adverse event reporting which includes the multitude of claims filed in the bankruptcy proceedings.

- Sales and Promotion

  - Sales and promotion expenses are primarily related to salary and benefit costs of the commercial team, the cost of the third party Adhansia sales force, sales and marketing expenses related to the over the counter consumer health and Adhansia products and data expenses. The company does not have a sales force for marketing opioid products to healthcare providers.

- Health Care Reform Fee / Opioid Tax

  - The health care reform fee is an annual tax paid to the IRS by pharmaceutical manufacturers, generally related to sales made to specified programs. This line of the profit and loss statement also includes various taxes on sales made to certain states, including opioid taxes.

- Other

5

**NAS2072**

- • Other expenses primarily represent annual bonus and long-term employee incentive compensation payments.

- Other Items

  - • Other items primarily relate to third party royalty income, royalty expenses and interest income.

- PHI Costs

  - • Upon emergence, NewCo will provide overdose and addiction treatment medications ("Public Health Initiative" or "PHI") at or below cost to the U.S. public. The cost of developing the PHI products are included in these forecasts. However, the additional costs of manufacturing and distributing the products are excluded from the forecasts. The forecasts assume the PHI products are provided at cost (i.e. Selling price equals cost), resulting in zero net cash flow impact.

- Legal Fees - Non-Recurring

  - • Non-recurring legal fees are primarily due to bankruptcy and litigation related professional fees.

- One Time Charges / Other Items

  - • One-time charges are primarily related to non-recurring expenses including asset impairments / write-offs, or severance.

- Taxes

  - • The potential future tax liabilities of NewCo remain uncertain and will depend, among other factors, on (1) whether NewCo elects to be treated as a corporation for U.S. federal income tax purposes and (2) the tax basis of Newco's assets at emergence that will be based on a detailed valuation performed by a qualified third party expert (this valuation has yet to be performed). Due to the uncertainty of the future tax liabilities, the cash flow statement is shown without tax. The Debtors continue to work to optimize NewCo's post-emergence structure to minimize its future tax liabilities, however, the ultimate result of this process remains uncertain. The Debtors' current preliminary estimates are that NewCo could incur $75 million to $150 million over the period 2021 to 2025 in tax liabilities, but is highly dependent on (1) and (2) above. Even if NewCo were to incur tax liabilities of such magnitude, NewCo would retain sufficient liquidity to meet all future obligations.

**<u>Non-GAAP Balance Sheet</u>**

- Cash and Cash Equivalents

  - • The Debtors record all highly liquid instruments, with a maturity of less than 90 days when acquired, to be cash equivalents. The forecast is assumed to distribute all cash in excess of $200 million.

- Investments

NAS2073

- Investments classified as available-for-sale are carried at estimated fair value with unrealized gains and losses recorded to net income.

- Investments in privately held companies are accounted for using the cost method. The carrying value of investments in privately held companies are accounted for using the net asset value plus or minus changes resulting from observable price changes in orderly transactions for the identical or similar investment of the same issuer.

- Receivables

  - Allowance for doubtful accounts, accrued return reserves, cash payment discounts, wholesaler fees and chargebacks are included in receivables. Receivables generally are due within 30 to 60 days for the Branded Business and generally are between 60 and 100 days for the Generic Business. Credit is extended to customers based on an evaluation of their financial condition and collateral is not required. Consistent with historical trend, account write-offs have been assumed to be de-minimis.

- Inventories

  - Inventories, consisting of raw materials, work in progress and finished goods, are stated at the lower of cost or net realizable value and computed using the first-in, first-out method.

  - Inventory balances are forecasted based on quantities needed to fulfill forecasted sales and are consistent with historical inventory management practices.

- Prepaid expenses and other assets

  - Amount consist primarily of prepaid operating expenses, retainers relating to advisors and deposits, and other advances to vendors.

- Restricted Cash

  - The Debtors' restricted cash primarily relates to cash collateralized for insurance policies and trust agreements. These cash collateralization requirements are in place due to the Debtors' branded opioid business. The forecasted reductions in restricted cash represent the release of funds that will revert to NewCo based upon the underlying contractual terms and conditions in the underlying agreements. For illustrative purposes, these releases of funds are shown as reverting to NewCo, although they may ultimately revert directly to the MDT to the extent that the underlying policies and restricted cash balances are transferred to the MDT at emergence.

- Property and Equipment

  - Property and equipment are stated at cost and depreciated primarily using the straight-line method over the estimated useful lives of the related assets.

  - Forecasted amounts for capital expenditures consist of maintenance expenditures including ordinary course alterations and repairs.

7

NAS2074

- Intangible Assets

  - Finite lived intangible assets (consisting of acquisition costs, approval or launch milestones for patent rights for OxyContin, Dilaudid, Fenofibrate, Adhansia, Hysingla, Paroxetine) are amortized using the straight-line method over the estimated useful lives of the related assets up to fifteen years.

  - Indefinite lived intangibles are stated at cost and not subject to amortization. The trademarks and products rights not subject to amortization are related to the Colace®, Colace® 2-in-1, Slow-mag® and mineral oil products.

- Other Assets

  - Other assets balance consists of prepaid rent.

- Accounts Payable

  - Accounts payable consists of trade payables and accrued operating expenses.

- Accrued Expenses and Other Liabilities

  - This amount consists primarily of accrued rebates, accrued and unpaid legal expenses, salaries and benefits, state opioid taxes, royalty expenses and other accrued expenses.

  - Revenue from sales of products is recognized at the time title passes to the customer, which generally occurs upon receipt by the customer. The Company establishes:

    o Returns, early payment discounts, customer discounts, wholesaler fees, chargebacks, Medicaid, Medicare and commercial rebates in the same period as the related sales are recognized in determining net sales. Accrued returns, cash payment discounts, wholesaler fees and chargebacks are included in receivables. Rebates are included in accrued expenses.

    o Rebate accruals are recorded for (1) the future rebates that will be paid on the value of inventory held within the distribution channel that has not been consumed by the end customer as of a reporting date and (2) rebates that have either been invoiced to the Company and not paid or rebates that are estimated based on consumption by the end customer. Information is regularly reviewed to confirm amounts of inventory in the distribution channel, such as data from several large customers' inventory management systems, and for other customers, data from third parties to help estimate the amount of inventory held by retail.

    o Royalty accruals from the licensing of product rights over the periods earned.

- Other Long-Term Liabilities

  - Other long-term liabilities consist primarily of employee defined pension benefits liability and employee post-retirement benefits liability related to the retirement and medical benefits provided by the Debtors to substantially all employees through a former, now frozen (see below) noncontributory defined benefit pension plan and a postretirement health care and life insurance plan.

8

NAS2075

- Effective December 31, 2017, all remaining participants of the Debtors' defined pension plan ceased to accrue any additional benefits. The postretirement health care and life insurance plan was also amended effective January 1, 2018 to close post-65 medical coverage and life insurance coverage to future retirees.

## **Cash Flows**

- Operating Activities

  - Change in working capital is driven by ordinary course changes in accounts receivable, accounts payable, inventory, other current assets and other current liabilities.

- Investing Activities

  - Capital expenditures largely reflect manufacturing facility replacement of equipment and IT applications/infrastructure.

  - In forecasting the proceeds from sale of investments, the forecasted sale amount is estimated based on the sale of one investment using the market price as of December 31, 2020 as a proxy for the sale price. More recently, the market price of this investment has traded at approximately 50% of its price at year end. While the future sale proceeds will depend upon, among other factors, the prevailing market price at the time of such sale, the Debtors believe that the potential for lower sale proceeds presents little to no risk in the context of the overall plan.

  - The release of restricted cash is forecasted based upon the assumption of restricted cash collateral backstopping various of the Debtors' insurance policies. For the component of this restricted cash collateral transferred directly to the MDT, the released restricted cash would also be transferred directly to the MDT. However, as previously stated, for illustrative purposes, the Financial Projections reflect release of restricted cash associated with historical insurance policies is released at NewCo and subsequently transferred to the MDT and NOAT through the semiannual excess cash distributions.

- Financing Activities

  - The contribution represents $4.275 billion in aggregate payments due under the Shareholder Settlement Agreement as outlined in the Disclosure Statement and Plan, which will be recorded in the Debtors' financials as a shareholder contribution, but which will be paid directly to Master Disbursement Trust under the Shareholder Settlement Agreement.

## **Claimant Trusts**

- Operating Expenses

  - MDT and TopCo expenses represent preliminary estimates of the go forward costs to administer each entity and to perform the duties for which each entity has been created.

- Cash Balances

  - MDT and TopCo are assumed to hold cash equal to the next year of operating expenses.

9

NAS2076

- Distributions

  - Private settlement payments, tribe distributions and NOAT distributions are made per the terms of the plan of reorganization

| 1. Consolidated Non-GAAP P&L (\$ in millions) | Q1 2021 Forecast | Q2 2021 Forecast | Q3 2021 Forecast | Q4 2021 Forecast | FY 2021 Forecast | FY 2022 Forecast | FY 2023 Forecast | FY 2024 Forecast | FY 2025 Forecast |
|---|---|---|---|---|---|---|---|---|---|
| NET SALES | $ 188 | $ 173 | $ 172 | $ 171 | $ 703 | $ 695 | $ 756 | $ 824 | $ 533 |
| Cost of Goods Sold | (57) | (54) | (46) | (56) | (213) | (228) | (237) | (245) | (248) |
| GROSS PROFIT | 131 | 119 | 125 | 115 | 490 | 467 | 519 | 578 | 284 |
| General and Administrative | (19) | (21) | (18) | (19) | (77) | (69) | (70) | (70) | (66) |
| Legal Fees - Ordinary Course | (3) | (3) | (3) | (3) | (13) | (19) | (13) | (13) | (8) |
| Research and Development | (26) | (39) | (28) | (31) | (123) | (97) | (53) | (44) | (36) |
| Milestones | (1) | (4) | (1) | (1) | (6) | (3) | (5) | (4) | (0) |
| Medical Affairs | (9) | (11) | (14) | (14) | (47) | (34) | (28) | (16) | (9) |
| Sales and Promotion | (29) | (31) | (27) | (27) | (114) | (110) | (110) | (103) | (90) |
| Health Care Reform Fee | (3) | (3) | (3) | (3) | (11) | (11) | (11) | (12) | (4) |
| Other | (10) | (10) | (10) | (10) | (40) | (31) | (30) | (28) | (24) |
| OPERATING EXPENSES | (100) | (120) | (104) | (107) | (431) | (375) | (320) | (289) | (238) |
| OPERATING PROFIT | 31 | (1) | 22 | 8 | 59 | 92 | 199 | 289 | 47 |
| Other Items | 1 | 1 | 1 | 1 | 6 | 5 | 9 | 9 | 9 |
| PROFIT BEFORE NON-RECURRING & ONE-TIME CHARGES | 32 | 0 | 23 | 9 | 65 | 97 | 208 | 298 | 56 |
| Legal Fees - Non-Recurring | (88) | (60) | (93) | - | (241) | (10) | - | - | - |
| Reserve for Trust Admin / Ops. And Other Costs | - | - | (75) | - | (75) | | | | |
| One Time Charges / Other Items | (2) | (2) | (1) | (2) | (8) | (5) | (6) | (6) | (14) |
| PROFIT (LOSS) | $ (58) | $ (62) | $ (146) | $ 7 | $ (259) | $ 82 | $ 202 | $ 293 | $ 42 |

| 2. Consolidated Non-GAAP Balance Sheets (\$ in millions) | Q1 2021 Forecast | Q2 2021 Forecast | Q3 2021 Forecast | Q4 2021 Forecast | FYE 2021 Forecast | FYE 2022 Forecast | FYE 2023 Forecast | FYE 2024 Forecast | FYE 2025 Forecast |
|---|---|---|---|---|---|---|---|---|---|
| **Assets** | | | | | | | | | |
| Current Assets: | | | | | | | | | |
| Cash and cash equivalents | $ 991 | $ 972 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 |
| Available for sale securities | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 | 1 |
| Accounts receivable | 119 | 114 | 116 | 119 | 119 | 129 | 156 | 178 | 113 |
| Due from associated companies | 7 | 7 | 7 | 8 | 8 | 6 | 5 | 5 | 5 |
| Inventories | 72 | 65 | 66 | 70 | 70 | 55 | 55 | 57 | 53 |
| Restricted Cash | 26 | 26 | 26 | - | - | 15 | - | 38 | - |
| Prepaid expenses and other assets | 65 | 54 | 70 | 68 | 68 | 59 | 43 | 34 | 26 |
| Total current assets | 1,281 | 1,240 | 486 | 466 | 466 | 465 | 460 | 513 | 398 |
| Property, plant and equipment, net | 89 | 88 | 87 | 86 | 86 | 79 | 72 | 65 | 58 |
| Restricted cash - long-term | 123 | 123 | 123 | 123 | 123 | 108 | 109 | 71 | 72 |
| Investment in associated companies | - | - | - | - | - | - | - | - | - |
| Investments at cost | 90 | 46 | 46 | 46 | 46 | 46 | 46 | 46 | 46 |
| Intangible assets, net | 77 | 76 | 75 | 75 | 75 | 72 | 72 | 71 | 70 |
| Other assets | 3 | 3 | 3 | 3 | 3 | 3 | 0 | 0 | 0 |
| Total assets | $ 1,662 | $ 1,576 | $ 820 | $ 799 | $ 799 | $ 770 | $ 758 | $ 767 | $ 645 |
| **Liabilities** | | | | | | | | | |
| Current liabilities: | | | | | | | | | |
| Accounts payable | $ 43 | $ 47 | $ 42 | $ 43 | $ 43 | $ 47 | $ 39 | $ 37 | $ 32 |
| Accrued expenses and taxes | 298 | 274 | 238 | 232 | 232 | 227 | 228 | 246 | 128 |
| Due to associated companies | 3 | 3 | 3 | 3 | 3 | 0 | 0 | 0 | 0 |
| Total current liabilities | 344 | 324 | 282 | 279 | 279 | 274 | 267 | 283 | 160 |
| Other liabilities | 73 | 69 | 64 | 57 | 57 | 50 | 43 | 37 | 32 |
| Due to associated companies | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 | 11 |
| Liabilities subject to compromise | 4,287 | 4,287 | - | - | - | - | - | - | - |
| Total liabilities | 4,715 | 4,690 | 357 | 347 | 347 | 335 | 321 | 331 | 204 |
| **Equity** | | | | | | | | | |
| Retained earnings and partners' capital | (3,014) | (3,076) | 500 | 491 | 491 | 467 | 464 | 458 | 459 |
| Accumulated other comprehensive loss | (39) | (38) | (37) | (39) | (39) | (31) | (27) | (22) | (17) |
| Total stockholder's equity | (3,053) | (3,114) | 463 | 452 | 452 | 436 | 437 | 436 | 442 |
| Total liabilities and stockholder's equity | $ 1,662 | $ 1,576 | $ 820 | $ 799 | $ 799 | $ 770 | $ 758 | $ 767 | $ 645 |

NAS2077

| 3. Consolidated Non-GAAP Cash Flow Metrics ($ in millions) | Q1 2021 Forecast | Q2 2021 Forecast | Q3 2021 Forecast | Q4 2021 Forecast | FY 2021 Forecast | FY 2022 Forecast | FY 2023 Forecast | FY 2024 Forecast | FY 2025 Forecast |
|---|---|---|---|---|---|---|---|---|---|
| **Operating activities** | | | | | | | | | |
| Net Income (before distributions to claimants) | $ (58) | $ (62) | $ (146) | $ 7 | $ (259) | $ 82 | $ 202 | $ 293 | $ 42 |
| Adjustments to reconcile net income to net cash provided by operating activities | | | | | | | | | |
| Depreciation and amortization | 4 | 4 | 4 | 4 | 17 | 16 | 13 | 13 | 13 |
| Working capital changes | 36 | 0 | (72) | (9) | (44) | 2 | (8) | 1 | (46) |
| Shareholder Contributions | - | - | (4,275) | - | (4,275) | - | - | - | - |
| Long-term assets and liabilities | 13 | (3) | (3) | (8) | (1) | 3 | (1) | (1) | 0 |
| Net cash provided by operating activities | (5) | (60) | (4,492) | (6) | (4,563) | 103 | 206 | 305 | 9 |
| **Investing activities** | | | | | | | | | |
| Capital expenditures | (2) | (2) | (3) | (3) | (10) | (6) | (6) | (6) | (6) |
| Proceeds from sale of fixed assets | - | - | - | - | - | - | - | - | - |
| Purchase of intangibles | - | - | - | - | - | - | - | - | - |
| Purchase of investments | (4) | - | - | - | (4) | - | - | - | - |
| Proceeds from sale of investments | - | 43 | - | - | 43 | - | - | - | - |
| Restricted cash, net | 41 | (0) | (0) | 26 | 67 | (0) | 15 | (1) | 38 |
| Net cash used in investing activities | 35 | 41 | (3) | 24 | 97 | (7) | 9 | (7) | 32 |
| **Financing activities** | | | | | | | | | |
| Shareholder Contributions | - | - | 4,275 | - | 4,275 | - | - | - | - |
| Initial Federal Government Distribution | - | - | (250) | - | (250) | - | - | - | - |
| Distributions to TopCo and MDT | - | - | (303) | (17) | (320) | (96) | (215) | (299) | (40) |
| Net cash used in financing activities | - | - | 3,722 | (17) | 3,705 | (96) | (215) | (299) | (40) |
| Increase (decrease) in cash and cash equivalents | 30 | (19) | (772) | - | (761) | - | - | - | - |
| Unrestricted Cash at beginning of period | 961 | 991 | 972 | 200 | 961 | 200 | 200 | 200 | 200 |
| Unrestricted Cash at end of period | $ 991 | $ 972 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 | $ 200 |

| 4. Claimant Trusts - Cash Schedule ($ in millions) | Q3 2021 Forecast | Q4 2021 Forecast | 2021 Forecast | 2022 Forecast | 2023 Forecast | 2024 Forecast | 2025 Forecast | Cumulative 2021 - 2025 |
|---|---|---|---|---|---|---|---|---|
| Total Cash Sweep from Debtors/NewCo[1] | $ 339 | $ 17 | $ 356 | $ 96 | $ 215 | $ 299 | $ 40 | $ 1,006 |
| **MDT** | | | | | | | | |
| Shareholder Proceeds | 300 | - | 300 | 350 | 350 | 350 | 350 | 1,700 |
| Cash Sweep from Debtors/NewCo | 68 | 3 | 71 | - | - | 34 | - | 105 |
| **Total Cash Inflows** | **368** | **3** | **371** | **350** | **350** | **384** | **350** | **1,805** |
| MDT Expenses | - | (7) | (7) | (25) | (12) | (12) | (12) | (69) |
| Private Settlements | (339) | - | (339) | (180) | (201) | (367) | (150) | (1,237) |
| MDT Federal Government Claim | - | - | - | (10) | (10) | (5) | - | (25) |
| | (339) | (7) | (346) | (215) | (223) | (384) | (162) | (1,330) |
| **Net Increase / (Decrease) in Cash** | **30** | **(4)** | **25** | **135** | **127** | **-** | **188** | **475** |
| Opening MDT Cash Balance | $ - | $ 30 | - | $ 25 | $ 12 | $ 12 | $ 12 | $ - |
| Net Increase / (Decrease) in Cash | 30 | (4) | 25 | 135 | 127 | - | 188 | 475 |
| NOAT Distribution[2] | - | - | - | (148) | (127) | - | (188) | (463) |
| **Ending MDT Cash Balance** | $ 30 | $ 25 | $ 25 | $ 12 | $ 12 | $ 12 | $ 12 | $ 12 |
| **TopCo** | | | | | | | | |
| Cash Sweep from Debtors/NewCo | 271 | 14 | 285 | 96 | 215 | 265 | 40 | 901 |
| **Total Cash Inflows** | **271** | **14** | **285** | **96** | **215** | **265** | **40** | **901** |
| TopCo Expenses | - | (2) | (2) | (7) | (7) | (7) | (7) | (29) |
| Tribe Settlement Distribution | (50) | - | (50) | - | - | (3) | (6) | (60) |
| **Total Cash Outflows** | **(50)** | **(2)** | **(52)** | **(7)** | **(7)** | **(10)** | **(13)** | **(89)** |
| **Net Increase / (Decrease) in Cash** | **221** | **13** | **233** | **89** | **208** | **255** | **27** | **812** |
| Opening TopCo Cash Balance | $ - | $ 7 | - | $ 7 | $ 7 | $ 7 | $ 7 | $ - |
| Net Increase / (Decrease) in Cash | 221 | 13 | 233 | 89 | 208 | 255 | 27 | 812 |
| NOAT Distribution[2] | (214) | (13) | (226) | (89) | (208) | (255) | (27) | (806) |
| **Ending TopCo Cash Balance** | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 | $ 7 |
| **Total NOAT Distribution[2]** | $ (214) | $ (13) | $ (226) | $ (237) | $ (335) | $ (255) | $ (215) | $ (1,268) |

[1] The cash sweep of $339mm in Q3 2021 includes $36mm paid out in the $75mm "Reserve for Trust Admin/ Ops. And Other Costs" amount reflected on the consolidated P&L in Q3 2021.
[2] For the avoidance of doubt, the NOAT distributions exclude any potential professional fees that may need to ultimately be paid out of these distributions.

11

NAS2078

# Appendix D

## Valuation Analysis

NAS2079

**Valuation Analysis**

THE INFORMATION CONTAINED HEREIN IS NOT A PREDICTION OR GUARANTEE OF THE ACTUAL MARKET VALUE THAT MAY BE REALIZED THROUGH THE SALE OF ANY SECURITIES OR ASSETS TO BE SOLD PURSUANT TO THE PLAN. THE INFORMATION IS PRESENTED SOLELY FOR THE PURPOSE OF PROVIDING ADEQUATE INFORMATION UNDER SECTION 1125 OF THE BANKRUPTCY CODE TO ENABLE THE HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN TO MAKE AN INFORMED JUDGMENT ABOUT THE PLAN AND SHOULD NOT BE USED OR RELIED UPON FOR ANY OTHER PURPOSE, INCLUDING THE PURCHASE OR SALE OF CLAIMS AGAINST THE DEBTORS OR ANY OF THEIR AFFILIATES.[1]

Solely for the purposes of the Plan and the Disclosure Statement, PJT Partners LP ("PJT"), as investment banker to the Debtors, has estimated a range of value (the "Valuation Range") for the Debtors (the "Valuation Analysis"). The Valuation Analysis is based on financial and other information provided to PJT by the Debtors' management, the Financial Projections attached to the Disclosure Statement as **Appendix C**, and information from other sources. The Valuation Analysis is as of March 29, 2021, with an assumed Effective Date of September 30, 2021. The Valuation Analysis utilizes market data as of March 29, 2021. As used herein, the Valuation Range includes a range of value solely in respect of: (i) the enterprise value of the sum of the parts of the business segments of the Debtors; (ii) the anticipated unrestricted cash on the Debtors' balance sheet as of September 30, 2021; and (iii) the market value of Debtor's investments as of March 29, 2021. Third-party sources of value, such as net proceeds realized from shareholder settlement payments or from the rights to insurance policies held by the Debtors, are not included in the Valuation Range or the Valuation Analysis. In addition, any value realized or to be realized from the development of the Debtors' pipeline assets or from the Public Health Initiatives is also not included in the Valuation Range or the Valuation Analysis. The valuation estimates set forth herein represent valuation analyses of the Debtors generally based on the application of customary valuation techniques to the extent deemed appropriate by PJT.

In preparing its valuation, PJT considered a variety of factors and evaluated a variety of financial analyses. Given the Debtors' Financial Projections span across multiple different business models and therapeutic areas, the valuation presented herein utilizes a sum-of-the-parts valuation methodology that relies on, to the extent applicable for the separate business segments, (i) comparable company analysis, (ii) comparable precedent transaction analysis, and (iii) discounted cash flow analysis. While a discounted cash flow analysis was considered for the consolidated Debtors, it was not utilized as a formal methodology for valuation purposes due to fundamental differences of the underlying businesses, including, but not limited to, differences in the risk and cost of capital between the business segments.

    i.    *Comparable Company Analysis*: The comparable company analysis estimates value based on a relative comparison with other publicly traded companies with similar operating and financial characteristics. Under this methodology, the enterprise

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Disclosure Statement for the Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Debtor Affiliates* (the "Disclosure Statement") to which this analysis is attached as **Appendix D**.

NAS2080

value for each selected public company is determined by examining the trading prices for the equity securities of such company in the public markets and adding the aggregate amount of outstanding net debt for such company (at book value) and minority interest. Such enterprise values are often expressed as multiples of various operating metrics, including revenue and EBITDA, depending on the type of the subject business. The total value is then calculated by applying the observed multiples to the relevant metrics of the subject business. The selection of public comparable companies for this purpose was based on various parameters that were deemed relevant by PJT.

ii.    *Comparable Precedent Transaction Analysis*: The precedent transaction analysis estimates value based on a relative comparison with other sale transactions of companies with similar operating and financial characteristics. Under this methodology, the total value of the subject business is estimated by applying observed multiples from prior sales of comparable companies and/or assets to the relevant operating metrics of the subject business. The selection of precedent transactions for this purpose was based on various parameters that were deemed relevant by PJT.

iii.   *Discounted Cash Flow Analysis*: The discounted cash flow analysis is a forward-looking enterprise valuation methodology that estimates the value of a business by calculating the present value of expected future cash flows to be generated by the business, combined with the present value of the terminal value, if applicable, of the business segment at the end of the forecast period. Under this methodology, projected future cash flows are discounted by the business segment's weighted average cost of capital, which reflects the estimated blended rate of return that would be required by debt and equity investors to invest in the business based on its capital structure. The terminal value is calculated by applying a relevant perpetuity growth rate to the cash flow of the business segment in the final year of the Financial Projections.

The preparation of a valuation analysis is a complex analytical process involving subjective determinations about which methodologies are most appropriate and relevant to the subject business. The application of those methodologies to particular facts and circumstances is not readily suitable to summary description.

For purposes of the Valuation Analysis, PJT assumed that no material changes that would affect estimated value will occur between the date of filing of the Disclosure Statement and the assumed Effective Date. PJT's Valuation Analysis does not constitute an opinion as to the fairness from a financial point of view of the consideration to be received or paid under the Plan, of the terms and provisions of the Plan, or with respect to any other matters.

Based on the aforementioned analyses, and other information described herein and solely for purposes of the Plan, the Valuation Range of the Debtors' businesses, as of an assumed Effective Date of September 30th, 2021, is approximately $1.6 billion to approximately $2.0 billion (with the mid-point of such range being approximately $1.8 billion).

2

NAS2081

The Valuation Range, as estimated by PJT, is part of the overall value delivered under the Plan. The other sources of value include the payment of $4.275 billion by certain Shareholder Released Parties under the Shareholder Settlement, the rights to insurance assets, and the Public Health Initiatives which is separately valued by the management.

THE VALUATION ANALYSIS REFLECTS WORK PERFORMED BY PJT ON THE BASIS OF INFORMATION IN RESPECT OF THE BUSINESS AND ASSETS OF THE DEBTORS AVAILABLE TO PJT AS OF MARCH 29, 2021. IT SHOULD BE UNDERSTOOD THAT, ALTHOUGH SUBSEQUENT DEVELOPMENTS MAY HAVE AFFECTED OR MAY AFFECT PJT'S CONCLUSIONS, PJT DOES NOT HAVE ANY OBLIGATION TO UPDATE, REVISE, OR REAFFIRM THE VALUATION ANALYSIS AND DOES NOT INTEND TO DO SO.

PJT DID NOT INDEPENDENTLY VERIFY THE FINANCIAL PROJECTIONS OR OTHER INFORMATION THAT PJT USED IN THE VALUATION ANALYSIS, AND NO INDEPENDENT VALUATIONS OR APPRAISALS OF THE DEBTORS OR THEIR ASSETS WERE SOUGHT OR OBTAINED IN CONNECTION THEREWITH. THE VALUATION ANALYSIS WAS DEVELOPED SOLELY FOR PURPOSES OF THE PLAN AND THE ANALYSIS OF POTENTIAL RELATIVE RECOVERIES TO CREDITORS THEREUNDER. THE VALUATION ANALYSIS REFLECTS THE APPLICATION OF VARIOUS VALUATION TECHNIQUES, DOES NOT PURPORT TO BE AN OPINION AND DOES NOT PURPORT TO REFLECT OR CONSTITUTE AN APPRAISAL, LIQUIDATION VALUE, OR ESTIMATE OF THE ACTUAL MARKET VALUE THAT MAY BE REALIZED THROUGH THE SALE OF ANY SECURITIES AND/OR FUNDED DEBT THAT MAY BE ISSUED, WHICH MAY BE SIGNIFICANTLY DIFFERENT THAN THE AMOUNTS SET FORTH IN THE VALUATION ANALYSIS.

THE VALUE OF AN OPERATING BUSINESS IS SUBJECT TO NUMEROUS UNCERTAINTIES AND CONTINGENCIES THAT ARE DIFFICULT TO PREDICT AND WILL FLUCTUATE WITH CHANGES IN FACTORS AFFECTING THE FINANCIAL CONDITION AND PROSPECTS OF SUCH A BUSINESS. AS A RESULT, THE VALUATION ANALYSIS IS NOT NECESSARILY INDICATIVE OF ACTUAL OUTCOMES, WHICH MAY BE SIGNIFICANTLY MORE OR LESS FAVORABLE THAN THOSE SET FORTH HEREIN. BECAUSE SUCH ESTIMATES ARE INHERENTLY SUBJECT TO UNCERTAINTIES, NEITHER THE DEBTORS, PJT, NOR ANY OTHER PERSON ASSUMES RESPONSIBILITY FOR THEIR ACCURACY.

Management of the Debtors advised PJT that the Financial Projections were reasonably prepared in good faith and on a basis reflecting the Debtors' best estimates and judgments as to the future operating and financial performance of the Debtors' businesses. If the businesses perform at levels below or above those set forth in the Financial Projections, such performance may have a materially negative or positive impact, respectively, on their valuation.

In preparing the Valuation Analysis, PJT: (a) reviewed certain historical financial information of the Debtors for recent years and interim periods; (b) discussed certain aspects of the Debtors' performance, future prospects, and industry observations with certain members of the management of the Debtors; (c) reviewed certain financial and operating data of the Debtors, including the Financial Projections; (d) assumed business segments will be tax paying entities and

NAS2082

overlaid an illustrative tax expense where appropriate; (e) reviewed certain publicly available financial data for, and considered the market value of, public companies that PJT deemed generally relevant in analyzing the value of certain business segments of the Debtors; (f) reviewed certain publicly available data for, and considered the market values implied therefrom, recent transactions involving assets and companies comparable in certain respects to certain business segments of the Debtors; and (g) considered certain economic and industry information that PJT deemed generally relevant to the Debtors. PJT assumed and relied on the accuracy and completeness of all financial and other information furnished to it by the Debtors' management and other parties as well as publicly available information.

The Valuation Analysis does not constitute a recommendation to any Holder of Allowed Claims, or any other person as to how such person should vote or otherwise act with respect to the Plan. PJT has not been requested to, and does not express any view as to, the potential trading value of any funded debt or other securities that may be issued by NewCo on issuance or at any other time.

PJT did not estimate the value of any potential tax attributes (such as carryforwards under section 163(j) of the Tax Code) that may survive the restructuring or otherwise evaluate the tax implications of the Plan on the Debtors' businesses. Any changes to the assumptions on the availability of tax attributes, the amount of the tax basis, or the impact of cancellation of indebtedness income on the projections could materially impact the conclusions reached in the Valuation Analysis.

THE SUMMARY SET FORTH ABOVE DOES NOT PURPORT TO BE A COMPLETE DESCRIPTION OF THE VALUATION ANALYSIS PERFORMED BY PJT. THE PREPARATION OF A VALUATION ANALYSIS INVOLVES VARIOUS DETERMINATIONS AS TO THE MOST APPROPRIATE AND RELEVANT METHODS OF FINANCIAL ANALYSIS AND THE APPLICATION OF THESE METHODS IN THE PARTICULAR CIRCUMSTANCES AND, THEREFORE, SUCH AN ANALYSIS IS NOT READILY SUITABLE TO SUMMARY DESCRIPTION. THE VALUATION ANALYSIS PERFORMED BY PJT IS NOT NECESSARILY INDICATIVE OF ACTUAL VALUES OR FUTURE RESULTS, WHICH MAY BE SIGNIFICANTLY MORE OR LESS FAVORABLE THAN THOSE DESCRIBED HEREIN.

PJT IS ACTING AS INVESTMENT BANKER TO THE DEBTORS, AND HAS NOT AND WILL NOT BE RESPONSIBLE FOR, AND HAS NOT AND WILL NOT PROVIDE ANY TAX, ACCOUNTING, ACTUARIAL, LEGAL, OR OTHER SPECIALIST ADVICE TO THE DEBTORS OR ANY OTHER PARTY IN CONNECTION WITH THE DEBTORS' CHAPTER 11 CASES, THE PLAN, OR OTHERWISE.

NAS2083

# Appendix E

## Organizational Structure

NAS2084

# Appendix E

## Organizational Structure



NAS2085

## Appendix F

**Amended NewCo/TopCo Governance Term Sheet**

NAS2086

## NEWCO/TOPCO GOVERNANCE TERM SHEET

### INTRODUCTION

This term sheet (the "**NewCo/TopCo Governance Term Sheet**") sets forth certain salient governance terms relating to NewCo and TopCo in connection with a proposed chapter 11 plan (the "**Plan**") for Purdue Pharma L.P. ("**PPLP**") and its affiliates that are debtors and debtors in possession (collectively, "**Purdue**" or the "**Debtors**").[1] This NewCo/TopCo Governance Term Sheet does not include a description of all of the terms, conditions, and other provisions that are to be contained in the definitive documentation governing NewCo and TopCo. The Plan will not contain any terms or conditions that are materially inconsistent with this NewCo/TopCo Governance Term Sheet.

| NewCo | |
|---|---|
| **Purpose and Covenants** | NewCo shall operate in accordance with the terms of section 5.4(b) of the Plan and shall be subject to the NewCo Operating Injunction and the NewCo Governance Covenants (NewCo's "**Purpose**"). |
| **Minimum TopCo Distribution** | NewCo shall use best efforts to make TopCo Distributions from NewCo Excess Cash in an aggregate amount of $825 million[2] (*less* amounts distributed by the Debtors on the Effective Date pursuant to the Initial NOAT Distribution and the Initial Tribe Trust Distribution) consisting of an aggregate amount of $50 million through January 15, 2023, an incremental aggregate amount of $200 million through January 15, 2024 and an incremental aggregate amount of $300 million through January 15, 2025, *plus* any NewCo Excess Cash from potential asset sales or incremental cash flows from performance improvement initiatives (the "**Minimum TopCo Distribution**") in order to fulfill NewCo's Purpose of effective deployment of its assets to abate the opioid crisis; *provided*, *however*, that, in seeking to fund the Minimum TopCo Distribution, the NewCo Board shall consider (i) NewCo Operating Expenses and (ii) NewCo's Purpose. |
| | NewCo shall use best efforts to make the Minimum TopCo Distribution from available funds (including excess cash from operations, asset sale proceeds and proceeds from financings) constituting NewCo Excess Cash by January 15, 2025. The Minimum TopCo Distribution shall be deemed satisfied and reduced by all TopCo Distributions and any transfers of NewCo Available Cash and Net Sale Proceeds to the Master Disbursement Trust to fund any obligations to the Master Disbursement Trust in respect of the NewCo Credit Support Agreement. Subject to the NewCo Priority Waterfall, NewCo shall make TopCo Distributions of NewCo Excess Cash on each NewCo Distribution Date. |
| **NewCo Disposition Event** | As described below, the NewCo Managers and TopCo Managers shall pursue a transaction or series of transactions to sell the assets of NewCo and/or sell, transfer, or contribute TopCo's equity interests in NewCo (such event, the "**NewCo Disposition Event**"). The NewCo Disposition Event may consist of one or more sales of assets or sales of equity through public or private markets, and may involve commercial buyers or non-profit buyers. In pursuing such a NewCo Disposition Event, the NewCo |

---

[1]  Capitalized terms used but not otherwise defined in this NewCo/TopCo Governance Term Sheet shall have the meanings ascribed to such terms in the Plan.

[2]  As adjusted by the impact of debt, if applicable.

NAS2087

Managers and TopCo Managers shall consider which transactions best achieve NewCo's Purpose, taking into account fulfilling the Minimum TopCo Distribution, application of proceeds, and whether the buyers will continue to deploy the purchased assets/securities in furtherance of NewCo's Purpose and the NewCo Governance Covenants.

Within 120 days of the Effective Date, the board of NewCo (the "**NewCo Board**") shall retain one or more recognized, independent investment bankers or similar professionals (the "**NewCo Disposition Advisors**") to advise on the relative merits of potential transactions to effectuate the Minimum TopCo Distribution and the NewCo Disposition Event, it being understood and agreed that while the board of NewCo Managers (the "**NewCo Board**") and the board of TopCo Managers (the "**TopCo Board**") are free to retain advisors to effectuate asset sales and a NewCo Disposition Event on terms they choose, the NewCo Disposition Advisor shall not be retained to effectuate any such transaction on a "success fee" or similar basis in order to avoid a conflict of interest in such NewCo Disposition Advisor's analysis of the merits of any such transaction(s). By the later of December 31, 2021 and six months following the Effective Date, and semi-annually thereafter, the NewCo Board, working with the NewCo Disposition Advisors, shall provide to TopCo, who shall report to NOAT, and the Master Disbursement Trust, a report (the "**NewCo Strategic Options Report**") assessing and recommending strategic options to effectuate the Minimum TopCo Distribution and the NewCo Disposition Event, including, for example, sales of NewCo Transferred Assets, financings, sales of NewCo to a commercial buyer or a non-profit organization, initial public offering opportunities, or private equity transactions. The report shall address the market for these opportunities and likely valuations, potential to maximize near-term proceeds and long-term value, tax implications, and the effect of any transaction on the continuation of NewCo's stated Purpose and the NewCo Governance Covenants, including the likelihood of the continuation of the Public Health Initiatives. The report shall also include recommendations for implementing these strategic options consistent with the timing set out below. The NewCo Strategic Options Report shall also address how the NewCo Disposition Event would be implemented in coordination with the funding of the Minimum TopCo Distribution.

Any transaction involving the opioid assets must include an agreement satisfactory to the NewCo Board and TopCo Board that the transferee shall be bound by (and will not transfer such assets to any subsequent transferee that does not so agree to be bound by and to similarly bind its transferees to) the applicable terms of the NewCo Operating Injunction and the NewCo Governance Covenants.

The NewCo Managers and TopCo Managers shall use best efforts to complete the Minimum TopCo Distribution and the NewCo Disposition Event by **December 31, 2024**. The deadline to complete the NewCo Disposition Event may be extended only by no less than a two-thirds (2/3) majority determination of the TopCo Managers, taking into account NewCo's stated Purpose, after providing thirty (30) days' written notice to the Attorneys General and other designated governmental and tribal representatives, explaining why such an extension is considered appropriate and advances the public interest. There shall be a maximum of two, one-year extensions of the time for completion of the NewCo Disposition Event. The NewCo Managers shall report to the TopCo Managers every three months after an extension regarding the status of continuing efforts to effectuate the Minimum TopCo Distribution and the NewCo Disposition Event and whether one further extension is appropriate to protect or advance the public interest asserted in the initial extension. In considering the

2

NAS2088

| | |
|---|---|
| | NewCo Disposition Event, NewCo Managers may consider alternative transactions, including contributing NewCo's assets to a non-profit entity, converting NewCo to a not-for-profit entity, or if NewCo's financial situation requires, winding down NewCo. Likewise, the TopCo Managers and the NewCo Managers may consider selling, transferring, or otherwise contributing TopCo's equity interest in NewCo to effectuate the NewCo Disposition Event. |
| **NewCo Governance Principles** | The NewCo Managers shall not be required to maximize sales or profits, but rather shall be allowed to take all elements of NewCo's Purpose into account. <br><br> For the avoidance of doubt, in balancing the interests of NewCo's equityholders prior to implementation of the NewCo Disposition Event, the NewCo Managers shall give priority to funding the Minimum TopCo Distribution for the purpose of devoting funds to statewide opioid abatement programs. <br><br> NewCo will be required to be operated in a responsible and sustainable manner taking into account the public interest in transparency regarding NewCo. |
| **Reporting Requirements** | The NewCo Managers shall prepare (i) semi-annual public benefit reports to be published publicly, which shall describe the effectuation of NewCo's Purpose, the short-term and long-term value being created by NewCo and the public benefits being achieved consistent with NewCo's Purpose, and (ii) semi-annual financial and operating reports to be delivered to TopCo and NOAT. |
| **Transition Protocol** | The Ad Hoc Committee and Debtors will cooperate and agree to a transition protocol to be enacted once the Confirmation Order has been entered to ensure the Debtors operate pursuant to the applicable terms of the NewCo/TopCo Governance Term Sheet and the NewCo Managers and TopCo Managers are enabled to effectively manage their respective entities upon emergence. The Debtors will provide mutually agreed upon bi-weekly reporting to the Ad Hoc Committee advisors for the time period between entry of the Confirmation Order and the Effective Date. <br><br> Once the Confirmation Order has been entered, the Debtors will agree to allow one mutually agreed observer at full board meetings, who can be excluded in the Debtors' sole and absolute discretion for privilege, bankruptcy, creditor or stakeholder specific or any other considerations not related to the overall commercial activities and operations of the Debtors or the transition to NewCo. |
| **NewCo Operating Agreement** | The NewCo Operating Agreement shall, among other things, (i) provide that NewCo shall operate in a manner consistent with, and in furtherance of, its Purpose and the terms hereof, (ii) obligate the NewCo Managers and NewCo to regularly evaluate whether NewCo's conduct of its business constitutes the optimal method or methods of fulfilling its Purpose, (iii) provide for the terms of the Minimum TopCo Distribution set forth in this NewCo/TopCo Governance Term Sheet, (iv) provide for implementation of the NewCo Disposition Event, (v) provide for the reporting requirements set forth in this NewCo/TopCo Governance Term Sheet and (vi) address how NewCo may respond to any patent-related issues associated with OxyContin.[3] |

---

[3]  Post-Effective Date treatment of patents to be the subject of further discussion.

**NAS2089**

| | |
|---|---|
| **Public Health Initiative Development Budget** | NewCo shall continue to support the development of Public Health Initiative products on terms to be set forth in the NewCo Operating Agreement, which will be consistent with the States' respective priorities in their opioid abatement programs; *provided* that, from June 30, 2021 until satisfaction of the Minimum TopCo Distribution, the budget for direct research and development spending in support of such Products shall not exceed $50 million (the "**Public Health Initiative Development Budget**"), it being understood and agreed that other related costs and expenses, such as overhead allocations and medical affairs expenses, shall not be part of the Public Health Initiative Development Budget. Any costs of providing the Public Health Initiative products below cost will additionally be credited against the Public Health Initiative Development Budget. |
| | The NewCo Board and the TopCo Board shall periodically evaluate the efficacy of the Public Health Initiative projects. The TopCo Board's evaluation shall consider the extent to which the Public Health Initiative projects will be value accretive to the interests of TopCo's members. Following satisfaction of the Minimum TopCo Distribution and through the NewCo Disposition Event, the NewCo Board, with the consent of the TopCo Board, may expand the Public Health Initiative Development Budget by up to an additional $35 million. Following the NewCo Disposition Event, NewCo's investment in Public Health Initiative products shall no longer be limited by the Public Health Initiative Development Budget. Any acquirer of assets from NewCo shall not be limited by the Public Health Initiative Development Budget. |
| | Consistent with NewCo's Purpose, the NewCo Managers shall determine the most effective means by which to utilize funds budgeted for Public Health Initiative projects and to otherwise comply with the NewCo Governance Covenants. |
| **Injunctive Relief and Best-in-Class Compliance Systems** | At all times from and after the Effective Date, NewCo and any purchaser of NewCo's opioid-related assets shall remain subject to the NewCo Operating Injunction and the NewCo Governance Covenants. In addition, the NewCo Managers shall be required to adopt the best-in-industry compliance systems designed to ensure that all of NewCo's Products are sold and distributed in the safest manner possible and without diversion. |
| | TopCo shall be responsible for the selection of any replacement of the NewCo Monitor, if any, required after Effective Date. |
| **NewCo Managers** | In the event of a vacancy on the NewCo Board, either as a result of death, resignation or removal by TopCo (acting through the TopCo Managers), TopCo (acting through the TopCo Managers) may fill such vacancy. |
| | Any or all NewCo Managers can be removed at any time and without cause by the sole voting member of NewCo. |
| | For the avoidance of doubt, the holders of Interests in the Debtors or their Related Parties (other than the Debtors) shall have no role in the appointment of any of the TopCo Managers, the NewCo Managers, the Creditor Trustees for NOAT and the Tribe Trust or the MDT Trustees, or any other role relating to TopCo, NewCo, NOAT, the Tribe Trust or the Master Disbursement Trust. |

NAS2090

| TopCo | |
|---|---|
| **TopCo Operating Agreement** | Prior to the Effective Date, the holders of membership interests in TopCo shall execute a limited liability company operating agreement (the "**TopCo Operating Agreement**"), that will, among other things, establish and delineate the terms and conditions with respect to the operation of TopCo, the selection process for the TopCo Managers and the rights, duties, and obligations of the TopCo Managers with respect to TopCo and NewCo, consistent with the terms hereof. |
| **TopCo Managers** | It is contemplated that one Creditor Trustee for NOAT will serve as a TopCo Manager. |
| | In the event of a vacancy on the TopCo Board, either as a result of death, resignation or removal by the NOAT (acting as the sole voting member), the Creditor Trustees for NOAT shall fill such vacancy with a disinterested and independent manager. |
| | Any or all TopCo Managers can be removed at any time and without cause by the sole voting member of TopCo. |
| | The TopCo Managers shall be charged with working with the NewCo Managers to effectuate the Minimum TopCo Distribution and a NewCo Disposition Event in a manner consistent with NewCo's Purpose. |

5

**NAS2091**

**Appendix G**

**Shareholder Settlement Agreement Term Sheet**

NAS2092

## SETTLEMENT AGREEMENT TERM SHEET

This non-binding term sheet (this "Term Sheet") sets forth the principal terms of a settlement agreement (the "Settlement Agreement"; the agreements, instruments and documents that secure and/or evidence the liens securing the obligations under the Settlement Agreement, the "Collateral Documents" and, together with the Settlement Agreement and the other definitive documents entered into in connection with the Settlement Agreement, the "Definitive Documents") to be entered into by and among the Debtors (as defined herein), the Master Disbursement Trust established pursuant to the Plan (as defined herein) (the "MDT"), [NewCo (as defined in the Plan)] and the Specified Parties (as defined herein) in connection with the cases commenced under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") that are currently pending and jointly administered by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under the caption *In re Purdue Pharma L.P., et al.*, Case No. 19-23649 (RDD) (the "Bankruptcy Cases"). The Settlement Agreement, and the authority of the Debtors to enter into the Definitive Documents, will be subject to the approval of the Bankruptcy Court, pursuant to and in accordance with (i) the plan to be filed in connection with the Bankruptcy Cases (the "Plan"), (ii) the Confirmation Order (as defined herein) and (iii) the Definitive Documents.

This Term Sheet is subject to, and does not purport to summarize, all of the conditions, covenants, representations, warranties and other terms and provisions that will be contained in the Definitive Documents to be mutually agreed to, if any, relating to matters covered hereby. Certain items in this Term Sheet remain under discussion. This Term Sheet is not exhaustive and other items not summarized herein remain under discussion as part of the broader settlement discussions.

This Term Sheet is highly confidential and provided for discussion purposes only and does not constitute an offer, agreement or commitment to enter into the Definitive Documents, another business transaction or a relationship, all of which are subject to further diligence and negotiation. This Term Sheet is intended to be protected by Federal Rule of Evidence 408 and any other applicable statutes or doctrines protecting the disclosure of confidential information and information exchanged in the context of settlement discussions.

| SUMMARY OF PRINCIPAL TERMS | |
|---|---|
| **Specified Parties** | Certain persons included in distinct groups as set forth in an exhibit to be attached to the Definitive Documents[1] (such exhibit, the "Specified Parties Exhibit", and such persons set forth therein, the "Specified Parties"). |
| **Aggregate Settlement Amount** | $4,275,000,000 (the "Aggregate Settlement Amount"). |
| **Required Settlement Payments** | The "A-Side Payment Parties" and "B-Side Payment Parties" identified on the Specified Parties Exhibit (together, the "Payment Parties") shall fund, or cause to be funded, the Aggregate Settlement Amount in the amounts and by the applicable deadlines set forth below (each such payment, a "Required Settlement Payment" and each such deadline, a "Funding Deadline"):[2] <br><br> | Funding Deadline | Required Settlement Payment | <br> | Plan Effective Date | $300 million | <br> | June 30, 2022 | $350 million | |

---

[1] Final list of persons and groups to be agreed subject to additional diligence on the assets of the family and in connection with the execution of the Definitive Documents.

[2] Funding Deadlines are subject to adjustment if the Plan Effective Date is delayed beyond a date to be agreed.

**NAS2093**

|  | June 30, 2023 | $350 million |
|---|---|---|
|  | June 30, 2024 | $350 million |
|  | June 30, 2025 | $350 million |
|  | June 30, 2026 | $300 million |
|  | June 30, 2027 | $1,000 million |
|  | June 30, 2028 | $475 million |
|  | June 30, 2029 | $425 million, subject to deferral as set forth below |
|  | June 30, 2030 | $375 million, subject to deferral as set forth below |
|  | June 30, 2031 | Up to $200 million, in specified circumstances as set forth below |

|  |  |
|---|---|
|  | Each dollar in excess of $2.5 billion up to and including $2.675 billion in the aggregate that the MDT actually receives pursuant to the Settlement Agreement on or prior to June 30, 2026 shall defer one dollar, up to a maximum aggregate amount of $175 million, of Required Settlement Payments otherwise payable on June 30, 2030 to instead become payable on June 30, 2031. Furthermore, each dollar in excess of $2.675 billion that the MDT actually receives pursuant to the Settlement Agreement on or prior to June 30, 2026 shall defer one dollar, up to a maximum aggregate amount of $25 million, of Required Settlement Payments otherwise payable on June 30, 2029 to instead become payable on June 30, 2031; provided that deferrals shall only be made if the aggregate amount available for deferral exceeds $25 million.

Payments of the Aggregate Settlement Amount by the Specified Parties to the MDT shall also be subject to the terms set forth in Annex A attached hereto. |
| **Allocation of Settlement Obligations** | Each of the "General Obligors" identified on the Specified Parties Exhibit (each an "A-Side General Obligor") shall, on a joint and several basis with the other A-Side General Obligors, fund or cause to be funded, when due, 50% of the Aggregate Settlement Amount (subject to adjustment), in accordance with the Funding Deadline for each Required Settlement Payment.

The "A-Side Payment Parties" identified on the Specified Parties Exhibit (the "A-Side Payment Parties", and each of the eight distinct groups in such exhibit, the "A-Side Payment Groups") shall, on a joint and several basis with the other A-Side Payment Parties that are within the same A-Side Payment Group, fund or cause to be funded, when due pursuant to this Term Sheet (or as otherwise required by the Definitive Documents), in the aggregate 50% of the Aggregate Settlement Amount (subject to adjustment), but only to the extent such amount is not funded by the A-Side General Obligors as contemplated above; provided that any A-Side Payment Party that is an individual is only liable for their A-Side Payment Group's portion to the extent such amount is not funded by the trusts and entities in that A-Side Payment Group. The allocation of such settlement obligations among the eight A-Side Payment Groups shall be on a pro rata basis (i.e., 6.25% each, subject to adjustment); provided that settlement obligations funded by the Payment Parties that are not A-Side General Obligors in A-Side Payment Group 8, as to be set forth in the Specified Parties Exhibit, shall not exceed $84.5 million; provided further that with respect to any such amounts in excess of $84.5 million (the "Group 8 Shortfall"), (i) 50% of the Group 8 Shortfall shall be funded by, and constitute the settlement obligations |

2

NAS2094

| | of, the remaining seven A-Side Payment Groups, borne in equal proportion by each such group and (ii) 50% of the Group 8 Shortfall shall be funded by, and constitute the settlement obligations of, each B-Side Payment Group (as defined below), borne in equal proportion by each such group.[3]<br><br>Each of the "B-Side Payment Parties" identified on the Specified Parties Exhibit (the "B-Side Payment Parties", as included in distinct groups in such exhibit, the "B-Side Payment Groups", together with the A-Side Payment Groups, the "Payment Groups") shall, on a joint and several basis with the other B-Side Payment Parties that are within the same B-Side Payment Group, fund or cause to be funded, when due, 25% of the Aggregate Settlement Amount (subject to adjustment), in accordance with the Funding Deadline for each Required Settlement Payment. |
|---|---|
| **Adjustments to A-Side and B-Side Settlement Obligations** | Further adjustments to the allocation of the Aggregate Settlement Amount between the A-Side Payment Groups and B-Side Payment Groups may be agreed; provided that such adjustments shall in no event (i) reduce the Aggregate Settlement Amount obligations of the Specified Parties and (ii) result in the MDT, as of any Funding Deadline, receiving less than the greater of (x) the cumulative Required Settlement Payments and (y) the aggregate Net Proceeds (as defined below) required to be paid on or prior to such Funding Deadline. |
| **Sale of IACs and Use of Net Proceeds** | The Specified Parties that are "A-Side IAC Payment Parties" and "B-Side IAC Payment Parties" identified on the Specified Parties Exhibit and included in the Payment Groups (collectively, the "IAC Payment Parties") shall, during the 7-year period commencing on the Plan Effective Date (as defined in the Plan), use their best efforts to sell or cause to be sold to one or more third parties all of such IAC Payment Parties' direct or indirect interests in the non-U.S. pharmaceutical companies listed on an exhibit to be attached to the Definitive Documents (the "IACs") and/or the assets of such IACs (each, a "Sale"), subject to carveouts as may be mutually agreed.<br><br>Each IAC Payment Party shall cause cash proceeds of a Sale that are received by any of its direct or indirect subsidiaries to be distributed or otherwise paid to one or more IAC Payment Parties within the same Payment Group (subject to certain exceptions to be agreed) and to be paid into IAC Accounts (as defined below) in accordance with the following paragraph.<br><br>The IAC Payment Parties shall maintain escrow accounts, deposit accounts subject to a control agreement or other accounts on terms to be mutually agreed (such accounts, "IAC Accounts") and deposit cash proceeds received by the IAC Payment Parties from a Sale and all dividends and other distributions received by the IAC Payment Parties from the IACs into the IAC Accounts. Withdrawals from IAC Accounts by the Specified Parties shall be permitted only to pay (i) the amounts required to be paid to the MDT under the Settlement Agreement, including for payments of Net Proceeds as described below, (ii) without duplication, certain taxes in amounts and in a manner to be |

---

[3] Additional credit support mechanics for the A-Side Payment Group 8 obligations are set forth in the Credit Support Term Sheets.

3

**NAS2095**

| | |
|---|---|
| | agreed, (iii) certain expenses to be agreed and (iv) certain other withdrawals to be agreed, including to accounts subject to the covenants described in the Credit Support Term Sheets (as defined below), which are to be agreed.[4]<br><br>The IAC Payment Parties shall fund or cause to be funded to the MDT, within [45] days from the receipt thereof, (i) [●]%[5] of the cash proceeds received by the IAC Payment Parties from a Sale and (ii) dividends or other distributions received by the IAC Payment Parties from the IACs (excluding certain tax distributions), in each case less (x) the amount of Required Settlement Payments previously funded by a Payment Group from sources other than Sale proceeds (to the extent not previously applied to reduce payments owed to the MDT on account of a prior Sale or distribution) and (y) certain deductions to be mutually agreed ("<u>Net Proceeds</u>").<br><br>The amount of Net Proceeds actually received by the MDT shall be deemed to satisfy, and reduce, dollar-for-dollar, the next due Required Settlement Payment(s), allocated among the A-Side Payment Groups or B-Side Payment Groups in a manner to be agreed. |
| **Collateral** | The IAC Payment Parties shall pledge all equity interests (the "<u>Pledged Interests</u>"), now or hereafter owned by the IAC Payment Parties, in specified entities that hold direct or indirect common or preferred equity interests in IACs and loans receivable from IACs, other than interests held by unaffiliated third parties (the "<u>IAC Interests</u>"), which IAC Interests represent substantially all interests in such IACs, subject to exclusions as may be agreed, as security for the payment in full when due of all obligations of the appliable Payment Group under the Settlement Agreement of which the applicable IAC Payment Parties are members.[6]<br><br>In addition to the foregoing, certain Payment Parties within each Payment Group shall provide additional collateral and/or agree to certain other covenants as set forth in the term sheets in <u>Annex B</u> attached hereto (the "<u>Credit Support Term Sheets</u>"). |
| **IAC Information Rights** | The IAC Payment Parties shall provide the following information and reports to the MDT:<br><br>• Quarterly and annual financial statements delivered to the boards of directors or equivalent governing bodies of the IACs.<br>• Following any dividend or distribution made by the IACs and/or received by the IAC Payment Parties, a report thereof reasonably satisfactory to the MDT indicating the amount, type and calculation thereof. |

---

[4] On a quarterly basis, each A-Side IAC Payment Party shall cause all proceeds in any IAC Account of such A-Side IAC Payment Party, other than reserves to be agreed, to be paid to the MDT as a prepayment or payment of the portion of the Required Settlement Payments allocated to the A-Side Payment Groups.

[5] Such percentage to be based on tax calculations applicable to the Sales to be mutually agreed upon. Additional mechanics on deducting certain expenses in connection with a Sale to be agreed.

[6] Final list of IAC Payment Parties, pledging entities, pledged entities, Pledged Interests and IACs are subject to further negotiations.

NAS2096

| | |
|---|---|
| | • Following any Sale or distribution made by the IACs, a report setting forth in reasonable detail a good faith calculation of Net Proceeds received by such IAC Payment Party in respect of such Sale or distribution, which such calculation shall be prepared by an independent third party accountant selected by the Specified Parties and reasonably satisfactory to the MDT.<br><br>• Other information, reports and mechanics to be mutually agreed. |
| **Other IAC-Related Covenants** | The Definitive Documents shall contain the following covenants regarding the business and operations of the IACs:<br><br>• Restrictions on material transactions that would otherwise restrict, hinder or impair the ability of IACs to participate in a Sale.<br><br>• Restrictions on affiliate transactions and investments, subject to exceptions to be mutually agreed.<br><br>• Restrictions on actions that would be in violation of applicable law or order of the Bankruptcy Court.<br><br>• Restrictions on dividends, distributions or repurchases or redemptions of equity interests of the IACs, except to the extent the proceeds are treated as dividends or distributions for purposes of determining Net Proceeds to be used for purposes of satisfying a Required Settlement Payment.<br><br>• Restrictions on the transfer, or granting of a lien in respect of, any direct or indirect equity interests in any IAC, or other subsidiaries of IAC Payment Parties as to be mutually agreed, other than (i) to another IAC Payment Party or wholly owned direct or indirect subsidiary thereof within the same Payment Group, (ii) in connection with a Sale or (iii) to the MDT pursuant to the Collateral Documents.<br><br>• Restrictions on amendments of IAC organizational documents that would reasonably be expected to be material and adverse to the MDT or otherwise frustrate the intent and purposes of the Settlement Agreement.<br><br>• Other covenants to be mutually agreed.<br><br>The foregoing covenants shall not restrict the ability of the IACs to make certain payments to or receive certain payments from other IACs, subject to limitations to be agreed; provided, for the avoidance of doubt, that all IAC Payment Parties are subject to the Settlement Agreement.<br><br>The IAC Payment Parties shall cause the IACs to distribute any excess cash, the determination and timing of which is to be mutually agreed, to the IAC Payment Parties. For the avoidance of doubt, such distributions shall be deposited into an IAC Account and the Net Proceeds thereof shall be paid to the MDT as described above. |
| **Representations and Warranties** | The Definitive Documents shall contain the following representations and warranties of the Specified Parties (including with respect to the IACs):<br><br>• Validity, good standing, qualification and authority of the Specified Parties to enter into the Definitive Documents, including as to the applicable trustee's authority and trust formation. |

5

**NAS2097**

| | |
|---|---|
| | <ul><li>Non-contravention of organizational documents or laws.</li><li>Completeness of the list of IACs provided to the MDT.</li><li>Ownership of the IACs.</li><li>Accuracy of certain information provided relating to the Specified Parties.</li><li>Other representations and warranties to be mutually agreed.</li></ul> |
| **Exit of Opioid Business** | The Specified Parties and certain other family members, to be agreed, covenant and agree not to engage in the manufacturing or sale of opioids, subject to exceptions to be agreed. |
| **Covenants** | The Definitive Documents shall contain the following covenants applicable to the Specified Parties (including the IAC Payment Parties):[7] <ul><li>Information covenants to be mutually agreed.</li><li>Prohibition on any action to avoid, circumvent, frustrate or impair the ability of any Specified Party to satisfy the obligations under the Definitive Documents.</li><li>Non-interference with confirmation or consummation of the Plan and implementation of the transactions contemplated by the Definitive Documents.</li><li>Consent to relinquishment of the direct and indirect interests held in Purdue Pharma L.P. and Purdue Pharma Inc., and Purdue Pharma Inc.'s interest in Pharmaceutical Research Associates L.P.</li><li>Go-forward rights, if any, under the Debtors' insurance and directors and officers' liability policies to be mutually agreed.</li><li>Submission to jurisdiction.</li><li>Confessions of judgment.</li><li>Notifications of breaches.</li><li>Other covenants to be mutually agreed.</li></ul> Certain of the Payment Parties shall be subject to additional covenants as specified in the Credit Support Term Sheets attached hereto. |
| **Shareholder Releases** | The Plan shall provide for releases that include the Specified Parties and certain other persons and/or individuals as mutually agreed, and remedies relating to the releases, in each case that are mutually agreeable in form and substance, as set forth in Sections 10.7, 10.8 and 10.9 of the Plan. |
| **Remedies** | Remedies for breach may include, without limitation, one or more of the following (i) all unpaid and unfunded obligations of the defaulting Specified Parties becoming immediately due and payable, (ii) voiding of the Shareholder Releases (as defined in the Plan) with respect to the members of the defaulting Family Group[8], (iii) foreclosure by the MDT on the Collateral of the defaulting Specified Parties, (iv) enforcement of confessions of judgment by the |

---

[7] Covenants to be tailored to each Specified Party as appropriate to reflect the nature of such party (i.e., whether they are individuals, trusts or other entities).

[8] "Family Groups" shall mean distinct groups of Shareholder Released Parties (as defined in the Plan) that correspond to a specific Payment Group. The list of Family Groups and corresponding Payment Groups to be agreed.

NAS2098

|  | applicable Specified Parties admitting the obligations that have come due and (v) certain other remedies to be mutually agreed (including potential additional fees to the extent mutually agreed). |
|---|---|
|  | All overdue amounts, and certain other obligations as may be agreed, of the Payment Parties under the Settlement Agreement shall be subject to a fee accruing in an amount equal to [●]% per annum in connection with the occurrence of certain breaches to be agreed under the Settlement Agreement. |
|  | For certain specified breaches (but not breaches for related to the non-payment of scheduled settlement obligations), the Specified Parties shall have the opportunity to contest, in good faith, the occurrence of a breach through dispute resolution proceedings in the Bankruptcy Court prior to the MDT exercising acceleration remedies or remedies to void the Shareholder Releases with respect to such breaches and the opportunity to cure prior to the MDT exercising such remedies. |
| **Certain Consent Rights** | The Plan, Plan Documents (as defined in the Plan) and Confirmation Order shall be in a form and substance acceptable to the Specified Parties (a) in their sole and absolute discretion solely with respect to the matters related to the (i) Shareholder Releases provided by the Debtors, their Estates and the Releasing Parties (each as defined in the Plan), (ii) Channeling Injunction (as defined in the Plan), (iii) Settlement Agreement and (iv) Collateral Documents and (b) in their reasonable discretion with respect to all other matters outside the scope of (a) relating to the Shareholder Released Parties. |
| **Conditions Precedent** | The conditions precedent to the effectiveness of the Settlement Agreement shall include, without limitation:<br>• The disclosure statement order and confirmation order (the "Confirmation Order") entered by the Bankruptcy Court shall be in full force and effect.<br>• The MDT shall have received, as applicable: (a) one or more excerpts from orders of the Royal Court in Jersey confirming authority to enter into the Definitive Documents by the relevant Jersey trusts; (b) further acknowledgments from beneficiaries and/or other Shareholder Released Parties regarding certain covenants and agreements with respect to the obligations of the Specified Parties that are trusts; or (c) such other assurances as to the authority of the Specified Parties that are trusts to enter into the Definitive Documents, in each case, as may be mutually agreed.<br>• Occurrence of the Plan effective date.<br>• Execution and delivery of all Definitive Documents.<br>• Receipt by the MDT of the first Required Settlement Payment.<br>• Receipt of confessions of judgment in form and substance satisfactory to the MDT.<br>• Such other reassurances and documents as may be mutually agreed. |
| **Termination Rights** | Termination rights of the Specified Parties and the Debtors under the Settlement Agreement are to be agreed. |
| **Certain** | It shall be a condition precedent to the effectiveness of the Settlement |

7

NAS2099

| | |
|---|---|
| **Agreements** | Agreement that the matters related to the ongoing contractual and intellectual property relationships among the Debtors, the Specified Parties and the IACs have been mutually agreed, and that certain agreements related to such matters have been executed. |
| **Restitution** | The Settlement Agreement shall provide that (i) to the extent that any transfers made by the Debtors, the Shareholder Released Parties or Pharmaceutical Research Associates L.P. pursuant to the Plan and the Settlement Agreement are within the scope of Internal Revenue Code section 162(f) and are permitted to be treated as "restitution" under Internal Revenue Code section 162(f) and applicable Treasury regulations thereunder, such transfers shall be so identified in accordance with Internal Revenue Code section 162(f)(2)(A)(ii) for purposes of that provision, and (ii) a statement to this effect shall be included in the Plan Supplement (as defined in the Plan). |
| **Document Repository** | The Plan shall provide for the inclusion in the public document repository to be established pursuant to the Plan of certain documents produced by the Shareholder Released Parties, the scope and terms of which are to be mutually agreed. |

NAS2100

## Annex A

**Finality and Appellate Issues Term Sheet**

*[See attached]*

**NAS2101**

Finality and Appellate Issues Term Sheet

1. All amounts payable by the Sackler Parties to MDT under the Shareholder Settlement Agreement (including scheduled payments and IAC proceeds) shall be made into escrow, except as follows:

   a. The first scheduled payment shall be made directly to MDT when due (effective date).

   b. The second scheduled payment shall be made directly to MDT when due (June 30, 2022). If IAC proceeds are in escrow when MDT is permitted to receive the second payment in accordance with the preceding sentence, those proceeds (up to the amount of the second payment) shall be released to MDT to be applied to the second payment; the Sackler Parties shall pay any shortfall in respect of the second payment, if one exists after application of IAC proceeds, directly to MDT.

   c. The third scheduled payment shall be made directly to MDT when due (June 30, 2023), provided that on such date:

      i. No appeal from the confirmation order has been taken that could result in vacatur, modification, or reversal of the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties;

      ii. If an appeal from the confirmation order has been taken that could result in vacatur, modification, or reversal of the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties and a Final Second Circuit Decision has not yet been issued in such appeal, (1) the Second Circuit has accepted a direct appeal from the Bankruptcy Court in accordance with 28 U.S.C. § 158(d)(2) or will hear such appeal directly because the District Court entered the confirmation order in the first instance, (2) the Second Circuit has granted a motion to expedite such appeal, and (3) if a stay pending appeal has been requested, such request has been denied; or

      iii. If a Final Second Circuit Decision has been issued that affirms the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties, the Supreme Court has not granted a writ of certiorari that could result in the vacatur, modification, or reversal of such Final Second Circuit Decision in relation to such releases.

   d. If all conditions in paragraph (c)(ii) or paragraph (c)(iii) are satisfied after the third payment has come due, the amount of the third payment shall be released

from escrow to MDT. If IAC proceeds are in escrow when MDT is permitted to receive the third payment in accordance with the preceding sentence, those proceeds (up to the amount of the third payment) shall be released to MDT to be applied to the third payment; the Sackler Parties shall pay any shortfall in respect of the third payment, if one exists after application of IAC proceeds, directly to MDT.

2. Plan distributions out of NewCo/MDT shall be paused as of the date of the fourth scheduled payment (June 30, 2024) if an appeal has been taken from the confirmation order that could result in vacatur, modification, or reversal of the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties, and no Final Second Circuit Decision has been issued as of that date that affirms the confirmation order with respect to such releases.  If such a Final Second Circuit Decision affirming the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties is issued, NewCo/MDT shall thereafter release all plan distributions that had been previously paused and all further plan distributions shall resume on a normal schedule. If, at any time, the Supreme Court grants a writ of certiorari that could result in the vacatur, modification, or reversal of the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties in respect of a Final Second Circuit Decision that affirmed the confirmation order, plan distributions out of NewCo/MDT shall be paused from the date the Supreme Court grants a writ of certiorari until the date the Supreme Court renders a decision or dismisses the appeal or writ of certiorari.

3. If a Final Second Circuit Decision not subject to further appeal or a Supreme Court decision is issued that does not affirm the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties, then: (i) the Shareholder Settlement Agreement shall be rescinded; (ii) the parties' rights arising from such rescission (including any entitlement by the Sackler Parties to restitution of amounts paid to MDT) shall be preserved; (iii) the Sackler Parties shall be entitled to credit any settlement amounts that have been paid to MDT but not returned against any future judgment related to litigation that would otherwise be subject to the Shareholder Releases; and (iv) all amounts remaining in escrow (and earnings thereon) shall be returned to the Sackler Parties.

4. All amounts held in escrow (and earnings thereon) shall be released to MDT, any paused distributions out of NewCo/MDT shall resume, and all subsequent payments under the Shareholder Settlement Agreement shall be made by the Sackler Parties directly to MDT in accordance with the Shareholder Settlement Agreement if (i) all applicable time periods for commencing an appeal from the confirmation order (including filing a petition for writ of certiorari) have expired, (ii) any and all appeals (including to the Supreme Court) from the confirmation order that could result in vacatur, modification, or reversal of the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties have concluded, (iii) no court has issued a decision that does not affirm the confirmation order with respect to the Shareholder Releases by the Debtors, their Estates, and the Releasing Parties, and (iv) the Shareholder Settlement Agreement has not been rescinded or terminated in accordance with its terms.

**NAS2103**

5. All agreements as between the A family and the B family concerning their respective contributions to payments owed under the Shareholder Settlement Agreement shall remain unchanged.

6. "Final Second Circuit Decision" shall mean a ruling by the Second Circuit that is not subject to any petitions for rehearing by the Second Circuit.

7. For the avoidance of doubt, a ruling dismissing an appeal from the confirmation order as "equitably moot" shall constitute an affirmance of such order for purposes of this agreement.

**NAS2104**

## Annex B

**Credit Support Term Sheets**

*[See attached]*

NAS2105

# A-SIDE CREDIT SUPPORT PROPOSAL – A-SIDE FAMILY GROUPS 1, 3, 5, 6, 7 and 8

This non-binding indicative term sheet (the "Term Sheet") sets forth proposed terms and conditions of proposed credit support arrangements to be entered into by A-Side Family Groups 1, 3, 5, 6, 7 and 8 (each a "Group") and the Master Disbursement Trust (the "MDT") under which each such Group will provide credit support for certain of the obligations of such Group set forth in that certain Settlement Agreement (the "Settlement Agreement")[1] entered into in connection with the cases currently pending and administered by the United States Bankruptcy Court for the Southern District of New York under the caption *In re Purdue Pharma L.P. et. al.,* Case No. 19-23649 (the "Chapter 11 Cases").

THIS INDICATIVE TERM SHEET IS PROVIDED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS FULLY ENTITLED TO THE PROTECTION FROM USE AND DISCLOSURE TO ANY PERSON PURSUANT TO THE MEDIATION PRIVILEGE AND RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OF SIMILAR IMPORT.

THE PROPOSAL SET FORTH HEREIN WILL BE SUBJECT TO THE NEGOTIATION AND COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN.[2]

| A-Side Family Group: | • The Third Tier Obligor for each Group is set forth on Exhibit A hereto. <br><br> • The Second Tier Obligors for each Group are set forth on Exhibit A hereto.[3] <br><br> • The assets held by each Second Tier Obligor are set forth in the asset summary provided separately by Huron and Debevoise on April 11, 2021.[4] |
|---|---|
| Fourth Tier Obligor: | • The Fourth Tier Obligor for Groups 5, 6 and 7 is Theresa E. Sackler. |
| Secured Parties: | • (i) The MDT and each of its successors and permitted assigns and (ii) any agent, trustee or other representative or designee authorized or appointed to hold any security interest in or lien on, or take possession of, any Collateral on behalf of |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement. Any reference to a trust as a person or party shall, unless the context otherwise requires, be construed to include each trustee thereof acting solely in its capacity as such trustee.

[2] Certain items in this term sheet remain under discussion. This term sheet is not exhaustive and other items not summarized herein remain under discussion as part of the broader settlement discussions

[3] The liability of the Second Tier Obligors in Group 8 will be capped at $84.5m. Any amounts otherwise payable by Group 8 under the Settlement Agreement in excess of such amount shall be paid (a) 50% by the B-Side Payment Parties, with 50% of such amount payable by each B-Side Payment Group, and (b) 50% by the A-Side Payment Parties (other than Group 8), with one-seventh (1/7th) of such amount payable by each A-Side Payment Group (other than Group 8). In the event the Second Tier Obligors fail to pay the $84.5m referenced above, the other Payment Groups will agree to fund an amount to be agreed on terms to be agreed.

[4] Please refer to this asset summary for the net asset values as of September 30, 2020 for the assets that are held by each Group's Second Tier Obligors and Asset HoldCos.

1

NAS2106

| | |
|---|---|
| | and for the benefit of itself and any person described in clause (i) above (collectively, the "Secured Parties" and each, a "Secured Party"). |
| Security: | • As credit support for the obligations of each Group, each Second Tier Obligor in each Group shall grant a perfected first priority security interest in substantially all the assets of such Second Tier Obligor, whether now owned or hereafter acquired, in which a security interest can be granted and perfected by methods set forth in the following paragraph, including 100% of the equity of wholly-owned intermediate holding companies set forth in the asset summary or hereafter formed or acquired (each an "Asset HoldCo"), subject (in the case of assets other than the equity interests of an Asset HoldCo and, in the case of Group 3, the Cash Collateral Account) to customary exclusions[5] (including applicable prohibitions or third-party consent or notice requirements under law or contract) and other exclusions to be agreed (such assets, together with the Cash Collateral Account described below in the case of Group 3, the "Collateral"). On the Settlement Effective Date, the Secured Party shall have a perfected first priority security interest in the equity of Asset HoldCos having assets with a value of not less than the amount set forth on Exhibit A with respect to such Group.[6] |
| | • Such security interest shall be created and perfected, in the case of each such obligor (each of which is a Jersey law governed trust), (a) under the laws of Jersey by the execution by the applicable trustee(s) of a security agreement describing the assets of the applicable obligor to be pledged, (b) by the filing of a UCC financing statement in Washington, D.C. (in the case of trustees located in Jersey) or Wyoming (in the case of trustees located in Wyoming) as appropriate and agreed, and/or (c) in the case of the security interest in the equity of an Asset HoldCo, also under the laws of such jurisdiction of organization by execution of a security agreement governed by the laws of such jurisdiction and, where applicable, by registration or other filings or recordings required by applicable law, in each case in such form and such manner as shall be agreed by the parties and their legal counsel in the relevant jurisdictions (the documents creating such security interests and related obligations described herein, together with the Control Agreements described in the next section solely with respect to Group 3, the "Security Documents").[7] |
| | • Each Second Tier Obligor shall promptly and duly take, execute, acknowledge and deliver (and shall cause each of the Asset HoldCos owned by such Second Tier Obligor to cause to be promptly and duly taken, executed, acknowledged and delivered) such further acts, documents and assurances as may from time to time be necessary or as any Secured Party may from time to time reasonably request in order to carry out the intent and purposes of the Security Documents and consistent with this "Security" section (including, but not limited to, if applicable, making non U.S. filings and entry into non U.S. security agreements), including such actions necessary to establish, create, preserve, protect, perfect, |

---

[5] Relevant exclusions to be discussed and detailed in the Security Documents.

[6] Closing date value for assets in Asset HoldCos to be agreed upfront and set forth in the documentation. Value will be determined using the same methodology used by Huron with respect to the most recent net asset values provided during diligence.

[7] Subject to review by local counsel for the parties in Asset HoldCo jurisdictions.

NAS2107

| | and maintain perfection of a first priority lien on the Collateral in favor of and for the benefit of the Secured Party (including after-acquired Collateral) and to exercise any and all remedies in respect thereof. |
|---|---|
| Cash Collateral Account (Group 3 Only): | • As additional credit support for the obligations of Group 3, one or more of the Second Tier Obligors of Group 3 shall establish and fund from their assets, and shall grant a perfected first priority security interest in and lien on, one or more blocked deposit or securities accounts (collectively, the "<u>Cash Collateral Account</u>"), which shall be (a) maintained in the United States with a financial institution (as deposit bank or securities intermediary, as applicable) reasonably satisfactory to the MDT (the "<u>Account Bank</u>") and (b) funded with cash or cash equivalents with a fair market value of not less than $44,000,000 as of the end of the calendar quarter immediately preceding the effective date of the Settlement Agreement (the "<u>Initial Cash Collateral Amount</u>").  The security interests and liens of the Secured Party shall be perfected by means of, and the Cash Collateral Account shall at all times be subject to, a blocked account control agreement or securities account control agreement (as applicable) (a "<u>Control Agreement</u>") with the Account Bank in favor of the Secured Party, which Control Agreement shall (i) give sole dominion and control over the Cash Collateral Account to the Secured Party, (ii) provide that the Second Tier Obligor shall not be entitled to make withdrawals or otherwise provide direction or instructions to the Account Bank with respect to the Cash Collateral Account or the assets or amounts held therein or credited thereto and (iii) be in the form required by the Account Bank and in form and substance reasonably acceptable to the MDT. |
| | • Withdrawals from the Cash Collateral Account shall be permitted (and effected by written instruction of the Secured Party to the Account Bank in accordance with the Control Agreement) at the direction of the Second Tier Obligor, if and only to the extent the value of the assets remaining in the Cash Collateral Account (after giving effect to such withdrawal) is not less than the remaining settlement amount potentially owed by Group 3 under the Settlement Agreement (after giving effect to any payment of obligations under the Settlement Agreement with such withdrawn amount) (the "<u>Remaining Amount</u>") on such date of determination.  Withdrawals by the Secured Party will also be permitted after an Enforcement Event as described under "Remedies" below.[8] [9] |
| | • If the amount in the Cash Collateral Account is less than the Initial Cash Collateral Amount, any Advance Contribution amount returned to Group 3 under the Settlement Agreement shall be deposited in the Cash Collateral Account if and only to the extent necessary to cause the value of the assets in the Cash Collateral Account to be not less than the lesser of (i) the Remaining Amount or (ii) the Initial Cash Collateral Amount. |

---

[8]  For the avoidance of doubt, all references herein to outstanding obligations of a Group under the Settlement Agreement shall be deemed to include the maximum potential amount of obligations of such Group under the collar set forth in the Settlement Agreement.  Mechanics with respect to Advanced Contributions to be set forth in the Settlement Agreement.

[9]  Settlement Agreement to provide that no payment failure or delay shall constitute a default to the extent caused by a failure of the MDT to give instructions to the account bank after being instructed by the Group 3 Second Tier Obligor to make such payment (and subject to the withdrawal limitations set forth herein).

3

NAS2108

| | |
|---|---|
| | • The applicable Second Tier Obligor will not be permitted to (a) transfer the Cash Collateral Account and the amounts held therein except withdrawals permitted hereunder (and for account bank fees and other reasonable and customary expenses of maintaining the Cash Collateral Account[, including income taxes on gains on investments held therein][10]) or (b) maintain any assets in the Cash Collateral Account other than cash or cash equivalents.<br><br>• The parties hereto, including the Secured Parties and the Second Tier Obligors for Group 3, agree that the Second Tier Obligors for Group 3 shall be treated as the owners of the Cash Collateral Account for U.S. federal income and other applicable income tax purposes to the extent permitted by law. |
| Second Tier Obligor Covenants: | Each Second Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed (and, in each case where applicable, with respect to the Asset HoldCos owned by such Second Tier Obligor):[11]<br><br>1) Not to (and not to cause or permit any Asset HoldCo to) transfer assets to third parties other than other Second Tier Obligors in its Group unless such transfer is for reasonably equivalent value (in the case of transactions in excess of an amount to be agreed, such value to be confirmed by a written opinion of an independent financial advisor selected from an agreed list, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT); *provided* that any transfer of the equity of an Asset HoldCo will require entry into equivalent security and perfection arrangements to continue the lien therein (without lapse or change in priority); *provided further* in the case of Group 3 that the foregoing shall not apply to transfers of the Cash Collateral Account or the amounts therein, which shall be subject to the restrictions on withdrawals described in "Cash Collateral Account" above;<br><br>2) Not to (and not to cause or permit any Asset HoldCo to) engage in other related party transactions (including transactions with any Shareholder Released Party) that are not on arm's length terms with parties other than other Second Tier Obligors (or Asset HoldCos) in its Group (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor selected from a list to be agreed, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), which for the avoidance of doubt shall (other than the Cash Collateral Account and the amounts therein in the case of Group 3) permit continued ordinary course use (but not sales or dispositions) by beneficiaries of residential real estate, art and collectibles and [other property][12];<br><br>3) Not to make distributions or payments to, or for the use of, its beneficiaries, which for the avoidance of doubt shall (other than the Cash Collateral |

---

[10] Under discussion.

[11] All covenants (including reporting covenants) subject to remedy framework, which is under discussion in the Settlement Agreement

[12] Under discussion.

4

NAS2109

Account and the amounts therein in the case of Group 3) permit continued ordinary course use (but not sales or dispositions) by beneficiaries of residential real estate, art and collectibles and [other property][13;14]

4) Not to (and not to cause or permit any Asset HoldCo to) incur or assume indebtedness for borrowed money (including guarantees thereof or guarantees of any other indebtedness) or grant liens or, in the case of any consolidations, merger or divisions otherwise permitted hereunder, suffer to exist, in favor of other person on any assets other than (i) liens created or permitted by the Security Documents (it being understood that (A) the payment obligations arising out of the Settlement Agreement and Security Documents do not constitute indebtedness and (B) the Security Documents shall not permit any liens to secure indebtedness for borrowed money), (ii) debt and liens incurred for the purposes of investments of such party that are incurred in the ordinary course of business and consistent with past practices, and (iii) purchase money debt (and liens securing such debt) incurred in connection with the acquisition of assets (including real estate) so long as (x) any such liens are limited solely to the assets being acquired and (y) so long as such assets being acquired are acquired and remain owned by the Second Tier Obligor or Asset Holdco incurring such purchase money debt;

5) Not to (and not to cause or permit any Asset HoldCo to) willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement;[15]

6) Not to (and not to cause or permit any Asset HoldCo to) enter into any transaction or series of related transactions or agreement that would materially restrict or impair its ability to sell, dispose of or otherwise liquidate any of its assets and properties, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents;

7) Not to (and not to cause or permit any Asset HoldCo to) consolidate, merge or divide into two or more trusts, "decant" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise) unless (i) the surviving or resulting trust or entity assumes the obligations of such obligor under the Settlement Agreement and Security Documents pursuant to documentation reasonably acceptable to the MDT; (ii) such consolidation, merger, division or "decanting" shall not have the

---

[13] Under discussion.

[14] Exceptions to distribution restriction to include the ability to distribute net investment returns following reduction of the applicable Group's obligations under the Settlement Agreement below $[98] million per a construct to be discussed.

[15] Related covenants for this concept (and others included here) subject to agreement of language in the draft Settlement Agreement.

NAS2110

effect of rendering any liens of any Secured Party on the Collateral invalid, unenforceable or unperfected; (iii) the surviving or resulting trust or entity takes any and all steps as are necessary to maintain the Secured Party's perfected first priority security interest in the Collateral (without lapse or change in priority); and (iv) the applicable trust/trustee or entity delivers to the MDT opinions of counsel, in form and substance reasonably acceptable to the MDT, certifying compliance with this covenant;

8) (a) To preserve, renew and maintain its Jurisdiction of Administration and Governing Law Jurisdiction as set forth on Exhibit [X] to the Settlement Agreement (subject to the third item in the reporting covenants below) and (b) in the case of Asset HoldCos and trustees that are not natural persons of each Second Tier Obligor, preserve, renew and maintain in full force and effect its legal existence and good standing under the laws of the jurisdiction of its organization;

9) To comply, and cause each Asset HoldCo to comply, with the requirements of all applicable Laws and all orders, writs, injunctions and decrees of any Governmental Authority applicable to it or the trust property and administration thereof (or, to the extent applicable, the business of the trust company) except to the extent non-compliance could not reasonably be expected to have a Material Adverse Effect;

10) To maintain, and cause each Asset HoldCo to maintain, books and records in a manner consistent with past practice in all material respects;

11) Not to (and not to cause or permit any Asset HoldCo to) [knowingly][16] be a party to any transaction that is a "listed transaction" (as defined in Section 6707A(c)(2) of the Code and Treasury Regulation Section 1.6011-4(b)(2)) at the time such transaction is entered into (or, if earlier, at the time of any binding commitment to enter into such transaction), excluding (i) the Plan and Settlement Agreement and the transactions contemplated thereby and (ii) any transactions entered into by [any entity][17] included in the Collateral over which the Payment Parties do not have [dominion and control][18]; [19]

12) To pay and discharge promptly all income Taxes and all other material Taxes, before the same shall become delinquent or in default; provided, however, that such payment and discharge shall not be required with respect to (a) Taxes that are being contested in good faith by appropriate proceedings or (b) Taxes the non-payment of which could not reasonably be expected to [result in a Material Adverse Effect][20];[21]

13) Not to amend, restate, supplement or modify its governing documentation (or the governing documentation of any Asset HoldCo), to the extent the same

---

[16] Under discussion.
[17] Under discussion.
[18] Under discussion.
[19] Tax provisions under discussion among relevant counsel.

[20] Under discussion.
[21] Tax provisions under discussion among relevant counsel.

NAS2111

|  | would (a) be adverse in any manner to the perfection or priority of the Secured Parties' lien on the Collateral or (b) reasonably be expected to materially adversely affect its ability to perform its obligations under the Settlement Agreement or the Security Documents, without obtaining the prior consent of the MDT, provided that any such amendment, restatement, supplement, or modification shall maintain the Secured Party's perfected security interest in the Collateral (without lapse or change in priority)[22]; and<br><br>14) Not to cause or permit any Asset HoldCo to engage in any business activities other than holding and dealing in its assets and investments consistent with past practice.<br><br>For the avoidance of doubt, nothing herein shall prohibit the Second Tier Obligors and Asset HoldCos from paying reasonable expenses (including taxes) in connection with their operation, their compliance with the Settlement Agreement and Security Documents and related matters; *provided* in the case of Group 3 that (other than in the case of account bank fees and other costs of maintaining the Cash Collateral Account) such amounts are not paid from the Cash Collateral Account.<br><br>Notwithstanding anything to the contrary set forth herein, each Second Tier Obligor and Asset HoldCo shall be permitted to continue to pursue investment strategies and use investment techniques generally consistent with past practice to the extent such strategies and investment techniques are not inconsistent with the limitations set forth in items 1, 2, 4, and 7 above.<br><br>[As used herein, "Material Adverse Effect" means, with respect to a Group, a material adverse effect on (a) the business, assets or financial condition, in each case, of the Payment Parties under the Settlement Agreement relating to such Group (taken as a whole), (b) the rights and remedies (taken as a whole) of the Secured Parties under the Settlement Agreement and the Security Documents (taken as a whole) relating to such Group (taken as a whole) or (c) the ability of the Payment Parties under the Settlement Agreement relating to such Group (taken as a whole) to perform their payment obligations under the Settlement Agreement and the Security Documents (taken as a whole).][23] |
|---|---|
| Second Tier Obligor Reporting: | Each Second Tier Obligor will agree to provide the following to the MDT: [24]<br><br>1) Semi-annual (i) unaudited balance sheets of such obligor in a form consistent with reporting prepared in the ordinary course of trust administration by or on behalf of the trustees for such family group (with omission and/or redaction of any confidential information); (ii) compliance certificate stating that such party is in compliance with the covenants applicable to such party (including that the security interest of the Secured Party remains perfected as of December 31 of the immediately preceding year); (iii) statements and other reporting with respect to the value of the Collateral which was received from third parties by the Second Tier Obligor and/or Asset HoldCo during |

---

[22] "Further assurances" agreement under discussion among relevant parties.
[23] Under discussion.
[24] All reporting related covenants are subject to review by trustees and to the discussions of the draft Settlement Agreement.

NAS2112

<table>
<tr><td></td><td>such period, as applicable, and consistent with past practice (with omission and/or redaction of any confidential information), and (iv) in the case of Group 3, reporting of the balance of funds held in the Cash Collateral Account;

2) Prompt written notice of any change, event, effect or occurrence that would reasonably be expected to have a material adverse effect on the creation, preservation, perfection, or maintenance of the perfection (or validity) of the security interest granted over the Collateral, the financial condition of any Second Tier Obligor within such Group or the ability of the MDT or any other Secured Party to exercise and enforce its rights under the Security Documents with respect to such obligor, but in any event within 30 days thereof (and within 20 days before perfection lapses), which notice shall describe such change, event, effect or occurrence and reasonably detail the expected material adverse effect; and

3) In the event of any change in any Second Tier Obligor's or any Asset HoldCo's (in each case, within the Group of such Second Tier Obligor) (A) trustee(s) or the legal or organization name, (B) location of its chief executive office or principal place of business or administration, (C) organizational type, (D) federal taxpayer identification number or organizational identification number, if any, or (E) jurisdiction of organization (or in the case of a trust, administration or governing law) (in each case, including by merging with or into any other entity, reorganizing, dissolving, dividing into two or more trusts, "decanting" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise), liquidating, reorganizing or organizing in any other jurisdiction), the applicable obligor shall (x) deliver prompt written notice of such change (and in any event, at least 10 days prior to the occurrence) and (y) take all actions necessary to maintain (without lapse or change in priority) the validity, perfection and priority of the security interests provided for in the Security Documents.</td></tr>
<tr><td>Third Tier Obligor and Fourth Tier Obligor Covenants:</td><td>Each Third Tier Obligor and Fourth Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed:

1) Not to (and not to cause or permit any Asset HoldCo to) willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement;

2) Not to enter into any transaction (or series of related transactions) or agreement that would materially restrict or impair his or her ability to sell, dispose of or otherwise liquidate any of his or her assets and properties, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents; and</td></tr>
</table>

8

NAS2113

| | |
|---|---|
| | 3) Not to transfer assets to family members, trusts or other third parties unless such transfer is for reasonably equivalent value (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor selected from a list to be agreed, or, solely to the extent the obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), except transfers not exceeding, in the aggregate during the term of the Settlement Agreement, $[•].[25] |
| Third Tier Obligor and Fourth Tier Obligor Reporting: [26] | Each Third Tier Obligor and Fourth Tier Obligor will agree to provide to the MDT an annual compliance certificate stating that such party is in compliance with the covenants applicable to such party. |
| Remedies: | • Upon the occurrence, and during the continuance of, an Enforcement Event with respect to a Group, the MDT or any other applicable Secured Party shall have the right to exercise remedies against the Collateral of such Group as provided in (and subject to) the Settlement Agreement and the Security Documents, which shall (i) include the right to foreclose on the Collateral of such Group and/or (ii) direct the liquidation of the Collateral in accordance with the Security Documents and applicable law, and in each case to apply the proceeds thereof (including amounts in the Cash Collateral Account in the case of Group 3) to pay (A) first, any costs or expenses incurred by the MDT or any other Secured Party to enforce the Settlement Agreement or otherwise incurred in connection with the exercise of remedies, in each case, solely with respect to such Group, (B) second, any accrued and unpaid interest, late payment fees, or other fees or payment obligations (other than the Outstanding Settlement Amount) due to the MDT under the Settlement Agreement and the Security Documents solely on account of the obligations of such Group, and (C) third, the Outstanding Settlement Amount of such Group then outstanding under the Settlement Agreement, with any excess proceeds being retained by the relevant obligor.<br><br>• [As used herein, an "Enforcement Event" means the occurrence of a Breach permitting the MDT to exercise the Payment Remedy under the Settlement Agreement with respect to a Group.][27]<br><br>• In the event of the death of a Third Tier Obligor or Fourth Tier Obligor while the obligations of the applicable Group to the MDT under the Settlement Agreement are greater than zero, the payment obligations of such obligor under the Settlement Agreement and the Security Documents shall remain obligations of the estate of such obligor, and transfers of assets from the estate[28] of such obligor shall be restricted (subject to an incurrence test to be agreed), unless and until the Outstanding Settlement Amount and all other payment obligations of such applicable Group (or, in the case of the Fourth Tier Obligor, Groups) are |

---

[25] Request for this amount to be the amount of the U.S. Federal Unified Tax Credit applicable to the applicable obligor (or but not both) such equivalent concept in the non-U.S. jurisdiction applicable to such obligor) is under discussion.

[26] Reporting obligations of the Fourth Tier Obligor may be satisfied by delivery of a single compliance certificate as to her obligations as such and as Third Tier Obligor for Group 1.

[27] Remedy framework under discussion in the Settlement Agreement.

[28] Parties to discuss assets held in revocable trusts.

NAS2114

|  | reduced to zero. |
|---|---|
|  | • Solely with respect to Groups 1 and 7, upon any exercise of remedies against the assets of Millennium Trust or Perelle Bay Trust following an Enforcement Event with respect to Family Group 1 or Family Group 7, (i) 50% of the proceeds resulting from such exercise of remedies shall be applied in accordance with the waterfall set forth in the breaching family group's applicable security documents and (ii) 50% of the proceeds resulting from such exercise of remedies shall be deposited by the Secured Parties into an escrow account to secure the obligations of the non-defaulting group. |
|  | • In the event the First Tier Obligors and Second Tier Obligors for Group 5, 6 or 7 (each a "Supported Group") fail to make any payment or payments required to be made by such Group under the Settlement Agreement (a "Defaulting Supported Group"), the Fourth Tier Obligor shall also be liable for such amounts. Any failure to pay such amounts when due by the Fourth Tier Obligor shall allow the MDT to exercise all available remedies under the Settlement Agreement against Group 1 (in addition to exercising remedies against the Defaulting Supported Group). For the avoidance of doubt, any other Enforcement Event as to the Fourth Tier Obligor shall allow the MDT the rights to exercise remedies under the Settlement Agreement with respect to the Fourth Tier Obligor as described in the first item of this section. |
|  | • Upon any exercise of remedies against Group 1 following an Enforcement Event with respect to Group 1, any proceeds resulting from such exercise of remedies remaining after satisfaction of the obligations of Group 1 shall be deposited by the Secured Parties into an escrow account to support the then-outstanding obligations of the Fourth Tier Obligor with respect to the Supported Groups. |
| Trustee Matters:[29] | • Each Second Tier Obligor will agree not to replace or recognize the replacement of any trustee of a Second Tier Obligor unless (a) advance notice has been given to the MDT, (b) such replacement trustee is approved by the Jersey Court, (c) such trustee becomes a party to the Settlement Agreement and the Security Documents solely in its capacity as such trustee and agrees to be bound by the terms thereof, and (d) all steps that are necessary to maintain the perfection (without lapse or change in priority) of the Secured Party's lien on the Collateral of such Second Tier Obligor have been taken. |
|  | • Prior to the effectiveness of the Settlement Agreement, proceedings shall have been commenced in the Jersey Court to approve the Second Tier Obligors' entry into the Settlement Agreement and the Security Documents. Parties are discussing the available process under Jersey law to provide the MDT with expedient access to move forward in the Jersey Court as a party in interest to request an order from the Jersey Court for the removal of a breaching trustee after an Enforcement Event and replacement of such breaching trustee with an alternate third-party trustee acceptable to the Jersey Court. |
| Confession of | • Each Second Tier Obligor, Third Tier Obligor, and Fourth Tier Obligor will |

---

[29] Trustee Matters provisions subject to ongoing review and discussion by trustees, Jersey counsel and T&E teams.

10

**NAS2115**

| | |
|---|---|
| Judgment: | execute a confession of judgment with respect to the obligations of such obligor under the Settlement Agreement, together with all supplements that are necessary to maintain the effectiveness and validity of any such confession of judgment. |
| Termination | • The obligations described in this Term Sheet shall terminate, and all security interests thereunder shall be automatically released and all other requirements described in this Term Sheet shall be extinguished, with respect to each Group on the date on which the Outstanding Settlement Amount and all other payment obligations of such Group under the Settlement Agreement are paid in full in cash and reduced to $0; *provided* that such obligations, and all security interests in connection therewith, shall be automatically reinstated if and to the extent that, for any reason, the MDT is required to disgorge, turn over, or otherwise pay any amount paid to the MDT by or on behalf of such Group, whether as a result of any proceeding in bankruptcy or reorganization or otherwise.[30] |

---

[30] Security Documents to include an instruction to the MDT to liquidate Collateral after an Enforcement Event and apply the proceeds to reduce obligations.

NAS2116

## EXHIBIT A

### A-SIDE FAMILY GROUP 1

| Second Tier Obligors: | • Theresa E. Sackler 1988 Trust<br>• Theresa E. Sackler 2008 Trust<br>• Millennium Trust (liability capped at 50% of the value of the assets therein at the time of exercise of remedies)<br>• Perelle Bay Trust (liability capped at 50% of the value of the assets therein at the time of exercise of remedies) |
|---|---|
| Third Tier Obligor: | • Theresa E. Sackler |
| Settlement Effective Date Minimum Asset HoldCo Asset Value: | $[38,000,000][31] |

### A-SIDE FAMILY GROUP 3

| Second Tier Obligors: | • Ilene S. Lefcourt Trust 88<br>• Ilene S. Lefcourt Trust 96<br>• ISL 2010 Family Trust<br>• ISL 2011 Family Trust |
|---|---|
| Third Tier Obligor: | • Ilene Sackler Lefcourt |

### A-SIDE FAMILY GROUP 5

| Second Tier Obligors: | • MDS 2006 Trust<br>• MDS 1992 Trust<br>• MDS Beacon 2010 Trust<br>• MDS Beacon 2011 Trust<br>• MDS Family Trust 2010 |
|---|---|
| Third Tier Obligor: | • None |
| Fourth Tier Obligor: | • Theresa E. Sackler |
| Settlement Effective Date Minimum Asset HoldCo Asset Value: | $[160,000,000] |

### A-SIDE FAMILY GROUP 6

| Second Tier Obligors: | • MTS 2013 Family Trust<br>• MTS 2016 Trust<br>• MTS Beacon 2013 Trust<br>• MTS Beacon 2014 Trust<br>• MTS Beacon 2015 Trust<br>• MTS Beacon Trust 2010<br>• MTS Beacon Trust 2011<br>• MTS Beacon Trust 2012 |
|---|---|

---

[31] All asset value figures in this Exhibit A are subject to further review, updating and discussion.

| | |
|---|---|
| | • MTS Family Trust 2010 |
| Third Tier Obligor: | • None |
| Fourth Tier Obligor: | • Theresa E. Sackler |
| Settlement Effective Date Minimum Asset HoldCo Asset Value: | $[120,000,000] |

### A-SIDE FAMILY GROUP 7

| | |
|---|---|
| Second Tier Obligors: | • SDS 1992 Trust<br>• SDS Beacon 2011 Trust<br>• SDS Family Trust 2010<br>• Millennium Trust (liability capped at 50% of the value of the assets therein at the time of exercise of remedies)<br>• Perelle Bay Trust (liability capped at 50% of the value of the assets therein at the time of exercise of remedies) |
| Third Tier Obligor: | • None |
| Fourth Tier Obligor: | • Theresa E. Sackler |
| Settlement Effective Date Minimum Asset HoldCo Asset Value: | $[160,000,000] |

### A-SIDE FAMILY GROUP 8

| | |
|---|---|
| Second Tier Obligors: | • Romas Trust<br>• Sheffield Trust<br>• SSSH 2013 Family Trust<br>• SSSH Beacon 2013 Trust<br>• Samantha Hunt 1996 Trust<br>• Samantha S Hunt 2002 Trust |
| Third Tier Obligor: | • None |
| Settlement Effective Date Minimum Asset HoldCo Asset Value: | [$65,000,000] |

NAS2118

## A-SIDE CREDIT SUPPORT PROPOSAL – A-SIDE FAMILY GROUP 2

This non-binding indicative term sheet (the "Term Sheet") sets forth proposed terms and conditions of proposed credit support arrangements to be entered into by A-Side Family Group 2 (the "Group") and the Master Disbursement Trust (the "MDT") under which the Group will provide credit support for certain of the obligations of the Group set forth in that certain Settlement Agreement (the "Settlement Agreement")[1] entered into in connection with the cases currently pending and administered by the United States Bankruptcy Court for the Southern District of New York under the caption *In re Purdue Pharma L.P. et. al.,* Case No. 19-23649 (the "Chapter 11 Cases").

THIS INDICATIVE TERM SHEET IS PROVIDED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS FULLY ENTITLED TO THE PROTECTION FROM USE AND DISCLOSURE TO ANY PERSON PURSUANT TO THE MEDIATION PRIVILEGE AND RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OF SIMILAR IMPORT.

THE PROPOSAL SET FORTH HEREIN WILL BE SUBJECT TO THE NEGOTIATION AND COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN.[2]

| | |
|---|---|
| A-Side Family Group: | • The Third Tier Obligor for the Group will be Kathe A. Sackler.<br><br>• The Second Tier Obligor will be a trust to be identified that will create the Collateral Account (as defined below).<br><br>• The assets of the Second Tier Obligor will be the Collateral Account. The assets held by the Third Tier Obligor are set forth in the asset summary provided separately by Huron and Debevoise. |
| Secured Parties: | • (i) The MDT and each of its successors and permitted assigns and (ii) any agent, trustee or other representative or designee authorized or appointed to hold any security interest in or lien on, or take possession of, any Collateral on behalf of and for the benefit of itself and any person described in clause (i) above (collectively, the "Secured Parties" and each, a "Secured Party"). |
| Collateral Account: | • As credit support for the obligations of the Group, the Second Tier Obligor shall establish and fund from its assets, and shall grant a perfected first priority security interest in and lien on, one or more blocked deposit or securities accounts (collectively, the "Collateral Account"), which shall be (a) maintained |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement. Any reference to a trust as a person or party shall, unless the context otherwise requires, be construed to include each trustee thereof acting solely in its capacity as such trustee.

[2] Certain items in this term sheet remain under discussion. This term sheet is not exhaustive and other items not summarized herein remain under discussion as part of the broader settlement discussions

1

NAS2119

in the United States with a financial institution (as deposit bank or securities intermediary, as applicable) reasonably satisfactory to the MDT (the "<u>Account Bank</u>") and (b) funded with cash or cash equivalents and investments in mutual funds meeting mutually agreed upon standards with a fair market value of not less than $98,000,000 as of the end of the calendar quarter immediately preceding the effective date of the Settlement Agreement [(the "<u>Initial Cash Collateral Amount</u>")].  The security interests and liens of the Secured Party shall be perfected by means of, and the Collateral Account shall at all times be subject to, a blocked account control agreement or securities account control agreement (as applicable) (a "<u>Control Agreement</u>") with the Account Bank in favor of the Secured Party, which Control Agreement shall (i) give sole dominion and control over the Collateral Account to the Secured Party, (ii) provide that the Second Tier Obligor shall not be entitled to make withdrawals or otherwise provide direction or instructions to the Account Bank with respect to the Collateral Account or the assets or amounts held therein or credited thereto and (iii) be in the form required by the Account Bank and in form and substance reasonably acceptable to the MDT (such Control Agreements, the "<u>Security Documents</u>").

- The payment obligations of the Second Tier Obligor shall be limited recourse obligations payable solely from the assets in the Collateral Account.

- Withdrawals from the Collateral Account shall be permitted (and effected by written instruction of the Secured Party to the Account Bank in accordance with the Control Agreement) at the direction of the Second Tier Obligor if and only to the extent the value of the assets remaining in the Collateral Account (after giving effect to such withdrawal) is not less than the remaining settlement amount potentially owed by the Group under the Settlement Agreement (after giving effect to any payment of obligations under the Settlement Agreement with such withdrawn amount) (the "<u>Remaining Amount</u>") on such date of determination.  Withdrawals by the Secured Party will also be permitted after an Enforcement Event as described under "Remedies" below. [3] [4]

- If the amount in the Collateral Account is less than the Initial Cash Collateral Amount, any Advance Contribution amount returned to Group 2 under the Settlement Agreement shall be deposited in the Collateral Account if and only to the extent necessary to cause the value of the assets in the Collateral Account to be not less than the lesser of (i) the Remaining Amount or (ii) the Initial Cash Collateral Amount.[5]

- The Second Tier Obligor will not be permitted to (a) transfer the Collateral Account and the amounts held therein except withdrawals permitted hereunder (and for account bank fees and other reasonable and customary expenses of

---

[3] For the avoidance of doubt, all references herein to outstanding obligations of a Group under the Settlement Agreement shall be deemed to include the maximum potential amount of obligations of such Group under the collar set forth in the Settlement Agreement.

[4] Settlement Agreement to provide that no payment failure or delay shall constitute a default to the extent caused by a failure of the MDT to give instructions to the account bank after being instructed by the Second Tier Obligor to make such payment (and subject to the withdrawal limitations set forth herein).

[5] Under consideration.

NAS2120

| | |
|---|---|
| | maintaining the Collateral Account[, including income taxes on gains on investments held therein][6]) or (b) maintain any assets in the Collateral Account other than cash or cash equivalents and investments in mutual funds predominantly invested in short term investment grade debt investments which otherwise meet mutually agreed upon standards.<br><br>• The parties hereto, including the Secured Parties and the Second Tier Obligor, agree that the Second Tier Obligor shall be treated as the owner of the Collateral Account for U.S. federal income and other applicable income tax purposes to the extent permitted by law. |
| Second Tier Obligor Covenants: | The Second Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed: [7]<br><br>1) Not to willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement;[8]<br><br>2) Not to enter into any transaction or series of related transactions or agreement that would materially restrict or impair its ability to liquidate amounts in the Collateral Account, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents;<br><br>3) Not to consolidate, merge or divide into two or more trusts, "decant" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise) unless (i) the surviving or resulting trust or entity assumes the obligations of such obligor under the Settlement Agreement and Security Documents pursuant to documentation reasonably acceptable to the MDT; (ii) such consolidation, merger, division or "decanting" shall not have the effect of rendering any liens of any Secured Party on the Collateral Account invalid, unenforceable or unperfected; (iii) the surviving or resulting trust or entity takes any and all steps as are necessary to maintain the Secured Party's perfected first priority security interest in the Collateral Account (without lapse or change in priority); and (iv) the applicable trust/trustee or entity delivers to the MDT opinions of counsel, in form and substance reasonably acceptable to the MDT, certifying compliance with this covenant;<br><br>4) Not to grant or suffer to exist liens in favor of other person on the Collateral Account other than liens created by the Security Documents; |

---

[6] Under discussion.

[7] All covenants (including reporting covenants) subject to remedy framework, which is under discussion in the Settlement Agreement

[8] Related covenants for this concept (and others included here) subject to agreement of language in the draft Settlement Agreement.

3

NAS2121

| | |
|---|---|
| | 5) (a) To preserve, renew and maintain its Jurisdiction of Administration and Governing Law Jurisdiction as set forth on Exhibit [X] to the Settlement Agreement (subject to the third item in the reporting covenants below) and (b) in the case of trustees that are not natural persons of the Second Tier Obligor, preserve, renew and maintain in full force and effect its legal existence and good standing under the laws of the jurisdiction of its organization;<br><br>6) To comply with the requirements of all applicable Laws and all orders, writs, injunctions and decrees of any Governmental Authority applicable to it or the trust property and administration thereof (or, to the extent applicable, the business of the trust company) except to the extent non-compliance could not reasonably be expected to have a material adverse effect (with a definition to be agreed) on the Collateral Account; and<br><br>7) Not to amend, restate, supplement or modify its governing documentation, to the extent the same would (a) be adverse in any manner to the perfection or priority of the Secured Parties' lien on the Collateral Account or (b) reasonably be expected to materially adversely affect its ability to perform its obligations under the Settlement Agreement or the Security Documents, without obtaining the prior consent of the MDT provided that any such amendment, restatement, supplement, or modification shall maintain the Secured Party's perfected security interest in the Collateral Account (without lapse or change in priority). |
| Second Tier Obligor Reporting: | The Second Tier Obligor will agree to provide the following to the MDT:[9]<br><br>1) (i) Semi-annual compliance certificate stating that it is in compliance with the covenants applicable to it (including that the security interest of the Secured Party in the Collateral Account remains perfected as of December 31 of the immediately preceding year) and (ii) quarterly reporting of the balance of funds held in the Collateral Account;<br><br>2) Prompt written notice of any change, event, effect or occurrence that would reasonably be expected to have a material adverse effect on the creation, preservation, perfection, or maintenance of the perfection (or validity) of the security interest granted over the Collateral Account, or the ability of the MDT or any other Secured Party to exercise and enforce its rights under the Security Documents with respect to the Collateral Account, but in any event within 30 days thereof (and within 20 days before perfection lapses), which notice shall describe such change, event, effect or occurrence and reasonably detail the expected material adverse effect; and<br><br>3) In the event of any change in the Second Tier Obligor's (A) trustee(s) or the legal or organization name, (B) location of its chief executive office or principal place of business or administration, (C) organizational type, (D) federal taxpayer identification number or organizational identification |

---

[9] All reporting related covenants are subject to review by trustees and to the discussions of the draft Settlement Agreement.

4

| | |
|---|---|
| | number, if any, or (E) jurisdiction of organization (or in the case of a trust, administration or governing law) (in each case, including by merging with or into any other entity, reorganizing, dissolving, dividing into two or more trusts, "decanting" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise), liquidating, reorganizing or organizing in any other jurisdiction), the applicable obligor shall (x) deliver prompt written notice of such change (and in any event, at least 10 days prior to the occurrence) and (y) take all actions necessary to maintain (without lapse or change in priority) the validity, perfection and priority of the security interests provided for in the Security Documents. |
| Third Tier Obligor Covenants: | The Third Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed:<br><br>1) Not to willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement;[10]<br><br>2) Not to enter into any transaction (or series of related transactions) or agreement that would materially restrict or impair her ability to sell, dispose of or otherwise liquidate any of her assets and properties, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents; and<br><br>3) Not to transfer assets to family members, trusts or other third parties unless such transfer is for reasonably equivalent value (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor selected from a list to be agreed, or, solely to the extent the Third Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), except transfers not exceeding, in the aggregate during the term of the Settlement Agreement, $[●].[11] |
| Third Tier Obligor Reporting: | The Third Tier Obligor will agree to provide to the MDT an annual compliance certificate stating that she is in compliance with the covenants applicable to her. |
| Remedies: | • Upon the occurrence, and during the continuance of, an Enforcement Event with respect to the Group, the MDT or any other applicable Secured Party shall have the right to exercise remedies against the Collateral Account as provided in (and subject to) the Settlement Agreement and the Security Documents, which shall |

---

[10] Related covenants for this concept (and others included here) subject to agreement of language in the draft Settlement Agreement.

[11] Request for this amount to be the amount of the U.S. Federal Unified Tax Credit applicable to the applicable obligor and their spouse (as applicable) (or such (but not both) equivalent concept in the non-U.S. jurisdiction applicable to such obligor and their spouse (as applicable)) is under discussion.

5

NAS2123

|  | include the right to direct the liquidation of investments in the Collateral Account and apply the proceeds thereof to pay (A) first, any costs or expenses incurred by the MDT or any other Secured Party to enforce the Settlement Agreement or otherwise incurred in connection with the exercise of remedies, in each case, solely with respect to the Group, (B) second, any accrued and unpaid interest, late payment fees, or other fees or payment obligations (other than the Outstanding Settlement Amount) due to the MDT under the Settlement Agreement and the Security Documents solely on account of the obligations of the Group, and (C) third, the Outstanding Settlement Amount of the Group then outstanding under the Settlement Agreement, with any excess proceeds being retained by the relevant obligor.<br><br>• [As used herein, an "Enforcement Event" means the occurrence of a Breach permitting the MDT to exercise the Payment Remedy under the Settlement Agreement with respect to the Group.][12]<br><br>• In the event of the death of the Third Tier Obligor while the obligations of the Group to the MDT under the Settlement Agreement are greater than zero, the payment obligations of such obligor under the Settlement Agreement and the Security Documents shall remain obligations of the estate of such obligor, and transfers of assets from the estate[13] of such obligor shall be restricted (subject to an incurrence test to be agreed), unless and until the Outstanding Settlement Amount and all other payment obligations of the Group are reduced to zero. |
|---|---|
| Trustee Matters:[14] | • The Second Tier Obligor will agree not to replace or recognize the replacement of any trustee of the Second Tier Obligor unless (a) advance notice has been given to the MDT, (b) such replacement trustee is approved by the Jersey Court, (c) such trustee becomes a party to the Settlement Agreement and the Security Documents solely in its capacity as such trustee and agrees to be bound by the terms thereof, and (d) the liens and security interests in the Collateral Account remain perfected (without lapse or change in priority) after giving effect to such replacement.<br><br>• Prior to the effectiveness of the Settlement Agreement, proceedings shall have been commenced in the Jersey Court to approve the Second Tier Obligors' entry into the Settlement Agreement and the Security Documents.  Parties are discussing the available process under Jersey law to provide the MDT with expedient access to move forward in the Jersey Court as a party in interest to request an order from the Jersey Court for the removal of a breaching trustee after an Enforcement Event and replacement of such breaching trustee with an alternate third-party trustee acceptable to the Jersey Court. |
| Confession of Judgment: | • The Second Tier Obligor and Third Tier Obligor will execute a confession of judgment with respect to the obligations of such obligor under the Settlement Agreement, together with all supplements that are necessary to maintain the |

---

[12] Remedy framework under discussion in the Settlement Agreement.

[13] Parties to discuss assets held in revocable trusts.

[14] Trustee Matters provisions subject to ongoing review and discussion by trustees, Jersey counsel and T&E teams.

NAS2124

| | effectiveness and validity of any such confession of judgment. |
|---|---|
| Termination | • The obligations described in this Term Sheet shall terminate, and all security interests thereunder shall be automatically released and all other requirements described in this Term Sheet shall be extinguished, on the date on which the Outstanding Settlement Amount and all other payment obligations of the Group under the Settlement Agreement are paid in full in cash and reduced to $0; <u>provided</u> that such obligations, and all security interests in connection therewith, shall be automatically reinstated if and to the extent that, for any reason, the MDT is required to disgorge, turn over, or otherwise pay any amount paid to the MDT by or on behalf of the Group, whether as a result of any proceeding in bankruptcy or reorganization or otherwise. [15] |

---

[15] Security Documents to include an instruction to the MDT to liquidate Collateral after an Enforcement Event and apply the proceeds to reduce obligations.

NAS2125

## A-SIDE CREDIT SUPPORT PROPOSAL – A-SIDE FAMILY GROUP 4

This non-binding indicative term sheet (the "Term Sheet") sets forth proposed terms and conditions of proposed credit support arrangements to be entered into by A-Side Family Group 4 (the "Group") and the Master Disbursement Trust (the "MDT") under which the Group will provide credit support for certain of the obligations of the Group set forth in that certain Settlement Agreement (the "Settlement Agreement")[1] entered into in connection with the cases currently pending and administered by the United States Bankruptcy Court for the Southern District of New York under the caption *In re Purdue Pharma L.P. et. al.,* Case No. 19-23649 (the "Chapter 11 Cases").

THIS INDICATIVE TERM SHEET IS PROVIDED FOR DISCUSSION AND SETTLEMENT PURPOSES ONLY AND IS FULLY ENTITLED TO THE PROTECTION FROM USE AND DISCLOSURE TO ANY PERSON PURSUANT TO THE MEDIATION PRIVILEGE AND RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OF SIMILAR IMPORT.

THE PROPOSAL SET FORTH HEREIN WILL BE SUBJECT TO THE NEGOTIATION AND COMPLETION OF DEFINITIVE DOCUMENTS INCORPORATING THE TERMS SET FORTH HEREIN.[2]

| A-Side Family Group: | • The Third Tier Obligor for the Group will be Mortimer D.A. Sackler.<br>• The Second Tier Obligors for the Group are set forth on Exhibit A hereto.<br>• The assets held by each Second Tier Obligor are set forth in the asset summary that is provided separately by Huron. |
|---|---|
| Secured Parties | • (i) The MDT and each of its successors and permitted assigns and (ii) any agent, trustee or other representative or designee authorized or appointed to hold any security interest in or lien on, or take possession of, any Collateral on behalf of and for the benefit of itself and any person described in clause (i) above (collectively, the "Secured Parties" and each, a "Secured Party"). |
| Security | • As credit support for the obligations of the Group, a Second Tier Obligor organized and/or administered in the United States shall grant a perfected first priority security interest in 100% of the equity of a wholly-owned intermediate holding company organized in the United States set forth in the asset summary (the "Asset HoldCo") (such equity interests, the "Collateral"). On the Settlement Effective Date, such Asset HoldCo shall have assets with a value of not less than $[200]m.[3] |

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Settlement Agreement. Any reference to a trust as a person or party shall, unless the context otherwise requires, be construed to include each trustee thereof acting solely in its capacity as such trustee. If Group 4 takes the collar, any reference to outstanding obligations of the Group under the Settlement Agreement shall be deemed to include the maximum potential amount of obligations of the Group under the collar set forth in the Settlement Agreement.

[2] Certain items in this term sheet remain under discussion. This term sheet is not exhaustive and other items not summarized herein remain under discussion as part of the broader settlement discussions

[3] Value will be determined using the same methodology used by Huron with respect to the most recent net asset values

1

NAS2126

|  | • Such security interest shall be created pursuant to a security agreement governed by New York law and perfected by the filing of a UCC financing statement (and/or the delivery of any stock and/or membership interest certificates issued by the Asset HoldCo), in each case in such form and such manner as shall be agreed by the parties and their legal counsel (the documents creating such security interests and related obligations described herein, the "<u>Security Documents</u>"). <br><br> • The granting Second Tier Obligor shall promptly and duly take, execute, acknowledge and deliver (and shall cause the Asset HoldCo to cause to be promptly and duly taken, executed, acknowledged and delivered) such further acts, documents and assurances as may from time to time be necessary or as any Secured Party may from time to time reasonably request in order to carry out the intent and purposes of the Security Documents and consistent with this "Security" section (including, but not limited to, if applicable, making non U.S. filings and entry into non U.S. security agreements), including such actions necessary to establish, create, preserve, protect, perfect, and maintain perfection of a first priority lien on the Collateral in favor of and for the benefit of the Secured Party (including after-acquired Collateral) and to exercise any and all remedies in respect thereof. |
| Second Tier Obligor Covenants | Each Second Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed (and, where applicable, with respect to the Asset HoldCo):[4] <br><br> 1) Not to transfer assets to third parties outside the Group unless such transfer is for reasonably equivalent value (in the case of transactions in excess of an amount to be agreed, such value to be confirmed by a written opinion of an independent financial advisor or accountant selected from an agreed list, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT); *provided* that any transfer of the equity of the Asset HoldCo will require entry into equivalent security and perfection arrangements to continue the lien therein (without lapse or change in priority); <br><br> 2) Not to cause or permit the Asset HoldCo to transfer, distribute or make payment of assets to any entities or persons (within or outside the Group) other than (a) transfers for reasonably equivalent value, which, for the avoidance of doubt, shall not include payments under the Settlement Agreement (in the case of transactions in excess of an amount to be agreed, such value to be confirmed by a written opinion of an independent financial advisor or accountant selected from an agreed list, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT); *provided* that, in any exchange of assets among the Asset HoldCo and a Second Tier Obligor or Third Tier Obligor (or any related party), the assets received by the Asset HoldCo must be of substantially equivalent liquidity to the assets exchanged by the Asset HoldCo; (b) any transfer if, after giving effect thereto, the HoldCo Distribution Condition (as defined below) would be satisfied; and (c) other |

---

provided during diligence. Subject to receipt of requested information and diligence with respect to the Asset HoldCo and its assets. Certain such information may be anonymized in a manner to be agreed.

[4] All covenants (including reporting covenants) subject to remedy framework, which is under discussion in the Settlement Agreement

**NAS2127**

transfers not exceeding an amount to be agreed subject to conditions to be mutually agreed;

3) Not to engage in other related party transactions (including transactions with any Shareholder Released Party) that are not on arm's length terms with parties outside the Group (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor or accountant selected from a list to be agreed, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), which for the avoidance of doubt shall permit continued ordinary course use (but not sales or dispositions) by beneficiaries of residential real estate, art and collectibles and [other property][5];

4) Not to cause or permit the Asset HoldCo to engage in other related party transactions (including transactions with any Shareholder Released Party) that are not on arm's length terms (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor or accountant selected from a list to be agreed, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), other than (a) continued ordinary course use (but not sales or dispositions) by beneficiaries of residential real estate, art and collectibles and [other property][6] and (b) any transaction if, after giving effect thereto, the HoldCo Distribution Condition (as defined below) would be satisfied;

5) Not to make distributions or payments to, or for the use of, third parties (including beneficiaries) outside the Group, which for the avoidance of doubt shall permit continued ordinary course use (but not sales or dispositions) by beneficiaries of residential real estate, art and collectibles and [other property][7];

6) Not to (and not to cause or permit the Asset HoldCo to) incur or assume indebtedness for borrowed money (including guarantees thereof or guarantees of any other indebtedness) or grant liens or, in the case of any consolidations, merger or divisions otherwise permitted hereunder, suffer to exist, in favor of other person on any assets other than (i) liens created or permitted by the Security Documents (it being understood that (A) the payment obligations arising out of the Settlement Agreement and Security Documents do not constitute indebtedness and (B) the Security Documents shall not permit any liens to secure indebtedness for borrowed money), (ii) debt and liens incurred for the purposes of investments of such party that are incurred in the ordinary course of business and consistent with past practices, (iii) purchase money debt (and liens securing such debt) incurred in connection with the acquisition of assets (including real estate) so long as (x) any such liens are limited solely to the assets being acquired and (y) so long as such assets being acquired are acquired and remain owned by the Second Tier Obligor or Asset Holdco incurring such purchase money debt, and (iv) with respect to the Asset HoldCo, if, after giving effect thereto, the HoldCo Distribution Condition (as defined below) would be satisfied;

---

[5] Under discussion.
[6] Under discussion.
[7] Under discussion.

NAS2128

7) Not to (and not to cause or permit the Asset HoldCo to) willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement;[8]

8) Not to (and not to cause or permit the Asset HoldCo to) enter into any transaction or series of related transactions or agreement that would materially restrict or impair its ability to sell, dispose of or otherwise liquidate any of its assets and properties, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents;

9) Not to (and not to cause or permit the Asset HoldCo to) consolidate, merge or divide into two or more trusts, "decant" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise) unless (i) the surviving or resulting trust or entity assumes the obligations of such obligor under the Settlement Agreement and Security Documents pursuant to documentation reasonably acceptable to the MDT; (ii) such consolidation, merger, division or "decanting" shall not have the effect of rendering any liens of any Secured Party on the Collateral invalid, unenforceable or unperfected; (iii) the surviving or resulting trust or entity takes any and all steps as are necessary to maintain the Secured Party's perfected first priority security interest in the Collateral (without lapse or change in priority); and (iv) the applicable trust/trustee or entity delivers to the MDT opinions of counsel, in form and substance reasonably acceptable to the MDT, certifying compliance with this covenant;

10) (a) To preserve, renew and maintain its Jurisdiction of Administration and Governing Law Jurisdiction as set forth on Exhibit [X] to the Settlement Agreement (subject to the third item in the reporting covenants below) and (b) in the case of the Asset HoldCo and trustees that are not natural persons of each Second Tier Obligor, preserve, renew and maintain in full force and effect its legal existence and good standing under the laws of the jurisdiction of its organization;

11) To comply, and cause the Asset HoldCo to comply, with the requirements of all applicable Laws and all orders, writs, injunctions and decrees of any Governmental Authority applicable to it or the trust property and administration thereof (or, to the extent applicable, the business of the trust company) except to the extent non-compliance could not reasonably be expected to have a Material Adverse Effect;

12) To maintain, and cause the Asset HoldCo to maintain, books and records in a manner consistent with past practice in all material respects;

13) Not to (and not to cause or permit any Asset HoldCo to) [knowingly][9] be a party to any transaction that is a "listed transaction" (as defined in Section 6707A(c)(2) of the Code and Treasury Regulation Section 1.6011-4(b)(2)) at

---

[8] Related covenants for this concept (and others included here) subject to agreement of language in the draft Settlement Agreement.

[9] Under discussion.

4

NAS2129

the time such transaction is entered into (or, if earlier, at the time of any binding commitment to enter into such transaction), excluding (i) the Plan and Settlement Agreement and the transactions contemplated thereby and (ii) any transactions entered into by [any entity][10] included in the Collateral over which the Payment Parties do not have [dominion and control][11]; [12]

14) To pay and discharge promptly all income Taxes and all other material Taxes, before the same shall become delinquent or in default; provided, however, that such payment and discharge shall not be required with respect to (a) Taxes that are being contested in good faith by appropriate proceedings or (b) Taxes the non-payment of which could not reasonably be expected to [result in a Material Adverse Effect][13];[14]

15) Not to amend, restate, supplement or modify its governing documentation (or the governing documentation of any Asset HoldCo), to the extent the same would (a) be adverse in any manner to the perfection or priority of the Secured Parties' lien on the Collateral or (b) reasonably be expected to materially adversely affect its ability to perform its obligations under the Settlement Agreement or the Security Documents, without obtaining the prior consent of the MDT, provided that any such amendment, restatement, supplement, or modification shall maintain the Secured Party's perfected security interest in the Collateral (without lapse or change in priority); and

16) Not to cause or permit any Asset HoldCo to engage in any business activities other than holding and dealing in its assets and investments consistent with past practice.

The "HoldCo Distribution Condition" means a condition that is satisfied with respect to any transaction if, after giving effect to such transaction, the aggregate value of the assets of the Asset HoldCo on a pro forma basis after giving effect to such transaction (and after giving effect to any encumbrances with respect to such assets and any debt of the Asset HoldCo) (such value to be confirmed by a written opinion of an independent financial advisor or accountant selected from an agreed list, or, solely to the extent the Second Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT) is not less than the lower of (a) $[200]m[15] and (b) the remaining settlement amount owed by Group 4 to the MDT under the Settlement Agreement. Prior to making any distribution made in reliance on the HoldCo Distribution Condition, the Second Tier Obligor shall deliver to the Secured Party a certification as to compliance with the HoldCo Distribution Condition along with the valuation opinion referenced above.

For the avoidance of doubt, nothing herein shall prohibit the Second Tier Obligors and the Asset HoldCo from paying reasonable expenses (including taxes) in connection with their operation, their compliance with the Settlement Agreement and Security Documents and related matters.

Notwithstanding anything to the contrary set forth herein, each Second Tier Obligor and Asset HoldCo shall be permitted to continue to pursue investment strategies and

---

[10] Under discussion.
[11] Under discussion.
[12] Tax provisions under discussion among relevant counsel.

[13] Under discussion.
[14] Tax provisions under discussion among relevant counsel.

[15] This figure is assuming Group 4 does not take the collar, and would be revised if that assumption were to change.

NAS2130

| | |
|---|---|
| | use investment techniques generally consistent with past practice to the extent such strategies and investment techniques are not inconsistent with the limitations set forth in items 1, 2, 3, 4, 6, and 9 above.<br><br>[As used herein, "Material Adverse Effect" means, with respect to a Group, a material adverse effect on (a) the business, assets or financial condition, in each case, of the Payment Parties under the Settlement Agreement relating to such Group (taken as a whole), (b) the rights and remedies (taken as a whole) of the Secured Parties under the Settlement Agreement and the Security Documents (taken as a whole) relating to such Group (taken as a whole) or (c) the ability of the Payment Parties under the Settlement Agreement relating to such Group (taken as a whole) to perform their payment obligations under the Settlement Agreement and the Security Documents (taken as a whole).][16] |
| Second Tier Obligor Reporting: | Each Second Tier Obligor will agree to provide the following to the MDT: [17]<br><br>1) Semi-annual (i) unaudited balance sheets of such obligor in a form consistent with reporting prepared in the ordinary course of trust administration by or on behalf of the trustees for such family group (with omission and/or redaction of any confidential information); (ii) compliance certificate stating that such party is in compliance with the covenants applicable to such party (including as applicable that the security interest of the Secured Party remains perfected as of December 31 of the immediately preceding year); and (iii) statements and other reporting with respect to the value of the Collateral which was received from third parties by the Second Tier Obligor and/or Asset HoldCo during such period, as applicable, and consistent with past practice (with omission and/or redaction of any confidential information);<br><br>2) Prompt written notice of any change, event, effect or occurrence that would reasonably be expected to have a material adverse effect on the creation, preservation, perfection, or maintenance of the perfection (or validity) of the security interest granted over the Collateral, the financial condition of any Second Tier Obligor within the Group or the ability of the MDT or any other Secured Party to exercise and enforce its rights under the Security Documents with respect to such obligor, but in any event within 30 days thereof (and within 20 days before perfection lapses), which notice shall describe such change, event, effect or occurrence and reasonably detail the expected material adverse effect; and<br><br>3) In the event of any change in any Second Tier Obligor's or the Asset HoldCo's (in each case, within the Group of such Second Tier Obligor) (A) trustee(s) or the legal or organization name, (B) location of its chief executive office or principal place of business or administration, (C) organizational type, (D) federal taxpayer identification number or organizational identification number, if any, or (E) jurisdiction of organization (or in the case of a trust, administration or governing law) (in each case, including by merging with or into any other entity, reorganizing, dissolving, dividing into two or more trusts, "decanting" in further trust by reason of the exercise of any power of appointment (held in a fiduciary capacity or otherwise), liquidating, reorganizing or organizing in any other |

---

[16] Under discussion.
[17]  All reporting related covenants are subject to review by trustees and to the discussions of the draft Settlement Agreement.

NAS2131

| | |
|---|---|
| | jurisdiction), the applicable obligor shall (x) deliver prompt written notice of such change (and in any event, at least 10 days prior to the occurrence) and (y) take all actions necessary to maintain (without lapse or change in priority) the validity, perfection and priority of the security interests provided for in the Security Documents. |
| Third Tier Obligor Covenants: | The Third Tier Obligor will agree to the following covenants, in each case with thresholds, baskets and other exceptions to be agreed: 1) Not to (and not to cause or permit the Asset HoldCo to) willfully take or fail to take action the purpose or material effect of which is to avoid, circumvent, frustrate or impair (i) the ability of any Payment Party to satisfy its obligations under the Settlement Agreement or any collateral or security documents, the enforcement thereof or the ability of the MDT or any other Secured Party to recover any unpaid obligations under the Settlement Agreement or any Security Documents or (ii) any order of the Bankruptcy Court related to the settlement; 2) Not to enter into any transaction (or series of related transactions) or agreement that would materially restrict or impair his ability to sell, dispose of or otherwise liquidate any of his assets and properties, other than, for the avoidance of doubt, as required under the Settlement Agreement and the Security Documents; and 3) Not to transfer assets to family members, trusts or other third parties unless such transfer is for reasonably equivalent value (in the case of transactions involving consideration in excess of an amount to be agreed, to be confirmed by a written opinion of an independent financial advisor or accountant selected from a list to be agreed, or, solely to the extent the Third Tier Obligor is unable to engage any such advisor, otherwise reasonably acceptable to the MDT), except transfers not exceeding, in the aggregate during the term of the Settlement Agreement, $[•].[18] |
| Third Tier Obligor Reporting | The Third Tier Obligor will agree to provide to the MDT an annual compliance certificate stating that such party is in compliance with the covenants applicable to such party. |
| Remedies | • Upon the occurrence, and during the continuance of, an Enforcement Event with respect to the Group, the MDT or any other applicable Secured Party shall have the right to exercise remedies against the Collateral as provided in (and subject to) the Settlement Agreement and the Security Documents, which shall (i) include the right to foreclose on the Collateral and/or (ii) direct the liquidation of the Collateral in accordance with the Security Documents and applicable law, and in each case to apply the proceeds thereof to pay (A) first, any costs or expenses incurred by the MDT or any other Secured Party to enforce the Settlement Agreement or otherwise incurred in connection with the exercise of remedies, in each case, solely with respect to the Group, (B) second, any accrued and unpaid interest, late payment fees, or other fees or payment obligations (other than the Outstanding Settlement Amount) due to the MDT under the Settlement Agreement and the Security Documents solely on account of the obligations of the Group, and (C) third, the Outstanding Settlement Amount of the Group then outstanding under the Settlement Agreement, with |

---

[18] Request for this amount to be the amount of the U.S. Federal Unified Tax Credit applicable to the obligor (or (but not both) such equivalent concept in the non-U.S. jurisdiction applicable to the obligor) is under discussion.

NAS2132

|  | any excess proceeds being retained by the relevant obligor. |
|---|---|
|  | • [As used herein, an "<u>Enforcement Event</u>" means the occurrence of a Breach permitting the MDT to exercise the Payment Remedy under the Settlement Agreement with respect to the Group.][19] |
|  | • In the event of the death of the Third Tier Obligor while the obligations of the Group to the MDT under the Settlement Agreement are greater than zero, the payment obligations of such obligor under the Settlement Agreement and the Security Documents shall remain obligations of the estate of such obligor, and transfers of assets from the estate[20] of such obligor shall be restricted (subject to an incurrence test to be agreed), unless and until the Outstanding Settlement Amount and all other payment obligations of the Group are reduced to zero. |
| Trustee Matters:[21] | • Each Second Tier Obligor will agree not to replace or recognize the replacement of any trustee of a Second Tier Obligor unless (a) advance notice has been given to the MDT, (b) such replacement trustee is approved by the Jersey Court, (c) such trustee becomes a party to the Settlement Agreement and the applicable Security Documents solely in its capacity as such trustee and agrees to be bound by the terms thereof, and (d) all steps that are necessary to maintain the perfection (without lapse or change in priority) of the Secured Party's lien on the Collateral of such Second Tier Obligor have been taken. |
|  | • Prior to the effectiveness of the Settlement Agreement, proceedings shall have been commenced in the Jersey Court to approve the Second Tier Obligors' entry into the Settlement Agreement and the Security Documents.  Parties are discussing the available process under Jersey law to provide the MDT with expedient access to move forward in the Jersey Court as a party in interest to request an order from the Jersey Court for the removal of a breaching trustee after an Enforcement Event and replacement of such breaching trustee with an alternate third-party trustee acceptable to the Jersey Court. |
| Confession of Judgment: | • Each Second Tier Obligor and Third Tier Obligor will execute a confession of judgment with respect to the obligations of such obligor under the Settlement Agreement, together with all supplements that are necessary to maintain the effectiveness and validity of any such confession of judgment. |
| Termination | • The obligations described in this Term Sheet shall terminate, and all security interests thereunder shall be automatically released and all other requirements described in this Term Sheet shall be extinguished, on the date on which the Outstanding Settlement Amount and all other payment obligations of the Group under the Settlement Agreement are paid in full in cash and reduced to $0; *provided* that such obligations, and all security interests in connection therewith, shall be automatically reinstated if and to the extent that, for any reason, the MDT is required to disgorge, turn over, or otherwise pay any amount paid to the MDT by or on behalf of the Group, whether as a result of any proceeding in bankruptcy or reorganization or otherwise.[22] |

---

[19]  Remedy framework under discussion in the Settlement Agreement.

[20]  Parties to discuss assets held in revocable trusts.

[21]  Trustee Matters provisions subject to ongoing review and discussion by trustees, Jersey counsel and T&E teams. Provisions to be discussed and agreed with respect to any trusts not governed by Jersey law.

[22]  Security Documents to include an instruction to the MDT to liquidate Collateral after an Enforcement Event and apply the proceeds to reduce obligations.

NAS2133

**EXHIBIT A**

**A-SIDE FAMILY GROUP 4**

| Second Tier Obligors: | <ul><li>MDAS Investment Trust</li><li>Mortimer DA Sackler Trust 1996</li><li>Mortimer DA Sackler Trust 2002</li><li>MDAS 2010 Family Trust</li><li>MDAS 2011 Family Trust</li><li>Trust Under Declaration of Trust No. 2 dated November 25, 1996</li><li>Trust under Agreement dated the 11th day of May 2005</li><li>Trust Under Declaration of Trust No. 1 dated November 25, 1996</li><li>MDAS Children's Trust 2012</li><li>Nixie Trust</li><li>Indian Wells Trust</li></ul> |
|---|---|
| Third Tier Obligor: | <ul><li>Mortimer D.A. Sackler</li></ul> |

9

NAS2134

# DRAFT PROPOSAL OF SUMMARY TERMS
# JDS FAMILY PLEDGE AND SECURITY AGREEMENT[1]

*THIS SUMMARY IS PRESENTED FOR DISCUSSION AND SETTLEMENT PURPOSES, AND IS ENTITLED TO PROTECTION FROM ANY USE OR DISCLOSURE TO ANY PERSON PURSUANT TO RULE 408 OF THE FEDERAL RULES OF EVIDENCE AND ANY OTHER RULE OF SIMILAR IMPORT.*

*This draft term sheet (this "**Term Sheet**") is a summary of indicative terms and conditions for a proposed pledge and security agreement (the "**Pledge Agreement**") to be entered by and among the Pledgors (as defined herein) and the Master Disbursement Trust (the "**MDT**") pursuant to which the Pledgors will secure certain obligations of the Payment Parties in the Jonathan Sackler family Payment Group (the "**Applicable Payment Group**") under that certain Settlement Agreement (the "**Settlement Agreement**"), dated as of [_____], 2021, among the MDT and the other parties listed on Exhibits A and B thereto entered into in connection with the cases commenced under chapter 11 of title 11 of the United States Code that are currently pending and jointly administered by the United States Bankruptcy Court for the Southern District of New York under the caption In re Purdue Pharma L.P., et al., Case No. 19-23649 (RDD) (the "**Chapter 11 Cases**").*

*The Pledge Agreement will provide for, among other things, a pledge of equity interests in certain investment holding vehicles as described more fully below, which equity interests shall have a value of not less than $500,000,000[2] as of the Plan Effective Date, with stock powers to exercise voting rights and other remedies with respect to the Collateral (as defined below) as provided in the Pledge Agreement upon an Enforcement Event (as defined below) with respect to the Applicable Payment Group under the Settlement Agreement.*

*Capitalized terms not otherwise defined in this Term Sheet shall have the respective meanings ascribed to such terms in the Settlement Agreement. Any reference herein to a trust as a person or party shall, unless the context otherwise requires, be construed to include each trustee thereof but solely to the extent such trustee is acting in its capacity as trustee and not in any personal capacity.[3]*

| | |
|---|---|
| **Pledgors:** | (i) AJ Irrevocable Trust; |
| | (ii) New AJ Holding Company LLC; |
| | (iii) 2A Trust (together with AJ Irrevocable Trust, the "**Trusts Pledgors**"); and |
| | (iv) New 2A Trust Holding Company LLC (together with New AJ Holding Company LLC, the "**Holding Company Pledgors**"). |
| | The foregoing (i) through (iv), collectively, the "**Pledgors**". All Pledgors will be |

---

[1] NTD: This Term Sheet sets forth the Collateral terms for the JDS family. Collateral terms to be substantially similar for Richard's side of the family.

[2] NTD: Parties to discuss a mechanism to determine the value of the Collateral as of the plan effective date given the potential for a short lag time as asset values are reported at the end of each month.

[3] NTD: Term Sheet subject to ongoing review, negotiation and discussion by tax and trust counsel. Perfection mechanics subject to further discussion among specialists.

NAS2135

| | Payment Parties under the Settlement Agreement. |
|---|---|
| **Secured Party:** | (i) The Master Disbursement Trust ("***MDT***") and each of its successors and permitted assigns and (ii) any agent, trustee or other representative or designee authorized or appointed to hold the security interest or any Collateral on behalf of and for the benefit of itself and any person described in clause (i) above (the "***Secured Party***"). |
| **Pre-Closing Contribution of Assets:** | Prior to the effective date of the Plan (the "***Plan Effective Date***"), assets shall be contributed to the Pledgors as follows:<br><br>I. Contribution in respect of AJ Irrevocable Trust assets:<br><br>    (a) AJ Irrevocable Trust shall form a new wholly owned entity, "New AJ Holding Company LLC"; and<br><br>    (b) AJ Irrevocable Trust shall transfer its equity interests in certain investment holding vehicles to New AJ Holding Company LLC.<br><br>II. Contribution in respect of 2A Trust assets:<br><br>    (a) 2A Trust shall form a new wholly owned entity, "New 2A Trust Holding Company LLC"; and<br><br>    (b) 2A Trust shall transfer its equity interests in certain investment holding vehicles to New 2A Trust Holding Company LLC.<br><br>The investment holding vehicles subject to the contributions described above shall be referred to herein as the "***Investment Holding Vehicles***".<br><br>After giving effect to the contributions specified above, as of the Plan Effective Date, the collective value of the equity interests held by Holding Company Pledgors in the Investment Holding Vehicles and pledged to secure payment obligations of the Applicable Payment Group shall not be less than $500,000,000 in the aggregate after taking into account any Lien Prohibitions (as defined below) and which amount shall be based on valuation methodologies reasonably consistent with those used by Huron to prepare net asset presentations provided under the Amended and Restated Stipulation delivered in the Chapter 11 Cases, subject to the last paragraph of this Term Sheet.<br><br>In addition, Kokino LLC ("***Kokino***") shall be granted the exclusive authority to structure and direct the purchase and disposition of assets and investments held by the Holding Company Pledgors and their respective Investment Holding Vehicles, subject, in the case of Permitted Exchanges (as defined below), to the provisions below governing Permitted Exchanges. Kokino may transfer such authority to one or more other "family offices" that are exclusively controlled by one or more other members of the Jonathan Sackler family, so long as such assignee agrees to requirements and pledges that are equivalent to those concerning Kokino as set forth in this Term Sheet. Kokino shall agree to be bound by the terms of the Pledge Agreement applicable to it and shall grant a limited power of attorney to the Secured Party exercisable after an Enforcement Event to permit the Secured Party to exercise Kokino's rights to dispose solely of investments (including, without limitation, cash balances) held by the Pledgors or the Investment Holding Vehicles, as contemplated in the section entitled "Remedies" below, but not any assets of any other person that is not a Pledgor. The Pledgors shall represent in the |

2

**NAS2136**

| | |
|---|---|
| | Pledge Agreement that the investment management agreements shall provide Kokino with the authority to dispose of assets and investments held by the Holding Company Pledgors and their respective Investment Holding Vehicles in accordance with the foregoing and subject to the other terms and provisions of this Term Sheet. |
| **Collateral:** | All of the payment obligations of the Applicable Payment Group under (and as defined in) the Settlement Agreement to the MDT will be secured jointly and severally by a perfected first-priority pledge of and security interest in the right, title and interest of the Pledgors and, solely with respect to clauses (d) and (e), Kokino, of the following property, wherever located, and whether now owned or hereafter acquired (collectively, the "***Collateral***"):<br><br>    (a)    100% of the equity interests held by AJ Irrevocable Trust in New AJ Holding Company LLC;<br><br>    (b)    100% of the equity interests held by 2A Trust in New 2A Trust Holding Company LLC;<br><br>    (c)    substantially all assets of each Holding Company Pledgor (including 100% of the equity interests in all underlying Investment Holding Vehicles owned by such Holding Company Pledgor);<br><br>    (d)    the Holding Company Pledgors' and Kokino's respective rights under asset management agreements between the Holding Company Pledgors and Kokino with respect to voting rights to liquidate assets; and<br><br>    (e)    proceeds and products of the foregoing.<br><br>In no event shall the Collateral in the foregoing (c) and (e) include (i) any property the pledge of which or security interest therein is prohibited by applicable law (including, without limitation, any legally effective requirement to obtain the consent of any governmental authority) and any governmental licenses or state or local franchises, charters or authorizations, to the extent a security interest therein would be prohibited or restricted thereby (including, without limitation, any legally effective prohibition or restriction), in each case except to the extent such prohibition or restriction is unenforceable after giving effect to applicable anti-assignment provisions of the UCC or any other applicable law (other than proceeds thereof, the assignment of which is expressly deemed effective under the UCC notwithstanding such prohibition or restriction), (ii) any lease, license or other agreements (other than organizational documents of the Pledgors) to the extent that a security interest therein would violate or invalidate such lease, license or agreement or create a right of termination in favor of any other party thereto or a default thereunder, in each case except to the extent such violation, invalidation or termination right is unenforceable after giving effect to applicable anti-assignment provisions of the UCC or any other applicable law, and provided that any such provision in any lease, license or other agreement was not entered into after the date hereof with the purpose of excluding such asset from the Collateral or (iii) ownership interests in any non-wholly-owned subsidiaries but only to the extent the organization documents or other agreements with non-Family Member equity holders of such non-wholly-owned subsidiaries do not permit the pledge of such ownership interests for so long as such prohibition exists, in each case after giving effect to the anti-assignment provisions in the UCC or applicable law; *provided*, that the Collateral shall include the replacements, substitutions and proceeds of any of the |

NAS2137

foregoing unless such replacements, substitutions or proceeds also constitute excluded assets in accordance with clauses (i) through (iii) above (collectively, the "***Lien Prohibitions***"). The Lien Prohibitions shall not apply to assets (that would otherwise constitute Collateral but for the Lien Prohibitions) valued at more than $25,000 in the aggregate.

The Pledgors shall not be required, nor shall the Secured Party be authorized, to perfect any pledge or security interest hereunder by any means other than by (I) filing financing statements (including continuation statements) pursuant to the UCC in the office of the secretary of state (or similar central filing office) of the relevant state or jurisdiction for each Pledgor, (II) in the case of Collateral consisting of equity interests in any Holding Company Pledgor or Investment Holding Vehicle organized in jurisdictions outside the U.S., the entry into non-US law share pledge agreements and the filing of financing statements or local law equivalents and other perfection actions in relevant non-US jurisdictions, (III) the delivery of stock certificates and stock powers, or similar documents, as applicable, and (IV) in the case of the pledge of equity interests in any Holding Company Pledgor or Investment Holding Vehicle in the form of uncertificated securities, the execution of uncertificated securities control agreements.

In addition, the Pledge Agreement shall contain customary release provisions providing for the release the security interests in such Collateral upon a transfer of Collateral not prohibited by the Pledge Agreement and the related transaction documents.

Notwithstanding the foregoing, in no event shall the liens attach to (i) investments held by an Investment Holding Vehicle that are distributed to a Holding Company Pledgor for the sole purpose of transferring such investment to another Investment Holding Vehicle and (ii) any assets being contributed to any Holding Company Pledgor on a "post-closing" basis, so long as, in each case, such assets are contributed to an Investment Holding Vehicle within 5 business days of their receipt by, or contribution to, a Holding Company Pledgor.

On the effective date of the Pledge Agreement, the Pledgors shall deliver to the MDT customary opinions of counsel regarding, among other things, corporate authority, enforceability and perfection of the relevant security interest with respect to the Collateral, in form and substance reasonably satisfactory to the MDT[4]. Upon the joinder of a new Pledgor, or with respect to the acquisition of additional equity interests that constitute Collateral and that are not automatically secured and perfected pursuant to the Pledge Agreement or other collateral documents (including filed UCC financing statements), at the reasonable request of the Secured Party, the applicable Pledgor shall deliver a customary opinion of counsel with respect thereto.

Each Pledgor shall promptly and duly take, execute, acknowledge and deliver all such further acts, documents and assurances as may from time to time be necessary or as any Secured Party may from time to time reasonably request in order to carry out the intent and purposes of this Term Sheet in accordance with the Collateral Documents (including, but not limited to, making non-U.S. filings, the entry into non-U.S. security agreements and the entry, by the applicable Pledgor and any Holding Company Pledgor or Investment Holding Vehicle that is the issuer of pledged equity interests that are uncertificated securities, into an uncertificated securities control agreement) to establish,

---

[4] Effective Date deliverables are subject to ongoing discussions, including among specialists.

NAS2138

| | |
|---|---|
| | create, preserve, protect, perfect, and maintain perfection of a first priority lien on the Collateral in favor of and for the benefit of the Secured Party (including Collateral acquired after the date hereof) and to exercise any and all remedies in respect thereof.<br><br>Each Pledgor shall provide and keep up to date a duly completed and executed IRS Form W-9 (or any successor forms), and shall provide any other tax forms or certifications that the Secured Party may reasonably request to permit the Secured Party, any transferee or their payment agents to comply with any applicable tax withholding or reporting requirements. |
| **Remedies:** | Upon the occurrence, and during the continuance of, an Enforcement Event, the Secured Party shall have the right to exercise remedies against the Collateral as provided in the Pledge Agreement, which shall include, without limitation, all rights and remedies under the UCC (and any similar local laws) and the right to (i) foreclose on the Collateral, and/or (ii) direct the liquidation of investments of the Investment Holding Vehicles and apply the proceeds thereof to pay (A) first, any costs or expenses incurred by the Secured Party to enforce the Settlement Agreement or otherwise incurred in connection with the exercise of remedies, in each case, solely with respect to the Applicable Payment Group, (B) second, [any accrued and unpaid interest, late payment fees, or other fees or payment obligations]5 (other than the Outstanding Settlement Amount and any contingent indemnification obligations for which no claim or demand for payment, whether oral or written, has been made at such time) due to the Secured Party under the Settlement Agreement solely on account of the obligations of the Applicable Payment Group, and (C) third, the Outstanding Settlement Amount of the Applicable Payment Group then outstanding under the Settlement Agreement, with any excess proceeds being retained by the Pledgors.  For the avoidance of doubt, the Secured Party shall have the right to exercise remedies against the Collateral during the Sale Period.<br><br>As used herein, an "***Enforcement Event***" means the occurrence of a payment Breach and/or certain non-payment Breaches by the Applicable Payment Group permitting the Secured Party to exercise the Payment Remedy under the Settlement Agreement with respect to such Applicable Payment Group. |
| **Termination:** | The Pledge Agreement shall terminate, and all security interests thereunder shall be automatically released and all other requirements described in this Term Sheet shall be extinguished, on the date on which the Outstanding Settlement Amount and all other payment obligations (other than any contingent indemnification obligations for which no claim or demand for payment, whether oral or written, has been made at such time) under the Settlement Agreement of the Applicable Payment Group to the MDT are paid in full in cash and reduced to $0; *provided* that the obligations of the Pledgors under the Pledge Agreement, and all security interests thereunder, shall be automatically reinstated if and to the extent that, for any reason, the Secured Party is required to disgorge, turn over, or otherwise pay any amount paid to the Secured Party by or on behalf of the Applicable Payment Group, whether as a result of any proceeding in bankruptcy or reorganization or otherwise. |
| **Covenants:** | Each Trust Pledgor and each Holding Company Pledgor shall agree to the applicable covenants as described below and subject, in each case, to materiality thresholds, |

---

[5] <u>NTD</u>: This provision is intended to match the payment obligations being drafted in the Settlement Agreement; cross-reference to Settlement Agreement to be built in once finalized.

**NAS2139**

baskets and other exceptions and qualifications to be agreed:

(a) <u>Limitations on Holding Company Pledgor Distributions to Trust Pledgors</u>: Limitations on each Holding Company Pledgor's distributions to the applicable Trust Pledgor and[, to the extent constituting deemed distributions to Trust Pledgors, payments by each Holding Company Pledgor[6]], which shall permit:

(i) distributions by a Holding Company Pledgor to the applicable Trust Pledgor in an unlimited amount so long as no Enforcement Event has occurred and is continuing and subject to compliance with an incurrence test (the "***Lock Box Distribution Incurrence Test***"), which shall require that, after giving effect to such distribution on a pro forma basis, the Holding Company Pledgors' collateral coverage ratio shall not be less than 1.00 to 1.00 (it being understood that such collateral coverage ratio shall measure, as of any date of determination, the ratio of (A) the value of the Collateral pledged by the Holding Company Pledgors[7] to (B) the Outstanding Settlement Amount of the Applicable Payment Group);

(ii) distributions by a Holding Company Pledgor that is disregarded as a separate entity for U.S. federal income tax purposes to the applicable Trust Pledgor to pay when due (including, without limitation, estimated income tax) the cumulative amount of taxes imposed on such Trust Pledgor resulting from allocations of income and gain from the Holding Company Pledgors (including, without limitation, underlying investment vehicles) to the Trust Pledgor subject to limitations to be mutually agreed, including that no distributions shall be made pursuant to this clause (ii) until the aggregate flow-through income and gains of the Trust Pledgors resulting from allocations of income and gain from the Holding Company Pledgors (including, without limitation, underlying investment vehicles) to the Trust Pledgors exceeds an amount to be agreed;

(iii) distributions to pay reasonable costs and expenses of maintaining the operations and investments of each Holding Company Pledgor and its share of its underlying investments, including, without limitation, brokerage expenses, overhead and accounting expenses, along with professional fees (including, without limitation, payments to Kokino and North Bay, other management fees, tax preparation costs and legal fees of such Holding Company Pledgor or relating to its underling investments); <u>provided</u> that the amount of distributions made pursuant to this clause (iii) to pay management fees to Kokino and North Bay and any other "family offices" in aggregate shall not exceed 1.25% per annum (0.3125% per calendar quarter) of the net asset value of the Collateral at the start of such calendar quarter, which fees shall be paid quarterly in advance each calendar quarter once such net asset value is determined (and prorated accordingly for partial calendar quarters);

---

[6] NTD: Subject to discussion.

[7] The mechanics of the Lock Box Distribution Incurrence Test are subject to further review.

NAS2140

and

(iv) (A) distributions to pay 43% of the Applicable Payment Group's portion of any Required Settlement Payment under the Settlement Agreement (*minus* any amounts paid directly by the Holding Company Pledgor, any Investment Holding Vehicle, or any subsidiary directly to MDT in respect of such Required Settlement Payment pursuant to clause (b) below), so long as such distributions are applied to make such Required Settlement Payment within 30 days of the receipt thereof by the applicable Trust Pledgor, and (B) so long as no Enforcement Event has occurred and is continuing, distributions to pay 43% of all other reasonable costs and expenses of the Applicable Payment Group arising after the Settlement Effective Date under or related to the Settlement Agreement (along with all ancillary documents and agreements thereto) including, without limitation, legal and other professional fees arising in connection with the Chapter 11 Cases and the Settlement Agreement (e.g., legal and professional fees to enforce the rights the Applicable Payment Group under the Settlement Agreement but excluding (I) the costs of any judgment against any Trust Pledgor and (II) costs related to solely to the operations of the IACs.  For the avoidance of doubt, this clause (iv) does not permit the payment of the Required Settlement Payment payable on the Plan Effective Date.

The Holding Company Pledgors shall reinvest returns on, and returns of, and any other proceeds of, investments in additional investments made by them and/or their respective Investment Holding Vehicles, and cash proceeds received by the Holding Company Pledgors shall be promptly contributed to their respective Investment Holding Vehicles, or to make payments or to make distributions to the applicable Trust Pledgor in each case, to the extent not prohibited by this Term Sheet and the Pledge Agreement.

If any distribution or payment made pursuant to the foregoing clause (iv)(A) is thereafter returned to the Applicable Payment Group in the form of an Advanced Contribution under the Settlement Agreement, the Trust Pledgors shall, within 45 days of such receipt, contribute assets to the applicable Holding Company Pledgor (which assets the Holding Company Pledgor shall, in turn, contribute to an Investment Holding Vehicle) in an amount equal to the lesser of:

(1) the amount distributed or paid pursuant to the foregoing clause (iv)(A) (*minus* any previous Advanced Contribution Top-Offs (defined below)); and

(2) the amount required to increase the value of the Collateral to the lesser of (x) $500,000,000 and (y) the then Outstanding Settlement Amount of the Applicable Payment Group.

The lower amount specified in (1) and (2) is referred to as an "***Advanced Contribution Top-Off***".

It is understood and agreed that transactions permitted under this clause (a)

NAS2141

may also be effected by way of a loan to the Trust Pledgor in lieu of a distribution.

Notwithstanding the foregoing, the Pledgors may exchange assets of Investment Holding Vehicles of the type constituting Specified Assets for other assets constituting Specified Assets of a substantially equivalent value (including with respect to liquidity) (a "***Permitted Exchange***"), so long as, in the case of Specified Assets consisting of investments in private equity funds or hedge funds, the applicable Pledgor delivers a certificate to the Secured Party certifying the exchanged asset is of substantially equivalent value (including with respect to liquidity) to the original asset. In furtherance of the foregoing, no Permitted Exchange shall be consummated unless the applicable Holding Company Pledgor receives the new Specified Asset from the Trust Pledgors and then contributes the same to the applicable Investment Holding Vehicle substantially concurrently with the distribution of the original Specified Asset to the Trust Pledgors. As used herein, "Specified Assets" means assets consisting of cash, cash equivalents, marketable securities or investments in private equity funds or hedge funds.

(b) Limitations on Payments of Required Settlement Payments: Payments by the Holding Company Pledgors, the Investment Holding Vehicles, and their subsidiaries of the Applicable Payment Group's portion of any Required Settlement Payments shall be limited to 43% any such payment (*minus* any amounts paid to MDT by means of distribution to a Trust Company Pledgor pursuant to clause (a)(iv) above).

If any payment made pursuant to this clause (b) is thereafter returned to the Applicable Payment Group in the form of an Advanced Contribution under the Settlement Agreement, the Trust Pledgors shall, within 45 days of such receipt, contribute assets to the applicable Holding Company Pledgor (which assets the Holding Company Pledgor shall, in turn, contribute to an Investment Holding Vehicle) in an amount equal to the Advanced Contribution Top-Off. Such Advanced Contribution Top-Off shall be calculated as set forth above with appropriate adjustments for context (i.e., references to clause (iv)(A) will be replaced with references to this clause (b)).

For the avoidance of doubt, this clause (b) does not permit the payment of the Required Settlement Payment payable on the Plan Effective Date.

(c) Limitations on Trust Pledgor Distributions to Beneficiaries: Limitations on each Trust Pledgor's distributions to its beneficiaries, which shall permit:

(i) a general basket in the aggregate amount of $150,000,000 so long as no Enforcement Event has occurred and is continuing;

(ii) distributions in an unlimited amount so long as no Enforcement Event has occurred and is continuing and subject to compliance with an incurrence test (the "***Trust Beneficiary Incurrence Test***", and together with the Lock Box Distribution Incurrence Test, the "***Incurrence Tests***"), which shall require that, after giving effect to such distribution on a pro forma basis, the Trust Pledgors' asset coverage ratio shall not be less than 1.50 to 1.00 (it being understood that such asset coverage

NAS2142

|  |  | ratio shall measure, as of any date of determination, the ratio of (A) the value of the assets of the Trust Pledgors[8] (excluding any value attributable to the IACs[9]) to (B) the Outstanding Settlement Amount of the Applicable Payment Group);
|  |  | (iii) distributions by a Trust Pledgor to a beneficiary for the payment of reasonable costs and expenses of maintaining the operations and investments of each Trust Pledgor and its share of its underlying investments, including, without limitation, acquiring, maintaining, financing, hedging, and disposing of investments, along with professional fees (including, without limitation, payments to Kokino and North Bay, other management fees, tax preparation costs and legal fees);
|  |  | (iv) so long as no Enforcement Event has occurred and is continuing, distributions to pay any and all legal fees and related expenses of any Trust Pledgor or beneficiary of any Trust Pledgor (but not, for the avoidance of doubt, the costs of any judgment against any beneficiary of any Trust Pledgor); and
|  |  | (v) to the extent constituting a distribution, transactions permitted under clause (d) (other than under clauses (d)(ii), [(v)], (vi) and (viii)).
|  |  | For the avoidance of doubt, this clause (c) shall not permit the distribution of (A) any equity interests held by a Trust Pledgor in any Holding Company Pledgors or (B) any equity interests held by a Holding Company Pledgor in any Investment Holding Vehicle, in each case, to the beneficiaries of the applicable Trust Pledgor.
|  |  | It is understood and agreed that (A) transactions permitted under this clause (c) may also be effected by way of a loan to the beneficiary in lieu of a distribution; provided that any such loan will be made at a rate of interest no less than the Applicable Federal Rate and (B) Kokino, North Bay and other family offices shall be run as break even enterprises consistent with past practice.
|  | (d) | Related Party Transactions: The Pledgors and the Holding Company Pledgors shall not, and the Holding Companies Pledgors shall cause the Investment Holding Vehicles to not, enter into related party transactions[10] unless such transactions are on terms no less favorable than would reasonably have been obtained in a comparable, arm's length transaction with an unrelated party, subject to exceptions to be mutually agreed, including, without limitation,
|  |  | (i) exceptions relating to family trusts (e.g., the continued use of residences

---

[8] The mechanics of the Trust Beneficiary Incurrence Test are subject to further review.

[9] NTD: List of IACs and IAC payment mechanics to be agreed.

[10] NTD: "Related Parties" to be defined in definitive documentation and subject to further discussion, but in any event to include all Persons who are descendants of either Raymond R. Sackler or Mortimer D. Sackler, all current and former spouses of such descendants, all current and former spouses of Raymond R. Sackler, Mortimer D. Sackler or any of their respective descendants, the IACs and all entities controlled, directly or indirectly, by such person.

**NAS2143**

owned by the trust by the family, if any, retaining family offices for services such as Kokino and North Bay), and sharing professional expenses with other family trusts that are Payment Parties within the "B-Side" Payment Groups under the Settlement Agreement,

(ii) the hiring and retention of "family offices" for investment management and related (e.g., book keeping, tax preparation) services, and the payment (subject to clause (a)(iii) above) of management fees and budgeted expenses in the ordinary course, and Kokino's management of the assets and investment activities of the Trust Pledgors and the Holding Company Pledgors (e.g., Kokino may move assets within the Holding Company Pledgors structure and make investment decisions in its discretion) in the ordinary course of business, and activities incidental thereto (e.g., setting the budget for Kokino), other than activities that have an adverse impact on the Secured Party's security interest in the Collateral,

(iii)(A) transactions that result in the transfer of assets from a Holding Company Pledgor, Investment Holding Vehicle, or subsidiary to a trust or entity that is a Holding Company Pledgor, Investment Holding Vehicle, or subsidiary, (B) transactions between and among the Trust Pledgors and (C) transaction between and among the Holding Company Pledgors and the Investment Holding Vehicles and transfers from any Trust Pledgor to any Holding Company Pledgor or Investment Holding Vehicle,

(iv) transactions the purpose of which is to facilitate the transfer of assets to make payments under the Settlement Agreement and the remittance of cash and "funds flow" to effect the same, so long as, in each case, the intent, purpose and primary effect of such transaction shall not be to circumvent the provisions of this Term Sheet,

(v) unsecured loans using the Applicable Federal Rate as the interest rate, provided that any such loans to beneficiaries of the Trust Pledgors shall be permitted under clause (c) (to the extent such distributions are otherwise permitted under the terms and provisions hereof, and counting such loan as a distribution to such beneficiary),

(vi) transactions permitted under clauses (a), (b) and (c) of this section entitled "Covenants",

(vii) the appointment of outside professionals as trustees and the retention of such professionals respective firms, provided that the payment of professional fees to such professionals shall be otherwise permitted under this Term Sheet,

(viii) transactions certified as complying with this covenant in an opinion by an independent financial advisor from the list of approved financial advisors set forth on Annex B,

(ix) the transfer of proceeds of IAC sales and IAC distributions to (and the receipt thereof by) the Applicable Payment Group (including any

NAS2144

Pledgor) to the extent permitted by the Settlement Agreement (including to facilitate the reimbursements of Required Settlement Payments contemplated by clauses (a) and (b) above), and

(x) [subject to (a)(iv)(A) above, any other transactions required by the Settlement Agreement, including the transfer of any other amounts contemplated by the Settlement Agreement such as the Collar B-Side Amounts (as defined in the Settlement Agreement)][11].

With respect to related party transactions involving consideration in excess of amounts to be agreed and that are not excepted above, the applicable Pledgor shall provide a written opinion, in form reasonably acceptable to the Secured Party, by an independent financial advisor from the list of approved financial advisors set forth on Annex B certifying that the transaction complies with this covenant.

(e) <u>Passive Holding Company Activity</u>: The Holding Company Pledgors shall be subject to a customary passive holding company covenant, restricting such entities from engaging in any business activities other than the holding of equity interests in investment vehicles and the holding of cash above a threshold to be agreed and for a period of time to be agreed.

(f) <u>Fundamental Changes</u>: The Trust Pledgors and the Holding Company Pledgors shall agree to restrictions on consolidations, mergers, divisions, dissolutions and liquidations unless (i) either (A) the applicable Trust Pledgor or Holding Company Pledgor is the surviving entity or (B) the resulting trust or entity is a U.S. trust or entity that assumes the obligations of the applicable Trust Pledgor or Holding Company Pledgor under the Pledge Agreement pursuant to a joinder agreement to be exhibited to the Pledge Agreement[12], (ii) such activities do not have a material adverse impact on the value of, and the Secured Party's interest in, the Collateral (after giving effect to any liabilities with respect thereto), (iii) the Secured Party's security interest in the Collateral shall remain perfected (without lapse or change in priority) and (iv) in the case of clause (B) above, if reasonably requested by the Secured Party, the applicable Trust Pledgor or Holding Company Pledgor shall deliver to the Secured Party a customary opinion of counsel, regarding the enforceability and perfection of the relevant security interest with respect to the Collateral and other customary matters.

(g) <u>Information Covenants</u>:

(i) The Pledgors shall deliver to the Secured Party copies of quarterly and annual financial statements of each Pledgor that set forth the categories of investments held by such Pledgor and shall omit (or redact) counterparty or confidential information, in each case, in a form substantially similar to the form attached hereto as <u>Annex A</u>;

---

[11] NTD: Subject to finalization of the settlement agreement.

[12] If the Trust Pledgor or Holding Company Pledgor that is not a surviving entity as a result of such transaction was party to the Settlement Agreement, then the resulting trust or entity that assumes the obligations of such Trust Pledgor or Holding Company Pledgor shall also join the Settlement Agreement.

NAS2145

(ii) Together with the financial statements required to be delivered under clause (i) above, and also prior to any distribution or series of distributions made by a Holding Company Pledgor to a Trust Pledgor or by a Trust Pledgor to or for the use of its beneficiaries (other than distributions made to pay any portion of a Required Settlement Payment to MDT) in excess of $10 million, the Pledgors shall deliver a compliance certificate, in a form substantially similar to the form attached hereto as Annex C, certifying that to their knowledge no Breach Trigger or Breach with respect to the Applicable Payment Group has occurred under the Settlement Agreement or the Pledge Agreement during the period covered by the certificate, and, if applicable, (A) in the case of any such certificate being delivered with respect to a distribution by a Holding Company Pledgor pursuant to clauses (a)(iv)(B) or (v), such certificate shall include a confirmation that such distribution is being made pursuant to such clause, and (B) in the case of any such certificate being delivered with respect to a distribution by a Trust Pledgor pursuant to clauses (c)(i) or (iv), such certificate shall include a confirmation that such distribution is being made pursuant to such clause;

(iii) The Pledgors shall deliver prompt written notice to the MDT (but in any event within thirty (30) days) of any change, event, effect or occurrence that is known to them and that would reasonably be expected to have a material adverse effect on ability of the Secured Party to exercise and enforce its rights under the Settlement Agreement or the Pledge Agreement with respect to the Applicable Payment Group or any material portion of the Collateral;

(iv) In the event of any change (A) in any legal or organization name of any Pledgor or any Investment Holding Vehicle or, if applicable, the trustee of a Trust Pledgor, (B) in the location of any Pledgor's chief executive office or principal place of business, (C) in any Pledgor's organizational type, (D) in any Pledgor's federal taxpayer identification number or organizational identification number, if any, or (E) in any Pledgor's or Investment Holding Vehicle's jurisdiction of organization (in each case, including by merging with or into any other entity, reorganizing, dissolving, liquidating, reorganizing or organizing in any other jurisdiction), the applicable Pledgor shall (1) deliver prompt written notice of such change (and in any event, no later than thirty (30) days after such change) and (2) deliver to the Secured Party all additional financing statements and other documents reasonably requested by the Secured Party promptly after receipt of such notice that are necessary to maintain the validity, perfection and priority of the security interests provided for in the Pledge Agreement;

(v) Within twenty-five (25) Business Days after the end of each fiscal quarter period, a schedule in form substantially similar to the form attached hereto as Annex D indicating the amount and type of any distributions (or loans in lieu of distributions) made by or between (i) each Holding Company Pledgor to the applicable Trust Pledgor and (ii) each Trust Pledgor to its beneficiaries in each case during the

NAS2146

preceding fiscal quarter;

(vi) Prior to making any distribution that would otherwise be subject to Incurrence Tests, the Secured Party shall receive a certification as to compliance with the applicable Incurrence Test from an independent third-party as to the accuracy of the calculation, in a form substantially similar to the form attached hereto as <u>Annex F</u>, which independent third-party shall be selected by the applicable Trust Pledgor from <u>Annex B</u>;

(vii)  Within thirty (30) days after each calendar year, the Pledgors shall deliver to the Secured Party a supplemental perfection certificate and a certification that the Secured Party's liens in the Collateral remain perfected in accordance with the Pledge Agreement as of the date of such certificate, all of which will be in a form substantially similar to the form attached hereto as <u>Annex E</u>; and

(viii)  To the extent distributions are made pursuant to Incurrence Tests, at the request of the MDT, and subject to confidentiality arrangements satisfactory to the Pledgors, the Pledgors shall use commercially reasonable efforts to cause the independent financial advisor that delivered the applicable compliance certificate to attend an annual telephonic conference call with advisors of the MDT at a reasonable time to be mutually agreed, which conference call shall be limited to questions relating to the matters covered by the applicable compliance certificates delivered during the prior 12 month period; <u>provided</u> that the MDT shall not request more than one conference call in any 12 month period.

(h) <u>Change of Trustees</u>. The Trust Pledgors shall not permit or otherwise recognize the appointment of (including without limitation by granting control over any trust asset to) any additional or replacement trustee of such Trust Pledgor, unless and until such additional or replacement trustee (A) becomes a party to the Settlement Agreement, the Pledge Agreement, and any other applicable Collateral Documents in its capacity as such trustee of the applicable Trust Pledgor, (B) takes any and all steps that are necessary to maintain the perfection (without lapse or change in priority) of the Secured Party's lien on the Collateral and (C) confirms and agrees at the time of its appointment that such trustee, solely in its capacity as a trustee, is bound by the terms and provisions of the Settlement Agreement, the Pledge Agreement, and the other Collateral Documents and that the obligations of the Trust Pledgors constitute valid and binding obligations (including under the applicable trust agreement) enforceable against the applicable Trust Pledgor's property in accordance with their terms. The trustees of each Trust Pledgor shall grant a limited power of attorney to the Secured Party, exercisable after an Enforcement Event, to provide for the retention of Kokino as manager of the Trust Pledgor's assets solely for the purposes of facilitating the exercise of remedies under the Pledge Agreement and a limited power of attorney with respect to the payment of taxes or discharge of liens to be agreed.

(i) <u>Restrictive Agreements</u>. The Pledgors shall not enter into any transaction or

NAS2147

series of related transactions that would restrict or impair in any material respect the ability of the Pledgors to sell, dispose of otherwise liquidate all or substantially all of the assets and properties of the Pledgors, other than, for the avoidance of doubt, to facilitate compliance under the Settlement Agreement and the Pledge Agreements, and subject to exceptions to be agreed including, without limitation, transfer restrictions contained in documentation governing individual investments which have been entered into in the ordinary course of business or pursuant to standard industry practices. For the avoidance of doubt, any Trust may undergo a division, appointment in further trust or similar reorganization into one or more other trusts, but only to the extent that the resulting trust(s) assumes the obligations of such Trust as described in this Term Sheet and takes any and all steps that are necessary to maintain the perfection (without lapse or change in priority) of the Secured Party's lien on the Collateral.

(j) <u>Preservation of Existence</u>. Each Trust Pledgor and each Holding Company Pledgor, shall (a) preserve, renew and maintain in full force and effect its legal existence under the laws of the jurisdiction of its organization; and (b) take all reasonable action to maintain all material rights and privileges (including its good standing, if such concept is applicable in its jurisdiction of organization) necessary or desirable in the normal conduct of its business, in each case to the extent that the failure to do so could not reasonably be expected to result in a Material Adverse Effect (to be defined in the definitive documentation). As used herein, "Material Adverse Effect" means a material adverse effect on (a) the business, assets or financial condition, in each case, of the Payment Parties under the Settlement Agreement relating to the Applicable Payment Group, taken as a whole, (b) the rights and remedies (taken as a whole) of the Secured Party under the Settlement Agreement or the Pledge Agreement or (c) the ability of the Payment Parties under the Settlement Agreement relating to the Applicable Payment Group (taken as a whole) to perform their payment obligations under the Settlement Agreement or the Pledge Agreement.

(k) <u>Compliance with Laws</u>. Each Trust Pledgor and each Holding Company Pledgor shall comply with the requirements of all applicable Laws and all material orders, writs, injunctions and decrees of any Governmental Authority applicable to it or its business or property in each case to the extent that the failure to do so could not reasonably be expected to result in a Material Adverse Effect.

(l) <u>Books and Records</u>. Each Trust Pledgor and each Holding Company Pledgor shall maintain proper books of record and account consistent with past practice.

(m) <u>Amendments or Waivers of Organizational Covenants</u>. The Trust Pledgors and the Holding Company Pledgors shall not make any amendment, restatement, supplement or other modification to, or waiver of, any of any such party's organizational documents (including trust documentation) after the Agreement Effective Date, in each case, to the extent the same (A) would adversely affect the perfection or priority of the Secured Parties' lien on the Collateral or (B) would reasonably be expected to be otherwise materially adverse to the interests of the MDT (or any Secured Party) or the ability of the Payment Parties under the Settlement Agreement relating the Applicable Payment

14

NAS2148

Group, taken as a whole, to perform their obligations and otherwise pay the applicable Outstanding Settlement Amount under the Settlement Agreement, other than as permitted under the Settlement Agreement, without obtaining the prior consent of MDT to such amendment, restatement, supplement or other modification or waiver (such consent not to be unreasonably withheld or delayed) or thereafter taking such steps as are necessary to maintain the perfection and priority of the Secured Party's lien on the Collateral; provided that, for purposes of clarity, it is understood and agreed that the Trust Pledgors and the Holding Company Pledgors may effect a change to its organizational form and/or consummate any other transaction that not prohibited under this term sheet.

(n) Limitations on Debt and Liens:  Limitations on the incurrence of debt and liens by the Pledgors subject to exceptions to be agreed including, without limitation, (i) the liens created under the Pledge Agreement (it being understood that the payment obligations arising out of the Settlement Agreement and the Collateral Documents do not constitute debt), (ii) with respect to the Trust Pledgors, (A) debt and liens incurred for the purposes of investments of such Trust Pledgor that are incurred in the ordinary course of business (including their investment business) and consistent with past practices or standard industry practices, (B) debt incurred to finance payments under the Settlement Agreement and (C) a general basket in an amount to be agreed and (iii) with respect to the Holding Company Pledgors, ordinary course exceptions for passive holding companies to be agreed.

(o) Tax Payments.[13] Except as would not reasonably be expected to result in a Material Adverse Effect, each Trust Pledgor shall file all U.S. federal, state, local, non-U.S. and other Tax returns and reports required to be filed and pay and discharge promptly when due all income Taxes and all other material Taxes, before the same shall become delinquent or in default; provided, however, that such payment and discharge shall not be required with respect to any such Tax so long as (a) such Taxes are being contested in good faith by appropriate proceedings and (b) the aggregate amount of such Taxes, assessments, governmental charges or levies does not exceed an amount to be agreed.

The Pledge Agreement will contain an acknowledgement by the parties thereto that (a) the Pledge Agreement shall be executed and delivered by trustees, not individually or personally but solely as trustee of the applicable Trust Pledgor, in the exercise of the powers and authority conferred and vested in it under the applicable trust agreement, (b) any representations, undertakings and agreements made on the part of any Trust Pledgor shall be made and intended not as personal representations, undertakings and agreements by the trustee but is made and intended for the purpose of binding only the applicable Trust Pledgor, and (c) under no circumstances shall any trustee be personally liable for the payment of any Secured Obligations or be liable for the breach or failure of any obligation, representation, warranty or covenant made or undertaken by the Trust Pledgor under the Pledge Agreement or any other related documents.

It is understood and agreed that for purposes of preparing the quarterly and annual

---

[13] NTD: Listed Transactions covenant subject to discussion among tax counsel.

NAS2149

|  | financial statements and other applicable materials described in this Term Sheet and calculating compliance with the Incurrence Tests, asset valuations shall be determined in all material respects in a manner that is reasonably consistent with the valuation methodologies used to prepare the previous net asset reports delivered in the Chapter 11 Cases pursuant to the Amended and Restated Stipulation.  All asset valuations (including, without limitation, with respect to the initial Collateral as of the Plan Effective Date and the Incurrence Tests) shall exclude any contingent liabilities (e.g., tax liabilities and inchoate claims[14] but, for the avoidance of doubt, guarantees of indebtedness shall be counted in the determination of asset values)[15].  The Pledgors may exclude any asset in their sole discretion when calculating compliance with the Incurrence Tests. |

---

[14] Subject to further diligence regarding inchoate claims.

[15] NTD:  Calculation of Incurrence Test subject to ongoing discussions in light of exclusion of contingent liabilities.

NAS2150

ANNEX A

**SAMPLE FINANCIAL STATEMENT TEMPLATE**

[To be provided.]

NAS2151

# ANNEX B

## APPROVED FINANCIAL ADVISORS

[*To come*]

NAS2152

# ANNEX C

## FORM OF COMPLIANCE CERTIFICATE

[*To come*]

NAS2153

**ANNEX D**

**SCHEDULE OF DISTRIBUTIONS**

[*To come*]

NAS2154

**ANNEX E**

**FORM OF COLLATERAL CERTIFICATE**

[*To come*]

**NAS2155**

**ANNEX F**

**FORM OF INCURRENCE TEST COMPLIANCE CERTIFICATE**

[*To come*]

## Appendix H

**Certain Shareholder Released Parties**

#94599161v1

**NAS2157**

### CERTAIN A-SIDE RELEASE PARTIES[1]

**Individual Family Members**
1. Theresa E. Sackler
2. Ilene Sackler Lefcourt
3. Kathe A. Sackler
4. Mortimer D.A. Sackler
5. Michael Sackler
6. Marissa Sackler
7. Sophie Dalrymple
8. Samantha Hunt
9. The spouses, children and grandchildren of the above
10. The assets, businesses and entities owned by the above.
11. Any entities or individuals to which any assets of the above are transferred.

**Trusts, Trustees and Protectors**
1. 533 Canal Trust
2. Alexa M. Saunders
3. Anthony M. Roncalli
4. Angonoka Trust
5. Beacon Trust
6. Beacon Trust Company Limited
7. BJSS 2010 Trust
8. BJSS 2013 Trust
9. BJSS and JHSS 2012 K Trust
10. Benjamin Shack Sackler Trust 98
11. Bowland Company Limited
12. Canadian Partnership Trust
13. Charles G. Lubar
14. Christopher B. Mitchell (and the estate of Christopher B. Mitchell)
15. Chelsea Trust Company Limited
16. Christopher M. Reimer
17. Clover Trust
18. Cobo Bay Trust
19. Codan Trust Company Limited
20. Diagonal Blue Trust
21. Estera Services (Bermuda) Limited/Ocorian Services (Bermuda) Limited
22. Fidinc Trust
23. Flat Creek Fiduciary Management LLC

---

[1] For the avoidance of doubt, the inclusion of any person on this list who also fits within a category on this list that is also a category in the release shall not be construed to narrow such category or to support an inference that another person within such category but not on this list is not a released party.

**NAS2158**

24. Flat Creek Purpose Trust
25. Frontier Directed Fiduciary Services LLC
26. Gorey Trust
27. Glebe Trust II
28. Hagen Trust Company Limited
29. Halm Trust
30. Heatheridge Trust Company Limited
31. Hercules Trust
32. Hermance Schaepman
33. Highland Court Trust
34. Hillside Trust Company Limited
35. Ilene S. Lefcourt Trust 88
36. Ilene S. Lefcourt Trust 96
37. Ilene Sackler Lefcourt Revocable Trust
38. Indian Wells Trust
39. Inholmes Trust
40. ISL 2010 Family Trust
41. ISL 2011 Family Trust
42. ISL JML OSHA Trust
43. ISL LT Children's Trust
44. Jackson River Trust
45. Jeffrey A. Robins
46. JHSS 2010 Trust
47. JHSS 2013 Trust
48. JML 2010 Family Trust
49. JML 2011 Family Trust
50. JML Investment Trust
51. JML OSHA Trust
52. JML Pour-Over Trust
53. Joerg Fischer
54. Jonathan G. White
55. Julia Shack Sackler Trust 98
56. Karen Lefcourt Trust
57. KAS 2010 Family Trust
58. KAS 2011 Family Trust
59. Kathe A. Sackler 2001 Trust
60. Kathe A. Sackler Trust 88
61. Kathe A. Sackler Trust 96
62. Kerry J. Sulkowicz
63. KLT 2010 Family Trust
64. KLT 2011 Family Trust
65. KLT Pour-Over Trust
66. La Coupe Trust
67. La Digue Limited
68. Leslie J. Schreyer
69. LSRR Family Trust
70. Lune River Trust

NAS2159

71. May Trust
72. Maydean Trust Company Limited
73. MDAS 2010 Family Trust
74. MDAS 2011 Family Trust
75. MDAS 2012 Children's Trust
76. MDAS Investment Trust
77. Michael D. Sackler 1992 Trust
78. Michael D. Sackler 2002 Trust
79. Michael D. Sackler 2006 Trust
80. MDS Beacon 2010 Trust
81. MDS Beacon 2011 Trust
82. MDS Beacon 2012 Trust
83. MDS Beacon 2013 Trust
84. MDS Family Trust
85. Medichem Trust
86. Meerkat Trust
87. Memphis Pharma Trust
88. MIL Trust
89. Millborne Trust Company Limited
90. Millennium Trust
91. Milton Trust
92. Mondai Trust
93. Mordas Consolidated Purpose Trust
94. Mordas Trust Company Limited
95. Mortimer DA Sackler Trust 1996
96. Mortimer DA Sackler Trust 2002
97. Morvetta Trust
98. MTS 2002 Trust
99. MTS 2006 Trust
100. MTS 2013 Family Trust
101. MTS 2016 Trust
102. MTS Bare Trust
103. MTS Beacon 2010 Trust
104. MTS Beacon 2011 Trust
105. MTS Beacon 2012 Trust
106. MTS Beacon 2013 Trust
107. MTS Beacon 2014 Trust
108. MTS Beacon 2015 Trust
109. MTS Family Trust
110. MTS Trust 2006
111. Mundi Lab Trust
112. Nixie Trust
113. PALP Trust
114. Perelle Bay Trust
115. Peter M. Ward (and the estate of Peter M. Ward)
116. Pickering Trust
117. Racine Trust

#94599161v1

**NAS2160**

| | |
|---|---|
| 118. | Reserve Trust |
| 119. | Romas Trust 2002 |
| 120. | Sandiway Trust Company Limited |
| 121. | Samantha Hunt 1996 Trust |
| 122. | Samantha S. Hunt 2002 Trust |
| 123. | SASS 2010 Trust |
| 124. | SASS 2013 Trust |
| 125. | SDS 1992 Trust |
| 126. | SDS 2002 Trust |
| 127. | SDS 2006 Trust |
| 128. | SDS Bare Trust |
| 129. | SDS Beacon 2011 Trust |
| 130. | SDS Beacon 2012 Trust |
| 131. | SDS Beacon 2014 Trust |
| 132. | SDS Family Trust |
| 133. | Sheffield Trust |
| 134. | Silver Trust |
| 135. | Soft River Fiduciary Management LLC |
| 136. | Soft River Purpose Trust |
| 137. | SS Tanager Trust |
| 138. | SSSH 2013 Family Trust |
| 139. | SSSH Beacon 2013 Trust |
| 140. | Stuart D. Baker |
| 141. | Taddeo Fiduciary Management Inc. |
| 142. | Taddeo Purpose Trust |
| 143. | Taddeo Trust |
| 144. | Tayleigh Trust Company Limited |
| 145. | Tenzin Trust Company Limited |
| 146. | TES Bare Trust |
| 147. | TES Beacon 2012 Trust |
| 148. | TES Beacon 2013 Trust |
| 149. | TES Beacon 2014 Trust |
| 150. | Themar Consolidated Purpose Trust |
| 151. | Themar Trust Company Limited |
| 152. | Theresa E. Sackler 1988 Trust |
| 153. | Theresa E. Sackler 2008 Trust |
| 154. | Tom & Kelly Trust |
| 155. | Trust under Agreement dated the 11th day of May 2005 |
| 156. | Trust under Agreement dated the 13th day of March 2009 |
| 157. | Trust Under Declaration dated April 11, 2002 |
| 158. | Trust Under Declaration of Trust No. 1 dated November 25, 1996 |
| 159. | Trust Under Declaration of Trust No. 2 dated November 25, 1996 |
| 160. | Varus Trust |
| 161. | The assets, businesses and entities owned by the above. |
| 162. | Any entities or individuals to which any assets of the above are transferred. |

**NAS2161**

**Purdue Parent Entities**
1.  Banela Corporation
2.  Beacon Company
3.  BR Holdings Associates Inc.
4.  BR Holdings Associates L.P.
5.  Heatheridge Trust Company Limited, as Trustee under Settlement dated 31 December 1993 F.B.O. the issue of Mortimer D. Sackler M.D., Theresa E. Sackler and certain charitable objects
6.  Millborne Trust Company Limited, as Trustee of the Hercules Trust under Declaration of Trust dated 2 March 1999 F.B.O. Theresa E. Sackler, the issue of Mortimer D. Sackler, M.D. and certain charitable objects
7.  Pharmaceutical Research Associates L.P. (formerly Purdue Holdings L.P.)
8.  PLP Associates Holdings Inc.
9.  PLP Associates Holdings L.P.
10. Purdue Pharma Inc.
11. Stanhope Gate Corp.
12. The assets, businesses and entities owned by the above (excluding the Debtors).
13. Any entities or individuals to which any assets of the above are transferred (excluding the Debtors).


**Independent Associated Companies**
1.  Accardi B.V.
2.  Accardi S.àr.l.
3.  Alfa Generics B.V.
4.  Arsago B.V.
5.  Bard Pharmaceuticals (1990) Inc.
6.  Bard Pharmaceuticals Limited
7.  Bermag Limited
8.  Boetti Corporation
9.  Boldini Corporation
10. Bradenton Products B.V.
11. Bulla S.àr.l.
12. Clinical Designs Limited
13. Clovio Corporation
14. E.R.G. Realty, Inc.
15. Elvium Life Sciences GP Inc.
16. Elvium Life Sciences Limited Partnership
17. Elvium ULC
18. Euro-Celtique S.A.
19. Evening Star Services Limited
20. Filti S.àr.l.
21. Flira S.àr.l.
22. Hayez Corporation
23. Ind S.àr.l.

NAS2162

24. Irey S.àr.l.
25. Krugmann GmbH
26. Ladenburg B.V.
27. Lake Claire Investments Limited
28. L.P. Clover Limited
29. Lucien Holdings S.àr.l.
30. Lymit Holdings S.àr.l.
31. Maltus Corporation
32. Marnine Holdings Pte. Limited
33. Martone Holdings Pte. Limited
34. Mexcus Corporation
35. MN Consulting LLC
36. MNP Consulting Limited
37. Mundibiopharma Limited
38. Mundichemie GmbH
39. Mundipharma (Argentina) S.r.l.
40. Mundipharma (China) Pharmaceutical Company Limited
41. Mundipharma (Colombia) S.A.S.
42. Mundipharma (Hong Kong) Limited
43. Mundipharma (Myanmar) Co., Limited
44. Mundipharma (Proprietary) Limited
45. Mundipharma (Shanghai) International Trade Company Limited
46. Mundipharma (Thailand) Limited
47. Mundipharma A.S.
48. Mundipharma A/S
49. Mundipharma AB
50. Mundipharma AG
51. Mundipharma B.V.
52. Mundipharma Biologics GmbH
53. Mundipharma Biologics Inc.
54. Mundipharma Bradenton B.V.
55. Mundipharma Brasil Productos Médicos e Farmacêuticos Ltda.
56. Mundipharma BV
57. Mundipharma Company
58. Mundipharma Corporation (Ireland) Limited
59. Mundipharma Corporation Limited
60. Mundipharma DC B.V.
61. Mundipharma de Mexico, S. de R.L. de C.V.
62. Mundipharma Deutschland GmbH & Co. KG
63. Mundipharma Development Pte. Limited
64. Mundipharma Distribution GmbH
65. Mundipharma Distribution Limited
66. Mundipharma EDO GmbH
67. Mundipharma Egypt LLC
68. Mundipharma Farmaceutica LDA.
69. Mundipharma FZ-LLC
70. Mundipharma GesmbH

71.   Mundipharma GmbH
72.   Mundipharma Healthcare Corporation
73.   Mundipharma Healthcare LLC
74.   Mundipharma Healthcare Pte. Limited
75.   Mundipharma Healthcare Pty. Limited
76.   Mundipharma Holding AG
77.   Mundipharma International Services GmbH
78.   Mundipharma International Services Limited
79.   Mundipharma International Services S.ar.l.
80.   Mundipharma International Corporation Limited
81.   Mundipharma International Holdings Limited
82.   Mundipharma International Limited
83.   Mundipharma International Services GmbH
84.   Mundipharma International Services Limited
85.   Mundipharma International Services S.àr.l.
86.   Mundipharma International Technical Operations Limited
87.   Mundipharma IT GmbH
88.   Mundipharma IT Services GmbH
89.   Mundipharma IT Services Inc.
90.   Mundipharma IT Services Limited
91.   Mundipharma IT Services Pte. Limited
92.   Mundipharma Kabushiki Kaishe
93.   Mundipharma Korea Limited
94.   Mundipharma Laboratories GmbH
95.   Mundipharma Laboratories Limited
96.   Mundipharma LATAM GmbH
97.   Mundipharma Limited
98.   Mundipharma Ltd.
99.   Mundipharma Management S.ar.l.
100.  Mundipharma Manufacturing Pte. Limited
101.  Mundipharma MEA GmbH
102.  Mundipharma Medical CEE GmbH
103.  Mundipharma Medical Company
104.  Mundipharma Medical Company Limited
105.  Mundipharma Medical GmbH
106.  Mundipharma Medical S.ar.l.
107.  Mundipharma Middle East FZ-LLC
108.  Mundipharma Near East GmbH
109.  Mundipharma New Zealand Limited
110.  Mundipharma Oncology Pty. Limited
111.  Mundipharma Ophthalmology Corporation Limited
112.  Mundipharma Ophthalmology Products Limited
113.  Mundipharma Oy
114.  Mundipharma Pharmaceutical Company
115.  Mundipharma Pharmaceuticals (Chile) Limitada
116.  Mundipharma Pharmaceuticals Argentina S.r.l.
117.  Mundipharma Pharmaceuticals B.V.

118. Mundipharma Pharmaceuticals Belgium BV
119. Mundipharma Pharmaceuticals Inc.
120. Mundipharma Pharmaceuticals Industry and Trade Limited
121. Mundipharma Pharmaceuticals Limited
122. Mundipharma Pharmaceuticals Private Limited
123. Mundipharma Pharmaceuticals S.L.
124. Mundipharma Pharmaceuticals S.r.l.
125. Mundipharma Pharmaceuticals Sdn. Bhd.
126. Mundipharma Polska SP. Z.O.O.
127. Mundipharma Pte Limited
128. Mundipharma Pty Limited
129. Mundipharma Research Company Limited
130. Mundipharma Research GmbH & Co. KG
131. Mundipharma Research Limited
132. Mundipharma Research Verwaltungs GmbH
133. Mundipharma SAS
134. Scientific Office of Mundipharma MEA GmbH
135. Mundipharma Singapore Holding Pte. Limited
136. Mundipharma TK
137. Mundipharma Verwaltungsgesellschaft mbH
138. Napp Laboratories Limited
139. Napp Pension Trustees Limited
140. Napp Pharmaceutical Group Limited
141. Napp Pharmaceutical Holdings Limited
142. Napp Pharmaceuticals Limited
143. Napp Research Centre Limited
144. Nitid S.àr.l.
145. Nontag S.àr.l.
146. One Stamford Realty L.P.
147. Paineurope Limited
148. Par-La-Ville Properties Limited
149. Porthos S.àr.l.
150. PT. Mundipharma Healthcare Indonesia
151. Purdue BioPharma Inc.
152. Purdue BioPharma L.P.
153. Purdue Frederick Inc.
154. Purdue Pharma Inc. (Canadian Company)
155. Purdue Pharma Technologies Inc.
156. Purdue Pharma Pty. Ltd.
157. Purdue Pharma ULC
158. Qdem Pharmaceuticals Limited
159. Rafa Laboratories Ltd.
160. Sofy S.àr.l.
161. Songol S.àr.l.
162. Sonti S.àr.l.
163. Tacca B.V.
164. Taiwan Mundipharma Pharmaceuticals Limited

**NAS2165**

165.  Technical Scientific Office of Mundipharma Near East GmbH
166.  Tenna B.V.
167.  The Napp Educational Foundation
168.  The Representative Office of Mundipharma Pharmaceuticals Pte Limited in Ho Chi Minh City
169.  Vaccaro B.V.
170.  Venusti B.V.
171.  Win – Healthcare Private Ltd.
172.  Win – Medicare Private Ltd.
173.  Wuhu Haitong Kanghong Pharmaceutical Trading Co. Ltd.
174.  The assets, businesses and entities owned by the above.
175.  Any entities or individuals to which any assets of the above are transferred.

**NAS2166**

## CERTAIN B-SIDE RELEASE PARTIES

| Certain Shareholder Released Parties |
|---|
| Raymond R. Sackler/Estate of Raymond R. Sackler |
| Beverly Sackler/Estate of Beverly Sackler |
| Jonathan D. Sackler/Estate of Jonathan D. Sackler |
| Richard S. Sackler, M.D. |
| Beth Cohen (formerly Sackler) |
| David A. Sackler |
| Children of David Sackler |
| Jaseleen Ruggles |
| Marianna Sackler Frame |
| Children of Marianna Sackler Frame |
| James Frame |
| Rebecca Sackler |
| Jeffrey Selikoff |
| Mary Corson |
| Madeleine Sackler |
| Clare E. Sackler |
| Children of Clare E. Sackler |
| Miles R.C. Sackler |
| Garrett Lynam |
| Howard R. Udell/Estate of Howard R. Udell |
| Stuart D. Baker |
| Anthony M. Roncalli |
| Philip C. Strassburger |
| Edward B. Mahony |
| Peter Boer |
| Paulo Costa |
| Ralph Snyderman |
| William Loomis |
| Stephen A. Ives |
| Leslie J. Schreyer |
| Danny Parks |
| Jeffrey A. Robins |
| Beatriz V. Iriondo/Betty Andrikopoulos |
| Christopher Reimer |
| Jared Giddens |
| Stephen L. Schreiner |
| Frank S. Vellucci |
| Rory Held |
| BRJ Fiduciary Management LLC |
| Cedar Cliff Fiduciary Management Inc. |
| Cornice Fiduciary Management LLC |
| Crystal Fiduciary Company LLC |
| Data LLC |
| MCM Fiduciary Management LLC |
| North Bay Trust Company Inc. |

NAS2167

| |
|---|
| Brian Olson |
| Elizabeth A. Whalen |
| Lauren D. Kelly |
| John N. Irwin III |
| John Wilcox/Estate of John Wilcox |
| Michael Kassen |
| Peter M. Ward/Estate of Peter M. Ward |
| Ruth Edelson |
| Susan C. Frunzi |
| Thomas A. Russo |
| Janet Pomerantz |
| Alex Troy |
| Josephine Hoh |
| Scott Bulua |
| Molly B. Johnson |
| Trust U/A 11/5/74 fbo Beverly Sackler |
| Raymond R. Sackler Trust 1 dtd 12/23/89 |
| Raymond R. Sackler Trust 1B dtd 12/23/89 |
| Raymond R. Sackler Trust 2 dtd 12/23/89 |
| Raymond R. Sackler Trust 2B dtd 12/23/89 |
| Trust B U/A 11/5/74 fbo Beverly Sackler |
| The 1974 Irrevocable Investment Trust |
| 1974 Irrevocable Trust fbo BS and RSS |
| 1974 Irrevocable Trust fbo BS and JDS |
| AR Irrevocable Trust |
| AJ Irrevocable Trust |
| Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Jonathan D. Sackler |
| Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Richard S. Sackler |
| Beverly Sackler Trust 1 f/b/o David Alex Sackler 12/20/1989 |
| Beverly Sackler Trust 1 f/b/o Marianna Rose Sackler 12/21/1989 |
| Beverly Sackler Trust 1 f/b/o Rebecca Kate Sackler 12/22/1989 |
| Beverly Sackler Trust 2 f/b/o David Alex Sackler 12/20/1989 |
| Beverly Sackler Trust 2 f/b/o Marianna Rose Sackler 12/21/1989 |
| Beverly Sackler Trust 2 f/b/o Rebecca Kate Sackler 12/22/1989 |
| Beverly Sackler Trust 3 f/b/o David Alex Sackler 12/20/1989 |
| Beverly Sackler Trust 3 f/b/o Marianna Rose Sackler 12/21/1989 |
| Beverly Sackler Trust 3 f/b/o Rebecca Kate Sackler 12/22/1989 |
| Beverly Sackler Trust 1 f/b/o Madeleine Sackler 12/26/1989 |
| Beverly Sackler Trust 1 f/b/o Clare Elizabeth Sackler 12/27/1989 |
| Beverly Sackler Trust 1 f/b/o Miles Raymond Sackler 12/29/1989 |
| Beverly Sackler Trust 2 f/b/o Madeleine Sackler 12/26/1989 |
| Beverly Sackler Trust 2 f/b/o Clare Elizabeth Sackler 12/27/1989 |
| Beverly Sackler Trust 2 f/b/o Miles Raymond Sackler 12/30/1989 |
| Beverly Sackler Trust 3 f/b/o Madeleine Sackler 12/26/1989 |
| Beverly Sackler Trust 3 f/b/o Clare Elizabeth Sackler 12/27/1989 |
| Beverly Sackler Trust 3 f/b/o Miles Raymond Sackler 12/28/1989 |
| David A. Sackler 2012 Trust |
| Marianna R. Sackler 2012 Trust |
| Rebecca K. Sackler 2012 Trust |

#94599161v1

**NAS2168**

| |
|---|
| Madeleine Sackler 2012 Trust |
| Clare E. Sackler 2012 Trust |
| Miles R.C. Sackler 2012 Trust |
| Irrevocable Trust under Declaration dated as of April 25, 1991 |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler |
| Trust under agreement dated December 3, 1979 f/b/o Richard S. Sackler |
| Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler |
| Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler |
| Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler |
| Trust under agreement dated December 23, 1980 f/b/o Richard S. Sackler |
| Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler |
| Beth B. Sackler Trust |
| Beth Sackler 2013 Trust |
| Mary Corson Trust |
| Trust Agreement dated August 29, 2003 f/b/o Issue of Richard S. Sackler |
| Trust Agreement dated August 29, 2003 f/b/o Mary Corson and Issue of Jonathan D. Sackler |
| Irrevocable Trust under Declaration dated as of August 25, 1992 |
| Irrevocable Trust under Declaration dated as of December 29, 1992 |
| Richard S. Sackler Life Insurance Trust |
| Jonathan D. Sackler Life Insurance Trust |
| Richard S. Sackler Trust U/A 9/30/04 |
| Jonathan D. Sackler Trust U/A 9/30/04 |
| Hudson Trust |
| Richard S. Sackler Trust f/b/o David A. Sackler 3/8/90 |
| Richard S. Sackler Trust f/b/o Marianna R. Sackler 3/8/90 |
| Richard S. Sackler Trust f/b/o Rebecca K. Sackler 3/8/90 |
| Jonathan D. Sackler Trust f/b/o Clare Elizabeth Sackler 4/11/90 |
| Jonathan D. Sackler Trust f/b/o Madeleine Sackler 4/11/90 |
| Jonathan D. Sackler Trust f/b/o Miles Raymond Corson Sackler, 4/11/90 |
| The RSS 2012 Family Trust |
| Marianna R. Sackler Captain Trust |
| Rebecca K. Sackler Captain Trust |
| RSS Fiduciary Management Trust |
| JDS Fiduciary Management Trust |
| Crystal Trust |
| MCM Fiduciary Management Trust |
| Data Trust |
| Cornice Trust |
| DABB Trust |
| Raymond R. Sackler Credit Shelter Trust u/a 3/29/2012 |
| Raymond R. Sackler GST Exempt Marital Trust u/a 3/29/2012 |
| Raymond R. Sackler Marital Trust u/a 3/29/2012 |

NAS2169

| |
|---|
| Beverly Sackler Revocable Trust u/a 3/29/12 |
| RSS Revocable Pourover Trust |
| JDS Revocable Pourover Trust |
| Cedar Cliff Trust |
| Selikoff Family Investment Trust |
| 1959 Irrevocable Trust |
| 1969 Irrevocable Trust |
| FTA Trust |
| 1974 Revocable Trust |
| RSS Pourover Trust |
| JDS Pourover Trust |
| RSS 2/2/98 Trust |
| JDS 2/2/98 Trust |
| RSS 1992 Insurance Trust |
| JDS 1992 Insurance Trust |
| The Richard S. Sackler Revocable Pourover Trust |
| The Jonathan D. Sackler Revocable Pourover Trust dated 12/12/2010 |
| Moonstone Holdings LLC [DE] |
| Linarite Holdings LLC [DE] |
| Perthlite Holdings LLC [DE] |
| Roselite Holdings LLC [DE] |
| Rosebay Medical Company L.P. [DE] |
| Rosebay Medical Company, Inc. [DE] |
| BR Holdings Associates Inc. [NY] |
| BR Holdings Associates L.P. [DE] |
| PLP Associates Holdings Inc. [NY] |
| PLP Associates Holdings L.P. [DE] |
| Purdue Pharma Inc. [NY] |
| Pharmaceutical Research Associates L.P. [DE] |
| Purdue Pharma L.P. [DE] |
| Atlantic Laboratories Limited [Bermuda] |
| B.L. Carrolton Limited [Bermuda] |
| G.H. Carrell Limited [Bermuda] |
| Laysan Limited [Bermuda] |
| Mallard Limited [Bermuda] |
| The Research Foundation Ltd. [Bermuda] |
| Triangle Industries Ltd. [Bermuda] |
| East Hudson Inc. [British Virgin Islands] |
| East River Partners Ltd. [British Virgin Islands] |
| Hobart Corporation [British Virgin Islands] |
| Mauna Kea Limited [British Virgin Islands] |
| Menlo Park Investors Inc. [British Virgin Islands] |
| Meridian B.V.I. Limited [British Virgin Islands] |
| Silk Crest Corp. [British Virgin Islands] |
| Cheyenne Canada Limited Partnership [Canada] |
| CPC Canada Corporation [Canada] |
| CPC Canada Partnership 1 [Canada] |
| CPC Canada Partnership 2 [Canada] |
| The Raymond And Beverly Sackler Foundation [Canada] |

#94599161v1

**NAS2170**

| |
|---|
| Boiling Bay S.àr.l. [Luxembourg] |
| Neji S.àr.l. [Luxembourg] |
| Nerula S.àr.l. [Luxembourg] |
| Aquebogue Holdings Corporation [Mauritius] |
| Boiling Bay Corporation B.V. [Netherlands] |
| The Raymond and Beverly Sackler Foundation [United Kingdom] |
| The Raymond and Beverly Sackler 1988 Foundation [United Kingdom] |
| 1987 Fund LLC [DE] |
| 60 FPC Remainder (J) LLC [CT] |
| 60 FPC Residence (J) LLC [CT] |
| 95 Percent LLC [NY] |
| 1JM LLC [DE] |
| 2JM LLC [DE] |
| 3JM LLC [DE] |
| A5 Atlas LLC [DE] |
| Aim High Productions [DE] |
| Akutan Bay LLC [AK] |
| AJ Managed Holdings LLC [DE] |
| Alexander Road Capital LLC [NY] |
| Altaa LLC [DE] |
| Alta Ridge, LLC [DE] |
| Alta Ridge Capital LLC [DE] |
| Alta Ridge Investments LLC [DE] |
| Ankersea Limited Liability Company [DE] |
| Antler LLC [DE] |
| Azurite Holdings LLC [DE] |
| Bapricot LLC [NY] |
| Beryl Holdings LLC [DE] |
| Berrybrook LLC [NY] |
| BHPH LLC [DE] |
| Boiling Bay Corporation [DE] |
| Bowford Company [NY General Partnership] |
| BRC Special Partners LLC [DE] |
| Brook Holdings [NY General Partnership] |
| BRJ Fiduciary Management LLC [WY] |
| Calhoun Advisors LLC [DE] |
| Camelot Hotel Holdings LLC [DE] |
| Cap 1 LLC [DE] |
| Cap 2 LLC [DE] |
| Captain Leasing LLC [DE] |
| Cedar Cliff Fiduciary Management Inc. [WY] |
| CHBR LLC [DE] |
| Cheviot LLC [DE] |
| Cheyenne Energy Services LLC [OK] |
| Cheyenne International Corporation [OK] |
| Cheyenne Petroleum Company [NY Limited Partnership] |
| Chez Ellie LLC [DE] |
| China Sea Company, Inc. [DE] |
| China Sea Company L.P. [DE Limited Partnership] |

NAS2171

| |
|---|
| Cornice Fiduciary Management LLC [WY] |
| CPC 2001 LLC [DE] |
| CPT 1A PE-AA LLC [DE] |
| Crissaire Corporation [DE] |
| Crystal Fiduciary Company LLC [WY] |
| Curson Capital L.P. [CA] |
| Curson Dev LLC [DE] |
| CWC LLC [DE] |
| DABB LLC [DE] |
| Data LLC [WY] |
| Deckstone International Company [CT General Partnership] |
| DNKA LLC [DE] |
| Dravite Holdings LLC [DE] |
| Dolcedo LLC [DE] |
| Elbanite Holdings LLC [DE] |
| Exmoor Horn LLC [DE] |
| Expert Philanthropy LLC [DE] |
| Finnest Pharma LLC [DE] |
| Foley Properties LLC [DE] |
| G3A LLC [DE] |
| G3D LLC [DE] |
| G3R LLC [DE] |
| GGM Company [DE General Partnership] |
| Great Curve Films, LLC [DE] |
| Golden Gun Capital, LLC [CA] |
| Halesworth Corporation [DE] |
| Haystacks Investments Partners LLC [DE] |
| Haystacks Endure LLC [DE] |
| HCRB LLC [NY] |
| Hudson River (Delaware) Inc. [DE] |
| Hudson River Partners [NY General Partnership] |
| Inactive Holdings LLC [DE] |
| Interrogation 2008 LLC [NY] |
| Intrepidus Holdings LLC [DE] |
| IS-BEP LLC [DE] |
| JGT One LLC [DE] |
| JGT Three LLC [DE] |
| JGT Two LLC [DE] |
| Jibwind Company [NY] |
| JR Learning LLC [DE] |
| JV Fuel LLC [DE] |
| JWA Holdings LLC [DE] |
| K-BEP LP [DE] |
| K-BEP III L.P. [DE] |
| K-Neptune LLC [DE] |
| K-S Medical LLC [DE] |
| K-SR Holdings LLC [DE] |
| K-SR Performance LLC [DE] |
| K-Ventures I LLC [DE] |

NAS2172

| |
|---|
| KB Managed Holdings LLC [DE] (Formerly Haystacks HH LLC) |
| Kernite Holdings LLC [DE] |
| Kokino Corporation [DE] |
| Kokino LLC [DE] |
| Kokino Maj Holdings LLC [DE] |
| KRA Associates, Ltd. [CT General Partnership] |
| KRA Associates, Ltd. [DE] |
| Landings Financial Limited Liability Company [DE] |
| LBV Non-Profit, Inc. [DE] |
| LBV Inc. [DE] (Formerly Les Bouledogues Vigneronnes Inc.) |
| Laramide LLC [DE] |
| Level 4 Films LLC [NY] |
| Lightship Company [NY General Partnership] |
| Little Menlo LLC [DE] |
| Llama Bay LLC [DE] |
| Lodestone Limited Liability Company [DE] |
| Longbrook Corporation [DE] |
| M3C Holdings LLC [DE] |
| MD60 LLC [DE] |
| Meridian International, Ltd. [DE] |
| MCM Fiduciary Management LLC [DE] |
| Mill Shoals LLC [DE] |
| Minimalist Project LLC [NY] |
| MKL Haystacks Holdings LLC [DE] |
| Moxietec LLC [DE] |
| MXE LLC [DE] |
| MXE Leasing, LLC [DE] |
| NE SOL LLC [DE] |
| Newhall & Company, Ltd. [DE] |
| North Bay Associates [DE General Partnership] |
| North Bay Eagle LLC [DE] |
| North Bay Trust Company Inc. [OK] |
| OG Film LLC [NY] |
| OG Picture Inc. [NY] |
| Orchids LLC [DE] |
| Orcus Corporation [DE] |
| Otavite Holdings LLC [DE] |
| Pacific Partners Company [NY] |
| Paloma Partners L.P. [DE] |
| Park View Properties L.L.C. [DE] |
| PBC - AC [NY General Partnership] |
| PBC - ABS [NY General Partnership] |
| PBC - ABSJS [DE General Partnership] |
| PBC-ALF [NY General Partnership] |
| PBC - Alternative Investments [NY General Partnership] |
| PBC - Bear Stearns Healthcare Value Partners [NY General Partnership] |
| PBC - Brook Holdings [NY General Partnership] |
| PBC - BSM [NY General Partnership] |
| PBC - Centaur [NY General Partnership] |

NAS2173

| |
|---|
| PBC - Glenhill Capital [NY General Partnership] |
| PBC - GCLP [NY General Partnership] |
| PBC - Lone Cascade [NY General Partnership] |
| PBC – LP [NY General Partnership] |
| PBC – LR [NY General Partnership] |
| PBC - Marathon Structured Finance Fund [NY General Partnership] |
| PBC – PP [NY General Partnership] |
| PBC – R Domestic Fund [NY General Partnership] |
| PBC-RLCP [NY General Partnership] |
| PBC - Seneca Capital [NY General Partnership] |
| PBC - Silver Point Capital Fund [NY General Partnership] |
| PBC - Swiftcurrent Partners [NY General Partnership] |
| PBC - Visium Balanced Fund [NY General Partnership] |
| Piton Capital Management LLC [DE] |
| Piton Capital Partners LLC [DE] |
| Poco Bay Company [DE General Partnership] |
| Poco Bay Realty LLC [DE] |
| Poco Yield LLC [DE] |
| PSART LLC [DE] |
| QBEC LLC [DE] |
| R Napp Holdings LLC [DE] |
| Radstock Corporation [DE] |
| RAR Investments LLC [DE] |
| Raylodie LLC [NY] |
| Raymond and Beverly Sackler Foundation, Inc. [NY] |
| Raymond and Beverly Sackler Fund for the Arts and Sciences [DE] (Non-Profit) |
| RBMC Holdings LLC [DE] |
| RBS Institute LLC [DE] |
| Rees Holdings LLC [NY] |
| Refocus Foundation Inc. [DE] |
| RLC Affiliates LLC [DE] |
| RLC Affiliates [NY General Partnership] |
| RGT One LLC [DE] |
| RGT Three LLC [DE] |
| RGT Two LLC [DE] |
| Richard Sackler Family Foundation, Inc. [DE] |
| Riverside Seven LLC [DE] |
| Riviera Outlook LLC [DE] |
| RJ Dan LLC [DE] |
| Rockpoint Land LLC [CT] |
| Rockpoint Residence LLC [CT] |
| Rosebay Medical Company LLC [DE] |
| RSHRS LLC [DE] |
| Runham Corporation [DE] |
| RWA Holdings LLC [DE] |
| Sarbonne LLC [DE] |
| Seabright Partners [DE General Partnership] |
| Seadog Partners [DE General Partnership] |
| SFP Holdings LLC [DE] |

#94599161v1

**NAS2174**

| |
|---|
| Smokering LLC [DE] |
| SO 32 Mack LLC [DE] |
| SO-BFR LLC [DE] |
| SO-CCS LLC [DE] |
| SO-CSH LLC [DE] |
| SO-ESH LLC [DE] |
| SO-MSS LLC [DE] |
| SO-SHSH LLC [DE] |
| SO-WSH LLC [DE] |
| SO-WSR LLC [DE] |
| Solar SO Ware LLC [DE] |
| Solar SO Wotton LLC [DE] |
| Somac LLC [DE] |
| Southern Alta LLC [DE] |
| SR-GA RE LLC [DE] |
| SR VC TP LLC [DE] |
| SRMS LLC [DE] |
| Standard Pharmaceuticals Corporation [DE] |
| Stibnite Holdings LLC [DE] |
| St. Lawrence Associates [NY General Partnership] |
| Summer Road LLC [DE] |
| Superior View L.L.C. [DE] |
| Swipe Right LLC [DE] |
| Tacitus Therapeutics Inc. [DE] |
| The Bouncer Foundation, Inc. [DE] |
| The Lottery, LLC [DE] |
| The Neuroendocrine Tumor Research Foundation [DE] (Non-Profit) |
| Temagami LLC [DE] |
| TPART LLC [DE] |
| Tradewind Company [NY General Partnership] |
| Tremolite Holdings LLC [DE] |
| TQD 1 LLC [DE] |
| TQD 2 LLC [DE] |
| Tract SRMS LLC [DE] |
| Triangle Holding LLC [DE] |
| Tukiewings LLC [DE] |
| Twin Springs Holdings [NY General Partnership] |
| UNCH Corp. [DE] |
| UNCHADA LLC [DE] |
| Unstable Elements LLC [DE] |
| Valdiva Films LLC [DE] |
| Verto Institute LLC [DE] |
| VLS LLC [DE] |
| WA Canada L.P. [DE] |
| Wasatch LLC [DE] |
| Westward Home LLC [DE] |
| Whilton Corporation [DE] |
| WP Leasing LLC [DE] |
| Yamashiro Development LLC [DE] |

NAS2175

| |
|---|
| Mundipharma (Argentina) S.r.l. [Argentina] |
| Mundipharma Pharmaceuticals Argentina S.r.l. [Argentina] |
| Mundipharma ANZ Pty. Limited [Australia] |
| Mundipharma Healthcare Pty. Limited [Australia] |
| Mundipharma Oncology Pty. Limited [Australia] |
| Mundipharma Pty Limited [Australia] |
| Mundipharma GesmbH [Austria] |
| Mundipharma Medical CEE GmbH [Austria] |
| Bangladesh Beauty Products Private Limited [Bangladesh] |
| Mundipharma Bangladesh Private Limited [Bangladesh] |
| Mundipharma Trading Bangladesh Private Limited [Bangladesh] |
| Mundipharma BV [Belgium] |
| Mundipharma Pharmaceuticals Belgium BV [Belgium] |
| Bermag Limited [Bermuda] |
| L.P. Clover Limited [Bermuda] |
| MN Consulting LLC [Bermuda] |
| MNB Company [Bermuda] |
| Mundipharma Company [Bermuda] |
| Mundipharma International Corporation Limited [Bermuda] |
| Mundipharma International Holdings Limited [Bermuda] |
| Mundipharma International Limited [Bermuda] |
| Mundipharma Laboratories Limited [Bermuda] |
| Mundipharma Limited [Bermuda] |
| Mundipharma Medical Company [Bermuda] |
| Mundipharma Ophthalmology Corporation Limited [Bermuda] |
| Mundipharma Ophthalmology Products Limited [Bermuda] |
| Mundipharma Pharmaceutical Company [Bermuda] |
| Mundipharma Research Company Limited [Bermuda] |
| Par-La-Ville Properties Limited [Bermuda] |
| SICO Ltd. [Bermuda] |
| Transworld Pharma Limited [Bermuda] |
| Mundipharma Brasil Productos Médicos e Farmacêuticos Ltda. [Brazil] |
| Boetti Corporation [British Virgin Islands] |
| Boldini Corporation [British Virgin Islands] |
| Clovio Corporation [British Virgin Islands] |
| Evening Star Services Limited [British Virgin Islands] |
| Hayez Corporation [British Virgin Islands] |
| IAF Limited [British Virgin Islands] |
| Lake Claire Investments Limited [British Virgin Islands] |
| Maltus Corporation [British Virgin Islands] |
| Mexcus Corporation [British Virgin Islands] |
| Mundipharma GesmbH (Bulgarian branch of Austrian company) [Bulgaria] |
| Mundipharma Medical S.ar.l. (Bulgaria Branch of Swiss company) [Bulgaria] |
| Bard Pharmaceuticals (1990) Inc. [Canada] |
| Elvium Life Sciences GP Inc. [Canada] |
| Elvium Life Sciences Limited Partnership [Canada] |
| Elvium ULC [Canada] |
| Mundipharma International (Canada) Inc. [Canada] |
| Purdue Frederick Inc. [Canada] |

#94599161v1

**NAS2176**

| |
|---|
| Purdue Pharma [Canada] |
| Purdue Pharma Inc. [Canada] |
| Purdue Pharma ULC [Canada] |
| Mundipharma Pharmaceuticals (Chile) Limitada [Chile] |
| Mundipharma (China) Pharmaceutical Company Limited [China] |
| Mundipharma (Shanghai) International Trade Company Limited [China] |
| Wuhu Haitong Kanghong Pharmaceutical Trading Co. Ltd. [China] |
| Mundipharma (Colombia) S.A.S. [Colombia] |
| Mundipharma Pharmaceuticals Limited [Cyprus] |
| Mundipharma GesmbH (Czech Republic Branch of Austrian company) [Czech Republic] |
| Mundipharma A/S [Denmark] |
| Mundipharma FZ-LLC [Dubai] |
| Mundipharma Middle East FZ-LLC [Dubai] |
| Mundipharma Egypt LLC [Egypt] |
| Scientific Office of Mundipharma MEA GmbH [Egypt] |
| Mundipharma Oy [Finland] |
| Mundipharma Management S.ar.l. [France] |
| Mundipharma SAS [France] |
| Krugmann GmbH [Germany] |
| Mundichemie GmbH [Germany] |
| Mundipharma Biologics GmbH [Germany] |
| Mundipharma Deutschland GmbH & Co. KG [Germany] |
| Mundipharma GmbH [Germany] |
| Mundipharma Medical GmbH [Germany] |
| Mundipharma Research GmbH & Co. KG [Germany] |
| Mundipharma Research Verwaltungs GmbH [Germany] |
| Mundipharma Verwaltungsgesellschaft mbH [Germany] |
| Mundipharma (Hong Kong) Limited [Hong Kong] |
| Mundipharma Medical GmbH (Hungary Branch of Swiss Company) [Hungary] |
| Modi-Mundipharma Beauty Products Private Limited [India] |
| Modi-Mundipharma Healthcare Private Limited [India] |
| Modi-Mundipharma Private Limited [India] |
| Win-Healthcare Private Limited [India] |
| Win-Medicare Private Limited [India] |
| Mundipharma Laboratories GmbH (Indonesian Branch of Swiss Company) [Indonesia] |
| PT. Mundipharma Healthcare Indonesia [Indonesia] |
| Mundipharma Corporation (Ireland) Limited [Ireland] |
| Mundipharma Pharmaceuticals Limited [Ireland] |
| Peer Hotzvim Ltd. [Israel] |
| Rafa Laboratories Limited [Israel] |
| Mundipharma Pharmaceuticals S.r.l. [Italy] |
| Mundipharma Kabushiki Kaishe [Japan] |
| Mundipharma TK [Japan] |
| Mundipharma Medical CEE GmbH (Kazakhstan branch of Austrian company merged with Mundipharma GesmbH) [Kazakhstan] |
| Mundipharma Distribution Limited [Korea] |
| Mundipharma Korea Limited [Korea] |
| Accardi S.àr.l. [Luxembourg] |
| Bulla S.àr.l. [Luxembourg] |

#94599161v1

**NAS2177**

| |
|---|
| Euro-Celtique S.A. [Luxembourg] |
| Filti S.àr.l. [Luxembourg] |
| Flira S.àr.l. [Luxembourg] |
| Ind S.àr.l. [Luxembourg] |
| Irey S.àr.l. [Luxembourg] |
| Lucien Holdings S.àr.l. [Luxembourg] |
| Lymit Holdings S.àr.l. [Luxembourg] |
| Mundipharma International Services S.ar.l. [Luxembourg] |
| Nitid S.àr.l. [Luxembourg] |
| Nontag S.àr.l. [Luxembourg] |
| Porthos S.àr.l. [Luxembourg] |
| Sofy S.àr.l. [Luxembourg] |
| Songol S.àr.l. [Luxembourg] |
| Sonti S.àr.l. [Luxembourg] |
| Mundipharma Pharmaceuticals Sdn. Bhd. [Malaysia] |
| Cutchogue Holdings Limited [Mauritius] |
| Mundipharma Ltd. [Mauritius] |
| Mundipharma de Mexico, S. de R.L. de C.V. [Mexico] |
| Mundipharma Maroc [Morocco] |
| Mundipharma (Myanmar) Co., Limited [Myanmar] |
| Accardi B.V. [Netherlands] |
| Alfa Generics B.V. [Netherlands] |
| Arsago B.V. [Netherlands] |
| Bradenton Products B.V. [Netherlands] |
| Ladenburg B.V. [Netherlands] |
| Mundipharma B.V. [Netherlands] |
| Mundipharma Bradenton B.V. [Netherlands] |
| Mundipharma DC B.V. [Netherlands] |
| Mundipharma Pharmaceuticals B.V. [Netherlands] |
| Tacca B.V. [Netherlands] |
| Tenna B.V. [Netherlands] |
| Vaccaro B.V. [Netherlands] |
| Venusti B.V. [Netherlands] |
| Mundipharma New Zealand Limited [New Zealand] |
| Mundipharma A.S. [Norway] |
| Mundipharma Distribution GmbH (Philippine Branch of Swiss Company) [Philippines] |
| Mundipharma Polska SP. Z.O.O. [Poland] |
| Mundipharma Farmaceutica LDA. [Portugal] |
| Mundipharma GesmbH (Russian Branch of Austrian company) [Russia] |
| Technical Scientific Office of Mundipharma Near East GmbH [Saudi Arabia] |
| Marnine Holdings Pte. Limited [Singapore] |
| Martone Holdings Pte. Limited [Singapore] |
| Mundipharma Development Pte. Limited [Singapore] |
| Mundipharma Healthcare Pte. Limited [Singapore] |
| Mundipharma IT Services Pte. Limited [Singapore] |
| Mundipharma Manufacturing Pte. Limited [Singapore] |
| Mundipharma Pharmaceuticals Private Limited [Singapore] |
| Mundipharma Pte Limited [Singapore] |
| Mundipharma Singapore Holding Pte. Limited [Singapore] |

| |
|---|
| Mundipharma GesmbH (Slovak Republic Branch of Austrian company) [Slovak Republic] |
| Mundipharma (Proprietary) Limited [South Africa] |
| Mundipharma Biologics S.L. [Spain] |
| Mundipharma Pharmaceuticals S.L. [Spain] |
| Beauty Products Lanka (Private) Limited [Sri Lanka] |
| Mundipharma AB [Sweden] |
| Mundipharma AG [Switzerland] |
| Mundipharma Distribution GmbH [Switzerland] |
| Mundipharma EDO GmbH [Switzerland] |
| Mundipharma Holding AG [Switzerland] |
| Mundipharma International Services GmbH [Switzerland] |
| Mundipharma IT GmbH [Switzerland] |
| Mundipharma IT Services GmbH [Switzerland] |
| Mundipharma Laboratories GmbH [Switzerland] |
| Mundipharma LATAM GmbH [Switzerland] |
| Mundipharma MEA GmbH [Switzerland] |
| Mundipharma Medical Company (Swiss branch of Mundipharma Medical Company, Bermuda) [Switzerland] |
| Mundipharma Medical GmbH |
| Mundipharma Near East GmbH [Switzerland] |
| Taiwan Mundipharma Pharmaceuticals Limited [Taiwan] |
| Mundipharma (Thailand) Limited [Thailand] |
| Mundipharma Pharmaceuticals Industry and Trade Limited [Turkey] |
| Bard Pharmaceuticals Limited [United Kingdom] |
| Clinical Designs Limited [United Kingdom] |
| Mundibiopharma Limited [United Kingdom] |
| Mundipharma Corporation Limited [United Kingdom] |
| Mundipharma International Limited [United Kingdom] |
| Mundipharma International Services Limited [United Kingdom] |
| Mundipharma International Technical Operations Limited [United Kingdom] |
| Mundipharma IT Services Limited [United Kingdom] |
| Mundipharma Limited [United Kingdom] |
| Mundipharma Medical Company Limited [United Kingdom] |
| Mundipharma Research Limited [United Kingdom] |
| Napp Laboratories Limited [United Kingdom] |
| Napp Pension Trustees Limited [United Kingdom] |
| Napp Pharmaceutical Group Limited [United Kingdom] |
| Napp Pharmaceutical Holdings Limited [United Kingdom] |
| Napp Pharmaceuticals Limited [United Kingdom] |
| Napp Research Centre Limited [United Kingdom] |
| Paineurope Limited [United Kingdom] |
| Private Medical Trustees Limited [United Kingdom] |
| Qdem Pharmaceuticals Limited [United Kingdom] |
| The Napp Educational Foundation [United Kingdom] |
| Avrio Health Inc. [United States] |
| Caas Leasing, Inc. [United States] |
| Connecticut Avenue Realty Co., Inc. [United States] |
| Coventry Technologies L.P. [United States] |
| E.R.G. Realty, Inc. [United States] |

| |
|---|
| HS Holdings Inc. [United States] |
| IAF Corporation [United States] |
| Midvale Chemical Company [United States] |
| MNP Consulting Limited [United States] |
| Mundipharma Biologics Inc. [United States] |
| Mundipharma Biologics L.P. [United States] |
| Mundipharma Healthcare Corporation [United States] |
| Mundipharma Healthcare LLC [United States] |
| Mundipharma Inc. [United States] |
| Mundipharma International Limited [United States] |
| Mundipharma International Technical Operations Limited [United States] |
| Mundipharma IT Services Inc. [United States] |
| Mundipharma Ltd. [United States] |
| Mundipharma Pharmaceuticals Inc. [United States] |
| Nappwood Land Corporation [United States] |
| New Suffolk Holdings LLP [United States] |
| One Stamford Land Inc. [United States] |
| One Stamford Realty L.P. [United States] |
| Pharma Associates Inc. [United States] |
| Pharma Associates L.P. [United States] |
| Pharma Technologies Inc. [United States] |
| Pharmaceutical Research Associates, Inc. [United States] |
| Pharmaceutical Research Associates, Inc. [United States] |
| PRA Holdings, Inc. [United States] |
| Purdue BioPharma Inc. [United States] |
| Purdue BioPharma L.P. [United States] |
| Purdue Healthcare Technologies Inc. [United States] |
| Purdue Healthcare Technologies L.P. [United States] |
| Purdue Pharma Technologies Inc. [United States] |
| Purdue Pharmaceutical Products Inc. [United States] |
| Rhodes Pharmaceuticals Inc. [United States] |
| Rhodes Technologies Inc. [United States] |
| RSJ Company L.P. [United States] |
| Sawwood Land Corporation [United States] |
| Signutra Inc. [United States] |
| The P.F. Betadine Products Co. Inc. [United States] |
| The P.F. Laboratories, Inc. [United States] |
| The Purdue Frederick Company Inc. d/b/a The Purdue Frederick Company [United States] |
| The Seven Hundred Realty Corporation [United States] |
| The Terramar Foundation, Inc. [United States] |
| TXP Services Inc. [United States] |
| Vitamerican Chemicals, Inc. [United States] |
| Vitamerican Corporation [United States] |
| The Representative Office of Mundipharma Pharmaceuticals Pte Limited in Ho Chi Minh City [Vietnam] |
| Milbank LLP |
| Joseph Hage Aaronson LLC |
| Bracewell LLP |
| Huron Consulting Services LLC |

NAS2180

| |
|---|
| Goldin Solutions |
| Luther Strange & Associates, LLC |
| Impact Trial Consulting LLC |
| Norton Rose Fulbright US LLP |
| Paul, Weiss, Rifkind, Wharton & Garrison LLP |
| Consilio |
| Innovative Discovery, LLC |
| Solomon Ward Seidenwurm Smith, LLP |

**NAS2181**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
|  | : |  |
| In re: | : | Chapter 11 |
|  | : |  |
| PURDUE PHARMA L.P., *et al*., | : | Case No. 19-23649 (RDD) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |

## MEDIATOR'S REPORT

Kenneth R. Feinberg, appointed co-mediator in the chapter 11 cases (the "Chapter 11 Cases") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), respectfully submits this additional report in accordance with paragraph 17 of the Mediation Order.

## BACKGROUND

1. On September 23, 2020, I and my co-mediator, Layn Phillips, provided this Court with our Mediators' Report (Docket Number 1716) (the "First Mediators' Report").

2. In paragraph 11 of the First Mediators' Report, we stated that "legal fees for each Private Claimant group will be paid exclusively out of its agreed distribution or by other agreements with individual claimants (and not by the estate), although the *application of legal fees remains to be resolved between the Non-Federal Public Claimants and each of the Private Claimant groups*." (emphasis added).

3. In paragraphs 13 and 14 of the First Mediators' Report, we indicated that certain open issues remained unresolved.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF L.P. (0495), SVC Pharma L.P. (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

NAS2182

4.      In paragraph 15, we agreed to remain available throughout September (and, if necessary, longer) to help facilitate resolution of open issues (the "Open Issues").

5.      Since September 2020, I have participated in numerous conference calls and zoom sessions, as well as some in-person meetings, with regard to both the Open Issues as well as certain other issues that arose since September 23, 2020.

6.      I have been informed that the resolution of all of these issues, which in many instances were reached during negotiations and informal mediation since September 23, 2020 (the "Informal Mediation"), have now been documented in a plan of reorganization filed by the Debtors, most recently as of July 14, 2021 (the "Plan").

7.      I provide this report (the "Final Mediator's Report") to give the Court some additional information regarding the outcome of the Informal Mediation.

## NAS CHILDREN/AD HOC GROUP OF PI

8.       First, I participated in numerous conference calls and zoom sessions with the Ad Hoc Group of NAS Children and the Ad Hoc Group of PI Victims, as well as the Debtors, the Official Committee of Unsecured Creditors, the Ad Hoc Committee of Consenting Claimants, the Non-Consenting State Group, and the Multi-State Governmental Entities Group, in an effort to resolve the potential objection to a plan of reorganization that would have been brought by the Ad Hoc Group of NAS Children.

9.      After months of arms'-length, good-faith negotiations, the NAS Ad Hoc Group and the Ad Hoc Group of PI Victims agreed to a resolution pursuant to which a certain portion of the funds that were being provided to all Personal Injury victims would be earmarked solely for the benefit of NAS Children.

10.      I have been informed that this resolution is documented in the Plan.

2

**NAS2183**

11.     I believe this resolution is fair and appropriate, and consistent with my understanding of what is a reasonable award for certain types of personal injury victims within a wider group of general personal injury victims.

## PUBLIC SCHOOLS

12.     Second, I participated in numerous conference calls and zoom sessions with a nationwide Ad Hoc Group of Public Schools and the Ad Hoc Committee of Consenting Claimants, as well as the Debtors, the Official Committee of Unsecured Creditors, and the Multi-State Governmental Entities Group, in an effort to resolve the potential objection to a plan of reorganization that would have been brought by the Ad Hoc Group of Public Schools.

13.     In addition, in early June, I participated in a one day mediation session with these groups in a further effort to reach a potential resolution.

14.      After months of arms'-length, good faith negotiations, the Ad Hoc Committee of Consenting Claimants, the Multi-State Governmental Entities Group, and the Ad Hoc Group of Public Schools agreed to a resolution pursuant to which a certain portion of the funds that previously were going to be distributed to states and municipalities will now be earmarked solely for a Public Schools' Special Education Initiative.

15.     I have been informed that this resolution is documented in the Plan.

16.     I believe this resolution is fair and appropriate.

## CONTINGENCY FEES/COMMON BENEFIT

17.     Third, I participated in numerous conference calls and zoom sessions with, among others, the Ad Hoc Committee of Consenting Claimants, the Non-Consenting State Group, the Multi-State Governmental Entities Group, the Tribal Ad Hoc Group, the Third Party Payor Mediation Participants, the Hospital Ad Hoc Group, the NAS Children Ad Hoc Group, the PI Ad

NAS2184

Hoc Group, the Debtors, and the Official Committee of Unsecured Creditors regarding the issue of non-bankruptcy professional attorneys' fees.

18.     Specifically, over several months, I engaged in good-faith, arms'-length discussions and mediations with the parties regarding how to address (a) private and public creditor contractual contingency fees, (b) private creditor group counsel fees, and (c) potential common benefit assessments of private creditor counsel to the MDL common benefit fund. The parties also engaged with each other directly in numerous negotiations over this period.

19.     These negotiations covered many months, involved numerous creative and complicated proposals, and were conducted with every party named above – both in groups and individually. The negotiations were hard-fought, sometimes contentious, and conducted in the utmost good faith. I would note that many discussions and negotiations were conducted outside the presence of the mediator.

20.     Settlements of these issues were reached seriatim and not simultaneously. At the conclusion of these negotiations and discussions, compromises and settlements were reached between and among all parties, regarding all of these fee-related issues.

21.     All parties have informed the mediator that these various fee resolutions are an integral and non-severable part of the overall settlements on allocation among public and private claimants, and that the settlements reached in allocation are dependent on the various agreements reached pertaining to contingency fees and common benefit funding. As the mediator, I know of no facts that would make me doubt the veracity of such representations.

22.     I have been informed that these agreements are documented in the Plan.

23.     In my opinion, based on my decades of experience and involvement in mediating mass tort litigations and settlements, I believe that the contingency fee resolutions, as well as the

4

NAS2185

common benefit assessments, reached in this mediation, are consistent with fee awards, arrangements, and assessments agreed upon in other similar mass tort situations, and properly reflect a fair and reasonable settlement based on the work engaged in by all mediation participants.

24.     I believe that the private side group counsel fee settlements, reached between the Ad Hoc Group of Hospitals and the Public Side Claimants, as well as the Ad Hoc Group of NAS Children and the Public Side Claimants, are consistent with my experience and involvement in similar mass tort situations where certain contingency fee counsel assume the responsibility of negotiating awards for a much larger group of constituents, after engaging in years of pre-settlement work.  I believe that the percentages agreed upon in this matter are well within the range I am familiar with for comparable situations.

25.     I further believe that the common benefit assessments are reasonable, reflecting the substantial work of the public-creditor contingency-fee counsel in federal and state court litigation over the past several years (in some cases since 2012). This work by the public-creditor contingency-fee counsel has benefited the nonpublic-creditor opioid claimant constituents. I would note that I have been informed that the common benefit assessment being sought in the currently pending Opioid Multi-District Litigation in Ohio is higher (7%) than the agreed upon percentage in this matter.

26.     Finally, in my experience, reaching agreement pertaining to contingency fees and common benefit assessments is often an integral and necessary part of reaching an agreement concerning overall allocation.  This situation is no different.  I, therefore, conclude that all parties in this mediation should agree that the fee settlements documented in the Plan are fair, reasonable, appropriate, and should be deemed to be an integral part of the Plan.

NAS2186

Dated: New York, New York

July 28, 2021

_____

Kenneth R. Feinberg

NAS2187

## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **PURDUE PHARMA L.P.,** *et al.*, | : | **Case No. 19-23649 (RDD)** |
| | : | |
| Debtors.[1] | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------- x

### FINAL DECLARATION OF CHRISTINA PULLO
### OF PRIME CLERK LLC REGARDING THE SOLICITATION
### OF VOTES AND TABULATION OF BALLOTS CAST ON THE
### FIFTH AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION OF
### PURDUE PHARMA L.P. AND ITS AFFILIATED DEBTORS

I, Christina Pullo, declare, under the penalty of perjury:

1.     I am a Managing Director and the Head of Corporate Actions at Prime Clerk LLC ("Prime Clerk"),[2] whose principal offices are located at One Grand Central Place, 60 East 42nd Street, Suite 1440, New York, New York 10165.  I am over the age of eighteen years and not a party to the above-captioned action.  Unless otherwise noted, I have personal knowledge of the facts set forth herein.

2.     On July 26, 2021, I submitted the *Preliminary Declaration of Christina Pullo of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cast on the Fifth*

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

[2]  All capitalized terms used by not otherwise defined herein have the meanings ascribed to them in the Plan or Disclosure Statement Order (each as defined below), as applicable.

**NAS2188**

*Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 3327] (the "Preliminary Voting Declaration") with respect to the solicitation of votes and the preliminary tabulation of Ballots cast on the *Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and its Affiliated Debtors* dated June 3, 2021 [Dkt. No. 2982] (as may be amended, supplemented, or modified from time to time, including all exhibits and schedules thereto, the "Plan"). Since the filing of the Preliminary Voting Declaration, Prime Clerk finalized the tabulation of Ballots casts on the Plan. This declaration (the "Final Voting Declaration") replaces and supersedes the Preliminary Voting Declaration in its entirety.

3. Except as otherwise noted, all facts set forth herein are based on my personal knowledge, knowledge that I acquired from individuals under my supervision, knowledge obtained from the Debtors or their counsel, and my review of relevant documents. I am authorized to submit this Final Voting Declaration on behalf of Prime Clerk. If I were called to testify, I could and would testify competently as to the facts set forth herein.

4. This Court authorized Prime Clerk's retention as the claims and noticing agent to the above-captioned debtors and debtors in possession (collectively, the "Debtors") pursuant to the *Order Authorizing Retention and Appointment of Prime Clerk LLC as Claims and Noticing Agent for the Debtors*, dated September 18, 2019 [Dkt. No. 60], and as administrative advisor to the Debtors pursuant to the *Order Authorizing Employment and Retention of Prime Clerk LLC as Administrative Advisor* Nunc Pro Tunc *to the Petition Date* [Dkt. No. 531], dated November 21, 2019 (together, the "Retention Orders"). The Retention Orders authorize Prime Clerk to assist the Debtors with, among other things, the processing of Claims, the service of solicitation materials, and the tabulation of votes cast to accept or reject the Plan.

**NAS2189**

**Service and Transmittal of Solicitation Packages and the Tabulation Process**

5. Pursuant to the *Order Approving (I) Disclosure Statement for Fifth Amended Chapter 11 Plan, (II) Solicitation and Voting Procedures, (III) Forms of Ballots, Notices, and Notice Procedures in Connection Therewith, and (IV) Certain Dates with Respect Thereto*, dated June 3, 2021 [Dkt. No. 2988] (the "Disclosure Statement Order"), the Court established procedures to solicit votes from, and tabulate Ballots submitted by, holders of Claims entitled to vote on the Plan, which were attached as Exhibit 1 to the Disclosure Statement Order (the "Solicitation and Voting Procedures"). Prime Clerk adhered to the Solicitation and Voting Procedures outlined in the Disclosure Statement Order and, among other things, distributed Solicitation Packages (including Ballots) to parties entitled to vote on the Plan. These efforts included the use of the Solicitation Directive approved by the Court as part of the Disclosure Statement Order. I supervised the solicitation and tabulation performed by Prime Clerk's employees.

6. Pursuant to the Disclosure Statement Order and Solicitation and Voting Procedures, the Court established March 10, 2021 as the record date (the "Voting Record Date") for determining which creditors were entitled to vote on the Plan. It is my understanding that pursuant to the Plan and the Solicitation and Voting Procedures, only holders of Claims as of the Voting Record Date in the following classes were entitled to vote to accept or reject the Plan (the "Voting Classes"):

*[Chart of Voting Classes Included on Following Page]*

NAS2190

| Plan Class | Class Description |
|:---:|:---:|
| 3 | Federal Government Unsecured Claims |
| 4 | Non-Federal Domestic Governmental Claims |
| 5 | Tribe Claims |
| 6 | Hospital Claims |
| 7 | Third-Party Payor Claims |
| 8 | Ratepayer Claims |
| 9 | NAS Monitoring Claims |
| 10(a) | NAS PI Claims |
| 10(b) | Non-NAS PI Claims |
| 11(c) | Other General Unsecured Claims |

No other classes were entitled to vote on the Plan.

7. In accordance with the Solicitation and Voting Procedures, Prime Clerk worked closely with the Debtors' advisors to identify the holders of Claims in the Voting Classes as of the Voting Record Date who were entitled to vote, and to coordinate the distribution of Solicitation Packages to these holders. It is my understanding that pursuant to the Solicitation and Voting Procedures, to be entitled to vote a Claim in one of the Voting Classes (and as long as no other superseding tabulation rule applies), a claimant was required to file a proof of claim (i) by the applicable bar date (i.e., possess a "timely filed" Claim) and (ii) before the Voting Record Date. Additionally, only the noncontingent, liquidated, and undisputed portion of the asserted Claim was entitled to vote. The Solicitation and Voting Procedures further provide that an amending Claim in a Voting Class that was filed after the applicable bar date and before the Voting Record Date that amends a timely filed Claim is to be tabulated consistent with the Solicitation and Voting Procedures. Finally, pursuant to the Solicitation and Voting Procedures, any Claims (amended or otherwise) filed after the Voting Record Date shall not be considered for tabulation purposes.

**NAS2191**

8.      Based on my review of the official register of Claims for purposes of the solicitation process and as advised by Prime Clerk employees under my direction, Prime Clerk received over 615,000 timely filed proofs of claim.  More than 550,000 of those proofs of claim, approximately 90% of the total, were unliquidated.  Approximately 65,000 proofs of claim (approximately 10% of the total filed proofs of claim) asserted a Claim in a liquidated amount, with such asserted liquidated claims aggregating to over $40 trillion (excluding a single proof of claim asserting $100 trillion in damages).  Below is a chart setting forth the number of Claims classified within each Voting Class:

| Plan Class | Class Description | Number of Claims |
|---|---|---|
| 3 | Federal Government Unsecured Claims | 6 |
| 4 | Non-Federal Domestic Governmental Claims | 7,645 |
| 5 | Tribe Claims | 401 |
| 6 | Hospital Claims | 1,197 |
| 7 | Third-Party Payor Claims | 467,121 |
| 8 | Ratepayer Claims | 31 |
| 9 | NAS Monitoring Claims | 3,439 |
| 10(a) | NAS PI Claims | 6,553 |
| 10(b) | Non-NAS PI Claims | 130,488 |
| 11(c) | Other General Unsecured Claims | 1,313 |

9.      A detailed description of Prime Clerk's distribution of Solicitation Packages is set forth in Prime Clerk's *Affidavit of Service of Solicitation Materials* [Dkt. No. 3319] and *Supplemental Affidavit of Service of Solicitation Materials* [Dkt. No. 3351].

10.      In accordance with the Solicitation and Voting Procedures, Prime Clerk received, reviewed, determined the validity of, and tabulated the Ballots submitted to vote on the Plan.  Each Ballot submitted to Prime Clerk was date-stamped, scanned (if received in physical form), assigned

**NAS2192**

a ballot number, entered into Prime Clerk's proprietary voting database, and processed in accordance with the Solicitation and Voting Procedures.  To be included in the tabulation results as valid, a Ballot must have been (i) properly completed pursuant to the Solicitation and Voting Procedures, (ii) executed by the relevant holder entitled to vote on the Plan (or such holder's authorized representative), (iii) returned to Prime Clerk via an approved method of delivery set forth in the Solicitation and Voting Procedures, and (iv) received by Prime Clerk by 4:00 p.m. (prevailing Eastern Time) on July 16, 2021 (the "Voting Deadline"), except to the extent such Voting Deadline was extended by the Debtors in their sole discretion.[3]

11.     All Ballots cast by holders of Claims entitled to vote in the Voting Classes and received by Prime Clerk on or before the Voting Deadline (or such later date as extended by the Debtors in their sole discretion) and determined to be valid based on the standards outlined above have been tabulated pursuant to the Solicitation and Voting Procedures.  In accordance with the Solicitation and Voting Procedures, Prime Clerk performed a review of the votes submitted to isolate any potential duplicate votes, including, but not limited to, Eligible Clients that may have submitted votes through more than one law firm's Master Ballot and/or Eligible Clients that submitted a vote directly to Prime Clerk as well as through a law firm's Master Ballot on account

---

[3] It is my understanding that, in accordance with the Solicitation and Voting Procedures, the Voting Deadline was extended by the Debtors from July 14, 2021 at 4:00 p.m. (prevailing Eastern Time) to July 16, 2021 at 4:00 p.m. (prevailing Eastern Time) for all holders of Claims entitled to vote in the Voting Classes, and further extended by the Debtors to July 19 at 4:00 p.m. (prevailing Eastern Time) for holders of Claims within Classes 3, 4, and 5.  The above referenced Voting Deadline extensions are detailed within the *Notice of Extension of Voting Deadline* dated July 13, 2021 [Dkt. No. 3166] and the *Notice of Extension of Voting Deadline* dated July 15, 2021 [Dkt. No. 3231].

Additionally, at the direction of the Debtors, Prime Clerk included in the voting results for Class 10(b) Non-NAS PI Claims a Master Ballot that was submitted after July 16, 2021 at 4:00 p.m. (prevailing Eastern Time) but before July 19, 2021 at 4:00 p.m. (prevailing Eastern Time), notwithstanding that the law firm that submitted such Master Ballot did not submit a Solicitation Directive to Prime Clerk in accordance with the Solicitation and Voting Procedures.  This Master Ballot contained 4,168 votes to accept the Plan and 28 votes to reject the Plan.

of the same Claim. Prime Clerk identified and removed from the tabulation any instances in which more than one vote was submitted on account of the same Proof of Claim.[4]

12.     The final tabulation of votes cast by timely and properly completed Ballots received by Prime Clerk is attached hereto as **Exhibit A**.

13.     At the request of Debtors' counsel, attached as **Exhibit B** is a tabulation of voting results for a hypothetical voting class comprising all forty-eight (48) states that cast votes.[5]

14.     Pursuant to the Solicitation and Voting Procedures, attached hereto as **Exhibit C** is a report of Irregular Ballots (as defined in the Solicitation and Voting Procedures) excluded from the final tabulation. **Exhibit C** delineates each Irregular Ballot and provides the reason for such Irregular Ballot's exclusion from tabulation.[6]

*[Remainder of Page Intentionally Left Blank]*

---

[4] Separately, Prime Clerk identified certain instances in which Prime Clerk received votes on account of multiple Claims otherwise eligible to vote that were filed by (or on behalf of) claimants with identical names (e.g., two or more claims filed for "Jane Doe" cast a vote) (the "Same Name Votes"). At the Debtors' instruction, Prime Clerk included all Same Name Votes in the tabulation.

[5] Alternatively, if the hypothetical voting class comprised forty-eight (48) states as well as the District of Columbia, the Commonwealth of Puerto Rico, the U.S. Virgin Islands, the territory of Guam, and the Commonwealth of the Northern Mariana Islands (all of which cast votes), the voting results would be 42 claims accepting (79.25%) and 11 claims rejecting (20.75%) in both amount and number of those voting.

[6] At the direction of the Debtors, Prime Clerk has redacted from **Exhibit C** the names of any States that submitted votes that were ultimately excluded from the final tabulation and listed on the report of Irregular Ballots. In lieu of identifying each such State by name, Prime Clerk has included the unique identification number assigned to the State's submitted ballot.

**NAS2194**

To the best of my knowledge, information and belief, I declare under penalty of perjury that the foregoing information concerning the distribution, submission and tabulation of Ballots in connection with the Plan is true and correct.

Dated: August 2, 2021

*/s/ Christina Pullo*
Christina Pullo

NAS2195

**Exhibit A**

NAS2196

**Purdue Pharma L.P.,** *et al.*
**Exhibit A - Final Voting Results**

| Class | Class Description | Number Accepting % | Number Rejecting % | Amount Accepting % | Amount Rejecting % | Class Voting Result |
|---|---|---|---|---|---|---|
| 3 | Federal Government Unsecured Claims | No Ballot submitted by a holder entitled to vote in the class | | | | Deemed to Accept[7] |
| 4 | Non-Federal Domestic Governmental Claims | 4,770 | 154 | $4,770.00 | $154.00 | Accept |
| | | 96.87% | 3.13% | 96.87% | 3.13% | |
| 5 | Tribe Claims | 201 | 8 | $201.00 | $8.00 | Accept |
| | | 96.17% | 3.83% | 96.17% | 3.83% | |
| 6 | Hospital Claims | 895 | 119 | $895.00 | $119.00 | Accept |
| | | 88.26% | 11.74% | 88.26% | 11.74% | |
| 7 | Third-Party Payor Claims | 42,570 | 2,942 | $42,570.00 | $2,942.00 | Accept |
| | | 93.54% | 6.46% | 93.54% | 6.46% | |
| 8 | Ratepayer Claims | 31 | 0 | $31.00 | $0.00 | Accept |
| | | 100% | 0% | 100% | 0% | |
| 9 | NAS Monitoring Claims | 3,220 | 7 | $3,220.00 | $7.00 | Accept |
| | | 99.78% | 0.22% | 99.78% | 0.22% | |
| 10(a) | NAS PI Claims | 4,237 | 83 | $4,237.00 | $83.00 | Accept |
| | | 98.08% | 1.92% | 98.08% | 1.92% | |
| 10(b) | Non-NAS PI Claims | 58,196 | 2,600 | $58,196.00 | $2,600.00 | Accept |
| | | 95.72% | 4.28% | 95.72% | 4.28% | |
| 11(c) | Other General Unsecured Claims | 250 | 18 | $31,775,120.20 | $1,171,269.04 | Accept |
| | | 93.28% | 6.72% | 96.44% | 3.56% | |

[7]It is Prime Clerk's understanding that Section 3.3 of the Plan provides: "With respect to each Debtor, if a Class contains Claims eligible to vote and no Holder of Claims eligible to vote in such Class votes to accept or reject this Plan by the Voting Deadline, this Plan shall be presumed accepted by the Holders of Claims in such Class."

**NAS2197**

**Exhibit B**

NAS2198

**Purdue Pharma L.P., *et al.***

**Exhibit B - Final Voting Results of Hypothetical Voting Class Comprising U.S. States**

| Class Description | Number Accepting | Number Rejecting | Amount Accepting | Amount Rejecting | Class Voting Result |
|---|---|---|---|---|---|
| | % | % | % | % | |
| States Only | 38 | 10 | $38.00 | $10.00 | Accept |
| | 79.17% | 20.83% | 79.17% | 20.83% | |

NAS2199

**Exhibit C**

NAS2200

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 4 | Non-Federal Domestic Governmental Claims | 117215 | N/A | Arizona Counties Insurance Pool | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 49216 | N/A | Atlantic County, New Jersey | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 73566 | N/A | Benton County, IN | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149510 | N/A | Blue Earth County, Mankato, Minnesota | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149599 | N/A | Board of County Commissioners, Union County, Ohio | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74694 | N/A | Braxton County Commission, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74694 | N/A | Braxton County Commission, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74694 | N/A | Braxton County Commission, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74694 | N/A | Braxton County Commission, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74694 | N/A | Braxton County Commission, West Virginia | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 49498 | N/A | Burlington County, New Jersey | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 620505 | N/A | Butler County, Missouri | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 4 | Non-Federal Domestic Governmental Claims | 74698 | N/A | Calhoun County Commission, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74698 | N/A | Calhoun County Commission, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149417 | N/A | Chaffee County, Colorado | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 79168 | N/A | Charleston, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 620896 | N/A | City and County of Broomfield | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 4 | Non-Federal Domestic Governmental Claims | 133424 | N/A | City and County of Denver | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145527 | N/A | City of Allen, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 79587 | N/A | City of Auburn, Washington | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 616287 | N/A | City Of Bellefontaine Neighbors, Missouri | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149439 | N/A | City of Bellevue, Idaho | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149592 | N/A | City of Bellevue, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 132698 | N/A | City of Black Hawk | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 79130 | N/A | City of Bluefield, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 79130 | N/A | City of Bluefield, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 79130 | N/A | City of Bluefield, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 79130 | N/A | City of Bluefield, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 28467 | N/A | City of Brunswick, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 78936 | N/A | City of Buckhannon, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 78936 | N/A | City of Buckhannon, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148457 | N/A | City of Carrollton | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144101 | N/A | City of Chillicothe, Ohio | $1.00 | Accept | Voter not included in Firm's Client List submitted with Solicitation Directive |
| 4 | Non-Federal Domestic Governmental Claims | 148555 | N/A | City of Clarksburg, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149615 | N/A | City of Cleveland Heights, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144762 | N/A | City of Covington, Louisiana | $1.00 | Accept | Voter not included in Firm's Client List submitted with Solicitation Directive |
| 4 | Non-Federal Domestic Governmental Claims | 143603 | N/A | City of Decordova, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 78987 | N/A | City of Dunbar, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144708 | N/A | City of Escanaba, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143320 | N/A | City of Fargo, North Dakota | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145353 | N/A | City of Farmers Branch, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143633 | N/A | City of Forest Hill, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144254 | N/A | City of Havana, Mason County, IL | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143693 | N/A | City of Hideaway, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143216 | N/A | City of Highland Village, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75317 | N/A | City of Hurricane, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145341 | N/A | City of Hutchins, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144638 | N/A | City of Iron Mountain, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 145153 | N/A | City of Ivanhoe Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143440 | N/A | City of Josephine, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143931 | N/A | City of Justin, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143485 | N/A | City of Lake Dallas, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75377 | N/A | City of Logan, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74316 | N/A | City of Logansport, IN | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149627 | N/A | City of Loveland, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145342 | N/A | City of Lucas, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145342 | N/A | City of Lucas, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149434 | N/A | City of Melbourne, Florida | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149628 | N/A | City of Mentor on the Lake, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 145606 | N/A | City of Midlothian, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75341 | N/A | City of Milton, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75443 | N/A | City of Montgomery, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 133307 | N/A | City of Northglenn | $1.00 | | Holder did not indicate vote to accept or reject the Plan |



**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 4 | Non-Federal Domestic Governmental Claims | 145175 | N/A | City of Oregon | $1.00 | | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 145175 | N/A | City of Oregon | $1.00 | Accept | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 143822 | N/A | City of Osseo, Minnesota | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 1340 | N/A | City of Pascagoula, Mississippi | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144271 | N/A | City of Philadelphia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74041 | N/A | City of Princeton | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143468 | N/A | City of Rice, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143468 | N/A | City of Rice, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 88072 | N/A | City of Richwood, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143665 | N/A | City of Riviera Beach | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143871 | N/A | City of Rogers City, a Michigan Municipal Corporation | $1.00 | Accept | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 149414 | N/A | City of San Buenaventura, California | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 143692 | N/A | CITY OF SANTA CRUZ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149316 | N/A | City of Sedro-Woolley | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 86854 | N/A | City of Smithers, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144524 | N/A | City of Somerville | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148541 | N/A | City of South Charleston, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145740 | N/A | City of South Lake Tahoe | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149773 | N/A | City of Spokane Valley, Washington | $1.00 | Accept | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 143852 | N/A | City of Steamboat Springs | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148578 | N/A | City of Summersville, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143941 | N/A | City of Urbana, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144302 | N/A | City of Wauseon, Fulton County, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144658 | N/A | City of West Carrollton | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149646 | N/A | City of Willoughby Hills, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 148572 | N/A | City of Winfield, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145232 | N/A | Claiborne County, Mississippi | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 133274 | N/A | Clark County | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 133274 | N/A | Clark County | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 122530 | N/A | Commonwealth of Pennsylvania | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144794 | N/A | County of Allegheny | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144794 | N/A | County of Allegheny | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144767 | N/A | County of Alpena, Michigan | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144722 | N/A | County of Baraga, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144722 | N/A | County of Baraga, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144721 | N/A | County of Berrien, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144717 | N/A | County of Cass, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143851 | N/A | County of Centre | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144719 | N/A | County of Chippewa, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144716 | N/A | County of Crawford, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 79273 | N/A | County of Lake, Illinois | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144337 | N/A | County of Livingston, Michigan | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144345 | N/A | County of Macomb, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144542 | N/A | County of Manistee, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144499 | N/A | County of Montmorency, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144461 | N/A | County of Osceola, Michigan | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145504 | N/A | County of Red River | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive |
| 4 | Non-Federal Domestic Governmental Claims | 144447 | N/A | County of Sanilac, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144434 | N/A | County of Shiawassee, Michigan | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143350 | N/A | Dr. Gregory Fernandez in his Official Capacity as the Coroner for St. Bernard Parish | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive |
| 4 | Non-Federal Domestic Governmental Claims | 143114 | N/A | East Kern Health Care District | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 143213 | N/A | Elk Community Services District | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145830 | N/A | ERATH County Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 145427 | N/A | Fayette County, Georgia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75303 | N/A | Gauley Bridge, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75303 | N/A | Gauley Bridge, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75147 | N/A | Gilmer County Commission, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75147 | N/A | Gilmer County Commission, West Virginia | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 133187 | N/A | Graham Township | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 79548 | N/A | Hardin County Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145485 | N/A | Hennepin County, Minnesota | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143257 | N/A | Hickman County Board of Education | $1.00 | Accept | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 79113 | N/A | Irwin County, Georgia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145635 | N/A | Issaquena County, Mississippi | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145770 | N/A | Jefferson County, Georgia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 79176 | N/A | Kalamazoo Charter Township | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 143767 | N/A | Lacey Township, New Jersey | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 132747 | N/A | Lincoln County | $1.00 | | Holder did not indicate vote to accept or reject the Plan |



NAS2202

**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 4 | Non-Federal Domestic Governmental Claims | 144039 | N/A | Lycoming County, Pennsylvania | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 143382 | N/A | Madison County, Illinois | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143382 | N/A | Madison County, Illinois | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 73542 | N/A | Madison County, IN | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 147868 | N/A | Morgan Local School District | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Comerio, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Guayama, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Hormigueros, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Orocovis, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Quebradillas, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Rincon, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Salinas, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of San Lorenzo, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Municipality of Vega Baja, Puerto Rico | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 4 | Non-Federal Domestic Governmental Claims | 82601 | N/A | Nicholas County Commission, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144726 | N/A | Parish of DeSoto | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive |
| 4 | Non-Federal Domestic Governmental Claims | 148534 | N/A | Pendleton County Commission, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 132855 | N/A | Pierce County | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149735 | N/A | Point Township, Pennsylvania | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 41360 | N/A | Pulaski County Arkansas Government | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 117741 | N/A | Queen Anne's County Commissioners | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 117741 | N/A | Queen Anne's County Commissioners | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144336 | N/A | Ramsey County, Minnesota | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149518 | N/A | Sherburne County, Minnesota | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149518 | N/A | Sherburne County, Minnesota | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 132877 | N/A | Spokane County | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144934 | N/A | St. Clair County, Illinois | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74471 | N/A | St. Joseph County, IN | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144450 | N/A | Taft Union High School District | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 119727 | N/A | The Board of County Commissioners of the County of Fremont | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 144316 | N/A | The City of Fitzgerald, Georgia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75263 | N/A | The City of Kenova, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148551 | N/A | The City of Nitro, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148544 | N/A | The City of Romney, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75358 | N/A | The City of White Sulphur Springs, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74747 | N/A | The Town of Fort Gay, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148536 | N/A | The Town of Star City, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 145749 | N/A | The Town of Wayne, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148561 | N/A | Town of Belle, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148561 | N/A | Town of Belle, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148561 | N/A | Town of Belle, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148561 | N/A | Town of Belle, West Virginia | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75348 | N/A | Town of Ceredo, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148564 | N/A | Town of Chesapeake, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74736 | N/A | Town of Clendenin, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75118 | N/A | Town of Eleanor, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 74371 | N/A | Town of Granville, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143224 | N/A | Town of Hebron, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149465 | N/A | Town of Kingsford Heights, Indiana | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144304 | N/A | Town of Milton, Massachusetts | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143698 | N/A | Town of Post Oak Bend, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 89279 | N/A | Town of Quinwood, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 89279 | N/A | Town of Quinwood, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 87930 | N/A | Town of Rainelle, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 75366 | N/A | Town of Rupert, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143691 | N/A | Town of Sanger, Texas | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143691 | N/A | Town of Sanger, Texas | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 143157 | N/A | Town of Smyrna, Tennessee | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 89707 | N/A | Town of Sophia, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148581 | N/A | Town of Sutton, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144233 | N/A | TOWN OF WALDOBORO | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 148571 | N/A | Town of Whitesville, West Virginia | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |



**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 4 | Non-Federal Domestic Governmental Claims | 149738 | N/A | Township of Antrim, Pennsylvania | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 133260 | N/A | Tri-County Health Department | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490123013 | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490123013 | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490123026 | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124942 | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124945 | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124694S | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124694S | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124949 | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | N/A | N/A | Unique E-Ballot ID 19236490124695S | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149782 | N/A | Village of Caledonia, Wisconsin | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149783 | N/A | Village of East Troy, Wisconsin | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149684 | N/A | Village of Glenwillow, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149506 | N/A | Village of L'Anse, Baraga County, Michigan | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149693 | N/A | Village of Moreland Hills, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149693 | N/A | Village of Moreland Hills, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 144954 | N/A | Village of Reminderville | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 149701 | N/A | Village of South Russell, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 4 | Non-Federal Domestic Governmental Claims | 149706 | N/A | Village of West Milton, Ohio | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 148223 | N/A | Washington County Texas | $1.00 | Accept | Ballot received after Voting Deadline |
| 4 | Non-Federal Domestic Governmental Claims | 144059 | N/A | Westfall Local School District Board of Education | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 4 | Non-Federal Domestic Governmental Claims | 132797 | N/A | Whatcom County | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 5 | Tribe Claims | 143568 | N/A | Big Valley Band of Pomo Indians of the Big Valley Rancheria | $1.00 | Accept | Holder did not indicate vote to accept or reject the Plan |
| 5 | Tribe Claims | 143356 | N/A | Four Winds Tribe Louisiana Cherokee | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive |
| 5 | Tribe Claims | 149382 | N/A | Native Village of Port Graham, Alaska | $1.00 | Accept | Ballot received after Voting Deadline |
| 5 | Tribe Claims | 143256 | N/A | Northern Cheyenne Tribe | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 5 | Tribe Claims | 143357 | N/A | Northwestern Band of the Shoshone Nation | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive |
| 5 | Tribe Claims | 79166 | N/A | Seminole Tribe of Florida | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 5 | Tribe Claims | 149313 | N/A | Tulalip Tribes | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 5 | Tribe Claims | 49028 | N/A | Winnebago Tribe of Nebraska | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 6 | Hospital Claims | 147695 | N/A | Jefferson Parish Hospital Service District No. 1 | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 6 | Hospital Claims | 11722 | N/A | Mia Health Group | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 6 | Hospital Claims | 146725 | N/A | Narconon Suncoast, Inc. | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 6 | Hospital Claims | 146184 | N/A | ProMedica Health System, Inc. | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 6 | Hospital Claims | 618482 | N/A | Sarasota County Public Hospital District d/b/a Sarasota Memorial Healthcare System | $1.00 | Reject | Removed at the direction of Debtors' counsel and pursuant to Docket Number 3312 |
| 6 | Hospital Claims | 146256 | N/A | Singing River Mental Health/Mental Retardation Services Region XIV Commission | $1.00 | Accept | Ballot received after Voting Deadline |
| 6 | Hospital Claims | 38819 | N/A | WAYNE COUNTY GENERAL HOSPITAL (MISSISSIPPI) | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 147727 | N/A | Blue Cross and Blue Shield of Alabama (BCBSAL) | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 146274 | N/A | Bricklayers Insurance & Welfare Fund | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 146274 | N/A | Bricklayers Insurance & Welfare Fund | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 147342 | N/A | Cardinal Health Care Plan | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 146675 | N/A | Greater Pennsylvania Carpenters' Medical Plan | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 147446 | N/A | Inteplast Group, LTD. Employee Benefit Plan | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 11386 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 7 | Third-Party Payor Claims | 146373 | N/A | Shopmen's Local 527 Benefit Fund | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 133134 | N/A | The Arizona School Alliance for Workers' Compensation, Inc. | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 190340 | N/A | Third Party Payor RAS5784682?_0193 | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 7 | Third-Party Payor Claims | 190561 | N/A | Third Party Payor RAS5784682?_0561 | $1.00 | Accept | Ballot received after Voting Deadline |
| 7 | Third-Party Payor Claims | 190454 | N/A | Third Party Payor RAS5784682?_1201 | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 7 | Third-Party Payor Claims | 190414 | N/A | Third Party Payor RAS5784682?_2181 | $1.00 | Accept | Ballot received after Voting Deadline |
| 7 | Third-Party Payor Claims | 146014 | N/A | Verizon Employee Benefits Committee | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 7 | Third-Party Payor Claims | 147353 | N/A | VIVA Health and VIVA Health, Inc. | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 8 | Ratepayer Claims | 11400 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 9 | NAS Monitoring Claims | 105598 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 150528 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 2717 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 150528 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 616849 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 2468 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹Name suppressed to protect confidentiality pursuant to provisions of the Order Establishing Procedures of the Claim and Procedures [Docket No. 800]


NAS2204

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(a) | NAS PI Claims | 2717 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 74505 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 129080 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 10542 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 129080 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 944 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 779 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 57523 | N/A | Name on File† | $1.00 | | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 56948 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 17195 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 3707 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 11940 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 2826 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 2826 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 3707 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 69375 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 414 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 1112 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 1112 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 414 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 7576 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 7576 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 33679 | N/A | Name on File† | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 115078 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 42888 | N/A | Name on File† | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 115078 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 83126 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 16575 | N/A | Name on File† | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(a) | NAS PI Claims | 620929 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 16532 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 11855 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 42693 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 12226 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 12118 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 42324 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 138155 | N/A | Name on File† | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 125503 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 129022 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 57770 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 121420 | N/A | Name on File† | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(a) | NAS PI Claims | 621244 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 48762 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 1148 | N/A | Name on File† | $1.00 | Reject | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(a) | NAS PI Claims | 620359 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(a) | NAS PI Claims | 16636 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 127661 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 127661 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 65809 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 127370 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(a) | NAS PI Claims | 123888 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 48893 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 105598 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 12096 | N/A | Name on File† | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 24811 | N/A | Name on File† | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 115690 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 2693 | N/A | Name on File† | $1.00 | | Holder did not provide original signature; Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 67331 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 57772 | N/A | Name on File† | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 114553 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 8657 | N/A | Name on File† | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(a) | NAS PI Claims | 9677 | N/A | Name on File† | $1.00 | | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 124348 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8908 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43402 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73875 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1325 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2026 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1106 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5083 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7788 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1137 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

† Name suppressed to protect the identifying information of the Order Establishing Certain Deadlines of Claim and Procedures [Docket No. 800]


NAS2205

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 8448 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4552 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16444 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57732 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12692 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3348 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4104 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2280 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11822 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2501 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12770 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57601 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2089 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128828 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5014 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6998 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17269 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23696 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42037 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6758 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19349 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3870 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6939 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2726 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35380 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22161 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3205 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16383 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24474 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38982 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 713 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4840 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4309 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1756 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38630 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16891 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 296 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7886 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10522 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3532 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7012 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9637 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35085 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3681 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8408 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3627 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17832 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58670 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6923 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10518 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65855 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4779 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6339 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 48754 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25607 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 48754 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6231 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7769 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41883 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125920 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9091 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 615671 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3316 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 118336 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123883 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10309 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6227 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to protect confidentiality in accordance with provisions of the Order Establishing ... of Claim and Proced...



NAS2206

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 1338 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615671 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6580 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2379 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3443 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 714 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9843 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 280 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1397 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128348 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113419 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6172 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8269 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 39064 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8375 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9968 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9259 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4875 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82906 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4048 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619345 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9184 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94342 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15576 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3329 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6210 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23839 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33921 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35185 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65839 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1967 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121848 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94401 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37634 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13147 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15576 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 763 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 114411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 269 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15701 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56238 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125920 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59334 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127450 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127450 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10219 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68133 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127863 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147664 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23963 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10132 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17916 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17748 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 140071 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7007 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11338 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123573 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5398 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3699 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality in accordance with provisions of the Order Establishing Confidentiality of Claim and Procedure [Dkt. No. 800]


NAS2207

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 123285 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 545 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10771 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49378 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82906 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67320 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3330 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9227 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7620 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9227 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7118 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9227 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104453 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 15587 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9671 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16367 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2432 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37714 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10840 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57323 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1965 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10587 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 291 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15697 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4324 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2576 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14736 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7601 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16894 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9227 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4686 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1318 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5720 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6859 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82906 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11811 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11811 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49398 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7454 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16932 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2356 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104438 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10566 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6019 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49428 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33986 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14643 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 967 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 566 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3901 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2587 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33934 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49701 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4146 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33934 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1966 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4260 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 338 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59366 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 369 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14797 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139945 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5986 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2223 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69272 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 459 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12415 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

*Name suppressed to protect confidential information of the Order Establishing ... Claim and Proce... 800]


NAS2208

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 67790 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3740 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16412 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16311 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7821 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123573 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 837 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 837 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69726 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10397 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129160 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7562 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42514 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82506 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 62020 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 4102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11205 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 13054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4718 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16320 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12468 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66853 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139987 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6782 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38470 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146876 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8041 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 48874 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9850 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147834 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41355 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 23763 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2802 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8615 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2876 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8395 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3619 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3602 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 850 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56394 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2580 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79407 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17335 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123752 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56873 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104274 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615686 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139271 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5318 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5318 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113506 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56358 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126179 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4365 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17576 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5318 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6104 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4595 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4376 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68771 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57078 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7002 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16993 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16993 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35169 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 4365 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137302 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7002 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality in accordance with the provisions of the Order Establishing Procedures ... of Claim and Procedures ...


NAS2209

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 615686 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1926 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3977 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 437 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 434 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56873 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 728 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6672 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2197 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7739 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5211 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 799 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5104 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3351 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619221 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22862 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3732 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9321 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89690 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56764 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25309 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65334 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 117425 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94977 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28382 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23394 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75308 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 95044 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66343 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 13119 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 119720 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121058 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58373 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3841 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65589 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11007 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56935 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 665 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11060 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33930 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43356 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28382 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14196 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5861 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1036 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16084 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74512 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65319 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24070 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9034 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24137 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57401 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9886 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42439 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121058 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10989 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7413 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6835 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5573 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9189 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11324 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11324 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11667 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4696 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12915 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24319 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14199 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |



¹Name suppressed pursuant to the provisions of the Order Establishing Certain Notice, Case Management, and Administrative Procedures [Docket No. 800]

NAS2210

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 43345 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5573 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14199 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3421 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41969 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16191 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37530 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6466 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66300 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73843 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 73843 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1317 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1861 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620903 | N/A | Name on File¹ | $1.00 | Reject | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 5821 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1490 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9606 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10521 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14479 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104978 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17534 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 6780 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14318 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 618937 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619039 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68125 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75522 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1011 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5556 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 618832 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33680 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11874 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68066 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23850 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88805 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2230 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 115340 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12945 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10302 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7651 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104702 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7356 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104702 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9868 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1412 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 262 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41907 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17341 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 136446 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34776 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16625 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10386 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8305 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3858 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34776 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5192 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5901 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6088 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35176 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137293 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1934 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79050 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49438 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82822 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147607 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6009 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2202 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |

¹ Name suppressed to protect confidentiality pursuant to provisions of the Order Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 498] and the Protective Order with Respect to Confidential Claim and Processing Information Pursuant to 11 U.S.C. Section 107(b) and (c), Bankruptcy Rules 9018 and 9037, and Local Bankruptcy Rule 9018-1 [ECF No. 800]


NAS2211

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 6169 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4574 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 139715 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57903 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615952 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4198 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24168 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10594 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6634 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9995 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619221 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24347 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8412 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2784 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17545 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89193 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35200 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619221 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56442 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 834 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41461 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5616 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13162 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124929 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67400 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82133 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124843 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12641 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43577 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4754 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42327 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 472 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124571 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7839 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68645 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22186 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16220 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6286 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14480 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16411 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 114286 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111359 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6286 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7775 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12988 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120305 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3216 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82822 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7443 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29146 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17047 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8194 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10203 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25178 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6322 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8607 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75460 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9643 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126338 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16464 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed pursuant to the redaction provisions of the Order Establishing Procedures for Claim and Proc... [Docket No. 800]

Page 12 of 52



Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 95245 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43584 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67986 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58810 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2303 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7909 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67193 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17501 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 477 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42907 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33336 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 117575 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2814 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67193 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104454 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6388 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24734 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41774 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5844 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28440 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 73729 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1652 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33988 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121396 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19164 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6492 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 112709 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6065 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129316 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89624 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3831 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67193 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12988 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8432 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6158 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8375 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73955 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 359 | N/A | Name on File¹ | $1.00 | Accept & Reject | Holder indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 2456 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 103739 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 112851 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23527 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3464 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58022 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124356 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1125 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35232 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7708 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1113 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5259 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2423 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619081 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2052 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19507 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24098 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12398 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6840 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66828 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619221 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42927 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37920 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42927 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42927 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125214 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10204 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2911 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12598 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4854 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality. Pursuant to the terms of the Order Establishing Confidentiality and Protections for Holders of Claim and Procedures [Docket No. 800]


NAS2213

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 6069 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49196 | N/A | Name on File† | $1.00 | Accept | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42431 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6632 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3847 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7263 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1986 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67959 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 64775 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8369 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5876 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69922 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104553 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17079 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19134 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67066 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89263 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1015 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3183 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147207 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66366 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19114 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1986 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1116 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9692 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24122 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24069 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139314 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38078 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6069 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10786 | N/A | Name on File† | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 7605 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38328 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12560 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139584 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33669 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1113 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1113 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9695 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9695 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1113 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1138 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38026 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56291 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7263 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8367 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89039 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5013 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3361 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2998 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38803 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 849 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58110 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33669 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 31905 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35037 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94965 | N/A | Name on File† | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35115 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35037 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4234 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6346 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 122028 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9884 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12984 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94603 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78890 | N/A | Name on File† | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124387 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6662 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124385 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 115570 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35294 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41906 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2763 | N/A | Name on File† | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

† Name suppressed pursuant to the provisions of the Order Establishing Procedures for Claim and Procedures [ECF No. 800]


NAS2214

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 7901 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11992 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7180 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17649 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88240 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15530 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42927 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1015 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12673 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14346 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29378 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35115 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 83212 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6860 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104220 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 122176 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 616811 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7733 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93959 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10683 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6793 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88948 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9385 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1400 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7695 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 336 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 618710 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104977 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 618900 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88948 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58161 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110872 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104448 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49621 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 103664 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66757 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69174 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14417 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1955 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11000 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23066 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12709 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66274 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 133002 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 122028 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4703 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2487 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22865 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3845 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23353 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9385 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37524 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3680 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37923 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9005 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10432 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8467 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69823 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125696 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29150 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7331 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1020 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68387 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125106 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed pursuant to the provisions of the Order E... ...of Claim and Proce... ...800)


NAS2215

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 5202 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56884 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 106618 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5920 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1021 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22437 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8232 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 406 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73503 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14513 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3646 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11671 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25289 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4363 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7083 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5979 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 64838 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37477 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124586 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87626 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66537 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11385 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69106 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24351 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124639 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24506 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3124 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74257 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79526 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1419 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14477 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38513 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5577 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93612 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14617 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7294 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28418 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8348 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14329 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 73509 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28795 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125090 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615860 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2168 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126384 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59324 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74112 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57716 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17179 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56884 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8343 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127188 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79526 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 15945 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38513 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128066 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 34721 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11385 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34721 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 19462 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19418 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123781 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69796 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 70041 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12801 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123781 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24561 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17534 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

*Name suppressed pursuant to the redaction provisions of the Order Establishing Procedures for Solicitation of Claim and Procedures [D.I. 800]


NAS2216

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 123072 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73524 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89101 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6232 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88706 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58321 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6848 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29642 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17556 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38282 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11668 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75389 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73832 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127696 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5191 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9817 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65291 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57411 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127750 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127696 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8298 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127696 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65291 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66284 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5968 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127872 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73948 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73948 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127872 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5897 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24222 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 145976 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59508 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59303 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12464 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65044 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 43310 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8265 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10004 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29228 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128714 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17304 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8493 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 86729 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8403 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1680 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7347 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8195 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2658 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5312 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5979 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7515 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8379 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4426 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7961 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9497 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3360 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4957 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67537 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17304 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 194 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123203 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14490 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42653 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22275 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12129 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10484 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111862 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37828 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127904 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17829 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to preserve confidentiality in accordance with provisions of the Order Establishing Procedures for the Solicitation and Tabulation of Votes [Dkt. No. 800]



**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 73681 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22164 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22164 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22073 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139051 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139051 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147543 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 137155 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19466 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87717 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16491 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24527 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82663 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89113 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68289 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123870 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35071 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94898 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88793 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 101619 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123203 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41198 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8742 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68360 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8379 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7369 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3744 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139918 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87423 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87427 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6540 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12108 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22309 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9703 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66178 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3744 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5285 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10872 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87423 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59250 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23153 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94707 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 618574 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 39002 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69582 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14614 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1345 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7825 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8017 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65232 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7552 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128709 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66032 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93677 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10237 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619147 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128709 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11451 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9473 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2004 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality pursuant to the provisions of the Order Establishing Confidentiality and Procedures... (Dkt. No. 800)


NAS2218

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 37826 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 620346 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 66836 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78757 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65502 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1392 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16851 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65516 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65516 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58456 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 361 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14222 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41663 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619486 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29429 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11174 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66952 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95156 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4453 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11154 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6954 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29228 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147596 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113541 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 134904 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 73744 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33786 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89495 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4508 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147546 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 149321 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 137351 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137351 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123649 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123649 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66864 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 103555 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89516 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66878 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127175 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 631 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5316 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34889 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 19210 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3976 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3334 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67670 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29459 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2294 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113571 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620646 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 4418 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 10917 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94683 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2751 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58551 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 19123 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 19123 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22267 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7862 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68209 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66836 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8988 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed for privacy in accordance with provisions of the Order Establishing Notice and Objection Procedures for Claim and Procedures [D.I. 800]


NAS2219

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 7862 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24369 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 2111 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38096 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93845 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16449 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127075 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57724 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123058 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41173 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23361 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23298 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137283 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 91683 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58822 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23298 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69711 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42250 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83128 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110784 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57386 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22261 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23805 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5846 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67932 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56881 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104834 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5841 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68839 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138695 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22974 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41605 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82631 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56221 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 122173 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56221 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58029 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123348 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42460 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66478 | N/A | Name on File* | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 58490 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10278 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65740 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4451 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25646 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 43556 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 140005 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58189 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58189 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4844 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4922 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58411 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 121816 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33998 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7832 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615630 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8585 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 95190 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8586 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139051 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65649 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6501 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57025 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4566 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56221 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87547 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75355 | N/A | Name on File* | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 4566 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82594 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93615 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

*Name suppressed to preserve confidentiality of the holder pursuant to the provisions of the Order Establishing ... of Claim and Procedures ...


NAS2220

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 70122 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88762 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24329 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22928 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4744 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12647 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89257 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13193 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 112439 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10000 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10000 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6888 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139883 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 119684 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38910 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 34866 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16032 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7997 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16542 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2706 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83132 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9463 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123823 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1996 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41533 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120415 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57258 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 116115 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10487 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14715 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42938 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 631 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33819 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147735 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23281 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87547 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33644 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125931 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128570 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 621252 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 6501 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83266 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139883 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147702 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33877 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10562 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12839 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65571 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89645 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10562 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126690 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66509 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42474 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78773 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 5027 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126351 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4744 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43564 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10562 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139637 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12150 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120415 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42096 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37699 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126351 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16431 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed pursuant to the redaction provisions of the Order Establishing Certain Notice, Case Management and Administrative Procedures [D.I. 498], and the Protective Order [D.I. 800]


NAS2221

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 16976 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 620207 | N/A | Name on File* | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 3284 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67904 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8561 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41715 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93816 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56863 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35246 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 70034 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56769 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28916 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15634 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56251 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79104 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3481 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69519 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79104 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66005 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88355 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 117939 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 136853 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6413 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 91705 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41464 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94187 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94187 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66990 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35278 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4242 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 101663 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29459 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10779 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113680 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 119662 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126674 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35325 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17671 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 67170 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58029 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58497 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1543 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128829 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 145915 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29459 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88174 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 91815 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75336 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58965 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125728 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127840 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79410 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74610 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124707 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 101573 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35367 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25123 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83256 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 91876 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29459 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7510 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25633 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7308 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29594 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619478 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42031 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37639 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11030 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

*Name suppressed pursuant to the provisions of the Order Establishing Certain Procedures of Claim and Procedures

NAS2222

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 11819 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120490 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65067 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11819 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43303 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125755 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 91 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10276 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7720 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93893 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125484 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23524 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67565 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22701 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126741 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22650 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23815 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74578 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 70169 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4983 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7076 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17052 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 115088 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73865 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10341 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113769 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 48953 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127827 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129529 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68254 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95016 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 114449 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9476 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37791 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33614 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49662 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147067 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 114329 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6476 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29296 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24588 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138239 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25190 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69466 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73763 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 119270 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33925 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 119270 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123468 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146825 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 70016 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68254 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7398 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66406 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6814 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127913 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8873 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123396 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

NAS2223

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 42510 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127959 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101551 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58493 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10864 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29080 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8139 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68254 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68254 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10864 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75194 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 615664 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74638 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123818 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14772 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125145 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101547 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121197 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5233 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56908 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88255 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104512 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147529 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 621059 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 38163 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17808 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139647 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 79077 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129563 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 132226 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33609 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29575 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147303 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 138176 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42402 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5715 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147685 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73610 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5275 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2625 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1140 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 73628 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57089 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89863 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93514 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12114 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 95054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5240 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93512 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 667 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94898 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82588 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88440 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75212 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 25354 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 616802 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111013 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41445 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7142 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41448 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 70148 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111789 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29295 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129331 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125862 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125869 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57179 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 1675 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28519 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1344 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality in accordance with provisions of the Order Establishing Confidentiality... Claim and Procedures... [Docket No. 800]


NAS2224

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 58186 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 6670 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1675 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4781 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24428 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33726 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147274 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139950 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57425 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23926 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6633 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57643 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138494 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138438 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127106 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24452 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120221 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 16911 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123468 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139799 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123396 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33646 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120181 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139921 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16457 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 119556 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49067 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88526 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17451 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9990 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 67656 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 860 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69073 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73865 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 2829 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 101512 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 395 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74328 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58584 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 57810 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69073 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120471 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89109 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127948 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29506 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56687 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 35342 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1946 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38655 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 42276 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1189 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7431 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 41673 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23653 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38894 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10161 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33602 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57109 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123604 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 614434 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7348 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128658 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 33898 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41673 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 69073 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 28683 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24958 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 615414 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23600 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57738 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |
| 10(b) | Non-NAS PI Claims | 38163 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in Final tabulation |

¹ Name suppressed pursuant to the certain provisions of the Order Establishing Procedures of Claim and Procedures [D.I. 800]


NAS2225

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 11040 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24136 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12298 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6750 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28674 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3958 | N/A | Name on File¹ | $1.00 | | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139499 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29631 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124584 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23600 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14208 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1310 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28389 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38163 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87603 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 122130 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93860 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28674 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67374 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23343 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 528 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126809 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58036 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5171 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49403 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74441 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94857 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66796 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 86841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8535 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14519 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57281 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 13142 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3436 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88240 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3704 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 121312 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37548 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57338 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 90112 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25460 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1941 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23812 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147260 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59498 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16842 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125173 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8532 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 12029 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7536 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58973 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9959 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139305 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104246 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56580 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38158 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94177 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56298 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33918 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9072 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37830 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 118619 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6464 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 91657 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 95179 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57703 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619162 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 41228 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6397 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29037 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 133952 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66186 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹Name suppressed to protect confidential interests of the Order Establishing Confidentiality Provisions of Claim and Procedures [D.I. 800]


NAS2226

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 42427 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123367 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147007 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33996 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 114712 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25639 | N/A | Name on File¹ | $1.00 | Accept | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65498 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11403 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104215 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95046 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 86742 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104546 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128895 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23137 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 136934 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87067 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9117 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 86793 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 703 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9910 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127665 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87708 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9641 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9032 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13161 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88253 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94280 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10836 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3097 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67577 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 42964 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147593 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1046 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120694 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 621064 | N/A | Name on File¹ | $1.00 | Reject | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 620926 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 125921 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73590 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129300 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65470 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8255 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42754 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4477 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68562 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35333 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87834 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38618 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57750 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 145955 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113951 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89606 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2930 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59422 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147121 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4525 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16086 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38089 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33726 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82603 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82529 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104887 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34835 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9428 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7811 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2930 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10874 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68206 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38698 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69606 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12582 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75259 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88057 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146866 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56993 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality in accordance with provisions of the Order Establishing Confidentiality and Sealing Procedures with respect to Claim and Procedures [Docket No. 800]



Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 34722 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65385 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11339 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 95198 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 111153 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10854 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28397 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42316 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88002 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42877 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126165 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74192 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6591 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56181 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38230 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121283 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65385 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66931 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67810 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41952 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74351 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5893 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139837 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74351 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69384 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8171 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123300 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42661 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74216 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56203 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56694 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2930 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23998 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 398 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58725 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12953 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6591 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2040 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29490 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128400 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68201 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34722 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147254 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 19445 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 35275 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 112819 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25186 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68553 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123357 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11558 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10267 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 41469 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 115930 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89585 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7701 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5923 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10962 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128815 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125840 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42683 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 64799 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 57566 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7908 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125032 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87608 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed pursuant to the provisions of the Order Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject Plan and Approving Related Forms of Ballots and Notices in Connection Therewith [D.I. 2955, Attachment 2, Section V.F.j: Claim and Procedures 800]


NAS2228

**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 614699 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42023 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126324 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12694 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128204 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49463 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78755 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22067 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25013 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10818 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56051 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123076 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 620466 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 123716 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139815 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126188 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28642 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 137222 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126900 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17473 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65701 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10984 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87750 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17473 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89653 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6054 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126324 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8093 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57265 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56051 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56051 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9257 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67479 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88410 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66120 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126324 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123397 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127183 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56051 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59349 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41813 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7863 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67479 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67479 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69011 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65325 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65523 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 137459 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22350 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 118384 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4452 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58651 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59163 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620686 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 361 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139815 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4978 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42767 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127207 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12407 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10995 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69754 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129102 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139815 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137398 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8247 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed pursuant to the provisions of the Order [...] of Claim and Proce[...]

NAS2229

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 126368 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620925 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 65904 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 15873 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 10984 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137459 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 94595 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123254 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29442 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11422 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147409 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 118692 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29611 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74464 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120416 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67044 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 621248 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 128237 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 118075 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615716 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126750 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67451 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87402 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 33603 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11362 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128583 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16502 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128818 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101673 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74451 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25381 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28524 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58619 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79036 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58619 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43378 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43378 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83294 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69027 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57751 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127902 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43371 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56625 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67975 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67479 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104674 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127347 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68282 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65049 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8016 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126678 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126874 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65904 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14635 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49423 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 101582 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12809 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3469 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620303 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 146972 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16086 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88050 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8016 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 620300 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 2174 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88517 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88517 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88517 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |



¹ Name suppressed to protect information
of the Order Establishing Procedures of
Claim and Proced [...] NAS2230

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 116860 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15798 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14482 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23299 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129549 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29066 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41947 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59074 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128816 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9813 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123742 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129306 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3823 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58594 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16881 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16086 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56091 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16086 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58116 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28730 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 119354 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56091 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67821 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14585 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 15841 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56167 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127902 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127183 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68437 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28385 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94955 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57895 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147372 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 131905 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127720 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126965 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620291 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 120222 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67241 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38758 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127183 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104168 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113276 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69368 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34798 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28775 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38511 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33693 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 145882 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128578 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28730 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79010 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126396 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22288 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146846 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16503 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57562 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57049 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 121054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 615234 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38047 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1851 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128501 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3347 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5832 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126569 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65203 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124534 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidential patient information... pursuant to the provisions of the Order Establishing... Claim and Procedures... [Docket No. 800]


NAS2231

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 127410 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6688 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75131 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127410 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69344 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 122162 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28653 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69821 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 43077 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123826 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56297 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123520 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126390 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129462 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12116 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89081 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28487 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12116 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93731 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73710 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57018 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2337 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22087 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28924 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7310 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93731 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93731 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10138 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12932 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9535 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121811 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128970 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147500 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93538 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 89776 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619115 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 68399 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38813 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 118649 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128099 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 64778 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 131919 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68036 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123466 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37565 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 150098 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 114247 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147605 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67061 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110771 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127664 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4452 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56153 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126814 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 74593 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123601 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82887 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124780 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42307 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 83089 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14316 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69874 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129462 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127608 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22277 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58870 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 583 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to protect personally identifiable information of the Order Establishing Procedures for [...] Claim and Proced[...]


NAS2232

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 129462 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49549 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69616 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139374 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8095 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75306 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123433 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74173 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123457 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125671 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128086 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69875 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14677 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 127844 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12280 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67302 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42624 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127608 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28515 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25334 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 116269 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89264 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 78761 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124828 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128973 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59466 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24320 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66536 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128852 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 140050 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6783 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 131825 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42103 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41687 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7682 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146702 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94698 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124982 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22048 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57865 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57326 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74094 | N/A | Name on File¹ | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 29111 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57757 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 93731 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7453 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93731 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 716 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17087 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 614388 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 147150 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121547 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113222 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127898 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69875 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125630 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620097 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58870 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104884 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 571 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101593 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 621196 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 37673 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 614432 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139326 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58919 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4987 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89375 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139902 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37789 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 14714 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to protect confidentiality pursuant to provisions of the Order Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 498] and Protective Order [ECF No. 800]


NAS2233

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 38735 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22637 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59466 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22675 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 108846 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 112806 | N/A | Name on File* | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 14836 | N/A | Name on File* | $1.00 | | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 116269 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28383 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37681 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 118772 | N/A | Name on File* | $1.00 | Accept & Reject | Holder indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 620883 | N/A | Name on File* | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 143958 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95009 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10579 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16813 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9977 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69385 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1118 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126550 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23884 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23884 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74260 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4509 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66203 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128910 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95068 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68244 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4812 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4812 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 621065 | N/A | Name on File* | $1.00 | Reject | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 94957 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 94320 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82966 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25470 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 117177 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67807 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28888 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 11355 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5562 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 620605 | N/A | Name on File* | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 24182 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 83251 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13156 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123867 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7940 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49527 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123571 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147371 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9928 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65706 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37602 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3057 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2783 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95012 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 12876 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66970 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7885 | N/A | Name on File* | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 116549 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139873 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139873 | N/A | Name on File* | $1.00 | Accept & Reject | Holder indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 57861 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22718 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110807 | N/A | Name on File* | $1.00 | Reject | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 94198 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101594 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110977 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58315 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58418 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8156 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 86882 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 59155 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 614340 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127615 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104669 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104742 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

* Name suppressed...
of the Order...
Claim and Proced...


NAS2234

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 25480 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 13154 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113172 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104742 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68237 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38491 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38244 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 115604 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126078 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28532 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9961 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65141 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 93611 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129242 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 114511 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 114511 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147736 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58279 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104307 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127712 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11914 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 58509 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 6603 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 116041 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14332 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120041 | N/A | Name on File* | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 115604 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28769 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37821 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59386 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127115 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14522 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66635 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7954 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29474 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82507 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 17693 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128882 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 113363 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23776 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82242 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82242 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35406 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23530 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2156 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88582 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 114029 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42814 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128651 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78969 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 615482 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82705 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126596 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111948 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24518 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89312 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29474 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25098 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89312 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 114029 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125934 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12070 | N/A | Name on File* | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139881 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 112920 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113976 | N/A | Name on File* | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

* Name suppressed pursuant to the provisions of the Order [etc.]
Claim and Procedures [etc.]


NAS2235

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 22154 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24221 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24197 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129173 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 33815 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139790 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73808 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24497 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67597 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124972 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89446 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38152 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2411 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120378 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146941 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7787 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128874 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123798 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9936 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34000 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2328 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 29151 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68011 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128876 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146187 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68011 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12070 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 15733 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69317 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4883 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127477 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 49396 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34000 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 42828 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129082 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4413 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 616833 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 129082 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58645 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104016 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 131882 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 123605 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 4455 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22384 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87683 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57664 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146801 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8937 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7439 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104029 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6675 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58083 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37709 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121177 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128874 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139763 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69338 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 120553 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 121550 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127782 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9197 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127280 | N/A | Name on File | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11035 | N/A | Name on File | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

Name suppressed pursuant to the provisions of the Order Establishing Certain Notice, Case Management and Administrative Procedures [D.I. 498]


NAS2236

**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 127657 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 614369 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57117 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66489 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128938 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 105944 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126468 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66880 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 91735 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38377 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38122 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5128 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25588 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110833 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23607 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67520 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28362 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 88153 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 304 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7023 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 38377 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104143 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 2828 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4470 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128610 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 139362 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79593 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8821 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5661 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38469 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127657 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139790 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 4819 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 110717 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68462 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127765 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5135 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65371 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 876 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126233 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69886 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75329 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125047 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75206 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124813 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125500 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146623 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 64749 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89224 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129020 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68371 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 34832 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147286 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 128748 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104513 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5923 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66803 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 66803 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 620378 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 126689 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127520 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 119383 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9993 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113706 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128189 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7736 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127851 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123167 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 82769 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87566 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidentiality of individual personal injury claimants in accordance with the provisions of the Order Establishing Confidentiality and Protections of Claim and Procedures [Docket No. 800]


NAS2237

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 139399 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29481 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146382 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37724 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127629 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69760 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66037 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 78793 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 89579 | N/A | Name on File¹ | $1.00 | Accept & Reject | Holder indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 56131 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58083 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87592 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59154 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59282 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 78931 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59060 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58332 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59204 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 82528 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126125 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125452 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129375 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23712 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 61573S | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87807 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 23587 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 133041 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3109 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 118430 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25547 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126923 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 13048 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 83188 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16364 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123255 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 131835 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104817 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 131846 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146899 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129179 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 3460 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11380 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126209 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 3237 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104513 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126672 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 10815 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 79267 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28880 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125695 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124720 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146473 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126980 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25530 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 69341 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73547 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125077 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128971 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69019 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126117 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127143 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125452 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 146623 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 68931 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65573 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126691 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to preserve confidentiality in accordance with provisions of the Order Establishing Certain Omnibus Procedures for the Filing of Claim and Proceedings Related Thereto


NAS2238

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 1805 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126887 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58811 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6680 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 137946 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 123792 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124965 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 120331 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126572 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 127590 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 124996 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126488 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41632 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 101636 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126909 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 150542 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 128978 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67325 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 110862 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58825 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 134864 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 124710 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 67325 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95149 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 116114 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 104373 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 150542 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17137 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146541 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24241 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24241 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 24241 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 17657 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125440 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 87350 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25574 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127373 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 37993 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 35360 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 7428 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58141 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126400 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 34860 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49635 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 25574 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 12942 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37627 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 25574 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 57552 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 16480 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28999 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 38938 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 64998 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 42050 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125983 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 67108 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65554 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69608 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 65136 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5859 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 22372 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 87429 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 233 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 113684 | N/A | Name on File¹ | $1.00 | Reject | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 129128 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104501 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65245 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 133230 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619232 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 89275 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 111549 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to preserve confidentiality in connection of the Order Establishing Certain Notice, Case Management and Administrative Procedures and Omnibus Hearing Dates [Docket No. 498] and the Order (A) Establishing Deadlines With Respect to Claims and Procedures for Filing Proofs of Claim [Docket No. 800]


NAS2239

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 58611 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28620 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41746 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22637 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 59288 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66226 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66907 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 37755 | N/A | Name on File¹ | $1.00 | | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 24646 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 137350 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 24634 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 82401 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56895 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 619227 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2511 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 147195 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125707 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 5208 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8409 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 16986 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 43596 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 8128 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56605 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 75455 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 29167 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 282 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88600 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615386 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 56905 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 69807 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 119991 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125466 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139290 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 139290 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 127350 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 95281 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58590 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 28429 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 22251 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 125649 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146054 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 49322 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88408 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126584 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 125828 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14243 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126512 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126512 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146789 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 146730 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146915 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 110693 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146054 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125911 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5561 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24240 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75520 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 91846 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1284 | N/A | Name on File¹ | $1.00 | Accept & Reject | Holder indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 125905 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138248 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75064 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 621189 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 127166 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1439 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127457 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 621194 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 11770 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126275 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 49691 | N/A | Name on File¹ | $1.00 | | Holder did not provide original signature |
| 10(b) | Non-NAS PI Claims | 86872 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23718 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 1812 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 28364 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 57730 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 65812 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74100 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104162 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 9777 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8211 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 56957 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41735 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 6956 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |

¹ Name suppressed to protect confidential information
of the Order Establishing ... Procedures of
Claim and Proced ... [800]


NAS2240

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 121296 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 5903 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 41280 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 58723 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 73622 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 74314 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 2877 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 14541 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 103537 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 104167 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 11930 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23872 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 66762 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 55983 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 138587 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 7251 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 75441 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 31404 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 126878 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119733 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129161 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128927 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146730 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 137565 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57429 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121905 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126767 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 122107 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 8016 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 615837 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 126331 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 325 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 619108 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 23997 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74703 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10379 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69553 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146157 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7955 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22736 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126366 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56217 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147495 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88421 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24524 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9562 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125820 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48882 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128581 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88130 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147018 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125847 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14801 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126477 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35119 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75079 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139562 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128887 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79091 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67093 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73564 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4403 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 120583 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38249 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1823 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56839 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57867 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 73747 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69603 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 10(b) | Non-NAS PI Claims | 88342 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57270 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 111341 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 110846 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56833 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35134 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114726 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94291 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58704 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59026 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7128 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126537 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3831 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect confidential information of the Order Establishing... Network of Claim and Proced... (Dkt. No. 800)



Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 113185 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3283 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114049 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128353 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128421 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128421 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65912 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28585 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 12115 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78950 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29041 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112945 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28943 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25048 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113430 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93655 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123057 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73765 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69848 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94478 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16407 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23292 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22945 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23887 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94871 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29479 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93712 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29081 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2715 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19166 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33620 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74345 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94005 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69406 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8446 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78932 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79028 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68798 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57508 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22788 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22081 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104540 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29648 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58305 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59486 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58108 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78886 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13160 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113991 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 616036 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79295 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113873 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7727 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22185 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9778 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28869 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41853 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104489 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82315 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 133742 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73728 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41538 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42915 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 89431 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68336 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29428 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29201 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 15655 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57467 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17200 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69002 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 149354 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88400 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58883 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128500 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23390 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29540 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121239 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104931 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68565 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125245 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104732 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37674 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78971 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6856 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74496 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |

¹ Name suppressed pursuant to the terms and conditions of the Order Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 498] and the Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1007(j) Authorizing the Debtors to Redact Certain Personal Identification Information for Individual Creditors [ECF No. 800]


NAS2242

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 5142 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43047 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6073 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66003 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 83070 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139127 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79023 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9838 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94952 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 89070 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 862 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14820 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3983 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66126 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615699 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10932 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37615 | N/A | Name on File¹ | $1.00 | Accept | Holder did not provide original signature; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38074 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73656 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35281 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23638 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58628 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41713 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86746 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79121 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42647 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69982 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94474 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 64843 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113407 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3416 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 120287 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69769 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23897 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615761 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33811 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23557 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74107 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58298 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2669 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14819 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68807 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68516 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3035 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73864 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59516 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74499 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42700 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123066 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 133228 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33737 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10658 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25104 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41531 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 110843 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87475 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87688 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37987 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 108861 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139833 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1361 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25372 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123882 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57442 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43292 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19112 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28359 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24804 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91728 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16683 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14220 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68156 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67442 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17403 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112965 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48997 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 616308 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 960 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57399 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 325 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65232 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 618908 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 15772 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6194 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8883 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128924 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |

¹ Name suppressed to protect confidentiality pursuant to provisions of the Order Establishing Certain Protocols in Connection with Claim and Procedures [Docket No. 800]


NAS2243

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 42787 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5195 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24501 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129212 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123794 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75037 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22696 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 618499 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42297 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2454 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29269 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4619 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42120 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41284 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74725 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42448 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57776 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91648 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147758 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87077 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104763 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19341 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615772 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37736 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 623791 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57565 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74148 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43062 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114532 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123914 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16754 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67786 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22076 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16788 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125141 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58340 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 616363 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79191 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25551 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69835 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67847 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29188 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13091 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 34969 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56163 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3449 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123806 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78921 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88212 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88118 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 949 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22220 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38772 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1056 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 138570 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19517 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48759 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29152 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58547 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86839 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6521 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1455 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88224 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75288 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113634 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86866 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615677 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104631 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42326 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56218 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86770 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57289 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91973 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82971 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129278 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1712 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3917 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58858 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29279 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65223 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58030 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69768 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13014 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42413 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104715 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57899 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |



Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 613 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121888 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57024 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91934 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29119 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3013 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 117259 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23389 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86769 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14376 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28441 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43582 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126553 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24009 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35166 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25315 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6741 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5743 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35129 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69741 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24061 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65443 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6760 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 134169 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14233 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 115191 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4682 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11190 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33962 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128903 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 49453 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 49760 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58559 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82817 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73735 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 95077 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28561 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104478 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73758 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113263 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65642 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86913 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33656 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5079 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25371 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43105 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41417 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 124951 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58979 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87850 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25027 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69748 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17526 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78994 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128745 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48940 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123324 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78854 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33812 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28597 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3430 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56078 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87476 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57623 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19487 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65882 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 89231 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6771 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79036 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79028 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8400 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114468 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112832 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14580 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57016 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66197 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75054 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104303 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4593 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29613 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104743 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93566 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139589 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146072 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91709 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57641 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |

¹ Name suppressed pursuant to the redaction provisions of the Order Establishing Confidentiality and Procedures... Claim and Procedures [ECF No. 800]


NAS2245

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 10704 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 122109 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 34744 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11533 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4427 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59488 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59369 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4922 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68287 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2059 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82589 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88007 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146953 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22255 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68140 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22941 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 118496 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24304 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114089 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 124500 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94614 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 103902 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25404 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82347 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82746 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25713 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 140059 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104357 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17016 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615708 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11088 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88237 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 117753 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3798 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43025 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114350 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73952 | N/A | Name on File¹ | $1.00 | | Holder did not provide original signature; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 111186 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 146145 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23818 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87661 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68671 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2484 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88599 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67737 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41866 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67131 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10524 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59510 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5661 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114094 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58789 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42586 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56646 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57077 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 39017 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91828 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65006 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29230 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42576 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24957 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38272 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79073 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29359 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41363 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41421 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74458 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25042 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139822 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57015 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23436 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57640 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28940 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121324 | N/A | Name on File¹ | $1.00 | | Holder did not provide original signature; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88059 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74566 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2058 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43192 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66531 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57465 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114314 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25496 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28983 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57597 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25521 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82495 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |

¹ Name suppressed by prior agreement, per provisions of the Order Establishing Procedures of Claim and Procedures [...]


NAS2246

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 104845 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67876 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87499 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114094 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48915 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 118262 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43497 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24399 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19424 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14601 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104837 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42859 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82367 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139556 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16834 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104803 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94538 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 116215 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615718 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48853 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104831 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69330 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67941 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42769 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68261 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125691 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125674 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42679 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58690 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58865 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56105 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113024 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104340 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91583 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33696 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 111008 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69107 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104844 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119593 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24823 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112861 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24473 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58814 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125878 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 619342 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28752 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5853 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5712 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37797 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58549 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35397 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1161 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58627 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113335 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147602 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69301 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6296 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58864 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42611 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7039 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24781 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139460 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1553 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13052 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94650 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2120 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24269 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24781 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23512 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22915 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11956 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 33933 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112598 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43269 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10240 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 89144 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129059 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615292 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73502 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42575 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17712 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82228 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73717 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11051 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127746 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7793 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |

¹ Name suppressed to protect confidentiality, in accordance with provisions of the Order Establishing Confidentiality Procedures and Protocols of Claim and Processing Voting [Docket No. 800]


NAS2247

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 103487 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 616502 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42109 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7948 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104097 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74424 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147871 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129489 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82453 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 4382 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79237 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 34919 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10883 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8936 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37921 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43261 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42430 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91642 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3708 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65375 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29026 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 90041 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57670 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119454 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615645 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57972 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68950 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41985 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 137299 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9918 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16819 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42055 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57589 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10519 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73820 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123257 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25553 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 12014 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93983 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41704 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29357 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114938 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22929 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58458 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 29591 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22627 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9306 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 37888 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58576 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 11353 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38544 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119733 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 615122 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 129651 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82949 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127002 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75222 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 101575 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 110679 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8371 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14423 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6645 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41833 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119733 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 399 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126848 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | 9950 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14866 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65459 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 69735 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57434 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6097 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126962 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13110 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38607 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43383 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 95168 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1467 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147163 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 91777 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 67791 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104991 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24105 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128506 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 559 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73560 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |

¹ Name suppressed to protect confidentiality per provisions of the Order Establishing Procedures for Treatment of Claim and Procedures...


NAS2248

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 4314 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66028 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25602 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48768 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104346 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 28550 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57513 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8118 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94406 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2656 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82740 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127784 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3123 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42978 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147527 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 432 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8107 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23332 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104372 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121040 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147921 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3882 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14469 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139795 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74132 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 616913 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93962 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1728 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22252 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 95068 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74176 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74525 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42342 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 103407 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104945 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82708 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 118450 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 120928 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6224 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128454 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7738 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 39097 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 103465 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23601 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82565 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23249 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22893 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 78978 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16992 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1435 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41967 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123343 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93829 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59211 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23289 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87223 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24062 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14812 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41737 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121878 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126484 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 73773 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 75265 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 618757 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 620122 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 12384 | N/A | Name on File¹ | $1.00 | Accept | Master Ballot superseded by later received valid Master Ballot from a different law firm with consistent vote on account of the same holder |
| 10(b) | Non-NAS PI Claims | 20929 | N/A | Name on File¹ | $1.00 | Accept | Master Ballot superseded by later received valid Master Ballot from a different law firm with consistent vote on account of the same holder |
| 10(b) | Non-NAS PI Claims | 620341 | N/A | Name on File¹ | $1.00 | Accept | Ballot submitted on account of a claim filed after the Voting Record Date |
| 10(b) | Non-NAS PI Claims | 65897 | N/A | Name on File¹ | $1.00 | Accept | Master Ballot superseded by a ballot received directly from the Eligible Client |
| 10(b) | Non-NAS PI Claims | 18468 | N/A | Name on File¹ | $1.00 | Accept | Master Ballot superseded by a ballot received directly from the Eligible Client |
| 10(b) | Non-NAS PI Claims | 53525 | N/A | Name on File¹ | $1.00 | Accept & Reject | Master Ballot indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 26371 | N/A | Name on File¹ | $1.00 | Accept & Reject | Master Ballot indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 54271 | N/A | Name on File¹ | $1.00 | Accept & Reject | Master Ballot indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 102422 | N/A | Name on File¹ | $1.00 | Accept & Reject | Master Ballot indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 26271 | N/A | Name on File¹ | $1.00 | Accept & Reject | Master Ballot indicated vote to accept and reject the Plan |
| 10(b) | Non-NAS PI Claims | 103655 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25419 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87640 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22926 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 128555 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 95321 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 74723 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94286 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93522 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |

¹ Name suppressed to protect confidentiality in accordance with provisions of the Order Establishing ... Claim and Proced... [Docket No. 800]


NAS2249

Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 74418 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59266 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 89082 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104202 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 34979 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24872 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 64961 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 619180 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 119398 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 114734 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 93511 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123252 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79448 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 94305 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25701 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 105865 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88516 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 25688 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38300 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24302 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 90034 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 48871 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123143 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 147582 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17042 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121817 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 16203 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3896 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24765 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1196 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 2068 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17326 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 66959 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 49429 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13066 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 86766 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42531 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127156 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68470 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68674 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10288 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 12288 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 55996 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58428 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1702 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 14528 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 112907 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 68139 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 13176 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 34848 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125902 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35328 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121334 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 139156 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 122224 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10876 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56348 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 87057 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 10292 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 126832 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 58139 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 1188 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121939 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 618742 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 88899 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 19299 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 23892 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 70120 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56649 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 12593 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 125943 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 43590 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5875 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6664 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79464 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65322 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 59208 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38822 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22123 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41451 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56903 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17392 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 121445 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 57828 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Holder did not provide original signature; Ballot received after Voting Deadline |

¹Name suppressed to protect confidentiality pursuant to the terms of the Order Establishing Certain Notice, Case Management, and Administrative Procedures [ECF No. 498] and the Amended Protective Order [ECF No. 800]



Purdue Pharma L.P., et al.
Exhibit C - List of Excluded Ballots

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 10(b) | Non-NAS PI Claims | 5691 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 49330 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 82861 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 15731 | N/A | Name on File¹ | $1.00 | | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9798 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 56066 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6181 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 113902 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 22676 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5354 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6969 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 70019 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 8736 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 41873 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 38352 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 3796 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 65197 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 42776 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7434 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 24146 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 9033 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6170 | N/A | Name on File¹ | $1.00 | Reject | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 123510 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 35219 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 79031 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 104501 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5781 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 6456 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 7759 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 5661 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 127156 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 10(b) | Non-NAS PI Claims | 17603 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 11876 | N/A | Bocsci Inc | $1,098.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 11876 | N/A | Bocsci Inc | $1,098.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115431 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 111681 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115462 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 242 | N/A | Name on File¹ | $50,000.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1177871 | CGM ACOUSTICS INC | $9,143.97 | Accept | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1167621 | CLOCKWELL STRATEGY LLC | $37,200.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 115287 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115265 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 75226 | N/A | Name on File¹ | $88,532.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 138883 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | N/A | 1167537 | DUKE SCANLAN & HALL PLLC | $17,005.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1167537 | DUKE SCANLAN & HALL PLLC | $17,005.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1167537 | DUKE SCANLAN & HALL PLLC | $17,005.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 81 | N/A | Name on File¹ | $1,366.73 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 38 | N/A | Eurofins Lancaster Laboratories Inc | $4,560.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 138264 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | N/A | 1178237 | GLEMSER TECHNOLOGIES CORP | $3,525.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 626 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | N/A | 1178176 | GVE Global Vision Sales Inc. | $9,950.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1178176 | IMA NORTH AMERICA | $98.85 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1178066 | IMA NORTH AMERICA | $651.16 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1178241 | JC EHRLICH CO INC | $1,550.97 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 5200 | N/A | Name on File¹ | $206,210.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 5200 | N/A | Name on File¹ | $206,210.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 5200 | N/A | Name on File¹ | $206,210.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | N/A | 1167562 | JS MCCARTHY PRINTERS | $118.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1178095 | | $107,829.57 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138297 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138297 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 113868 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115349 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115396 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115301 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 26 | N/A | Name on File¹ | $13,924.40 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 911 | N/A | Name on File¹ | $600.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 931 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 1048 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 493 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 495 | N/A | Name on File¹ | $1.00 | | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | N/A | 1177987 | NATOLI ENGINEERING COMPANY INC | $800.80 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 138507 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115076 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115076 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |

¹ Name suppressed to protect the confidential information of the Order Establishing Solicitation, Voting, Tabulation and Notice Procedures. [Docket No. 800]


NAS2251

**Purdue Pharma L.P., et al.**
**Exhibit C - List of Excluded Ballots**

| Plan Class | Plan Class Description | Claim Number | Schedule Number | Creditor Name | Voting Amount | Accept / Reject | Reason(s) for Exclusion |
|---|---|---|---|---|---|---|---|
| 11(c) | Other General Unsecured Claims | 115076 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 115076 | N/A | Name on File¹ | $1.00 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138427 | N/A | Name on File¹ | $1.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | N/A | 1167587 | REBEXA GROUP INC | $1,865.50 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 115299 | N/A | Name on File¹ | $3,928.63 | Accept | Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138497 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138411 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 131973 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1178080 | TAYLOR ENGLISH DUMA LLP | $4,299.00 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | 83008 | N/A | The Gnomon Group LLC | $1,779.35 | | Holder did not indicate vote to accept or reject the Plan |
| 11(c) | Other General Unsecured Claims | N/A | 1177968 | THE GNOMON GROUP LLC | $1,779.35 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 40 | N/A | The Willis Group, LLC | $1,500.00 | Accept | Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 116704 | N/A | Travelers Indemnity Company and the affiliates listed on the attached statement. | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 11(c) | Other General Unsecured Claims | 138217 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Ballot received after Voting Deadline |
| 11(c) | Other General Unsecured Claims | 138334 | N/A | Name on File¹ | $1.00 | | Holder did not indicate vote to accept or reject the Plan; Superseded by later received valid Ballot included in final tabulation |
| 10(b) | Non-NAS PI Claims | N/A | N/A | Name on File¹ | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |
| 10(b) | Non-NAS PI Claims | N/A | N/A | Name on File¹ | $1.00 | Accept | Voter not included on Firm's Client List submitted with Solicitation Directive; voter's Claim Number not included on Master Ballot |

NAS2252

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

## DECLARATION OF JESSE DELCONTE

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

NAS2253

Pursuant to 28 U.S.C. § 1746, I, Jesse DelConte, hereby declare as follows under penalty of perjury:

1.      On August 3, 2021, I submitted an expert report entitled the *Amended Expert Report of Jesse DelConte* (the "**DelConte Expert Report**"),[1] which attached and incorporated by reference in its entirety the hypothetical chapter 7 liquidation analysis that was filed as Appendix B to the Disclosure Statement.[2] JX-2761 – JX-2765 is a true and accurate copy of the DelConte Expert Report and appendices thereto.

2.      Nothing that I have learned since the submission of my amended report has changed any of my opinions expressed therein. I reserve the right to revise my opinions in light of my ongoing review of materials, including data, documents, and depositions or other testimony that may subsequently come to light.

3.      In accordance with my understanding of paragraph 4.h of the *Third Amended Order Granting Debtors' Motion for Order Establishing Confirmation Schedule and Protocols* [Docket No. 3347], I respectfully submit this Declaration and the DelConte Expert Report attached hereto as my direct testimony on behalf of the Debtors.Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

---

[1] The DelConte Expert Report amends a prior report that I submitted on June 15, 2021 entitled the *Expert Report of Jesse DelConte*. The amendments corrected an inconsistent statement in a chart where the correct information was provided in the attached exhibits, and caught a few typos.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' *Sixth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors* [Dkt. No. 3185] (the "**Plan**") or the *Fifth Amended Disclosure Statement for the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P., et al., Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2983] (as may be subsequently supplemented, amended, or modified from time to time, the "**Disclosure Statement**"), as applicable.

1

NAS2254

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: August 5, 2021

/s/ *Jesse Del Conte*

Jesse DelConte

2

NAS2255

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.,** *et al.*, | **Case No. 19-23649 (RDD)** |
| Debtors.[1] | **(Jointly Administered)** |

<u>**AMENDED EXPERT REPORT OF**</u>
<u>**JESSE DELCONTE**</u>

<u>**August 3, 2021**</u>

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

NAS2256

## I.    Introduction

1.     I submit this expert report (the "DelConte Report" or "Report") in support of confirmation of the Revised Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P., et al., Pursuant to *Chapter 11 of the Bankruptcy Code* [Docket No. 2982] (as may be subsequently, supplemented, amended, or modified from time to time, the "Plan").[2]

2.     The statements in this Report are, except where specifically noted, based on (a) my personal knowledge of Debtors' operations and finances based on information provided by the Debtors, (b) my review of relevant documents, including information provided by other parties, information and analyses that I have received from members of the Debtors' management or advisors, including PJT Partners, Inc. ("PJT") and others at AlixPartners, (c) analyses that my team and I have performed, and/or (d) my opinion based upon my experience. A complete list of information and documents that I relied upon in forming my opinions is provided as Appendix C. This Report provides my conclusions based on information available to me through August 3, 2021 (the "Report Date"). I reserve the right to supplement this Report based on events occurring or information learned between the Report Date and the Confirmation Hearing.

## II.    Qualifications

3.     I am a Managing Director of AlixPartners, LLP ("AlixPartners"), which has a place of business at 909 Third Avenue, Floor 30, New York, New York 10022.  I specialize in providing

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan or the *Fifth Amended Disclosure Statement for the Fifth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma, L.P.,* et al.*, Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 2983, Appendix B] (as may be subsequently supplemented, amended, or modified from time to time, the "Disclosure Statement"), as applicable.

NAS2257

leadership to troubled and underperforming companies and advising senior executives, boards of directors, and creditors. I have over 15 years of experience in the restructuring industry with extensive experience working with distressed companies across numerous industries, including pharmaceuticals, retail/apparel, technology, energy, automotive, industrial and business services, and industrial manufacturing. During this time, I have primarily provided advisory services to various debtors and secured creditor groups in out-of-court and in-court scenarios.

4.      Before AlixPartners purchased Zolfo Cooper, LLC ("Zolfo Cooper") in 2018, I was employed by Zolfo Cooper, a financial advisory and interim management company that provided restructuring services to companies and their stakeholders, for ten years. During the last three years that I was employed by Zolfo Cooper, I served as a Senior Director. During my time at Zolfo Cooper, I advised numerous companies through successful in-court and out-of-court restructurings. These companies include Sabine Oil & Gas Corp., Avaya Inc., Cenveo Inc., and FULLBEAUTY Brands. During these engagements I was responsible for critical aspects of the restructuring, including cash flow forecasting, business plan development, lender negotiations, the liquidation analysis and U.S. Trustee and court reporting requirements. Prior to my time at Zolfo Cooper, I spent approximately five years as an analyst at Seneca Financial Group, Inc., where I provided restructuring advisory services to companies and lenders, as well as litigation support services to various litigants. I received a B.S. with Distinction, Commerce from the University of Virginia in 2003 and hold the Chartered Financial Analyst designation.

5.      Since March 5, 2019, AlixPartners has been one of the principal advisors to the Debtors, and in that capacity, members of my team and I have been directly involved in matters related to the Debtors' chapter 11 filings. As an advisor to the Debtors, I am actively involved in the Debtors' operations and have been working collaboratively with PJT Partners and Davis Polk

3

NAS2258

& Wardwell LLP ("Debtors' Other Restructuring Advisors," collectively with AlixPartners, "Debtors' Restructuring Advisors") to advise the Debtors on decisions related to the Debtors' business operations and the impacts of the Debtors' ongoing restructuring activities.

6.      My curriculum vitae is attached as Appendix B, which includes relevant information related to my experience and professional credentials. The following is the one publication I have authored in the last ten years: Jesse DelConte, et al., *Riding the Express Lane Through Bankruptcy*, Journal of Corporate Renewal (October 2019). I have not testified as an expert in deposition or at trial in the past four years.

7.      AlixPartners has billed the Debtors for our professional services rendered in connection with preparing the hypothetical chapter 7 liquidation analysis that was filed as Appendix B to the Disclosure Statement (the "Liquidation Analysis"). I incorporate by reference the entirety of the Liquidation Analysis, a true and accurate copy of which is attached as Appendix A. My billing rate charged to the Debtors for preparing the Liquidation Analysis was my standard rate of $1,055 per hour.

## III.    Summary of Opinions

8.      Based on my experience; my knowledge of the Debtors' business, operations, financial performance, and restructuring efforts; and analysis that I have conducted in connection with the Debtors' Plan including the Liquidation Analysis, I conclude that estimated recoveries for all creditor groups under the Plan are no less than, and in many cases significantly greater than, the estimated recoveries for creditor groups in a hypothetical chapter 7 liquidation. As described below, based on the Liquidation Analysis, I estimate that liquidation of the Debtors' assets would result in net liquidation proceeds to be distributed to creditors ranging from $281.1 million to $3,195.6 million, with a midpoint of $1,801.6 million.

4

NAS2259

9.      In all but the high scenario, no net liquidation proceeds would be distributed to holders of contingent liability claims—claims alleging opioid-related liability—in significant part because the $2 billion DOJ Forfeiture Judgment Claim would absorb nearly all of the net liquidation proceeds. Estimated recoveries to holders of contingent liability claims are not materially better even in the high scenario. While the Liquidation Analysis estimates that $699.1 million will remain to be distributed to contingent liability claims in the high case, that amount is greatly exceeded by the asserted face amount of contingent liability claims—for every dollar of asserted claims there would be about seventeen ten-thousandths of a cent (.0017) of distributable value. To consider this from a different perspective, the Liquidation Analysis estimates that in the high case, $699.1 million will remain to be distributed to contingent liability claims (and that $0 will remain to be distributed to these claims in the low and mid cases). Under the Plan, the contingent liability claims receive an estimated $5.5 billion as outlined in the table below.

10.     As explained in the Disclosure Statement, and as described in detail in this Report, the projected recoveries under the Plan and the results of the hypothetical Liquidation Analysis for all Holders of Claims and Interests (under the mid-case) are as follows:

| Class | Type of Claim or Interest | Impairment | Aggregate Treatment Under the Plan | Aggregate Treatment Under Chapter 7 (Mid-Case) |
|-------|---------------------------|------------|-------------------------------------|-----------------------------------------------|
| Class 1 | Secured Claims | Unimpaired | Unimpaired | Unimpaired |
| Class 2 | Other Priority Claims | Unimpaired | Unimpaired | Approximately $10.6 thousand (or approximately 0.7% recovery) |
| Class 3 | Federal Government Unsecured Claims | Impaired | The United States shall receive (i) the Initial Federal Government Distribution and (ii) the MDT Federal Government Claim, which collectively total $50 | $0 |

5

**NAS2260**

| Class | Type of Claim or Interest | Impairment | Aggregate Treatment Under the Plan | Aggregate Treatment Under Chapter 7 (Mid-Case) |
|---|---|---|---|---|
| | | | million in payment obligations | |
| Class 4 | Non-Federal Domestic Governmental Claims | Impaired | Approximately $4.0 billion in estimated cash distributions to NOAT over time (excluding potential proceeds of insurance claims and any release of restricted cash) | $0 |
| Class 5 | Tribe Claims | Impaired | Approximately $140 million in estimated cash distributions to the Tribe Trust over time (excluding potential proceeds of insurance claims and any release of restricted cash) | $0 |
| Class 6 | Hospital Claims | Impaired | $250 million in funding of Hospital Trust | $0 |
| Class 7 | Third-Party Payor Claims | Impaired | $365 million in funding of TPP Trust | $0 |
| Class 8 | Ratepayer Claims | Impaired | $6.5 million (less attorneys' fees) Truth Initiative Contribution | $0 |
| Class 9 | NAS Monitoring Claims | Impaired | $60 million in funding of NAS Monitoring Trust | $0 |
| Class 10(a) | NAS PI Claims | Impaired | $45 million in funding of the PI Trust with respect to NAS PI Channeled Claims | $0 |
| Class 10(b) | Non-NAS PI Claims | Impaired | $655 million to $705 million in funding of the PI Trust with respect to Non-NAS PI Channeled Claims | $0 |
| Class 11(a) | Avrio General Unsecured Claims | Unimpaired | Unimpaired | Approximately $66.4 million (or approximately 40.7%) |
| Class 11(b) | Adlon General Unsecured Claims | Unimpaired | Unimpaired | $0 |

6

NAS2261

| Class | Type of Claim or Interest | Impairment | Aggregate Treatment Under the Plan | Aggregate Treatment Under Chapter 7 (Mid-Case) |
|---|---|---|---|---|
| Class 11(c) | Other General Unsecured Claims | Impaired | $15 million in aggregate Other General Unsecured Claim Cash | Approximately $28.4 million of which approximately $0.7 million would be available for other general unsecured claims and the remaining $27.7 million would be available for the PBGC termination claim.[3] |
| Class 12 | Intercompany Claims | Unimpaired or Impaired | Reinstated, settled, or extinguished | $0 |
| Class 13 | Shareholder Claims | Impaired | Released | $0 |
| Class 14 | Co-Defendant Claims | Impaired | Disallowed | Disallowed |
| Class 15 | Other Subordinated Claims | Impaired | $0 | $0 |
| Class 16 | PPLP Interests | Impaired | Released | $0 |
| Class 17 | PPI Interests | Impaired | Released | $0 |
| Class 18 | Intercompany Interests | Unimpaired or Impaired | Reinstated, settled, or extinguished | $0 |

## IV.    Liquidation Analysis

### a.  Summary of Approach

11.    AlixPartners and I have been asked to evaluate whether the Debtors' Plan satisfies the best interests of creditors test under section 1129 of the Bankruptcy Code (the "Code"). My understanding is that section 1129(a)(7) requires that each holder of an impaired allowed claim

---

[3] In total, approximately $94.8 million (consisting of $66.4 million under Class 11(a) and $27.7 million under Class 11(c)) would be available as a recovery on behalf of the PBGC termination claim with approximately $0.7 million available for other general unsecured claims.

7

NAS2262

or interest must either accept the plan, or receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor were liquidated under chapter 7 of the Code. With input from the Debtors' management team and the Debtors' Other Restructuring Advisors, my team and I analyzed the proceeds that would be available to various creditor groups from a hypothetical chapter 7 liquidation as compared to the Plan. The result of that analysis is the hypothetical Liquidation Analysis, filed as Appendix B to the Disclosure Statement, which is the subject of this opinion. Based upon this analysis, it is my opinion that confirmation of the Plan will provide creditors with a recovery that is not less than what they would otherwise receive in connection with a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

12.     The Liquidation Analysis was completed with my direct involvement and by individuals under my direct supervision, and I am familiar with the methods used and the conclusions reached in the preparation of the Liquidation Analysis.

13.     The Liquidation Analysis represents an estimate of recovery values and percentages based upon a hypothetical liquidation if the Debtors' chapter 11 cases were converted to a proceeding under chapter 7 of the Bankruptcy Code and a chapter 7 trustee proceeded to liquidate the Debtors' assets into cash. As an overview the Liquidation Analysis estimates the proceeds of the liquidation, the costs of liquidation, and, by deducting costs from proceeds, the net proceeds available for distribution to creditors. My team and I performed these analyses separately for each of the Debtors. It is my understanding that the Liquidation Analysis is the Debtors' best estimate of the cash proceeds, net of liquidation-related costs that would be available for distribution to the Holders of Claims and Interests if the Debtors were to be liquidated under chapter 7 of the Bankruptcy Code.

NAS2263

14.    The major components of the hypothetical liquidation are:

- generation of cash proceeds from the sale of Debtors' businesses, largely pursuant to liquidation sales of Debtors' assets;

- incurrence of costs related to the liquidation process, such as liquidator and/or brokerage fees, wind down costs, severance costs, chapter 7 trustee fees and other professional fees;

- distribution of net proceeds generated from asset sales to claimants in accordance with the priority scheme under Chapter 7 of the Bankruptcy Code;

- the assumption that a chapter 7 trustee would wind down and monetize the Assets of the Debtors over a twelve-month period, using cash on hand and the proceeds of the Assets to fund the expenses associated with the wind-down of operations. Litigation in respect of Shareholder Claim Rights and claims allowance and allocation could extend beyond twelve months; and

- the assumption that recoveries in respect of Shareholder Claim Rights in the context of a hypothetical chapter 7 liquidation would likely be lower than recoveries under the Shareholder Settlement Agreement for various reasons described within the Liquidation Analysis.

15.    Finally, one notable aspect of this case is that more than 614,000 Proofs of Claim that allege liability arising out of or in connection with Opioid-Related Activities filed against the Debtors were filed before the General Bar Date. Approximately 10% of the submitted Proofs of Claim assert a specific amount of liability.  Taken together, these 10% of the submitted Proofs of Claim allege liability totaling approximately $41 trillion (excluding one personal injury claim that asserted liability of $100 trillion).

NAS2264

16.     Based on the methodology detailed below, I estimate that liquidation of the Debtors' assets would result in liquidation proceeds ranging from $1,980.0 million to $3,826.3 million, with a midpoint of $2,903.2 million. The costs associated with the liquidation are estimated to be between $630.6 million and $1,699.0 million, with a midpoint of $1,101.5 million. Deducting the costs associated with the liquidation from the liquidation proceeds leaves distributable proceeds that would be available to creditors ranging from $281.1 million to $3,195.6 million, with a midpoint of $1,801.6 million.

### Figure 1:  Liquidation Recovery Summary

Purdue Pharma L.P. - Consolidated Summary
Hypothetical Liquidation Analysis
($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 1,587.9 | $ 1,410.9 | $ 1,233.9 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| **Total Liquidation Proceeds** | | | | | 3,826.3 | 2,903.2 | 1,980.0 |
| | | | | | | | |
| **Total Liquidation Costs** | | | | | $ (630.6) | $ (1,101.5) | $ (1,699.0) |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 3,195.6 | $ 1,801.6 | $ 281.1 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ (2,000.0) | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 100.0% | $ 1,651.8 | 82.6% | $ 266.5 | 13.3% |
| Administrative Expense Claims | $ (341.4) | $ 344.9 | $ 341.4 | $ 337.9 | 330.2 | 95.7% | 54.3 | 15.9% | 8.1 | 2.4% |
| Priority Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | 1.6 | 97.8% | 0.0 | 0.7% | 0.0 | 0.1% |
| LSTC - Prepetition Accounts Payable | (12.9) | 12.9 | 12.9 | 12.9 | 1.6 | 12.8% | 0.7 | 5.5% | 0.0 | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 163.0 | 100.0% | 94.8 | 58.2% | 6.4 | 3.9% |
| Contract Rejection Damages | (41.1) | 41.1 | 41.1 | 41.1 | 0.1 | 0.2% | 0.0 | 0.0% | - | 0.0% |
| Contingent Litigation Liability | (41,000,000.0) | 41,000,000.0 | 41,000,000.0 | 41,000,000.0 | 699.1 | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (41,000,217.0) | $ 41,000,217.0 | $ 41,000,217.0 | $ 41,000,217.0 | 863.9 | 0.0% | 95.5 | 0.0% | 6.4 | 0.0% |
| **Total Claims** | $ (41,002,560.0) | $ 41,002,563.5 | $ 41,002,560.0 | $ 41,002,556.5 | 3,195.6 | 0.0% | 1,801.6 | 0.0% | 281.1 | 0.0% |

17.     As shown above, it is not reasonable to conclude that any creditor group would be better off pursuing a chapter 7 liquidation.

### b.  Methodology and Assumptions

18.     Determining the proceeds from, and costs of, a hypothetical liquidation of the Debtors necessitates the use of estimates and assumptions, which although considered reasonable by the Debtors' management and advisors, are inherently subject to business, economic and competitive uncertainties and contingencies beyond the control of the Debtors, their management

10

NAS2265

and advisors.[4] The Liquidation Analysis, like other hypothetical liquidation analyses, is based on a variety of assumptions which I believe are reasonable under the circumstances.[5]  These estimates and assumptions are outlined below.

19.     The Liquidation Analysis assumes that the Debtors convert their cases from chapter 11 cases to chapter 7 cases on or about September 30, 2021 (the "Conversion Date"). Except as otherwise noted, the Liquidation Analysis is based upon the unaudited balance sheets of the Debtors as of February 28, 2021 and those values, in total, are assumed to be representative of the Debtors' assets and liabilities as of the Conversion Date.

20.     In preparing the Liquidation Analysis, I assumed that the bankruptcy court would appoint a chapter 7 trustee (the "Trustee") to oversee the liquidation of the Debtors' estates. AlixPartners has assumed that the Trustee would wind down and monetize the Assets of the Debtors over a twelve-month period, using cash on hand and the proceeds of the Assets to fund the expenses associated with the wind-down of operations. Litigation in respect of Shareholder Claim Rights and claims allowance and allocation could extend beyond twelve months and generate significant costs that could further dilute recoveries in a chapter 7 liquidation. Because the Debtors would not generate revenues or cash flows after their assets are liquidated, but would still incur ongoing expenses—for example, relating to claims reconciliation—the Trustee would need to use cash on hand, receivables, and proceeds from the immediate liquidation of assets to fund the ongoing expenses of the Estates.  The Liquidation Analysis assumes that the Trustee

---

[4] AlixPartners prepared the Liquidation Analysis for the sole purpose of determining a good faith estimate of the proceeds that would be generated if the Debtors' assets were liquidated in accordance with chapter 7 of the Bankruptcy Code. This analysis should not be used for any other purpose.

[5] The analysis was prepared assuming a conversion date of September 30, 2021 (the "Liquidation Date") using balance sheet figures as of February 28, 2021.

11

NAS2266

would have adequate liquidity to fund the wind-down of the operations and the fees associated with such a liquidation. The Liquidation Analysis also assumes that the Debtors will be subject to a withdrawal liability on account of the Purdue Pension Plan (the "Qualified Pension Plan"). The Debtors estimate that the PBGC's Qualified Pension Plan claim amounts would total approximately $163 million based on the Debtors' most recent actuarial estimates of withdrawal liabilities. [6] In an actual liquidation, the wind-down process and time period could vary significantly, thereby affecting recoveries.

21.     AlixPartners estimated Allowed Claims based upon a review of claims listed on the Debtors' Schedules of Assets and Liabilities and the Debtors' financial statements to account for other known liabilities, as necessary. In addition, the Liquidation Analysis includes estimates for claims not currently asserted in the chapter 11 cases, but which could be asserted and allowed in a chapter 7 liquidation, including unpaid chapter 11 administrative claims, and chapter 7 administrative claims such as wind-down costs, trustee fees, and tax liabilities. To date, the bankruptcy court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing this Liquidation Analysis.

22.     With the exception of the recoveries in respect of Shareholder Claim Rights, the Liquidation Analysis does not consider the discounting over time of asset values and creditor recoveries, which would likely result in significantly lower recoveries to claims holders than those estimated recoveries presented in the Liquidation Analysis.

---

[6] The Debtors also assumed that the Qualified Pension Plan claims would be asserted at each of the Debtor entities, based on a "controlled group" (as defined in the Employee Retirement Income Security Act) theory of liability.

NAS2267

### c. Total Liquidation Proceeds

23.     To determine the net proceeds that would be distributable to creditors in a liquidation (the "Net Liquidation Proceeds"), I estimated (1) the total proceeds that would be generated in a liquidation of the Debtors' assets (the "Total Liquidation Proceeds"), and (2) the costs that would be associated with the liquidation (the "Liquidation Costs"). To calculate Total Liquidation Proceeds, I estimated the liquidation value of various categories of the Debtors' assets (including Shareholder Claim Rights) at the Effective Date. For most categories of assets, I estimated the liquidation value by applying a "recovery percentage" to the book value of the assets in that category. The table below summarizes my analysis of total liquidation proceeds. My calculation of the liquidation value of each of these asset categories is described in the table below.

**Figure 2:  Liquidation Proceeds Summary**

Purdue Pharma L.P. - Consolidated Summary
Hypothetical Liquidation Analysis
($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $    943.2 | 100.0% | 100.0% | 100.0% | $    943.2 | $    943.2 | $    943.2 |
| Accounts Receivable (Net) | 150.3 | 75.5% | 62.9% | 50.3% | 113.5 | 94.6 | 75.7 |
| Inventories, Net | 83.3 | 200.1% | 150.1% | 100.0% | 166.7 | 125.0 | 83.4 |
| Prepaid Expenses & Other Current Assets | 51.1 | 4.8% | 3.6% | 2.4% | 2.4 | 1.8 | 1.2 |
| Restricted Cash | 29.9 | 1.3% | 0.6% | 0.0% | 0.4 | 0.2 | - |
| **Total Current Assets** | $    1,257.8 | | | | $    1,226.2 | $    1,164.8 | $    1,103.4 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $    66.5 | 26.7% | 20.1% | 13.6% | $    17.8 | $    13.4 | $    9.0 |
| Investments at Cost | 44.6 | 63.2% | 50.7% | 38.2% | 28.2 | 22.6 | 17.1 |
| Investments in Associated Companies | 9.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | 148.5 | 50.0% | 25.0% | 0.0% | 74.3 | 37.1 | - |
| Intangible Assets, Net | 95.1 | 254.0% | 181.9% | 109.8% | 241.5 | 172.9 | 104.4 |
| Other Assets | 16.5 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $    1,638.7 | 96.9% | 86.1% | 75.3% | $    1,587.9 | $    1,410.9 | $    1,233.9 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $    1,587.9 | $    1,410.9 | $    1,233.9 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| **Total Liquidation Proceeds** | | | | | $    3,826.3 | $    2,903.2 | $    1,980.0 |

24.     **Cash**. The liquidation proceeds of cash and equivalents for all entities holding cash is estimated to be 100% of the pro forma balance. The cash balance shown is the Debtors' current unrestricted cash forecast as of the Liquidation Date.

25.     **Accounts Receivable.** The liquidation analysis assumes that upon conversion to a chapter 7, the Debtors' ability to collect on its receivables will be negatively impacted by an

NAS2268

increase in product returns for certain products as the end market demand for its products declines. Accounts receivable due from independent associated companies ("IACs") are deemed to have the same recovery assumptions as accounts receivable with third-parties. Debtor-to-Debtor intercompany receivables are deemed to have no recoverable value in this analysis. For purposes of the Liquidation Analysis, the liquidation proceeds of accounts receivable were estimated to range from 50-76% of net book value.

26.     **Inventory**. Inventory consists of raw materials, work in process and finished goods which were evaluated for recovery at the product level. The book value of inventory represents the lower of cost or market value. The liquidation analysis assumes that manufacturing facilities would initiate shutdown at the start of the liquidation period and that the raw material and work in progress would not have recoverable value. The Debtors would be expected to sell the remaining finished goods at significantly higher than cost and therefore, results in estimated recovery rate ranges over 100%.  The liquidation analysis assumes that the Debtors would need to decrease the market price to Wholesalers of inventory on hand. This assumed decrease in market price is made necessary because the Debtors' products may be removed from formularies, and because the Debtors will likely be unable to pay accrued rebates to third-parties in a timely manner given the uncertainty around the payment waterfall under a chapter 7 liquidation. The liquidation analysis assumes a recovery range for finished goods of 199-397% of net book value and a recovery range for total inventory of 100-200%.

27.     **Prepaid Expenses and Other Current Assets.** Prepaid Expenses and Other Current Assets primarily includes prepaid retainers and prepaid insurance expense for which the Debtors anticipate no recoverable value.

14

NAS2269

28.    **Restricted Cash**. Restricted Cash consists primarily of cash collateralized for insurance policies and trust account agreements with pharmacy benefit managers. The funds related to insurance policies have an estimated recovery of 0-50% of net book value.

29.    **Property, Plant & Equipment ("PP&E")**. Property and Equipment, net ("PP&E") comprises Land and Buildings, Leasehold Improvements, Machinery & Equipment ("Equipment"), Furniture and Fixtures ("Furniture"), Computer Software and Equipment ("Software") and Construction in Progress. Recovery ranges for PP&E were based on management's knowledge of the underlying assets and estimates of their ultimate sale values. The estimated recovery ranges for the various components of PP&E are as follows:

| | |
|---|---|
| Land and Buildings | 25 - 45% |
| Equipment | 5 - 15%, |
| Furniture | 5 - 10%, |
| Software | 2 - 4%. |

Leasehold Improvements and Construction in Progress are estimated to have no recovery value. PP&E consists primarily of a manufacturing facility in Wilson, NC owned by Purdue Pharmaceuticals L.P. and Leasehold improvements owned by Rhodes Pharmaceuticals L.P. The blended recovery for PP&E is 14-27%.

30.    **Investments at Cost**. Investments at cost include the Debtors' investments in early stage privately held companies which may not have readily determinable fair values. Additionally, some of the investments are held indirectly through investment in a third party private equity fund which makes these investments highly illiquid. The Debtors assume a recovery rate of 38-63% for these investments, primarily due to the estimated high illiquidity discounts.

31.    **Intangible Assets.** Intangible assets include brands, patents, trademarks, know-how, NDAs and ANDAs for branded and generic products and are held on the Debtors'

NAS2270

balance sheets at cost. The liquidation analysis estimates that the liquidation of the brands held by Avrio and the NDAs, ANDAs, patents and other intangibles for the Debtors' generic and branded pharmaceutical products would be at a significant discount to the going concern value of the Debtors' ongoing business operations. Total proceeds are estimated to be $104-$242 million or 110-254% of net book value.

32.    **Other Assets (Non-Current)**. Other long-term assets consist primarily of prepaid rent and are estimated to have no recoverable value.

33.    **Shareholder Claim Rights.** The Liquidation Analysis assumes the Shareholder Settlement is not entered into, and that the Estates would retain the Shareholder Claim Rights. The Debtors believe that recoveries in respect of Shareholder Claim Rights in the context of a hypothetical chapter 7 liquidation would likely be lower than recoveries under the Shareholder Settlement Agreement for a number of reasons.  These reasons include:

- The Plan offers a potential global resolution of claims against the Shareholders which would not likely be possible in a hypothetical chapter 7 liquidation.

- The Trustee and its counsel would not be familiar with the extremely complicated and extensive factual record, which could affect the Trustee's ability to prosecute the Shareholder Claim Rights, including by delaying prosecution of the claims.

- The Shareholder Settlement allows for the consensual resolution of the Shareholder Claim Rights, including a consensual resolution of collectability and other complex and disputed legal and factual issues.

- In a hypothetical chapter 7 liquidation, the Debtors would be one party of many pursuing claims against the Debtors' shareholders, and the Debtors might not "win the race to the courthouse."

16

NAS2271

- The Liquidation Analysis assumes that the recoveries in respect of Shareholder Claim Rights are estimated to be $746-$2,238 million and received at PPLP. To estimate recoveries in respect of the Shareholder Claim Rights in a hypothetical chapter 7 liquidation, the Debtors discounted the total value of contributions under the Shareholder Settlement to December 31, 2021 using a discount rate of 9% and applied an estimated recovery rate of 25% to 75%. This does not include litigation-related costs and expenses.

### d. Liquidation Costs

34.     I evaluated the costs associated with a liquidation, including those summarized below:

#### Figure 3: Liquidation Costs

Purdue Pharma L.P. - Consolidated Summary
Hypothetical Liquidation Analysis
($ in millions)

| | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|
| | High | Mid | Low | High | Mid | Low |
| **Liquidation Costs** | | | | | | |
| Chapter 7 Trustee Fees | -2.0% | -2.5% | -3.0% | (57.7) | (49.0) | (31.1) |
| Chapter 7 Professional Fees | | | | (520.0) | (975.0) | (1,560.0) |
| Transaction Costs/Advisory Fees | -2.0% | -2.5% | -3.0% | (5.2) | (4.7) | (3.4) |
| Wind Down Costs | | | | (43.7) | (68.8) | (100.4) |
| Severance | | | | (4.1) | (4.1) | (4.1) |
| **Total Liquidation Costs** | | | | $ (630.6) | $ (1,101.5) | $ (1,699.0) |

35.     **Chapter 7 Trustee Fees**. Chapter 7 Trustee Fees represents the costs of payment of statutorily allowed reasonable compensation to the Trustee. Estimated Trustee fees are calculated in accordance with section 326 of the Bankruptcy Code. For the purposes of this analysis, Chapter 7 Trustee Fees are assumed to be 2-3% of total liquidation proceeds, excluding recoveries related to cash and cash equivalents available to the Trustee as of the Liquidation Date, consistent with similar analyses for other large and complex Chapter 11 cases.

36.     **Chapter 7 Professional Fees and Claims Resolution Costs.** Pursuant to section 726 of the Bankruptcy Code, incurred by the Trustee, including fees and expenses incurred in

17

NAS2272

resolving the Debtors' claims register and expenses relating to the sale of the Debtors' assets, will be entitled to payment in full prior to any distribution to chapter 11 Administrative Claims and Other Priority Claims. The Debtors' claims register currently includes over 614,000 claims asserted in a face amount of approximately $41 trillion.[7] The Liquidation Analysis assumes that the conditions precedent to the Private-Side Resolutions are not satisfied, including, without limitation, the condition that a plan of reorganization that includes a settlement of Shareholder Claim Rights will be confirmed. As discussed in the Disclosure Statement, in the absence of the Private-Side Resolutions, litigation among various creditor constituencies could continue for many years and at great expense to the Estates. The Liquidation Analysis assumes that such litigation takes 5-10 years, based on evaluation of a number of factors including the Debtors' history and litigation in other complex chapter 11 cases.  Trustee professional fees, including fees incurred in connection with allocation-related litigation and litigation in respect of Shareholder Claim Rights, is estimated to be $520-$1,560 million.

37.     **Transaction cost advisory fees**. The Liquidation Analysis assumes that the Trustee will incur fees estimated to be 2-3% of the sales value of the Debtors' PP&E and intangible assets due to the need to hire brokers and/or other specialists to market and liquidate these assets for the Debtors.

38.     **Wind down costs.** Wind down costs are based on a percentage of general and administrative (G&A) expenses and are estimated to be 20-25% of annual expenses in year 1 and decreasing percentages in subsequent years.

---

[7]  This amount excludes a single personal injury claim that asserts a claim amount of $100 trillion.

NAS2273

39.  **Severance**. Severance is estimated at two weeks of payroll expense.

### e.  Net Liquidation Proceeds and Distributions

40.  To determine Net Liquidation Proceeds, I deducted the Total Liquidation Costs from the Total Liquidation Proceeds. The estimates of the amount of Total Liquidation Proceeds and Total Liquidation Costs are explained above. Based on this analysis, I determined that a liquidation of the Debtors' assets would result in Net Liquidation Proceeds of $281.1 million to $3,195.6 million, with a midpoint of $1,801.6 million.

### f.  Total Claims and Estimated Chapter 7 Recoveries

41.  The Liquidation Analysis sets forth an allocation of the liquidation proceeds to holders of Claims and Interests in accordance with the priorities set forth in section 726 of the Bankruptcy Code. In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules, Claims listed in the Debtors' current books and records and Proofs of Claim filed to date.  In addition, the Liquidation Analysis includes estimates for certain costs and claims not currently asserted in these Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation.  These costs and claims include those incurred to manage the chapter 7 liquidation (such as trustee and professional fees and operational wind-down costs), and any other customary Administrative Claims.

42.  To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims. For purposes of the Liquidation Analysis, I used the Debtors' estimates of Allowed Claims.[8]

---

[8] The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis (and as shown in Figure 1 above) should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

NAS2274

43. **Superpriority Administrative Expense Claims**. The Liquidation Analysis assumes that the DOJ Forfeiture Judgment Claim is Allowed against PPLP in the amount of $2 billion. The Liquidation Analysis also assumes that the DOJ Forfeiture Judgment Credit is unavailable because the conditions for the credit, including the condition that the Court confirm a plan of reorganization that provides for emergence from bankruptcy of a public benefit company (or entity with a similar mission), are not satisfied.

44. **Administrative Claims.** This Liquidation Analysis assumes there will be approximately $341 million in Administrative Expense Claims outstanding as of the Liquidation Date. These claims include post-petition trade payable claims, rejection damage claims resulting from the cancellation of the "Avrio Lease" that was previously assumed post-petition by the Debtors, rejection damage claims resulting from the cancellation of the "PPLP lease" that was entered into post-petition by the Debtors, amounts owed under the debtor's Incentive and Retention plans, and Post-petition accrued expenses.

45. This Liquidation Analysis concludes that, on a consolidated basis, Administrative Expense Claims will receive a 16% recovery in the mid scenario, while receiving a 2% in the low scenario and a 96% recovery in the high scenario. The variance in recovery is due to the significant variability in liquidation proceeds between the low and high case.

46. **Priority Claims**. The Liquidation Analysis assumes that there are $0.8 million in Priority Employee claims based upon the priority wage cap and the number of total employee claims filed. The priority employee claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-96%.

47. The Liquidation Analysis assumes that there are $0.8 million in Priority Tax claims, which consists of accrued Taxes reflected on the balance sheet that are not yet due and

NAS2275

payable, or that are being contested in good faith, in accordance with GAAP. The priority tax claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-100%.

48. **General Unsecured Claims**. The Liquidation Analysis assumes that all undisputed prepetition accounts payable claims will be allowed in full in a hypothetical Chapter 7 liquidation. These claims include a claim estimated at $163 million related to the termination of the Debtors defined benefit pension plan. The Liquidation Analysis includes an estimated claim for rejection damages related to the rejection of the Debtors' prepetition lease at One Stamford Forum. The Liquidation Analysis assumes that all opioid-related claims asserted against the Debtors are asserted solely against Debtor PPLP. As discussed herein and in Section 1.D of the Disclosure Statement, and as shown by the history of litigation against the Debtors and ongoing opioid litigation, a chapter 7 liquidation would likely involve extensive and value-destructive litigation regarding the validity and amount of general unsecured claims, including contingent liability claims, and there can be no assurance that any particular claim or class of claims would ultimately be allowed in a particular amount or at all at the eventual conclusion of such litigation. For illustrative purposes, the Liquidation Analysis shows contingent liability claims in the asserted face amount of approximately $41 trillion, which is the aggregate asserted face amount of the approximately 10% of contingent liability claimants asserted a claim amount (excluding a single personal injury claim that asserts a face amount of $100 trillion).  The Liquidation Analysis shows $0 in liquidation proceeds available for distribution to general unsecured claims in the low and mid scenarios. In the high scenario, the Liquidation Analysis shows $863.9 million in liquidation proceeds available for distribution to general unsecured claims (including $699.1 million in liquidation proceeds available for distribution to contingent liability claims) in

21

NAS2276

the high scenario. These estimated recoveries correspond to an estimated 0.00% recovery in the low, mid, and high scenarios. By contrast, the Plan provides for estimated recoveries of approximately $5.5 billion for contingent liability claims in Classes 4 through 10(b), as detailed in the table in paragraph 10, above.

## V.    Additional Considerations

49.    The Plan also provides certain benefits to creditors that are not quantified in the Liquidation Analysis, but which also support the conclusion that the Plan provides creditors with value that is not less than the value creditors would receive or retain in a liquidation. Expenses for professional fees of restructuring professionals from the commencement of these chapter 11 cases until March 31, 2021 have averaged approximately $5.5 million per week. Any litigation surrounding the claims that creditors could assert against third parties (even if successful) would potentially add to these costs and also risk business disruption and additional destruction of value.[9]

## VI.    Conclusion

50.    Based on the Liquidation Analysis, it is my conclusion that the recoveries to Holders of Claims and Interests under the Plan are at least as much as (and, indeed, in many instances, exceed) the amount that Holders of Claims and Interests would receive or retain in liquidation under chapter 7 of the Bankruptcy Code and, therefore, the Debtors have satisfied the "best interests" test under section 1129(a)(7) of the Bankruptcy Code.[10]

---

[9] The Liquidation Analysis assumes that Holders of Claims and Interests would retain their direct claims, if any, against the Shareholder Released Parties in a hypothetical chapter 7 liquidation.

[10] The recoveries described in the Disclosure Statement that are available to the Holders of Claims are estimates and actual recoveries could differ materially based on, among other

NAS2277

Dated: August 3, 2021          By:    _/s/ Jesse DelConte_
                                      Jesse DelConte
                                      Managing Director
                                      AlixPartners, LLP

---

things, whether the amount of Claims actually Allowed against the applicable Debtor exceeds the
estimates provided herein.

NAS2278

## Appendix A

## Liquidation Analysis

NAS2279

# I.
# LIQUIDATION ANALYSIS

### A. Introduction

Under the "best interests" of creditors test set forth in Bankruptcy Code section 1129(a)(7), a bankruptcy court may not confirm a plan of reorganization unless the plan provides, with respect to each impaired class, that each holder of a claim or interest in such class who does not otherwise vote in favor of the plan receive property of a value, as of the effective date of the plan, that is not less than the amount that such holder would receive or retain if the debtor(s) were liquidated under chapter 7 of the Bankruptcy Code as of such date. To demonstrate that the Plan satisfies the "best interests" of creditors test, the Debtors have prepared the hypothetical liquidation analysis attached hereto as **Exhibit 1** (the "**Liquidation Analysis**"), which is based upon certain assumptions discussed below and in the notes accompanying the Liquidation Analysis (the "**Notes**"). Capitalized terms not defined in the Notes shall have the meanings ascribed to them in the Plan and the Disclosure Statement.

The Liquidation Analysis estimates potential Cash distributions to holders of Allowed Claims and Allowed Interests in a hypothetical chapter 7 liquidation of the Debtors' assets (the "**Assets**"). Asset values discussed in the Liquidation Analysis may differ materially from values referred to in the Plan and Disclosure Statement. The Debtors prepared the Liquidation Analysis with the assistance of their advisors.

### B. Scope, Intent, and Purpose of the Liquidation Analysis

The determination of the costs of, and hypothetical proceeds from, the liquidation of the Assets is an uncertain process involving the extensive use of estimates and assumptions that, although considered reasonable by the Debtors, are inherently subject to significant business, political, economic, and competitive uncertainties and contingencies beyond the control of the Debtors, their management, and their advisors. Inevitably, some assumptions in the Liquidation Analysis would not materialize in an actual chapter 7 liquidation, and unanticipated events and circumstances could affect the ultimate results in an actual chapter 7 liquidation. In addition, the Debtors' management cannot judge with any degree of certainty the effect of the forced-liquidation asset sales on the recoverable value of the Assets. The Liquidation Analysis was prepared for the sole purpose of generating a reasonable, good-faith estimate of the proceeds that would be generated if the Debtors were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis is not intended and should not be used for any other purpose. The underlying financial information in the Liquidation Analysis was not compiled or examined by any independent accountants. No independent appraisals were conducted in preparing the Liquidation Analysis. **NEITHER THE DEBTORS NOR THEIR ADVISORS MAKE ANY REPRESENTATION OR WARRANTY THAT THE ACTUAL RESULTS WOULD OR WOULD NOT APPROXIMATE THE ESTIMATES AND ASSUMPTIONS REPRESENTED IN THE LIQUIDATION ANALYSIS. ACTUAL RESULTS COULD VARY MATERIALLY**.

In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules, Claims listed in the Debtors' current books and records and Proofs of Claim filed to date. In addition, the Liquidation Analysis includes estimates for Claims not currently reflected in the books and records or asserted in the Chapter 11 Cases, but which could be asserted and Allowed in a chapter 7 liquidation, including Administrative Claims, wind-down costs, and trustee fees. The Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims used for purposes of preparing the Liquidation Analysis. The Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims under the Plan. **NOTHING CONTAINED IN THE**

NAS2280

**LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN THE CHAPTER 11 CASES COULD MATERIALLY DIFFER FROM THE ESTIMATED AMOUNTS SET FORTH IN THE LIQUIDATION ANALYSIS.**

## II.
## GLOBAL NOTES TO THE LIQUIDATION ANALYSIS

### A.  Liquidation Date and Appointment of a Chapter 7 Trustee

The Liquidation Analysis assumes the conversion of the Chapter 11 Cases to chapter 7 liquidation cases on or about September 30, 2021 (the "**Liquidation Date**"). On the Liquidation Date, it is assumed that the Bankruptcy Court would appoint a chapter 7 trustee (the "**Trustee**") to oversee the liquidation of the Debtors' Estates. As the Debtors would not generate revenues or cash flows following the Liquidation Date, the Trustee would need to use cash on hand, receivables, and proceeds from the immediate liquidation of Assets to fund the ongoing expenses of the Estates. The Liquidation Analysis assumes that the Trustee would have adequate liquidity to fund the wind-down of the operations and the fees associated with such a liquidation. In the event of an actual liquidation of the Debtors, there is a risk that the Trustee would not have adequate liquidity on hand to settle administrative expenses as incurred, at which point the Trustee might request a dismissal of the chapter 7 cases. If such a scenario were to occur, the recoveries to creditors would be severely impaired as compared with the hypothetical results contained in the Liquidation Analysis.

For the purposes of the Liquidation Analysis, the Debtors are using the most recent available balance sheets as of February 28, 2021 (the "**Balance Sheet Date**") as the basis for book value of the Assets. It is assumed there would be no material change between the Debtors' Assets on the Liquidation Date and the Balance Sheet Date, except as otherwise noted in the assumptions below. The Liquidation Analysis assumes that the Trustee would wind down and monetize the Assets of the Debtors over a twelve-month period, using cash on hand and the proceeds of the Assets to fund the expenses associated with the wind-down of operations. Litigation in respect of Shareholder Claim Rights[1] and claims allowance and allocation could extend beyond twelve months and generate significant costs that could further dilute recoveries in a chapter 7 liquidation.  The Liquidation Analysis has been drafted on a legal-entity-by-legal-entity basis for each of the Debtors.

### B.  Primary Assets of the Debtors

The Debtors have Assets[2] in the form of (i) cash and cash equivalents, (ii) accounts receivable, (iii) inventory ("**Inventory**"), (iv) restricted cash accounts (v) prepaid expenses & other current assets, (vi) property, plant, and equipment ("**PP&E**"), (vii) intangible assets, (viii) investments in non-Debtor companies, (ix) other non-current assets, (x) Shareholder Claim Rights. The Liquidation Analysis assumes a range (high, medium, and low) of recoveries for these Assets assuming a forced-liquidation asset sale process for certain of the Assets conducted by the Trustee. The Debtors' management believes that values derived from the liquidation assumed in the Liquidation Analysis do not generate a significant recovery for stakeholders as compared with the recovery proposed under the Plan.

The Liquidation Analysis assumes the Debtors would allow, and the Trustee would use, the proceeds of the liquidation of Assets to fund the wind-down expenses. These receivables and other proceeds would be

---

[1] For purposes of the Liquidation Analysis, "**Shareholder Claim Rights**" means any and all rights, titles, privileges, interests, claims, demands and entitlements of the Debtors arising under, or attributable to, any Causes of Action or choses in action against, or proceeds, payments, benefits or indemnities from, any Sackler family members and trusts, including any Shareholder Party, in each case whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent.

[2] The Liquidation Analysis does not include any estimate for recoveries for Purdue Insurance Rights.

NAS2281

used first to fund the liquidation of the Estates and then to satisfy Claims in the order of priority set forth in section 726 of the Bankruptcy Code.

### C.  Forced-Liquidation Sale Process

The liquidation sale process would proceed concurrently with the shutdown of the Debtors' manufacturing facility in Wilson, North Carolina.  A significant portion of the gross proceeds distributable to creditors would come from the collection of accounts receivable as well as from the liquidation of inventory, real property and equipment and certain brands, patents and other intangible assets, which liquidation is subject to various offsetting costs. The Liquidation Analysis also assumes that certain staff currently employed by the Debtors would remain with the Debtors through the course of the wind-down. Costs associated with these employees have been included in the operational wind-down expense to support the Trustee in collecting and liquidating the Assets.

The Liquidation Analysis assumes that the Debtors will be subject to a withdrawal liability on account of the Purdue Pension Plan (the "**Qualified Pension Plan**") and the PBGC. The Debtors estimate that the Qualified Pension Plan claim amounts would total approximately $163 million based on the Debtors' most recent actuarial estimates of withdrawal liabilities. The Debtors also assumed that the Qualified Pension Plan claims would be asserted at each of the Debtor entities, based on a "controlled group" (as defined in the Employee Retirement Income Security Act) theory of liability. Further, the Debtors have made the assumption that certain other claims which could be asserted in a chapter 7 liquidation—such as potential rejection damages claims for contracts that would be assumed or rejected in a chapter 11 reorganization—are not estimated in the Liquidation Analysis, which claims would otherwise further dilute recovery to creditors.

The Liquidation Analysis assumes that the estimated sale proceeds for the Assets would be less than the tax basis of the Assets and would not generate any additional tax liabilities. Should the tax treatment and effect of the liquidation transactions result in a tax liability that was not reduced by other tax benefits, recoveries in the Liquidation Analysis could change materially.

### III.
### SPECIFIC NOTES TO THE ASSET ASSUMPTIONS
### CONTAINED IN THE LIQUIDATION ANALYSIS

The Liquidation Analysis refers to certain categories of Assets. The numerical/alphabetical designations below correspond to the line items listed in Exhibit 1, each with a specific Note.

1.  Cash and Cash Equivalents

    - In the Liquidation Analysis, "cash and cash equivalents" comprises cash and marketable securities. The cash balance shown is the Debtors' current unrestricted cash forecast as of the Liquidation Date.  Full recovery is anticipated on cash and marketable securities.

2.  Accounts Receivable

    - Accounts Receivable includes all third-party trade accounts receivable. Allowances for doubtful accounts, accrued returns, cash payment discounts, wholesaler fees and chargebacks are included in receivables.  The liquidation analysis assumes that upon conversion to a chapter 7, the Debtors' ability to collect on its receivables will be negatively impacted by an increase in product returns for certain products as the end market demand for its products declines.

3

NAS2282

- Approximately 90% of the Debtors' outstanding trade accounts receivable are due from 3 main pharmaceutical distributors from which the Debtors have historically seen minimal loss rates. However, potential risks exist around the ability to collect on the Debtors' outstanding accounts receivable due to potential setoff claims against the Debtors.

- Accounts receivable due from associated companies are deemed to have the same recovery assumptions as accounts receivable with third-parties.

- Debtor-to-Debtor intercompany receivables are deemed to have no recoverable value in this analysis.

- For purposes of the Liquidation Analysis, the liquidation proceeds of accounts receivable were estimated to range from 50-76% of net book value.

3.  Inventory

- Inventory consists of raw materials, work in process and finished goods which were evaluated for recovery at the product level. The book value of inventory represents the lower of cost or market value. The liquidation analysis assumes that manufacturing facilities would initiate shutdown at the start of the liquidation period and that the raw material and work in progress would not have recoverable value. The Debtors would be expected to sell the remaining finished goods at significantly higher than cost and therefore, results in estimated recovery rate ranges over 100%. The liquidation analysis assumes that sufficient proceeds will not be immediately available to pay accrued rebates, that the Debtors would need to significantly decrease the market price of inventory on hand to account for the increased final cost to customers.

- The liquidation analysis assumes a recovery range for finished goods of 199-397% of net book value and a recovery range for total inventory of 100-200%.

4.  Prepaid Expenses and Other Current Assets

- Prepaid Expenses and Other Current Assets primarily includes prepaid retainers and prepaid insurance expense for which the Debtors anticipate no recoverable value.

5.  Restricted Cash

- Restricted Cash consists primarily of cash collateralized for insurance policies and trust account agreements with pharmacy benefit managers. The funds related to insurance policies have an estimated recovery of 0-50% of net book value.

6.  Property and Equipment, net (PP&E)

- Property and Equipment, net ("PP&E") comprises Land and Buildings, Leasehold Improvements, Machinery & Equipment ("Equipment"), Furniture and Fixtures ("Furniture"), Computer Software and Equipment ("Software") and Construction in Progress. Recovery ranges for PP&E were based on management's knowledge of the underlying assets and estimates of their ultimate sale values. The estimated recovery ranges for the various components of PP&E are as follows:

4

NAS2283

- o  Land and Buildings   25-45%
- o  Equipment                5-15%,
- o  Furniture                   5-10%,
- o  Software                    2-4%.

- Leasehold Improvements and Construction in Progress are estimated to have no recovery value.

- PP&E consists primarily of a manufacturing facility in Wilson, NC owned by Purdue Pharmaceuticals L.P. and Leasehold improvements owned by Rhodes Pharmaceuticals L.P.  The blended recovery for PP&E is 14-27%.

7.  Investments at Cost

- Investments at Cost include the Debtors' investments in early stage privately held companies.  Primarily due to the estimated high illiquidity discounts, the Debtors assume a recovery rate of 38-63%.

8.  Intangible Assets

- Intangible assets include brands, patents, trademarks, know-how and ANDAs for branded and generic products.

   - o  Intangible assets are held on the Debtors' balance sheets at cost.
   - o  The liquidation analysis estimates that the liquidation of the brands held by Avrio and the ANDAs, patents and other intangibles for the Debtors' generic and branded pharmaceutical products would be at a significant discount to the going concern value of the Debtors' ongoing business operations.
   - o  Total proceeds are estimated to be $104-$242 million or 110-254% of net book value

9.  Other Assets (Non-Current)

- Other long-term assets consist primarily of prepaid rent and are estimated to have no recoverable value.

- Proceeds from Causes of Action arising under chapter 5 of the Bankruptcy Code ("Avoidance Actions") may be available for distribution to Holders of Administrative Claims, Priority Claims, and General Unsecured Claims in accordance with the priorities established by the Bankruptcy Code. The Debtors, however, believe that recoveries from Avoidance Actions (other than, for the avoidance of doubt, recoveries in respect of Shareholder Claim Rights), if any, would be speculative in nature and have not included any such proceeds in the Liquidation Analysis.

10. Shareholder Claim Rights

- The Liquidation Analysis assumes that there is no settlement with the shareholders.[3]
- The amount of any hypothetical judgment is unknowable.  However, the Debtors believe that recoveries in respect of Shareholder Claim Rights in the context of a hypothetical chapter 7

---

[3] To the extent relevant for purposes of the "best interests" of creditors test set forth in Bankruptcy Code section 1129(a)(7), the Liquidation Analysis assumes that, in a chapter 7 scenario, Holders of Claims and Interests and other non-Debtor Persons would retain their direct claims, if any, against the Shareholder Released Parties.  Section III.AA(2)(ii)(c) of the Disclosure Statement contains a discussion of the value of such claims in a chapter 7 scenario.

5

NAS2284

liquidation would likely be lower than recoveries under the Shareholder Settlement Agreement for a number of reasons, including:

- o Shareholder Released Parties would pay for Shareholder Releases under the Plan.
- o The Trustee and its counsel would not be familiar with the extremely complicated and extensive factual record, which could affect the Trustee's ability to prosecute the Shareholder Claim Rights.
- o The Shareholder Settlement allows for the consensual resolution of other complex issues, including collectability.
- o In a hypothetical chapter 7 liquidation, the Debtors would be one party of many pursuing claims against the Debtors' shareholders, and the Debtors might not "win the race to the courthouse."

• The Liquidation Analysis assumes that the recoveries in respect of Shareholder Claim Rights are estimated to be $746-$2,238 million and received at PPLP.

- o To estimate midpoint recoveries, the Debtors discounted the total value of contributions under the Shareholder Settlement to 12/31/2021 using a discount rate of 9% and estimated recovery rate of 50% under a hypothetical chapter 7 liquidation scenario, exclusive of litigation-related costs and expenses.

### IV.
### SPECIFIC NOTES TO THE LIQUIDATION COST ASSUMPTIONS CONTAINED IN THE LIQUIDATION ANALYSIS

1. Chapter 7 Trustee Fees

• Represents the costs of payment of statutorily allowed reasonable compensation to the Trustee. Estimated Trustee fees are calculated in accordance with section 326 of the Bankruptcy Code as follows: not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. For the purposes of this analysis, Chapter 7 Trustee Fees are assumed to be 2-3% of total liquidation proceeds, excluding recoveries related to cash and cash equivalents available to the Trustee as of the Liquidation Date.

2. Chapter 7 Professional Fees and Claims Resolution Costs

• Pursuant to section 726 of the Bankruptcy Code, the allowed administrative expenses incurred by the Trustee, including fees and expenses incurred in resolving the Debtors' claims register, which currently constitutes over 614,000 claims asserted in a face amount of approximately $41 trillion[4], and expenses relating to the sale of the Debtors' assets.

• The Trustee's fees and expenses will be entitled to payment in full prior to any distribution to chapter 11 Administrative Claims and Other Priority Claims.

• The Liquidation Analysis assumes that the Private-Side Resolutions, which among other things were conditioned on confirmation of a plan of reorganization that includes a settlement of Shareholder Claim Rights, are not satisfied.

• As discussed in Section 1.D of the Disclosure Statement, absent the Private-Side Resolutions,

---

[4] Exclusive of a single personal injury claim filed in the amount of $100 trillion. Claims filed in amounts certain represent approximately 10% of the claims pool.

NAS2285

litigation among various creditor constituencies could continue for many years and at great expense. The Liquidation Analysis assumes that such litigation takes 5-10 years. Trustee professional fees, including fees incurred in connection with allocation-related litigation and litigation in respect of Shareholder Claim Right, is estimated to be $520-$1,560 million.

3. Transaction cost advisory fees

- Fees are estimated to be 2-3% of the sales value of the Debtors' PP&E and intangible assets due to the need to hire brokers and/or other specialists to market and liquidate these assets for the Debtors.

4. Wind down costs

- Wind down costs are based on a percentage of general and administrative (G&A) expenses and are estimated to be 20-25% of annual expenses in year 1 and decreasing percentages in subsequent years.

5. Severance

- Severance is estimated at two weeks of payroll expense.

## IV.
## SPECIFIC NOTES TO THE CLAIMS ASSUMPTIONS
## CONTAINED IN THE LIQUIDATION ANALYSIS

The Liquidation Analysis sets forth an allocation of the liquidation proceeds to holders of Claims and Interests in accordance with the priorities set forth in section 726 of the Bankruptcy Code. In preparing the Liquidation Analysis, the Debtors estimated Allowed Claims based upon a review of Claims listed on the Debtors' Schedules, Claims listed in the Debtors' current books and records and Proofs of Claim filed to date. In addition, the Liquidation Analysis includes estimates for certain costs and claims not currently asserted in these Chapter 11 Cases, but which could be asserted and allowed in a chapter 7 liquidation. These costs and claims include those incurred to manage the chapter 7 liquidation (such as trustee and professional fees and operational winddown costs), and additional Administrative Claims.

To date, the Bankruptcy Court has not estimated or otherwise fixed the total amount of Allowed Claims. For purposes of the Liquidation Analysis, the Debtors' estimates of Allowed Claims are used. Therefore, the Debtors' estimate of Allowed Claims set forth in the Liquidation Analysis should not be relied on for any other purpose, including determining the value of any distribution to be made on account of Allowed Claims and Interests under the Plan.

1. Superpriority Administrative Expense Claims

- The Liquidation Analysis assumes that the DOJ Forfeiture Judgment Claim is Allowed against PPLP in the amount of $2 billion and that the DOJ Forfeiture Judgment Credit is unavailable.

2. Administrative Claims

- Administrative Claims arising in a hypothetical chapter 7 liquidation may include, among other things: (1) Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code; (2) postpetition trade payables; (3) accrued postpetition employee obligations; (4) accrued taxes; (5) accrued

NAS2286

utility payments; and (6) post-petition intercompany payables.

- This Liquidation Analysis assumes there will be approximately $341 million in Administrative Expense Claims outstanding as of the Liquidation Date, which includes:

    o Post-petition trade payable claims
    o Rejection damage claims resulting from the cancellation of the "Avrio Lease" that was previously assumed post-petition by the Debtors
    o Rejection damage claims resulting from the cancellation of the "PPLP lease" that was entered into post-petition by the Debtors
    o Amounts owed under the debtor's Incentive and Retention plans
    o Post-petition accrued expenses

- This Liquidation Analysis concludes that, on a consolidated basis, Administrative Expense Claims will receive a 16% recovery in the mid scenario, while receiving a 2% in the low scenario and a 96% recovery in the high scenario. The variance in recovery is due to the significant variability in liquidation proceeds between the low and high case.

3. Priority Claims

- The Liquidation Analysis assumes that there are $0.8 million in Priority Employee claims based upon the priority wage cap and the number of total employee claims filed. The priority claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-96%.

- The Liquidation Analysis assumes that there are $0.8 million in Priority Tax claims, which consists of accrued Taxes reflected on the balance sheet that are not yet due and payable, or that are being contested in good faith, in accordance with GAAP. The priority claims are assumed to receive an equivalent recovery to the assumed administrative claims, which ranges from 0-100%.

4. Class 4 – General Unsecured Claims

- Prepetition accounts payable – The Liquidation Analysis assumes that all undisputed prepetition accounts payable claims will be allowed in full in a Chapter 7 scenario.

- Pension Benefit Guaranty Corporation termination claim – The Liquidation Analysis includes a claim estimate of $163 million related to the termination of the Debtors defined benefit pension plan.

- Contract rejection damages – The Liquidation Analysis includes an estimate for rejection damages related to the rejection of the Debtors' prepetition lease at One Stamford Forum.

- Opioid Litigation –The Liquidation Analysis assumes that all opioid-related claims asserted against the Debtors are asserted solely against Debtor PPLP. As discussed herein and in Section 1.D of the Disclosure Statement, a chapter 7 liquidation would likely involve extensive and value-destructive litigation regarding the validity and amount of the these claims, and there can be no assurance that any particular claim would ultimately be allowed in a particular amount or at all at the eventual conclusion of such litigation. For illustrative purposes only, the Liquidation

8

NAS2287

Analysis shows contingent liability claims in the asserted face amount of approximately $41 trillion[5].

---

[5] Exclusive of a single personal injury claim filed in the amount of $100 trillion. Claims filed in amounts certain represent approximately 10% of the claims pool.

NAS2288

# **EXHIBIT 1**

## **Hypothetical Liquidation Analysis**

**NAS2289**

**Purdue Pharma L.P., et al**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ 943.2 | 100.0% | 100.0% | 100.0% | $ 943.2 | $ 943.2 | $ 943.2 |
| Accounts Receivable (Net) | 150.3 | 75.5% | 62.9% | 50.3% | 113.5 | 94.6 | 75.7 |
| Inventories, Net | 83.3 | 200.1% | 150.1% | 100.0% | 166.7 | 125.0 | 83.4 |
| Prepaid Expenses & Other Current Assets | 51.1 | 4.8% | 3.6% | 2.4% | 2.4 | 1.8 | 1.2 |
| Restricted Cash | 29.9 | 1.3% | 0.6% | 0.0% | 0.4 | 0.2 | - |
| **Total Current Assets** | $ 1,257.8 | | | | $ 1,226.2 | $ 1,164.8 | $ 1,103.4 |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 66.5 | 26.7% | 20.1% | 13.6% | $ 17.8 | $ 13.4 | $ 9.0 |
| Investments at Cost | 44.6 | 63.2% | 50.7% | 38.2% | 28.2 | 22.6 | 17.1 |
| Investments in Associated Companies | 9.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | 148.5 | 50.0% | 25.0% | 0.0% | 74.3 | 37.1 | - |
| Intangible Assets, Net | 95.1 | 254.0% | 181.9% | 109.8% | 241.5 | 172.9 | 104.4 |
| Other Assets | 16.5 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 1,638.7 | 96.9% | 86.1% | 75.3% | $ 1,587.9 | $ 1,410.9 | $ 1,233.9 |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 1,587.9 | $ 1,410.9 | $ 1,233.9 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| **Total Liquidation Proceeds** | | | | | $ 3,826.3 | $ 2,903.2 | $ 1,980.0 |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | (57.7) | (49.0) | (31.1) |
| Chapter 7 Professional Fees | | | | | (520.0) | (975.0) | (1,560.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (5.2) | (4.7) | (3.4) |
| Wind Down Costs | | | | | (43.7) | (68.8) | (100.4) |
| Severance | | | | | (4.1) | (4.1) | (4.1) |
| **Total Liquidation Costs** | | | | | $ (630.6) | $ (1,101.5) | $ (1,699.0) |
| | | | | | | | |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 3,195.6 | $ 1,801.6 | $ 281.1 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ (2,000.0) | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 2,000.0 | 100.0% | 1,651.8 | 82.6% | 266.5 | 13.3% |
| Administrative Expense Claims | $ (341.4) | $ 344.9 | $ 341.4 | $ 337.9 | 330.2 | 95.7% | 54.3 | 15.9% | 8.1 | 2.4% |
| Priority Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | 1.6 | 97.8% | 0.0 | 0.7% | 0.0 | 0.1% |
| LSTC - Prepetition Accounts Payable | (12.9) | 12.9 | 12.9 | 12.9 | 1.6 | 12.8% | 0.7 | 5.5% | 0.0 | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 163.0 | 100.0% | 94.8 | 58.2% | 6.4 | 3.9% |
| Contract Rejection Damages | (41.1) | 41.1 | 41.1 | 41.1 | 0.1 | 0.2% | 0.0 | 0.0% | - | 0.0% |
| Contingent Litigation Liability | (41,000,000.0) | 41,000,000.0 | 41,000,000.0 | 41,000,000.0 | 699.1 | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (41,000,217.0) | $ 41,000,217.0 | $ 41,000,217.0 | $ 41,000,217.0 | 863.9 | 0.0% | 95.5 | 0.0% | 6.4 | 0.0% |
| **Total Claims** | $ (41,002,560.0) | $ 41,002,563.5 | $ 41,002,560.0 | $ 41,002,556.5 | $ 3,195.6 | 0.0% | $ 1,801.6 | 0.0% | $ 281.1 | 0.0% |

11

NAS2290

**Purdue Pharma L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ 943.2 | 100.0% | 100.0% | 100.0% | $ 943.2 | $ 943.2 | $ 943.2 |
| Accounts Receivable (Net) | 79.6 | 59.7% | 49.8% | 39.8% | 47.6 | 39.6 | 31.7 |
| Inventories, Net | 9.1 | 1386.5% | 1039.9% | 693.2% | 125.5 | 94.1 | 62.7 |
| Prepaid Expenses & Other Current Assets | 28.7 | 3.9% | 2.9% | 1.9% | 1.1 | 0.8 | 0.6 |
| Restricted Cash | 29.9 | 1.3% | 0.6% | 0.0% | 0.4 | 0.2 | - |
| **Total Current Assets** | $ 1,090.4 | | | | $ 1,117.7 | $ 1,077.9 | $ 1,038.2 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 6.9 | 5.5% | 4.1% | 2.6% | $ 0.4 | $ 0.3 | $ 0.2 |
| Investments at Cost | 10.5 | 25.0% | 12.5% | 0.0% | 2.6 | 1.3 | - |
| Investments in Associated Companies | 383.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | 148.4 | 50.0% | 25.0% | 0.0% | 74.2 | 37.1 | - |
| Intangible Assets, Net | 3.8 | 1159.6% | 773.1% | 386.5% | 44.3 | 29.5 | 14.8 |
| Other Assets | 3.5 | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 1,647.2 | 75.2% | 69.6% | 63.9% | $ 1,239.2 | $ 1,146.2 | $ 1,053.1 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 1,239.2 | $ 1,146.2 | $ 1,053.1 |
| Sackler Settlement | | | | | 2,238.3 | 1,492.2 | 746.1 |
| **Total Liquidation Proceeds** | | | | | $ 3,477.6 | $ 2,638.4 | $ 1,799.2 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (50.7) | $ (42.4) | $ (25.7) |
| Chapter 7 Professional Fees | | | | | (472.5) | (886.1) | (1,417.8) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.9) | (0.7) | (0.4) |
| Wind Down Costs | | | | | (32.5) | (51.1) | (74.6) |
| Severance | | | | | (2.0) | (2.0) | (2.0) |
| **Total Liquidation Costs** | | | | | $ (558.6) | $ (982.3) | $ (1,520.5) |
| **Funding of Liquidation Costs for Other Debtor Entities** | | | | | $ (2.7) | $ (4.3) | $ (12.2) |
| **Excess Proceeds Available from Other Debtor Entities** | | | | | $ 53.0 | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 2,969.3 | $ 1,651.8 | $ 266.5 |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ (2,000.0) | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | $ 2,000.0 | 100.0% | $ 1,651.8 | 82.6% | $ 266.5 | 13.3% |
| Administrative Expense Claims | $ (268.6) | $ 268.6 | $ 268.6 | $ 268.6 | $ 268.6 | 100.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ (1.6) | $ 1.6 | $ 1.6 | $ 1.6 | 1.6 | 100.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (7.7) | 7.7 | 7.7 | 7.7 | 0.0 | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | (40.6) | 40.6 | 40.6 | 40.6 | 0.0 | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | (41,000,000.0) | 41,000,000.0 | 41,000,000.0 | 41,000,000.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (41,000,211.3) | $ 41,000,211.3 | $ 41,000,211.3 | $ 41,000,211.3 | $ 699.1 | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (41,002,481.6) | $ 41,002,481.6 | $ 41,002,481.6 | $ 41,002,481.6 | $ 2,969.3 | 0.0% | $ 1,651.8 | 0.0% | $ 266.5 | 0.0% |

12

NAS2291

**Nayatt Cove Lifescience**

| ($ in millions) | | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Assets | Book Value | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $          - | 0.0% | 0.0% | 0.0% | $          - | | $          - | | $          - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Prepaid Expenses & Other Current Assets | 0.0 | 6.0% | 4.5% | 3.0% | 0.0 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Total Current Assets | $          0.0 | | | | $          0.0 | | $          0.0 | | $          0.0 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $          - | 0.0% | 0.0% | 0.0% | $          - | | $          - | | $          - | |
| Investments at Cost | 34.1 | 75.0% | 62.5% | 50.0% | 25.6 | | 21.3 | | 17.1 | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Total Assets | $          34.1 | 75.0% | 62.5% | 50.0% | $          25.6 | | $          21.3 | | $          17.1 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $          25.6 | | $          21.3 | | $          17.1 | |
| Sackler Settlement | | | | | - | | - | | - | |
| Total Liquidation Proceeds | | | | | $          25.6 | | $          21.3 | | $          17.1 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $          (0.5) | | $          (0.5) | | $          (0.5) | |
| Chapter 7 Professional Fees | | | | | (4.5) | | (7.2) | | (10.4) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| Total Liquidation Costs | | | | | $          (5.0) | | $          (7.7) | | $          (10.9) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $          - | | $          - | | $          - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $          - | | $          - | | $          - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $          20.6 | | $          13.6 | | $          6.1 | |

| | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Class | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $          - | $          - | $          - | $          - | $          - | 0.0% | $          - | 0.0% | $          - | 0.0% |
| Administrative Expense Claims | $          - | $          - | $          - | $          - | $          - | 0.0% | $          - | 0.0% | $          - | 0.0% |
| Priority Claims | $          - | $          - | $          - | $          - | $          - | 0.0% | $          - | 0.0% | $          - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 20.6 | 12.6% | 13.6 | 8.4% | 6.1 | 3.8% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $          (163.0) | $          163.0 | $          163.0 | $          163.0 | $          20.6 | 12.6% | $          13.6 | 8.4% | $          6.1 | 3.8% |
| Total Claims | $          (163.0) | $          163.0 | $          163.0 | $          163.0 | $          20.6 | 12.6% | $          13.6 | 8.4% | $          6.1 | 3.8% |

13

NAS2292

**Purdue Pharmaceuticals L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Inventories, Net | 32.9 | 2.4% | 1.8% | 1.2% | 0.8 | | 0.6 | | 0.4 | |
| Prepaid Expenses & Other Current Assets | 7.1 | 6.0% | 4.5% | 3.0% | 0.4 | | 0.3 | | 0.2 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 40.1 | | | | $ 1.2 | | $ 0.9 | | $ 0.6 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ 55.4 | 31.1% | 23.4% | 15.8% | $ 17.2 | | $ 13.0 | | $ 8.8 | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | 0.1 | 50.0% | 25.0% | 0.0% | 0.1 | | 0.0 | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | 12.9 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 108.5 | 17.1% | 12.8% | 8.6% | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 18.5 | | $ 13.9 | | $ 9.4 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.4) | | $ (0.3) | | $ (0.3) | |
| Chapter 7 Professional Fees | | | | | (2.5) | | (4.7) | | (7.5) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.3) | | (0.3) | | (0.3) | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | (0.6) | | (0.6) | | (0.6) | |
| **Total Liquidation Costs** | | | | | $ (3.8) | | $ (6.0) | | $ (8.7) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 14.7 | | $ 7.9 | | $ 9.4 | |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (3.8) | $ 3.8 | $ 3.8 | $ 3.8 | $ 3.8 | 100.0% | $ 3.8 | 100.0% | $ 0.6 | 16.9% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.5) | 0.5 | 0.5 | 0.5 | 0.0 | 6.7% | 0.0 | 2.5% | - | 0.0% |
| PlBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 10.9 | 6.7% | 4.2 | 2.5% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.5) | $ 163.5 | $ 163.5 | $ 163.5 | $ 10.9 | 6.7% | $ 4.2 | 2.5% | $ - | 0.0% |
| **Total Claims** | $ (167.2) | $ 167.2 | $ 167.2 | $ 167.2 | $ 14.7 | 8.8% | $ 7.9 | 4.7% | $ 0.6 | 0.4% |

14

NAS2293

**Purdue Neuroscience Company**

| ($ in millions) | | | Estimated Recovery Rate | | | Estimated Recovery Value | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Assets | Book Value | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | | $ - | $ - | $ - |
| | | | | | | | | |
| **Non-Current Assets** | | | | | | | | |
| Property and Equipment, net | $ - | | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | | 25.0% | 12.5% | 0.0% | | | |
| Investments in Associated Companies | - | | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | | $ - | $ - | $ - |
| | | | | | | | | |
| **Liquidation Costs** | | | | | | | | |
| Chapter 7 Trustee Fees | | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | | - | - | - |
| Severance | | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | | $ - | $ - | $ - |
| | | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | | $ - | $ - | $ - |
| | | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | | $ - | $ - | $ - |

| | | | Estimated Claim Allowed | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Creditor Class | | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.0) | | $ 0.0 | | $ 0.0 | | $ 0.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | | - | | - | | - | | | 0.0% | | 0.0% | | 0.0% |
| PBGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | | - | | - | | - | | | 0.0% | | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | | - | | - | | - | | | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.0) | | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

15

**NAS2294**

**Purdue Pharma of Puerto Rico**

($ in millions)

| | | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Assets | Book Value | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | | | | |
| Prepaid Expenses & Other Current Assets | 0.0 | 6.0% | 4.5% | 3.0% | 0.0 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 0.0 | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 0.0 | 6.0% | 4.5% | 3.0% | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |
| | | | | | | | | | | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.0) | | (0.0) | | (0.0) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (0.0) | | $ (0.0) | | $ (0.0) | |
| | | | | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| | | | | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.0 | | $ 0.0 | | $ 0.0 | |

| | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Creditor Class | Book Value | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 | 79.0% | $ 0.0 | 44.6% | $ 0.0 | 7.2% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.0) | 0.0 | 0.0 | 0.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

16

**NAS2295**

**Purdue Transdermal Technologies L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | (0.8) | -18.4% | -15.3% | -12.3% | 0.1 | | 0.1 | | 0.1 | |
| Inventories, Net | 1.6 | 1552.5% | 1164.4% | 776.2% | 24.5 | | 18.4 | | 12.3 | |
| Prepaid Expenses & Other Current Assets | 1.7 | 6.0% | 4.5% | 3.0% | 0.1 | | 0.1 | | 0.1 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 2.5 | | | | $ 24.8 | | $ 18.6 | | $ 12.4 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 2.5 | 984.6% | 738.9% | 493.3% | $ 24.8 | | $ 18.6 | | $ 12.4 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 24.8 | | $ 18.6 | | $ 12.4 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 24.8 | | $ 18.6 | | $ 12.4 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.5) | | $ (0.5) | | $ (0.4) | |
| Chapter 7 Professional Fees | | | | | (3.3) | | (6.2) | | (10.1) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (3.8) | | $ (6.7) | | $ (10.5) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 21.0 | | $ 11.9 | | $ 1.9 | |

| Creditor Class | | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (1.6) | $ 1.6 | | $ 1.6 | | $ 1.6 | | $ 1.6 | 100.0% | $ 1.6 | 100.0% | $ 1.6 | 100.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.2) | 1.2 | | 1.2 | | 1.2 | | 0.1 | 11.8% | 0.1 | 6.2% | 0.0 | 0.2% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | 19.2 | 11.8% | 10.2 | 6.2% | 0.3 | 0.2% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (164.2) | $ 164.2 | | $ 164.2 | | $ 164.2 | | $ 19.4 | 11.8% | $ 10.2 | 6.2% | $ 0.3 | 0.2% |
| **Total Claims** | $ (165.8) | $ 165.8 | | $ 165.8 | | $ 165.8 | | $ 21.0 | 12.7% | $ 11.9 | 7.2% | $ 1.9 | 1.2% |

17

NAS2296

**Imbrium Therapeutics L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 0.5 | 75.0% | 62.5% | 50.0% | 0.4 | 0.3 | 0.2 |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 0.5 | | | | $ 0.4 | $ 0.3 | $ 0.2 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ 0.5 | 10.2% | 6.8% | 3.5% | $ 0.1 | $ 0.0 | $ 0.0 |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 1.0 | 41.5% | 33.7% | 26.0% | $ 0.4 | $ 0.3 | $ 0.3 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.4 | $ 0.3 | $ 0.3 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.4 | $ 0.3 | $ 0.3 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.1) | (0.1) | (0.2) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.0) | (0.0) | (0.0) |
| Wind Down Costs | | | | | (1.3) | (2.1) | (3.0) |
| Severance | | | | | (0.3) | (0.3) | (0.3) |
| **Total Liquidation Costs** | | | | | $ (1.7) | $ (2.5) | $ (3.5) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ 1.3 | $ 2.2 | $ 3.3 |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (4.3) | $ 4.3 | $ 4.3 | $ 4.3 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.2) | 0.2 | 0.2 | 0.2 | | 0.0% | | 0.0% | | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | | 0.0% | | 0.0% | | 0.0% |
| Contract Rejection Damages | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| Contingent Litigation Liability | - | - | - | - | | 0.0% | | 0.0% | | 0.0% |
| General Unsecured Claims | $ (163.2) | 163.2 | 163.2 | 163.2 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (167.5) | $ 167.5 | $ 167.5 | $ 167.5 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2297

**Greenfield Bio Ventures L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash | - | | | | - | - | - |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | (1.3) | (2.1) | (3.1) |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (1.3) | $ (2.1) | $ (3.1) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ 1.3 | $ 2.1 | $ 3.1 |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2298

**Adlon Therapeutics L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | 2.2 | 75.0% | 62.5% | 50.0% | 1.7 | | 1.4 | | 1.1 | |
| Inventories, Net | 0.7 | 76.6% | 57.4% | 38.3% | 0.6 | | 0.4 | | 0.3 | |
| Prepaid Expenses & Other Current Assets | 5.5 | 6.0% | 4.5% | 3.0% | 0.3 | | 0.2 | | 0.2 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 8.5 | | | | $ 2.6 | | $ 2.1 | | $ 1.6 | |
| | | | | | | | | | | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | 8.0 | 56.5% | 28.2% | 0.0% | 4.5 | | 2.3 | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 16.5 | 42.9% | 26.2% | 9.5% | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| | | | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 7.1 | | $ 4.3 | | $ 1.6 | |
| | | | | | | | | | | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.1) | | $ (0.1) | | $ (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.4) | | (1.4) | | (2.9) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.1) | | (0.1) | | - | |
| Wind Down Costs | | | | | (1.4) | | (2.1) | | (3.1) | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $ (2.0) | | $ (3.7) | | $ (6.0) | |
| | | | | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ 4.5 | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| | | | | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 5.1 | | $ 0.6 | | $ - | |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (3.1) | $ 3.1 | $ 3.1 | $ 3.1 | $ 3.1 | 100.0% | $ 0.6 | 18.5% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
|    LSTC - Prepetition Accounts Payable | (0.4) | 0.4 | 0.4 | 0.4 | 0.0 | 1.2% | - | 0.0% | - | 0.0% |
|    PIBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 2.0 | 1.2% | - | 0.0% | - | 0.0% |
|    Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
|    Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.4) | $ 163.4 | $ 163.4 | $ 163.4 | $ 2.0 | 1.2% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (166.5) | $ 166.5 | $ 166.5 | $ 166.5 | $ 5.1 | 3.0% | $ 0.6 | 0.3% | $ - | 0.0% |

NAS2299

**Purdue Pharma Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate High | Mid | Low | Estimated Recovery Value High | Mid | Low |
|---|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | 0.4 | 6.0% | 4.5% | 3.0% | 0.0 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 0.4 | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | 9.7 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 10.1 | 0.2% | 0.2% | 0.1% | $ 0.0 | $ 0.0 | $ 0.0 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (0.0) | $ (0.0) | $ (0.0) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.0 | $ 0.0 | $ 0.0 |

| Creditor Class | Book Value | Estimated Claim Allowed High | Mid | Low | Estimated Recovery by Class of Claims ($)/(%) High | | Mid | | Low | |
|---|---|---|---|---|---|---|---|---|---|---|
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | $ 0.0 | 69.0% | $ 0.0 | 39.0% | $ 0.0 | 6.3% |
| LSTC - Prepetition Accounts Payable | (0.2) | 0.2 | 0.2 | 0.2 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.2) | $ 163.2 | $ 163.2 | $ 163.2 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.2) | $ 163.2 | $ 163.2 | $ 163.2 | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

21

NAS2300

**Purdue Pharmaceutical Products L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 0.1 | 75.0% | 62.5% | 50.0% | 0.1 | 0.1 | 0.1 |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash | - | | | | - | - | - |
| **Total Current Assets** | $ 0.1 | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 0.1 | 75.0% | 62.5% | 50.0% | $ 0.1 | $ 0.1 | $ 0.1 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.1 | $ 0.1 | $ 0.1 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | (0.0) | (0.0) | (0.0) |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (0.0) | $ (0.0) | $ (0.1) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.1 | $ 0.0 | $ 0.0 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (4.6) | $ 4.6 | $ 4.6 | $ 4.6 | $ 0.1 | 1.5% | $ 0.0 | 0.9% | $ 0.0 | 0.2% |
| Priority Claims | $ (0.0) | $ 0.0 | $ 0.0 | $ 0.0 | - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.0) | 0.0 | 0.0 | 0.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | $ 163.0 | $ 163.0 | - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (167.6) | $ 167.6 | $ 167.6 | $ 167.6 | $ 0.1 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

22

NAS2301

**Purdue Pharma Manufacturing L.P.**

| ($ in millions) | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Assets | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $    - | 0.0% | 0.0% | 0.0% | $    - | $ | - | $ | - | |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Prepaid Expenses & Other Current Assets | 1.0 | 6.0% | 4.5% | 3.0% | 0.1 | | 0.0 | | 0.0 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $    1.0 | | | | $    0.1 | $ | 0.0 | $ | 0.0 | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $    - | 0.0% | 0.0% | 0.0% | $    - | $ | - | $ | - | |
| Investments at Cost | - | 25.0% | 12.5% | 0.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $    1.0 | 6.0% | 4.5% | 3.0% | $    0.1 | $ | 0.0 | $ | 0.0 | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $    0.1 | $ | 0.0 | $ | 0.0 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $    0.1 | $ | 0.0 | $ | 0.0 | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $    (0.0) | $ | (0.0) | $ | (0.0) | |
| Chapter 7 Professional Fees | | | | | (0.0) | | (0.0) | | (0.0) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | | - | | - | |
| Wind Down Costs | | | | | - | | - | | - | |
| Severance | | | | | - | | - | | - | |
| **Total Liquidation Costs** | | | | | $    (0.0) | $ | (0.0) | $ | (0.0) | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $    - | $ | - | $ | - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $    - | $ | - | $ | - | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $    0.1 | $ | 0.0 | $ | 0.0 | |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | High | | Mid | | Low | | High | | Mid | | Low | | |
| DOJ - Criminal Forfeiture | $    - | $ | - | $ | - | $ | - | $    - | 0.0% | $    - | 0.0% | $    - | 0.0% | |
| Administrative Expense Claims | $    (0.3) | $ | 0.3 | $ | 0.3 | $ | 0.3 | $    0.1 | 20.4% | $    0.0 | 11.5% | $    0.0 | 1.9% | |
| Priority Claims | $    (0.0) | $ | 0.0 | $ | 0.0 | $ | 0.0 | $    - | 0.0% | $    - | 0.0% | $    - | 0.0% | |
| LSTC - Prepetition Accounts Payable | (0.2) | | 0.2 | | 0.2 | | 0.2 | - | 0.0% | - | 0.0% | - | 0.0% | |
| PIBGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% | |
| Contract Rejection Damages | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% | |
| Contingent Litigation Liability | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% | |
| General Unsecured Claims | $    (163.2) | $ | 163.2 | $ | 163.2 | $ | 163.2 | $    - | 0.0% | $    - | 0.0% | $    - | 0.0% | |
| **Total Claims** | $    (163.4) | $ | 163.4 | $ | 163.4 | $ | 163.4 | $    0.1 | 0.0% | $    0.0 | 0.0% | $    0.0 | 0.0% | |

23

NAS2302

**Seven Seas Hill Corp.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | | | | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 0.0% | 0.0% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2303

**Ophir Green Corp.**

| ($ in millions) | | Estimated Recovery Rate | | | Estimated Recovery Value | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| Assets | Book Value | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 0.0% | 0.0% | 0.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Creditor Class | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

25

NAS2304

**Avrio Health L.P. (formerly Purdue Products L.P.)**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Accounts Receivable (Net) | 7.0 | 75.0% | 62.5% | 50.0% | 5.2 | | 4.4 | | 3.5 | |
| Inventories, Net | 5.8 | 140.4% | 105.3% | 70.2% | 8.2 | | 6.1 | | 4.1 | |
| Prepaid Expenses & Other Current Assets | 2.3 | 6.0% | 4.5% | 3.0% | 0.1 | | 0.1 | | 0.1 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $ 15.1 | | | | $ 13.6 | | $ 10.6 | | $ 7.6 | |
| | | | | | | | | | | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $ 0.2 | 0.0% | 0.0% | 0.0% | $ - | | $ - | | $ - | |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | 64.9 | 234.9% | 176.2% | 117.5% | 152.5 | | 114.4 | | 76.3 | |
| Other Assets | 0.1 | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $ 80.4 | 206.5% | 155.4% | 104.3% | $ 166.1 | | $ 125.0 | | $ 83.9 | |
| | | | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 166.1 | | $ 125.0 | | $ 83.9 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $ 166.1 | | $ 125.0 | | $ 83.9 | |
| | | | | | | | | | | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (3.3) | | $ (3.1) | | $ (2.5) | |
| Chapter 7 Professional Fees | | | | | (22.0) | | (42.0) | | (67.7) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (3.1) | | (2.9) | | (2.3) | |
| Wind Down Costs | | | | | (2.4) | | (3.7) | | (5.4) | |
| Severance | | | | | (0.1) | | (0.1) | | (0.1) | |
| **Total Liquidation Costs** | | | | | $ (30.9) | | $ (51.8) | | $ (78.1) | |
| | | | | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | | $ - | | $ - | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ 53.0 | | $ - | | $ - | |
| | | | | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 135.2 | | $ 73.2 | | $ 5.8 | |

| Creditor Class | | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (6.1) | $ 6.1 | $ 6.1 | $ 6.1 | $ 6.1 | 100.0% | $ 6.1 | 100.0% | $ 5.8 | 95.1% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.3) | 1.3 | 1.3 | 1.3 | 1.3 | 100.0% | 0.6 | 49.3% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 74.8 | 45.9% | 66.4 | 40.7% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (164.3) | $ 164.3 | $ 164.3 | $ 164.3 | $ 76.0 | 46.3% | $ 67.0 | 40.8% | $ - | 0.0% |
| **Total Claims** | $ (170.4) | $ 170.4 | $ 170.4 | $ 170.4 | $ 82.1 | 48.2% | $ 73.2 | 42.9% | $ 5.8 | 3.4% |

26

NAS2305

**UDF LP**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | | | | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | 2.6 | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ 2.6 | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

27

NAS2306

**Rhodes Associates L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2307

**Rhodes Pharmaceuticals LP**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | High | Mid | Low | High | | Mid | | Low | |
| **Current Assets** | | | | | | | | | | |
| Cash and Cash Equivalents (Net) | $    - | 0.0% | 0.0% | 0.0% | $    - | | $    - | | $    - | |
| Accounts Receivable (Net) | 73.6 | 75.0% | 62.5% | 50.0% | 55.2 | | 46.0 | | 36.8 | |
| Inventories, Net | 29.0 | 24.6% | 18.5% | 12.3% | 7.1 | | 5.4 | | 3.6 | |
| Prepaid Expenses & Other Current Assets | 3.3 | 6.0% | 4.5% | 3.0% | 0.2 | | 0.1 | | 0.1 | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Current Assets** | $    105.9 | | | | $    62.5 | | $    51.5 | | $    40.5 | |
| | | | | | | | | | | |
| **Non-Current Assets** | | | | | | | | | | |
| Property and Equipment, net | $    3.5 | 3.8% | 3.1% | 2.5% | $    0.1 | | $    0.1 | | $    0.1 | |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | | - | | - | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| Intangible Assets, Net | 21.9 | 183.2% | 122.2% | 61.1% | 40.2 | | 26.8 | | 13.4 | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | | - | | - | |
| **Total Assets** | $    131.4 | 78.3% | 59.7% | 41.1% | $    102.8 | | $    78.4 | | $    53.9 | |
| | | | | | | | | | | |
| **Liquidation Proceeds** | | | | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $    102.8 | | $    78.4 | | $    53.9 | |
| Sackler Settlement | | | | | - | | - | | - | |
| **Total Liquidation Proceeds** | | | | | $    102.8 | | $    78.4 | | $    53.9 | |
| | | | | | | | | | | |
| **Liquidation Costs** | | | | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $    (2.1) | | $    (2.0) | | $    (1.6) | |
| Chapter 7 Professional Fees | | | | | (14.2) | | (26.3) | | (41.9) | |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | (0.8) | | (0.7) | | (0.4) | |
| Wind Down Costs | | | | | (4.3) | | (6.8) | | (10.0) | |
| Severance | | | | | (0.3) | | (0.3) | | (0.3) | |
| **Total Liquidation Costs** | | | | | $    (21.7) | | $    (36.1) | | $    (54.2) | |
| | | | | | | | | | | |
| **Funding Required from Purdue Pharma L.P.** | | | | | $    - | | $    - | | $    0.3 | |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $    - | | $    - | | $    - | |
| | | | | | | | | | | |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $    81.1 | | $    42.3 | | $    - | |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $    - | $    - | $    - | $    - | $    - | 0.0% | $    - | 0.0% | $    - | 0.0% |
| Administrative Expense Claims | $    (41.8) | $    45.3 | $    41.8 | $    38.3 | $    45.3 | 100.0% | $    41.8 | 100.0% | $    - | 0.0% |
| Priority Claims | $    - | $    - | $    - | $    - | $    - | 0.0% | $    - | 0.0% | $    - | 0.0% |
| LSTC - Prepetition Accounts Payable | (1.0) | 1.0 | 1.0 | 1.0 | 0.2 | 21.8% | 0.0 | 0.3% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | 35.5 | 21.8% | 0.4 | 0.3% | - | 0.0% |
| Contract Rejection Damages | (0.5) | 0.5 | 0.5 | 0.5 | 0.1 | 21.8% | 0.0 | 0.3% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $    (164.4) | 164.4 | 164.4 | 164.4 | 35.8 | 21.8% | 0.4 | 0.3% | - | 0.0% |
| **Total Claims** | $    (206.2) | $    209.7 | $    206.2 | $    202.8 | $    81.1 | 38.7% | $    42.3 | 20.5% | $    - | 0.0% |

29

NAS2308

**Button Land L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | | | | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | - | - | - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2309

**Quidnick Land L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

31

NAS2310

**Paul Land Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Current Assets** | $ - | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| | | | | | | | |
| Funding Required from Purdue Pharma L.P. | | | | | $ - | $ - | $ - |
| Excess Proceeds Available to Purdue Pharma L.P. | | | | | $ - | $ - | $ - |
| | | | | | | | |
| Net Liquidation Proceeds Available to Creditors | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ | - | $ | - | $ | - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| PIIGC - Termination | (163.0) | | 163.0 | | 163.0 | | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | - | | - | | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| **Total Claims** | $ (163.0) | $ | 163.0 | $ | 163.0 | $ | 163.0 | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

NAS2311

**Rhodes Technologies**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | 4.3 | 75.0% | 62.5% | 50.0% | 3.3 | 2.7 | 2.2 |
| Inventories, Net | 2.0 | 0.0% | 0.0% | 0.0% | - | - | - |
| Prepaid Expenses & Other Current Assets | 0.9 | 6.0% | 4.5% | 3.0% | 0.1 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 7.2 | | | | $ 3.3 | $ 2.8 | $ 2.2 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | 2.4 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 9.6 | 34.6% | 28.7% | 22.9% | $ 3.3 | $ 2.8 | $ 2.2 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 3.3 | $ 2.8 | $ 2.2 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 3.3 | $ 2.8 | $ 2.2 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.1) | $ (0.1) | $ (0.1) |
| Chapter 7 Professional Fees | | | | | (0.6) | (0.9) | (1.3) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | (0.5) | (0.8) | (1.2) |
| Severance | | | | | (0.6) | (0.6) | (0.6) |
| **Total Liquidation Costs** | | | | | $ (1.8) | $ (2.5) | $ (3.2) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 1.5 | $ 0.3 | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (6.5) | $ 6.5 | $ 6.5 | $ 6.5 | $ 1.5 | 23.2% | $ 0.3 | 4.6% | $ - | 0.0% |
| Priority Claims | $ - | $ - | $ - | $ - | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | (0.3) | 0.3 | 0.3 | 0.3 | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | 163.0 | 163.0 | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | - | - | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.3) | $ 163.3 | $ 163.3 | $ 163.3 | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (169.8) | $ 169.8 | $ 169.8 | $ 169.8 | $ 1.5 | 0.9% | $ 0.3 | 0.2% | $ - | 0.0% |

33

NAS2312

**SVC Pharma Inc.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | 0.1 | 6.0% | 4.5% | 3.0% | 0.0 | 0.0 | 0.0 |
| Restricted Cash | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Current Assets** | $ 0.1 | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | - | - | - |
| Investments in Associated Companies | 0.0 | 0.0% | 0.0% | 0.0% | - | - | - |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | - | - | - |
| Other Assets | - | 0.0% | 0.0% | 0.0% | - | - | - |
| **Total Assets** | $ 0.1 | 3.8% | 2.8% | 1.9% | $ 0.0 | $ 0.0 | $ 0.0 |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ 0.0 | $ 0.0 | $ 0.0 |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ (0.0) | $ (0.0) | $ (0.0) |
| Chapter 7 Professional Fees | | | | | (0.0) | (0.0) | (0.0) |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ (0.0) | $ (0.0) | $ (0.0) |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ 0.0 | $ 0.0 | $ 0.0 |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | 0.0 | 0.0% | 0.0 | 0.0% | 0.0 | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | | | | | | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |
| **Total Claims** | $ (163.0) | $ 163.0 | | $ 163.0 | | $ 163.0 | | $ 0.0 | 0.0% | $ 0.0 | 0.0% | $ 0.0 | 0.0% |

NAS2313

**SVC Pharma L.P.**

($ in millions)

| Assets | Book Value | Estimated Recovery Rate | | | Estimated Recovery Value | | |
|---|---|---|---|---|---|---|---|
| | | High | Mid | Low | High | Mid | Low |
| **Current Assets** | | | | | | | |
| Cash and Cash Equivalents (Net) | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Accounts Receivable (Net) | - | 0.0% | 0.0% | 0.0% | | | |
| Inventories, Net | 2.2 | 0.0% | 0.0% | 0.0% | | | |
| Prepaid Expenses & Other Current Assets | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash | - | | | | | | |
| **Total Current Assets** | $ 2.2 | | | | $ - | $ - | $ - |
| **Non-Current Assets** | | | | | | | |
| Property and Equipment, net | $ - | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| Investments at Cost | - | 75.0% | 62.5% | 50.0% | | | |
| Investments in Associated Companies | - | 0.0% | 0.0% | 0.0% | | | |
| Restricted Cash - Long-Term | - | 0.0% | 0.0% | 0.0% | | | |
| Intangible Assets, Net | - | 0.0% | 0.0% | 0.0% | | | |
| Other Assets | - | 0.0% | 0.0% | 0.0% | | | |
| **Total Assets** | $ 2.2 | 0.0% | 0.0% | 0.0% | $ - | $ - | $ - |
| **Liquidation Proceeds** | | | | | | | |
| Liquidation Proceeds from Assets | | | | | $ - | $ - | $ - |
| Sackler Settlement | | | | | - | - | - |
| **Total Liquidation Proceeds** | | | | | $ - | $ - | $ - |
| **Liquidation Costs** | | | | | | | |
| Chapter 7 Trustee Fees | | -2.0% | -2.5% | -3.0% | $ - | $ - | $ - |
| Chapter 7 Professional Fees | | | | | - | - | - |
| Transaction Costs/Advisory Fees | | -2.0% | -2.5% | -3.0% | - | - | - |
| Wind Down Costs | | | | | - | - | - |
| Severance | | | | | - | - | - |
| **Total Liquidation Costs** | | | | | $ - | $ - | $ - |
| **Funding Required from Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Excess Proceeds Available to Purdue Pharma L.P.** | | | | | $ - | $ - | $ - |
| **Net Liquidation Proceeds Available to Creditors** | | | | | $ - | $ - | $ - |

| Creditor Class | Book Value | Estimated Claim Allowed | | | | | | Estimated Recovery by Class of Claims ($)/(%) | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | High | | Mid | | Low | | High | | Mid | | Low | |
| DOJ - Criminal Forfeiture | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Administrative Expense Claims | $ (0.7) | $ 0.7 | | $ 0.7 | | $ 0.7 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| Priority Claims | $ - | $ - | | $ - | | $ - | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |
| LSTC - Prepetition Accounts Payable | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| PIBGC - Termination | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contract Rejection Damages | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| Contingent Litigation Liability | - | - | | - | | - | | - | 0.0% | - | 0.0% | - | 0.0% |
| General Unsecured Claims | (163.0) | 163.0 | | 163.0 | | 163.0 | | - | 0.0% | - | 0.0% | - | 0.0% |
| **Total Claims** | $ (163.7) | $ 163.7 | | $ 163.7 | | $ 163.7 | | $ - | 0.0% | $ - | 0.0% | $ - | 0.0% |

35

NAS2314

# <u>Appendix B</u>

## Curriculum Vitae

NAS2315



## Jesse DelConte

jdelconte@alixpartners.com
+1 212 561 4175 (o)
+1 703 887 4776 (m)

### Professional History and Education

Jesse utilizes his deep restructuring knowledge to provide leadership to distressed companies and their creditors as they navigate their way through complex in-court and out-of-court restructurings. Over his career, he has focused on finding and implementing complex restructuring solutions that are value maximizing for all stakeholders. Jesse has over 15 years of experience advising clients across a multitude of industries, including technology, pharmaceuticals, oil & gas, retail and automotive, amongst others.

Jesse started his career at AlixPartners in 2018 when AlixPartners acquired his previous firm Zolfo Cooper. Prior to that, Jesse had worked at Zolfo Cooper since 2008. Jesse started his career at Seneca Financial Group, where he worked from 2003 to 2008.

Jesse has a Bachelor of Science in Commerce degree, with distinction, from the McIntire School of Commerce at the University of Virginia and holds the Chartered Financial Analyst® designation.

## Relevant experience

- Jesse is currently advising Purdue Pharma in a first of its kind governmental mass tort Chapter 11 bankruptcy in which over 600,000 claims have been filed, nearly four times more claims than have ever been filed in any case in U.S. history.

- Prior to Purdue, Jesse advised Fullbeauty Brands, an online retailer that had approximately $1.2 billion in pre-petition debt. Jesse led the company through a prepackaged bankruptcy process in which the company obtained confirmation of its plan of reorganization in less than 24 hours, the first case to achieve that in U.S. history.

- Previously, Jesse guided Avaya Inc., a $3.7 billion revenue multinational technology company, and Sabine Oil & Gas, an oil and gas exploration and production company, through successful in-court restructuring processes. The Turnaround Management Association recognized the successful restructuring of Avaya Inc. with its "Mega Company Transaction of the Year Award" in 2018 and Sabine with its "Large Company Transaction of the Year Award" in 2017.

- His other company side advisory assignments include Cenveo Inc., Kerzner International and Pacific Energy Resources, amongst others.

- Jesse has also advised fulcrum secured lender groups, including the 1st lien lenders of Orchard Supply Hardware, the 2nd lien lenders of Merrill Corp., the stakeholders of a $400 million global automotive supplier, the senior secured 1st Lien lender group for Wastequip and others.

**Alix**Partners

1

NAS2316

## Publications and Panels

⋏ *Riding the Express Lane through Bankruptcy*, Journal of Corporate Renewal (October 2019).

⋏ Turnaround Management Association Panel - Defaults and Distress in the Energy Sector: Where the Opportunities Lie

⋏ Wharton Restructuring and Distressed Investing Conference Panel – Case Study: Avaya

⋏ Wharton Restructuring and Distressed Investing Conference Panel – Economic Disruption

⋏ University of Pennsylvania Panel – Prepackaged Bankruptcies

⋏ CFA NY Distressed Credit Event Panel – Bankruptcy, Workouts & Restructuring Dynamics

⋏ Association of Insolvency and Restructuring Advisors Panel – Financial Advisors Toolbox Part 1 & Part 2

## *Select Financial Advisory Restructuring Experience in Bankruptcy Cases*

⋏ *FullBeauty Brands – In re Fullbeauty Brands Holdings Corp., Case No. 19-22185 (Bankr.S.D.N.Y. Feb. 3, 2019) - Financial Advisor to the Debtors*

  i. **Result:** Emerged from bankruptcy in February 2019. Negotiated a consensual plan of reorganization with all parties in the company's $1.3 billion prepetition capital structure (ABL, first lien, second lien and sponsor) whereby total debt was reduced by approximately $1 billion. The prepackaged bankruptcy filing was the first Chapter 11 case where the Debtors received confirmation of their plan of reorganization within 24 hours of filing for bankruptcy.

  ii. **Responsibilities:** Led the day-to-day activities of the AlixPartners team, which was responsible for: 1) preparing the company to file for bankruptcy, including preparing first day motions and providing operational support to management 2) preparing multiple liquidity scenarios surrounding potential restructuring options (i.e. uptier exchange, status quo, capital contribution, bankruptcy filing, etc.) 3) 13 week CF forecasting 4) liquidity enhancement strategies 4) deal negotiation and POR development 5) preparation of the disclosure statement and liquidation analysis and 6) coordinating diligence efforts for all parties in interest

**Alix**Partners

2

NAS2317

*Select Financial Advisory Restructuring Experience in Bankruptcy Cases (continued)*

➢ *Cenveo, Inc. - In re Cenveo Inc., Case No. 18-22178 (Bankr. S.D.N.Y. Feb. 2, 2018) – Financial Advisor to the Debtors*

    i.   **Result:** Emerged from bankruptcy in September 2018. Negotiated a consensual plan of reorganization with all parties in the company's $1.1 billion prepetition capital structure (first lien, second lien and unsecured creditors committee) whereby the 1st lien lenders will equitize their debt in exchange for 100% of the equity of the reorganized company.

    ii.  **Responsibilities:** Led the day-to-day activities of the team, which was responsible for: 1) preparing the company to file for bankruptcy, including preparing first day motions and providing operational support to management 2) preparing multiple business plan iterations that formed the basis of the plan 3) 13 week CF forecasting 4) DIP covenant negotiation and subsequent reporting 5) bankruptcy reporting 6) deal negotiation and POR development 7) preparation of the disclosure statement and liquidation analysis and 8) coordinating diligence efforts for all parties in interest

➢ *Avaya, Inc. - In re Avaya, Inc., Case No. 17-10089 (Bankr. S.D.N.Y. Jan. 19, 2017) – Interim Management for the Debtors (Associate Director of Restructuring)*

    i.   **Result:** Emerged from bankruptcy in December 2017 and relisted on the NYSE in January 2018. Negotiated a consensual plan of reorganization with all parties in an $8.0 billion capital structure, including all tranches of first lien debt, the second lien lenders and all unsecured creditors. Negotiated a consensual termination of a $1.2 billion defined benefit pension plans with the PBGC. *2018 TMA Transaction of the Year – Mega Company*

    ii.  **Responsibilities:** Led the day-to-day activities of the team over the course of 18 months, which included 7 months prepetition and 11 months post-petition. Responsible for: 1) Developing a multi-country cash flow forecast to manage liquidity and ultimately size the DIP 2) prepare multiple business plans to reflect the changing circumstances of the case 3) developing a waterfall analysis to properly allocate value to the various lender groups based upon encumbered and unencumbered asset values and differing collateral packages 4) preparing a liquidation analysis for over 100 entities 5) negotiating DIP covenants 6) developing the Plan and Disclosure statement and 7) coordinating diligence efforts for all parties in interest

**Alix**Partners

3

NAS2318

## Select Financial Advisory Restructuring Experience in Bankruptcy Cases (continued)

➤ Sabine Oil & Gas - In re Sabine Oil & Gas Corporation, Case No. 15-11835 (Bankr. S.D.N.Y. July 15, 2015) – Interim Management for the Debtors (Associate Director of Restructuring)

- Retained as interim management.

   i.  **Result:** Emerged from bankruptcy in August 2016 after filing for bankruptcy in July 2015. Overcame multi-month litigations over STN standing and confirmation to emerge with a $200 million ABL commitment and $150 million in 2nd lien debt after filing with $2.8 billion in debt. *2017 TMA Transaction of the Year – Large Company*

   ii.  **Responsibilities:** Led the day-to-day activities of the team over the course of 17 months. Responsible for: 1) Creating a cash forecasting model that could be flexed to incorporate various drilling scenarios 2) preparing first day motions and developing an operational plan for the company post filing 3) negotiating a consensual cash collateral motion with the ABL lenders after drawing down $300 million pre-filing 4) developing a cash tracing methodology to bifurcate encumbered and unencumbered cash 5) 13 week cash flow covenant negotiation and subsequent reporting 6) deal negotiation and POR development 7) preparation of the disclosure statement and liquidation analysis and 8) preparing 3 expert reports for Jonathan ("Joff") Mitchell that were used in the multi-month STN standing trial (1 report) and in the multi-month confirmation hearing (2 reports)

➤ Orchard Supply Hardware - In re Orchard Supply Hardware Stores, Case No. 13-11565 (Bankr. District of Delaware. June 17, 2013) – Financial Advisor to the 1st Lien Term Lenders

   i.  **Result:** 72 of 91 stores were sold through a 363 asset sale process to Lowe's in September of 2013 providing the term lenders with a recovery that was approximately twice the trading price of the term loan at the time Zolfo Cooper was retained. *2014 M&A Advisor Turnaround Award – Sec. 363 Sale of the Year (Over $100mm to $1 Billion)*

   ii.  **Responsibilities:** Responsible for: 1) Analyzing the company's new / remodeled store plan to determine the feasibility of the go forward business plan and necessary capital infusion 2) preparing a 4 wall analysis to determine potential profitability improvements from a store rationalization strategy post-filing 3) valuing the business to determine acceptable bids 4) developing a wind down budget to determine how much cash to leave behind in the estate and 5) working with the Trustee to wind down the estate over the course of 4 years

**Alix**Partners

4

NAS2319

# Appendix C

**Materials Relied Upon in Forming Opinions**

NAS2320

## **Appendix C: Materials Relied Upon in Forming Opinions**

In forming my opinions, I relied upon the materials referenced in this report, including the following documents, files, and other information.

- Accounts payable balances (pre and postpetition) provided by the Debtors' management team

- Accounts receivable intercompany matrix provided by the Debtors' management team

- Adhansia/Avrio valuation estimates from PJT; Product level Sales breakdown for opioid products estimating ANDA valuation provided by the Debtors' management team

- Consolidated Cash Balance and Accrued Expense Forecasts (as of 09/30/21) provided by the Debtors' management team

- Debtors' historical sales data provided by the Debtors' management team: FY2020 actual net sales

- Declaration of Jamie O'Connell in Support of Debtors' Motion for a Preliminary Injunction, filed in these Chapter 11 Cases on September 18, 2019

- Draft Balance Sheets as of 02/28/21 provided by the Debtors' management team

- Employee severance related detail provided by the Debtors' management team

- Entity level Trial Balances as of 09/30/20 and 02/28/21 provided by the Debtors' management team

- Finished Goods Inventory Detail by Debtor provided by the Debtors' management team

- GM Trust (Motors Liquidation Company GUC Trust) Total Liquidation Costs Incurred (2012 to 2020)

- Incentive/Retention Plan detail provided by the Debtors' management team

- OSR & Clariant lease terms provided by the Debtors' management team

- PBGC estimated termination cost for PPLP pension plan (from Fidelity Investments, Inc.)

- PPE Detailed Breakout by Debtor provided by the Debtors' management team

- PPLC Claim Report from Prime Clerk

- Select liquidation analysis filed in connection with other chapter 11 cases
  - Avaya Inc.

**NAS2321**

- o   Cenveo, Inc.
- o   FirstEnergy Solutions Corp.
- o   FullBeauty Brands Holdings Corp.
- o   Sabine Oil & Gas Corporation
- o   TK Holdings, Inc.

- The Debtors' Revised Fifth Amended Plan and Disclosure Statement documents (and related exhibits)

- Total G&A Expenses for all Debtors YTD as of 10/31/2020 provided by the Debtors management team

- Wind Down Costs Estimates for J. C. Penney Company, Inc., Lehman Brothers Holdings, Inc., Lehman Brothers, Inc., Westinghouse Electric Co. LLC

NAS2322

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| PURDUE PHARMA L.P., *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | Jointly Administered |

**DECLARATION OF TIMOTHY J. MARTIN**

**AUGUST 4, 2021**

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

**NAS2323**

Under 28 U.S.C. § 1746, I, Timothy J. Martin, declare:

1.    I submitted an expert report in this matter on June 15, 2021 and an amended expert report on July 26, 2021. Attached to this declaration is the amended version of that report.

2.    The amended report constitutes my direct testimony in this matter. I declare under penalty of perjury that it is true and correct.

3.    I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2021

_Timothy J. Martin_

Timothy J. Martin

1

NAS2324

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| **PURDUE PHARMA L.P.**, *et al.*, | Case No. 19-23649 (RDD) |
| Debtors.[1] | (Jointly Administered) |

### AMENDED EXPERT REPORT OF TIMOTHY J. MARTIN
### ON BEHALF OF THE RAYMOND SACKLER FAMILY

#### Scope of Assignment

1.      I have been retained by Milbank LLP and Joseph Hage Aronson LLC, counsel to the Raymond Sackler family, to provide expert testimony on behalf of the Raymond Sackler family in the above-captioned matter. Specifically, I have been asked to attest to the preparation and accuracy of reports prepared by Huron Consulting Services LLC ("Huron") with respect to the financial resources of the Sackler Families that were provided to the legal and financial advisors to the Debtors, the Official Committee of Unsecured Creditors (the "UCC"), and other parties in interest pursuant to that certain *Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties* (ECF 518) (the "Amended Stipulation") and other agreements between these parties, including the *Raymond-Side Informational Presentation*; the *Raymond-side Informational Presentation Supplemental*

---

[1]      The Debtors in these cases, along with the last four digits of each Debtor's registration number in the applicable jurisdiction, are as follows: Purdue Pharma L.P. (7484), Purdue Pharma Inc. (7486), Purdue Transdermal Technologies L.P. (1868), Purdue Pharma Manufacturing L.P. (3821), Purdue Pharmaceuticals L.P. (0034), Imbrium Therapeutics L.P. (8810), Adlon Therapeutics L.P. (6745), Greenfield BioVentures L.P. (6150), Seven Seas Hill Corp. (4591), Ophir Green Corp. (4594), Purdue Pharma of Puerto Rico (3925), Avrio Health L.P. (4140), Purdue Pharmaceutical Products L.P. (3902), Purdue Neuroscience Company (4712), Nayatt Cove Lifescience Inc. (7805), Button Land L.P. (7502), Rhodes Associates L.P. (N/A), Paul Land Inc. (7425), Quidnick Land L.P. (7584), Rhodes Pharmaceuticals L.P. (6166), Rhodes Technologies (7143), UDF LP (0495), SVC Pharma LP (5717) and SVC Pharma Inc. (4014). The Debtors' corporate headquarters is located at One Stamford Forum, 201 Tresser Boulevard, Stamford, CT 06901.

NAS2325

*Materials*; the *Raymond-side Net Assets Report*; the *Raymond-side Updated Net Assets Report;*

the *Raymond-side Cash & Non-Cash Activity Summary (January 2008 – March 2020)*; and the

*Raymond-side March 31, 2021 Updated Net Assets Report*.

2.      Paragraph 17(a) of the Amended Stipulation contemplated that the Shareholder

Parties would provide the following to the legal and financial advisors to the Debtors and the

UCC:

> (i)     an explanation and analysis regarding where the assets held by the Initial
> Covered Sackler Persons ("ICSPs")[2] are located; in what format (trust,
> corporation, partnership, etc.) they are held; why the applicable ICSP
> selected such format (i.e., tax or other reasons, etc.), if known; a general
> understanding of the type of such assets; and whether, in their view, any
> individual ICSP (and such person's assets) are subject to the jurisdiction
> of the Bankruptcy Court;
>
> (ii)    a report setting forth the net assets of the ICSPs, which report will set forth
> the approximate aggregate value of the assets owned by category (e.g.,
> cash, securities, real estate, private and other investments, etc.) and the
> approximate liabilities, also by category.

*See Amended Stipulation* ¶ 17(a).

3.      In satisfaction of the requirements of paragraph 17(a) of the Amended

Stipulation, the Raymond Sackler family delivered the following presentations to the legal and

financial advisors of the Debtors and the UCC, which were prepared by or in consultation with

Huron, as described more fully herein: (i) on November 22, 2019, the *Raymond-Side*

*Informational Presentation* and the *Raymond-side Informational Presentation Supplemental*

*Materials*, attached hereto as Exhibit A (together, the "Informational Presentation"); and (ii) on

January 15, 2020, the *Raymond-side Net Assets Report,* attached hereto as Exhibit B (the "Net

Assets Report").

---

[2]      For purposes of this report, "Initial Covered Sackler Person(s)" shall have the same meaning as set forth in
the Amended Stipulation.

NAS2326

4.      On August 13, 2020, the Raymond Sackler family voluntarily provided to the legal and financial advisors of the Debtors and the UCC the *Raymond-Side Cash & Non-Cash Activity Summary (January 2008 – March 2020),* which was prepared by Huron and illustrated the flow of funds from Purdue Pharma L.P. and related entities ("Purdue") to Raymond-side entities and trusts, transfers among those Raymond-side entities and trusts, and subsequent transfers to other parties.  The *Raymond-Side Cash & Non-Cash Activity Summary (January 2008 – March 2020)* is attached hereto as Exhibit C (the "<u>Sources and Uses Report</u>").

5.      On March 1, 2021, the Raymond Sackler family voluntarily provided an updated net assets report prepared by Huron to the legal and financial advisors of the Debtors and the UCC, the *Raymond-side Updated Net Assets Report,* attached hereto as Exhibit D (the "<u>Updated Net Assets Report</u>").

6.      On July 26, 2021, the Raymond Sackler family voluntarily provided a further updated net assets report prepared by Huron to the legal and financial advisors of the Debtors and the UCC, the *Raymond-side March 31, 2021 Updated Net Assets Report*, attached hereto as Exhibit H (the "<u>March 31, 2021 Net Assets Report</u>").

7.      The Informational Presentation, the Net Assets Report, the Updated Net Assets Report, the Sources and Uses Report, and the March 31, 2021 Net Assets Report were also provided to legal representatives of the Debtors, the UCC, the Ad Hoc Group of Non-Consenting States, and the Ad Hoc Committee of Governmental and Other Contingent Litigation Claimants.

## <u>Qualifications</u>

8.      I am a managing director at Huron, which was founded in 2002 and whose parent, Huron Consulting Group Inc. ("<u>Huron Consulting Group</u>"), is publicly traded on the

3

NAS2327

NASDAQ Global Select Market under the symbol "HURN".  Huron Consulting Group and its subsidiaries employ more than 3,700 full time employees in offices across the United States, including in Chicago, New York, and Boston, and abroad.  Huron Consulting Group and its subsidiaries provide a range of professional services primarily through three operating segments: healthcare, business advisory, and education.

9.      I have more than two decades of experience providing forensic, investigative, and financial advisory consulting services to companies, boards of directors, creditors, equity holders, and the legal community.  I have been engaged by trustees and receivers in bankruptcy cases to conduct investigations into some of the largest known frauds, including Ponzi and pyramid schemes, securities fraud, fraudulent conveyances, and financial statement fraud.  I received my Bachelor of Arts in Accounting from the University of Massachusetts – Amherst and am a Certified Insolvency and Restructuring Advisor (CIRA), Certified Turnaround Professional (CTP) and Certified Fraud Examiner (CFE).  My CV is attached as Exhibit E to this report.

10.     I have not authored any publications in the previous 10 years.

11.     A list of all other cases in which I have testified as an expert at trial or by deposition, during the previous 4 years, is attached as Exhibit F.

## Compensation and Independence

12.     Huron is being compensated at my standard rate of $995 per hour for work undertaken by me in connection with this case.  Others at Huron are working alongside me and at my direction in this matter, and Huron is being compensated at their standard hourly rates of between $475 and $1,195.  My compensation does not depend on the substance of my testimony or the outcome of this case.

NAS2328

13. I may present at hearings in this case my knowledge and expert opinions in the form of oral testimony, as well as through demonstratives to illustrate my testimony. This report summarizes only my current opinions, which are subject to change depending upon ongoing discovery and the review of any additional information that may become available to me. I reserve the right to supplement or modify my opinions, whether in further reports or through testimony, in response to any additional fact discovery, expert reports, testimony, or other evidence. I also may testify as a fact witness in this case regarding the factual matters in this report and the exhibits hereto.

14. Prior to my retention in this matter, pursuant to the Corporate Integrity Agreement ("CIA") signed May 8, 2007 (and effective July 31, 2007) between Purdue Pharma L.P. and the Office of Inspector General of the U.S. Department of Health and Human Services, Huron was retained as the Independent Review Organization ("IRO") to perform consulting procedures under the CIA, as outlined in Section III.D and Appendix B thereto. Huron served in that capacity through the duration of the CIA, which ended on July 30, 2012. Huron's last reports as IRO were dated September 25, 2012. After serving as an IRO, Huron was engaged by the Debtors between January 2015 and June 2017 to provide various pharmaceutical industry consulting services. No Huron professionals involved with providing the foregoing services were involved with any services rendered during the pendency of my retention in this matter, and for the avoidance of doubt, no individuals involved in providing any services in this matter at or under my direction were involved in either of those engagements.

**Opinions**

15. In connection with the Informational Presentation, Huron was involved in categorizing the assets held by Raymond-side ICSPs for purposes of providing a description of

5

NAS2329

the nature of the assets held, as required under Paragraph 17(a) of the Amended Stipulation.

Based on my knowledge, skill, experience, training, and education, it is my opinion that the

categorization of assets reflected in the Informational Presentation, attached hereto as Exhibit A,

accurately describes the nature of the assets held by the Raymond-Side ICSPs.  This

categorization of assets was prepared by me and persons under my supervision applying

methodologies widely accepted and commonly used by professionals in the field of forensic

accounting, based on information provided by persons with knowledge employed by or working

for the Raymond Sackler family, and it is a regular practice of Huron to prepare categorizations

of assets of this nature.  This categorization of assets also summarizes voluminous information

that cannot conveniently be examined in court.  Please see Exhibit A for additional information

regarding the basis for this opinion regarding the categorization and nature of the Raymond-side

ICSP assets.  I incorporate by reference into this report the Informational Report, including any

factual statements, methodologies, and conclusions regarding the categorization of the

Raymond-side ICSP assets contained therein, as if set forth fully herein.

16.     Based on my knowledge, skill, experience, training, and education, it is my

opinion that the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets

Report, attached hereto as Exhibits B, D, and H, represent a reasonable approach to approximate

the total net asset values of the Raymond-side ICSPs.  These reports were prepared by me and

persons under my supervision applying methodologies widely accepted and commonly used by

professionals in the field of forensic accounting, based on information provided by persons with

knowledge employed by or working for the Raymond Sackler family, and it is a regular practice

of Huron to prepare reports of this nature.  The Net Assets Report, Updated Net Assets Report,

and March 31, 2021 Net Assets Report also summarize voluminous information that cannot

6

NAS2330

conveniently be examined in court.  Please see Exhibits B, D, and H for additional information regarding the basis for this opinion.  I incorporate by reference into this report the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report, including any factual statements, methodologies, and conclusions therein, as if set forth fully herein.

17.     Based on my knowledge, skill, experience, training, and education, it is my opinion that the Sources and Uses Report, attached hereto as Exhibit C, accurately reflects and illustrates the flow of funds from Purdue to Raymond-side entities and trusts, transfers among those Raymond-side entities and trusts, and subsequent transfers to other parties as of the dates reflected therein.  This report was prepared by me and persons under my supervision applying methodologies widely accepted and commonly used by professionals in the field of forensic accounting, based on information provided by persons with knowledge employed by or working for the Raymond Sackler family, and it is a regular practice of Huron to prepare reports of this nature.  The Sources and Uses Report also summarizes voluminous information that cannot conveniently be examined in court.  Please see Exhibit C for additional information regarding the basis for this opinion.  I incorporate by reference into this report the Sources and Uses Report, including any factual statements, methodologies, and conclusions therein, as if set forth fully herein.

## Materials Considered and Methodological Information

18.     A schedule of the written materials I considered in connection with preparing this report, including the Informational Presentation, the Net Assets Report, the Updated Net Assets Report, and the Sources and Uses Report, is attached as Exhibit G.  A schedule of additional materials that I considered in preparation of the March 31, 2021 Net Assets Report is attached as Exhibit I.

NAS2331

*Informational Presentation*

19.     In order to prepare the Raymond-side Informational Presentation dated

November 22, 2019, I, or others working under my direction, received from North Bay

Associates ("North Bay"), information related to the Raymond-side ICSPs, trusts, and other

entities with direct or indirect ownership interests in Purdue Pharma L.P., et. al. and their

beneficiaries.  North Bay is an entity that provides accounting and tax services for Raymond-

side individuals, entities, and trusts.  North Bay, in the ordinary course of business, maintains

the books and records of, and prepares monthly financial statements relating to, nearly all

Raymond-side ICSPs (as described further herein).

20.     For additional information relating to the methodology and preparation of the

Informational Presentation, please refer to Exhibit A, which I incorporate by reference herein.

***Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report***

21.     To prepare the Net Assets Report, Updated Net Assets Report, and March 31,

2021 Net Assets Report, I, or others working under my direction, obtained balance sheet

information for the Raymond-side ICSPs, and other trusts and entities owned by them.  Huron

obtained this information in several different ways.

22.     For the forty-seven Raymond-side ICSPs set forth on Schedule A of the

Attestation of Stephen A. Ives With Respect to Raymond Sackler-Side Updated Net Assets

Report, Huron received balance sheets from North Bay (as of October 31, 2019 for the Net

Assets Report, as of September 30, 2020 for the Updated Net Assets Report, and as of March

31, 2021 for the March 31, 2021 Net Assets Report).  North Bay has represented to Huron that

these balance sheets were prepared by North Bay in the ordinary course of business and that

8

NAS2332

these balance sheets are the complete set of the available balance sheets prepared by North Bay relating to the Raymond-side ICSPs.

23.     North Bay does not, in the ordinary course of business, prepare balance sheets for the remaining thirteen Raymond-side ICSPs.  Accordingly, Huron obtained balance sheet information in the following ways:

(i)     For six of those Raymond-side ICSPs,[3] Huron obtained the values of their respective assets and liabilities through discussion with North Bay and review of available records, which are reflected in the Net Assets Report and Updated Net Assets Report.

(ii)    For six of those Raymond-side ICSPs,[4] North Bay provided Huron with balance sheets prepared by a third party.

(iii)   For the DABB Trust, Huron ascertained the values of its respective assets and liabilities by reviewing the balance sheet prepared by DABB Trust in the ordinary course of business.

24.     Huron has, for the purpose of the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report, placed each asset identified by reviewing the materials referenced in paragraphs 21 and 22 (the "Balance Sheet Information") into one of the following categories based on information provided by North Bay:

(i)     Cash and Cash Equivalents:  Deposits and money market mutual funds.

(ii)    Accounts Receivable and Prepaid Expenses:  Tax refunds receivable, receivables from hedge fund redemptions, and prepaid expenses.

---

[3]     These six Raymond-side ICSPs are:  the RSS Revocable Pourover Trust; JDS Revocable Pourover Trust; Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler; Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler; Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler; and Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler.

[4]     These six Raymond-side ICSPs are:  RSS Fiduciary Management Trust, Crystal Trust, MCM Fiduciary Management Trust, Data Trust, Cornice Trust, and Cedar Cliff Trust, all of which were formed to hold interests in Wyoming entities that serve as trustees for certain Raymond-side trusts.  Balance sheets for these Wyoming entities were collected by North Bay and provided to Huron.

9

NAS2333

    (iii)    <u>Notes Receivable and Loans</u>:  Debt financing in the form of notes and loans.

    (iv)    <u>Independent Associated Companies (IACs)</u>:  Direct and indirect investments in II-way non-U.S. based pharmaceutical and health related assets, not including investments in joint-ventures.

    (v)    <u>Marketable Securities and Hedge Funds</u>:  Investments made directly or through various pooling investment vehicles investing in stocks, other marketable securities and hedge funds managed by either a third-party manager or family office.

    (vi)    <u>Private Equity Investments</u>:  Investments made directly or indirectly in private companies, private equity funds, venture funds, joint ventures or private credit funds managed by either a third-party manager or family office.

    (vii)    <u>Real Estate Investments</u>:  Investments made directly or through various pooling investment vehicles in real estate managed either by a third-party manager or family office.

    (viii)    <u>Life Insurance - Surrender Value</u>:  Cash surrender value of life insurance policies.

    (ix)    <u>Retirement Accounts</u>:  IRA, 401(k), or other similar type of account.

    (x)    <u>Residential Real Estate</u>:  Direct or indirect ownership in residential real estate held principally for the purpose of inhabitance.

    (xi)    <u>Artwork (including Jewelry)</u>:  Paintings, jewelry, and other collectibles.

    (xii)    <u>Other Investments</u>:  Investments made directly or indirectly that either fall into multiple categories or do not fall into reported categories.

25.    Huron also has, for the purpose of the Net Asset Report, Updated Net Asset Report, and March 31, 2021 Net Assets Report, placed each liability referenced in the Balance Sheet Information into one of the following categories based on information provided by North Bay:

    (i)    <u>Accounts Payable</u>:  Money owed for services provided.

    (ii)    <u>Short-Term Debt</u>:  Note payable that has a maturity of less than 12 months.

10

NAS2334

      (iii)   <u>Long-Term Debt</u>:  Note payable that has a maturity of greater than 12 months.

      (iv)   <u>Mortgage Debt</u>:  A long-term loan used to finance the purchase of residential real estate.

26.     If a lower tiered entity held an interest in a holding entity, Huron classified this asset consistent with its underlying investment.  For example, several of the Raymond-side ICSPs have an interest in a Delaware general partnership that serves as a vehicle for making investments.  This entity holds various private equity, hedge fund, and marketable securities investments.  For presentation purposes, each Raymond-side ICSP's interest in this entity was classified consistent with its underlying assets.

27.     It was necessary to create a category labeled "Other Investments" because the character of certain underlying investments were not able to be easily classified using another enumerated category, particularly in cases where an asset is a holding entity that holds many different positions (for which investment detail was not readily available) or a service provider such as North Bay.  For each Raymond-side ICSP, descriptions for each asset classified as Other Investments are provided throughout.

28.     The value of the net assets as presented in the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report for each of the Raymond-side ICSPs is consistent with the value of its underlying net assets as set forth in the Balance Sheet Information relating to the applicable ICSP, with the following exceptions, to more accurately reflect the value of those net assets:

      (i)   The values of assets reflecting direct or indirect ownership in the Debtors were eliminated from the Net Assets Report and Updated Net Assets Report (including RMLP's indirect interest in the Debtors).

11

(ii)    Where a more representative net realizable value of an asset was available (e.g., third-party appraisal, tax assessment, oil, and gas reserve report, etc.), the represented value of the asset was adjusted to that amount and the nature of such adjustment was disclosed in the notes for the relevant ICSP.

(iii)    Illustrative values were substituted for the certain values related to the IACs. These illustrative values were premised on the assumption that the IACs would be sold in order to fund the proposed settlement between Debtors and the Sackler families. An illustrative aggregate gross enterprise value of $4.5 billion is ascribed to the IACs and value is allocated among the various IACs according to their respective management's projections for the years 2020 – 2024 using the methodology described in the "Allocation of Independent Associated Companies" section of the Net Assets Report and Updated Net Assets Report. Applying an illustrative blended tax rate of 33% to the aggregate gross enterprise value of the IACs, the sale of the IACs generates $3.0 billion in net proceeds, which was the amount guaranteed under the *Summary Term Sheet with Ad Hoc Committee* filed by the Debtors [Docket No. 257]. Neither the $4.5 billion aggregate gross enterprise value nor the 33% blended tax rate are intended to be estimates of actual enterprise value or related tax liability; they are applied solely for illustrative purposes.[5] The IACs had been carried on the respective balance sheets at a book value basis that was not representative of the value that could be realized through an orderly sale process. Because the current value of the IACs was (and is) unknown, a hypothetical IAC value was used to better approximate the value that could be realized from an IAC sale.

(iv)    In instances where the net asset value for a Raymond-side ICSP would otherwise result in a deficit (an "<u>Obligor Person</u>"), no net asset value was presented, (i.e., the net asset balance was set to $0). Where an Obligor Person's net asset value was a deficit, in part due to amounts owed to other Raymond-side ICSPs (each an "<u>Obligee Person</u>"), for presentation purposes, the value of the assets of the Obligee Person are reduced by the amount by which the face amount of the net obligations exceeded the assets of the Obligor Person. This was done to reflect the asset's net recoverable value. For example, if total liabilities exceeded total assets for an Obligor Person by $50 and the Obligor Person has a $100 note payable to an Obligee Person, then the Obligor Person would be presented as having no net asset value and the value of the Obligee Person's note

---

[5]    In many cases, a Raymond-side ICSP's interests in IAC are held through interests in I-way holding companies. Where an entity reflected on a Raymond-side ICSP's balance directly or indirectly held interests in IACs in addition to other assets, North Bay provided to Huron a description of the assets and liabilities not associated with the IACs.

NAS2336

receivable would be reduced by $50. When combined, the balances result in an accurate presentation of the combined entities. In one case, where an Obligor Person had both secured and unsecured obligations, the unsecured obligation was reduced before the secured obligation.

(v)     Certain assets presented in the individual Raymond-side ICSPs balance sheets prepared by North Bay in the ordinary course of business include assets relating to trusts that are themselves Raymond-side ICSPs. The net asset values of such trusts were eliminated (i.e., are not reflected as assets of such individuals), but are instead presented independently, consistent with the presentation of Raymond-side ICSPs generally.

(vi)    Where a third party provided an estimated value of an asset (such assets were labeled "Third-Party Valued Assets"), "unrealized gain/loss" refers to the difference between the Third-Party Valued Asset's value and its tax basis. Unrealized gain/loss are estimates provided by North Bay based upon valuation reports and similar information made available at the time of this report. An illustrative 33% blended tax rate was applied to the estimated unrealized gains to illustrate the hypothetical tax obligation that would result from a sale of such Third-Party Valued Assets.

29.     Although I express no opinion with respect to the value of any specific asset, I believe that, with the adjustments made, the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report represent a reasonable approach to approximate the total net asset values of the Raymond-side ICSPs. I further believe that it is reasonable to use $4.5 billion as an illustrative value for the estimated value of the IACs in lieu of the balance sheet value because that was the value assigned to the IACs in connection with the Proposed Settlement Framework. My understanding is that the $4.5 billion illustrative value was arrived at assuming an orderly sale of 100% of the interests in the IACs. In a situation where IAC interests were to be monetized in a forced manner – for example, as a result of lawsuits and judgment collection against the owners of IACs' equity – I would expect the value to be lower than the assumed value in an orderly sale. First, forced sales, in general, yield lower prices than transactions between willing buyers and sellers. Second, ownership of the IACs is dispersed

13

among multiple holders; if any one holder were forced to monetize a minority interest, I would not expect that minority interest to yield the same pro rata price for that holder's interest as in a sale involving the entirety of an IAC's equity.

30. For additional information relating to the methodology and preparation of the Net Assets Report, Updated Net Assets Report, and March 31, 2021 Net Assets Report, please refer to Exhibits B, D, and H, respectively, which I incorporate by reference herein.

***Sources and Uses Report***

31. To prepare the Sources and Uses Report, I, or others working under my direction, received from North Bay for each of the thirteen entities listed below (the "<u>Top-Level Entities</u>"): (i) monthly cash flow statements for January 2008 through March 2020; and (ii) monthly balance sheets, income statements, and general ledgers for January 2008 through March 2020.

| Top-Level Entities | |
|---|---|
| Rosebay Medical Company L.P. | RMLP |
| Trust U/A 11/5/74 fbo Beverly Sackler | 74A |
| Rosebay Medical Company, Inc. | RMCI |
| 1974 Irrevocable Trust A fbo BS and RSS | 74-AR |
| 1974 Irrevocable Trust A fbo BS and JDS | 74-AJ |
| Trust B U/A dtd 11/5/74 fbo Beverly Sackler | 74B |
| 1974 Irrevocable Investment Trust | Inv. Trust |
| Raymond R. Sackler Trust 1 dtd 12/23/89 | 1A Trust |
| Raymond R. Sackler Trust 2 dtd 12/23/89 | 2A Trust |
| Raymond R. Sackler Trust 1B dtd 12/23/89 | 1B Trust |
| Raymond R. Sackler Trust 2B dtd 12/23/89 | 2B Trust |
| AR Irrevocable Trust | 74-AR IR |
| AJ Irrevocable Trust | 74-AJ IR |

32. For additional information relating to the methodology and preparation of the Sources and Uses Report, please refer to Exhibit C, which I incorporate by reference herein.

14

NAS2338

## **Conclusion**

33.     The matters discussed above represent the results of my work through the date of this report.  As my work proceeds, I may identify other matters that require an addition to this report.  Further, I may become aware of additional opinions of other experts in this matter and reserve the right to consider the impact of any new information on the reports discussed herein.

NAS2339

Executed on July 26, 2021

_Timothy Martin_

Timothy Martin

16

NAS2340

# Exhibit A

NAS2341

# Raymond-side Informational Presentation

*November 22, 2019*

*Prepared Pursuant to the Amended and Restated Case Stipulation Among the Debtors, the Official Committee of Unsecured Creditors and Certain Related Parties*

NAS2342

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

1

# Amended and Restated Stipulation Information Requests

**Amended and Restated Stipulation contemplates that the Shareholder Parties will provide the following to the legal and financial advisors to the Debtors and the UCC:**

- an explanation and analysis regarding where the assets held by the Initial Covered Sackler Persons are located;

- in what format (trust, corporation, partnership, etc.) they are held;

- why the applicable Initial Covered Sackler Person selected such format (i.e., tax or other reasons, etc.), if known;

- a general understanding of the type of such assets; and

- whether, in their view, any individual Initial Covered Sackler Person (and such person's assets) are subject to the jurisdiction of the Bankruptcy Court.

*See Amended and Restated Stipulation ¶ 17(a).*

**Amended and Restated Stipulation provides that "Initial Covered Sackler Person" means as follows:**

- Beverly Sackler, David A. Sackler, Ilene Sackler, Jonathan D. Sackler, Kathe Sackler, Mortimer D.A. Sackler, Richard S. Sackler, and Theresa Sackler;

- any trusts of which any of the foregoing are beneficiaries, and the trustees thereof (solely in their capacities as such); and

- each Shareholder Party and each other entity or person that directly or indirectly owns equity in, or has voting control over, any of the Debtors.

*See Amended and Restated Stipulation ¶ 1.*

**NAS2343**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

2

# Raymond-side Initial Covered Sackler Persons

**On the Raymond-side, the Initial Covered Sackler Persons include:**

- **Individuals *(Tab A)*:** Individuals consist of Richard Sackler, Jonathan Sackler, David Sackler, and the Estate of Beverly Sackler (the Initial Covered Sackler Persons also include trustees of the covered trusts, solely in their capacity as such; however, trusts are organized by trust rather than trustee for ease of reference)

- **Trusts *(Tab B)*:** Trusts are described in four general categories for this presentation:
  - Category One: Trusts that indirectly own interests in Purdue *(Tab 1)*
  - Category Two: Trusts created by division or decanting from other trusts *(Tab 2)*
  - Category Three: Other trusts that directly and/or indirectly own interests in II-Way[1] entities *(Tab 3)*
  - Category Four: Additional trusts, including life insurance trusts, trusts holding real estate, and pourover trusts *(Tab 4)*

- **Entities *(Tab C)*:** Entities consist of various limited partnerships, limited liability companies, and corporations (all organized under Delaware or New York law) through which Raymond-side interests in Purdue are held

[1] II-Way entities are directly or indirectly owned on both Mortimer and Raymond sides. By contrast, I-Way entities are owned only on one side.

**NAS2344**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Category One: Trusts That Indirectly Own Interests in Purdue

- Category One consists of five trusts that are Initial Covered Sackler Persons and that indirectly own interests in Purdue
    - Trust U/A 11/5/74 fbo Beverly Sackler ("74A Trust")
    - Raymond R. Sackler Trust 1 dtd 12/23/89 ("1A Trust")
    - Raymond R. Sackler Trust 2 dtd 12/23/89 ("2A Trust")
    - Raymond R. Sackler Trust 1B dtd 12/23/89 ("1B Trust")
    - Raymond R. Sackler Trust 2B dtd 12/23/89 ("2B Trust")

- Three of the Category One trusts also directly or indirectly (through holding companies such as Rosebay Medical Company L.P.) own interests in II-Way entities
    - 74A Trust
    - 1A Trust
    - 2A Trust

- Each Category One trust is an irrevocable, non-grantor, discretionary spendthrift trust created more than 15 years ago

- Most beneficiaries of the Category One trusts are not Initial Covered Sackler Persons
    - Two Category One trusts have four living beneficiaries, none of which is an Initial Covered Sackler Person
    - Two Category One trusts have seven living beneficiaries, only one of which is a Initial Covered Sackler Person
    - One Category One trust has 13 living beneficiaries, only three of which are Initial Covered Sackler Person. (Note that Beverly Sackler ceased to be a beneficiary of any trust upon her death)

**NAS2345**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Category Two: Trusts Created by Division from #74A Trust or Subsequent Decanting

- Category Two consists of six trusts that are Initial Covered Sackler Persons and that were either created by division from the 74A Trust or by subsequent decanting from such trusts
  - Trust B U/A 11/4/74 fbo Beverly Sackler ("74B Trust") (created by division in February, 2002)
  - The 1974 Irrevocable Investment Trust ("Investment Trust") (created by division in April, 2004)
  - 1974 Irrevocable Trust fbo BS and RSS ("74-AR Trust") (created by division in May, 2015)
  - 1974 Irrevocable Trust fbo BS and JDS ("74-AJ Trust") (created by division in May, 2015)
  - AR Irrevocable Trust (created by decanting July 2019; effective July 2019)
  - AJ Irrevocable Trust (created by decanting May 2019; effective June 2019)

- Each Category Two trust is an irrevocable, non-grantor, discretionary spendthrift trust

- The AR Irrevocable Trust and AJ Irrevocable Trust were decanted subject to a Receipt, Refunding and Guarantee Agreement whereby each trust agrees to satisfy any valid and enforceable right to payment held by a creditor against the trust from which it was decanted

**NAS2346**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

- Category Three consists of ten other trusts that are Initial Covered Sackler Persons and that directly and/or indirectly own interests in II-Way entities
  - Beverly Sackler Trust 1 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 1")
  - Beverly Sackler Trust 2 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 2")
  - Beverly Sackler Trust 3 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 3")
  - Trust under agreement dated December 3, 1979 f/b/o Richard S. Sackler ("RSS BRP Trust")
  - Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler ("JDS BRP Trust")
  - Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler ("RSS FPC Trust")
  - Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler ("JDS FPC Trust")
  - Trust under agreement dated December 23, 1980 f/b/o Richard S. Sackler ("RSS XPC Trust")
  - Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler ("JDS XPC Trust")
  - Trust Agreement dated August 29, 2003 f/b/o Issue of Richard S. Sackler
  - Trust Agreement dated August 29, 2003 f/b/o Issue of Jonathan D. Sackler

- 17 other trusts that are not Initial Covered Sackler Persons also directly and/or indirectly own interests in II-Way entities
  - The trusts are not beneficial owners of Purdue and the beneficiaries of these trusts are not Initial Covered Sackler Persons
  - In general, these trusts are for the benefit of the grandchildren (and their issue) of Raymond Sackler
  - The descriptions of these trusts are similar to the Gallo Trust 1, Gallo Trust 2, and Gallo Trust 3

- Each Category Three trust is an irrevocable, non-grantor, discretionary spendthrift trust, with the exception of the two trusts dated August 29, 2003. However, in the case of said exceptions, the trusts' primary assets are their indirect beneficial ownership of a dormant entity

**NAS2347**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

6

# Category Four:  Other Trusts

- Life Insurance Trusts
  - Two trusts are life insurance trusts

- Trusts Formed to Hold Residential Real Estate
  - Five trusts were formed to hold residential real estate

- Trust Company Trusts
  - Six trusts were formed as trust company trusts

- Revocable Pourover Trusts
  - Three Trusts are revocable pourover trusts

- Miscellaneous Trusts
  - Eight trusts are miscellaneous trusts

**NAS2348**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

7

# Raymond-side Initial Covered Sackler Persons

NAS2349

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to
Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond-side Initial Covered Sackler Persons

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| **Individuals** | | |
| Richard Sackler | Specified individual | 16 |
| Jonathan Sackler | Specified individual | 18 |
| David Sackler | Specified individual | 20 |
| Estate of Beverly Sackler | Specified individual | 21 |
| **Trusts ²**<br>Trusts That Indirectly Own Interests in Purdue | | |
| Trust U/A 11/5/74 fbo Beverly Sackler | Indirect owner of equity in one or more Debtors / trust of which one or more specified individuals is a beneficiary | 23 |
| Raymond R. Sackler Trust 1 dtd 12/23/89 | Indirect owner of equity in one or more Debtors / trust of which one or more specified individuals is a beneficiary | 24 |
| Raymond R. Sackler Trust 2 dtd 12/23/89 | Indirect owner of equity in one or more Debtors | 26 |
| Raymond R. Sackler Trust 1B dtd 12/23/89 | Indirect owner of equity in one or more Debtors / trust of which one or more specified individuals is a beneficiary | 28 |
| Raymond R. Sackler Trust 2B dtd 12/23/89 | Indirect owner of equity in one or more Debtors | 29 |

² The Initial Covered Sackler Persons also include the trustees of such trusts (solely in their capacity as such) although not separately set forth on this list.

**NAS2350**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

9

# Raymond-side Initial Covered Sackler Persons *(cont'd)*

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| Trusts Created by Division from 74A Trust or Subsequent Decanting | | |
| Trust B U/A 11/5/74 fbo Beverly Sackler | Trust of which one or more specified individuals is a beneficiary | 31 |
| The 1974 Irrevocable Investment Trust | Trust of which one or more specified individuals is a beneficiary | 32 |
| 1974 Irrevocable Trust fbo BS and RSS | Trust of which one or more specified individuals is a beneficiary | 33 |
| 1974 Irrevocable Trust fbo BS and JDS | Trust of which one or more specified individuals is a beneficiary | 34 |
| AR Irrevocable Trust | Trust of which one or more specified individuals is a beneficiary | 35 |
| AJ Irrevocable Trust | Trust of which one or more specified individuals is a beneficiary | 36 |
| Other Trusts That Directly and/or Indirectly Own Interests in II-Way Entities | | |
| Beverly Sackler Trust 1 f/b/o David A. Sackler 12/20/1989 | Trust of which one or more specified individuals is a beneficiary | 38 |
| Beverly Sackler Trust 2 f/b/o David A. Sackler 12/20/1989 | Trust of which one or more specified individuals is a beneficiary | 39 |
| Beverly Sackler Trust 3 f/b/o David A. Sackler 12/20/1989 | Trust of which one or more specified individuals is a beneficiary | 40 |

**NAS2351**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond-side Initial Covered Sackler Persons *(cont'd)*

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| **Trusts Created by Division from 74A Trust or Subsequent Decanting** | | |
| Trust under agreement dated December 3, 1979 f/b/o Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 41 |
| Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 42 |
| Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 43 |
| Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 44 |
| Trust under agreement dated December 23, 1980 f/b/o Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 45 |
| Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 46 |
| Trust Agreement dated August 29, 2003 f/b/o Issue of Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 47 |
| Trust Agreement dated August 29, 2003 f/b/o Issue of Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 48 |

**NAS2352**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

11

# Raymond-side Initial Covered Sackler Persons *(cont'd)*

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| Other Trusts | | |
| Richard S. Sackler Life Insurance Trust | Trust of which one or more specified individuals is a beneficiary | 50 |
| Jonathan D. Sackler Life Insurance Trust | Trust of which one or more specified individuals is a beneficiary | 51 |
| Richard S. Sackler Trust f/b/o David A. Sackler 3/8/90 | Trust of which one or more specified individuals is a beneficiary | 52 |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 53 |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 54 |
| Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 55 |
| Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | Trust of which one or more specified individuals is a beneficiary | 56 |
| DABB Trust | Trust of which one or more specified individuals is a beneficiary | 57 |
| Richard S. Sackler Trust U/A 9/30/04 | Trust of which one or more specified individuals is a beneficiary | 58 |
| RSS Fiduciary Management Trust | Trust of which one or more specified individuals is a beneficiary | 59 |

**NAS2353**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond-side Initial Covered Sackler Persons *(cont'd)*

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| Other Trusts | | |
| Crystal Trust | Trust of which one or more specified individuals is a beneficiary | 60 |
| MCM Fiduciary Management Trust | Trust of which one or more specified individuals is a beneficiary | 61 |
| Data Trust | Trust of which one or more specified individuals is a beneficiary | 62 |
| Cornice Trust | Trust of which one or more specified individuals is a beneficiary | 63 |
| Beverly Sackler Revocable Trust | Trust of which one or more specified individuals is a beneficiary | 64 |
| RSS Revocable Pourover Trust | Trust of which one or more specified individuals is a beneficiary | 65 |
| JDS Revocable Pourover Trust | Trust of which one or more specified individuals is a beneficiary | 66 |
| Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Richard S. Sackler | Trust of which one or more specified individuals is a beneficiary | 67 |
| David A. Sackler 2012 Trust | Trust of which one or more specified individuals is a beneficiary | 68 |
| Irrevocable Trust under Declaration dated as of April 25, 1991 | Trust of which one or more specified individuals is a beneficiary | 69 |
| Irrevocable Trust under Declaration dated as of August 25, 1992 | Trust of which one or more specified individuals is a beneficiary | 70 |

**NAS2354**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond-side Initial Covered Sackler Persons *(cont'd)*

| Initial Covered Sackler Person | Reason for Inclusion as Initial Covered Sackler Person | Page No. |
|---|---|---|
| **Other Trusts** | | |
| The RSS 2012 Family Trust | Trust of which one or more specified individuals is a beneficiary | 71 |
| Raymond R. Sackler Credit Shelter Trust u/a 3/29/2012 | Trust of which one or more specified individuals is a beneficiary | 72 |
| Raymond R. Sackler GST Exempt Marital Trust u/a 3/29/2012 | Trust of which one or more specified individuals is a beneficiary | 73 |
| **Entities** | | |
| Rosebay Medical Company L.P. | Shareholder Party | 75 |
| Rosebay Medical Company, Inc. | Indirect owner of equity in one or more Debtors | 76 |
| Linarite Holdings LLC | Indirect owner of equity in one or more Debtors | 77 |
| Perthlite Holdings LLC | Indirect owner of equity in one or more Debtors | 78 |
| Moonstone Holdings LLC | Indirect owner of equity in one or more Debtors | 79 |
| Roselite Holdings LLC | Indirect owner of equity in one or more Debtors | 80 |

**NAS2355**

14

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Individuals

NAS2356

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

15

# Richard Sackler

| | |
|---|---|
| **Citizenship** | • US Citizen |
| **Residency (Last 15 Years)** | • Until 2013, Connecticut<br>• From 2013 to 2018, Texas<br>• From 2018 to present, Florida |
| **Assets** | • Cash in New York and Oklahoma bank accounts<br>• Investments in New York and Oklahoma brokerage accounts<br>• Accounts receivable on account of security deposit, and domestic and foreign tax refunds and life insurance proceeds payable due to Beverly Sackler's death<br>• Notes receivable from Landings Financial LLC and Tradewind Company<br>• Loan to individual<br>• Direct and indirect investments in II-Way entities as set forth on the following page<br>• 100% interest in Summer Road LLC, a Delaware limited liability company (family investment office)<br>• 50% interest in North Bay Associates, a Delaware partnership (family investment office)<br>• Various investments, primarily in private equity funds, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies<br>• Life insurance policies<br>• 401(k) retirement savings plan and Roth IRA<br>• Real estate located in Connecticut<br>• Artwork located in the US<br><br>Note: Does not include assets held in certain trusts that may otherwise be characterized as assets of Richard Sackler (such assets are described on relevant trust pages) |
| **Reason for Format** | • N/A |
| **Bankruptcy Court Jurisdiction** | • Individual subject to Bankruptcy Court's personal jurisdiction in an adversary proceeding to the extent that service of process has been made in accordance with Bankruptcy Rule 7004, which can be effectuated nationwide<br><br>• Bankruptcy Court does not have *in rem* jurisdiction over property outside the limits of the state in which it sits, but if individual is subject to Bankruptcy Court's *in personam* jurisdiction, Bankruptcy Court has authority to issue orders with respect to that individual's property |

**NAS2357**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

16

# Richard Sackler *(cont'd)*

| | |
|---|---|
| **Assets (direct and indirect ownership of II-Way entities) [3]** | • 8.2% common equity interest in East Hudson Inc., a British Virgin Islands company |
| | • 34.6% common equity interest in Meridian International, Ltd., a Delaware corporation |
| | • 30.64% common equity interest in HPR Partners, a New York general partnership |
| | • 25% common equity interest in Purdue Pharma Technologies Inc., a Delaware corporation |
| | • 7% common equity interest in St. Lawrence Associates, a New York general partnership |
| | • 50% common equity interest in Tradewind Company, a New York general partnership |
| | • 50% common equity interest in Purdue Frederick Inc., a Canadian company |
| | • General partner (with a 0% common equity interest) in WA Canada L.P., a Delaware limited partnership |
| | • 5% common equity interest in Hudson River Partners, a New York general partnership |
| | • 5% common equity interest in Pacific Partners Company, a New York general partnership |
| | • 5% common equity interest in Hudson River (Delaware) Inc., a Delaware corporation |
| | • 50% common equity interest in China Sea Company Inc., a Delaware corporation |
| | • 50% common equity interest in Standard Pharmaceuticals Corporation, a Delaware corporation |
| | • 8.6% common equity interest in Ankersea Limited Liability Company, a Delaware limited liability company |
| | • 50% common equity interest in Crissaire Corporation, a Delaware corporation |

[3] See further description in Annex

NAS2358

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Jonathan Sackler

| | |
|---|---|
| **Citizenship** | • US Citizen |
| **Residency (Last 15 Years)** | • Until present, Connecticut |
| **Assets** | • Cash in New York and Oklahoma bank accounts<br>• Investments in New York and Oklahoma brokerage accounts<br>• Accounts receivable on account of domestic and foreign tax refunds and life insurance proceeds payable due to Beverly's death<br>• Notes receivable from family member; trust for the benefit of Jonathan Sackler's issue (not an Initial Covered Sackler Person); Landings Financial LLC (a Delaware limited liability company), Tradewind Company, and other Delaware limited liability companies<br>• Loan to property management company<br>• Direct and indirect investments in II-Way entities as set forth on the following page<br>• 50% interest in Kokino LLC, a Delaware limited liability company (family investment office)<br>• 50% interest in North Bay Associates, a Delaware partnership (family investment office)<br>• Various investments, primarily in private equity funds, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies<br>• Interests in family investment offices<br>• Life insurance policies<br>• 401(k) retirement savings plan and Roth IRA<br>• Real estate located in Connecticut<br>• Artwork located in the US<br><br>Note:  Does not include assets held in certain trusts that may otherwise be characterized as assets of Jonathan Sackler (such assets are described on relevant trust pages) |
| **Reason for Format** | • N/A |
| **Bankruptcy Court Jurisdiction** | • Individual subject to Bankruptcy Court's personal jurisdiction in an adversary proceeding to the extent that service of process has been made in accordance with Bankruptcy Rule 7004, which can be effectuated nationwide<br><br>• Bankruptcy Court does not have *in rem* jurisdiction over property outside the limits of the state in which it sits, but if individual is subject to Bankruptcy Court's *in personam* jurisdiction, Bankruptcy Court has authority to issue orders with respect to that individual's property |

**NAS2359**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

18

# Jonathan Sackler *(cont'd)*

| | |
|---|---|
| **Assets (direct and indirect ownership of II-Way entities) [4]** | • Owns 34.6% common equity interest in Meridian International, Ltd., a Delaware corporation |
| | • Owns 30.64% common equity interest in HPR Partners, a New York general partnership |
| | • Owns 25% common equity interest in Purdue Pharma Technologies Inc., a Delaware corporation |
| | • Owns 7% common equity interest in St. Lawrence Associates, a New York general partnership |
| | • Owns 5% common equity interest in Pacific Partners Company, a New York general partnership |
| | • Owns 5% common equity interest in Hudson River (Delaware) Inc., a Delaware corporation |
| | • Owns 50% common equity interest in Tradewind Company, a New York general partnership |
| | • Owns 50% common equity interest in Purdue Frederick Inc., a Canadian company |
| | • General partner (with a 0% common equity interest) in WA Canada L.P., a Delaware limited partnership |
| | • Owns 5% common equity interest in Hudson River Partners, a New York general partnership |
| | • Owns 50% common equity interest in China Sea Company Inc., a Delaware corporation |
| | • Owns 50% common equity interest in Standard Pharmaceuticals Corporation, a Delaware corporation |
| | • Owns 8.2% common equity interest in Lodestone Limited Liability Company, a Delaware limited liability company |
| | • Owns 50% common equity interest in Crissaire Corporation, a Delaware corporation |

[4]  See further description in Annex

NAS2360

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# David Sackler

| | |
|---|---|
| **Citizenship** | • US Citizen |
| **Residency (Last 15 Years)** | • Until 2019, New York<br>• From 2019 to present, Florida |
| **Assets** | • Cash in New York bank and Oklahoma bank accounts<br>• Investments in New York brokerage accounts<br>• Accounts receivable on account of trade and from a Delaware limited liability company owned by 1A Trust and holding real estate<br>• Loans to individuals and Delaware corporation owned by David Sackler's spouse<br>• Various investments, primarily in private equity funds and hedge funds, principally held through Delaware limited partnerships and limited liability companies<br>• Real estate located in New York<br>• Artwork located in the US |
| **Reason for Format** | • N/A |
| **Bankruptcy Court Jurisdiction** | • Individual subject to Bankruptcy Court's personal jurisdiction in an adversary proceeding to the extent that service of process has been made in accordance with Bankruptcy Rule 7004, which can be effectuated nationwide<br>• Bankruptcy Court does not have *in rem* jurisdiction over property outside the limits of the state in which it sits, but if individual is subject to Bankruptcy Court's *in personam* jurisdiction, Bankruptcy Court has authority to issue orders with respect to that individual's property |

NAS2361

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# Estate of Beverly Sackler (d. October 14, 2019)

| | |
|---|---|
| **Citizenship** | • Until death, US Citizen |
| **Residency (Last 15 Years)** | • Until death, Connecticut |
| **Executors** | • Richard and Jonathan Sackler |
| **Assets** | • Cash in US bank accounts<br>• Account receivable from trust established by Raymond Sackler for the benefit of charitable foundations<br>• Life Insurance policies<br>• IRA<br>• Real estate located in New York |
| **Reason for Format** | • N/A |
| **Bankruptcy Court Jurisdiction** | • Estate (through its executors in their capacity as such) is subject to Bankruptcy Court's personal jurisdiction in an adversary proceeding to the extent that service of process has been made in accordance with Bankruptcy Rule 7004, which can be effectuated nationwide<br><br>• Bankruptcy Court does not have jurisdiction to (1) probate or annul Beverly Sackler's will; (2) administer Beverly Sackler's probate estate, or (3) reach a *res* in custody of a state court by endeavoring to dispose of property belonging to the probate estate |

**NAS2362**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trusts:  Category One

NAS2363

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to
Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust U/A 11/5/74 fbo Beverly Sackler ("74A Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • November 5, 1974 |
| **Beneficiaries** | • Beverly Sackler (until death) and Raymond Sackler's issue<br>• Trustees are directed to divide trust following Beverly Sackler's death into separate shares, one for Richard Sackler and his issue and one for Jonathan Sackler and his issue (the division has not yet been implemented) |
| **Trustees** | • Current Trustees: Richard and Jonathan Sackler[5]<br>• Historical Succession of Trustees:<br>  • Initially, Beverly, Richard, and Jonathan Sackler<br>  • On February 14, 2004, Beverly, Richard, and Jonathan Sackler resigned in favor of Peter Ward<br>  • On June 11, 2004, Peter Ward resigned in favor of Richard and Jonathan Sackler<br>  • Jonathan Sackler is in the process of resigning in favor of Cedar Cliff Fiduciary Management Inc. |
| **Governing Law** | • Connecticut as to administration (this will change to Wyoming when Jonathan Sackler resigns in favor or Cedar Cliff Fiduciary Management Inc.)<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York and Oklahoma bank accounts<br>• Investments in New York brokerage accounts<br>• Accounts receivable from state tax authorities<br>• Notes receivable from Investment Trust and Rosebay Medical Company L.P.<br>• 50% interest in Pharma Associates L.P., a Delaware limited partnership<br>• 38.72% interest in HPR Partners, a New York partnership<br>    • Hospice Provident LLC, a Delaware limited liability company<br>• 98% limited partnership interest in Rosebay Medical Company L.P., a Delaware limited partnership (see page 75 for assets)<br>• Various investments, primarily in private equity funds, marketable securities, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency<br>• Notes receivable from the 1974 Irrevocable Investment Trust (as defined below) are the result of the 74A Trust loaning funds to the 1974 Irrevocable Investment trust in each year between 2010-2017 for investment purposes |

[5] No trustee of any trust may participate in the exercise of a discretionary power to make a distribution to him/herself

**NAS2364**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond R. Sackler Trust 1 dtd 12/23/89 ("1A Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • December 23, 1989 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustee: Data LLC<br>• Historical Succession of Trustees:<br> • Initially, Richard Sackler and Peter Ward<br> • Pursuant to a trust amendment made on February 20, 1990, Peter Ward ceased to be a trustee<br> • On June 24, 2002, Richard Sackler resigned in favor of Leslie Schreyer<br> • On November 20, 2018, Leslie Schreyer resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investments in New York brokerage account<br>• Accounts receivable from foreign tax authority, and trade<br>• Notes receivable from David Sackler and Meridian International Ltd.<br>• Loan to Nerula S.a.r.l.<br>• Direct and indirect investments in II-Way entities as set forth on the following page<br>• 50% common equity interest in Rosebay Medical Company, Inc., a Delaware corporation (see page 77 for assets)<br>• Various investments, primarily in private equity funds, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies<br>• Real estate located in Florida, New York and Quebec, Canada |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

**NAS2365**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# 1A Trust *(cont'd)*

| | |
|---|---|
| **Assets (direct and indirect ownership of II-Way entities)[6]** | • 15.4% common equity interest in Meridian International, Ltd, a Delaware corporation<br>• 43% common equity interest in St. Lawrence Associates, a New York general partnership<br>• 45% common equity interest in Hudson River Partners, a New York general partnership<br>• 45% common equity interest in Hudson River (Delaware) Inc, a Delaware corporation<br>• 45% common equity interest in Pacific Partners Company, a New York general partnership<br>• 25% common equity interest in HS Holdings Inc., a Delaware corporation<br>• 50% common equity interest in Boiling Bay Corporation, a Delaware corporation<br>• 50% of Laysan Limited, a Bermuda company<br>• 25% of Evening star Services, Limited, a British Virgin Islands company<br>• 25% of Purdue Pharma Inc., a Canada corporation<br>• 12.5% of Mundipharma Pharmaceuticals Limited, a Cyprus company<br>• 25% of Mundipharma A/S, a Denmark company<br>• 25% of Mundipharma Oy, a Finland company<br>• 71.4% of Ankersea Limited Liability Company, a Delaware limited liability company<br>• 100% of Nerula S.ar.l., a Luxembourg company which owns the following:<br>• 25% of Mundipharma IT Services GmBH, A Switzerland company<br>• 25% of Mundipharma Medical GmBH, a Switzerland company<br>• 25% of Mundipharma International Limited, a United Kingdom company<br>• 25% of Mundipharma International Technical Operations Limited, a United Kingdom company<br>• 25% of Mundipharma IT Services Limited, a United Kingdom company |

[6] See further description in Annex

NAS2366

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond R. Sackler Trust 2 dtd 12/23/89 ("2A Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • December 23, 1989 |
| **Beneficiaries** | • Issue of Jonathan Sackler |
| **Trustees** | • Current Trustee: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially, Jonathan Sackler and Peter Ward<br>  • On February 20, 1990, trust was amended such that Jonathan Sackler became sole trustee<br>  • On June 24, 2002, Jonathan Sackler resigned in favor of Leslie Schreyer<br>  • Leslie Schreyer's term was to expire on April 11, 2016, (his 70th birthday), so on that day he resigned and Jonathan Sackler resumed his office as original trustee for the purpose of reappointing Leslie Schreyer as trustee and then Jonathan Sackler resigned on the same day<br>  • On November 20, 2018, Leslie Schreyer resigned in favor of Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investments in New York brokerage accounts<br>• Accounts receivable from foreign tax authority and investment fund<br>• Note receivable from Meridian International Ltd.<br>• Loan to Neji S.a.r.l.<br>• Direct and indirect investments in II-Way entities as set forth on the following page<br>• 50% common equity interest in Rosebay Medical Company, Inc., a Delaware corporation (see page 77 for assets)<br>• Various investments, primarily in private equity funds, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

**NAS2367**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# 2A Trust *(cont'd)*

| Assets (direct and indirect ownership of II-Way entities)[7] | |
|---|---|
| | • 15.4% common equity interest in Meridian International, Ltd, a Delaware corporation |
| | • 43% common equity interest in St. Lawrence Associates, a New York general partnership |
| | • 45% common equity interest in Hudson River Partners, a New York general partnership |
| | • 45% common equity interest in Hudson River (Delaware) Inc, a Delaware corporation |
| | • 45% common equity interest in Pacific Partners Company, a New York general partnership |
| | • 25% common equity interest in HS Holdings Inc., a Delaware corporation |
| | • 50% common equity interest in Boiling Bay Corporation, a Delaware corporation |
| | • 50% of Laysan Limited, a Bermuda company |
| | • 25% of Evening star Services, Limited, a British Virgin Islands company |
| | • 25% of Purdue Pharma Inc., a Canada corporation |
| | • 12.5% of Mundipharma Pharmaceuticals Limited, a Cyprus company |
| | • 25% of Mundipharma A/S, a Denmark company |
| | • 25% of Mundipharma Oy, a Finland company |
| | • 71.4% of Lodestone Limited Liability Company, a Delaware limited liability company |
| | • 100% of Neji S.ar.l., a Luxembourg company which owns the following: |
| | • 25% of Mundipharma IT Services GmBH, A Switzerland company |
| | • 25% of Mundipharma Medical GmBH, a Switzerland company |
| | • 25% of Mundipharma International Limited, a United Kingdom company |
| | • 25% of Mundipharma International Technical Operations Limited, a United Kingdom company |
| | • 25% of Mundipharma IT Services Limited, a United Kingdom company |

[7] See further description in Annex

NAS2368

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond R. Sackler Trust 1B dtd 12/23/89 ("1B Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 1A Trust effective November 1, 2002 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustee: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially (i.e., immediately upon the division), Leslie Schreyer<br>  • On November 1, 2003, Leslie Schreyer resigned in favor of Anthony Roncalli<br>  • On November 21, 2018, Anthony Roncalli resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• 100% interest of Linarite Holdings LLC, a Delaware limited liability company<br>• 100% interest of Moonstone Holdings LLC, a Delaware limited liability company<br>• 100% interest of Otavite Holdings, LLC, a Delaware limited liability company<br>  • 25% common equity interest in Pharma Associates Inc. |
| **Reason for Format** | • Created by division from the 1A Trust for the purpose of separately holding indirect interests in the general partners of Purdue Pharma L.P. and related US companies |

**NAS2369**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

28

# Raymond R. Sackler Trust 2B dtd 12/23/89 ("2B Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 2A Trust effective November 1, 2002 |
| **Beneficiaries** | • Issue of Jonathan Sackler |
| **Trustees** | • Current Trustee: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially (i.e., immediately upon the division), Leslie Schreyer<br>  • On November 1, 2003, Leslie Schreyer resigned in favor of Jeffrey Robins<br>  • On November 20, 2018, Jeffrey Robins resigned in favor of Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• 100% interest in Perthlite Holdings LLC, a Delaware limited liability company<br>• 100% interest in Roselite Holdings LLC, a Delaware limited liability company<br>• 100% interest of Tremolite Holdings, LLC, a Delaware limited liability company<br>  • 25% common equity interest in Pharma Associates Inc. |
| **Reason for Format** | • Created by division from the 2A Trust for the purpose of separately holding indirect interests in the general partners of Purdue Pharma L.P. and related US companies |

NAS2370

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trusts:  Category Two

NAS2371

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

30

# Trust B U/A 11/4/74 fbo Beverly Sackler ("74B Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 74A Trust effective February 1, 2002 |
| **Beneficiaries** | • Beverly Sackler (until death) and issue of Raymond Sackler<br>• Trustees are directed to divide trust following Beverly Sackler's death into separate shares, one for Richard Sackler and his issue and one for Jonathan Sackler and his issue (the division has not yet been implemented) |
| **Trustees** | • Current Trustees: BRJ Fiduciary Management<br>• Historical Succession of Trustees:<br> • Initially, Beverly, Richard and Jonathan Sackler<br> • Effective May 15, 2003, Richard Sackler resigned in favor of Stephen A. Ives (for period of 60 months)<br> • Effective May 19, 2003, Jonathan Sackler resigned in favor of Leslie Schreyer (for period of 60 months)<br> • Effective June 5, 2003, Beverly Sackler resigned in favor of Thomas A. Russo (for period of 60 months)<br> • On May 7, 2008, prior to the expiration of the 60-month terms of Stephen A. Ives, Leslie Schreyer and Thomas A. Russo, Jonathan Sackler resumed office as original trustee for the purpose of reappointing Stephen A. Ives, Leslie Schreyer and Thomas A. Russo and then resigned on the same day<br> • On August 11, 2011, Leslie Schreyer, Stephen A. Ives and Thomas A. Russo resigned in favor of BRJ Fiduciary Management |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investments in New York brokerage accounts<br>• Notes receivable from 1974 Investment Trust and Landings Financial LLC<br>• Various investments, primarily in private equity, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • Created by division from the 74A Trust to allow non-business related assets to be invested and managed separately |

NAS2372

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# The 1974 Irrevocable Investment Trust ("Investment Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 74A Trust effective April 1, 2004 |
| **Beneficiaries** | • Beverly Sackler (until death) and issue of Raymond Sackler<br>• Trustees are directed to divide trust following Beverly Sackler's death into separate shares, one for Richard Sackler and his issue and one for Jonathan Sackler and his issue (the division has not yet been implemented) |
| **Trustees** | • Current Trustees: North Bay Trust Company, Inc.<br>• Historical Succession of Trustees:<br>  • Initially, Peter Ward<br>  • On June 28, 2005, Peter Ward resigned in favor of North Bay Trust Company, Inc. |
| **Governing Law** | • Oklahoma as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Notes receivable from Jonathan Sackler, Richard Sackler and Delaware and New York entities holding direct or indirect oil and gas assets<br>• Various investments, primarily in private equity, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • Created by division from the 74A Trust to allow non-pharma business related assets to be invested and managed separately |

**NAS2373**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# 1974 Irrevocable Trust fbo BS and RSS ("74-AR Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 74A Trust effective May 1, 2015 |
| **Beneficiaries** | • Beverly Sackler (until death) and Richard Sackler and his issue |
| **Trustees** | • Current Trustees: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>   • Initially, Richard and Jonathan Sackler<br>   • On November 17, 2017, Richard and Jonathan Sackler resigned in favor of Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investments in real estate, held through Delaware limited liability companies holding real estate<br><br>Note: Beneficial ownership of all other assets were transferred effective July 23, 2019 to the AR Irrevocable Trust<br>   • Legal title to certain of such assets to the extent not already transferred are held in a custodial capacity by 74-AR Trust and are in the process of being transferred<br>   • All such transfers were made or are being made subject to the Receipt, Refunding and Guarantee Agreement |
| **Reason for Format** | • Created by division from the 74A Trust so that assets in the 74A Trust, other than the interest in Rosebay Medical Company L.P. could be invested and managed separately with respect to the two families (i.e., the Richard Sackler family and the Jonathan Sackler family) |

**NAS2374**

33

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# 1974 Irrevocable Trust fbo BS and JDS ("74-AJ Trust")

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • Division from 74A Trust effective May 1, 2015 |
| **Beneficiaries** | • Beverly Sackler (until death) and Jonathan Sackler and his issue |
| **Trustees** | • Current Trustees: MCM Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>   • Initially, Richard and Jonathan Sackler<br>   • On May 16, 2017, Richard Sackler resigned in favor of Anthony Roncalli<br>   • On October 6, 2017, Jonathan Sackler and Anthony Roncalli resigned in favor of MCM Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investments in real estate, held through Delaware limited liability companies<br><br>Note: Beneficial ownership of all assets were transferred effective June 8, 2019 to the AJ Irrevocable Trust<br>   • Legal title to certain of such assets to the extent not already transferred are held in a custodial capacity by 74-AJ and are in the process of being transferred<br>   • All such transfers were made or are being made subject to the Refunding and Guarantee Agreement. |
| **Reason for Format** | • Created by division from the 74A Trust so that assets in the 74A Trust, other than the interest in Rosebay Medical Company L.P. could be invested and managed separately with respect to the two families (i.e., the Richard Sackler family and the Jonathan Sackler family) |

**NAS2375**

34

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# AR Irrevocable Trust

| | |
|---|---|
| **Grantor** | • Raymond Sackler (i.e., the trust has been funded entirely with assets decanted from the 74AR Trust, of which Raymond Sackler was the grantor) |
| **Date of Creation** | • July 2, 2019 (decanting from 74-AR Trust effective July 23, 2019) |
| **Beneficiaries** | • Beverly Sackler (until death) and Richard Sackler and his issue |
| **Trustees** | • Current Trustees: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>    • Initially, Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust, subject to Refunding and Guarantee Agreement (see 74-AR Trust page) |
| **Assets** | • Cash in New York bank account<br>• Investments in New York brokerage accounts<br>• Notes receivable from Investment Trust and Delaware limited liability companies<br>• Various investments, primarily in private equity, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • Decanted from the 74-AR Trust for purpose of updating trust provisions and to make consistent with modern trust drafting |

**NAS2376**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# AJ Irrevocable Trust

| | |
|---|---|
| **Grantor** | • Raymond Sackler (the trust has been funded entirely with assets decanted from the 74AJ Trust, of which Raymond Sackler was the grantor) |
| **Date of Creation** | • May 31, 2019 (decanting from 74-AJ Trust effective June 8, 2019) |
| **Beneficiaries** | • Beverly Sackler (until death) and Jonathan Sackler and his issue |
| **Trustees** | • Current Trustee: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>    • Initially, Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust, subject to Refunding and Guarantee Agreement (see 74-AJ Trust page) |
| **Assets** | • Cash in New York bank accounts<br>• Investments in US and UK brokerage accounts<br>• Accounts Receivable<br>• Note receivable from Investment Trust<br>• Various investments, primarily in private equity, hedge funds, and real estate, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • Decanted from the 74-AJ Trust for purpose of updating trust provisions and to make consistent with modern trust drafting |

**NAS2377**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trusts:  Category Three

NAS2378

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to
Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# Beverly Sackler Trust 1 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 1")

| | |
|---|---|
| **Grantor** | • Beverly Sackler |
| **Date of Creation** | • December 20, 1989 |
| **Beneficiaries** | • David Sackler |
| **Trustees** | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Beverly Sackler<br>  • On August 20, 2019, Beverly Sackler resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; however, David Sackler has a testamentary general power of appointment over the trust fund, by means of which he can direct all or any part of the trust fund to any person he chooses, including his estate and the creditors of his estate |
| **Assets** | • Cash in New York bank account<br>• 33.33% interest in RGT One LLC, a Delaware limited liability company<br>  • 33.33% interest in RWA Holdings LLC, a Delaware limited liability company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency and also to take advantage of an expiring generation-skipping transfer tax exemption for gifts made to grandchildren or certain types of trusts for the benefit of grandchildren |

NAS2379

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Beverly Sackler Trust 2 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 2")

| | |
|---|---|
| **Grantor** | • Beverly Sackler |
| **Date of Creation** | • December 20, 1989 |
| **Beneficiaries** | • David Sackler |
| **Trustees** | • Current Trustees: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>　• Initially, Richard Sackler and Peter Ward<br>　• On January 10, 1990, Peter Ward resigned<br>　• On January 31, 2019, Richard Sackler resigned in favor of Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; however, David Sackler has a testamentary general power of appointment over the trust fund, by means of which he can direct all or any part of the trust fund to any person he chooses, including his estate and the creditors of his estate |
| **Assets** | • Cash in New York bank account<br>• 33.33% interest in RGT Two LLC, a Delaware limited liability company<br>　• 33.33% interest in RWA Holdings LLC, a Delaware limited liability company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency and also to take advantage of an expiring generation-skipping transfer tax exemption for gifts made to grandchildren or certain types of trusts for the benefit of grandchildren |

NAS2380

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Beverly Sackler Trust 3 f/b/o David Alex Sackler 12/20/1989 ("Gallo Trust 3")

| | |
|---|---|
| **Grantor** | • Beverly Sackler |
| **Date of Creation** | • December 20, 1989 |
| **Beneficiaries** | • David Sackler |
| **Trustees** | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Leslie Schreyer and Peter Ward<br>  • On June 3, 2018, Peter Ward died<br>  • On August 21, 2019, Stuart Baker and Leslie Schreyer resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; however, David Sackler has a testamentary general power of appointment over the trust fund, by means of which he can direct all or any part of the trust fund to any person he chooses, including his estate and the creditors of his estate |
| **Assets** | • Cash in New York bank accounts<br>• 33.33% interest in RGT Three LLC, a Delaware limited liability company<br>  • 33.33% interest in RWA Holdings LLC, a Delaware limited liability company<br>• 100% interest in G3D LLC, a Delaware limited liability company<br>  • 16.67% limited partnership interest in WA Canada L.P., a Delaware limited partnership |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency and also to take advantage of an expiring generation-skipping transfer tax exemption for gifts made to grandchildren or certain types of trusts for the benefit of grandchildren |

**NAS2381**

40

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under agreement dated December 3, 1979 f/b/o Richard S. Sackler ("RSS BRP Trust")

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • December 3, 1979 |
| **Beneficiaries** | • Richard Sackler |
| **Trustees** | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On August 21, 2019, Stuart Baker resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| **Assets** | • Cash in New York bank account<br>• 20% common equity interest in Ankersea Limited Liability Company, a Delaware limited liability company (see page 86 for assets) |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2382

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under agreement dated December 3, 1979 f/b/o Jonathan D. Sackler ("JDS BRP Trust")

| Grantor | • Jonathan Sackler |
|---|---|
| Date of Creation | • December 3, 1979 |
| Beneficiaries | • Jonathan Sackler |
| Trustees | • Current Trustees: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On September 4, 2019, Stuart Baker resigned in favor of Cornice Fiduciary Management LLC |
| Governing Law | • Wyoming as to administration<br>• New York as to validity and construction |
| Nature of Trust | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| Assets | • Cash in New York bank account<br>• 20% interest in Lodestone Limited Liability Company, a Delaware limited liability company (see page 86 for assets) |
| Reason for Format | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2383

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler ("RSS FPC Trust")

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • June 16, 1980 |
| **Beneficiaries** | • Richard Sackler |
| **Trustees** | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On August 21, 2019, Stuart Baker resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| **Assets** | • Cash in New York bank accounts<br>• Loans to Mundipharma Pharmaceuticals Ltd., a Singapore company, Mundipharma MEA GmbH, a German entity, and other ex-US entities<br>• 25% common equity interest in Mundipharma Research Limited, a United Kingdom company<br>  • Limited partnership interest in Mundipharma Research GmbH & Co. KG, a German company<br>  • 100% common equity interest in Mundipharma Research Verwaltungs GmbH, a German company<br>• 100% common equity interest in Napp Holdings LLC, a Delaware limited liability company<br>  • 25% common equity interest in Napp Pharmaceutical Holdings LTD., a United Kingdom company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2384

43

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler ("JDS FPC Trust")

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • June 16, 1980 |
| **Beneficiaries** | • Jonathan Sackler |
| **Trustees** | • Current Trustees: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On September 4, 2019, Stuart Baker resigned in favor of Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| **Assets** | • Cash in New York bank accounts<br>• 25% common equity interest in Mundipharma Research Limited, a United Kingdom company<br>  • Limited partnership interest in Mundipharma Research GmbH & Co. KG, a German company<br>  • 100% common equity interest in Mundipharma Research Verwaltungs GmbH, a German company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2385

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under agreement dated December 23, 1980 f/b/o Richard S. Sackler ("RSS XPC Trust")

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • December 23, 1980 |
| **Beneficiaries** | • Richard Sackler |
| **Trustees** | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On August 21, 2019, Stuart Baker resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| **Assets** | • Cash in New York bank accounts<br>• 25% common equity interest in Mundipharma Holding AG, a Swiss company<br>  • 100% common equity interest in Bermag Limited, a Bermuda company<br>  • 100% common equity interest in Mundipharma AG, a Swiss company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2386

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

45

# Trust under agreement dated December 23, 1980 f/b/o Jonathan D. Sackler ("JDS XPC Trust")

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • December 23, 1980 |
| **Beneficiaries** | • Jonathan Sackler |
| **Trustees** | • Current Trustees: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially, Stuart Baker, Peter Ward and John Wilcox<br>  • On October 31, 1986, John Wilcox ceased to serve as trustee pursuant to the terms of the trust instrument<br>  • On June 3, 2018, Peter Ward died<br>  • On September 4, 2019, Stuart Baker resigned in favor of Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, mandatory income distributions, discretionary as to principal, spendthrift trust; incomplete gift trust |
| **Assets** | • Cash in New York bank accounts<br>• 25% common equity interest in Mundipharma Holding AG, a Swiss company<br>  • 100% common equity interest in Bermag Limited, a Bermuda company<br>  • 100% common equity interest in Mundipharma AG, a Swiss company |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2387

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

46

# Trust Agreement dated August 29, 2003 f/b/o Issue of Richard S. Sackler

| Grantor | • Richard Sackler |
|---|---|
| Date of Creation | • August 29, 2003 |
| Beneficiaries | • Richard Sackler and his issue |
| Trustees | • Current Trustees: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Anthony Roncalli<br>  • On November 21, 2018, Anthony Roncalli resigned in favor of Data LLC |
| Governing Law | • Wyoming as to administration, validity and construction |
| Nature of Trust | • Revocable, grantor trust |
| Assets | • 100% interest in Dravite Holdings LLC, a Delaware limited liability company<br>  • 25% common equity interest in PRA Holdings Inc., a New York Corporation |
| Reason for Format | • The trust was created as a special purpose trust to own its sole investment |

NAS2388

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust Agreement dated August 29, 2003 f/b/o Issue of Jonathan D. Sackler

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • August 29, 2003 |
| **Beneficiaries** | • Jonathan Sackler and his issue |
| **Trustees** | • Current Trustees: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>  • Initially, Jeffrey Robins<br>  • On November 20, 2018, Jeffrey Robins resigned in favor of Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • 100% interest in Kernite Holdings LLC, a Delaware limited liability company<br>• 25% common equity interest in PRA Holdings Inc., a New York Corporation |
| **Reason for Format** | • The trust was created as a special purpose trust to own its sole investment |

NAS2389

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

48

# Trusts:  Category Four

NAS2390

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

49

# Richard S. Sackler Life Insurance Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • July 27, 2002 |
| **Beneficiaries** | • Jonathan Sackler, Jonathan Sackler's spouse, and issue of Richard Sackler |
| **Trustees** | • Current Trustees: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>  • Initially, Beth B. Sackler, Jonathan Sackler and Jeffrey Robins<br>  • Beth B. Sackler subsequently ceased to serve pursuant to the terms of the trust instrument<br>  • On January 31, 2019, Jonathan Sackler and Jeffrey Robins resigned in favor of Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable Life Insurance Trust |
| **Assets** | • Cash in New York bank account<br>• Life insurance policy |
| **Reason for Format** | • Set up to hold life insurance policy so that proceeds thereof are not subject to estate tax upon Richard Sackler's death |

NAS2391

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Jonathan D. Sackler Life Insurance Trust

| Grantor | • Jonathan Sackler |
|---|---|
| **Date of Creation** | • July 27, 2002 |
| **Beneficiaries** | • Richard Sackler, Jonathan Sackler's spouse, and issue of Jonathan Sackler |
| **Trustees** | • Current Trustees: MCM Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>   • Initially, Jonathan Sackler's spouse and Jeffrey Robins<br>   • On December 14, 2018, Jonathan Sackler's spouse and Jeffrey Robins resigned in favor of MCM Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable Life Insurance Trust |
| **Assets** | • Cash in New York bank account<br>• Life insurance policy |
| **Reason for Format** | • Set up to hold life insurance policy so that proceeds thereof are not subject to estate tax upon Jonathan Sackler's death |

**NAS2392**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Richard S. Sackler Trust f/b/o David A. Sackler 3/8/90

| | |
|---|---|
| **Grantor** | • Initially, Richard Sackler<br>• Presently, David Sackler, at least for income tax purposes (see Reason for Format below) |
| **Date of Creation** | • March 8, 1990 |
| **Beneficiaries** | • David Sackler |
| **Trustees** | • Current Trustee: Richard Sackler and Richard Sackler's Former Spouse<br>• Historical Succession of Trustees:<br>    • Initially, Richard Sackler and Richard Sackler's Former Spouse |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor trust as to David Sackler, discretionary spendthrift trust; assets includible in David Sackler's estate at his death |
| **Assets** | • Cash in New York bank account<br>• Life insurance policy |
| **Reason for Format** | • Trust created pursuant to Internal Revenue Code § 2503(c) to qualify gifts to the trust for the federal gift tax annual exclusion amount<br>• Pursuant to § 2503(c), the beneficiary (David Sackler) had to be given the power to withdraw the assets of the trust upon attaining age 21; because he did not withdraw the assets, the beneficiary (David Sackler) is now treated as having contributed assets to the trust, making him the grantor for income tax purposes |

**NAS2393**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • August 23, 1988 |
| **Beneficiaries** | • Richard Sackler and his issue |
| **Trustees** | • Current Trustee: Stuart Baker<br>• Historical Succession of Trustees:<br>   • Initially, Stuart Baker and Peter Ward<br>   • On June 3, 2018, Peter Ward died |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary spendthrift; incomplete gift trust |
| **Assets** | • Undivided one-half interest in main residence parcel of 60 Field Point Circle (Raymond and Beverly Sackler's residence) |
| **Reason for Format** | • Raymond and Beverly Sackler purchased a life estate in the property, and at the same time Richard and Jonathan Sackler each purchased an undivided 50% interest in the fee title subject to the life estate<br>• Richard Sackler subsequently transferred his interest in the property to the trust for typical lifetime and estate planning reasons, including managing the passing of the property to succeeding generations |

**NAS2394**

53

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • December 17, 1991 |
| **Beneficiaries** | • Richard Sackler and his issue |
| **Trustees** | • Current Trustees: Stuart Baker and Leslie Schreyer<br>• Historical Succession of Trustees:<br>    • Initially, Stuart Baker and Leslies Schreyer |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary spendthrift trust; incomplete gift trust |
| **Assets** | • Undivided one-half interest in garage parcel of 60 Field Point Circle (Raymond and Beverly Sackler's residence) |
| **Reason for Format** | • Raymond and Beverly Sackler purchased a life estate in the property, and at the same time Richard and Jonathan Sackler each purchased an undivided 50% interest in the fee title subject to the life estate<br>• Richard Sackler subsequently transferred his interest in the property to the trust for typical lifetime and estate planning reasons, including managing the passing of the property to succeeding generations |

NAS2395

54

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • August 23, 1988 |
| **Beneficiaries** | • Jonathan Sackler and his issue |
| **Trustees** | • Current Trustee: Stuart Baker<br>• Historical Succession of Trustees:<br>   • Initially, Stuart Baker and Peter Ward<br>   • On June 3, 2018, Peter Ward died |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary spendthrift trust; incomplete gift trust |
| **Assets** | • Undivided one-half interest in main residence parcel of 60 Field Point Circle (Raymond and Beverly Sackler's residence) |
| **Reason for Format** | • Raymond and Beverly Sackler purchased a life estate in the property, and at the same time Richard and Jonathan Sackler each purchased an undivided 50% interest in the fee title subject to the life estate<br>• Jonathan Sackler subsequently transferred his interest in the property to the trust for typical lifetime and estate planning reasons, including managing the passing of the property to succeeding generations |

NAS2396

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • December 17, 1991 |
| **Beneficiaries** | • Jonathan Sackler and his issue |
| **Trustees** | • Current Trustees: Stuart Baker and Leslie Schreyer<br>• Historical Succession of Trustees:<br>    • Initially, Stuart Baker and Leslies Schreyer |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary trust spendthrift trust; incomplete gift trust |
| **Assets** | • Undivided one-half interest in garage parcel of 60 Field Point Circle (Raymond and Beverly Sackler's residence) |
| **Reason for Format** | • Raymond and Beverly Sackler purchased a life estate in the property, and at the same time Richard and Jonathan Sackler each purchased an undivided 50% interest in the fee title subject to the life estate<br>• Jonathan Sackler subsequently transferred his interest in the property to the trust for typical lifetime and estate planning reasons, including managing the passing of the property to succeeding generations |

NAS2397

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# DABB Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • July 24, 2019 |
| **Beneficiaries** | • Richard Sackler and a non-family member |
| **Trustees** | • Current Trustee: Elizabeth A. Whalen<br>• Historical Succession of Trustees:<br>     • Initially, Elizabeth A. Whalen |
| **Governing Law** | • Florida as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • Investment in Delaware limited liability holding real estate assets |
| **Reason for Format** | • The trust was created as a special purpose trust to own its sole investment and to keep the probate process from applying to that investment |

NAS2398

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Richard S. Sackler Trust U/A 9/30/04

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • September 30, 2004 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustees: Stuart Baker and Leslie Schreyer<br>• Historical Succession of Trustees:<br>    • Initially, Stuart Baker and Leslie Schreyer<br>    • Richard Sackler reappointed Stuart Baker as trustee by instrument effective July 2, 2010<br>    • On July 2, 2014 Stuart Baker ceased to serve as trustee pursuant to the terms of the trust instrument |
| **Governing Law** | • New York as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • Cash in New York bank account<br>• 50% common equity interest in North Bay Trust Company, Inc., an Oklahoma corporation |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

**NAS2399**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# RSS Fiduciary Management Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • August 4, 2011 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustees: Leslie Schreyer and Stephen Ives<br>• Historical Succession of Trustees:<br>    • Initially Stuart Baker and Leslie Schreyer<br>    • On March 28, 2012, Stuart Baker resigned in favor of Stephen Ives and Richard Sackler appointed Thomas Russo as an additional trustee<br>    • On October 21, 2019, Thomas Russo resigned |
| **Governing Law** | • New York as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • Cash in New York bank account<br>• 50% interest in BRJ Fiduciary Management LLC, a Wyoming limited liability company |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

NAS2400

59

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Crystal Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • September 25, 2017 |
| **Beneficiaries** | • Richard and his issue |
| **Trustees** | • Current Trustees: David Sackler, Leslie Schreyer, Stephen Ives, and Lauren Kelly<br>• Historical Succession of Trustees:<br>   • Initially, Richard Sackler, David Sackler, Leslie Schreyer, Stephen Ives, and Anthony Roncalli<br>   • On November 30, 2018, Anthony Roncalli resigned<br>   • On January 8, 2019, Richard Sackler resigned<br>   • On January 8, 2019, Richard Sackler appointed Lauren Kelly as an additional trustee |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • 100% interest in Crystal Fiduciary Company LLC, a Wyoming limited liability company |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

NAS2401

60

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# MCM Fiduciary Management Trust

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • September 12, 2017 |
| **Beneficiaries** | • Jonathan Sackler, Jonathan Sackler's spouse, and issue of Jonathan Sackler |
| **Trustees** | • Current Trustees: Jonathan Sackler, Jonathan Sackler's spouse and a family advisor<br>• Historical Succession of Trustees:<br>    • Initially, Jonathan Sackler, Jonathan Sackler's spouse, Anthony Roncalli and other family advisors appointed from time to time<br>    • On December 14, 2018, Anthony Roncalli resigned<br>    • On May 17, 2019, a family advisor resigned |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • 100% interest in MCM Fiduciary Management LLC, a Wyoming limited liability company |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

NAS2402

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Data Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • November 20, 2018 |
| **Beneficiaries** | • Richard Sackler and his issue |
| **Trustees** | • Current Trustees: Leslie Schreyer and Jeffrey Robins<br>• Historical Succession of Trustees:<br>    • Initially Jeffrey Robins and Richard Sackler<br>    • On November 23, 2018 Richard Sackler resigned in favor of Leslie Schreyer |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • 100% interest in Data LLC, a Wyoming limited liability company |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

NAS2403

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Cornice Trust

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • November 20, 2018 |
| **Beneficiaries** | • Jonathan Sackler, Jonathan Sackler's spouse, and issue of Jonathan Sackler |
| **Trustees** | • Current Trustees: Leslie Schreyer and Jeffrey Robins<br>• Historical Succession of Trustees:<br>    • Initially Jeffrey Robins and Jonathan Sackler<br>    • On November 21, 2018 Jonathan Sackler resigned in favor of Leslie Schreyer |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • 100% interest in Cornice Fiduciary Management LLC, a Wyoming limited liability company |
| **Reason for Format** | • Special purpose trust created to own private trust company and to allow for the passing of ownership of the company to succeeding generations |

**NAS2404**

63

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Beverly Sackler Revocable Trust

| Grantor | • Beverly Sackler |
|---|---|
| Date of Creation | • March 29, 2012 |
| Beneficiaries | • Richard and Jonathan Sackler as to tangible personal property<br>• Raymond and Beverly Sackler Foundation<br>• Raymond and Beverly Sackler Fund for the Arts and Sciences |
| Trustees | • Current Trustees: Richard Sackler and Jonathan Sackler<br>• Historical Succession of Trustees:<br>  • Initially Beverly Sackler and Raymond Sackler<br>  • On July 17, 2017, Raymond Sackler died<br>  • On July 27, 2017 Richard Sackler and Jonathan Sackler accepted their appointments as co-trustees pursuant to the terms of the trust instrument<br>  • On October 14, 2019, Beverly Sackler died |
| Governing Law | • Connecticut as to administration, validity and construction |
| Nature of Trust | • Irrevocable, non-grantor trust (originally revocable, until Beverly Sackler's death) |
| Assets | • Cash in New York and Oklahoma bank account<br>• Accounts receivable from investment fund<br>• Various investments, primarily in private equity funds and hedge funds, principally held through Delaware limited partnerships and limited liability companies<br>• Artwork and tangible personal property located in the US |
| Reason for Format | • The trust was created for typical estate planning reasons, including minimizing assets subject to probate process, intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2405

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# RSS Revocable Pourover Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • October 26, 2018 |
| **Beneficiaries** | • Richard Sackler |
| **Trustees** | • Current Trustees: Richard Sackler and Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>    • Initially, Richard Sackler and Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • Cash ($10, not in a bank account)<br>• Tangible personal property |
| **Reason for Format** | • The trust was created for typical estate planning reasons, including minimizing assets subject to probate process, intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2406

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# JDS Revocable Pourover Trust

| | |
|---|---|
| **Grantor** | • Jonathan Sackler |
| **Date of Creation** | • August 15, 2019 |
| **Beneficiaries** | • Jonathan Sackler |
| **Trustees** | • Current Trustee: Cornice Fiduciary Management LLC<br>• Historical Succession of Trustees:<br>    • Initially, Cornice Fiduciary Management LLC |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Revocable, grantor trust |
| **Assets** | • Cash ($10, not in a bank account)<br><br>Note: In the process of funding |
| **Reason for Format** | • The trust was created for typical estate planning reasons, including minimizing assets subject to probate process, intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

NAS2407

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Irrevocable Trust under Declaration dated as of September 19, 1995 f/b/o Issue of Richard S. Sackler

| | |
|---|---|
| **Grantor** | • The trust was funded entirely with assets distributed from the 1B Trust, of which Raymond Sackler was the grantor |
| **Date of Creation** | • September 19, 1995 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustee: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Richard Sackler<br>  • On August 23, 2019, Richard Sackler resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank account<br>• 50% interest in Landings Financial LLC, a Delaware limited liability company |
| **Reason for Format** | • The trust was created as a special purpose trust to own its sole investment |

NAS2408

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# David A. Sackler 2012 Trust

| Grantor | • Beverly Sackler |
|---|---|
| Date of Creation | • January 27, 2012 |
| Beneficiaries | • David Sackler and his issue |
| Trustees | • Current Trustee: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>  • Initially, Richard Sackler and Jeffrey Robins<br>  • On November 20, 2018, Richard Sackler and Jeffrey Robins resigned in favor of Crystal Fiduciary Company LLC |
| Governing Law | • Wyoming as to administration<br>• New York as to validity and construction |
| Nature of Trust | • Irrevocable, non-grantor, discretionary spendthrift trust |
| Assets | • Cash in New York bank account<br>• Note receivable from David Sackler<br>• Investment in Delaware limited liability company holding interest in private equity fund |
| Reason for Format | • The trust was created for typical estate planning reasons, including intergenerational planning and managing the passing of wealth to succeeding generations and tax efficiency, in particular to use up her gift and generation-skipping transfer tax exemption due to the possibility that these exemption amounts would revert at the end of 2012 to lesser amounts allowed under prior law |

NAS2409

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Irrevocable Trust under Declaration dated as of April 25, 1991

| | |
|---|---|
| **Grantor** | • Trust declared over $10; unable to determine grantor |
| **Date of Creation** | • April 25, 1991 |
| **Beneficiaries** | • Issue of Jonathan Sackler and issue of Richard Sackler |
| **Trustees** | • Current Trustee: Stuart Baker<br>• Historical Succession of Trustees:<br>   • Initially, Stuart Baker |
| **Governing Law** | • Connecticut as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts<br>• Investment in marketable securities |
| **Reason for Format** | • Initially created to hold life insurance policy so that proceeds thereof would not be subject to estate tax upon the death of the survivor of Raymond and Beverly Sackler; policy was cashed out before it matured |

NAS2410

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Irrevocable Trust under Declaration dated as of August 25, 1992

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • August 25, 1992 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustee: Data LLC<br>• Historical Succession of Trustees:<br>  • Initially, Peter M. Ward and Beth B. Sackler<br>  • On September 3, 1992, Peter M. Ward resigned in favor of Jonathan Sackler<br>  • Beth B. Sackler subsequently ceased to serve pursuant to the terms of the trust instrument<br>  • On August 20, 2019, Jonathan Sackler resigned in favor of Data LLC |
| **Governing Law** | • Wyoming as to administration<br>• New York as to validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank account<br>• Various investments, primarily in hedge funds, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency (including using remaining federal estate and gift tax exemptions) |

**NAS2411**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# The RSS 2012 Family Trust

| | |
|---|---|
| **Grantor** | • Richard Sackler |
| **Date of Creation** | • December 31, 2012 |
| **Beneficiaries** | • Issue of Richard Sackler |
| **Trustees** | • Current Trustee: Crystal Fiduciary Company LLC<br>• Historical Succession of Trustees:<br>  • Initially, Leslie Schreyer and Jeffrey Robins<br>  • On November 20, 2018, Leslie Schreyer and Jeffrey Robins resigned in favor of Crystal Fiduciary Company LLC |
| **Governing Law** | • Wyoming as to administration, validity and construction |
| **Nature of Trust** | • Irrevocable, grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank account<br>• Various investments, primarily in private equity and hedge funds, principally held through Delaware limited partnerships and limited liability companies |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency (including using remaining federal estate and gift tax exemptions) |

NAS2412

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond R. Sackler Credit Shelter Trust u/a 3/29/2012

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • March 29, 2012<br>• Formed pursuant to terms of the Raymond R. Sackler 2012 Revocable Pourover Trust dated 3/29/2012 following Raymond Sackler's death on July 17, 2017 |
| **Beneficiaries** | • Beverly Sackler (until death) and Issue of Raymond<br>• Continuing trusts for Richard Sackler and Jonathan Sackler as a result of Beverly Sackler's death |
| **Trustees** | • Current Trustees: Richard and Jonathan Sackler<br>• Historical Succession of Trustees:<br>  • Initially, Beverly Sackler, Richard Sackler and Jonathan Sackler<br>  • On October 14, 2019 Beverly Sackler died |
| **Governing Law** | • Connecticut as to administration, validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, discretionary spendthrift trust |
| **Assets** | • Cash in New York bank accounts |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

**NAS2413**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Raymond R. Sackler GST Exempt Marital Trust u/a 3/29/2012

| | |
|---|---|
| **Grantor** | • Raymond Sackler |
| **Date of Creation** | • March 29, 2012<br>• Formed pursuant to terms of the Raymond R. Sackler 2012 Revocable Pourover Trust dated 3/29/2012 following Raymond Sackler's death on July 17, 2017 |
| **Beneficiaries** | • Beverly Sackler (until death)<br>• 2012 Anniversary trusts as a result of Beverly Sackler's death |
| **Trustees** | • Current Trustees: Richard and Jonathan Sackler<br>• Historical Succession of Trustees:<br>  • Initially, Beverly Sackler, Richard Sackler and Jonathan Sackler<br>  • On October 14, 2019 Beverly Sackler died |
| **Governing Law** | • Connecticut as to administration, validity and construction |
| **Nature of Trust** | • Irrevocable, non-grantor, mandatory quarterly distributions of net income, spendthrift trust |
| **Assets** | • Cash in New York bank accounts |
| **Reason for Format** | • The trust was created for typical lifetime and estate planning reasons, including intergenerational planning, managing the passing of wealth to succeeding generations and tax efficiency |

**NAS2414**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Entities

NAS2415

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

74

# Rosebay Medical Company L.P.

| Date of Formation | • June 14, 1991 |
|---|---|
| Nature of Entity | • Delaware limited partnership |
| Assets | • Cash in New York and Oklahoma bank accounts<br>• Cash in New York escrow account<br>• Accounts receivable from trade parties<br>• Loans to Mundipharma YH, a Korean Company<br>• Direct and indirect investments in II-Way entities as set forth on the following page |
| Reason for Format | • Benefits of limited liability and ease of administering Delaware limited partnership |

**NAS2416**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Rosebay Medical Company L.P. *(cont'd)*

| Assets (direct and indirect ownership of II-Way entities)[8] | • 100% common equity interest in BR Holdings Associates L.P., a Delaware limited partnership<br>• 100% interest in RBMC Holdings LLC, a Delaware limited liability company<br>• 50% common equity interest in Mundipharma Pty Limited , an Australian company<br>• 49.9% common equity interest in Mundipharma Comm. VA, a Belgium company<br>• 50% common equity interest in Mundipharma Pharmaceuticals BVBA, a Belgium company<br>• 50% common equity interest in Mundipharma MEA GMBH, a Switzerland company<br>• 50% common equity interest in Mundipharma SAS, a France company<br>• 50% common equity interest in Mundipharma S.r.l., an Italy company<br>• 50% common equity interest in Mundipharma Singapore Holdings Pte. Limited, a Singapore company<br>• 50% common equity interest in Mundipharma Korea Ltd., a Korea company<br>• 50% common equity interest in Mundipharma Pharmaceuticals Sdn. Bhd., a Malaysia company<br>• 50% common equity interest in Mexcus Corporation, a British Virgin Islands company<br>• 50% common equity interest in Alfa Generics B.V., a Netherlands company<br>• 50% common equity interest in Mundipharma Pharmaceuticals B.V., a Netherlands company<br>• 50% common equity interest in Mundipharma New Zealand Limited, a New Zealand company<br>• 50% common equity interest in Mundipharma A.S., a Norway company<br>• 50% common equity interest in Mundipharma Polska Sp z o.o., a Poland company<br>• 50% common equity interest in Mundipharma Farmaceutica LDA, a Portugal company<br>• 50% common equity interest in Mundipharma Pharmaceuticals Private Limited, a Singapore company<br>• 50% common equity interest in Mundipharma (Proprietary) Limited (South Africa), a South Africa company<br>• 50% common equity interest in Mundipharma Pharmaceuticals S.L. (Spain), a Spain company<br>• 50% common equity interest in Mundipharma AB (Sweden), a Sweden company<br>• 50% common equity interest in Mundibiopharma Limited, a United Kingdom company |
|---|---|

[8] Assets listed here are described in the Annex

NAS2417

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Rosebay Medical Company, Inc.

| Date of Formation | • May 3, 1991 |
|---|---|
| Nature of Entity | • Delaware corporation |
| Assets | • Cash in New York bank accounts<br>• 2% interest in Rosebay Medical Company L.P. |
| Reason for Format | • Formed to serve as general partner of Rosebay Medical Company L.P. |

NAS2418

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Linarite Holdings LLC

| Date of Formation | • August 19, 2003 |
|---|---|
| Nature of Entity | • Delaware limited liability company |
| Assets | • 25% common equity interest in Purdue Pharma Inc.<br>• 25% common equity interest in Mundipharma Biologics Inc., a New York corporation<br>   • 0.5% common equity interest Mundipharma Biologics L.P., a Delaware limited partnership |
| Reason for Format | • Formed to serve as a holding company for interests in Purdue Pharma Inc. |

NAS2419

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to
Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Perthlite Holdings LLC

| | |
|---|---|
| **Date of Formation** | • August 19, 2003 |
| **Nature of Entity** | • Delaware limited liability company |
| **Assets** | • 25% common equity interest in Purdue Pharma Inc.<br>• 25% common equity interest in Mundipharma Biologics Inc., a New York corporation<br> • 0.5% common equity interest Mundipharma Biologics L.P., a Delaware limited partnership |
| **Reason for Format** | • Formed to serve as a holding company for interests in Purdue Pharma Inc. |

**NAS2420**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to
Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Moonstone Holdings LLC

| | |
|---|---|
| **Date of Formation** | • August 19, 2003 |
| **Nature of Entity** | • Delaware limited liability company |
| **Assets** | • 25% common equity interest in PLP Associates Holdings Inc. |
| **Reason for Format** | • Formed to serve as a holding company for interests in PLP Associates Inc. and BR Holdings Associates Inc. |

NAS2421

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Roselite Holdings LLC

| Date of Formation | • August 19, 2003 |
|---|---|
| Nature of Entity | • Delaware limited liability company |
| Assets | • 25% common equity interest in PLP Associates Holdings Inc. |
| Reason for Format | • Formed to serve as a holding company for interests in PLP Associates Inc. and BR Holdings Associates Inc. |

**NAS2422**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Appendix A: II-Way Entity Holding Companies

NAS2423

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- East Hudson Inc., a British Virgin Islands company, owns:
  - 50% common equity interest in Lake Claire Investments Ltd., a British Virgin Islands company
    - 100% common equity interest in Lymit Holdings S.ar.l., a Luxembourg limited liability company
      - 31% of the issued and outstanding preferred equity of Mundipharma A.S., a Norwegian company
      - 13% of the issued and outstanding preferred equity of Mundipharma Oy, a Finland company
      - 5% of the issued and outstanding preferred equity of Mundipharma S.L., a Spanish company
      - 4% of the issued and outstanding preferred equity of Mundipharma Pharmaceuticals B.V., a Netherlands company
      - 50% of the issued and outstanding preferred equity of Mundipharma Pharmaceuticals S.r.L., a Italy company
      - 16% of the issued and outstanding preferred equity of Mundipharma Comm. VA, a Belgian company
      - 11% of the issued and outstanding preferred equity of Mundipharma SAS, a French company

- Meridian International, Ltd., a Delaware corporation, owns:
  - 50% common equity interest in Caas Leasing, Inc., a dormant Delaware corporation
  - 50% common equity interest in E.R.G. Realty, Inc., a New York corporation (i.e. the entity that owns 15-17 East 62nd Street)
  - 50% common equity interest in Mundipharma GesmbH, an Austrian company (and branch offices of this entity that exist in Czech Republic, Russia, Slovak Republic and Kazakhstan)
  - 36.5% common equity interest in Rafa Laboratories Limited, an Israeli company

- HPR Partners, a New York general partnership, owns:
  - 50% common equity interest in Hospice Provident LLC, a Delaware limited liability company

- Purdue Pharma Technologies Inc., a Delaware corporation, owns:
  - 100% common equity interest in Nappwood Land Corporation, a New Jersey corporation
  - 100% common equity interest in Sawwood Land Corporation, a New York corporation
  - 100% common equity interest in The Seven Hundred Realty Corporation, a New Jersey corporation
  - 100% common equity interest in Midvale Chemical Company, a New Jersey corporation
  - 100% common equity interest in Vitamerican Corporation, a Delaware corporation
  - 100% common equity interest in Vitamerican Chemicals, Inc., a New Jersey corporation
  - 100% common equity interest in Pharma Technologies Inc., a New York corporation

NAS2424

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- St. Lawrence Associates, a New York general partnership, owns:
  - 100%  common equity interest in G.H. Carrell Limited, a Bermuda limited company
  - 50% common equity interest in L.P. Clover Limited, a Bermuda limited company
  - 50% common equity interest in Mundipharma Laboratories GmbH, a Swiss company, and its representative office in Indonesia
  - 50% common equity interest in Mundipharma Pte. Limited, a Singapore company
  - 50% common equity interest in Mundipharma LATAM GmbH, a Swiss company
  - 14.73% common equity interest in Mundipharma Bradenton B.V., a Netherlands company
  - 14.73% common equity interest in Mundipharma B.V., a Netherlands company
  - 14.73% common equity interest in Bradenton Products B.V., a Netherlands company
- Tradewind Company, a New York general partnership, owns:
  - 100% common equity interest in Triangle Holdings LLC, a Delaware limited liability company
  - 100% common equity interest in Triangle Industries Limited, a Bermuda limited company
  - 50% common equity interest in Mundipharma Laboratories Limited, a Bermuda limited company
- Purdue Frederick Inc., a Canadian company, owns:
  - 100% common equity interest in Bard Pharmaceuticals (1990) Inc., a Canadian company
- WA Canada L.P., a Delaware limited partnership owns:
  - 47.5% common equity interest in Purdue Pharma, a Canadian company
  - 47.5% common equity interest in Purdue Pharma ULC, a Canadian company
  - 47.5% common equity interest in Elvium Life Sciences Limited Partnership
  - 47.5% common equity interest in Mundipharma Development Pte. Limited, a Singapore company
- Hudson River Partners, a New York general partnership, owns:
  - 96% common equity interest in China Sea L.P., a Delaware limited partnership
  - 48% common equity interest in Mundipharma Company, a Bermuda company
  - 48% common equity interest in Mundipharma Ltd., a Mauritius company
  - 48% common equity interest in Mundipharma (China) Pharmaceutical Company Limited, a Chinese company
  - 50% common equity interest in Euro-Celtique S.A., a Luxembourg company

NAS2425

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- Pacific Partners Company, a New York general partnership, owns:
  - 100% common equity interest in B. L. Carrolton Limited, a Bermuda company
  - 50% common equity interest in Mundipharma International Holdings Limited, a Bermuda company
  - 50% common equity interest in Mundipharma International Corporation Limited, a Bermuda company
  - 50% common equity interest in Clinical Designs Limited, a United Kingdom company
  - 50% common equity interest in Mundipharma Ophthalmology Corporation Limited, a Bermuda company
  - 50% common equity interest in Mundipharma International Limited, a Bermuda company
  - 50% common equity interest in Mundipharma Corporation Limited, a United Kingdom company
  - 50% common equity interest in Mundipharma Corporation (Ireland) Limited, an Ireland company
  - 50% common equity interest in Mundipharma Pharmaceuticals Limited, an Ireland company
  - 35.27% common equity interest in Mundipharma Bradenton B.V., a Netherlands company;
  - 35.27% common equity interest in Mundipharma B.V., a Netherlands company
  - 35.27% common equity interest in Bradenton Products B.V., a Netherlands company

- Hudson River (Delaware) Inc., a Delaware corporation, owns:
  - 100% common equity interest in Mallard Limited, a Bermuda company
  - 25% common equity interest in MNB Company, a Bermuda company
  - 47.62% common equity interest in Mundipharma Limited, a Bermuda limited company
  - 50% common equity interest in Mundipharma International Services S.ar.l., a Luxembourg limited liability company
  - 50% common equity interest in Mundipharma International Services GmbH, a Swiss company
  - 50% common equity interest in Mundipharma EDO GmbH, a Swiss company
  - 50% common equity interest in Mundipharma International Services Limited, a United Kingdom company
  - 50% common equity interest in Mundipharma Medical Company, a Bermuda company, and its Swiss branch
  - 50% common equity interest in MN Consulting LLC, a Bermuda company
  - 50% common equity interest in Mundipharma Ophthalmology Products Limited, a Bermuda limited company
  - 50% common equity interest in Mundipharma Medical Company Limited, a United Kingdom company
  - 50% common equity interest in Mundipharma Biologics GmbH, a German company
  - 50% common equity interest in Mundipharma Biologics S.L., a Spanish company
  - 33.3% common equity interest in Transworld Pharma Limited, a Bermuda

NAS2426

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- China Sea Company Inc., a Delaware corporation, owns:
  - 2% common equity interest in Mundipharma Company, a Bermuda company
  - 2% common equity interest in Mundipharma Ltd., a Mauritius company
  - 2% common equity interest in Mundipharma (China) Pharmaceutical Company Limited, a Chinese company

- Standard Pharmaceuticals Corporation, a Delaware corporation, owns:
  - 50% common equity interest in Mundipharma Verwaltungsgesellschaft mbH, a German company.  This company acts as the general partner of Mundipharma Deutschland GmbH & Co. KG, owns:
    - 100% common equity interest in Mundipharma GmbH, a German company
    - 100% common equity interest in Krugmann GmbH, a German company
    - 100% common equity interest in Mundichemie GmbH, a German company
  - Note: Richard and Jonathan Sackler also own DM 450,000 of preferred quotas issued by Mundipharma Deutschland GmbH & Co. KG

- Ankersea Limited Liability Company, a Delaware limited liability company, owns:
  - 50% of the B-1 and B-2 limited partnership interests of Mundipharma Deutschland GmbH & Co. KG, owns:
    - 100% common equity interest in Mundipharma GmbH, a German company
    - 100% common equity interest in Krugmann GmbH, a German company
    - 100% common equity interest in Mundichemie GmbH, a German company

- Lodestone Limited Liability Company, a Delaware limited liability company, owns:
  - 50% of the B-1 and B-2 limited partnership interests of Mundipharma Deutschland GmbH & Co. KG, owns:
    - 100% common equity interest in Mundipharma GmbH, a German company
    - 100% common equity interest in Krugmann GmbH, a German company
    - 100% common equity interest in Mundichemie GmbH, a German company

- Crissaire Corporation, a Delaware corporation, owns:
  - A silent partnership interest in Mundipharma Deutschland GmbH & Co. KG, owns:
    - 100% common equity interest in Mundipharma GmbH, a German company
    - 100% common equity interest in Krugmann GmbH, a German company
    - 100% common equity interest in Mundichemie GmbH, a German company

**NAS2427**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements.  This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- HS Holdings Inc., a Delaware corporation, owns:
  - 100% common equity interest in MNP Consulting Limited, a Delaware corporation
  - 100% common equity interest in Mundipharma Management S.ar.l., a France company
- Boiling Bay Corporation, a Delaware corporation, which owns the following through subsidiaries:
  - 25% common equity interest in Modi-Mundipharma Private Limited, an India company, and affiliates
- Laysan Limited, a Bermuda company, owns:
  - 50% partnership interest in Mundipharma Pharmaceutical Company, a Bermuda partnership, which owns the following:
    - 100% common equity interest in Mundipharma Distribution GmbH, a Switzerland company
- Evening star Services, Limited, a British Virgin Islands company
- Purdue Pharma Inc., a Canada corporation
- Mundipharma Pharmaceuticals Limited, a Cyprus company
- Mundipharma A/S, a Denmark company
- Mundipharma Oy, a Finland company
- Ankersea Limited Liability Company, a Delaware limited liability company
- Lodestone Limited Liability Company, a Delaware limited liability company
- Nerula S.ar.l., a Luxembourg company
- Mundipharma IT Services GmBH, A Switzerland company
- Mundipharma Medical GmBH, a Switzerland company
- Mundipharma International Limited, a United Kingdom company
- Mundipharma International Technical Operations Limited, a United Kingdom company
- Mundipharma IT Services Limited, a United Kingdom company
- Mundipharma Pty Limited , an Australian company, owns:
  - 100% common equity interest in Mundipharma Healthcare Pty. Ltd., an Australian company
  - 100% common equity interest in Mundipharma Oncology Pty. Ltd, an Australian company
- Mundipharma Pharmaceuticals BVBA, a Belgium company, owns:
  - 0.2% common equity interest in 49.9% of Mundipharma Comm. VA, a Belgium company

**NAS2428**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- Mundipharma MEA GMBH, a Switzerland company, owns:
  - 100% common equity interest in Mundipharma Middle East FZ-LLC, a Dubai company
  - 100% of the issued and outstanding preferred equity of Accardi S.a.r.l., a Luxembourg company
  - 100% of the issued and outstanding preferred equity of Mundipharma Near East GmbH, a Switzerland company, which owns the following:
    - 50% of Mundipharma Egypt LLC, an Egypt company
  - 50% common equity interest in Mundipharma Egypt LLC, an Egypt company
  - 100% common equity interest in Mundipharma Maroc, a Morocco company
- Mundipharma SAS, a France company
- Mundipharma S.r.l., an Italy company
- Mundipharma Singapore Holdings Pte. Limited, a Singapore company, owns:
  - 100% common equity interest in Mundipharma Distributions Ltd., a Korea company
  - 100% common equity interest in Mundipharma Healthcare Pte. Limited, a Singapore company
  - 100% common equity interest in Mundipharma Manufacturing Pte Limited, a Singapore company
- Mundipharma Korea Ltd., a Korea company
- Mundipharma Pharmaceuticals Sdn. Bhd., a Malaysia company
- Mexcus Corporation, a British Virgin Islands company, owns:
  - 50% common equity interest in Mundipharma de Mexico, S. de R.L. de C.V., a Mexico company
  - 100% common equity interest in Maltus Corporation, a British Virgin Islands company, which owns the following:
    - 50% of Mundipharma de Mexico, S. de R.L. de C.V., a Mexico company

NAS2429

88

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# II-Way Entity Holding Companies

- RBMC Holdings LLC, a Delaware limited liability company, owns:
  - 50% common equity interest in Accardi S.ar.l., a Luxembourg company, which through its subsidiaries owns:
    - 100% common equity interest in Mundipharma Pharmaceuticals Argentina S.R.L., an Argentina company
    - 100% common equity interest in Mundipharma (Argentina) S.R.L., an Argentina company
    - 100% common equity interest in PT. Mundipharma Healthcare Indonesia, an Indonesia company
    - 100% common equity interest in Mundipharma (Myanmar) Co., Ltd., a Myanmar Company
    - 100% common equity interest in Mundipharma Pharmaceuticals Industry and Trade Limited, a Turkey company
    - 100% common equity interest in Taiwan Mundipharma Pharmaceuticals Ltd. (Formerly Taiwan Mundipharma Ltd.), a Taiwan company
  - 50% common equity interest in Boldini Corporation and Boetti Corporation, British Virgin Islands companies that own:
    - 100% common equity interest in Mundipharma Brasil Produtos Médicos e Farmacêuticos Ltda., a Brazil company
    - 100% common equity interest in Mundipharma Pharmaceuticals (Chile) Limitada, a Chile company
  - 50% of Clovio Corporation, a British Virgin Islands company which owns:
    - 100% common equity interest in Mundipharma (Colombia) S.A.S., a Colombia company
  - 50% common equity interest in Havez Corporation, a British Virgin Islands company, which holds:
    - 100% common equity interest in Mundipharma (Hong Kong) Limited, a Hong Kong company
  - 50% of Mundipharma (Thailand) Limited, a Thailand company

**NAS2430**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Appendix B: ICSP Asset Summary

NAS2431

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# General Description of Asset Categories

| | |
|---|---|
| **Cash and Cash Equivalents - New York** | Typically bank deposits and money market funds held in New York accounts |
| **Cash and Cash Equivalents - Oklahoma** | Typically bank deposits and money market funds held in Oklahoma accounts |
| **Accounts Receivable** | Typically tax refunds receivable and amounts to be received from the redemption of hedge fund investments (generally not significant amounts) |
| **Notes Receivable and Loans** | Notes receivable from various individuals and/or entities |
| **US Pharmaceutical and Health** | Typically II-Way entities (or entities that directly or indirectly own II-Way entities) that are pharmaceutical or otherwise health related and that operate primarily within the US, including the Debtors |
| **Non-US Pharmaceutical and Health** | Typically II-Way entities (or entities that directly or indirectly own II-Way entities) that are pharmaceutical or otherwise health related and that operate primarily outside the US |
| **Marketable Securities and Hedge Funds** | Typically investments made directly or indirectly in stocks or other marketable securities and hedge funds typically managed by third-party managers |
| **Private Equity Investments** | Typically investments made directly or indirectly in private companies, private equity funds, venture funds or private credit funds typically managed by third-party managers |
| **Real Estate Investments** | Typically investments made directly or indirectly in real estate typically managed by third-party managers (excludes ownership in residences owned primarily for the purpose of inhabitance) |
| **Other Investments** | Investments made directly or indirectly that do not fall into other categories (generally not significant amounts) |
| **Life Insurance - Surrender Value** | Surrender value of life insurance policies |
| **Retirement Accounts** | Typically IRA, 401(k) or other similar types of accounts (generally not significant amounts) |
| **Residential Real Estate** | Typically ownership in residences held principally for the purpose of inhabitance |
| **Artwork** | Typically paintings |

**NAS2432**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Individuals | Richard S. Sackler / RSS Revocable Pourover Trust | Jonathan D. Sackler / JDS Revocable Pourover Trust | David A. Sackler | Estate of Beverly Sackler |
|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | X |
| Cash and Cash Equivalents - Oklahoma | X | X | | |
| Accounts Receivable and Prepaid Expenses | X | X | X | |
| Notes Receivable | X | X | X | |
| US Pharmaceutical and Health | | | | |
| Non-US Pharmaceutical and Health | X | X | | |
| Marketable Securities and Hedge Funds | X | X | | X |
| Private Equity Investments | X | X | X | |
| Real Estate Investments | X | X | X | |
| Other Investments | X | X | X | |
| Life Insurance - Surrender Value | X | X | | X |
| Retirement Accounts | X | X | | X |
| Residential Real Estate | X | X | | X |
| Artwork | X | X | X | |

NAS2433

92

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Trusts That Indirectly Own Interests in Purdue | Trust U/A 11/5/74 fbo Beverly Sackler | Raymond R. Sackler Trust 1 dtd 12/23/89 | Raymond R. Sackler Trust 2 dtd 12/23/89 | Raymond R. Sackler Trust 1B dtd 12/23/89 | Raymond R. Sackler Trust 2B dtd 12/23/89 |
|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | X | X |
| Cash and Cash Equivalents - Oklahoma | X | | | | |
| Accounts Receivable and Prepaid Expenses | X | X | X | | |
| Notes Receivable | X | X | X | | |
| US Pharmaceutical and Health | X | X | X | X | X |
| Non-US Pharmaceutical and Health | X | X | X | X | X |
| Marketable Securities and Hedge Funds | X | X | X | | |
| Private Equity Investments | X | X | X | | |
| Real Estate Investments | X | X | X | | |
| Other Investments | X | X | X | | |
| Life Insurance - Surrender Value | | | | | |
| Retirement Accounts | | | | | |
| Residential Real Estate | | X | | | |
| Artwork | | | | | |

NAS2434

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Trusts Created by Division from 74A Trust or Subsequent Decanting | Trust B U/A 11/5/74 fbo Beverly Sackler | The 1974 Irrevocable Investment Trust | 1974 Irrevocable Trust fbo BS and RSS / AR Irrevocable Trust (Note: Subject to Refunding and Guarantee Agreement) | 1974 Irrevocable Trust fbo BS and JDS / AJ Irrevocable Trust (Note: Subject to Refunding and Guarantee Agreement) |
|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | X |
| Cash and Cash Equivalents - Oklahoma | | | | |
| Accounts Receivable and Prepaid Expenses | | | X | X |
| Notes Receivable | X | X | X | X |
| US Pharmaceutical and Health | | | | |
| Non-US Pharmaceutical and Health | | | | |
| Marketable Securities and Hedge Funds | X | X | X | X |
| Private Equity Investments | X | X | X | X |
| Real Estate Investments | X | X | X | X |
| Other Investments | X | X | X | X |
| Life Insurance - Surrender Value | X | | | |
| Retirement Accounts | | | | |
| Residential Real Estate | | | | |
| Artwork | | | | |

NAS2435

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Other Trusts That Directly and/or Indirectly Own Interests in II-way Entities | Beverly Sackler Trust 1 f/b/o David A. Sackler 12/20/1989 | Beverly Sackler Trust 2 f/b/o David A. Sackler 12/20/1989 | Beverly Sackler Trust 3 f/b/o David A. Sackler 12/20/1989 |
|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X |
| Cash and Cash Equivalents - Oklahoma | | | |
| Accounts Receivable and Prepaid Expenses | | | |
| Notes Receivable | | | |
| US Pharmaceutical and Health | | | |
| Non-US Pharmaceutical and Health | X | | X |
| Marketable Securities and Hedge Funds | X | X | X |
| Private Equity Investments | X | X | X |
| Real Estate Investments | | | X |
| Other Investments | X | X | X |
| Life Insurance - Surrender Value | | | |
| Retirement Accounts | | | |
| Residential Real Estate | | | |
| Artwork | | | |

NAS2436

95

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Trusts Created by Division from 74A Trust or Subsequent Decanting | Trust under agreement dtd December 3, 1979 f/b/o Richard S. Sackler | Trust under agreement dtd December 3, 1979 f/b/o Jonathan D. Sackler | Trust under agreement dated June 16, 1980 f/b/o Richard S. Sackler | Trust under agreement dated June 16, 1980 f/b/o Jonathan D. Sackler | Trust under agreement dtd December 23, 1980 f/b/o Richard S. Sackler | Trust under agreement dtd December 23, 1980 f/b/o Jonathan D. Sackler | Trust Agreement dtd August 29, 2003 f/b/o Issue of Richard S. Sackler | Trust Agreement dtd August 29, 2003 f/b/o Issue of Jonathan D. Sackler |
|---|---|---|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | X | X | X | | |
| Cash and Cash Equivalents - Oklahoma | | | | | | | | |
| Accounts Receivable and Prepaid Expenses | | | | | | | | |
| Notes Receivable | | | | | | | | |
| US Pharmaceutical and Health | | | | | | | X | X |
| Non-US Pharmaceutical and Health | X | X | X | X | X | X | X | X |
| Marketable Securities and Hedge Funds | | | | | | | | |
| Private Equity Investments | | | | | | | | |
| Real Estate Investments | | | | | | | | |
| Other Investments | | | | | | | | |
| Life Insurance - Surrender Value | | | | | | | | |
| Retirement Accounts | | | | | | | | |
| Residential Real Estate | | | | | | | | |
| Artwork | | | | | | | | |

**NAS2437**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Other Trusts | Richard S. Sackler Life Insurance Trust | Jonathan D. Sackler Life Insurance Trust | Richard S. Sackler Trust f/b/o David A. Sackler 3/8/90 | Trust under Declaration of Trust dated August 23, 1988 f/b/o Richard S. Sackler and Issue of Richard S. Sackler | Trust under Declaration of Trust dated December 17, 1991 f/b/o Richard S. Sackler and Issue of Richard S. Sackler |
|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | | |
| Cash and Cash Equivalents - Oklahoma | | | | | |
| Accounts Receivable and Prepaid Expenses | | | | | |
| Notes Receivable | | | | | |
| US Pharmaceutical and Health | | | | | |
| Non-US Pharmaceutical and Health | | | | | |
| Marketable Securities and Hedge Funds | | | | | |
| Private Equity Investments | | | | | |
| Real Estate Investments | | | | | |
| Other Investments | | | | | |
| Life Insurance - Surrender Value | X | X | X | | |
| Retirement Accounts | | | | | |
| Residential Real Estate | | | | X | X |
| Artwork | | | | | |

NAS2438

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Other Trusts | Trust under Declaration of Trust dated August 23, 1988 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | Trust under Declaration of Trust dated December 17, 1991 f/b/o Jonathan D. Sackler and Issue of Jonathan D. Sackler | DABB Trust | Richard S. Sackler Trust U/A 9/30/04 | RSS Fiduciary Management Trust |
|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | | | | X | |
| Cash and Cash Equivalents - Oklahoma | | | | | |
| Accounts Receivable and Prepaid Expenses | | | | | |
| Notes Receivable | | | | | |
| US Pharmaceutical and Health | | | | | |
| Non-US Pharmaceutical and Health | | | | | |
| Marketable Securities and Hedge Funds | | | | | |
| Private Equity Investments | | | | | |
| Real Estate Investments | | | X | | |
| Other Investments | | | | X | X |
| Life Insurance - Surrender Value | | | | | |
| Retirement Accounts | | | | | |
| Residential Real Estate | X | X | | | |
| Artwork | | | | | |

NAS2439

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Other Trusts | Crystal Trust | MCM Fiduciary Management Trust | Data Trust | Cornice Trust | Beverly Sackler Revocable Trust | Irrevocable Trust under Declaration dtd as of September 19, 1995 f/b/o Issue of Richard S. Sackler |
|---|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | | | | | X | X |
| Cash and Cash Equivalents - Oklahoma | | | | | X | |
| Accounts Receivable and Prepaid Expenses | | | | | X | |
| Notes Receivable | | | | | | X |
| US Pharmaceutical and Health | | | | | | |
| Non-US Pharmaceutical and Health | | | | | | |
| Marketable Securities and Hedge Funds | | | | | X | X |
| Private Equity Investments | | | | | X | X |
| Real Estate Investments | | | | | | X |
| Other Investments | X | X | X | X | X | X |
| Life Insurance - Surrender Value | | | | | | X |
| Retirement Accounts | | | | | | |
| Residential Real Estate | | | | | | |
| Artwork | | | | | X | |

NAS2440

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Other Trusts | David A. Sackler 2012 Trust | Irrevocable Trust under Declaration dated as of April 25, 1991 | Irrevocable Trust under Declaration dated as of August 25, 1992 | The RSS 2012 Family Trust | Raymond R. Sackler Credit Shelter Trust u/a 3/29/2012 | Raymond R. Sackler GST Exempt Marital Trust u/a 3/29/2012 |
|---|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | X | X | X | X |
| Cash and Cash Equivalents - Oklahoma | | | | | | |
| Accounts Receivable and Prepaid Expenses | | | | | | |
| Notes Receivable | X | | | | | |
| US Pharmaceutical and Health | | | | | | |
| Non-US Pharmaceutical and Health | | | | | | |
| Marketable Securities and Hedge Funds | | X | X | | | |
| Private Equity Investments | | | | X | | |
| Real Estate Investments | | | | X | | |
| Other Investments | X | | | | | |
| Life Insurance - Surrender Value | | | | | | |
| Retirement Accounts | | | | | | |
| Residential Real Estate | | | | | | |
| Artwork | | | | | | |

NAS2441

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# ICSP Asset Summary

| Entities | Rosebay Medical Company L.P. | Rosebay Medical Company, Inc. | Linarite Holdings LLC | Perthlite Holdings LLC | Moonstone Holdings LLC | Roselite Holdings LLC |
|---|---|---|---|---|---|---|
| Cash and Cash Equivalents - New York | X | X | | | | |
| Cash and Cash Equivalents - Oklahoma | X | X | | | | |
| Accounts Receivable and Prepaid Expenses | | | | | | |
| Notes Receivable | X | X | | | | |
| US Pharmaceutical and Health | X | X | X | X | X | X |
| Non-US Pharmaceutical and Health | X | X | X | X | X | X |
| Marketable Securities and Hedge Funds | | | | | | |
| Private Equity Investments | | | | | | |
| Real Estate Investments | | | | | | |
| Other Investments | X | X | | | | |
| Life Insurance - Surrender Value | | | | | | |
| Retirement Accounts | | | | | | |
| Residential Real Estate | | | | | | |
| Artwork | | | | | | |

**NAS2442**

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.

# Appendix C:
## Receipt, Refunding, and Guarantee Agreements

NAS2443

PROFESSIONALS' EYES ONLY / PREPARED FOR CONFIDENTIAL SETTLEMENT DISCUSSIONS - This presentation contains highly confidential material and is subject to Federal Rule of Evidence 408 and confidentiality agreements. This presentation may only be viewed by retained professionals, and it may not be shared.