UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| *In re Purdue Pharma, L.P.* Bankruptcy Appeals: | * | |
| | * | |
| *State of Maryland,* | * | |
| Appellant, | * | No. 7:21-CV-7532-CM (ALL CASES) |
| | * | |
| v. | * | |
| | * | |
| *Purdue Pharma, L.P., et al.*, | * | |
| Appellees. | * | |

## MARYLAND'S SUPPLEMENTAL BRIEF

The State of Maryland respectfully submits this supplemental brief in response to the Court's Order of November 26, 2021. Maryland law does not provide causes of action for indemnification or contribution under Maryland's Consumer Protection Act, and contractual provisions calling for indemnification of members of the Sackler family would not be enforced over the strong policy of the Act to prevent wrongdoing and promote deterrence.

## BACKGROUND

The Consumer Protection Division of the Office of the Attorney General of Maryland ("CPD") initiated an administrative enforcement action against debtors and 7 members of the Sackler family – Richard, Jonathan, Kathe, Theresa, Mortimer (Jr.), and David Sackler, and Ilene Sackler Lefcourt, in 2019. CPD's cause of action, exclusive to it, is provided under section 13-403 of the Maryland Consumer Protection Act, Md. Code Ann. §§ 13-101 *et seq.* ("CPA"), and Maryland's action seeks to address thousands of violations of the CPA.

The Maryland General Assembly enacted the CPA to amid "mounting concern[s]" with deceptive practices and of the "inadequa[cy]" of existing enforcement of measures against unfair and deceptive trade practices. *Id.* § 13-102(a). It determined that "improved enforcement procedures" were necessary. *Id.* § 13-102(a)(3). To that end, the Legislature:

> Conclude[d] . . . that it should take strong protective and preventive steps to investigate unlawful consumer practices, to assist the public in obtaining relief from these practices, and to prevent these practices from occurring in Maryland.  It is the purpose of [the CPA] to accomplish these ends and thereby maintain the health and welfare of the citizens of the State.

The centerpiece of the CPA's enforcement scheme was the establishment of CPD in the Office of the Attorney General.  The CPA provides to CPD broad investigative powers and other resources to enable it to investigate and pursue enforcement against those who violate the CPA by engaging in unfair and deceptive trade practices.  CPD, uniquely, may redress such violations by seeking, *inter alia*, (1) civil penalties, (2) disgorgement, (3) mandatory and prohibitory equitable relief, and (4) economic damages for injured parties under its exclusive standing to invoke the administrative enforcement procedure created by section 13-403 of the CPA.  *See* Md. Code Ann., §§ 13-403, 13-402.  The legislature also provided a private right of action for damages, under which some of Maryland's local subdivisions have pursued relief against opioids manufacturers, and criminalized violations of the CPA.  *Id.* §§ 13-408, 13-411.

Although it may pursue other enforcement mechanisms and remedies, the CPD has historically invoked section 13-403 to pursue civil penalties, disgorgement, and equitable relief against those who violate the CPA.  It has never ultimately pursued or been awarded economic damages.  In the administrative action it initiated in May 2019, it proceeded under 13-403 against debtors and the seven named Sackler family members, pleading entitlement to civil penalties, disgorgement, equitable relief, and damages.

## DISCUSSION

### I.        Question 3(a) – Indemnification

The CPA does not provide expressly for indemnification or contribution.  Although Maryland's highest court, the Court of Appeals, has not ruled on the subject, Maryland's

