UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PURDUE PHARMA L.P., *et al.*,<br>BANKRUPTCY APPEALS<br><br>This Filing Relates to:<br><br><br>ALL MATTERS | 21 cv 7532 (CM) (Master)<br>21 cv 7585 (CM)<br>21 cv 7961 (CM)<br>21 cv 7962 (CM)<br>21 cv 7966 (CM)<br>21 cv 7969 (CM)<br>21 cv 8034 (CM)<br>21 cv 8042 (CM)<br>21 cv 8049 (CM)<br>21 cv 8055 (CM)<br>21 cv 8139 (CM)<br>21 cv 8258 (CM)<br>21 cv 8271 (CM)<br>21 cv 8548 (CM)<br>21 cv 8557 (CM)<br>21 cv 8566 (CM)<br><br>On Appeal from the United States Bankruptcy Court for the Southern District of New York |

**SUPPLEMENTAL BRIEF OF APPELLEE**
**THE MULTI-STATE GOVERNMENTAL ENTITIES GROUP**

       Kevin C. Maclay, Esq. (*pro hac vice* pending)
       Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
       Todd E. Phillips, Esq.
       Lucas H. Self, Esq. (*pro hac vice* pending)
       CAPLIN & DRYSDALE, CHARTERED
       One Thomas Circle, NW, Suite 1100
       Washington, DC 20005

       *Counsel for the Multi-State Governmental Entities Group*

Dated: December 6, 2021

# TABLE OF CONTENTS

Preliminary Statement ................................................................................................................. 1

Argument .................................................................................................................................... 1

Conclusion .................................................................................................................................. 4

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Calpine Corp.*,
 365 B.R. 401 (S.D.N.Y. 2007)...................................................................................................3

*In re Iridium Operating LLC*,
 478 F.3d 452 (2d Cir. 2007)........................................................................................................3

*In re Kirwan Offs. S.à.r.l.*,
 592 B.R. 489 (S.D.N.Y. 2018), *aff'd sub nom. In re Kirwan Offs. S.a.R.L.*, 792
 F. App'x 99 (2d Cir. 2019) .........................................................................................................3

*In re Metromedia Fiber Network, Inc.*,
 416 F.3d 136 (2d Cir. 2005)........................................................................................................3

**PRELIMINARY STATEMENT**

Appellee, the Multi-State Governmental Entities Group ("**MSGE Group**"),[1] by and through its undersigned counsel, submits this supplemental brief in response to this Court's question whether the Sacklers' pre-bankruptcy transfers are "something that a court can/should take into account in deciding whether the releases on which the Sacklers conditioned their financial contribution to the Debtors' estate are 'abusive.'" Schedule for Further Briefing at 2 (ECF No. 234). The transfers, while relevant, are just one factor that were taken into account by Judge Drain when he ultimately decided to approve the Shareholder Releases. The full record reveals that the Shareholder Releases are an essential component of the Plan, and the interconnected settlements embodied therein, that will provide billions of opioid abatement dollars to communities in need. Accordingly, remand is unnecessary and would only delay much-needed abatement funds flowing to the local governments comprising the MSGE Group and others.[2]

**ARGUMENT**

As this Court stated, "the Second Circuit cautioned against the approval of a release of third-party claims against a non-debtor because the granting of such releases is subject to abuse." Schedule for Further Briefing at 1. The record reveals that Judge Drain was concerned with exactly this issue when he considered the propriety of the Shareholder Releases.