intermediate appellate court, the Court of Special Appeals, has ruled that a defendant in a private action for damages would not be entitled to indemnification if the defendant participated actively in violations of the CPA. *Hartford Acc. and Indem. Co. v. Scarlett Harbor Associates Ltd. Partn.*, 674 A.2d 106 (Md. Ct. Spec. App. 1996) (Hollander, J.), *aff'd,* 695 A.2d 153 (Md. 1997). Recognizing that Maryland has long adhered to the common law principle that one who acts wrongly may not pursue indemnification, *id.* at 135, the court held that, though a right of indemnification might be implied in law when one violator acts passively and is therefore less responsible than the other violator, no right of indemnification exists when the violator seeking indemnification actively participated in the violation. *Id.* at 136 ("This claim focuses not on conduct for which the Defendants were only secondarily or passively liable, but instead on the Defendants' *own* primary, active deception. In other words, the CPA claim attacks the Defendants' wrongful acts in deceiving their customers. If the Defendants are found liable under the CPA on the basis of their own primary, active misconduct, then they would not be entitled to indemnity."). The upshot of the intermediate appellate court's holding is that members of the Sackler family and other non-debtors who participated actively in wrongdoing do not have indemnification rights under Maryland law.

Moreover, *Scarlett Harbor* was a private action for damages under the CPA. Additional reasons would limit any non-debtors' assertion of a right of indemnification for the civil penalties imposed against them by the Act. The CPA currently provides that up to $10,000 may be imposed in penalties for each violation. Md. Code Ann., Com. Law § 13-410(a). In setting the amount of penalties, the court or administrative tribunal imposing them is directed to consider the conduct at issue, including "(1) The severity of the violation for which the penalty is assessed; (2) The good faith of the violator; (3) Any history of prior violations; and (4) Whether the amount of the penalty

3

will achieve the desired deterrent purpose." *Id.* § 13-410(d)(1)-(4).  Consistent with federal precedent cited in Maryland's initial and reply briefs, it is unlikely that the Court of Appeals of Maryland would determine that one who violates the CPA, which directs specific attention to the violator's conduct, "good faith," and "history of prior violations" can escape the liability for penalties that are imposed to have a "desired deterrent" effect.  *See also, e.g., In re Oil Spill by the Oil Rig Deepwater Horizon in the Gulf of Mexico, on April 20, 2010*, 841 F. Supp. 2d 988, 1006 (E.D. La. 2012) ("Moreover, the fact that removal costs, whether sought under the CWA or OPA, are subject to contractual indemnity is not surprising.  Removal costs are intended to restore the status quo; they are remedial in nature.  Thus, unlike a penalty that is primarily designed to deter certain conduct and punish the wrongdoer, it does not contravene public policy if removal costs are shifted by contract . . . . For these reasons, the Court holds that public policy invalidates the Drilling Contract's indemnity clause to the extent it includes civil penalties under Section 311(b)(7) of the CWA.").

## II.     Question 3(b) – Contribution

In contrast to damages, where a common law right to contribution conceivably could exist, there is no right to contribution for civil penalties under the CPA.  The statute does not provide for such a right.  As noted above, the statute directs that any civil penalties imposed be tailored to the conduct, violation history, and good faith of the violator and directs that the penalty amount be set considering whether the penalty will achieve deterrence.  In *Scarlett Harbor*, the Court of Special Appeals, considering the availability of contribution for damages awards under the CPA observed that:

> In order for a party to have a right of contribution, two prerequisites
> must be satisfied. First, the parties must share a "common liability"
> or burden.  Second, the party seeking contribution must have paid,

4

> under legal compulsion, more than his fair share of the common
> obligation.

676 A.2d at 137 (citations omitted).  Because civil penalties are assessed against the particular violator, there would be no "common liability" with Purdue, nor would the Sacklers or other non-debtors be obligated to pay "more than [their] fair share of" the civil penalties.  The same is true of disgorgement.  *See Consumer Protection Div. v. Morgan*, 874 A.2d 919, 936-37 & n.18 (Md. 2005) (indicating that civil penalties of then statutory maximum were imposed severally against each violator based on the number of violations in which each participated).  Similarly, if the Sacklers or other non-debtors were directed to pay disgorgement, that disgorgement would relate only to the particular violator's ill-gotten gains; a party cannot disgorge what the party did not wrongfully obtain.