As Judge Drain noted, the Second Circuit "cautioned that . . . [third-party] releases can be abused, especially if they are for insiders, and need to be supported by sufficient findings by the

---

[1] The governmental entities comprising the MSGE Group are set forth in the Second Amended Verified Statement of the Multi-State Governmental Entities Group Pursuant to Fed. R. Bankr. P. 2019 (Bankr. ECF No. 1794). Pleadings filed in *In re Purdue Pharma L.P.*, No. 19-bk-23649 (Bankr. S.D.N.Y.) are referred to with the citation "**Bankr. ECF No. ___.**"

[2] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the Twelfth Amended Joint Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors (Bankr. ECF No. 3726) ("**Plan**").

bankruptcy court." Modified Bench Ruling on Request for Confirmation of Eleventh Amended. Joint Chapter 11 Plan, at 132 (Bankr. ECF No. 3786) ("**Modified Bench Ruling**") (citing *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005)). Similarly, Judge Drain remarked that the Seventh Circuit has also cautioned against the risk of abuse inherent in third-party releases. *Id.* at 134 (citing *In re Ingersoll, Inc.*, 562 F.3d 856, 865 (7th Cir. 2009)).

Judge Drain did not overlook the Sacklers' actions and was cognizant of suggestions in the record "that at least some of the Sacklers were very aware of the risk of opioid-related litigation claims against Purdue and sought to shield themselves from the economic effect of such claims by causing Purdue to make billions of dollars of transfers to them and to shield their own assets, as well, from collection." Modified Bench Ruling at 95. Moreover, when analyzing the actions of the Sacklers, Judge Drain did not focus only on whether fraudulent transfers occurred, but instead looked broadly at "*potentially wrongful actions* by the Sacklers or their related entities *or potentially avoidable transfers* to them that took place . . . after 2007." *Id.* at 92 (emphasis added). Judge Drain nevertheless approved the Shareholder Settlement as fair, equitable, and reasonable, and found the Shareholder Releases to be integral to that settlement and the Plan. *See* Findings of Fact, Conclusions of Law, and Order Confirming the Twelfth Amended Joint Chapter 11 Plan of Reorganization of Purdue Pharma L.P. and Its Affiliated Debtors ¶ KK(c), at 34 (Bankr. ECF No. 3787) ("**Confirmation Order**").

Against the actions of the Sacklers, Judge Drain weighed evidence that "Plan Settlements, including the intercreditor allocation agreements and settlements reached in Mediation, are premised upon the consideration under the Shareholder Settlement Agreement, and the term sheets agreed to by the private claimants in Mediation were conditioned on the participation of the Sackler Families in the Plan." Confirmation Order ¶ II(d)(iii), at 29. Additionally, without the Shareholder

Releases, "the plan would fail, the Debtors would likely liquidate, and the objectors would collect materially less money from the Debtors and the shareholder released parties in the aggregate." Modified Bench Ruling at 154. Considering the totality of the circumstances, Judge Drain approved the Shareholder Settlement providing for billions of dollars to be added to the bankruptcy *res* to compensate opioid victims and fund efforts to abate the opioid crisis.

Similarly, the MSGE Group was aware of the Sacklers' actions and the transfers made by the Debtors and factored these actions and transfers into the settlement that it ultimately agreed to support following extensive mediation. As the Bankruptcy Court found, 96.87% of the non-federal governmental entities supported the Plan that included the Shareholder Releases. *Id.* at 40. The Shareholder Settlement and Plan are products of a hard-fought, arm's length negotiation process that involved experienced mediators and was spearheaded by creditors' committees and groups, such as the MSGE Group, that were adverse to the Sacklers.

As *Metromedia* instructs, the decision to grant a release "is not a matter of factors and prongs." *Metromedia*, 416 F.3d at 142. Instead, Judge Drain properly analyzed, and made factual findings, concerning all the circumstances surrounding the Shareholder Releases and appropriately exercised his discretion to approve the Shareholder Releases in conjunction with the Shareholder Settlement and confirmation of the Plan. *See In re Kirwan Offs. S.à.r.l.*, 592 B.R. 489, 500 (S.D.N.Y. 2018), *aff'd sub nom. In re Kirwan Offs. S.a.R.L.*, 792 F. App'x 99 (2d Cir. 2019); *In re Calpine Corp.*, 365 B.R. 401, 407 (S.D.N.Y. 2007) ("The decision to grant or deny an injunction is reviewed for an abuse of discretion."); *see also In re Iridium Operating LLC*, 478 F.3d 452, 461 n.13 (2d Cir. 2007) (stating that appellate courts "review for abuse of discretion the reasonableness of . . . [the bankruptcy] court's application of . . . [Bankruptcy Rule 9019] in approving the [s]ettlement").