## III.    Question 3(c) – Contractual Provisions

There appears to be no Maryland case testing whether an insurance contract purporting to indemnify a violator for civil penalties under either the CPA or a similar statute is enforceable. Maryland courts have recognized, however, that Maryland choice of law principles require them to refuse to give effect to insurance contracts when the indemnification violates Maryland's strong public policy embodied in legislative acts.  One example concerns a Maryland statute that prevents indemnification in the construction industry.  *Bethlehem Steel Corp. v. G.C. Zarnas and Co., Inc.*, 498 A.2d 605, 609 (Md. 1985) ("[A] Maryland statute specifically forbids, on public policy grounds, the enforcement of a contractual agreement such as that involved here. Under these circumstances, this Court's opinions in *Texaco* and *Harford Mutual* do not require the application of Pennsylvania law.").  The civil penalties sections and other sections of the CPA provide a similarly strong legislative public policy rationale that similarly requires the application of those policies over the law that might otherwise be applied in the absence of a positive enactment

5

reflecting a legislative policy choice.  *See First Nat. Bank of St. Mary's v. Fid. & Deposit Co.*, 389 A.2d 359, 367 (Md. 1978) (allowing insurer to cover exemplary damages because "[t]here is in this instance not the slightest suggestion of a 'constitutional or statutory provision' from which a public policy against payment is deducible.").  Accordingly, even where traditional choice of law principles point toward applying the law of another state, the strong legislative policy embodied in some statutes has led the Maryland courts to decline to enforce indemnification provisions.

Although the CPA does not speak explicitly to insurance, indemnity, and contribution, for the reasons discussed above the Act is expressly intended to promote rigorous enforcement, protect the public health, and give rise to deterrence.  The civil penalty provisions are strong remedies designed to achieve that deterrence.  To permit indemnification agreements to cover civil penalty liability under the CPA would be fundamentally inconsistent with the Maryland Legislature's clearly expressed statutory policy, especially where, as here, payment would essentially come from the recovery of victims.  It therefore likely that the Court of Appeals would refuse give either insurance agreements or the limited partnership agreements effect, even where choice of law principles would point to application of another forum's substantive law.

Notably, even if Maryland were to give effect to Purdue's liability insurance policies or the limited partnership agreements, those agreements notably do not permit indemnification under the circumstances here.  The liability policies contain limitations that exclude dishonest conduct, criminal acts, intentional acts, and fraud.  *See, e.g.*, JX-1305 (excluding liability for "deliberate" dishonesty or "willful" violations of statutes); JX-2914 (excluding liability for "oral or written publication of material if done at the direction of the insured with knowledge of its falsity"); JX-2914 (excluding from coverage "deceptive acts or practices in trade or commerce" and claims based on "director dishonesty").  Likewise, the limited partnership agreements require indemnitees

6

to have acted in good faith.  JX-872.022 ("The Partnership shall not be obligated to indemnify the Indemnitee to the extent a final decision by a court having jurisdiction in the matter shall establish that the Indemnitee did not act in good faith, and, with respect to any criminal action or proceeding, had reasonable cause to believe that his or her conduct was unlawful.").  Also, any obligation to advance expenses for the defense of the Sacklers would, of course, be subject to the bankruptcy court's approval, to claims that the partnership agreement is, in these respects, a fraudulent conveyance, and to assertions that such payments are, in any event, inequitable and should not be permitted by the bankruptcy court.

## CONCLUSION

For the foregoing reasons, the bankruptcy court erred when it determined, without the sufficient examination of state law required by *Manville III*, that indemnification, contribution, and insurance issues provided it with subject-matter jurisdiction over Maryland's and other States' police power claims against non-debtors.

Dated:  November 30, 2021

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Brian T. Edmunds
BRIAN T. EDMUNDS
Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place
Baltimore, Maryland 21202
Tel.:    (410) 576-6578
Fax:    (410) 576-6656
bedmunds@oag.state.md.us

*Attorneys for the State of Maryland*