Because of the Shareholder Settlement, and the Shareholder Releases that are integral to that settlement, billions of dollars will be made available to compensate opioid victims and fund critical abatement efforts for communities in need. Any attempt to unwind or disapprove of this comprehensive settlement will further harm the victims and communities injured by the Debtors and the Sacklers in the first place.

## CONCLUSION

In sum, creditors in this reorganization were keenly aware of the billions of dollars of cash and noncash transfers made to the Sacklers in the face of substantial opioid-related liability. Judge Drain was also aware of the transfers and the possible motivations and intent underlying them. Nevertheless, the Shareholder Settlement, and the Shareholder Releases that are an essential component of that settlement, are the product of extensive discovery, due diligence, and substantial arm's length negotiations undertaken by the official creditors' committee and other creditor groups, such as the MSGE Group. Judge Drain also took that discovery, due diligence, and those negotiations into account, among other considerations, when weighing whether the Shareholder Settlement was fair and equitable. Under these circumstances, the Shareholder Releases are essential to, not an abuse of, the Debtors' reorganization. Thus, remand is neither necessary nor warranted. For all the reasons set forth in this brief and in the MSGE Group's prior submission, the orders of the Bankruptcy Court should be affirmed.

*[Signature of counsel on following page]*

Dated: December 6, 2021          Respectfully submitted,

*/s/ Todd E. Phillips*
Kevin C. Maclay, Esq. (*pro hac vice* pending)
Jeffrey A. Liesemer, Esq. (admitted *pro hac vice*)
Todd E. Phillips, Esq.
Lucas H. Self, Esq. (*pro hac vice* pending)
CAPLIN & DRYSDALE, CHARTERED
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
Tel: (202) 862-5000
Fax: (202) 429-3301
kmaclay@capdale.com
jliesemer@capdale.com
tphillips@capdale.com
lself@capdale.com

*Counsel for the Multi-State Governmental Entities Group*

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Bankruptcy Procedure 8015(h), the undersigned certifies that the foregoing brief complies with the type-volume, typeface, and type-style limitations of Federal Rule of Bankruptcy Procedure 8015, as modified by this Court. Under Rule 8015(f), "[b]y local rule or order in a particular case, a district court . . . may accept documents that do not meet all the form requirements of this rule or the length limits set by" part VIII of the Federal Rules of Bankruptcy Procedure. Although Rule 8015(a)(7) sets a limit of 13,000 words, this Court has stated that the briefing in these appeals need not comply with the length limits of Rule 8015. *See* Hr'g Tr. at 21, Oct. 12, 2021. The foregoing brief contains 1,213 words, excluding the parts of the brief exempted by Rule 8015(g).

Under section V.D. of the May 21, 2021 Individual Practices and Procedures—Chief Judge Colleen McMahon, this Court requires a typeface of 12-point serif font. The foregoing brief complies with the typeface and type-style requirements because it has been prepared in proportionally spaced typeface using Microsoft Word 12-point Times New Roman font.

                                                   */s/ Todd E. Phillips*
                                                 Todd E. Phillips

Dated: December 6, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2021, I caused the foregoing brief to be electronically filed with the Clerk of the United States District Court for the Southern District of New York via the Court's CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

In accordance with the May 21, 2021 Individual Practices and Procedures—Chief Judge Colleen McMahon § V(A), I have caused two (2) courtesy copies of the foregoing brief, marked as such, to be sent via overnight delivery to:

> The Honorable Colleen McMahon
> United States District Court for the
> Southern District of New York
> Daniel Patrick Moynihan United States Courthouse
> 500 Pearl Street, Room 2550
> New York, NY 10007-1312

> */s/ Todd E. Phillips*
> Todd E. Phillips